Ropes & Gray LLP
Gregg M. Galardi
Jonathan P. Gill
Kristina K. Alexander
Stacy A. Dasaro
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------x
|   |   |   |
|---|---|---|
| In re | : | Chapter 11 |
|   | : |   |
| Gawker Media LLC, *et al.*,[1] | : | Case No. 16-11700 (SMB) |
|   | : |   |
| Debtors. | : | (Joint Administration Requested) |
|   | : |   |

---------------------------------------------------x

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS AND FOREIGN VENDORS

Gawker Media LLC ("Gawker Media"), Gawker Media Group, Inc. ("GMGI"), and

Kinja Kft. ("Kinja"), debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "Debtors"), respectfully submit this motion (the "Motion") for (i) entry of an

interim order, substantially in the form attached hereto as Exhibit A; and after a final hearing on

the relief requested herein, (ii) entry of an order, substantially in the form attached hereto as

Exhibit B, authorizing, but not directing, the Debtors to pay the prepetition claims of certain

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011. Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

categories of Critical Vendors (as defined below), identified on Schedule 1 attached hereto

("Schedule 1"), and Foreign Vendors (as defined below).  In support of the Motion, the Debtors

hereby incorporate by reference the *Declaration of William Holden  in Support of First Day*

*Motions* (the "First Day Declaration"), filed concurrently herewith.[2]  In further support of the

Motion, the Debtors, by and through their undersigned proposed counsel, respectfully represent

as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 362,

363(b), and 1107 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"),

Rules 6003(b), 6004(a), and 6004(h) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

### Procedural Background

4.      On June 10, 2016, Gawker Media filed a voluntary petition for relief under

chapter 11 of the Bankruptcy Code.  On the date hereof, GMGI and Kinja each filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.

5.      No official committee of unsecured creditors, nor any trustee or examiner, has

been appointed in these cases.

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the First Day
Declaration.

56767635_13

6.      The factual background regarding the Debtors, their business operations, their capital and debt structure, and the events leading up to the filing of these chapter 11 cases are set forth in detail in the First Day Declaration.

**Relief Requested**

7.      By this Motion, the Debtors seek entry of interim and final orders authorizing, but not directing, the Debtors to (a) pay prepetition obligations, in an amount not to exceed $365,000, which represents the prepetition obligations owed to the Critical Vendors (the "Critical Vendor Claims") of certain categories of vendors that are critical to the Debtors' operations (the "Critical Vendors"), as described herein, as such claims become due; and (b) pay prepetition obligations, in an amount not to exceed $20,000 owed to the Foreign Vendors (the "Foreign Vendor Claims") potentially due and owing to certain foreign vendors (the "Foreign Vendors"), as such claims become due.

8.      The Debtors propose to reserve the right to condition payment of a Critical Vendor Claim on the agreement of the applicable vendor (the "Affected Creditor") to continue supplying goods and/or services to the Debtors (a) on terms that are at least as favorable to the Debtors as the most favorable trade terms in effect between such Affected Creditor and the Debtors in the 120 days before the Petition Date (the "Customary Trade Terms"), or (b) such other favorable trade terms as agreed by the Debtors and such Affected Creditor.

9.      Further, the Debtors propose that if an Affected Creditor ceases to honor the Customary Trade Terms (or such other trade terms as agreed with the Debtors), any payment of a Critical Vendor Claim made to such Affected Creditor shall be deemed an avoidable postpetition transfer under section 549 of the Bankruptcy Code, recoverable by the Debtors in cash upon written request.  Upon any such recovery, the claim for which such payment was initially made

- 3 -

will be deemed to be reinstated as a prepetition claim in the amount so recovered.  If an Affected

Creditor refuses to acknowledge such recharacterization and to make the requested repayment,

the Debtors propose that they be authorized to compel such recharacterization and repayment by

motion on such notice as is required by this Court, the Bankruptcy Rules, and the Local

Bankruptcy Rules for the Southern District of New York.

10.      To implement the relief requested, the Debtors further request that all banks and

other financial institutions on which checks were drawn or electronic payment requests were

made in connection with the amounts described herein be authorized and directed to (a) receive,

process, honor, and pay all such checks and electronic payment requests when presented for

payment (assuming the availability of sufficient funds) and (b) rely on the Debtors' designation

of any particular check or electronic payment request in respect of the relief requested

herein.   The Debtors also seek authorization to reissue checks, wire transfers, automated

clearing house payments, electronic payments, or other similar methods of payment for the

amounts described in this Motion where such method of payment has been dishonored

postpetition.

### The Critical Vendor Claims & Payment Cap

11.      In the ordinary course of business, the Debtors incur obligations to suppliers of

goods and services, including to the categories of Critical Vendors identified on Schedule 1.

After conducting analysis and review of the immediate trade and service needs, the Debtors

identified the Critical Vendors based on the following criteria: (i) whether the Debtors receive

advantageous pricing or other terms such that replacing the vendor postpetition would result in

higher costs to the Debtors; (ii) whether a vendor is contractually obligated to continue to

provide goods or services to the Debtors; (iii) whether the Debtors have sufficient in-house

- 4 -

resources to continue operations while a replacement vendor is found and put in place; and (iv)

whether a vendor meeting the aforementioned standards is likely to refuse to ship products or

provide services to the Debtor postpetition if the prepetition balances are not paid.  Accordingly,

the Debtors respectfully submit that the Critical Vendors as identified herein are critical to the

Debtors' estates and near-term operational requirements.

12.    The Critical Vendors generally fall into five categories:

a.    **Advertising Operations**: These include vendors involved in the process of serving and collecting data for advertising campaigns.  The vendors allow the Debtors to deliver on advertising campaigns and determine the appropriate amount of revenue earned by each customer.  Discontinuance of services by these vendors would halt display of advertisements.  These vendor services also include providing campaign and site-level analytics, allowing the Debtors to deliver information and insights to advertisers.

b.    **IT & Hosting**: These include information technology vendors that ensure the Debtors' websites, platforms, and internal technology systems run without interruption.  These vendors host all images on the Debtor's websites, and provide caching and image resizing services.  Without these vendors, there would be no physical servers to power the websites and, thus, no websites at all.

c.    **Editorial Expenses**: These expenses relate to vendors that allow the Debtors' editorial department to create quality content for publication, including licensing of photos used by the editorial team on the Debtors' website.

d.    **Specialized Campaign Vendors**: These include vendors with specialized skillsets not available in-house that produce custom work related to specific advertising campaigns for customers.  These vendors allow the Debtors to research client activity and previous content programs and campaigns, and provide visibility into client interactions with competitors.  Additionally, one of these vendors provides the primary serving mechanism for custom-built banners, the loss of which would negatively impact revenue.

e.    **General & Administrative**: These include vendors providing general and administrative goods and services, such as sales-staffing support.  These services are required to ensure no interruption to the day-to-day operations of the Debtors' businesses and maintenance of revenue-generating personnel.

13.    These vendors, many of whom supply technology-related goods and services such

as ad operations, IT hardware and software (and related support), web and video hosting, and

editorial content, are crucial to the ongoing viability of the Debtors' business.  Such services are

- 5 -

required by the Debtors to keep their websites up and running on a daily basis.  As a global media company that relies on the web presence of its seven brands, the Debtors' entire platform could come to a halt if significant technology-related goods and services were discontinued for lack of payment.  Moreover, without assurance of payment through this Court's approval, there is a risk that certain vendors may cease doing business with the Debtors on account of these bankruptcy cases.  Such an outcome would substantially reduce the value of the Debtors, to the detriment of the estates, their creditors, and other parties in interest.

14.    The Debtors propose to pay prepetition claims of certain Critical Vendors up to an aggregate capped maximum of $365,000.[3]  Of this amount, the Debtors are requesting authority to pay approximately $95,000 of the Critical Vendor Claims prior to the hearing to authorize the relief requested herein on a final basis.  The Debtors have determined that such payments will ensure that the Critical Vendors will continue to provide necessary goods and services therefore will preserve the value of the Debtors' business during these chapter 11 cases.

### The Foreign Vendor Claims & Payment Cap

15.    As more fully described in the First Day Declaration, Kinja plays a critical role in the Debtors' overall operations, and its ability to continue to operate throughout these chapter 11 cases is crucial.  Certain vendors provide services to Kinja, in the nature of general and administrative services in the ordinary course of business (the "Foreign Vendors").

---

[3]The Debtors reserve the right to amend Schedule 1 and to pay other Critical Vendor Claims not reflected on Schedule 1 in their good faith business judgment, provided that such Critical Vendor Claim satisfies the requirements of any order of this Court, the Bankruptcy Rules, the Bankruptcy Code, and the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").  The Debtors further reserve the right to reallocate the amounts payable among the categories of Critical Vendors set forth on Schedule 1, provided that the Debtors will not pay any prepetition Critical Vendor Claims above the capped maximum of $365,000 absent further order of this Court.

- 6 -

16.     As of the Petition Date, the books and records indicate that there is nothing currently owed to Foreign Vendors (the "Foreign Vendor Claims") on a prepetition basis.  Based on historical patterns where invoices from foreign vendors are not delivered on a timely basis, however, the Debtors believe that up to $20,000 in Foreign Vendor Claims for prepetition services are outstanding and will come due.[4]  Accordingly, the Debtors seek authority to make payments in the aggregate amount of no more than $20,000 on account of Foreign Vendor Claims.

## Basis For Relief

17.     The Debtors believe that the relief requested is reasonable and necessary under the circumstances because payment of the Critical Vendor Claims and the Foreign Vendor Claims as provided for herein will allow the Debtors to avoid a disruption in their ability to obtain the goods and services necessary to the operation of their business consistent with customer expectations.

18.     Section 105(a) of the Bankruptcy Code empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  This equitable power is granted to effect the policies and goals of chapter 11 reorganization, which are to rehabilitate the debtor, In re Ionosphere Clubs, Inc., 98 B.R. 174, 176-77 (Bankr. S.D.N.Y. 1989), and to "create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately." Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 287 (S.D.N.Y. 1987); see also In re Structurlite Plastics Corp., 86 B.R. 922, 932

---

[4] The Foreign Vendor Claims do not include any prepetition amounts the Debtors seek to pay pursuant to any other motion filed on the date hereof, or subsequently throughout the pendency of these chapter 11 cases.

- 7 -

(Bankr. S.D. Ohio 1998) (rejecting a bright line rule prohibiting payment of prepetition debts because it "may well be too inflexible to permit the effectuation of the rehabilitation purposes of the Code").

19.     Under the "doctrine of necessity" or "necessity of payment" rule, first articulated in Miltenberger v. Logansport, C. & S. W. R. Co., 106 U.S. 286 (1882), bankruptcy courts can exercise these equitable powers "to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." Ionosphere Clubs, 98 B.R. at 176; see also In re Lehigh & N.E. Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (stating that payment of a claim arising before reorganization is authorized if it is "essential to the continued operation of the [debtor]"); Official Comm. of Unsecured Creditors of Motor Coach Indus. Int'l, Inc. v. Motor Coach Indus. Int'l, Inc. (In re Motor Coach Indus. Int'l, Inc.), Civ. No. 09-078-SLR, 2009 WL 330993, at *3 n.5 (D. Del. Feb. 10, 2009) ("The doctrine of necessity or necessity of payment doctrine is a general rubric for the proposition that a court can authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor.") (internal quotation marks omitted); In re Columbia Gas Sys., Inc., 171 B.R. 189, 192 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, a debtor may pay prepetition creditors "in advance of a confirmed plan," where such payments are "essential to the continued operation of the [debtor's] business"); In re Fin. News Network, Inc., 134 B.R. 732, 735-36 (Bankr. S.D.N.Y. 1991) (observing that the doctrine of necessity "stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization").  The doctrine of necessity permits a deviation from the equal treatment of creditors because "otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its pre-petition

- 8 -

claim." In re United Am., Inc., 327 B.R. 776, 781 (Bankr. E.D. Va. 2005); see also In re NVR

L.P., 147 B.R. 126, 128 (Bankr. E.D. Va. 1992) (stating that the necessity of payment exception

is "well-established in bankruptcy common law").

20.     While section 105(a) alone is sufficient, see Ionosphere Clubs, 98 B.R. at 176,

other courts have applied it in conjunction with sections 1107(a) and 362(d) to allow payment of

prepetition claims under the doctrine of necessity.  See J.M. Blanco, Inc. v. PMC Mktg. Corp.,

No. 09-1781(GAG), 2009 WL 5184458, at *5 (D. Puerto Rico, Dec. 22, 2009) (holding that

"pursuant to the debtor in possession's role as the equivalent of a trustee, the bankruptcy court is

authorized to use its equitable powers under section 105(a) in aid of preservation or enhancement

of the estate" by allowing the prepetition payment of a trade creditor's non-priority, general

unsecured claim); In re CoServ, L.L.C., 273 B.R. 487, 496 (Bankr. N.D. Tex. 2002) (holding that

there are occasions when the debtor in possession's fiduciary duty to protect and preserve the

estate "can only be fulfilled by the preplan satisfaction of a prepetition claim"); In re CEI

Roofing, Inc., 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (opining that the debtor-in-possession

and its "critical vendors" could request relief under section 362(d) for cause, such cause "being

the urgency and necessity of paying the prepetition claims, such payment being the only means

of protecting the going concern value of the operating business in Chapter 11").

21.     Here, the Debtors' request to pay the Critical Vendor Claims satisfies this

standard because the failure to do so could have a material adverse impact on the Debtors' day-

to-day operations which would, in turn, hinder the Debtors' restructuring.

22.     Courts are also empowered to authorize debtors to pay prepetition claims under

section 363(b)(1), which provides that "[t]he trustee, after notice and a hearing, may use, sell, or

lease, other than in the ordinary course of business, property of the estate."  11 U.S.C.

§ 363(b)(1). This section gives the court "broad flexibility in tailoring its orders to meet a wide variety of circumstances." Ionosphere Clubs, Inc., 98 B.R. at 175. Before the court can apply section 363(b) in its favor, the debtor must "articulate some business justification, other than mere appeasements of major creditors." Id. (finding that the debtor gave "sound business reasons for its decision to pay pre-petition wages," those reasons being that it was necessary to "preserve and protect its business and ultimately reorganize, retain its currently working employees and maintain positive employee morale"); see also In re New Bedford Capacitor, Inc., No. 01-14680-JNF, 2003 WL 25889620, at *5 (Bankr. D. Mass. June 27, 2003) (holding that debtor's purchase of additional directors and officers liability insurance when the estate had "potential risks of liability" and "the fees that might be incurred by estate professionals in litigating any uninsured claims or objecting to indemnification claims, could likely exceed" the cost of the policy was within the debtor's sound business judgment pursuant to § 363(b)(1)). Here, the Debtors' request to make payments on the Critical Vendor Claims satisfies this standard because the uninterrupted supply of goods and services, on Customary Trade Terms, and the continuing support of their vendors, are imperative to the ongoing operations and viability of the Debtors.

23.     The Debtors' request to pay the Critical Vendor Claims easily meets the applicable standard because the failure to satisfy such obligations could have a significant negative impact on the day-to-day operations of the Debtors' businesses as well as its viability as a going concern. Uninterrupted relationships with the Critical Vendors is imperative to the Debtors' continued operation and ability to reorganize.

24.     Courts in this district have routinely granted similar relief in other complex chapter 11 cases. See, e.g., In re Republic Airways Holdings Inc., No. 16-10429 (SHL) (Bankr.

- 10 -

S.D.N.Y. Mar. 23, 2016) [Docket No. 201]; In re Primorsk Int'l Shipping Ltd., No. 16-10073

(MG) (Bankr. S.D.N.Y. Jan. 21, 2016) [Docket No. 36]; In re Relativity Fashion, LLC, No. 15-

11989 (MEW) (Bankr. S.D.N.Y. Aug. 27, 2015) [Docket No. 334]; In re Chassix Holdings, Inc.,

No. 15-10578 (MEW) (Bankr. S.D.N.Y. Apr. 14, 2015) [Docket No. 276]; In re SIGA Techs.,

Inc., No. 14-12623 (SHL) (Bankr. S.D.N.Y. Oct. 28, 2014) [Docket No. 93]; In re ConnectEdu,

Inc., No. 14-11238 (SCC) (Bankr. S.D.N.Y. May 27, 2014) [Docket No. 131]; In re MPM

Silicones, LLC, No. 14-22503 (RDD) (Bankr. S.D.N.Y. May 16, 2014) [Docket No. 218]; In re

RDA Holding Co., No. 13-22233 (RDD) (Bankr. S.D.N.Y. Mar. 25, 2013) [Docket No. 171]; In

re Atari, Inc., No. 13-10176 (JLG) (Bankr. S.D.N.Y. Jan. 25, 2013) [Docket No. 37].

## This Court May Authorize Payment of the Foreign Vendor Claims

25.    The relief requested herein with respect to the Foreign Vendor Claims is also

appropriate and warranted under each of the above-described standards as the payment of the

Foreign Vendor Claims is essential to assure that Kinja continues to receive goods and services

necessary for the uninterrupted operation of the Debtors' business.

26.    Additionally, this Court's jurisdiction over the Foreign Vendors may be limited,

notwithstanding that section 362 of the Bankruptcy Code provides that the filing of a chapter 11

petition "operates as a stay, applicable to all entities," with respect to creditor remedies. For

example, if a Foreign Vendor lacks assets within the United States, that would otherwise be

available to satisfy a judgment entered by the Court if such entities were to violate the automatic

stay or take any actions contrary to an order of this Court, the Court as a practical matter may be

unable to prevent such Foreign Vendors from violating the automatic stay by pursuing remedies

against the Debtors' property located outside of the United States if they are not timely paid.

See, e.g., In re Aerovias Nacionales de Columbia S.A. Avianca, 303 B.R. 1, 6 (Bankr. S.D.N.Y.

2003) (rationale for foreign vendor motions is the uncertain extraterritorial reach of the automatic stay.  As a result, the Foreign Vendors may decline to provide the necessary services to Kinja, thereby disrupting the Debtors' operations.

27.    Courts in this district have granted authorization for chapter 11 debtors to pay claims owing to foreign entities against which the automatic stay cannot be readily enforced in the United States, and as to which it would be unduly time-consuming and expensive to seek to enforce an order of the bankruptcy court in the creditor's home country. See, e.g., In re RDA Holding Co., Case No. 13-22233 (RDD) (Bankr. S.D.N.Y. Mar. 25, 2013); In re Eastman Kodak Company, Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 15, 2012); In re AMR Corp., Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Dec. 23, 2011); In re Chemtura Corp., Case No. 09-11233 (REG) (Bankr. S.D.N.Y. Apr. 13, 2009); In re Lyondell Chem. Co., Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Jan. 23, 2009); In re Frontier Airlines Holdings, Inc., Case No. 08-11298 (RDD) (Bankr. S.D.N.Y. May 15, 2008).

### Payment of the Critical Vendor Claims and Foreign Vendor Claims Is Necessary

28.    The relief sought in this Motion is vital for the Debtors' successful reorganization. The Debtors submit that good relations with the Critical Vendors and Foreign Vendors are essential to the continued operation of their businesses during the pendency of these chapter 11 cases.  Absent the relief requested herein, some suppliers may simply choose to provide their services to other buyers that can pay them immediately, and an interruption of the supply of goods and services will adversely impact the ability of the Debtors' ongoing business operations. Consequently, payments to suppliers are necessary to successfully reorganize the Debtors.

29.    Furthermore, if suppliers agree to continue supplying goods and services the Debtors postpetition under the Customary Trade Terms or such other trade terms as are agreed to

by the Debtors and such supplier, the Debtors will avoid unnecessary expense during these chapter 11 cases.  Such trade terms will help the Debtors maintain their liquidity and will facilitate their ability to sustain operations.  Such terms will also allow the Debtors to avoid the inherent operational inefficiencies and perturbations of paying cash on demand and managing billing processes for numerous vendors that may require cash in advance or choose to shorten their trade terms.

30.    Finally, paying the Critical Vendor Claims minimizes disruption to the Debtors' operations and enables the Debtors to operate smoothly during these chapter 11 cases.  Such relief enables the Debtors to focus on consummating a sale for the benefit of their estates and their creditors.  Under these circumstances, approval of the requested relief is necessary and appropriate.

## Reservation of Rights

31.    Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors, a waiver of the Debtors' or any other party's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their right to contest any claim related to the relief sought herein.  If this Court grants the relief sought herein, any payment made pursuant to this Court's order is not intended and should not be construed as an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights subsequently dispute such claim.

## The Requirements of Bankruptcy Rule 6003 Have Been Satisfied

1.    Bankruptcy Rule 6003 empowers this Court to grant relief within the first 21 days after the Petition Date to the extent that such relief is "necessary to avoid immediate and

irreparable harm." Fed. R. Bankr. P. 6003(b).  For reasons stated herein, the Debtors submits that the requested relief is necessary and appropriate, is in the best interests of its estate and creditors, and should be granted promptly in all respects to avoid immediate and irreparable harm to the Debtors' estate, notwithstanding the 21-day period provided in Bankruptcy Rule 6003.

### **Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

2.      To implement the foregoing successfully, the Debtors request that the Court enter an order waiving the notice requirements of Bankruptcy Rule 6004(a) and finding that the Debtors have established cause to exclude such relief from any stay imposed by Bankruptcy Rule 6004(h).

### **Notice**

3.      Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the Southern District of New York; (ii) the 50 largest unsecured creditors of the Debtors (on a consolidated basis); (iii) counsel to the First Lien Lenders; (iv) counsel to the Second Lien Lenders; (v) the Internal Revenue Service; and (vi) the United States Attorney for the Southern District of New York.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

### **No Prior Request**

4.      No prior motion for the relief requested herein has been made to this or any other court.

56767635_13

WHEREFORE, the Debtors respectfully request that the Court enters an order, substantially in the form attached hereto as Exhibit A and, after the final hearing on the relief requested hearing, entry of an order, substantially in the form attached hereto as Exhibit B, and granting related relief as is just and proper.


Dated: June 12, 2016
       New York, New York


                                        /s/ Gregg M. Galardi
                                        ROPES & GRAY LLP
                                        Gregg M. Galardi
                                        Jonathan P. Gill
                                        Kristina K. Alexander
                                        Stacy A. Dasaro
                                        1211 Avenue of the Americas
                                        New York, NY 10036-8704
                                        Telephone: (212) 596-9000
                                        Facsimile: (212) 596-9090
                                        gregg.galardi@ropesgray.com
                                        jonathan.gill@ropesgray.com
                                        kristina.alexander@ropesgray.com
                                        stacy.dasaro@ropesgray.com


                                        *Proposed Counsel to the Debtors and
                                        Debtors in Possession*

- 15 -

**Schedule 1**

**Critical Vendor Categories**

| Category of Vendor | Nature of Services | Approximate Amount To Be Paid on Interim Basis | Total Approximate Amount Owed as of Petition Date |
|---|---|---|---|
| Advertising Operations | Vendors involved in the process of serving and collecting data for advertising campaigns. Vendors enable the Debtors to deliver on advertising campaigns and determine the appropriate amount of revenue earned by each customer.  Vendor services also include providing campaign and site-level analytics, allowing the Debtors to deliver information and insights to advertisers | $40,000 | $190,000 |
| IT & Hosting | Information technology vendors that ensure the Debtors websites, platforms, and internal technology systems are running with no interruption | $47,000 | $107,000 |
| Editorial Expenses | Ancillary expenses relating to vendors that allow the Debtors' editorial department to create quality content for publication | $2,000 | $12,000 |
| Specialized Campaign Vendors | Vendors with specialized skillsets not available in-house that produce custom work related to specific advertising campaigns for customers | $3,000 | $43,000 |
| General and Administrative | Vendors providing general and administrative goods and services required to ensure no interruption to the day-to-day operations of the Debtors | $3,000 | $13,000 |
| **Total** | | **$95,000** | **$365,000** |

## **Exhibit A**

Proposed Interim Order

56767635_13

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x
                             :

In re                          :        Chapter 11

                             :

Gawker Media LLC. *et al.*,[1]     :        Case No. 16-11700 (SMB)

                             :

           Debtors.      :        (Joint Administration Requested)

                             :

----------------------------------------------------x

## INTERIM ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS AND FOREIGN VENDORS

Upon the motion (the "Motion")[2] of the above-captioned debtors (the "Debtors"), for entry of an order (this "Order") authorizing, but not directing, the Debtors to pay certain prepetition Critical Vendor Claims and Foreign Vendor Claims and to continue paying the Critical Vendors and Foreign Vendors in the ordinary course of business; and upon the First Day Declaration; and this Court having found that it has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334; and this Court having found that the Motion is a core proceeding pursuant to  28 U.S.C. § 157(b); and this Court having found that venue of these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. § 1408 and 1409; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation and sufficient cause appearing therefore, it is hereby

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**ORDERED, THAT:**

1.        The Motion is GRANTED on an interim basis to the extent set forth herein.

2.        The Debtors are authorized, but not directed, to pay all or part of the Critical Vendor Claims identified on Schedule 1 to the Motion ("Schedule 1") in an aggregate amount not to exceed $95,000, as payment on such Critical Vendor claims becomes due; provided that the Debtors are authorized to amend Schedule 1 and to pay other Critical Vendor Claims not reflected on Schedule 1 in their good faith business judgment, as long as such Critical Vendor Claim satisfies the requirements of any order of this Court, the Bankruptcy Rules, the Bankruptcy Code, and the Local Rules.

3.        The Debtors are authorized to reallocate the amounts payable among the categories of Critical Vendors set forth on Schedule 1, provided that the Debtors will not pay any prepetition Critical Vendor Claims above the aggregate capped maximum of $95,000 absent further order of this Court.

4.        The Debtors are authorized, but not directed, in their good faith business judgment, to condition the payment of a Critical Vendor Claim on the agreement of each Affected Creditor to continue supplying goods and/or services to the Debtors (a) on Customary Trade Terms or (b) such other trade terms as are agreed to by the Debtors and such Affected Creditor.

5.        If an Affected Creditor ceases to honor Customary Trade Terms, or such other trade terms as are agreed to with the Debtors, any payment of a Critical Vendor Claim made to such Affected Creditor shall be deemed an avoidable postpetition transfer under section 549 of the Bankruptcy Code, recoverable by the Debtors in cash upon written request.  Upon any such recovery, the claim for which such payment initially was made shall be deemed to be reinstated

as a prepetition claim in the amount so recovered.  If an Affected Creditor refuses to

acknowledge such recharacterization and to make the requested repayment, the Debtors are

authorized, but not directed, to compel such recharacterization and repayment by motion on such

notice as is required by this Court or by the Local Rules.

6.      The Debtors are authorized, but not directed, to pay all or part of the Foreign

Vendor Claims in an aggregate amount not to exceed $20,000, as such Foreign Vendor Claims

become due.

7.      All banks and other financial institutions on which checks were drawn or

electronic payment requests were made in connection with the payments approved by this

Interim Order are authorized and directed to (i) receive, process, honor, and pay all such checks

and electronic payment requests when presented for payment (assuming that sufficient funds are

then available in the Debtors' bank accounts to cover such payments) and (ii) rely on the

Debtors' designation of any particular check or electronic payment request as approved by this

Interim Order.  The Debtors are authorized to reissue checks, wire transfers, automated clearing

house payments, electronic payments, or other similar methods of payment for all payments

approved by this Interim Order where such method of payment has been dishonored postpetition.

8.      Notwithstanding the relief granted herein and any actions taken pursuant to such

relief, nothing in this Order shall be deemed: (i) an admission as to the validity or priority of any

claim against the Debtors; (ii) a waiver of the Debtors' right to dispute any claim on any

grounds; (iii) a promise or requirement to pay any claim; (iv) an implication or admission that

any particular claim is of a type specified or defined in this Order or the Motion (including any

exhibits attached thereto); (v) a request or authorization to assume any agreement, contract, or

lease pursuant to section 365 of the Bankruptcy Code; (vi) a waiver of the Debtors' rights under

the Bankruptcy Code or any other applicable law; or (vii) to create any rights in favor of, or enhance the status of, any claim held by any person or entity.

9.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

10.     The requirements of Bankruptcy Rule 6004(a) are hereby waived.

11.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

13.     A final hearing on the relief requested in the Motion shall be set for _____, 2016 at _____ (Prevailing Eastern Time) and any objections or responses to the Motion shall be in writing, filed with the Court and served upon (i) proposed counsel for the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036, Attn: Gregg M. Galardi (gregg.galardi@ropesgray.com); (ii) the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Greg Zipes and Susan Arbeit; (iii) attorneys for any statutory committee of unsecured creditors appointed in these chapter 11 cases; (iv) counsel to Silicon Valley Bank, Riemer & Braunstein, LLP, 3 Center Plaza, Boston, MA 02108, Attn: Alexander Rheaume (ARheaume@riemerlaw.com); and (v) counsel to US VC Partners LP, Latham & Watkins, 355 South Grand Ave., Los Angeles, CA 90071, Attn: Mark O. Morris (mark.morris@lw.com); in each case so as to be received no later than 4:00 p.m. (Prevailing Eastern Time) on _____, 2016.

-4-

14.     The Court shall retain jurisdiction with respect to any and all matters arising from

or relating to the implementation or interpretation of this Interim Order.


Dated: _____, 2016
           New York, New York


_____

UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

Proposed Final Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------x
                                 :

In re                            :          Chapter 11
                                 :

Gawker Media LLC, *et al.*,[1]      :          Case No. 16-11700 (SMB)
                                 :

              Debtors.       :          (Joint Administration Requested)
                                 :
---------------------------------------------------x

## FINAL ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS AND FOREIGN VENDORS

Upon the motion (the "Motion")[2] of the above-captioned debtors (the "Debtors"), for

entry of an order (this "Order") authorizing, but not directing, the Debtors to pay certain

prepetition Critical Vendor Claims and Foreign Vendor Claims and to continue paying the

Critical Vendors and Foreign Vendors in the ordinary course of business; and upon the First Day

Declaration; and this Court having found that it has jurisdiction to consider the Motion pursuant

to 28 U.S.C. § 1334; and this Court having found that the Motion is a core proceeding pursuant

to  28 U.S.C. § 157(b); and this Court having found that venue of these Chapter 11 Cases and the

Motion in this district is proper pursuant to 28 U.S.C. § 1408; and this Court having determined

that the relief requested in the Motion is in the best interests of the Debtors, their estates, their

creditors, and other parties in interest; and it appearing that proper and adequate notice of the

Motion has been given and that no other or further notice is necessary; and the Court having

agreed on an interim order on the Motion on _____; and the Court having held a final hearing

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

- 1 -

on the Motion on _____, 2016; and after due deliberation and sufficient cause appearing

therefore, it is hereby

**ORDERED, THAT:**

1.        The Motion is GRANTED to the extent set forth herein.

2.        The Debtors are authorized, but not directed, to pay all or part of the Critical

Vendor Claims identified on Schedule 1 to the Motion ("Schedule 1") in an aggregate amount

not to exceed $365,000, as such Critical Vendor Claims become due; provided that the Debtors

are authorized to amend Schedule 1 and to pay other Critical Vendor Claims not reflected on

Schedule 1 in their good faith business judgment, as long as such Critical Vendor Claim satisfies

the requirements of any order of this Court, the Bankruptcy Rules, the Bankruptcy Code, and the

Local Rules.

3.        The Debtors are authorized to reallocate the amounts payable among the

categories of Critical Vendors set forth on Schedule 1, provided that the Debtors will not pay any

prepetition Critical Vendor Claims above the aggregate capped maximum of $365,000 absent

further order of this Court.

4.        The Debtors are authorized, but not directed, in their good faith business

judgment, to condition the payment of a Critical Vendor Claim on the agreement of each

Affected Creditor to continue supplying goods and/or services to the Debtors (a) on Customary

Trade Terms or (b) such other trade terms as are agreed to by the Debtors and such Affected

Creditor.

5.        If an Affected Creditor ceases to honor Customary Trade Terms, or such other

trade terms as are agreed to with the Debtors, any payment of a Critical Vendor Claim made to

such Affected Creditor shall be deemed an avoidable postpetition transfer under section 549 of

the Bankruptcy Code, recoverable by the Debtors in cash upon written request.  Upon any such

recovery, the claim for which such payment initially was made shall be deemed to be reinstated

as a prepetition claim in the amount so recovered.  If an Affected Creditor refuses to

acknowledge such recharacterization and to make the requested repayment, the Debtors are

authorized, but not directed, to compel such recharacterization and repayment by motion on such

notice as is required by this Court or by the Local Rules.

6.      The Debtors are authorized, but not directed, to pay all or part of the Foreign

Vendor Claims in an aggregate amount not to exceed $20,000, as such Foreign Vendor Claims

become due.

7.      All banks and other financial institutions on which checks were drawn or

electronic payment requests were made in connection with the payments approved by this Final

Order are authorized and directed to (i) receive, process, honor, and pay all such checks and

electronic payment requests when presented for payment (assuming that sufficient funds are then

available in the Debtors' bank accounts to cover such payments) and (ii) rely on the Debtors'

designation of any particular check or electronic payment request as approved by this Final

Order.  The Debtors are authorized to reissue checks, wire transfers, automated clearing house

payments, electronic payments, or other similar methods of payment for all payments approved

by this Order where such method of payment has been dishonored postpetition.

8.      Notwithstanding the relief granted herein and any actions taken pursuant to such

relief, nothing in this Order shall be deemed: (i) an admission as to the validity or priority of any

claim against the Debtors; (ii) a waiver of the Debtors' right to dispute any claim on any

grounds; (iii) a promise or requirement to pay any claim; (iv) an implication or admission that

any particular claim is of a type specified or defined in this Final Order or the Motion (including

- 3 -

any exhibits attached thereto); (v) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (vi) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (vii) to create any rights in favor of, or enhance the status of, any claim held by any person or entity.

9.      The requirements of Bankruptcy Rule 6004(a) are hereby waived.

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

11.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.

12.     The Court shall retain jurisdiction with respect to any and all matters arising from or relating to the implementation or interpretation of this Final Order.


Dated: _____, 2016
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

- 4 -