Ropes & Gray LLP
Gregg M. Galardi
Jonathan P. Gill
Kristina K. Alexander
Stacy A. Dasaro
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
                                                       :
In re                                                  :     Chapter 11
                                                       :
Gawker Media LLC, *et al.*,[1]                          :     Case No. 16-11700 (SMB)
                                                       :
                    Debtors.                           :     (Joint Administration Requested)
                                                       :
-------------------------------------------------------x

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS
TO (A) CONTINUE INSURANCE COVERAGE ENTERED INTO
PREPETITION, (B) RENEW OR PURCHASE NEW INSURANCE POLICIES
IN THE ORDINARY COURSE OF BUSINESS, AND
(C) PAY ALL PREPETITION OBLIGATIONS RELATING THERETO**

Gawker Media LLC ("Gawker Media"), Gawker Media Group, Inc. ("GMGI"), and

Kinja Kft. ("Kinja"), debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "Debtors"), respectfully submit this motion (the "Motion") for entry of an order

(the "Proposed Order"), substantially in the forms attached hereto as Exhibit A (the "Proposed

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

Interim Order") and Exhibit B (the "Proposed Final Order"), authorizing, but not directing, the

Debtors to (a) continue insurance coverage entered into prepetition (the "Insurance Policies"),

including, but not limited to, those policies identified on Exhibit C attached hereto; (b) renew or

purchase new insurance policies in the ordinary course of business and pay any related expenses;

and (c) pay all prepetition obligations, including deductibles, relating thereto.  In support of the

Motion, the Debtors hereby incorporate by reference the *Declaration of William D. Holden in*

*Support of First Day Motions* (the "First Day Declaration"), filed concurrently herewith.[2]  In

further support of the Motion, the Debtors, by and through their undersigned proposed counsel,

respectfully represent as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 363(b) and

503 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003(b), 6004(a),

and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the First Day
Declaration.

## Procedural Background

4.      On June 10, 2016, Gawker Media filed a voluntary petition for relief under

chapter 11 of the Bankruptcy Code.   On the date hereof, GMGI and Kinja each filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtors are operating their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

6.      No official committee of unsecured creditors, nor any trustee or examiner, has

been appointed in these cases.

7.      The factual background regarding the Debtors, their business operations, their

capital and debt structure, and the events leading up to the filing of these chapter 11 cases are set

forth in detail in the First Day Declaration.

## Relief Requested

8.      In connection with the day-to-day operations of its business, the Debtors maintain

various insurance programs and related Insurance Policies through several different insurance

carriers (the "Insurers").

9.      In the ordinary course of business, the Debtors maintain nine Insurance Policies

covering a variety of matters including, without limitation, general commercial liability

insurance, non-owned and hired automobile insurance, errors and omissions insurance, directors

and officers insurance, and employment practices insurance.  The Debtors are required to pay

premiums under the Insurance Policies (the "Premiums"), based on a rate established and billed

by each Insurer.  The Premiums total approximately $342,000 on an annual basis.

10.      Gawker Media typically obtains its Insurance Policies through its insurance

broker, Dewitt Stern Group, Inc. ("Dewitt Stern"), except for its worker's compensation

insurance policy, which it obtains through another broker, USI ("USI").  Kinja obtains its

insurance policies through ERIX Biztosítási Alkusz és tanácsadó Kft. ("ERIX" together with

Dewitt Stern and USI, the "Brokers").  The Brokers assists the Debtors with obtaining insurance

coverage by negotiating and procuring the Insurance Policies, so that the Debtors obtain the

Insurance Policies on favorable terms and at competitive rates.  The Debtors pay the Brokers a

fee based on the total premiums for the Insurance Policies that the Broker procures.[3]

11.    The Debtors pay the premiums for the Insurance Policies on an annual basis, as

set forth in Exhibit C hereto.

12.    As of the Petition Date, the Debtors owe approximately $114,330 in outstanding

Premiums.

13.    Approximately $20,216.73 in outstanding amounts owed to Insurers will become

due within the next thirty days.

14.    Under certain Insurance Policies, the Debtors are also required to pay insurance

claim deductibles depending upon the type of claim asserted and Insurance Policy involved.  As

of the Petition Date, approximately no money is owed on account of deductibles owed, but not

yet paid, to insurers for claims made against the Insurance Policies.

15.    The Debtors have filed this Motion to seek authority to continue to honor any

amounts that may be due, or that may become due in the ordinary course of business in

connection with the Insurance Policies, including any fees owed to the Broker, deductibles, or

---

[3] Over the past twelve months, the Debtors have paid approximately $38,652.07 to Dewitt Stern.  As of the Petition
Date, the Debtors do not believe any amounts are due and owing to the Dewitt Stern, USI, or ERIX.  ERIX receives
state-regulated commissions directly from the insurance companies.  The Debtors seek to continue paying any fees
due to the Brokers in the ordinary course of business.

4

any other taxes and fees and to renew, revise, extend, supplement, change or enter into new

insurance coverage and insurance premium financing as needed in its business judgment.

**Basis for Relief**

**A.      Maintenance of Insurance Coverage and Satisfaction of Insurance Obligations Is Appropriate Under the Bankruptcy Code.**

16.      Section 503(b)(1)(A) of the Bankruptcy Code provides that "After notice and a

hearing, there shall be allowed, administrative expenses[,] including . . . the actual, necessary

costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1)(A).  The Court, therefore,

can authorize the Debtors to use estate funds to pay any obligations under the Insurance Policies

arising during or relating to the postpetition period.

17.      Additionally, section 363(c) of the Bankruptcy Code authorizes a debtor-in-

possession operating its business pursuant to section 1108 of the Bankruptcy Code to use

property of the estate in the ordinary course of business without notice or a hearing.  See 11

U.S.C. § 363(c)(1).  The Debtors submit that maintaining, continuing, renewing, replacing,

implementing new, and/or terminating its Insurance Policies, and paying any amounts owing and

accruing postpetition thereunder and in connection therewith, including brokerage fees and

deductibles, in the ordinary course of business, is permitted by section 363(c) of the Bankruptcy

Code without further application to the Court.

18.      Even if maintaining and continuing the Insurance Policies were not in the

Debtors' ordinary course of business, this Court nonetheless has statutory authority under section

363(b)(1) of the Bankruptcy Code to authorize the use of estate assets outside the ordinary

course of business.  See 11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing, may use,

sell, or lease, other than in the ordinary course of business, property of the estate . . . .").  In

determining whether to authorize the use, sale, or lease of property of the estate under section

5

363(b), courts require a debtor to show that a sound business purpose justifies such actions.  See

Official Comm. of Unsecured Creditors v. Enron Corp. (In re Enron Corp.), 335 B.R. 22, 27-28

(S.D.N.Y. 2005).  For the reasons discussed herein, sound business reasons exist to support

granting the relief requested by this Motion.

19.     In the instant case, it is critical that the Debtors continue the Insurance Policies in

full force and effect.  The Insurance Policies provide a comprehensive range of coverage for the

Debtors' employees, businesses, and property.  If the Insurance Policies were allowed to lapse,

the Debtors could be exposed to substantial liability for any damage resulting to persons and

property of the Debtors and others.  Failure to maintain the Insurance Policies, therefore, would

be detrimental to the Debtors' reorganization efforts and adversely affect the value of their

estates by exposing them to unnecessary risks of loss.

20.     In addition, the Debtors are required by the regulations, laws, and contracts that

govern their commercial activities to carry the Insurance Policies.  The Operating Guidelines of

the Office of the United States Trustee for New York require that debtors maintain insurance.

See U.S. Department of Justice, Office of the United States Trustee for Region 2, Operating

Guidelines and Reporting Requirements for Debtors in Possession and Trustees, at 3.[4]  The

Debtors' failure to maintain appropriate and uninterrupted insurance coverage could constitute

grounds for conversion or dismissal of this Chapter 11 Case.  See 11 U.S.C. § 1112(b)(4)(C).

---

[4] The Operating Guidelines provide that a debtor must maintain, where appropriate, among other things, general
comprehensive liability, director and officer, and other coverage that is "customary or prudent in the debtor's
business, or required by law."

56714494_14

**B.     The Payment of Prepetition Obligations Relating to the Insurance Policies Is Necessary to Ensure Continued and Uninterrupted Coverage**

21.     The Debtors also seek authority to pay any unpaid premiums and other charges arising under, and related to, the Insurance Policies and to perform any other obligations owed in connection with the Insurance Policies, including deductibles, brokerage fees, and any other obligations that may have arisen prepetition, as are reasonably necessary to maintain the Insurance Policies (and as such obligations may become known).

22.     It is essential that the Debtors are authorized to make these payments without delay to avoid cancellation, default, alteration, assignment, attachment, lapse, or any other form of impairment to the coverage, benefits, or proceeds provided under any Insurance Policy.  Any lapse in insurance coverage for failure to pay prepetition obligations or honor obligations coming due during the chapter 11 case could expose the Debtors to substantial liability for damages and negatively impact the Debtors' ability to wind down its business.  Moreover, in such circumstances, the Debtors may be required to obtain replacement policies on an expedited basis at a significant cost to their estates.

23.     Section 105(a) of the Bankruptcy Code empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  This equitable power is granted to effect the policies and goals of chapter 11 reorganization, which are to rehabilitate the debtor, see In re Ionosphere Clubs, Inc., 98 B.R. 174, 176-77 (Bankr. S.D.N.Y. 1989), and to "create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately." Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 287 (S.D.N.Y. 1987); see also In re Structurlite Plastics Corp., 86 B.R. 922, 932 (Bankr. S.D. Ohio 1998) (rejecting a bright line rule prohibiting payment of

7

prepetition debts because it "may well be too inflexible to permit the effectuation of the

rehabilitative purposes of the Code").

24.     Under the "doctrine of necessity" or "necessity of payment" rule, first articulated

in Miltenberger v. Logansport, C. & S. W. R. Co., 106 U.S. 286 (1882), bankruptcy courts can

exercise these equitable powers "to authorize a debtor in a reorganization case to pay pre-petition

claims where such payment is essential to the continued operation of the debtor."  In re

Ionosphere Clubs, 98 B.R. at 176; see also Official Comm. of Unsecured Creditors of Motor

Coach Indus. Int'l, Inc. v. Motor Coach Indus. Int'l, Inc. (In re Motor Coach Indus. Int'l, Inc.),

Civ. No. 09-078-SLR, 2009 WL 330993, at *3 n.5 (D. Del. Feb. 10, 2009) ("The doctrine of

necessity or necessity of payment doctrine is a general rubric for the proposition that a court can

authorize the payment of prepetition claims if such payment is essential to the continued

operation of the debtor.") (internal quotation marks omitted); In re Fin. News Network, Inc., 134

B.R. 732, 735-36 (Bankr. S.D.N.Y. 1991) (observing that the doctrine of necessity "stands for

the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations

where such payments are critical to the debtor's reorganization"); In re Chateaugay Corp., 80

B.R. at 287 (payment of prepetition workers compensation claims would permit greatest

likelihood of debtor's survival).

25.     While section 105(a) alone is sufficient, see In re Ionosphere Clubs, 98 B.R. at

176, other courts have applied it in conjunction with sections 1107(a) and 362(d) to allow

payment of prepetition claims under the doctrine of necessity.  See J.M. Blanco, Inc. v. PMC

Mktg. Corp., Civil No. 09-1781(GAG), 2009 WL 5184458, at *5 (D.P.R., Dec. 22, 2009)

(holding that "pursuant to the debtor in possession's role as the equivalent of a trustee, the

bankruptcy court is authorized to use its equitable powers under section 105(a) in aid of

preservation or enhancement of the estate" by allowing the prepetition payment of a trade

creditor's non-priority, general unsecured claim); In re CoServ, L.L.C., 273 B.R. 487, 496

(Bankr. N.D. Tex. 2002) (holding that there are occasions when the debtor in possession's

fiduciary duty to protect and preserve the estate "can only be fulfilled by the preplan satisfaction

of a prepetition claim").

26.    Many courts have authorized debtors to pay critical prepetition claims pursuant to

the doctrine of necessity, including claims that are not accorded priority in section 507 of the

Bankruptcy Code.  For example, in In re Just for Feet, Inc., the Delaware District Court

authorized the debtor to pay prepetition claims of certain trade vendors because they were

"essential to the survival of the debtor during the chapter 11 reorganization," stating that "[t]he

Supreme Court, the Third Circuit, and the District of Delaware all recognize the court's power

[under section 105(a)] to authorize payment of pre-petition claims when such payment is

necessary for the debtor's survival during chapter 11." 242 B.R. 821, 825-26 (D. Del. 1999); see

also In re Congoleum Corp., 362 B.R. 198, 203 (Bankr. D.N.J. 2007) (noting that the court

allowed the debtors to pay prepetition trade debt to critical vendors under the doctrine of

necessity); In re Mirant Corp., 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (setting procedural

rules to authorize the debtor to pay "critical" creditors outside of a confirmed plan without

advance court approval); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio

1991) (authorizing the debtor, an automobile part supplier, to pay prepetition obligations to its

toolmakers because the payments were "necessary to avert a serious threat to the Chapter 11

process").

27.    Courts are also empowered to authorize debtors to pay prepetition claims under

section 363(b)(1), which provides that "[t]he trustee, after notice and a hearing, may use, sell, or

lease, other than in the ordinary course of business, property of the estate." 11 U.S.C.

§ 363(b)(1). This section gives the court "broad flexibility in tailoring its orders to meet a wide

variety of circumstances." In re Ionosphere Clubs, 98 B.R. at 175. Before the court can apply

section 363(b) in its favor, the debtor must "articulate some business justification, other than

mere appeasement of major creditors." Id. (finding that the debtor gave "sound business reasons

for its decision to pay pre-petition wages," those reasons being that it was necessary to "preserve

and protect its business and ultimately reorganize, retain its currently working employees and

maintain positive employee morale"); see also In re New Bedford Capacitor, Inc., No. 01-14680-

JNF, 2003 WL 25889620, at *5 (Bankr. D. Mass. June 27, 2003) (holding that debtor's purchase

of additional directors and officers liability insurance when the estate had "potential risks of

liability" and "the fees that might be incurred by estate professionals in litigating any uninsured

claims or objecting to indemnification claims, could likely exceed" the cost of the policy was

within the debtor's sound business judgment pursuant to § 363(b)(1)). Here, the Debtors'

request to pay prepetition amounts related to the Insurance Policies satisfies this standard

because the failure to do so could have a material adverse impact on the Debtors' day-to-day

operations, which would, in turn, hinder the Debtors' restructuring.

28.      The relief requested in this Motion is commonly granted in chapter 11 cases in

this district and elsewhere. See, e.g., In re Sabine Oil & Gas Corp., Case No. 15-11835 (SCC)

(Bankr. S.D.N.Y. Aug. 10, 2015) [Docket No. 157];   In re dELiA*s, Inc., Case No. 14-23678

(RDD) (Bankr. S.D.N.Y. Dec. 24, 2014) [Docket No. 101]; In re MPM Silicones, LLC, Case No.

14-22503 (RDD) (Bankr. S.D.N.Y. May 16, 2014) [Docket No. 212]; In re TBS Shipping Servs.

Inc., Case No. 12-22224 (RDD) (Bankr. S.D.N.Y. Feb. 28, 2012) [Docket No. 82]; In re Eastman

Kodak Co., Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 15, 2012) [Docket No. 361].

Based on the foregoing, the Debtors submit that the requested relief is necessary and appropriate, is in the best interests of their estates and creditors, and should be granted in all respects.

## Reservation of Rights

29.     Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors, a waiver of the Debtors' or any other party's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their right to contest any claim related to the relief sought herein.  If this Court grants the relief sought herein, any payment made pursuant to this Court's order is not intended and should not be construed as an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights subsequently dispute such claim.

## The Requirements of Bankruptcy Rule 6003 Have Been Satisfied

30.     Bankruptcy Rule 6003 empowers this Court to grant relief within the first 21 days after the Petition Date to the extent that such relief is "necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b).  For reasons stated herein, the Debtors submits that the requested relief is necessary and appropriate, is in the best interests of its estate and creditors, and should be granted promptly in all respects to avoid immediate and irreparable harm to the Debtors' estate, notwithstanding the 21-day period provided in Bankruptcy Rule 6003.

56714494_14

## **Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

31.     To implement the foregoing successfully, the Debtors request that the Court enter an order waiving the notice requirements of Bankruptcy Rule 6004(a) and finding that the Debtors have established cause to exclude such relief from any stay imposed by Bankruptcy Rule 6004(h).

## **Notice**

32.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the Southern District of New York; (ii) the 50 largest unsecured creditors of the Debtors (on a consolidated basis); (iii) counsel to the First Lien Lender; (iv) counsel to the Second Lien Lender; (v) the Internal Revenue Service; and (vii) the United States Attorney for the Southern District of New York; and (vii) the Insurers and Brokers.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## **No Prior Request**

33.     No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, The Debtors respectfully request that the Court enter orders, substantially in the forms annexed hereto as Exhibit A and Exhibit B, authorizing the Debtor to (a) continue insurance coverage entered into prepetition including, but not limited to, those policies identified on Exhibit C attached hereto, (b) renew or purchase new insurance policies in the ordinary course of business and pay any related expenses, including broker's fees, (c) pay all prepetition obligations, including deductibles, relating thereto, and (d) granting such other and further relief as this Court deems just and appropriate under the circumstances.

Dated: June 12, 2016
     New York, New York


          */s/ Gregg. M. Galardi*
          ROPES & GRAY LLP
          Gregg M. Galardi
          Jonathan P. Gill
          Kristina K. Alexander
          Stacy A. Dasaro
          1211 Avenue of the Americas
          New York, NY 10036-8704
          Telephone: (212) 596-9000
          Facsimile: (212) 596-9090
          gregg.galardi@ropesgray.com
          jonathan.gill@ropesgray.com
          kristina.alexander@ropesgray.com
          stacy.dasaro@ropesgray.com


          *Proposed Counsel to the Debtors
          and Debtors in Possession*

56714494_14

**<u>Exhibit A</u>**

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x
                                          :
In re                                     :         Chapter 11
                                          :
Gawker Media LLC, *et al.*,[1]            :         Case No. 16-11700 (SMB)
                                          :
                  Debtors.                :         (Joint Administration Requested)
                                          :
----------------------------------------------------x

**INTERIM ORDER AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO
(A) CONTINUE INSURANCE COVERAGE ENTERED INTO PREPETITION,
(B) RENEW OR PURCHASE NEW INSURANCE POLICIES IN THE
ORDINARY COURSE OF BUSINESS, AND (C) PAY ALL
PREPETITION OBLIGATIONS RELATING THERETO**

Upon the motion (the "Motion")[2] of the above-captioned debtors (the "Debtors"), for

entry of an interim order (this "Interim Order") authorizing, but not directing, the Debtors to (a)

continue insurance coverage entered into prepetition, (b) renew or purchase new insurance

policies in the ordinary course of business, and (c) pay all prepetition obligations relating thereto;

and upon the First Day Declaration; and this Court having found that the Motion is a core

proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that venue of these

chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. § 1408; and this

Court having determined that the relief requested in the Motion is in the best interests of the

Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper

and adequate notice of the Motion has been given and that no other or further notice is necessary;

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011. Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

and this Court having reviewed the Motion and having heard statements in support of the Motion at a hearing held before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and the First Day Declaration and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation thereon and good and sufficient cause appear therefor, it is hereby

**ORDERED, THAT:**

1.      The Motion is GRANTED on an interim basis to the extent provided herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2016, at __:__ _m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2016, and shall be served on: (a) proposed counsel to the Debtors; (b) the Office of the United States Trustee for the Southern District of New York, Attn: Greg Zipes and Susan Arbeit; (c) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (d) counsel to the official committee of unsecured creditors (if any) appointed in these cases; (e) the First Lien Lender; (f) the Second Lien Lender.

3.      The Debtors are authorized, but not directed, to renew, revise, extend, supplement, change or enter into new insurance coverage and insurance premium financing as needed in its business judgment or purchase additional Insurance Policies as needed in the ordinary course of business, including, without limitation, those described in the Motion and Exhibit C to the Motion, on an interim basis, subject to consultation with any statutory committee appointed in these cases and the U.S. Trustee.

4.      The Debtors are authorized, but not directed, to pay, in their sole discretion, all

premiums, claims, deductibles, excess, retrospective adjustments, and all other obligations

arising under the Insurance Policies including those that (i) were due and payable or related to

the period before the Petition Date, and (ii) were due and payable after the Petition Date, on an

interim basis in an amount not to exceed $20,216.73.

5.      The Debtors are authorized and empowered to take all actions necessary to

implement the relief granted in this order.

6.      Notwithstanding the relief granted herein and any actions taken pursuant to such

relief, nothing in this Order shall be deemed: (i) an admission as to the validity or priority of any

claim against the Debtors; (ii) a waiver of the Debtors' right to dispute any claim on any

grounds; (iii) a promise or requirement to pay any claim; (iv) an implication or admission that

any particular claim is of a type specified or defined in this Interim Order or the Motion

(including any exhibits attached thereto); (v) a request or authorization to assume any agreement,

contract, or lease pursuant to section 365 of the Bankruptcy Code; (vi) a waiver of the Debtors'

rights under the Bankruptcy Code or any other applicable law; or (vii) to create any rights in

favor of, or enhance the status of, any claim held by any person or entity.

7.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

8.      Notice of the Motion satisfies the requirements set forth in Bankruptcy Rule

6004(a).

9.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this

Interim Order are immediately effective and enforceable upon its entry.

10.     The Court shall retain jurisdiction with respect to any and all matters arising from

or relating to the implementation or interpretation of this Interim Order.

Dated: _____, 2016
        New York, New York


_____
    UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Proposed Final Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x
                              :
In re                      :        Chapter 11
                      :
Gawker Media LLC, *et al.*,[1]    :        Case No. 16-11700 (SMB)
                      :
          Debtors.      :        (Joint Administration Requested)
                      :
---------------------------------------------------x

### FINAL ORDER AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO (A) CONTINUE INSURANCE COVERAGE ENTERED INTO PREPETITION, (B) RENEW OR PURCHASE NEW INSURANCE POLICIES IN THE ORDINARY COURSE OF BUSINESS, AND (C) PAY ALL <u>PREPETITION OBLIGATIONS RELATING THERETO</u>

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors (the "<u>Debtors</u>"), for

entry of a final order (this "<u>Final Order</u>") authorizing, but not directing, the Debtors to (a)

continue insurance coverage entered into prepetition, (b) renew or purchase new insurance

policies in the ordinary course of business, and (c) pay all prepetition obligations relating thereto;

and upon the First Day Declaration; and this Court having found that the Motion is a core

proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that venue of these

chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. § 1408; and this

Court having determined that the relief requested in the Motion is in the best interests of the

Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper

and adequate notice of the Motion has been given and that no other or further notice is necessary;

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

and this Court having reviewed the Motion and having heard statements in support of the Motion

at a hearing held before this Court (the "Hearing"); and this Court having determined that the

legal and factual bases set forth in the Motion and the First Day Declaration and at the Hearing

establish just cause for the relief granted herein; and any objections to the relief requested herein

having been withdrawn or overruled on the merits; and after due deliberation thereon and good

and sufficient cause appear therefor, it is hereby

**ORDERED, THAT:**

1.      The Motion is GRANTED on a final basis set forth herein.

2.      The Debtors are authorized, but not directed, in their good faith business

judgment, to maintain their Insurance Policies without interruption, on the same basis, and in

accordance with the same practices and procedures as were in effect prior to the Petition Date.

3.      The Debtors are authorized, but not directed, to pay brokerage fees due to the

Brokers under applicable agreements.

4.      The Debtors are authorized, but not directed, to renew, revise, extend,

supplement, change or enter into new insurance coverage and insurance premium financing as

needed in its business judgment or purchase additional Insurance Policies as needed in the

ordinary course of business, including, without limitation, those described in the Motion and

Exhibit C to the Motion.

5.      The Debtors are authorized, but not directed, to pay, in their sole discretion, all

premiums, claims, deductibles, excess, retrospective adjustments, and all other obligations

arising under the Insurance Policies including those that (i) were due and payable or related to

the period before the Petition Date, and (ii) were due and payable after the Petition Date.

6.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this order.

7.     Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (i) an admission as to the validity or priority of any claim against the Debtors; (ii) a waiver of the Debtors' right to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion (including any exhibits attached thereto); (v) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (vi) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (vii) to create any rights in favor of, or enhance the status of, any claim held by any person or entity.

8.     Notice of the Motion satisfies the requirements set forth in Bankruptcy Rule 6004(a).

9.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

10.    The Court shall retain jurisdiction with respect to any and all matters arising from or relating to the implementation or interpretation of this Order.

Dated: _____, 2016
          New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit C**

**List of the Debtors' Insurance Policies**

| Insurance Provider | Type of Plan | Insured | Policy Number | Policy Period | Total Annual Premium | Annual Premium & Financing Costs Outstanding |
|---|---|---|---|---|---|---|
| Federal Insurance Company | General Liability and Property Liability | GMGI and Gawker Media LLC | 7993-98-83 | 10/22/2015 – 10/22/2016 | $67,167.67 | N/A |
| Federal Insurance Company | Non-owned and Hired Auto | GMGI and Gawker Media LLC | 7993-98-84 | 10/22/2015 – 10/22/2016 | $1,750.00 | N/A |
| Federal Insurance Company | Commercial Excess and Umbrella | GMGI and Gawker Media LLC | 7993-98-85 | 10/22/2015 – 10/22/2016 | $6,347.00 | N/A |
| Hudson Insurance Company | Errors and Omissions | GMGI and any subsidiary | ELW112704 | 1/6/2016 – 1/6/2017 | $133,992.00 | $79,786.28 |
| AIG Europe Limited | Directors and Officers Liability | GMGI, its subsidiaries, any debtor-in-possession, and qualified directors, officers, employees, and other individuals | 33025154 | 8/5/2015 – 8/4/2016 | $47,070.50 | N/A |
| National Union Fire Insurance Co. of Pittsburgh, PA | Employment Practices Liability | Gawker Media LLC and subsidiaries as well as any debtor-in-possession | 33597057 | 1/1/2016 – 1/1/2017 | $27,118.00 | $16,022.17 |
| Hartford Casualty Insurance Company | Workers Compensation and Employers Liability Insurance | Gawker Media LLC | 16WEPI4357 | 12/31/15 – 12/31/16 | $55,980.00 | $18,521.60 |

| Insurance Provider | Type of Plan | Insured | Policy Number | Policy Period | Total Annual Premium | Annual Premium & Financing Costs Outstanding |
|---|---|---|---|---|---|---|
| Aegon Magyarország Zrt. | Property | Kinja Kft. and subsidiaries | 68638 | Indefinite from 12/19/2015 | $1,200 | N/A |
| Aegon Magyarország Zrt. | Liability | Kinja Kft. | 69433 | Indefinite from 2/11/2016 | $900 | N/A |