<u>**Exhibit A**</u>

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                             :

In re                            :        **Chapter 11**

                             :

**GAWKER MEDIA, LLC,** *et al.*,     :        **Case No. 16-11700 (SMB)**

                             :

          **Debtors.**[1]        :        **Jointly Administered**

                             :

---------------------------------------------------------x

## INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364 AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING INCURRENCE BY THE DEBTORS OF POSTPETITION SECURED INDEBTEDNESS, (II) GRANTING LIENS, (III) AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTORS AND PROVIDING FOR ADEQUATE PROTECTION, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) SCHEDULING A FINAL HEARING

Upon the motion, dated June 13, 2016 [*ECF No. __*] (the "Motion") by the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking, among other things, entry of an interim order (this "Interim Order"):

(i)        authorizing the Debtors, pursuant to sections 363, 364(c), and 364(d) of title 11 of the United States Code (the "Bankruptcy Code"), to (a) obtain postpetition financing of up to $22,000,000 (the "DIP Facility"), comprised of a $17,000,000 term loan and a $5,000,000 revolving credit facility, pursuant to (I) that certain Financing Agreement (as such agreement may be amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof, the "DIP Financing Agreement"), substantially in the form attached to the Motion as Exhibit B, by and among Gawker Media, LLC, as borrower

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows:  Gawker Media, LLC (3231), Gawker Media Group, Inc. (0491) and Kinja, Kft. (5056). The Debtors' corporate headquarters is located at 114 Fifth Avenue, 2nd Floor, New York, NY 10011.

(the "Borrower"), each of the other guarantor parties thereto including any entities that become guarantors thereunder from time to time (the "Guarantors" and, together with the Borrower, the "DIP Loan Parties"), Cerberus Business Finance LLC, as collateral and administrative agent (the "DIP Agent"), and the lender parties thereto including any entities that become lenders thereunder from time to time (the "DIP Lenders" and, together with the DIP Agent, the "DIP Secured Parties"), and (II) all guarantees and other agreements, documents, and instruments to be executed and/or delivered with, to, or in favor of the DIP Secured Parties (all documents comprising the DIP Facility, each as may be amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof, collectively, the "DIP Loan Documents"); and (b) incur the "Obligations" under and as defined in the DIP Financing Agreement (any such Obligations are hereinafter referred to as the "DIP Obligations");

(ii)     authorizing the Debtors that are Guarantors under the DIP Financing Agreement to guarantee the Borrower's DIP Obligations;

(iii)     authorizing the DIP Loan Parties to execute and deliver the DIP Loan Documents and to perform such other acts as may be necessary or desirable in connection therewith;

(iv)     authorizing the Debtors to access up to $14,000,000 of the DIP Facility in the form of a Term Loan (as defined in the DIP Financing Agreement) (inclusive of an aggregate amount of approximately $12.3 million to repay all outstanding obligations and cash collateralize the issued, outstanding and undrawn letter of credit under the Prepetition First Lien Credit Agreement (as defined below)) in an amount equal to 105% of the First Lien Letter of Credit on an interim basis, for the period (the "Interim Period") from the commencement of these cases

57135101_6

through and including the earlier of (I) the entry of the Final Order (as defined below), and (II) thirty (30) days after the Petition Date, in order to avoid immediate and irreparable harm;

(v)    authorizing the use of the proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Loan Documents) during the Interim Period in each case in a manner consistent with and subject to the terms and conditions of the DIP Loan Documents and this Interim Order, and in compliance with the DIP Budget (as defined below), solely for the purposes set forth in the DIP Loan Documents, including to pay or fund (a) certain costs, fees and expenses related to the Chapter 11 Cases, (b) the repayment of all Prepetition First Lien Obligations (as defined below), including to cash collateralize all outstanding letters of credit issued under the Prepetition First Lien Credit Documents (as defined below) in an amount equal to 105% of the First Lien Letter of Credit, and (c) the working capital needs of the Debtors during the Chapter 11 Cases;

(vi)    granting to the DIP Agent, for the benefit of itself and the DIP Lenders, automatically perfected liens on and security interests in all of the DIP Collateral (as defined below), including, without limitation, all property constituting "cash collateral" (as defined in section 363(a) of the Bankruptcy Code, and hereinafter, "Cash Collateral"), which liens and security interests shall have the priorities set forth in paragraph 2(i) below;

(vii)    granting to the DIP Agent, for the benefit of itself and the DIP Lenders, allowed superpriority administrative expense claims in each of the Chapter 11 Cases and any Successor Case (as defined below) in respect of all DIP Obligations, pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have the priorities set forth in paragraph 2(j) below;

(viii)    authorizing the Debtors' use of Cash Collateral on the terms and conditions set forth in this Interim Order, and providing adequate protection on the terms set forth in this Interim Order to the Prepetition Second Lien Lender (as defined below) for any Diminution in Value (as defined below) for their interests in the Prepetition Collateral (as defined below), including the Cash Collateral;

(ix)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order;

(x)    scheduling a final hearing (the "Final Hearing") to consider entry of an order (the "Final Order") granting the relief requested in the Motion on a final basis, and to approve the form and manner of notice with respect to the Final Hearing; and

(xi)    waiving any applicable stay as provided in the provisions of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and/or the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and providing for the immediate effectiveness of this Interim Order;

The Court having considered the Motion and the *Declaration of William D. Holden in Support of DIP Financing Motion* [*ECF No. __*], the exhibits attached thereto, the DIP Financing Agreement, and the testimony and other evidence submitted at the interim hearing held before the Court commencing on June __, 2016 (the "Interim Hearing"); and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and Rule 4001-2 of the Local Rules, due and proper notice of the Motion and the Interim Hearing having been given; and the Interim Hearing having been held and concluded; and it appearing that approval of the relief requested in the Motion during the Interim Period is necessary to avoid immediate and irreparable harm to the

4

Debtors pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and is essential for the continued operation of the Debtors' business and to preserve and maximize the value of the Debtors' estates for the benefit of all stakeholders; and it further appearing that the Debtors are unable to secure unsecured credit for money borrowed allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

### IT IS HEREBY FOUND AND CONCLUDED AS FOLLOWS:[2]

A.    **Petition Date**.  On June 10, 2016, (the "Petition Date"), Gawker Media, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Court").  On June 12, 2016, Gawker Media Group, Inc. and Kinja, Kft. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  Pursuant to an order of this Court, the Chapter 11 Cases have been consolidated for procedural purposes only.  No trustee or examiner has been appointed in the Chapter 11 Cases.

B.    **Jurisdiction and Venue**.  This Court has jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Chapter 11

---

[2] The findings and conclusions set forth in this Interim Order constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**C.** **Statutory Committee**.  As of the date of this Interim Order, no statutory committee of unsecured creditors (the "Committee") has been appointed in the Chapter 11 Cases.

**D.** **Notice**.  The Interim Hearing was held pursuant to Bankruptcy Rules 2002 and 4001 and Local Rule 4001-2.  Notice of the Interim Hearing and the emergency relief requested in the Motion was given by the Debtors, whether by telecopy, email, overnight courier or hand delivery on June __, 2016, to certain parties in interest, including: (i) the Office of the United States Trustee for the Southern District of New York (the "United States Trustee"); (ii) the Debtors' forty (40) largest unsecured creditors on a consolidated basis; (iii) counsel to the DIP Agent; (iv) counsel to the Prepetition First Lien Lender (as defined below); (v) counsel to the Prepetition Second Lien Lender (as defined below); (vi) the five (5) largest secured creditors of record; (vii) the Internal Revenue Service; (viii) the Securities and Exchange Commission; (ix) the United States Department of Justice; and (x) all parties requesting notice pursuant to Bankruptcy Rule 2002.  Under the circumstances, such notice of the Interim Hearing and the emergency relief requested in the Motion is due and sufficient notice and complies with sections 102(1), 363, 364(c), and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b), 4001(c), 4001(d), and the Local Rules, and no other or further notice of the relief granted pursuant to this Interim Order is necessary or required.

**E.** **The Debtors' Acknowledgements and Agreements**.  Without prejudice to the rights of parties in interest as set forth in paragraph 7 below, the Debtors admit, stipulate, acknowledge and agree that (collectively, paragraphs E(i) through E(vii) hereof shall be referred to herein as the "Debtors' Prepetition Secured Lien Stipulations"):

(i)     **Prepetition First Lien Agreement**.  Prior to the Petition Date, certain of the Debtors were parties to that certain Loan and Security Agreement, dated as of September 24, 2012 (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "Prepetition First Lien Credit Agreement" and together with all other agreements, documents and instruments executed and/or delivered to or in favor of the parties thereto, the "Prepetition First Lien Credit Documents"), by and among the Borrower and Silicon Valley Bank (the "Prepetition First Lien Lender").  Pursuant to the Prepetition First Lien Credit Agreement, the Prepetition First Lien Lender made available to the Borrower a secured term loan credit facility in an original principal amount of approximately $7,666,666.67 and a letter of credit with an undrawn face amount of $5,302,066.00.

(ii)    **Prepetition Second Lien Credit Agreement**.  Prior to the Petition Date, certain of the Debtors were parties to that certain Second Lien Loan and Security Agreement, dated as of January 21, 2016 (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "Prepetition Second Lien Credit Agreement" and together with all other agreements, documents, and instruments executed and/or delivered to or in favor of the parties thereto, the "Prepetition Second Lien Credit Documents" and, together with the Prepetition First Lien Credit Documents, the "Prepetition Secured Credit Documents"), by and among the Borrower and US VC Partners, LP (the "Prepetition Second Lien Lender" and, together with the Prepetition First Lien Lender, the "Prepetition Secured Lenders").  Pursuant to the Prepetition Second Lien Credit Agreement, the Prepetition Second Lien Lender made available to the Borrower a secured term loan credit facility in an original principal amount of approximately $15,000,000.

(iii)   **Prepetition First Lien and Second Lien Obligations**.  As of the Petition Date, the outstanding principal amount of all loans under the Prepetition First Lien Credit Documents was approximately $6,222,222.24 (such amount, together with any amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition First Lien Credit Documents and any outstanding letters of credit, accrued and unpaid interest, any fees, expenses and disbursements, indemnification obligations and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof, collectively, the "Prepetition First Lien Obligations").  As of the Petition Date, the outstanding principal amount of all loans under the Prepetition Second Lien Credit Documents was approximately $15,000,000.00 (such amount, together with any amounts paid, incurred or accrued, prior to the Petition Date in accordance with the Prepetition Second Lien Documents, accrued and unpaid interest, any fees, expenses and disbursements, indemnification obligations and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof,

57135101_6

collectively, the "<u>Prepetition Second Lien Obligations</u>" and together with the Prepetition First Lien Obligations, collectively, the "<u>Prepetition Secured Obligations</u>").

(iv) **<u>Liens Securing Prepetition Secured Obligations</u>.**  Prior to the Petition Date, the Debtors granted to the Prepetition First Lien Lender and the Prepetition Second Lien Lender liens upon and security interests, as follows:

   a.   *Prepetition First Lien Credit Agreement*.  Pursuant to the Prepetition First Lien Credit Documents, the Debtors granted to the Prepetition First Lien Lender liens (the "<u>Prepetition First Liens</u>") on all "Collateral" (as such term is defined in the Prepetition First Lien Credit Documents and hereinafter referred to as the "<u>Prepetition Collateral</u>").

   b.   *Prepetition Second Lien Credit Agreement*.  Pursuant to the Prepetition Second Lien Credit Documents, the Debtors granted to the Prepetition Second Lien Lender liens (the "<u>Prepetition Second Liens</u>" and, together with the Prepetition First Lien Liens, the "<u>Prepetition Liens</u>"), on all Prepetition Collateral.

   c.   *Priority of Liens in Prepetition Collateral*.  Pursuant to that certain Intercreditor Agreement, dated as of January 21, 2016 (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "<u>Intercreditor Agreement</u>"), by and between the Prepetition First Lien Lender and the Prepetition Second Lien Lender, the Prepetition First Liens granted on all Prepetition Collateral are senior to the Prepetition Second Liens on all Prepetition Collateral as set forth in the Intercreditor Agreement.

(v) **<u>Intercreditor Agreement</u>.**  The Prepetition First Lien Lender and the Prepetition Second Lien Lender entered into the Intercreditor Agreement to govern, among other things, the respective rights, interests, obligations and priority of the Prepetition First Lien Lender  and the Prepetition Second Lien Lender in respect of the Prepetition Collateral.   The Intercreditor Agreement constitutes a subordination agreement for purposes of section 510(a) and is enforceable in these Chapter 11 Cases.

(vi) **<u>Validity, Perfection and Priority of Prepetition Liens and Prepetition Secured Obligations</u>.**  As of the Petition Date, (i) the Prepetition Liens are valid, binding, enforceable, non-avoidable and properly perfected; (ii) the Prepetition Liens (x) are senior in priority to any and all other liens on the Prepetition Collateral, subject only to certain liens, if any, otherwise

8

permitted pursuant to the Prepetition Secured Credit Documents,[3] and (y) are not subject to avoidance, recharacterization, subordination or other challenge pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (iii) the Prepetition Secured Obligations constitute legal, valid, binding and non-avoidable obligations of the Debtors, enforceable in accordance with the terms of the Prepetition Secured Credit Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and are not subject to any objection, offset, defense or counterclaim of any kind, and no portion of the Prepetition Secured Obligations is subject to avoidance, disallowance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iv) the Prepetition Secured Obligations constitute allowed secured claims pursuant to section 506 of the Bankruptcy Code. On the date that this Interim Order is entered, the Debtors have waived, discharged and released the Prepetition Secured Lenders, together with their affiliates, agents, attorneys, officers, directors and employees, of any right the Debtors may have (x) to challenge or object to any of the Prepetition Secured Obligations or any security therefor, and (y) to bring or pursue any and all claims, objections, challenges, causes of action and/or choses in action arising out of, based upon or related to the Prepetition Secured Credit Documents. The Debtors do not possess and will not assert any claim, counterclaim, setoff, objection, challenge, cause of action or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Prepetition Liens, or any claim of the Prepetition Secured Lenders pursuant to the Prepetition Secured Credit Documents.

(vii) **Interest in Cash Collateral**. The Prepetition Secured Lenders have security interests in Cash Collateral of the Debtors, including all amounts on deposit in the Debtors' banking, checking, or other deposit accounts and all proceeds of Prepetition Collateral to secure their respective prepetition claims, to the same extent and order of priority as that which was held by each such party on the Petition Date.

F.    **Findings Regarding the Post-Petition Financing**.

(i)    **Need for Post-Petition Financing**. Based on the evidence presented at

the Interim Hearing, and the representations made by the Debtors in the Motion and on the

---

[3] Nothing herein shall constitute a finding or ruling by this Court that any such permitted liens, if any, are valid, enforceable, perfected, non-avoidable or senior to the Prepetition Liens. Nothing herein shall prejudice the rights of any party in interest including, but not limited to, the Debtors, the Prepetition Secured Lenders, the DIP Secured Parties and any Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection, extent or any other aspect of any such permitted liens.

record of the Interim Hearing, an immediate need exists for the Debtors to obtain funds under the DIP Facility in order to continue operations and to administer and preserve the value of the Debtors' estates. The ability of the Debtors to meet payroll and finance their operations, and to preserve, maintain and maximize the value of their assets for the benefit of their creditors, requires the immediate availability of working capital provided pursuant to the DIP Facility. Without immediate access to the DIP Facility, the Debtors have insufficient funds available to sustain operations of any magnitude for any length of time. The inability to obtain funding under the DIP Facility would immediately and irreparably harm the Debtors, their estates and their creditors, and irreparably damage the Debtors' prospects for a successful reorganization or sale of their assets as a going concern or otherwise.

(ii) **No Credit Available on More Favorable Terms**. Based on the evidence presented at the Interim Hearing, and the representations made by the Debtors in the Motion and on the record of the Interim Hearing, the Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Given their current financial condition, financing arrangements and capital structure, the Debtors are unable to obtain secured credit pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on more favorable terms and conditions than those provided in the DIP Loan Documents and this Interim Order. Financing on a postpetition basis is not otherwise available without granting to the DIP Agent, for the benefit of itself and the DIP Lenders, (a) valid and perfected security interests in and liens on all of the Debtors' existing and after acquired assets with the priorities set forth in this Interim Order, (b) superpriority claims with the priorities set forth in this Interim Order, and (c) the other protections, rights and remedies set forth in the DIP Loan Documents and this Interim Order.

57135101_6

G.      **Use of Proceeds of the DIP Facility**.  Proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Loan Documents) shall be used in a manner consistent with and subject to the terms and conditions of the DIP Loan Documents, and in compliance with the DIP Budget and the limitations set forth in this Interim Order, solely for the purposes set forth in the DIP Loan Documents, including to pay or fund (i) certain costs, fees and expenses related to the Chapter 11 Cases; (ii) the repayment of the Prepetition First Lien Obligations; (iii) the cash collateralization of certain outstanding letters of credit issued pursuant to the Prepetition First Lien Credit Agreement on the terms set forth in the DIP Financing Agreement; (iv) the Carve-Out (as defined below); and (v) the working capital needs of the DIP Loan Parties during the Chapter 11 Cases.  Payment of the Prepetition First Lien Obligations in accordance with this Interim Order is necessary as the DIP Agent and the DIP Lenders will not otherwise consent to providing the DIP Facility and extending credit to the Debtors thereunder, and the Prepetition First Lien Lenders will not otherwise consent to the use of its Cash Collateral and other Prepetition Collateral or the subordination of its liens to the Carve-Out.  Based on the record of the Interim Hearing, such payment will not prejudice the Debtors or their estates because it appears that the Prepetition First Lien Obligations are significantly oversecured and, in any event, such payment is subject to the rights of parties in interest under paragraph 7 of this Interim Order.

H.      **Application of Proceeds of DIP Collateral**.   All proceeds of a sale or other disposition of the DIP Collateral shall be applied to reduce the DIP Obligations pursuant and subject to the provisions of the DIP Financing Agreement.

I.      **Property of the Estate**.  Each item of the DIP Collateral constitutes property of the Debtors' estates.

57135101_6

**J.**     **Adequate Protection for Prepetition Second Lien Lenders**.   Based on the evidence presented at the Interim Hearing, (i) the Prepetition Second Lien Parties have consented to the entry of this Interim Order and the priming of the Prepetition Second Liens by the DIP Liens, and (ii) in any event the interests of the Prepetition Second Lien Lenders in the Prepetition Collateral (including Cash Collateral) are adequately protected from any Diminution in Value during the Interim Period.   The priming of the Prepetition Second Liens pursuant to section 364(d) of the Bankruptcy Code, as further described below, will enable the Debtors to obtain the DIP Facility, to continue operations and to maximize the value of their assets for the benefit of their estates and creditors.   The Prepetition Second Lien Lender is also being provided adequate protection as set forth in this Interim Order, pursuant to sections 361, 363 and 364 of the Bankruptcy Code, for any Diminution in the Value of its interests in the Prepetition Collateral (including Cash Collateral) resulting from the subordination to the Carve-Out and the DIP Liens (as defined below) the Debtors' use, sale or lease of such Prepetition Collateral, and the imposition of the automatic stay (collectively, and solely to the extent of any such diminution in value the "Diminution in Value").   Pursuant to Sections 361, 363, 364 and 507(b) of the Bankruptcy Code, as adequate protection to the extent of any Diminution in Value of its interests in the Prepetition Collateral (including Cash Collateral), the Prepetition Second Lien Lender will receive the rights and protections set forth in this Interim Order, including pursuant to paragraph 4 of this Interim Order.

**K.**     **Section 506(c) and Section 552(b)**.   In light of the subordination of their liens and superpriority claims to the Carve-Out, the Debtors agree that the DIP Secured Parties and the Prepetition Second Lien Lender are entitled to (a) all of the rights and benefits of section 552(b)

of the Bankruptcy Code, and the "equities of the case" exception shall not apply and (b) if approved in the Final Order a waiver of the provisions of section 506(c) of the Bankruptcy Code.

L.    **Extension of Financing**.  Based on the evidence presented at the Interim Hearing, and the representations made by the Debtors in the Motion and on the record of the Interim Hearing, the DIP Secured Parties have indicated a willingness to provide financing to the Debtors in accordance with the DIP Loan Documents and subject to (i) the entry of this Interim Order and a Final Order, (ii) the satisfaction of all conditions to borrowing set forth in the DIP Loan Documents, and (iii) findings by the Court that such financing is essential to the Debtors' estates, that the DIP Secured Parties are good faith financiers, and that the superpriority claims, security interests and liens and other protections granted to DIP Secured Parties pursuant to this Interim Order and the DIP Facility will not be affected by any subsequent reversal or modification of this Interim Order or the Final Order unless the Interim Order and/or the Final Order (as applicable) is stayed pending appeal, as provided in section 364(e) of the Bankruptcy Code.

M.    **Business Judgment and Good Faith Pursuant to Section 364(e)**.  Based on the evidence presented at the Interim Hearing, and the representations made by the Debtors in the Motion and on the record of the Interim Hearing, (i) the terms and conditions of the DIP Facility and the DIP Financing Agreement, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration; (ii) the DIP Facility was negotiated in good faith and at arms' length between the Debtors and the DIP Secured Parties, (iii) use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid

business purposes and uses, as a consequence of which the DIP Secured Parties are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code; and (iv) the DIP Secured Parties are hereby found to be acting in good faith within the meaning of section 364(e) of the Bankruptcy Code in entering into and consummating the DIP Facility contemplated herein and in the DIP Financing Agreement after the entry of this Interim Order.

N. **Relief Essential; Best Interest; Good Cause**.  Based on the evidence presented at the Interim Hearing, and the representations made by the Debtors in the Motion and on the record of the Interim Hearing, the relief requested in the Motion is necessary, essential, and appropriate for continued operations, and for the management, maintenance and preservation of the Debtors' assets and property as it will, among other things, provide the Debtors with the necessary liquidity to (i) minimize disruption to their on-going operations while the Debtors pursue their restructuring goals; (ii) preserve and maximize the value of their estates for the benefit of all creditors; and (iii) avoid immediate irreparable harm to the Debtors, their creditors, their businesses, their employees, and their estates.  It is in the best interest of the Debtors' estates for the Debtors to be allowed to establish the DIP Facility contemplated by the DIP Financing Agreement and to grant the other relief set forth herein.  Good cause has been shown for the relief requested in the Motion and as granted in this Interim Order.

O. **Final Hearing**.  At the Final Hearing, the Debtors will seek final approval of the proposed DIP Facility and use of Cash Collateral pursuant to a proposed Final Order, which shall be in form and substance acceptable to the DIP Agent and the Required Lenders (as defined in the DIP Financing Agreement) in their sole and absolute discretion.  Notice of the Final Hearing will be provided in accordance with this Interim Order.

P. **Entry of Interim Order**.  For the reasons stated above, the Debtors have

14

requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1.    **Motion Granted**.    The Motion is hereby granted, on an interim basis, in accordance with the terms and conditions set forth in this Interim Order, the DIP Financing Agreement and the other DIP Loan Documents.

2.    **DIP Facility Authorization**.

(a)    **Approval of Entry Into DIP Loan Documents**.    The Debtors are expressly and immediately authorized, empowered and directed to execute and deliver the DIP Loan Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents, and to execute and deliver all guarantees, instruments and other documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Loan Documents.   The Debtors are hereby authorized and directed to do and perform all acts, pay and guarantee to pay, as applicable, the principal, interest, original issue discount, fees, expenses and other amounts described in the DIP Loan Documents as such become due, including, as applicable, all commitment fees, underwriting fees, unused facility fees, agency fees and other fees and disbursements (including, without limitation, reasonable attorneys' fees and disbursements (such fees and disbursements, the "DIP Lender Professional Fees")) as provided for in the DIP Loan Documents, which amounts (including the DIP Lender Professional Fees) (i) shall not be subject to or require further approval of this Court (except as provided immediately below), and (ii) shall not be subject to compliance with the guidelines promulgated by the United States Trustee (the

"Guidelines"), and no recipient of such payments shall be required to file any interim or final fee application with respect thereto; provided, however, that solely with respect to DIP Lender Professional Fees, the Debtors are hereby authorized and directed to pay such fees ten (10) days after the delivery of a monthly statement or invoice for such DIP Lender Professional Fees (which statement shall contain supporting time record summaries (redacted for privilege and confidentiality)) to the Debtors, the United States Trustee and counsel for any statutory committee of unsecured creditors appointed in these Chapter 11 Cases (the "Committee"), unless, within such ten (10) day period, the Debtors, the United States Trustee or the Committee serves a written objection upon the requesting party, with a copy to the Debtors if the objection is filed by the United States Trustee or the Committee (specifying in detail the basis for such objection), in which case, the Debtors shall pay only such amounts that are not the subject of any such objection with the disputed amount to be paid either upon resolution of the objection by the parties or as ordered by the Court.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Interim Order and DIP Loan Documents.  Upon execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms.

(b)    **Authorization to Borrow**.  To enable the Debtors to continue to operate their businesses during the Interim Period, and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Financing Agreement, the other DIP Loan Documents, the DIP Budget and this Interim Order, the DIP Loan Parties are hereby authorized to borrow or guarantee, as applicable, on an interim basis up to $14,000,000 of Term Loans as

16

described in the DIP Financing Agreement.

(c) **DIP Budget**.  All borrowing under the DIP Facility and all use of Cash Collateral shall be in compliance with the DIP Budget[4] (as such term is defined in the DIP Financing Agreement), a summary schedule of which is annexed hereto as **Exhibit A** (as the same may be modified from time to time consistent with and subject to the terms of the DIP Financing Agreement, and with the consent of the DIP Agent and the Required Lenders), and the Debtors shall not use any portion of the proceeds of the DIP Facility, directly or indirectly, in excess of the amounts set forth in the DIP Budget, except (and to the extent of) any variance permitted under the DIP Financing Agreement.  The DIP Budget may be updated and amended (with the consent and/or at the request of the DIP Agent and the Required Lenders) from time to time in accordance with the DIP Financing Agreement, provided that such updated or amended DIP Budget shall be in form and substance acceptable to the DIP Agent and the Required Lenders, and the Debtors shall be required always to comply with the DIP Budget and the DIP Financing Agreement.  Notwithstanding any "first day" or subsequent orders entered by the Court authorizing the Debtors to pay any prepetition or other claims and expenses, all such payments shall be made only to the extent they are in compliance with the DIP Budget.

(d) **Use of Cash Collateral and DIP Proceeds and Collections**.  Cash Collateral and the proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Agreement) shall be used, in each case in a manner consistent with and subject to the terms and conditions of the DIP Loan Documents, and in compliance with the DIP Budget and the limitations set forth in this Interim Order, solely for the purposes set

---

[4] Any reference contained herein to compliance with the DIP Budget shall include any permitted variance therefrom that does not constitute a Material Adverse Deviation (as defined in the DIP Financing Agreement).

forth in the DIP Loan Documents including to pay or fund (i) certain costs, fees and expenses related to the Chapter 11 Cases; (ii) the repayment of the Prepetition First Lien Obligations; (iii) the cash collateralization of certain outstanding letters of credit issued pursuant to the Prepetition First Lien Credit Agreement on the terms set forth in the DIP Financing Agreement; (iv) the Carve-Out; and (v) the working capital needs of the DIP Loan Parties during the Chapter 11 Cases.  Any and all collections and payments received by the DIP Agent, and all other proceeds of the DIP Collateral, shall be applied to reduce the DIP Obligations pursuant and subject to the provisions of the DIP Financing Agreement.

(e)    **Repayment of Prepetition First Lien Obligations.**  Upon the occurrence of the Closing Date (as such term is defined in the DIP Financing Agreement), the Borrower shall use the proceeds of the DIP Facility to pay in full all outstanding Prepetition First Lien Obligations, including to cash collateralize all outstanding letters of credit issued under the Prepetition First Lien Credit Documents, all in accordance with the terms, conditions, and procedures set forth in the DIP Financing Agreement.

(f)    **Conditions Precedent**.  The DIP Secured Parties shall have no obligation to make any loan or advance under the DIP Financing Agreement during the Interim Period unless the conditions precedent to the making of such loan under the DIP Financing Agreement and this Interim Order have been satisfied in full or waived by the DIP Secured Parties in their sole discretion.

(g)    **DIP Liens and DIP Collateral**.  Effective immediately upon the execution of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code, the DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted continuing, valid, binding, enforceable, non-avoidable and automatically and

18

properly perfected postpetition liens on and security interests in (collectively, the "DIP Liens") any and all presently owned and hereafter acquired property and assets of the Debtors, whether real or personal, tangible or intangible, and wherever located (including, without limitation, all proceeds of insurance policies of the Debtors), and all proceeds, products, offspring, rents, proceeds of interests in leaseholds and profits thereof, and including, without limitation, the following (all collateral described in this paragraph 2(g), collectively, the "DIP Collateral"):  (i) all Prepetition Collateral, and (ii) all Collateral (as defined in the DIP Financing Agreement); provided, however, that the DIP Liens shall not attach to claims and causes of action of the Debtors and their estates under Chapter 5 of the Bankruptcy Code (the "Avoidance Actions") and proceeds thereof unless approved pursuant to the Final Order.  The DIP Liens shall have the priority set forth in paragraph 2(j) below.

(h)    **Account Control Agreements**.  The Debtors are authorized and directed to deliver to the DIP Agent deposit account control agreements, as and to the extent required by the DIP Loan Documents, duly executed by such parties as are reasonably required by the DIP Secured Parties, and in each case, in form and substance acceptable to the DIP Agent.

(i)    **DIP Lien Priority**.  The DIP Liens securing the DIP Obligations shall be senior in priority and superior to any security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral (all DIP Collateral that is subject to such senior priority and superior DIP Liens, the "DIP Priority Collateral"), junior only to (a) the Carve-Out; and (b) any other valid, perfected, enforceable and non-avoidable liens existing as of the Petition Date that are senior to the Prepetition Liens (any such other liens, the "Other Prepetition Senior Liens").  Other than as expressly set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest by any order heretofore or hereafter entered in the Chapter 11

Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code and in any other proceedings related to any of the foregoing (any "Successor Cases"), and/or upon the dismissal of the Chapter 11 Cases or any Successor Cases. For the avoidance of doubt, a Successor Case shall not include any subsequent case under the Bankruptcy Code commenced by any Debtor (i) that becomes a reorganized Debtor under a chapter 11 plan confirmed in these Chapter 11 Cases, or (ii) following the dismissal of such Debtor's Chapter 11 Case by this Court. The DIP Liens shall not be subject to sections 506(c) (subject to entry of the Final Order), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the DIP Liens.

(j) **DIP Superpriority Administrative Claim**. Subject to the Carve-Out, all DIP Obligations shall constitute allowed superpriority administrative expense claims (the "DIP Superpriority Claim" and, together with the DIP Liens, the "DIP Protections") with priority in the Chapter 11 Cases and any Successor Cases, under sections 364(c)(1), 503, and 507 of the Bankruptcy Code and otherwise, over any and all administrative expense claims of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546, 726, 1113, 1114, or any other provision of the Bankruptcy Code (including, without limitation, any administrative expense claim granted to any prospective purchaser of all or any portion of the Debtors' assets in the nature of "liquidated damages," a break-up fee, expense reimbursement or similar fee or claim) and, if approved in the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. Other than the Carve-Out, no

57135101_6

costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these Chapter 11 Cases, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Superpriority Claim. The DIP Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, except that the DIP Superpriority Claim shall not attach to Avoidance Actions and proceeds thereof unless such relief is approved in the Final Order.

(k)    **Enforceable Obligations**. The DIP Loan Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable in accordance with their terms against the Debtors, their creditors, their estates and any successors thereto (including without limitation, any trustee appointed in the Chapter 11 Cases or in any Successor Cases).

(l)    **Protection of DIP Secured Parties and Other Rights**. From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Agreement and (until entry of the Final Order) this Interim Order and in compliance with the DIP Budget.

3.    **Authorization to Use Cash Collateral**. During the Interim Period and subject to the terms and conditions of this Interim Order and the DIP Loan Documents, and in compliance with the DIP Budget, the Debtors are authorized to use Cash Collateral until the earliest to occur of (a) the Repayment in Full of DIP Obligations (as defined herein), and (b) the date such right to use Cash Collateral otherwise terminates as provided in this Interim Order (unless otherwise consented to in writing by the DIP Agent in its sole discretion). Nothing in this Interim Order

shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or the Debtors' use of Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Interim Order, the DIP Loan Documents, and in compliance with the DIP Budget.

4.    **Adequate Protection**.

(a)    **Adequate Protection Liens**.  Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection for the interests of the Prepetition Second Lien Lender in the Prepetition Collateral against any Diminution in Value of such interests, the Debtors hereby grant to the Prepetition Second Lien Lender continuing, valid, binding, enforceable, and automatically perfected junior postpetition security interests in and liens on the DIP Collateral and the proceeds thereof (the "Adequate Protection Liens").

(b)    **Priority of Adequate Protection Liens.**  In accordance with the terms of this Interim Order, the Adequate Protection Liens shall be junior only to (i) the Carve-Out; (ii) the DIP Liens; and (iii) any Other Prepetition Senior Liens.  The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(c)    **Adequate Protection Superpriority Claims**.    As further adequate protection against any Diminution in Value of the Prepetition Second Lien Lender in the Prepetition Collateral, the Prepetition Second Lien Lender is hereby granted, as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, a separate allowed superpriority administrative expense claim in the Chapter 11 Cases and any Successor Cases (the foregoing superpriority claims shall be referred to as the "Adequate Protection Superpriority Claims"); provided, that, the Adequate Protection Superpriority Claims shall not attach to (i) Avoidance

22

Actions and all proceeds thereof unless approved in the Final Order.  Except with respect to the (i) DIP Liens, (ii) DIP Superpriority Claim, and (iii) Carve-Out, the Adequate Protection Superpriority Claims (x) shall have priority in these Chapter 11 Cases under sections 105, 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature of the kinds specified in or ordered pursuant to sections 503(b) or 507(b) of the Bankruptcy Code (including, without limitation, any administrative expense claim granted to any prospective purchaser of all or any portion of the Debtors' assets in the nature of "liquidated damages," a break-up fee, expense reimbursement or similar fee or claim), and, if approved in the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, and (y) no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these Chapter 11 Cases, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the Adequate Protection Superpriority Claims.

(d)    **Section 507(b) Reservation**.  Nothing herein shall impair or modify the Prepetition Second Lien Lender's rights under section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Second Lien Lender hereunder is insufficient to compensate for any Diminution in Value of its interests in the Prepetition Collateral during these Chapter 11 Cases or any Successor Cases, provided, however, that any section 507(b) claim granted in these Chapter 11 Cases or any Successor Case to the Prepetition Second Lien Lender shall be junior in the right of payment to all DIP Obligations and subject to

23

the Carve-Out.

(e)    **Limitation on Enforcement Rights.**    Notwithstanding anything to the contrary set forth in this Interim Order, prior to the Repayment in Full of DIP Obligations (as defined below), the Prepetition Second Lien Lender shall be prohibited from taking any action to enforce the prepetition Second Liens or the Adequate Protection Liens against all or any portion of the Prepetition Collateral or the DIP Collateral (including, without limitation, seeking relief from the automatic stay under section 362 of the Bankruptcy Code).

5.    **Right to Credit Bid**.    The DIP Agent, on behalf of itself and the DIP Lenders, shall have the right, pursuant to applicable law, to credit bid the amount of all accrued DIP Obligations during any sale of the DIP Collateral (which credit bid rights under section 363(k) of the Bankruptcy Code or otherwise shall not be impaired in any manner), including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code or otherwise.    The Prepetition Second Lien Lender shall not be entitled to credit bid all or any portion of the Prepetition Second Lien Obligations under section 363(k) of the Bankruptcy Code or as part of a plan of reorganization subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code or otherwise unless such credit bid provides for the Repayment in Full of DIP Obligations (as defined below).

6.    **Perfection of DIP Liens and Adequate Protection Liens**.

(a)    **No Filings Necessary to Perfect.**    All security interests, liens, mortgages, deeds of trust and other interests and rights granted by the Debtors in favor of (i) the DIP Secured Parties pursuant to this Interim Order and the DIP Loan Documents, and (ii) the Prepetition Second Lien Lender pursuant to this Interim Order, shall be valid, binding,

24

enforceable and automatically perfected. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or mortgage agreement) to validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Liens and the Adequate Protection Liens to the priorities granted in this Interim Order. Notwithstanding the foregoing, the DIP Agent and the Prepetition Second Lien Lender may, each in their sole discretion, file such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable DIP Liens or Adequate Protection Liens, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code solely in order to do so, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date.

(b) **Debtors' Cooperation With Perfection Filings**. The Debtors shall execute and deliver to the DIP Agent and the Prepetition Second Lien Lender all such financing statements, mortgages, notices and other documents as such parties may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens and the Adequate Protection Liens. The DIP Agent and the Prepetition Second Lien Lender, in their respective sole discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property,

and in such event, the recording officer shall be authorized to file or record such copy of this Interim Order.

(c) **Release of Prepetition First Liens**.    Upon the repayment of the Prepetition First Lien Obligations pursuant to this Interim Order, (a) the Prepetition First Lien Lender shall execute and deliver to the DIP Agent all documents needed to terminate any and all financing statements, mortgages, notices and other documents evidencing the Prepetition First Liens; and (b) the DIP Agent is authorized to file, register, or otherwise record a photocopy of this Interim Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Prepetition First Liens on the Prepetition Collateral.

7.    **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.  Nothing in this Interim Order or the DIP Loan Documents shall prejudice the rights of any Committee or any other party in interest, in each case solely to the extent the Committee or such other party in interest has been granted standing, to seek, solely in accordance with this paragraph 7, to assert claims against any Prepetition Secured Lender on behalf of the Debtors, their creditors or interest holders or to otherwise challenge any of the Debtors' Prepetition Secured Lien Stipulations.  The Committee or such party in interest, (i) in each case solely to the extent they have been granted standing at such time, must commence a contested matter or adversary proceeding, or (ii) if they have not been granted any such standing, must file a motion seeking standing to commence and prosecute an adversary proceeding or contested matter (with a draft complaint attached thereto), raising such objection or challenge, including without limitation, asserting any claim against any Prepetition Secured Lender in the nature of a setoff, counterclaim or defense to, as applicable, the Prepetition Secured Obligations (including but not limited to, those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code

57135101_6

or by way of suit against the Prepetition Secured Lender; any such objection, claim or challenge, a "Challenge" ), within (a) in the case of the Committee and any other party in interest, 60 days following the entry of the Final Order, (b) such later date consented to in writing by the applicable Prepetition Secured Lender in its sole discretion, or (c) such longer period as the Court orders for cause shown prior to the expiration of the foregoing periods (the "Challenge Period").  The date that is the next calendar day after the termination of the Challenge Period[5] shall be referred to as the "Challenge Period Termination Date."  Upon the Challenge Period Termination Date, any and all such Challenges not timely raised in accordance with this paragraph 7 by any party (including, without limitation, the Committee, any chapter 11 or chapter 7 trustee appointed herein or in any Successor Cases, and any other party in interest) not timely commenced (or as to which a motion for standing was timely filed) shall be deemed to be forever waived and barred, and the Prepetition Secured Obligations shall (except to the extent of any timely filed Challenge) be deemed to be allowed in full as secured claims within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with these Chapter 11 Cases or any Successor Cases, and the Debtors' Prepetition Secured Lien Stipulations shall be binding on all creditors, interest holders and parties in interest (including, without limitation, the Committee, any chapter 11 or chapter 7 trustee appointed herein or in any Successor Cases).  For the avoidance of doubt, no challenge commenced against any Prepetition Secured Lender or any relief granted pursuant to any such challenge, shall in any manner impact, impair or alter the validity, priority or enforceability of the DIP Protections or any rights, claims,

---

[5] In the event a motion for standing is timely filed by the Committee or any party in interest, the Challenge Period shall be extended solely as to the Challenge(s) specifically identified in such motion for standing until the date that is three (3) business days after the date on which the Court enters an order granting such motion for standing.

benefits and entitlements granted to the DIP Secured Parties pursuant to this Interim Order or the DIP Loan Documents.

8. **Carve-Out Provisions.**

(a)    **Carve-Out.**  All liens and claims granted by this Interim Order shall be subject to the Carve-Out.  As used in this Interim Order and the DIP Loan Documents, the "Carve-Out" shall mean:

(i) quarterly fees required to be paid to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6), plus interest, if applicable, at the statutory rate, and any fees payable to the clerk of the Bankruptcy Court;

(ii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an aggregate amount not to exceed $50,000;

(iii) with respect to Case Professionals retained by the Debtors and the Committee, if any, all accrued and unpaid claims for fees and expense reimbursements of such Case Professionals (but not any success or transaction fees other than those payable to the Debtors' financial advisor in connection with the closing of the DIP Facility) incurred during the period prior to the Carve-Out Trigger Date (as defined below) but not to exceed the amounts for such Case Professionals set forth in the DIP Budget for such period, subject to such accrued and unpaid fees and expense reimbursements becoming Allowed Fees; and

(iv) an aggregate amount for unpaid fees and expense reimbursements of all Case Professionals (but not any success or transaction fees) incurred after the Carve-Out Trigger Date not to exceed $500,000.00 (the "Professionals Expense Cap"), subject to such fees and expense reimbursements becoming Allowed Fees;

provided, however, that any payments actually made to fund unpaid fees and expenses of Case Professionals incurred on or after the Carve-Out Trigger Date shall reduce the Professionals Expense Cap on a dollar for dollar basis.

The Professionals Expense Cap shall be automatically reduced, on a dollar for dollar basis, by the amount of any unused retainers held by Case Professionals on the Carve-Out Trigger Date. Any unused retainers held by Case Professionals on the Petition Date shall be used to pay any Allowed Fees of such Case Professionals before any payment of such Allowed Fees are made from the DIP Facility or DIP Collateral.  As used herein, the terms: (i) "Allowed Fees" shall mean fees and expense reimbursement of Case Professionals solely to the extent such fees and expenses have been approved, on a final basis, by an order of this Court that has not been vacated or stayed; (ii) "Case Professionals" shall mean attorneys, accountants, financial advisors, consultants and other professionals employed, pursuant to sections 327, 328 or 1103 of the Bankruptcy Code, as applicable, by the Debtors or any Committee; and (iii) "Carve-Out Trigger Date" shall mean the first business day after the DIP Agent provides notice (the "Carve-Out Trigger Notice") to the Debtors of the occurrence of an Event of Default.  The Carve-Out and any payments made in respect of the Carve-Out shall not reduce (but shall be added to and made a part of)  the DIP Obligations, and shall be otherwise entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code and applicable law.

(b)    **No Direct Payment Obligation.**  The DIP Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of Case Professionals incurred in connection with the Chapter 11 Cases, any Successor Cases or otherwise.  Nothing in this Interim Order or otherwise shall be construed:  (i) to obligate the DIP Secured Parties or the Prepetition Second Lien Lender in any way to pay compensation to or to

reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; or (ii) to increase the Carve-Out if Allowed Fees are higher in fact than the amounts subject to the Carve-Out as set forth in this Interim Order.

(c)    **No Waiver of Right to Object to Fees; Payment of Compensation**. Nothing in this Interim Order shall be construed as consent to the allowance of any fees or expense reimbursements of any Case Professionals or shall affect the right of the DIP Secured Parties or the Prepetition Second Lien Lender to object to the allowance and payment of such fees and expense reimbursements or to permit the Debtors to pay any such amounts not set forth in the DIP Budget.

9.    **Limitations on Use of DIP Facility, DIP Collateral, Cash Collateral, and Carve-Out**.  The DIP Facility, DIP Collateral, Cash Collateral and Carve-Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of DIP Agent, DIP Lenders or the Prepetition Secured Lenders, or their respective rights and remedies under the DIP Loan Documents, the Prepetition Secured Credit Documents or this Interim Order, as applicable, including, without limitation, for the payment of any services rendered by professionals retained by the Debtors or any Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration or similar relief, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Obligations or the Prepetition Secured Obligations, (iii) for monetary, injunctive or other affirmative relief against any DIP Agent, DIP

Lender, or Prepetition Secured Lender, or their respective collateral, or (iv) preventing, hindering

or otherwise delaying the exercise by the DIP Agent, the DIP Lenders, or the Prepetition Second

Lien Lender of any rights and/or remedies under this Interim Order, the DIP Loan Documents, or

applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further

order of the Court or otherwise) by the DIP Agent, the DIP Lenders or the Prepetition Second

Lien Lender upon any of the DIP Collateral; (b) to make any distribution under a plan of

reorganization in any of the Chapter 11 Cases without the prior written consent of the DIP Agent

and the Required Lenders; (c) to make any payment in settlement of any claim, action or

proceeding, before any court, arbitrator or other governmental body without the prior written

consent of the DIP Agent and the Required Lenders; (d) to pay any fees or similar amounts to

any person who has proposed or may propose to purchase interests in the Debtors without the

prior written consent of the DIP Agent and the Required Lenders; (e) to object to, contest, or

interfere with in any way the DIP Agent's or any DIP Lender's enforcement or realization upon

any of the DIP Collateral once an Event of Default has occurred; (f) to use or seek to use Cash

Collateral or to sell or otherwise dispose of DIP Collateral without the consent of the DIP Agent

and the Required Lenders; (g) to object to or challenge in any way the claims, liens, or interests

(including interests in the Prepetition Collateral or DIP Collateral) held by or on behalf of the

DIP Agent, the DIP Lenders, or the Prepetition Secured Lenders; (h) to assert, commence or

prosecute any claims or causes of action whatsoever, including, without limitation, any actions

under chapter 5 of the Bankruptcy Code, against the DIP Agent, DIP Lenders, or the Prepetition

Secured Lenders; (i) to prosecute an objection to, contest in any manner, or raise any defenses to,

the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition

Secured Obligations, Prepetition Liens, DIP Obligations or DIP Liens or any other rights or

interests of the Prepetition Secured Lenders, the DIP Agent or DIP Lenders; (j) to seek the modification, stay, or amendment of this Interim Order or any of the DIP Loan Documents without the prior written consent of the DIP Agent and Required Lenders; or (k) to prevent, hinder or otherwise delay the exercise by the DIP Agent, DIP Lenders or the Prepetition Secured Lenders of any rights and remedies granted under this Interim Order.  Notwithstanding the foregoing, an aggregate amount not to exceed $35,000 of the DIP Facility (subject to the entry of the Final Order), the DIP Collateral, Cash Collateral and Carve-Out may be used by any Committee to investigate the Prepetition Secured Obligations and Prepetition Liens within the Challenge Period.  Nothing in this section shall impair the Debtors' ability to take actions in accordance with their fiduciary duties.

10.    **Additional Covenants and Protections**:  Without in any manner limiting the terms or requirements of the DIP Loan Documents or this Interim Order:

(a)    the Debtors shall not propose, file, support or pursue confirmation of a chapter 11 plan unless such plan provides for the Repayment in Full of DIP Obligations (as defined below); and

(b)    the Debtors shall provide the Prepetition Second Lien Lender and its representatives with all access to records, notices, reports and other information provided or made available to the DIP Agent pursuant to Section 8.01 of the DIP Financing Agreement.

11.    **Section 506(c) Claims**.  Nothing contained in this Interim Order or the DIP Loan Documents shall be deemed a consent by the DIP Secured Parties or the Prepetition Second Lien Lender to any charge, security interest, lien, assessment or claim against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.  Subject to entry of the Final Order, the Debtors hereby waive any right they may have to seek to impose any charge, security interest,

lien, assessment or claim against the DIP Secured Parties' or the Prepetition Second Lien Lender's interests in the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.  Upon entry of the Final Order, and except with respect to the Carve-Out, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Cases at any time shall be charged against the DIP Secured Parties, their claims, or DIP Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Agent, the Required Lenders and the Prepetition Second Lien Lender, and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Agent, the Required Lenders and the Prepetition Second Lien Lender.

12.    **Collateral Rights**.    Unless the DIP Agent and the Required Lenders have provided their prior written consent or (i) all DIP Obligations have been indefeasibly paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness described in subparagraph (a) below), (ii) all commitments to lend have terminated, and (iii) all issued and outstanding letters of credit and indemnity obligations under the DIP Financing Agreement have been cash collateralized (the actions set forth in clauses (i), (ii) and (iii), collectively, "Repayment in Full of DIP Obligations"), there shall not be entered in these Chapter 11 Cases, or in any Successor Cases, any order which authorizes any of the following:

(a)    the obtaining of credit or the incurring of indebtedness, pursuant to sections 364(c) or 364(d) of the Bankruptcy Code, that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral and/or entitled to priority administrative status which is equal or senior to those granted to the DIP Secured Parties; or

(b)    relief from stay by any person holding or asserting liens junior to the liens of the DIP Secured Parties on all or any portion of the DIP Collateral; or

13.    **Disposition of Collateral**.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, without the prior written consent of the DIP Agent and the Required Lenders (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Agent or the Required Lenders, or an order of this Court), except: (i) as otherwise provided for in the DIP Financing Agreement and this Interim Order, (ii) as otherwise approved by the Court and consented to by the DIP Agent and the Required Lenders, or (iii) such sale, transfer, lease, encumbrance or other disposition will result in the Repayment in Full of DIP Obligations.  Nothing in this section shall impair the Debtors' ability to take actions in accordance with their fiduciary duties

14.    **Proceeds of Subsequent Financing**.  If at any time prior to the Repayment in Full of DIP Obligations, any of the Debtors or any trustee obtains credit or incurs debt pursuant to section 364(b), 364(c), or 364(d) of the Bankruptcy Code whether or not in violation of the DIP Financing Agreement, any other DIP Loan Documents or this Interim Order, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent and applied to the DIP Obligations as set forth in the DIP Financing Agreement.  For the sake of clarity, if at any time prior to the Repayment in Full of DIP Obligations, any of the Debtors or any trustee receives proceeds from the sale of any DIP Collateral, then all of the cash proceeds derived from such shall be applied in accordance with the terms of the DIP Loan Documents and section 2(d) of this Interim Order.

15.    **Events of Default**.

Each of the following shall constitute an event of default under this Interim Order, unless

expressly waived in writing by the DIP Agent and the Required Lenders (collectively, the "Events of Default"):

(a)    the occurrence of the "Maturity Date" (as defined in the DIP Financing Agreement) without the Repayment in Full of DIP Obligations on or before such date or, if sooner, the occurrence of an "Event of Default" under the DIP Loan Documents (after giving effect to any applicable notice, cure and grace period in the relevant DIP Loan Documents);

(b)    the failure by the Debtors to observe or perform any of the terms, provisions, conditions, covenants or obligations under this Interim Order that, if subject to cure, is not cured within two (2) business days;

(c)    the reversal, vacatur or modification of any provision of this Interim Order; or

(d)    the failure of the Debtors to obtain entry of the Final Order on or before the date which is thirty (30) days after the Petition Date.

Until the Repayment in Full of DIP Obligations, the DIP Protections afforded to the DIP Secured Parties pursuant to this Interim Order and under the DIP Loan Documents, and any actions taken pursuant thereto, shall survive the entry of any order confirming a plan of reorganization or converting any of these Chapter 11 Cases to a Successor Case, and the DIP Protections shall continue in these Chapter 11 Cases and in any Successor Cases, and the DIP Protections granted herein shall maintain their priorities as provided by this Interim Order.

16.    **Rights and Remedies Upon Event of Default**.

(a)    Immediately upon the occurrence and during the continuation of an Event of Default, the DIP Agent may, or shall, at the direction of the Required Lenders, declare (W) all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable, (X)

35

the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains in effect, (Y) the termination of the DIP Financing Agreement and any other DIP Loan Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and/or (Z) a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (any such declaration by the DIP Agent shall be referred to herein as a "Termination Declaration").  The Termination Declaration shall be given by email (or other electronic means) to counsel to the Debtors, counsel to the DIP Agent, counsel to the Prepetition Second Lien Lender, counsel to any Committee and the United States Trustee (the date any such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date").

(b)    The DIP Obligations shall be due and payable, without notice or demand, on the Termination Declaration Date.  From and after the Termination Declaration Date, the Debtors shall not have any right to use, and except as specifically provided in this paragraph the Debtors and other parties in interest shall not seek authority to use, Cash Collateral without the express written consent of the DIP Agent and the Required Lenders in their sole discretion.  Any automatic stay otherwise applicable to the DIP Agent or the DIP Lenders is hereby modified so that five (5) days after the Termination Declaration Date (the "Remedies Notice Period"), the DIP Agent and the DIP Lenders shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Loan Documents and this Interim Order and shall be permitted to satisfy the DIP Obligations and DIP Superpriority Claims, subject to the Carve-Out. During the Remedies Notice Period, the Debtors or the Committee shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default

57135101_6

has occurred and/or is continuing, and seeking other relief in the event it is determined that an Event of Default has not occurred and/or is continuing. Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred and/or is not continuing, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order, and the Debtors (and all other parties in interest) shall have no right to use or seek to use Cash Collateral, and the DIP Agent and the DIP Lenders shall be permitted to exercise all remedies set forth herein, in the DIP Financing Agreement and the DIP Loan Documents, as applicable, and as otherwise available at law against the DIP Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interests in the DIP Collateral or any other rights and remedies granted to the DIP Agent and the DIP Lenders with respect thereto pursuant to the DIP Financing Agreement, DIP Loan Documents or this Interim Order. The rights and remedies of the DIP Agent and the DIP Lenders specified herein are cumulative and not exclusive of any rights or remedies that the DIP Agent and the DIP Lenders may have under the DIP Loan Documents or applicable law. Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred and/or is not continuing, upon the expiration of the Remedies Notice Period the Debtors shall cooperate fully with the DIP Agent and the DIP Lenders in their exercise of rights and remedies, whether against the DIP Collateral or otherwise, including, without limitation, executing and delivering any documents or other instruments, or filing any motions, applications or pleadings requested by the DIP Agent in furtherance of the exercise of any such rights and remedies. If the Court determines prior to the expiration of the Remedies Notice Period that no Event of Default has occurred or is continuing, then the Debtors

57135101_6

shall be permitted to continue using Cash Collateral thereafter, subject to the terms and conditions set forth in this Interim Order (including the Budget).

(c)    If the DIP Agent and/or the DIP Lenders exercise any of their rights and remedies upon the occurrence of an Event of Default under the DIP Loan Documents, the DIP Agent may, or shall, at the direction of the Required Lenders, retain one or more agents to sell, lease or otherwise dispose of the DIP Collateral.  In any exercise of its rights and remedies upon an Event of Default under the DIP Loan Documents, the DIP Agent and the DIP Lenders are authorized to proceed under or pursuant to the DIP Loan Documents..

17.    **Proofs of Claim**.  The DIP Secured Parties will not be required to file proofs of claim in the Chapter 11 Cases or any Successor Cases on account of the DIP Obligations, and the Prepetition Secured Lenders will not be required to file proofs of claim in the Chapter 11 Cases or any Successor Cases on account of the Prepetition Secured Obligations.

18.    **Other Rights and DIP Obligations**.

(a)    **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of Interim Order**.  Based on the evidence presented at the Interim Hearing, and the representations made by the Debtors in the Motion and on the record of the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, with respect to amounts advanced pursuant to this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter reversed or modified by a subsequent order of this or any other Court, the DIP Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code and, provided that the Interim Order is not stayed pending appeal, no such reversal or modification shall affect the validity and enforceability of any advances made under the DIP Facility or the liens or priority authorized or created hereby.  Notwithstanding any such

reversal or modification, any claim granted to the DIP Secured Parties hereunder arising prior to the effective date of such reversal or modification of any DIP Protections granted to the DIP Secured Parties shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Protections granted herein, with respect to any such claim, provided that the Interim Order was not stayed at the time the claim arose.  Because the loans made pursuant to the DIP Financing Agreement are made in reliance on this Interim Order, the obligations owed the DIP Secured Parties prior to the effective date of any reversal or modification of this Interim Order cannot, as a result of any subsequent order in the Chapter 11 Cases or in any Successor Cases or otherwise, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Secured Parties under this Interim Order and/or the DIP Loan Documents, provided that the Interim Order was not stayed at the time such liens or claims arose

(b)    **Discharge Waiver.**  The Debtors expressly stipulate, and the Court finds and adjudicates that the DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the Repayment in Full of DIP Obligations has occurred on or before the effective date of a confirmed plan of reorganization.  The Debtors shall not propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the Repayment in Full of DIP Obligations on the effective date of such plan of reorganization or sale.

57135101_6

(c)    **Binding Effect**.    All of the provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Secured Parties, the Debtors, any Committee, all other creditors of the Debtors and all other parties-in-interest, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in these Chapter 11 Cases, in any Successor Cases, or upon dismissal of any of the Chapter 11 Cases or any Successor Cases.

(d)    **No Waiver**.    The failure of the DIP Secured Parties to seek relief or otherwise exercise their respective rights and remedies, as applicable, under the DIP Loan Documents, this Interim Order or otherwise, shall not constitute a waiver of any of the DIP Secured Parties' rights hereunder, thereunder, or otherwise.    Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the DIP Secured Parties to (i) request conversion of the Chapter 11 Cases to cases under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code and this Interim Order, a plan of reorganization; and (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) the DIP Secured Parties may have pursuant to this Interim Order or the DIP Loan Documents, or applicable law.

(e)    **No Third Party Rights**.    Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, landlord, lessor, equity holder or any direct, indirect, or incidental beneficiary.

57135101_6

(f)    **No Marshaling**.  Subject to the entry of the Final Order, the DIP Secured Parties and the Prepetition Second Lien Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

(g)    **Section 552(b)**.  The Debtors agree that (i) the DIP Secured Parties and the Prepetition Second Lien Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and (ii) the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties and the Prepetition Second Lien Lender with respect to proceeds, product, offspring or profits of any of the DIP Collateral.

(h)    **Amendment of DIP Loan Documents**.  The Debtors and the DIP Agent (after having obtained any approvals required of the Required Lenders as required under the DIP Financing Agreement) may amend or waive any provision of the DIP Loan Documents without further order of this Court, provided that such amendment or waiver, in the reasonable judgment of the Debtors and the DIP Agent, is not material.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions of the DIP Loan Documents shall be effective unless set forth in writing, signed by on behalf of the Debtors and the DIP Agent (after having obtain any approvals required of the Required Lenders as required under the DIP Financing Agreement).

19.    **Limitation of Liability**.  In determining to provide the DIP Facility, permitting the use of Cash Collateral, or enforcing the rights and remedies afforded to such parties under this Interim Order and/or the DIP Loan Documents, none of the DIP Secured Parties or the Prepetition Second Lien Lender shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used  in the United States

57135101_6

Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§9601 *et seq*. as amended, or any similar federal statute).  Furthermore, to the maximum extent permitted by law, nothing in this Interim Order or in the DIP Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties or the Prepetition Second Lien Lender any liability for any claims arising from the prepetition or postpetition activities of the Debtors.

20.    **Release and Indemnification of DIP Secured Parties**.    The Debtors shall defend, indemnify, hold harmless and release the DIP Secured Parties and the Indemnified Persons (as defined in the DIP Financing Agreement) to the extent set forth in the DIP Loan Documents.

21.    **Survival of Interim Order**.  All of the provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any chapter 11 plan in the Chapter 11 Cases, (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or any Successor Cases, (c) dismissing any of the Chapter 11 Cases, (d) withdrawing of the reference of any of the Chapter 11 Cases from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court.  The terms and provisions of this Interim Order, including the DIP Protections granted pursuant to this Interim Order and the DIP Loan Documents and any protections granted to the Prepetition Secured Lenders, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections and protections granted to the Prepetition Secured Lenders shall maintain their priority as provided by this Interim Order until (i) in the case of the DIP Secured Parties, until all of the DIP Obligations of the Debtors to the DIP Secured Parties pursuant to the DIP Loan Documents (and this Interim Order) have been

indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms); and (ii) in the case of the Prepetition Secured Lenders, until all of the Prepetition Secured Obligations of the Debtors to the Prepetition Secured Lenders pursuant to the Prepetition Secured Credit Documents have been paid in full and discharged.

(a)  **Inconsistency**.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

(b)  **Enforceability**.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon entry of this Interim Order on the Court's docket. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.  The rights of all parties in interest to object to the terms of the Final Order, the DIP Financing Agreement and any other DIP Financing Document at the Final Hearing are expressly reserved.

(c)  **Objections Overruled**.  All objections to the Motion and the entry of this Interim Order to the extent not withdrawn or resolved, are hereby overruled.

(d)  **No Waivers or Modification of Interim Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Interim Order without the prior written consent of the DIP Agent and the Required Lenders and no such consent shall

be implied by any other action, inaction or acquiescence of the DIP Agent or the Required
Lenders.

22.     **Headings.**  All paragraph headings used in this Interim Order are for ease of
reference only and are not to affect the construction hereof or to be taken into consideration in
the interpretation hereof.

23.     **Final Hearing**.

(a)     The Final Hearing to consider entry of the Final Order and final approval
of the DIP Facility shall be held before The Honorable Stuart M. Bernstein at the United States
Bankruptcy Court for the Southern District of New York, One Bowling Green, 7th Floor,
Courtroom 723, New York, New York 10004-1408 on ____ __, **2016 at _____ _.m.
(prevailing Eastern Time)**.  If no objections to the relief sought in the Final Hearing are filed
and served in accordance with this Interim Order, no Final Hearing may be held, and a separate
Final Order may be presented by the Debtors and entered by this Court.

(b)     On or before June ___, 2016, the Debtors shall serve, by United States
mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final
Hearing (the "Final Hearing Notice"), together with copies of this Interim Order and the Motion,
on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed
prior to such date a request for notices with this Court; (c) counsel for the Committee, if any; (d)
the Office of the United States Trustee, (e) the Internal Revenue Service, (f) counsel to the DIP
Agent, and (g) counsel to each of the Prepetition Secured Lenders.  The Final Hearing Notice
shall state that any party in interest objecting to the entry of the proposed Final Order shall file
written objections with the Clerk of the Bankruptcy Court no later than ____ ___, **2016 at 4:00
p.m. (prevailing Eastern Time)** which objections shall be served so that the same are received

on or before such date by:  (a) counsel for the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036, Attn: Greg Galardi and Jonathan Gill; (b) counsel for the DIP Agent, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10022, Attn: Adam Harris and Frederic Ragucci; (c) counsel for any Committee; (d) counsel for the Prepetition Second Lien Lender, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10033, Attn: David Heller and Joshua Tinkelman, and (e) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014, Attn: Greg M. Zipes and Susan Arbeit.

24.    **Retention of Jurisdiction**.  The Court has and will retain jurisdiction to enforce this Interim Order.


Dated:  June ___, 2016
           New York, New York

_____
STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

[Summary DIP Budget]

DOC ID - 24465816.6
57135101_6