## Exhibit B

**Bidding Procedures and APA Assumption Order**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------------------x
                                      :
In re:                                :          Chapter 11
                                      :
Gawker Media LLC, et al.,¹            :          Case No. 16-11700 (SMB)
                                      :
                        Debtors.      :          (Joint Administration Requested)
                                      :
--------------------------------------------------------x
```

## ORDER (I) AUTHORIZING AND APPROVING BIDDING PROCEDURES, BREAKUP FEE AND EXPENSE REIMBURSEMENT, (II) AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO AND ASSUMPTION OF THE STALKING HORSE ASSET PURCHASE AGREEMENT, (III) APPROVING NOTICE PROCEDURES, (IV) SCHEDULING A SALE HEARING AND (V) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND DETERMINING CURE AMOUNTS

Upon the motion (the "Motion") of the above-captioned debtors (the "Debtors")

in the above-captioned jointly administered chapter 11 cases (the "Cases"), for entry of an order

(this "Order"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States

Code (the "Bankruptcy Code"), rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and rules 6004-1 and 6006-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern

District of New York (the "Local Rules"), (i) authorizing and approving (a) certain proposed

bidding procedures (as attached hereto as **Exhibit 1**, the "Bidding Procedures")² governing the

---

[1]    The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).  The offices of Gawker Media and GMGI are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja's offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures or the Stalking Horse APA, as applicable.

submission of competing proposals to purchase the Acquired Assets pursuant to section 363 of

the Bankruptcy Code and (b) the Breakup Fee and Expense Reimbursement (together, the

"Stalking Horse Bid Protections") to the extent payable pursuant to and on the terms set forth in

the Asset Purchase Agreement (as appended to the Bidding Procedures as **Exhibit A** and,

together with all exhibits thereto, and as may be amended, modified or supplemented from time

to time in accordance with the terms thereof, the "Stalking Horse APA"), dated as of June 10,

2016, by and among the Debtors and ZDGM, LLC (together with its permitted designees,

successors and permitted assigns in accordance with the Stalking Horse APA, the "Stalking

Horse Bidder"), (ii) authorizing and approving the Debtors' assumption of (but not

consummation of) the Stalking Horse APA, pursuant to which the Debtors have agreed to sell the

Acquired Assets to the Stalking Horse Bidder, subject to the terms and conditions contained

therein, (iii) approving the form and manner of notice of the sale of the Acquired Assets (the

"Sale Notice"), (iv) scheduling a hearing for approval of the sale of the Acquired Assets (the

"Sale Hearing") and setting other related dates and deadlines and (v) approving procedures for

the assumption and assignment of the Debtors' Non-Residential Leases and Other Executory

Contracts and the form of and manner of notice of proposed cure amounts; and it appearing that

the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors

and all other parties in interest; and after due deliberation, and good and sufficient cause

appearing therefor,

          **IT IS HEREBY FOUND AND DETERMINED THAT:**

       A.     This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C.

§§ 157 and 1334.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may

enter a final order consistent with Article III of the United States Constitution. Venue of this

proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory and legal predicates for the relief requested in the Motion and

provided for herein are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code,

Bankruptcy Rules 2002, 6004 and 6006, and Local Rules 6004-1 and 6006-1.

D.      Good and sufficient notice of the relief granted by this Order has been given and

no further notice is required. A reasonable opportunity to object or be heard regarding the relief

granted by this Order has been afforded to those parties entitled to notice pursuant to the

Bankruptcy Rules and the Local Rules and all other interested parties.

E.      The Bidding Procedures are fair, reasonable and appropriate and are designed to

maximize the value to be received by the Debtors' estates and creditors.

F.      The Debtors have demonstrated compelling and sound business justifications for

entering into the Stalking Horse APA and incurring the administrative obligations arising

thereunder or in connection therewith, including the provisions related to the payment of the

Stalking Horse Bid Protections under the circumstances, timing and procedures set forth therein.

G.      The Debtors' incurrence of the obligations arising under or in connection with the

Stalking Horse APA, including the provisions related to payment of the Stalking Horse Bid

Protections, is (i) an actual and necessary cost of preserving the Debtors' estates within the

meaning of section 503(b) of the Bankruptcy Code, (ii) of substantial benefit to the Debtors'

estates, their creditors and all other parties in interest, because, among other things, they induced

the Stalking Horse Bidder to submit a bid that will serve as a minimum or floor bid for the

Acquired Assets, (iii) the product of good faith and arm's-length negotiations among the Debtors

and the Stalking Horse Bidder, (iv) reasonable and appropriate in light of the size and nature of

the proposed sale and the efforts that have been and will be expended by the Stalking Horse

Bidder and (v) necessary to induce the Stalking Horse Bidder to enter into the Stalking Horse

APA and to continue to pursue the sale of the Acquired Assets.

H.      The sale of the Acquired Assets as contemplated in the Stalking Horse APA is in

the best interests of the Debtors' estates, their creditors and all other parties in interest, and

represents a reasonable exercise of the Debtors' sound business judgment.

I.      The Debtors' assumption of the Stalking Horse APA is in the best interest of the

Debtors, their respective estates, creditors and other parties in interest, and represents the

reasonable exercise of sound and prudent business judgment by the Debtors.  The Debtors have

met all requirements of section 365(b) of the Bankruptcy Code to assume the Stalking Horse

APA.  The Debtors have provided adequate assurance of future performance under the Stalking

Horse APA within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.  No default

exists in the Debtors' performance under the Stalking Horse APA as of the date of this Order.

J.      The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is

reasonably calculated to provide all interested parties with timely and proper notice of the

proposed sale, including:  (i) the date, time and place of the Auction (if one is held), (ii) the

Bidding Procedures and certain dates and deadlines related thereto, (iii) the objection deadline

for the sale and the date, time and place of the Sale Hearing, (iv) reasonably specific

identification of the assets subject to the proposed sale, (v) instructions for promptly obtaining a

copy of the Stalking Horse APA, (vi) representations describing the proposed sale as being free

and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests

and other encumbrances attaching with the same validity and priority to the sale proceeds,

(vii) the commitment by the Stalking Horse Bidder to assume certain liabilities of the Debtors solely to the extent set forth in the Stalking Horse APA and (viii) notice of the proposed assumption and assignment of Non-Residential Leases and Other Executory Contracts to the Stalking Horse Bidder pursuant to the Stalking Horse APA (or to another Successful Bidder selected at the Auction, if any) and the procedures and deadlines for objecting thereto.  No other or further notice of the proposed sale shall be required.

K.      The Cure Notice attached hereto as **Exhibit 3** is reasonably calculated to provide all non-Debtor counterparties to the Debtors' Non-Residential Leases and Other Executory Contracts with proper notice of the potential assumption and assignment of their Non-Residential Lease or Other Executory Contract, the proposed cure amounts relating thereto, if any, and the related assumption and assignment procedures; provided that the mere listing of any Non-Residential Lease or Other Executory Contract on the Cure Notice does not require or guarantee that such Non-Residential Lease or Other Executory Contract will be assumed and assigned, and all rights of the Debtors with respect to such Non-Residential Leases and Other Executory Contracts are reserved.

L.      The Bidding Procedures comply with the requirements of Local Rule 6004-1.

M.      Entry of this Order is in the best interests of the Debtors' estates, their creditors and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is hereby granted and approved to the extent set forth herein.

**The Bidding Procedures**

2.      The Bidding Procedures, attached hereto as **Exhibit 1**, are approved, and the Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.  The failure to specifically include a reference to any particular provision of

the Bidding Procedures in this Order will not diminish or impair the effectiveness of such

provision.

       3.      Any objections to the Motion or the relief requested therein that have not been

adjourned, withdrawn, or resolved are overruled in all respects on the merits.

       4.      The Bidding Procedures shall govern the submission, receipt and analysis of all

Bids, and any party desiring to submit a higher or better offer shall do so strictly in accordance

with the terms of this Order and the Bidding Procedures.

       5.      The following dates and deadlines regarding competitive bidding are hereby

established (subject to modification in accordance with the Bidding Procedures):

      a.      **Preliminary Bid Deadline:  July 25, 2016 at 5:00 p.m. (Prevailing Eastern Time)** is the deadline by which a person interested in participating in the bidding process must deliver the Preliminary Bid Documents;

      b.      **Qualified Bid Deadline:  July 27, 2016 at 5:00 p.m. (Prevailing Eastern Time)** is the deadline by which all Qualified Bids must be **actually received** by the Debtors' investment banker and legal advisors, as set forth in the Bidding Procedures (the "Bid Deadline"); and

      c.      **Auction**: July 29, 2016 at 10:00 a.m. **(Prevailing Eastern Time)** is the date and time the Auction, if one is needed, will be held at the offices of Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036.

       6.      The Stalking Horse Bidder is a Qualified Bidder, the Stalking Horse APA is a

Qualified Bid and the Stalking Horse Bidder is authorized to submit any Overbids during the

Auction at any time, in each case, pursuant to the Bidding Procedures for all purposes.

       7.      Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to

participate at the Auction. As described in the Bidding Procedures, if the Debtors do not receive

any Qualified Bids other than the Stalking Horse Bidder's Bid, the Debtors will not hold the

Auction, the Stalking Horse Bidder will be deemed the Successful Bidder and the Debtors will

seek final approval at the Sale Hearing of the sale of the Acquired Assets to the Stalking Horse

Bidder, in accordance with the terms of the Stalking Horse APA.

8.      If the Auction is conducted, each Qualified Bidder participating in the Auction

will be required to confirm that it has not engaged in any collusion with respect to the bidding

process or the sale of the Acquired Assets.

9.      If the Auction is conducted, absent irregularities in the conduct of the auction, or

reasonable and material confusion during the bidding, the Court will not consider bids made after

the Auction has been closed.

### Approval of Debtors' Entry Into and Assumption of Stalking Horse APA

10.      The Debtors are authorized to assume and perform all of their respective pre-

closing obligations under the Stalking Horse APA; provided that, for the avoidance of doubt,

consummation of the transactions contemplated by the Stalking Horse APA shall be subject to

entry of an order approving the sale of the Acquired Assets (the "Sale Order") and the

satisfaction or waiver of the other conditions to closing on the terms set forth in the Stalking

Horse APA.

### The Stalking Horse Bid Protections

11.      The Stalking Horse Bid Protections as set forth in the Stalking Horse APA,

including (i) the Breakup Fee in an amount equal to 2.75% of the Base Purchase Price and

(ii) the Expense Reimbursement for the Stalking Horse Bidder's reasonable and documented out-

of-pocket costs and expenses up to a cap of $1,250,000, and the provisions of the Stalking Horse

APA relating thereto, are hereby approved. The Debtors are required to pay the Stalking Horse

Bid Protections to the Stalking Horse Bidder to the extent due and payable under the Stalking

Horse APA, and the Stalking Horse Bidder will not be deemed to waive the Stalking Horse Bid

Protections by rebidding at the Auction.  Pursuant to the Stalking Horse APA, the Stalking Horse

Bidder will be entitled to receive a credit for the full amount of the Stalking Horse Bid

Protections at each round of the Auction.

12.    The Debtors' obligations arising under or in connection with the Stalking Horse

APA, including with respect to the Stalking Horse Bid Protections, shall (i) survive termination

of the Stalking Horse APA, (ii) constitute an administrative expense claim under sections 503(b)

and 507(a)(2) of the Bankruptcy Code and shall be senior to all other administrative expense

claims that may be approved in the Cases and (iii) be payable under the terms and conditions of

the Stalking Horse APA and this Order without any further order of this Court.

13.    Each Debtor's obligations relating to the Stalking Horse Bid Protections arising

under or in connection with the Stalking Horse APA shall be binding and enforceable against

each such Debtor and its respective estate, and, as applicable, subject to section 363(f) of the

Bankruptcy Code, (i) any of its successors or assigns, (ii) any trustee, examiner, or other

representative of the Debtors' estates, (iii) the reorganized Debtors and (iv) any other entity

vested or revested with any right, title or interest in or to a material portion of the assets directly

or indirectly owned by the Debtors or any other person claiming any rights in or control over a

material portion of such assets, excluding any Qualified Bidder that purchases the Acquired

Assets (each, a "Debtor Successor"), as if such Debtor Successor was the Debtors.

**Hearing and Objection Deadline**

14.    The Sale Hearing shall take place in this Court on **August 3, 2016 at 10:00 a.m.**

**(Prevailing Eastern Time)**; provided that the Sale Hearing may be adjourned or rescheduled

without further notice other than announcement in open Court or by the filing of a notice on the

docket of these Cases or a notice of agenda.  Any obligations of the Debtors set forth in the

-8-

Stalking Horse APA that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the Stalking Horse APA are authorized as set forth herein and are fully enforceable as of the date of entry of this Order.

15.    The deadline to file objections, if any, to the transactions contemplated by the Stalking Horse APA or to entry of the Sale Order is **July 25, 2016 at 4:00 p.m. (Prevailing Eastern Time)** (the "Sale Objection Deadline"); provided, that if and only if the Stalking Horse Bidder is **not** the Successful Bidder for the Debtors' assets, counterparties to the Debtors' Non-Residential Leases and Other Executory Contracts shall have until two (2) days before the Sale Hearing to object to the assumption and assignment of a Non-Residential Lease or Other Executory Contract *solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code*. Objections, if any, **must**: (i) be in writing, (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules and any orders of the Court, (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor and (iv) be filed with the Court and served so as to be **actually received** no later than the Sale Objection Deadline, as applicable, by the following parties (the "Objection Notice Parties"): (a) the Debtors: Gawker Media Group, Inc., 114 Fifth Avenue, 2d Floor, New York, New York 10011; Attn: Heather Dietrick; (b) proposed counsel to the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036; Attn: Gregg M. Galardi, Esq. and Jonathan P. Gill, Esq.; (c) the proposed investment banker to the Debtors, Houlihan Lokey, Inc., 123 North Wacker Dr., 4th Floor, Chicago, Illinois, 60606; Attn: Reid Snellenbarger; (d) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014; Fax: (212) 668-2255; (e) counsel to the official committee of unsecured

creditors appointed in the Cases, if any (the "Committee"); and (f) counsel to the Stalking Horse

Bidder, Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004; Attn:

Michael H. Torkin, Esq. and Alexa J. Kranzley, Esq., Fax: (212) 291-9376.

16.    Any replies to objections to the relief sought in the Sale Order shall be submitted

no later than one day before the Sale Hearing.

17.    Failure to object to the relief requested in the Motion by the Sale Objection

Deadline shall be deemed to be "consent" for purposes of section 363(f) of the Bankruptcy Code.

### Sale Notice and Related Relief

18.    The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby

approved.  Within three (3) days of the entry of this Order, the Debtors shall cause the Sale

Notice to be served upon (i) the US Trustee, (ii) counsel to the Committee (if one is appointed),

(iii) parties who are known or reasonably believed to have asserted any lien, encumbrance, claim

or other interest in the Debtors' assets that are the subject of the proposed sale of the Acquired

Assets, if any, (iv) all parties who have filed a notice of appearance and request for service of

papers in the Cases pursuant to Bankruptcy Rule 2002, (v) each counterparty to the Debtors'

Non-Residential Leases and Other Executory Contracts, (vi) all applicable state and local taxing

authorities, including the Internal Revenue Service, (vii) each governmental agency that is an

interested party with respect to the sale of the Acquired Assets contemplated by the Stalking

Horse APA and the transactions proposed thereunder, (viii) the Securities and Exchange

Commission and (ix) counsel to the Stalking Horse Bidder.  In addition, as soon as practicable,

but in any event no later than five (5) Business Days after entry of this Order, the Debtors shall

publish the Sale Notice (modified for publication, as necessary) in the United States edition of

the *USA Today*.

## The Sale Does Not Require the Appointment of a Consumer Privacy Ombudsman

19.     In connection with the sale of the Acquired Assets pursuant to the Stalking Horse APA, the Debtors shall be required to abide by their privacy policies in place as of the date of the Stalking Horse APA, as such policies may be amended from time to time.  Accordingly, no consumer privacy ombudsman need be appointed in connection with the sale under section 363(b)(1) of the Bankruptcy Code.

## Assumption and Assignment Procedures

20.     The procedures set forth below regarding the proposed assumption and assignment of certain Non-Residential Leases and Other Executory Contracts that may be designated to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder selected at the Auction, if any) pursuant to section 365(f) of the Bankruptcy Code (as defined in the Stalking Horse APA, collectively, the "Designated Contracts") in connection with the sale of the Acquired Assets are hereby approved (the "Assumption Procedures").

21.     These Assumption Procedures, as may be modified or supplemented by the Sale Order, shall govern the assumption and assignment of all Designated Contracts:

    a.     **Cure Notice**.  The Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is hereby approved. On or before the date that is fourteen (14) days prior to the Sale Objection Deadline, the Debtors shall file with the Court and serve via first class mail the Cure Notice on all non-Debtor counterparties to all Non-Residential Leases and Other Executory Contracts, and their respective known counsel, and provide a copy of same to the Stalking Horse Bidder. The Cure Notice shall inform each recipient that its respective Non-Residential Lease or Other Executory Contract may be designated by the Stalking Horse Bidder as either assumed or excluded and the timing and procedures relating to such designation, and, to the extent applicable (i) the title of the Non-Residential Lease or Other Executory Contract, (ii) the name of the counterparty to the Non-Residential Lease or Other Executory Contract, (iii) the Debtors' good faith estimates of the cure amounts required in connection with such Non-

Residential Lease or Other Executory Contract, (iv) the identity of the Stalking Horse Bidder and (v) the deadline by which any such Non-Residential Lease or Other Executory Contract counterparty may file an objection to the proposed assumption and assignment and/or cure amount, and the procedures relating thereto; provided, however, that service of a Cure Notice does not constitute an admission that such Non-Residential Lease or Other Executory Contract is an executory contract or unexpired lease.

b.    **Adequate Assurance**.  Upon request by a counterparty under any Non-Residential Lease or Other Executory Contract, the Debtors shall serve, by electronic mail, the evidence of adequate assurance of future performance under the Non-Residential Leases and Other Executory Contracts provided by the Stalking Horse Bidder, including the legal name of the proposed assignee, the proposed use of any leased premises, the proposed assignee's financial ability to perform under the Non-Residential Leases and Other Executory Contracts and a contact person with the proposed assignee that counterparties may contact if they wish to obtain further information regarding the Stalking Horse Bidder.

c.    **Objections**.  Objections, if any, to the proposed assumption and assignment of any Non-Residential Lease or Other Executory Contract or to the cure amount proposed with respect thereto must:  (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules and any order orders of the Court, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof and (iv) be filed with the Court and served so as to be **actually received** by the Objection Notice Parties before the Sale Objection Deadline.

Promptly following the Debtors' selection of the Successful Bidder and the Back-Up Bidder, if any, at the conclusion of the Auction, the Debtors shall announce the Successful Bidder and the Back-Up Bidder, if any, and shall file with the Court a notice of the Successful Bidder and the Back-Up Bidder, if any.  If and only if the Stalking Horse Bidder is **not** the Successful Bidder for the Debtors' assets, counterparties to the Debtors' Non-Residential Leases and Other Executory Contracts shall have until two (2) days before the Sale Hearing to object to the assumption and assignment of a Non-Residential Lease or Other Executory Contract *solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code*.  For the avoidance of doubt, if the Stalking Horse Bidder is the Successful Bidder, all adequate assurance objections must be filed by the Sale Objection Deadline.

      d.     **Dispute Resolution**.  Any objection to the proposed assumption and assignment or related cure of a Non-Residential Lease or Other Executory Contract in connection with the proposed sale that remains unresolved as of the Sale Hearing shall be heard at the Sale Hearing (or at a later date as fixed by the Court) provided that any such objection may be adjourned, in full or in part, by the Debtors to a later date by listing such adjournment in a notice of agenda or other notice filed on the docket of the Cases and served on the affected counterparty.

22.     *Any party who fails to timely file an objection to its scheduled cure amount listed on the Cure Notice or to the assumption and assignment of a Non-Residential Lease or Other Executory Contract (i) shall be forever barred from objecting thereto, including (a) making any demands for additional cure amounts or monetary compensation on account of any alleged defaults for the period prior to the applicable objection deadline against the Debtors, their estates or the Stalking Horse Bidder or other Successful Bidder selected at the Auction, if any, with respect to any such Non-Residential Lease or Other Executory Contract and (b) asserting that the Stalking Horse Bidder or other Successful Bidder has not provided adequate assurance of future performance as of the date of the Sale Order and (ii) shall be deemed to consent to the sale of the Acquired Assets as approved by the Sale Order.*

## Other Relief Granted

23.     The Debtors are authorized to execute and deliver all instruments and documents and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

24.     The Good Faith Deposits of the Stalking Horse Bidder and any other bidder, and any other amounts deposited into escrow pursuant to the applicable purchase agreement (which, in the case of the Stalking Horse Bidder, shall be the Stalking Horse APA), shall be held in the Escrow Account by the Escrow Agent and shall not become property of the Debtors' bankruptcy estates unless the Deposit or other Escrow Amount is otherwise due and payable to the Debtors

in accordance with the applicable purchase agreement (which, in the case of the Stalking Horse

Bidder, shall be the Stalking Horse APA).  The agreements with respect to the Escrow Account

set forth in the Stalking Horse APA (the "Escrow Agreement") shall be binding and enforceable

against the Debtors and their estates in all respects and the Debtors are authorized and directed to

perform its obligations thereunder.  The Debtors are authorized to enter into an escrow

agreement substantially in the form of the Escrow Agreement with each other bidder (if any),

and when executed by the Debtors, such escrow agreements (if any) shall be binding and

enforceable against the Debtors and their estates in all respects.

25.     In the event there is a conflict between this Order and the Motion or the Stalking

Horse APA, this Order shall control and govern.

26.     This Order shall be binding in all respects upon any trustees, examiners,

"responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy cases or upon a

conversion to chapter 7 under the Bankruptcy Code.

27.     The Stalking Horse Bidder has standing to enforce the terms of this Order.

28.     This Order shall be immediately effective and enforceable upon entry hereof,

notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

29.     The requirements set forth in Local Rule 9013-1 are satisfied by the contents of

the Motion.

30.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

31.     The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

32.     All time periods set forth in this Order shall be calculated in accordance with

Bankruptcy Rule 9006(a).

-14-

33.     This Court shall retain jurisdiction with respect to all matters arising from or

related to the implementation or interpretation of the Order.


Dated: July ___, 2016
          New York, New York                          _____
                                                      STUART M. BERNSTEIN
                                                      UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

**Bidding Procedures**

## BIDDING PROCEDURES

On June 10, 2016 (the "Petition Date"), Gawker Media filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Petition Date**").  On June 12, 2016, GMGI and Kinja each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Gawker Media, GMGI, and Kinja, as debtors and debtors in possession (the "Debtors") in the chapter 11 cases (the "Cases") pending in the United States Bankruptcy Court for the Southern District of New York ("Court") and jointly administered under Case No. 16-11700 (SMB), filed a motion [Docket No. [●]] (the "Sale Motion"), seeking, among other things, authorization for the Debtors to perform their obligations under that certain Asset Purchase Agreement (together with all exhibits thereto, and as may be amended, modified or supplemented from time to time in accordance with the terms thereof, the "Stalking Horse APA"),[1] dated as of June 10, 2016, entered into by and among the Debtors and ZDGM LLC (together with its permitted designees, successors and permitted assigns in accordance with the Stalking Horse APA, the "Stalking Horse Bidder"), which is attached hereto as Exhibit A.  As described in the Sale Motion, the Stalking Horse APA contemplates, pursuant to the terms and subject to the conditions and purchase price adjustments contained therein, the sale of the Acquired Assets to the Stalking Horse Bidder in consideration of $90,000,000 plus the assumption of the Assumed Liabilities.

On [●], 2016, the Court entered the "*Order (I) Authorizing and Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (II) Authorizing and Approving the Debtors' Entry Into and Assumption of the Stalking Horse Asset Purchase Agreement, (III) Approving Notice Procedures, (IV) Scheduling a Sale Hearing and (V) Approving Procedures for Assumption and Assignment of Certain Contracts and Leases and Determining Cure Amounts*" [Docket No. [●]] (the "Bidding Procedures and APA Assumption Order"), which, among other things, (i) authorized the Debtors to perform their pre-closing obligations under the Stalking Horse APA and (ii) approved the bidding procedures set forth below (the "Bidding Procedures") governing the submission of competing proposals to purchase the Acquired Assets pursuant to section 363 of the Bankruptcy Code.  The sale of the Acquired Assets will be implemented pursuant to the terms and conditions of the Bidding Procedures and APA Assumption Order and Stalking Horse APA, as the same may be amended pursuant to the terms thereof, subject to the Debtors' selection in their reasonable discretion, after consultation with the Committee (if appointed), of a higher or otherwise better bid as the Successful Bid in accordance with these Bidding Procedures.

The Debtors are offering investors the opportunity to purchase the Acquired Assets pursuant to section 363 of the Bankruptcy Code.  Any interested bidder should contact, as soon as practical, the Debtors' investment bankers, Houlihan Lokey ("Houlihan") at the following address: 123 North Wacker Dr., 4th Floor, Chicago, Illinois, 60606, Attn: Reid Snellenbarger (rsnellenbarger@HL.com), Ryan Sandahl (rsandahl@HL.com) and Mark Patricof (mpatricof@HL.com).

---

[1]    Capitalized terms used but not otherwise defined herein will have the meanings ascribed to them in the Sale Motion or the Stalking Horse APA, as applicable.

## Notice Parties

Information that must be provided under these Bidding Procedures must be provided to the following proposed advisors to the Debtors (collectively, the "Notice Parties"): (i) proposed counsel to the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036; Attn: Gregg M. Galardi, Esq. (gregg.galardi@ropesgray.com) and Jonathan P. Gill, Esq. (jonathan.gill@ropesgray.com); and (ii) the proposed investment banker to the Debtors, Houlihan, 123 North Wacker Dr., 4th Floor, Chicago, Illinois, 60606, Attn: Reid Snellenbarger (rsnellenbarger@HL.com), Ryan Sandahl (rsandahl@HL.com) and Mark Patricof (mpatricof@HL.com).

## Participation Requirements

To participate in the formal bidding process or otherwise be considered for any purpose hereunder, a person (other than the Stalking Horse Bidder) interested in submitting a bid (an "Interested Party") must, on or before July 25, 2016 at 5:00 p.m. (Prevailing Eastern Time), deliver to the Notice Parties, the following documents (the "Preliminary Bid Documents"):

    (a)    an executed confidentiality agreement on terms reasonably acceptable to the Debtors (each, a "Confidentiality Agreement");

    (b)    a statement and other factual support demonstrating to the Debtors' satisfaction in the exercise of their reasonable business judgment that the Interested Party has a *bona fide* interest in purchasing the Acquired Assets; and

    (c)    preliminary proof by the Interested Party of its financial capacity to close a proposed transaction at the Purchase Price (as defined below), which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Interested Party (or, if the Interested Party is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which the Debtors and its advisors will determine.

Only those Interested Parties that, in the Debtors' determination, have submitted acceptable Preliminary Bid Documents (each, a "Potential Bidder") may submit bids. Once the Debtors determine that an Interested Party is a Potential Bidder, the Debtors will notify such Potential Bidder, any other Potential Bidders (including the Stalking Horse Bidder) and the Notice Parties of such determination. The Stalking Horse Bidder will at all times be deemed to be a Potential Bidder.

## Due Diligence

Only Potential Bidders will be eligible to receive due diligence information of the Debtors. The Debtors will provide to each Potential Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information will be commensurate with the due diligence information given to the Stalking

Horse Bidder prior to entry into the Stalking Horse APA[2]; provided that if any Potential Bidder is (or is affiliated with) a competitor of the Debtors, the Debtors will not be required to disclose to such Potential Bidder any trade secrets or proprietary information unless the Confidentiality Agreement executed by such Potential Bidder has an effective term of at least 18 months and contains, in the reasonable discretion of the Debtors, appropriate provisions to ensure that such trade secrets or proprietary information will not be used by such Potential Bidder or its Affiliates for an improper purpose or to gain an unfair competitive advantage.

Each Potential Bidder will comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Potential Bidder and its contemplated transaction.  If the Debtors determine at any time in their reasonable discretion that a Potential Bidder is not reasonably likely to be a Qualified Bidder (as defined below), then the Debtors' obligation to provide due diligence information to such Potential Bidder will terminate and all information provided by Debtors prior to such time will be returned to the Debtors in accordance with the terms of the applicable Confidentiality Agreement.

### Bid Deadline

The deadline for each Potential Bidder to submit a proposal to purchase the Acquired Assets (a "Bid") is July 27, 2016 at 5:00 p.m. (Prevailing Eastern Time) (the "Bid Deadline").  A Good Faith Deposit (as defined below) must be contemporaneously provided with any Bid by wire transfer or certified check pursuant to delivery instructions to be provided by the Debtors before the Bid Deadline.  Each Potential Bidder will deliver written copies of each Bid by electronic mail to the Notice Parties.

Any Bid received after the Bid Deadline will not constitute a Qualified Bid.

### Bid Requirements

To be eligible to participate in the Auction, each Bid must:

(a)     state that the applicable Potential Bidder offers to purchase the Acquired Assets, pursuant to a transaction that is no less favorable to the Debtors' estates, as the Debtors may reasonably determine, than the transactions contemplated in the Stalking Horse APA;

(b)     be accompanied by a deposit (each, a "Good Faith Deposit") in the form of a wire transfer or certified check or such other form acceptable to the Debtors, payable to the order of the Debtors, in an amount equal to 10% of the value of the purchase price;

(c)     specify the amount of cash or other consideration offered by the Potential Bidder (the "Purchase Price"), which Purchase Price must exceed the aggregate sum of

---

[2]     To the extent additional due diligence is available to Potential Bidders, it shall also be made available to the Stalking Horse Bidder.

the following: (i) the Stalking Horse Bidder's Bid; (ii) the Breakup Fee; (iii) the minimum bid increment of $1,000,000; and (iv) the Expense Reimbursement payable to the Stalking Horse Bidder under the Stalking Horse APA; <u>provided</u> that in determining the value of a Bid, the Debtors will not be limited to evaluating the dollar amount of a Bid, but may also consider factors including the liabilities and other obligations to be performed or assumed by the Potential Bidder, the additional administrative and prepetition claims likely to be created by such Bid in relation to other Bids, the proposed revisions to the Stalking Horse APA and other factors affecting the speed, certainty and value of the proposed transactions;

(d)     be irrevocable by the Potential Bidder  until the selection of the Successful Bid in accordance with the terms of these Bidding Procedures; <u>provided</u> that if such Potential Bidder is selected as the Successful Bidder or Back-Up Bidder, its Bid must remain irrevocable until the Debtors' consummation of a sale with the Successful Bidder;

(e)     include an executed asset purchase agreement, together with all exhibits and schedules thereto (including identification of the contracts and leases to be assumed and assigned), pursuant to which the Qualified Bidder proposes to effectuate a proposed transaction at the Purchase Price (or in the case of the Stalking Horse Bidder, at the purchase price set forth in the Stalking Horse APA) (the "<u>Transaction Documents</u>"), which Transaction Documents must include a copy of the Stalking Horse APA, marked to show all changes requested by the Potential Bidder;

(f)     provide a commitment to close as soon as practicable, but in no event later than the Closing Date as set forth in Section 2.7 of the Stalking Horse APA;

(g)     not be conditioned on unperformed due diligence, obtaining financing or any internal approval or otherwise be subject to contingencies more burdensome than those in the Stalking Horse APA;

(h)     contain written evidence of a commitment for financing or other evidence of the ability to consummate a proposed transaction at the Purchase Price (or in the case of the Stalking Horse Bidder, at the purchase price set forth in the Stalking Horse APA) satisfactory to the Debtors in their reasonable discretion, with appropriate contact information for such financing sources;

(i)     contain written evidence satisfactory to the Debtors in their reasonable discretion of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and consummation of such Bid and any Overbid(s) (as defined below), and related Transaction Documents;

(j)     not request or entitle the Potential Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment;

(k)     fully disclose the identity of each entity that will be bidding for the Acquired
        Assets or otherwise financing (including through the issuance of debt in
        connection with such Bid) such Bid, and a summary of any such financing;

(l)     set forth the representatives who are authorized to appear and act on behalf of the
        bidder at the Auction;

(m)     include evidence of the bidder's ability to comply with section 365 of the
        Bankruptcy Code (to the extent applicable), including, without limitation,
        providing adequate assurance of such bidder's ability to perform future
        obligations arising under the contracts and leases proposed in its bid to be
        assumed by the Debtors and assigned to the bidder, in a form that will permit the
        immediate dissemination of such evidence to the counterparties to such contracts
        and leases; and

(n)     constitute a good faith, *bona fide* offer to effectuate the proposed transaction; and

(o)     be received by the Bid Deadline.

## Designation as Qualified Bidder

A qualified bidder ("Qualified Bidder") is a Potential Bidder that, in the Debtors'
reasonable determination, (i) has timely submitted a Bid that satisfies each of the above
requirements and (ii) is able to consummate the proposed transaction within the required
timeframes if selected as the Successful Bidder (such Bid submitted by a Qualified Bidder, a
"Qualified Bid").

Within one (1) Business Day after a Potential Bidder delivers all of the documents
described above, the Debtors will determine in their reasonable discretion whether such Potential
Bidder is a Qualified Bidder, and notify all Qualified Bidders and Notice Parties of such
determination.

For the avoidance of doubt, the Stalking Horse Bidder is a Qualified Bidder, the Stalking
Horse APA is a Qualified Bid and the Stalking Horse Bidder is authorized to submit any
Overbids (as defined below) during the Auction at any time, in each instance without further
qualification required of the Stalking Horse Bidder; provided, however, that the Stalking Horse
Bidder will not be bound to serve as the Back-Up Bidder if it is designated as the Back-Up
Bidder in accordance with the provisions of these Bidding Procedures.

If no Qualified Bids (other than the Stalking Horse Bid) are received by the Bid Deadline,
then the Stalking Horse Bidder will be deemed the Successful Bidder, the Stalking Horse APA
will be the Successful Bid, and, at the Sale Hearing, the Debtors will seek final Court approval of
the sale of the Acquired Assets to the Stalking Horse Bidder in accordance with the terms of the
Stalking Horse APA.

## "As Is, Where Is"

Any sale or transfer of the Acquired Assets will be on an "as is, where is" basis and without representations or warranties of any kind by the Debtors, their agents or the Debtors' chapter 11 estates, except and solely to the extent expressly set forth in a final purchase agreement approved by the Court as the Successful Bid. Each Qualified Bidder will be required to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Debtors' assets that are the subject of the Auction prior to making its Bid and that it has relied solely upon its own independent review and investigation in making its Bid. Except as otherwise provided in a final purchase agreement approved by the Court as the Successful Bid, all of the Debtors' right, title and interest in the Acquired Assets will be sold or transferred free and clear of all Liens (other than Permitted Liens) as proposed in the Stalking Horse APA, with any Liens (other than Permitted Liens) to attach to the proceeds of the sale of the Acquired Assets as provided in the proposed form of sale order attached to the Sale Motion.

## Auction

If the Debtors receive one or more Qualified Bids in addition to the Stalking Horse Bid, the Debtors will conduct an auction (the "Auction") to determine the highest or otherwise best bid with respect to the Acquired Assets. The Auction will commence on July 29, 2016 at 10:00 a.m. (Prevailing Eastern Time) at the offices of Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, or on such other date and/or at such other location as determined by the Debtors, with the prior consent of the Committee (if appointed), and the Stalking Horse Bidder (not to be unreasonably withheld, conditioned or delayed).

No later than the day prior to the commencement of the Auction, the Debtors will (i) notify all Qualified Bidders and Notice Parties in writing of the highest or otherwise best Qualified Bid, as determined by the Debtors in their reasonable discretion (the "Baseline Bid"), and (ii) provide all Qualified Bidders with complete copies of all Transaction Documents and all other bid materials submitted by each other Qualified Bidder, subject to exclusion of any confidential financial information as determined by the Debtors in their reasonable discretion or which has been so designated by the Qualified Bidder. The Debtors' determination of which Qualified Bid constitutes the Baseline Bid may take into account a number of relevant considerations, including payment of the Breakup Fee and Expense Reimbursement, financial condition of the applicable bidder and certainty of closing.

No later than the day prior to the commencement of the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid will nevertheless remain fully enforceable against such Qualified Bidder.

If there is an Auction, it will be conducted according to the following procedures:

(a)    Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction. Only the authorized representatives of each of the Qualified Bidders (including the Stalking Horse Bidder), the Debtors and their

advisors, and if appointed, the Committee (including Committee members and their counsel) will be permitted to attend the Auction.

(b)     The Debtors and their professionals will direct and preside over the Auction.  At the start of the Auction, the Debtors will describe the terms of the Baseline Bid.  All Bids made thereafter must be Overbids (as defined below) and will be made and received on an open basis, and all material terms of each Bid will be fully disclosed to all other Qualified Bidders.  The Debtors will maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.  Each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the sale of the Acquired Assets.

(c)     During the Auction, bidding will begin initially with the Baseline Bid and subsequently continue in minimum increments of at least $1,000,000 (each, an "Overbid").  The Debtors will announce at the Auction the material terms of each Overbid, value each Overbid in accordance with these Bidding Procedures and provide each Qualified Bidder with an opportunity to make a subsequent Overbid.  Additional consideration in excess of the amount set forth in the Baseline Bid may include cash and/or other consideration acceptable to the Debtors in accordance with these Bidding Procedures.  If the Stalking Horse Bidder bids at the Auction, at each round of the Auction, the Stalking Horse Bidder will be entitled to receive a "credit" for (i) the Breakup Fee, and (ii) the Expense Reimbursement payable under the Stalking Horse APA (which amount will be deemed to be, for such purposes only, $1,250,000).  To the extent that an Overbid has been accepted entirely or in part because of the addition, deletion, or modification of a provision or provisions in the applicable Transaction Documents or the Stalking Horse APA, the Debtors will identify such added, deleted, or modified provision or provisions.

(d)     Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept a higher or otherwise better bid submitted by another Qualified Bidder during the Auction as an Overbid, and (ii) such Overbid is not selected as the Back-Up Bid (as defined below).  Other than the Stalking Horse Bidder, to the extent not previously provided (which will be determined by the Debtors), a Qualified Bidder submitting an Overbid must submit at the Debtors' request, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) demonstrating such Qualified Bidder's ability to close the transaction at the purchase price contemplated by such Overbid.

## Selection of Successful Bid

At the conclusion of the Auction, the Debtors, in the exercise of their reasonable business judgment, will select (i) the highest or otherwise best bid submitted by a Qualified Bidder during the Auction that the Debtors believe is most beneficial to the Debtors (the "Successful Bid"), and

(ii) except as set forth below with regards to the Stalking Horse Bidder, at the Debtors' discretion, the next highest or otherwise best bid after the Successful Bid (the "Back-Up Bid"). In selecting the Successful Bid and the Back-Up Bid, if any, the Debtors shall take into account the expected net benefit of the transaction to the Debtors' estates, including the likelihood of the transaction with the Qualified Bidder actually closing and the timing thereof. The Qualified Bidder that submits the Successful Bid will be deemed the "Successful Bidder." The Qualified Bidder that submits the Back-Up Bid, if any, will be deemed the "Back-Up Bidder"; provided that the Stalking Horse Bidder will be deemed to be the Back-Up Bidder only with the prior written consent of the Stalking Horse Bidder, exercisable in its sole and absolute discretion. In the event the Debtors select the Stalking Horse APA as the Back-Up Bid and the Stalking Horse Bidder does not consent to be the Back-Up Bidder, the Debtors may select the next highest and otherwise best bid submitted by a Qualified Bidder during the Auction, as determined by the Debtors pursuant to these Bidding Procedures, as the Back-Up Bid, and the Qualified Bidder that submitted such Qualified Bid will be deemed to be the Back-Up Bidder.

The Auction will close when the Debtors announce that the Auction has concluded and a Successful Bid and, to the extent the Debtors determine, a Back-Up Bid, have been selected. Notwithstanding anything herein to the contrary, the Debtors are authorized, but not required, to select a Back-Up Bidder and Back-Up Bid. For the avoidance of doubt, the Debtors will not consider or support any bid for any of the Acquired Assets (whether or not such bid is made by a Qualified Bidder) received after the close of the Auction.

The Back-Up Bid, if any, will remain open and binding on the Back-Up Bidder until consummation of the Successful Bid with the Successful Bidder. If the Successful Bidder fails to consummate the Successful Bid within the time set forth therein, the Debtors will be authorized, but not required, to select the Back-Up Bidder, if any, as the new Successful Bidder, and shall proceed to consummate the Successful Bid of the new Successful Bidder.

## Implementation of the Sale

The hearing to authorize the sale of the Acquired Assets to the Successful Bidder pursuant to the Successful Bid (the "Sale Hearing") will be held before the Court on August 3, 2016, at 10:00 a.m. (Prevailing Eastern Time). The Sale Hearing may be adjourned or rescheduled by the Debtors, with the consent of the Successful Bidder, to a time and date consistent with the Court's calendar, as set forth in notice on the docket of the Cases, a notice of agenda or stated orally at the Sale Hearing. The Debtors may not consider or support any other bid to purchase the Acquired Assets pending consideration by the Court of the Successful Bid at the Sale Hearing.

Upon the Court's approval of the Successful Bid, the Successful Bid will be deemed accepted by the Debtors, and the Debtors will be bound to the terms of that Successful Bid with no further opportunity for an auction or other process.

## Additional Procedures and Modifications

The Debtors may modify the rules, procedures and deadlines set forth herein, or adopt new rules, procedures and deadlines that, in their reasonable discretion, will better promote the

goals of these procedures, namely, to maximize value for the estates; <u>provided</u> that all modifications and additional rules, procedures and deadlines will be non-material, may in no event extend the dates specified in Bidding Procedures and APA Assumption Order, including permitting the submission of Bids after the close of the Auction and otherwise not conflict with the Stalking Horse APA or alter any provisions related to or granted to the Stalking Horse Bidder.  All such modifications and additional rules will be communicated to each of the Notice Parties, Potential Bidders and Qualified Bidders.

### <u>Consent to Jurisdiction as Condition to Bidding</u>

All Qualified Bidders at the Auction will be deemed to have consented to the exclusive jurisdiction of the Court with respect to all matters relating to the Auction and the construction and enforcement of each Qualified Bidder's Transaction Documents, and waived any right to a jury trial in connection with any disputes relating to the Auction.

### <u>Return of Good Faith Deposit</u>

All Good Faith Deposits will be held by the Debtors in a non-interest-bearing escrow or trust account.  Good Faith Deposits of Qualified Bidders, other than the Successful Bidder and the Back-Up Bidder, if any, will be returned to the unsuccessful bidders within five (5) Business Days after selection of the Successful Bidder and Back-Up Bidder, if any, in accordance with these Bidding Procedures; <u>provided</u> that if the Stalking Horse Bidder is not the Successful Bidder, the Stalking Horse Bidder's Good Faith Deposit shall be returned to the Stalking Horse Bidder in accordance with the Stalking Horse APA.  The Successful Bidder's Good Faith Deposit will be applied to the Purchase Price of the Successful Bid at closing, and the Debtors will be entitled to retain such Good Faith Deposit as part of their damages if the Successful Bidder fails to meet its obligations to close the transaction contemplated by the Successful Bid. The Good Faith Deposit of the Back-Up Bidder, if any, will be returned to the Back-Up Bidder, if any, within five (5) Business Days after the consummation of the sale with the Successful Bidder.

### <u>Reservation of Rights; Deadline Extension</u>

Notwithstanding any of the foregoing (other than the "Additional Procedures and Modifications" section above), the Debtors reserve their rights, in the exercise of their fiduciary obligations, to modify the Bidding Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Acquired Assets or any subset thereof, including, without limitation, extending the deadlines set forth in the Bidding Procedures, modifying bidding increments, and adjourning the Auction at the Auction and/or adjourning the Sale Hearing without further notice.

## Exhibit A

**Stalking Horse APA**

## **Exhibit 2**

**Sale Notice**

R OPES & G RAY LLP
Gregg M. Galardi
Jonathan P. Gill
Marc B. Roitman
Kristina K. Alexander
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile:  (212) 596-9090

*Proposed Counsel to the Debtors
and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x
                                          :
In re:                                    :        Chapter 11
                                          :
Gawker Media LLC, *et al.*,[1]            :        Case No. 16-11700 (SMB)
                                          :
                Debtors.                  :        (Joint Administration Requested)
                                          :
----------------------------------------------------x

### NOTICE OF (A) SOLICITATION OF BIDS TO PURCHASE SUBSTANTIALLY ALL THE DEBTORS' ASSETS, (B) AUCTION AND (C) SALE HEARING

### PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      On June 13, 2016, the above-captioned debtors and debtors-in-possession

(collectively, the "Debtors") filed the *Debtors' Motion for (I) an Order (A) Authorizing and*

*Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (B) Authorizing and*

*Approving the Debtors' Entry Into and Assumption of the Stalking Horse Asset Purchase*

*Agreement, (C) Approving Notice Procedures, (D) Scheduling A Sale Hearing and (E)*

*Approving Procedures for Assumption and Assignment of Certain Contracts and Leases and*

---

[1]     The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492);
Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media and GMGI are
located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja's offices are located at Andrassy ut 66.
1062 Budapest, Hungary.

*Determining Cure Amounts and (II) an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (B) Approving the Asset Purchase Agreement and (C) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* [Docket No. __] (the "Sale Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").[2]

2.      You may obtain a copy of the Sale Motion and the Stalking Horse APA by: (a) sending a written request to the Debtors' counsel, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Marc B. Roitman (marc.roitman@ropesgray.com); or (b) accessing the website maintained by the Debtors' claims and noticing agent, Prime Clerk, at http://www.cases.primeclerk.com/gawker.

3.      As outlined in the Sale Motion, the Debtors have agreed upon the terms of a Stalking Horse APA with the Stalking Horse Bidder and will seek capable and willing bidders for all or substantially all of the Debtors' assets (the "Acquired Assets") prior to the Auction date as provided in the Sale Motion and the Bidding Procedures and APA Assumption Order. The proposed sale shall be free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the sale proceeds. The Stalking Horse Bidder has committed to assume certain liabilities of the Debtors solely to the extent set forth in the Stalking Horse APA.

4.      On _____, 2016, the Bankruptcy Court entered the Bidding Procedures and APA Assumption Order [Docket No. __]. The Bidding Procedures and APA Assumption Order approved, among other things, the Debtors' assumption and performance of

---

[2] Capitalized terms not otherwise defined herein have the meanings given them in the Sale Motion.

their pre-closing obligations of the Stalking Horse APA and the Bidding Procedures, which specify, among other things, procedures under which interested parties may submit a "Qualified Bid" to purchase the Acquired Assets.  All interested parties are invited to submit a Qualified Bid pursuant to the terms of the Bidding Procedures.

5.      The Bidding Procedures establish the following dates and deadlines regarding competitive bidding:

   a.   Preliminary Bid Deadline:  **July 25, 2016 at 5:00 p.m. (Eastern Time)** is the deadline by which a person interested in participating in the bidding process must deliver the Preliminary Bid Documents (as defined in the Bidding Procedures); and

   b.   Qualified Bid Deadline:  **July 27, 2016 at 5:00 p.m. (Eastern Time)** is the deadline by which all Qualified Bids must be actually received by the Debtors' investment banker and legal advisors, as set forth in the Bidding Procedures (the "Bid Deadline").

6.      In the event the Debtors timely receive, on or before the Bid Deadline, one or more Qualified Bids in addition to the Stalking Horse APA, the Debtors shall conduct an Auction at the offices of Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, on **July 29, 2016 at 10:00 a.m. (Eastern Time)** or such later time on such day or such other place as the Debtors notify all Qualified Bidders.

7.      If no Qualified Bids (other than the Stalking Horse Bid) are received by the Bid Deadline, then the Stalking Horse Bidder will be deemed the Successful Bidder, the Stalking Horse APA will be the Successful Bid, and, at the Sale Hearing, the Debtors will seek final Bankruptcy Court approval of the sale of the Acquired Assets to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse APA.

8.      The Sale Hearing will be held in the United States Bankruptcy Court for the Southern District of New York, Courtroom 723, One Bowling Green, New York, New York

10004-1408, on **August 3, 2016 at 10:00 a.m. (Eastern Time)** or such other date and time that

the Bankruptcy Court may later direct.

        9.      Objections to the relief sought in the Sale Order, if any, must: (i) be in

writing; (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules and

any orders of the Court; (iii) state with particularity the legal and factual basis for the objection

and the specific grounds therefor; (iv) be filed with the Court no later than **July 25, 2016 at 4:00**

**p.m. (Eastern Time)** (the "Sale Objection Deadline"); provided, that if and only if the Stalking

Horse Bidder is **not** the Successful Bidder for the Debtors' assets, counterparties to the Debtors'

Non-Residential Leases and Other Executory Contracts shall have until two (2) days before the

Sale Hearing to object to the assumption and assignment of a Non-Residential Lease or Other

Executory Contract *solely on the issue of whether the Successful Bidder or Back-Up Bidder*

*can provide adequate assurance of future performance as required by section 365 of the*

*Bankruptcy Code*; and (v) be served so as to be actually received no later than the Sale

Objection Deadline, as applicable, by the following parties (the "Objection Notice Parties"): (a)

the Debtors: Gawker Media Group, Inc., 114 Fifth Avenue, 2d Floor, New York, New York

10011; Attn: Heather Dietrick; (b) proposed counsel to the Debtors, Ropes & Gray LLP, 1211

Avenue of the Americas, New York, NY 10036; Attn: Gregg M. Galardi, Esq. and Jonathan P.

Gill, Esq.; (c) the proposed investment banker to the Debtors, Houlihan Lokey, Inc., 123 North

Wacker Dr., 4th Floor, Chicago, Illinois, 60606; Attn: Reid Snellenbarger; (d) the Office of the

United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New

York, New York 10014; Fax: (212) 668-2255; (e) counsel to the official committee of unsecured

creditors appointed in the Cases, if any; and (f) counsel to the Stalking Horse Bidder, Sullivan &

Cromwell LLP, 125 Broad Street, New York, New York 10004; Attn: Michael H. Torkin, Esq. and Alexa J. Kranzley, Esq., Fax: (212) 291-9376.

10.     On or before the date that is fourteen (14) days prior to the Sale Objection Deadline, the Debtors shall file with the Court and serve via first class mail the Cure Notice on all non-Debtor counterparties to all Non-Residential Leases and Other Executory Contracts, and their respective known counsel, and provide a copy of same to the Stalking Horse Bidder.  Upon request by a counterparty under any Non-Residential Lease or Other Executory Contract, the Debtors shall serve, by electronic mail, the evidence of adequate assurance of future performance under the Non-Residential Leases and Other Executory Contracts provided by the Stalking Horse Bidder.  Objections, if any, to the proposed assumption and assignment of any Non-Residential Lease or Other Executory Contract or to the cure amount proposed with respect thereto must: (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules and any order orders of the Court, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof and (iv) be filed with the Court and served so as to be actually received by the Objection Notice Parties before the Sale Objection Deadline.

11.     Promptly following the Debtors' selection of the Successful Bidder and the Back-Up Bidder, if any, at the conclusion of the Auction, the Debtors shall announce the Successful Bidder and the Back-Up Bidder, if any, and shall file with the Court a notice of the Successful Bidder and the Back-Up Bidder, if any.  If and only if the Stalking Horse Bidder is **not** the Successful Bidder for the Debtors' assets, counterparties to the Debtors' Non-Residential Leases and Other Executory Contracts shall have until two (2) days before the Sale Hearing to

object to the assumption and assignment of a Non-Residential Lease or Other Executory Contract *solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code*. For the avoidance of doubt, if the Stalking Horse Bidder is the Successful Bidder, all adequate assurance objections must be filed by the Sale Objection Deadline.

12.    The Auction or the Sale Hearing or both may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court or on the Bankruptcy Court's docket.

13.    *Any party who fails to timely file an objection to entry of the Sale Order (i) shall be forever barred from objecting thereto, (ii) shall be deemed to consent to the sale of the Acquired Assets as approved by the Sale Order, and (iii) shall be deemed to "consent" for purposes of section 363(f)(2) of the Bankruptcy Code.*

Dated: _____, 2016
       New York, New York

_____
ROPES & GRAY LLP
Gregg M. Galardi
Jonathan P. Gill
Marc B. Roitman
Kristina K. Alexander
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
Email: Gregg.Galardi@ropesgray.com
       Jonathan.Gill@ropesgray.com
       Marc.Roitman@ropesgray.com
       Kristina.Alexander@ropesgray.com

*Proposed Counsel to the Debtors
and Debtors in Possession*

## Exhibit 3

**Cure Notice**

ROPES & GRAY LLP
Gregg M. Galardi
Jonathan P. Gill
Marc B. Roitman
Kristina K. Alexander
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile:  (212) 596-9090

*Proposed Counsel to the Debtors
and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x
:
In re:                                      :         Chapter 11
                                            :
Gawker Media LLC, *et al.*,[1]              :         Case No. 16-11700 (SMB)
                                            :
              Debtors.                      :         (Joint Administration Requested)
                                            :
---------------------------------------------------x

## NOTICE OF (A) PROPOSED ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE AND (B) ASSOCIATED CURE COSTS

### PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      On June 13, 2016, the above-captioned debtors and debtors-in-possession

(collectively, the "Debtors") filed the *Debtors' Motion for (I) an Order (A) Authorizing and*

*Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (B) Authorizing and*

*Approving the Debtors' Entry Into and Assumption of the Stalking Horse Asset Purchase*

*Agreement, (C) Approving Notice Procedures, (D) Scheduling A Sale Hearing and (E)*

*Approving Procedures for Assumption and Assignment of Certain Contracts and Leases and*

---

[1]     The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media and GMGI are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja's offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

*Determining Cure Amounts and (II) an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (B) Approving the Asset Purchase Agreement and (C) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* [Docket No. __] (the "Sale Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").[2]

2.        As outlined in the Sale Motion, the Debtors have agreed upon the terms of a Stalking Horse APA with the Stalking Horse Bidder and will seek capable and willing bidders for all or substantially all of the Debtors' assets (the "Acquired Assets") prior to the Auction date as provided in the Sale Motion and the Bidding Procedures and APA Assumption Order.

3.        You may obtain a copy of the Sale Motion and the Stalking Horse APA by: (a) sending a written request to the Debtors' counsel, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Marc B. Roitman (marc.roitman@ropesgray.com); or (b) accessing the website maintained by the Debtors' claims and noticing agent, Prime Clerk, at http://www.cases.primeclerk.com/gawker.

4.        On _____, 2016, the Bankruptcy Court entered the Bidding Procedures and APA Assumption Order [Docket No. __].  The Bidding Procedures and APA Assumption Order specifies, among other things, the procedures regarding the proposed assumption and assignment of the executory contracts and unexpired leases that may be designated to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder selected at the Auction, if any)

---

[2] Capitalized terms not otherwise defined herein have the meanings given them in the Sale Motion.

pursuant to section 365(f) of the Bankruptcy Code in connection with the sale of substantially all of the Debtors' assets (the "Sale").

5.     A list of the Debtors' executory contracts and unexpired leases that are subject to potential assumption and assignment in connection with the Sale and the cure costs associated therewith (the "Contract and Cure Schedule") is attached to this notice (the "Cure Notice") as Schedule 1.

6.     Objections, if any, to the proposed assumption and assignment of any of the executory contracts or unexpired leases listed on the Contract and Cure Schedule or to the cure amount proposed with respect thereto must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules and any order orders of the Court; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof; (iv) be filed with the Court no later than **July 25, 2016 at 4:00 p.m. (Eastern Time)** (the "Assignment and Cure Objection Deadline"); provided, that if and only if the Stalking Horse Bidder is **not** the Successful Bidder for the Debtors' assets, counterparties to the Debtors' Non-Residential Leases and Other Executory Contracts shall have until two (2) days before the Sale Hearing to object to the assumption and assignment of a Non-Residential Lease or Other Executory Contract *solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code*; and (v) be served so as to be actually received no later than the Assignment and Cure Objection Deadline, as applicable, by the following parties: (a) the Debtors: Gawker Media Group, Inc., 114 Fifth Avenue, 2d Floor, New York, New York 10011; Attn: Heather Dietrick; (b) proposed counsel to

the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036; Attn:
Gregg M. Galardi, Esq. and Jonathan P. Gill, Esq.; (c) the proposed investment banker to the
Debtors, Houlihan Lokey, Inc., 123 North Wacker Dr., 4th Floor, Chicago, Illinois, 60606; Attn:
Reid Snellenbarger; (d) the Office of the United States Trustee for the Southern District of New
York, 201 Varick Street, Suite 1006, New York, New York 10014; Fax: (212) 668-2255; (e)
counsel to the official committee of unsecured creditors appointed in the Cases, if any; and (f)
counsel to the Stalking Horse Bidder, Sullivan & Cromwell LLP, 125 Broad Street, New York,
New York 10004; Attn: Michael H. Torkin, Esq. and Alexa J. Kranzley, Esq., Fax: (212) 291-
9376.

       7.     If and only if the Stalking Horse Bidder is not the Successful Bidder for
the Debtors' assets, counterparties to the executory contracts or unexpired leases listed on the
Contract and Cure Schedule shall have until two (2) days before the Sale Hearing to object to the
assumption and assignment of an executory contract or unexpired lease listed on the Contract
and Cure Schedule solely on the issue of whether the Successful Bidder or Back-Up Bidder can
provide adequate assurance of future performance as required by section 365 of the Bankruptcy
Code. For the avoidance of doubt, if the Stalking Horse Bidder is the Successful Bidder, all
adequate assurance objections must be filed by the Assignment and Cure Objection Deadline.

       8.     The Sale Hearing will be held in the United States Bankruptcy Court for
the Southern District of New York, Courtroom 723, One Bowling Green, New York, New York
10004-1408, on **August 3, 2016 at 10:00 a.m. (Eastern Time)** or such other date and time that
the Bankruptcy Court may later direct.   Any objection to the proposed assumption and
assignment or related cure of an executory contract or unexpired lease listed on the Contract and
Cure Schedule in connection with the proposed sale that remains unresolved as of the Sale

Hearing shall be heard at the Sale Hearing (or at a later date as fixed by the Court) provided that any such objection may be adjourned, in full or in part, by the Debtors to a later date by listing such adjournment in a notice of agenda or other notice filed on the docket of the Cases and served on the affected counterparty.

9.      *Any party who fails to timely file an objection to its scheduled cure amount listed on the Contract and Cure Schedule or to the assumption and assignment of an executory contract or unexpired lease listed on the Contract and Cure Schedule (i) shall be forever barred from objecting thereto, including (a) making any demands for additional cure amounts or monetary compensation on account of any alleged defaults for the period prior to the applicable objection deadline against the Debtors, their estates or the Stalking Horse Bidder or other Successful Bidder selected at the Auction, if any, with respect to any such executory contract or unexpired lease and (b) asserting that the Stalking Horse Bidder or other Successful Bidder has not provided adequate assurance of future performance as of the date of the Sale Order and (ii) shall be deemed to consent to the sale of the Acquired Assets as approved by the Sale Order*.

Dated: _____, 2016
           New York, New York

_____

Ropes & Gray LLP
Gregg M. Galardi
Jonathan P. Gill
Marc B. Roitman
Kristina K. Alexander
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
Email: Gregg.Galardi@ropesgray.com
           Jonathan.Gill@ropesgray.com
           Marc.Roitman@ropesgray.com
           Kristina.Alexander@ropesgray.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

## **SCHEDULE 1**

Contract and Cure Schedule