**<u>Exhibit C</u>**

**Sale Order**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Gawker Media LLC, *et al.*,[1] | Case No. 16-11700 (SMB) |
| Debtors. | (Joint Administration Requested) |
| | **Re: Docket No. [●]** |

## ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES, (II) APPROVING THE ASSET PURCHASE AGREEMENT AND (III) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the motion (the "Motion") of Gawker Media LLC, Gawker Media Group, Inc., and Kinja Kft., the debtors and debtors in possession (collectively, the "Debtors"), for the entry of an order, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and rules 1005, 2002, 6004, 6006, 9007, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving the Asset Purchase Agreement by and between the Debtors and ZDGM, LLC (together with its permitted designees, successors and permitted assigns in accordance with the APA, the "Buyer"), dated June 10, 2016 (substantially in the form attached hereto as **Exhibit 1**, and as may be amended, modified or supplemented from time to time in accordance with the terms thereof, the "APA"),[2] whereby the Debtors have agreed to sell, and Buyer has agreed to acquire, substantially all of the Debtors' assets (collectively, and as specifically set forth and defined in the APA, the "Acquired Assets")

---

[1]     The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).  The offices of Gawker Media and GMGI are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja's offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures or the APA, as applicable.

other than the Excluded Assets, and the Debtors have agreed to transfer and Buyer has agreed to assume certain of the Debtors' liabilities (collectively, and as specifically set forth and defined in the APA, the "Assumed Liabilities") (collectively, and including all actions taken or required to be taken in connection with the implementation and consummation of the APA, the "Transactions"); (ii) authorizing and approving the sale of the Acquired Assets (the "Sale"), free and clear, to the maximum extent permitted under section 363(f) of the Bankruptcy Code, of any and all Liens, including any Liens arising out of bulk transfer law, debts and claims (as that term is defined in section 101(5) of the Bankruptcy Code), Liabilities, obligations, costs, expenses, causes of action, avoidance actions, demands, guaranties, options, rights, contractual commitments, settlements, injunctions, restrictions, interests, encumbrances, reclamation rights, and similar matters of any kind whatsoever, whether known or unknown, fixed or contingent, or arising prior to or subsequent to the commencement of these chapter 11 cases (the "Cases"), and whether imposed by agreement, understanding, law, equity or otherwise (each of the foregoing collectively or individually, and including to the extent not already specified above, Successor or Transferee Liability (as defined in paragraph 21 below), including any and all claims and causes of action of defamation, libel or slander with respect to any content published by the Debtors prior to Closing, but excluding the Assumed Liabilities and Permitted Liens, the "Adverse Interests"), with all such Adverse Interests to attach to the net proceeds of the Sale, in the order of their priority, with the same validity, force and effect that they now have against the Acquired Assets, subject with respect to such net proceeds to any rights, claims and defenses the Debtors or any parties in interest may possess with respect thereto; (iii) authorizing the assumption and assignment to Buyer of certain executory contracts and unexpired leases of the Debtors in accordance with the APA, the Bidding Procedures and APA Assumption Order (as defined

herein) and this Order; and (iv) granting other relief; and the Court having entered an order approving the bidding procedures and granting certain related relief on [●], 2016 [Docket No. [●]] (the "Bidding Procedures and APA Assumption Order"); [and an auction (the "Auction") having been held on [●], 2016 in accordance with the Bidding Procedures and APA Assumption Order;] and Buyer having been deemed the Successful Bidder by the Debtor, in consultation with the official committee of unsecured creditors appointed in the Cases (the "Committee"), if appointed, pursuant to the Bidding Procedures and APA Assumption Order; and the Court having conducted a hearing on the Motion on [●], 2016 (the "Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion, declarations and other evidence filed in support thereof, the APA, the Bidding Procedures and APA Assumption Order, the record of the hearing before the Court on [●], 2016; and having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing; and it appearing that due notice of the Motion, the APA, the Bidding Procedures and APA Assumption Order and the Auction has been provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT HEREBY FINDS AS FOLLOWS:**

### Jurisdiction, Venue, Statutory Bases and Final Order

A.      This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may

enter a final order consistent with Article III of the United States Constitution. Venue of this

proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory and legal predicates for the relief requested in the Motion and

provided for herein are sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy

Rules 1005, 2002, 6004, 6006, 9007, 9014 and 9019.

D.      This Order constitutes a final and appealable order within the meaning of

28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent

necessary under Bankruptcy Rules 9014 and rule 54(b) of the Federal Rules of Civil Procedure,

as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just

reason for delay in the implementation of this Order, and expressly directs entry of judgment as

set forth herein.

**Notice of the Transactions, APA, Sale Hearing, Auction and the Cure Amounts**

E.      Actual written notice of the Sale Hearing, the Auction, the Motion and the Sale,

and a reasonable opportunity to object or be heard with respect to the Motion and the relief

requested therein, has been afforded to all known interested entities including to the following

parties: (i) the office of the United States Trustee for the Southern District of New York;

(ii) counsel to the Committee, if any; (iii) parties who are known or reasonably believed to have

asserted any lien, encumbrance, claim or other interest in the Debtors' assets that are the subject

of the proposed sale of the Acquired Assets, if any; (iv) all parties who have filed a notice of

appearance and request for service of papers in the Cases pursuant to Bankruptcy Rule 2002;

(v) each of the Debtors' current landlords and each counterparty to the Debtors' Non-Residential

Leases and Other Executory Contracts (as defined in the APA); (vi) all applicable state and local

taxing authorities, including the Internal Revenue Service; (vii) each governmental agency that is an interested party with respect to the sale of the Acquired Assets contemplated by the Stalking Horse APA and the transactions proposed thereunder; (viii) the Securities and Exchange Commission; and (ix) counsel to Buyer.

F.      The Debtors published notice of the time and place of the proposed Auction, the time and place of the Sale Hearing and the time for filing an objection to the relief requested in the Motion relating to the Sale in the United States edition of the *USA Today* on [●], 2016.

G.      The foregoing notice was good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the APA or the Transactions is required. The disclosures made by the Debtors concerning the APA, the Auction, the Transactions and the Sale Hearing were good, complete and adequate.

H.      The Debtors have filed and served cure notices (the "Cure Notices") upon all non-Debtor counterparties to all Non-Residential Leases and Other Executory Contracts notifying such parties: (i) that the Debtors may seek to assume and assign such Leases and Contracts on the Closing Date of the Sale as provided in the APA and (ii) of the Debtors' good faith estimates of the cure amounts required in connection with such Lease or Contract.  The Debtors have also filed and served an Assumption Notice upon the non-Debtor counterparties to the Contracts listed on the Closing Designated Contract List, and the Debtors will file and serve, in accordance with the Post-Closing Assumption and Assignment Procedures set forth herein, Post-Closing Designation Notices upon the non-Debtor counterparties to the Non-Residential Leases and Other Executory Contracts that Buyer designates for assumption and assignment.  The service of such notices was good, sufficient and appropriate under the circumstances, and no further notice is required.

-5-

### Highest and Best Offer

I.        As demonstrated by the evidence proffered or adduced at the Sale Hearing and the

representations of counsel made on the record at the Sale Hearing, the Debtors conducted a

marketing process in accordance with, and have otherwise complied in all respects with, the

Bidding Procedures and APA Assumption Order.  The Bidding Procedures were non-collusive

and substantively and procedurally fair to all parties.  All interested persons and entities have

been afforded a full, fair and reasonable opportunity to (i) conduct due diligence investigations,

(ii) submit higher or otherwise better bids to purchase the assets of the Debtors and (iii) object

and be heard in connection with the Sale Motion and the relief granted by this Order.  [The

Auction contemplated by the Bidding Procedures was held on [●], 2016. At the conclusion of the

Auction, Buyer was selected by the Debtors, in consultation with the Committee, if appointed, as

the Successful Bidder.] [The Debtors did not receive any Qualified Bids for the Acquired Assets

prior to the Bid Deadline. Therefore, no Auction was necessary under the terms of the Bidding

Procedures and Buyer was named by the Debtors as the Successful Bidder.]

J.        The Acquired Assets were adequately marketed by the Debtors, the consideration

provided by Buyer under the APA constitutes or provides the highest or otherwise best offer and

provides fair and reasonable consideration to the Debtors for the sale of all Acquired Assets and

the assumption of all Assumed Liabilities, and the performance of the other covenants set forth

in the APA will provide a greater recovery for the Debtors' estates than would be provided by

any other available alternative. Buyer is the Successful Bidder for the Acquired Assets in

accordance with the Bidding Procedures and APA Assumption Order. The Debtors'

determination that the APA constitutes the highest and best offer for the Acquired Assets is a

valid and sound exercise of the Debtors' business judgment.  Buyer has complied in all respects

with the Bidding Procedures and APA Assumption Order and any other applicable order of this

Court in negotiating and entering into the APA. The Sale and APA likewise comply with the

Bidding Procedures and APA Assumption Order and all other applicable orders of this Court.

K.       Approval of the Motion and the APA and the consummation of the Transactions

contemplated thereby is in the best interests of the Debtors, their respective creditors, estates and

other parties in interest and there is substantial risk of deterioration of the value of the Acquired

Assets if the Sale is not consummated quickly. The Debtors have demonstrated good, sufficient

and sound business reasons and justifications for entering into the Transactions and the

performance of their obligations under the APA.

L.       The consummation of the Transactions outside a plan of reorganization pursuant

to the APA neither impermissibly restructures the rights of the Debtors' creditors nor

impermissibly dictates the terms of a chapter 11 plan for the Debtors.

M.       Entry of an order approving the APA and all the provisions thereof is a necessary

condition precedent to Buyer's consummation of the Transactions.

### Arms' Length Sale

N.       The APA and the Transactions contemplated thereunder were proposed,

negotiated and entered into by and between the Debtors, on the one hand, and Buyer, on the

other hand, without collusion or fraud of any kind, in good faith and at arm's length.  There has

been no showing that the Debtors or Buyer have engaged in any action or inaction that would

cause or permit the APA or the Transactions to be avoided or impose any costs or damages under

section 363(n) of the Bankruptcy Code.  Specifically, Buyer has not acted in a collusive manner

with any person and the Purchase Price was not controlled by any agreement among the bidders.

In addition, none of Buyer or its respective affiliates, present or contemplated members, officers,

directors, partners, shareholders or any of their respective heirs, successors and assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

### Good Faith of Buyer

O.    Buyer is entering into the Transactions in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and the court decisions thereunder, and is therefore entitled to the full protection of that provision with respect to all aspects of the transactions contemplated by the APA, including the acquisition of the Acquired Assets, and otherwise has proceeded in good faith in all respects in connection with this proceeding.

P.    In accordance with section 365 of the Bankruptcy Code, including sections 365(b)(1) and 365(f)(2) of Bankruptcy Code, the Debtors have shown that Buyer has the wherewithal, financial and otherwise, to perform all of its obligations under the APA.

### No Fraudulent Transfer

Q.    The consideration provided by Buyer pursuant to the APA for its purchase of the Acquired Assets, the assumption of the Assumed Liabilities and the performance of the covenants contained in the APA constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, and under the laws of the United States, any state, territory, possession thereof or the District of Columbia.

R.    There has been no showing that any of the Debtors or Buyer (i) has entered into the APA or proposes to consummate the Transactions for the purpose of hindering, delaying or defrauding the Debtors' present or future creditors or (ii) is entering into the APA or proposing

to consummate the Transactions fraudulently, for the purpose of statutory or common law

fraudulent conveyance and fraudulent transfer claims, whether under the Bankruptcy Code or

under the laws of the United States, any state, territory, possession thereof or the District of

Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

S.      By virtue of the consummation of the Transactions contemplated by the APA,

(i) Buyer is not a continuation of the Debtors or their respective estates, there is no continuity

between Buyer and the Debtors, there is no common identity between the Debtors and Buyer,

there is no continuity of enterprise between the Debtors and Buyer, Buyer is not a mere

continuation of the Debtors or their estates, and Buyer does not constitute a successor to the

Debtors or their estates, (ii) Buyer is not holding itself out to the public as a continuation of the

Debtors or their respective estates and (iii) the Transactions do not amount to a consolidation,

merger or *de facto* merger of Buyer and the Debtors and/or the Debtors' estates.

## **Validity of Transfer**

T.      Each Debtor's Board of Directors or equivalent and Buyer have authorized the

execution and delivery of the APA, the sale of all Acquired Assets to Buyer and the assumption

of all Assumed Liabilities by Buyer. The Debtors and Buyer (i) have full corporate power and

authority to execute and deliver the APA and all other documents contemplated thereby, as

applicable, (ii) have all of the power and authority necessary to consummate the Transactions

and (iii) have taken all action necessary to authorize and approve the APA and to consummate

the Transactions, and no further consents or approvals are required for the Debtors or Buyer to

consummate the Transactions contemplated by the APA, except as otherwise set forth therein.

U.      Other than the Assumed Liabilities, Buyer shall have no obligations with respect

to any Liabilities of the Debtors or any Adverse Interests against any of the Debtors or their

property, including the liabilities of the Debtors specifically excluded under the APA (the

"Excluded Liabilities"), and Buyer and its successors and assigns are released from any and all

claims, causes of action, obligations, liabilities, demands, damages, losses, costs and expenses of

any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the

Acquired Assets, except for liabilities and obligations arising expressly under, or expressly

assumed by Buyer under, the APA.

V.      The consummation of the Sale and Transactions is legal, valid and properly

authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a),

363(b), 363(f), 363(m), 363(n), 365(b)(1) and 365(f)(2) of the Bankruptcy Code, and with

respect to the Designated Contracts (as defined herein), all of the applicable requirements of such

sections have been or will be complied with in respect of the Transactions as of the effective date

of assignment.

W.      The Acquired Assets constitute property of the Debtors' estates and title thereto is

presently vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy

Code. The sale of the Acquired Assets to Buyer will be, as of the Closing Date or such later date

as such Acquired Assets are transferred under the APA, a legal, valid and effective transfer of

such assets, and each such transfer and assignment vests or will vest Buyer with all right, title

and interest of the Debtors to the Acquired Assets free and clear of all Adverse Interests.

## Section 363 Is Satisfied

X.      Entry into the APA and consummation of the Transactions contemplated thereby

constitute the exercise of the Debtors' sound business judgment consistent with their fiduciary

duties and such acts are in the best interests of the Debtors, their respective creditors, their estates

and other parties in interest.  The Debtors have demonstrated both (i) good, sufficient and sound

business reasons and justifications and (ii) compelling circumstances for the sale of the Acquired

Assets to Buyer pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a

plan of reorganization.  Such business reasons include the facts that (i) there is substantial risk of

deterioration of the value of the Acquired Assets if the Transactions are not consummated

quickly; (ii) the APA constitutes the highest and best offer for the Acquired Assets; (iii) the APA

and the consummation of the Transactions contemplated thereby present the best opportunity to

realize the value of the Acquired Assets and avoid decline and devaluation of the Acquired

Assets; and (iv) unless the sale of the Acquired Assets is consummated expeditiously as provided

for in the Motion and pursuant to the APA, creditors' recoveries may be diminished.

   Y.  The Debtors may sell and assign the Acquired Assets free and clear of all Adverse

Interests, and the Transactions will not subject Buyer or any of Buyer's assets to any liability for

any Adverse Interests whatsoever (including, without limitation, under any theory of equitable

law, antitrust, or successor or transferee liability), because, with respect to each creditor asserting

an Adverse Interest, one or more of the standards set forth in sections 363(f)(1)-(5) of the

Bankruptcy Code has been satisfied.  Those holders of Adverse Interests who did not object or

who withdrew their objections to the Sale, the Transactions or the Cure Notices are deemed to

have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of

Adverse Interests are adequately protected—thus satisfying section 363(e) of the Bankruptcy

Code—by having their Adverse Interests, if any, attach to the proceeds of the Sale, in the same

order of priority and with the same validity, force and effect that such Adverse Interest holder

had before the Sale, subject to any rights, claims and defenses of the Debtors or their estates, as

applicable, or as otherwise provided herein.

Z.      Buyer would not have entered into the APA and would not consummate the sale of all Acquired Assets, thus adversely affecting the Debtors, their estates, creditors, employees and other parties in interest, if the sale of the Acquired Assets was not free and clear of all Adverse Interests or if Buyer would be liable for any Adverse Interests, including and as applicable, any Excluded Liabilities.

AA.     A sale of the Acquired Assets other than one free and clear of all Adverse Interests would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the Sale. Therefore, the Sale contemplated by the APA is in the best interests of the Debtors, their estates, creditors and all other parties in interest.

**Assumption and Assignment of the Designated Contracts**

BB.     The assumption and assignment of the Designated Contracts pursuant to the terms of the Bidding Procedures and APA Assumption Order, this Order and the APA are integral to the APA, are in the best interests of the Debtors and their respective estates, creditors and other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Debtors.

CC.     The Debtors have met all requirements of section 365(b) of the Bankruptcy Code for each of the Designated Contracts. The Debtors and/or Buyer, as applicable under the APA, have (i) cured and/or provided adequate assurance of cure of any default existing prior to the date of the Closing under all of the Designated Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default existing prior to the date of the Closing under any of the Designated Contracts, within the meaning of section

365(b)(1)(B) of the Bankruptcy Code. The assumption and assignment to Buyer of each of the

Designated Contracts shall be free and clear of all Adverse Interests against Buyer.

DD.     Buyer has provided adequate assurance of its future performance under the

relevant Designated Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of

the Bankruptcy Code. Pursuant to section 365(f) of the Bankruptcy Code, the Designated

Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and

remain in full force and effect for the benefit of, Buyer, notwithstanding any provision in the

contracts or other restrictions prohibiting their assignment or transfer.

EE.     No default exists in the Debtors' performance under the Designated Contracts as

of the date of the Closing other than the failure to pay Cure Amounts or defaults that are not

required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

<u>**Compelling Circumstances for an Immediate Sale**</u>

FF.     Time is of the essence. To maximize the value of the Debtors' assets, it is critical

that the Transactions close within the time constraints set forth in the APA.  Accordingly, there is

cause to waive the stays contemplated by Bankruptcy Rules 4001, 6004, and 6006.

GG.     The Debtors have demonstrated both (a) good, sufficient and sound business

purposes and justifications and (b) compelling circumstances for the Sale other than in the

ordinary course of business, before, and outside of a plan of reorganization in that, among other

things, the immediate implementation of this Order and the consummation of the Sale are

necessary both to preserve and maximize the value of the Debtors' assets for the benefit of the

Debtors, their estates, their creditors and all other parties in interest in the Cases, and to provide

the means for the Debtors to maximize creditor recoveries.

HH.    The transactions contemplated by the Purchase Agreement and this Order neither impermissibly restructure the rights of any Debtor's creditors or equity holders nor impermissibly dictate the terms of a chapter 11 plan for any Debtor, and therefore, do not constitute a *sub rosa* chapter 11 plan.

II.    Nothing in the APA creates any third party beneficiary rights in any person or entity not a party to the APA.

**NOW THEREFORE, ITS IS HEREBY ORDERED THAT:**

### General Provisions

1.    The Motion is granted and approved to the extent set forth herein.

2.    All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court or as resolved in this Order, and all reservations of rights included therein, are hereby overruled on the merits with prejudice. All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

3.    Findings of fact and conclusions of law in the Bidding Procedures and APA Assumption Order, including the record of the Bidding Procedures hearing held on [●], 2016, are incorporated herein by reference.

4.    Where appropriate herein, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact.

### Approval of the APA

5.    The APA and all of the Transactions contemplated therein are approved. The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the

APA be authorized and approved in its entirety, with such amendments thereto as may be made by the parties in accordance with this Order.

6.    The Debtors are authorized to (i) take any and all actions necessary or appropriate to execute and deliver, perform under, consummate, implement and effectuate the APA (including, for the avoidance of doubt, the agreements with respect to the Escrow Account set forth in the APA), together with any and all instruments and documents that may be reasonably necessary or desirable to fully close the Transactions, including the sale to Buyer of all Acquired Assets, in accordance with the terms and conditions set forth in the APA and this Order, and to implement and effectuate the terms of the APA and this Order; (ii) take any and all actions as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the APA and this Order, without any further corporate action or order of this Court; and (iii) assume and assign any and all Designated Contracts as and when provided in the APA.

7.    Buyer has no obligation to proceed with the Closing unless and until all conditions precedent to its obligations to do so, as set forth in the APA , have been met, satisfied or waived in accordance with the terms of the APA.

8.    The Debtors are hereby authorized and directed, after consultation with the Committee, if appointed, to instruct the Escrow Agent to (i) hold the Deposit in accordance with the APA and (ii) release and deliver the Deposit pursuant to the terms of the APA.

9.    All persons and entities are prohibited and enjoined from taking any action that would adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Acquired Assets to Buyer in accordance with the APA and this Order. All amounts, if any, to be paid by the Debtors to Buyer pursuant to the APA, including any allowed claims for breach thereof, shall (i) constitute allowed administrative expenses of the

estates pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, (ii) be protected as

provided in the APA and the Bidding Procedures and APA Assumption Order, (iii) not be

altered, amended, discharged or affected by any plan proposed or confirmed in the Cases without

the prior written consent of Buyer and (iv) be due and payable if and when any of the Debtors'

obligations arise under the APA without further order of the Court.

10.    At the Closing, the Debtors will be authorized to fully perform under,

consummate and implement the terms of the APA together with any and all additional

instruments and documents that may be reasonably necessary or desirable to implement and

effectuate the terms of the APA, this Order and the Transactions.

11.    Nothing contained in (a) any chapter 11 plan confirmed in these Cases, (b) any

order confirming any such chapter 11 plan, or (c) any order of any type or kind in these Cases,

any subsequent chapter 7 cases in which these Cases may be converted or any related

proceedings subsequent to the entry of this Sale Order shall conflict with or derogate from the

provisions of the APA (or any agreement contemplated thereby) or this Order, and to the extent

of any conflict or derogation between this Order or the APA (or any agreement contemplated

thereby) and such future plan or order, the terms of this Order and the APA (any agreement

contemplated thereby)  shall control.

12.    Each and every federal, state and local governmental agency or department is

hereby authorized to accept any and all documents and instruments necessary and appropriate to

consummate the Transactions, including all agreements entered into in connection therewith, and

this Order.

13.    To the extent available under applicable law, Buyer shall be authorized, as of the

Closing Date, to operate under any license, permit, registration and any other governmental

authorization or approval of the Debtors with respect to the Acquired Assets and the Non-Residential Leases and Other Executory Contracts, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are transferred to Buyer as of the Closing Date.

14.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred or conveyed to Buyer on account of the filing or pendency of the Cases.

**Sale and Transfer Free and Clear of Adverse Interests**

15.    Upon Closing (or thereafter as of the filing of a Post-Closing Designation Notice with respect to any Designated Contract, subject to the Post-Closing Assumption and Assignment Procedures[3] described herein), all of the Debtors' right, title and interest in and to, and possession of, the Acquired Assets shall be immediately vested in Buyer pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code free and clear of any and all Adverse Interests, with all such Adverse Interests to attach to the net proceeds of the Sale, in the order of their priority, with the same validity, force and effect that they now have against the Acquired Assets, subject with respect to such net proceeds to any rights, claims and defenses the Debtors or any parties in interest may possess with respect thereto. Such transfer shall constitute a legal, valid, binding and effective transfer of such Acquired Assets. All persons or entities, presently or on or after the Closing, in possession of some or all of the Acquired Assets shall surrender possession of the Acquired Assets to Buyer or its respective designees.

16.    This Order (i) shall be effective as a determination that, as of the Closing no Adverse Interests other than Assumed Liabilities will be assertable against Buyer or any of its

---

[3]    The "*Post-Closing Assumption and Assignment Procedures*" shall mean those procedures for assumption and assignment of Non-Residential Leases and Other Executory Contracts described in Paragraphs 36–40 of this Order.

respective assets (including the Acquired Assets), (ii) shall be effective as a determination that, as of the Closing (or thereafter as of the filing of a Post-Closing Designation Notice for any Designated Contract, subject to the Post-Closing Assumption and Assignment Procedures described herein) (a) the Acquired Assets shall have been transferred to Buyer free and clear of all Adverse Interests and (b) the conveyances described herein have been effected, and (iii) is and shall be binding upon entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Transactions.

17.    Other than the Assumed Liabilities, Buyer shall have no obligations with respect to any Adverse Interests of the Debtors, including the Excluded Liabilities, and Buyer and its affiliates, successors and assigns are released from any and all Adverse Interests arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the ownership, sale or operation of the Acquired Assets and the business of the Debtors prior to the Closing or the transfer of Acquired Assets to Buyer, except for the Assumed Liabilities expressly assumed under the APA. The holders of claims related to the Assumed Liabilities shall have the right to seek payment directly from Buyer on account of the Assumed Liabilities; *provided*,

*however*, that Buyer reserves any and all rights, defenses or objections with regard to such Assumed Liabilities, including, but not limited to, Buyer's rights under the APA.

18.     Other than in the Ordinary Course of Business, the Debtors shall not consent or agree to the allowance of any claim to the extent it would constitute an Assumed Liability without the prior written consent of Buyer.  Buyer shall have standing in the Cases to object to the validity, amount, or priority of any claim against the Debtors to the extent it would otherwise constitute an Assumed Liability, and the Court will retain the right to hear and determine such objections.

19.     Except with respect to the Assumed Liabilities, all persons and entities (and their respective successors and assigns), including all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors holding Adverse Interests arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the ownership, sale or operation of the Acquired Assets and the business prior to the Closing or the transfer of Acquired Assets to Buyer (whether prior to the Closing or thereafter as of the filing of a Post-Closing Designation Notice for any Designated Contract, subject to the Post-Closing Assumption and Assignment Procedures described herein), are hereby forever barred, estopped and permanently enjoined from asserting such Adverse Interests against Buyer, its property or the Acquired Assets.  Following the Closing (or thereafter as of the filing of a Post-Closing Designation Notice for any Designated Contract, subject to the Post-Closing Assumption and Assignment Procedures described herein), no holder of any Adverse Interest shall interfere with Buyer's title to or use and enjoyment of the Acquired Assets based on or related to any such Adverse Interest, or based on any action the Debtors may take in the Cases.

20.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Adverse Interests against or in the Acquired Assets shall not have delivered to the Debtors prior to the Closing of the Transactions in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all Adverse Interests that the person or entity has with respect to such Acquired Assets, then only with regard to the Acquired Assets that are purchased by Buyer pursuant to the APA and this Order, (i) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Acquired Assets, and (ii) Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Adverse Interests against Buyer and the applicable Acquired Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office. For the avoidance of doubt, only Acquired Assets that are part of the estates of the Debtors are being sold to Buyer free and clear of Adverse Interests pursuant to section 363(f) of the Bankruptcy Code.

## No Successor or Transferee Liability

21.     Buyer shall not be deemed, as a result of any action taken in connection with the APA, the consummation of the Transactions, the transfer, operation or use of the Acquired Assets or the employment of the Selected Employees or Transferred Employees to (i) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for Buyer, with respect to any obligations arising after the Closing as an assignee under Assumed Contracts); (ii) have, *de facto* or otherwise, merged with or into the Debtors; or (iii) be an alter ego or a

mere continuation or substantial continuation or successor in any respect of the Debtors,

including within the meaning of any foreign, federal, state or local revenue, pension, Employee

Retirement Income Security Act of 1974 ("ERISA"), tax, labor, employment, environmental or

other law, rule or regulation (including filing requirements under any such laws, rules or

regulations), or under any products liability law or doctrine with respect to the Debtors'

liability under such law, rule or regulation or doctrine.

22.    Except as expressly provided in the APA with respect to Assumed Liabilities,

Buyer shall have no liability whatsoever with respect to the Debtors' (or their predecessors or

affiliates) respective businesses or operations or any of the Debtors' (or their predecessors' or

affiliates') obligations (as described below, "Successor or Transferee Liability") based, in whole

or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or

character, or based upon any theory of labor law, employment law, ERISA and benefits law,

antitrust, environmental, successor or transferee liability, *de facto* merger or substantial

continuity, labor and employment or products liability, whether known or unknown as of the

Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated

or unliquidated, including any liabilities or non-monetary obligations on account of any

settlement or injunction, or any taxes arising, accruing or payable under, out of, in connection

with, or in any way relating to the operation of the Acquired Assets or the Business prior to the

Closing or such later time as Buyer is assigned and assumes any Assumed Contract.  Except to

the extent expressly included in the Assumed Liabilities or otherwise provided for in the APA

with respect to WARN liabilities, Buyer shall have no liability or obligation under the WARN

Act (29 U.S.C. §§ 2101 et seq.) or the Comprehensive Environmental Response Compensation

and Liability Act or any foreign, federal, state or local labor, employment or environmental law whether of similar import or otherwise by virtue of Buyer's purchase of the Acquired Assets or assumption of the Assumed Liabilities.

23.    Buyer has given substantial consideration under the APA for the benefit of the holders of any Adverse Interest.  The consideration given by Buyer shall constitute valid and valuable consideration for the releases of any potential claims of Successor or Transferee Liability of Buyer, which releases shall be deemed to have been given in favor of Buyer by all holders of any Adverse Interests.

24.    Except as expressly provided in the APA with respect to the Assumed Liabilities, nothing in this Order or the APA shall require Buyer to (i) continue or maintain in effect, or assume any liability in respect of any employee, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtors are a party or have any responsibility therefor including medical, welfare and pension benefits payable after retirement or other termination of employment, or (ii) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

25.    Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against Buyer, or its assets (including the Acquired Assets), or its successors and assigns, with respect to any (i) Adverse Interest or (ii) Successor or Transferee Liability including the following actions with respect to clauses (i) and (ii): (a) commencing or continuing any action or other proceeding

pending or threatened; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any Adverse Interest; (d) asserting any setoff, right of subrogation or recoupment of any kind; (e) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (f) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such assets.

## Good Faith of Buyer

26.     The Transactions contemplated by the APA are undertaken by Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Transactions (including the assumption and assignment of the Designated Contracts), unless such authorization and consummation of the Sale are duly and properly stayed pending such appeal.

27.     Buyer is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code.  There has been no showing that the Debtors or Buyer engaged in any action or inaction that would cause or permit the Transactions to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.

28.     The consideration provided by Buyer for the Acquired Assets under the APA is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

**Assumption and Assignment of Designated Contracts**

29.     Before the Sale Hearing, in accordance with and pursuant to Section 2.7 of the APA, Buyer provided to the Debtors a Closing Designated Contract List designating certain Non-Residential Leases and Other Executory Contracts for assumption by the Debtors and assignment to Buyer.  Buyer filed an Assumption Notice with respect to the Contracts listed on the Closing Designated Contract List and such notice was good, sufficient and appropriate under the circumstances, and no further notice of the Closing Designated Contract List is required.  Up to three (3) Business Days prior to the Closing Date, Buyer may exclude or remove from the Closing Designated Contract List any Non-Residential Lease or Other Executory Contract. On or before the Closing Date, Buyer shall provide to the Debtors, and the Debtors shall file with the Court, the final Closing Designated Contract List, and the Debtors shall serve notice of such list by first class mail on all non-Debtor counterparties to the Non-Residential Leases and Other Executory Contracts included on the final Closing Designated Contract List.

30.     Pursuant to Section 2.7 of the APA, from and after the Closing Date through the Designation Deadline,[4] Buyer shall provide written notice to the Debtors (and the Debtors shall provide such notice to the affected counterparties within three (3) Business Days of receipt of such notice from Buyer) designating certain Non-Residential Leases and Other Executory Contracts for assumption by the Debtors and assignment to Buyer (such Leases and Contracts together with the Non-Residential Leases and Other Executory Contracts included on the final Closing Designated Contract List, the "Designated Contracts").

31.     The Debtors are authorized at the Closing (or thereafter as of the filing of a Post-Closing Designation Notice for any Designated Contract) to assume and assign each of the

---

[4]     Designation Deadline is defined in the APA to mean 5:00 p.m. (prevailing Eastern time) on the date that is thirty (30) days from the Closing Date (or such longer period as may be agreed between Buyer and the counterparty of the applicable Contract).

Designated Contracts in accordance with the APA and this Order to Buyer free and clear of all

Adverse Interests pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code and to

execute and deliver to Buyer such documents or other instruments as may be necessary to assign

and transfer the Designated Contracts to Buyer. The payment of the applicable Cure Amounts by

Buyer shall (i) effect a cure of all defaults existing thereunder as of the Closing (or thereafter for

any Designated Contract that is assumed and assigned post-Closing, subject to the Post-Closing

Assumption and Assignment Procedures described herein), (ii) compensate for any actual

pecuniary loss to such non-Debtor counterparty resulting from such default and (iii) together

with the assumption of the Designated Contracts by the Debtors and the assignment of such

Designated Contracts to Buyer, constitute adequate assurance of future performance thereof.  For

purposes of this Order, "Cure Amounts" shall mean the applicable Cure Amounts set forth on

**Exhibit 3** attached hereto, or such other Cure Amounts as agreed, in writing, by the Debtors,

Buyer and the counterparty to the applicable Designated Contract.  Subject to the Post-Closing

Assumption and Assignment Procedures described herein for any Designated Contract that is

assumed and assigned post-Closing, the counterparties to the Designated Contracts are forever

bound by the applicable Cure Amounts and, upon payment of such Cure Amounts as provided

for herein, are hereby enjoined from taking any action against Buyer or the Acquired Assets with

respect to any claim for cure under the applicable Designated Contracts.

32.    Any provisions in any Designated Contract (including any Designated Contract

that becomes such post-Closing subject to the Post-Closing Assumption and Assignment

Procedures described herein) that prohibit or condition the assignment of such Designated

Contract or allow the counterparty to such Designated Contract to terminate, recapture, impose

any penalty, condition on renewal or extension or modify any term or condition upon the

assignment of such Designated Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the Debtors' assumption and assignment of such Designated Contracts in accordance with the APA but will be effective and binding upon Buyer with respect to any purported assignment for the remaining term of such Designated Contract.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Buyer of the Designated Contracts have been satisfied.  Upon the Closing or such later time as is provided in the APA with respect to the assumption and assignment of any Designated Contract, in accordance with sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Designated Contracts, and such Designated Contracts shall remain in full force and effect for the benefit of Buyer.

33.     Each non-Debtor counterparty to the Designated Contracts shall be forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Buyer or their respective property any assignment fee, acceleration, default, breach or claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing (or thereafter as of the filing of a Post-Closing Designation Notice for those that arise post-Closing and are not barred by this Order with respect to any Designated Contract that is assumed and assigned post-Closing) or arising by reason of the Closing or the transfer of the Acquired Assets, including any breach related to or arising out of change-in-control in such Designated Contracts, or any purported written or oral modification to the Designated Contracts and (ii) asserting against Buyer (or its property, including the Acquired Assets) any claim, counterclaim, breach, or condition asserted or assertable against the Debtors existing as of the Closing (or thereafter as of the filing of a Post-Closing Designation Notice for those that arise post-Closing and are not

barred by this Order with respect to any Designated Contract that is assumed and assigned post-Closing) or arising by reason of the transfer of the Acquired Assets, except for the Assumed Liabilities.  In addition, without relieving Buyer of its obligations under the APA, nothing in the Order, the Motion or the APA shall affect the Debtors' obligations under section 365(d)(3) of the Bankruptcy Code (or Buyer's assumption thereof) prior to the assumption and assignment or rejection of any Designated Contracts.

34.    Upon the Closing (or thereafter as of the filing of a Post-Closing Designation Notice for any Designated Contract), Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Designated Contracts and shall pay all outstanding undisputed Cure Amounts with respect thereto, and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Designated Contracts from and after such assignment. There shall be no assignment fees, increases or any other fees charged to Buyer or the Debtors as a result of the assumption and assignment of the Designated Contracts.

35.    Buyer has provided adequate assurance of future performance under the Designated Contracts (including any Designated Contract that becomes such post-Closing) within the meaning of sections 365(b)(1)(c), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

**Post-Closing Assumption and Assignment Procedures**

36.    In the case of any Non-Residential Leases and Other Executory Contracts that the Debtors seek to assume and assign from and after the Closing Date pursuant to Section 2.7 of the APA, within three (3) Business Days following receipt of a notification by Buyer that a Non-Residential Lease or Other Executory Contract is designated for assumption and assignment, the Debtors shall file with the Court a Post-Closing Designation Notice of the Debtors' proposed

assumption and assignment of such Non-Residential Lease or Other Executory Contract,
substantially in the form attached hereto as **Exhibit 2**.  The assumption and assignment of each
such Non-Residential Lease or Other Executory Contract shall be effective as of the date of the
filing of the applicable Post-Closing Designation Notice without any further order of the Court,
with objections to the applicable cure amount, if any, to be resolved thereafter as set forth below.

37.     The Debtors will serve such Post-Closing Designation Notice via first class mail
on each of the following parties (the "Post-Closing Designation Notice Parties"): (i) each
counterparty to any Non-Residential Lease or Other Executory Contract (and their counsel, if
known) to be assumed or assigned by the Debtors, (ii) the Office of the United States Trustee,
(iii) counsel to the Committee, if any, and (iv) counsel to Buyer.

38.     The Post-Closing Designation Notice will set forth the following information, to
the best of the Debtors' knowledge: (i) a description of the Non-Residential Lease or Other
Executory Contract that the Debtors are assuming and assigning, (ii) the name and address of the
affected counterparties (and their counsel, if known), (iii) a description of the deadlines and
procedures for filing objections to the Post-Closing Designation Notice (as set forth below), and
(iv) the proposed cure amounts that arise solely following the Closing and have not otherwise
been paid in the ordinary course.

39.     A party in interest may object to a Post-Closing Designation Notice solely with
respect to the cure amount contained therein and only to the extent such objection could not have
been raised prior to the Closing.  Any such objection must be in writing and filed and served so
that such objection is filed with this Court and actually received by the Debtors and the Post-
Closing Designation Notice Parties no later than ten (10) Business Days after the date the
Debtors served the applicable Post-Closing Designation Notice.

40.     If no timely permitted objection is filed and served with respect to the Post-Closing Designation Notice, any non-Debtor party to such Non-Residential Lease or Other Executory Contract shall be deemed to have consented to the cure amount set forth in such Post-Closing Designation Notice.  If a timely permitted objection is properly filed and served on the Post-Closing Designation Notice Parties in the manner specified above, unless the parties agree otherwise in writing, a hearing will be scheduled to consider that objection.  For the avoidance of doubt, any Non-Residential Lease or Other Executory Contract set forth in a Post-Closing Designation Notice that is the subject of a timely permitted objection shall be deemed assumed and assigned prior to resolution of such objection (*i.e.*, as of the date of the filing of the applicable Post-Closing Designation Notice).

### The Sale Does Not Require the Appointment of a Consumer Privacy Ombudsman

41.     Buyer shall be subject to reasonable restrictions by the Debtors in order to comply with the Debtors' privacy policy, which broadly provides that, if the Debtors or any portion of their assets are acquired, the Debtors may share all types of information with the acquiring company.  As the Debtors' privacy policy does not prohibit the transfer of personally identifiable information, appointment of a consumer privacy ombudsman is not required.

### Other Provisions

42.     Effective upon the Closing, the Debtors, on behalf of themselves and their respective past, present and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns (collectively, the "Debtor Releasing Parties"), hereby release, remise, acquit and forever discharge Buyer and its past, present and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns, and each of its and their respective directors, managers, officers,

employees, shareholders, members, agents, representatives, attorneys, contractors,

subcontractors, independent contractors, owners, insurance companies and partners (except, in

each case, the Debtor Releasing Parties) (collectively, in their capacities as parties being released

pursuant to this Paragraph 42, the "Buyer Released Parties"), from any and all claims, contracts,

demands, causes of action, disputes, controversies, suits, cross-claims, torts, losses, attorneys'

fees and expenses, obligations, agreements, covenants, damages, liabilities, costs and expenses,

whether known or unknown, whether anticipated or unanticipated, whether claimed or suspected,

whether fixed or contingent, whether yet accrued or not, whether damage has resulted or not,

whether at law or in equity, whether arising out of agreement or imposed by statute or common

law of any kind, nature, or description, including, without limitation as to any of the foregoing,

any claim by way of indemnity or contribution, which any Debtor Releasing Party has, may have

had or may hereafter assert against any Buyer Released Party arising from or related in any way,

either directly or indirectly, to the negotiation, documentation, performance or consummation of

the APA, any Related Agreements or any other agreements entered into in connection with the

transactions contemplated thereby; *provided*, *however*, that the foregoing release shall not apply

to the Debtors' rights or Buyer's obligations under this Order or the APA (including Section 6.9

of the APA), any Related Agreements and/or any other agreements entered into in connection

with the transactions contemplated hereby or thereby.

43.    Subject to the terms of the APA, the APA and any related agreements may be

waived, modified, amended or supplemented by agreement of the Debtors and Buyer, in

consultation with counsel to the Committee, if appointed, without further action or order of the

Bankruptcy Court if it does not have a material adverse effect on the Debtors' estates.  Any

material modification, waiver, amendment or supplement to the APA must be approved by order of the Bankruptcy Court.

44.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of this Court, to allow Buyer to deliver any notice provided for in the APA and allow Buyer to take any and all actions permitted or required under the APA in accordance with the terms and conditions thereof. Buyer shall not be required to seek or obtain any further relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other sale-related document.

45.    All persons, all Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Adverse Interests, based upon or arising out of the Excluded Liabilities are hereby barred and estopped from taking any action against Buyer or the Acquired Assets to recover property on account of any Adverse Interests or on account of any Liabilities of the Debtors other than Assumed Liabilities pursuant to the APA. All persons holding or asserting any Adverse Interests with respect to the Excluded Assets are hereby enjoined from asserting or prosecuting such Adverse Interests against Buyer or the Acquired Assets for any Liability whatsoever associated with the Excluded Assets.

46.    The provisions of this Order authorizing the sale and assignment of the Acquired Assets free and clear of all Adverse Interests shall be self-executing, and neither the Debtors nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

47.     Neither the Debtors nor any of their Affiliates shall use, license or permit any third party to use, any name, slogan, logo or trademark which is confusingly or deceptively similar to any of the names, trademarks or service marks included in the Intellectual Property included in the Acquired Assets, and each Debtor is directed to change its corporate name to a name which (i) does not use the name ["Gawker", "Gizmodo", "Kotaku", "Jalopnik", "LifeHacker", "Deadspin", "Jezebel"] or any other name that references or reflects any of the foregoing in any manner whatsoever, (ii) is otherwise substantially dissimilar to its present name and (iii) is approved in writing by Buyer.

48.     Within one (1) Business Day of the occurrence of the Closing of the Sale, the Debtors shall file and serve a notice of same, substantially in the form attached hereto as **Exhibit 2** (the "Notice of Sale Closing and Effective Date of Amendment of Case Caption") and upon the filing of such notice, the Debtors' case caption shall be amended as follows:

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| [[●] Liquidating, LLC], *et al.* | Case No. 16-11700 (SMB) |
| Debtors. | Jointly Administered |

1       The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: [●] (f/k/a Gawker Media Group, Inc.) ([●]); [●] (f/k/a Gawker Media LLC) ([●]); [●] (f/k/a Kinja Kft.) ([●]).  The Debtors' executive headquarters are located at [●].

49.     Upon the filing of the Notice of Sale Closing and Effective Date of Amendment of Case Caption, the Clerk of the Court is authorized and directed to make a docket entry in case numbers 16-11700, 16-11718, and 16-11719 consistent with Paragraph 48 of this Order.

50.     The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the sale. This Court retains jurisdiction to compel delivery of the Acquired Assets, to protect Buyer and its assets, including the Acquired Assets, against any Adverse Interests and Successor or Transferee Liability and to enter orders, as appropriate, pursuant to sections 105, 363 or 365 (or other applicable provisions) of the Bankruptcy Code necessary to transfer the Acquired Assets and the Designated Contracts to Buyer. This Court retains jurisdiction to adjudicate disputes between Buyer and holders of claims related to the Assumed Liabilities regarding the Assumed Liabilities.

51.     The Transactions contemplated hereunder shall not be affected by any bulk sales laws.

52.     Buyer has standing to seek to enforce the terms of this Order.

53.     The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Order.

54.     Notwithstanding the possible applicability of Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9014 or otherwise, this Order shall not be stayed, the terms and conditions of this Order shall be effective immediately upon entry and the Debtors and Buyer are authorized to close the Sale immediately upon entry of this Order.  Time is of the essence in closing the Sale, and the Debtors and Buyer intend to close the Sale as soon as practicable.  This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Any

party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being dismissed as moot.

55.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

56.     The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

57.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

58.     To the extent there are any inconsistencies between the terms of the Bidding Procedures and APA Assumption Order, this Order and the APA, the terms of this Order shall control.

Dated: _____, 2016
       New York, New York

                               STUART M. BERNSTEIN
                               UNITED STATES BANKRUPTCY JUDGE