ROPES & GRAY LLP
Gregg M. Galardi
Jonathan P. Gill
Kristina K. Alexander
Stacy A. Dasaro
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------x
|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| Gawker Media LLC, *et al.*,[1] | : | Case No. 16-11700 (SMB) |
|  | : |  |
| Debtors. | : | (Joint Administration Requested) |
|  | : |  |
--------------------------------------------------------x

**DEBTORS' APPLICATION PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 503(b)(1)(A),**
**AND LOCAL RULE 5075-1 FOR ENTRY OF AN**
**ORDER APPOINTING PRIME CLERK LLC AS CLAIMS AND**
**NOTICING AGENT *NUNC PRO TUNC* TO THE PETITION DATE**

Gawker Media LLC ("Gawker Media"), Gawker Media Group, Inc. ("GMGI"), and

Kinja Kft. ("Kinja") debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "Debtors"), respectfully submit this application (the "Application") for entry of

an order, substantially in the form attached hereto as Exhibit A, appointing Prime Clerk LLC

("Prime Clerk") as claims and noticing agent ("Claims and Noticing Agent") in the Debtors'

chapter 11 cases, *nunc pro tunc* to the Petition Date. In support of the Application, the Debtors

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011. Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

56976269_3

hereby incorporate by reference the *Declaration of Michael J. Frishberg Co-President and Chief Operating Officer of Prime Clerk* (the "Friscberg Declaration"), which is attached hereto as Exhibit B.  In further support of the Application, the Debtors hereby incorporate by reference the *Declaration of William Holden in Support of First Day Motions* (the "First Day Declaration"), filed June 12, 2016 [Docket No. 7].[2]  In further support of the Application, the Debtors, by and through their undersigned proposed counsel, respectfully represent as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 1409.

3.      The statutory bases for the relief requested herein are section 156(c) of title 28 of the United States Code, section 503(b)(1)(A) of title 11 of the United States Code (the "Bankruptcy Code"),  Rule 5075-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules").

### Background

4.      On June 10, 2016, Gawker Media filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.   On June 12, 2016, GMGI and Kinja each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtors are operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

6.      No official committee of unsecured creditors, nor any trustee or examiner, has been appointed in these cases.

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the First Day Declaration.

7.     The factual background regarding the Debtors, their business operations, their capital and debt structure, and the events leading up to the filing of these chapter 11 cases are set forth in detail in the First Day Declaration.

**Relief Requested**

8.     The Debtors request entry of an order (a) authorizing and approving the appointment of Prime Clerk as the Claims and Noticing Agent for the Debtors and these chapter 11 cases, including assuming full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in these chapter 11 cases and (b) granting related relief.

9.     The Debtors' selection of Prime Clerk to act as the Claims and Noticing Agent has satisfied the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)* (the "Claims Agent Protocol") in that the Debtors have obtained and reviewed engagement proposals from three (3) court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Prime Clerk's rates are competitive and reasonable given Prime Clerk's quality of services and expertise.  The terms of Prime Clerks' retention are set forth in the Engagement Agreement attached hereto as Exhibit C (the "Engagement Agreement"); *provided, however*, that Prime Clerk is seeking approval solely of the terms and provisions as set forth in this Application and the proposed order attached hereto (the "Order").

10.     Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be in excess of 250 entities to be noticed.  Local Rule 5075-1(b) provides that "[i]n a case in which the number of creditors and equity security holders, in the aggregate, is 250 or more, the estate shall retain, subject to approval of the Court, a claims and

- 3 -

noticing agent in accordance with the [Claims Agent Protocol]."  In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent is required by Local Rule 5075-1(b) and is otherwise in the best interests of both the Debtors' estates and their creditors.

11.     By separate application, the Debtors will seek authorization to retain and employ Prime Clerk as administrative advisor in these chapter 11 cases pursuant to section 327(a) of the Bankruptcy Code because the administration of these chapter 11 cases will require Prime Clerk to perform duties outside the scope of 28 U.S.C. § 156(c).

### Prime Clerk's Qualifications

12.     Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 bankruptcy cases.  Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Prime Clerk's professionals have acted as debtor's counsel or official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide.  Prime Clerk's active cases include:  *In re Hercules Offshore, Inc.,* No. 16-11385 (KJC) (Bankr. D. Del.); *In re Fairway Group Holdings Corp.*, No. 16-11241 (MEW) (Bankr. S.D.N.Y.); *In re Aéropostale, Inc.*, No. 16-11275 (SHL) (Bankr. S.D.N.Y.); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex.); *In re Pacific Sunwear of California, Inc.*, No. 16-10882 (LSS) (Bankr. D. Del.); *In re Aspect Software Parent, Inc.*, No. 16-10597 (MFW) (Bankr. D. Del.); *In re SH130 Concession Co., LLC*, No. 16-10262 (TMD) (Bankr. W.D. Tex.); *In re Republic Airways Holdings Inc.*, No. 16-10429 (SHL) (Bankr. S.D.N.Y.); *In re Abengoa Bioenergy US Holding, LLC*, No. 16-41161 (KAS) (Bankr. E.D. Mo.);

*In re Noranda Aluminum, Inc.*, No. 16-10083 (BSS) (Bankr. E.D. Mo.); *In re RCS Capital Corp.*,

No. 16-10223 (MFW) (Bankr. D. Del.); *In re Verso Corp.*, No. 16-10163 (KG) (Bankr. D. Del.);

*In re Arch Coal, Inc.*, No. 16-40120 (CER) (Bankr. E.D. Mo.); *In re New Gulf Resources, LLC*,

No. 15-12566 (BLS) (Bankr. D. Del.); *In re Magnum Hunter Resources Corp.*, No. 15-12533

(KG) (Bankr. D. Del.); *In re Energy & Exploration Partners, Inc.*, No. 15-44931 (RFN) (Bankr.

N.D. Tex.); *In re KaloBios Pharmaceuticals, Inc.*, No. 15-12628 (LSS) (Bankr. D. Del.); *In re*

*Millennium Lab Holdings II, LLC*, No. 15-12284 (LSS) (Bankr. D. Del.); *In re Parallel Energy,*

*LP*, No. 15-12263 (KG) (Bankr. D. Del.); *In re Cook Inlet Energy, LLC*, No. 15-00236 (GS)

(Bankr. D. Alaska); *In re Hovensa L.L.C.*, No. 15-10003 (MFW) (D.V.I.); *In re Hercules*

*Offshore, Inc.*, No. 15-11685 (KJC) (Bankr. D. Del.); *In re The Great Atl. & Pac. Tea Co., Inc.*,

No. 15-23007 (RDD) (Bankr. S.D.N.Y.); *In re Milagro Holdings, LLC*, No. 15-11520 (KG)

(Bankr. D. Del.); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y.); *In re*

*Molycorp, Inc.*, No. 15-11357 (CSS) (Bankr. D. Del.); *In re Patriot Coal Corp.*, No. 15-32450

(KLP) (Bankr. E.D. Va.).

13.     By appointing Prime Clerk as the Claims and Noticing Agent in these chapter 11

cases, the distribution of notices and processing of claims will be expedited, and the Office of the

Clerk of the United States Bankruptcy Court for the Southern District of New York (the "Clerk's

Office") will be relieved of the administrative burden of processing what may be an

overwhelming number of claims.

## Services to Be Provided

14.     This Application pertains only to the work to be performed by Claims and

Noticing Agent under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local

Bankruptcy Rule 5075-1.  Any work to be performed by Claims and Noticing Agent outside of

this scope is not covered by this Application or by any order granting approval hereof.

Specifically, Claims and Noticing Agent will perform the following tasks in its role as claims

and noticing agent (the "Claims and Noticing Services"), as well as all quality control relating

thereto:

a.  Prepare and serve required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of these chapter 11 cases and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the chapter 11 cases;

b.  Maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

c.  Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest; and (ii) a "core" mailing list consisting of all parties described in sections 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party-in-interest or the Clerk;

d.  Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e.  Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f.  For *all* notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a

list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

g.  Process all proofs of claim received, including those received by the Clerk's office, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

h.  Provide an electronic interface for filing proofs of claim;

i.  Maintain the official claims register for the Debtors (the "Claims Register") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.), and (vi) any disposition of the claim;

j.  Provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

k.  Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

l.  Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

m.  Relocate, by messenger or overnight delivery, all of the Court-filed proofs of claim to the offices of Claims and Noticing Agent, not less than weekly;

n.  Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

o.  Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed, and make necessary notations on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

p.  Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

q.  Assist in the dissemination of information to the public, and respond to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website and/or call center.

56976269_3

r.  If these chapter 11 cases are converted to chapter 7, contact the Clerk's office within three (3) days of the notice to Claims and Noticing Agent of entry of the order converting the chapter 11 case;

s.  Thirty (30) days prior to the close of this chapter 11 case, to the extent practicable, request that the Debtors submits to the Court a proposed order dismissing the Claims and Noticing Agent and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of this chapter 11 case;

t.  Within seven (7) days of notice to Claims and Noticing Agent of entry of an order closing the chapter 11 case, provide to the Court the final version of the Claims Register as of the date immediately before the close of the chapter 11 case;

u.  At the close of this chapter 11 case, box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's office; and

v.  Provide such other related claims and noticing services as the Debtors may require in connection with this chapter 11 case.

15.    The Claims Registers shall be opened to the public for examination without charge during regular business hours and on a case-specific website maintained by Prime Clerk.

**Professional Compensation**

16.    The Debtors respectfully request that the undisputed fees and expenses incurred by Prime Clerk in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.  Prime Clerk agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, counsel for any official committee appointed in these chapter 11 cases, and any party in interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly

- 8 -

invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

17.    Prior to the Petition Date, the Debtors provided Prime Clerk a retainer in the amount of $15,000.  Prime Clerk seeks to first apply the retainer to all prepetition invoices, and thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Engagement Agreement during the pendency of these chapter 11 cases as a security for the payment of fees and expenses incurred under the Engagement Agreement.

18.    Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Prime Clerk and its members, officers, employees, representatives and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Prime Clerk's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Retention Order. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these chapter 11 cases.

## Disinterestedness

19.    Although the Debtors do not propose to employ Prime Clerk under section 327 of the Bankruptcy Code pursuant to this Application (such retention will be sought by separate application), Prime Clerk has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information and belief, and except as disclosed in the Frishberg Declaration, Prime Clerk has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

- 9 -

56976269_3

20.    In connection with its retention as claims and noticing agent, Prime Clerk represents in the Frishberg Declaration, among other things, that:

    a.   Prime Clerk is not a creditor of the Debtors;

    b.   Prime Clerk will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

    c.   By accepting employment in the chapter 11 case, Prime Clerk waives any rights to receive compensation from the United States government in connection with the Debtors' chapter 11 cases;

    d.   In its capacity as the Claims and Noticing Agent in these chapter 11 cases, Prime Clerk will not be an agent of the United States and will not act on behalf of the United States;

    e.   Prime Clerk will not employ any past or present employees of the Debtors in connection with its work as Claims and Noticing Agent in these chapter 11 cases;

    f.   Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

    g.   In its capacity as Claims and Noticing Agent in these Chapter 11 Cases, Prime Clerk will not intentionally misrepresent any fact to any person;

    h.   Prime Clerk shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

    i.   Prime Clerk will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

    j.   None of the services provided by Prime Clerk as Claims and Noticing Agent in these Chapter 11 Cases shall be at the expense of the Clerk's office.

21.    Prime Clerk will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## Compliance with Claims and Noticing Agent Protocol

22.    This Application complies with the Claims Agent Protocol and substantially conforms to the standard section 156(c) application in use in this Court.  Moreover, the Clerk's

- 10 -

Office has reviewed and approved this Application.  To the extent that there is any inconsistency

between this Application, the Order, and the Engagement Agreement, the Order shall govern.

**Basis for Relief Requested**

23.    Section 156(c) of title 28 of the United States Code, which governs the staffing

and expenses of bankruptcy courts, and authorizes the Court to use "facilities" or "services"

other than the Clerk's Office for administration of bankruptcy cases, provides as follows:

> Any court may utilize facilities or services, either on or off
> the court's premises, which pertain to the provision of notices,
> dockets, calendars, and other administrative information to
> parties in cases filed under the provisions of title 11, United
> States Code, where the costs of such facilities or services are
> paid for out of the assets of the estate and are not charged to
> the United States. The utilization of such facilities or services
> shall be subject to such conditions and limitations as the
> pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

24.    In addition, Local Bankruptcy Rule 5075-1(a) provides as follows:

> The Court may direct, subject to the supervision of the Clerk, the
> use of agents either on or off the Court's premises to file Court
> records, either by paper or electronic means, to issue notices, to
> maintain case dockets, to maintain Judges' calendars, and to
> maintain and disseminate other administrative information where
> the costs of such facilities or services are paid for by the estate.

Local Bankruptcy Rule 5075-1(a).

25.    The Court has promulgated the Claims Agent Protocol "to ensure the use of

competitive process in the selection of claims agents in instances where the Court has authorized

such use under 28 U.S.C. § 156(c)."  In compliance with the Claims Agent Protocol, the Debtors

have obtained and reviewed engagement proposals from three court-approved notice and claims

agents, including Prime Clerk. The Debtors provided each court-approved notice and claims

agent the basic facts about these chapter 11 cases and asked each company to submit a written

56976269_3

proposal based upon such facts. The Debtors then asked each company case-specific pricing

questions. Ultimately, the Debtors chose Prime Clerk as their notice and claims agent based on

their capability and favorable price terms.

## **Notice**

26.     Notice of this Motion has been provided to: (i) the Office of the United States

Trustee for the Southern District of New York; (ii) the 50 largest unsecured creditors of the

Debtors (on a consolidated basis); (iii) counsel to the First Lien Lender; (iv) counsel to the

Second Lien Lender; (v) the Internal Revenue Service; and (vi) the United States Attorney for

the Southern District of New York.  In light of the nature of the relief requested, the Debtors

submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto as Exhibit A, granting the relief requested in the Motion and such other and further relief for the Debtors as may be just or proper.

Dated: June 13, 2016
      New York, New York

                                                William D. Holden

## Exhibit A

**Proposed Order**

56976269_3

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x
                                                  :
In re                                             :        Chapter 11
                                                  :
Gawker Media LLC, *et al.*,[1]                    :        Case No. 16-11700 (SMB)
                                                  :
                     Debtors.                     :        (Joint Administration Requested)
                                                  :
--------------------------------------------------------x

ORDER PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 503(b)(1)(A), AND LOCAL
RULE 5075-1 AUTHORIZING RETENTION AND APPOINTMENT
OF PRIME CLERK LLC AS CLAIMS AND NOTICING AGENT
*NUNC PRO TUNC* TO THE PETITION DATE

Upon the application (the "Application")[2] of the above-captioned debtors and

debtors in possession (the "Debtors"), for retention and appointment of Prime Clerk as the

Claims and Noticing Agent pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy

Code, and Local Rule 5075-1, to, among other things, (i) distribute required notices to parties in

interest, (ii) receive, maintain, docket and otherwise administer the proofs of claim filed in the

Debtors' chapter 11 cases and (iii) provide such other administrative services – as required by

the Debtors – that would fall within the purview of services to be provided by the Clerk's office;

and upon the Frishberg Declaration submitted in support of the Application; and the Debtors

having estimated that there are in excess of 250 creditors in these chapter 11 cases, many of

which are expected to file proofs of claim; and it appearing that the receiving, docketing and

maintaining of proofs of claim would be unduly time consuming and burdensome for the Clerk;

and the Court being authorized under 28 U.S.C. §156(c) to utilize, at the Debtors' expense,

outside agents and facilities to provide notices to parties in title 11 cases and to receive, docket,

maintain, photocopy and transmit proofs of claim; and the Court being satisfied that Prime Clerk

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).  The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

has the capability and experience to provide such services and that Prime Clerk does not hold an interest adverse to the Debtors or the estates respecting the matters upon which it is to be engaged; and good and sufficient notice of the Application having been given and no other or further notice being required; and it appearing that the employment of Prime Clerk is in the best interests of the Debtors, their estates and creditors; and sufficient cause appearing therefor; it is hereby ORDERED THAT:

1.      Notwithstanding the terms of the Engagement Agreement annexed to the Application, the Application is GRANTED as set forth herein.

2.      The Debtors are authorized to retain Prime Clerk as Claims and Noticing Agent effective *nunc pro tunc* to the Petition Date under the terms of the Engagement Agreement, and Prime Clerk is authorized and directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in these chapter 11 cases, and all related tasks, all as described in the Application.

3.      Prime Clerk shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk's Office with a certified duplicate thereof upon the request of the Clerk's Office.

4.      Prime Clerk is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

5.      Prime Clerk is authorized to take such other action to comply with all duties set forth in the Application.

6.      The Debtors are authorized to compensate Prime Clerk in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices

setting forth the services provided by Prime Clerk and the rates charged for each, and to reimburse Prime Clerk for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Prime Clerk to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      Prime Clerk shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtor, the U.S. Trustee, counsel for the Debtors, counsel for the Committee monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices.

8.      The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; *provided* that the parties may seek resolution of the matter from the Court if resolution is not achieved.

9.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Prime Clerk under this Order shall be an administrative expense of the Debtors' estates.

10.     Prime Clerk may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount, and thereafter Prime Clerk may hold its retainer under the Engagement Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.     The Debtors shall indemnify Prime Clerk under the terms of the Engagement Agreement, as modified pursuant to this Order.

12.    All requests by Prime Clerk for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided*, that in no event shall Prime Clerk be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

13.    In the event that Prime Clerk seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Prime Clerk's own applications, both interim and final, but determined by this Court after notice and a hearing.

14.    In the event Prime Clerk is unable to provide the services set out in this Order, Prime Clerk will immediately notify the Clerk's Office and the Debtors' counsel and, upon approval of the Court, shall cause all original proofs of claim and computer information to be turned over to another claims and noticing agent with the advice and consent of the Clerk's Office and the Debtors' counsel.

15.    Prime Clerk shall not cease providing claims processing services during these chapter 11 cases for any reason, including nonpayment, without an order of the Court.

16.    The Debtors may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Prime Clerk but is not specifically authorized by this Order.

17.    The Debtors and Prime Clerk are authorized to take all actions necessary

to effectuate the relief granted pursuant to this Order in accordance with the Application.

18.        In the event of an inconsistency between the Engagement Agreement, the

Application, and this Order, this Order shall govern.

19.        This Court retains exclusive jurisdiction with respect to all matters arising from

or related to the implementation, interpretation, and enforcement of this Order.


Dated: _____, 2016
         New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit B

**Frishberg Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
                                                    :
In re                                               :        Chapter 11
                                                    :
Gawker Media LLC, *et al.*,[1]                      :        Case No. 16-11700 (SMB)
                                                    :
                        Debtors.                    :        (Joint Administration Requested)
                                                    :
-------------------------------------------------------x

**DECLARATION OF MICHAEL J. FRISHBERG IN SUPPORT OF
DEBTORS' APPLICATION PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 503(b)(1)(A),
AND LOCAL RULE 5075-1 FOR APPOINTMENT OF PRIME CLERK LLC
AS CLAIMS AND NOTICING AGENT**

I, Michael J. Frishberg, under penalty of perjury, declare as follows:

1.      I am the Co-President and Chief Operating Officer of Prime Clerk LLC ("***Prime
Clerk***"), a chapter 11 administrative services firm whose offices are located at 830 Third
Avenue, 9th Floor, New York, New York 10022.  Except as otherwise noted, I have personal
knowledge of the matters set forth herein, and if called and sworn as a witness, I could and
would testify competently thereto.

2.      This Declaration is made in support of the above-captioned debtors' (collectively,
the "***Debtors***") *Application for Appointment of Prime Clerk LLC as Claims and Noticing Agent*,
which was filed contemporaneously herewith (the "***Application***").[2]

3.      Prime Clerk is comprised of leading industry professionals with significant
experience in both the legal and administrative aspects of large, complex chapter 11 cases.
Prime Clerk's professionals have experience in noticing, claims administration, solicitation,

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker
Media Group, Inc. (3231); and Kinja Kft. (5056).  The offices of Gawker Media LLC and Gawker Media Group,
Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja Kft.'s offices are located at Andrassy
ut 66. 1062 Budapest, Hungary.
[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Prime Clerk's professionals have acted as debtor's counsel or official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide. Prime Clerk's active cases include: *In re Hercules Offshore, Inc.,* No. 16-11385 (KJC) (Bankr. D. Del.); *In re Fairway Group Holdings Corp.*, No. 16-11241 (MEW) (Bankr. S.D.N.Y.); *In re Aéropostale, Inc.*, No. 16-11275 (SHL) (Bankr. S.D.N.Y.); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex.); *In re Pacific Sunwear of California, Inc.*, No. 16-10882 (LSS) (Bankr. D. Del.); *In re Aspect Software Parent, Inc.*, No. 16-10597 (MFW) (Bankr. D. Del.); *In re SH130 Concession Co., LLC*, No. 16-10262 (TMD) (Bankr. W.D. Tex.); *In re Republic Airways Holdings Inc.*, No. 16-10429 (SHL) (Bankr. S.D.N.Y.); *In re Abengoa Bioenergy US Holding, LLC*, No. 16-41161 (KAS) (Bankr. E.D. Mo.); *In re Noranda Aluminum, Inc.*, No. 16-10083 (BSS) (Bankr. E.D. Mo.); *In re RCS Capital Corp.*, No. 16-10223 (MFW) (Bankr. D. Del.); *In re Verso Corp.*, No. 16-10163 (KG) (Bankr. D. Del.); *In re Arch Coal, Inc.*, No. 16-40120 (CER) (Bankr. E.D. Mo.); *In re New Gulf Resources, LLC*, No. 15-12566 (BLS) (Bankr. D. Del.); *In re Magnum Hunter Resources Corp.*, No. 15-12533 (KG) (Bankr. D. Del.); *In re Energy & Exploration Partners, Inc.*, No. 15-44931 (RFN) (Bankr. N.D. Tex.); *In re KaloBios Pharmaceuticals, Inc.*, No. 15-12628 (LSS) (Bankr. D. Del.); *In re Millennium Lab Holdings II, LLC*, No. 15-12284 (LSS) (Bankr. D. Del.); *In re Parallel Energy, LP*, No. 15-12263 (KG) (Bankr. D. Del.); *In re Cook Inlet Energy, LLC*, No. 15-00236 (GS) (Bankr. D. Alaska); *In re Hovensa L.L.C.*, No. 15-10003 (MFW) (D.V.I.); *In re Hercules Offshore, Inc.*, No. 15-11685 (KJC) (Bankr. D. Del.); *In re The Great Atl. & Pac. Tea Co., Inc.*, No. 15-23007 (RDD) (Bankr. S.D.N.Y.); *In re Milagro Holdings, LLC*, No. 15-11520 (KG) (Bankr. D. Del.); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y.); *In re*

*Molycorp, Inc.*, No. 15-11357 (CSS) (Bankr. D. Del.); *In re Patriot Coal Corp.*, No. 15-32450

(KLP) (Bankr. E.D. Va.).

4.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Prime

Clerk will perform, at the request of the Office of the Clerk of the Bankruptcy Court

(the "***Clerk***"), the services specified in the Section 156(c) Application and the Engagement

Agreement, and, at the Debtors' request, any related administrative, technical and support

services as specified in the Section 156(c) Application and the Engagement Agreement.   In

performing such services, Prime Clerk will charge the Debtors the rates set forth in the

Engagement Agreement, which is attached as **Exhibit C** to the Application.

5.      Prime Clerk represents, among other things, the following:

(a)      Prime Clerk is not a creditor of the Debtors;

(b)      Prime Clerk will not consider itself employed by the United States
government and shall not seek any compensation from the United States
government in its capacity as the Claims and Noticing Agent in these
chapter 11 cases;

(c)      By accepting employment in these chapter 11 cases, Prime Clerk waives
any rights to receive compensation from the United States government in
connection with these chapter 11 cases;

(d)      In its capacity as the Claims and Noticing Agent in these chapter 11 cases,
Prime Clerk will not be an agent of the United States and will not act on
behalf of the United States;

(e)      Prime Clerk will not employ any past or present employees of the Debtors
in connection with its work as the Claims and Noticing Agent in these
chapter 11 cases;

(f)      Prime Clerk is a "disinterested person" as that term is defined in section
101(14) of the Bankruptcy Code with respect to the matters upon which it
is engaged;

(g)      In its capacity as Claims and Noticing Agent in these chapter 11 cases,
Prime Clerk will not intentionally misrepresent any fact to any person;

      (h)      Prime Clerk shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

      (i)      Prime Clerk will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

      (j)      None of the services provided by Prime Clerk as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

6.      Although the Debtors do not propose to retain Prime Clerk under section 327 of the Bankruptcy Code pursuant to the Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "*Potential Parties in Interest*") in these chapter 11 cases. The list of Potential Parties in Interest was provided by the Debtors and included, among other parties, the Debtors, current and former directors and officers of the Debtors, significant stockholders, secured creditors, lenders, the Debtors' 50 largest unsecured creditors on a consolidated basis and other parties. The results of the conflict check were compiled and reviewed by Prime Clerk professionals under my supervision. At this time, and as set forth in further detail herein, Prime Clerk is not aware of any relationship that would present a disqualifying conflict of interest. Should Prime Clerk discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Prime Clerk will use reasonable efforts to file promptly a supplemental declaration.

7.      To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Prime Clerk, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties. Prime Clerk may have relationships with certain of the Debtors' creditors as vendors or

in connection with cases in which Prime Clerk serves or has served in a neutral capacity as Claims and Noticing Agent and/or Administrative Advisor for another chapter 11 debtor.

8.     Certain of Prime Clerk's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases. Such firms include Kirkland & Ellis LLP; Weil, Gotshal & Manges LLP; O'Melveny & Myers LLP; Mayer Brown LLP; Willkie Farr & Gallagher LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell & Giuliani LLP; Proskauer Rose LLP; Curtis, Mallet-Prevost, Colt & Mosle LLP; Baker & Hostetler LLP; McKinsey & Company; KPMG LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc. and Kurtzman Carson Consultants LLC. Except as disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms.   Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed.

9.     Prime Clerk has and will continue to represent clients in matters unrelated to these chapter 11 cases.   In addition, Prime Clerk and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals and other parties in interest that may be involved in the Debtors' chapter 11 cases.  Prime Clerk may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

10.     Prime Clerk and its personnel in their individual capacities regularly utilize the services of law firms, accounting firms and financial advisors.  Such firms engaged by Prime Clerk or its personnel may appear in chapter 11 cases representing the Debtors or parties in interest.  All engagements where such firms represent Prime Clerk or its personnel in their individual capacities are unrelated to these chapter 11 cases.

56976269_3

11.     From time to time, Prime Clerk partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "***Investment Funds***"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates, often without Prime Clerk's or its personnel's knowledge.  Each Prime Clerk partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy, sell or vote any particular security.  The Investment Fund is generally operated as a blind pool, meaning that when the Prime Clerk partners or employees make an investment in the Investment Fund, he, she or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

12.     From time to time, Prime Clerk partners or employees may personally directly acquire a debt or equity security of a company which may be one of the Debtors or their affiliates.  Prime Clerk has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work.  In this regard, all Prime Clerk partners and employees are barred from trading in securities with respect to matters in which Prime Clerk is retained.

13.     To the best of my knowledge, neither Prime Clerk nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estates with respect to any matter upon which Prime Clerk is to be engaged.  Based on the foregoing, I believe that Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on  6/13/16

Michael J. Frishberg
Co-President and Chief Operating Officer
Prime Clerk LLC

**<u>Exhibit C</u>**

**Engagement Agreement**



### Prime Clerk LLC Engagement Agreement

This Agreement is entered into as of May 25, 2016 between Prime Clerk LLC ("**Prime Clerk**") and Gawker Media Group, Inc. (together with its affiliates and subsidiaries, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Prime Clerk agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "**Services**").

   (b) The Company acknowledges and agrees that Prime Clerk will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "**Company Parties**") with respect to providing Services hereunder. The parties agree that Prime Clerk may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

   (c) The Company agrees and understands that Prime Clerk shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

   (a) Prime Clerk will provide the Services on an as needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "**Rate Structure**"). The Company agrees to pay for reasonable out of pocket expenses incurred by Prime Clerk in connection with providing Services hereunder.

   (b) The Rate Structure sets forth individual unit pricing for each of the Services. The Company may request separate Services or all of the Services. Prime Clerk shall provide the Company with an additional 10 percent discount on all hourly rates related to solicitation, balloting and tabulation.

   (c) Prime Clerk will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Prime Clerk may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid as of 30 days after delivery of an invoice, and such delay is not due to pending

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.


Prime Clerk

approvals from the Bankruptcy Court, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Prime Clerk within 10 days of receipt of the invoice. The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Prime Clerk or paid by Prime Clerk to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Prime Clerk an advance of $15,000. Prime Clerk may use such advance against unpaid fees and expenses hereunder. Prime Clerk may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Prime Clerk may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Prime Clerk reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each calendar year. If such annual increases represent an increase greater than 10% from the previous year's levels, Prime Clerk shall provide 30 days' notice to the Company of such increases.

## 3. Retention in Bankruptcy Case

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "*Bankruptcy Code*"), the Company promptly shall file applications with the Bankruptcy Court to retain Prime Clerk (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Prime Clerk.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Prime Clerk will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

## 4. Confidentiality

(a) The Company and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.



## 5.  Property Rights

Prime Clerk reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "**Property**") furnished by Prime Clerk for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Prime Clerk hereunder.

## 6.  Bank Accounts

At the request of the Company or the Company Parties, Prime Clerk shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.  To the extent that certain financial products are provided to the Company pursuant to Prime Clerk's agreement with financial institutions, Prime Clerk may receive compensation from such institutions for the services Prime Clerk provides pursuant to such agreement.

## 7.  Term and Termination

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "**Cause**" means (i) gross negligence or willful misconduct of Prime Clerk that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Prime Clerk invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Prime Clerk where Prime Clerk reasonably believes it will not be paid.

(b) If this Agreement is terminated after Prime Clerk is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Prime Clerk of its duties under such retention, which order shall be in form and substance reasonably acceptable to Prime Clerk.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Prime Clerk hereunder.

(d) If this Agreement is terminated, Prime Clerk shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

## 8.  No Representations or Warranties

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.



9. Indemnification

    (a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Prime Clerk and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "*Indemnified Parties*") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "*Losses*") resulting from, arising out of or related to Prime Clerk's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

    (b) Prime Clerk and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

    (c) The Company's indemnification of Prime Clerk hereunder shall exclude Losses resulting from Prime Clerk's gross negligence or willful misconduct.

    (d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10. Limitations of Liability

Except as expressly provided herein, Prime Clerk's liability to the Company for any Losses, unless due to Prime Clerk's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss. In no event shall Prime Clerk's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Prime Clerk for Services provided hereunder. In no event shall Prime Clerk be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11. Company Data

    (a) The Company is responsible for, and Prime Clerk does not verify, the accuracy of the programs, data and other information of the Company it or any Company Party submits for processing to Prime Clerk and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "SOFAs and Schedules"). Prime Clerk bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

    (b) The Company agrees, represents and warrants to Prime Clerk that before delivery of any information to Prime Clerk: (i) the Company has full authority to deliver such information to Prime Clerk; and (ii) Prime Clerk is authorized to use such information to perform Services hereunder.

    (c) Any data, storage media, programs or other materials furnished to Prime Clerk by the Company may be retained by Prime Clerk until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Prime Clerk under this Agreement as a result of data, storage media or other materials maintained, stored or



disposed of by Prime Clerk. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Prime Clerk's Services for a period of 90 days or more, Prime Clerk may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Prime Clerk.

(d) If Prime Clerk is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Prime Clerk during the term of this Agreement and for a period of 12 months after termination thereof unless Prime Clerk provides prior written consent to such solicitation or retention.

## 13. Force Majeure

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act. Notwithstanding the foregoing, to the extent Prime Clerk is retained pursuant to a Bankruptcy Court order, this arbitration provision shall not apply and the parties consent to the jurisdiction of the Bankruptcy Court with respect to any disputes arising out of or relating to this Agreement.

## 16. Integration; Severability; Modifications; Assignment

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the



agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Prime Clerk.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 17. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 18. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

| | |
|---|---|
| If to Prime Clerk: | Prime Clerk LLC |
| | 830 3rd Avenue, 9th Floor |
| | New York, NY 10022 |
| | Attn: Shai Waisman |
| | Tel: (212) 257-5450 |
| | Email: swaisman@primeclerk.com |
| If to the Company: | Gawker Media |
| | 114 Fifth Avenue |
| | New York, NY 10011 |
| | Attn: Heather Dietrick |
| | Tel: 646-747-2265 |
| | Email: heather@gawker.com |
| With a copy to: | Ropes & Gray LLP |
| | 1211 Avenue of the Americas |
| | New York, NY 10036 |
| | Attn: Gregg M. Galardi |
| | Tel: (212) 596-9139 |
| | Email: gregg.galardi@ropesgray.com |



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

Prime Clerk LLC

By: Benjamin Schrag
Title: Executive Vice President


Gawker Media Group, INC

By: Heather J Dietrick
Title: President

# Rates

### Claim and Noticing Rates[1]

| Title | Hourly Rate |
| --- | --- |
| **Analyst**<br>The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $30 - $45 |
| **Technology Consultant**<br>The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $60 - $95 |
| **Consultant/Senior Consultant**<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. Prime Clerk Consultants have between three and five years of experience.<br><br>The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. Prime Clerk's Senior Consultants average over five years of experience. | $65 - $160 |
| **Director**<br>The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Prime Clerk will serve in this role at this rate. Prime Clerk's Directors have over ten years of experience and are typically former restructuring attorneys or paralegals. | $170 - $190 |
| **Chief Operating Officer and Executive Vice President**<br>Michael Frishberg, Prime Clerk's COO, and Ben Schrag, Prime Clerk's Executive Vice President, both former restructuring attorneys with collectively over twenty five years of experience, will add an additional supervisory layer to this matter at no charge. | No charge |

[1] Prime Clerk does not charge overtime for any professional services it performs on weekends, holidays or after standard business hours. Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.

**Prime Clerk**

## Solicitation, Balloting and Tabulation Rates[2]

| | |
|---|---|
| **Solicitation Consultant**<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. Solicitation Consultants average over five years of experience. | $175 |
| **Director of Solicitation**<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. Prime Clerk's Director of Solicitation has over 15 years of experience and is a former restructuring attorney. | $195 |

## Printing and Noticing Services

| | |
|---|---|
| Printing | $0.10 per page[3] |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | No charge |
| Envelopes | Varies by Size |

## Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

---

[2] Certain fees may be applicable to noticing, solicitation and corporate action events involving holders of public securities.

[3] Volume discounts will be applied to large mailings.

Prime Clerk

## Case Website

| | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |

## Client Access

| | |
|---|---|
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |

## Data Administration and Management

| | |
|---|---|
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.10 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |

## On-line Claim Filing Services

| | |
|---|---|
| On-line claim filing | No charge |

## Call Center Services

| | |
|---|---|
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |

## Disbursement Services

| | |
|---|---|
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of TIN database | Standard hourly rates |

Prime Clerk