ROPES & GRAY LLP
Gregg M. Galardi
Jonathan P. Gill
Kristina K. Alexander
Stacy A. Dasaro
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
                                          :

In re                                   :            Chapter 11
                                            :
Gawker Media LLC, *et al.*,[1]         :            Case No. 16-11700 (SMB)
                                            :
                   Debtors.       :            (Joint Administration Requested)
                                            :
-------------------------------------------------------x

**DEBTORS' APPLICATION PURSUANT TO 11 U.S.C. § 327(a), FED. R. BANKR. P. 2014(a) AND 2016, AND LOCAL RULES 2014-1 AND 2016-1 FOR ENTRY OF AN ORDER APPOINTING PRIME CLERK LLC AS ADMINISTRATIVE ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE**

Gawker Media LLC ("Gawker Media"), Gawker Media Group, Inc. ("GMGI"),  and

Kinja Kft. ("Kinja"), debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "Debtors"), respectfully submit this application (the "Application") for entry of

an order, substantially in the form attached hereto as Exhibit A, appointing Prime Clerk LLC

("Prime Clerk") as claims and noticing agent ("Claims and Noticing Agent") in the Debtors'

chapter 11 cases, *nunc pro tunc* to the Petition Date (as defined below).  In support of the

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).  The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

Application, the Debtors hereby incorporate by reference the *Declaration of Michael J. Frishberg, Co-President and Chief Operating Officer of Prime Clerk* (the "Frishberg Declaration"), which is attached hereto as Exhibit B.  In further support of the Application, the Debtors hereby incorporate by reference the *Declaration of William Holden in Support of First Day Motions* (the "First Day Declaration") [Docket No. 7].[2]  In further support of the Application, the Debtors, by and through their undersigned proposed counsel, respectfully represent as follows:

## Jurisdiction and Venue

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 1409.

3.      The statutory bases for the relief requested herein are section 327(a) of title 11 of the United States Code (the "Bankruptcy Code"),  Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules").

## Procedural Background

4.      On June 10, 2016, Gawker Media filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.   On June 12, 2016, GMGI and Kinja each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtors are operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the First Day Declaration.

56987739_6

6.      No official committee of unsecured creditors, nor any trustee or examiner, has

been appointed in these cases.

7.      The factual background regarding the Debtors, their business operations, their

capital and debt structure, and the events leading up to the filing of these chapter 11 cases are set

forth in detail in the First Day Declaration.

**Relief Requested**

8.      Pursuant to section 327 of title 11 of the United States Code (the "Bankruptcy

Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of

New York (the "Local Bankruptcy Rules"), the Debtors request authority to employ and retain

Prime Clerk LLC ("Prime Clerk") as administrative advisor ("Administrative Advisor") in

Debtors' chapter 11 cases effective *nunc pro tunc* to the Petition Date (as defined herein), in

accordance with the terms and condition of the certain Engagement Agreement dated May, 25

2016, by and between the Debtors and Prime Clerk (the "Engagement Agreement").

9.      Contemporaneously herewith, the Debtors have filed an application (the "Section

156(a) Application") for an order appointing Prime Clerk LLC ("Prime Clerk") as claims and

noticing agent pursuant to 28 U.S.C. § 156(c), section 503(b)(1)(A) of the Bankruptcy Code, and

Local Bankruptcy Rule 5075-1.  The Debtors believe that administration of these chapter 11

cases will require Prime Clerk to perform duties outside the scope requested in the Section

156(c) Application.  Therefore, to enable Prime Clerk to provide services outside the scope of

the order approving the Section 156(c) Application, the Debtors hereby submit this Application,

pursuant to section 327 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local

Bankruptcy Rules 2014-1 and 2016-1, for entry of an order substantially in the form attached

- 3 -

hereto as Exhibit A (the "Order"), authorizing the Debtors to employ and retain Prime Clerk as administrative advisor ("Administrative Advisor") for the Debtors in accordance with the Engagement Agreement attached hereto as Exhibit C (the "Engagement Agreement").

### Prime Clerk's Qualifications

10.    Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 bankruptcy cases.  Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Prime Clerk's professionals have acted as debtor's counsel or official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide.  Prime Clerk's active cases include: *In re Hercules Offshore, Inc.,* No. 16-11385 (KJC) (Bankr. D. Del.); *In re Fairway Group Holdings Corp.*, No. 16-11241 (MEW) (Bankr. S.D.N.Y.); *In re Aéropostale, Inc.*, No. 16-11275 (SHL) (Bankr. S.D.N.Y.); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex.); *In re Pacific Sunwear of California, Inc.*, No. 16-10882 (LSS) (Bankr. D. Del.); *In re Aspect Software Parent, Inc.*, No. 16-10597 (MFW) (Bankr. D. Del.); *In re SH130 Concession Co., LLC*, No. 16-10262 (TMD) (Bankr. W.D. Tex.); *In re Republic Airways Holdings Inc.*, No. 16-10429 (SHL) (Bankr. S.D.N.Y.); *In re Abengoa Bioenergy US Holding, LLC,* No. 16-41161 (KAS) (Bankr. E.D. Mo.); *In re Noranda Aluminum, Inc.,* No. 16-10083 (BSS) (Bankr. E.D. Mo.); *In re RCS Capital Corp.*, No. 16-10223 (MFW) (Bankr. D. Del.); *In re Verso Corp.*, No. 16-10163 (KG) (Bankr. D. Del.); *In re Arch Coal, Inc.*, No. 16-40120 (CER) (Bankr. E.D. Mo.); *In re New Gulf Resources, LLC*, No. 15-12566 (BLS) (Bankr. D. Del.); *In re Magnum Hunter Resources Corp.*, No. 15-12533 (KG) (Bankr. D. Del.); *In re Energy & Exploration Partners, Inc.*, No. 15-44931 (RFN) (Bankr.

56987739_6

N.D. Tex.); *In re KaloBios Pharmaceuticals, Inc.*, No. 15-12628 (LSS) (Bankr. D. Del.); *In re Millennium Lab Holdings II, LLC*, No. 15-12284 (LSS) (Bankr. D. Del.); *In re Parallel Energy, LP*, No. 15-12263 (KG) (Bankr. D. Del.); *In re Cook Inlet Energy, LLC*, No. 15-00236 (GS) (Bankr. D. Alaska); *In re Hovensa L.L.C.*, No. 15-10003 (MFW) (D.V.I.); *In re Hercules Offshore, Inc.*, No. 15-11685 (KJC) (Bankr. D. Del.); *In re The Great Atl. & Pac. Tea Co., Inc.*, No. 15-23007 (RDD) (Bankr. S.D.N.Y.); *In re Milagro Holdings, LLC*, No. 15-11520 (KG) (Bankr. D. Del.); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y.); *In re Molycorp, Inc.*, No. 15-11357 (CSS) (Bankr. D. Del.); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va.).

11. By appointing Prime Clerk as the Claims and Noticing Agent in these chapter 11 cases, the distribution of notices and processing of claims will be expedited, and the Office of the Clerk of the United States Bankruptcy Court for the Southern District of New York (the "Clerk's Office") will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

### Scope of Services to Be Provided

8. This Application only pertains to the work to be performed by Prime Clerk pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1. Specifically, Prime Clerk will provide the following services in its capacity as Administrative Advisor, if and to the extent requested:

    a.    assist with, among other things, solicitation, balloting, and tabulation of votes, and prepare any related reports, as required in support of confirmation of a chapter 11 plan, and in connection with such services, process requests for documents from parties in interest, including, if applicable, brokerage firms, bank back-offices, and institutional holders;

    b.    prepare an official ballot certification and, if necessary, testify in

- 5 -

support of the ballot tabulation results;

c.      assist with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs and gather data in conjunction therewith;

d.      provide a confidential data room, if requested;

e.      manage and coordinate any distributions pursuant to a chapter 11 plan; and

f.      provide such other processing, solicitation, balloting, and other administrative services described in the Engagement Agreement, but not included in the Section 156(c) Application, as may be requested from time to time by the Debtors, the Court, or the Office of the Clerk of the Bankruptcy Court (the "Clerk").

**Professional Compensation**

9.      The fees Prime Clerk will charge in connection with providing services to the Debtors are set forth in the Engagement Agreement. The Debtors respectfully submit that Prime Clerk's rates are competitive and comparable to the rates its competitors charge for similar services. Indeed, the Debtors conducted a review and competitive comparison of other firms and reviewed the rates of other firms before selecting Prime Clerk as Administrative Advisor. The Debtors believe Prime Clerk's rates are more than reasonable given the quality of Prime Clerk's services and its professionals' bankruptcy expertise. Additionally, Prime Clerk will seek reimbursement from the Debtors for reasonable expenses.

10.      Prime Clerk intends to apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Petition Date in connection with the services it provides as Administrative Advisor in accordance with General Order M-412 (Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010 (Gonzalez, C.J.)); General Order M-447 (Amended

Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated January 29, 2013 (Morris, C.J.)); and the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (Appendix A to 28 C.F.R. § 58) (collectively, the "Fee Guidelines"), sections 330 and 331 of the Bankruptcy Code, and the applicable Bankruptcy Rules, Local Bankruptcy Rules, and any further orders of the Court regarding professional compensation and reimbursement of expenses.

11.     Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Prime Clerk and its members, officers, employees, representatives and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Prime Clerk's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Retention Order. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these chapter 11 cases.

**No Duplication of Services**

12.     The Debtors intend that the services of Prime Clerk will complement, and not duplicate, the services being rendered by other professionals retained in these chapter 11 cases. Prime Clerk understands that the Debtors have retained and may retain additional professionals during the term of the engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

**Disinterestedness**

12.     Prime Clerk has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of

- 7 -

the Debtors' knowledge, information and belief, and except as disclosed in the Frishberg

Declaration, Prime Clerk is a "disinterested person" within the meaning of section 101(14) of the

Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or

represent any interest materially adverse to the Debtors' estates in connection with any matter on

which it would be employed.

13.    Prime Clerk believes that it does not have any relationships with creditors or

parties in interest that would present a disqualifying conflict of interest. Prime Clerk will

supplement its disclosure to the Court if any facts or circumstances are discovered that would

require such additional disclosure.

## **Basis for Relief Requested**

14.    Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court

approval:

> [M]ay employ one or more attorneys, accountants, appraisers,
> auctioneers, or other professional persons, that do not hold or
> represent an interest adverse to the estate, and that are
> disinterested persons, to represent or assist the [debtor] in
> carrying out the [debtor]'s duties under this title.

11 U.S.C. §327(a).

15.    In addition, Bankruptcy Rule 2014(a) requires that an application for retention

include:

> [S]pecific facts showing the necessity for the employment, the
> name of the [firm] to be employed, the reasons for the
> selection, the professional services to be rendered, and proposed
> arrangement for compensation, and, to the best of the
> applicant's knowledge, all of the [firm's] connections with the
> debtor, creditors, any other party in interest, their respective
> attorneys and accountants, the U.S. Trustee, or any person
> employed in the office of the U.S. Trustee.

Fed. R. Bankr. P. 2014(a).

- 8 -

56987739_6

16.    In light of the size and complexity of these chapter 11 cases, the Debtors respectfully submit that retaining and employing Prime Clerk pursuant to the terms of the Engagement Agreement is necessary and in the best interests of the Debtors' estates and all parties in interest to these chapter 11 cases. The Debtors also believe that the terms and conditions of the Engagement Agreement are reasonable in light of the anticipated high volume of creditors and other parties-in-interest that will be involved in these chapter 11 cases.

17.    Accordingly, to help manage administrative tasks with respect to the thousands of creditors and other parties in interest that are expected to be involved in these chapter 11 cases, and the complexity of such cases, the Debtors respectfully request the Court enter an order appointing Prime Clerk as the Administrative Advisor in these chapter 11 cases pursuant to sections 327(a), 330, and 331 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1.

### *Nunc Pro Tunc* Relief Is Appropriate

18.    Pursuant to the Debtors' request, the Administrative Advisor has served in such capacity since the Petition Date with assurances that the Debtors would seek approval of its employment and retention effective *nunc pro tunc* to the Petition Date, so that the Administrative Advisor may be compensated for its pre-application services. The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment, as provided herein, because the Administrative Advisor has provided and continues to provide valuable services to the Debtors' estates in the interim period.

19.    Courts in this district have routinely approved *nunc pro tunc* employment similar to that requested herein in matters comparable to this matter. See, e.g., In re Chassix Holdings, Inc., No. 15-10578 (MEW) (Bankr. S.D.N.Y. Apr. 20, 2015) (approving *nunc pro tunc* employment to perform bankruptcy administration services); In re dELiA*s, Inc., No. 14-23678

- 9 -

(RDD) (Bankr. S.D.N.Y. Feb. 10, 2015) (same); In re NII Holdings, Inc., No. 14-12611 (SCC)

(Bankr. S.D.N.Y. Oct. 14, 2014) (same); In re MPM Silicones, LLC, No. 14-22503 (RDD)

(Bankr. S.D.N.Y. May 16, 2014) (same).

20.    Based on the foregoing, the Debtors submit that they have satisfied the

requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

**Notice**

21.    Notice of this Motion has been provided to: (i) the Office of the United States

Trustee for the Southern District of New York; (ii) the 50 largest unsecured creditors of the

Debtors (on a consolidated basis); (iii) counsel to the First Lien Lender; (iv) counsel to the

Second Lien Lender; (v) the Internal Revenue Service; and (vi) the United States Attorney for

the Southern District of New York.  In light of the nature of the relief requested, the Debtors

submit that no other or further notice is necessary.

## Conclusion

WHEREFORE, the Debtors respectfully request that the Court enter an order,

substantially in the form annexed hereto as Exhibit A, granting the relief requested in the Motion

and such other and further relief for the Debtors as may be just or proper.

Dated: June 13, 2016
     New York, New York

                                WILLIAM D. HOLDEN

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
:
In re                                                    :            Chapter 11
:
Gawker Media LLC, *et al.*,[1]                            :            Case No. 16-11700 (SMB)
:
Debtors.                     :            (Joint Administration Requested)
:
-------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. § 327(a), FED. R. BANKR. P. 2014(a) AND 2016, AND LOCAL RULES 2014-1 AND 2016-1 AUTHORIZING RETENTION AND APPOINTMENT OF PRIME CLERK LLC AS ADMINISTRATIVE ADVISOR FOR THE DEBTORS AND DEBTORS IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") for employment and retention of Prime Clerk LLC

("Prime Clerk") as administrative advisor ("Administrative Advisor") *nunc pro tunc* to the

Petition Date pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and

2016 and Local Rules 2014-1 and 2016-1, all as more fully described in the Application; and

upon the Frishberg Declaration submitted in support of the Application; and the Court being

satisfied that Prime Clerk has the capability and experience to provide the services described in

the Application and that Prime Clerk does not hold an interest adverse to the Debtors or the

estates respecting the matters upon which it is to be engaged; and good and sufficient notice of

the Application having been given and no other or further notice being required; and it appearing

that the employment of Prime Clerk is in the best interests of the Debtors, their estates and

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).  The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

creditors; and sufficient cause appearing therefor; it is hereby:

**ORDERED, THAT:**

1.      The Application is GRANTED as set forth herein.

2.      The Debtors are authorized to retain Prime Clerk as Administrative Advisor effective *nunc pro tunc* to the Petition Date under the terms of the Engagement Agreement, and Prime Clerk is authorized and directed to perform the bankruptcy administration services described in the Application and set forth in the Engagement Agreement.

3.      Prime Clerk is authorized to take such other actions necessary to comply with the duties set forth in the Application.

4.      Prime Clerk shall apply to this Court for allowance of compensation and reimbursement of expenses incurred after the Petition Date in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Amended Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010, the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York, dated January 29, 2013 (the "Amended Guidelines"), the United States Trustee Fee Guidelines (the "U.S. Trustee Guidelines"), and any orders entered in these chapter 11 cases regarding professional compensation and reimbursement of expenses.

5.      The Debtors shall indemnify Prime Clerk under the terms of the Engagement Agreement, as modified pursuant to this Order.

6.      All requests by Prime Clerk for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of

the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided*, that in no event shall Prime Clerk be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

7.      In the event that Prime Clerk seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Prime Clerk's own applications, both interim and final, and these invoices and time records shall be subject to the Amended Guidelines, the U.S. Trustee Guidelines, and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

8.      Prime Clerk shall not be entitled to reimbursement by the Debtors for any fees, disbursements, or other charges of Prime Clerk's counsel other than those incurred in connection with a request of Prime Clerk for payment of indemnity.

9.      Notwithstanding any provision to the contrary in the Engagement Agreement, any dispute relating to the services provided by Prime Clerk shall be referred to arbitration consistent with the terms of the Engagement Agreement only to the extent that this Court does not have, retain, or exercise jurisdiction over the dispute.

10.      In the event of an inconsistency between the Engagement Agreement, the Application, and this Order, this Order shall govern.

11.     The Debtors and Prime Clerk are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

12.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2016
          New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Frishberg Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------x
                  :

In re                            :        Chapter 11
                  :

Gawker Media LLC, *et al.*,[1]    :        Case No. 16-11700 (SMB)
                  :

          Debtors.       :        (Joint Administration Requested)
                  :
---------------------------------------------------x

**DECLARATION OF MICHAEL J. FRISHBERG IN SUPPORT OF DEBTORS'
APPLICATION FOR ENTRY OF AN ORDER APPOINTING PRIME CLERK LLC AS
ADMINISTRATIVE ADVISOR FOR THE DEBTORS AND DEBTORS IN POSSESSION
*NUNC PRO TUNC* TO THE PETITION DATE**

        I, Michael J. Frishberg, under penalty of perjury, declare as follows:

        1.        I am the Co-President and Chief Operating Officer of Prime Clerk LLC ("***Prime Clerk***"), a chapter 11 administrative services firm whose offices are located at 830 3rd Avenue, 9th Floor, New York, New York 10022.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

        2.        This Declaration is made in support of the above-captioned debtors' (collectively, the "***Debtors***") *Application for an Order Authorizing Employment and Retention of Prime Clerk LLC as Administrative Advisor* Nunc Pro Tunc *to the Petition Date*, which was filed contemporaneously herewith (the "***Application***").[2]

        3.        Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting and

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).  The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.
56987739_6

facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Prime Clerk's professionals have acted as debtor's counsel or official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide. Prime Clerk's active cases include: *In re Hercules Offshore, Inc.,* No. 16-11385 (KJC) (Bankr. D. Del.); *In re Fairway Group Holdings Corp.*, No. 16-11241 (MEW) (Bankr. S.D.N.Y.); *In re Aéropostale, Inc.*, No. 16-11275 (SHL) (Bankr. S.D.N.Y.); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex.); *In re Pacific Sunwear of California, Inc.*, No. 16-10882 (LSS) (Bankr. D. Del.); *In re Aspect Software Parent, Inc.*, No. 16-10597 (MFW) (Bankr. D. Del.); *In re SH130 Concession Co., LLC*, No. 16-10262 (TMD) (Bankr. W.D. Tex.); *In re Republic Airways Holdings Inc.*, No. 16-10429 (SHL) (Bankr. S.D.N.Y.); *In re Abengoa Bioenergy US Holding, LLC*, No. 16-41161 (KAS) (Bankr. E.D. Mo.); *In re Noranda Aluminum, Inc.*, No. 16-10083 (BSS) (Bankr. E.D. Mo.); *In re RCS Capital Corp.*, No. 16-10223 (MFW) (Bankr. D. Del.); *In re Verso Corp.*, No. 16-10163 (KG) (Bankr. D. Del.); *In re Arch Coal, Inc.*, No. 16-40120 (CER) (Bankr. E.D. Mo.); *In re New Gulf Resources, LLC*, No. 15-12566 (BLS) (Bankr. D. Del.); *In re Magnum Hunter Resources Corp.*, No. 15-12533 (KG) (Bankr. D. Del.); *In re Energy & Exploration Partners, Inc.*, No. 15-44931 (RFN) (Bankr. N.D. Tex.); *In re KaloBios Pharmaceuticals, Inc.*, No. 15-12628 (LSS) (Bankr. D. Del.); *In re Millennium Lab Holdings II, LLC*, No. 15-12284 (LSS) (Bankr. D. Del.); *In re Parallel Energy, LP*, No. 15-12263 (KG) (Bankr. D. Del.); *In re Cook Inlet Energy, LLC*, No. 15-00236 (GS) (Bankr. D. Alaska); *In re Hovensa L.L.C.*, No. 15-10003 (MFW) (D.V.I.); *In re Hercules Offshore, Inc.*, No. 15-11685 (KJC) (Bankr. D. Del.); *In re The Great Atl. & Pac. Tea Co., Inc.*, No. 15-23007 (RDD) (Bankr. S.D.N.Y.); *In re Milagro Holdings, LLC*, No. 15-11520 (KG) (Bankr. D. Del.); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y.); *In re Molycorp, Inc.*, No. 15-11357 (CSS) (Bankr. D. Del.); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va.).

4.      As Administrative Advisor, Prime Clerk will perform the bankruptcy administration services specified in the Application and the Engagement Agreement.  In performing such services, Prime Clerk will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as **Exhibit C** to the Application.

5.      Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that Prime Clerk and its professional personnel:

(a)      are not creditors, equity security holders, or insiders of the Debtors;

(b)      are not and were not, within two years before the date of the filing of these cases, directors, officers, or employees of the Debtors; and

(c)      do not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

6.      I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "***Potential Parties in Interest***") in these chapter 11 cases.  The list of Potential Parties in Interest was provided by the Debtors and included the Debtors, current and former directors and officers of the Debtors, significant stockholders, secured creditors, lenders, the Debtors' 50 largest unsecured creditors on a consolidated basis, contract counterparties, landlords, vendors, insurers, utilities, governmental authorities and other parties.  The results of the conflict check were compiled and reviewed by Prime Clerk professionals under my supervision.  At this time, and as set forth in further detail herein, Prime Clerk is not aware of any relationship that would present a disqualifying conflict of interest.  Should Prime Clerk discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Prime Clerk will use reasonable efforts to file promptly a supplemental declaration.

7.      To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Prime Clerk, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties.  Prime

Clerk may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Prime Clerk serves or has served in a neutral capacity as Claims and Noticing Agent and/or Administrative Advisor for another chapter 11 debtor.

8.      Certain of Prime Clerk's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases. Such firms include Kirkland & Ellis LLP; Weil, Gotshal & Manges LLP; O'Melveny & Myers LLP; Mayer Brown LLP; Willkie Farr & Gallagher LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell & Giuliani LLP; Proskauer Rose LLP; Curtis, Mallet-Prevost, Colt & Mosle LLP; Baker & Hostetler LLP; McKinsey & Company; KPMG LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc. and Kurtzman Carson Consultants LLC. Except as disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms. Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed.

9.      Prime Clerk has and will continue to represent clients in matters unrelated to these chapter 11 cases. In addition, in matters unrelated to these cases, Prime Clerk and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals and other parties in interest that may be involved in the Debtors' chapter 11 cases. Prime Clerk may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

10.      Prime Clerk and its personnel in their individual capacities regularly utilize the services of law firms, accounting firms and financial advisors. Such firms engaged by Prime Clerk or its personnel may appear in chapter 11 cases representing the Debtors or parties in interest. All engagements where such firms represent Prime Clerk or its personnel in their individual capacities are unrelated to these chapter 11 cases.

11.     From time to time, Prime Clerk partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "***Investment Funds***"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates, often without Prime Clerk's or its personnel's knowledge.  Each Prime Clerk partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy, sell or vote any particular security.  The Investment Fund is generally operated as a blind pool, meaning that when the Prime Clerk partners or employees make an investment in the Investment Fund, he, she or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

12.     From time to time, Prime Clerk partners or employees may personally directly acquire a debt or equity security of a company which may be one of the Debtors or their affiliates. Prime Clerk has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work.  In this regard, all Prime Clerk partners and employees are barred from trading in securities with respect to matters in which Prime Clerk is retained.

13.     To the best of my knowledge, neither Prime Clerk nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estates with respect to any matter upon which Prime Clerk is to be engaged.  Based on the foregoing, I believe that Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on June 13, 2016

Michael J. Frishberg
Co-President and Chief Operating Officer
Prime Clerk LLC

## **Exhibit C**

**Engagement Agreement**



### Prime Clerk LLC Engagement Agreement

This Agreement is entered into as of May 25, 2016 between Prime Clerk LLC ("*Prime Clerk*") and Gawker Media Group, Inc. (together with its affiliates and subsidiaries, the "*Company*").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

    (a) Prime Clerk agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "*Services*").

    (b) The Company acknowledges and agrees that Prime Clerk will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "*Company Parties*") with respect to providing Services hereunder. The parties agree that Prime Clerk may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

    (c) The Company agrees and understands that Prime Clerk shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

    (a) Prime Clerk will provide the Services on an as needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "*Rate Structure*"). The Company agrees to pay for reasonable out of pocket expenses incurred by Prime Clerk in connection with providing Services hereunder.

    (b) The Rate Structure sets forth individual unit pricing for each of the Services. The Company may request separate Services or all of the Services. Prime Clerk shall provide the Company with an additional 10 percent discount on all hourly rates related to solicitation, balloting and tabulation.

    (c) Prime Clerk will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Prime Clerk may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid as of 30 days after delivery of an invoice, and such delay is not due to pending

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.

56999281_2



approvals from the Bankruptcy Court, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Prime Clerk within 10 days of receipt of the invoice. The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Prime Clerk or paid by Prime Clerk to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Prime Clerk an advance of $15,000. Prime Clerk may use such advance against unpaid fees and expenses hereunder. Prime Clerk may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Prime Clerk may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Prime Clerk reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each calendar year. If such annual increases represent an increase greater than 10% from the previous year's levels, Prime Clerk shall provide 30 days' notice to the Company of such increases.

## 3. Retention in Bankruptcy Case

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "*Bankruptcy Code*"), the Company promptly shall file applications with the Bankruptcy Court to retain Prime Clerk (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Prime Clerk.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Prime Clerk will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

## 4. Confidentiality

(a) The Company and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.



Prime Clerk

5.  Property Rights

Prime Clerk reserves all property rights in and to all materials, concepts, creations, inventions, works of
authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs,
systems, specifications, applications, processes, routines, manuals, documentation and any other
information or property (collectively, "*Property*") furnished by Prime Clerk for itself or for use by the
Company hereunder. Fees and expenses paid by the Company do not vest in the Company any rights in
such Property. Such Property is only being made available for the Company's use during and in
connection with the Services provided by Prime Clerk hereunder.

6.  Bank Accounts

At the request of the Company or the Company Parties, Prime Clerk shall be authorized to establish
accounts with financial institutions in the name of and as agent for the Company to facilitate distributions
pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are
provided to the Company pursuant to Prime Clerk's agreement with financial institutions, Prime Clerk may
receive compensation from such institutions for the services Prime Clerk provides pursuant to such
agreement.

7.  Term and Termination

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior
written notice to other party; or (ii) immediately upon written notice for Cause (as defined
herein). "*Cause*" means (i) gross negligence or willful misconduct of Prime Clerk that causes
material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code,
(ii) the failure of the Company to pay Prime Clerk invoices for more than 60 days from the
date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held
by Prime Clerk where Prime Clerk reasonably believes it will not be paid.

(b) If this Agreement is terminated after Prime Clerk is retained pursuant to Bankruptcy Court
order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Prime
Clerk of its duties under such retention, which order shall be in form and substance
reasonably acceptable to Prime Clerk.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued
and/or due and owing to Prime Clerk hereunder.

(d) If this Agreement is terminated, Prime Clerk shall coordinate with the Company and, to the
extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record
keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance
required for such an orderly transfer. The Company agrees to pay for such Services pursuant
to the Rate Structure.

8.  No Representations or Warranties

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any
express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use,
quality, productiveness or capacity.

56999281_2                                    3



9.  Indemnification

(a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Prime Clerk and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "*Indemnified Parties*") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "*Losses*") resulting from, arising out of or related to Prime Clerk's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b) Prime Clerk and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c) The Company's indemnification of Prime Clerk hereunder shall exclude Losses resulting from Prime Clerk's gross negligence or willful misconduct.

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10. Limitations of Liability

Except as expressly provided herein, Prime Clerk's liability to the Company for any Losses, unless due to Prime Clerk's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Prime Clerk's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Prime Clerk for Services provided hereunder.  In no event shall Prime Clerk be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11. Company Data

(a) The Company is responsible for, and Prime Clerk does not verify, the accuracy of the programs, data and other information of the Company it or any Company Party submits for processing to Prime Clerk and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "SOFAs and Schedules").  Prime Clerk bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b) The Company agrees, represents and warrants to Prime Clerk that before delivery of any information to Prime Clerk: (i) the Company has full authority to deliver such information to Prime Clerk; and (ii) Prime Clerk is authorized to use such information to perform Services hereunder.

(c) Any data, storage media, programs or other materials furnished to Prime Clerk by the Company may be retained by Prime Clerk until the Services provided hereunder are paid in full.  The Company shall remain liable for all fees and expenses incurred by Prime Clerk under this Agreement as a result of data, storage media or other materials maintained, stored or



disposed of by Prime Clerk. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Prime Clerk's Services for a period of 90 days or more, Prime Clerk may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Prime Clerk.

(d) If Prime Clerk is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Prime Clerk during the term of this Agreement and for a period of 12 months after termination thereof unless Prime Clerk provides prior written consent to such solicitation or retention.

## 13. Force Majeure

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act. Notwithstanding the foregoing, to the extent Prime Clerk is retained pursuant to a Bankruptcy Court order, this arbitration provision shall not apply and the parties consent to the jurisdiction of the Bankruptcy Court with respect to any disputes arising out of or relating to this Agreement.

## 16. Integration; Severability; Modifications; Assignment

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the



agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Prime Clerk.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 17. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 18. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

| | |
|---|---|
| If to Prime Clerk: | Prime Clerk LLC |
| | 830 3rd Avenue, 9th Floor |
| | New York, NY 10022 |
| | Attn: Shai Waisman |
| | Tel: (212) 257-5450 |
| | Email: swaisman@primeclerk.com |
| If to the Company: | Gawker Media |
| | 114 Fifth Avenue |
| | New York, NY 10011 |
| | Attn: Heather Dietrick |
| | Tel: 646-747-2265 |
| | Email: heather@gawker.com |
| With a copy to: | Ropes & Gray LLP |
| | 1211 Avenue of the Americas |
| | New York, NY 10036 |
| | Attn: Gregg M. Galardi |
| | Tel: (212) 596-9139 |
| | Email: gregg.galardi@ropesgray.com |



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Prime Clerk LLC**

By: Benjamin Schrag

Title: Executive Vice President


**Gawker Media** GROUP, INC

By: Heather L Dietrick

Title: President

# Rates

## Claim and Noticing Rates[1]

| Title | Hourly Rate |
|---|---|
| **Analyst**<br>The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $30 - $45 |
| **Technology Consultant**<br>The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $60 - $95 |
| **Consultant/Senior Consultant**<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. Prime Clerk Consultants have between three and five years of experience.<br><br>The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. Prime Clerk's Senior Consultants average over five years of experience. | $65 - $160 |
| **Director**<br>The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Prime Clerk will serve in this role at this rate. Prime Clerk's Directors have over ten years of experience and are typically former restructuring attorneys or paralegals. | $170 - $190 |
| **Chief Operating Officer and Executive Vice President**<br>Michael Frishberg, Prime Clerk's COO, and Ben Schrag, Prime Clerk's Executive Vice President, both former restructuring attorneys with collectively over twenty five years of experience, will add an additional supervisory layer to this matter at no charge. | No charge |

[1] Prime Clerk does not charge overtime for any professional services it performs on weekends, holidays or after standard business hours. Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.

Prime Clerk

## Solicitation, Balloting and Tabulation Rates[2]

| | |
|---|---|
| **Solicitation Consultant** | $175 |
| The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. Solicitation Consultants average over five years of experience. | |
| **Director of Solicitation** | $195 |
| The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. Prime Clerk's Director of Solicitation has over 15 years of experience and is a former restructuring attorney. | |

## Printing and Noticing Services

| | |
|---|---|
| Printing | $0.10 per page[3] |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | No charge |
| Envelopes | Varies by Size |

## Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

---

[2] Certain fees may be applicable to noticing, solicitation and corporate action events involving holders of public securities.

[3] Volume discounts will be applied to large mailings.

Prime Clerk

## Case Website

| | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |

## Client Access

| | |
|---|---|
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |

## Data Administration and Management

| | |
|---|---|
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.10 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |

## On-line Claim Filing Services

| | |
|---|---|
| On-line claim filing | No charge |

## Call Center Services

| | |
|---|---|
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |

## Disbursement Services

| | |
|---|---|
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of TIN database | Standard hourly rates |

Prime Clerk