Hearing Date and Time:  **July 7, 2016 at 2:00 p.m. (Eastern Time)**
Objection Deadline:  **July 1, 2016 at 5:00 p.m. (Eastern Time)**

ROPES & GRAY LLP
Gregg M. Galardi
Marc B. Roitman
Stacy A. Dasaro
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
|  |  |  |
| --- | --- | --- |
| | : | |
| In re | : | Chapter 11 |
| | : | |
| Gawker Media LLC, *et al.*,[1] | : | Case No. 16-11700 (SMB) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
-----------------------------------------------------x

**NOTICE OF DEBTORS' APPLICATION PURSUANT TO BANKRUPTCY CODE
SECTIONS 105(a) AND 363(b) FOR ENTRY OF AN ORDER AUTHORIZING THE
DEBTORS TO (I) RETAIN OPPORTUNE LLP TO PROVIDE THE DEBTORS WITH A
CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL,
AND (II) DESIGNATE WILLIAM D. HOLDEN AS CHIEF RESTRUCTURING
OFFICER FOR THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE**

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") on the application (the

"Application," a copy of which is attached hereto) of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") for entry of an order authorizing the Debtors to

(I) Retain Opportune LLP to Provide the Debtors with a Chief Restructuring Officer and Certain

Additional Personnel, and (II) Designate William D. Holden as Chief Restructuring Officer for

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker
Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media LLC and Gawker Media Group,
Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja Kft.'s offices are located at Andrassy
ut 66. 1062 Budapest, Hungary.

the Debtors, *Nunc Pro Tunc* to the Petition Date (as defined in the Application) will be held
before the Honorable Stuart M. Bernstein of the United States Bankruptcy Court for the Southern
District of New York (the "Court"), in Room 723, One Bowling Green, New York, New York
10004-1408, on **July 7, 2016 at 2:00 p.m. (prevailing Eastern Time).**

       **PLEASE TAKE FURTHER NOTICE** that responses or objections to the Application
and the relief requested therein, if any, shall be in writing, shall conform to the Federal Rules of
Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York,
shall set forth the basis for the response or objection and the specific grounds therefore, and shall
be filed with the Court electronically in accordance with General Order M-399 by registered
users of the Court's case filing system (the User's Manual for the Electronic Case Filing System
can be found at http://www.nysb.uscourts.gov, the official website for the Court), with a hard
copy delivered directly to chambers pursuant to Local Bankruptcy Rule 9028-1 and served so as
to be actually received no later than **July 1, 2016**, at **5:00 p.m.** (prevailing Eastern Time) (the
"Objection Deadline"), upon: (i) the Debtors, Gawker Media LLC, 114 Fifth Avenue, 2d Floor,
New York, New York  10011, Attn. Heather Dietrick (heather@gawker.com); (ii) proposed
counsel for the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New
York 10036, Attn: Gregg M. Galardi (gregg.galardi@ropesgray.com);  (iii) the Office of the
United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New
York, NY 10014, Attn: Greg Zipes & Susan Arbeit; (iv) counsel to Cerberus Business Finance,
LLC, as DIP Lender, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York
10022, Attn: Adam C. Harris (adam.harris@srz.com); (v) counsel to US VC Partners LP, as
Prepetition Second Lien Lender, Latham & Watkins LLP, 330 North Wabash Avenue, Suite
2800, Chicago, IL 60611, Attn: David Heller (david.heller@lw.com) & Keith A. Simon, 885

Third Avenue, New York, New York 10022, Attn: Keith A. Simon (keith.simon@lw.com); and (vi) parties that have requested notice pursuant to Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Application may be obtained free of charge by visiting the website of Prime Clerk LLC at http://cases.primeclerk.com/gawker. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing. The Debtors will file an agenda before the Hearing, which may modify or supplement the Application to be heard at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that if no objections or other responses are timely filed and served with respect to the Application, the Debtors shall, on or after the Objection Deadline, submit to the Court an order substantially in the form annexed as **<u>Exhibit A</u>** to the Application, which order the Court may enter with no further notice or opportunity to be heard.

Dated: June 20, 2016
New York, New York

/s/ Gregg M. Galardi
ROPES & GRAY LLP
Gregg M. Galardi
Marc B. Roitman
Stacy A. Dasaro
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
Email: Gregg.Galardi@ropesgray.com
         Marc.Roitman@ropesgray.com
         Stacy.Dasaro@ropesgray.com

*Proposed Counsel to the Debtors
and Debtors in Possession*

ROPES & GRAY LLP
Gregg M. Galardi
Marc B. Roitman
Stacy A. Dasaro
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
|   |   |   |
|---|---|---|
|   | : |   |
| In re | : | Chapter 11 |
|   | : |   |
| Gawker Media LLC, *et al.*,[1] | : | Case No. 16-11700 (SMB) |
|   | : |   |
| Debtors. | : | (Jointly Administered) |
|   | : |   |

------------------------------------------------------x

**DEBTORS' APPLICATION PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 363(b) FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO (I) RETAIN OPPORTUNE LLP TO PROVIDE THE DEBTORS WITH A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL, AND (II) DESIGNATE WILLIAM D. HOLDEN AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE**

Gawker Media LLC ("Gawker Media"), Gawker Media Group, Inc. ("GMGI"), and

Kinja Kft. ("Kinja"), debtors and debtors in possession (collectively, the "Debtors") in the

above-captioned chapter 11 cases (the "Chapter 11 Cases"), respectfully submit this application

(the "Application") for entry of an order, substantially in the form attached hereto as Exhibit A

(the "Order"), to (I) retain Opportune LLP to provide a chief restructuring officer and certain

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).  The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

additional personnel for the Debtors, and (II) designate William D. Holden ("Mr. Holden") as chief restructuring officer for the debtors, *nunc pro tunc* to the petition date.  In support of the Application, the Debtors submit the Declaration of William D. Holden (the "Holden Declaration"), attached hereto as Exhibit C, and hereby incorporate by reference the Declaration of William D. Holden in Support of First Day Motions (the "First Day Declaration"), filed concurrently herewith.[2]  In further support of the Application, the Debtors, by and through their undersigned proposed counsel, respectfully represent as follows:

**Background**

1.      On June 10, 2016, Gawker Media filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On June 12, 2016, GMGI and Kinja each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.      On June 16, 2016, the Court entered an order authorizing the joint administration and procedural consolidation of the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 41].

3.      No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. No official committee of unsecured creditors has been formed in these cases.

4.      The Debtors are operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      The factual background regarding the Debtors, their business operations, their capital and debt structure, and the events leading up to the filing of the Chapter 11 Cases is set forth in the First Day Declaration.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

56968422_4

## Jurisdiction and Venue

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

7.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The statutory bases for the relief requested herein are sections 105(a) and 363(b)

of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy

Rules for the Southern District of New York (the "Local Bankruptcy Rules").

## Relief Requested

9.      By this Application, pursuant to pursuant to sections 105(a) and 363(b) of the

Bankruptcy Code, the Debtors request that the Court authorize them to retain Opportune LLP

("Opportune"), pursuant to the terms of that certain engagement letter dated June 6, 2016,

annexed hereto as Exhibit B (the "Engagement Letter"),[3] *nunc pro tunc* to the Petition Date.  The

Engagement Letter provides that William D. Holden will act as Chief Restructuring Officer

("CRO") for the Debtors to assist them with their reorganization efforts over the course of the

Chapter 11 Cases.  The Engagement Letter also provides for Opportune to provide additional

restructuring personnel (the "Additional Personnel," and collectively with the CRO, the

"Engagement Personnel") as necessary to assist the CRO in the execution of the duties set forth

more fully in the Engagement Letter.

---

[3] The Debtors first engaged Opportune pursuant to that certain engagement letter dated as of May 14, 2016 (the "Initial Engagement Letter") to provide financial advisory services that included coordination and oversight of the debtors' day-to-day bookkeeping activities and services related to the Debtors' reorganization efforts.  The terms and conditions of the Engagement Letter were negotiated between the Debtors and Opportune, and they reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.

-3-

### Retention of Opportune

10.     In consideration of the complex matters to be addressed during the pendency of the Chapter 11 Cases, the Debtors have determined that the services of Opportune and an experienced advisor to serve as CRO will substantially enhance their attempts to maximize the value of their estates.  The Debtors selected Mr. Holden to serve as CRO and sought the services of the Additional Personnel based on their extensive knowledge and expertise with respect to chapter 11 proceedings.

11.     The Engagement Personnel specialize in interim management, crisis management, turnaround consulting, operational due diligence, complex financial reporting, and financial and operational restructuring, among other things.  Since its founding in 2005, Opportune has provided executive leadership to financially distressed companies; developed and validated forecasts, business plans, and related assessments of a business's strategic position; monitored and managed cash flow and supplier relationships; assessed and recommended cost reduction strategies; and designed and negotiated financial restructuring packages.  In the past, Opportune has provided interim management, restructuring advisory services and/or strategic advice to companies of similar size to the Debtors, creditors, investors, and other parties in interest in matters such as, among others, (i) the chapter 11 cases of each Swift Energy Company, Samson Resources, Duer Wagner III Oil & Gas, BPZ Energy, Endeavour Operating Corporation, Global Geophysical Services, ATP Oil & Gas Corporation, GMX Resources Inc., Cano Petroleum Inc., Crusader Energy Group, Inc. and Edge Petroleum Corporation; and (ii) matters involving each of JP Morgan, Bank of America, Citibank, Union Bank, Wells Fargo Bank, N.A., GSO Capital Partners, Third Avenue Management, Bank of Montreal, Royal Bank of Canada and Royal Bank of Scotland.

12.     Mr. Holden has a bachelor's degree in business administration from Skidmore College and a MBA from Columbia Business School, and is a Certified Turnaround Professional (CTP) and a member of the Turnaround Management Association.

13.     Mr. Holden is a managing director of Opportune and has over twenty years of investment banking, consulting, and operating experience.  Mr. Holden provides advisory services to healthy and distressed companies that face complex financial and/or operational challenges.  Mr. Holden has extensive in-court and out-of-court restructuring experience and has supported multiple management teams across a number of industries through the chapter 11 process.

14.     Mr. Holden has provided restructuring advisory services for a number of notable chapter 11 cases, including *Alpha Natural Resources* (No. 15-33896 (KRH) (Bankr. E.D. Va.)), *GT Advanced Technologies* (No. 14-11916 (HJB) (Bankr. D. N.H.)), *Legend Parent, Inc.* (No. 14-10701 (JLG) (Bankr. S.D.N.Y.)), *Eagle Bulk Shipping Inc.* (No. 14-12303 (SHL) (Bankr. S.D.N.Y.)), *Revel AC, Inc.* (No. 14-22654 (MBK) (Bankr. D. N.J.)), *Fresh & Easy Neighborhood Market Inc.* (No. 13-12569 (KJC) (Bankr. D. Del.)), *Taylor Wharton International, LLC* (No. 09-14089) (Bankr. D. Del)), and *CornerStone Propane, L.P.* (No. 04-13856 (Bankr. S.D.N.Y.)).

15.     Pursuant to the Initial Engagement Letter, Mr. Holden and the Additional Personnel began providing advisory assistance on May 14, 2016.  The Engagement Personnel have provided the following services, among others, to the Debtors in connection with their restructuring efforts:

   a.  Managing the financial and operational reporting processes to internal and external constituents;

   b.  Developing tools to manage and monitor immediate and short-term liquidity;

   c.  Providing oversight and approval of expenditures and cash payments;

    d.   Coordination and management of potential sales of the Debtors' assets;

    e.   Preparing quantitative and qualitative support for all first day motions; and

    f.   Conducting negotiations with respect to potential Debtor-in-Possession ("DIP") financing.

## Scope of Opportune's Services

16.     Consistent with the Engagement Letter, Mr. Holden will serve as the Debtors' CRO and Opportune will assign the Additional Personnel to perform other related services as needed.  The CRO primarily will perform the functions relating to coordination, communication, negotiation, cash flow projections, the business plan, the sale process, and contingency planning. The CRO shall act in such other areas as he may identify and shall be authorized to make decisions related to such efforts, as he and Opportune deem necessary or appropriate in a manner consistent with the business judgment rule and the provisions of local law and the Bankruptcy Code applicable to the obligations of persons acting on behalf of corporations, subject to the direction, control, and guidance of the Debtors' boards of directors or equivalent.  The CRO shall consult with the Debtors' board of directors or equivalent with respect to any proposed changes in the scope of CRO services.

17.     The Debtors believe that the services described herein are vital to the success of the Chapter 11 Cases, and the Debtors require knowledgeable management to render such services.  In providing prepetition professional services to the Debtors, Opportune has become familiar with the Debtors and their businesses, including the Debtors' financial affairs, capital structure, operations, and related matters.  Having worked with the Debtors' management team and their other advisors, Opportune has developed relevant experience and expertise regarding the Debtors that will assist in providing effective and efficient services in the Chapter 11 Cases. Accordingly, Opportune is both well qualified and uniquely able to serve the Debtors in the Chapter 11 Cases in an efficient and timely manner.

-6-

56968422_4

## Opportune's Disinterestedness

18.     To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Holden Declaration, Opportune: (a) has no connection with the Debtors, their creditors, other parties in interest, the attorneys or accountants of any of the foregoing (except that Opportune and the CRO are connected to the Debtors by virtue of the Initial Engagement Letter and the Engagement Letter, as detailed in this Application), or the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), or any person employed in the Office of the U.S. Trustee; (b) does not hold any interest adverse to the Debtors' estates; and (c) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

19.     Although the Debtors respectfully submit that the retention of Opportune is not governed by section 327 of the Bankruptcy Code, the Holden Declaration discloses, among other things, any relationship that Opportune, the CRO, or any of the Additional Personnel has with the Debtors, their significant creditors, or other significant parties in interest known to Opportune.  Based upon such disclosures, the Debtors submit that Opportune is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

20.     In addition, as set forth in the Holden Declaration, if any new material facts or relationships are discovered or arise, Opportune will provide the Court with a supplemental declaration disclosing, among other things, any new potential conflicts between the Debtors, the CRO, the Additional Personnel, or other significant parties in interest.

## Terms of Retention

21.     Opportune will be paid by the Debtors for the services of the Engagement Personnel in accordance with the Engagement Letter, which provides in relevant part as follows:

-7-

a. <u>Standard Hourly Rates:</u> Opportune will be paid by the Debtors for its services at the hourly billing rates for its Engagement Personnel, based on the position held by such Engagement Personnel, as follows:

| Partners | $800.00 |
| --- | --- |
| Managing Directors / CRO | $665.00 |
| Directors | $500.00 |
| Managers / Sr. Consultants | $400.00 |
| Consultants | $300.00 |

b. <u>Out-of-Pocket Expenses</u>: The Debtors shall also reimburse Opportune, upon receipt of periodic invoices, for all reasonable and documented out-of-pocket expenses incurred in connection with Opportune's services, including parking, travel, courier, overtime meals, copying and postage.

c. <u>Retainer and 90 Day Payments</u>: Opportune received a prepetition retainer of $200,000 under the Initial Engagement Letter. Prior to the Petition Date, Opportune periodically drew down on the retainer to cover prepetition fees and expenses incurred and then invoiced the Debtors to replenish the Retainer. In the 90 days prior to the Petition Date, Opportune received retainers and payments totaling $444,497.50 in the aggregate for services performed for the Debtors. Opportune's final periodic invoice of $92,365.58 for services performed prior to the Petition Date was drawn down on the retainer. The remaining outstanding retainer is $107,634.42. This retainer will not be segregated by Opportune into a separate account and will be held until the end of these chapter 11 cases and applied to Opportune's finally approved fees in these proceedings.

22.     The Debtors shall pay to Opportune the compensation set forth above based upon

the submission by Opportune of monthly invoices. Opportune shall file with the Court, and

provide notice to the U.S. Trustee and counsel to any official committee of unsecured creditors

appointed in the Chapter 11 Cases, reports of compensation earned and expenses incurred on a

monthly basis. Such reports shall contain summary charts that describe the time incurred and

services provided, identify the compensation earned by each of the Engagement Personnel, and

itemize the expenses incurred. Opportune shall not be required to maintain time records but shall

-8-

instead include a summary of the total hours worked by individual timekeeper.  All

compensation shall be subject to review by the Court in the event an objection is filed.  The

compensation provided for in the Engagement Letter shall constitute full payment for the

services to be rendered by Opportune and the Engagement Personnel to the Debtors under the

Engagement Letter.

23.    Because Opportune and the CRO are not being employed as professionals under

section 327 of the Bankruptcy Code, they will not be required to submit fee applications pursuant

to sections 330 and 331 of the Bankruptcy Code.  Instead, Opportune will file with the Court,

and provide notice to the U.S. Trustee and counsel to any official committee of unsecured

creditors appointed in the Chapter 11 Cases, (i) reports of compensation earned and expenses

incurred on a monthly basis, as detailed above and in the Order; and (ii) a report of staffing on

the engagement for the previous month.  Such reports shall include the names and functions

filled of the Engagement Personnel. Such notice will provide a time period for objections.  All

compensation and staffing will be subject to review by the Court in the event an objection is

filed.

24.    The Debtors do not owe Opportune any fees for services performed or expenses

incurred under the Initial Engagement Letter or the Engagement Letter prior to the Petition Date.

Opportune has informed the Debtors that it does not hold a prepetition claim against the Debtors

for services rendered prepetition.  The Debtors believe that Opportune's fees and compensation

as set forth herein are reasonable and justified under the circumstances.

**Indemnification**

25.    Consistent with the protocol established by the U.S. Trustee with respect to the

retention of critical management services (the "Protocol"), Opportune agrees that those

Opportune employees serving as officers of the Debtors, including Mr. Holden, in his capacity as CRO, will be entitled to receive whatever indemnities are made available during the term of the Engagement Letter to other non-Opportune affiliated members and/or directors of the Debtors, whether under the Debtors' bylaws, certificates of incorporation, applicable corporate laws, or contractual agreements of general applicability to officers of the Debtors (the "Opportune Indemnification"). Additionally, and consistent with the Protocol, Opportune agrees to waive the Opportune Indemnification with respect to those Indemnified Persons (as defined in the Engagement Letter) who do not serve as officers of the Debtors; provided that Additional Personnel who are not officers of the Debtors shall be indemnified as may be approved by the Debtors' boards of directors or equivalent.

26.     Opportune's and the CRO's decision to accept this engagement to provide management services to the Debtors is contingent upon their ability to be retained in accordance with the terms and conditions of the Engagement Letter.  Opportune and the CRO have indicated that they understand and accept that the terms of the Engagement Letter must be approved by the Court.  Opportune and the CRO, however, would prefer to resolve at this time any objection, by the Court or other parties in interest, with respect to the terms of the Engagement Letter. Accordingly, Opportune and the CRO have chosen to be very explicit, in the Holden Declaration and the Engagement Letter, regarding the terms and conditions of their employment, Opportune's staffing and approach, and Opportune's billing practices, and they have requested that the Debtors seek this Court's approval of such matter contemporaneously with the filing of this Motion.

**Basis for Relief**

A.    **The Court May Authorize Employment of Opportune and Mr. Holden Pursuant to Section 363 of the Bankruptcy Code**

27.    The Debtors seek approval of the employment of Opportune and the appointment of Mr. Holden as CRO pursuant to section 363 of the Bankruptcy Code *nunc pro tunc* to the Petition Date.  Under section 363(b)(1) of the Bankruptcy code, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

28.    If a debtor's proposed use of its assets pursuant to section 363(b) represents a reasonable exercise of the debtor's business judgment, such use should be approved.  *See, e.g., Roaming LLC v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 466 (2d Cir. 2007) (a judge determining a section 363(b) application must expressly find from the evidence presented a good business reason to grant the application); *see also Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir. 1997) (same); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070-71 (2d Cir. 1983) (same).

29.    Courts have applied the 363(b) standard when a debtor employs one or more individuals to serve as restructuring officers or managers. *See In re Fairway Grp. Holdings Corp.*, No. 16-11241 (MEW) (Bankr. S.D.N.Y. June 3, 2016) [Docket No. 140]; *In re Relativity Fashion, LLC*, No. 15-11989 (MEW) (Bankr. S.D.N.Y. Sept. 28, 2015) [Docket No. 669]; *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Aug. 10, 2015) [Docket No. 145]; *In re PRC, LLC*, No. 08-10239 (MG) (Bankr. S.D.N.Y. Feb. 27, 2008) [Docket No. 182];

-11-

*In re Bally Total Fitness of Greater N.Y., Inc.*, No. 07-12395 (BRL) (Bankr. S.D.N.Y. Mar. 6, 2006) [Docket No. 72].

30.    The Debtors submit that the employment of Opportune and the CRO is a sound exercise of the Debtors' business judgment and satisfies the requirements of section 363 of the Bankruptcy Code.  Indeed, the services of Opportune and the CRO are necessary and essential to the Debtors' efforts to reorganize pursuant to chapter 11 of the Bankruptcy Code.

31.    Additionally, the Engagement Personnel, working in conjunction with the Debtors' senior management, have already proven to be of invaluable assistance in the Debtors' efforts in developing their plan, assisting in short-term cash management activities, evaluating strategic alternatives, and coordinating the Debtors' efforts to prepare for and operate in chapter 11.

32.    Furthermore, the Debtors have been able to retain Opportune and secure the services of the CRO and the Additional Personnel during the Chapter 11 Cases on economic terms that are fair, reasonable, and beneficial to the Debtors' estates.  The Debtors respectfully submit that the compensation negotiated pursuant to the Engagement Letter is consistent with and typical of arrangements entered into by Opportune and other restructuring consulting firms that provide similar services to clients in similar circumstances.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

33.    To implement the foregoing successfully, the Debtors request that the Court enter an order waiving the notice requirements of Bankruptcy Rule 6004(a) and finding that the Debtors have established cause to exclude such relief from any stay imposed by Bankruptcy Rule 6004(h).

**Notice**

34.    Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Greg Zipes & Susan Arbeit; (ii) the 50 largest unsecured creditors of the Debtors on a consolidated basis; (iii) counsel to Cerberus Business Finance, LLC, as DIP Lender, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Adam C. Harris (adam.harris@srz.com); (iv) counsel to US VC Partners LP, as Prepetition Second Lien Lender, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: David Heller (david.heller@lw.com) & Keith A. Simon, 885 Third Avenue, New York, New York 10022, Attn: Keith A. Simon (keith.simon@lw.com); (v) Counsel to the Stalking Horse Bidder, Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004; Attn: Michael H. Torkin, Esq. (torkinm@sullcrom.com) and Alexa J. Kranzley, Esq. (kranzleya@sullcrom.com), Fax: (212) 291-9376; (vi) parties that have requested notice pursuant to Bankruptcy Rule 2002; (vi) the Internal Revenue Service; and (viii) the United States Attorney for the Southern District of New York.  A copy of this Application is also available on the website of the Debtors' proposed notice and claims agent at https://cases.primeclerk.com/gawker.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Conclusion

WHEREFORE, the Debtors respectfully request that the Court enter an order,

substantially in the form annexed hereto as Exhibit A, granting the relief requested in the

Application and such other and further relief for the Debtors as may be just or proper.

Dated: June 20, 2016
      New York, New York

Heather Dietrick
President & General Counsel

56968422_4

## Exhibit A

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                            :
In re                          :        Chapter 11
                            :
Gawker Media LLC, *et al.*,[1]     :        Case No. 16-11700 (SMB)
                            :
            Debtors.       :        (Jointly Administered)
                            :
--------------------------------------------------------x

## ORDER GRANTING DEBTORS' APPLICATION PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 363(b) FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO (I) RETAIN OPPORTUNE LLP TO PROVIDE THE DEBTORS WITH A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL, AND (II) DESIGNATE WILLIAM D. HOLDEN AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE

Upon the Application, dated June 20, 2016 (the "Application"),[2] of Gawker Media

Group, Inc. and its above-captioned debtor affiliates, as debtors and debtors in possession (the

"Debtors"), for an order authorizing the Debtors to (I) retain Opportune LLP ("Opportune") to

provide the Debtors with a chief restructuring officer ("CRO") and certain additional personnel,

and (II) designate William D. Holden ("Mr. Holden") as chief restructuring officer for the

debtors *nunc pro tunc* to the petition date, pursuant to sections 363(b) and 105(a) of title 11 of

the United States Code (the "Bankruptcy Code"); and this Court having jurisdiction over this

matter pursuant to 28 U.S.C. § 1334; and this proceeding being a core proceeding pursuant to 28

U.S.C. § 157(b)(2); and venue of this proceeding this proceeding and the Motion in this Court

being proper pursuant to 28 U.S.C. § 1408; and due and proper notice of the Motion having been

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011. Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

given; and the Court having found that no other or further notice is needed or necessary; and the

Court having reviewed the Motion and the First Day Declaration and having heard statements in

support of the Motion at a hearing held before the Court (the "Hearing"); and the Court having

determined that the legal and factual bases set forth in the Motion and at the Hearing establish

just cause for the relief granted herein; and the relief requested in the Motion being in the best

interests of the Debtors' estates, their creditors, and other parties in interest; and any objections

to the relief requested in the Motion having been withdrawn or overruled on the merits; and after

due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, THAT:**

1.      The Motion is GRANTED to the extent provided herein.

2.      The Debtors are authorized, pursuant to sections 363(b) and 105(a) of the

Bankruptcy Code, to employ and retain Opportune to provide the Debtors a chief restructuring

officer ("CRO") and additional personnel, in accordance with the terms and conditions of the

Engagement Letter, *nunc pro tunc* to the Petition Date.

3.      The Debtors are authorized, pursuant to sections 363(b) and 105(a) of the

Bankruptcy Code, to designate William D. Holden, as the CRO, *nunc pro tunc* to the Petition

Date.

4.      The terms and conditions of the Engagement Letter, including without limitation,

the indemnification provisions and the fee provisions, as set forth in the Application, are

reasonable terms and conditions of employment and are hereby approved; subject to the

following terms, which apply notwithstanding anything in the Engagement Letter or the

Application to the contrary:

(a)      Opportune and its affiliates shall not act in any other capacity (for

example, and without limitation, as a financial advisor, claims agent/claims

administrator, or investor/acquirer) in connection with the above-captioned cases;

(b)      In the event the Debtors seek to have Opportune personnel assume

executive officer positions that are different than the positions disclosed in the

Application, or to materially change the terms of the engagement by either

(i) modifying the functions of personnel, (ii) adding new executive officers, or

(iii) altering or expanding the scope of the engagement, a motion to modify the

retention shall be filed;

(c)      No principal, employee or independent contractor of Opportune and its

affiliates shall serve as a director of any of the above-captioned Debtors during

the pendency of the above-captioned cases;

(d)      For a period of three years after the conclusion of the engagement, neither

Opportune nor any of its affiliates shall make any investments in the Debtors or

the Reorganized Debtors;

(e)      The CRO shall act under the direction, control and guidance of the

Debtors' boards of directors or equivalent and shall serve at the pleasure of the

Debtors' boards of directors or equivalent; and

(f)      Opportune shall disclose any and all facts that may have a bearing on

whether Opportune, its affiliates, and/or any individuals working on the

engagement have any interest materially adverse to the interest of the Debtors'

estates or of any class of creditors or equity security holders, by reason of any

direct or indirect relationship to, connection with, or interest in, the Debtors, or

for any other reason. The obligation to disclose identified in this subparagraph is a continuing obligation.

5.      The Debtors are authorized to pay Opportune in such amounts and at such times as is provided in the Engagement Letter; *provided* that: (a) notwithstanding anything to the contrary in the Engagement Letter or the Application, Opportune shall file a final fee application for allowance of its compensation and expenses which shall be subject to Court approval pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any further order of the Court; (b) Opportune shall file with the Court, and provide notice to the U.S. Trustee and counsel to any official committee of unsecured creditors appointed in the Chapter 11 Cases, reports of compensation earned and expenses incurred on a monthly basis; provided, that Opportune shall not be required to maintain time records but shall instead include a summary that describes the  total hours worked by individual timekeeper and  services provided, identifies the compensation earned by each executive officer and staff employee provided, and itemizes the expenses incurred; and (c) all compensation shall be subject to review by the Court in the event an objection is filed.

6.      All requests by Indemnified Persons for the payment of indemnification, contribution, or otherwise as set forth in the Engagement Letter during the pendency of the Chapter 11 Cases shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought.

7.      All compensation and reimbursement due to, and other rights of Opportune and the CRO in accordance with the Engagement Letter, including without limitation indemnification

-4-

obligations, shall be treated and allowed as administrative expenses in accordance with section

503 of the Bankruptcy Code and shall be paid in accordance with the Engagement Letter.

       8.       In connection with any increases in Opportune's rates, Opportune shall file a

supplemental declaration with the Court and provide ten business days' notice to the U.S.

Trustee prior to any increase in rates.  The supplemental declaration shall set forth the requested

rate increases, explain the basis for the requested rate increase, and certify that the Debtors have

consented to the requested rate increases.

       9.       To the extent there is any inconsistency between this Order and the Engagement

Letter and/or the Application, the provisions of this Order shall govern.

       10.       The Debtors are authorized and empowered to take all actions necessary to

effectuate the relief granted in this Order.

       11.       The requirements of Bankruptcy Rule 6004(a) are hereby waived.

       12.       Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order

shall be immediately effective and enforceable upon its entry.

       13.       The Court retains jurisdiction with respect to all matters arising from, or related

to, the implementation and interpretation of this Order.

Dated: _____, 2016
      New York, New York

                          _____
                          STUART M. BERNSTEIN
                          UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Engagement Letter**



# Opportune

June 6th, 2016


Heather Dietrick
President and General Counsel
Gawker Media LLC
114 Fifth Avenue, 2nd Floor
New York, New York 10011

Dear Madam:

This engagement letter (the "Engagement Letter"), together with the attached Appendix A: "Terms and Conditions", sets forth our entire understanding regarding the engagement (the "Engagement") between Opportune LLP ("Opportune") and Gawker Media Group, Inc., (together with its affiliates, the "Company"), for the purpose of Opportune providing services to the Company, including the scope of such services to be performed (the "Services"), and the basis of compensation for those Services. Upon execution of this Engagement Letter by each of the parties below and receipt of the retainer described below, this Engagement Letter will constitute a binding agreement between the Company and Opportune (the "Agreement").


**1)** **Scope of Services**

Opportune will provide the following financial advisory Services as requested and directed by the Company's senior management and/or Company's Members, Managers, Board of Directors or their equivalent (the "Company's Board"), that include, but are not limited to:

    a)   Officers. In connection with this engagement, Opportune shall make available to the Company:

        i)   William D. Holden, a Managing Director in Opportune's Restructuring Practice to serve in the role of Chief Restructuring Officer (the 'CRO') for the Company. The CRO shall devote such time to the performance of his services hereunder, including onsite involvement at the Company's offices as necessary, as he determines appropriate in his discretion with input from the Company's officers. The CRO will report to the Company's Board of Directors or equivalent ("Board") and/or as otherwise directed by the Board.[1]

        ii)   Duties. Subject to his business judgment and fiduciary responsibilities and with the assistance of Company's management, the CRO will work on a collaborative basis with Company's executives and all other employees to direct the following activities: (i) the Company's day-to-day book keeping, collections, disbursement, treasury, liquidity and reporting obligations (collectively, the "Finance and Accounting Functions"); and (ii) the Company's reorganization efforts and the evaluation, development, negotiation, and implementation of activities surrounding such restructuring efforts, including, but not limited to, Chapter 11 proceedings (the "Reorganization Efforts").

---

[1] The Company may elect to make Mr. Holden the Company's Chief Restructuring Officer.

June 6th, 2016
Gawker Media Group, Inc.
Page 2 of 10

b) <u>Responsibilities</u>. Subject to applicable bylaws, corporate governance processes and with the assistance of Company's management, the CRO will have primary responsibility for the following Finance and Accounting Functions and Reorganization Efforts (to include but not be limited to):

   i)     Manage the financial and operational reporting processes to all internal and external constituents;

   ii)    Review and development of any material drafted for consumption outside the Company;

   iii)   Oversight and approval of expenditures and cash payments;

   iv)    Coordinate and manage potential sales of Company's assets and/or development of disclosure statements or proposed plan of reorganization including negotiations with stakeholders and counterparties;

   v)     Development of any business plan, disclosure statement or proposed plan of reorganization;

   vi)    Conduct negotiations with respect to any Debtor-in-Possession ("DIP") or similar financing;

   vii)   Prepare Company's Schedules of Assets and Liabilities, Statements of Financial Affairs, DIP budgets, Monthly Operating Reports and cash flow forecasts;

   viii)  In general, assist the Company's in the preparation of ongoing documents and disclosures required by the Court or the Company's stakeholders from time to time;

   ix)    Other services and activities as mutually agreed by the Board and the CRO to the extent such services are not duplicative of services provided by other professionals.

<u>Access to Information</u>. In connection with this Engagement, Opportune shall have complete and full access to all Company information that Opportune and the Company deem appropriate. Additionally, the Company will provide reasonable access to the Company's managers, employees, accountants, counsel and other representatives (collectively the "Representatives") necessary to perform the Services as outlined in this Engagement Letter. It is understood that Opportune is relying solely upon the information supplied by the Company and its Representatives without assuming any responsibility for independent investigation or verification thereof. All confidential information concerning the Company that is given to Opportune will be used solely in the course of performance of the Services outlined in this Engagement Letter. Except as required by law, such confidential information will not be disclosed to a third party without the Company's consent.

<u>Projections; Reliance; Limitation of Duties</u>. The Company understands that the Services to be rendered may include the preparation of projections and other forward-looking statements for use in evaluating potential restructuring or strategic alternatives, and that numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections and other forward-looking statements. In addition, Opportune will be relying on information provided by other members of the Company's management in the preparation of those projections and other forward-looking statements. Opportune makes no representation or guarantee that an appropriate restructuring proposal or strategic alternative can be formulated for the Company, that any restructuring proposal or strategic alternative presented to the Board will be more successful than all other possible restructuring proposals or strategic alternatives, that restructuring is the best course of action for the Company or, if formulated, that any proposed

June 6th, 2016
Gawker Media Group, Inc.
Page 4 of 10

the bankruptcy proceeding. The term "Bankruptcy Court" shall mean the United States Bankruptcy Court with which the Company has filed a bankruptcy petition.

### 3) Disclosure of Pre-Existing Relationships

We have informed the Company that Opportune may have in the past and from time to time may directly or indirectly represent the Company's creditors. During the term of this engagement Opportune agrees that it will not, without prior written consent of the Company, have any involvement on behalf of the Company's creditors. Consequently, at the present time Opportune knows of no facts or circumstances that would represent a conflict of interest for it with regard to its engagement by the Company in connection with the aforementioned services.

### 4) IRS

In compliance with requirements imposed by the Internal Revenue Service, as stated in Circular 230, Opportune will provide the following disclosure on all communications with Company: "We inform you that any US federal tax advice contained in this communication including any attachments is not intended or written to be used and cannot be used for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing, or recommending to any other patty any transaction or matter addressed herein."

### 5) Indemnification

The Company shall indemnify the CRO, Opportune, and their (as applicable) partners, employees, managers, principals, agents, affiliates, independent contracts, insurers (collectively, the "Indemnified Persons") from and against any and all pending or threatened claims, demands, suits, investigations, proceedings, judgments, awards, liabilities, losses, damages, fees and expenses paid or incurred by any Indemnified Person in connection with, arising out of or related to (whether from direct claims or third party claims) the Engagement or this Agreement (including but not limited to any Indemnified Person's reasonable counsel fees and expenses). In addition to the foregoing indemnification, any Opportune personnel who may serve as Board-approved officers of the Company including but not limited to the CRO), shall be individually indemnified to the same extent as the most favourable indemnification it extends to its officers or directors, whether under the Company's bylaws, its certificate of incorporation, by contract or otherwise. The CRO shall report to the Board and/or persons identified by the Board and shall be covered as an officer under the Company's existing director and officer liability insurance policy as an "additional named insured" and as a "certificate holder" under each liability insurance policy of the Company. As a condition of Opportune accepting this engagement, a Certificate of Insurance evidencing such coverage shall be furnished to Opportune prior to the effective date of this Agreement. The Company shall instruct all applicable carriers to give Opportune and the CRO thirty (30) days prior written notice of cancellation, non-renewal, or material change in coverage, scope, or amount of such director and officer liability policy. The provisions of this section are in the nature of contractual obligations and no change in applicable law or the Company's charter, bylaws or other organizational documents or policies shall affect the CRO rights hereunder. The foregoing indemnification obligations shall not apply in the event that a court of competent jurisdiction finally determines that such claims resulted directly from the gross negligence, wilful misconduct or fraudulent acts of the CRO or Opportune.

### 6) Other Matters

The General Business Terms & Conditions applicable to this Engagement are attached hereto as Appendix A and are incorporated herein by reference. Capitalized terms used in the attached General Business Terms & Conditions and not defined therein shall have the meanings given to such terms in this Engagement Letter. For the purposes of the attached General Business Terms & Conditions, the "Company" shall mean Gawker Media Group, Inc. and its affiliates and subsidiaries, and

June 6th, 2016
Gawker Media Group, Inc.
Page 5 of 10

"Engagement Agreement" shall mean this Engagement Letter together with Appendix A and all other appendices hereto.

## 7) <u>Confirmed Agreement</u>

We are ready to begin our work immediately upon our receipt of the signed Engagement Letter. Please confirm the agreement to the Engagement Letter by signing below and returning to our office at your earliest convenience. Again, we look forward to working with you.

If the foregoing represents your agreement, please sign the enclosed copy of this letter in the space provided and return it at your earliest convenience.

Very truly yours,

Sean Clements, Partner

Accepted and Agreed:
Gawker Media Group, Inc.

By:

Heather Dietrick
President and General Counsel
Gawker Media Group, Inc.

Date: 6/7/16

June 6th, 2016
Gawker Media Group, Inc.
Page 6 of 10

## Appendix A:  Terms and Conditions

**Terms and Conditions**

The following are the terms and conditions (the "Terms and Conditions") on which Opportune will provide the Services set forth in the attached Engagement Letter.  Together, the Terms and Conditions and the Engagement Letter may be referred to as the "Contract," which forms the entire agreement between Opportune and the Company.  Opportune and the Company may be collectively referred to herein as "Parties" and individually as "Party".  Defined Terms contained in the Engagement Letter shall apply to these Terms and Conditions unless otherwise stated.

**Fees**

1.  Opportune's invoices are payable upon receipt.  If payment of any invoice is not received within thirty (30) days of the invoice date, Opportune shall be entitled, without prejudice to any other rights that it may have, to suspend provision of the Services until all amounts due are paid in full. Prior to any bankruptcy filing, all invoices must be paid in full.

2.  Opportune has no responsibility to update any report, analysis or any other document relating to this Engagement for any events or circumstances occurring subsequent to the date of such report, analysis or other document.  Any such subsequent consultations or work shall be subject to arrangements at our then standard fees plus expenses.

3.  In the event additional Services are requested, the Parties shall work together to memorialize any such agreement, including payment of reasonable additional fees and a reasonable additional period to provide any additional Services.  Any variation to this Contract, including any variation to fees, Services, or time for performance of the Services, shall be set forth in a separate engagement letter executed by the Parties which shall form part of this Contract.

4.  Opportune's performance of the Services is dependent upon the Company providing accurate and timely information and assistance as may be reasonably required from time to time.  The Company shall use reasonable skill, care and attention to ensure that all required information is provided on a timely basis and is accurate and complete. The Company shall notify Opportune if it subsequently learns that any information provided is incorrect, inaccurate or otherwise should not be relied upon. *The inability to supply Opportune with agreed upon information in a useable form within an amount of time reasonably required by us may increase fees and delay completion. Additionally, in the event unforeseen complications are encountered which would significantly increase fees, Opportune would discuss these with the Company and await the Company's approval before proceeding.*

**Termination**

5.  Any Party may terminate this Contract in the event that the other Party has breached any material provision of this Contract and such breach has not been cured within ten (10) days after receipt of written notice from the then non-breaching Party.  The Company may, in its sole discretion, terminate this Contract at any time by providing Opportune with ten (10) days' notice.

6.  Upon termination of this Contract, each Party shall, upon written request from the other, return to the other all property and documentation of the other that is in its possession, except that we shall be entitled to retain one copy of such documents in order to maintain a professional record of our involvement in the Engagement, subject to our continuing confidentiality obligations hereunder.

June 6th, 2016
Gawker Media Group, Inc.
Page 7 of 10

7. The provisions included within "Fees", "Preservation of Confidential Information" and "Other Terms and Provisions" shall survive the termination or expiration of this Contract.

**Work Products and Report**

8. During the Engagement, Opportune may prepare certain reports, and any analysis will be based upon the information provided by and on behalf of the Company. Opportune assumes no responsibility and makes no representations with respect to the accuracy or completeness of any information provided by and on behalf of the Company. There will usually be differences between estimated and actual results because events and circumstances frequently do not occur as expected, and those differences may be material. The Company acknowledges that no reliance shall be placed on draft reports, conclusions or advice, whether oral or written, issued by Opportune since the same may be subject to further work, revision and other factors which may mean that such drafts are substantially different from any final report or advice issued.

9. In compliance with requirements imposed by the Internal Revenue Service, as stated in Circular 230, Opportune will provide the following disclosure on all communications with the Company: "We inform you that any US federal tax advice contained in this communication including any attachments is not intended or written to be used and cannot be used for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing, or recommending to any other party any transaction or matter addressed herein."

10. Opportune is not a CPA firm, and any report or any results of our Services shall not constitute an Audit, Attestation, Valuation, Solvency Opinion or a Fairness Opinion or otherwise and may not be relied upon by the Company or any other party as such. Any advice given or report issued by Opportune is provided solely for the Company's use and benefit and only in connection with the Services that are provided. Furthermore, any analyses Opportune performs should not be taken to supplant any procedures that the Company should undertake in consideration of the matter contemplated in connection with this Engagement or any other past, present, or future transaction.

11. The Company expressly acknowledges that Opportune does not guarantee, warrant or otherwise provide assurance regarding the results of the Services.

**Preservation of Confidential Information**

12. No Party will disclose to any third party without the prior written consent of the other Party any confidential information (the "Information") which is received from the other Party for the purposes of providing or receiving the Services which if disclosed in tangible form is marked confidential or if disclosed otherwise is confirmed in writing as being confidential or, if disclosed in tangible form or otherwise, is manifestly confidential. The Parties agree that any Information received from the other Party shall only be used for the purposes of providing or receiving the Services under this or any other contract between us.

13. These restrictions will not apply to any Information which: (a) is or becomes generally available to the public other than as a result of a breach of an obligation by the receiving party; (b) is acquired from a third party who owes no obligation of confidence with respect to the information; or (c) is or has been independently developed by the recipient.

14. Notwithstanding the foregoing, any Party will be entitled to disclose confidential information of the other (i) to our respective insurers or legal advisors, or (ii) to a third party to the extent that this is required, by any court of competent jurisdiction, or by a governmental or

June 6th, 2016
Gawker Media Group, Inc.
Page 8 of 10

regulatory authority or where there is a legal right, duty or requirement to disclose, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than two (2) business days' notice in writing is first given to the other Party.

**Other Terms and Provisions**

15. Except in the event of Opportune's gross negligence, wilful misconduct or fraudulent acts, in no event shall Opportune be liable to the Company under this Contract under any legal theory for any consequential, indirect, lost profit or similar damages relating to or arising from our Services provided under this Contract. Moreover, in no event shall Opportune be liable to the Company (or any person claiming through either) under this Contract, under any legal theory, for any amount in excess of the total professional fees paid by the Company to Opportune for the immediate six (6) month period prior to the date the alleged liability occurred. The Company agrees, accepts and acknowledges that any legal proceedings arising from or in connection with this Agreement (including all amendments and engagements related thereto) must be commenced within one (1) year from the termination of this Agreement or conclusion of each particular engagement letter (whichever occurs first in time), and that no action or claim will be brought against any employee or subcontractor of Opportune.

16. The Company agrees that no action or claims will be brought against the Opportune or Opportune employees personally, except for the gross negligence, wilful misconduct, or fraudulent acts of Opportune or any Opportune employees.

17. The Company shall indemnify Opportune, and their (as applicable) partners, employees, managers, principals, agents, affiliates, independent contractors, insurers (collectively, the "Indemnified Persons") from and against any and all pending or threatened claims, demands, suits, investigations, proceedings, judgments, awards, liabilities, losses, damages, fees and expenses paid or incurred by any Indemnified Person in connection with, arising out of or related to (whether from direct claims or third party claims) the Engagement or this Agreement (including but not limited to any Indemnified Person's reasonable counsel fees and expenses). The foregoing indemnification obligations shall not apply in the event that a court of competent jurisdiction finally determines that such claims resulted directly from the gross negligence, wilful misconduct or fraudulent acts of Opportune.

18. The Company accepts and acknowledges that Opportune has not made any warranties or guarantees, whether express or implied, with respect to the Services or the results that you may obtain as a result of the provision of the Services.

19. Except for the Company's payment obligations, neither of Opportune nor the Company will be liable to the other for any delay or failure to fulfil obligations caused by circumstances outside our reasonable control.

20. Nothing in this Agreement shall be interpreted as the Company having any obligation or liability to request Opportune's Services on any particular project or any minimum number of projects.

21. Without exception or qualification, the Parties agree that at no time during the term of this Agreement shall Opportune be considered an employee of the Company, but rather Opportune shall at all times be and remain an independent contractor of the Company. At no time shall Opportune hold itself out to any third party as an employee of the Company. Opportune shall not at any time have any authority to make or enter into any contract, agreement, warranty or representation on behalf of the Company or to create any obligation, express or implied, on behalf of the Company.

June 6th, 2016
Gawker Media Group, Inc.
Page 9 of 10

22. It is understood and agreed that any final report resulting from the Services shall remain the Company's property. To the extent that Opportune utilizes any of its property (including, without limitation, any hardware or software) in connection with the Services, such property shall remain the property of Opportune, and the Company shall not acquire any right or interest in such property. Opportune shall have ownership (including, without limitation, copyright ownership) and all rights to use and disclose Opportune's ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting Opportune's business (collectively, "Know-How") regardless of whether such Know-How is incorporated in any way in the final report.

23. Neither Party shall be liable to the other Party for special, indirect, consequential, exemplary and for punitive damages (collectively, "Consequential Damages"), and each Party hereto shall be responsible for and shall defend, indemnify and hold the other harmless from and against its own Consequential Damages resulting from or arising out of this Agreement, including, without limitation, loss of profit or business interruptions, howsoever, the same may be caused.

24. Opportune shall at all times during the Term comply with all applicable laws as well as the policies and procedures of the Company. Opportune shall not pay any commissions or fees or grant any rebates or other remuneration or gratuity to any person in connection with the business of the Company or its affiliated or subsidiary companies. Opportune shall not accept any rebates nor accept any commissions or fees in connection with the business of the Company or its affiliated or subsidiary companies.

25. Opportune shall not be liable to the Company for any delays or non-performance resulting from circumstances or causes beyond Opportune's reasonable control, including, but not limited to acts of God.

26. If any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable, this Agreement shall be deemed to be amended to the extent necessary to make such provision enforceable, or, if necessary, this Agreement shall be deemed to be amended to delete the unenforceable provision or portion thereof. In the event any provision is deleted or amended, the remaining provisions shall remain in full force and effect. Notwithstanding the foregoing, the Parties recognize and agree that this Agreement is to be interpreted and applied in such manner as to, as nearly as possible, give effect to the Parties' intent to all provisions hereof, including, without limitation, such provisions as may be declared to be unenforceable.

27. Neither Party hereto shall have the right to assign its rights hereunder, in whole or in part without the prior written consent of the other Party (other than to such Party's affiliates or subsidiaries which shall not require such consent). This Agreement shall be binding upon and inure to the benefit of the Parties' respective successors and permitted assigns.

28. No change, modification, extension, renewal, ratification, waiver or rescission of this Agreement or of any of the provisions hereof shall be binding unless it is in writing and signed by both Parties hereto. Further, no waiver or forbearance by either Party hereto with respect to any right granted to such Party herein shall operate or be construed to be a waiver or forbearance of such Party's right to exercise such right in the future.

29. Notices regarding or required by this Agreement must be in writing and delivered to the Parties at the mailing addresses set forth below or to such other address as a party may designate in writing. Any notice required under this Agreement will be deemed effective upon delivery to the Party to whom it is addressed.

June 6th, 2016
Gawker Media Group, Inc.
Page 10 of 10

30. This Agreement constitutes the entire agreement between the Parties hereto regarding the subject matter hereof and supersedes any prior agreements (whether written or oral) between the parties regarding the subject matter hereof. This Contract may be executed in any number of counterparts each of which shall be an original, but all of which together shall constitute one and the same instrument.

31. This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of New York and the state and federal courts located in the State of New York shall have exclusive jurisdiction in relation to any claim arising out of this Contract. OPPORTUNE AND THE COMPANY HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER IN CONTRACT, STATUTE, TORT, OR OTHERWISE) RELATING TO THIS AGREEMENT.

## Exhibit C

**Holden Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x
                                          :
In re                                     :          Chapter 11
                                          :
Gawker Media LLC, *et al.*,[1]            :          Case No. 16-11700 (SMB)
                                          :
                Debtors.                  :          (Jointly Administered)
                                          :
----------------------------------------------------x

**DECLARATION OF WILLIAM D. HOLDEN IN SUPPORT OF DEBTORS'
APPLICATION PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 363(b)
FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO (I) RETAIN
OPPORTUNE LLP TO PROVIDE THE DEBTORS WITH A CHIEF
RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL,
AND (II) DESIGNATE WILLIAM D. HOLDEN AS CHIEF RESTRUCTURING
OFFICER FOR THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE**

Pursuant to 28 U.S.C. § 1746, I, William D. Holden, hereby declare as follows under the

penalty of perjury to the best of my knowledge, information, and belief:

1.        I am a Managing Director with Opportune LLP, a Texas limited liability

partnership ("Opportune"), a financial advisory and consulting services firm with its principal

office located at 711 Louisiana, Suite 3100, Houston, Texas 77022. I submit this declaration on

behalf of Opportune (the "Declaration") in support of the Debtors' Application for Entry of an

Order Authorizing the Debtors to (I) Retain Opportune LLP to Provide the Debtors with a Chief

Restructuring Officer and Certain Additional Personnel and (II) Designate William D. Holden as

Chief Restructuring Officer for the Debtors *Nunc Pro Tunc* to the Petition Date (the

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011. Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

"Application").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein.[3]

**Opportune's Qualifications**

2.      Opportune, founded in 2005, specializes in interim management, crisis management, turnaround consulting, operational due diligence, complex financial reporting, and financial and operations restructuring, among other things.  Since its founding, Opportune has provided executive leadership to financially distressed companies; developed and validated forecasts, business plans, and related assessments of a business's strategic position; monitored and managed cash flow and supplier relationships; assessed and recommended cost reduction strategies; and designed and negotiated financial restructuring packages.  In the past, Opportune has provided interim management, restructuring advisory services and/or strategic advice to companies of similar size to the Debtors, creditors, investors, and other parties in interest in matters such as, among others, (i) the chapter 11 cases of each Swift Energy Company, Samson Resources, Duer Wagner III Oil & Gas, BPZ Energy, Endeavour Operating Corporation, Global Geophysical Services, ATP Oil & Gas Corporation, GMX Resources Inc., Cano Petroleum Inc., Crusader Energy Group, Inc. and Edge Petroleum Corporation; and (ii) matters involving each of JP Morgan, Bank of America, Citibank, Union Bank, Wells Fargo Bank, N.A., GSO Capital Partners, Third Avenue Management, Bank of Montreal, Royal Bank of Canada and Royal Bank of Scotland.  In addition, Mr. Holden and Opportune are familiar with the Debtors' business, financial affairs and capital structure.

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

[3] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at Opportune and are based on information provided by such professionals.

56968422_4

35.    I hold a bachelor's degree in business administration from Skidmore College and a MBA from Columbia Business School, and am a Certified Turnaround Professional (CTP) and a member of the Turnaround Management Association.

36.    In my capacity as managing director for Opportune, I provide advisory services to healthy and distressed companies that face complex financial and/or operational challenges.  I have extensive in-court and out-of-court restructuring experience and has supported multiple management teams across a number of industries through the chapter 11 process.

37.    I have provided restructuring advisory services for a number of notable chapter 11 cases, including *Alpha Natural Resources* (No. 15-33896 (KRH) (Bankr. E.D. Va.)), *GT Advanced Technologies* (No. 14-11916 (HJB) (Bankr. D. N.H.)), *Legend Parent, Inc.* (No. 14-10701 (JLG) (Bankr. S.D.N.Y.)), *Eagle Bulk Shipping Inc.* (No. 14-12303 (SHL) (Bankr. S.D.N.Y.)), *Revel AC, Inc.* (No. 14-22654 (MBK) (Bankr. D. N.J.)), F*resh & Easy Neighborhood Market Inc.* (No. 13-12569 (KJC) (Bankr. D. Del.)), *Taylor Wharton International, LLC* (No. 09-14089) (Bankr. D. Del)), and *CornerStone Propane, L.P.* (No. 04-13856 (Bankr. S.D.N.Y.)).

## Opportune's Services

3.    The Debtors first engaged Opportune pursuant to the Initial Engagement Letter to provide financial advisory services that included coordination and oversight of the debtors' day-to-day bookkeeping activities and services related to the Debtors' reorganization efforts.  Since May 2016, Opportune has provided the following services, among others, to the Debtors in connection with their restructuring efforts:

a.    Managing the financial and operational reporting processes to internal and external constituents;

b.    Developing tools to manage and monitor immediate and short-term liquidity;

      c.        Providing oversight and approval of expenditures and cash payments;

      d.        Coordination and management of potential sales of the Debtors' assets;

      e.        Preparing quantitative and qualitative support for all first day motions; and

      f.        Conducting negotiations with respect to potential Debtor-in-Possession ("DIP") financing.

4.      On June 6, 2016, Gawker Media and Opportune entered into that certain engagement letter (the "Engagement Letter"), pursuant to which Opportune would (a) make Mr. Holden available to serve as CRO of the Debtors; and (b) provide the Debtors with additional restructuring personnel (the "Additional Personnel"). The terms and conditions of the Engagement Letter were negotiated between the Debtors and Opportune, and they reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.

5.      Pursuant to the terms of the Engagement Letter, in addition to my role as the Debtors' CRO, Opportune will assign the Additional Personnel to perform other services as needed. I will be responsible for the overall design of Opportune's services and direction of the engagement team.

6.      I primarily will perform the functions relating to coordination, communication, negotiation, cash flow projections, the business plan, the sale process, and contingency planning. I shall act in such other areas as I may identify and shall be authorized to make decisions related to such efforts, as I and Opportune deem necessary or appropriate in a manner consistent with the business judgment rule and the provisions of local law and the Bankruptcy Code applicable to the obligations of persons acting on behalf of corporations, subject to the direction, control, and guidance of the Debtors' boards of directors or equivalent. I shall consult with the Debtors' board of directors or equivalent with respect to any proposed changes in the scope of CRO services.

7.      In providing prepetition professional services to the Debtors, Opportune has become familiar with the Debtors and their businesses, including the Debtors' financial affairs, capital structure, operations, and related matters. Having worked with the Debtors' management team and their other advisors, Opportune has developed relevant experience and expertise regarding the Debtors that will assist in providing effective and efficient services in the Chapter 11 Cases. Accordingly, Opportune is both well qualified and uniquely able to serve the Debtors in the Chapter 11 Cases in an efficient and timely manner.

8.      Because of Opportune's expertise and experience at a national level in providing management, reorganization, accounting, and a broad range of consulting services to debtors and other parties in interest in complex troubled financial situations, the Debtors have requested that Opportune provide restructuring services to them.

## Disinterestedness and Eligibility

9.      Opportune, together with its affiliates (the "Firm"), utilize certain procedures ("Firm Procedures") to determine the Firm's relationships, if any, to parties that may have a connection to a client debtor.  In implementing the Firm Procedures, the following actions were taken to identify parties that may have connections to the Debtors and the Firm's relationship with such parties.

10.      Opportune requested and obtained from the Debtors the names of individuals and entities that may be parties in interest in these chapter 11 cases (the "Potential Parties in Interest") and such parties are listed on **Schedule 1** hereto.  The Potential Parties in Interest reviewed include the following:

- the Debtors;
- shareholders;
- the Debtors' current officers and directors;
- former directors and officers of the Debtors 2 years prior to the filing date;

-5-

- vendors;
- parties to significant litigation;
- lenders;
- banks and money market funds;
- landlords;
- insurers;
- counterparties to significant contracts;
- federal and state regulatory agencies;
- professionals;
- creditors with general unsecured claims larger than $500 against the Debtors
- utilities;
- significant creditors;
- first lien lender;
- second lien lender;
- letters of credit;
- U.S. Bankruptcy Judges for the Southern District of New York; and
- United States Trustee.

11.     Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at Opportune and are based on information provided by them.  The list of Potential Parties in Interest is expected to be updated during this case. Opportune continues to review the relationships its professionals may have with potentially interested parties and to determine whether any relationships other than those set forth herein exist.   As may be necessary, Opportune will supplement this Declaration if it becomes aware of a relationship that may adversely affect Opportune's retention in this case or discovers additional Parties in Interest through the filing of statements of financial affairs or statements under Rule 2019.  Opportune will update this disclosure if it is advised of any trading of claims against or interests in the Debtors that may relate to Opportune's retention or otherwise requires such disclosure.

12.     Opportune then compared the names of each of the Potential Parties in Interest to the names in its master electronic database of the Firm's current and recent clients (the "Client Database").  The Client Database generally includes the name of each current and former client of the Firm.

-6-

13.     Known connections between former or recent clients of the Firm and the Potential Parties in Interest were compiled for purposes of preparing this Declaration.  These connections are listed in **Schedule 2** hereto.

14.     In reviewing its records and the relationships of its professionals, Opportune did not seek information as to whether any Opportune professional or member of his/her immediate family:  (a) indirectly owns, through a public mutual fund or through partnerships in which certain Opportune professionals have invested but as to which such professionals have no control over or knowledge of investment decisions, securities of the Debtors or any other party in interest; or (b) has engaged in any ordinary course consumer transaction with any party in interest.  If any such relationship does exist, I do not believe it would impact Opportune's disinterestedness or otherwise give rise to a finding that Opportune holds or represents an interest adverse to the Debtors' estates.

15.     As a result of the Firm Procedures, I have thus far ascertained after due inquiry that, except as may be set forth herein, upon information and belief, neither Opportune, I, nor any employee of Opportune who will work on this engagement:

a.   is a creditor of the Debtors (including by reason of unpaid fees for prepetition services), an equity security holder of the Debtors, or an "insider" of the Debtors, as that term is defined in Section 101(31) of the Bankruptcy Code;

b.   is, or has been, within 2 years before the Petition Date, a director, officer, or employee of the Debtors; or

c.   has an interest materially adverse to the interests of the Debtors' estate, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

16.     As can be expected with respect to any international professional services firm such as Opportune, the Firm provides services to many clients with interests in the Debtors'

chapter 11 cases. To the best of my knowledge, except as indicated below, the Firm's services for such clients do not relate to the Debtors' chapter 11 cases.

17.    Further, as part of its diverse practice, the Firm appears in cases and proceedings, and participates in transactions that involve many different professionals, attorneys, accountants, and financial consultants, who represent claimants and Parties in Interest in the Debtors' chapter 11 cases. Further, the Firm has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtors in matters upon which Opportune is to be employed, and none are in connection with this case.

18.    Accordingly, to the best of my knowledge, Opportune is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by section 1107(b), in that Opportune, its professionals and employees: (i) are not creditors, equity security holders, or insiders of the Debtors; (ii) were not, within two years before the Petition Date, a director, officer, or employee of the Debtors; and (iii) do not have an interest materially adverse to the interest of any of the Debtors' estates or of any class of creditors or equity security holders.

19.    If any new material relevant facts or relationships are discovered or arise, Opportune will promptly file a supplemental declaration.

### Professional Compensation

20.    Opportune will be paid by the Debtors for the services of the Engagement Personnel in accordance with the Engagement Letter, which provides in relevant part as follows:

56968422_4

a. <u>Standard Hourly Rates:</u> Opportune will be paid by the Debtors for its services at the hourly billing rates for its Engagement Personnel, based on the position held by such Engagement Personnel, as follows:

| Partners | $800.00 |
|---|---|
| Managing Directors / CRO | $665.00 |
| Directors | $500.00 |
| Managers / Sr. Consultants | $400.00 |
| Consultants | $300.00 |

b. <u>Out-of-Pocket Expenses:</u> The Debtors shall also reimburse Opportune, upon receipt of periodic invoices, for all reasonable and documented out-of-pocket expenses incurred in connection with Opportune's services, including parking, travel, courier, overtime meals, copying and postage.

c. <u>Retainer and 90 Day Payments:</u> Opportune received a prepetition retainer of $200,000 under the Initial Engagement Letter. Prior to the Petition Date, Opportune periodically drew down on the retainer to cover prepetition fees and expenses incurred and then invoiced the Debtor to replenish the Retainer. In the 90 days prior to the Petition Date, Opportune received retainers and payments totaling $444,497.50 in the aggregate for services performed for the Debtors. Opportune's final periodic invoice of $92,365 for services performed prior to the Petition Date was drawn down on the retainer. The remaining outstanding retainer is $107,634.42. This retainer will not be segregated by Opportune into a separate account and will be held until the end of these chapter 11 cases and applied to Opportune's finally approved fees in these proceedings.

21.     The Debtors agreed to pay to Opportune the compensation set forth above based upon the submission by Opportune of monthly invoices. Opportune shall file with the Court, and provide notice to the U.S. Trustee and counsel to any official committee of unsecured creditors appointed in the Chapter 11 Cases, reports of compensation earned and expenses incurred on a monthly basis. Such reports shall contain summary charts that describe the time incurred and services provided, identify the compensation earned by each of the Engagement Personnel and itemize the expenses incurred. Opportune shall not be required to maintain time records but shall

-9-

instead include a summary of the total hours worked by individual timekeeper.  All

compensation shall be subject to review by the Court in the event an objection is filed.  The

compensation provided for in the Engagement Letter shall constitute full payment for the

services to be rendered by Opportune and the Engagement Personnel to the Debtors under the

Engagement Letter.

22.    Because Opportune and I are not being employed as professionals under section

327 of the Bankruptcy Code, I understand that we will not be required to submit fee applications

pursuant to sections 330 and 331 of the Bankruptcy Code.  Instead, Opportune will file with the

Court, and provide notice to the U.S. Trustee and counsel to any official committee of unsecured

creditors appointed in the Chapter 11 Cases, reports of compensation earned and expenses

incurred on a monthly basis, as detailed above and in the Order.  Additionally, Opportune shall

file with the Court, with notice to the U.S. Trustee and counsel to any official committee of

unsecured creditors appointed in the Chapter 11 Cases, a report of staffing on the engagement for

the previous month. Such reports shall include the names and functions filled of the Engagement

Personnel. Such notice will provide a time period for objections. All compensation and staffing

will be subject to review by the Court in the event an objection is filed.

23.    The Debtors do not owe Opportune any fees for services performed or expenses

incurred under the Initial Engagement Letter or the Engagement Letter prior to the Petition Date.

Opportune has informed the Debtors that it does not hold a prepetition claim against the Debtors

for services rendered prepetition.

## **Indemnification Provisions**

24.    Consistent with the protocol established by the U.S. Trustee with respect to the

retention of critical management services (the "Protocol"), Opportune agrees that those

Opportune employees serving as officers of the Debtors, including myself, as CRO, will be entitled to receive whatever indemnities are made available during the term of the Engagement Letter to other non-Opportune affiliated members and/or directors of the Debtors, whether under the bylaws, certificates of incorporation, applicable corporate laws, or contractual agreements of general applicability to officers of the Debtors (the "Opportune Indemnification").  Additionally, and consistent with the Protocol, Opportune agrees to waive the Opportune Indemnification with respect to those Indemnified Persons (as defined in the Engagement Letter) who do not serve as officers of the Debtors; provided that Additional Personnel who are not officers of the Debtors shall be indemnified as may be approved by the Debtors' boards of directors or equivalent.

25.      Opportune's and my decision to accept this engagement to provide management and financial advisory services to the Debtors is contingent upon our ability to be retained in accordance with the terms and conditions of the Engagement Letter.  Opportune and I have indicated that we understand and accept that the terms of the Engagement Letter must be approved by the Court.  Opportune and I, however, would prefer to resolve at this time any objection, by the Court or other parties in interest, with respect to the terms of the Engagement Letter. Accordingly, Opportune and I have chosen to be very explicit, in this Declaration and the Engagement Letter, regarding the terms and conditions of their employment, Opportune's staffing and approach, and Opportune's billing practice, and they have requested that the Debtors seek this Court's approval of such matter contemporaneously with the filing of this Application.

26.      By reason of the foregoing, I believe Opportune is eligible for retention by the Debtors pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and the applicable Bankruptcy Rules and Local Bankruptcy Rules.

56968422_4

27.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct to the best of my knowledge and belief.

Dated: June 20, 2016
New York, New York

William D. Holden
Managing Director
Opportune LLP

-12-

## Schedule 1 to Exhibit C

## List of Schedules

| Schedule | Category |
|---|---|
| 1(a) | Debtors and Trade Names |
| 1(b) | Current and Recent Former Directors and Officers |
| 1(c) | Potential Contract Counterparties |
| 1(d) | Insurers |
| 1(e) | Other Interested Parties |
| 1(f) | Landlords |
| 1(g) | Litigants |
| 1(h) | Professionals |
| 1(i) | Shareholders |
| 1(j) | Significant Customers |
| 1(k) | Significant Unsecured Creditors |
| 1(l) | Significant Vendors |
| 1(m) | Taxing Authorities |
| 1(n) | U.S. Trustee and Key Court Personnel for the Southern District of New York |
| 1(o) | Utilities |
| 1(p) | Employees and Independent Contractors |

**SCHEDULE 1(a)**

**Debtors and Trade Names**

Gawker Media Group, Inc.

Gawker Media LLC

Kinja Kft.

Blogwire Hungary Intellectual Property Licensing LLC

Blogwire Hungary Kft.

Gawker.Com

Blogwire Hungary Intellectual Property Licensing LLC

Blogwire Hungary Kft.

Curbed.com LLC

Gawker Sales LLC

Gawker.Com

RGFREE

Vox Media, Inc.

Blogwire

Deadspin

Defamer

Gawker

Gawker Stalker

Gizmodo

io9

Jalopnik

Jezebel

Kinja

Kotaku

Lifehacker

Sploid

Valleywag

## SCHEDULE 1(b)

## Current and Recent Former Directors and Officers

Albertson, Josh

Darbyshire, Gabrielle

Denton, Nicholas

Dietrick, Heather

Epstein, Jason

Fette, Ian

Holden, William

Kidder, Scott

Plunkett, Thomas

Szasz, Peter

Tillman, Scott

Weinbrecht, Adrian

## SCHEDULE 1(c)

## Potential Contract Counterparties

114 Fifth Avenue Ground Lessee LLC

114 Fifth Owner LP

204-210 Elizabeth Street LLC c/o S.W.
Management LLC

204-210 Elizabth Street LLC

3293 Pacific LLC

A Mediocre Corporation

A Small Orange, LLC.

A9.com, Inc.

Access Inteligence, LLC

Adam Clark Estes

Adam Pash

Adam Weinstein

Ad-Juster, Inc.

Admeld, LLC

Adsfactor Holdings Limited

AdSlot Technologies, LTD.

Adtech US, Inc.

Aegon Magyarorszag Zrt.

AGIS Fire & Security Kft.

AIG

Alan Henry

Alan Kwon

Albert Burneko

Aleksander Chan

Alex Cranz

Alex Dickinson

Alex Pareene

Alexandra Cannon

Alexandra Philippides

Alexandre Dohrmann

Alissa Walker

All You Can Move SportPass Europe

Allison Jones

Allison Wentz

Allure Media Pty Limited

AM Lab Americas, LLC.

Amanda Marandola

Amazon Services LLC

Amazon Web Services, Inc.

Amazon.com, Inc.

Anastasia Weeks

Andrassy Palota Ingatlanfogalmazo Kft.

Andrea Park

Andrew Collins

Andrew Cush

Andrew Gorenstein

Andrew Harding

Andy Orin

Angela Alzona

Angela Wang

Anna Merlan

Anthony Carnevale

Anthony Hack

AOL Advertising Inc.

Ariana Cohen

Ariel Viera

Ashley Feinberg

Ashton Galloway

Atlantic Metro Communications II, Inc.

Attila Illes

Ava Gyurina

Balazs Keki

BarkBox, Inc.

Barry Petchesky

Ben Regenspan

BlueApron.com

Brainy Labs, LLC

Brandon McCoy

Brendan O'Connor

Bridget Brown

Bryan Lufkin

Bryan Menegus

C&G Group Kft c/o Brody House Group

Cadreon, LLC.

Caitleen Weaver

Camila Cabrer

Camilla Baker

Casey Speer

Casper Sleep Inc.

Catherine LeClair

Cecilia D'Anastasio

Chad Bernstein

Chelsey Hoffman

Cheryl Eddy

Chris Neveu

Chris Person

Chris Vespoli

Christina Blacken

ClickMeter

ClickStream

Cloudinary Ltd.

Clover Hope

ClubW

Colleen McMillan

Colliers International

Colliers International Kft.

Coltiers Nemzetkozi Ingattanuzemeltet6 es Kezel6 Kft.

Combat Flip Flops, LLC.

Comic Cartel

ComScore, Inc.

Corporate Communications Bt.

Courtenay O'Connor

Daniel Morgan

Darren Orf

Dashlane Inc.

DataGram

Datagram Incorporated

Dave McKenna

David Tracy

Dayna Evans

Devin Clark

Diana Moskovitz

Diane Kelly

Diego Pineda

DineInFresh, Inc. dba Plated

Dollar Shave Club, Inc.

DOUBLECLICK

Dr. Torzsa Peter Bt.

DreamHost

Drew Magary

Driftaway Inc.

Earnest Inc.

Eleanor Shechet

Elisa Solinas

Emily Ambruso

Emily Herzig

Emma Carmichael

Emprese Cedente

Eric Goldfarb

Eric Ravenscraft

Erika Audie

Erin Gloria Ryan

Erin Pettigrew

Esther Inglis-Arkell

Ethan Sommer

Evan Narcisse

Eyal Ebel

F451

F451 fka Spicy Media Editora Ltda

F451 Media Editora Ltda.

Fabiola Lara

Facebook Ireland Limited

Facebook, Inc.

Fastly, Inc.

Federal Insurance Company

Fluxmob, LLC.

Framebridge, Inc.

Fritzie Andrade

Future Publishing Limited

Gabrielle Bluestone

GeekFuel, LLC.

Germain Lussier

Giri Nathan

Globalway Participacoes Ltda.

Gloria Clark

Google Inc.

Gorilla Nation Media, LLC

Grace Robertson

Graze Inc.

Green Fox Academy

Greg Howard

Greg Lopez

GroupDynamics Kft

Gunnar Optiks

Gyorgy Bokros

Hajtas Pajtas Kft.

Handy.com

Hannah Keyser

Happy Socks

Heather Dietrick

Heather Hynes

Heidi Grothaus

HelloFresh

Hillary Crosley

Hostgator.com, LLC.

Huckberry

Hunter Slaton

Ian Fette

IDrive Inc.

Ilona Bilevych

Incisive Ltd

Incisive VNU Limited dba Incisive Incisive Ltd

Incisive VNU Ltd

Index Exchange Inc.

Infobahn Inc.

Integral Ad Science, Inc.

IseeQ Kft.

J.K Trotter

| | |
|---|---|
| Jake Inferrera | Justin Cross |
| Jalsovszky Law | Justin Potter |
| James Bartus | JW Player / LongTail Ad Solutions, Inc. |
| James Bit Design | Kaila Hale-Stern |
| James Delgiudice | Kanwar Gill |
| Jamie Weber | Kara Brown |
| JapanCrate | Kargo Global, Inc. |
| Jared Auslander | Karma Mobility Inc. |
| Jason Parham | Kate Dries |
| Jason Schreier | Kate Knibbs |
| Jason Torchinsky | Kate Lovejoy |
| Jay Hathaway | Katharine Trendacosta |
| Jeffrey Hilder | Kathryn McGinnis |
| Jennifer Ouellette | Katie Drummond |
| Jia Tolentino | Kavitha Reddy |
| Jillian Marie Lucas | Kelly Conaboy |
| Jim Boos | Kelly Faircloth |
| Jim Cooke | Kelly Monson |
| Jim Cooke | Kelly Stout |
| Joanna Rothkopf | Kerrie Uthoff |
| Joel Johnson | Kevin Draper |
| John Appel | Kid Thursday LLC., dba Staus Audio |
| John Cook | Kirk Hamilton |
| John Gelini | Kixer |
| Jordan Sargent | Kolozsvari Timea |
| Josh Bottino | Kravitha Reddy |
| Josh Laurito | Krux Digital, Inc. |
| Joshua Albertson | Lacey Donohue |
| Judy Steinbach | Lauren Bertolini |
| Julia Alvidrez | Leah Beckmann |
| Julian Muller | Leah Finnegan |
| Julianne Escobedo Shepherd | LendingTree, LLC. |
| Jung Sin | Lindsay Chipman |

Lindsey Jaffe

Lisa Bolano

LiveIntent, Inc.

LiveRail, Inc.

LOLA

Lucy Haller

Madeleine Davies

Madeleine Stone

Madison Plus Select, Inc.

Malcolm Read

Mandy Mandelstein

Margaret Taormina

Marina Galperina

Mario Aguilar

Maritza Sanche

Mark Weldon

Market Halsey Urban Renewal, LLC.

MarkMonitor Inc.

Matt Hardigree

Matt Novak

Matthew Hamer

Matthew Kulper

Mediagene, Inc.

MediaGene, Inc. fka Infobahn, Inc.

MediaMind Technologies, Inc.

Megan Gilbert

Megbizott

Melissa Green

Melissa Murray

Merch Direct, LLC

Merchant Importacao, Exportacao e Comercio, Ltda - ME

MeUndies

Mia Libby

Michael Fahey

Michael Kuntz

Michael Lindsay

Michael Nunez

Michael Orell

Michael Roselli

Michele LaFauci

Michelle Chiang

Mike Ballaban

Mikolaj Szabo

Ministry of Supply

Miranda Langrehr

Moat, Inc.

Mobiles Republic, Inc.

Mollie Horan

Moore Stephens Hezicomp Kft.

Mott & Bow

MoviePass

MVMT Watches

Nameaction Brasil Serv de Inter Ltda ME

NameAction Inc.

Nandita Raghuram

Natasha Vargas-Cooper

Nathan Grayson

NatureBox

Nervora Digital Media Group, FZ-LLC

NetMediaEurope

Netus Media Pty Limited dba Allure Media Pty LTD

Nevora Digital Media Group

NewsCred, Inc.

Nicholas Murphy

Nick Stango

Noble People

OCP Collective Corp. dba Adcade, Inc.

Omar Kardoudi

OnMarc Media

Operative Media, Inc.

Oppenheim Ugyvedi Iroda

Opportune LLP

Optimizely, Inc.

Oriole Media Corporation dba Juice Mobile

Oscar Z. Ianello Associates, Inc.

Owen & Fred Corp.

Pacific Shaving Company

Parachute Home

Patricia Hernadez

Patrick Ballester

Patrick Klepek

Patrick Laffoon

Patrick Redford

Paul Sundue

PAX

Percona, Inc.

Perfect World Entertainment

Peri Hochwald

Pixel Media Asia Limited

Platinum Rye, LLC.

Pop Chart Lab

Poprageous

Puja Patel

Quench USA, Inc.

Quip NYC Inc.

Rhone Apparel Inc.

Riley MacLeod

Rob Harvilla

Robert Finger

Ryan Brown

S&T Consulting Hungary Kft.

Sam Biddle

Sam Scherer

Sam Woolley

Samantha Lagani

Samer Kalaf

Samuel Griffel

Sarah Dedewo

Sarah Wiest

Scott Kidder

Sean Buckley

Sean MacDonald

SeatGeek

Shane Roberts

Shep McAllister

Shopify

SimpleReach, Inc.

Skillshare, Inc.

Skimbit Limited

SkimBit LTD.

SmartFX

SocialFlow, Inc.

Sophie Kleeman

Soundfreaq

Specless, LLC.

Spicy Media Editora LTDA

SpruceWares

Squarespace, Inc.

Stackcommerce

Staq, Inc.

Starcom SMG

Stassa Edwards

Stephanie Schrader

Stephen Totilo

Steve Climaco

Steven Polletta

Stowawy Cosmetics

STS Meida, Inc.

Stuart Cheshire

Sultana Khan

Superdry Wholesale, LLC

Suzy Kuzy, LLC.

Szolgaltato

Taboola Inc.

Tamas Neltz

Tara Jacoby

Taylor Berman

Technorati, Inc.

Terra Networks Brasil S.A.

TGT

The Rubicon Project, Inc.

The Sasquatch Soap Co., LLC. dba Dr. Squatch

The Status Audio

Thorin Klosowski

Tim Burke

Time Shred Services, Inc.

Times Internet Limited

Tom Ley

Tom Plunkett

Tom Scocca

Tommy Craggs

Toth Eva Nagykanizsa

Tremor Video, Inc.

UCMS Group Hungary Kft.

Udemy.com

Veronica de Souza

Victor Jeffreys

Viddler, Inc.

VNU Business Media Europe Limited

Waves Gear, LLC.

We Work

Wesley Siler

WeWork LA LLC

Whitson Gordon

William Arkin

William Haisley

William Turton

Wine Awesomeness

Wrights Media, LLC

Writers Guild of America, East

Yannick LeJacq

Zach Custer

Zachary Connett

Zoe Stahl

## SCHEDULE 1(d)

### Insurers

Aegon Magyarorszag Zrt.

AIG Europe Limited

Dewitt Stern Group, Inc.

Federal Insurance Company

Hartford Casualty Insurance Company

Hudson Insurance Company

National Union Fire Insurance Co. of Pittsburgh PA

United Healthcare Insurance Company

## SCHEDULE 1(e)

## <u>Other Interested Parties</u>

Cerberus Business Finance LLC

Houlihan Lokey, Inc.

K&H Bank

Latham & Watkins

Prime Clerk LLC

Riemer & Braunstein, LLP

Schulte Roth & Zabel LLP

Securities & Exchange Commission

Securities & Exchange Commission – NY Office

Silicon Valley Bank

Sullivan & Cromwell LLP

US VC Partners LP

## SCHEDULE 1(f)

## **Landlords**

Andrassy Palota Ingatlanforgalmazo Korlatolt Felelossegu Tarsasag

114 Fifth Owner LP

## SCHEDULE 1(g)

### Litigants

Aulistar Mark

Andrew Hudson

Zachary Cianflone

Lindsay MaHarry

Katherine Castellana

Elizabeth Nadybal

Chelsea Lo Pinto

Tim Barribeau

Patrick Frawley

Elizabeth Weinbloom

Kristin Chan

Samuel Julian

Brian Colgan

Benjamin Dorson

Rachel Atwood

Michael Kennelly

Alyssa Bereznak

Lily Newman

Kwame Opam

Terry Gene Bollea

Mitchell Williams

Meanith Huon

Ashley Terril

Charles Johnson and Got News, LLC

Teresa Thomas

Shiva Ayyadurai

Christopher Sadowski

## SCHEDULE 1(h)

## Professionals

Akerman LLP

Cahill Gordon & Reindel LLC

Citrin Cooperman & Co., LLP

Giskan Solotaroff & Anderson LLP

Goldin Solutions

Jalsovszky Law Firm

John Duncan

Klasko Immigration Law Partners, LLP

Levine Sullivan Koch & Schulz, LLP

Maples & Calder

Morrison Cohen LLP

Newmark & Co. Real Estate, Inc.

Oppenheim Law Firm

Opportune LLP

Proskauer Rose LLP

Trifolium LLC

Wilk Auslander

Zwillgen PLLC

## SCHEDULE 1(i)

### Shareholders

| | |
|---|---|
| Berman, Taylor | Hamer, Matt |
| Bertolini, Lauren | Hardigree, Matt |
| Blakeley, Richard Erand | Holmes, Anna |
| Bluestone, Gabrielle | Jefferson, Whitney |
| Brown, Ryan | Kang, Daniel |
| Carmichael, Emma | Kidder, Scott |
| Carmon, Irin | Kozma, Jozsef |
| Chan, Casey | Lam, Brian |
| Coen, Jessica | Layne, Ken |
| Cooke, Jim | Lehnhoff, Jim |
| Craggs, Tommy | Leitch, Will |
| Crecente, Brian | Lisanti, Mark |
| D'Addario, John | Lopez, Greg |
| Darbyshire, Gaby | Ma, Jesse |
| Daulerio, Albert | McGill, Erin |
| DelGiudice, James | Nachlin, Jim |
| Denton, Nick | Newitz, Annalee |
| Diaz, Jesus | Nolan, Hamilton |
| Dietrick, Heather | O'Connor, Maureen |
| Dimmitt, Elizabeth | Pash, Adam |
| Dimmitt, Genevieve | Petrány, Máté |
| Duncan, John | Pettigrew, Erin |
| Ebel, Eyal | Plunkett, Tom |
| Furman, Eliot, as custodian for Alexander Tiberius Furman under the NYUTMA | Read, Malcom |
| | Robischon, Noah |
| Futrelle, Genevieve | Schreier, Jason |
| Giacoman, Gabriela | Schwartz, Diane |
| Gorenstein, Andrew | Schweizer, Julia |
| Greenmount Creek Limited | Scocca, Thomas |
| Hale-Stern, Kaila | |

| | |
|---|---|
| Sicha, Choire | Henry, Alan |
| Spinelli, Mike | Hilder, Jeff |
| Steele, Lockhart | Jeffries, Victor |
| Stein, Sadie | Juzwiak, Rich |
| Takayama, Greg | Kéki, Balázs |
| Tate, Ryan | Knibbs, Katharine |
| Thomas, Owen | Körtesi, Gáspár |
| Toder, Matthew | Laurito, Josh |
| Trapani, Gina | Libby, Mia |
| US VC Partners LP | Magary, Drew |
| Vuong, Phillip | Marchman, Tim |
| Wert, Ray | McAllister, Shep |
| Winkelman (Ortega), Samantha | McKenna, Dave |
| Woerner, Meredith | Mittelhammer, Eric |
| Albertson, Josh | Morgan, Daniel |
| Annis, Rose | Neltz, Tamas |
| Baker, Camie | Nevins, Maxwell |
| Batty, Chris | Novak, Matt |
| Biddle, Sam | O'Connor, Courtenay |
| Bodnár, István | Pareene, Alex |
| Burke, Tim | Parham, Jason |
| Climaco, Steve | Petchesky, Barry |
| Cook, John | Popken, Ben |
| Curtis, Dustin | Price, John |
| Donohue, Lacey | Reddy, Kavi |
| Drummond, Katie | Regenspan, Ben |
| Fette, Ian | Roberts, Shane |
| George, Patrick | Sargent, Jordan |
| Georgopulos, Steph | Sommer, Ethan |
| Gonzalez, Robert | Sundue, Paul |
| Graham, Kevin | Szász, Péter |
| Grothaus, Heidi | Szatmári, András |
| Hathaway, Jay | Taomina, Margaret |

Tiku, Nitasha

Totilo, Stephen

Trotter, JK

Udvardi, Ramóna

Walker, Alissa

Weaver, Caity

Weinstein, Adam

Wentz, Allison

## SCHEDULE 1(j)

### Significant Customers

| | |
|---|---|
| 20th Century Fox | Earnest |
| 360i | Empowering Media LA |
| A9.com Inc. (Amazon Match Buy) | Empowering Media NY |
| Accordant Media | Essence |
| Adslot | f451 - US |
| Aegis Group | Facebook |
| Alliance Games | Factorylabs |
| Allure Media - GM | Fallon |
| Amazon | Future Publishing Ltd (US) |
| Amazon Commerce Revenue | General Mills, Inc. |
| AOL One | Google (BizDev) |
| Asana (Customer) | Graze |
| Assembly | Havas |
| Baru Advertising | Horizon Media |
| Blue Apron | HostGator |
| Blue Wheel Media | Hover |
| Bluehost | HTC Blinkfeed |
| Brigade Marketing | IBM |
| Casper | Indochino |
| Centro | Initiative LA |
| Cisco | Initiative NY |
| Cramer-Krasselt | Interpublic Group of Companies |
| Criteo | iSocket, Inc. |
| Crossmedia | ITVS |
| Desk.com | Kepler Group |
| Dialect Inc | Ketchum |
| DigitasLBi | Kovel Fuller |
| Dollar Shave Club | Kruskopf & Company |
| Draftkings | Liquid Advertising |

LivWell

Logmein.com

MarkLogic

McGarrah Jessee

Me Undies

Mediagene Inc - US

Mediasmith

Mediastorm, LLC

Merkley and Partners

MillerCoors

MNI

MODCo Media

Mullen

NameCheap

Newscred

Nokia

NVIDIA

Omnicom Group

Pereira & Odell

Petrol

PGR Media

Protein

Publicis Groupe

R/West

Rachael Piper Consulting

Randomhouse

RED Interactive Agency

Rodger's Townsend

RPA

Rubicon

Skillshare

Slack

Spacetime Media

SquareSpace

StackSocial

Status Audio

Sterling Rice Group

Superdry Wholesale LLC

Taboola (Biz Dev)

Tangible Media

TaxFyle

The Garage Team Mazda

TubeMogul

UCB

Udemy

Varidesk

Viewster.com

VOX Media - Curbed Investment

VSN

WavesGear

weBoost

Wieden & Kennedy

Wildcard Properties LLC

WPP

Wright's Media

Zeno Group

**SCHEDULE 1(k)**

**Significant Unsecured Creditors**

| | |
|---|---|
| Ad-Juster, Inc. (media) | JW Player (Longtail Ad Solutions, Inc.) |
| ADP Workforce Now | Katherine Fry |
| Akerman LLP | Kinja Accounts Payable |
| Alex Palmer | Krux Digital |
| Andrew Harding | L-Cut Digital Media, Inc. |
| AOL Advertising | Market Halsey Urban Renewal, LLC |
| Associated Press | Marlena Agency Inc. |
| Blane Bachelor | Medialink |
| Brandtale | Merrill Communications, LLC |
| CDW Direct | Metropolitan Cleaning, LLC |
| Cloudinary Ltd. | Moat Inc. |
| Concur Technologies, Inc. | Morrison Cohen LLP |
| Corbis Corporation | Newmark & Co. Real Estate, Inc. |
| Corey  Foster | Nick Wong Photography |
| Creative Circle, LLC. | NSONE Inc. |
| DataGram | Operative Media, Inc |
| DoubleVerify, Inc. | Optimizely, Inc. |
| DRH Internet Inc | Pacific Coast News |
| Equinox Fitness Clubs - Corp Accts | Plant Specialists LLC |
| Fastly | QZZR |
| Fried, Frank, Harris, Shriver & Jacobson LLP | REDBOOKS |
| Getty Images | Risk Strategies Company |
| Giaco Furino | Shenker & Bonaparte, LLP |
| Google Inc. (DoubleClick) | SimpleReach, Inc. |
| Google, Inc. (Analytics) | Sizmek Technologies Inc. |
| Hunter Slaton | Specless |
| Ian Fette | STAQ, INC. |
| Jelle Claeys Automotive Artwork | Submarine Leisure Club, Inc. (Wirecutter) |
| Joshua M Lees | Submersive Media |

The Hartford

The Oliver Group

Viddler, Inc.

# SCHEDULE 1(l)

## Significant Vendors

| | |
|---|---|
| 114 Fifth Avenue | Kforce Inc. |
| ADP PayEx | Kornhaber Brown, LLC |
| Advanced Electronic Solutions, Inc. | Lay It Out, Inc. |
| AMA Consulting Engineers P.C. | Leiberts Royal Green Appliances Inc. |
| AMEX Corporate GM - 01006 | Lewis Rice LLC |
| Andrew Liszewski | LionTree Advisors LLC |
| Apple Inc. (media) | LJ DUFFY, Inc. |
| Baby Llama Productions LLC | Maples & Calder (GM LLC) |
| Bajibot Media | NetRatings, LLC |
| Big Mango, Inc. | Netsuite, Inc. |
| Bird & Bird LLP | NVE, Inc. |
| Brannock & Humphries | OCP Collective Corp. |
| Cahill Gordon & Reindel LLP | Olson Kundig Architects |
| Cannes Trip 2015 | Olson Kundig Interiors |
| Catalyst | OnMarc Media Inc. |
| Cerberus Capital Management LP | Opportune LLP |
| ComScore Inc. | Redscout LLC |
| Con Edison (210) | Robert Half |
| CytexOne Technology, LLC | Ropes & Gray LLP |
| Dynect, Inc | Santa Monica Air Center, Inc. |
| Emma C Lanigan (Cookson) | Structure Tone |
| Fidelity 401k | SW Management LLC |
| Harder Mirell & Abrams | TangentVector, Inc. |
| Hatch Content, LLC | Tapestry Associates LLC |
| HeartWork, Inc. | Thomas & Locicero PL |
| Houlihan Lokey | Treasury of the United States |
| Howard Kennedy | TrueForm Concrete, LLC |
| Inform Interiors | Veritas Pictures, Inc. |
| Jesus Diaz (vendor) | Versus LLC |

Vizu Corporation

Voya Financial 401K

WB Wood NY

Young America Capital

**SCHEDULE 1(m)**

**Taxing Authorities**

Internal Revenue Service

Budapesti Önkormányzat

Hungary National Tax Authority

New York City Department of Finance

New York State Commissioner of Taxation and Finance

## SCHEDULE 1(n)

### U.S. Trustee and Key Court Personnel for the Southern District of New York

Cecilia G. Morris

James L. Garrity

Martin Glenn

Mary Kay Vyskocil

Michael E. Wiles

Robert D. Drain

Robert E. Grossman

Sean H. Lane

Shelley C. Chapman

Stuart M. Bernstein

Alicia Leonhard

Amanda Cassara

Andrea B. Schwartz

Andy Velez-Rivera

Anna M. Martinez

Brian S. Masumoto

Cheuk M. Ng

Danny A. Choy

Ercilia A. Mendoza

Greg M. Zipes

Guy A. Van Baalen

Ilusion Rodriguez

Kathleen Schmitt

Linda A. Riffkin

Lisa Penpraze

Maria Catapano

Mary V. Moroney

Myrna R. Fields

Nadkarni Joseph

Paul K. Schwartzberg

Richard C. Morrissey

Serene Nakano

Susan Arbeit

Susan Golden

Sylvester Sharp

Victor Abriano

William K. Harrington

**SCHEDULE 1(o)**

**<u>Utilities</u>**

114 Fifth Avenue Ground Lessee

Atlantic Metro Communications

Benefit Resource, Inc.

Cogent Communications

Con Edison

ShoreTel Inc.

**SCHEDULE 1(p)**

**Employees and Independent Contractors**

| | |
|---|---|
| Asd Mario Aguilar | Devin Clark |
| Joshua Albertson | Gloria Clark |
| Angelica Alzona | Steve Climaco |
| Fritzie Andrade | Ariana Cohen |
| Erika Audie | Andrew Collins |
| Jared Auslander | Zachary Connett |
| Ilene Baker | John Cook |
| Michael Ballaban | James Cooke |
| Patrick Ballester | Alexandra Cranz |
| Chad Bernstein | Hillary Crosley |
| Lauren Bertolini | Justin Cross |
| Sam Biddle | Andrew Cush |
| Ilona Bilevych | Zach Custer |
| Christina Blacken | Madeleine Davies |
| Gabrielle Bluestone | Maritza De Leon |
| James Boos | Veronica de Souza |
| Joshua Bottino | Sarah Dedewo |
| Robert Bricken | Ernest Deeb |
| Ryan Brown | Nick Denton |
| Kara Brown | Alexander Dickinson |
| Bridget Brown | Heather Dietrick |
| Timothy Burke | Alexandre Dohrmann |
| Albert Burneko | Lacey Donohue |
| Camila Cabrer | Kevin Draper |
| Alexandra Cannon | Kathryn Dries |
| Emma Carmichael | Katherine Drummond |
| Anthony Carnevale | Eyal Ebel |
| Casey Chan | Cheryl Eddy |
| Michelle Chiang | Stassa Edwards |

| | |
|---|---|
| Adam Estes | Samer Kalaf |
| Michael Fahey | Omar Kardoudi Segarra |
| Georgia Faircloth | Hannah Keyser |
| Ashley Feinberg | Sophie Kleeman |
| Ian Fette | Patrick Klepek |
| Robert Finger | Thorin Klosowski |
| Ashton Galloway-Taylor | Michele Lafauci |
| Marina Galperina | Patrick Laffoon |
| John Gelini | Samantha Lagani |
| Patrick George | Miranda Langrehr |
| Kanwar Gill | Joshua Laurito |
| Ariel Gononsky | Catherine LeClair |
| George Grayson | Thomas Ley |
| Melissa Green | Mia Libby |
| Samuel Griffel | Michael Lindsay |
| Heidi Grothaus | Katelyn Lovejoy |
| Ava Gyurina | Germain Lussier |
| Anthony Hack | Riley MacLeod |
| William Haisley | Andrew Magary |
| Lucy Haller | Amanda Mandelstein |
| Kirk Hamilton | Timothy Marchman |
| Matt Hardigree | Alex Mason |
| Andrew Harding | Shepherd McAllister |
| Alan Henry | Kathryn McGinnis |
| Patricia Hernandez-Ramos | David McKenna |
| Emily Herzig | Colleen McMillan |
| Clover Hope | Bryan Menegus |
| Mollie Horan | Anna Merlan |
| Heather Hynes | Maria Misra |
| Attila Illes | Kelly Monson |
| Jacob Inferrera | Daniel Morgan |
| Victor Jeffreys | Diana Moskovitz |
| Richard Juzwiak | Julian Muller |

| | |
|---|---|
| Nick Murphy | Michael Roselli |
| Melissa Murray | Joanna Rothkopf |
| Evan Narcisse | William Sansom |
| Giri Nathan | Jordan Sargent |
| Tamas Neltz | Samuel Scherer |
| Chris Neveu | Stephanie Schrader |
| Hamilton Nolan | Jason Schreier |
| Matthew Novak | Jillian Schulz |
| Michael Nunez | Taryn Schweitzer |
| Brendan O'Connor | Thomas Scocca |
| Courtenay O'Connor | Eleanor Shechet |
| Michael Orell | Julianne Shepherd |
| Darren Orf | Hunter Slaton |
| Andrew Orin | Elisa Solinas |
| Raphael Orlove | Ethan Sommer |
| Jennifer Ouellette | Casey Speer |
| Alexander Pareene | Zoe Stahl |
| Andrea Park | Nicholas Stango |
| Adam Pash | Judith Steinbach |
| Puja Patel | Madeleine Stone |
| Christopher Person | Kelly Stout |
| Barry Petchesky | Richard Sundue |
| Alexandra Philippides | Margaret Taormina |
| Diego Pineda | Jia Tolentino |
| Steven Polletta | Jason Torchinsky |
| John Price | Stephen Totilo |
| Nandita Raghuram | David Tracy |
| Eric Ravenscraft | Katharine Trendacosta |
| Kavitha Reddy | Joseph Trotter |
| Patrick Redford | William Turton |
| Benjamin Regenspan | Kerrie Uthoff |
| Shane Roberts | Christopher Vespoli |
| Grace Robertson | Alissa Walker |

Angela Wang

Jamie Weber

Anastasia Weeks

Allison Wentz

Samuel Woolley

András Szatmári

Attila Kocsis

Balázs Kéki

Balázs Pőcze

Dmitry Lambrianov

Gábor Kacsik

Gáspár Körtesi

György Bokros

Ildikó Kriston

István Bodnár

János Hardi

László Heves

Levente Molnár

Linda Bucsánszki

Luca Németh

Márton Borlay

Mikhail Mitrofanov

Olivér Kovács

Péter Szász

Ramóna Udvardi

Szabolcs Vida

Szilvia Németh

Zoltán Balázs

Zoltán Kalmár

George Dvorsky

Luke Plunkett

Brian Ashcraft

Andrew Liszewski

Jamie Condliffe

Chris Mills

James Whitbrook

David Nield

Kathryn Jezer-Morton

Madeleine Collier

Fruzsina Kuhari

Robert Stokes

Adam Kovac

Jared "Jay Allen" Goodwin

Anthony Dejolde

Carlos Rebato

Carlos Hierro

Matias Martinez

Eduardo Marin

Miguel Redondo

Zolani Stewart

Reshma Bhai

Manisha Aggarwal

Lindsay Handmer

Daniel Strudwick

Eva Jurczyk

Mihir Patkar

Toshihisa Nakamura

Kirsten O'Regan

Alexandra Nursall

Nicholas Cameron

Ralph Jones

Elizabeth Edgar

Rawiya Elkhadir

Ian Dransfield

Stefan Janke

Mark Wilson

| | |
|---|---|
| Sniff Petrol Limited | Halmar Sveinbjornsson |
| James Fell | Amit Reut |
| Peter Ryan | Rosa Gregori |
| Manuel Mendez Perez | Sarah Moroz |
| Angel Jiminez | Jason Richards |
| Jacob Rose | Ravi Somaiya |
| Bram Gieben | Reut Amit |
| Eva Holland | Michael "Massoud" Martin |
| Nathan Thompson | Fariha Roisin |
| Priya Elias | William Herkewitz |
| Scaachi Koul | Lev Hellebust (Bratishenko) |
| Helen Appleyard | Pranav Dixit |
| Omar Karduodi Segarra | Danny Allen |
| Cara Ellison | Karan Atul Shah |
| Estelle Tang | James Baker |
| Anupa Mistry | Gary Cutlack |
| Brodie Lancaster | Adelaide Dugdale |
| Jess Shanahan | Katherine Hannaford |
| Jesus Diaz | Brian Hogg |
| Herbert Lui (Wonder Shuttle Media, Inc) | Andrew James |
| Graham Ruthven | Chris Mcveigh |
| Stacy May Fowles | Apoorva Prasad |
| Andrew Gibney | Michelle Tofi |
| Daniel Harris | Yareniz Saavedra Padilla |
| Alex Hess | Carlos Risco |
| Chris Koentges | Elias Notario Perez |
| Kevin O'Brien | Eric Tecayehuatl |
| Achal Prabhala | Robert Boffard |
| David Sommer | Guy Combs |
| Monica Heisey | Joel Meadows |
| Sara Mcculloch | Chris Harris |
| Jakob Wenngren | Guy Porepp |
| Alex Bejerstrand | Anthony Mark Dewhurst |

Peter Orosz

Ryan Pierce

Neill Watson

George Williams

Chris Harris

Natasha Chenier

Esther Sassaman

Luke Malone

Mikhail Mitrofanov

Leo Wichtowski

Kevin Mahon

Simon Parkin

Quintin Smith

Kathleen Williams

Ollie Barder

Simon Mapp

Andrew Mcmillen

David Veselka

Kevin Mahon

David Gilson

Mark O'Neill

Spanner Spencer

Tom Cassell

Kenneth Gibson

Clare Kane

Zolani Stewart

Josephine Huetlin

### Schedule 2 to Exhibit C

The following lists the names of entities searched from Schedule 1, where the entity, and/or a parent or affiliate of the entity, has a current or former relationship with Opportune on matters that, on information and belief, are unrelated to the Debtors:

| Party in Interest | Relationship |
|---|---|
| CDW Direct | Current Vendor to Opportune |
| Cogent Communications, Inc. | Previous Utility Vendor |
| Getty Images | Current Vendor to Opportune |
| Houlihan Lokey | Previous Vendor to Opportune |
| Amazon | Current Vendor to Opportune |
| United Healthcare Insurance Company | Current Provider of Health Benefits |
| Internal Revenue Service | Taxing Authority |