Ropes & Gray LLP
Gregg M. Galardi
Jonathan P. Gill
Marc B. Roitman
Kristina K. Alexander
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| Gawker Media LLC, *et al.*,[1] | : | Case No. 16-11700 (SMB) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
|  | : | **Re: Docket No. 21** |
|  | : |  |

------------------------------------------------------x

**NOTICE OF FILING OF (I) REVISED BIDDING PROCEDURES,
A REVISED BIDDING PROCEDURES ORDER, AND A REVISED SALE ORDER; AND
(II) FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT**

**PLEASE TAKE NOTICE** that on June 13, 2016, Gawker Media LLC and certain of its

affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "Debtors"), filed the *Debtors' Motion for (I) an Order (A) Authorizing and*

*Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (B) Authorizing and*

*Approving the Debtors Entry Into and Assumption of the Stalking Horse Asset Purchase*

*Agreement, (C) Approving Notice Procedures, (D) Scheduling a Sale Hearing and (E) Approving*

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

*Procedures for Assumption and Assignment of Certain Contracts and Leases and Determining Cure Amounts and (II) an Order (A) Authorizing the Sale of Substantially All of the Debtors Assets Free and Clear of All Claims, Liens, Rights, Interests And Encumbrances, (B) Approving the Asset Purchase Agreement and (C) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* [Docket No. 21] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that attached to the Motion were proposed Bidding Procedures (the "Initial Proposed Bidding Procedures"); a form of proposed Bidding Procedures and APA Assumption Order (the "Initial Proposed Bidding Procedures Order"); a form of proposed Sale Order (the "Initial Proposed Sale Order"); and a form of Asset Purchase Agreement (the "Initial Proposed Asset Purchase Agreement").

**PLEASE TAKE FURTHER NOTICE** that, on June 20, 2016, counsel for Terry G. Bollea filed a limited objection to the Motion [Docket No. 51] (the "Limited Objection").

**PLEASE TAKE FURTHER NOTICE** that, on June 24, 2016, the Debtors filed a reply to the Limited Objection [Docket No. 63] (the "Reply").

**PLEASE TAKE FURTHER NOTICE**, that on June 24, 2016, the Office of the United States Trustee for Region 2 appointed an official committee of unsecured creditors (the "Committee").

**PLEASE TAKE FURTHER NOTICE** that, to resolve the Limited Objection and issues raised informally by the Committee, the Debtors and the Stalking Horse Bidder agreed, in consultation with the Committee and Mr. Bollea's counsel, to make certain modifications to the Initial Proposed Bidding Procedures, the Initial Proposed Bidding Procedures Order, and the Initial Proposed Sale Order; and to amend the Asset Purchase Agreement.

A copy of the Revised Proposed Bidding Procedures is attached hereto as **Exhibit A**, and a blackline comparison of the as-filed version of the Initial Proposed Bidding Procedures and the Revised Proposed Bidding Procedures is attached hereto as **Exhibit B**.  A copy of the Revised Proposed Bidding Procedures Order is attached hereto as **Exhibit C**, and a blackline comparison of the as-filed version of the Initial Proposed Bidding Procedures Order and the Revised Proposed Bidding Procedures Order is attached hereto as **Exhibit D**.  A copy of the Revised Sale Order is attached hereto as **Exhibit E**, and a blackline comparison of the as-filed version of the Initial Sale Order and the Revised Sale Order is attached hereto as **Exhibit F**.  A copy of the First Amendment to the Asset Purchase Agreement is attached hereto as **Exhibit G**.

Dated: July 6, 2016
New York, New York

*/s/ Gregg M. Galardi*
ROPES & GRAY LLP
Gregg M. Galardi
Jonathan P. Gill
Marc B. Roitman
Kristina K. Alexander
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
gregg.galardi@ropesgray.com
jonathan.gill@ropesgray.com
marc.roitman@ropesgray.com
kristina.alexander@ropesgray.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

57691060_1

## Exhibit A

**Revised Proposed Bidding Procedures**

# BIDDING PROCEDURES

On June 10, 2016 (the "Petition Date"), Gawker Media filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Petition Date**"). On June 12, 2016, GMGI and Kinja each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Gawker Media, GMGI, and Kinja, as debtors and debtors in possession (the "Debtors") in the chapter 11 cases (the "Cases") pending in the United States Bankruptcy Court for the Southern District of New York ("Court") and jointly administered under Case No. 16-11700 (SMB), filed a motion [Docket No. [21]] (the "Sale Motion"), seeking, among other things, authorization for the Debtors to perform their obligations under that certain Asset Purchase Agreement (together with all exhibits thereto, and as may be amended, modified or supplemented from time to time in accordance with the terms thereof, the "Stalking Horse APA"),[1] dated as of June 10, 2016, entered into by and among the Debtors and ZDGM LLC (together with its permitted designees, successors and permitted assigns in accordance with the Stalking Horse APA, the "Stalking Horse Bidder"), which is attached hereto as Exhibit A. As described in the Sale Motion, the Stalking Horse APA contemplates, pursuant to the terms and subject to the conditions and purchase price adjustments contained therein, the sale of the Acquired Assets to the Stalking Horse Bidder for cash consideration of $90,000,000 plus the assumption of the Assumed Liabilities.

On [July 7], 2016, the Court entered the *"Order (I) Authorizing and Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (II) Authorizing and Approving the Debtors' Performance of Pre-Closing Obligations Under the Stalking Horse Asset Purchase Agreement, (III) Approving Notice Procedures, (IV) Scheduling a Sale Hearing and (V) Approving Procedures for Assumption and Assignment of Certain Contracts and Leases and Determining Cure Amounts"* [Docket No. [●]] (the "Bidding Procedures Order"), which, among other things, (i) authorized the Debtors to perform their pre-closing obligations under the Stalking Horse APA and (ii) approved the bidding procedures set forth below (the "Bidding Procedures") governing the submission of competing proposals to purchase the Acquired Assets pursuant to section 363 of the Bankruptcy Code. The sale of the Acquired Assets will be implemented pursuant to the terms and conditions of the Bidding Procedures Order and Stalking Horse APA, as the same may be amended pursuant to the terms thereof, subject to the Debtors' selection in their reasonable discretion, after consultation with the Committee[2], of a higher or otherwise better bid as the Successful Bid in accordance with these Bidding Procedures.

The Debtors are offering investors the opportunity to purchase the Acquired Assets pursuant to section 363 of the Bankruptcy Code. Any interested bidder should contact, as soon as practical, the Debtors' investment bankers, Houlihan Lokey ("Houlihan") at the following address: 123 North Wacker Dr., 4th Floor, Chicago, Illinois, 60606, Attn: Reid Snellenbarger

---

[1]    Capitalized terms used but not otherwise defined herein will have the meanings ascribed to them in the Sale Motion or the Stalking Horse APA, as applicable.

[2]    All references to "consult", "consultation" or words of like import shall be deemed followed by the phrase "in good faith".  All references to the Committee as a consultation party shall include the Committee's advisors.

(rsnellenbarger@HL com), Ryan Sandahl (rsandahl@HL com) and Mark Patricof
(mpatricof@HL com).

## Notice Parties

Information that must be provided under these Bidding Procedures, including, without
limitation, Qualifying Bid Documents and Bids, must be provided to the following proposed
advisors to the Debtors and the Committee (collectively, the "Notice Parties"): (i) the proposed
counsel to the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY
10036; Attn: Gregg M. Galardi, Esq. (gregg.galardi@ropesgray.com) and Jonathan P. Gill, Esq.
(jonathan.gill@ropesgray.com); (ii) the proposed investment banker to the Debtors, Houlihan,
123 North Wacker Dr., 4th Floor, Chicago, Illinois, 60606, Attn: Reid Snellenbarger
(rsnellenbarger@HL com), Ryan Sandahl (rsandahl@HL com) and Mark Patricof
(mpatricof@HL com); (iii) the proposed counsel to the Committee, Simpson Thacher & Bartlett
LLP, 425 Lexington Avenue, New York, NY 10017: Attn: Sandy Qusba, Esq.
(squsba@stblaw.com) and William T. Russell, Esq. (wrussell@stblaw.com); and (iv) the
proposed financial advisor to the Committee, Deloitte, 111 S. Wacker Drive, Chicago, IL 60606;
Attn: John Doyle (johdoyle@deloitte.com).

## Participation Requirements

To participate in the formal bidding process or otherwise be considered for any purpose
hereunder, a person (other than the Stalking Horse Bidder) interested in submitting a bid (an
"Interested Party") must, on or before the Bid Deadline (as defined below), deliver to the Notice
Parties, the following documents (the "Qualifying Bid Documents"):

    (a) an executed confidentiality agreement on terms reasonably acceptable to the
        Debtors and on terms substantially similar to and no more onerous than the
        confidentiality agreement executed with the Stalking Horse Bidder (each, a
        "Confidentiality Agreement");

    (b) a statement or other support demonstrating to the Debtors' satisfaction in
        the exercise of their reasonable business judgment, after consultation with
        the Committee, that the Interested Party has a *bona fide* interest in
        purchasing the Acquired Assets; and

    (c) preliminary proof by the Interested Party of its financial capacity to close a
        proposed transaction at the Purchase Price (as defined below), which may
        include current unaudited or verified financial statements of, or verified
        financial commitments or highly confident letters obtained by, the
        Interested Party (or, if the Interested Party is an entity formed for the
        purpose of acquiring the property to be sold, the party that will bear liability
        for a breach), the adequacy of which the Debtors and its advisors will
        determine in consultation with the Committee.

Only those Interested Parties that, in the Debtors' determination after consultation with
the Committee, have submitted acceptable Qualifying Bid Documents (each, a "Potential
Bidder") may submit bids. Once the Debtors determine that an Interested Party is a Potential

Bidder, the Debtors will notify such Potential Bidder, any other Potential Bidders (including the Stalking Horse Bidder) and the Notice Parties of such determination. The Stalking Horse Bidder will at all times be deemed to be a Potential Bidder.

## Due Diligence

Only Potential Bidders will be eligible to receive due diligence information of the Debtors. The Debtors will provide to each Potential Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information will be commensurate with the due diligence information given to the Stalking Horse Bidder prior to entry into the Stalking Horse APA[3]; provided that if any Potential Bidder is (or is a controlled affiliate of) a competitor of the Debtors, the Debtors will not be required to disclose to such Potential Bidder any trade secrets or proprietary information unless the Confidentiality Agreement executed by such Potential Bidder has an effective term of at least 18 months and contains, in the reasonable discretion of the Debtors after consultation with the Committee, appropriate provisions to ensure that such trade secrets or proprietary information will not be used by such Potential Bidder or its Affiliates for an improper purpose or to gain an unfair competitive advantage.

Each Potential Bidder will comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Potential Bidder and its contemplated transaction. If the Debtors determine at any time in their reasonable discretion, after consultation with the Committee, that a Potential Bidder is not reasonably likely to be a Qualified Bidder (as defined below), then the Debtors' obligation to provide due diligence information to such Potential Bidder will terminate and all information provided by Debtors prior to such time will be returned to the Debtors in accordance with the terms of the applicable Confidentiality Agreement.

## Bid Deadline

The deadline for each Potential Bidder to submit a proposal to purchase the Acquired Assets (a "Bid") is August 15, 2016 at 5:00 p.m. (Prevailing Eastern Time) (the "Bid Deadline"). A Good Faith Deposit (as defined below) must be contemporaneously provided with any Bid by wire transfer or certified check pursuant to delivery instructions to be provided by the Debtors before the Bid Deadline. Each Potential Bidder will deliver written copies of each Bid by electronic mail to the Notice Parties.

Any Bid received after the Bid Deadline will not constitute a Qualified Bid.

## Bid Requirements

To be eligible to participate in the Auction, each Bid must:

---

[3]    To the extent additional due diligence is available to Potential Bidders, it shall also be made available to the Stalking Horse Bidder.

(a)     state that the applicable Potential Bidder offers to purchase the Acquired Assets, pursuant to a transaction that is no less favorable to the Debtors' estates, as the Debtors may reasonably determine after consultation with the Committee, than the transactions contemplated in the Stalking Horse APA;

(b)     be accompanied by a deposit (each, a "Good Faith Deposit") in the form of a wire transfer or certified check or such other form acceptable to the Debtors, payable to the order of the Debtors, in an amount equal to $9,000,000 (*i.e.*, 10% of the Stalking Horse Bidder's cash purchase price prior to any adjustments);

(c)     specify the amount of cash or other consideration offered by the Potential Bidder (the "Purchase Price"), which Purchase Price must exceed the aggregate sum of the following: (i) $90,000,000, subject to purchase price adjustments set forth in the Stalking Horse APA, plus the assumption of Assumed Liabilities; (ii) the Breakup Fee; (iii) the minimum bid increment of $1,000,000; and (iv) capped amount of the Expense Reimbursement payable to the Stalking Horse Bidder under the Stalking Horse APA; provided that in determining the value of a Bid, the Debtors will not be limited to evaluating the dollar amount of a Bid, but may also consider, after consultation with the Committee, factors including the liabilities and other obligations to be performed or assumed by the Potential Bidder, the additional administrative and prepetition claims likely to be created by such Bid in relation to other Bids, the proposed revisions to the Stalking Horse APA and other factors affecting the speed, certainty and value of the proposed transactions; provided further that the Debtors' determination under the Bidding Procedures of the highest or otherwise best bid submitted during the Auction will be made without attributing any value to the Consulting Agreement, and all bids submitted during the Auction will be evaluated by the Debtors without regard for whether or not the Qualified Bidder intends to enter into any agreement with Mr. Denton in connection with the Sale Transaction;

(d)     be irrevocable by the Potential Bidder until the selection of the Successful Bid in accordance with the terms of these Bidding Procedures; provided that if such Potential Bidder is selected as the Successful Bidder or Back-Up Bidder, its Bid must remain irrevocable until the earlier of (x) the Debtors' consummation of a sale with the Successful Bidder and (y) 20 days after the Sale Hearing;

(e)     include an executed asset purchase agreement, together with all exhibits and schedules thereto (including identification of the contracts and leases to be assumed and assigned), pursuant to which the Qualified Bidder proposes to effectuate a proposed transaction at the Purchase Price (or in the case of the Stalking Horse Bidder, at the purchase price set forth in the Stalking Horse APA) (the "Transaction Documents"), which Transaction Documents must

include a copy of the Stalking Horse APA, marked to show all changes requested by the Potential Bidder;

(f)    provide a commitment to close as soon as practicable;

(g)    not be conditioned on unperformed due diligence, obtaining financing or any internal approval;

(h)    contain written evidence of a commitment or highly confident letter for financing or other evidence of the ability to consummate a proposed transaction at the Purchase Price (or in the case of the Stalking Horse Bidder, at the purchase price set forth in the Stalking Horse APA) satisfactory to the Debtors in their reasonable discretion after consultation with the Committee, with appropriate contact information for such financing sources;

(i)    contain written evidence satisfactory to the Debtors in their reasonable discretion after consultation with the Committee of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and consummation of such Bid and any Overbid(s) (as defined below), and related Transaction Documents;

(j)    not request or entitle the Potential Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment;

(k)    fully disclose the identity of each entity that will be bidding for the Acquired Assets or otherwise financing (including through the issuance of debt in connection with such Bid) such Bid, and a summary of any such financing;

(l)    set forth the representatives who are authorized to appear and act on behalf of the bidder at the Auction;

(m)    include reasonable evidence of the bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including, without limitation, providing adequate assurance of such bidder's ability to perform future obligations arising under the contracts and leases proposed in its bid to be assumed by the Debtors and assigned to the bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases; and

(n)    constitute a good faith, *bona fide* offer to effectuate the proposed transaction; and

(o)    be received by the Bid Deadline.

## Designation as Qualified Bidder

A qualified bidder ("Qualified Bidder") is a Potential Bidder that, in the Debtors' reasonable determination after consultation with the Committee, (i) has timely submitted a Bid that satisfies each of the above requirements and (ii) is able to consummate the proposed transaction if selected as the Successful Bidder (such Bid submitted by a Qualified Bidder, a "Qualified Bid").

Within one (1) Business Day after a Potential Bidder delivers all of the documents described above, the Debtors will determine in their reasonable discretion after consultation with the Committee whether such Potential Bidder is a Qualified Bidder, and notify all Qualified Bidders and Notice Parties of such determination.

For the avoidance of doubt, the Stalking Horse Bidder is a Qualified Bidder, the Stalking Horse APA is a Qualified Bid and the Stalking Horse Bidder is authorized to submit any Overbids (as defined below) during the Auction at any time, in each instance without further qualification required of the Stalking Horse Bidder; provided, however, that the Stalking Horse Bidder will not under any circumstances be bound to serve as the Back-Up Bidder if it is designated as the Back-Up Bidder in accordance with the provisions of these Bidding Procedures.

If no Qualified Bids (other than the Stalking Horse Bid) are received by the Bid Deadline, then the Stalking Horse Bidder will be deemed the Successful Bidder, the Stalking Horse APA will be the Successful Bid, and, at the Sale Hearing, the Debtors will seek final Court approval of the sale of the Acquired Assets to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse APA.

## "As Is, Where Is"

Any sale or transfer of the Acquired Assets will be on an "as is, where is" basis and without representations or warranties of any kind by the Debtors, their agents or the Debtors' chapter 11 estates, except and solely to the extent expressly set forth in a final purchase agreement approved by the Court as the Successful Bid. Each Qualified Bidder will be required to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Debtors' assets that are the subject of the Auction prior to making its Bid and that it has relied solely upon its own independent review and investigation in making its Bid. Except as otherwise provided in a final purchase agreement approved by the Court as the Successful Bid, all of the Debtors' right, title and interest in the Acquired Assets will be sold or transferred free and clear of all Liens (other than Permitted Liens) as proposed in the Stalking Horse APA, with any Liens (other than Permitted Liens) to attach to the proceeds of the sale of the Acquired Assets as provided in the proposed form of sale order attached to the Sale Motion.

## Auction

If the Debtors receive one or more Qualified Bids in addition to the Stalking Horse Bid, the Debtors will conduct an auction (the "Auction") to determine the highest or otherwise best bid with respect to the Acquired Assets. The Auction will commence on August 17, 2016 at 10:00 a.m. (Prevailing Eastern Time) at the offices of Ropes & Gray LLP, 1211 Avenue of the

Americas, New York, NY 10036, or on such later date and/or at such other location as determined by the Debtors, with the prior consent of the Committee, and the Stalking Horse Bidder (not to be unreasonably withheld, conditioned or delayed).

No later than 5:00 p.m. (Prevailing Eastern Time) on the day prior to the commencement of the Auction, the Debtors will (i) notify all Qualified Bidders and Notice Parties in writing of the highest or otherwise best Qualified Bid, as determined by the Debtors in their reasonable discretion after consultation with the Committee (the "Baseline Bid"), and (ii) provide all Qualified Bidders and Notice Parties (if not previously provided) with complete copies of all Transaction Documents and all other bid materials submitted by each other Qualified Bidder, subject to exclusion of any confidential financial information as determined by the Debtors in their reasonable discretion or which has been so designated by the Qualified Bidder. The Debtors' determination of which Qualified Bid constitutes the Baseline Bid may take into account a number of relevant considerations, including payment of the Breakup Fee and Expense Reimbursement, financial condition of the applicable bidder and certainty of closing but shall not take into account the Consulting Agreement or whether or not the Qualified Bidder intends to enter into any agreement with Mr. Denton in connection with the Sale Transaction.

No later than 9:00 p.m. (Prevailing Eastern Time) on the day prior to the commencement of the Auction, each Qualified Bidder (other than the Stalking Horse Bidder) who has timely submitted a Qualified Bid must inform the Notice Parties whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid will nevertheless remain fully enforceable against such Qualified Bidder.

If there is an Auction, it will be conducted according to the following procedures:

(a)     Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction. Only the authorized representatives of each of the Qualified Bidders (including the Stalking Horse Bidder), the Debtors and their advisors, and the Committee (including Committee members and their counsel) will be permitted to attend the Auction.

(b)     The Debtors and their professionals will direct and preside over the Auction. At the start of the Auction, the Debtors will describe the terms of the Baseline Bid. All Bids made thereafter must be Overbids (as defined below) and will be made and received on an open basis, and all material terms of each Bid will be fully disclosed to all other Qualified Bidders and the Committee and its advisors. The Committee's advisors shall have the right to observe all private discussions and meetings between the Debtors and any Qualified Bidder that occur during the Auction. The Debtors will maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid. Each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the sale of the Acquired Assets.

(c)    During the Auction, bidding will begin initially with the Baseline Bid and subsequently continue in minimum increments of at least $1,000,000 (each, an "Overbid"). The Debtors will announce at the Auction the material terms of each Overbid, value each Overbid in accordance with these Bidding Procedures and provide each Qualified Bidder with an opportunity to make a subsequent Overbid. Additional consideration in excess of the amount set forth in the Baseline Bid may include cash and/or other consideration acceptable to the Debtors in accordance with these Bidding Procedures. If the Stalking Horse Bidder bids at the Auction, at each round of the Auction, the Stalking Horse Bidder will be entitled to receive a "credit" for (i) the Breakup Fee, and (ii) the Expense Reimbursement payable under the Stalking Horse APA (which amount will be deemed to be, for such purposes only, $1,250,000). To the extent that an Overbid has been accepted entirely or in part because of the addition, deletion, or modification of a provision or provisions in the applicable Transaction Documents or the Stalking Horse APA, the Debtors will identify such added, deleted, or modified provision or provisions.

(d)    Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept, after consultation with the Committee, a higher or otherwise better bid submitted by another Qualified Bidder during the Auction as an Overbid, and (ii) such Overbid is not selected as the Back-Up Bid (as defined below). Other than the Stalking Horse Bidder, to the extent not previously provided (which will be determined by the Debtors after consultation with the Committee), a Qualified Bidder submitting an Overbid must submit at the Debtors' request, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors after consultation with the Committee) demonstrating such Qualified Bidder's ability to close the transaction at the purchase price contemplated by such Overbid.

### Selection of Successful Bid

At the conclusion of the Auction, the Debtors, in the exercise of their reasonable business judgment, and after consultation with the Committee, will select (i) the highest or otherwise best bid submitted by a Qualified Bidder during the Auction that the Debtors believe, after consultation with the Committee, maximizes value for the Debtors' estates (the "Successful Bid"), and (ii) at the Debtors' discretion, after consultation with the Committee, the next highest or otherwise best bid after the Successful Bid (the "Back-Up Bid"). In selecting the Successful Bid and the Back-Up Bid, if any, the Debtors shall take into account, after consultation with the Committee, the expected net benefit of the transaction to the Debtors' estates, including the likelihood of the transaction with the Qualified Bidder actually closing and the timing thereof. The Qualified Bidder that submits the Successful Bid will be deemed the "Successful Bidder." The Qualified Bidder that submits the Back-Up Bid, if any, will be deemed the "Back-Up Bidder"; provided that the Stalking Horse Bidder will be deemed to be the Back-Up Bidder only

with the prior written consent of the Stalking Horse Bidder, exercisable in its sole and absolute discretion.  In the event the Debtors select the Stalking Horse APA as the Back-Up Bid and the Stalking Horse Bidder does not consent to be the Back-Up Bidder, the Debtors may select the next highest and otherwise best bid submitted by a Qualified Bidder during the Auction, as determined by the Debtors, after consultation with the Committee, pursuant to these Bidding Procedures, as the Back-Up Bid, and the Qualified Bidder that submitted such Qualified Bid will be deemed to be the Back-Up Bidder.

The Auction will close when the Debtors announce that the Auction has concluded and a Successful Bid and, to the extent the Debtors determine after consultation with the Committee, a Back-Up Bid, have been selected. Notwithstanding anything herein to the contrary, the Debtors are authorized, but not required, to select a Back-Up Bidder and Back-Up Bid. For the avoidance of doubt, the Debtors will not consider or support any bid for any of the Acquired Assets (whether or not such bid is made by a Qualified Bidder) received after the close of the Auction.

The Back-Up Bid, if any, will remain open and binding on the Back-Up Bidder until the earlier of (x) consummation of the Successful Bid with the Successful Bidder and (y) 20 days after the Sale Hearing. If the Successful Bidder fails to consummate the Successful Bid within the time set forth therein, the Debtors will be authorized, but not required, to select the Back-Up Bidder, if any, as the new Successful Bidder, and shall proceed to consummate the Successful Bid of the new Successful Bidder.

## Implementation of the Sale

The hearing to authorize the sale of the Acquired Assets to the Successful Bidder pursuant to the Successful Bid (the "Sale Hearing") will be held before the Court on August 18, 2016, at __:__ _.m. (Prevailing Eastern Time). The Sale Hearing may be adjourned or rescheduled by the Debtors, with the consent of the Successful Bidder, to a time and date consistent with the Court's calendar, as set forth in notice on the docket of the Cases, a notice of agenda or stated orally at the Sale Hearing. The Debtors may not consider or support any other bid to purchase the Acquired Assets pending consideration by the Court of the Successful Bid at the Sale Hearing.

Upon the Court's approval of the Successful Bid, the Successful Bid will be deemed accepted by the Debtors, and the Debtors will be bound to the terms of that Successful Bid with no further opportunity for an auction or other process.

## Additional Procedures and Modifications

The Debtors, after consultation with the Committee, may modify the rules, procedures and deadlines set forth herein, or adopt new rules, procedures and deadlines that, in their reasonable discretion, will better promote the goals of these procedures, namely, to maximize value for the estates; provided that all modifications and additional rules, procedures and deadlines will be non-material, may in no event extend the dates specified in Bidding Procedures Order, including permitting the submission of Bids after the close of the Auction and otherwise not conflict with the Stalking Horse APA or alter any provisions related to or granted to the

Stalking Horse Bidder. All such modifications and additional rules will be communicated to each of the Notice Parties, Potential Bidders and Qualified Bidders.

### Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders at the Auction will be deemed to have consented to the exclusive jurisdiction of the Court with respect to all matters relating to the Auction and the construction and enforcement of each Qualified Bidder's Transaction Documents, and waived any right to a jury trial in connection with any disputes relating to the Auction.

### Return of Good Faith Deposit

All Good Faith Deposits will be held by the Debtors in a non-interest-bearing escrow or trust account. Good Faith Deposits of Qualified Bidders, other than the Successful Bidder and the Back-Up Bidder, if any, will be returned to the unsuccessful bidders within five (5) Business Days after selection of the Successful Bidder and Back-Up Bidder, if any, in accordance with these Bidding Procedures; provided that if the Stalking Horse Bidder is not the Successful Bidder, the Stalking Horse Bidder's Good Faith Deposit shall be returned to the Stalking Horse Bidder in accordance with the Stalking Horse APA. The Successful Bidder's Good Faith Deposit will be applied to the Purchase Price of the Successful Bid at closing, and the Debtors will be entitled to retain such Good Faith Deposit as part of their damages if the Successful Bidder fails to meet its obligations to close the transaction contemplated by the Successful Bid. The Good Faith Deposit of the Back-Up Bidder, if any, will be returned to the Back-Up Bidder, if any, within five (5) Business Days after the earlier of (x) consummation of the sale with the Successful Bidder and (y) 20 days after the Sale Hearing.

### Reservation of Rights; Deadline Extension

Notwithstanding any of the foregoing but subject to all rights of the Stalking Horse Bidder in the Stalking Horse APA and in the above section entitled "Additional Procedures and Modifications", the Debtors reserve their rights, in the exercise of their fiduciary obligations, to modify the Bidding Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Acquired Assets or any subset thereof, including, without limitation, extending the deadlines set forth in the Bidding Procedures, modifying bidding increments, and adjourning the Auction at the Auction and/or adjourning the Sale Hearing without further notice, in each case after consultation with the Committee. The Committee shall retain all of its rights with respect to any issue arising in connection with the implementation of these Bidding Procedures and the sale.

**<u>Exhibit B</u>**

**Blackline of Revised Proposed Bidding Procedures with Initial Proposed Bidding Procedures**

**Exhibit 1**

**Bidding Procedures**

## BIDDING PROCEDURES

On June 10, 2016 (the "Petition Date"), Gawker Media filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Petition Date**"). On June 12, 2016, GMGI and Kinja each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Gawker Media, GMGI, and Kinja, as debtors and debtors in possession (the "Debtors") in the chapter 11 cases (the "Cases") pending in the United States Bankruptcy Court for the Southern District of New York ("Court") and jointly administered under Case No. 16-11700 (SMB), filed a motion [Docket No. [●21]] (the "Sale Motion"), seeking, among other things, authorization for the Debtors to perform their obligations under that certain Asset Purchase Agreement (together with all exhibits thereto, and as may be amended, modified or supplemented from time to time in accordance with the terms thereof, the "Stalking Horse APA"),[1] dated as of June 10, 2016, entered into by and among the Debtors and ZDGM LLC (together with its permitted designees, successors and permitted assigns in accordance with the Stalking Horse APA, the "Stalking Horse Bidder"), which is attached hereto as Exhibit A. As described in the Sale Motion, the Stalking Horse APA contemplates, pursuant to the terms and subject to the conditions and purchase price adjustments contained therein, the sale of the Acquired Assets to the Stalking Horse Bidder infor cash consideration of $90,000,000 plus the assumption of the Assumed Liabilities.

On [●July 7], 2016, the Court entered the *"Order (I) Authorizing and Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (II) Authorizing and Approving the Debtors' Entry Into and Assumption ofPerformance of Pre-Closing Obligations Under the Stalking Horse Asset Purchase Agreement, (III) Approving Notice Procedures, (IV) Scheduling a Sale Hearing and (V) Approving Procedures for Assumption and Assignment of Certain Contracts and Leases and Determining Cure Amounts"* [Docket No. [●●]] (the "Bidding Procedures and APA Assumption Order"), which, among other things, (i) authorized the Debtors to perform their pre-closing obligations under the Stalking Horse APA and (ii) approved the bidding procedures set forth below (the "Bidding Procedures") governing the submission of competing proposals to purchase the Acquired Assets pursuant to section 363 of the Bankruptcy Code. The sale of the Acquired Assets will be implemented pursuant to the terms and conditions of the Bidding Procedures and APA Assumption Order and Stalking Horse APA, as the same may be amended pursuant to the terms thereof, subject to the Debtors' selection in their reasonable discretion, after consultation with the Committee (if appointed)[2], of a higher or otherwise better bid as the Successful Bid in accordance with these Bidding Procedures.

---

[1]     Capitalized terms used but not otherwise defined herein will have the meanings ascribed to them in the Sale Motion or the Stalking Horse APA, as applicable.

[2]     All references to "consult", "consultation" or words of like import shall be deemed followed by the phrase "in good faith". All references to the Committee as a consultation party shall include the Committee's advisors.

The Debtors are offering investors the opportunity to purchase the Acquired Assets pursuant to section 363 of the Bankruptcy Code. Any interested bidder should contact, as soon as practical, the Debtors' investment bankers, Houlihan Lokey ("Houlihan") at the following address: 123 North Wacker Dr., 4th Floor, Chicago, Illinois, 60606, Attn: Reid Snellenbarger (rsnellenbarger@HL. com), Ryan Sandahl (rsandahl@HL. com) and Mark Patricof (mpatricof@HL. com).

## Notice Parties

Information that must be provided under these Bidding Procedures, including, without limitation, Qualifying Bid Documents and Bids, must be provided to the following proposed advisors to the Debtors and the Committee (collectively, the "Notice Parties"): (i) the proposed counsel to the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036; Attn: Gregg M. Galardi, Esq. (gregg.galardi@ropesgray.com) and Jonathan P. Gill, Esq. (jonathan.gill@ropesgray.com); and (ii) the proposed investment banker to the Debtors, Houlihan, 123 North Wacker Dr., 4th Floor, Chicago, Illinois, 60606, Attn: Reid Snellenbarger (rsnellenbarger@HL. com), Ryan Sandahl (rsandahl@HL. com) and Mark Patricof (mpatricof@HL com); (iii) the proposed counsel to the Committee, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017: Attn: Sandy Qusba, Esq. (squsba@stblaw.com) and William T. Russell, Esq. (wrussell@stblaw.com); and (iv) the proposed financial advisor to the Committee, Deloitte, 111 S. Wacker Drive, Chicago, IL 60606; Attn: John Doyle (johdoyle@deloitte.com).

## Participation Requirements

To participate in the formal bidding process or otherwise be considered for any purpose hereunder, a person (other than the Stalking Horse Bidder) interested in submitting a bid (an "Interested Party") must, on or before July 25, 2016 at 5:00 p.m. (Prevailing Eastern Time the Bid Deadline (as defined below), deliver to the Notice Parties, the following documents (the "Preliminary Qualifying Bid Documents"):

    (a)  an executed confidentiality agreement on terms reasonably acceptable to the Debtors and on terms substantially similar to and no more onerous than the confidentiality agreement executed with the Stalking Horse Bidder (each, a "Confidentiality Agreement");

    (b)  a statement and or other factual support demonstrating to the Debtors' satisfaction in the exercise of their reasonable business judgment, after consultation with the Committee, that the Interested Party has a *bona fide* interest in purchasing the Acquired Assets; and

    (c)  preliminary proof by the Interested Party of its financial capacity to close a proposed transaction at the Purchase Price (as defined below), which may include current unaudited or verified financial statements of, or verified financial commitments or highly confident letters obtained by, the Interested Party (or, if the Interested Party is an entity formed for the purpose of acquiring the property to be sold, the party that will bear

liability for a breach), the adequacy of which the Debtors and its advisors will determine in consultation with the Committee.

Only those Interested Parties that, in the Debtors' determination after consultation with the Committee, have submitted acceptable ~~Preliminary~~Qualifying Bid Documents (each, a "Potential Bidder") may submit bids. Once the Debtors determine that an Interested Party is a Potential Bidder, the Debtors will notify such Potential Bidder, any other Potential Bidders (including the Stalking Horse Bidder) and the Notice Parties of such determination. The Stalking Horse Bidder will at all times be deemed to be a Potential Bidder.

## Due Diligence

Only Potential Bidders will be eligible to receive due diligence information of the Debtors. The Debtors will provide to each Potential Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information will be commensurate with the due diligence information given to the Stalking Horse Bidder prior to entry into the Stalking Horse APA[23]; provided that if any Potential Bidder is (or is ~~affiliated with~~a controlled affiliate of) a competitor of the Debtors, the Debtors will not be required to disclose to such Potential Bidder any trade secrets or proprietary information unless the Confidentiality Agreement executed by such Potential Bidder has an effective term of at least 18 months and contains, in the reasonable discretion of the Debtors after consultation with the Committee, appropriate provisions to ensure that such trade secrets or proprietary information will not be used by such Potential Bidder or its Affiliates for an improper purpose or to gain an unfair competitive advantage.

Each Potential Bidder will comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Potential Bidder and its contemplated transaction. If the Debtors determine at any time in their reasonable discretion, after consultation with the Committee, that a Potential Bidder is not reasonably likely to be a Qualified Bidder (as defined below), then the Debtors' obligation to provide due diligence information to such Potential Bidder will terminate and all information provided by Debtors prior to such time will be returned to the Debtors in accordance with the terms of the applicable Confidentiality Agreement.

## Bid Deadline

The deadline for each Potential Bidder to submit a proposal to purchase the Acquired Assets (a "Bid") is ~~July 27~~August 15, 2016 at 5:00 p.m. (Prevailing Eastern Time) (the "Bid Deadline"). A Good Faith Deposit (as defined below) must be contemporaneously provided with any Bid by wire transfer or certified check pursuant to delivery instructions to be provided

---

[23]    To the extent additional due diligence is available to Potential Bidders, it shall also be made available to the Stalking Horse Bidder.

by the Debtors before the Bid Deadline. Each Potential Bidder will deliver written copies of each Bid by electronic mail to the Notice Parties.

Any Bid received after the Bid Deadline will not constitute a Qualified Bid.

**Bid Requirements**

To be eligible to participate in the Auction, each Bid must:

(a)     state that the applicable Potential Bidder offers to purchase the Acquired Assets, pursuant to a transaction that is no less favorable to the Debtors' estates, as the Debtors may reasonably determine after consultation with the Committee, than the transactions contemplated in the Stalking Horse APA;

(b)     be accompanied by a deposit (each, a "Good Faith Deposit") in the form of a wire transfer or certified check or such other form acceptable to the Debtors, payable to the order of the Debtors, in an amount equal to $9,000,000 (*i.e.,* 10% of the value of the Stalking Horse Bidder's cash purchase price prior to any adjustments);

(c)     specify the amount of cash or other consideration offered by the Potential Bidder (the "Purchase Price"), which Purchase Price must exceed the aggregate sum of the following: (i) $90,000,000, subject to purchase price adjustments set forth in the Stalking Horse Bidder's Bid APA, plus the assumption of Assumed Liabilities; (ii) the Breakup Fee; (iii) the minimum bid increment of $1,000,000; and (iv) capped amount of the Expense Reimbursement payable to the Stalking Horse Bidder under the Stalking Horse APA; provided that in determining the value of a Bid, the Debtors will not be limited to evaluating the dollar amount of a Bid, but may also consider, after consultation with the Committee, factors including the liabilities and other obligations to be performed or assumed by the Potential Bidder, the additional administrative and prepetition claims likely to be created by such Bid in relation to other Bids, the proposed revisions to the Stalking Horse APA and other factors affecting the speed, certainty and value of the proposed transactions; provided further that the Debtors' determination under the Bidding Procedures of the highest or otherwise best bid submitted during the Auction will be made without attributing any value to the Consulting Agreement, and all bids submitted during the Auction will be evaluated by the Debtors without regard for whether or not the Qualified Bidder intends to enter into any agreement with Mr. Denton in connection with the Sale Transaction;

(d)     be irrevocable by the Potential Bidder until the selection of the Successful Bid in accordance with the terms of these Bidding Procedures; provided that if such Potential Bidder is selected as the Successful Bidder or Back-Up Bidder, its Bid must remain irrevocable until the earlier of (x) the

4

Debtors' consummation of a sale with the Successful Bidder and (y) 20 days after the Sale Hearing;

(e)     include an executed asset purchase agreement, together with all exhibits and schedules thereto (including identification of the contracts and leases to be assumed and assigned), pursuant to which the Qualified Bidder proposes to effectuate a proposed transaction at the Purchase Price (or in the case of the Stalking Horse Bidder, at the purchase price set forth in the Stalking Horse APA) (the "Transaction Documents"), which Transaction Documents must include a copy of the Stalking Horse APA, marked to show all changes requested by the Potential Bidder;

(f)     provide a commitment to close as soon as practicable, but in no event later than the Closing Date as set forth in Section 2.7 of the Stalking Horse APA;

(g)     not be conditioned on unperformed due diligence, obtaining financing or any internal approval or otherwise be subject to contingencies more burdensome than those in the Stalking Horse APA;

(h)     contain written evidence of a commitment or highly confident letter for financing or other evidence of the ability to consummate a proposed transaction at the Purchase Price (or in the case of the Stalking Horse Bidder, at the purchase price set forth in the Stalking Horse APA) satisfactory to the Debtors in their reasonable discretion after consultation with the Committee, with appropriate contact information for such financing sources;

(i)     contain written evidence satisfactory to the Debtors in their reasonable discretion after consultation with the Committee of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and consummation of such Bid and any Overbid(s) (as defined below), and related Transaction Documents;

(j)     not request or entitle the Potential Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment;

(k)     fully disclose the identity of each entity that will be bidding for the Acquired Assets or otherwise financing (including through the issuance of debt in connection with such Bid) such Bid, and a summary of any such financing;

(l)     set forth the representatives who are authorized to appear and act on behalf of the bidder at the Auction;

(m)    include reasonable evidence of the bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including, without limitation, providing adequate assurance of such bidder's ability to perform future obligations arising under the contracts and leases proposed in its bid to be assumed by the Debtors and assigned to the bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases; and

(n)    constitute a good faith, *bona fide* offer to effectuate the proposed transaction; and

(o)    be received by the Bid Deadline.

## Designation as Qualified Bidder

A qualified bidder ("Qualified Bidder") is a Potential Bidder that, in the Debtors' reasonable determination after consultation with the Committee, (i) has timely submitted a Bid that satisfies each of the above requirements and (ii) is able to consummate the proposed transaction ~~within the required timeframes~~ if selected as the Successful Bidder (such Bid submitted by a Qualified Bidder, a "Qualified Bid").

Within one (1) Business Day after a Potential Bidder delivers all of the documents described above, the Debtors will determine in their reasonable discretion after consultation with the Committee whether such Potential Bidder is a Qualified Bidder, and notify all Qualified Bidders and Notice Parties of such determination.

For the avoidance of doubt, the Stalking Horse Bidder is a Qualified Bidder, the Stalking Horse APA is a Qualified Bid and the Stalking Horse Bidder is authorized to submit any Overbids (as defined below) during the Auction at any time, in each instance without further qualification required of the Stalking Horse Bidder; provided, however, that the Stalking Horse Bidder will not under any circumstances be bound to serve as the Back-Up Bidder if it is designated as the Back-Up Bidder in accordance with the provisions of these Bidding Procedures.

If no Qualified Bids (other than the Stalking Horse Bid) are received by the Bid Deadline, then the Stalking Horse Bidder will be deemed the Successful Bidder, the Stalking Horse APA will be the Successful Bid, and, at the Sale Hearing, the Debtors will seek final Court approval of the sale of the Acquired Assets to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse APA.

## "As Is, Where Is"

Any sale or transfer of the Acquired Assets will be on an "as is, where is" basis and without representations or warranties of any kind by the Debtors, their agents or the Debtors' chapter 11 estates, except and solely to the extent expressly set forth in a final purchase agreement approved by the Court as the Successful Bid. Each Qualified Bidder will be required to acknowledge and represent that it has had an opportunity to conduct any and all due

diligence regarding the Debtors' assets that are the subject of the Auction prior to making its Bid and that it has relied solely upon its own independent review and investigation in making its Bid. Except as otherwise provided in a final purchase agreement approved by the Court as the Successful Bid, all of the Debtors' right, title and interest in the Acquired Assets will be sold or transferred free and clear of all Liens (other than Permitted Liens) as proposed in the Stalking Horse APA, with any Liens (other than Permitted Liens) to attach to the proceeds of the sale of the Acquired Assets as provided in the proposed form of sale order attached to the Sale Motion.

## Auction

If the Debtors receive one or more Qualified Bids in addition to the Stalking Horse Bid, the Debtors will conduct an auction (the "Auction") to determine the highest or otherwise best bid with respect to the Acquired Assets. The Auction will commence on July 29August 17, 2016 at 10:00 a.m. (Prevailing Eastern Time) at the offices of Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, or on such otherlater date and/or at such other location as determined by the Debtors, with the prior consent of the Committee (if appointed), and the Stalking Horse Bidder (not to be unreasonably withheld, conditioned or delayed).

No later than 5:00 p.m. (Prevailing Eastern Time) on the day prior to the commencement of the Auction, the Debtors will (i) notify all Qualified Bidders and Notice Parties in writing of the highest or otherwise best Qualified Bid, as determined by the Debtors in their reasonable discretion after consultation with the Committee (the "Baseline Bid"), and (ii) provide all Qualified Bidders and Notice Parties (if not previously provided) with complete copies of all Transaction Documents and all other bid materials submitted by each other Qualified Bidder, subject to exclusion of any confidential financial information as determined by the Debtors in their reasonable discretion or which has been so designated by the Qualified Bidder. The Debtors' determination of which Qualified Bid constitutes the Baseline Bid may take into account a number of relevant considerations, including payment of the Breakup Fee and Expense Reimbursement, financial condition of the applicable bidder and certainty of closing but shall not take into account the Consulting Agreement or whether or not the Qualified Bidder intends to enter into any agreement with Mr. Denton in connection with the Sale Transaction.

No later than 9:00 p.m. (Prevailing Eastern Time) on the day prior to the commencement of the Auction, each Qualified Bidder (other than the Stalking Horse Bidder) who has timely submitted a Qualified Bid must inform the DebtorsNotice Parties whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid will nevertheless remain fully enforceable against such Qualified Bidder.

If there is an Auction, it will be conducted according to the following procedures:

(a) Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction. Only the authorized representatives of each of the Qualified Bidders (including the Stalking Horse Bidder), the

Debtors and their advisors, and ~~if appointed,~~ the Committee (including Committee members and their counsel) will be permitted to attend the Auction.

(b)     The Debtors and their professionals will direct and preside over the Auction. At the start of the Auction, the Debtors will describe the terms of the Baseline Bid. All Bids made thereafter must be Overbids (as defined below) and will be made and received on an open basis, and all material terms of each Bid will be fully disclosed to all other Qualified Bidders and the Committee and its advisors. The Committee's advisors shall have the right to observe all private discussions and meetings between the Debtors and any Qualified Bidder that occur during the Auction. The Debtors will maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid. Each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the sale of the Acquired Assets.

(c)     During the Auction, bidding will begin initially with the Baseline Bid and subsequently continue in minimum increments of at least $1,000,000 (each, an "Overbid"). The Debtors will announce at the Auction the material terms of each Overbid, value each Overbid in accordance with these Bidding Procedures and provide each Qualified Bidder with an opportunity to make a subsequent Overbid. Additional consideration in excess of the amount set forth in the Baseline Bid may include cash and/or other consideration acceptable to the Debtors in accordance with these Bidding Procedures. If the Stalking Horse Bidder bids at the Auction, at each round of the Auction, the Stalking Horse Bidder will be entitled to receive a "credit" for (i) the Breakup Fee, and (ii) the Expense Reimbursement payable under the Stalking Horse APA (which amount will be deemed to be, for such purposes only, $1,250,000). To the extent that an Overbid has been accepted entirely or in part because of the addition, deletion, or modification of a provision or provisions in the applicable Transaction Documents or the Stalking Horse APA, the Debtors will identify such added, deleted, or modified provision or provisions.

(d)     Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept ~~a~~, after consultation with the Committee, a higher or otherwise better bid submitted by another Qualified Bidder during the Auction as an Overbid, and (ii) such Overbid is not selected as the Back-Up Bid (as defined below). Other than the Stalking Horse Bidder, to the extent not previously provided (which will be determined by the Debtors after consultation with the Committee), a Qualified Bidder submitting an Overbid must submit at the Debtors' request, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality

support information or enhancement reasonably acceptable to the Debtors after consultation with the Committee) demonstrating such Qualified Bidder's ability to close the transaction at the purchase price contemplated by such Overbid.

### Selection of Successful Bid

At the conclusion of the Auction, the Debtors, in the exercise of their reasonable business judgment, and after consultation with the Committee, will select (i) the highest or otherwise best bid submitted by a Qualified Bidder during the Auction that the Debtors believe is most beneficial to, after consultation with the Committee, maximizes value for the Debtors' estates (the "Successful Bid"), and (ii) except as set forth below with regards to the Stalking Horse Bidder, at the Debtors' discretion, after consultation with the Committee, the next highest or otherwise best bid after the Successful Bid (the "Back-Up Bid"). In selecting the Successful Bid and the Back-Up Bid, if any, the Debtors shall take into account, after consultation with the Committee, the expected net benefit of the transaction to the Debtors' estates, including the likelihood of the transaction with the Qualified Bidder actually closing and the timing thereof. The Qualified Bidder that submits the Successful Bid will be deemed the "Successful Bidder." The Qualified Bidder that submits the Back-Up Bid, if any, will be deemed the "Back-Up Bidder"; provided that the Stalking Horse Bidder will be deemed to be the Back-Up Bidder only with the prior written consent of the Stalking Horse Bidder, exercisable in its sole and absolute discretion.  In the event the Debtors select the Stalking Horse APA as the Back-Up Bid and the Stalking Horse Bidder does not consent to be the Back-Up Bidder, the Debtors may select the next highest and otherwise best bid submitted by a Qualified Bidder during the Auction, as determined by the Debtors, after consultation with the Committee, pursuant to these Bidding Procedures, as the Back-Up Bid, and the Qualified Bidder that submitted such Qualified Bid will be deemed to be the Back-Up Bidder.

The Auction will close when the Debtors announce that the Auction has concluded and a Successful Bid and, to the extent the Debtors determine after consultation with the Committee, a Back-Up Bid, have been selected. Notwithstanding anything herein to the contrary, the Debtors are authorized, but not required, to select a Back-Up Bidder and Back-Up Bid. For the avoidance of doubt, the Debtors will not consider or support any bid for any of the Acquired Assets (whether or not such bid is made by a Qualified Bidder) received after the close of the Auction.

The Back-Up Bid, if any, will remain open and binding on the Back-Up Bidder until the earlier of (x) consummation of the Successful Bid with the Successful Bidder and (y) 20 days after the Sale Hearing. If the Successful Bidder fails to consummate the Successful Bid within the time set forth therein, the Debtors will be authorized, but not required, to select the Back-Up Bidder, if any, as the new Successful Bidder, and shall proceed to consummate the Successful Bid of the new Successful Bidder.

### Implementation of the Sale

The hearing to authorize the sale of the Acquired Assets to the Successful Bidder pursuant to the Successful Bid (the "Sale Hearing") will be held before the Court on August

318, 2016, at 10:00 a__:___.m. (Prevailing Eastern Time). The Sale Hearing may be adjourned or rescheduled by the Debtors, with the consent of the Successful Bidder, to a time and date consistent with the Court's calendar, as set forth in notice on the docket of the Cases, a notice of agenda or stated orally at the Sale Hearing. The Debtors may not consider or support any other bid to purchase the Acquired Assets pending consideration by the Court of the Successful Bid at the Sale Hearing.

Upon the Court's approval of the Successful Bid, the Successful Bid will be deemed accepted by the Debtors, and the Debtors will be bound to the terms of that Successful Bid with no further opportunity for an auction or other process.

### Additional Procedures and Modifications

The Debtors may, after consultation with the Committee, may modify the rules, procedures and deadlines set forth herein, or adopt new rules, procedures and deadlines that, in their reasonable discretion, will better promote the goals of these procedures, namely, to maximize value for the estates; provided that all modifications and additional rules, procedures and deadlines will be non-material, may in no event extend the dates specified in Bidding Procedures and APA Assumption Order, including permitting the submission of Bids after the close of the Auction and otherwise not conflict with the Stalking Horse APA or alter any provisions related to or granted to the Stalking Horse Bidder. All such modifications and additional rules will be communicated to each of the Notice Parties, Potential Bidders and Qualified Bidders.

### Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders at the Auction will be deemed to have consented to the exclusive jurisdiction of the Court with respect to all matters relating to the Auction and the construction and enforcement of each Qualified Bidder's Transaction Documents, and waived any right to a jury trial in connection with any disputes relating to the Auction.

### Return of Good Faith Deposit

All Good Faith Deposits will be held by the Debtors in a non-interest-bearing escrow or trust account. Good Faith Deposits of Qualified Bidders, other than the Successful Bidder and the Back-Up Bidder, if any, will be returned to the unsuccessful bidders within five (5) Business Days after selection of the Successful Bidder and Back-Up Bidder, if any, in accordance with these Bidding Procedures; provided that if the Stalking Horse Bidder is not the Successful Bidder, the Stalking Horse Bidder's Good Faith Deposit shall be returned to the Stalking Horse Bidder in accordance with the Stalking Horse APA. The Successful Bidder's Good Faith Deposit will be applied to the Purchase Price of the Successful Bid at closing, and the Debtors will be entitled to retain such Good Faith Deposit as part of their damages if the Successful Bidder fails to meet its obligations to close the transaction contemplated by the Successful Bid. The Good Faith Deposit of the Back-Up Bidder, if any, will be returned to the Back-Up Bidder, if any, within five (5) Business Days after the earlier of (x) consummation of the sale with the Successful Bidder and (y) 20 days after the Sale Hearing.

**Reservation of Rights; Deadline Extension**

Notwithstanding any of the foregoing ~~(other than the~~but subject to all rights of the Stalking Horse Bidder in the Stalking Horse APA and in the above section entitled "Additional Procedures and Modifications"~~ section above)~~, the Debtors reserve their rights, in the exercise of their fiduciary obligations, to modify the Bidding Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Acquired Assets or any subset thereof, including, without limitation, extending the deadlines set forth in the Bidding Procedures, modifying bidding increments, and adjourning the Auction at the Auction and/or adjourning the Sale Hearing without further notice~~.~~, in each case after consultation with the Committee. The Committee shall retain all of its rights with respect to any issue arising in connection with the implementation of these Bidding Procedures and the sale.

**Exhibit A**

**Stalking Horse APA**

| Summary report:<br>Litéra® Change-Pro TDC 7.5.0.145 Document comparison done on<br>7/6/2016 1:14:23 PM | |
|---|---|
| **Style name:** RG_Default_Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Active_57276956_2_Gawker - Bidding Procedures FILING VERSION.DOCX | |
| **Modified DMS:** iw://RGDMS/Active/57896966/1 | |
| **Changes:** | |
| Add | 76 |
| Delete | 53 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 129 |

**<u>Exhibit C</u>**

**Revised Proposed Bidding Procedures Order**

57691060_1

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Gawker Media LLC, *et al.*,[1] | Case No. 16-11700 (SMB) |
| Debtors. | (Joint Administration Requested) |

**ORDER (I) AUTHORIZING AND APPROVING BIDDING PROCEDURES, BREAKUP FEE AND EXPENSE REIMBURSEMENT, (II) AUTHORIZING AND APPROVING THE DEBTORS' PERFORMANCE OF PRE-CLOSING OBLIGATIONS UNDER THE STALKING HORSE ASSET PURCHASE AGREEMENT, (III) APPROVING NOTICE PROCEDURES, (IV) SCHEDULING A SALE HEARING AND (V) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND DETERMINING CURE AMOUNTS**

Upon the motion (the "Motion") of the above-captioned debtors (the "Debtors") in the above-captioned jointly administered chapter 11 cases (the "Cases"), for entry of an order (this "Order"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 6004-1 and 6006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), (i) authorizing and approving (a) certain proposed bidding procedures (as attached hereto as **Exhibit 1**, the "Bidding Procedures")[2] governing the submission of competing proposals to purchase the Acquired Assets pursuant to section 363 of the Bankruptcy Code and (b) the Breakup Fee and Expense Reimbursement (together, the

---

[1]    The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media and GMGI are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja's offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures or the Stalking Horse APA, as applicable.

"Stalking Horse Bid Protections") to the extent payable pursuant to and on the terms set forth in the Asset Purchase Agreement (as appended to the Bidding Procedures as **Exhibit A** and, together with all exhibits thereto, and as amended, modified or supplemented pursuant to the amendment attached hereto as **Exhibit 4** and as may be further amended, modified or supplemented from time to time in accordance with the terms thereof, the "Stalking Horse APA"), dated as of June 10, 2016, by and among the Debtors and ZDGM, LLC (together with its permitted designees, successors and permitted assigns in accordance with the Stalking Horse APA, the "Stalking Horse Bidder"), (ii) authorizing and approving the Debtors' performance of certain pre-closing obligations under the Stalking Horse APA, pursuant to which the Debtors have agreed to sell the Acquired Assets to the Stalking Horse Bidder, subject to the terms and conditions contained therein, (iii) approving the form and manner of notice of the sale of the Acquired Assets (the "Sale Notice"), (iv) scheduling a hearing for approval of the sale of the Acquired Assets (the "Sale Hearing") and setting other related dates and deadlines and (v) approving procedures for the assumption and assignment of the Debtors' Non-Residential Leases and Other Executory Contracts and the form of and manner of notice of proposed cure amounts; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and all other parties in interest; and after due deliberation, and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334.

B.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

57896969_1

C.      The statutory and legal predicates for the relief requested in the Motion and

provided for herein are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code,

Bankruptcy Rules 2002, 6004 and 6006, and Local Rules 6004-1 and 6006-1.

D.      Good and sufficient notice of the relief granted by this Order has been given and

no further notice is required. A reasonable opportunity to object or be heard regarding the relief

granted by this Order has been afforded to those parties entitled to notice pursuant to the

Bankruptcy Rules and the Local Rules and all other interested parties.

E.      The Bidding Procedures are fair, reasonable and appropriate and are designed to

maximize the value to be received by the Debtors' estates and creditors.

F.      The Debtors have demonstrated compelling and sound business justifications for

entering into the Stalking Horse APA and incurring the administrative obligations arising

thereunder or in connection therewith, including the provisions related to the payment of the

Liquidated Damages Amount and the Stalking Horse Bid Protections under the circumstances,

timing and procedures set forth therein.

G.      The Debtors' incurrence of the obligations arising under or in connection with the

Stalking Horse APA, including the provisions related to payment of the Liquidated Damages

Amount and the Stalking Horse Bid Protections, is (i) an actual and necessary cost of preserving

the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, (ii) of

substantial benefit to the Debtors' estates, their creditors and all other parties in interest, because,

among other things, they induced the Stalking Horse Bidder to submit a bid that will serve as a

minimum or floor bid for the Acquired Assets, (iii) the product of good faith and arm's-length

negotiations among the Debtors and the Stalking Horse Bidder, (iv) reasonable and appropriate

in light of the size and nature of the proposed sale and the efforts that have been and will be

expended by the Stalking Horse Bidder and (v) necessary to induce the Stalking Horse Bidder to enter into the Stalking Horse APA and to continue to pursue the sale of the Acquired Assets.

H.      The sale of the Acquired Assets as contemplated in the Stalking Horse APA is in the best interests of the Debtors' estates, their creditors and all other parties in interest, and represents a reasonable exercise of the Debtors' sound business judgment.

I.      The Debtors' performance of the Pre-Closing Obligations (defined below) is in the best interest of the Debtors, their respective estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

J.      The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is reasonably calculated to provide all interested parties with timely and proper notice of the proposed sale, including:  (i) the date, time and place of the Auction (if one is held), (ii) the Bidding Procedures and certain dates and deadlines related thereto, (iii) the objection deadline for the sale and the date, time and place of the Sale Hearing, (iv) reasonably specific identification of the assets subject to the proposed sale, (v) instructions for promptly obtaining a copy of the Stalking Horse APA, (vi) representations describing the proposed sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the sale proceeds, (vii) the commitment by the Stalking Horse Bidder to assume certain liabilities of the Debtors solely to the extent set forth in the Stalking Horse APA and (viii) notice of the proposed assumption and assignment of Non-Residential Leases and Other Executory Contracts to the Stalking Horse Bidder pursuant to the Stalking Horse APA (or to another Successful Bidder selected at the Auction, if any) and the procedures and deadlines for objecting thereto.  No other or further notice of the proposed sale shall be required.

57896969_1

K.      The Cure Notice attached hereto as **Exhibit 3** is reasonably calculated to provide all non-Debtor counterparties to the Debtors' Non-Residential Leases and Other Executory Contracts with proper notice of the potential assumption and assignment of their Non-Residential Lease or Other Executory Contract, the proposed cure amounts relating thereto, if any, and the related assumption and assignment procedures; underline provided that the mere listing of any Non-Residential Lease or Other Executory Contract on the Cure Notice does not require or guarantee that such Non-Residential Lease or Other Executory Contract will be assumed and assigned, and all rights of the Debtors with respect to such Non-Residential Leases and Other Executory Contracts are reserved.

L.      The Bidding Procedures comply with the requirements of Local Rule 6004-1.

M.      Entry of this Order is in the best interests of the Debtors' estates, their creditors and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is hereby granted and approved to the extent set forth herein.

**The Bidding Procedures**

2.      The Bidding Procedures, attached hereto as **Exhibit 1**, are approved, and the Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.  The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order will not diminish or impair the effectiveness of such provision.

3.      Any objections to the Motion or the relief requested therein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits.

-5-

4.      The Bidding Procedures shall govern the submission, receipt and analysis of all Bids, and any party desiring to submit a higher or better offer shall do so strictly in accordance with the terms of this Order and the Bidding Procedures.

5.      The following dates and deadlines regarding competitive bidding are hereby established (subject to modification in accordance with the Bidding Procedures):

    a.      **Qualified Bid Deadline: August 15, 2016 at 5:00 p.m. (Prevailing Eastern Time)** is the deadline by which all Qualifying Bid Documents and Qualified Bids must be **actually** **received** by the Debtors' investment banker and legal advisors, as set forth in the Bidding Procedures (the "Bid Deadline"); and

    b.      **Auction**: **August 17, 2016 at 10:00 a.m. (Prevailing Eastern Time)** is the date and time the Auction, if one is needed, will be held at the offices of Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036.

6.      The Stalking Horse Bidder is a Qualified Bidder, the Stalking Horse APA is a Qualified Bid and the Stalking Horse Bidder is authorized to submit any Overbids during the Auction at any time, in each case, pursuant to the Bidding Procedures for all purposes.

7.      Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction. As described in the Bidding Procedures, if the Debtors do not receive any Qualified Bids other than the Stalking Horse Bidder's Bid, the Debtors will not hold the Auction, the Stalking Horse Bidder will be deemed the Successful Bidder and the Debtors will seek final approval at the Sale Hearing of the sale of the Acquired Assets to the Stalking Horse Bidder, in accordance with the terms of the Stalking Horse APA.

8.      If the Auction is conducted, each Qualified Bidder participating in the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding process or the sale of the Acquired Assets.

9.      If the Auction is conducted, absent irregularities in the conduct of the auction, or

reasonable and material confusion during the bidding, the Court will not consider bids made after

the Auction has been closed.

**Approval of Debtors' Performance of Pre-Closing Obligations under the**

**Stalking Horse APA**

10.      The Debtors are authorized and directed to perform all of their respective pre-

closing obligations under the Stalking Horse APA, including all obligations set forth in Articles

V (Pre-Closing Conditions), VIII (Termination) and IX (Miscellaneous) and Sections 6.1

(Cooperation), 6.4 (Employee Matters), 6.6 (Transfer Taxes), 6.7 (Wage Reporting), 6.10 (Name

Changes), 6.14 (Schedule of Employees) and 6.15 (Schedule of Contracts) of the Stalking Horse

APA (collectively, the "**Pre-Closing Obligations**").

11.      The Staking Horse Bidder is authorized to exercise any rights or remedies with

respect to any non-compliance by the Debtors of their Pre-Closing Obligations, including

terminating the Stalking Horse APA in accordance with its terms, without further order of the

Court and shall be entitled to injunctive relief in accordance with and subject to Section 9.10 of

the Stalking Horse APA.  In the event the Debtors intentionally or willfully breach any Pre-

Closing Obligations (as determined by a court of competent jurisdiction) any resulting damages

due and payable to the Stalking Horse Bidder shall constitute an administrative expense claims

under sections 503(b) and 507(a)(2) of the Bankruptcy Code; provided nothing in this Order

shall constitute a waiver of the rights of any party in interest in any proceeding related to such

purported breach.  Other than with respect to intentional and willful breaches of any Pre-Closing

Obligations and the payment of the Liquidated Damages, Breakup Fee and the Expense

Reimbursement, as set forth herein and the Stalking Horse APA, any other amounts that may be

-7-

due and payable as a result of a breach of any Pre-Closing Obligations or other obligations under

the Stalking Horse APA shall not constitute administrative expense claims unless and until the

Sale Order is entered, provided that any such claims shall be waived and shall not survive the

Closing Date pursuant and subject to Section 9.13.

12.     Any amounts with respect to the Breakup Fee, Expense Reimbursement and

Liquidated Damages Amount shall constitute an administrative expense claims under sections

503(b) and 507(a)(2) of the Bankruptcy Code and shall be senior to all other administrative

expense claims that may be approved in the Cases (other than DIP Obligations, as defined in the

*Debtors' Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and*

*364 and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedures (I)*

*Authorizing Incurrence by the Debtors of Postpetition Secured Indebtedness, (II) Granting Liens,*

*(III) Authorizing Use of Cash Collateral by the Debtors and Providing for Adequate Protect,*

*(IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing*); provided that with

respect to the Liquidated Damages Amount, any amount payable in connection therewith shall be

subject to the allocation set forth in Section 8.3(f) of the Stalking Horse APA.  For the avoidance

of doubt, consummation of the transactions contemplated by the Stalking Horse APA shall be

subject to an order approving the assumption of the Stalking Horse APA and the sale of the

Acquired Assets (the "Sale Order") and the satisfaction or waiver of the other conditions to

closing on the terms set forth in the Stalking Horse APA.

## The Stalking Horse Bid Protections

13.     The Liquidated Damages Amount and the Stalking Horse Bid Protections as set

forth in the Stalking Horse APA, including (i) the Breakup Fee in an amount equal to 2.75% of

the Base Purchase Price and (ii) the Expense Reimbursement for the Stalking Horse Bidder's

reasonable and documented out-of-pocket costs and expenses up to a cap of $1,250,000, and the provisions of the Stalking Horse APA relating thereto, are hereby approved. The Debtors are required to pay the Stalking Horse Bid Protections to the Stalking Horse Bidder to the extent due and payable under the Stalking Horse APA, and the Stalking Horse Bidder will not be deemed to waive the Stalking Horse Bid Protections by rebidding at the Auction.  Pursuant to the Stalking Horse APA, the Stalking Horse Bidder will be entitled to receive a credit for the full amount of the Stalking Horse Bid Protections at each round of the Auction.

14.    The Debtors' obligations arising under or in connection with the Stalking Horse APA, including with respect to the Liquidated Damages Amount and the Stalking Horse Bid Protections, shall (i) survive termination of the Stalking Horse APA, (ii) constitute, to the extent set forth in paragraphs 11 and 12, an administrative expense claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code and shall be senior to all other administrative expense claims that may be approved in the Cases (other than the DIP Obligations) and (iii) be payable under the terms and conditions of the Stalking Horse APA and this Order without any further order of this Court.

15.    Each Debtor's obligations relating to the Liquidated Damages Amount and the Stalking Horse Bid Protections arising under or in connection with the Stalking Horse APA shall be binding and enforceable against each such Debtor and its respective estate, and, as applicable, subject to section 363(f) of the Bankruptcy Code, (i) any of its successors or assigns, (ii) any trustee, examiner, or other representative of the Debtors' estates, (iii) the reorganized Debtors and (iv) any other entity vested or revested with any right, title or interest in or to a material portion of the assets directly or indirectly owned by the Debtors or any other person claiming any rights in or control over a material portion of such assets, excluding any Qualified Bidder that

57896969_1

purchases the Acquired Assets (each, a "Debtor Successor"), as if such Debtor Successor was the Debtors.

### Hearing and Objection Deadline

16.     The Sale Hearing, shall take place in this Court on **August 18, 2016 at 2:00 p.m. (Prevailing Eastern Time)**; provided that the Sale Hearing may be adjourned or rescheduled without further notice other than announcement in open Court or by the filing of a notice on the docket of these Cases or a notice of agenda.  Any obligations of the Debtors set forth in the Stalking Horse APA that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the Stalking Horse APA are authorized as set forth herein and are fully enforceable as of the date of entry of this Order subject to the limitations to seek administrative expense claims set forth in paragraphs 11 and 12.

17.     The deadline to file objections, if any, to the transactions contemplated by the Stalking Horse APA or to entry of the Sale Order is **August 5, 2016 at 4:00 p.m. (Prevailing Eastern Time)** (the "Sale Objection Deadline"); provided, that if and only if the Stalking Horse Bidder is **not** the Successful Bidder for the Debtors' assets, counterparties to the Debtors' Non-Residential Leases and Other Executory Contracts shall have until two (2) days before the Sale Hearing to object to the assumption and assignment of a Non-Residential Lease or Other Executory Contract *solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code*.  Objections, if any, **must**:  (i) be in writing, (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules and any orders of the Court, (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor and (iv) be filed with the Court and served so as to be **actually received** no later than the Sale

-10-

Objection Deadline, as applicable, by the following parties (the "Objection Notice Parties"):

(a) the Debtors: Gawker Media Group, Inc., 114 Fifth Avenue, 2d Floor, New York, New York 10011; Attn: Heather Dietrick; (b) proposed counsel to the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036; Attn: Gregg M. Galardi, Esq. and Jonathan P. Gill, Esq.; (c) the proposed investment banker to the Debtors, Houlihan Lokey, Inc., 123 North Wacker Dr., 4th Floor, Chicago, Illinois, 60606; Attn: Reid Snellenbarger; (d) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014; Fax: (212) 668-2255; (e) counsel to the official committee of unsecured creditors appointed in the Cases, if any (the "Committee"); and (f) counsel to the Stalking Horse Bidder, Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004; Attn: Michael H. Torkin, Esq. and Alexa J. Kranzley, Esq., Fax: (212) 291-9376.

18.     Any replies to objections to the relief sought in the Sale Order shall be submitted no later than one day before the Sale Hearing.

19.     Failure to object to the relief requested in the Motion by the Sale Objection Deadline shall be deemed to be "consent" for purposes of section 363(f) of the Bankruptcy Code.

## Sale Notice and Related Relief

20.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.  Within three (3) days of the entry of this Order, the Debtors shall cause the Sale Notice to be served upon (i) the US Trustee, (ii) counsel to the Committee (if one is appointed), (iii) parties who are known or reasonably believed to have asserted any lien, encumbrance, claim or other interest in the Debtors' assets that are the subject of the proposed sale of the Acquired Assets, if any, (iv) all parties who have filed a notice of appearance and request for service of papers in the Cases pursuant to Bankruptcy Rule 2002, (v) each counterparty to the Debtors'

Non-Residential Leases and Other Executory Contracts, (vi) all applicable state and local taxing authorities, including the Internal Revenue Service, (vii) each governmental agency that is an interested party with respect to the sale of the Acquired Assets contemplated by the Stalking Horse APA and the transactions proposed thereunder, (viii) the Securities and Exchange Commission and (ix) counsel to the Stalking Horse Bidder.  In addition, as soon as practicable, but in any event no later than five (5) Business Days after entry of this Order, the Debtors shall publish the Sale Notice (modified for publication, as necessary) in the United States edition of the *USA Today*.

## **The Sale Does Not Require the Appointment of a Consumer Privacy Ombudsman**

21.     In connection with the sale of the Acquired Assets pursuant to the Stalking Horse APA, the Debtors shall be required to abide by their privacy policies in place as of the date of the Stalking Horse APA, as such policies may be amended from time to time.  Accordingly, no consumer privacy ombudsman need be appointed in connection with the sale under section 363(b)(1) of the Bankruptcy Code.

## **Assumption and Assignment Procedures**

22.     The procedures set forth below regarding the proposed assumption and assignment of certain Non-Residential Leases and Other Executory Contracts that may be designated to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder selected at the Auction, if any) pursuant to section 365(f) of the Bankruptcy Code (as defined in the Stalking Horse APA, collectively, the "Designated Contracts") in connection with the sale of the Acquired Assets are hereby approved (the "Assumption Procedures").

23.     These Assumption Procedures, as may be modified or supplemented by the Sale

Order, shall govern the assumption and assignment of all Designated Contracts:

a.      **Cure Notice**.  The Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is hereby approved. On or before the date that is five (5) Business Days following the date of this Order, the Debtors shall file with the Court and serve via first class mail the Cure Notice on all non-Debtor counterparties to all Non-Residential Leases and Other Executory Contracts, and their respective known counsel, and provide a copy of same to the Stalking Horse Bidder. The Cure Notice shall inform each recipient that its respective Non-Residential Lease or Other Executory Contract may be designated by the Stalking Horse Bidder as either assumed or excluded and the timing and procedures relating to such designation, and, to the extent applicable (i) the title of the Non-Residential Lease or Other Executory Contract, (ii) the name of the counterparty to the Non-Residential Lease or Other Executory Contract, (iii) the Debtors' good faith estimates of the cure amounts required in connection with such Non-Residential Lease or Other Executory Contract, (iv) the identity of the Stalking Horse Bidder and (v) the deadline by which any such Non-Residential Lease or Other Executory Contract counterparty may file an objection to the proposed assumption and assignment and/or cure amount, and the procedures relating thereto; provided, however, that service of a Cure Notice does not constitute an admission that such Non-Residential Lease or Other Executory Contract is an executory contract or unexpired lease.

b.      **Adequate Assurance**.  Upon request by a counterparty under any Non-Residential Lease or Other Executory Contract, the Debtors shall serve, by electronic mail, the evidence of adequate assurance of future performance under the Non-Residential Leases and Other Executory Contracts provided by the Stalking Horse Bidder, including the legal name of the proposed assignee, the proposed use of any leased premises, the proposed assignee's financial ability to perform under the Non-Residential Leases and Other Executory Contracts and a contact person with the proposed assignee that counterparties may contact if they wish to obtain further information regarding the Stalking Horse Bidder.

c.      **Objections**.  Objections, if any, to the proposed assumption and assignment of any Non-Residential Lease or Other Executory Contract or to the cure amount proposed with respect thereto must:  (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules and any order orders of the Court, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof and (iv) be filed with the Court and served so as to be **actually**

-13-

**received** by the Objection Notice Parties before the Sale Objection
Deadline.

Promptly following the Debtors' selection of the Successful Bidder and
the Back-Up Bidder, if any, at the conclusion of the Auction, the Debtors
shall announce the Successful Bidder and the Back-Up Bidder, if any, and
shall file with the Court a notice of the Successful Bidder and the Back-Up
Bidder, if any. If and only if the Stalking Horse Bidder is **not** the
Successful Bidder for the Debtors' assets, counterparties to the Debtors'
Non-Residential Leases and Other Executory Contracts shall have until
two (2) days before the Sale Hearing to object to the assumption and
assignment of a Non-Residential Lease or Other Executory Contract *solely
on the issue of whether the Successful Bidder or Back-Up Bidder can
provide adequate assurance of future performance as required by
section 365 of the Bankruptcy Code*. For the avoidance of doubt, if the
Stalking Horse Bidder is the Successful Bidder, all adequate assurance
objections must be filed by the Sale Objection Deadline.

d.    **Dispute Resolution**. Any objection to the proposed assumption and
assignment or related cure of a Non-Residential Lease or Other Executory
Contract in connection with the proposed sale that remains unresolved as
of the Sale Hearing shall be heard at the Sale Hearing (or at a later date as
fixed by the Court) provided that any such objection may be adjourned, in
full or in part, by the Debtors to a later date by listing such adjournment in
a notice of agenda or other notice filed on the docket of the Cases and
served on the affected counterparty.

24.    *Any party who fails to timely file an objection to its scheduled cure amount
listed on the Cure Notice or to the assumption and assignment of a Non-Residential Lease or
Other Executory Contract (i) shall be forever barred from objecting thereto, including
(a) making any demands for additional cure amounts or monetary compensation on account
of any alleged defaults for the period prior to the applicable objection deadline against the
Debtors, their estates or the Stalking Horse Bidder or other Successful Bidder selected at the
Auction, if any, with respect to any such Non-Residential Lease or Other Executory Contract
and (b) asserting that the Stalking Horse Bidder or other Successful Bidder has not provided
adequate assurance of future performance as of the date of the Sale Order and (ii) shall be
deemed to consent to the sale of the Acquired Assets as approved by the Sale Order.*

-14-

### **Other Relief Granted**

25.     The Debtors are authorized and directed to enter the amendment to the Stalking

Horse APA attached hereto as **Exhibit 4** and to take any and all actions necessary or appropriate

to implement such amendment.

26.     The Debtors are authorized to execute and deliver all instruments and documents

and take such other action as may be necessary or appropriate to implement and effectuate the

transactions contemplated by this Order.

27.     The Good Faith Deposits of the Stalking Horse Bidder and any other bidder, and

any other amounts deposited into escrow pursuant to the applicable purchase agreement (which,

in the case of the Stalking Horse Bidder, shall be the Stalking Horse APA), shall be held in the

Escrow Account by the Escrow Agent and shall not become property of the Debtors' bankruptcy

estates unless the Deposit or other Escrow Amount is otherwise due and payable to the Debtors

in accordance with the applicable purchase agreement (which, in the case of the Stalking Horse

Bidder, shall be the Stalking Horse APA).  The agreements with respect to the Escrow Account

set forth in the Stalking Horse APA (the "Escrow Agreement") shall be binding and enforceable

against the Debtors and their estates in all respects and the Debtors are authorized and directed to

perform its obligations thereunder.  The Debtors are authorized to enter into an escrow

agreement substantially in the form of the Escrow Agreement with each other bidder (if any),

and when executed by the Debtors, such escrow agreements (if any) shall be binding and

enforceable against the Debtors and their estates in all respects.

28.     In the event there is a conflict between this Order and the Motion or the Stalking

Horse APA, this Order shall control and govern.

29.     This Order shall be binding in all respects upon any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy cases or upon a conversion to chapter 7 under the Bankruptcy Code.

30.     The Stalking Horse Bidder has standing to enforce the terms of this Order.

31.     This Order shall be immediately effective and enforceable upon entry hereof, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

32.     The requirements set forth in Local Rule 9013-1 are satisfied by the contents of the Motion.

33.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

34.     The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

35.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

36.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

Dated: July ___, 2016
        New York, New York

_____
STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

**Exhibit D**

**Blackline of Revised Proposed Bidding Procedures Order to Initial Proposed Bidding Procedures Order**

## Exhibit B

**Bidding Procedures ~~and APA Assumption~~ Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**



~~------------------------------------------------------x~~
~~:~~
~~In re:~~          ~~:~~          ~~Chapter 11~~
~~:~~
~~Gawker Media LLC, *et al.*,~~
~~1~~
~~:~~     ~~Case No. 16-11700 (SMB)~~

| In re: | Chapter 11 |
|---|---|
| Gawker Media LLC, *et al.*,[1] | Case No. 16-11700 (SMB) |
| Debtors. | (Joint Administration Requested) |

~~:~~
~~Debtors.~~          ~~:~~     ~~(Joint Administration Requested)~~
~~:~~
~~------------------------------------------------------x~~

**ORDER (I) AUTHORIZING AND APPROVING BIDDING PROCEDURES, BREAKUP
FEE AND EXPENSE REIMBURSEMENT, (II) AUTHORIZING AND APPROVING
THE DEBTORS'** ~~ENTRY INTO AND ASSUMPTION OF THE~~**PERFORMANCE OF
PRE-CLOSING OBLIGATIONS UNDER THE** **STALKING HORSE ASSET
PURCHASE AGREEMENT, (III) APPROVING NOTICE PROCEDURES,
(IV) SCHEDULING A SALE HEARING AND (V) APPROVING PROCEDURES FOR
ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS
AND LEASES AND DETERMINING CURE AMOUNTS**

Upon the motion (the "Motion") of the above-captioned debtors (the "Debtors")

in the above-captioned jointly administered chapter 11 cases (the "Cases"), for entry of an

---

~~1    The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492);
Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media and GMGI are
located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja's offices are located at Andrassy ut
66. 1062 Budapest, Hungary.~~

[1]    The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492);
Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media and GMGI are
located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja's offices are located at Andrassy ut
66. 1062 Budapest, Hungary.

57896969_1

order (this "Order"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the

United States Code (the "Bankruptcy Code"), rules 2002, 6004 and 6006 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 6004-1 and 6006-1 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

Southern District of New York (the "Local Rules"), (i) authorizing and approving (a) certain

proposed bidding procedures (as attached hereto as **Exhibit 1**, the "Bidding Procedures")[2]

governing the submission of competing proposals to purchase the Acquired Assets pursuant to

section 363 of the Bankruptcy Code and (b) the Breakup Fee and Expense Reimbursement

(together, the "Stalking Horse Bid Protections") to the extent payable pursuant to and on the

terms set forth in the Asset Purchase Agreement (as appended to the Bidding Procedures as

**Exhibit A** and, together with all exhibits thereto, and as ~~may be~~amended, modified or

supplemented pursuant to the amendment attached hereto as **Exhibit 4** and as may be further

amended, modified or supplemented from time to time in accordance with the terms thereof,

the "Stalking Horse APA"), dated as of June 10, 2016, by and among the Debtors and ZDGM,

LLC (together with its permitted designees, successors and permitted assigns in accordance

with the Stalking Horse APA, the "Stalking Horse Bidder"), (ii) authorizing and approving the

Debtors' ~~assumption of (but not consummation of)~~performance of certain pre-closing

obligations under the Stalking Horse APA, pursuant to which the Debtors have agreed to sell

the Acquired Assets to the Stalking Horse Bidder, subject to the terms and conditions

contained therein, (iii) approving the form and manner of notice of the sale of the Acquired

Assets (the "Sale Notice"), (iv) scheduling a hearing for approval of the sale of the Acquired

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding
Procedures or the Stalking Horse APA, as applicable.

57896969_1

Assets (the "Sale Hearing") and setting other related dates and deadlines and (v) approving procedures for the assumption and assignment of the Debtors' Non-Residential Leases and Other Executory Contracts and the form of and manner of notice of proposed cure amounts; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and all other parties in interest; and after due deliberation, and good and sufficient cause appearing therefor,

### IT IS HEREBY FOUND AND DETERMINED THAT:

A.      This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006, and Local Rules 6004-1 and 6006-1.

D.      Good and sufficient notice of the relief granted by this Order has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Rules and the Local Rules and all other interested parties.

E.      The Bidding Procedures are fair, reasonable and appropriate and are designed to maximize the value to be received by the Debtors' estates and creditors.

F.      The Debtors have demonstrated compelling and sound business justifications for entering into the Stalking Horse APA and incurring the administrative obligations arising

-3-

thereunder or in connection therewith, including the provisions related to the payment of the Liquidated Damages Amount and the Stalking Horse Bid Protections under the circumstances, timing and procedures set forth therein.

G.      The Debtors' incurrence of the obligations arising under or in connection with the Stalking Horse APA, including the provisions related to payment of the Liquidated Damages Amount and the Stalking Horse Bid Protections, is (i) an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, (ii) of substantial benefit to the Debtors' estates, their creditors and all other parties in interest, because, among other things, they induced the Stalking Horse Bidder to submit a bid that will serve as a minimum or floor bid for the Acquired Assets, (iii) the product of good faith and arm's-length negotiations among the Debtors and the Stalking Horse Bidder, (iv) reasonable and appropriate in light of the size and nature of the proposed sale and the efforts that have been and will be expended by the Stalking Horse Bidder and (v) necessary to induce the Stalking Horse Bidder to enter into the Stalking Horse APA and to continue to pursue the sale of the Acquired Assets.

H.      The sale of the Acquired Assets as contemplated in the Stalking Horse APA is in the best interests of the Debtors' estates, their creditors and all other parties in interest, and represents a reasonable exercise of the Debtors' sound business judgment.

I.      The Debtors' ~~assumption of the Stalking Horse APA~~performance of the Pre-Closing Obligations (defined below) is in the best interest of the Debtors, their respective estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  ~~The Debtors have met all requirements of section 365(b) of the Bankruptcy Code to assume the Stalking Horse APA.  The Debtors have~~

-4-

~~provided adequate assurance of future performance under the Stalking Horse APA within the~~
~~meaning of section 365(b)(1)(C) of the Bankruptcy Code.  No default exists in the Debtors'~~
~~performance under the Stalking Horse APA as of the date of this Order.~~

J.      The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is reasonably calculated to provide all interested parties with timely and proper notice of the proposed sale, including:  (i) the date, time and place of the Auction (if one is held), (ii) the Bidding Procedures and certain dates and deadlines related thereto, (iii) the objection deadline for the sale and the date, time and place of the Sale Hearing, (iv) reasonably specific identification of the assets subject to the proposed sale, (v) instructions for promptly obtaining a copy of the Stalking Horse APA, (vi) representations describing the proposed sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the sale proceeds, (vii) the commitment by the Stalking Horse Bidder to assume certain liabilities of the Debtors solely to the extent set forth in the Stalking Horse APA and (viii) notice of the proposed assumption and assignment of Non-Residential Leases and Other Executory Contracts to the Stalking Horse Bidder pursuant to the Stalking Horse APA (or to another Successful Bidder selected at the Auction, if any) and the procedures and deadlines for objecting thereto. No other or further notice of the proposed sale shall be required.

K.      The Cure Notice attached hereto as **Exhibit 3** is reasonably calculated to provide all non-Debtor counterparties to the Debtors' Non-Residential Leases and Other Executory Contracts with proper notice of the potential assumption and assignment of their Non-Residential Lease or Other Executory Contract, the proposed cure amounts relating thereto, if any, and the related assumption and assignment procedures; provided that the mere

-5-

listing of any Non-Residential Lease or Other Executory Contract on the Cure Notice does not require or guarantee that such Non-Residential Lease or Other Executory Contract will be assumed and assigned, and all rights of the Debtors with respect to such Non-Residential Leases and Other Executory Contracts are reserved.

L.      The Bidding Procedures comply with the requirements of Local Rule 6004-1.

M.      Entry of this Order is in the best interests of the Debtors' estates, their creditors and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is hereby granted and approved to the extent set forth herein.

**<u>The Bidding Procedures</u>**

2.      The Bidding Procedures, attached hereto as **<u>Exhibit 1</u>**, are approved, and the Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.  The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order will not diminish or impair the effectiveness of such provision.

3.      Any objections to the Motion or the relief requested therein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits.

4.      The Bidding Procedures shall govern the submission, receipt and analysis of all Bids, and any party desiring to submit a higher or better offer shall do so strictly in accordance with the terms of this Order and the Bidding Procedures.

5.      The following dates and deadlines regarding competitive bidding are hereby established (subject to modification in accordance with the Bidding Procedures):

        a.      ~~**Preliminary Bid Deadline:  July 25, 2016 at 5:00 p.m. (Prevailing Eastern Time)** is the deadline by which a person interested in~~

-6-

~~participating in the bidding process must deliver the Preliminary Bid Documents;~~

b. **Qualified Bid Deadline:** ~~July 27~~August 15**, 2016 at 5:00 p.m. (Prevailing Eastern Time)** is the deadline by which all <u>Qualifying Bid Documents and</u> Qualified Bids must be **actually received** by the Debtors' investment banker and legal advisors, as set forth in the Bidding Procedures (the "Bid Deadline"); and

b.      ~~c.~~ **Auction**: ~~July 29~~August 17**, 2016 at 10:00 a.m. (Prevailing Eastern Time)** is the date and time the Auction, if one is needed, will be held at the offices of Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036.

6.      The Stalking Horse Bidder is a Qualified Bidder, the Stalking Horse APA is a Qualified Bid and the Stalking Horse Bidder is authorized to submit any Overbids during the Auction at any time, in each case, pursuant to the Bidding Procedures for all purposes.

7.      Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction. As described in the Bidding Procedures, if the Debtors do not receive any Qualified Bids other than the Stalking Horse Bidder's Bid, the Debtors will not hold the Auction, the Stalking Horse Bidder will be deemed the Successful Bidder and the Debtors will seek final approval at the Sale Hearing of the sale of the Acquired Assets to the Stalking Horse Bidder, in accordance with the terms of the Stalking Horse APA.

8.      If the Auction is conducted, each Qualified Bidder participating in the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding process or the sale of the Acquired Assets.

9.      If the Auction is conducted, absent irregularities in the conduct of the auction, or reasonable and material confusion during the bidding, the Court will not consider bids made after the Auction has been closed.

**Approval of Debtors'** ~~Entry Into and Assumption of Stalking Horse APA~~**Performance of Pre-Closing Obligations under the Stalking Horse APA**

10.     The Debtors are authorized ~~to assume~~ and directed to perform all of their respective pre-closing obligations under the Stalking Horse APA~~; provided that~~, including all obligations set forth in Articles V (Pre-Closing Conditions), VIII (Termination) and IX (Miscellaneous) and Sections 6.1 (Cooperation), 6.4 (Employee Matters), 6.6 (Transfer Taxes), 6.7 (Wage Reporting), 6.10 (Name Changes), 6.14 (Schedule of Employees) and 6.15 (Schedule of Contracts) of the Stalking Horse APA (collectively, the "**Pre-Closing Obligations**").

11.     The Staking Horse Bidder is authorized to exercise any rights or remedies with respect to any non-compliance by the Debtors of their Pre-Closing Obligations, including terminating the Stalking Horse APA in accordance with its terms, without further order of the Court and shall be entitled to injunctive relief in accordance with and subject to Section 9.10 of the Stalking Horse APA.  In the event the Debtors intentionally or willfully breach any Pre-Closing Obligations (as determined by a court of competent jurisdiction) any resulting damages due and payable to the Stalking Horse Bidder shall constitute an administrative expense claims under sections 503(b) and 507(a)(2) of the Bankruptcy Code; provided nothing in this Order shall constitute a waiver of the rights of any party in interest in any proceeding related to such purported breach.  Other than with respect to intentional and willful breaches of any Pre-Closing Obligations and the payment of the Liquidated Damages, Breakup Fee and the Expense Reimbursement, as set forth herein and the Stalking Horse APA, any other amounts that may be due and payable as a result of a breach of any Pre-Closing Obligations or other obligations

57896969_1

under the Stalking Horse APA shall not constitute administrative expense claims unless and until the Sale Order is entered, provided that any such claims shall be waived and shall not survive the Closing Date pursuant and subject to Section 9.13.

12.        ~~for~~Any amounts with respect to the Breakup Fee, Expense Reimbursement and Liquidated Damages Amount shall constitute an administrative expense claims under sections 503(b) and 507(a)(2) of the Bankruptcy Code and shall be senior to all other administrative expense claims that may be approved in the Cases (other than DIP Obligations, as defined in the *Debtors' Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364 and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedures (I) Authorizing Incurrence by the Debtors of Postpetition Secured Indebtedness, (II) Granting Liens, (III) Authorizing Use of Cash Collateral by the Debtors and Providing for Adequate Protect, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing*); provided that with respect to the Liquidated Damages Amount, any amount payable in connection therewith shall be subject to the allocation set forth in Section 8.3(f) of the Stalking Horse APA.  For the avoidance of doubt, consummation of the transactions contemplated by the Stalking Horse APA shall be subject to ~~entry of~~an order approving the assumption of the Stalking Horse APA and the sale of the Acquired Assets (the "Sale Order") and the satisfaction or waiver of the other conditions to closing on the terms set forth in the Stalking Horse APA.

**The Stalking Horse Bid Protections**

13.     ~~11.~~The Liquidated Damages Amount and the Stalking Horse Bid Protections as set forth in the Stalking Horse APA, including (i) the Breakup Fee in an amount equal to 2.75% of the Base Purchase Price and

-9-

(ii) the Expense Reimbursement for the Stalking Horse Bidder's reasonable and documented out-of-pocket costs and expenses up to a cap of $1,250,000, and the provisions of the Stalking Horse APA relating thereto, are hereby approved. The Debtors are required to pay the Stalking Horse Bid Protections to the Stalking Horse Bidder to the extent due and payable under the Stalking Horse APA, and the Stalking Horse Bidder will not be deemed to waive the Stalking Horse Bid Protections by rebidding at the Auction.  Pursuant to the Stalking Horse APA, the Stalking Horse Bidder will be entitled to receive a credit for the full amount of the Stalking Horse Bid Protections at each round of the Auction.

14.     12. The Debtors' obligations arising under or in connection with the Stalking Horse APA, including with respect to the Liquidated Damages Amount and the Stalking Horse Bid Protections, shall (i) survive termination of the Stalking Horse APA, (ii) constitute, to the extent set forth in paragraphs 11 and 12, an administrative expense claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code and shall be senior to all other administrative expense claims that may be approved in the Cases (other than the DIP Obligations) and (iii) be payable under the terms and conditions of the Stalking Horse APA and this Order without any further order of this Court.

15.     13. Each Debtor's obligations relating to the Liquidated Damages Amount and the Stalking Horse Bid Protections arising under or in connection with the Stalking Horse APA shall be binding and enforceable against each such Debtor and its respective estate, and, as applicable, subject to section 363(f) of the Bankruptcy Code, (i) any of its successors or assigns, (ii) any trustee, examiner, or other representative of the Debtors' estates, (iii) the reorganized Debtors and (iv) any other entity vested or revested with any right, title or interest in or to a material portion of the assets directly or indirectly owned by the Debtors or any

-10-

other person claiming any rights in or control over a material portion of such assets, excluding

any Qualified Bidder that purchases the Acquired Assets (each, a "Debtor Successor"), as if

such Debtor Successor was the Debtors.

### Hearing and Objection Deadline

16.    ~~14.~~The Sale Hearing, shall take place in this Court on **August ~~3~~18, 2016 at**

**~~10:00 a~~2:00 p.m. (Prevailing Eastern Time)**; provided that the Sale Hearing may be

adjourned or rescheduled without further notice other than announcement in open Court or by

the filing of a notice on the docket of these Cases or a notice of agenda.  Any obligations of

the Debtors set forth in the Stalking Horse APA that are intended to be performed prior to the

Sale Hearing and/or entry of the Sale Order pursuant to the Stalking Horse APA are

authorized as set forth herein and are fully enforceable as of the date of entry of this Order

subject to the limitations to seek administrative expense claims set forth in paragraphs 11 and

12.

17.    ~~15.~~The deadline to file objections, if any, to the transactions contemplated by

the Stalking Horse APA or to entry of the Sale Order is ~~July 25~~August 5, **2016 at 4:00 p.m.**

**(Prevailing Eastern Time)** (the "Sale Objection Deadline"); provided, that if and only if the

Stalking Horse Bidder is **not** the Successful Bidder for the Debtors' assets, counterparties to

the Debtors' Non-Residential Leases and Other Executory Contracts shall have until two (2)

days before the Sale Hearing to object to the assumption and assignment of a Non-Residential

Lease or Other Executory Contract *solely on the issue of whether the Successful Bidder or*

*Back-Up Bidder can provide adequate assurance of future performance as required by*

*section 365 of the Bankruptcy Code*.  Objections, if any, **must**:  (i) be in writing, (ii) conform

to the applicable provisions of the Bankruptcy Rules, the Local Rules and any orders of the

-11-

Court, (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor and (iv) be filed with the Court and served so as to be **actually received** no later than the Sale Objection Deadline, as applicable, by the following parties (the "Objection Notice Parties"): (a) the Debtors: Gawker Media Group, Inc., 114 Fifth Avenue, 2d Floor, New York, New York 10011; Attn: Heather Dietrick; (b) proposed counsel to the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036; Attn:  Gregg M. Galardi, Esq. and Jonathan P. Gill, Esq.; (c) the proposed investment banker to the Debtors, Houlihan Lokey, Inc., 123 North Wacker Dr., 4th Floor, Chicago, Illinois, 60606; Attn:  Reid Snellenbarger; (d) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014; Fax: (212) 668-2255; (e) counsel to the official committee of unsecured creditors appointed in the Cases, if any (the "Committee"); and (f) counsel to the Stalking Horse Bidder, Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004; Attn: Michael H. Torkin, Esq. and Alexa J. Kranzley, Esq., Fax: (212) 291-9376.

18.    ~~16.~~ Any replies to objections to the relief sought in the Sale Order shall be submitted no later than one day before the Sale Hearing.

19.    ~~17.~~ Failure to object to the relief requested in the Motion by the Sale Objection Deadline shall be deemed to be "consent" for purposes of section 363(f) of the Bankruptcy Code.

### Sale Notice and Related Relief

20.    ~~18.~~ The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.  Within three (3) days of the entry of this Order, the Debtors shall cause the Sale Notice to be served upon (i) the US Trustee, (ii) counsel to the Committee (if one is

-12-

appointed), (iii) parties who are known or reasonably believed to have asserted any lien, encumbrance, claim or other interest in the Debtors' assets that are the subject of the proposed sale of the Acquired Assets, if any, (iv) all parties who have filed a notice of appearance and request for service of papers in the Cases pursuant to Bankruptcy Rule 2002, (v) each counterparty to the Debtors' Non-Residential Leases and Other Executory Contracts, (vi) all applicable state and local taxing authorities, including the Internal Revenue Service, (vii) each governmental agency that is an interested party with respect to the sale of the Acquired Assets contemplated by the Stalking Horse APA and the transactions proposed thereunder, (viii) the Securities and Exchange Commission and (ix) counsel to the Stalking Horse Bidder.  In addition, as soon as practicable, but in any event no later than five (5) Business Days after entry of this Order, the Debtors shall publish the Sale Notice (modified for publication, as necessary) in the United States edition of the *USA Today*.

### The Sale Does Not Require the Appointment of a Consumer Privacy Ombudsman

21.    19.    In connection with the sale of the Acquired Assets pursuant to the Stalking Horse APA, the Debtors shall be required to abide by their privacy policies in place as of the date of the Stalking Horse APA, as such policies may be amended from time to time. Accordingly, no consumer privacy ombudsman need be appointed in connection with the sale under section 363(b)(1) of the Bankruptcy Code.

### Assumption and Assignment Procedures

22.    20.    The procedures set forth below regarding the proposed assumption and assignment of certain Non-Residential Leases and Other Executory Contracts that may be designated to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder selected at the Auction,

-13-

if any) pursuant to section 365(f) of the Bankruptcy Code (as defined in the Stalking Horse

APA, collectively, the "Designated Contracts") in connection with the sale of the Acquired

Assets are hereby approved (the "Assumption Procedures").

23.    21. These Assumption Procedures, as may be modified or supplemented by the

Sale Order, shall govern the assumption and assignment of all Designated Contracts:

a.      **Cure Notice**.  The Cure Notice, substantially in the form attached hereto
as **Exhibit 3**, is hereby approved. On or before the date that is
fourteenfive (145) days prior to the Sale Objection DeadlineBusiness
Days following the date of this Order, the Debtors shall file with the
Court and serve via first class mail the Cure Notice on all non-Debtor
counterparties to all Non-Residential Leases and Other Executory
Contracts, and their respective known counsel, and provide a copy of
same to the Stalking Horse Bidder. The Cure Notice shall inform each
recipient that its respective Non-Residential Lease or Other
Executory Contract may be designated by the Stalking Horse Bidder as either
assumed or excluded and the timing and procedures relating to such
designation, and, to the extent applicable (i) the title of the Non-
Residential Lease or Other Executory Contract, (ii) the name of the
counterparty to the Non-Residential Lease or Other Executory Contract,
(iii) the Debtors' good faith estimates of the cure amounts required in
connection with such Non-Residential Lease or Other Executory
Contract, (iv) the identity of the Stalking Horse Bidder and (v) the
deadline by which any such Non-Residential Lease or Other Executory
Contract counterparty may file an objection to the proposed assumption
and assignment and/or cure amount, and the procedures relating thereto;
provided, however, that service of a Cure Notice does not constitute an
admission that such Non-Residential Lease or Other Executory Contract
is an executory contract or unexpired lease.

b.      **Adequate Assurance**.  Upon request by a counterparty under any Non-
Residential Lease or Other Executory Contract, the Debtors shall serve,
by electronic mail, the evidence of adequate assurance of future
performance under the Non-Residential Leases and Other Executory
Contracts provided by the Stalking Horse Bidder, including the legal
name of the proposed assignee, the proposed use of any leased premises,
the proposed assignee's financial ability to perform under the Non-
Residential Leases and Other Executory Contracts and a contact person
with the proposed assignee that counterparties may contact if they wish
to obtain further information regarding the Stalking Horse Bidder.

c.    **Objections**.  Objections, if any, to the proposed assumption and assignment of any Non-Residential Lease or Other Executory Contract or to the cure amount proposed with respect thereto <u>must</u>:  (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules and any order orders of the Court, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof and (iv) be filed with the Court and served so as to be **<u>actually received</u>** by the Objection Notice Parties before the Sale Objection Deadline.

Promptly following the Debtors' selection of the Successful Bidder and the Back-Up Bidder, if any, at the conclusion of the Auction, the Debtors shall announce the Successful Bidder and the Back-Up Bidder, if any, and shall file with the Court a notice of the Successful Bidder and the Back-Up Bidder, if any.  If and only if the Stalking Horse Bidder is **<u>not</u>** the Successful Bidder for the Debtors' assets, counterparties to the Debtors' Non-Residential Leases and Other Executory Contracts shall have until two (2) days before the Sale Hearing to object to the assumption and assignment of a Non-Residential Lease or Other Executory Contract *solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code*.  For the avoidance of doubt, if the Stalking Horse Bidder is the Successful Bidder, all adequate assurance objections must be filed by the Sale Objection Deadline.

d.    **Dispute Resolution**.  Any objection to the proposed assumption and assignment or related cure of a Non-Residential Lease or Other Executory Contract in connection with the proposed sale that remains unresolved as of the Sale Hearing shall be heard at the Sale Hearing (or at a later date as fixed by the Court) provided that any such objection may be adjourned, in full or in part, by the Debtors to a later date by listing such adjournment in a notice of agenda or other notice filed on the docket of the Cases and served on the affected counterparty.

24.    ~~22.~~ *Any party who fails to timely file an objection to its scheduled cure*

*amount listed on the Cure Notice or to the assumption and assignment of a Non-*

*Residential Lease or Other Executory Contract (i) shall be forever barred from objecting*

*thereto, including (a) making any demands for additional cure amounts or monetary*

-15-

*compensation on account of any alleged defaults for the period prior to the applicable*

*objection deadline against the Debtors, their estates or the Stalking Horse Bidder or other*

*Successful Bidder selected at the Auction, if any, with respect to any such Non-Residential*

*Lease or Other Executory Contract and (b) asserting that the Stalking Horse Bidder or*

*other Successful Bidder has not provided adequate assurance of future performance as of*

*the date of the Sale Order and (ii) shall be deemed to consent to the sale of the Acquired*

*Assets as approved by the Sale Order.*

### Other Relief Granted

25.    The Debtors are authorized and directed to enter the amendment to the Stalking Horse APA attached hereto as **Exhibit 4** and to take any and all actions necessary or appropriate to implement such amendment.

26.    23. The Debtors are authorized to execute and deliver all instruments and documents and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

27.    24. The Good Faith Deposits of the Stalking Horse Bidder and any other bidder, and any other amounts deposited into escrow pursuant to the applicable purchase agreement (which, in the case of the Stalking Horse Bidder, shall be the Stalking Horse APA), shall be held in the Escrow Account by the Escrow Agent and shall not become property of the Debtors' bankruptcy estates unless the Deposit or other Escrow Amount is otherwise due and payable to the Debtors in accordance with the applicable purchase agreement (which, in the case of the Stalking Horse Bidder, shall be the Stalking Horse APA).  The agreements with respect to the Escrow Account set forth in the Stalking Horse APA (the "Escrow Agreement") shall be binding and enforceable against the Debtors and their estates in all respects and the

Debtors are authorized and directed to perform its obligations thereunder.  The Debtors are authorized to enter into an escrow agreement substantially in the form of the Escrow Agreement with each other bidder (if any), and when executed by the Debtors, such escrow agreements (if any) shall be binding and enforceable against the Debtors and their estates in all respects.

28.    25. In the event there is a conflict between this Order and the Motion or the Stalking Horse APA, this Order shall control and govern.

29.    26. This Order shall be binding in all respects upon any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy cases or upon a conversion to chapter 7 under the Bankruptcy Code.

30.    27. The Stalking Horse Bidder has standing to enforce the terms of this Order.

31.    28. This Order shall be immediately effective and enforceable upon entry hereof, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

32.    29. The requirements set forth in Local Rule 9013-1 are satisfied by the contents of the Motion.

33.    30. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

34.    31. The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

35.    32. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

36.    33. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

Dated: July ___, 2016
      New York, New York

_____
STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

-17-

57896969_1

57896969_1

| Summary report: Litéra® Change-Pro TDC 7.5.0.145 Document comparison done on 7/6/2016 1:19:20 PM | |
|---|---|
| **Style name:** RG_Default_Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Active_57276858_3_Gawker - Bidding Procedures Order FILING VERSION.DOCX | |
| **Modified DMS:** iw://RGDMS/Active/57896969/1 | |
| **Changes:** | |
| Add | 64 |
| Delete | 59 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 1 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 124 |

**Exhibit E**

**Revised Proposed Sale Order**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Gawker Media LLC, *et al.*,[1] | Case No. 16-11700 (SMB) |
| Debtors. | (Joint Administration Requested) |
|  | **Re: Docket No. [●]** |

**ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS,
INTERESTS AND ENCUMBRANCES, (II) APPROVING AND AUTHORIZING THE
DEBTORS' ASSUMPTION OF THE ASSET PURCHASE AGREEMENT AND (III)
AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN
<u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

Upon the motion (the "<u>Motion</u>") of Gawker Media LLC, Gawker Media Group, Inc., and

Kinja Kft., the debtors and debtors in possession (collectively, the "<u>Debtors</u>"), for the entry of an

order, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the

"<u>Bankruptcy Code</u>"), and rules 1005, 2002, 6004, 6006, 9007, 9014 and 9019 of the Federal

Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (i) approving and authorizing the

Debtors' assumption of the Asset Purchase Agreement by and between the Debtors and ZDGM,

LLC (together with its permitted designees, successors and permitted assigns in accordance with

the APA, the "<u>Buyer</u>"), dated June 10, 2016 (substantially in the form attached hereto as **Exhibit

1**, and as may be amended, modified or supplemented from time to time in accordance with the

terms thereof, the "<u>APA</u>"),[2] whereby the Debtors have agreed to sell, and Buyer has agreed to

---

[1]    The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492);
Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media and GMGI are located
at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja's offices are located at Andrassy ut 66. 1062
Budapest, Hungary.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding
Procedures or the APA, as applicable.

57896964_1

acquire, substantially all of the Debtors' assets (collectively, and as specifically set forth and

defined in the APA, the "Acquired Assets") other than the Excluded Assets, and the Debtors

have agreed to transfer and Buyer has agreed to assume certain of the Debtors' liabilities

(collectively, and as specifically set forth and defined in the APA, the "Assumed Liabilities")

(collectively, and including all actions taken or required to be taken in connection with the

implementation and consummation of the APA, the "Transactions"); (ii) authorizing and

approving the sale of the Acquired Assets (the "Sale"), free and clear, to the maximum extent

permitted under section 363(f) of the Bankruptcy Code, of any and all Liens (other than

Permitted Liens), including any Liens arising out of bulk transfer law, debts and claims (as that

term is defined in section 101(5) of the Bankruptcy Code), Liabilities, obligations, costs,

expenses, causes of action, avoidance actions, demands, guaranties, options, rights, contractual

commitments, settlements, injunctions, restrictions, interests, encumbrances, reclamation rights,

and similar matters of any kind whatsoever, whether known or unknown, fixed or contingent, or

arising prior to or subsequent to the commencement of these chapter 11 cases (the "Cases"), and

whether imposed by agreement, understanding, law, equity or otherwise (each of the foregoing

collectively or individually, and including to the extent not already specified above, Successor or

Transferee Liability (as defined in paragraph 21 below), including any and all claims and causes

of action of defamation, libel or slander with respect to any content published by the Debtors

prior to Closing, but excluding the Assumed Liabilities and Permitted Liens, the "Adverse

Interests"), with all such Adverse Interests to attach to the net proceeds of the Sale, in the order

of their priority, with the same validity, force and effect that they now have against the Acquired

Assets, subject with respect to such net proceeds to any rights, claims and defenses the Debtors

or any parties in interest may possess with respect thereto; (iii) authorizing the assumption and

-2-

assignment to Buyer of certain executory contracts and unexpired leases of the Debtors in

accordance with the APA, the Bidding Procedures Order (as defined herein) and this Order; and

(iv) granting other relief; and the Court having entered an order approving the bidding

procedures and granting certain related relief on [●], 2016 [Docket No. [●]] (the "Bidding

Procedures Order"); [and an auction (the "Auction") having been held on [●], 2016 in

accordance with the Bidding Procedures  Order;] and Buyer having been deemed the Successful

Bidder by the Debtor, in consultation with the official committee of unsecured creditors

appointed in the Cases (the "Committee"), pursuant to the Bidding Procedures Order; and the

Court having conducted a hearing on the Motion on [●], 2016 (the "Sale Hearing") at which time

all interested parties were offered an opportunity to be heard with respect to the Motion; and the

Court having reviewed and considered the Motion, declarations and other evidence filed in

support thereof, the APA, the Bidding Procedures Order, the record of the hearing before the

Court on [●], 2016; and having heard statements of counsel and the evidence presented in

support of the relief requested in the Motion at the Sale Hearing; and it appearing that due notice

of the Motion, the APA, the Bidding Procedures Order and the Auction has been provided; and it

appearing that the relief requested in the Motion is in the best interests of the Debtors, their

estates, their stakeholders and all other parties in interest; and it appearing that the Court has

jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in

the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due

deliberation thereon,

**THE COURT HEREBY FINDS AS FOLLOWS:**

57896964_1

### Jurisdiction, Venue, Statutory Bases and Final Order

A.      This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C.

§§ 157 and 1334.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may

enter a final order consistent with Article III of the United States Constitution. Venue of this

proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory and legal predicates for the relief requested in the Motion and

provided for herein are sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy

Rules 1005, 2002, 6004, 6006, 9007, 9014 and 9019.

D.      This Order constitutes a final and appealable order within the meaning of

28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent

necessary under Bankruptcy Rules 9014 and rule 54(b) of the Federal Rules of Civil Procedure,

as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just

reason for delay in the implementation of this Order, and expressly directs entry of judgment as

set forth herein.

### Notice of the Transactions, APA, Sale Hearing, Auction and the Cure Amounts

E.      Actual written notice of the Sale Hearing, the Auction, the Motion and the Sale,

and a reasonable opportunity to object or be heard with respect to the Motion and the relief

requested therein, has been afforded to all known interested entities including to the following

parties: (i) the office of the United States Trustee for the Southern District of New York;

(ii) counsel to the Committee, if any; (iii) parties who are known or reasonably believed to have

asserted any lien, encumbrance, claim or other interest in the Debtors' assets that are the subject

of the proposed sale of the Acquired Assets, if any; (iv) all parties who have filed a notice of

-4-

appearance and request for service of papers in the Cases pursuant to Bankruptcy Rule 2002;

(v) each of the Debtors' current landlords and each counterparty to the Debtors' Non-Residential

Leases and Other Executory Contracts (as defined in the APA); (vi) all applicable state and local

taxing authorities, including the Internal Revenue Service; (vii) each governmental agency that is

an interested party with respect to the sale of the Acquired Assets contemplated by the Stalking

Horse APA and the transactions proposed thereunder; (viii) the Securities and Exchange

Commission; and (ix) counsel to Buyer.

F.      The Debtors published notice of the time and place of the proposed Auction, the

time and place of the Sale Hearing and the time for filing an objection to the relief requested in

the Motion relating to the Sale in the United States edition of the *USA Today* on [●], 2016.

G.      The foregoing notice was good, sufficient and appropriate under the

circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the

APA or the Transactions is required. The disclosures made by the Debtors concerning the APA,

the Auction, the Transactions and the Sale Hearing were good, complete and adequate.

H.      The Debtors have filed and served cure notices (the "Cure Notices") upon all non-

Debtor counterparties to all Non-Residential Leases and Other Executory Contracts notifying

such parties: (i) that the Debtors may seek to assume and assign such Leases and Contracts on

the Closing Date of the Sale as provided in the APA and (ii) of the Debtors' good faith estimates

of the cure amounts required in connection with such Lease or Contract.  The Debtors have also

filed and served an Assumption Notice upon the non-Debtor counterparties to the Contracts

listed on the Closing Designated Contract List, and the Debtors will file and serve, in accordance

with the Post-Closing Assumption and Assignment Procedures set forth herein, Post-Closing

Designation Notices upon the non-Debtor counterparties to the Non-Residential Leases and

57896964_1

Other Executory Contracts that Buyer designates for assumption and assignment.  The service of such notices was good, sufficient and appropriate under the circumstances, and no further notice is required.

### Highest and Best Offer

I.       As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors conducted a marketing process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order.  The Bidding Procedures were non-collusive and substantively and procedurally fair to all parties.  All interested persons and entities have been afforded a full, fair and reasonable opportunity to (i) conduct due diligence investigations, (ii) submit higher or otherwise better bids to purchase the assets of the Debtors and (iii) object and be heard in connection with the Sale Motion and the relief granted by this Order.  [The Auction contemplated by the Bidding Procedures was held on [●], 2016. At the conclusion of the Auction, Buyer was selected by the Debtors, in consultation with the Committee, as the Successful Bidder.] [The Debtors did not receive any Qualified Bids for the Acquired Assets prior to the Bid Deadline. Therefore, no Auction was necessary under the terms of the Bidding Procedures and Buyer was named by the Debtors as the Successful Bidder.]

J.       The Acquired Assets were adequately marketed by the Debtors, the consideration provided by Buyer under the APA constitutes or provides the highest or otherwise best offer and provides fair and reasonable consideration to the Debtors for the sale of all Acquired Assets and the assumption of all Assumed Liabilities, and the performance of the other covenants set forth in the APA will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. Buyer is the Successful Bidder for the Acquired Assets in

57896964_1

accordance with the Bidding Procedures Order. The Debtors' determination that the APA

constitutes the highest and best offer for the Acquired Assets is a valid and sound exercise of the

Debtors' business judgment.  Buyer has complied in all respects with the Bidding Procedures

Order and any other applicable order of this Court in negotiating and entering into the APA. The

Sale and APA likewise comply with the Bidding Procedures Order and all other applicable

orders of this Court.

K.    Approval of the Motion and the APA and the consummation of the Transactions

contemplated thereby is in the best interests of the Debtors, their respective creditors, estates and

other parties in interest and there is substantial risk of deterioration of the value of the Acquired

Assets if the Sale is not consummated quickly. The Debtors have demonstrated good, sufficient

and sound business reasons and justifications for entering into the Transactions and the

performance of their obligations under the APA.

L.    The consummation of the Transactions outside a plan of reorganization pursuant

to the APA neither impermissibly restructures the rights of the Debtors' creditors nor

impermissibly dictates the terms of a chapter 11 plan for the Debtors.

M.    Entry of an order approving the APA and all the provisions thereof is a necessary

condition precedent to Buyer's consummation of the Transactions.

**Arms' Length Sale**

N.    The APA and the Transactions contemplated thereunder were proposed,

negotiated and entered into by and between the Debtors, on the one hand, and Buyer, on the

other hand, without collusion or fraud of any kind, in good faith and at arm's length.  There has

been no showing that the Debtors or Buyer have engaged in any action or inaction that would

cause or permit the APA or the Transactions to be avoided or impose any costs or damages under

-7-

57896964_1

section 363(n) of the Bankruptcy Code.  Specifically, Buyer has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among the bidders. In addition, none of Buyer or its respective affiliates, present or contemplated members, officers, directors, partners, shareholders or any of their respective heirs, successors and assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

### Good Faith of Buyer

O.    Buyer is entering into the Transactions in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and the court decisions thereunder, and is therefore entitled to the full protection of that provision with respect to all aspects of the transactions contemplated by the APA, including the acquisition of the Acquired Assets, and otherwise has proceeded in good faith in all respects in connection with this proceeding.

P.    In accordance with section 365 of the Bankruptcy Code, including sections 365(b)(1) and 365(f)(2) of Bankruptcy Code, the Debtors have shown that Buyer has the wherewithal, financial and otherwise, to perform all of its obligations under the APA.

### No Fraudulent Transfer

Q.    The consideration provided by Buyer pursuant to the APA for its purchase of the Acquired Assets, the assumption of the Assumed Liabilities and the performance of the covenants contained in the APA constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, and under the laws of the United States, any state, territory, possession thereof or the District of Columbia.

-8-

57896964_1

R.      There has been no showing that any of the Debtors or Buyer (i) has entered into the APA or proposes to consummate the Transactions for the purpose of hindering, delaying or defrauding the Debtors' present or future creditors or (ii) is entering into the APA or proposing to consummate the Transactions fraudulently, for the purpose of statutory or common law fraudulent conveyance and fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

S.      By virtue of the consummation of the Transactions contemplated by the APA, (i) Buyer is not a continuation of the Debtors or their respective estates, there is no continuity between Buyer and the Debtors, there is no common identity between the Debtors and Buyer, there is no continuity of enterprise between the Debtors and Buyer, Buyer is not a mere continuation of the Debtors or their estates, and Buyer does not constitute a successor to the Debtors or their estates, (ii) Buyer is not holding itself out to the public as a continuation of the Debtors or their respective estates and (iii) the Transactions do not amount to a consolidation, merger or *de facto* merger of Buyer and the Debtors and/or the Debtors' estates.

## Validity of Transfer

T.      Each Debtor's Board of Directors or equivalent and Buyer have authorized the execution and delivery of the APA, the sale of all Acquired Assets to Buyer and the assumption of all Assumed Liabilities by Buyer. The Debtors and Buyer (i) have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, as applicable, (ii) have all of the power and authority necessary to consummate the Transactions and (iii) have taken all action necessary to authorize and approve the APA and to consummate

the Transactions, and no further consents or approvals are required for the Debtors or Buyer to consummate the Transactions contemplated by the APA, except as otherwise set forth therein.

U.    Other than the Assumed Liabilities, Buyer shall have no obligations with respect to any Liabilities of the Debtors or any Adverse Interests against any of the Debtors or their property, including the liabilities of the Debtors specifically excluded under the APA (the "Excluded Liabilities"), and Buyer and its successors and assigns are released from any and all claims, causes of action, obligations, liabilities, demands, damages, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the Acquired Assets, except for liabilities and obligations arising expressly under, or expressly assumed by Buyer under, the APA.

V.    The consummation of the Sale and Transactions is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), 363(n), 365(b)(1) and 365(f)(2) of the Bankruptcy Code, and with respect to the Designated Contracts (as defined herein), all of the applicable requirements of such sections have been or will be complied with in respect of the Transactions as of the effective date of assignment.

W.    The Acquired Assets constitute property of the Debtors' estates and title thereto is presently vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. The sale of the Acquired Assets to Buyer will be, as of the Closing Date or such later date as such Acquired Assets are transferred under the APA, a legal, valid and effective transfer of such assets, and each such transfer and assignment vests or will vest Buyer with all right, title and interest of the Debtors to the Acquired Assets free and clear of all Adverse Interests.

57896964_1

**Section 363 Is Satisfied**

X.      Entry into the APA and consummation of the Transactions contemplated thereby

constitute the exercise of the Debtors' sound business judgment consistent with their fiduciary

duties and such acts are in the best interests of the Debtors, their respective creditors, their estates

and other parties in interest.  The Debtors have demonstrated both (i) good, sufficient and sound

business reasons and justifications and (ii) compelling circumstances for the sale of the Acquired

Assets to Buyer pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a

plan of reorganization.  Such business reasons include the facts that (i) there is substantial risk of

deterioration of the value of the Acquired Assets if the Transactions are not consummated

quickly; (ii) the APA constitutes the highest and best offer for the Acquired Assets; (iii) the APA

and the consummation of the Transactions contemplated thereby present the best opportunity to

realize the value of the Acquired Assets and avoid decline and devaluation of the Acquired

Assets; and (iv) unless the sale of the Acquired Assets is consummated expeditiously as provided

for in the Motion and pursuant to the APA, creditors' recoveries may be diminished.

Y.      The Debtors may sell and assign the Acquired Assets free and clear of all Adverse

Interests, and the Transactions will not subject Buyer or any of Buyer's assets to any liability for

any Adverse Interests whatsoever (including, without limitation, under any theory of equitable

law, antitrust, or successor or transferee liability), because, with respect to each creditor asserting

an Adverse Interest, one or more of the standards set forth in sections 363(f)(1)-(5) of the

Bankruptcy Code has been satisfied.  Those holders of Adverse Interests who did not object or

who withdrew their objections to the Sale, the Transactions or the Cure Notices are deemed to

have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of

Adverse Interests are adequately protected—thus satisfying section 363(e) of the Bankruptcy

57896964_1

Code—by having their Adverse Interests, if any, attach to the proceeds of the Sale, in the same

order of priority and with the same validity, force and effect that such Adverse Interest holder

had before the Sale, subject to any rights, claims and defenses of the Debtors or their estates, as

applicable, or as otherwise provided herein.

Z.    Buyer would not have entered into the APA and would not consummate the sale

of all Acquired Assets, thus adversely affecting the Debtors, their estates, creditors, employees

and other parties in interest, if the sale of the Acquired Assets was not free and clear of all

Adverse Interests or if Buyer would be liable for any Adverse Interests, including and as

applicable, any Excluded Liabilities.

AA.    A sale of the Acquired Assets other than one free and clear of all Adverse

Interests would adversely impact the Debtors' estates, and would yield substantially less value

for the Debtors' estates, with less certainty than the Sale. Therefore, the Sale contemplated by the

APA is in the best interests of the Debtors, their estates, creditors and all other parties in interest.

## Assumption of the APA

BB.    The Debtors' assumption of the APA is in the best interest of the Debtors, their

respective estates, creditors and other parties in interest, and represents the reasonable exercise of

sound and prudent business judgment by the Debtors.  The Debtors have met all requirements of

section 365(b) of the Bankruptcy Code to assume the APA.  The Debtors have provided adequate

assurance of future performance under the APA within the meaning of section 365(b)(1)(C) of

the Bankruptcy Code.  No default exists in the Debtors' performance under the APA as of the

date of this Order.

-12-

57896964_1

**Assumption and Assignment of the Designated Contracts**

CC.   The assumption and assignment of the Designated Contracts pursuant to the terms of the Bidding Procedures Order, this Order and the APA are integral to the APA, are in the best interests of the Debtors and their respective estates, creditors and other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Debtors.

DD.   The Debtors have met all requirements of section 365(b) of the Bankruptcy Code for each of the Designated Contracts. The Debtors and/or Buyer, as applicable under the APA, have (i) cured and/or provided adequate assurance of cure of any default existing prior to the date of the Closing under all of the Designated Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default existing prior to the date of the Closing under any of the Designated Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. The assumption and assignment to Buyer of each of the Designated Contracts shall be free and clear of all Adverse Interests against Buyer.

EE.   Buyer has provided adequate assurance of its future performance under the relevant Designated Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. Pursuant to section 365(f) of the Bankruptcy Code, the Designated Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, Buyer, notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

FF.   No default exists in the Debtors' performance under the Designated Contracts as of the date of the Closing other than the failure to pay Cure Amounts or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

-13-

57896964_1

### Compelling Circumstances for an Immediate Sale

GG.     Time is of the essence. To maximize the value of the Debtors' assets, it is critical

that the Transactions close within the time constraints set forth in the APA.  Accordingly, there is

cause to waive the stays contemplated by Bankruptcy Rules 4001, 6004, and 6006.

HH.     The Debtors have demonstrated both (a) good, sufficient and sound business

purposes and justifications and (b) compelling circumstances for the Sale other than in the

ordinary course of business, before, and outside of a plan of reorganization in that, among other

things, the immediate implementation of this Order and the consummation of the Sale are

necessary both to preserve and maximize the value of the Debtors' assets for the benefit of the

Debtors, their estates, their creditors and all other parties in interest in the Cases, and to provide

the means for the Debtors to maximize creditor recoveries.

II.     The transactions contemplated by the Purchase Agreement and this Order neither

impermissibly restructure the rights of any Debtor's creditors or equity holders nor

impermissibly dictate the terms of a chapter 11 plan for any Debtor, and therefore, do not

constitute a *sub rosa* chapter 11 plan.

JJ.     Nothing in the APA creates any third party beneficiary rights in any person or

entity not a party to the APA.

### NOW THEREFORE, ITS IS HEREBY ORDERED THAT:

### General Provisions

1.     The Motion is granted and approved to the extent set forth herein.

2.     All objections to the Motion or the relief requested therein that have not been

withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation

filed with the Court or as resolved in this Order, and all reservations of rights included therein,

-14-

are hereby overruled on the merits with prejudice. All persons and entities given notice of the

Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

3.      Findings of fact and conclusions of law in the Bidding Procedures Order,

including the record of the Bidding Procedures hearing held on July 7, 2016, are incorporated

herein by reference.

4.      Where appropriate herein, findings of fact shall be deemed conclusions of law and

conclusions of law shall be deemed findings of fact.

### Approval and Assumption of the APA

5.      The APA and all of the Transactions contemplated therein are approved.  The

APA is hereby assumed by the Debtors in accordance with section 365 of the Bankruptcy Code.

The failure specifically to include any particular provision of the APA in this Order shall not

diminish or impair the effectiveness of such provision, it being the intent of the Court that the

APA be authorized, approved and assumed in its entirety, with such amendments thereto as may

be made by the parties in accordance with this Order.

6.      The Debtors are authorized to (i) take any and all actions necessary or appropriate

to execute and deliver, perform under, consummate, implement and effectuate the APA

(including, for the avoidance of doubt, the agreements with respect to the Escrow Account set

forth in the APA), together with any and all instruments and documents that may be reasonably

necessary or desirable to fully close the Transactions, including the sale to Buyer of all Acquired

Assets, in accordance with the terms and conditions set forth in the APA and this Order, and to

implement and effectuate the terms of the APA and this Order; (ii) take any and all actions as

may be necessary or appropriate to the performance of the Debtors' obligations as contemplated

-15-

by the APA and this Order, without any further corporate action or order of this Court; and (iii)

assume and assign any and all Designated Contracts as and when provided in the APA.

7.      Buyer has no obligation to proceed with the Closing unless and until all

conditions precedent to its obligations to do so, as set forth in the APA , have been met, satisfied

or waived in accordance with the terms of the APA.

8.      The Debtors are hereby authorized and directed, after consultation with the

Committee, to instruct the Escrow Agent to (i) hold the Deposit in accordance with the APA and

(ii) release and deliver the Deposit pursuant to the terms of the APA.

9.      All persons and entities are prohibited and enjoined from taking any action that

would adversely affect or interfere with, or which would be inconsistent with, the ability of the

Debtors to transfer the Acquired Assets to Buyer in accordance with the APA and this Order.

All amounts, if any, to be paid by the Debtors to Buyer pursuant to the APA, including any

allowed claims for breach thereof, shall (i) constitute allowed administrative expenses of the

estates pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, (ii) be protected as

provided in the APA and the Bidding Procedures Order, (iii) not be altered, amended, discharged

or affected by any plan proposed or confirmed in the Cases without the prior written consent of

Buyer and (iv) be due and payable if and when any of the Debtors' obligations arise under the

APA without further order of the Court.

10.     At the Closing, the Debtors will be authorized to fully perform under,

consummate and implement the terms of the APA together with any and all additional

instruments and documents that may be reasonably necessary or desirable to implement and

effectuate the terms of the APA, this Order and the Transactions.

57896964_1

11.      Nothing contained in (a) any chapter 11 plan confirmed in these Cases, (b) any order confirming any such chapter 11 plan, or (c) any order of any type or kind in these Cases, any subsequent chapter 7 cases in which these Cases may be converted or any related proceedings subsequent to the entry of this Sale Order shall conflict with or derogate from the provisions of the APA (or any agreement contemplated thereby) or this Order, and to the extent of any conflict or derogation between this Order or the APA (or any agreement contemplated thereby) and such future plan or order, the terms of this Order and the APA (any agreement contemplated thereby)  shall control.

12.      Each and every federal, state and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transactions, including all agreements entered into in connection therewith, and this Order.

13.      To the extent available under applicable law, Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Acquired Assets and the Non-Residential Leases and Other Executory Contracts, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are transferred to Buyer as of the Closing Date.

14.      To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred or conveyed to Buyer on account of the filing or pendency of the Cases.

57896964_1

**Sale and Transfer Free and Clear of Adverse Interests**

15.     Upon Closing (or thereafter as of the filing of a Post-Closing Designation Notice

with respect to any Designated Contract, subject to the Post-Closing Assumption and

Assignment Procedures[3] described herein), all of the Debtors' right, title and interest in and to,

and possession of, the Acquired Assets shall be immediately vested in Buyer pursuant to sections

105(a), 363(b), 363(f) and 365 of the Bankruptcy Code free and clear of any and all Adverse

Interests, with all such Adverse Interests to attach to the net proceeds of the Sale, in the order of

their priority, with the same validity, force and effect that they now have against the Acquired

Assets, subject with respect to such net proceeds to any rights, claims and defenses the Debtors

or any parties in interest may possess with respect thereto. Such transfer shall constitute a legal,

valid, binding and effective transfer of such Acquired Assets. All persons or entities, presently or

on or after the Closing, in possession of some or all of the Acquired Assets shall surrender

possession of the Acquired Assets to Buyer or its respective designees.

16.     This Order (i) shall be effective as a determination that, as of the Closing no

Adverse Interests other than Assumed Liabilities will be assertable against Buyer or any of its

respective assets (including the Acquired Assets), (ii) shall be effective as a determination that,

as of the Closing (or thereafter as of the filing of a Post-Closing Designation Notice for any

Designated Contract, subject to the Post-Closing Assumption and Assignment Procedures

described herein)  (a) the Acquired Assets shall have been transferred to Buyer free and clear of

all Adverse Interests and (b) the conveyances described herein have been effected, and (iii) is

and shall be binding upon entities, including all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents,

---

[3]     The "***Post-Closing Assumption and Assignment Procedures***" shall mean those procedures for assumption and
assignment of Non-Residential Leases and Other Executory Contracts described in Paragraphs 36–40 of this
Order.

57896964_1

trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Transactions.

17.    Other than the Assumed Liabilities, Buyer shall have no obligations with respect to any Adverse Interests of the Debtors, including the Excluded Liabilities, and Buyer and its affiliates, successors and assigns are released from any and all Adverse Interests arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the ownership, sale or operation of the Acquired Assets and the business of the Debtors prior to the Closing or the transfer of Acquired Assets to Buyer, except for the Assumed Liabilities expressly assumed under the APA. The holders of claims related to the Assumed Liabilities shall have the right to seek payment directly from Buyer on account of the Assumed Liabilities; *provided*, *however*, that Buyer reserves any and all rights, defenses or objections with regard to such Assumed Liabilities, including, but not limited to, Buyer's rights under the APA.

18.    Other than in the Ordinary Course of Business, the Debtors shall not consent or agree to the allowance of any claim to the extent it would constitute an Assumed Liability without the prior written consent of Buyer.  Buyer shall have standing in the Cases to object to the validity, amount, or priority of any claim against the Debtors to the extent it would otherwise constitute an Assumed Liability, and the Court will retain the right to hear and determine such objections.

57896964_1

19.    Except with respect to the Assumed Liabilities, all persons and entities (and their

respective successors and assigns), including all debt security holders, equity security holders,

affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees,

trade creditors, litigation claimants and other creditors holding Adverse Interests arising under or

out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the

ownership, sale or operation of the Acquired Assets and the business prior to the Closing or the

transfer of Acquired Assets to Buyer (whether prior to the Closing or thereafter as of the filing of

a Post-Closing Designation Notice for any Designated Contract, subject to the Post-Closing

Assumption and Assignment Procedures described herein), are hereby forever barred, estopped

and permanently enjoined from asserting such Adverse Interests against Buyer, its property or

the Acquired Assets.  Following the Closing (or thereafter as of the filing of a Post-Closing

Designation Notice for any Designated Contract, subject to the Post-Closing Assumption and

Assignment Procedures described herein), no holder of any Adverse Interest shall interfere with

Buyer's title to or use and enjoyment of the Acquired Assets based on or related to any such

Adverse Interest, or based on any action the Debtors may take in the Cases.

20.    If any person or entity that has filed financing statements, mortgages, mechanic's

liens, *lis pendens* or other documents or agreements evidencing Adverse Interests against or in

the Acquired Assets shall not have delivered to the Debtors prior to the Closing of the

Transactions in proper form for filing and executed by the appropriate parties, termination

statements, instruments of satisfaction or releases of all Adverse Interests that the person or

entity has with respect to such Acquired Assets, then only with regard to the Acquired Assets

that are purchased by Buyer pursuant to the APA and this Order, (i) the Debtors are hereby

authorized to execute and file such statements, instruments, releases and other documents on

57896964_1

behalf of the person or entity with respect to the Acquired Assets, and (ii) Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Adverse Interests against Buyer and the applicable Acquired Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office. For the avoidance of doubt, only Acquired Assets that are part of the estates of the Debtors are being sold to Buyer free and clear of Adverse Interests pursuant to section 363(f) of the Bankruptcy Code.

## No Successor or Transferee Liability

21.    Buyer shall not be deemed, as a result of any action taken in connection with the APA, the consummation of the Transactions, the transfer, operation or use of the Acquired Assets or the employment of the Selected Employees or Transferred Employees to (i) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for Buyer, with respect to any obligations arising after the Closing as an assignee under Assumed Contracts); (ii) have, *de facto* or otherwise, merged with or into the Debtors; or (iii) be an alter ego or a mere continuation or substantial continuation or successor in any respect of the Debtors, including within the meaning of any foreign, federal, state or local revenue, pension, Employee Retirement Income Security Act of 1974 ("ERISA"), tax, labor, employment, environmental or other law, rule or regulation (including filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

-21-

22.     Except as expressly provided in the APA with respect to Assumed Liabilities, Buyer shall have no liability whatsoever with respect to the Debtors' (or their predecessors or affiliates) respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as described below, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of labor law, employment law, ERISA and benefits law, antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on account of any settlement or injunction, or any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets or the Business prior to the Closing or such later time as Buyer is assigned and assumes any Assumed Contract. Except to the extent expressly included in the Assumed Liabilities or otherwise provided for in the APA with respect to WARN liabilities, Buyer shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 2101 et seq.) or the Comprehensive Environmental Response Compensation and Liability Act or any foreign, federal, state or local labor, employment or environmental law whether of similar import or otherwise by virtue of Buyer's purchase of the Acquired Assets or assumption of the Assumed Liabilities.

23.     Buyer has given substantial consideration under the APA for the benefit of the holders of any Adverse Interest. The consideration given by Buyer shall constitute valid and valuable consideration for the releases of any potential claims of Successor or Transferee

57896964_1

Liability of Buyer, which releases shall be deemed to have been given in favor of Buyer by all holders of any Adverse Interests.

24.    Except as expressly provided in the APA with respect to the Assumed Liabilities, nothing in this Order or the APA shall require Buyer to (i) continue or maintain in effect, or assume any liability in respect of any employee, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtors are a party or have any responsibility therefor including medical, welfare and pension benefits payable after retirement or other termination of employment, or (ii) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

25.    Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against Buyer, or its assets (including the Acquired Assets), or its successors and assigns, with respect to any (i) Adverse Interest or (ii) Successor or Transferee Liability including the following actions with respect to clauses (i) and (ii): (a) commencing or continuing any action or other proceeding pending or threatened; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any Adverse Interest; (d) asserting any setoff, right of subrogation or recoupment of any kind; (e) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (f) revoking, terminating or failing or refusing to

57896964_1

renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such assets.

## Good Faith of Buyer

26.    The Transactions contemplated by the APA are undertaken by Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Transactions (including the assumption and assignment of the Designated Contracts), unless such authorization and consummation of the Sale are duly and properly stayed pending such appeal.

27.    Buyer is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code.  There has been no showing that the Debtors or Buyer engaged in any action or inaction that would cause or permit the Transactions to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.

28.    The consideration provided by Buyer for the Acquired Assets under the APA is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

## Assumption and Assignment of Designated Contracts

29.    Before the Sale Hearing, in accordance with and pursuant to Section 2.7 of the APA, Buyer provided to the Debtors a Closing Designated Contract List designating certain Non-Residential Leases and Other Executory Contracts for assumption by the Debtors and assignment to Buyer.  Buyer filed an Assumption Notice with respect to the Contracts listed on the Closing Designated Contract List and such notice was good, sufficient and appropriate under the circumstances, and no further notice of the Closing Designated Contract List is required.  Up

-24-

to three (3) Business Days prior to the Closing Date, Buyer may exclude or remove from the Closing Designated Contract List any Non-Residential Lease or Other Executory Contract. On or before the Closing Date, Buyer shall provide to the Debtors, and the Debtors shall file with the Court, the final Closing Designated Contract List, and the Debtors shall serve notice of such list by first class mail on all non-Debtor counterparties to the Non-Residential Leases and Other Executory Contracts included on the final Closing Designated Contract List.

30.    Pursuant to Section 2.7 of the APA, from and after the Closing Date through the Designation Deadline,[4] Buyer shall provide written notice to the Debtors (and the Debtors shall provide such notice to the affected counterparties within three (3) Business Days of receipt of such notice from Buyer) designating certain Non-Residential Leases and Other Executory Contracts for assumption by the Debtors and assignment to Buyer (such Leases and Contracts together with the Non-Residential Leases and Other Executory Contracts included on the final Closing Designated Contract List, the "Designated Contracts").

31.    The Debtors are authorized at the Closing (or thereafter as of the filing of a Post-Closing Designation Notice for any Designated Contract) to assume and assign each of the Designated Contracts in accordance with the APA and this Order to Buyer free and clear of all Adverse Interests pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code and to execute and deliver to Buyer such documents or other instruments as may be necessary to assign and transfer the Designated Contracts to Buyer. The payment of the applicable Cure Amounts by Buyer shall (i) effect a cure of all defaults existing thereunder as of the Closing (or thereafter for any Designated Contract that is assumed and assigned post-Closing, subject to the Post-Closing

---

[4]    Designation Deadline is defined in the APA to mean 5:00 p.m. (prevailing Eastern time) on the date that is thirty (30) days from the Closing Date (or such longer period as may be agreed between Buyer and the counterparty of the applicable Contract).

-25-

Assumption and Assignment Procedures described herein), (ii) compensate for any actual

pecuniary loss to such non-Debtor counterparty resulting from such default and (iii) together

with the assumption of the Designated Contracts by the Debtors and the assignment of such

Designated Contracts to Buyer, constitute adequate assurance of future performance thereof.  For

purposes of this Order, "Cure Amounts" shall mean the applicable Cure Amounts set forth on

**Exhibit 3** attached hereto, or such other Cure Amounts as agreed, in writing, by the Debtors,

Buyer and the counterparty to the applicable Designated Contract.  Subject to the Post-Closing

Assumption and Assignment Procedures described herein for any Designated Contract that is

assumed and assigned post-Closing, the counterparties to the Designated Contracts are forever

bound by the applicable Cure Amounts and, upon payment of such Cure Amounts as provided

for herein, are hereby enjoined from taking any action against Buyer or the Acquired Assets with

respect to any claim for cure under the applicable Designated Contracts.

32.    Any provisions in any Designated Contract (including any Designated Contract

that becomes such post-Closing subject to the Post-Closing Assumption and Assignment

Procedures described herein) that prohibit or condition the assignment of such Designated

Contract or allow the counterparty to such Designated Contract to terminate, recapture, impose

any penalty, condition on renewal or extension or modify any term or condition upon the

assignment of such Designated Contract, constitute unenforceable anti-assignment provisions

that are void and of no force and effect with respect to the Debtors' assumption and assignment

of such Designated Contracts in accordance with the APA but will be effective and binding upon

Buyer with respect to any purported assignment for the remaining term of such Designated

Contract.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy

Code for the assumption by the Debtors and assignment to Buyer of the Designated Contracts

57896964_1

have been satisfied.  Upon the Closing or such later time as is provided in the APA with respect

to the assumption and assignment of any Designated Contract, in accordance with sections 363

and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested with all right, title

and interest of the Debtors under the Designated Contracts, and such Designated Contracts shall

remain in full force and effect for the benefit of Buyer.

33.     Each non-Debtor counterparty to the Designated Contracts shall be forever

barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Buyer or

their respective property any assignment fee, acceleration, default, breach or claim or pecuniary

loss, or condition to assignment existing, arising or accruing as of the Closing (or thereafter as of

the filing of a Post-Closing Designation Notice for those that arise post-Closing and are not

barred by this Order with respect to any Designated Contract that is assumed and assigned post-

Closing) or arising by reason of the Closing or the transfer of the Acquired Assets, including any

breach related to or arising out of change-in-control in such Designated Contracts, or any

purported written or oral modification to the Designated Contracts and (ii) asserting against

Buyer (or its property, including the Acquired Assets) any claim, counterclaim, breach, or

condition asserted or assertable against the Debtors existing as of the Closing (or thereafter as of

the filing of a Post-Closing Designation Notice for those that arise post-Closing and are not

barred by this Order with respect to any Designated Contract that is assumed and assigned post-

Closing) or arising by reason of the transfer of the Acquired Assets, except for the Assumed

Liabilities.  In addition, without relieving Buyer of its obligations under the APA, nothing in the

Order, the Motion or the APA shall affect the Debtors' obligations under section 365(d)(3) of the

Bankruptcy Code (or Buyer's assumption thereof) prior to the assumption and assignment or

rejection of any Designated Contracts.

57896964_1

34.     Upon the Closing (or thereafter as of the filing of a Post-Closing Designation Notice for any Designated Contract), Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Designated Contracts and shall pay all outstanding undisputed Cure Amounts with respect thereto, and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Designated Contracts from and after such assignment. There shall be no assignment fees, increases or any other fees charged to Buyer or the Debtors as a result of the assumption and assignment of the Designated Contracts.

35.     Buyer has provided adequate assurance of future performance under the Designated Contracts (including any Designated Contract that becomes such post-Closing) within the meaning of sections 365(b)(1)(c), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

**Post-Closing Assumption and Assignment Procedures**

36.     In the case of any Non-Residential Leases and Other Executory Contracts that the Debtors seek to assume and assign from and after the Closing Date pursuant to Section 2.7 of the APA, within three (3) Business Days following receipt of a notification by Buyer that a Non-Residential Lease or Other Executory Contract is designated for assumption and assignment, the Debtors shall file with the Court a Post-Closing Designation Notice of the Debtors' proposed assumption and assignment of such Non-Residential Lease or Other Executory Contract, substantially in the form attached hereto as **Exhibit 2**.  The assumption and assignment of each such Non-Residential Lease or Other Executory Contract shall be effective as of the date of the filing of the applicable Post-Closing Designation Notice without any further order of the Court, with objections to the applicable cure amount, if any, to be resolved thereafter as set forth below.

57896964_1

37.     The Debtors will serve such Post-Closing Designation Notice via first class mail on each of the following parties (the "Post-Closing Designation Notice Parties"): (i) each counterparty to any Non-Residential Lease or Other Executory Contract (and their counsel, if known) to be assumed or assigned by the Debtors, (ii) the Office of the United States Trustee, (iii) counsel to the Committee, if any, and (iv) counsel to Buyer.

38.     The Post-Closing Designation Notice will set forth the following information, to the best of the Debtors' knowledge: (i) a description of the Non-Residential Lease or Other Executory Contract that the Debtors are assuming and assigning, (ii) the name and address of the affected counterparties (and their counsel, if known), (iii) a description of the deadlines and procedures for filing objections to the Post-Closing Designation Notice (as set forth below), and (iv) the proposed cure amounts that arise solely following the Closing and have not otherwise been paid in the ordinary course.

39.     A party in interest may object to a Post-Closing Designation Notice solely with respect to the cure amount contained therein and only to the extent such objection could not have been raised prior to the Closing.  Any such objection must be in writing and filed and served so that such objection is filed with this Court and actually received by the Debtors and the Post-Closing Designation Notice Parties no later than ten (10) Business Days after the date the Debtors served the applicable Post-Closing Designation Notice.

40.     If no timely permitted objection is filed and served with respect to the Post-Closing Designation Notice, any non-Debtor party to such Non-Residential Lease or Other Executory Contract shall be deemed to have consented to the cure amount set forth in such Post-Closing Designation Notice.  If a timely permitted objection is properly filed and served on the Post-Closing Designation Notice Parties in the manner specified above, unless the parties agree

-29-

otherwise in writing, a hearing will be scheduled to consider that objection.  For the avoidance of

doubt, any Non-Residential Lease or Other Executory Contract set forth in a Post-Closing

Designation Notice that is the subject of a timely permitted objection shall be deemed assumed

and assigned prior to resolution of such objection (*i.e.*, as of the date of the filing of the

applicable Post-Closing Designation Notice).

## The Sale Does Not Require the Appointment of a Consumer Privacy Ombudsman

41.     Buyer shall be subject to reasonable restrictions by the Debtors in order to comply

with the Debtors' privacy policy, which broadly provides that, if the Debtors or any portion of

their assets are acquired, the Debtors may share all types of information with the acquiring

company.  As the Debtors' privacy policy does not prohibit the transfer of personally identifiable

information, appointment of a consumer privacy ombudsman is not required.

## Other Provisions

42.     Effective upon the Closing, the Debtors, on behalf of themselves and their

respective past, present and future subsidiaries, parents, divisions, affiliates, agents,

representatives, insurers, attorneys, successors and assigns (collectively, the "Debtor Releasing

Parties"), hereby release, remise, acquit and forever discharge Buyer and its past, present and

future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys,

successors and assigns, and each of its and their respective directors, managers, officers,

employees, shareholders, members, agents, representatives, attorneys, contractors,

subcontractors, independent contractors, owners, insurance companies and partners (except, in

each case, the Debtor Releasing Parties) (collectively, in their capacities as parties being released

pursuant to this Paragraph 42, the "Buyer Released Parties"), from any and all claims, contracts,

demands, causes of action, disputes, controversies, suits, cross-claims, torts, losses, attorneys'

57896964_1

fees and expenses, obligations, agreements, covenants, damages, liabilities, costs and expenses, whether known or unknown, whether anticipated or unanticipated, whether claimed or suspected, whether fixed or contingent, whether yet accrued or not, whether damage has resulted or not, whether at law or in equity, whether arising out of agreement or imposed by statute or common law of any kind, nature, or description, including, without limitation as to any of the foregoing, any claim by way of indemnity or contribution, which any Debtor Releasing Party has, may have had or may hereafter assert against any Buyer Released Party arising from or related in any way, either directly or indirectly, to the negotiation, documentation, performance or consummation of the APA, any Related Agreements or any other agreements entered into in connection with the transactions contemplated thereby; *provided*, *however*, that the foregoing release shall not apply to the Debtors' rights or Buyer's obligations under this Order or the APA (including Section 6.9 of the APA), any Related Agreements and/or any other agreements entered into in connection with the transactions contemplated hereby or thereby.

43.    Subject to the terms of the APA, the APA and any related agreements may be waived, modified, amended or supplemented by agreement of the Debtors and Buyer, in consultation with counsel to the Committee, without further action or order of the Bankruptcy Court if it does not have a material adverse effect on the Debtors' estates.  Any material modification, waiver, amendment or supplement to the APA must be approved by order of the Bankruptcy Court.

44.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of this Court, to allow Buyer to deliver any notice provided for in the APA and allow Buyer to take any and all actions permitted or required under the APA in accordance with the terms and conditions

-31-

57896964_1

thereof. Buyer shall not be required to seek or obtain any further relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other sale-related document.

45.     All persons, all Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Adverse Interests, based upon or arising out of the Excluded Liabilities are hereby barred and estopped from taking any action against Buyer or the Acquired Assets to recover property on account of any Adverse Interests or on account of any Liabilities of the Debtors other than Assumed Liabilities pursuant to the APA. All persons holding or asserting any Adverse Interests with respect to the Excluded Assets are hereby enjoined from asserting or prosecuting such Adverse Interests against Buyer or the Acquired Assets for any Liability whatsoever associated with the Excluded Assets.

46.     The provisions of this Order authorizing the sale and assignment of the Acquired Assets free and clear of all Adverse Interests shall be self-executing, and neither the Debtors nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

47.     Neither the Debtors nor any of their Affiliates shall use, license or permit any third party to use, any name, slogan, logo or trademark which is confusingly or deceptively similar to any of the names, trademarks or service marks included in the Intellectual Property included in the Acquired Assets, and each Debtor is directed to change its corporate name to a name which (i) does not use the name ["Gawker", "Gizmodo", "Kotaku", "Jalopnik", "LifeHacker", "Deadspin", "Jezebel"] or any other name that references or reflects any of the

foregoing in any manner whatsoever, (ii) is otherwise substantially dissimilar to its present name and (iii) is approved in writing by Buyer.

48.     Any allocation to be performed pursuant to the terms of Section 2.10 of the APA shall be for tax purposes only and shall not be binding on the Debtors in any other way, and the rights of all parties in interest, including the Committee, with respect to the allocation of the purchase price as between the Sellers are hereby preserved.

49.     Within one (1) Business Day of the occurrence of the Closing of the Sale, the Debtors shall file and serve a notice of same, substantially in the form attached hereto as **Exhibit 2** (the "Notice of Sale Closing and Effective Date of Amendment of Case Caption") and upon the filing of such notice, the Debtors' case caption shall be amended as follows:

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| [[●] Liquidating, LLC], *et al.* | ) | Case No. 16-11700 (SMB) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

1       The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: [●] (f/k/a Gawker Media Group, Inc.) ([●]); [●] (f/k/a Gawker Media LLC) ([●]); [●] (f/k/a Kinja Kft.) ([●]).  The Debtors' executive headquarters are located at [●].

50.     Upon the filing of the Notice of Sale Closing and Effective Date of Amendment of Case Caption, the Clerk of the Court is authorized and directed to make a docket entry in case numbers 16-11700, 16-11718, and 16-11719 consistent with Paragraph 48 of this Order.

51.     The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in

57896964_1

connection therewith to which the Debtors are a party or which has been assigned by the Debtors

to Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way

to the sale. This Court retains jurisdiction to compel delivery of the Acquired Assets, to protect

Buyer and its assets, including the Acquired Assets, against any Adverse Interests and Successor

or Transferee Liability and to enter orders, as appropriate, pursuant to sections 105, 363 or 365

(or other applicable provisions) of the Bankruptcy Code necessary to transfer the Acquired

Assets and the Designated Contracts to Buyer. This Court retains jurisdiction to adjudicate

disputes between Buyer and holders of claims related to the Assumed Liabilities regarding the

Assumed Liabilities.

52.    The Transactions contemplated hereunder shall not be affected by any bulk sales

laws.

53.    Buyer has standing to seek to enforce the terms of this Order.

54.    The Debtors are authorized to take all actions necessary or appropriate to

effectuate the relief granted pursuant to this Order.

55.    Notwithstanding the possible applicability of Bankruptcy Rules 4001(a)(3),

6004(h), 6006(d), 7062 and 9014 or otherwise, this Order shall not be stayed, the terms and

conditions of this Order shall be effective immediately upon entry and the Debtors and Buyer are

authorized to close the Sale immediately upon entry of this Order.  Time is of the essence in

closing the Sale, and the Debtors and Buyer intend to close the Sale as soon as practicable.  This

Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Any

party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay,

or risk its appeal being dismissed as moot.

56.    The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

57896964_1

57.     The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

58.     All time periods set forth in this Order shall be calculated in accordance with

Bankruptcy Rule 9006(a).

59.     To the extent there are any inconsistencies between the terms of the Bidding

Procedures Order, this Order and the APA, the terms of this Order shall control.


Dated: _____, 2016
          New York, New York

_____
STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

57896964_1

**<u>Exhibit F</u>**

**Blackline of Revised Proposed Sale Order to Initial Proposed Sale order**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| Gawker Media LLC, *et al.*,[1] | Case No. 16-11700 (SMB) |
| Debtors. | (Joint Administration Requested) |
|  | **Re: Docket No. [●]** |

### ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES, (II) APPROVING AND AUTHORIZING THE DEBTORS' ASSUMPTION OF THE ASSET PURCHASE AGREEMENT AND (III) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Upon the motion (the "Motion") of Gawker Media LLC, Gawker Media Group, Inc., and Kinja Kft., the debtors and debtors in possession (collectively, the "Debtors"), for the entry of an order, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and rules 1005, 2002, 6004, 6006, 9007, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving and authorizing the Debtors' assumption of the Asset Purchase Agreement by and between the Debtors and ZDGM, LLC (together with its permitted designees, successors and permitted assigns in accordance with the APA, the "Buyer"), dated June 10, 2016 (substantially in the form attached hereto as **Exhibit 1**, and as may be amended, modified or supplemented from

---

[1]  The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media and GMGI are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja's offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

57896964_1

time to time in accordance with the terms thereof, the "APA"),[2] whereby the Debtors have

agreed to sell, and Buyer has agreed to acquire, substantially all of the Debtors' assets

(collectively, and as specifically set forth and defined in the APA, the "Acquired Assets") other

than the Excluded Assets, and the Debtors have agreed to transfer and Buyer has agreed to

assume certain of the Debtors' liabilities (collectively, and as specifically set forth and defined

in the APA, the "Assumed Liabilities") (collectively, and including all actions taken or required

to be taken in connection with the implementation and consummation of the APA, the

"Transactions"); (ii) authorizing and approving the sale of the Acquired Assets (the "Sale"),

free and clear, to the maximum extent permitted under section 363(f) of the Bankruptcy Code,

of any and all Liens (other than Permitted Liens), including any Liens arising out of bulk

transfer law, debts and claims (as that term is defined in section 101(5) of the Bankruptcy

Code), Liabilities, obligations, costs, expenses, causes of action, avoidance actions, demands,

guaranties, options, rights, contractual commitments, settlements, injunctions, restrictions,

interests, encumbrances, reclamation rights, and similar matters of any kind whatsoever,

whether known or unknown, fixed or contingent, or arising prior to or subsequent to the

commencement of these chapter 11 cases (the "Cases"), and whether imposed by agreement,

understanding, law, equity or otherwise (each of the foregoing collectively or individually, and

including to the extent not already specified above, Successor or Transferee Liability (as

defined in paragraph 21 below), including any and all claims and causes of action of

defamation, libel or slander with respect to any content published by the Debtors prior to

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding
Procedures or the APA, as applicable.

Closing, but excluding the Assumed Liabilities and Permitted Liens, the "Adverse Interests"),

with all such Adverse Interests to attach to the net proceeds of the Sale, in the order of their

priority, with the same validity, force and effect that they now have against the Acquired

Assets, subject with respect to such net proceeds to any rights, claims and defenses the

Debtors or any parties in interest may possess with respect thereto; (iii) authorizing the

assumption and assignment to Buyer of certain executory contracts and unexpired leases of the

Debtors in accordance with the APA, the Bidding Procedures ~~and APA Assumption~~ Order (as

defined herein) and this Order; and (iv) granting other relief; and the Court having entered an

order approving the bidding procedures and granting certain related relief on [●], 2016

[Docket No. [●]] (the "Bidding Procedures ~~and APA Assumption~~ Order"); [and an auction

(the "Auction") having been held on [●], 2016 in accordance with the Bidding Procedures ~~and~~

~~APA Assumption~~ Order;] and Buyer having been deemed the Successful Bidder by the Debtor,

in consultation with the official committee of unsecured creditors appointed in the Cases (the

"Committee"), ~~if appointed,~~ pursuant to the Bidding Procedures ~~and APA Assumption~~ Order;

and the Court having conducted a hearing on the Motion on [●], 2016 (the "Sale Hearing") at

which time all interested parties were offered an opportunity to be heard with respect to the

Motion; and the Court having reviewed and considered the Motion, declarations and other

evidence filed in support thereof, the APA, the Bidding Procedures ~~and APA Assumption~~

Order, the record of the hearing before the Court on [●], 2016; and having heard statements of

counsel and the evidence presented in support of the relief requested in the Motion at the Sale

Hearing; and it appearing that due notice of the Motion, the APA, the Bidding Procedures ~~and~~

~~APA Assumption~~ Order and the Auction has been provided; and it appearing that the relief

requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders

-3-

and all other parties in interest; and it appearing that the Court has jurisdiction over this

matter; and it further appearing that the legal and factual bases set forth in the Motion and at

the Sale Hearing establish just cause for the relief granted herein; and after due deliberation

thereon,

**THE COURT HEREBY FINDS AS FOLLOWS:**

### Jurisdiction, Venue, Statutory Bases and Final Order

A.      This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C.

§§ 157 and 1334.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may

enter a final order consistent with Article III of the United States Constitution. Venue of this

proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory and legal predicates for the relief requested in the Motion and

provided for herein are sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy

Rules 1005, 2002, 6004, 6006, 9007, 9014 and 9019.

D.      This Order constitutes a final and appealable order within the meaning of

28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any

extent necessary under Bankruptcy Rules 9014 and rule 54(b) of the Federal Rules of Civil

Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is

no just reason for delay in the implementation of this Order, and expressly directs entry of

judgment as set forth herein.

### Notice of the Transactions, APA, Sale Hearing, Auction and the Cure Amounts

E.      Actual written notice of the Sale Hearing, the Auction, the Motion and the Sale,

and a reasonable opportunity to object or be heard with respect to the Motion and the relief

-4-

requested therein, has been afforded to all known interested entities including to the following parties: (i) the office of the United States Trustee for the Southern District of New York; (ii) counsel to the Committee, if any; (iii) parties who are known or reasonably believed to have asserted any lien, encumbrance, claim or other interest in the Debtors' assets that are the subject of the proposed sale of the Acquired Assets, if any; (iv) all parties who have filed a notice of appearance and request for service of papers in the Cases pursuant to Bankruptcy Rule 2002; (v) each of the Debtors' current landlords and each counterparty to the Debtors' Non-Residential Leases and Other Executory Contracts (as defined in the APA); (vi) all applicable state and local taxing authorities, including the Internal Revenue Service; (vii) each governmental agency that is an interested party with respect to the sale of the Acquired Assets contemplated by the Stalking Horse APA and the transactions proposed thereunder; (viii) the Securities and Exchange Commission; and (ix) counsel to Buyer.

F.      The Debtors published notice of the time and place of the proposed Auction, the time and place of the Sale Hearing and the time for filing an objection to the relief requested in the Motion relating to the Sale in the United States edition of the *USA Today* on [●], 2016.

G.      The foregoing notice was good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the APA or the Transactions is required. The disclosures made by the Debtors concerning the APA, the Auction, the Transactions and the Sale Hearing were good, complete and adequate.

H.      The Debtors have filed and served cure notices (the "Cure Notices") upon all non-Debtor counterparties to all Non-Residential Leases and Other Executory Contracts notifying such parties: (i) that the Debtors may seek to assume and assign such Leases and Contracts on the Closing Date of the Sale as provided in the APA and (ii) of the Debtors'

-5-

57896964_1

good faith estimates of the cure amounts required in connection with such Lease or Contract. The Debtors have also filed and served an Assumption Notice upon the non-Debtor counterparties to the Contracts listed on the Closing Designated Contract List, and the Debtors will file and serve, in accordance with the Post-Closing Assumption and Assignment Procedures set forth herein, Post-Closing Designation Notices upon the non-Debtor counterparties to the Non-Residential Leases and Other Executory Contracts that Buyer designates for assumption and assignment.  The service of such notices was good, sufficient and appropriate under the circumstances, and no further notice is required.

### Highest and Best Offer

I.     As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors conducted a marketing process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures ~~and APA Assumption~~ Order.  The Bidding Procedures were non-collusive and substantively and procedurally fair to all parties.  All interested persons and entities have been afforded a full, fair and reasonable opportunity to (i) conduct due diligence investigations, (ii) submit higher or otherwise better bids to purchase the assets of the Debtors and (iii) object and be heard in connection with the Sale Motion and the relief granted by this Order.  [The Auction contemplated by the Bidding Procedures was held on [●], 2016. At the conclusion of the Auction, Buyer was selected by the Debtors, in consultation with the Committee, ~~if appointed,~~ as the Successful Bidder.] [The Debtors did not receive any Qualified Bids for the Acquired Assets prior to the Bid Deadline. Therefore, no Auction was necessary under the terms of the Bidding Procedures and Buyer was named by the Debtors as the Successful Bidder.]

57896964_1

J.      The Acquired Assets were adequately marketed by the Debtors, the consideration provided by Buyer under the APA constitutes or provides the highest or otherwise best offer and provides fair and reasonable consideration to the Debtors for the sale of all Acquired Assets and the assumption of all Assumed Liabilities, and the performance of the other covenants set forth in the APA will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. Buyer is the Successful Bidder for the Acquired Assets in accordance with the Bidding Procedures ~~and APA Assumption~~ Order. The Debtors' determination that the APA constitutes the highest and best offer for the Acquired Assets is a valid and sound exercise of the Debtors' business judgment. Buyer has complied in all respects with the Bidding Procedures ~~and APA Assumption~~ Order and any other applicable order of this Court in negotiating and entering into the APA. The Sale and APA likewise comply with the Bidding Procedures ~~and APA Assumption~~ Order and all other applicable orders of this Court.

K.      Approval of the Motion and the APA and the consummation of the Transactions contemplated thereby is in the best interests of the Debtors, their respective creditors, estates and other parties in interest and there is substantial risk of deterioration of the value of the Acquired Assets if the Sale is not consummated quickly. The Debtors have demonstrated good, sufficient and sound business reasons and justifications for entering into the Transactions and the performance of their obligations under the APA.

L.      The consummation of the Transactions outside a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan for the Debtors.

57896964_1

M.      Entry of an order approving the APA and all the provisions thereof is a necessary condition precedent to Buyer's consummation of the Transactions.

**Arms' Length Sale**

N.      The APA and the Transactions contemplated thereunder were proposed, negotiated and entered into by and between the Debtors, on the one hand, and Buyer, on the other hand, without collusion or fraud of any kind, in good faith and at arm's length.  There has been no showing that the Debtors or Buyer have engaged in any action or inaction that would cause or permit the APA or the Transactions to be avoided or impose any costs or damages under section 363(n) of the Bankruptcy Code.  Specifically, Buyer has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among the bidders.  In addition, none of Buyer or its respective affiliates, present or contemplated members, officers, directors, partners, shareholders or any of their respective heirs, successors and assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

**Good Faith of Buyer**

O.      Buyer is entering into the Transactions in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and the court decisions thereunder, and is therefore entitled to the full protection of that provision with respect to all aspects of the transactions contemplated by the APA, including the acquisition of the Acquired Assets, and otherwise has proceeded in good faith in all respects in connection with this proceeding.

57896964_1

P.      In accordance with section 365 of the Bankruptcy Code, including sections 365(b)(1) and 365(f)(2) of Bankruptcy Code, the Debtors have shown that Buyer has the wherewithal, financial and otherwise, to perform all of its obligations under the APA.

### No Fraudulent Transfer

Q.      The consideration provided by Buyer pursuant to the APA for its purchase of the Acquired Assets, the assumption of the Assumed Liabilities and the performance of the covenants contained in the APA constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, and under the laws of the United States, any state, territory, possession thereof or the District of Columbia.

R.      There has been no showing that any of the Debtors or Buyer (i) has entered into the APA or proposes to consummate the Transactions for the purpose of hindering, delaying or defrauding the Debtors' present or future creditors or (ii) is entering into the APA or proposing to consummate the Transactions fraudulently, for the purpose of statutory or common law fraudulent conveyance and fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

S.      By virtue of the consummation of the Transactions contemplated by the APA, (i) Buyer is not a continuation of the Debtors or their respective estates, there is no continuity between Buyer and the Debtors, there is no common identity between the Debtors and Buyer, there is no continuity of enterprise between the Debtors and Buyer, Buyer is not a mere continuation of the Debtors or their estates, and Buyer does not constitute a successor to the

57896964_1

Debtors or their estates, (ii) Buyer is not holding itself out to the public as a continuation of the Debtors or their respective estates and (iii) the Transactions do not amount to a consolidation, merger or *de facto* merger of Buyer and the Debtors and/or the Debtors' estates.

## **Validity of Transfer**

T.      Each Debtor's Board of Directors or equivalent and Buyer have authorized the execution and delivery of the APA, the sale of all Acquired Assets to Buyer and the assumption of all Assumed Liabilities by Buyer. The Debtors and Buyer (i) have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, as applicable, (ii) have all of the power and authority necessary to consummate the Transactions and (iii) have taken all action necessary to authorize and approve the APA and to consummate the Transactions, and no further consents or approvals are required for the Debtors or Buyer to consummate the Transactions contemplated by the APA, except as otherwise set forth therein.

U.      Other than the Assumed Liabilities, Buyer shall have no obligations with respect to any Liabilities of the Debtors or any Adverse Interests against any of the Debtors or their property, including the liabilities of the Debtors specifically excluded under the APA (the "Excluded Liabilities"), and Buyer and its successors and assigns are released from any and all claims, causes of action, obligations, liabilities, demands, damages, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the Acquired Assets, except for liabilities and obligations arising expressly under, or expressly assumed by Buyer under, the APA.

V.      The consummation of the Sale and Transactions is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a),

363(b), 363(f), 363(m), 363(n), 365(b)(1) and 365(f)(2) of the Bankruptcy Code, and with

respect to the Designated Contracts (as defined herein), all of the applicable requirements of

such sections have been or will be complied with in respect of the Transactions as of the

effective date of assignment.

W.      The Acquired Assets constitute property of the Debtors' estates and title thereto

is presently vested in the Debtors' estates within the meaning of section 541(a) of the

Bankruptcy Code. The sale of the Acquired Assets to Buyer will be, as of the Closing Date or

such later date as such Acquired Assets are transferred under the APA, a legal, valid and

effective transfer of such assets, and each such transfer and assignment vests or will vest Buyer

with all right, title and interest of the Debtors to the Acquired Assets free and clear of all

Adverse Interests.

## Section 363 Is Satisfied

X.      Entry into the APA and consummation of the Transactions contemplated thereby

constitute the exercise of the Debtors' sound business judgment consistent with their fiduciary

duties and such acts are in the best interests of the Debtors, their respective creditors, their

estates and other parties in interest.  The Debtors have demonstrated both (i) good, sufficient

and sound business reasons and justifications and (ii) compelling circumstances for the sale of

the Acquired Assets to Buyer pursuant to section 363(b) of the Bankruptcy Code prior to, and

outside of, a plan of reorganization.  Such business reasons include the facts that (i) there is

substantial risk of deterioration of the value of the Acquired Assets if the Transactions are not

consummated quickly; (ii) the APA constitutes the highest and best offer for the Acquired

Assets; (iii) the APA and the consummation of the Transactions contemplated thereby present

the best opportunity to realize the value of the Acquired Assets and avoid decline and

-11-

devaluation of the Acquired Assets; and (iv) unless the sale of the Acquired Assets is consummated expeditiously as provided for in the Motion and pursuant to the APA, creditors' recoveries may be diminished.

Y.    The Debtors may sell and assign the Acquired Assets free and clear of all Adverse Interests, and the Transactions will not subject Buyer or any of Buyer's assets to any liability for any Adverse Interests whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability), because, with respect to each creditor asserting an Adverse Interest, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Adverse Interests who did not object or who withdrew their objections to the Sale, the Transactions or the Cure Notices are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code. All holders of Adverse Interests are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by having their Adverse Interests, if any, attach to the proceeds of the Sale, in the same order of priority and with the same validity, force and effect that such Adverse Interest holder had before the Sale, subject to any rights, claims and defenses of the Debtors or their estates, as applicable, or as otherwise provided herein.

Z.    Buyer would not have entered into the APA and would not consummate the sale of all Acquired Assets, thus adversely affecting the Debtors, their estates, creditors, employees and other parties in interest, if the sale of the Acquired Assets was not free and clear of all Adverse Interests or if Buyer would be liable for any Adverse Interests, including and as applicable, any Excluded Liabilities.

AA.    A sale of the Acquired Assets other than one free and clear of all Adverse Interests would adversely impact the Debtors' estates, and would yield substantially less value

-12-

for the Debtors' estates, with less certainty than the Sale. Therefore, the Sale contemplated by the APA is in the best interests of the Debtors, their estates, creditors and all other parties in interest.

### Assumption of the APA

BB.    The Debtors' assumption of the APA is in the best interest of the Debtors, their respective estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  The Debtors have met all requirements of section 365(b) of the Bankruptcy Code to assume the APA.  The Debtors have provided adequate assurance of future performance under the APA within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.  No default exists in the Debtors' performance under the APA as of the date of this Order.

### Assumption and Assignment of the Designated Contracts

CC.    BB. The assumption and assignment of the Designated Contracts pursuant to the terms of the Bidding Procedures and APA Assumption Order, this Order and the APA are integral to the APA, are in the best interests of the Debtors and their respective estates, creditors and other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Debtors.

DD.    CC. The Debtors have met all requirements of section 365(b) of the Bankruptcy Code for each of the Designated Contracts. The Debtors and/or Buyer, as applicable under the APA, have (i) cured and/or provided adequate assurance of cure of any default existing prior to the date of the Closing under all of the Designated Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a

-13-

57896964_1

default existing prior to the date of the Closing under any of the Designated Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. The assumption and assignment to Buyer of each of the Designated Contracts shall be free and clear of all Adverse Interests against Buyer.

EE.    DD. Buyer has provided adequate assurance of its future performance under the relevant Designated Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. Pursuant to section 365(f) of the Bankruptcy Code, the Designated Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, Buyer, notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

FF.    EE. No default exists in the Debtors' performance under the Designated Contracts as of the date of the Closing other than the failure to pay Cure Amounts or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

### Compelling Circumstances for an Immediate Sale

GG.    FF. Time is of the essence. To maximize the value of the Debtors' assets, it is critical that the Transactions close within the time constraints set forth in the APA. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 4001, 6004, and 6006.

HH.    GG. The Debtors have demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale other than in the ordinary course of business, before, and outside of a plan of reorganization in that, among other things, the immediate implementation of this Order and the consummation of the Sale are

-14-

necessary both to preserve and maximize the value of the Debtors' assets for the benefit of the Debtors, their estates, their creditors and all other parties in interest in the Cases, and to provide the means for the Debtors to maximize creditor recoveries.

II.    ~~III.~~ The transactions contemplated by the Purchase Agreement and this Order neither impermissibly restructure the rights of any Debtor's creditors or equity holders nor impermissibly dictate the terms of a chapter 11 plan for any Debtor, and therefore, do not constitute a *sub rosa* chapter 11 plan.

JJ.    ~~II.~~ Nothing in the APA creates any third party beneficiary rights in any person or entity not a party to the APA.

**NOW THEREFORE, ITS IS HEREBY ORDERED THAT:**

**General Provisions**

1.      The Motion is granted and approved to the extent set forth herein.

2.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court or as resolved in this Order, and all reservations of rights included therein, are hereby overruled on the merits with prejudice. All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

3.      Findings of fact and conclusions of law in the Bidding Procedures ~~and APA Assumption~~ Order, including the record of the Bidding Procedures hearing held on ~~[●]~~July 7, 2016, are incorporated herein by reference.

4.      Where appropriate herein, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact.

-15-

57896964_1

### Approval and Assumption of the APA

5.      The APA and all of the Transactions contemplated therein are approved.  The APA is hereby assumed by the Debtors in accordance with section 365 of the Bankruptcy Code. The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and, approved and assumed in its entirety, with such amendments thereto as may be made by the parties in accordance with this Order.

6.      The Debtors are authorized to (i) take any and all actions necessary or appropriate to execute and deliver, perform under, consummate, implement and effectuate the APA (including, for the avoidance of doubt, the agreements with respect to the Escrow Account set forth in the APA), together with any and all instruments and documents that may be reasonably necessary or desirable to fully close the Transactions, including the sale to Buyer of all Acquired Assets, in accordance with the terms and conditions set forth in the APA and this Order, and to implement and effectuate the terms of the APA and this Order; (ii) take any and all actions as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the APA and this Order, without any further corporate action or order of this Court; and (iii) assume and assign any and all Designated Contracts as and when provided in the APA.

7.      Buyer has no obligation to proceed with the Closing unless and until all conditions precedent to its obligations to do so, as set forth in the APA , have been met, satisfied or waived in accordance with the terms of the APA.

-16-

8.      The Debtors are hereby authorized and directed, after consultation with the Committee, ~~if appointed,~~ to instruct the Escrow Agent to (i) hold the Deposit in accordance with the APA and (ii) release and deliver the Deposit pursuant to the terms of the APA.

9.      All persons and entities are prohibited and enjoined from taking any action that would adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Acquired Assets to Buyer in accordance with the APA and this Order. All amounts, if any, to be paid by the Debtors to Buyer pursuant to the APA, including any allowed claims for breach thereof, shall (i) constitute allowed administrative expenses of the estates pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, (ii) be protected as provided in the APA and the Bidding Procedures ~~and APA Assumption~~ Order, (iii) not be altered, amended, discharged or affected by any plan proposed or confirmed in the Cases without the prior written consent of Buyer and (iv) be due and payable if and when any of the Debtors' obligations arise under the APA without further order of the Court.

10.     At the Closing, the Debtors will be authorized to fully perform under, consummate and implement the terms of the APA together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the APA, this Order and the Transactions.

11.     Nothing contained in (a) any chapter 11 plan confirmed in these Cases, (b) any order confirming any such chapter 11 plan, or (c) any order of any type or kind in these Cases, any subsequent chapter 7 cases in which these Cases may be converted or any related proceedings subsequent to the entry of this Sale Order shall conflict with or derogate from the provisions of the APA (or any agreement contemplated thereby) or this Order, and to the extent of any conflict or derogation between this Order or the APA (or any agreement

-17-

57896964_1

contemplated thereby) and such future plan or order, the terms of this Order and the APA (any agreement contemplated thereby)  shall control.

12.     Each and every federal, state and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transactions, including all agreements entered into in connection therewith, and this Order.

13.     To the extent available under applicable law, Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Acquired Assets and the Non-Residential Leases and Other Executory Contracts, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are transferred to Buyer as of the Closing Date.

14.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred or conveyed to Buyer on account of the filing or pendency of the Cases.

**Sale and Transfer Free and Clear of Adverse Interests**

15.     Upon Closing (or thereafter as of the filing of a Post-Closing Designation Notice with respect to any Designated Contract, subject to the Post-Closing Assumption and Assignment Procedures[3] described herein), all of the Debtors' right, title and interest in and to,

---

[3]     The "***Post-Closing Assumption and Assignment Procedures***" shall mean those procedures for assumption and assignment of Non-Residential Leases and Other Executory Contracts described in Paragraphs 36–40 of this Order.

57896964_1

and possession of, the Acquired Assets shall be immediately vested in Buyer pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code free and clear of any and all Adverse Interests, with all such Adverse Interests to attach to the net proceeds of the Sale, in the order of their priority, with the same validity, force and effect that they now have against the Acquired Assets, subject with respect to such net proceeds to any rights, claims and defenses the Debtors or any parties in interest may possess with respect thereto. Such transfer shall constitute a legal, valid, binding and effective transfer of such Acquired Assets. All persons or entities, presently or on or after the Closing, in possession of some or all of the Acquired Assets shall surrender possession of the Acquired Assets to Buyer or its respective designees.

16.     This Order (i) shall be effective as a determination that, as of the Closing no Adverse Interests other than Assumed Liabilities will be assertable against Buyer or any of its respective assets (including the Acquired Assets), (ii) shall be effective as a determination that, as of the Closing (or thereafter as of the filing of a Post-Closing Designation Notice for any Designated Contract, subject to the Post-Closing Assumption and Assignment Procedures described herein)  (a) the Acquired Assets shall have been transferred to Buyer free and clear of all Adverse Interests and (b) the conveyances described herein have been effected, and (iii) is and shall be binding upon entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required

-19-

to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Transactions.

17.     Other than the Assumed Liabilities, Buyer shall have no obligations with respect to any Adverse Interests of the Debtors, including the Excluded Liabilities, and Buyer and its affiliates, successors and assigns are released from any and all Adverse Interests arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the ownership, sale or operation of the Acquired Assets and the business of the Debtors prior to the Closing or the transfer of Acquired Assets to Buyer, except for the Assumed Liabilities expressly assumed under the APA. The holders of claims related to the Assumed Liabilities shall have the right to seek payment directly from Buyer on account of the Assumed Liabilities; *provided*, *however*, that Buyer reserves any and all rights, defenses or objections with regard to such Assumed Liabilities, including, but not limited to, Buyer's rights under the APA.

18.     Other than in the Ordinary Course of Business, the Debtors shall not consent or agree to the allowance of any claim to the extent it would constitute an Assumed Liability without the prior written consent of Buyer.  Buyer shall have standing in the Cases to object to the validity, amount, or priority of any claim against the Debtors to the extent it would otherwise constitute an Assumed Liability, and the Court will retain the right to hear and determine such objections.

19.     Except with respect to the Assumed Liabilities, all persons and entities (and their respective successors and assigns), including all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors holding Adverse Interests arising under

57896964_1

or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the ownership, sale or operation of the Acquired Assets and the business prior to the Closing or the transfer of Acquired Assets to Buyer (whether prior to the Closing or thereafter as of the filing of a Post-Closing Designation Notice for any Designated Contract, subject to the Post-Closing Assumption and Assignment Procedures described herein), are hereby forever barred, estopped and permanently enjoined from asserting such Adverse Interests against Buyer, its property or the Acquired Assets. Following the Closing (or thereafter as of the filing of a Post-Closing Designation Notice for any Designated Contract, subject to the Post-Closing Assumption and Assignment Procedures described herein), no holder of any Adverse Interest shall interfere with Buyer's title to or use and enjoyment of the Acquired Assets based on or related to any such Adverse Interest, or based on any action the Debtors may take in the Cases.

20.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Adverse Interests against or in the Acquired Assets shall not have delivered to the Debtors prior to the Closing of the Transactions in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all Adverse Interests that the person or entity has with respect to such Acquired Assets, then only with regard to the Acquired Assets that are purchased by Buyer pursuant to the APA and this Order, (i) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Acquired Assets, and (ii) Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all

-21-

Adverse Interests against Buyer and the applicable Acquired Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office. For the avoidance of doubt, only Acquired Assets that are part of the estates of the Debtors are being sold to Buyer free and clear of Adverse Interests pursuant to section 363(f) of the Bankruptcy Code.

### No Successor or Transferee Liability

21.     Buyer shall not be deemed, as a result of any action taken in connection with the APA, the consummation of the Transactions, the transfer, operation or use of the Acquired Assets or the employment of the Selected Employees or Transferred Employees to (i) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for Buyer, with respect to any obligations arising after the Closing as an assignee under Assumed Contracts); (ii) have, *de facto* or otherwise, merged with or into the Debtors; or (iii) be an alter ego or a mere continuation or substantial continuation or successor in any respect of the Debtors, including within the meaning of any foreign, federal, state or local revenue, pension, Employee Retirement Income Security Act of 1974 ("ERISA"), tax, labor, employment, environmental or other law, rule or regulation (including filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

22.     Except as expressly provided in the APA with respect to Assumed Liabilities, Buyer shall have no liability whatsoever with respect to the Debtors' (or their predecessors or affiliates) respective businesses or operations or any of the Debtors' (or their predecessors' or

57896964_1

affiliates') obligations (as described below, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of labor law, employment law, ERISA and benefits law, antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on account of any settlement or injunction, or any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets or the Business prior to the Closing or such later time as Buyer is assigned and assumes any Assumed Contract. Except to the extent expressly included in the Assumed Liabilities or otherwise provided for in the APA with respect to WARN liabilities, Buyer shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 2101 et seq.) or the Comprehensive Environmental Response Compensation and Liability Act or any foreign, federal, state or local labor, employment or environmental law whether of similar import or otherwise by virtue of Buyer's purchase of the Acquired Assets or assumption of the Assumed Liabilities.

23.    Buyer has given substantial consideration under the APA for the benefit of the holders of any Adverse Interest. The consideration given by Buyer shall constitute valid and valuable consideration for the releases of any potential claims of Successor or Transferee Liability of Buyer, which releases shall be deemed to have been given in favor of Buyer by all holders of any Adverse Interests.

24.    Except as expressly provided in the APA with respect to the Assumed Liabilities, nothing in this Order or the APA shall require Buyer to (i) continue or maintain in

-23-

57896964_1

effect, or assume any liability in respect of any employee, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtors are a party or have any responsibility therefor including medical, welfare and pension benefits payable after retirement or other termination of employment, or (ii) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

25.    Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against Buyer, or its assets (including the Acquired Assets), or its successors and assigns, with respect to any (i) Adverse Interest or (ii) Successor or Transferee Liability including the following actions with respect to clauses (i) and (ii): (a) commencing or continuing any action or other proceeding pending or threatened; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any Adverse Interest; (d) asserting any setoff, right of subrogation or recoupment of any kind; (e) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (f) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such assets.

57896964_1

**Good Faith of Buyer**

26.    The Transactions contemplated by the APA are undertaken by Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Transactions (including the assumption and assignment of the Designated Contracts), unless such authorization and consummation of the Sale are duly and properly stayed pending such appeal.

27.    Buyer is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code.  There has been no showing that the Debtors or Buyer engaged in any action or inaction that would cause or permit the Transactions to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.

28.    The consideration provided by Buyer for the Acquired Assets under the APA is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

**Assumption and Assignment of Designated Contracts**

29.    Before the Sale Hearing, in accordance with and pursuant to Section 2.7 of the APA, Buyer provided to the Debtors a Closing Designated Contract List designating certain Non-Residential Leases and Other Executory Contracts for assumption by the Debtors and assignment to Buyer.  Buyer filed an Assumption Notice with respect to the Contracts listed on the Closing Designated Contract List and such notice was good, sufficient and appropriate under the circumstances, and no further notice of the Closing Designated Contract List is required.  Up to three (3) Business Days prior to the Closing Date, Buyer may exclude or remove from the Closing Designated Contract List any Non-Residential Lease or Other

-25-

Executory Contract. On or before the Closing Date, Buyer shall provide to the Debtors, and

the Debtors shall file with the Court, the final Closing Designated Contract List, and the

Debtors shall serve notice of such list by first class mail on all non-Debtor counterparties to the

Non-Residential Leases and Other Executory Contracts included on the final Closing

Designated Contract List.

30.    Pursuant to Section 2.7 of the APA, from and after the Closing Date through

the Designation Deadline,[4] Buyer shall provide written notice to the Debtors (and the Debtors

shall provide such notice to the affected counterparties within three (3) Business Days of

receipt of such notice from Buyer) designating certain Non-Residential Leases and Other

Executory Contracts for assumption by the Debtors and assignment to Buyer (such Leases and

Contracts together with the Non-Residential Leases and Other Executory Contracts included on

the final Closing Designated Contract List, the "Designated Contracts").

31.    The Debtors are authorized at the Closing (or thereafter as of the filing of a

Post-Closing Designation Notice for any Designated Contract) to assume and assign each of

the Designated Contracts in accordance with the APA and this Order to Buyer free and clear

of all Adverse Interests pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code and

to execute and deliver to Buyer such documents or other instruments as may be necessary to

assign and transfer the Designated Contracts to Buyer. The payment of the applicable Cure

Amounts by Buyer shall (i) effect a cure of all defaults existing thereunder as of the Closing

(or thereafter for any Designated Contract that is assumed and assigned post-Closing, subject

---

[4]    Designation Deadline is defined in the APA to mean 5:00 p.m. (prevailing Eastern time) on the date that is
thirty (30) days from the Closing Date (or such longer period as may be agreed between Buyer and the
counterparty of the applicable Contract).

57896964_1

to the Post-Closing Assumption and Assignment Procedures described herein), (ii) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default and (iii) together with the assumption of the Designated Contracts by the Debtors and the assignment of such Designated Contracts to Buyer, constitute adequate assurance of future performance thereof. For purposes of this Order, "Cure Amounts" shall mean the applicable Cure Amounts set forth on **Exhibit 3** attached hereto, or such other Cure Amounts as agreed, in writing, by the Debtors, Buyer and the counterparty to the applicable Designated Contract. Subject to the Post-Closing Assumption and Assignment Procedures described herein for any Designated Contract that is assumed and assigned post-Closing, the counterparties to the Designated Contracts are forever bound by the applicable Cure Amounts and, upon payment of such Cure Amounts as provided for herein, are hereby enjoined from taking any action against Buyer or the Acquired Assets with respect to any claim for cure under the applicable Designated Contracts.

32.    Any provisions in any Designated Contract (including any Designated Contract that becomes such post-Closing subject to the Post-Closing Assumption and Assignment Procedures described herein) that prohibit or condition the assignment of such Designated Contract or allow the counterparty to such Designated Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Designated Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the Debtors' assumption and assignment of such Designated Contracts in accordance with the APA but will be effective and binding upon Buyer with respect to any purported assignment for the remaining term of such Designated Contract. All other requirements and conditions under sections 363 and 365 of the

Bankruptcy Code for the assumption by the Debtors and assignment to Buyer of the
Designated Contracts have been satisfied.  Upon the Closing or such later time as is provided
in the APA with respect to the assumption and assignment of any Designated Contract, in
accordance with sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and
irrevocably vested with all right, title and interest of the Debtors under the Designated
Contracts, and such Designated Contracts shall remain in full force and effect for the benefit of
Buyer.

33.     Each non-Debtor counterparty to the Designated Contracts shall be forever
barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Buyer or
their respective property any assignment fee, acceleration, default, breach or claim or pecuniary
loss, or condition to assignment existing, arising or accruing as of the Closing (or thereafter as
of the filing of a Post-Closing Designation Notice for those that arise post-Closing and are not
barred by this Order with respect to any Designated Contract that is assumed and assigned
post-Closing) or arising by reason of the Closing or the transfer of the Acquired Assets,
including any breach related to or arising out of change-in-control in such Designated
Contracts, or any purported written or oral modification to the Designated Contracts and (ii)
asserting against Buyer (or its property, including the Acquired Assets) any claim,
counterclaim, breach, or condition asserted or assertable against the Debtors existing as of the
Closing (or thereafter as of the filing of a Post-Closing Designation Notice for those that arise
post-Closing and are not barred by this Order with respect to any Designated Contract that is
assumed and assigned post-Closing) or arising by reason of the transfer of the Acquired Assets,
except for the Assumed Liabilities.  In addition, without relieving Buyer of its obligations under
the APA, nothing in the Order, the Motion or the APA shall affect the Debtors' obligations

-28-

under section 365(d)(3) of the Bankruptcy Code (or Buyer's assumption thereof) prior to the assumption and assignment or rejection of any Designated Contracts.

34.    Upon the Closing (or thereafter as of the filing of a Post-Closing Designation Notice for any Designated Contract), Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Designated Contracts and shall pay all outstanding undisputed Cure Amounts with respect thereto, and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Designated Contracts from and after such assignment. There shall be no assignment fees, increases or any other fees charged to Buyer or the Debtors as a result of the assumption and assignment of the Designated Contracts.

35.    Buyer has provided adequate assurance of future performance under the Designated Contracts (including any Designated Contract that becomes such post-Closing) within the meaning of sections 365(b)(1)(c), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

### Post-Closing Assumption and Assignment Procedures

36.    In the case of any Non-Residential Leases and Other Executory Contracts that the Debtors seek to assume and assign from and after the Closing Date pursuant to Section 2.7 of the APA, within three (3) Business Days following receipt of a notification by Buyer that a Non-Residential Lease or Other Executory Contract is designated for assumption and assignment, the Debtors shall file with the Court a Post-Closing Designation Notice of the Debtors' proposed assumption and assignment of such Non-Residential Lease or Other Executory Contract, substantially in the form attached hereto as **Exhibit 2**.  The assumption and assignment of each such Non-Residential Lease or Other Executory Contract shall be effective as of the date of the filing of the applicable Post-Closing Designation Notice without

57896964_1

any further order of the Court, with objections to the applicable cure amount, if any, to be resolved thereafter as set forth below.

37.    The Debtors will serve such Post-Closing Designation Notice via first class mail on each of the following parties (the "Post-Closing Designation Notice Parties"): (i) each counterparty to any Non-Residential Lease or Other Executory Contract (and their counsel, if known) to be assumed or assigned by the Debtors, (ii) the Office of the United States Trustee, (iii) counsel to the Committee, if any, and (iv) counsel to Buyer.

38.    The Post-Closing Designation Notice will set forth the following information, to the best of the Debtors' knowledge: (i) a description of the Non-Residential Lease or Other Executory Contract that the Debtors are assuming and assigning, (ii) the name and address of the affected counterparties (and their counsel, if known), (iii) a description of the deadlines and procedures for filing objections to the Post-Closing Designation Notice (as set forth below), and (iv) the proposed cure amounts that arise solely following the Closing and have not otherwise been paid in the ordinary course.

39.    A party in interest may object to a Post-Closing Designation Notice solely with respect to the cure amount contained therein and only to the extent such objection could not have been raised prior to the Closing.  Any such objection must be in writing and filed and served so that such objection is filed with this Court and actually received by the Debtors and the Post-Closing Designation Notice Parties no later than ten (10) Business Days after the date the Debtors served the applicable Post-Closing Designation Notice.

40.    If no timely permitted objection is filed and served with respect to the Post-Closing Designation Notice, any non-Debtor party to such Non-Residential Lease or Other Executory Contract shall be deemed to have consented to the cure amount set forth in such

-30-

Post-Closing Designation Notice.  If a timely permitted objection is properly filed and served on the Post-Closing Designation Notice Parties in the manner specified above, unless the parties agree otherwise in writing, a hearing will be scheduled to consider that objection.  For the avoidance of doubt, any Non-Residential Lease or Other Executory Contract set forth in a Post-Closing Designation Notice that is the subject of a timely permitted objection shall be deemed assumed and assigned prior to resolution of such objection (*i.e.*, as of the date of the filing of the applicable Post-Closing Designation Notice).

### The Sale Does Not Require the Appointment of a Consumer Privacy Ombudsman

41.      Buyer shall be subject to reasonable restrictions by the Debtors in order to comply with the Debtors' privacy policy, which broadly provides that, if the Debtors or any portion of their assets are acquired, the Debtors may share all types of information with the acquiring company.  As the Debtors' privacy policy does not prohibit the transfer of personally identifiable information, appointment of a consumer privacy ombudsman is not required.

### Other Provisions

42.      Effective upon the Closing, the Debtors, on behalf of themselves and their respective past, present and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns (collectively, the "Debtor Releasing Parties"), hereby release, remise, acquit and forever discharge Buyer and its past, present and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns, and each of its and their respective directors, managers, officers, employees, shareholders, members, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance companies and partners (except, in each case, the Debtor Releasing Parties) (collectively, in their capacities as parties being

released pursuant to this Paragraph 42, the "Buyer Released Parties"), from any and all claims, contracts, demands, causes of action, disputes, controversies, suits, cross-claims, torts, losses, attorneys' fees and expenses, obligations, agreements, covenants, damages, liabilities, costs and expenses, whether known or unknown, whether anticipated or unanticipated, whether claimed or suspected, whether fixed or contingent, whether yet accrued or not, whether damage has resulted or not, whether at law or in equity, whether arising out of agreement or imposed by statute or common law of any kind, nature, or description, including, without limitation as to any of the foregoing, any claim by way of indemnity or contribution, which any Debtor Releasing Party has, may have had or may hereafter assert against any Buyer Released Party arising from or related in any way, either directly or indirectly, to the negotiation, documentation, performance or consummation of the APA, any Related Agreements or any other agreements entered into in connection with the transactions contemplated thereby; *provided*, *however*, that the foregoing release shall not apply to the Debtors' rights or Buyer's obligations under this Order or the APA (including Section 6.9 of the APA), any Related Agreements and/or any other agreements entered into in connection with the transactions contemplated hereby or thereby.

43.    Subject to the terms of the APA, the APA and any related agreements may be waived, modified, amended or supplemented by agreement of the Debtors and Buyer, in consultation with counsel to the Committee, ~~if appointed,~~ without further action or order of the Bankruptcy Court if it does not have a material adverse effect on the Debtors' estates.  Any material modification, waiver, amendment or supplement to the APA must be approved by order of the Bankruptcy Court.

-32-

44.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of this Court, to allow Buyer to deliver any notice provided for in the APA and allow Buyer to take any and all actions permitted or required under the APA in accordance with the terms and conditions thereof. Buyer shall not be required to seek or obtain any further relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other sale-related document.

45.     All persons, all Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Adverse Interests, based upon or arising out of the Excluded Liabilities are hereby barred and estopped from taking any action against Buyer or the Acquired Assets to recover property on account of any Adverse Interests or on account of any Liabilities of the Debtors other than Assumed Liabilities pursuant to the APA. All persons holding or asserting any Adverse Interests with respect to the Excluded Assets are hereby enjoined from asserting or prosecuting such Adverse Interests against Buyer or the Acquired Assets for any Liability whatsoever associated with the Excluded Assets.

46.     The provisions of this Order authorizing the sale and assignment of the Acquired Assets free and clear of all Adverse Interests shall be self-executing, and neither the Debtors nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

47.     Neither the Debtors nor any of their Affiliates shall use, license or permit any third party to use, any name, slogan, logo or trademark which is confusingly or deceptively similar to any of the names, trademarks or service marks included in the Intellectual Property

-33-

included in the Acquired Assets, and each Debtor is directed to change its corporate name to a name which (i) does not use the name ["Gawker", "Gizmodo", "Kotaku", "Jalopnik", "LifeHacker", "Deadspin", "Jezebel"] or any other name that references or reflects any of the foregoing in any manner whatsoever, (ii) is otherwise substantially dissimilar to its present name and (iii) is approved in writing by Buyer.

48.    Any allocation to be performed pursuant to the terms of Section 2.10 of the APA shall be for tax purposes only and shall not be binding on the Debtors in any other way, and the rights of all parties in interest, including the Committee, with respect to the allocation of the purchase price as between the Sellers are hereby preserved.

49.    48.Within one (1) Business Day of the occurrence of the Closing of the Sale, the Debtors shall file and serve a notice of same, substantially in the form attached hereto as **Exhibit 2** (the "Notice of Sale Closing and Effective Date of Amendment of Case Caption") and upon the filing of such notice, the Debtors' case caption shall be amended as follows:

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| [[●] Liquidating, LLC], *et al.* | ) | Case No. 16-11700 (SMB) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

1    The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: [●] (f/k/a Gawker Media Group, Inc.) ([●]); [●] (f/k/a Gawker Media LLC) ([●]); [●] (f/k/a Kinja Kft.) ([●]).  The Debtors' executive headquarters are located at [●].

50.    49.Upon the filing of the Notice of Sale Closing and Effective Date of Amendment of Case Caption, the Clerk of the Court is authorized and directed to make a

57896964_1

docket entry in case numbers 16-11700, 16-11718, and 16-11719 consistent with Paragraph 48 of this Order.

51. 50. The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the sale. This Court retains jurisdiction to compel delivery of the Acquired Assets, to protect Buyer and its assets, including the Acquired Assets, against any Adverse Interests and Successor or Transferee Liability and to enter orders, as appropriate, pursuant to sections 105, 363 or 365 (or other applicable provisions) of the Bankruptcy Code necessary to transfer the Acquired Assets and the Designated Contracts to Buyer. This Court retains jurisdiction to adjudicate disputes between Buyer and holders of claims related to the Assumed Liabilities regarding the Assumed Liabilities.

52. 51. The Transactions contemplated hereunder shall not be affected by any bulk sales laws.

53. 52. Buyer has standing to seek to enforce the terms of this Order.

54. 53. The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Order.

55. 54. Notwithstanding the possible applicability of Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9014 or otherwise, this Order shall not be stayed, the terms and conditions of this Order shall be effective immediately upon entry and the Debtors and Buyer are authorized to close the Sale immediately upon entry of this Order.  Time is of the essence

-35-

in closing the Sale, and the Debtors and Buyer intend to close the Sale as soon as practicable. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being dismissed as moot.

56. ~~55.~~ The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

57. ~~56.~~ The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

58. ~~57.~~ All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

59. ~~58.~~ To the extent there are any inconsistencies between the terms of the Bidding Procedures ~~and APA Assumption~~ Order, this Order and the APA, the terms of this Order shall control.

Dated: _____, 2016
      New York, New York                         STUART M. BERNSTEIN
                                              UNITED STATES BANKRUPTCY JUDGE

57896964_1

| Summary report: Litéra® Change-Pro TDC 7.5.0.145 Document comparison done on 7/6/2016 1:21:42 PM | |
|---|---|
| **Style name:** RG_Default_Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Active_57277004_2_Gawker - Sale Order FILING VERSION.DOCX | |
| **Modified DMS:** iw://RGDMS/Active/57896964/1 | |
| **Changes:** | |
| Add | 39 |
| Delete | 40 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 79 |

**Exhibit G**

**First Amendment to Asset Purchase Agreement**

# AMENDMENT NO. 1 TO
## ASSET PURCHASE AGREEMENT

This AMENDMENT NO. 1 TO ASSET PURCHASE AGREEMENT (this "Amendment") is dated as of July 7, 2016, by and among Gawker Media Group, Inc., a Cayman Island exempted company ("Holdco"), Gawker Media, LLC, a Delaware limited liability company ("GM LLC"), and Kinja, Kft., a Hungarian corporation ("Kinja" and together with Holdco and GM LLC, "Sellers" and each individually, a "Seller"), and ZDGM LLC, a Delaware limited liability company (together with its permitted successors, designees and assigns, "Buyer"). Sellers and Buyer are referred to collectively herein as the "Parties."

## W I T N E S S E T H :

WHEREAS, Sellers and Buyer are parties to that certain Asset Purchase Agreement dated as of June 10, 2016 (as amended, supplemented or otherwise modified from time to time, the "Asset Purchase Agreement"); and

WHEREAS, Sellers and Buyer have agreed to amend the Asset Purchase Agreement to clarify that (i) avoidance actions among Sellers, prepetition lenders and insiders will not be transferred to Buyer and (ii) the allocation of the purchase price will only apply for tax purposes and not for any other purpose.

NOW THEREFORE, in consideration of the mutual promises herein made, and in consideration of the representations, warranties and covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, the Parties agree as follows:

1. **Defined Terms**. Unless otherwise defined herein, capitalized terms used herein shall have the meanings assigned to such terms in the Asset Purchase Agreement.

2. **Amendments**. The Asset Purchase Agreement is hereby amended as follows:

(a) The definition of Excluded Assets is hereby amended and restated in its entirety, as follows:

"Excluded Assets" means, collectively, the following assets of Sellers: (a) all of Sellers' certificates of incorporation and other organizational documents, qualifications to conduct business as a foreign entity, arrangements with registered agents relating to foreign qualifications, taxpayer and other identification numbers, seals, minute books, stock transfer books, stock certificates and other documents relating to the organization, maintenance and existence of any Seller as a corporation, limited liability company or other entity; (b) all equity securities of any Seller and all net operating losses or other tax assets or attributes of any Seller; (c) all Excluded Contracts and all Leased Real Property related to Excluded Contracts that are Non-Residential Leases (it being understood that any Non-Residential Lease or Other Executory Contract that has

neither been assumed and assigned nor excluded pursuant to <u>Section 2.7</u> shall not be deemed to be an Excluded Contract unless and until it becomes an Excluded Contract pursuant to <u>Section 2.7</u>); (d) the Excluded Claims; (e) any (1) confidential personnel and medical Records pertaining to any Current Employees or Former Employees to the extent the disclosure of such information is prohibited by applicable Law, (2) other Records that Sellers are required by Law to retain and (3) Records or other documents that are protected by the attorney-client privilege; <u>provided</u> that Buyer shall have the right to make copies of any portions of such retained Records to the extent that such portions relate to the Business or any Acquired Asset; <u>provided</u>, <u>further</u>, that the making of such copies is not contrary to Law and would not cause any applicable privilege to be waived; (f) all Permits other than the Assumed Permits; (g) the rights of Sellers under this Agreement and all cash and non-cash consideration payable or deliverable to Sellers under this Agreement; (h) all Cash of any Seller as of immediately prior to the Closing; (i) all assets, rights and claims arising from or with respect to Taxes of any Seller, including all rights arising from any refunds due from federal, state and/or local Governmental Entities with respect to Taxes paid by Sellers, Tax deposits, Tax prepayments and estimated Tax payments; (j) any Records related to Taxes paid or payable by any Seller; (k) all assets listed on the <u>Excluded Assets Schedule</u>; (l) any intercompany payment due to a Seller from any other Seller; and (m) all Excluded Actions.

(b)    Section 2.1(h) of the Asset Purchase Agreement is hereby amended and restated in its entirety, as follows:

(h)    except for the Excluded Claims, all Litigation of any Seller as of the Closing against any Persons (regardless of whether or not such claims and causes of action have been asserted by Sellers) and all guaranties, rights of indemnity, warranty rights, rights of contribution, rights to refunds, rights of reimbursement and other rights of recovery, including rights to insurance proceeds, possessed by any Seller as of the Closing (regardless of whether such rights are currently exercisable), including, without limitation all Avoidance Actions, other than the Excluded Actions;

(c)    Section 2.8 of the Asset Purchase Agreement is hereby amended and restated in its entirety, as follows:

**Section 2.8    <u>Closing</u>**. The closing of the transactions contemplated by this Agreement (the "<u>Closing</u>") shall take place remotely by electronic exchange of counterpart signature pages commencing at 11:00 a.m. local time on the date (the "<u>Closing Date</u>") that is the first (1st) Business Day after the date on which all conditions to the obligations of Sellers and Buyer to consummate the transactions contemplated hereby set forth in <u>Article VII</u> (other than conditions with respect to actions Sellers and/or Buyer will take at the Closing itself, but subject to the satisfaction or waiver of those conditions) have been satisfied or waived or at such other time or on such other date as shall be mutually agreed upon by Sellers and Buyer prior thereto. The

Closing shall be deemed to have occurred at 12:01 a.m. (prevailing Eastern time) on the Business Day that is the Closing Date.

(d)    Section 2.10(a) of the Asset Purchase Agreement is hereby amended and restated in its entirety, as follows:

(a)    As promptly as reasonably practicable after the Closing Date, and in any event within thirty (30) days thereafter, Buyer and Sellers shall in good faith agree upon an allocation for tax purposes only of the Purchase Price (and all capitalized costs and other relevant items) among the Acquired Assets in accordance with Section 1060 of the IRC and the Treasury Regulations thereunder (and any similar provision of United States state or local or non-United States Law, as appropriate), which allocation shall be binding upon Sellers and Buyer (the "Allocation") for tax purposes only. Buyer and Sellers shall report, act and file Tax Returns (including Internal Revenue Service Form 8594) in all respects and for all purposes consistent with the Allocation for tax purposes. Neither Buyer nor Sellers shall take any position (whether in audits, Tax Returns or otherwise) which is inconsistent with the Allocation for tax purposes unless required to do so by applicable Law.

(e)    Section 5.3(d) of the Asset Purchase Agreement is hereby amended and restated in its entirety, as follows:

(d)    Sellers shall hold the Auction by no later than August 17, 2016, unless an Auction is not required to be held pursuant to the terms of the Bidding Procedures.  Sellers shall use reasonable best efforts to cause the Sale Order to be entered by the Bankruptcy Court by no later than August 19, 2016.

(f)    Section 8.1(i) of the Asset Purchase Agreement is hereby amended and restated in its entirety, as follows:

(i)    by Buyer, if the Bankruptcy Court shall not have entered the Bidding Procedures Order by July 7, 2016; provided, that Buyer shall not be able to terminate this Agreement pursuant to this Section 8.1(i) if, prior to such termination, the Bankruptcy Court shall have entered the Bidding Procedures Order;

(g)    Section 8.1(j) of the Asset Purchase Agreement is hereby amended and restated in its entirety, as follows:

(j)    by Buyer, if the Bankruptcy Court shall not have entered the Sale Order by August 19, 2016 and does not become a Final Order by September 2, 2016; provided, that Buyer shall not be able to terminate this Agreement pursuant to this Section 8.1(j) if, prior to such termination, the Bankruptcy Court shall have entered the Sale Order or Final Order, as applicable;

LA_LAN01:297071.4
57897020_1

(h)    Section 8.1(k) of the Asset Purchase Agreement is hereby amended and restated in its entirety, as follows:

(k)    by Buyer, if the Bidding Procedures Order is entered by the Bankruptcy Court and (i) the Auction is not held on or before August 17, 2016, unless an Auction is not required to be held pursuant to the terms of the Bidding Procedures or (B) the Sale Hearing (as defined in the Bidding Procedures) is not held on or before August 18, 2016; provided, that Buyer shall not be able to terminate this Agreement pursuant to this Section 8.1(k) if, prior to such termination, the Auction or Sale Hearing shall have been held, as applicable;

(i)    Section 8.3(e) of the Asset Purchase Agreement is hereby amended and restated in its entirety, as follows:

(e)    If this Agreement is terminated (i) by Buyer pursuant to Section 8.1(b), and prior to such termination, any Seller has taken any action that results in a breach, in any material respect, of any covenant set forth in Section 5.9, (ii) by Sellers pursuant to Section 8.1(d), (iii) by Buyer pursuant to Section 8.1(f), Section 8.1(g)(iii) if the Court orders the dismissal of the Chapter 11 Cases, Section 8.1(g)(iv), or Section 8.1(h), or (iv) automatically pursuant to Section 8.1(m), then Sellers shall pay to Buyer the Breakup Fee, which shall constitute an allowed administrative expense of Sellers under Bankruptcy Code sections 503(b) and 507(a)(1) to be paid upon the earliest to occur of (A) Sellers consummating a Competing Transaction and (B) forty-five (45) days after such termination.

(j)    Section 8.3(f) of the Asset Purchase Agreement is hereby amended and restated in its entirety, as follows:

(f)    If this Agreement is terminated by Buyer (x) as a result of any Seller or any Seller's Affiliate seeking, or supporting a third party in seeking, an order of the Bankruptcy Court dismissing the Chapter 11 Cases or failing to use commercially reasonable efforts to oppose such dismissal or (y) pursuant to Section 8.1(b) due to a breach by Sellers of their obligations set forth in (A) the penultimate sentence of Section 5.3(a) (unless Sellers have selected another buyer at the Auction in accordance with the Bidding Procedures), (B) following entry of the Sale Order, Section 5.1(c) to the extent such breach is the result of Sellers' failure to take commercially reasonable efforts to consummate the transactions contemplated by this Agreement or (C) the last sentence of Section 5.9(b) (a "Bankruptcy Efforts Breach"), then Sellers shall pay to Buyer, within five (5) Business Days of such termination, liquidated damages of $13,500,000 (the "Liquidated Damages Amount"). The Liquidated Damages Amount shall constitute a joint and several allowed administrative expense claim against the Sellers under sections 503(b) and 507(a)(1) of the Bankruptcy Code. Notwithstanding the Sellers' joint and several liability for the Liquidated Damages Amount, each Seller's (and its respective estate's) rights with respect to

LA_LAN01:297071.4
57897020_1

the other Sellers related to allocating rights of contribution of amounts paid in respect of the Liquidated Damages Amount are reserved.

(k)     Section 8.3(g) of the Asset Purchase Agreement is hereby amended and restated in its entirety, as follows:

(g)     Any amounts due and payable to Buyer in connection with (1) a breach of the terms of this Agreement (including a Bankruptcy Efforts Breach), (2) the Expense Reimbursement or (3) the Breakup Fee shall be entitled to administrative priority under Section 503(b) of the Bankruptcy Code.  For the avoidance of doubt, other than with respect to Willful and Intentional Breaches of any Pre-Closing Obligations (as defined in the Bidding Procedures Order) and the payment of the Liquidated Damages Amount, the Breakup Fee and the Expense Reimbursement, any other amounts that may be due and payable as a result of a breach of any Pre-Closing Obligations or other obligations under this Agreement shall not constitute administrative expense claims unless and until the Sale Order is entered, provided that any such claims shall be waived and shall not survive the Closing Date pursuant and subject to Section 9.13.

(l)     The Asset Purchase Agreement is further amended by changing the name of the definition of "Bidding Procedures and APA Assumption Order" to "Bidding Procedures Order" and by replacing each reference to "Bidding Procedures and APA Assumption Order" in the Asset Purchase Agreement with "Bidding Procedures Order."

(m)     The Asset Purchase Agreement is further amended by adding the following new defined term in its appropriate alphabetical order:

"Excluded Actions" means any Avoidance Actions or any analogous state law claims, in each case, that relate to: (i) any intercompany payments or transfers made to a Seller from any other Seller or any incurrence by a Seller of obligations to or for the benefit of another Seller; (ii) any payments, incurrence of obligations or transfers made to or for the benefit of any "insider" as defined in section 101(31) of the Bankruptcy Code; (iii) any payments, incurrence of obligations or transfers made to or for the benefit of any of the Debtors' prepetition lenders; and (iv) any payments or transfers or incurrence of obligations made to or for the benefit of any non-debtor entity outside of the ordinary course of business within the meaning of sections 363 and/or 547(c)(2) of the Bankruptcy Code, including, payment made to law firms, contractors, landlords or other counterparties under any Non-Residential Leases or Other Executory Contracts that are not Assumed Contracts.  For the avoidance of doubt, Avoidance Actions included in the Acquired Assets include avoidance claims, rights or causes of action under Chapter 5 of the Bankruptcy Code or any analogous state law claims, in each case, that relate to the continued operation of the Debtors' businesses, including ongoing trade vendors, ongoing suppliers, ongoing licensors, ongoing manufacturers, ongoing strategic or other business partners of the Debtors' businesses, ongoing customers, ongoing employees, or counterparties to all Assumed Contracts.

LA_LAN01:297071.4
57897020_1

        (n)     The Form of Sale Order set forth on <u>Exhibit A</u> of the Asset Purchase Agreement is hereby replaced in its entirety with the attached <u>Exhibit A</u>.

        (o)     The Form of Bidding Procedures set forth on <u>Exhibit G</u> of the Asset Purchase Agreement is hereby replaced in its entirety with the attached <u>Exhibit G</u>.

        (p)     The Form of Bidding Procedures Order set forth on <u>Exhibit H</u> of the Asset Purchase Agreement is hereby replaced in its entirety with the attached <u>Exhibit H</u>.

        3.     **Severability**.  The provisions of this Amendment shall be deemed severable, and the invalidity or unenforceability of any provision of this Amendment shall not affect the validity or enforceability of any other provisions of this Amendment. If any provision of this Amendment, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision, and (b) the remainder of this Amendment and the application of such provision to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability in any one jurisdiction affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction.

        4.     **References**.  Any reference to the Asset Purchase Agreement contained in any document, instrument or ancillary agreement executed in connection with the Asset Purchase Agreement shall be deemed to be a reference to the Asset Purchase Agreement as modified by this Amendment.

        5.     **Counterparts; Facsimile and Email Signatures**.  This Amendment may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. This Amendment or any counterpart may be executed and delivered by facsimile or email with scan attachment copies, each of which shall be deemed an original.

        6.     **Ratification**.  The terms and provisions set forth in this Amendment shall modify and supersede all inconsistent terms and provisions of the Asset Purchase Agreement and shall not be deemed to be an amendment to, or a modification or waiver of, any other term or condition of the Asset Purchase Agreement.  Except as expressly modified and superseded by this Amendment, the terms and provisions of each of the Asset Purchase Agreement are ratified and confirmed and shall continue in full force and effect.

        7.     **Governing Law; Jurisdiction**.  This Amendment shall in all aspects be governed by and construed in accordance with the internal Laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of New York, and the obligations, rights and remedies of the Parties shall be determined in accordance with such Laws. The Parties agree that any Litigation one Party commences against any other Party pursuant to this Am shall be brought exclusively in the Bankruptcy Court; <u>provided</u> that if the Bankruptcy Court is unwilling or unable to hear any

such Litigation, then the courts of the State of New York, sitting in New York City, New York, and the federal courts of the United States of America sitting in New York City, New York, shall have exclusive jurisdiction over such Litigation.

[SIGNATURE PAGES FOLLOW]

LA_LAN01:297071.4
57897020_1

IN WITNESS WHEREOF, the Parties hereto have executed this Amendment as of the date first above written.

**SELLERS:**

GAWKER MEDIA GROUP, INC.;
GAWKER MEDIA LLC;
KINJA KFT.

By: _____

      Name:
      Title:

**SIGNATURE PAGE TO AMENDMENT NO. 1 TO ASSET PURCHASE AGREEMENT**

**<u>BUYER</u>:**

ZDGM LLC

By: _____
                Name:
                Title:

## **EXHIBIT A**

## **Form of Sale Order**

See attached.

## EXHIBIT G

## Form of Bidding Procedures

See attached.

# EXHIBIT H

## Form of Bidding Procedures Order

See attached.