**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Gawker Media LLC, *et al.*,[1] | Case No. 16-11700 (SMB) |
| Debtors. | (Jointly Administered) |

**ORDER (I) AUTHORIZING AND APPROVING BIDDING PROCEDURES, BREAKUP FEE AND EXPENSE REIMBURSEMENT, (II) AUTHORIZING AND APPROVING THE DEBTORS' PERFORMANCE OF PRE-CLOSING OBLIGATIONS UNDER THE STALKING HORSE ASSET PURCHASE AGREEMENT, (III) APPROVING NOTICE PROCEDURES, (IV) SCHEDULING A SALE HEARING AND (V) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND DETERMINING CURE AMOUNTS**

Upon the motion (the "Motion") of the above-captioned debtors (the "Debtors") in the above-captioned jointly administered chapter 11 cases (the "Cases"), for entry of an order (this "Order"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 6004-1 and 6006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), (i) authorizing and approving (a) certain proposed bidding procedures (as attached hereto as **Exhibit 1**, the "Bidding Procedures")[2] governing the submission of competing proposals to purchase the Acquired Assets pursuant to section 363 of the Bankruptcy Code and (b) the Breakup Fee and Expense Reimbursement (together, the

---

[1] The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). The offices of Gawker Media and GMGI are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011. Kinja's offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures or the Stalking Horse APA, as applicable.

"Stalking Horse Bid Protections") to the extent payable pursuant to and on the terms set forth in the Asset Purchase Agreement (as appended to the Bidding Procedures as **Exhibit A** and, together with all exhibits thereto, and as amended, modified or supplemented pursuant to the amendment attached hereto as **Exhibit 4** and as may be further amended, modified or supplemented from time to time in accordance with the terms thereof, the "Stalking Horse APA"), dated as of June 10, 2016, by and among the Debtors and ZDGM, LLC (together with its permitted designees, successors and permitted assigns in accordance with the Stalking Horse APA, the "Stalking Horse Bidder"), (ii) authorizing and approving the Debtors' performance of certain pre-closing obligations under the Stalking Horse APA, pursuant to which the Debtors have agreed to sell the Acquired Assets to the Stalking Horse Bidder, subject to the terms and conditions contained therein, (iii) approving the form and manner of notice of the sale of the Acquired Assets (the "Sale Notice"), (iv) scheduling a hearing for approval of the sale of the Acquired Assets (the "Sale Hearing") and setting other related dates and deadlines and (v) approving procedures for the assumption and assignment of the Debtors' Non-Residential Leases and Other Executory Contracts and the form of and manner of notice of proposed cure amounts; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and all other parties in interest; and after due deliberation, and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334.

B. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006, and Local Rules 6004-1 and 6006-1.

D. Good and sufficient notice of the relief granted by this Order has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Rules and the Local Rules and all other interested parties.

E. The Bidding Procedures are fair, reasonable and appropriate and are designed to maximize the value to be received by the Debtors' estates and creditors.

F. The Debtors have demonstrated compelling and sound business justifications for entering into the Stalking Horse APA and incurring the administrative obligations arising thereunder or in connection therewith, including the provisions related to the payment of the Liquidated Damages Amount and the Stalking Horse Bid Protections under the circumstances, timing and procedures set forth therein.

G. The Debtors' incurrence of the obligations arising under or in connection with the Stalking Horse APA, including the provisions related to payment of the Liquidated Damages Amount and the Stalking Horse Bid Protections, is (i) an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, (ii) of substantial benefit to the Debtors' estates, their creditors and all other parties in interest, because, among other things, they induced the Stalking Horse Bidder to submit a bid that will serve as a minimum or floor bid for the Acquired Assets, (iii) the product of good faith and arm's-length negotiations among the Debtors and the Stalking Horse Bidder, (iv) reasonable and appropriate in light of the size and nature of the proposed sale and the efforts that have been and will be

expended by the Stalking Horse Bidder and (v) necessary to induce the Stalking Horse Bidder to enter into the Stalking Horse APA and to continue to pursue the sale of the Acquired Assets.

H. The sale of the Acquired Assets as contemplated in the Stalking Horse APA is in the best interests of the Debtors' estates, their creditors and all other parties in interest, and represents a reasonable exercise of the Debtors' sound business judgment.

I. The Debtors' performance of the Pre-Closing Obligations (defined below) is in the best interest of the Debtors, their respective estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

J. The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is reasonably calculated to provide all interested parties with timely and proper notice of the proposed sale, including: (i) the date, time and place of the Auction (if one is held), (ii) the Bidding Procedures and certain dates and deadlines related thereto, (iii) the objection deadline for the sale and the date, time and place of the Sale Hearing, (iv) reasonably specific identification of the assets subject to the proposed sale, (v) instructions for promptly obtaining a copy of the Stalking Horse APA, (vi) representations describing the proposed sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the sale proceeds, (vii) the commitment by the Stalking Horse Bidder to assume certain liabilities of the Debtors solely to the extent set forth in the Stalking Horse APA and (viii) notice of the proposed assumption and assignment of Non-Residential Leases and Other Executory Contracts to the Stalking Horse Bidder pursuant to the Stalking Horse APA (or to another Successful Bidder selected at the Auction, if any) and the procedures and deadlines for objecting thereto. No other or further notice of the proposed sale shall be required.

K. The Cure Notice attached hereto as **Exhibit 3** is reasonably calculated to provide all non-Debtor counterparties to the Debtors' Non-Residential Leases and Other Executory Contracts with proper notice of the potential assumption and assignment of their Non-Residential Lease or Other Executory Contract, the proposed cure amounts relating thereto, if any, and the related assumption and assignment procedures; provided that the mere listing of any Non-Residential Lease or Other Executory Contract on the Cure Notice does not require or guarantee that such Non-Residential Lease or Other Executory Contract will be assumed and assigned, and all rights of the Debtors with respect to such Non-Residential Leases and Other Executory Contracts are reserved.

L. The Bidding Procedures comply with the requirements of Local Rule 6004-1.

M. Entry of this Order is in the best interests of the Debtors' estates, their creditors and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is hereby granted and approved to the extent set forth herein.

**The Bidding Procedures**

2. The Bidding Procedures, attached hereto as **Exhibit 1**, are approved, and the Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures. The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order will not diminish or impair the effectiveness of such provision. Notwithstanding anything to the contrary contained in this Order, the Bid Procedures or the Stalking Horse APA:

a) The Liquidated Damages Amount, if payable, shall constitute an allowed administrative expense claim under sections 503(b) and 507(a)(2) of the

Bankruptcy Code only against HoldCo. The last two sentences of section 8.3(f) of the Stalking Horse APA are deleted.

b) In no event shall the Stalking Horse Bidder be entitled to both (whether asserted against one or more Debtors) (i) Breakup Fee and Expense Reimbursement and (ii) the Liquidated Damages Amount.

c) As of the date hereof, based on the representations made by Debtors' counsel on the record, there has been no event triggering the payment of the Liquidated Damages Amount.

d) For the avoidance of doubt, nothing precludes the Debtors and the Committee from negotiating, filing or prosecuting a chapter 11 plan of reorganization consistent with the terms of the Stalking Horse APA and the Bid Procedures and such activities shall not constitute a Competing Transaction.

e) Section 8.1(i) of the Stalking Horse APA is amended to replace "July 7, 2016" with "July 8, 2016."

3. Any objections to the Motion or the relief requested therein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits.

4. The Bidding Procedures shall govern the submission, receipt and analysis of all Bids, and any party desiring to submit a higher or better offer shall do so strictly in accordance with the terms of this Order and the Bidding Procedures.

5. The following dates and deadlines regarding competitive bidding are hereby established (subject to modification in accordance with the Bidding Procedures):

a. **Qualified Bid Deadline: August 15, 2016 at 5:00 p.m. (Prevailing Eastern Time)** is the deadline by which all Qualifying Bid Documents and Qualified Bids must be **actually received** by the Debtors' investment



Block DocID

banker and legal advisors, as set forth in the Bidding Procedures (the "Bid Deadline"); and

b. **Auction**: **August 16, 2016 at 10:00 a.m. (Prevailing Eastern Time)** is the date and time the Auction, if one is needed, will be held at the offices of Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036.

6. The Stalking Horse Bidder is a Qualified Bidder, the Stalking Horse APA is a Qualified Bid and the Stalking Horse Bidder is authorized to submit any Overbids during the Auction at any time, in each case, pursuant to the Bidding Procedures for all purposes.

7. Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction. As described in the Bidding Procedures, if the Debtors do not receive any Qualified Bids other than the Stalking Horse Bidder's Bid, the Debtors will not hold the Auction, the Stalking Horse Bidder will be deemed the Successful Bidder and the Debtors will seek final approval at the Sale Hearing of the sale of the Acquired Assets to the Stalking Horse Bidder, in accordance with the terms of the Stalking Horse APA.

8. If the Auction is conducted, each Qualified Bidder participating in the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding process or the sale of the Acquired Assets.

9. If the Auction is conducted, absent irregularities in the conduct of the auction, or reasonable and material confusion during the bidding, the Court will not consider bids made after the Auction has been closed.

**Approval of Debtors' Performance of Pre-Closing Obligations under the Stalking Horse APA**

10. The Debtors are authorized and directed to perform all of their respective pre-closing obligations under the Stalking Horse APA, including all obligations set forth in Articles V (Pre-Closing Conditions), VIII (Termination) and IX (Miscellaneous) and Sections 6.1

(Cooperation), 6.4 (Employee Matters), 6.6 (Transfer Taxes), 6.7 (Wage Reporting), 6.10 (Name Changes), 6.14 (Schedule of Employees) and 6.15 (Schedule of Contracts) of the Stalking Horse APA (collectively, the "**Pre-Closing Obligations**").

11. The Staking Horse Bidder is authorized to exercise any rights or remedies with respect to any non-compliance by the Debtors of their Pre-Closing Obligations, including terminating the Stalking Horse APA in accordance with its terms, without further order of the Court and shall be entitled to injunctive relief in accordance with and subject to Section 9.10 of the Stalking Horse APA. In the event the Debtors intentionally or willfully breach any Pre-Closing Obligations (as determined by a court of competent jurisdiction) any resulting damages due and payable to the Stalking Horse Bidder shall constitute an administrative expense claims under sections 503(b) and 507(a)(2) of the Bankruptcy Code; provided nothing in this Order shall constitute a waiver of the rights of any party in interest in any proceeding related to such purported breach. Other than with respect to intentional and willful breaches of any Pre-Closing Obligations and the payment of the Liquidated Damages, Breakup Fee and the Expense Reimbursement, as set forth herein and the Stalking Horse APA, any other amounts that may be due and payable as a result of a breach of any Pre-Closing Obligations or other obligations under the Stalking Horse APA shall not constitute administrative expense claims unless and until the Sale Order is entered, provided that any such claims shall be waived and shall not survive the Closing Date pursuant and subject to Section 9.13.

12. **Except as provided in paragraph 2 (a), supra, a**ny amounts with respect to the Breakup Fee, Expense Reimbursement and Liquidated Damages Amount shall constitute administrative expense claims under sections 503(b) and 507(a)(2) of the Bankruptcy Code. ~~;~~ ~~provided that with respect to the Liquidated Damages Amount, any amount payable in~~



Block DocID

~~connection therewith shall be subject to the allocation set forth in Section 8.3(f) of the Stalking Horse APA.~~ For the avoidance of doubt, consummation of the transactions contemplated by the Stalking Horse APA shall be subject to an order approving the assumption of the Stalking Horse APA and the sale of the Acquired Assets (the "Sale Order") and the satisfaction or waiver of the other conditions to closing on the terms set forth in the Stalking Horse APA. **[SMB: 7/8/16]**

**The Stalking Horse Bid Protections**

13. The Liquidated Damages Amount and the Stalking Horse Bid Protections as set forth in the Stalking Horse APA, including (i) the Breakup Fee in an amount equal to 2.75% of the Base Purchase Price and (ii) the Expense Reimbursement for the Stalking Horse Bidder's reasonable and documented out-of-pocket costs and expenses up to a cap of $1,250,000, and the provisions of the Stalking Horse APA relating thereto, are hereby approved. The Debtors are required to pay the Stalking Horse Bid Protections to the Stalking Horse Bidder to the extent due and payable under the Stalking Horse APA, and the Stalking Horse Bidder will not be deemed to waive the Stalking Horse Bid Protections by rebidding at the Auction. Pursuant to the Stalking Horse APA, the Stalking Horse Bidder will be entitled to receive a credit for the full amount of the Stalking Horse Bid Protections at each round of the Auction.

14. The Debtors' obligations arising under or in connection with the Stalking Horse APA, including with respect to the Liquidated Damages Amount and the Stalking Horse Bid Protections, shall (i) survive termination of the Stalking Horse APA, (ii) constitute, to the extent set forth in paragraphs 11 and 12, an administrative expense claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code and (iii) be payable under the terms and conditions of the Stalking Horse APA and this Order without any further order of this Court.

15. Each Debtor's obligations relating to the Liquidated Damages Amount and the Stalking Horse Bid Protections arising under or in connection with the Stalking Horse APA shall be binding and enforceable against each such Debtor and its respective estate, and, as applicable, subject to section 363(f) of the Bankruptcy Code, (i) any of its successors or assigns, (ii) any trustee, examiner, or other representative of the Debtors' estates, (iii) the reorganized Debtors and (iv) any other entity vested or revested with any right, title or interest in or to a material portion of the assets directly or indirectly owned by the Debtors or any other person claiming any rights in or control over a material portion of such assets, excluding any Qualified Bidder that purchases the Acquired Assets (each, a "Debtor Successor"), as if such Debtor Successor was the Debtors.

**Hearing and Objection Deadline**

16. The Sale Hearing, shall take place in this Court on **August 18, 2016 at 2:00 p.m. (Prevailing Eastern Time)**; provided that the Sale Hearing may be adjourned or rescheduled without further notice other than announcement in open Court or by the filing of a notice on the docket of these Cases or a notice of agenda. Any obligations of the Debtors set forth in the Stalking Horse APA that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the Stalking Horse APA are authorized as set forth herein and are fully enforceable as of the date of entry of this Order subject to the limitations to seek administrative expense claims set forth in paragraphs 11 and 12.

17. The deadline to file objections, if any, to the transactions contemplated by the Stalking Horse APA or to entry of the Sale Order is **August 5, 2016 at 4:00 p.m. (Prevailing Eastern Time)** (the "Sale Objection Deadline"); provided, that if and only if the Stalking Horse Bidder is **not** the Successful Bidder for the Debtors' assets, counterparties to the Debtors' Non-

Residential Leases and Other Executory Contracts shall have until August 18, 2016 at 12:00 p.m. (Prevailing Eastern Time) to object to the assumption and assignment of a Non-Residential Lease or Other Executory Contract ***solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code***. Objections, if any, **must**: (i) be in writing, (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules and any orders of the Court, (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor and (iv) be filed with the Court and served so as to be **actually received** no later than the Sale Objection Deadline, as applicable, by the following parties (the "Objection Notice Parties"): (a) the Debtors: Gawker Media Group, Inc., 114 Fifth Avenue, 2d Floor, New York, New York 10011; Attn: Heather Dietrick; (b) proposed counsel to the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036; Attn: Gregg M. Galardi, Esq. and Jonathan P. Gill, Esq.; (c) the proposed investment banker to the Debtors, Houlihan Lokey, Inc., 123 North Wacker Dr., 4th Floor, Chicago, Illinois, 60606; Attn: Reid Snellenbarger; (d) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014; Fax: (212) 668-2255; (e) counsel to the official committee of unsecured creditors appointed in the Cases, if any (the "Committee"); and (f) counsel to the Stalking Horse Bidder, Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004; Attn: Michael H. Torkin, Esq. and Alexa J. Kranzley, Esq., Fax: (212) 291-9376.

18. Any replies to objections to the relief sought in the Sale Order shall be submitted no later than one day before the Sale Hearing.

19. Failure to object to the relief requested in the Motion by the Sale Objection Deadline shall be deemed to be "consent" for purposes of section 363(f) of the Bankruptcy Code.

**Sale Notice and Related Relief**

20. The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved. Within three (3) days of the entry of this Order, the Debtors shall cause the Sale Notice to be served upon (i) the US Trustee, (ii) counsel to the Committee (if one is appointed), (iii) parties who are known or reasonably believed to have asserted any lien, encumbrance, claim or other interest in the Debtors' assets that are the subject of the proposed sale of the Acquired Assets, if any, (iv) all parties who have filed a notice of appearance and request for service of papers in the Cases pursuant to Bankruptcy Rule 2002, (v) each counterparty to the Debtors' Non-Residential Leases and Other Executory Contracts, (vi) all applicable state and local taxing authorities, including the Internal Revenue Service, (vii) each governmental agency that is an interested party with respect to the sale of the Acquired Assets contemplated by the Stalking Horse APA and the transactions proposed thereunder, (viii) the Securities and Exchange Commission and (ix) counsel to the Stalking Horse Bidder. In addition, as soon as practicable, but in any event no later than five (5) Business Days after entry of this Order, the Debtors shall publish the Sale Notice (modified for publication, as necessary) in the United States edition of the *USA Today*.

**The Sale Does Not Require the Appointment of a Consumer Privacy Ombudsman**

21. In connection with the sale of the Acquired Assets pursuant to the Stalking Horse APA, the Debtors shall be required to abide by their privacy policies in place as of the date of the Stalking Horse APA, as such policies may be amended from time to time. Accordingly, no

consumer privacy ombudsman need be appointed in connection with the sale under section 363(b)(1) of the Bankruptcy Code.

**Assumption and Assignment Procedures**

22. The procedures set forth below regarding the proposed assumption and assignment of certain Non-Residential Leases and Other Executory Contracts that may be designated to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder selected at the Auction, if any) pursuant to section 365(f) of the Bankruptcy Code (as defined in the Stalking Horse APA, collectively, the "Designated Contracts") in connection with the sale of the Acquired Assets are hereby approved (the "Assumption Procedures").

23. These Assumption Procedures, as may be modified or supplemented by the Sale Order, shall govern the assumption and assignment of all Designated Contracts:

a. **Cure Notice**. The Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is hereby approved. On or before the date that is five (5) Business Days following the date of this Order, the Debtors shall file with the Court and serve via first class mail the Cure Notice on all non-Debtor counterparties to all Non-Residential Leases and Other Executory Contracts, and their respective known counsel, and provide a copy of same to the Stalking Horse Bidder. The Cure Notice shall inform each recipient that its respective Non-Residential Lease or Other Executory Contract may be designated by the Stalking Horse Bidder as either assumed or excluded and the timing and procedures relating to such designation, and, to the extent applicable (i) the title of the Non-Residential Lease or Other Executory Contract, (ii) the name of the counterparty to the Non-Residential Lease or Other Executory Contract, (iii) the Debtors' good faith estimates of the cure amounts required in connection with such Non-Residential Lease or Other Executory Contract, (iv) the identity of the Stalking Horse Bidder and (v) the deadline by which any such Non-Residential Lease or Other Executory Contract counterparty may file an objection to the proposed assumption and assignment and/or cure amount, and the procedures relating thereto; provided, however, that service of a Cure Notice does not constitute an admission that such Non-Residential Lease or Other Executory Contract is an executory contract or unexpired lease.

b. **Adequate Assurance**. Upon request by a counterparty under any Non-Residential Lease or Other Executory Contract, the Debtors shall serve, by electronic mail, the evidence of adequate assurance of future performance under the Non-Residential Leases and Other Executory Contracts provided by the Stalking Horse Bidder, including the legal name of the proposed assignee, the proposed use of any leased premises, the proposed assignee's financial ability to perform under the Non-Residential Leases and Other Executory Contracts and a contact person with the proposed assignee that counterparties may contact if they wish to obtain further information regarding the Stalking Horse Bidder.

c. **Objections**. Objections, if any, to the proposed assumption and assignment of any Non-Residential Lease or Other Executory Contract or to the cure amount proposed with respect thereto must: (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules and any order orders of the Court, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof and (iv) be filed with the Court and served so as to be **actually received** by the Objection Notice Parties before the Sale Objection Deadline.

Promptly following the Debtors' selection of the Successful Bidder and the Back-Up Bidder, if any, at the conclusion of the Auction, the Debtors shall announce the Successful Bidder and the Back-Up Bidder, if any, and shall file with the Court a notice of the Successful Bidder and the Back-Up Bidder, if any. If and only if the Stalking Horse Bidder is **not** the Successful Bidder for the Debtors' assets, counterparties to the Debtors' Non-Residential Leases and Other Executory Contracts shall have until August 18, 2016 at 12:00 p.m. (Prevailing Eastern Time) to object to the assumption and assignment of a Non-Residential Lease or Other Executory Contract ***solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code***. For the avoidance of doubt, if the Stalking Horse Bidder is the Successful Bidder, all adequate assurance objections must be filed by the Sale Objection Deadline.

d. **Dispute Resolution**. Any objection to the proposed assumption and assignment or related cure of a Non-Residential Lease or Other Executory Contract in connection with the proposed sale that remains unresolved as of the Sale Hearing shall be heard at the Sale Hearing (or at a later date as fixed by the Court) provided that any such objection may be adjourned, in full or in part, by the Debtors to a later date by listing such adjournment in a notice of agenda or other notice filed on the docket of the Cases and served on the affected counterparty.

24. ***Any party who fails to timely file an objection to its scheduled cure amount listed on the Cure Notice or to the assumption and assignment of a Non-Residential Lease or Other Executory Contract (i) shall be forever barred from objecting thereto, including (a) making any demands for additional cure amounts or monetary compensation on account of any alleged defaults for the period prior to the applicable objection deadline against the Debtors, their estates or the Stalking Horse Bidder or other Successful Bidder selected at the Auction, if any, with respect to any such Non-Residential Lease or Other Executory Contract and (b) asserting that the Stalking Horse Bidder or other Successful Bidder has not provided adequate assurance of future performance as of the date of the Sale Order and (ii) shall be deemed to consent to the sale of the Acquired Assets as approved by the Sale Order.***

**Other Relief Granted**

25. The Debtors are authorized and directed to enter the amendment to the Stalking Horse APA attached hereto as **Exhibit 4** and to take any and all actions necessary or appropriate to implement such amendment.

26. The Debtors are authorized to execute and deliver all instruments and documents and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

27. The Good Faith Deposits of the Stalking Horse Bidder and any other bidder, and any other amounts deposited into escrow pursuant to the applicable purchase agreement (which, in the case of the Stalking Horse Bidder, shall be the Stalking Horse APA), shall be held in the Escrow Account by the Escrow Agent and shall not become property of the Debtors' bankruptcy estates unless the Deposit or other Escrow Amount is otherwise due and payable to the Debtors in accordance with the applicable purchase agreement (which, in the case of the Stalking Horse

Bidder, shall be the Stalking Horse APA). The agreements with respect to the Escrow Account set forth in the Stalking Horse APA (the "Escrow Agreement") shall be binding and enforceable against the Debtors and their estates in all respects and the Debtors are authorized and directed to perform its obligations thereunder. The Debtors are authorized to enter into an escrow agreement substantially in the form of the Escrow Agreement with each other bidder (if any), and when executed by the Debtors, such escrow agreements (if any) shall be binding and enforceable against the Debtors and their estates in all respects.

28. In the event there is a conflict between this Order and the Motion or the Stalking Horse APA, this Order shall control and govern.

29. This Order shall be binding in all respects upon any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy cases or upon a conversion to chapter 7 under the Bankruptcy Code.

30. The Stalking Horse Bidder has standing to enforce the terms of this Order.

31. This Order shall be immediately effective and enforceable upon entry hereof, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

32. The requirements set forth in Local Rule 9013-1 are satisfied by the contents of the Motion.

33. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

34. The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

35. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

36. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

Dated: July 8th, 2016
New York, New York

/s/ STUART M. BERNSTEIN
STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE