**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
: 
In re                                        :         Chapter 11
                                             :
Gawker Media LLC, *et al.*,[1]               :         Case No. 16-11700 (SMB)
                                             :
            Debtors.                         :         (Jointly Administered)
                                             :
------------------------------------------------------x

**ORDER GRANTING DEBTORS' APPLICATION PURSUANT TO
BANKRUPTCY CODE SECTIONS 105(a) AND 363(b) FOR ENTRY OF
AN ORDER AUTHORIZING THE DEBTORS TO (I) RETAIN
OPPORTUNE LLP TO PROVIDE THE DEBTORS WITH A CHIEF
RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL,
AND (II) DESIGNATE WILLIAM D. HOLDEN AS CHIEF RESTRUCTURING
OFFICER FOR THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE**

Upon the Application, dated June 20, 2016 (the "Application"),[2] of Gawker Media Group, Inc. and its above-captioned debtor affiliates, as debtors and debtors in possession (the "Debtors"), for an order authorizing the Debtors to (I) retain Opportune LLP ("Opportune") to provide the Debtors with a chief restructuring officer ("CRO") and certain additional personnel, and (II) designate William D. Holden ("Mr. Holden") as chief restructuring officer for the debtors *nunc pro tunc* to the petition date, pursuant to sections 363(b) and 105(a) of title 11 of the United States Code (the "Bankruptcy Code"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this proceeding being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue of this proceeding this proceeding and the Motion in this Court being proper pursuant to 28 U.S.C. § 1408; and due and proper notice of the Motion having been

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011. Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

given; and the Court having found that no other or further notice is needed or necessary; and the Court having reviewed the Motion and the First Day Declaration and having heard statements in support of the Motion at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors, and other parties in interest; and any objections to the relief requested in the Motion having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, THAT:**

1. The Motion is GRANTED to the extent provided herein.

2. The Debtors are authorized, pursuant to sections 363(b) and 105(a) of the Bankruptcy Code, to employ and retain Opportune to provide the Debtors a chief restructuring officer ("CRO") and additional personnel, in accordance with the terms and conditions of the Engagement Letter, *nunc pro tunc* to the Petition Date.

3. The Debtors are authorized, pursuant to sections 363(b) and 105(a) of the Bankruptcy Code, to designate William D. Holden, as the CRO, *nunc pro tunc* to the Petition Date.

4. The terms and conditions of the Engagement Letter, including without limitation, the indemnification provisions and the fee provisions, as set forth in the Application, are reasonable terms and conditions of employment and are hereby approved; subject to the following terms, which apply notwithstanding anything in the Engagement Letter or the Application to the contrary:

57659314_1

(a) Opportune and its affiliates shall not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claims administrator, or investor/acquirer) in connection with the above-captioned cases;

(b) In the event the Debtors seek to have Opportune personnel assume executive officer positions that are different than the positions disclosed in the Application, or to materially change the terms of the engagement by either (i) modifying the functions of personnel, (ii) adding new executive officers, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed;

(c) No principal, employee or independent contractor of Opportune and its affiliates shall serve as a director of any of the above-captioned Debtors during the pendency of the above-captioned cases;

(d) For a period of three years after the conclusion of the engagement, neither Opportune nor any of its affiliates shall make any investments in the Debtors or the Reorganized Debtors;

(e) The CRO shall act under the direction, control and guidance of the Debtors' boards of directors or equivalent and shall serve at the pleasure of the Debtors' boards of directors or equivalent; and

(f) Opportune shall disclose any and all facts that may have a bearing on whether Opportune, its affiliates, and/or any individuals working on the engagement have any interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or

for any other reason. The obligation to disclose identified in this subparagraph is a continuing obligation.

5.      The Debtors are authorized to pay Opportune in such amounts and at such times as is provided in the Engagement Letter; *provided* that: (a) notwithstanding anything to the contrary in the Engagement Letter or the Application, Opportune shall file a final fee application for allowance of its compensation and expenses which shall be subject to Court approval pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any further order of the Court; (b) Opportune shall file with the Court, and provide notice to the U.S. Trustee and counsel to any official committee of unsecured creditors appointed in the Chapter 11 Cases, reports of compensation earned and expenses incurred on a monthly basis; *provided*, that Opportune shall maintain daily time records, which shall include a summary that describes the total hours worked by individual timekeeper and services provided, identifies the compensation earned by each executive officer and staff employee provided, and itemizes the expenses incurred; and (c) all compensation shall be subject to review by the Court in the event an objection is filed.

6.      All requests by Indemnified Persons for the payment of indemnification, contribution, or otherwise as set forth in the Engagement Letter during the pendency of the Chapter 11 Cases shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided that*, in no event shall an Indemnified Person be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, willful misconduct, or for a contractual dispute in which the Debtors allege the

57659314_1

breach of an Indemnified Person's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible.

7. Notwithstanding anything to the contrary in the Engagement Letter or the indemnification provisions therein, in the event that an Indemnified Person is not entitled to indemnification on account of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, willful misconduct, or for a contractual dispute in which the Debtors allege the breach of an Indemnified Person's contractual obligations, it shall also not be entitled to any claim or right of contribution, limitation of liability, or exoneration.

8. All compensation and reimbursement due to, and other rights of Opportune and the CRO in accordance with the Engagement Letter, including without limitation indemnification obligations, shall be treated and allowed as administrative expenses in accordance with section 503 of the Bankruptcy Code and shall be paid in accordance with the Engagement Letter.

9. In connection with any increases in Opportune's rates, Opportune shall file a supplemental declaration with the Court and provide ten business days' notice to the U.S. Trustee prior to any increase in rates. The supplemental declaration shall set forth the requested rate increases, explain the basis for the requested rate increase, and certify that the Debtors have consented to the requested rate increases.

10. To the extent there is any inconsistency between this Order and the Engagement Letter and/or the Application, the provisions of this Order shall govern.

11. The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted in this Order.

12. The requirements of Bankruptcy Rule 6004(a) are hereby waived.

13. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the retention of Opportune and the implementation, interpretation, and enforcement of this Order.

Dated: July 14th, 2016
　　　　New York, New York

　　　　　　　　　　　　　　　　　　/s/ STUART M. BERNSTEIN
　　　　　　　　　　　　　　　　　　HONORABLE STUART M. BERNSTEIN
　　　　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE

57659314_1