**Hearing Date: August 9, 2016 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: August 4, 2016 at 4:00 p.m. (Prevailing Eastern Time)**

ROPES & GRAY LLP
Gregg M. Galardi
Jonathan P. Gill
Marc B. Roitman
Stacy A. Dasaro
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
                                                      :
In re                                                 :        Chapter 11
                                                      :
Gawker Media LLC, *et al.*,[1]                        :        Case No. 16-11700 (SMB)
                                                      :
                          Debtors.                    :        (Jointly Administered)
                                                      :
------------------------------------------------------x

**NOTICE OF DEBTORS' APPLICATION PURSUANT TO SECTIONS 327(e),
328(a), AND 330 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES
2014 AND 2016, AND LOCAL RULES 2014-1 AND 2016-1 FOR ENTRY OF
AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
CAHILL GORDON & REINDEL LLP AS SPECIAL LITIGATION
COUNSEL EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

    **PLEASE TAKE NOTICE** that a hearing (the "Hearing") on the Application (the

"Application" a copy of which is attached hereto) of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") for entry of an order authorizing the Debtors to retain

and employ Cahill Gordon & Reindel LLP as special litigation counsel effective *nunc pro tunc* to

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

the Petition Date will be held before the Honorable Stuart M. Bernstein of the United States

Bankruptcy Court for the Southern District of New York (the "Court"), in Room 723, One

Bowling Green, New York, New York 10004-1408, on **August 9, 2016 at 10:00 a.m.**

**(prevailing Eastern Time).**

      **PLEASE TAKE FURTHER NOTICE** that responses or objections to the Application

and the relief requested therein, if any, shall be in writing, shall conform to the Federal Rules of

Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York,

shall set forth the basis for the response or objection and the specific grounds therefore, and shall

be filed with the Court electronically in accordance with General Order M-399 by registered

users of the Court's case filing system (the User's Manual for the Electronic Case Filing System

can be found at http://www.nysb.uscourts.gov, the official website for the Court), with a hard

copy delivered directly to chambers and served so as to be actually received no later than **August**

**4, 2016 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline"), upon: (i) the

Debtors, Gawker Media LLC, 114 Fifth Avenue, 2d Floor, New York, NY 10011, Attn. Heather

Dietrick (heather@gawker.com); (ii) counsel for the Debtors, Ropes & Gray LLP, 1211 Avenue

of the Americas, New York, NY 10036, Attn: Gregg M. Galardi

(gregg.galardi@ropesgray.com);  (iii) the Office of the United States Trustee for the Southern

District of New York, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Greg Zipes &

Susan Arbeit; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern

District of New York; (vi) proposed counsel to the Official Committee of Unsecured Creditors,

Simpson Thacher & Bartlett, 425 Lexington Avenue, New York, NY 10017, Attn: Sandy Qusba

(squsba@stblaw.com) and William T. Russell (wrussell@stblaw.com); (vii) counsel to US VC

Partners LP, as Prepetition Second Lien Lender, Latham & Watkins LLP, 330 North Wabash

58086306_4

Avenue, Suite 2800, Chicago, IL 60611, Attn: David Heller (david.heller@lw.com) & Keith A.

Simon, 885 Third Avenue, New York, New York 10022, Attn: Keith A. Simon

(keith.simon@lw.com); (viii) counsel to Cerberus Business Finance, LLC, as DIP Lender,

Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Adam C.

Harris (adam.harris@srz.com); (ix) Cahill Gordon & Reindel LLP, 80 Pine Street, New York,

New York 10005, Attn: Susan Buckley (sbuckley@cahill.com); and (x) those persons who have

formally appeared and requested service in these cases pursuant to Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Application may be obtained

free of charge by visiting the website of Prime Clerk LLC at

https://cases.primeclerk.com/gawker. You may also obtain copies of any pleadings by visiting

the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees

set forth therein.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned

thereafter from time to time without further notice other than an announcement of the adjourned

date or dates at the Hearing or at a later hearing. The Debtors will file an agenda before the

Hearing, which may modify or supplement the Application to be heard at the Hearing.

3

**PLEASE TAKE FURTHER NOTICE** that if no objections or other responses are timely filed and served with respect to the Application, the Debtors may, on or after the Objection Deadline, submit to the Court an order substantially in the form annexed as **Exhibit A** to the Application, which order the Court may enter with no further notice or opportunity to be heard.

Dated:  July 25, 2016
        New York, New York

*/s/ Gregg M. Galardi*
Gregg M. Galardi
Jonathan P. Gill
Marc B. Roitman
Stacy A. Dasaro
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
gregg.galardi@ropesgray.com
jonathan.gill@ropesgray.com
marc.roitman@ropesgray.com
stacy.dasaro@ropesgray.com

**Hearing Date: August 9, 2016 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: August 4, 2016 at 4:00 p.m. (Prevailing Eastern Time)**

ROPES & GRAY LLP
Gregg M. Galardi
Jonathan P. Gill
Marc B. Roitman
Stacy A. Dasaro
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
|   |   |   |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| Gawker Media LLC, *et al.*,[1] | : | Case No. 16-11700 (SMB) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

------------------------------------------------------x

**DEBTORS' APPLICATION PURSUANT TO SECTIONS 327(e), 328(a),**
**AND 330 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014**
**AND 2016 AND LOCAL RULES 2014-1 AND 2016-1 FOR ENTRY OF AN**
**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**CAHILL GORDON & REINDEL LLP AS SPECIAL LITIGATION**
**COUNSEL EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

Gawker Media LLC ("Gawker Media") and its affiliated debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "Debtors") respectfully

submit this application (the "Application") for entry of an order, substantially in the form

attached hereto as Exhibit A, authorizing the Debtors to retain Cahill Gordon & Reindel LLP

("Cahill") as special litigation counsel, *nunc pro tunc* to the Petition Date pursuant to sections

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

("Cahill") as special litigation counsel, *nunc pro tunc* to the Petition Date pursuant to sections 327(e), 328(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").  In support of the Application, the Debtors submit the Declaration of Susan Buckley (the "Buckley Declaration"), attached hereto as Exhibit B, and (ii) the Declaration of William D. Holden (the "Holden Declaration"), attached hereto as Exhibit C.  In support of the Motion, the Debtors hereby incorporate by reference the *Declaration of William D. Holden in Support of First Day Motions* (the "First Day Declaration") [Docket No. 7].  In further support of the Application, the Debtors respectfully represent as follows:

### Jurisdiction

1.    This Court has jurisdiction to consider and determine this application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The legal predicates for the relief requested herein are Section 327(e), 328(a), 330 and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1.

### Procedural Background

4.    On June 10, 2016, Gawker Media filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On June 12, 2016, Gawker Media Group, Inc. ("GMGI") and Kinja Kft. ("Kinja") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

58086306_4

5.      On June 16, 2016 the Court entered an order authorizing the joint administration and procedural consolidation of the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 41].

6.      On June 24, 2016, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee").  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

7.      The Debtors are operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      The factual background regarding the Debtors, their business operations, their capital and debt structure, and the events leading up to the filing of these Chapter 11 Cases are set forth in detail in the First Day Declaration.

### Relief Requested

9.      The Debtors seek an order of this Court, pursuant to Sections 327(e), 328(a) and 330 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1, authorizing the Debtors to employ and retain Cahill, *nunc pro tunc* to the Petition Date. The Debtors request that the Court approve the employment of Cahill to represent the Debtors as described in this Application, in accordance with the terms of Gawker Media's engagement of Cahill, and the proposed Order submitted herewith, as the Debtors' special litigation counsel to perform legal services attendant to certain litigation, as more fully described herein.  For the reasons set forth below, the Debtors submit that the relief requested is in the best interest of the Debtors, their estates, their creditors, stakeholders, and other parties in interest, and therefore, should be granted.

58086306_4

## Retention of Cahill

10.     The Debtors seek to retain Cahill as special litigation counsel because of Cahill's experience, knowledge and familiarity with the Debtors' businesses generally and the Mail Media Litigation (as defined below).  Since July 2015, Cahill has represented Gawker Media and certain of its employees in litigation and threatened litigation challenging the content of certain articles published on Gawker.com and purporting to allege claims for, among other things, defamation, invasion of privacy, misappropriation of a person's name or likeness, and wrongful infliction of emotional distress.   Accordingly, the Debtors submit that Cahill's knowledge, expertise, and experience of the Debtors' business and operations qualifies Cahill to work on behalf of the Debtors' estate in the most efficient and cost-effective manner.

11.     The Debtors seek to retain Cahill to perform services (collectively, the "Services") including, but not limited to, the continued counsel and representation on all matters in connection with the case captioned *Mail Media Inc. d/b/a Mail Online v. Gawker Media LLC and James King*, No. 1591342015, currently pending in the Supreme Court of the State of New York, for the County of New York and any other court of competent jurisdiction that may hear matters in connection with such case (the "Mail Media Litigation").  Though the automatic stay has prohibited the immediate prosecution of the Mail Media Litigation against Gawker Media, and prevents the commencement of new litigation against the Debtors, the claims will have to be liquidated and/or estimated in one forum or another.

12.     As part of this retention by the Debtors, Cahill will also continue to represent co-defendant James King, the freelance reporter who authored the news report at issue in the Mail Media Litigation.

13.     No other law firm is providing the Debtors with the Services.  Cahill will work with Ropes & Gray LLP to ensure that the services provided by each firm are not duplicative of any work performed by any of the Debtors' professionals.

14.     If the Debtors were required to retain counsel other than Cahill to perform the Services, the Debtors, their estates, and all parties in interest would lose the benefit of Cahill's experience and expertise on the matters for which Cahill has been serving the Debtors prior to the filing of these chapter 11 cases.  In particular, the disruption and duplicative costs involved in replacing Cahill on the Mail Media Litigation at this juncture would prejudice the Debtors, their estates, and their creditors.

15.     The Debtors respectfully submit that Cahill is well-qualified and uniquely able to provide the Services in an efficient and cost-effective manner, and Cahill's retention as special litigation counsel is in the best interests of the Debtors and their estates.

<u>**No Adverse Interest**</u>

16.     After consultation with the Debtors and the United States Trustee, to avoid unwarranted expenses to the Debtors in the context of Cahill's limited engagement under section 327(e) in these cases, Cahill has not undertaken a comprehensive conflict check of all interested parties.

17.     To the best of the Debtor's knowledge and based upon the Buckley Declaration, Cahill has not represented, nor does it now represent, any interest adverse to the Debtors with respect to the matters on which it is to be employed.[2]  As discussed in the Buckley Declaration, Cahill has a $86,865.35 claim against the Debtors for prepetition services provided in connection with the Mail Media Litigation.  Cahill has also accrued (but not billed) time and associated

---

[2] If any new facts or circumstances are discovered, Cahill will supplement its disclosure to the Court.

58086306_4

charges, and incurred disbursements, for services from the date this proceeding was initiated through the date of this Application, and it is possible that Cahill will learn of disbursements incurred prior to this Application that have not been billed by, or paid to, its respective vendors.

18.    In the ninety days prior to the Petition Date, the Debtors paid Cahill an aggregate of $157,026.70 on account of their obligations for Cahill's services related to the Mail Media Litigation.

19.    For the reasons set forth in the Buckley Declaration, the Debtors do not believe that there is a material conflict between the respective interests of Gawker Media and Mr. King.

### Professional Compensation

20.    Subject to Court approval, and in accordance with section 330(a) of the Bankruptcy Code and the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses (the "Fee Guidelines"), and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (the "Interim Compensation Order") [Docket No. 94], and as set forth in the Buckley Declaration, the Debtors propose to compensate Cahill on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by Cahill according to its customary reimbursement policies.  Cahill's range of discounted hourly rates with respect to those Cahill lawyers currently expected to provide the Services, subject to change from time to time, are $800 for partners (discounted from the normal range of $920 - $1,140) and $332 - $588 for associates (discounted by 20% from the normal range of $416 - $735).  These hourly rates are subject to periodic adjustments.

58086306_4

21.     Cahill will maintain detailed, contemporaneous records of time and any actual and necessary expenses incurred in connection with the rendering of the legal services described above by category and nature of services rendered.

22.     Cahill will also seek reimbursement for reasonable expenses incurred in connection with its representation of Gawker Media and Mr. King, consistent with the Fee Guidelines and the Interim Compensation Order.

23.     Cahill will be entitled to participate in any carve-outs for the benefit of the Debtors' professionals that may be available in these cases.

## STATEMENT REGARDING U.S. TRUSTEE GUIDELINES

24.     The following information is provided in response to the request for additional information set forth in Paragraph D.1. of the U.S. Trustee Guidelines:

**Question:**    **Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?**

Answer:     Yes.  Cahill previously agreed to provide the Debtors with discounted rates for this engagement.  Those rates are set forth above.

**Question:**    **Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?**

Answer:     No.

**Question:**    **If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.**

Answer:     During the 12 month prepetition period, Cahill provided legal services to the Debtors pursuant to an agreement with Gawker Media to provide discounted rates of $800/hour for partner time and a twenty percent discount off standard rates for associate and staff time.  That arrangement remained in place for the entire period of Cahill's representation and will remain in place postpetition.  As is typical, rates for associates working on these matters (and all other firm matters) increased effective January 1,

7

2016, and those associates advanced in class to higher rates, and such rates will likely increase in the future.

**Question:**    **Has your client approved your prospective budget and staffing plan, and, if so for what budget period?**

Answer:    Cahill and the Debtors are currently working on a budget and staffing plan for Cahill's work for the Debtors. The budget contemplates that Cahill will assist the Debtors and Mr. King with the Mail Media Litigation in which Cahill already represents the Debtors and Mr. King. The budget necessarily will involve a projection of future events with limited information and is subject to change as the case develops.

## Basis for Relief

25.    Section 327(e) of the Bankruptcy Code authorizes a debtor in possession to employ one or more attorneys to represent the debtor on specified matters so long as those attorneys do not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which they are to be employed.  *See* 11 U.S.C. § 327(e).  Moreover, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 . . . solely because of such person's employment by or representation of the debtor before the commencement of the case." *See* 11 U.S.C. § 1107(b).

26.    Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer [or] on an hourly basis . . ." 11 U.S.C. § 328(a).

27.    As discussed above, Cahill received $157,026.70 within the ninety days before the petition date in respect of the active defense of the Mail Media Litigation on behalf of Gawker Media and Mr. King.

28.    The receipt of prepetition payments does not preclude a law firm from being employed as special counsel under section 327(e) so long as the receipt of such payment does not cause it to "hold any interest adverse to the debtor or to the estate with respect to the matter on

8

which [it] is to be employed." 11 U.S.C. § 327(e); *see also In re Mortgages Ltd.*, No. 08-07465 (RJH), 2008 WL 5084925, at *1-2 (Bankr. D. Ariz. Aug. 14, 2008) ("[T]he potential receipt of a preference does not disqualify a firm from employment as special counsel when the debtor's and the firm's interests are parallel with respect to the matters for which the firm is to be employed."); *cf. Giuliano v. Ernst & Young, LLP (In re RIH Acquisitions NJ, LLC)*, No. 13-34483, 2016 WL 2996950, at *4 (Bankr. D. N.J. May 24, 2016) (analogizing retention of ordinary course professional to retention under section 327(e) and concluding that Court need not address whether professional received preferential transfers to approve its retention). Indeed, "[s]ince the role of special counsel is, by definition, limited, the trustee need only show that there is no adverse interest related to that role itself." *See Hogil Pharmaceutical Corp. v. Sapir (In re Innomed Labs, LLC)*, No. 07-cv-4778 (WCC), 2008 WL 276490 (S.D.N.Y. Jan. 29, 2008); *see also Bank of Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 622 (2d Cir. 1992) ("we should reason by analogy to 327(e), so that 'where the trustee seeks to appoint counsel only as 'special counsel' for a specific matter, there need only be no conflict between the trustee and counsel's creditor client with respect to the specific matter itself.").

29.    This Court and other courts in this district have approved retentions of counsel under section 327(e) where the law firm to be retained received substantial payments within the ninety days prior to the petition date. *See, e.g., In re SunEdison, Inc.*, No. 16-10992 (SMB) (Bankr. S.D.N.Y. May 20, 2016) [Docket No. 361] (approving section 327(e) retention of law firm that received approximately $2.37 million in fees for legal services during the ninety days before the petition date); *In re Apex Silver Mines Ltd.*, No. 09-10182 (JMP) (Bankr. S.D.N.Y. Jan. 22, 2009) [Docket No. 57] (approving section 327(e) retention of law firm that received unspecified compensation during the ninety days before the petition date). Accordingly, the fact

that the Debtors paid Cahill for services rendered within the ninety days prior to the Petition Date does not disqualify Cahill from being retained pursuant to section 327(e).  Moreover, Cahill believes that it has meritorious defenses to any potential preference claims.

30.    As discussed above and in the Buckley Declaration, Cahill has a prepetition claim in the amount of $86,865.35 against Gawker Media, for services rendered in connection with the Mail Media Litigation.  That claim for prepetition fees does not disqualify special counsel under section 327(e), as it might under section 327(a).  Although Cahill might not technically be "disinterested" by virtue of its potential claim against Gawker Media, Cahill is nevertheless qualified to be retained under section 327(e) because it does not have an "interest adverse to the debtor or to the estate with respect to the matter on which [it] is to be employed."  *See* 11 U.S.C. § 327(e); *AroChem*, 176 F.3d at 622.

31.    Cahill's representation of Mr. King in the Mail Media Litigation does not give rise to an adverse interest on the matters for which Cahill is to be engaged.  As set forth in the Buckley Declaration, Cahill has concluded, consistent with its obligations under the Rules of Professional Responsibility, that the interests of the Debtors and Mr. King are currently aligned, and are unlikely to diverge.

32.    Finally, *nunc pro tunc* relief is appropriate here.  Since the Petition Date, the Debtors have worked diligently on various matters related to the proposed sale of substantially all of its assets, and were preparing for the evidentiary hearing that was held in this Court on July 19, 2016.  The Debtors respectfully submit that the filing of this Application is appropriate and timely under the circumstances, so as to justify *nunc pro tunc* relief.

33.    For the reasons set forth in this Application, the Buckley Declaration, and the Holden Declaration, the Debtors submit that Cahill's retention and employment satisfies section

10

327(e) and this Application should be approved.  If the Debtors were required to retain counsel other than Cahill, the Debtors, their estates, and all parties in interest would be prejudiced, as the Debtors would lose Cahill's invaluable experience and knowledge on, *inter alia*, the Mail Media Litigation.  Accordingly, it is in the best interests of the Debtors and their estates to retain Cahill.

## Waiver of Stay

34.     To the extent applicable, the Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the Court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Application is necessary for the Debtors to protect their interests in the Mail Media Litigation and to preserve value for their estates.  In addition, the Debtors may soon be in a position to finalize a settlement in the Mail Media Litigation, and will need to move quickly to do so.  Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the need for the relief sought herein justifies immediate relief.

## Notice

Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York; (ii) the Internal Revenue Service; (iii) the United States Attorney for the Southern District of New York;  (iv) proposed counsel to the Official Committee of Unsecured Creditors; (v) counsel to US VC Partners LP, as Prepetition Second Lien Lender; (vi) counsel to Cerberus Business Finance, LLC, as DIP Lender; (v) Counsel to the Stalking Horse Bidder; (vi) those persons who have formally appeared and requested service in these cases pursuant to Bankruptcy Rule 2002; and (vii) Cahill Gordon & Reindel LLP.  In light

11

of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

58086306_4

WHEREFORE, the Debtors respectfully request that this Court enter an Order (a) authorizing the Debtors to retain Cahill Gordon and Reindel LLP as special litigation counsel to the Debtors, *nunc pro tunc* to the Petition Date, for the purposes and upon the terms as set forth herein; and (b) granting to the Debtors such other and further relief as may be just or proper.

Respectfully submitted,

Gawker Media LLC,

Dated: July 25, 2016

By:    Heather Dietrick
        President and General Counsel

13

## Exhibit A

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                        :
In re                                   :        Chapter 11
                                        :
Gawker Media LLC, *et al.*,[1]          :        Case No. 16-11700 (SMB)
                                        :
                Debtors.                :        (Jointly Administered)
                                        :
-------------------------------------------------------x

### ORDER GRANTING DEBTORS' APPLICATION PURSUANT TO SECTION 327(e), 328(a) AND 330 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014 AND 2016, AND LOCAL RULES 2014-1 AND 2016-1 FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF CAHILL GORDON & REINDEL LLP AS SPECIAL LITIGATION COUNSEL EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

Upon the application (the "Application")[2] of the Debtors for an Order, pursuant to

sections 327(e), 328(a), and 330 of title 11 of the United States Code (the "Bankruptcy Code"),

Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New

York (the "Local Rules") authorizing the employment of Cahill Gordon & Reindel LLP

("Cahill") as special litigation counsel to the Debtors *nunc pro tunc* to the Petition Date; and

upon the First Day Declaration and the Buckley Declaration, and the Holden Declaration; and

the Court having reviewed the Application, the First Day Declaration, the Buckley Declaration,

and the Holden Declaration; and the Court being satisfied with the representations made in the

Application and the Buckley Declaration that Cahill represents no interest adverse to the Debtors

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011. Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Application.

58086306_4

with respect to the matters on which Cahill will be employed, that its employment is necessary

and in the best interests of the Debtors' estates, creditors, and other parties in interest; and it

appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334;

and it further appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the

Application having been given under the particular circumstances; and it appearing that no other

or further notice need be provided; and upon the record herein; and after due deliberation

thereon; and sufficient cause appearing therefor, it is hereby

**ORDERED THAT**,

1.     The Application is GRANTED as set forth herein.

2.     Pursuant to sections 327(e), 328(a) and 330 of the Bankruptcy Code, the Debtors,

as debtors and debtors in possession, are authorized to employ and retain Cahill as special

litigation counsel effective *nunc pro tunc* to the Petition Date, in accordance with the

Application, the Buckley Declaration, the Holden Declaration, and this Order, to perform the

Services.

3.     To the extent any of the Application, the Buckley Declaration, or the Holden

Declaration are inconsistent with this Order, the terms of this Order shall govern.

4.     Cahill shall be compensated in accordance with the applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the *Order*

*Establishing Procedures for Interim Compensation and Reimbursement of Expenses of*

*Professionals* (the "Interim Compensation Order") [Docket No. 94] and shall be entitled to

participate in any carve-outs for the benefit of the Debtors' professionals that may be available in

these cases; provided, however, that Cahill shall be permitted to redact the time entries submitted

2

to parties other than the Court and the United States Trustee in connection with their Monthly

Fee Statements to remove information protected by the attorney-client privilege, attorney work-

product doctrine or other applicable privileges, as determined by Cahill in its sole discretion.

5.      Prior to applying any increases in its hourly rates beyond the rates set forth in the

Application, Cahill shall provide ten days' notice of any such increases to the Debtors, the

United States Trustee, counsel to the Official Committee of Unsecured Creditors, counsel to US

VC Partners as Second Lien Lender, and Cerberus Business Finance LLC as DIP Lender and file

a notice on ECF.  The United States Trustee retains all rights to object to such rate increase.

6.      Notwithstanding any stay that might be imposed by Bankruptcy Rule 6004(h),

this Order shall be effective and enforceable immediately upon entry hereof.

7.      Notwithstanding any otherwise applicable provisions to the contrary, during the

pendency of the retention authorized herein, Cahill will not represent present or future clients of

Cahill on matters adverse to the Debtors in these cases.  For the avoidance of doubt, Cahill's

representation of non-Debtor defendants to the extent set forth in the Application shall be

permitted under this Order.

8.      The Debtors are authorized and empowered to take all actions necessary to

implement the relief granted in this Order.

9.      This Court shall retain jurisdiction with respect to all matters arising from or

related to the implementation or interpretation of this Order.


Dated: August __, 2016
New York, New York


                                        _____
                                        HONORABLE STUART M. BERNSTEIN
                                        UNITED STATES BANKRUPTCY JUDGE

58086306_4

## **Exhibit B**

**Buckley Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
:
In re                                                              :        Chapter 11
:
Gawker Media LLC, *et al.*,[1]                    :        Case No. 16-11700 (SMB)
:
Debtors.                    :        (Jointly Administered)
:
-------------------------------------------------------x

### DECLARATION OF SUSAN BUCKLEY IN SUPPORT OF DEBTORS' APPLICATION PURSUANT TO SECTIONS 327(e), 328(a) AND 330 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014 AND 2016 AND LOCAL RULES 2014-1 AND 2016-1 FOR ENTRY OF AN ORDER  AUTHORIZING THE RETENTION AND EMPLOYMENT OF CAHILL GORDON & REINDEL LLP AS SPECIAL LITIGATION COUNSEL EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

I, Susan Buckley, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information, and belief:

1.      I am a partner at Cahill Gordon and Reindel LLP ("Cahill") and duly authorized to make this Declaration on behalf of Cahill.  I make this Declaration in support of the application (the "Application")[2] of the Debtors for an Order, pursuant to Bankruptcy Code sections 327(e),  328(a), and 330, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1 authorizing the employment of Cahill as special litigation counsel to the Debtors *nunc pro tunc* to the Petition Date.  I am admitted and in good standing to practice law in the

---

[1] I have been advised by the Debtors' primary counsel that the last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056); the offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011;and Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Application.

State of New York and before the United States District Court for the Southern District of New
York.

## Retention of Cahill As Special Counsel for the Debtors

2.       Pursuant to the Application, the Debtors seek authority to retain Cahill,
*nunc pro tunc* to the Petition Date, to perform  services (collectively, the "Services") including,
but not limited to, the continued counsel and representation on all matters in connection with the
case captioned *Mail Media Inc. d/b/a Mail Online v. Gawker Media LLC and James King*, No.
1591342015, currently pending in the Supreme Court of the State of New York, for the County
of New York and any other court of competent jurisdiction that may hear matters in connection
with such case (the "Mail Media Litigation").[3]

3.       Cahill is well qualified to serve as the Debtors' special counsel and to
render the Services in these cases.  Cahill is a leading global law firm with considerable expertise
in many areas of law, including substantial experience representing companies in media and
other high stakes litigation matters.

## Disclosures of Cahill

4.       In connection with its proposed retention under section 327(e) of the
Bankruptcy Code, Cahill searched its client/matter records for references to any of the Debtors to
determine whether it had any conflicts or other connections that might cause it to hold or
represent an interest adverse to the Debtors with respect to the matters on which Cahill is to be
employed (the "Disclosure Procedures").[4]

---

[3] As part of this retention, Cahill will also continue to represent Mr. King, the freelance reporter who authored the news
report at issue, in such litigation, at the Debtors' expense.  Cahill has concluded, consistent with its obligations under the
Rules of Professional Responsibility, that the interests of the Debtors and Mr. King are currently aligned and are unlikely
to diverge.

[4]       After consultation with the Debtors and with the Office of the United States Trustee, to

5.      In addition, I sent a general inquiry to all Cahill partners and employees by electronic mail to determine if any such person (i) is related to certain bankruptcy judges or employees of the Office of the United States Trustee (Cecilia G. Morris, James L. Garrity, Martin Glenn, Mary Kay Vyskocil, Michael E. Wiles, Robert D. Drain, Robert E. Grossman, Sean H. Lane, Shelley C. Chapman, Stuart M. Bernstein, Alicia Leonhard, Amanda Cassara, Andrea B. Schwartz, Andy Velez-Rivera, Anna M. Martinez, Brian S. Masumoto, Cheuk M. Ng, Danny A. Choy, Ercilia A. Mendoza, Greg M. Zipes, Guy A. Van Baalen, Ilusion Rodriguez, Kathleen Schmitt, Linda A. Riffkin, Lisa Penpraze, Maria Catapano, Mary V. Moroney, Myrna R. Fields, Nadkarni Joseph, Paul K. Schwartzberg, Richard C. Morrissey, Serene Nakano, Susan Arbeit, Susan Golden, Sylvester Sharp, Victor Abriano, and William K. Harrington), (ii) own or recently owned stock in any of the Debtors, (iii) holds a claim against any of the Debtors, or (iv) has ever been an officer, director, or employee of any of the Debtors.  No affirmative responses were received.

6.      Cahill employs approximately 300 lawyers in 3 offices in New York, Washington and London.  It has a large and diversified legal practice that encompasses the representation of many financial institutions and commercial corporations, among other individuals and entities.  Some of these individuals and entities are, or may consider themselves to be, creditors or parties in interest in the Debtors' chapter 11 cases or to otherwise have interests in these cases.  Cahill has represented, currently represents, and/or may represent in the future persons or entities listed among the interested parties (or their affiliates), as identified by the Debtors, in matters unrelated to the Services for which Cahill is to be retained.

---

avoid unwarranted expenses to the Debtors in the context of Cahill's limited engagement under section 327(e) in these cases, Cahill has not undertaken a comprehensive conflict check of all interested parties.

3

7.      As a further supplement to Cahill's disclosures set forth herein, and without limiting such disclosures, Cahill's partners and employees may have and/or may have had dealings with the Debtors in the ordinary course of the Debtors' business.

8.      Further, Cahill, its partners, and/or its employees:

a.      may have appeared in the past, and may appear in the future, in other cases unrelated to these cases or unrelated to the Services for which Cahill is to be retained where the Debtors' creditors or other parties with an interest in the Debtors may be involved;

b.      may represent, or may have represented, certain of the Debtors' creditors or other parties with an interest in the Debtors in matters that are unrelated to these chapter 11 cases or unrelated to the Services for which Cahill is to be retained; and

c.      may have had dealings with creditors or other parties with an interest in the Debtors that are unrelated to these chapter 11 cases or unrelated to the Services for which Cahill is to be retained.

9.      The proposed engagement of Cahill is not prohibited by Bankruptcy Rule 5002.

10.     Cahill believes that it can adequately represent the interests of the Debtors with respect to the matters described herein.

11.     Cahill is confident based on its diligence that it does not have any further disclosures to make in connection with this proposed representation.  However, despite the efforts described above, Cahill is unable to state with absolute certainty that every relevant client representation or other connection has been disclosed because the Debtors have thousands of

4

parties in interest and Cahill is an international law firm with approximately 300 lawyers in 3 separate offices here and abroad.  In this regard, if Cahill discovers additional information that it determines to be worthy of disclosure, it will submit a supplemental disclosure to the Court containing such additional information.

12.    Cahill has represented the defendants in the Mail Media Litigation since September 2015 and has counseled Gawker Media and certain of its employees on media law-related matters in the past.  As of June 10, 2016, Cahill was owed $85,865.35 by Gawker Media.

13.    To the best of my knowledge, information, and belief, Cahill does not represent or hold any interest adverse to the Debtors or their estates with respect to the matters for which Cahill is proposed to be retained.  Accordingly, I believe that Cahill satisfies the requirements for employment as special counsel pursuant to section 327(e) of the Bankruptcy Code.

### Professional Compensation

14.    Subject to the Court's approval, Cahill will charge for its services on an hourly basis in one-tenth hour (.1) increments, in accordance with the discounted rates it agreed, prepetition, to provide to the Debtors and to Mr. King.  Cahill's range of discounted hourly rates with respect to those Cahill lawyers currently expected to spend significant time on these chapter 11 cases, subject to change from time to time, are $800 for partners (discounted from the normal range of $920-1,140) and $332-588 for associates (discounted by 20% from the normal range of $416-735).

15.    Cahill will likely incur expenses in connection with its representation of the Debtors and Mr. King.  It is Cahill's general policy to charge its clients in all areas of practice for all other expenses incurred in connection with a client's case.  Cahill will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to its

5

other clients and at actual cost or an estimated actual cost where the actual cost is difficult to

determine.  Cahill believes that it is fairer to charge these expenses to the particular client rather

than increasing hourly rates uniformly and spreading the expenses among all clients.  Cahill does

not currently hold a retainer from the Debtors.

16.     Cahill intends to apply for compensation for professional services

rendered and reimbursement of expenses incurred in connection with this chapter 11 case in

compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local

Rules, the United States Trustee's Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses (the "Fee Guidelines"), and the *Order Establishing Procedures for

Interim Compensation and Reimbursement of Expenses of Professionals* (the "Interim

Compensation Order") [Docket No. 94].

17.     Subject to attorney client privilege limitations, Cahill also intends to make

a reasonable effort to comply with the U.S. Trustee's requests for information and additional

disclosures as set forth in the U.S. Trustee Guidelines, both in connection with the Application

and fee applications to be filed by Cahill in these chapter 11 cases.  Notwithstanding the

foregoing, Cahill reserves the right to ask for exceptions to any such rules and guidelines to the

extent it deems appropriate under the circumstances.

### STATEMENT REGARDING U.S. TRUSTEE GUIDELINES

18.     The following information is provided in response to the request for

additional information set forth in Paragraph D.1. of the U.S. Trustee Guidelines:

| | |
|---|---|
| **Question:** | **Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?** |
| Answer: | Yes.  Cahill previously agreed to provide the Debtors with discounted rates for this engagement.  Those rates are set forth above. |

58086306_4

**Question:**    **Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?**

Answer:    No.

**Question:**    **If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.**

Answer:    During the 12 month prepetition period, Cahill provided legal services to the Debtors pursuant to an agreement with Gawker Media to provide discounted rates of $800/hour for partner time and a twenty percent discount off standard rates for associate and staff time. That arrangement remained in place for the entire period of Cahill's representation and will remain in place postpetition. As is typical, rates for associates working on these matters (and all other firm matters) increased effective January 1, 2016, and those associates advanced in class to higher rates, and such rates will likely increase in the future.

**Question:**    **Has your client approved your prospective budget and staffing plan, and, if so for what budget period?**

Answer:    Cahill and the Debtors are currently working on a budget and staffing plan for Cahill's work for the Debtors. The budget contemplates that Cahill will assist the Debtors and Mr. King with the Mail Media Litigation in which Cahill already represents the Debtors and Mr. King. The budget necessarily will involve a projection of future events with limited information and is subject to change as the case develops.

19.    No promises have been received by Cahill, or any partner, counsel, or associate of Cahill, as to payment or compensation in connection with these chapter 11 cases other than in accordance with the provisions of the U.S. Trustee Guidelines.

20.    Cahill has not shared or agreed to share any of its compensation from the Debtors with any person, other than with partners, counsel, associates, or other employees of Cahill as permitted by section 504 of the Bankruptcy Code.

58086306_4

21.     Cahill will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid any unnecessary duplication of services.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 22nd day of July, 2016.

Susan Buckley

## **Exhibit C**

**Holden Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
:
In re                                                                           :          Chapter 11
:
Gawker Media LLC, *et al.*,[1]                                :          Case No. 16-11700 (SMB)
:
                               Debtors.              :          (Jointly Administered)
:
-------------------------------------------------------x

## DECLARATION OF WILLIAM D. HOLDEN IN SUPPORT OF DEBTORS' APPLICATION PURSUANT TO SECTIONS 327(e), 328(a) AND 330 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014 AND 2016, AND LOCAL RULES 2014-1 AND 2016-1 FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF CAHILL GORDON & REINDEL LLP AS SPECIAL LITIGATION COUNSEL EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

I, William D. Holden, being duly sworn, hereby declare as follows:

1.       I am the Chief Restructuring Officer of Gawker Media LLC ("Gawker Media"),

located at 114 Fifth Avenue, 2d Floor, New York, New York 10014.

2.       I submit this declaration (this "Declaration") in support of the application (the

"Application")[2] of the Debtors for an Order, pursuant to Bankruptcy Code sections 327(e),

328(a), and 330, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1

authorizing the employment of Cahill Gordon & Reindel LLP ("Cahill") as special litigation

counsel to the Debtors *nunc pro tunc* to the Petition Date.  The facts set forth herein are based on

my personal knowledge or information provided to me by the Debtors' management or other

professionals.

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Application.

## The Debtors' Selection of Cahill

3.      Cahill is proposed to serve as special litigation counsel to the Debtors, responsible for the matters described in the Application.  The Debtors recognize that a careful selection should be made when selecting and managing any counsel acting for debtors in a chapter 11 case, to ensure that the professionals are subject to the same client-driven market forces, scrutiny, and accountability as professionals in non-bankruptcy engagements.

4.      Here, Cahill has been engaged by the Debtors since 2015, for what were non-bankruptcy matters, and Cahill was subjected to the client-driven market forces and scrutiny when it was originally retained.  The contemplated engagement continues Cahill's engagement on the same terms, including a discount from Cahill's standard hourly rates, subject only to standard periodic rate increases.

5.      In addition, under the contemplated engagement, Cahill will charge only those actual and necessary expenses, for which it bills its clients, incurred in connection with the rendering of legal services described in the Application, by category and nature of services rendered.

6.      My understanding is that when Cahill was originally retained in 2015, Gawker Media considered alternative law firms as part of its selection process.  Gawker Media's decision to retain Cahill required consideration of cost, but more importantly, its expertise in the particular subject matter of the litigation it was defending.  Cahill was retained in a non-bankruptcy environment, and was subjected to the competition in the non-bankruptcy marketplace when it was retained.

## Rate Structure

7.    In my capacity as Chief Restructuring Officer, I am responsible, along with Heather Dietrick (General Counsel), for monitoring outside counsel retained by the Debtors in the ordinary course of business.  As indicated above, Cahill has informed the Debtors that the rates charged to the Debtors by Cahill reflect a discount off of the firm's standard hourly rates and that its rates for the Services are comparable to or less than the rates Cahill charges for similar matters in a non-bankruptcy environment.  As discussed below, I, or members of my team, or employees working under my supervision, are responsible for reviewing the invoices regularly submitted by Cahill.

## Cost Supervision

8.    The Debtors and Cahill are working on a prospective budget for the period from the Petition Date to 120 days after the Petition Date, recognizing that in the course of a large chapter 11 case, it is possible that there may be a number of unforeseen fees and expenses that will need to be addressed by the Debtors and Cahill.  The Debtors further recognize that it is their responsibility to monitor closely the billing practices of their counsel to ensure the fees and expenses paid by the estate remain consistent with the Debtors expectations and the exigencies of these chapter 11 cases.  The Debtors will continue to review the invoices that Cahill regularly submits, and together with Cahill, amend the budget periodically, as the Mail Media Litigation develops.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: July 25, 2016

William D. Holden

3