SIMPSON THACHER & BARTLETT LLP
Sandeep Qusba
William T. Russell, Jr.
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile:  (212) 596-9090

*Proposed Counsel to the Official Committee*
*of Unsecured Creditors of Gawker Media LLC, et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Gawker Media LLC, *et al.*<br><br>                              Debtors. | Chapter 11<br><br>Case No. 16-11700 (SMB)<br><br>(Jointly Administered)<br><br>**Re: Dkt. Nos. 130 – 133** |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF  UNSECURED
CREDITORS TO DEBTORS' APPLICATIONS FOR ENTRY OF ORDERS
AUTHORIZING THE RETENTION AND EMPLOYMENT OF BRANNOCK &
HUMPHRIES, CAHILL GORDON & REINDEL LLP, LEVINE SULLIVAN
KOCH & SCHULZ, LLP AND THOMAS & LOCICERO PL AS
SPECIAL LITIGATION COUNSEL [DKT. NOS. 130 – 133]**

**Table of Contents**

Page

**PRELIMINARY STATEMENT** ...................................................................................................1

**BACKGROUND** ........................................................................................................................3

**ARGUMENT** ..............................................................................................................................4

    **REPRESENTATION OF BOTH DEBTOR AND NON-DEBTOR DEFENDANTS BY PROPOSED SPECIAL COUNSEL WOULD VIOLATE SECTION 327(E) SINCE NON-DEBTOR DEFENDANTS' INTERESTS ARE ADVERSE TO THE DEBTORS' INTERESTS** ..............................................................................................4

        A.    In Their Applications, The Debtors Apply The Wrong Analysis In Concluding That Proposed Special Counsel Do Not Represent Adverse Interests ...................................................................................5

        B.    Non-Debtor Defendants Have Interests Adverse To The Debtors With Respect To The Allocation Of A Judgment Or A Settlement Among the Clients ...................................................................................7

        C.    The Non-Debtor Defendants Have Interests Adverse To The Debtors With Respect To Potential Contribution Claims ...........................9

        D.    Non-Debtors Have Interests Adverse To The Debtors With Respect To Potential Claims For Indemnification (And Related Issues Of Subordination) .............................................................................9

        E.    The Failure Of The Applications To Provide For An Allocation Among Clients So That The Debtors Pay Only Fees And Expenses Properly Attributable To The Debtors Highlights The Adverse Interests Of Debtor And Non-Debtor Defendants ....................................10

**RESERVATION OF RIGHTS** ..................................................................................................11

**CONCLUSION** ........................................................................................................................11

The Official Committee of Unsecured Creditors (the "**Committee**") of Gawker Media LLC ("**Gawker Media**"), Gawker Media Group, Inc. ("**GMGI**"), and Kinja Kft. ("**Kinja**") (collectively, the "**Debtors**"), by and through its undersigned proposed counsel, hereby files this limited objection (the "**Limited Objection**") to the Debtors' applications, pursuant to Sections 327(e), 328(a), and 330 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1 for entry of orders authorizing the retention and employment of Brannock & Humphries ("**Brannock**"), Cahill Gordon & Reindel LLP ("**Cahill**"), Levine Sullivan Koch & Schulz, LLP ("**LSKS**") and Thomas & LoCicero LP ("**TLo**," and collectively with Brannock, Cahill and LSKS, the "**Proposed Special Counsel**") as special litigation counsel effective *nunc pro tunc* to the Petition Date (collectively, the "**Applications**") [Dkt. Nos. 130 – 133].[1]

## PRELIMINARY STATEMENT

1. Proposed Special Counsel have represented the Debtors and non-Debtor defendants—including non-Debtor Nick Denton, who founded and controls the Debtors—in various civil lawsuits arising from content posted to the Debtors' websites, including the lawsuit in Florida that resulted in a $140.1 judgment against Debtor Gawker Media and non-Debtors Nick Denton and A.J. Daulerio that precipitated the current Chapter 11 proceedings. Upon information and belief, the Debtors have borne 100% of the pre-petition fees and expenses of Proposed Special Counsel for work on behalf of, and for the benefit of, Debtor and non-Debtor defendants, including Mr. Denton. The Committee has reason to believe that this may be just one example of a pattern of Mr. Denton's pre-petition use of Debtor resources for personal

---

[1] Citations to "Brannock App." are to Dkt. No. 130, citations to "Cahill App." are to Dkt. No. 131, citations to "LSKS App." are to Dkt. No. 132, and citations to "TLo App." are to Dkt. No. 133.

1

purposes. An examination of these issues and other pre-petition transfers of resources from and among the Debtors will be part of the Committee's investigation.[2]

2.  The Debtors, which are controlled by Mr. Denton, have filed the Applications to obtain this Court's authorization to retain Proposed Special Counsel to continue to represent the Debtors and related non-Debtor defendants post-petition. While it is understandable that Mr. Denton (and other non-Debtor defendants) seek to continue with their free ride post-petition, that regime simply cannot continue. The costs of defending non-Debtors post-petition must be borne by the non-Debtor defendants, not by the Debtors' estates and their creditors. Debtors' Applications here appear to be an extension of earlier efforts by Mr. Denton to use the Debtors to shield himself (and other non-Debtors) from personal legal fees and liabilities. Indeed, after Debtor Gawker Media filed for bankruptcy, Mr. Denton caused Debtor Gawker Media to immediately seek a temporary restraining order to protect its founder from the judgment entered against him by the Florida jury. Mr. Denton then caused Gawker Media to unsuccessfully seek to have the automatic stay extended to protect him personally notwithstanding the minimal time burden on Mr. Denton absent such a stay.

3.  More importantly, however, it is critical that any special counsel retained pursuant to Section 327(e) must have exclusive allegiance to the Debtors, and not shared duties to non-Debtor defendants such as Mr. Denton against whom the estates may have claims, and who may assert claims against the estates. The Committee recognizes that Proposed Special Counsel have developed knowledge and expertise from their pre-petition representation of the defendants. Consequently, the Committee has no objection to the Proposed Special Counsel continuing to

---

[2] The Committee's investigation has been temporarily delayed because the Debtors' staff and professionals have been focused on the pending sale process and have deferred responding to the Committee's information requests until that process is concluded.

2

represent the Debtors in the various litigations for which the Debtors seek to retain special litigation counsel. The Committee does object, however, to any continuation of Proposed Special Counsels' joint representation of Debtor and non-Debtor defendants as that creates actual or potential conflicts of interest that would preclude the retention of Special Counsel pursuant to Section 327(e) of the Bankruptcy Code.

## BACKGROUND

4. Through the Applications, the Debtors seek the entry of orders authorizing the retention and employment of the Proposed Special Counsel to perform legal services attendant to the defense of eight litigations, at least five of which would involve Proposed Special Counsel also representing individual non-Debtor defendants.

5. The lawsuit that directly precipitated these bankruptcy filings was brought by Terry G. Bollea against Debtor Gawker Media LLC, Messrs. Denton and Daulerio and others asserting various causes of action arising from the posting on gawker.com of objectionable video footage of Mr. Bollea. In March 2016, a jury in Florida returned a verdict for Mr. Bollea, finding that each of the defendants acted with the specific intent to harm Mr. Bollea when they posted the video on the internet. The jury awarded $115 million in compensatory damages jointly and severally against Debtor Gawker Media and non-Debtors Messrs. Denton and Daulerio, and it awarded Mr. Bollea an additional $25.1 million in punitive damages divided as follows: $15 million against Debtor Gawker Media, $10 million against Mr. Denton, and $100,000 against Mr. Daulerio. The total damages award is $140.1 million. On June 10, 2016 Debtor Gawker Media filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.[3]

---

[3] On June 12, 2016, Debtors GMGI and Kinja each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3

6. Following this Court's denial of Debtor Gawker Media's motion for an injunction shielding Mr. Denton from execution by Mr. Bollea of the Florida judgment against him, three of the Proposed Special Counsel engaged in motion practice before both the Florida trial court and a Florida appellate court in an effort to obtain stays of execution on behalf of Messrs. Denton and Daulerio. After those efforts were unsuccessful, Mr. Denton, who is not a Debtor in the above-captioned chapter 11 proceedings, personally filed for bankruptcy under chapter 11 on August 1, 2016.

7. In addition to the appeal of the Bollea judgment in *Bollea v. Gawker Media LLC, et al.*, certain of the Debtors and related non-Debtors are defendants in other pending lawsuits, filed pre-petition and currently stayed, asserting causes of action arising from the posting of content to the Debtors' websites. According to the Applications, the lawsuits with Debtor and non-Debtor defendants are: (a) *Terrill v. Gawker Media, LLC, et al.*; (b) *Ayyadurai v. Gawker Media, LLC, et al.*; (c) *Huon v. Denton, et al.*; (d) *Mail Media Inc. v. Gawker Media LLC, et al.*[4]

## ARGUMENT

**REPRESENTATION OF BOTH DEBTOR AND NON-DEBTOR DEFENDANTS BY PROPOSED SPECIAL COUNSEL WOULD VIOLATE SECTION 327(E) SINCE NON-DEBTOR DEFENDANTS' INTERESTS ARE ADVERSE TO THE DEBTORS' INTERESTS**

8. Section 327(e) of the Bankruptcy Code permits a debtor to retain special counsel if in the best interest of the estate, provided "they do not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e). An "adverse interest" means "(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or

---

[4] It is unclear from the Debtors' Application whether another lawsuit—*Johnson v. Gawker Media, LLC*—includes non-Debtor defendants. LSKS App. ¶ 11(b). According to the Application, the claims were previously filed in Missouri against Debtor and non-Debtor defendants and have been refiled in California at least against Debtor Gawker Media.

4

potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate." *Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 623 (2d Cir. 1999) (citation omitted). More generally, "adverse interest" includes "any interest or relationship, however slight, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998) (quotation marks omitted).

### A. In Their Applications, The Debtors Apply The Wrong Analysis In Concluding That Proposed Special Counsel Do Not Represent Adverse Interests

9. In their Applications, the Debtors contend that there is no adverse interest arising from the joint representation by Proposed Special Counsel of Debtor and non-Debtor defendants because the Debtors "do not believe that there is a material conflict between the respective interests" of the Debtors and non-Debtor defendants. *See* Brannock App. ¶ 22 ("Debtors do not believe that there is a material conflict between the respective interests of the Debtors and non-Debtor defendants in *Bollea I*");[5] Cahill App. ¶ 19 ("Debtors do not believe that there is a material conflict between the respective interests of Gawker Media and Mr. King."); LSKS App. ¶ 22 ("Debtors do not believe that there is a material conflict between the respective interests of the Debtors and non-Debtor defendants LSKS is representing . . . ."); TLo App. ¶ 21 ("Debtors do not believe that there is a material conflict between the respective interests of the Debtors and non-Debtor defendants.")[6]

---

[5] Debtors purport to base this belief on "the reasons set forth in the Brannock Declaration." Brannock App. ¶ 22. However, the Declaration of Steven Brannock in Support of Debtors' Application makes no reference to any analysis of actual or potential conflicts between Debtor and non-Debtor defendants, let alone provide reasons for why there are no material conflicts.

[6] Debtors again purport to base their belief "as set forth in the Thomas Declaration." TLo App. ¶ 21. However, the Declaration of Gregg D. Thomas in Support of Debtors' Application makes no reference to any analysis of actual or potential conflicts between Debtor and non-Debtor defendants.

5

10. However, the presence or absence of an adverse interest under Section 327(e) does *not* hinge on presence or absence of an *actual* conflict. To the contrary, "if it is plausible that the representation of another interest may cause the debtor's attorneys to act any differently than they would without that other representation, then they have a conflict and an interest adverse to the estate." *In re Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994) (reasoning that "[p]otential conflicts, no less than actual ones, can provide motives for attorneys to act in ways contrary to the best interests of their clients").

11. Courts frequently find that joint representation of both debtor and non-debtor co-defendants by proposed special counsel inherently presents potential conflicts that, pursuant to Section 327(e), preclude joint representation. *See, e.g.*, *In re Argus Group 1700, Inc.*, 199 B.R. 525, 531 (Bankr. E.D. Pa. 1996) (holding the application to retain special counsel under Section 327(e) must be denied with respect to counsel representing debtor and non-debtor defendants in pending tort litigation since, despite sharing the goal of repudiating the plaintiff's claims, "they do not share the same interests"); *In re Mican Homes, Inc.*, 179 B.R. 886, 888-89 (Bankr. E.D. Mo. 1995) (denying motion to grant application to retain special counsel to represent debtor and non-debtor defendants in an appeal of a state court judgment since the simultaneous representation of the debtor and non-debtor defendants gives rise to a conflict of interest and the use of estate assets to finance such representation is inappropriate); *In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 235 (Bankr. E.D. Cal. 1988) (special counsel under Section 327(e) seeking to represent both debtor and non-debtor defendants to a litigation cannot represent both since the non-debtor defendants essentially "want the debtor, and debtor's creditors, to pay their legal bills and pay any liability that may be visited upon them," a "position [that] is adverse" to the debtor); *In re Baldwin-United Corp.*, 45 B.R. 378, 379 (Bankr. S.D. Ohio 1983) (denying application for

6

employment of special counsel to represent debtor and non-debtor defendants on the ground that "while the interests of the [debtor and non-debtor] defendants presently coincide with one another, it is within the realm of possibility that they may not coincide in the future").

12. Moreover, assurances by special counsel that it will withdraw from a joint representation in the event that an actual conflict arises are not sufficient to satisfy the requirements of Section 327(e). *See, e.g.*, *In re F & C Int'l, Inc.*, 159 B.R. 220, 222 (Bankr. S.D. Ohio 1993) (finding assurances by special counsel that it will withdraw if any actual conflicts arise from its dual representation of debtor and non-debtors not sufficient to satisfy requirements of Section 327(e)); *Baldwin-United Corp.*, 45 B.R. at 380 ("Citing considerations of cost and efficiency, [proposed special counsel] urges that we should wait until actual conflict develops [between debtor and non-debtor co-defendants] before addressing this problem. We disagree . . . ."). Consequently, the Debtors' representation in their LSKS Application that LSKS has "advis[ed] each client that if a conflict later arises, the firm would not be able to continue representing all defendants," LSKS App. ¶ 22, and any similar representations by the Debtors or Proposed Special Counsel, do not cure the Debtors' failure to satisfy the requirements of Section 327(e).

   **B. Non-Debtor Defendants Have Interests Adverse To The Debtors With Respect To The Allocation Of A Judgment Or A Settlement Among the Clients**

13. The Debtors seek to retain certain Proposed Special Counsel to represent Debtor and Non-Debtor defendants, including Mr. Denton, in the appeal of the $140.1 million Bollea judgment. However, even if the interests of the Debtor and non-Debtor defendants are aligned in having the judgment vacated, the interests of Mr. Denton and Mr. Daulerio in that judgment are nonetheless personal in nature and, thus, adverse to interests of the Debtors' estates. As one bankruptcy court aptly reasoned in an analogous situation:

7

> Although all of [the debtor and non-debtor defendants] share the common goal of setting aside or reducing the prepetition judgment . . ., they do not share the same interests. The interests of the [non-debtor defendants] are personal; the judgment was entered against them personally. Under the Bankruptcy Code, the interests of the Debtor are intertwined with the interests of the estate which include the interests of creditors. Simultaneous representation of a Chapter 11 Debtor and the [non-debtor defendants] gives rise to at least a potential conflict of interest.

*Mican Homes*, 179 B.R. at 888.

14. Moreover, the interests of the Debtor and non-Debtor defendants are clearly adverse when it comes to how any judgment (or settlement) will be allocated among the defendants. For example, $115 million of the $140.1 million Bollea judgment are compensatory damages for which Debtor and non-Debtor defendants (including Mr. Denton) are jointly and severally liable. Thus, it is in the interest of non-Debtors to advocate on appeal (or in settlement discussions) that only Debtor Gawker Media is liable. To the extent non-Debtors are able to successfully avoid or reduce their personal liability, the Debtors will be harmed since Debtor Gawker Media would be responsible for the full amount of the compensatory damages. *See In re Perez*, 389 B.R. 180, 184 (Bankr. D. Colo. 2008) ("[E]very dollar collected by [the judgment creditor] on his unstayed judgment as against the Applicant's other four non-bankrupt clients, at least in the first instance, reduced the liabilities of the Debtor, dollar for dollar. Whose interest was Applicant to look out for first? It is not enough . . . to deal with this conflict by stating that the other judgment debtor clients do not have many assets.").

15. In order to be retained under the Bankruptcy Code, special counsel must be able to advise the Debtors on the best course of action for the estates (including how to minimize the Debtors' exposure to judgments, settlements and indemnification claims), notwithstanding any negative impact that position may have on non-Debtor defendants. Proposed Special Counsel will not be able to fulfill that obligation here if they must also represent the interests of the non-

8

Debtor defendants.

### C. The Non-Debtor Defendants Have Interests Adverse To The Debtors With Respect To Potential Contribution Claims

16. To the extent that a judgment creditor collects on a judgment, the co-defendants may have contribution claims against one another. This Court has recognized that the potential for contribution claims between co-defendants presents interests adverse to estate and precludes joint representation by special counsel under Section 327(e). In *In re JMK Construction Group, Ltd.*, for example, Judge Martin Glenn denied an application by two debtors in related bankruptcy proceedings to retain special litigation counsel to jointly represent them in the appeal of a trial court judgment that was the impetus for their bankruptcy filings. 441 B.R. 222, 225 (Bankr. S.D.N.Y. 2010). As here, the proposed special counsel had represented the two debtors pre-petition at the trial court and therefore had knowledge and familiarity with the issues on the appeal. *Id*. at 228. Judge Glenn denied the application because the debtors may have had the right to assert contribution claims against each other in connection with the judgment and, thus, representation by special counsel of more than one debtor would result in counsel representing interests adverse to each estate. *Id*. at 238.

### D. Non-Debtors Have Interests Adverse To The Debtors With Respect To Potential Claims For Indemnification (And Related Issues Of Subordination)

17. The potential for non-Debtors, such as Mr. Denton, to assert rights of indemnification against the Debtors in connection with the litigations at issue in Applications creates interests adverse to the Debtors and precludes joint representation of Debtor and non-Debtor co-defendants under Section 327(e). *See B.E.S. Concrete Prods.*, 93 B.R. at 235 (explaining that assertions that non-debtor defendants were entitled to indemnification does not obviate conflicts between non-debtors and debtor defendants since "the law on corporate indemnification of directors is not so automatic or so simple" and "bankruptcy further clouds

9

indemnification rights," meaning, "[a]t a minimum, . . . there probably would be a subordination dispute").

> E. **The Failure Of The Applications To Provide For An Allocation Among Clients So That The Debtors Pay Only Fees And Expenses Properly Attributable To The Debtors Highlights The Adverse Interests Of Debtor And Non-Debtor Defendants**

18. The Applications do not provide for an allocation of attorneys' fees and expenses among the various Debtor and non-Debtor defendants.[7] This highlights the adverse interests of the Debtor and non-Debtor defendants with respect to who will bear the costs of the litigations and also highlights the risk that Proposed Special Counsel will be unable protect the interests of the Debtors (and their creditors) against the adverse interests of non-Debtors, particularly Mr. Denton who controls the Debtors. *See In re Perez*, 389 B.R. at 184 (denying application pursuant to Section 327(e) where bankruptcy estate alone was to pay attorneys' fees of special counsel representing debtor and non-debtor co-defendants in appeal of a state court judgment; that "arrangement *may* have been benign enough and 'all in the family' before the Debtor's bankruptcy was filed, but once the bankruptcy case was filed, things changed" and "Debtor became a fiduciary and others had a stake") (emphasis in original).

19. In addition, if fees and expenses for work that benefits non-Debtors are not properly allocated to the non-Debtors, the result of employing Proposed Special Counsel to represent both Debtor and non-Debtor defendants effectively would be to elevate any indemnity claim held by non-Debtor defendants against the Debtor "from a contingent unsecured claim to

---

[7] The absence of such an allocation is alone grounds to deny any fee request submitted by Proposed Special Counsel. *See B.E.S. Concrete Prods.*, 93 B.R. at 234 (finding proposed special counsel under Section 327(e) retained to represent debtors and non-debtors in lawsuit not entitled to recovery of fees because "[t]here [was] no allocation of the bill among the various clients" and "[s]ome services were rendered for the ultimate benefit of persons other than the debtor"). In the event this Court authorizes the retention of Proposed Special Counsel to represent Debtor and non-Debtor defendants, the Committee reserves its right to contest fee applications for failure to properly allocate fees and expenses among clients.

10

an administrative claim," to the harm of the Debtors and their creditors. *Argus Group*, 199 B.R. at 532, 532 n.13. This is impermissible under the Bankruptcy Code. *Id*. To the extent special counsel represents non-Debtors, those non-Debtors must bear their fair share of the special counsels' fees and expenses.

20.    Finally, there is no reason for the Debtors to pay for fees and expenses of Proposed Special Counsel related to work done solely for non-Debtors, such as the post-petition efforts to obtain a stay of the Florida litigation that precipitated these bankruptcy filings.

## RESERVATION OF RIGHTS

21.    The Committee reserves the right to raise further and other objections to the Applications at the hearing.

## CONCLUSION

22.    For the foregoing reasons, the Committee respectfully requests that the Court deny the Applications to the extent they seek authorization for the Proposed Special Counsel to represent both Debtor and non-Debtor defendants, and provide such other and further relief as it deems just and proper.

Dated:  August 4, 2016
        New York, New York

Respectfully submitted,

 /s/ William T. Russell, Jr.

SIMPSON THACHER & BARTLETT LLP
Sandeep Qusba
William T. Russell, Jr.
425 Lexington Avenue
New York, NY 10017
Tel.: 212-455-2000
Fax: 212-455-2502
squsba@stblaw.com
wrussell@stblaw.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

11