**BROWN RUDNICK LLP**
Andrew P. Strehle
Thomas J. Phillips
Jill C. Wexler
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201

*Counsel for Superdry Wholesale, LLC and*
*Superdry Retail, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>GAWKER MEDIA LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-11700 (SMB)<br><br>(Jointly Administered) |

**LIMITED OBJECTION OF SUPERDRY TO DEBTORS' SALE MOTION**

Superdry Wholesale, LLC and Superdry Retail, LLC (together "Superdry"), by and through undersigned counsel, respectfully submit this limited objection (the "Limited Objection") with respect to the *Debtors' Motion for (I) An Order (A) Authorizing and Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (B) Authorizing and Approving the Debtors' Entry Into and Assumption of the Stalking Horse Asset Purchase Agreement, (C) Approving Notice Procedures for Assumption and Assignment of Certain Contracts and Leases and Determining Cure Amounts and (II) An Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of all Claims, Liens, Rights, Interests and Encumbrances,*

---

[1] The last four digits of the taxpayer identification number of the Debtors are: Gawker Media, LLC (0492); Gawker Media Group, Inc. (3231); and Kinja, Kft. (5056). The offices of Gawker Media, LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2nd Floor, New York, NY 10011. Kinja, Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

*(B) Approving the Asset Purchase Agreement and (C) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* (the "Sale Motion") [Docket No. 21].[2] In support of the Limited Objection, Superdry respectfully states as follows:

## LIMITED OBJECTION

1. On July 15, 2016, the Debtors filed the *Notice of (A) Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Sale and (B) Associated Cure Costs* (the "Cure Notice") [Docket No. 105]. In the Cure Notice, the Debtors designate the sublease dated July 8, 2015 between Debtor Gawker Media, LLC and Superdry Wholesale, LLC (the "Sublease")[3] as a non-residential lease that may be assumed and assigned to the Buyer in connection with the Sale. The Debtors further propose a cure amount of $0.00 with respect to the Sublease.

2. Superdry objects to the Stalking Horse APA and the proposed Sale to the extent that the Debtors propose: (1) to limit the Buyer's assumption of pre-Closing liabilities under the Sublease; and (2) to limit cure costs associated with the Sublease to $0.00. Among other things, the Debtors have failed to arrange for an operable fire alarm system for the subleased premises, and this obligation should be met – on a continuing basis - as part of any assumption and assignment. In addition, the assumption and assignment should be conditioned on the Debtors cancelling (without a drawing) and returning to Superdry the letter of credit delivered on behalf of Superdry in connection with the Sublease and providing adequate time for Superdry to provide a replacement letter of credit to the Buyer, or assigning such letter of credit to the Buyer.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

[3] The Debtors misidentified the counterparty to the Sublease as "204-210 Elizabeth Street LLC" on the *Schedule of Assets and Liabilities for Gawker Media, LLC* [Docket No. 116]. The correct counterparty to the Sublease is Superdry Wholesale, LLC.

**I.    The Debtors Must Assume and Assign the Sublease "*Cum Onere*"**

3.    Under the terms of the Stalking Horse APA, the Debtors propose to limit the Buyer's assumption of liabilities under Assumed Contracts to only those liabilities arising after the Closing. However, the Bankruptcy Code requires that executory contracts and unexpired leases be assumed and assigned "*cum onere.*" Entry of the Stalking Horse APA and proposed Sale Order in their present form would impermissibly act to redraft the bargain embodied in the Sublease.

4.    Through the terms of the Stalking Horse APA, the Debtors and the Buyer seek to enjoy all the benefits of the bargain under the Sublease, while jettisoning its pre-Closing burdens. Section 2.4(b) of the Stalking Horse APA, which describes the liabilities that the Buyer shall not assume, specifically excludes "all Liabilities of Sellers [ ] arising from or relating to the operation or condition of the Acquired Assets or the Assumed Liabilities *prior to the Closing* . . . ."4 (emphasis added). Furthermore, "Assumed Liabilities" are defined, in part, as "all Liabilities under the Assumed Contracts and the Assumed Permits solely to the extent *arising after the Closing*." Stalking Horse APA at Art. I (emphasis added). This sort of parsing of liabilities is not permitted by the Bankruptcy Code.

5.    Bankruptcy Code section 365 sets forth the legal requirements to assume and assign unexpired leases. Chief among these is the provision of "adequate assurance of future performance" – by the debtor, in cases of assumption; by an assignee, in cases of assignment. See 11 U.S.C. § 365(b)(1)(C); 11 U.S.C. § 365(f)(2)(B). Pre-code authority establishes the centrality of this principle:

---

4    Under Section 2.1(i) of the Stalking Horse APA, "Assumed Contracts" are an "Acquired Asset." "Assumed Contracts" are defined, in turn, as those non-residential leases and other executory contracts that are designated by the Buyer for assumption and assignment. See Stalking Horse APA at Art. I.

3

> [T]he Trustee is given the right to adopt or reject an executory contract. He must do one or the other. If the trustee deems the contract to possess no equity or benefit for the estate he rejects it as burdensome. If, on the other hand, he concludes that the executory contract does have an equity for the estate he adopts it. ***These principles of law have become too well established to permit of doubt.*** The trustee, however, may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. ***If he receives the benefits he must adopt the burdens***. He cannot accept one and reject the other.

In re Italian Cook Oil Corp., 190 F.2d 994, 996-97 (3d Cir. 1951) (emphasis added) (citations omitted); see also Thompson v. Tex. Mexican Ry. Co., 328 U.S. 134, 141 (1946) ("[T]he bankruptcy rule is that [the trustee] takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed cum onere.").

6.   *Assumption* of an agreement *cum onere* means that the executory contract or unexpired lease "becomes property of the estate in the same shape as it existed prior to bankruptcy." In re Vill. Rathskeller, Inc., 147 B.R. 665, 671 (Bankr. S.D.N.Y. 1992); see also In re Pin Oak Apartments, 7 B.R. 364, 367 (Bankr. S.D. Tex. 1980) (to assume an unexpired lease is to "agree to live in accordance with the remaining provisions in the lease"). Nothing in the act of assumption "give[s] debtors the ability to rewrite the terms of an unexpired lease." In re SCCC Assocs. II Ltd. P'ship, 158 B.R. 1004, 1015 (Bankr. N.D. Cal. 1993). Instead, a debtor must perform the executory contract or unexpired lease on the same terms that existed prepetition. This concept is expressly set forth in Bankruptcy Code section 365, which (as amended in 2004), requires that "if a nonmonetary 'default arises from a failure to operate in accordance with a nonresidential real property lease, *then such default shall be cured by performance at and after the time of assumption in accordance with such lease*.'" In re Patriot Place, Ltd., 486 B.R. 773, 797 (Bankr. W.D. Tex. 2013) (emphasis in original) (quoting 11 U.S.C. § 365(b)(1)(A)).

7.   The same principle applies to the *assignment* of an agreement, which "result[s] in the assignee stepping into the shoes of the assignor with regard to the rights that the assignor

4

held and not in an expansion of those rights." In re ANC Rental Corp., 277 B.R. 226, 239 (Bankr. D. Del. 2002) (quoting Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 60 (3d Cir. 2001)); see In re Barney Mac, LLC, No. 04-17769 (AJG), 2006 WL 2864974, at *15 (Bankr. S.D.N.Y. Oct. 3, 2006) ("A party to a lease cannot receive any greater rights than those bestowed upon them from its predecessor in interest. It is elementary ancient law that an assignee never stands in any better position than his assignor. He is subject to all the equities and burdens which attach to the property assigned . . . ." (quotations omitted)). This ensures that "the non-debtor party will receive the benefit of its bargain from the assignee." In re GlycoGenesys, Inc., 352 B.R. 568, 578 (Bankr. D. Mass. 2006) (citing In re Casual Male Corp., 120 B.R. 256, 264-65 (Bankr. D. Mass. 1990)). The terms of the conditions of the agreement are not modified upon assignment. An assignee "should not be allowed to use [a debtor's] bankruptcy as a ***sword*** to alter the bargain and ***receive a windfall***." In re Beautyco, Inc., 307 B.R. 225, 232 (Bankr. N.D. Okla. 2004) (emphasis added).

8. If the Buyer is not required to perform all obligations under the Sublease that "arise from" or "relate to" the period prior to the Closing, the Buyer would have more rights vis-à-vis Superdry than the Debtors now hold. The Debtors and the Buyer may not so pick and choose which obligations of the Sublease will survive assumption and assignment. The Buyer can only take the Sublease as it is, subject to whatever liabilities it imposes. Failure to do so constitutes a failure to provide "adequate assurance of future performance" to Superdry under the Bankruptcy Code and applicable case law, and should not be allowed by this Court. The Stalking Horse APA and the Sale Order must be modified to make plain that Superdry's rights under the Sublease are continuous and will not be interrupted or otherwise affected by assumption and assignment of the Sublease.

9. Among other things, the Debtors have failed to arrange for an operable fire alarm system for the subleased premises, and this obligation should be met – on a continuing basis - as part of any assumption and assignment.

10. In addition, as contemplated by Section 25.02 of the Sublease, Superdry arranged for a letter of credit to be provided to the Debtors in connection with the Sublease. If the Sublease is assigned and the letter of credit is not, it should be cancelled (without a drawing) and returned to the Debtors on the date of the Sale and Superdry should be permitted adequate time to replace it with a new letter of credit. Absent either such an assignment or adequate time to provide a replacement letter of credit, Superdry would be placed in jeopardy of defaulting under the Sublease, for failure to maintain adequate security in the then-applicable sublandlord's favor.

## II.     The Cure Amount

Superdry will continue to monitor the Debtors' compliance with the terms of the Sublease, but expects that the cure obligations will amount to more than the $0.00 amount specified in the Cure Notice. Among other things, the Debtors have failed to arrange for an operable fire alarm system for the subleased premises, and this obligation should be met – on a continuing basis - as part of any assumption and assignment. Superdry reserves its rights to identify other matters that should be addressed as part of any cure obligation.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, Superdry respectfully requests that the Court (i) sustain this Limited Objection, (ii) modify the Stalking Horse APA and proposed Sale Order as appropriate to provide adequate assurance of performance under the Sublease, (iii) modify the proposed Cure Amount to reflect a cure of existing defaults by the Debtors under the Sublease, (iv) condition the assumption and assignment on the Debtors' cancelling (without a drawing) and returning to Superdry the letter of credit delivered on behalf of Superdry in connection with the Sublease and providing adequate time for Superdry to provide a replacement letter of credit, or assigning such letter of credit to the Buyer; and (v) grant Superdry such other and further relief as is just and proper.

Dated: August 5, 2016
Boston, Massachusetts

**BROWN RUDNICK LLP**

*/s/ Andrew P. Strehle*
Andrew P. Strehle
Thomas J. Phillips
Jill C. Wexler
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201
astrehle@brownrudnick.com
tphillips@brownrudnick.com
jwexler@brownrudnick.com

*Counsel to Superdry Wholesale, LLC and Superdry Retail, LLC*

62527555