Trevor Hoffmann (NY Bar No. 4067229)
HAYNES AND BOONE, LLP
30 Rockefeller Plaza
26th Floor
New York, NY 10112
Telephone (main):  212.659.7300
Facsimile (main):  212.918.8989
Email: trevor.hoffmann@haynesboone.com

ATTORNEYS FOR 114 FIFTH OWNER LP

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
                                      :

In re:                                      :        Chapter 11
                                        :
Gawker Media LLC, *et al.*,[1]      :        Case No. 16-11700 (SMB)
                                        :
                                        :        (Jointly Administered)
                        Debtors.     :
------------------------------------------------------------------------x

**LIMITED OBJECTION AND RESERVATION OF**
**RIGHTS OF 114 FIFTH OWNER LP TO**
**DEBTORS' PROPOSED ASSUMPTION AND**
**ASSIGNMENT OF 114 FIFTH AVENUE LEASE**

114 Fifth Owner LP (the "Landlord"), the landlord of the Leased Premises (as defined

below), by and through its counsel, Haynes and Boone, LLP, submits this limited objection and

reservation of rights (the "Objection")[2] to the proposed assumption and assignment of the Lease

(as defined below) by Gawker Media LLC ("Tenant") of the premises located at 114 Fifth

Avenue, New York, New York 10011 (the "Leased Premises") to ZDGM LLC (the "Stalking

Horse Bidder") or such other person that may be designated as the Successful Bidder (the

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011. Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2] The Debtors extended the Landlord's deadline to file this Objection through August 15, 2016.

"<u>Proposed Assignee</u>") pursuant to the Debtors' Bidding Procedures.[3]    In support of this

Objection, the Landlord respectfully states as follows:

### PRELIMINARY STATEMENT

The Lease requires a major commitment from a reputable and credit-worthy tenant.  The

Lease term presently expires in March 2030, and includes rent obligations exceeding $65

million.  As of today, the Tenant has not determined whether it will seek to assume or reject the

Lease.  Likewise, the Stalking Horse Bidder and other potential bidders have not determined

whether they will seek an assignment of the Lease.  While the Landlord has invited all potential

bidders to engage with it, to date the Landlord has received no adequate assurance information

(and has received just one preliminary telephone call on a no-names basis).  The Landlord

remains willing to engage with the Successful Bidder as to, among other things, adequate

assurance evidence and required security prior to or following the auction, but the two days

between the auction and the Sale Hearing are not enough time.

Additionally, the Debtors have indicated to the Landlord that the Successful Bidder may

wish to occupy the Leased Premises on a transitional basis post-Closing, whether or not it seeks

an assignment of the Lease.  Neither the Lease nor the Bankruptcy Code permit such a "test

drive" arrangement.  However, the Landlord is willing to consent to a short-term occupancy by

the Successful Bidder on terms acceptable to the Landlord (including the Landlord's right to

enter and market the Leased Premises), during which time the Lease would remain in full force.

An integral component of the Landlord's willingness to consent to the Successful Bidder's

occupancy, however, is the Debtors' agreement to the following terms:  (i) the Debtors will seek

to adjourn any hearing as to assumption and assignment of the Lease until a mutually acceptable

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Stalking Horse APA, as applicable.

date (likely no earlier than the September 13, 2016 hearing); (ii) the deadline to seek an assignment of the Lease shall be the earlier of (x) the Closing and (y) October 3, 2016; and (iii) if the Successful Bidder determines not to seek an assignment of the Lease, then the Debtors shall waive any right to seek assumption and assignment of the Lease, and such Lease shall be deemed to have been rejected as of January 7, 2017 unless rejected as of an earlier date.

It appears that the Debtors are amenable to these terms, and the Landlord is hopeful that the parties will be in a position to file a stipulation containing such terms with the Court shortly. In the meantime, however, the Landlord submits this limited objection and reservation of rights.

## BACKGROUND

1.    Gawker Media LLC is the Tenant under the lease dated as of September 22, 2014 (as amended, supplemented or otherwise modified from time to time, the "Lease") with respect to the Leased Premises in the building known as 114 Fifth Avenue, New York, New York.  The Lease has expires on March 31, 2030.[4]

2.    Pursuant to the Lease, the Tenant was required to provide the Landlord with security in the form of an unconditional irrevocable letter of credit in an amount of equal to 18-months' rent.

3.    As a material inducement for the Landlord's entry into the Lease, the Tenant was required to deliver to the Landlord a corporate guaranty by Gawker Media Group Inc.

4.    On June 10, 2016, Gawker Media filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition Date"). On June 12, 2016, GMGI and Kinja each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

---

[4] Given the commercially sensitive nature of the Lease, the Landlord has not filed a copy of it with this Objection. To the extent the Debtors seek to assume and/or assign the Lease to the Successful Bidder, the Landlord will file a motion with the Bankruptcy Court to file a copy of the Lease under seal.  In the meantime, upon information and belief, the Debtors are in possession of the Lease and have made it available in their data room to potential bidders that have signed confidentiality agreements.

5.      On June 13, 2016, the Debtors filed *Debtors' Motion For (I) An Order (A) Authorizing And Approving Bidding Procedures, Breakup Fee And Expense Reimbursement, (B) Authorizing And Approving The Debtors' Entry Into And Assumption Of The Stalking Horse Asset Purchase Agreement, (C) Approving Notice Procedures, (D) Scheduling A Sale Hearing And (E) Approving Procedures For Assumption And Assignment Of Certain Contracts And Leases And Determining Cure Amounts And (II) An Order (A) Authorizing The Sale Of Substantially All Of The Debtors' Assets Free And Clear Of All Claims, Liens, Rights, Interests And Encumbrances, (B) Approving The Asset Purchase Agreement And (C) Authorizing The Debtors To Assume And Assign Certain Executory Contracts And Unexpired Leases* [Docket No. 21].

6.      On July 8, 2016, the Bankruptcy Court entered the *Order (I) Authorizing And Approving Bidding Procedures, Breakup Fee And Expense Reimbursement, (II)  Authorizing And Approving The Debtors' Performance Of Pre-Closing Obligations Under The Stalking Horse Asset Purchase Agreement, (III) Approving Notice Procedures, (IV) Scheduling A Sale Hearing And (V) Approving Procedures For Assumption And Assignment Of Certain Contracts And Leases And Determining Cure Amounts* (the "Bidding Procedures Order") [Docket No. 82].

7.      On July 21, 2016, the Debtors filed the *Notice Of Filing Of Conformed Bidding Procedures, Sale Notice, Cure Notice, And First Amendment To Asset Purchase Agreement* [Docket No. 123].

## OBJECTIONS

I.    **The Debtors Must Provide
Evidence of Adequate Assurance of
Future Performance Under the Lease**

8.    While the Bankruptcy Code permits debtors to assign unexpired real property leases in certain circumstances, they may do so only in accordance with Bankruptcy Code section 365(f), including the requirement that they provide adequate assurance of future performance by the proposed assignee.[5]

9.    Pursuant to Bankruptcy Code section 365(f), as applicable,

> (1) . . . notwithstanding a provision in an . . . unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such . . . lease, the trustee may assign such . . . lease under paragraph (2) of this subsection.

> (2) The trustee may assign an . . . unexpired lease of the debtor only if—

>> (A) the trustee assumes such . . . lease in accordance with the provisions of this section; and

>> (B) adequate assurance of future performance by the assignee of such . . . lease is provided, whether or not there has been a default in such . . . lease.

11 U.S.C. § 365(f).

10.    The Landlord has made multiple requests for adequate assurance information from the Debtors in accordance with paragraph 23.b of the Bidding Procedures Order, and has also invited the Stalking Horse Bidder and potential bidders to contact the Landlord in advance

---

[5] The Landlord reserves its rights in connection with any proposed assumption by the Tenant, including under section 365(b) of the Bankruptcy Code.  While the Landlord does not currently object to the cure cost amount listed for the Lease on the cure cost schedule served by the Debtors, the Landlord does reserve its right to claim additional cure costs on account of its attorneys' fees.

of submitting their bids.  To date, the Landlord has received no adequate assurance information as to the Stalking Horse Bidder or any other potential bidder.

11.      The Debtors bear the burden of proving adequate assurance of future performance in connection with the potential assumption and assignment of the lease. *In re F.W. Restaurant Assoc., Inc.*, 190 B.R. 143 (Bankr. D. Conn. 1995); *In re Rachels Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y 1981).  The Debtors have not met their burden.

12.      Evidence of adequate assurance is particularly important in this case, where approximately 14 years remaining under the Lease, and rent obligations during that time total more than $65 million.  Since the Landlord has received no information regarding the Stalking Horse Bidder or any other potential bidder (each, a "Proposed Assignee"), it is unclear whether the Potential Assignee will be a reputable and credit-worthy entity capable of supporting the Lease obligations.  Indeed, in the case of the Stalking Horse Bidder, it appears to be a newly-formed special purpose entity created for the purpose of acquiring Gawker's assets.[6]

13.      Here, the Proposed Assignee must provide evidence that (i) it can cover its obligations under the Lease, (ii) its obligations are guaranteed by a credit-worthy entity (or entities) with a net worth equaling all remaining obligations under the Lease; and (iii) it is a reputable entity of good character.  Such adequate assurance evidence would include the following:

> a. the specific name of the bidder, the specific name of tenant who will act as the Proposed Assignee, and the proposed name under which the Proposed Assignee intends to occupy the Leased Premises;

> b. audited (or un-audited if audited is not available) financial statements, annual reports and filed taxes for the past three (3) years;

---

[6] The State of Delaware's Division of Corporations website lists ZDGM LLC's formation date as June 9, 2016.  *See* https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx.

c. Proposed Assignee's most recent business plan, cash flow projections, and any financial projections, calculations and/or *pro formas* prepared in contemplation of purchasing the Gawker assets and obtaining an assignment of the Lease;

d. Proposed Assignee's accountant's information; and

e. a contact person for the Proposed Assignee, who Landlord may contact directly in connection with adequate assurance of future performance.

14.     Additionally, the Landlord will require documents or other evidence as to the Proposed Assignee's proposed use of the Leased Premises, and in particular, assurance that any such use will comply with the Occupancy and Use provisions of the Lease.  For example, the premises may be used solely as and for executive, administrative and general offices and customary ancillary uses, consistent with ancillary uses at Class "A" high-rise office buildings located in downtown Manhattan.[7]

15.     The Landlord understands that Potential Assignees may prefer to wait until they know whether they are the Successful Bidder before engaging in negotiations with the Landlord, and that they may not have decided yet whether they will seek an assignment of the Lease.  The Landlord has no objection to this, but does object to the extent that the Debtors and Successful Bidder seek assumption and assignment of the Lease at the Sale Hearing – two days after the auction.[8]  This would be highly prejudicial to Landlord and would deny it sufficient time to engage with the Proposed Assignee and properly evaluate any tendered adequate assurance information.

---

[7] Additionally, it is presently unknown whether the Proposed Assignee will seek an assignment of the private street entrance to the Leased Premises and related space (defined in the Lease as the *17th Street* Space).  The Landlord reserves its rights to object to the inclusion of the 17th Street Space in any assignment of the Lease.

[8] The Stalking Horse APA also contemplates that the Stalking Horse Bidder will deliver to Sellers a list of Non-Residential Leases that it elects to be treated as Designated Contracts on August 12, 2016 and that the Debtors will file an Assumption Notice with the Bankruptcy Court by August 17, 2016 – just one day prior to the Sale Hearing. *See* Stalking Horse APA § 2.7.  The Landlord objects to these notice provisions, which will not provide the Landlord sufficient time to evaluate any adequate assurance evidence as required under Bankruptcy Code section 365(f) or to engage the Stalking Horse Bidder as to, among other things, provision of the security required under Bankruptcy Code section 365(l).

16.     The Landlord understands that the Debtors are amenable to adjourning the hearing as to assumption and assignment of the Lease until a mutually acceptable date (likely no earlier than the September 13, 2016 hearing) to permit the Successful Bidder to engage with the Landlord.   The Landlord supports this resolution.   In the meantime, until such time as the Landlord receives adequate assurance evidence with respect to the Proposed Assignee, Landlord objects to assignment of the Lease.

**II.      The Debtors Must Comply with
Section 365(l) of the Bankruptcy Code**

17.     Section 365(l) of the Bankruptcy Code provides, as applicable:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l)

18.     The Lease requires the Tenants (and proposed assignees) to provide security for the performance of their lease obligations in the form of letters of credit and corporate guaranties.  A corporate guaranty is particularly important where the proposed tenant is a newly-formed special purpose vehicle that is not a credit-worthy entity.

19.     The Lease required Tenant to provide security in the form of (i) an unconditional irrevocable letter of credit representing 18-months' rent and (ii) a corporate guaranty from the Tenant's parent, Gawker Media Group, Inc., to guarantee all of the Tenant's obligations under the Lease.

20.     Similarly, the Landlord requires that the Proposed Assignee present an unconditional irrevocable letter of credit in the amount of 18 months' rent and a corporate

guaranty of the Lease obligations from a credit-worthy entity satisfactory to the Landlord. The guaranty requirement is essential in a case such as this, where the Proposed Assignee is likely not a credit-worthy entity but rather a newly-formed special purpose entity formed for the purpose of acquiring the Gawker assets. Finally, as a condition to any order approving assumption and assignment of the Lease, the Potential Assignee must execute an assignment agreement, as would be required under the Lease, whereby the Proposed Assignee shall become directly obligated to the Landlord and the provisions of the Lease regarding notice addresses will be modified. These demands are not made due to the bankruptcy filing, but rather are substantially the same as would be required by the Landlord upon the initial leasing to a similar tenant.

21.    Since the Landlord has had no discussions with the Stalking Horse Bidder or any other Proposed Assignee, it has no assurance that the Proposed Assignee will provide the security necessary to satisfy the performance of its obligations under the Lease, as required by Bankruptcy Code section 365(l). Accordingly, the Landlord objects to the assignment of the Lease to the Proposed Assignee.

### III.    The Successful Bidder Requires Landlord's Consent to Occupy the Leased Premises Post-Closing and Pre-Assignment

22.    The Landlord understands that certain bidders, including the Stalking Horse, may seek to occupy the Leased Premises post-closing for a transition period and/or for a period of time prior to determining whether they will seek an assignment of the Lease.

23.    The Stalking Horse APA contemplates that, if the Lease is *not* included in the Acquired Assets as of the Closing Date, then the Debtors and the Stalking Horse Bidder

> "shall enter into a sub-lease agreement pursuant to which [Stalking Horse Bidder] and its Affiliates shall be permitted to occupy and have access to such Leased

Real Property (in the same manner as the Business occupied and had access to such property prior to Closing) until the date that is 120 days following the Petition Date or, upon Buyer's request and to the extent the Bankruptcy Court approves, up to 210 days following the Petition Date."

Stalking Horse APA § 6.11.

24.    The Landlord objects to the Sale Order and to the Stalking Horse APA to the extent it purports to bind the Landlord to such arrangement.  The Landlord further objects to any unilateral attempts to permit occupancy of the Leased Premises by the Successful Bidder prior to formal assumption and assignment of the Lease.[9]  Pursuant to Bankruptcy Code section 365(d)(3), pending assumption of the Lease, the Debtors may not sublet or otherwise permit the Successful Bidder to occupy the Leased Premises other than in strict compliance with the terms of the Lease – including but not limited to the Lease's notice and recapture provisions, requirements for the posting of security and execution of instruments, and any consents required of Landlord.  *See* 11 U.S.C. § 365(d)(3) ("The trustee shall timely perform *all the obligations of the debtor* . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected . . .") (emphasis added).

25.    The Landlord understands that the Debtors seek to ensure a smooth post-sale transition period for the Successful Bidder through January 7, 2017 (i.e., the conclusion of the Debtors' statutory period to assume or reject the lease under Bankruptcy Code section 365(d)(4)).  The Landlord has indicated to the Debtors that it is willing to consent to the Successful Bidder occupying the Leased Premises on terms acceptable to the Landlord (including the Landlord's right to enter into and market the Leased Premises), during which time

---

[9] The Stalking Horse APA provides that the Lease may be designated as a Designated Contract until thirty days after the Closing Date (which date may be extended by agreement of the Debtors and Stalking Horse Bidder).  *See* Stalking Horse APA § 2.7(b).  Subject to the statutory deadlines imposed by section 365(d)(4) of the Bankruptcy Code, the Debtors can allow the Stalking Horse Bidder extra time to decide whether to seek an assignment of the Lease.  As explained above however, the Debtors do not have discretion unilaterally to permit the Stalking Horse Bidder (or anyone else) to occupy the Leased Premises during this time.

the Lease would remain in full force. The Landlord's willingness to enter into such arrangement is conditioned on, among other things, the Debtors' agreement to the following general terms: (i) the Debtors will seek to adjourn any hearing as to assumption and assignment of the Lease until a mutually acceptable date (likely no earlier than the September 13, 2016 hearing); (ii) the Debtors' deadline to seek an assignment of the Lease shall be the earlier of (x) the Closing and (y) October 3, 2016; and (iii) if the Successful Bidder determines not to seek an assignment of the Lease, then the Debtors shall waive any right to seek assumption and assignment of the Lease, and such Lease shall be deemed to have been rejected as of January 7, 2017 unless rejected as of an earlier date.

26.     The Landlord believes that the Debtors are in substantial agreement as to the foregoing terms, and the parties are currently working on a stipulation to reflect same. Pending entry of a so-ordered stipulation by the Bankruptcy Court, however, the Landlord objects to any post-Closing, pre-assignment occupancy of the Leased Premises by the Successful Bidder.

## RESERVATION OF RIGHTS

27.     The Landlord reserves the right to amend and/or supplement this Objection, including without limitation as to any of the foregoing issues and any cure costs of which Landlord becomes aware, including as to the Landlord's attorney's fees. Further the Landlord reserves all rights with respect to the proposed Sale Order and any further revisions thereto.

**WHEREFORE**, the Landlord requests that the Court enter an order (i) conditioning the assumption and assignment of the Lease on the Debtors and the Stalking Horse Bidder providing the Landlord (x) adequate assurance of future performance and (y) security for the performance of the Debtors' obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant; (ii) prohibiting the Successful Bidder

11

from occupying the Leased Premises pending assumption and assignment of the Lease absent the

Landlord's consent; and (iii) granting such other and further relief as the Court deems just and

proper.

Dated:  August 15, 2016
        New York, New York

HAYNES AND BOONE LLP


By:___/s/ Trevor Hoffmann_____
     Trevor Hoffmann (NY Bar No. 4067229)
30 Rockefeller Plaza, 26th Floor
New York NY 10112
Telephone No.: (212) 659-4993
Facsimile No.:  (212) 884-9558

Attorneys for 114 Fifth Owner LP