ROPES & GRAY LLP
Gregg M. Galardi
Jonathan P. Gill
Jonathan M. Agudelo
Stacy A. Dasaro
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
                                                          :
In re                                                     :        Chapter 11
                                                          :
Gawker Media LLC, *et al.*,[1]                            :        Case No. 16-11700 (SMB)
                                                          :
                    Debtors.                              :        (Jointly Administered)
                                                          :
                                                          :        **Re: Docket No. 21, 77, 82**
                                                          :
-------------------------------------------------------x

**NOTICE OF FILING OF REVISED PROPOSED SALE ORDER AUTHORIZING
THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE
AND CLEAR OF LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES**

　　　**PLEASE TAKE NOTICE** that on June 13, 2016, Gawker Media LLC, Gawker Media

Group, Inc. and Kinja Kft., as debtors and debtors in possession in the above-captioned chapter

11 cases (collectively, the "Debtors"), filed the *Debtors' Motion for (I) an Order (A) Authorizing*

*and Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (B) Authorizing*

*and Approving the Debtors Entry Into and Assumption of the Stalking Horse Asset Purchase*

*Agreement, (C) Approving Notice Procedures, (D) Scheduling a Sale Hearing and (E) Approving*

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).  The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

*Procedures for Assumption and Assignment of Certain Contracts and Leases and Determining Cure Amounts and (II) an Order (A) Authorizing the Sale of Substantially All of the Debtors Assets Free and Clear of All Claims, Liens, Rights, Interests And Encumbrances, (B) Approving the Asset Purchase Agreement and (C) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* [Docket No. 21] (the "Sale Motion"), seeking authorization and approval of sale and bidding procedures (the "Bidding Procedures") for substantially all of the Debtors' assets (the "Assets").

**PLEASE TAKE FURTHER NOTICE** that, attached to the Sale Motion were proposed Bidding Procedures; a form of proposed Bidding Procedures and APA Assumption Order; and a form of proposed Sale Order.

**PLEASE TAKE FURTHER NOTICE** that on July 6, 2016, the Debtors filed revised Bidding Procedures (the "Revised Bidding Procedures"), a revised proposed Bidding Procedures and APA Assumption Order, a revised proposed Sale Order (the "First Revised Proposed Sale Order"), and the First Amendment to Asset Purchase Agreement [Docket No. 77].

**PLEASE TAKE FURTHER NOTICE** that on July 8, 2016, the Bankruptcy Court entered the *Order (I) Authorizing and Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (II) Authorizing and Approving the Debtors Performance of Pre-Closing Obligations Under the Stalking Horse Asset Purchase Agreement, (III) Approving Notice Procedures, (IV) Scheduling a Sale Hearing and (V) Approving Procedures for Assumption and Assignment of Certain Contracts and Leases and Determining Cure Amounts* [Docket No. 82] (the "Bidding Procedures Order"),[2] granting certain relief requested by the Sale Motion as set forth therein and approving the Revised Bidding Procedures.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

PLEASE TAKE FURTHER NOTICE that, a copy of a further revised proposed Sale Order (the "Second Revised Proposed Sale Order") is attached hereto as **Exhibit A**.

PLEASE TAKE FURTHER NOTICE that, a blackline comparison of the as-filed version of the First Revised Proposed Sale Order and the Second Revised Proposed Sale Order is attached hereto as **Exhibit B**.

PLEASE TAKE FURTHER NOTICE that, the Debtors reserve the right to further revise the proposed Sale Order after consultation with the Committee.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Bidding Procedures Order a hearing (the "Sale Hearing") to consider entry of the proposed Sale Order (as may be further revised) is scheduled to be held on **August 18, 2016 at 2:00 p.m. (prevailing Eastern Time)** before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York, Courtroom 723, One Bowling Green, New York, New York 10004-1408.

Dated: August 16, 2016
      New York, New York

*/s/ Gregg M. Galardi*
ROPES & GRAY LLP
Gregg M. Galardi
Jonathan P. Gill
Jonathan M. Agudelo
Stacy A. Dasaro
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
gregg.galardi@ropesgray.com
jonathan.gill@ropesgray.com
jonathan.agudelo@ropesgray.com
stacy.dasaro@ropesgray.com

*Counsel to the Debtors*
*and Debtors in Possession*

## Exhibit A

**Second Revised Proposed Sale Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Gawker Media LLC, *et al.*,[1] | Case No. 16-11700 (SMB) |
| Debtors. | (Joint Administration Requested) |
|  | **Re: Docket No. [●]** |

### ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES, (II) APPROVING AND AUTHORIZING THE DEBTORS' ASSUMPTION OF THE ASSET PURCHASE AGREEMENT AND (III) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the motion (the "Motion") of Gawker Media LLC, Gawker Media Group, Inc., and Kinja Kft., the debtors and debtors in possession (collectively, the "Debtors"), for the entry of an order, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and rules 1005, 2002, 6004, 6006, 9007, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving and authorizing the Debtors' assumption of the Asset Purchase Agreement by and between the Debtors and ZDGM, LLC (together with its permitted designees, successors and permitted assigns in accordance with the APA, the "Buyer"), dated June 10, 2016 (substantially in the form attached hereto as **Exhibit 1**, and as may be amended, modified or supplemented from time to time in accordance with the terms thereof, the "APA"),[2] whereby the Debtors have agreed to sell, and Buyer has agreed to

---

[1]    The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media and GMGI are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja's offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures or the APA, as applicable.

acquire, substantially all of the Debtors' assets (collectively, and as specifically set forth and

defined in the APA, the "Acquired Assets") other than the Excluded Assets, and the Debtors

have agreed to transfer and Buyer has agreed to assume certain of the Debtors' liabilities

(collectively, and as specifically set forth and defined in the APA, the "Assumed Liabilities")

(collectively, and including all actions taken or required to be taken in connection with the

implementation and consummation of the APA, the "Transactions"); (ii) authorizing and

approving the sale of the Acquired Assets (the "Sale"), free and clear, to the maximum extent

permitted under section 363(f) of the Bankruptcy Code, of any and all interests, including any (a)

Liens of any other kind, (b) debts and claims (as that term is defined in section 101(5) of the

Bankruptcy Code), including all claims and causes of action of defamation, libel or slander with

respect to any content published by the Debtors prior to Closing, and (c) Liabilities, obligations,

costs, expenses, causes of action, avoidance actions, demands, guaranties, options, rights,

contractual commitments, settlements, injunctions, restrictions, encumbrances, reclamation

rights, and similar matters of any kind whatsoever, whether known or unknown, fixed or

contingent, or arising prior to or subsequent to the commencement of these chapter 11 cases (the

"Cases"), and whether imposed by agreement, understanding, law, equity or otherwise (each of

the foregoing collectively or individually, and including, to the extent not already specified

above, Successor or Transferee Liability (as defined in paragraph 18 below), the "Adverse

Interests") (other than Permitted Liens and Assumed Liabilities), with all such Adverse Interests

to attach to the proceeds of the Sale, in the order of their priority, with the same validity, force

and effect that they now have against the Acquired Assets, subject with respect to such  proceeds

to any rights, claims and defenses the Debtors or any parties in interest may possess with respect

thereto; (iii) authorizing the assumption and assignment to Buyer of certain executory contracts

and unexpired leases of the Debtors in accordance with the APA, the Bidding Procedures Order (as defined herein) and this Order; and (iv) granting other relief; and the Court having entered an order approving the bidding procedures and granting certain related relief on [●], 2016 [Docket No. [●]] (the "Bidding Procedures Order"); [and an auction (the "Auction") having been held on [●], 2016 in accordance with the Bidding Procedures Order;] and Buyer having been deemed the Successful Bidder by the Debtor, in consultation with the official committee of unsecured creditors appointed in the Cases (the "Committee"), pursuant to the Bidding Procedures Order; and the Court having conducted a hearing on the Motion on [●], 2016 (the "Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion, declarations and other evidence submitted in support thereof, the APA, the Bidding Procedures Order, the record of the hearing before the Court on [●], 2016; and having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing; and  due notice of the Motion, the APA, the Bidding Procedures Order and the Auction having been provided; and having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders and all other parties in interest; and the Court having jurisdiction over this matter; and the legal and factual bases set forth in the Motion and at the Sale Hearing establishing just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT HEREBY FINDS AS FOLLOWS:**

### **Jurisdiction, Venue, Statutory Bases and Final Order**

A.      This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334.

58554089_3

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 1005, 2002, 6004, 6006, 9007, 9014 and 9019.

**Notice of the Transactions, APA, Sale Hearing, Auction and the Cure Amounts**

D.      Actual written notice of the Sale Hearing, the Auction, the Motion and the Sale, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, has been afforded to all known interested entities including to the following parties: (i) the office of the United States Trustee for the Southern District of New York; (ii) counsel to the Committee; (iii) parties who are known or reasonably believed to have asserted any lien, encumbrance, claim or other interest in the Debtors' assets that are the subject of the proposed sale of the Acquired Assets, if any; (iv) all parties who have filed a notice of appearance and request for service of papers in the Cases pursuant to Bankruptcy Rule 2002; (v) each of the Debtors' current landlords and each counterparty to the Debtors' Non-Residential Leases and Other Executory Contracts (as defined in the APA); (vi) all applicable state and local taxing authorities, including the Internal Revenue Service; (vii) each governmental agency that is an interested party with respect to the sale of the Acquired Assets contemplated by the Stalking Horse APA and the transactions proposed thereunder; (viii) the Securities and Exchange Commission; and (ix) counsel to Buyer.

-4-

E.      The Debtors published notice of the time and place of the proposed Auction, the time and place of the Sale Hearing and the time for filing an objection to the relief requested in the Motion relating to the Sale in the United States edition of the *USA Today* on July 14, 2016.

F.      The foregoing notice was good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the APA or the Transactions is required. The disclosures made by the Debtors concerning the APA, the Auction, the Transactions and the Sale Hearing were good, complete and adequate.

G.      The Debtors have filed and served cure notices (the "Cure Notices") upon all non-Debtor counterparties to all Non-Residential Leases and Other Executory Contracts notifying such parties: (i) that the Debtors may seek to assume and assign such Leases and Contracts on the Closing Date of the Sale as provided in the APA and (ii) of the Debtors' good faith estimates of the cure amounts required in connection with such Lease or Contract.  The Debtors have also filed and served an Assumption Notice upon the non-Debtor counterparties to the Contracts listed on the Closing Designated Contract List, and the Debtors will file and serve, in accordance with the Post-Closing Assumption and Assignment Procedures set forth herein, Post-Closing Designation Notices upon the non-Debtor counterparties to the Non-Residential Leases and Other Executory Contracts that Buyer designates for assumption and assignment.  The service of the Cure and Assumption Notices and the service of the Post-Closing Designation Notices in such manner will be good, sufficient and appropriate under the circumstances, and no further notice is required.

## Highest and Best Offer

H.      As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors conducted a

-5-

marketing process in accordance with, and have otherwise complied in all respects with, the

Bidding Procedures Order, and the Acquired Assets were adequately marketed by the Debtors.

All interested persons and entities have been afforded a full, fair and reasonable opportunity to

(i) conduct due diligence investigations, (ii) submit higher or otherwise better bids to purchase

the assets of the Debtors and (iii) object and be heard in connection with the Sale Motion and the

relief granted by this Order.  [The Auction contemplated by the Bidding Procedures was held on

August [●], 2016. At the conclusion of the Auction, Buyer was selected by the Debtors, in

consultation with the Committee, as the Successful Bidder.] [The Debtors did not receive any

Qualified Bids for the Acquired Assets prior to the Bid Deadline. Therefore, no Auction was

necessary under the terms of the Bidding Procedures and Buyer was named by the Debtors as the

Successful Bidder.]

I.       The consideration provided by Buyer under the APA constitutes or provides the

highest or otherwise best offer and provides fair and reasonable consideration to the Debtors for

the sale of all Acquired Assets and the assumption of all Assumed Liabilities, and the

performance of the other covenants set forth in the APA will provide a greater recovery for the

Debtors' estates than would be provided by any other available alternative.  Buyer is the

Successful Bidder for the Acquired Assets in accordance with the Bidding Procedures Order.

The Debtors' determination that the APA constitutes the highest or otherwise best offer for the

Acquired Assets is a valid and sound exercise of the Debtors' business judgment consistent with

their fiduciary duties.  Buyer has complied in all respects with the Bidding Procedures Order and

any other applicable order of this Court in negotiating and entering into the APA. The Sale and

APA likewise comply with the Bidding Procedures Order and all other applicable orders of this

Court.

58554089_3

J.        Entry of an order approving the APA and all the provisions thereof is a necessary

condition precedent to Buyer's consummation of the Transactions.

## Good Faith of Buyer and Arms' Length Sale

K.        Buyer is entering into the Transactions in good faith and is a good faith purchaser

within the meaning of section 363(m) of the Bankruptcy Code and the court decisions

thereunder, and is therefore entitled to the full protection of that provision with respect to all

aspects of the transactions contemplated by the APA, including the acquisition of the Acquired

Assets, and otherwise has proceeded in good faith in all respects in connection with this

proceeding.  Neither the Sellers nor Buyer has engaged in any conduct that would cause or

permit the Transactions to be avoided or result in the imposition of any costs or damages under

section 363(n) of the Bankruptcy Code.  Specifically, Buyer has not acted in a collusive manner

with any person and the Purchase Price was not controlled by any agreement among the bidders.

In addition, none of Buyer or its respective affiliates, present or contemplated members, officers,

directors, partners, shareholders or any of their respective heirs, successors and assigns is an

"insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy

Code.

L.        In accordance with section 365 of the Bankruptcy Code, including sections

365(b)(1) and 365(f)(2) of Bankruptcy Code, the Debtors have shown that Buyer has the

wherewithal, financial and otherwise, to perform all of its obligations under the APA.

## No Fraudulent Transfer

M.        The consideration provided by Buyer pursuant to the APA for its purchase of the

Acquired Assets, the assumption of the Assumed Liabilities and the performance of the

covenants contained in the APA constitute reasonably equivalent value and fair consideration

58554089_3

under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent

Transfer Act, the Uniform Voidable Transactions Act, and under the laws of the United States,

any state, territory, possession thereof or the District of Columbia.

N.    There has been no showing that any of the Debtors or Buyer (i) has entered into

the APA or proposes to consummate the Transactions for the purpose of hindering, delaying or

defrauding the Debtors' present or future creditors or (ii) is entering into the APA or proposing

to consummate the Transactions fraudulently, for the purpose of statutory or common law

fraudulent conveyance and fraudulent transfer claims, whether under the Bankruptcy Code or

under the laws of the United States, any state, territory, possession thereof or the District of

Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

**Successor Liability Matters**

O.    By virtue of the consummation of the Transactions contemplated by the APA, (i)

Buyer is not a continuation of the Debtors or their respective estates, there is no continuity

between Buyer and the Debtors, there is no common identity between the Debtors and Buyer,

there is no continuity of enterprise between the Debtors and Buyer, and Buyer is not a mere

continuation of the Debtors or their estates, (ii) Buyer is not holding itself out to the public as a

continuation of the Debtors or their respective estates and (iii) the Transactions do not amount to

a consolidation, merger or *de facto* of Buyer and the Debtors and/or the Debtors' estates.

Accordingly, Buyer is not and shall not be deemed a successor to Seller as a result of the

consummation of the Transactions contemplated by the APA.

**Validity of Transfer**

P.    Each Debtor's Board of Directors or equivalent and Buyer have authorized the

execution and delivery of the APA and the Transactions. The Debtors and Buyer (i) have full

corporate power and authority to execute and deliver the APA and all other documents

contemplated thereby, as applicable, (ii) have all of the power and authority necessary to

consummate the Transactions and (iii) have taken all action necessary to authorize and approve

the APA and to consummate the Transactions, and no further consents or approvals are required

for the Debtors or Buyer to consummate the Transactions contemplated by the APA, except as

otherwise set forth therein.

Q.      Buyer shall have no obligations with respect to any Adverse Interests against or in

respect of any of the Debtors or their assets, including the Acquired Assets (other than Permitted

Liens and Assumed Liabilities).

R.      The consummation of the Sale and Transactions is legal, valid and properly

authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a),

363(b), 363(f), 363(m), 363(n), 365(b)(1) and 365(f)(2) of the Bankruptcy Code, and with

respect to the Designated Contracts (defined below), all of the applicable requirements of such

sections have been or will be complied with in respect of the Transactions as of the effective date

of assignment.

S.      The Acquired Assets constitute property of the Debtors' estates and title thereto is

presently vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy

Code.  The sale of the Acquired Assets to Buyer will be, as of the Closing Date or such later date

as such Acquired Assets are transferred under the APA, a legal, valid and effective transfer of

such assets, and each transfer and assignment vests or will vest Buyer with all right, title and

interest of the Debtors to the Acquired Assets free and clear of all Adverse Interests (other than

Permitted Liens and Assumed Liabilities).

**Section 363 Is Satisfied**

T.      Entry into the APA and consummation of the Transactions contemplated thereby constitute a valid and sound exercise of the Debtors' business judgment consistent with their fiduciary duties and such acts are in the best interests of the Debtors, their respective creditors, their estates and other parties in interest.  The Debtors have demonstrated both (i) good, sufficient and sound business reasons and justifications and (ii) compelling circumstances for the sale of the Acquired Assets to Buyer pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization.  Such business reasons include the facts that (i) there is substantial risk of deterioration of the value of the Acquired Assets if the Transactions are not consummated quickly; (ii) the APA constitutes the highest and best offer for the Acquired Assets; (iii) the APA and the consummation of the Transactions contemplated thereby present the best opportunity to realize the value of the Acquired Assets and avoid decline and devaluation of the Acquired Assets; and (iv) unless the sale of the Acquired Assets is consummated expeditiously as provided for in the Motion and pursuant to the APA, creditors' recoveries may be diminished.

U.      The Debtors may sell and assign the Acquired Assets free and clear of all Adverse Interests (other than Permitted Liens and Assumed Liabilities) because, with respect to each creditor asserting an Adverse Interest, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Adverse Interests who did not object or who withdrew their objections to the Sale, the Transactions or the Cure Notices are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code. All holders of Adverse Interests are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by having their Adverse Interests, if any, attach to the proceeds of the Sale,

-10-

in the same order of priority and with the same validity, force and effect that such Adverse

Interest holder had before the Sale, subject to any rights, claims and defenses of the Debtors or

their estates, as applicable, or as otherwise provided herein.

      V.      Buyer would not have entered into the APA and would not consummate the sale

of all Acquired Assets, thus adversely affecting the Debtors, their estates, creditors, employees

and other parties in interest, if the sale of the Acquired Assets was not free and clear of all

Adverse Interests (other than Permitted Liens and Assumed Liabilities).  A sale of the Acquired

Assets, other than one free and clear of all Adverse Interests, would yield substantially less value

for the Debtors' estates, with less certainty than the Sale.

## Assumption of the APA

      W.      The Debtors' assumption of the APA is in the best interest of the Debtors, their

respective estates, creditors and other parties in interest, and represents a valid and sound

exercise of business judgment by the Debtors.  The Debtors have met all requirements of section

365(b) of the Bankruptcy Code to assume the APA.

## Assumption and Assignment of the Designated Contracts

      X.      The assumption and assignment of the Designated Contracts pursuant to the terms

of the Bidding Procedures Order, this Order and the APA are integral to the APA, are in the best

interests of the Debtors, their respective creditors, their estates and other parties in interest, and

represent the reasonable exercise of sound and prudent business judgment by the Debtors.

      Y.      The Debtors have met all requirements of section 365(b) of the Bankruptcy Code

for each of the Designated Contracts. The Debtors and/or Buyer, as applicable under the APA,

have (i) cured and/or provided adequate assurance of cure of any default existing prior to the date

of the Closing under all of the Designated Contracts, within the meaning of section 365(b)(1)(A)

-11-

58554089_3

of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default existing prior to the date of the Closing under any of the Designated Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. The assumption and assignment to Buyer of each of the Designated Contracts shall be free and clear of all Adverse Interests (other than Permitted Liens and Assumed Liabilities).

Z.      Buyer has provided adequate assurance of its future performance under the relevant Designated Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. Pursuant to section 365(f) of the Bankruptcy Code, the Designated Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, Buyer, notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

AA.     No default exists in the Debtors' performance under the Designated Contracts as of the date of the Closing other than the failure to pay Cure Amounts or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

### Compelling Circumstances for an Immediate Sale

BB.     To maximize the value of the Debtors' assets, it is critical that the Transactions close within the time constraints set forth in the APA. There is no just reason for delay in the implementation of this Order; accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 4001, 6004, and 6006.

CC.     The immediate implementation of this Order and the consummation of the Sale are necessary both to preserve and maximize the value of the Debtors' assets for the benefit of

-12-

the Debtors, their estates, their creditors and all other parties in interest in the Cases, and to provide the means for the Debtors to maximize creditor recoveries.

DD.    The transactions contemplated by the APA and this Order neither impermissibly restructure the rights of any Debtor's creditors or equity holders nor impermissibly dictate the terms of a chapter 11 plan for any Debtor, and therefore, do not constitute a *sub rosa* chapter 11 plan.

EE.    Nothing in the APA creates any third party beneficiary rights in any person or entity not a party to the APA.

**NOW THEREFORE, ITS IS HEREBY ORDERED THAT:**

**General Provisions**

1.    The Motion is granted and approved to the extent set forth herein.

2.    All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court prior to the date hereof or as resolved in this Order, and all reservations of rights included therein, are hereby overruled on the merits with prejudice. All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

3.    Findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures hearing held on July 7, 2016, are incorporated herein by reference.

4.    Where appropriate herein, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact.

-13-

## Approval and Assumption of the APA

5.      The APA and all of the Transactions contemplated therein are approved.  The APA is hereby assumed by the Debtors in accordance with section 365 of the Bankruptcy Code. The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized, approved and assumed in its entirety, with such amendments thereto as may be made by the parties in accordance with this Order.

6.      The Debtors are authorized to (i) execute and consummate the APA (including, for the avoidance of doubt, the agreements with respect to the Escrow Account set forth in the APA), together with any and all instruments and documents that may be reasonably necessary to implement the APA and to fully close the Transactions, including the sale to Buyer of all Acquired Assets, in accordance with the terms and conditions set forth in the APA and this Order; (ii) take any and all actions as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the APA and this Order, without any further corporate action or order of this Court; and (iii) assume and assign any and all Designated Contracts as and when provided in the APA.

7.      Buyer has no obligation to proceed with the Closing unless and until all conditions precedent to its obligations to do so, as set forth in the APA, have been met, satisfied or waived in accordance with the terms of the APA.

8.      The Debtors are hereby authorized and directed, after consultation with the Committee, to instruct the Escrow Agent to (i) hold the Deposit in accordance with the APA and (ii) release and deliver the Deposit pursuant to the terms of the APA.

-14-

**<u>Sale and Transfer Free and Clear of Adverse Interests</u>**

9.      Upon Closing (or thereafter as of the filing of a Post-Closing Designation Notice

with respect to any Designated Contract, subject to the Post-Closing Assumption and

Assignment Procedures[3] described herein), all of the Debtors' legal, equitable and beneficial

right, title and interest in and to, and possession of, the Acquired Assets shall be immediately

vested in Buyer pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code free

and clear of Adverse Interests (other than Permitted Liens and Assumed Liabilities), with all

Adverse Interests to attach to the proceeds of the Sale, in the order of their priority, with the

same validity, force and effect that they now have against the Acquired Assets (subject with

respect to such proceeds to any rights, claims and defenses the Debtors or any parties in interest

may possess with respect thereto).  Such transfer shall constitute a legal, valid, binding and

effective transfer of such Acquired Assets and shall vest Buyer with good and marketable title to

the Acquired Assets.

10.      The holders of claims related solely to the Permitted Liens and Assumed

Liabilities shall have the right to seek payment directly from Buyer on account of the Permitted

Liens and Assumed Liabilities; *provided*, *however*, that Buyer reserves any and all rights,

defenses or objections with regard to such Permitted Liens and Assumed Liabilities, including

Buyer's rights hereunder and under the APA.

11.      This Order is and shall be binding upon entities, including all filing agents, filing

officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of

deeds, registrars of patents, trademarks or other intellectual property, administrative agencies,

governmental departments, secretaries of state, federal and local officials and all other persons

---

[3]      The "***Post-Closing Assumption and Assignment Procedures***" shall mean those procedures for assumption and
assignment of Non-Residential Leases and Other Executory Contracts described in Paragraphs 30–34 of this
Order.

-15-

and entities who may be required by operation of law, the duties of their office or contract, to

accept, file, register or otherwise record or release any documents or instruments, or who may be

required to report or insure any title or state of title in or to any lease; and each of the foregoing

persons and entities shall accept for filing any and all of the documents and instruments

necessary and appropriate to consummate the Transactions.

      12.      Except with respect to the Assumed Liabilities, all persons and entities (and their

respective successors and assigns), including all Governmental Units (as defined in section

101(27) and 101(41) of the Bankruptcy Code), debt security holders, equity security holders,

affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees,

trade creditors, litigation claimants and other creditors holding Adverse Interests arising under or

out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the

ownership, sale or operation of the Acquired Assets and the business prior to the Closing or the

transfer of Acquired Assets to Buyer (whether prior to the Closing or thereafter as of the filing of

a Post-Closing Designation Notice for any Designated Contract, subject to the Post-Closing

Assumption and Assignment Procedures described herein), are hereby forever barred, estopped

and permanently enjoined from asserting such Adverse Interests (other than Permitted Liens and

Assumed Liabilities) against Buyer, its property or the Acquired Assets.  Following the Closing

(or thereafter as of the filing of a Post-Closing Designation Notice for any Designated Contract,

subject to the Post-Closing Assumption and Assignment Procedures described herein), no holder

of any Adverse Interest shall interfere with Buyer's title to or use and enjoyment of the Acquired

Assets based on or related to any such Adverse Interest (other than Permitted Liens and Assumed

Liabilities), or based on any action the Debtors may take in the Cases.  All persons or entities,

58554089_3

presently or on or after the Closing, in possession of some or all of the Acquired Assets shall surrender possession of the Acquired Assets to Buyer or its respective designees.

13.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Adverse Interests (other than Permitted Liens and Assumed Liabilities) against or in the Acquired Assets shall not have delivered to the Debtors prior to the Closing of the Transactions in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all Adverse Interests (other than Permitted Liens and Assumed Liabilities) that the person or entity has with respect to such Acquired Assets, then only with regard to the Acquired Assets that are purchased by Buyer pursuant to the APA and this Order, (i) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Acquired Assets, and (ii) Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Adverse Interests (other than Permitted Liens and Assumed Liabilities) against Buyer and the applicable Acquired Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office. For the avoidance of doubt, only Acquired Assets that are part of the estates of the Debtors are being sold to Buyer free and clear of Adverse Interests (other than Permitted Liens and Assumed Liabilities) pursuant to section 363(f) of the Bankruptcy Code.

14.    To the extent permitted under applicable law, Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Acquired Assets and the Non-

-17-

Residential Leases and Other Executory Contracts, and all such licenses, permits, registrations

and governmental authorizations and approvals are deemed to have been, and hereby are

transferred to Buyer as of the Closing Date.

15.    To the extent provided by section 525 of the Bankruptcy Code, no governmental

unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets

sold, transferred or conveyed to Buyer on account of the filing or pendency of the Cases.

### No Successor or Transferee Liability

16.    Buyer is not and shall not be deemed, as a result of any action taken in

connection with the APA, the consummation of the Transactions, the transfer, operation or use

of the Acquired Assets or the employment of the Selected Employees or Transferred

Employees to:  (i) be a legal successor, or otherwise be deemed a successor to the Debtors

(other than, for Buyer, with respect to any obligations arising after the Closing as an assignee

under Assumed Contracts); (ii) have, *de facto* or otherwise, merged with or into the Debtors; or

(iii) be an alter ego or a mere continuation or substantial continuation or successor of the

Debtors in any respect.

17.    Except as expressly provided in the APA with respect to Assumed Liabilities,

Buyer shall have no liability whatsoever with respect to the Debtors' (or their predecessors or

affiliates) respective businesses or operations or any of the Debtors' (or their predecessors' or

affiliates') obligations (as described below, "Successor or Transferee Liability") based, in whole

or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or

character, or based upon any theory of labor law, employment law, the Employment Retirement

Income Security Act of 1974 and benefits law, antitrust, environmental, successor or transferee

-18-

liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on account of any settlement or injunction, or any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets or the Business prior to the Closing or such later time as Buyer is assigned and assumes any Assumed Contract.  Except to the extent expressly included in the Assumed Liabilities or otherwise provided for in the APA with respect to WARN liabilities, Buyer shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 2101 et seq.) or the Comprehensive Environmental Response Compensation and Liability Act or any foreign, federal, state or local labor, employment or environmental law whether of similar import or otherwise by virtue of Buyer's purchase of the Acquired Assets or assumption of the Assumed Liabilities.

18.     Except as expressly provided in the APA with respect to the Assumed Liabilities, nothing in this Order or the APA shall require Buyer to (i) continue or maintain in effect, or assume any liability in respect of any employee, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtors are a party or have any responsibility therefor including medical, welfare and pension benefits payable after retirement or other termination of employment, or (ii) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

19.     All persons and entities are prohibited and enjoined from taking any action that would adversely affect or interfere with, or which would be inconsistent with, the ability of the

58554089_3

Debtors to transfer the Acquired Assets to Buyer in accordance with the APA and this Order.

Effective upon the Closing, all persons and entities are forever prohibited and enjoined from

commencing or continuing in any matter any action or other proceeding, whether in law or

equity, in any judicial, administrative, arbitral or other proceeding against Buyer, or its assets

(including the Acquired Assets), or its successors and assigns, with respect to any (i) Adverse

Interest (other than Permitted Liens and Assumed Liabilities) or (ii) Successor or Transferee

Liability including the following actions with respect to clauses (i) and (ii): (a) commencing or

continuing any action or other proceeding pending or threatened; (b) enforcing, attaching,

collecting or recovering in any manner any judgment, award, decree or order; (c) creating,

perfecting or enforcing any Adverse Interest (other than Permitted Liens and Assumed

Liabilities); (d) asserting any setoff, right of subrogation or recoupment of any kind;

(e) commencing or continuing any action, in any manner or place, that does not comply with, or

is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements

or actions contemplated or taken in respect hereof; or (f) revoking, terminating or failing or

refusing to renew any license, permit or authorization to operate any of the Acquired Assets or

conduct any of the businesses operated with such assets.

## Good Faith of Buyer

20.      Buyer has acted without collusion, in good faith, undertaking the Sale and

Transactions contemplated by the APA (including the assumption and assignment of the

Designated Contracts).

21.      Buyer is entitled to all the protections and immunities of section 363(m) of the

Bankruptcy Code.  There has been no showing that the Debtors or Buyer engaged in any action

58554089_3

or inaction that would cause or permit the Transactions to be avoided or costs or damages to be

imposed under section 363(n) of the Bankruptcy Code.

**Assumption and Assignment of Designated Contracts**

22.     Before the Sale Hearing, in accordance with and pursuant to Section 2.7 of the

APA, Buyer provided to the Debtors a Closing Designated Contract List designating certain

Non-Residential Leases and Other Executory Contracts for assumption by the Debtors and

assignment to Buyer.  Buyer filed an Assumption Notice with respect to the Contracts listed on

the Closing Designated Contract List and such notice was good, sufficient and appropriate under

the circumstances, and no further notice of the Closing Designated Contract List is required.  Up

to three (3) Business Days prior to the Closing Date, Buyer may exclude or remove from the

Closing Designated Contract List any Non-Residential Lease or Other Executory Contract. On or

before the Closing Date, Buyer shall provide to the Debtors, and the Debtors shall file with the

Court, the final Closing Designated Contract List, and the Debtors shall serve notice of such list

by first class mail on all non-Debtor counterparties to the Non-Residential Leases and Other

Executory Contracts included on the final Closing Designated Contract List.

23.     Pursuant to Section 2.7 of the APA, from and after the Closing Date through the

Designation Deadline,[4] Buyer shall provide written notice to the Debtors (and the Debtors shall

provide such notice to the affected counterparties within three (3) Business Days of receipt of

such notice from Buyer) designating certain Non-Residential Leases and Other Executory

Contracts for assumption by the Debtors and assignment to Buyer (such notice, the "Post-

Closing Designation Notice", and such Leases and Contracts together with the Non-Residential

---

[4]     Designation Deadline is defined in the APA to mean 5:00 p.m. (prevailing Eastern time) on the date that is
        thirty (30) days from the Closing Date (or such longer period as may be agreed between Buyer and the
        counterparty of the applicable Contract).

58554089_3

Leases and Other Executory Contracts included on the final Closing Designated Contract List,

the "Designated Contracts").

24.    The Debtors are authorized at the Closing (or thereafter as of the filing of a Post-

Closing Designation Notice for any Designated Contract) to assume and assign each of the

Designated Contracts in accordance with the APA and this Order to Buyer free and clear of all

Adverse Interests (other than Permitted Liens and Assumed Liabilities) pursuant to sections

105(a), 363 and 365 of the Bankruptcy Code and to execute and deliver to Buyer such

documents or other instruments as may be necessary to assign and transfer the Designated

Contracts to Buyer. The payment of the applicable Cure Amounts by Buyer shall (i) effect a cure

of all defaults existing thereunder as of the Closing (or thereafter for any Designated Contract

that is assumed and assigned post-Closing, subject to the Post-Closing Assumption and

Assignment Procedures described herein), (ii) compensate for any actual pecuniary loss to such

non-Debtor counterparty resulting from such default and (iii) together with the assumption of the

Designated Contracts by the Debtors and the assignment of such Designated Contracts to Buyer,

constitute adequate assurance of future performance thereof.  For purposes of this Order, "Cure

Amounts" shall mean the applicable Cure Amounts set forth on **Exhibit 3** attached hereto, or

such other Cure Amounts as agreed, in writing, by the Debtors, Buyer and the counterparty to the

applicable Designated Contract.  Subject to the Post-Closing Assumption and Assignment

Procedures described herein for any Designated Contract that is assumed and assigned post-

Closing, the counterparties to the Designated Contracts are forever bound by the applicable Cure

Amounts and, upon payment of such Cure Amounts as provided for herein, are hereby enjoined

from taking any action against Buyer or the Acquired Assets with respect to any claim for cure

under the applicable Designated Contracts.

58554089_3

25.    Any provisions in any Designated Contract (including any Designated Contract that becomes such post-Closing subject to the Post-Closing Assumption and Assignment Procedures described herein) that prohibit or condition the assignment of such Designated Contract or allow the counterparty to such Designated Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Designated Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the Debtors' assumption and assignment of such Designated Contracts in accordance with the APA but will be effective and binding upon Buyer with respect to any purported assignment for the remaining term of such Designated Contract.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Buyer of the Designated Contracts have been satisfied.  Upon the Closing or such later time as is provided in the APA with respect to the assumption and assignment of any Designated Contract, in accordance with sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Designated Contracts, and such Designated Contracts shall remain in full force and effect for the benefit of Buyer.

26.    Each non-Debtor counterparty to the Designated Contracts shall be forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Buyer or their respective property any assignment fee, acceleration, default, breach or claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing (or thereafter as of the filing of a Post-Closing Designation Notice for those that arise post-Closing and are not barred by this Order with respect to any Designated Contract that is assumed and assigned post-Closing) or arising by reason of the Closing or the transfer of the Acquired Assets, including any

-23-

breach related to or arising out of change-in-control in such Designated Contracts, or any

purported written or oral modification to the Designated Contracts and (ii) asserting against

Buyer (or its property, including the Acquired Assets) any claim, counterclaim, breach, or

condition asserted or assertable against the Debtors existing as of the Closing (or thereafter as of

the filing of a Post-Closing Designation Notice for those that arise post-Closing and are not

barred by this Order with respect to any Designated Contract that is assumed and assigned post-

Closing) or arising by reason of the transfer of the Acquired Assets, except for the Assumed

Liabilities.  In addition, without relieving Buyer of its obligations under the APA, nothing in the

Order, the Motion or the APA shall affect the Debtors' obligations under section 365(d)(3) of the

Bankruptcy Code (or Buyer's assumption thereof) prior to the assumption and assignment or

rejection of any Designated Contracts.

27.    Upon the Closing (or thereafter as of the filing of a Post-Closing Designation

Notice for any Designated Contract), Buyer shall be deemed to be substituted for the Debtors as

a party to the applicable Designated Contracts and shall pay all outstanding undisputed Cure

Amounts with respect thereto, and the Debtors shall be released, pursuant to section 365(k) of

the Bankruptcy Code, from any liability under the Designated Contracts from and after such

assignment. There shall be no assignment fees, increases or any other fees charged to Buyer or

the Debtors as a result of the assumption and assignment of the Designated Contracts.

28.    Buyer has provided adequate assurance of future performance under the

Designated Contracts (including any Designated Contract that becomes such post-Closing)

within the meaning of sections 365(b)(1)(c), 365(b)(3) (to the extent applicable) and 365(f)(2)(B)

of the Bankruptcy Code.

-24-

**Post-Closing Assumption and Assignment Procedures**

29.     In the case of any Non-Residential Leases and Other Executory Contracts that the Debtors seek to assume and assign from and after the Closing Date pursuant to Section 2.7 of the APA, within three (3) Business Days following receipt of a notification by Buyer that a Non-Residential Lease or Other Executory Contract is designated for assumption and assignment, the Debtors shall file with the Court a Post-Closing Designation Notice of the Debtors' proposed assumption and assignment of such Non-Residential Lease or Other Executory Contract, substantially in the form attached hereto as **Exhibit 2**.  The assumption and assignment of each such Non-Residential Lease or Other Executory Contract shall be effective as of the date of the filing of the applicable Post-Closing Designation Notice without any further order of the Court, with objections to the applicable cure amount, if any, to be resolved thereafter as set forth below.

30.     The Debtors will serve such Post-Closing Designation Notice via first class mail on each of the following parties (the "Post-Closing Designation Notice Parties"): (i) each counterparty to any Non-Residential Lease or Other Executory Contract (and their counsel, if known) to be assumed or assigned by the Debtors, (ii) the Office of the United States Trustee, (iii) counsel to the Committee, and (iv) counsel to Buyer.

31.     The Post-Closing Designation Notice will set forth the following information, to the best of the Debtors' knowledge: (i) a description of the Non-Residential Lease or Other Executory Contract that the Debtors are assuming and assigning, (ii) the name and address of the affected counterparties (and their counsel, if known), (iii) a description of the deadlines and procedures for filing objections to the Post-Closing Designation Notice (as set forth below), and (iv) the proposed cure amounts that arise solely following the Closing and have not otherwise been paid in the ordinary course.

58554089_3

32.    A party in interest may object to a Post-Closing Designation Notice solely with respect to the cure amount contained therein and only to the extent such objection could not have been raised prior to the Closing.  Any such objection must be in writing and filed and served so that such objection is filed with this Court and actually received by the Debtors and the Post-Closing Designation Notice Parties no later than ten (10) Business Days after the date the Debtors served the applicable Post-Closing Designation Notice.

33.    If no timely permitted objection is filed and served with respect to the Post-Closing Designation Notice, any non-Debtor party to such Non-Residential Lease or Other Executory Contract shall be deemed to have consented to the cure amount set forth in such Post-Closing Designation Notice.  If a timely permitted objection is properly filed and served on the Post-Closing Designation Notice Parties in the manner specified above, unless the parties agree otherwise in writing, a hearing will be scheduled to consider that objection.

## Other Provisions

34.    Other than in the Ordinary Course of Business, the Debtors shall not consent or agree to the allowance of any claim to the extent it would constitute a Permitted Lien or Assumed Liability without the prior written consent of Buyer.  Buyer shall have standing in the Cases to object to the validity, amount, or priority of any claim against the Debtors to the extent it would otherwise constitute a Permitted Lien or Assumed Liability, and the Court will retain the right to hear and determine such objections.

35.    Effective upon the Closing, the Debtors, on behalf of themselves and their respective past, present and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns (collectively, the "Debtor Releasing Parties"), hereby release, remise, acquit and forever discharge Buyer and its past, present and

58554089_3

future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys,

successors and assigns, and each of its and their respective directors, managers, officers,

employees, shareholders, members, agents, representatives, attorneys, contractors,

subcontractors, independent contractors, owners, insurance companies and partners (except, in

each case, the Debtor Releasing Parties) (collectively, in their capacities as parties being released

pursuant to this Paragraph 36, the "Buyer Released Parties"), from any and all claims, contracts,

demands, causes of action, disputes, controversies, suits, cross-claims, torts, losses, attorneys'

fees and expenses, obligations, agreements, covenants, damages, liabilities, costs and expenses,

whether known or unknown, whether anticipated or unanticipated, whether claimed or suspected,

whether fixed or contingent, whether yet accrued or not, whether damage has resulted or not,

whether at law or in equity, whether arising out of agreement or imposed by statute or common

law of any kind, nature, or description, including, without limitation as to any of the foregoing,

any claim by way of indemnity or contribution, which any Debtor Releasing Party has, may have

had or may hereafter assert against any Buyer Released Party arising from or related in any way,

either directly or indirectly, to the negotiation, documentation, performance or consummation of

the APA, any Related Agreements or any other agreements entered into in connection with the

transactions contemplated thereby; *provided*, *however*, that the foregoing release shall not apply

to the Debtors' rights or Buyer's obligations under this Order or the APA (including Section 6.9

of the APA), any Related Agreements and/or any other agreements entered into in connection

with the transactions contemplated hereby or thereby.

36.    Subject to the terms of the APA, the APA and any related agreements may be

waived, modified, amended or supplemented by agreement of the Debtors and Buyer, in

consultation with counsel to the Committee, without further action or order of the Bankruptcy

Court if it does not have a material adverse effect on the Debtors' estates. Any material modification, waiver, amendment or supplement to the APA must be approved by order of the Bankruptcy Court.

37.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of this Court, to allow Buyer to deliver any notice provided for in the APA and allow Buyer to take any and all actions permitted or required under the APA in accordance with the terms and conditions thereof. Buyer shall not be required to seek or obtain any further relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other sale-related document.

38.    Neither the Debtors nor any of their Affiliates shall use, license or permit any third party to use, any name, slogan, logo or trademark which is confusingly or deceptively similar to any of the names, trademarks or service marks included in the Intellectual Property included in the Acquired Assets, and each Debtor is directed to change its corporate name to a name which (i) does not use the name "Gawker", "Gizmodo", "Kotaku", "Jalopnik", "LifeHacker", "Deadspin", "Jezebel", "Kinja" or any other name that is a trademark of the Debtors acquired by Buyers or references or reflects any of the foregoing in any manner whatsoever, (ii) is otherwise substantially dissimilar to its present name and (iii) is approved in writing by Buyer.

39.    In connection with the Closing, the Debtors are authorized and directed to take such steps as necessary to hold any sale proceeds remaining after making payments required to be made under the Debtor in Possession financing or otherwise in connection with the Closing in a separate segregated account, and, without waiving or limiting the requirements under 363 of

58554089_3

the Bankruptcy Code, are further authorized take such other and necessary steps to consummate

the transactions contemplated by the APA, preserve the value of the Debtors' remaining assets,

including but not limited to, obtaining insurance coverage consistent with coverage in existence

prior to the Closing, including coverage for the remaining assets, the post-closing operations of

the Debtors and the directors and officers of the Debtors (including tail coverage). No later than

14 days following the Closing, the Debtors will provide the Committee with a budget for post-

closing operations (the "Post-Closing Budget"), which Post-Closing Budget shall be in

substantially the same form as to the level of detail and categories, to the extent applicable,  as

the debtor in possession financing budget provided to the Committee prior to the Closing. The

Committee reserves all rights with respect to objections to the Post-Closing Budget and the

expenditures set forth therein.

40.    If and to the extent that any privileged information or work product is transferred

to Buyer beyond as provided in the APA, such transfer shall be deemed inadvertent and shall not

constitute a waiver of the privilege or other protection.  If Buyer is notified by the Sellers of an

inadvertent transfer of privileged or other protected information, Buyer shall take all

commercially reasonable steps to return or destroy the inadvertently transferred information as

requested by the Sellers.

41.    Any allocation to be performed pursuant to the terms of Section 2.10 of the APA

shall be for tax purposes only and shall not be binding on the Debtors in any other way, and the

rights of all parties in interest, including the Committee, with respect to the allocation of the

purchase price as between the Sellers are hereby preserved.

42.    Within one (1) Business Day of the occurrence of the Closing of the Sale, the

Debtors shall file and serve a notice of same, substantially in the form attached hereto as

58554089_3

**Exhibit 2** (the "Notice of Sale Closing and Effective Date of Amendment of Case Caption") and

upon the filing of such notice, the Debtors' case caption shall be amended as follows:

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | Chapter 11 |
| GMLLC Liquidating, LLC], *et al.* | Case No. 16-11700 (SMB) |
| Debtors. | Jointly Administered |

1    The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: [●] (f/k/a Gawker Media Group, Inc.) ([●]); [●] (f/k/a Gawker Media LLC) ([●]); [●] (f/k/a Kinja Kft.) ([●]).  The Debtors' executive headquarters are located at [●].

43.    Upon the filing of the Notice of Sale Closing and Effective Date of Amendment

of Case Caption, the Clerk of the Court is authorized and directed to make a docket entry in case

numbers 16-11700, 16-11718, and 16-11719 consistent with Paragraph 41 of this Order.

44.    The Court shall retain exclusive jurisdiction to, among other things, interpret,

implement, and enforce the terms and provisions of this Order and the APA, all amendments

thereto and any waivers and consents thereunder and each of the agreements executed in

connection therewith to which the Debtors are a party or which has been assigned by the Debtors

to Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way

to the sale.

45.    This Court retains jurisdiction to:  (a) compel delivery of the Acquired Assets,

(b) protect Buyer and its assets, including the Acquired Assets, against any Adverse Interests

(other than Permitted Liens and Assumed Liabilities) and Successor or Transferee Liability,

(c) enter orders, as appropriate, pursuant to sections 105, 363 or 365 (or other applicable

provisions) of the Bankruptcy Code necessary to transfer the Acquired Assets and the

58554089_3

Designated Contracts to Buyer, and (d) adjudicate disputes between Buyer and holders of claims related to the Assumed Liabilities regarding the Assumed Liabilities.

46.    All amounts, if any, to be paid by the Debtors to Buyer pursuant to the APA, including any allowed claims for breach thereof, shall (i) constitute allowed administrative expenses of the estates pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, (ii) be protected as provided in the APA and the Bidding Procedures Order, (iii) not be altered, amended, discharged or affected by any plan proposed or confirmed in the Cases without the prior written consent of Buyer and (iv) be due and payable if and when any of the Debtors' obligations arise under the APA without further order of the Court.

47.    Nothing contained in (a) any chapter 11 plan confirmed in these Cases, (b) any order confirming any such chapter 11 plan, or (c) any order of any type or kind in these Cases, any subsequent chapter 7 cases in which these Cases may be converted or any related proceedings subsequent to the entry of this Sale Order shall conflict with or derogate from the provisions of the APA (or any agreement contemplated thereby) or this Order, and to the extent of any conflict or derogation between this Order or the APA (or any agreement contemplated thereby) and such future plan or order, the terms of this Order and the APA (any agreement contemplated thereby)  shall control.

48.    The Transactions contemplated hereunder shall not be affected by any bulk sales laws.

49.    Buyer has standing to seek to enforce the terms of this Order.

50.    Notwithstanding the possible applicability of Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9014 or otherwise, this Order shall not be stayed, the terms and conditions of this Order shall be effective immediately upon entry and the Debtors and Buyer are

-31-

authorized to close the Sale immediately upon entry of this Order.  Time is of the essence in

closing the Sale, and the Debtors and Buyer intend to close the Sale as soon as practicable.  This

Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Any

party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay,

or risk its appeal being dismissed as moot.

51.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

52.     The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

53.     All time periods set forth in this Order shall be calculated in accordance with

Bankruptcy Rule 9006(a).

54.     To the extent there are any inconsistencies between the terms of the Bidding

Procedures Order, this Order and the APA, the terms of this Order shall control.


Dated: _____, 2016
       New York, New York                    _____
                                             STUART M. BERNSTEIN
                                             UNITED STATES BANKRUPTCY JUDGE

58554089_3

**<u>Exhibit B</u>**

**Blackline of Second Revised Proposed Sale Order
with First Revised Proposed Sale Order**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Gawker Media LLC, *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 16-11700 (SMB)<br><br>(Joint Administration Requested)<br><br>**Re: Docket No. [●]** |

## ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES, (II) APPROVING AND AUTHORIZING THE DEBTORS' ASSUMPTION OF THE ASSET PURCHASE AGREEMENT AND (III) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the motion (the "Motion") of Gawker Media LLC, Gawker Media Group, Inc., and Kinja Kft., the debtors and debtors in possession (collectively, the "Debtors"), for the entry of an order, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and rules 1005, 2002, 6004, 6006, 9007, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving and authorizing the Debtors' assumption of the Asset Purchase Agreement by and between the Debtors and ZDGM, LLC (together with its permitted designees, successors and permitted assigns in accordance with the APA, the "Buyer"), dated June 10, 2016 (substantially in the form attached hereto as **Exhibit 1**, and as may be amended, modified or supplemented from

---

[1]    The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).  The offices of Gawker Media and GMGI are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja's offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

time to time in accordance with the terms thereof, the "APA"),[2] whereby the Debtors have

agreed to sell, and Buyer has agreed to acquire, substantially all of the Debtors' assets

(collectively, and as specifically set forth and defined in the APA, the "Acquired Assets") other

than the Excluded Assets, and the Debtors have agreed to transfer and Buyer has agreed to

assume certain of the Debtors' liabilities (collectively, and as specifically set forth and defined

in the APA, the "Assumed Liabilities") (collectively, and including all actions taken or required

to be taken in connection with the implementation and consummation of the APA, the

"Transactions"); (ii) authorizing and approving the sale of the Acquired Assets (the "Sale"),

free and clear, to the maximum extent permitted under section 363(f) of the Bankruptcy Code,

of any and all Liens (other than Permitted Liens)interests, including any (a) Liens arising out of

bulk transfer law,of any other kind, (b) debts and claims (as that term is defined in section

101(5) of the Bankruptcy Code), including all claims and causes of action of defamation, libel

or slander with respect to any content published by the Debtors prior to Closing, and (c)

Liabilities, obligations, costs, expenses, causes of action, avoidance actions, demands,

guaranties, options, rights, contractual commitments, settlements, injunctions, restrictions,

interests, encumbrances, reclamation rights, and similar matters of any kind whatsoever,

whether known or unknown, fixed or contingent, or arising prior to or subsequent to the

commencement of these chapter 11 cases (the "Cases"), and whether imposed by agreement,

understanding, law, equity or otherwise (each of the foregoing collectively or individually, and

including, to the extent not already specified above, Successor or Transferee Liability (as

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding
Procedures or the APA, as applicable.

-2-

57896964_158554089_3

defined in paragraph 2118 below), including any and all claims and causes of action of defamation, libel or slander with respect to any content published by the Debtors prior to Closing, but excluding the Assumed Liabilities and Permitted Liens, the "Adverse Interests") (other than Permitted Liens and Assumed Liabilities), with all such Adverse Interests to attach to the net proceeds of the Sale, in the order of their priority, with the same validity, force and effect that they now have against the Acquired Assets, subject with respect to such net proceeds to any rights, claims and defenses the Debtors or any parties in interest may possess with respect thereto; (iii) authorizing the assumption and assignment to Buyer of certain executory contracts and unexpired leases of the Debtors in accordance with the APA, the Bidding Procedures Order (as defined herein) and this Order; and (iv) granting other relief; and the Court having entered an order approving the bidding procedures and granting certain related relief on [●], 2016 [Docket No. [●]] (the "Bidding Procedures Order"); [and an auction (the "Auction") having been held on [●], 2016 in accordance with the Bidding Procedures Order;] and Buyer having been deemed the Successful Bidder by the Debtor, in consultation with the official committee of unsecured creditors appointed in the Cases (the "Committee"), pursuant to the Bidding Procedures Order; and the Court having conducted a hearing on the Motion on [●], 2016 (the "Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion, declarations and other evidence filedsubmitted in support thereof, the APA, the Bidding Procedures Order, the record of the hearing before the Court on [●], 2016; and having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing; and it appearing that due notice of the Motion, the APA, the Bidding Procedures Order and the Auction hashaving been provided; and it

-3-

57896964_158554089_3

~~appearing~~having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders and all other parties in interest; and ~~it appearing that~~ the Court ~~has~~having jurisdiction over this matter; and ~~it further appearing that~~ the legal and factual bases set forth in the Motion and at the Sale Hearing ~~establish~~establishing just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT HEREBY FINDS AS FOLLOWS:**

**Jurisdiction, Venue, Statutory Bases and Final Order**

A.    This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334.

B.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 1005, 2002, 6004, 6006, 9007, 9014 and 9019.

~~D. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rules 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.~~

**Notice of the Transactions, APA, Sale Hearing, Auction and the Cure Amounts**

D.    ~~E.~~ Actual written notice of the Sale Hearing, the Auction, the Motion and the Sale, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, has been afforded to all known interested entities including to the following parties: (i) the office of the United States Trustee for the Southern District of New York; (ii) counsel to the Committee~~, if any~~; (iii) parties who are known or reasonably believed to have asserted any lien, encumbrance, claim or other interest in the Debtors' assets that are the subject of the proposed sale of the Acquired Assets, if any; (iv) all parties who have filed a notice of appearance and request for service of papers in the Cases pursuant to Bankruptcy Rule 2002; (v) each of the Debtors' current landlords and each counterparty to the Debtors' Non-Residential Leases and Other Executory Contracts (as defined in the APA); (vi) all applicable state and local taxing authorities, including the Internal Revenue Service; (vii) each governmental agency that is an interested party with respect to the sale of the Acquired Assets contemplated by the Stalking Horse APA and the transactions proposed thereunder; (viii) the Securities and Exchange Commission; and (ix) counsel to Buyer.

E.    ~~F.~~ The Debtors published notice of the time and place of the proposed Auction, the time and place of the Sale Hearing and the time for filing an objection to the relief requested in the Motion relating to the Sale in the United States edition of the *USA Today* on ~~[●]~~July 14, 2016.

F.    ~~G.~~ The foregoing notice was good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the APA or the Transactions is required. The disclosures made by the Debtors concerning the APA, the Auction, the Transactions and the Sale Hearing were good, complete and adequate.

-5-

~~57896964_1~~58554089_3

G. ~~H.~~ The Debtors have filed and served cure notices (the "Cure Notices") upon all non-Debtor counterparties to all Non-Residential Leases and Other Executory Contracts notifying such parties: (i) that the Debtors may seek to assume and assign such Leases and Contracts on the Closing Date of the Sale as provided in the APA and (ii) of the Debtors' good faith estimates of the cure amounts required in connection with such Lease or Contract. The Debtors have also filed and served an Assumption Notice upon the non-Debtor counterparties to the Contracts listed on the Closing Designated Contract List, and the Debtors will file and serve, in accordance with the Post-Closing Assumption and Assignment Procedures set forth herein, Post-Closing Designation Notices upon the non-Debtor counterparties to the Non-Residential Leases and Other Executory Contracts that Buyer designates for assumption and assignment. The service of ~~such notices was~~ the Cure and Assumption Notices and the service of the Post-Closing Designation Notices in such manner will be good, sufficient and appropriate under the circumstances, and no further notice is required.

**Highest and Best Offer**

H. ~~I.~~ As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors conducted a marketing process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order. ~~The Bidding Procedures were non-collusive and substantively and procedurally fair to all parties~~, and the Acquired Assets were adequately marketed by the Debtors. All interested persons and entities have been afforded a full, fair and reasonable opportunity to (i) conduct due diligence investigations, (ii) submit higher or otherwise better bids to purchase the assets of the Debtors and (iii) object and be heard in

-6-

connection with the Sale Motion and the relief granted by this Order.  [The Auction contemplated by the Bidding Procedures was held on August [●], 2016. At the conclusion of the Auction, Buyer was selected by the Debtors, in consultation with the Committee, as the Successful Bidder.] [The Debtors did not receive any Qualified Bids for the Acquired Assets prior to the Bid Deadline. Therefore, no Auction was necessary under the terms of the Bidding Procedures and Buyer was named by the Debtors as the Successful Bidder.]

I.    J.  The Acquired Assets were adequately marketed by the Debtors, the consideration provided by Buyer under the APA constitutes or provides the highest or otherwise best offer and provides fair and reasonable consideration to the Debtors for the sale of all Acquired Assets and the assumption of all Assumed Liabilities, and the performance of the other covenants set forth in the APA will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  Buyer is the Successful Bidder for the Acquired Assets in accordance with the Bidding Procedures Order. The Debtors' determination that the APA constitutes the highest and or otherwise best offer for the Acquired Assets is a valid and sound exercise of the Debtors' business judgment consistent with their fiduciary duties.  Buyer has complied in all respects with the Bidding Procedures Order and any other applicable order of this Court in negotiating and entering into the APA. The Sale and APA likewise comply with the Bidding Procedures Order and all other applicable orders of this Court.

K. Approval of the Motion and the APA and the consummation of the Transactions contemplated thereby is in the best interests of the Debtors, their respective creditors, estates and other parties in interest and there is substantial risk of deterioration of the value of the Acquired Assets if the Sale is not consummated quickly. The Debtors have demonstrated good,

-7-

57896964_1 58554089_3

~~sufficient and sound business reasons and justifications for entering into the Transactions and the performance of their obligations under the APA.~~

~~L. The consummation of the Transactions outside a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan for the Debtors.~~

J. ~~M.~~ Entry of an order approving the APA and all the provisions thereof is a necessary condition precedent to Buyer's consummation of the Transactions.

**Good Faith of Buyer and Arms' Length Sale**

K. ~~N. The APA and~~ Buyer is entering into the Transactions ~~contemplated thereunder were proposed, negotiated and entered into by and between the Debtors, on the one hand, and Buyer, on the other hand, without collusion or fraud of any kind, in good faith and at arm's length.  There has been no showing that the Debtors or Buyer have~~ in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and the court decisions thereunder, and is therefore entitled to the full protection of that provision with respect to all aspects of the transactions contemplated by the APA, including the acquisition of the Acquired Assets, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  Neither the Sellers nor Buyer has engaged in any ~~action or inaction~~ conduct that would cause or permit the ~~APA or the~~ Transactions to be avoided or ~~impose~~ result in the imposition of any costs or damages under section 363(n) of the Bankruptcy Code.  Specifically, Buyer has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among the bidders.  In addition, none of Buyer or its respective affiliates, present or contemplated members, officers, directors, partners,

shareholders or any of their respective heirs, successors and assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

**~~Good Faith of Buyer~~**

~~O. Buyer is entering into the Transactions in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and the court decisions thereunder, and is therefore entitled to the full protection of that provision with respect to all aspects of the transactions contemplated by the APA, including the acquisition of the Acquired Assets, and otherwise has proceeded in good faith in all respects in connection with this proceeding.~~

L. ~~P.~~ In accordance with section 365 of the Bankruptcy Code, including sections 365(b)(1) and 365(f)(2) of Bankruptcy Code, the Debtors have shown that Buyer has the wherewithal, financial and otherwise, to perform all of its obligations under the APA.

**No Fraudulent Transfer**

M. ~~Q.~~ The consideration provided by Buyer pursuant to the APA for its purchase of the Acquired Assets, the assumption of the Assumed Liabilities and the performance of the covenants contained in the APA constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, and under the laws of the United States, any state, territory, possession thereof or the District of Columbia.

N. ~~R.~~ There has been no showing that any of the Debtors or Buyer (i) has entered into the APA or proposes to consummate the Transactions for the purpose of hindering, delaying or defrauding the Debtors' present or future creditors or (ii) is entering into the APA or proposing to consummate the Transactions fraudulently, for the purpose of statutory or

-9-

common law fraudulent conveyance and fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

### Successor Liability Matters

O. ~~S.~~ By virtue of the consummation of the Transactions contemplated by the APA, (i) Buyer is not a continuation of the Debtors or their respective estates, there is no continuity between Buyer and the Debtors, there is no common identity between the Debtors and Buyer, there is no continuity of enterprise between the Debtors and Buyer, and Buyer is not a mere continuation of the Debtors or their estates, ~~and Buyer does not constitute a successor to the Debtors or their estates,~~ (ii) Buyer is not holding itself out to the public as a continuation of the Debtors or their respective estates and (iii) the Transactions do not amount to a consolidation, merger or *de facto* ~~merger~~ of Buyer and the Debtors and/or the Debtors' estates. Accordingly, Buyer is not and shall not be deemed a successor to Seller as a result of the consummation of the Transactions contemplated by the APA.

### Validity of Transfer

P. ~~T.~~ Each Debtor's Board of Directors or equivalent and Buyer have authorized the execution and delivery of the APA~~, the sale of all Acquired Assets to Buyer and the assumption of all Assumed Liabilities by Buyer~~ and the Transactions. The Debtors and Buyer (i) have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, as applicable, (ii) have all of the power and authority necessary to consummate the Transactions and (iii) have taken all action necessary to authorize and approve the APA and to consummate the Transactions, and no further consents or

approvals are required for the Debtors or Buyer to consummate the Transactions contemplated

by the APA, except as otherwise set forth therein.

U. Other than the Assumed Liabilities, Buyer shall have no obligations with respect to

any Liabilities of the Debtors or any Adverse Interests against any of the Debtors or their

property, including the liabilities of the Debtors specifically excluded under the APA (the

"Excluded Liabilities"), and Buyer and its successors and assigns are released from any and all

claims, causes of action, obligations, liabilities, demands, damages, losses, costs and expenses

of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating

to the Acquired Assets, except for liabilities and obligations arising expressly under, or

expressly assumed by Buyer under, the APA.

Q.      Buyer shall have no obligations with respect to any Adverse Interests against or

in respect of any of the Debtors or their assets, including the Acquired Assets (other than

Permitted Liens and Assumed Liabilities).

R.      V. The consummation of the Sale and Transactions is legal, valid and properly

authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a),

363(b), 363(f), 363(m), 363(n), 365(b)(1) and 365(f)(2) of the Bankruptcy Code, and with

respect to the Designated Contracts (as defined herein below), all of the applicable requirements

of such sections have been or will be complied with in respect of the Transactions as of the

effective date of assignment.

S.      W. The Acquired Assets constitute property of the Debtors' estates and title

thereto is presently vested in the Debtors' estates within the meaning of section 541(a) of the

Bankruptcy Code.  The sale of the Acquired Assets to Buyer will be, as of the Closing Date or

such later date as such Acquired Assets are transferred under the APA, a legal, valid and

-11-

effective transfer of such assets, and each ~~such~~ transfer and assignment vests or will vest Buyer

with all right, title and interest of the Debtors to the Acquired Assets free and clear of all

Adverse Interests (other than Permitted Liens and Assumed Liabilities).

### Section 363 Is Satisfied

T.    ~~X.~~ Entry into the APA and consummation of the Transactions contemplated

thereby constitute ~~the~~ a valid and sound exercise of the Debtors' ~~sound~~ business judgment

consistent with their fiduciary duties and such acts are in the best interests of the Debtors, their

respective creditors, their estates and other parties in interest.  The Debtors have demonstrated

both (i) good, sufficient and sound business reasons and justifications and (ii) compelling

circumstances for the sale of the Acquired Assets to Buyer pursuant to section 363(b) of the

Bankruptcy Code prior to, and outside of, a plan of reorganization.  Such business reasons

include the facts that (i) there is substantial risk of deterioration of the value of the Acquired

Assets if the Transactions are not consummated quickly; (ii) the APA constitutes the highest

and best offer for the Acquired Assets; (iii) the APA and the consummation of the Transactions

contemplated thereby present the best opportunity to realize the value of the Acquired Assets

and avoid decline and devaluation of the Acquired Assets; and (iv) unless the sale of the

Acquired Assets is consummated expeditiously as provided for in the Motion and pursuant to

the APA, creditors' recoveries may be diminished.

U.    ~~Y.~~ The Debtors may sell and assign the Acquired Assets free and clear of all

Adverse Interests ~~, and the Transactions will not subject Buyer or any of Buyer's assets to any~~

~~liability for any Adverse Interests whatsoever (including, without limitation, under any theory of~~

~~equitable law, antitrust, or successor or transferee liability),~~ (other than Permitted Liens and

Assumed Liabilities) because, with respect to each creditor asserting an Adverse Interest, one

-12-

or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Adverse Interests who did not object or who withdrew their objections to the Sale, the Transactions or the Cure Notices are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code. All holders of Adverse Interests are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by having their Adverse Interests, if any, attach to the proceeds of the Sale, in the same order of priority and with the same validity, force and effect that such Adverse Interest holder had before the Sale, subject to any rights, claims and defenses of the Debtors or their estates, as applicable, or as otherwise provided herein.

V. Z. Buyer would not have entered into the APA and would not consummate the sale of all Acquired Assets, thus adversely affecting the Debtors, their estates, creditors, employees and other parties in interest, if the sale of the Acquired Assets was not free and clear of all Adverse Interests or if Buyer would be liable for any Adverse Interests, including and as applicable, any Excluded(other than Permitted Liens and Assumed Liabilities).

AA. A sale of the Acquired Assets, other than one free and clear of all Adverse Interests would adversely impact the Debtors' estates, and, would yield substantially less value for the Debtors' estates, with less certainty than the Sale. Therefore, the Sale contemplated by the APA is in the best interests of the Debtors, their estates, creditors and all other parties in interest.

**Assumption of the APA**

W. BB. The Debtors' assumption of the APA is in the best interest of the Debtors, their respective estates, creditors and other parties in interest, and represents the reasonablea valid and sound exercise of sound and prudent business judgment by the Debtors. The Debtors

-13-

have met all requirements of section 365(b) of the Bankruptcy Code to assume the APA. ~~The Debtors have provided adequate assurance of future performance under the APA within the meaning of section 365(b)(1)(C) of the Bankruptcy Code. No default exists in the Debtors' performance under the APA as of the date of this Order.~~

### Assumption and Assignment of the Designated Contracts

X. ~~CC.~~ The assumption and assignment of the Designated Contracts pursuant to the terms of the Bidding Procedures Order, this Order and the APA are integral to the APA, are in the best interests of the Debtors ~~and~~, their respective ~~estates,~~ creditors, their estates and other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Debtors.

Y. ~~DD.~~ The Debtors have met all requirements of section 365(b) of the Bankruptcy Code for each of the Designated Contracts. The Debtors and/or Buyer, as applicable under the APA, have (i) cured and/or provided adequate assurance of cure of any default existing prior to the date of the Closing under all of the Designated Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default existing prior to the date of the Closing under any of the Designated Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. The assumption and assignment to Buyer of each of the Designated Contracts shall be free and clear of all Adverse Interests ~~against Buyer~~(other than Permitted Liens and Assumed Liabilities).

Z. ~~EE.~~ Buyer has provided adequate assurance of its future performance under the relevant Designated Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. Pursuant to section 365(f) of the Bankruptcy Code, the Designated

Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, Buyer, notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

AA.    ~~FF.~~ No default exists in the Debtors' performance under the Designated Contracts as of the date of the Closing other than the failure to pay Cure Amounts or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

**Compelling Circumstances for an Immediate Sale**

BB.    ~~GG. Time is of the essence.~~ To maximize the value of the Debtors' assets, it is critical that the Transactions close within the time constraints set forth in the APA. ~~Accordingly~~There is no just reason for delay in the implementation of this Order; accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 4001, 6004, and 6006.

CC.    ~~HH.~~ The ~~Debtors have demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale other than in the ordinary course of business, before, and outside of a plan of reorganization in that, among other things, the~~ immediate implementation of this Order and the consummation of the Sale are necessary both to preserve and maximize the value of the Debtors' assets for the benefit of the Debtors, their estates, their creditors and all other parties in interest in the Cases, and to provide the means for the Debtors to maximize creditor recoveries.

DD.    ~~II.~~ The transactions contemplated by the ~~Purchase Agreement~~APA and this Order neither impermissibly restructure the rights of any Debtor's creditors or equity holders nor impermissibly dictate the terms of a chapter 11 plan for any Debtor, and therefore, do not constitute a *sub rosa* chapter 11 plan.

~~57896964_1~~58554089_3

EE.    ~~JJ.~~ Nothing in the APA creates any third party beneficiary rights in any person or entity not a party to the APA.

**NOW THEREFORE, ITS IS HEREBY ORDERED THAT:**

## General Provisions

1.    The Motion is granted and approved to the extent set forth herein.

2.    All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court prior to the date hereof or as resolved in this Order, and all reservations of rights included therein, are hereby overruled on the merits with prejudice. All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

3.    Findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures hearing held on July 7, 2016, are incorporated herein by reference.

4.    Where appropriate herein, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact.

## Approval and Assumption of the APA

5.    The APA and all of the Transactions contemplated therein are approved.  The APA is hereby assumed by the Debtors in accordance with section 365 of the Bankruptcy Code. The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized, approved and assumed in its entirety, with such amendments thereto as may be made by the parties in accordance with this Order.

~~57896964_1~~58554089_3

6.     The Debtors are authorized to (i) ~~take any and all actions necessary or appropriate to~~ execute and ~~deliver, perform under,~~ consummate~~, implement and effectuate~~ the APA (including, for the avoidance of doubt, the agreements with respect to the Escrow Account set forth in the APA), together with any and all instruments and documents that may be reasonably necessary ~~or desirable~~to implement the APA and to fully close the Transactions, including the sale to Buyer of all Acquired Assets, in accordance with the terms and conditions set forth in the APA ~~and this Order, and to implement and effectuate the terms of the APA~~ and this Order; (ii) take any and all actions as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the APA and this Order, without any further corporate action or order of this Court; and (iii) assume and assign any and all Designated Contracts as and when provided in the APA.

7.     Buyer has no obligation to proceed with the Closing unless and until all conditions precedent to its obligations to do so, as set forth in the APA, have been met, satisfied or waived in accordance with the terms of the APA.

8.     The Debtors are hereby authorized and directed, after consultation with the Committee, to instruct the Escrow Agent to (i) hold the Deposit in accordance with the APA and (ii) release and deliver the Deposit pursuant to the terms of the APA.

~~9.     All persons and entities are prohibited and enjoined from taking any action that would adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Acquired Assets to Buyer in accordance with the APA and this Order. All amounts, if any, to be paid by the Debtors to Buyer pursuant to the APA, including any allowed claims for breach thereof, shall (i) constitute allowed administrative expenses of the estates pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, (ii) be protected as~~

~~57896964_1~~58554089_3

provided in the APA and the Bidding Procedures Order, (iii) not be altered, amended, discharged or affected by any plan proposed or confirmed in the Cases without the prior written consent of Buyer and (iv) be due and payable if and when any of the Debtors' obligations arise under the APA without further order of the Court.

10. At the Closing, the Debtors will be authorized to fully perform under, consummate and implement the terms of the APA together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the APA, this Order and the Transactions.

11. Nothing contained in (a) any chapter 11 plan confirmed in these Cases, (b) any order confirming any such chapter 11 plan, or (c) any order of any type or kind in these Cases, any subsequent chapter 7 cases in which these Cases may be converted or any related proceedings subsequent to the entry of this Sale Order shall conflict with or derogate from the provisions of the APA (or any agreement contemplated thereby) or this Order, and to the extent of any conflict or derogation between this Order or the APA (or any agreement contemplated thereby) and such future plan or order, the terms of this Order and the APA (any agreement contemplated thereby)  shall control.

12. Each and every federal, state and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transactions, including all agreements entered into in connection therewith, and this Order.

13. To the extent available under applicable law, Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Acquired Assets and the Non-

-18-

57896964_158554089_3

Residential Leases and Other Executory Contracts, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are transferred to Buyer as of the Closing Date.

14. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred or conveyed to Buyer on account of the filing or pendency of the Cases.

## Sale and Transfer Free and Clear of Adverse Interests

9.    15. Upon Closing (or thereafter as of the filing of a Post-Closing Designation Notice  with respect to any Designated Contract, subject to the Post-Closing Assumption and Assignment Procedures[3] described herein), all of the Debtors' legal, equitable and beneficial right, title and interest in and to, and possession of, the Acquired Assets shall be immediately vested in Buyer pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code free and clear of any and all Adverse Interests (other than Permitted Liens and Assumed Liabilities), with all such Adverse Interests to attach to the net proceeds of the Sale, in the order of their priority, with the same validity, force and effect that they now have against the Acquired Assets, (subject with respect to such net proceeds to any rights, claims and defenses the Debtors or any parties in interest may possess with respect thereto).  Such transfer shall constitute a legal, valid, binding and effective transfer of such Acquired Assets. All persons or entities, presently or on or after the Closing, in possession of some or all of and shall vest

---

[3]    The "*Post-Closing Assumption and Assignment Procedures*" shall mean those procedures for assumption and assignment of Non-Residential Leases and Other Executory Contracts described in Paragraphs 3630  4034 of this Order.

Buyer with good and marketable title to the Acquired Assets shall surrender possession of the Acquired Assets to Buyer or its respective designees.

10.    The holders of claims related solely to the Permitted Liens and Assumed Liabilities shall have the right to seek payment directly from Buyer on account of the Permitted Liens and Assumed Liabilities; *provided*, *however*, that Buyer reserves any and all rights, defenses or objections with regard to such Permitted Liens and Assumed Liabilities, including Buyer's rights hereunder and under the APA.

11.    16. This Order (i) shall be effective as a determination that, as of the Closing no Adverse Interests other than Assumed Liabilities will be assertable against Buyer or any of its respective assets (including the Acquired Assets), (ii) shall be effective as a determination that, as of the Closing (or thereafter as of the filing of a Post-Closing Designation Notice for any Designated Contract, subject to the Post-Closing Assumption and Assignment Procedures described herein)  (a) the Acquired Assets shall have been transferred to Buyer free and clear of all Adverse Interests and (b) the conveyances described herein have been effected, and (iii) is and shall be binding upon entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Transactions.

17. Other than the Assumed Liabilities, Buyer shall have no obligations with respect to any Adverse Interests of the Debtors, including the Excluded Liabilities, and Buyer and its affiliates, successors and assigns are released from any and all Adverse Interests arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the ownership, sale or operation of the Acquired Assets and the business of the Debtors prior to the Closing or the transfer of Acquired Assets to Buyer, except for the Assumed Liabilities expressly assumed under the APA. The holders of claims related to the Assumed Liabilities shall have the right to seek payment directly from Buyer on account of the Assumed Liabilities; *provided*, *however*, that Buyer reserves any and all rights, defenses or objections with regard to such Assumed Liabilities, including, but not limited to, Buyer's rights under the APA.

18. Other than in the Ordinary Course of Business, the Debtors shall not consent or agree to the allowance of any claim to the extent it would constitute an Assumed Liability without the prior written consent of Buyer. Buyer shall have standing in the Cases to object to the validity, amount, or priority of any claim against the Debtors to the extent it would otherwise constitute an Assumed Liability, and the Court will retain the right to hear and determine such objections.

12. 19. Except with respect to the Assumed Liabilities, all persons and entities (and their respective successors and assigns), including all Governmental Units (as defined in section 101(27) and 101(41) of the Bankruptcy Code), debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors holding Adverse Interests arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the ownership, sale or operation of the Acquired Assets and the business prior to the Closing or

-21-

the transfer of Acquired Assets to Buyer (whether prior to the Closing or thereafter as of the filing of a Post-Closing Designation Notice for any Designated Contract, subject to the Post-Closing Assumption and Assignment Procedures described herein), are hereby forever barred, estopped and permanently enjoined from asserting such Adverse Interests (other than Permitted Liens and Assumed Liabilities) against Buyer, its property or the Acquired Assets.  Following the Closing (or thereafter as of the filing of a Post-Closing Designation Notice for any Designated Contract, subject to the Post-Closing Assumption and Assignment Procedures described herein), no holder of any Adverse Interest shall interfere with Buyer's title to or use and enjoyment of the Acquired Assets based on or related to any such Adverse Interest (other than Permitted Liens and Assumed Liabilities), or based on any action the Debtors may take in the Cases.  All persons or entities, presently or on or after the Closing, in possession of some or all of the Acquired Assets shall surrender possession of the Acquired Assets to Buyer or its respective designees.

13.    20.  If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Adverse Interests (other than Permitted Liens and Assumed Liabilities) against or in the Acquired Assets shall not have delivered to the Debtors prior to the Closing of the Transactions in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all Adverse Interests (other than Permitted Liens and Assumed Liabilities) that the person or entity has with respect to such Acquired Assets, then only with regard to the Acquired Assets that are purchased by Buyer pursuant to the APA and this Order, (i) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Acquired

Assets, and (ii) Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Adverse Interests (other than Permitted Liens and Assumed Liabilities) against Buyer and the applicable Acquired Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office. For the avoidance of doubt, only Acquired Assets that are part of the estates of the Debtors are being sold to Buyer free and clear of Adverse Interests (other than Permitted Liens and Assumed Liabilities) pursuant to section 363(f) of the Bankruptcy Code.

14.    To the extent permitted under applicable law, Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Acquired Assets and the Non-Residential Leases and Other Executory Contracts, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are transferred to Buyer as of the Closing Date.

15.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred or conveyed to Buyer on account of the filing or pendency of the Cases.

**No Successor or Transferee Liability**

16.    21. Buyer is not and shall not be deemed, as a result of any action taken in connection with the APA, the consummation of the Transactions, the transfer, operation or

-23-

use of the Acquired Assets or the employment of the Selected Employees or Transferred

Employees to: (i) be a legal successor, or otherwise be deemed a successor to the Debtors

(other than, for Buyer, with respect to any obligations arising after the Closing as an assignee

under Assumed Contracts); (ii) have, *de facto* or otherwise, merged with or into the Debtors;

or (iii) be an alter ego or a mere continuation or substantial continuation or successor of the

Debtors in any respect of the Debtors, including within the meaning of any foreign, federal,

state or local revenue, pension, Employee Retirement Income Security Act of 1974

("ERISA"), tax, labor, employment, environmental or other law, rule or regulation (including

filing requirements under any such laws, rules or regulations), or under any products liability

law or doctrine with respect to the Debtors' liability under such law, rule or regulation or

doctrine..

17. 22. Except as expressly provided in the APA with respect to Assumed

Liabilities, Buyer shall have no liability whatsoever with respect to the Debtors' (or their

predecessors or affiliates) respective businesses or operations or any of the Debtors' (or their

predecessors' or affiliates') obligations (as described below, "Successor or Transferee

Liability") based, in whole or part, directly or indirectly, on any theory of successor or

vicarious liability of any kind or character, or based upon any theory of labor law, employment

law, ERISAthe Employment Retirement Income Security Act of 1974 and benefits law,

antitrust, environmental, successor or transferee liability, *de facto* merger or substantial

continuity, labor and employment or products liability, whether known or unknown as of the

Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent,

57896964_158554089_3

liquidated or unliquidated, including any liabilities or non-monetary obligations on account of any settlement or injunction, or any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets or the Business prior to the Closing or such later time as Buyer is assigned and assumes any Assumed Contract.  Except to the extent expressly included in the Assumed Liabilities or otherwise provided for in the APA with respect to WARN liabilities, Buyer shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 2101 et seq.) or the Comprehensive Environmental Response Compensation and Liability Act or any foreign, federal, state or local labor, employment or environmental law whether of similar import or otherwise by virtue of Buyer's purchase of the Acquired Assets or assumption of the Assumed Liabilities.

23. Buyer has given substantial consideration under the APA for the benefit of the holders of any Adverse Interest.  The consideration given by Buyer shall constitute valid and valuable consideration for the releases of any potential claims of Successor or Transferee Liability of Buyer, which releases shall be deemed to have been given in favor of Buyer by all holders of any Adverse Interests.

18.    24. Except as expressly provided in the APA with respect to the Assumed Liabilities, nothing in this Order or the APA shall require Buyer to (i) continue or maintain in effect, or assume any liability in respect of any employee, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtors are a party or have any responsibility therefor including medical, welfare and pension benefits payable after retirement or other termination of employment, or (ii) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including

57896964_1 58554089_3

but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

19. 25. All persons and entities are prohibited and enjoined from taking any action that would adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Acquired Assets to Buyer in accordance with the APA and this Order.  Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against Buyer, or its assets (including the Acquired Assets), or its successors and assigns, with respect to any (i) Adverse Interest (other than Permitted Liens and Assumed Liabilities) or (ii) Successor or Transferee Liability including the following actions with respect to clauses (i) and (ii):

(a) commencing or continuing any action or other proceeding pending or threatened;

(b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any Adverse Interest; (other than Permitted Liens and Assumed Liabilities); (d) asserting any setoff, right of subrogation or recoupment of any kind; (e) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (f) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such assets.

**Good Faith of Buyer**

26. The Transactions contemplated by the APA are undertaken by Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code,

-26-

57896964_158554089_3

and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Transactions (including the assumption and assignment of the Designated Contracts), unless such authorization and consummation of the Sale are duly and properly stayed pending such appeal.

20.    Buyer has acted without collusion, in good faith, undertaking the Sale and Transactions contemplated by the APA (including the assumption and assignment of the Designated Contracts).

21.    27. Buyer is entitled to all the protections and immunities of section 363(nm) of the Bankruptcy Code.  There has been no showing that the Debtors or Buyer engaged in any action or inaction that would cause or permit the Transactions to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.

28. The consideration provided by Buyer for the Acquired Assets under the APA is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

**Assumption and Assignment of Designated Contracts**

22.    29. Before the Sale Hearing, in accordance with and pursuant to Section 2.7 of the APA, Buyer provided to the Debtors a Closing Designated Contract List designating certain Non-Residential Leases and Other Executory Contracts for assumption by the Debtors and assignment to Buyer.  Buyer filed an Assumption Notice with respect to the Contracts listed on the Closing Designated Contract List and such notice was good, sufficient and appropriate under the circumstances, and no further notice of the Closing Designated Contract List is required.  Up to three (3) Business Days prior to the Closing Date, Buyer may exclude or remove from the Closing Designated Contract List any Non-Residential Lease or Other Executory Contract. On or before the Closing Date, Buyer shall provide to the Debtors, and

the Debtors shall file with the Court, the final Closing Designated Contract List, and the

Debtors shall serve notice of such list by first class mail on all non-Debtor counterparties to the

Non-Residential Leases and Other Executory Contracts included on the final Closing

Designated Contract List.

23.    30. Pursuant to Section 2.7 of the APA, from and after the Closing Date

through the Designation Deadline,[4] Buyer shall provide written notice to the Debtors (and the

Debtors shall provide such notice to the affected counterparties within three (3) Business Days

of receipt of such notice from Buyer) designating certain Non-Residential Leases and Other

Executory Contracts for assumption by the Debtors and assignment to Buyer (such notice, the

"Post-Closing Designation Notice", and such Leases and Contracts together with the Non-

Residential Leases and Other Executory Contracts included on the final Closing Designated

Contract List, the "Designated Contracts").

24.    31. The Debtors are authorized at the Closing (or thereafter as of the filing of a

Post-Closing Designation Notice for any Designated Contract) to assume and assign each of

the Designated Contracts in accordance with the APA and this Order to Buyer free and clear

of all Adverse Interests (other than Permitted Liens and Assumed Liabilities) pursuant to

sections 105(a), 363 and 365 of the Bankruptcy Code and to execute and deliver to Buyer

such documents or other instruments as may be necessary to assign and transfer the Designated

Contracts to Buyer. The payment of the applicable Cure Amounts by Buyer shall (i) effect a

cure of all defaults existing thereunder as of the Closing (or thereafter for any Designated

---

[4]    Designation Deadline is defined in the APA to mean 5:00 p.m. (prevailing Eastern time) on the date that is
thirty (30) days from the Closing Date (or such longer period as may be agreed between Buyer and the
counterparty of the applicable Contract).

Contract that is assumed and assigned post-Closing, subject to the Post-Closing Assumption and Assignment Procedures described herein), (ii) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default and (iii) together with the assumption of the Designated Contracts by the Debtors and the assignment of such Designated Contracts to Buyer, constitute adequate assurance of future performance thereof.  For purposes of this Order, "Cure Amounts" shall mean the applicable Cure Amounts set forth on **Exhibit 3** attached hereto, or such other Cure Amounts as agreed, in writing, by the Debtors, Buyer and the counterparty to the applicable Designated Contract.  Subject to the Post-Closing Assumption and Assignment Procedures described herein for any Designated Contract that is assumed and assigned post-Closing, the counterparties to the Designated Contracts are forever bound by the applicable Cure Amounts and, upon payment of such Cure Amounts as provided for herein, are hereby enjoined from taking any action against Buyer or the Acquired Assets with respect to any claim for cure under the applicable Designated Contracts.

25.    32. Any provisions in any Designated Contract (including any Designated Contract that becomes such post-Closing subject to the Post-Closing Assumption and Assignment Procedures described herein) that prohibit or condition the assignment of such Designated Contract or allow the counterparty to such Designated Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Designated Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the Debtors' assumption and assignment of such Designated Contracts in accordance with the APA but will be effective and binding upon Buyer with respect to any purported assignment for the remaining term of such Designated Contract.  All other requirements and conditions under

-29-

sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and

assignment to Buyer of the Designated Contracts have been satisfied.  Upon the Closing or

such later time as is provided in the APA with respect to the assumption and assignment of

any Designated Contract, in accordance with sections 363 and 365 of the Bankruptcy Code,

Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under

the Designated Contracts, and such Designated Contracts shall remain in full force and effect

for the benefit of Buyer.

26.    33. Each non-Debtor counterparty to the Designated Contracts shall be forever

barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Buyer or

their respective property any assignment fee, acceleration, default, breach or claim or pecuniary

loss, or condition to assignment existing, arising or accruing as of the Closing (or thereafter as

of the filing of a Post-Closing Designation Notice for those that arise post-Closing and are not

barred by this Order with respect to any Designated Contract that is assumed and assigned

post-Closing) or arising by reason of the Closing or the transfer of the Acquired Assets,

including any breach related to or arising out of change-in-control in such Designated

Contracts, or any purported written or oral modification to the Designated Contracts and (ii)

asserting against Buyer (or its property, including the Acquired Assets) any claim,

counterclaim, breach, or condition asserted or assertable against the Debtors existing as of the

Closing (or thereafter as of the filing of a Post-Closing Designation Notice for those that arise

post-Closing and are not barred by this Order with respect to any Designated Contract that is

assumed and assigned post-Closing) or arising by reason of the transfer of the Acquired Assets,

except for the Assumed Liabilities.  In addition, without relieving Buyer of its obligations under

the APA, nothing in the Order, the Motion or the APA shall affect the Debtors' obligations

under section 365(d)(3) of the Bankruptcy Code (or Buyer's assumption thereof) prior to the assumption and assignment or rejection of any Designated Contracts.

27. 34. Upon the Closing (or thereafter as of the filing of a Post-Closing Designation Notice for any Designated Contract), Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Designated Contracts and shall pay all outstanding undisputed Cure Amounts with respect thereto, and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Designated Contracts from and after such assignment. There shall be no assignment fees, increases or any other fees charged to Buyer or the Debtors as a result of the assumption and assignment of the Designated Contracts.

28. 35. Buyer has provided adequate assurance of future performance under the Designated Contracts (including any Designated Contract that becomes such post-Closing) within the meaning of sections 365(b)(1)(c), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

### Post-Closing Assumption and Assignment Procedures

29. 36. In the case of any Non-Residential Leases and Other Executory Contracts that the Debtors seek to assume and assign from and after the Closing Date pursuant to Section 2.7 of the APA, within three (3) Business Days following receipt of a notification by Buyer that a Non-Residential Lease or Other Executory Contract is designated for assumption and assignment, the Debtors shall file with the Court a Post-Closing Designation Notice of the Debtors' proposed assumption and assignment of such Non-Residential Lease or Other Executory Contract, substantially in the form attached hereto as **Exhibit 2**. The assumption and assignment of each such Non-Residential Lease or Other Executory Contract shall be

-31-

effective as of the date of the filing of the applicable Post-Closing Designation Notice without any further order of the Court, with objections to the applicable cure amount, if any, to be resolved thereafter as set forth below.

30. ~~37.~~ The Debtors will serve such Post-Closing Designation Notice via first class mail on each of the following parties (the "Post-Closing Designation Notice Parties"): (i) each counterparty to any Non-Residential Lease or Other Executory Contract (and their counsel, if known) to be assumed or assigned by the Debtors, (ii) the Office of the United States Trustee, (iii) counsel to the Committee, ~~if any,~~ and (iv) counsel to Buyer.

31. ~~38.~~ The Post-Closing Designation Notice will set forth the following information, to the best of the Debtors' knowledge: (i) a description of the Non-Residential Lease or Other Executory Contract that the Debtors are assuming and assigning, (ii) the name and address of the affected counterparties (and their counsel, if known), (iii) a description of the deadlines and procedures for filing objections to the Post-Closing Designation Notice (as set forth below), and (iv) the proposed cure amounts that arise solely following the Closing and have not otherwise been paid in the ordinary course.

32. ~~39.~~ A party in interest may object to a Post-Closing Designation Notice solely with respect to the cure amount contained therein and only to the extent such objection could not have been raised prior to the Closing.  Any such objection must be in writing and filed and served so that such objection is filed with this Court and actually received by the Debtors and the Post-Closing Designation Notice Parties no later than ten (10) Business Days after the date the Debtors served the applicable Post-Closing Designation Notice.

33. ~~40.~~ If no timely permitted objection is filed and served with respect to the Post-Closing Designation Notice, any non-Debtor party to such Non-Residential Lease or Other

-32-

Executory Contract shall be deemed to have consented to the cure amount set forth in such

Post-Closing Designation Notice.  If a timely permitted objection is properly filed and served

on the Post-Closing Designation Notice Parties in the manner specified above, unless the

parties agree otherwise in writing, a hearing will be scheduled to consider that objection. ~~For~~

~~the avoidance of doubt, any Non-Residential Lease or Other Executory Contract set forth in a~~

~~Post-Closing Designation Notice that is the subject of a timely permitted objection shall be~~

~~deemed assumed and assigned prior to resolution of such objection (*i.e.*, as of the date of the~~

~~filing of the applicable Post-Closing Designation Notice).~~

**~~The Sale Does Not Require the Appointment of a Consumer Privacy Ombudsman~~**

~~41. Buyer shall be subject to reasonable restrictions by the Debtors in order to comply~~

~~with the Debtors' privacy policy, which broadly provides that, if the Debtors or any portion of~~

~~their assets are acquired, the Debtors may share all types of information with the acquiring~~

~~company.  As the Debtors' privacy policy does not prohibit the transfer of personally~~

~~identifiable information, appointment of a consumer privacy ombudsman is not required.~~

**Other Provisions**

34.    Other than in the Ordinary Course of Business, the Debtors shall not consent or

agree to the allowance of any claim to the extent it would constitute a Permitted Lien or

Assumed Liability without the prior written consent of Buyer.  Buyer shall have standing in the

Cases to object to the validity, amount, or priority of any claim against the Debtors to the

extent it would otherwise constitute a Permitted Lien or Assumed Liability, and the Court will

retain the right to hear and determine such objections.

35.    ~~42.~~ Effective upon the Closing, the Debtors, on behalf of themselves and their

respective past, present and future subsidiaries, parents, divisions, affiliates, agents,

representatives, insurers, attorneys, successors and assigns (collectively, the "Debtor Releasing Parties"), hereby release, remise, acquit and forever discharge Buyer and its past, present and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns, and each of its and their respective directors, managers, officers, employees, shareholders, members, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance companies and partners (except, in each case, the Debtor Releasing Parties) (collectively, in their capacities as parties being released pursuant to this Paragraph 4236, the "Buyer Released Parties"), from any and all claims, contracts, demands, causes of action, disputes, controversies, suits, cross-claims, torts, losses, attorneys' fees and expenses, obligations, agreements, covenants, damages, liabilities, costs and expenses, whether known or unknown, whether anticipated or unanticipated, whether claimed or suspected, whether fixed or contingent, whether yet accrued or not, whether damage has resulted or not, whether at law or in equity, whether arising out of agreement or imposed by statute or common law of any kind, nature, or description, including, without limitation as to any of the foregoing, any claim by way of indemnity or contribution, which any Debtor Releasing Party has, may have had or may hereafter assert against any Buyer Released Party arising from or related in any way, either directly or indirectly, to the negotiation, documentation, performance or consummation of the APA, any Related Agreements or any other agreements entered into in connection with the transactions contemplated thereby; *provided*, *however*, that the foregoing release shall not apply to the Debtors' rights or Buyer's obligations under this Order or the APA (including Section 6.9 of the APA), any Related Agreements and/or any other agreements entered into in connection with the transactions contemplated hereby or thereby.

57896964_158554089_3

36. 43. Subject to the terms of the APA, the APA and any related agreements may be waived, modified, amended or supplemented by agreement of the Debtors and Buyer, in consultation with counsel to the Committee, without further action or order of the Bankruptcy Court if it does not have a material adverse effect on the Debtors' estates. Any material modification, waiver, amendment or supplement to the APA must be approved by order of the Bankruptcy Court.

37. 44. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of this Court, to allow Buyer to deliver any notice provided for in the APA and allow Buyer to take any and all actions permitted or required under the APA in accordance with the terms and conditions thereof. Buyer shall not be required to seek or obtain any further relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other sale-related document.

45. All persons, all Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Adverse Interests, based upon or arising out of the Excluded Liabilities are hereby barred and estopped from taking any action against Buyer or the Acquired Assets to recover property on account of any Adverse Interests or on account of any Liabilities of the Debtors other than Assumed Liabilities pursuant to the APA. All persons holding or asserting any Adverse Interests with respect to the Excluded Assets are hereby enjoined from asserting or prosecuting such Adverse Interests against Buyer or the Acquired Assets for any Liability whatsoever associated with the Excluded Assets.

46. The provisions of this Order authorizing the sale and assignment of the Acquired Assets free and clear of all Adverse Interests shall be self-executing, and neither the Debtors

~~nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.~~

38.    ~~47.~~ Neither the Debtors nor any of their Affiliates shall use, license or permit any third party to use, any name, slogan, logo or trademark which is confusingly or deceptively similar to any of the names, trademarks or service marks included in the Intellectual Property included in the Acquired Assets, and each Debtor is directed to change its corporate name to a name which (i) does not use the name ~~[~~"Gawker", "Gizmodo", "Kotaku", "Jalopnik", "LifeHacker", "Deadspin", "Jezebel"~~]~~, "Kinja" or any other name that is a trademark of the Debtors acquired by Buyers or references or reflects any of the foregoing in any manner whatsoever, (ii) is otherwise substantially dissimilar to its present name and (iii) is approved in writing by Buyer.

39.    In connection with the Closing, the Debtors are authorized and directed to take such steps as necessary to hold any sale proceeds remaining after making payments required to be made under the Debtor in Possession financing or otherwise in connection with the Closing in a separate segregated account, and, without waiving or limiting the requirements under 363 of the Bankruptcy Code, are further authorized take such other and necessary steps to consummate the transactions contemplated by the APA, preserve the value of the Debtors' remaining assets, including but not limited to, obtaining insurance coverage consistent with coverage in existence prior to the Closing, including coverage for the remaining assets, the post-closing operations of the Debtors and the directors and officers of the Debtors (including tail coverage). No later than 14 days following the Closing, the Debtors will provide the Committee with a budget for post-closing operations (the "Post-Closing Budget"), which Post-

-36-

Closing Budget shall be in substantially the same form as to the level of detail and categories, to the extent applicable,  as the debtor in possession financing budget provided to the Committee prior to the Closing. The Committee reserves all rights with respect to objections to the Post-Closing Budget and the expenditures set forth therein.

40.    If and to the extent that any privileged information or work product is transferred to Buyer beyond as provided in the APA, such transfer shall be deemed inadvertent and shall not constitute a waiver of the privilege or other protection.  If Buyer is notified by the Sellers of an inadvertent transfer of privileged or other protected information, Buyer shall take all commercially reasonable steps to return or destroy the inadvertently transferred information as requested by the Sellers.

41.    48. Any allocation to be performed pursuant to the terms of Section 2.10 of the APA shall be for tax purposes only and shall not be binding on the Debtors in any other way, and the rights of all parties in interest, including the Committee, with respect to the allocation of the purchase price as between the Sellers are hereby preserved.

42.    49. Within one (1) Business Day of the occurrence of the Closing of the Sale, the Debtors shall file and serve a notice of same, substantially in the form attached hereto as **Exhibit 2** (the "Notice of Sale Closing and Effective Date of Amendment of Case Caption") and upon the filing of such notice, the Debtors' case caption shall be amended as follows:

-37-

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| [[●]GMLLC Liquidating, LLC], *et al.* | ) | Case No. 16-11700 (SMB) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

1      The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: [●] (f/k/a Gawker Media Group, Inc.) ([●]); [●] (f/k/a Gawker Media LLC) ([●]); [●] (f/k/a Kinja Kft.) ([●]).  The Debtors' executive headquarters are located at [●].

43.      50. Upon the filing of the Notice of Sale Closing and Effective Date of Amendment of Case Caption, the Clerk of the Court is authorized and directed to make a docket entry in case numbers 16-11700, 16-11718, and 16-11719 consistent with Paragraph 4841 of this Order.

44.      51. The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the sale.

45.      This Court retains jurisdiction to:  (a) compel delivery of the Acquired Assets,

to

(b) protect Buyer and its assets, including the Acquired Assets, against any Adverse Interests (other than Permitted Liens and Assumed Liabilities) and Successor or Transferee Liability and to,

-38-

(c) enter orders, as appropriate, pursuant to sections 105, 363 or 365 (or other applicable provisions) of the Bankruptcy Code necessary to transfer the Acquired Assets and the Designated Contracts to Buyer. This Court retains jurisdiction to, and (d) adjudicate disputes between Buyer and holders of claims related to the Assumed Liabilities regarding the Assumed Liabilities.

46.    All amounts, if any, to be paid by the Debtors to Buyer pursuant to the APA, including any allowed claims for breach thereof, shall (i) constitute allowed administrative expenses of the estates pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, (ii) be protected as provided in the APA and the Bidding Procedures Order, (iii) not be altered, amended, discharged or affected by any plan proposed or confirmed in the Cases without the prior written consent of Buyer and (iv) be due and payable if and when any of the Debtors' obligations arise under the APA without further order of the Court.

47.    Nothing contained in (a) any chapter 11 plan confirmed in these Cases, (b) any order confirming any such chapter 11 plan, or (c) any order of any type or kind in these Cases, any subsequent chapter 7 cases in which these Cases may be converted or any related proceedings subsequent to the entry of this Sale Order shall conflict with or derogate from the provisions of the APA (or any agreement contemplated thereby) or this Order, and to the extent of any conflict or derogation between this Order or the APA (or any agreement contemplated thereby) and such future plan or order, the terms of this Order and the APA (any agreement contemplated thereby)  shall control.

48.    52. The Transactions contemplated hereunder shall not be affected by any bulk sales laws.

49.    53. Buyer has standing to seek to enforce the terms of this Order.

-39-

57896964_158554089_3

54. The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Order.

50.   55. Notwithstanding the possible applicability of Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9014 or otherwise, this Order shall not be stayed, the terms and conditions of this Order shall be effective immediately upon entry and the Debtors and Buyer are authorized to close the Sale immediately upon entry of this Order.  Time is of the essence in closing the Sale, and the Debtors and Buyer intend to close the Sale as soon as practicable. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being dismissed as moot.

51.   56. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

52.   57. The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

53.   58. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

54.   59. To the extent there are any inconsistencies between the terms of the Bidding Procedures Order, this Order and the APA, the terms of this Order shall control.

Dated: _____, 2016
New York, New York

_____
STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY
JUDGE

57896964_1 58554089_3