ROPES & GRAY LLP
Gregg M. Galardi
Jonathan P. Gill
Jonathan M. Agudelo
Stacy A. Dasaro
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                                    :

In re                                 :        Chapter 11
                                   :
Gawker Media LLC, *et al.*,[1]            :        Case No. 16-11700 (SMB)
                                   :
                Debtors.          :        (Jointly Administered)
                                   :
---------------------------------------------------------x

**DEBTORS' REPLY IN SUPPORT OF MOTION FOR AN
ORDER AUTHORIZING THE SALE OF SUBSTANTIALLY ALL
OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS,
<u>LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES, AND RELATED RELIEF</u>**

      Gawker Media LLC ("<u>Gawker Media</u>"), Gawker Media Group, Inc. ("<u>GMGI</u>"), and Kinja Kft. ("<u>Kinja</u>"), as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>") respectfully submit this reply in support of the *Debtors' Motion for (I) an Order (A) Authorizing and Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (B) Authorizing and Approving the Debtors' Entry into and Assumption of the Stalking Horse Asset Purchase Agreement, (C) Approving Notice Procedures, (D)*

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011. Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

58532815_8

*Scheduling a Sale Hearing and (E) Approving Procedures for Assumption and Assignment of Certain Contracts and Leases and Determining Cure Amounts and (II) An Order (A) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (B) Approving the Asset Purchase Agreement and (C) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* (the "Sale Motion") (Docket No. 21) and, by and through their undersigned counsel, respectfully state as follows:

**PRELIMINARY STATEMENT**

1. The Debtors commenced these chapter 11 cases with a goal of selling substantially all of their assets as a going concern (the "Business"). To that end, the Debtors entered into the Stalking Horse APA[2] with ZDGM LLC (the "Stalking Horse Bidder"), an affiliate of Ziff Davis, LLC, a leading global digital-media company operating in the technology, gaming, entertainment and lifestyle verticals. In the Stalking Horse APA, the Stalking Horse Bidder agreed to (i) purchase the Business for $90 million in cash, (ii) assume certain liabilities of the Business, and (iii) provide offers of employment to substantially all of the Debtors' employees on substantially the same terms and conditions under which they are currently employed.

2. The Stalking Horse APA remained subject to higher or otherwise better offers. To that end, the Debtors, in conjunction with their advisors and acting in accordance with the Bid Procedures Order,[3] have engaged in an extensive sale and marketing process of the

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Sale Motion.
[3] The Bid Procedures Order is the *Order (I) Authorizing and Approving Bid Procedures, Breakup Fee and Expense Reimbursement, (II) Authorizing and Approving the Debtors' Performance of Pre-Closing Obligations under the Stalking Horse Asset Purchase Agreement, (III) Approving notice Procedures, (IV) Scheduling a Sale Hearing and (V) Approving Procedures and Assumption and Assignment of Certain Contracts and Leases and Determining Cure Amounts* (Docket No. 82).

2

58532815_8

Business. These efforts bore fruit as one additional approved bidder and the Stalking Horse Bidder participated in an auction held on August 16, 2016 at the New York offices of Ropes & Gray. At the conclusion of the auction, the Debtors, in consultation with the Official Committee of Unsecured Creditors (the "Committee") determined that the Successful Bidder was UniModa, LLC, a wholly-owned subsidiary of Univision Communications Inc. The Successful Bidder bid $135 million in cash and irrevocably agreed to assume certain of the Debtors' executory contracts and unexpired leases for which the Debtors could otherwise face considerable rejection damages claims, including the CBA with the WGAE and the Fifth Avenue Lease (each as defined below). The Successful Bidder also agreed to make offers of employment to at least 95% of the Debtors' employees on substantially the same terms and conditions under which they are currently employed.

3. The hearing to consider approval of the sale of the Business (the "Sale") is scheduled for August 18, 2016 (the "Sale Hearing"). The Sale is supported by the Committee.

**THE OBJECTIONS**

4. To date, the Debtors have received nine (9) limited objections, reservations of rights, and informal objections (the "Objections") with respect to the Sale.[4] A summary of each Objection and the Debtors' replies in respect thereto are listed on Exhibit A hereto (the "Objection Summary").

5. Critically, none of the Objections challenges the Debtors' determination to sell substantially all of their assets, the timing of the sale or the manner in which the Debtors, with their advisors, have conducted the sale process. Nor do any of the Objections challenge any

---

[4] Pursuant to paragraph 17 Bid Procedures Order, counterparties to the Debtors' Non-Residential Leases and Other Executory Contracts shall have until August 18, 2016 at 12:00 p.m. (Prevailing Eastern Time) to object to the assumption and assignment of a Non-Residential Lease or Other Executory Contract solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

3

58532815_8

provision in the conformed Sale Order.[5]  So, in that regard, and based on the evidence to be submitted at the Sale Hearing, the Debtors maintain that notwithstanding the Objections, the Successful Bidder is entitled to the benefits and protections of the requested findings regarding, among other things, good faith, reasonably equivalent value, and no collusion.  *See* Sale Order ¶¶ K-N, 20-21.

6. Of the nine Objections received, eight (8) of the Objections are limited, focusing on issues relating to the potential assumption and assignment of the objectors' executory contracts and unexpired leases (the "Contracts"):

   i. *Limited Objection to Notice of (A) Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale and (B) Associated Cure Costs* (Docket No. 140) (the "Unimerica Limited Objection");

   ii. *Reservation of Rights of Parse.ly, Inc. Regarding Assumption and Assignment of Executory Contract* (Docket No. 141) (the "Parse.ly Reservation of Rights");

   iii. *Limited Objection and Reservation of Rights of Google Inc. to Notice of (A) Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale and (B) Associated Cure Costs* (Docket No. 145) (the "Google Limited Objection");

   iv. *Limited Objection of Superdry to Debtors' Sale Motion* (Docket No. 146) (the "Superdry Limited Objection");

   v. *Limited Objection of Writers Guild of America, East, to Notice of (A) Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With the Sale and (B) Associated Cure Costs* (Docket No. 160) (the "WGAE Limited Objection");

---

[5] The conformed Sale Order is the proposed order attached as Exhibit E to the *Notice of Filing of (I) Revised Bidding Procedures, A Revised Bidding Procedures Order, and a Revised Sale Order; and (II) First Amendment to Asset Purchase Agreement* (Docket No. 77).  The Debtors filed a revised proposed Sale Order on August 16, 2016.  *See Notice of Filing of Revised Proposed Sale Order Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of Liens, Rights, Interests, and Encumbrances* (Docket No. 179).  The Debtors reserve the right to further amend the Sale Order prior to the Sale Hearing.

4

58532815_8

      vi.    *Limited Objection and Reservation of Rights of 114 Fifth Owner LP to Debtors' Proposed Assumption and Assignment of 114 Fifth Avenue Lease* (Docket No. 175) (the "Landlord Limited Objection");

      vii.    Informal objection of Fastly and AOL Advertising, Inc. solely with respect to certain cure amounts set forth on the Cure Notice[6]; and

      viii.    Informal objection of AOL Advertising, Inc. solely with respect to certain cure amounts set forth on the Cure Notice.

And the final remaining Objection is the "Reservation of Rights" filed by two plaintiffs and members of the Committee, Ashley Terrill and Dr. Shiva Ayyadurai, that suggest, without legal or factual foundation, that the ultimate purchaser might be liable for conduct that occurred prior to the Sale. *See Reservation of Rights of Dr. Shiva Ayyadurai and Ashley Terrill Regarding Debtors' Motion Authorizing, inter alia, the Sale of Substantially all of the Debtors' Assets Free and Clear of all Claims, Liens, Rights, Interests and Encumbrances, and (B) Approving the Asset Purchase Agreement* (Docket No. 148) (the "Terrill/Ayyadurai Objection").

      7.    As set forth in the Objection Summary, the Debtors believe that nearly all of the Objections are resolved, moot, or adjourned to the next omnibus hearing date because the Contracts at issue are not subject to assumption and assignment to the Successful Bidder at this time. To the extent they are not, however, none of the Objections asserts a basis upon which the Sale Motion should be denied. Furthermore, for the reasons set forth below, to the extent the Objections raise a substantive challenge to the Sale at all, the Debtors contend that the Objections should be overruled on legal and factual grounds. Accordingly, for the grounds set forth in the Sale Motion and as will be substantiated by the testimony and evidence submitted at the Sale Hearing, the Debtors respectfully request that the Court enter an order approving the

---

[6] The "Cure Notice" is the *Notice of (A) Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale and (B) Associated Cure Costs* (Docket No. 105).

5

58532815_8

Sale free and clear of liens, claims and encumbrances under section 363(f) of the Bankruptcy Code.

## STATEMENT OF FACTS

8. The facts are set forth in detail in the Sale Motion, in testimony and declarations previously presented to the Court in these chapter 11 cases, which the Debtors incorporate by reference herein,[7] and in the declarations that have been and will be filed in support of the relief requested in the Sale Motion.

## OMNIBUS REPLY TO OBJECTIONS

9. As set forth above, none of the Objections contest the Sale or provisions of the Sale Order, and as demonstrated below, to the extent they raise any such objection, the Objections should be overruled.

    A.    Terrill/Ayyadurai Objection

10. Dr. Shiva Ayyadurai and Ashley Terrill (together, the "Publication Plaintiffs") filed a reservation of rights reserving their right to be heard at the Sale Hearing. Terrill/Ayyadurai Objection ¶ 8. The Publication Plaintiffs filed complaints against Gawker Media pre-petition (the "Publication Actions") with respect to statements that appeared on one or more of the Debtors' publications (the "Statements"), which Statements the Publication Plaintiffs allege are defamatory. *Id.* at ¶ 6.

---

[7] The declarations are the (i) *Declaration of William D. Holden in Support of First Day Motions* (Docket No. 7); and (ii) *Declaration of Reid Snellenbarger in Support of Debtors' Motion For (I) An Order (A) Authorizing and Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (B) Authorizing and Approving the Debtors' Entry Into and Assumption of the Stalking Horse Asset Purchase Agreement, (C) Approving Notice Procedures, (D) Scheduling a Sale Hearing and (E) Approving Procedures for Assumption and Assignment of Certain Contracts and Leases and Determining Cure Amounts and (II) An Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (B) Approving the Asset Purchase Agreement and (C) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* (Docket No. 21, Ex. A).

58532815_8

11.     Notwithstanding the Publication Plaintiffs' purported support for the Sale, *Id.* ¶ 7, the fact of the matter is that their conduct, including the filing of the Reservation of Rights, had a detrimental effect on the Sale. Indeed, their thinly veiled threat to pursue litigation against not only the Debtors but also the bidders, litigation likely backed by the resources of the billionaire Peter Thiel who has pressed his vendetta against the Debtors in this and other courts, affected the sale process and may have reduced the price that the Debtors' estates will receive. It unquestionably increased costs, having required the Debtors and others to employ resources to address the threat of such further litigation and placed at issue certain terms of the Sale Order that the Successful Bidder requires.

12.     Thus, despite being styled as a mere "Reservation or Rights," for the reasons set forth below, the Debtors request that the Court "overrule" the Objection and enter the Sale Order, which makes clear that upon the closing of the Sale, all of the Debtors' rights to the Acquired Assets (as defined in the Sale Order) will be vested in the Successful Bidder free and clear of Adverse Interests (as defined in the Sale Order), which includes all claims and causes of action of defamation, libel or slander with respect to any content published by the Debtors prior to the closing of the Sale. *See* Sale Order ¶ 9. The case law upon which this Court may make such a determination is set forth below.

13.     The Debtors stand by their reporting and believe that the claims and causes of action asserted by the Publication Plaintiffs are entirely without merit, including any claim for defamation. Indeed, the Debtors firmly believe that the Statements were not defamatory and that the underlying complaints likely will not withstand a motion to dismiss.

58532815_8

14. More importantly, the Successful Bidder is protected by the "single publication rule" and the ability of the Debtors to sell their assets free and clear of claims that arise prior to the consummation of the Sale under Bankruptcy Code section 363.

15. Specifically, the single publication rule, which is governed either by state statute or common law, provides that "the publication of a defamatory statement in a single issue of a newspaper, or a single issue of a magazine, although such publication consists of thousands of copies widely distributed, is, in legal effect, one publication which gives rise to one cause of action and that the applicable [s]tatute of [l]imitation[s] runs from the date of that publication" *See* Restatement [Second] of Torts § 577A [3]); *Gregoire v Putnam's Sons,* 298 NY 119, 123 (N.Y. 1948). In the Internet context, it is clear that merely leaving an article online does not amount to a new publication and does not restart the clock for statute of limitations purposes. *See Gureghian v. Charter School Mgmt., Inc. (In re Philadelphia Newspapers LLC)*, 690 F.3d 161, 174 (3d Cir. 2012) (extending single publication rule to internet based material); *Firth v. State*, 98 N.Y.2d 365, 371 (2002) ("The mere addition of unrelated information to a Web site" is not a republication); *Biro v. Conde Nast*, 963 F.Supp.2d 255, 267 (S.D.N.Y. 2013) ("Under New York's single publication rule, it is irrelevant, for statute of limitation purposes, that a story remains online after its publication," even if new user comments are added); *Young v. Suffolk Cnty.*, 705 F.Supp.2d 183, 212 (E.D.N.Y. 2010) ("Under the single publication rule, the fact that a story remains available online does not restart the statute of limitations").

16. Critically, even if the allegedly defamatory statements remain on a publication's website after a third party purchaser acquires the publication's assets in a sale approved by the bankruptcy court, the fact that the statements remain on the publication's website does not constitute a republication such that a new cause of action accrues. For example,

8

58532815_8

in *In re Philadelphia Newspapers*, 450 B.R. 99 (Bankr. E.D. Pa. 2011), two plaintiffs sued the *Philadelphia Inquirer* for defamation. Shortly thereafter, the *Philadelphia Newspaper* debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code, and their assets were purchased by PMN Publishing. The plaintiffs attempted to assert claims for defamation against PMN Publishing based on the argument that leaving the articles posted on the publication's website constituted a republication. The Bankruptcy Court for the Eastern District of Pennsylvania rejected that argument, holding instead that "[w]hile the articles may remain extant and available online, neither was republished *after* PMN became the owner of the papers. Neither did PMN assume liability for defamation claims such as these. For that reason, the plaintiffs may not look to PMN for any recovery." *Id.* at 108.

17.     Thus, in the bankruptcy context, the bankruptcy court in *Philadelphia Newspapers* decision followed the single publication rule that has been adopted and enforced in other cases in different jurisdictions involving purchasers of media publications. For example, in *Haefner v. N.Y. Media, LLC*, No. 150189/08, 2009 WL 6346547 (N.Y. Sup. Ct. Oct. 22, 2009), *aff'd*, 82 A.D.3d 481 (N.Y. App. Div. 2011), the court held that the single publication rule protected a company that purchased New York Magazine from liability arising from a pre-purchase article on the magazine's website because it was clear "that the wording of the article was never changed." 2009 WL 6346547, at *5. According to the court, it followed that the new owner was not liable for posting new articles that hyperlinked to the allegedly defamatory article. *Id.* The First Department for the New York Appellate Division affirmed, noting that "the continuous access to a web article via links on [the new owner's] website was not a republication." 82 A.D.3d 481, 481 (N.Y. App. Div. 2011). Along the same lines, the Ninth Circuit Court of Appeals applied California's single publication rule to a number of defendants

9

including one who was a successor to the party who committed the original alleged defamation, without suggesting or considering the possibility that this succession limited the successor's ability to rely on the rule.  *Cusano v. Klein*, 264 F.3d 936, 949 (9th Cir. 2001).

18.     Thus, while the Debtors do not dispute the Publication Plaintiffs' right to be heard in respect of the Sale, the Court should reject any attempt by the Publication Plaintiffs to manufacture claims against the Successful Bidder based on leaving the already-published Statements online, and enter the proposed Sale Order that protects the Successful Bidder from any such actions.

B.      Writers Guild of America Objection

19.     The Writers Guild of America, East ("WGAE") filed a limited objection to the Sale, which at bottom was urging the Successful Bidder to take an assignment of that certain Collective Bargaining Agreement among the WGAE and Gawker Media LLC, effective as of March 1, 2016 (the "CBA").  As the representatives of the WGAE know, the Debtors and their representatives have advocated that potential bidders take such an assignment, and based on the results of the Auction, the Successful Bidder has agreed to take an irrevocable assignment of the CBA.  The Debtors believe that the WGAE Limited Objection is now resolved.

C.      Fifth Avenue Landlord Objection

20.     114 Fifth Avenue Owner LLC (the "Fifth Avenue Landlord"), as lessor under the lease between the Fifth Avenue Landlord and Gawker Media in respect of Gawker Media and Gawker Media Group Inc.'s New York office (the "Fifth Avenue Lease"), filed a limited objection arguing that the Lease cannot be assigned to the Successful Bidder absent the Debtors providing the Landlord with adequate assurance information about the Successful Bidder and the Successful Bidder providing a letter of credit equal to 18 months' rent, a corporate guaranty from a credit-worthy entity, and an assignment agreement.  *See* Landlord

10

Limited Objection ¶¶ 10, 13-14, 20. The Fifth Avenue Landlord also objected to the agreement between the Debtors and the Stalking Horse Bidder in section 6.11 of the Stalking Horse Bidder APA to enter into a sub-lease agreement in respect of the leased premises, to the extent the provision sought to (i) bind the Fifth Avenue Landlord or (ii) permit the Successful Bidder to occupy the leased premises prior to assumption and assignment of the Fifth Avenue Lease. *See id.* ¶ 24. Further, the Fifth Avenue Landlord objected to the notice provision in section 2.7 of the APA and to the assumption and assignment of the Fifth Avenue Lease occurring at the Sale Hearing. *See id.* ¶ 15. Notwithstanding the foregoing objections, the Fifth Avenue Landlord expressed its willingness to consent to the Successful Bidder occupying the leased premises before deciding whether to seek assumption of the Fifth Avenue Lease, under certain circumstances. Indeed, the Debtors had worked hard with the Fifth Avenue Landlord before the Auction in order to achieve an interim solution beneficial to the estates and other parties in interest before a bidder would decide whether to seek assignment of the Fifth Avenue Lease. Counsel for the Debtors and the Fifth Avenue Landlord also had numerous conversations during the Auction itself.

21. As a result of the Auction, the Debtors no longer need to obtain a license or sublet for the leased premise. Absent an agreement among the Debtors, the Fifth Avenue Landlord, and the Successful Bidder, the Debtors and the Successful Bidder will demonstrate that the Fifth Avenue Lease may be assumed and assigned and that the requirements of providing the Landlord adequate assurance of future performance pursuant to Bankruptcy Code section 365 are satisfied.

58532815_8

D.    The Remaining Cure-Related Objections

22.    The remaining six (6) Objections raise issues or express reservations of rights regarding the possible assumption and assignment of the Contracts between the Debtors and the objectors (the "Cure Objectors"). Notably, none of the Cure Objectors argue that the contracts may not be assumed and assigned if defaults are cured. The Contracts will be assumed and assigned *cum onere* to the Successful Bidder, as required. *See In re MF Global Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) (noting that a debtor must assume or reject an executory contract in its entirety).

23.    The Unimerica Limited Objection alleges that certain non-monetary payment defaults have occurred that need to be cured in connection with the assumption and assignment of the underlying Unimerica Life Insurance Company of New York ("Unimerica NY") Contracts. The Debtors expect to satisfy the informational requests that Unimerica NY alleges must be provided.[8] At this time, the Successful Bidder has not indicated whether or not it intends to seek assignment of the Unimerica NY Contracts. Accordingly, the Debtors will adjourn the Unimerica Limited Objection to the next omnibus hearing date on September 13, 2016.

24.    Finally, with respect to possible payment defaults, the Debtors have resolution with the Cure Objectors (other than Unimerica NY) regarding any amounts that must be paid in connection with the possible assumption and assignment of each of the Contracts. In any event, to the extent there is no agreement, the Cure Objectors will be provided adequate assurance that the allowed amount of their cure claims will be satisfied by the Successful Bidder

---

[8] Superdry also raises certain alleged non-payment defaults in the Superdry Limited Objection. The Successful Bidder has informed the Debtors that it does not intend seek assignment of the sublease that the Debtors are party to with Superdry. The Debtors have so informed Superdry through its counsel. Accordingly, the Debtors submit that the Superdry Limited Objection is moot.

12

58532815_8

based on its asset purchase agreement (the "APA") and financial wherewithal. *See, e.g.*, *In re Young Broadcasting, Inc.*, Case No. 09-10645 (AJC), 2009 Bankr. LEXIS 4941, at *28-29 (Bankr. S.D.N.Y. July 28, 2009) (buyer shall pay or satisfy cure amounts as soon as reasonably practicable following closing date, but generally no later than 60 days after closing date); *In re Chrysler LLC*, Case No. 09-50002 (AJG), 2009 Bankr. LEXIS 5452, at *64-65 (Bankr. S.D.N.Y. June 1, 2009) (cure costs shall be paid by purchaser as soon as practicable and in no event later than 10 days after the later of the closing of the sale or the deemed assumption and assignment date).

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court overrule any remaining objections to the Sale Motion, enter the Sale Order, and grant such other relief as is just and proper.

Dated: August 17, 2016
New York, New York

*/s/ Gregg M. Galardi*
ROPES & GRAY LLP
Gregg M. Galardi
Jonathan P. Gill
Jonathan M. Agudelo
Stacy A. Dasaro
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
gregg.galardi@ropesgray.com
jonathan.gill@ropesgray.com
jonathan.agudelo@ropesgray.com
stacy.dasaro@ropesgray.com

*Counsel to the Debtors*
*and Debtors in Possession*

# Exhibit A

# Objection Summary

| Objecting Party | Objections and/or Reservation of Rights | Debtors' Reply to each Objection and/or Reservation of Rights |
|---|---|---|
| **Dr. Shiva Ayyadurai and Ashley Terrill** (Terrill/Ayyadurai Objection) | 1. The Publication Plaintiffs brought pre-petition causes of action against Gawker Media in respect of certain Statements appearing on one or more of the Debtors' online publications. The Publication Plaintiffs reserve their rights to avoid waiving their individual opportunities to be heard at the Sale Hearing. The Publication Plaintiffs are in negotiations with the Stalking Horse Bidder to seek a consensual resolution with respect to the Statements appearing on one or more of the Debtors' online publications. | **Status: Pending** <br><br> 1. First, the Publication Plaintiffs have no right to object to entry of the Sale Order on the basis that the Statements should be removed from any of the Debtors' online publications. The Publication Plaintiffs' underlying pre-petition causes of action against the Debtors are without merit. Second, and regardless of the merits of the Publication Plaintiffs' causes of action, the Successful Bidder will have no liability to the Publication Plaintiffs following the closing of the Sale. The Statements are governed by the "single publication rule." The Successful Bidder's purchase of the Business will not alone constitute a republication of the Statements. |
| **The Writers Guild of America, East** (WGAE Limited Objection) | 1. The Successful Bidder should take assignment of the CBA. <br> 2. It is premature to calculate any rejection damages should the Debtors reject the CBA. | **Status: Resolved** <br><br> 1. The Successful Bidder has listed the CBA on the Closing Designated Contract List. The Debtors intend to assume and assign the CBA to the Successful Bidder. |
| **114 Fifth Avenue Owner LLC** (Landlord Limited Objection) | 1. The Debtors have not met their burden of proving adequate assurance of future performance in connection with the potential assumption and assignment of the Fifth Avenue Lease. The Fifth Avenue Landlord has not received adequate assurance information as to the Stalking Horse Bidder | **Status: Pending** <br><br> 1. Absent an agreement among the Debtors, the Fifth Avenue Landlord, and the Successful Bidder, the Debtors and the Successful Bidder will demonstrate that the Fifth Avenue Lease may be assumed and assigned and that the |

58532815_8

| Objecting Party | Objections and/or Reservation of Rights | Debtors' Reply to each Objection and/or Reservation of Rights |
|---|---|---|
| | or any other potential bidder. The Successful Bidder must provide evidence that (i) it can cover its obligations under the Fifth Avenue Lease; (ii) its obligations are guaranteed by a credit-worthy entity (or entities) with a net worth equaling all remaining objections under the Fifth Avenue Lease; and (iii) it is a reputable entity of good character. The Fifth Avenue Landlord also requires documents or other evidence as to the Successful Bidder's proposed use of the leased premises.<br>2. The Fifth Avenue Landlord objects to the extent the Debtors and the Successful Bidder seek assumption and assignment of the Fifth Avenue Lease at the Sale Hearing. The Fifth Avenue Landlord also objects to the notice provisions in section 2.7 of the APA, which will not provide the Fifth Avenue Landlord sufficient time to evaluate any adequate assurance evidence.<br>3. The Fifth Avenue Lease requires the Successful Bidder to provide the Fifth Avenue Landlord with (i) a letter of credit equal to 18 months' rent; (ii) a corporate guaranty of the Lease obligations from a credit-worthy entity satisfactory to the Fifth Avenue Landlord; and (iii) an assignment agreement, each as would be required under the Fifth Avenue Lease and as required by section 365(l) of the Bankruptcy Code. | requirements of providing the Landlord adequate assurance of future performance pursuant to Bankruptcy Code section 365 are satisfied. |

2

58532815_8

| **Objecting Party** | **Objections and/or Reservation of Rights** | **Debtors' Reply to each Objection and/or Reservation of Rights** |
|---|---|---|
| | 4. The Fifth Avenue Landlord objects to section 6.11 of the Stalking Horse APA in respect of a sub-lease agreement between the Debtors and the Successful Bidder to the extent it purports to bind the Fifth Avenue Landlord to such arrangement.<br>5. The Fifth Avenue Landlord objects to a unilateral attempt to permit the Successful Bidder to occupy the leased premises prior to formal assumption and assignment pursuant to section 6.11 of the Stalking Horse APA.<br>6. The Fifth Avenue Landlord is willing to consent to the Successful Bidder occupying the leased premises before the decision on whether to assume and assign the Lease is made, conditioned, among other things, to the Debtors (i) seeking to adjourn any hearing to assume and assign the Fifth Avenue Lease until a mutually acceptable date – *i.e.*, September 13, 2016 or after; (ii) agreeing to a deadline to seek an assignment of the Fifth Avenue Lease by the earlier of (x) the closing of the Sale and (y) October 3, 2016; and (iii) agreeing to waive any right to seek assumption and assignment of the Fifth Avenue Lease, if the Successful Bidder determines not to seek an assignment of the Fifth Avenue Lease.<br>7. The Fifth Avenue Landlord does not currently object to the cure cost listed on the Cure Notice. The Fifth Avenue Landlord | |

3

58532815_8

| Objecting Party | Objections and/or Reservation of Rights | Debtors' Reply to each Objection and/or Reservation of Rights |
|---|---|---|
| | reserves it right to claim additional cure costs on account of its attorneys' fees. | |
| **Unimerica Life Insurance Company of New York ("Unimerica NY")** (Unimerica Limited Objection) | 1. The Debtors failed to properly indicate that they have two policies with Unimerica NY: (1) Accidental Death and Dismemberment Insurance and (2) Life Insurance (the "Insurance Policies"). 2. The Debtors have not updated their employee eligibility data since December 2015. Updated data for the coverage period of February 1, 2016 to August 31, 2016 is necessary to calculate the correct cure amount. 3. At a minimum, the cure amount should be $20,095.78, not $0.00. Unimerica NY reserves its rights to revise the cure amount that may either become due and owing as of the date the Insurance Policies are assumed or which may be accrued but not yet due as of the date the Insurance Policies are assumed. | **Status: Adjourned to September 13, 2016 Hearing** 1. If either or both of the Insurance Policies will be assumed and assigned to the Successful Bidder, then the Assumption Notice or Post-Closing Designation Notices, as applicable (each term as defined in the APA) will designate either or both of the Insurance Policies as appropriate. 2. Non-monetary defaults capable of being cured pursuant to section 365 of the Bankruptcy Code will be cured by the Successful Bidder as set forth in section 2.7(e) of the APA, if the Insurance Policies are assumed and assigned to the Successful Bidder. The Debtors and Unimerica NY are working together to provide Unimerica NY with the requested eligibility data. 3. Any outstanding monetary defaults will be cured by the Successful Bidder as set forth in section 2.7(e) of the asset purchase agreement, if assumed and assigned to the Successful Bidder. The Debtors have paid $20,095.78 to Unimerica NY in accordance with the Second Interim Wages Order.[1] |
| **Parse.ly, Inc.** | 1. In the event that the effective date of any assumption and/or assignment of the contract occurs on or after October 1, 2016, additional amounts will be due and owing | **Status: Reservation of Rights Only** 1. The Debtors believe that the Sale will close prior to October 1, 2016. Any defaults will be cured |

---

[1] The Second Wages Order is the *Second Interim Order (I) Authorizing, but not directing, Payment of Prepetition Wages, Salaries, Business Expenses, Employee Benefits and Related Items and (II) Directing all Financial Institutions to Honor Checks for Payment of Such Obligations* (Docket No. 91).

4

58532815_8

| Objecting Party | Objections and/or Reservation of Rights | Debtors' Reply to each Objection and/or Reservation of Rights |
|---|---|---|
| ("Parse.ly") (Parse.ly Reservation of Rights) | under the contract. | by the Successful Bidder as set forth in section 2.7(e) of the APA. Parse.ly's rights are reserved in respect of outstanding cure amounts. |
| **Google Inc.** ("**Google**") (Google Limited Objection) | 1. The Cure Notice creates the incorrect impression that there are multiple, separate agreements between the Debtors and Google, some of which may be assumed and assigned to potential bidders for a $0.00 cure amount, which is not the case for certain contracts.<br>2. The total cure amount for the contracts (the "Google Contracts") is $159,014.00 (in respect of the DoubleClick Advertising Platform Agreement), not $110,951.48 as indicated in the Cure Notice. An additional $90,078.62 comes due on August 30, 2016, increasing the cure amount to $249,092.62 if a payment is not received in the ordinary course.<br>3. Google reserves its right to request and receive adequate assurance information and to object to any potential purchaser's ability to provide adequate assurance of future performance in accordance with the procedures outlined in the Cure Notice, on any basis. | **Status: Resolved**<br><br>1. The Closing Designated Contract List will include the list of contracts listed on paragraph four (4) of the Google Limited Objection, with the following modifications: (i) the date of the Google-Sold Ads Agreement is changed to 2/3/2014 and (ii) that certain Content Hosting Services Agreement entered as of February 25, 2015 between Gawker Media LLC and Google Inc. is added to the chart of Google Contracts.<br>2. The Debtors and have agreed that the current cure amount in respect of the Google Contracts is $110,951.48.<br>3. Pursuant to paragraphs 17 and 23 of the Bid Procedures Order, Google may object to the Successful Bidder's ability to provide adequate assurance of future performance until on or before August 18 at 12:00 noon. |
| **Superdry Wholesale, LLC and Superdry Retail, LLC** | 1. Section 2.4(b) of the Stalking Horse APA improperly limits the Successful Bidder's assumption of liabilities under assumed contracts to only those liabilities arising after the closing. | **Status: Moot; Sublease not subject to assumption and assignment to Successful Bidder**<br><br>1. The Sublease is not on the Closing Designated Contract List as an unexpired lease that will be |

5

58532815_8

| Objecting Party | Objections and/or Reservation of Rights | Debtors' Reply to each Objection and/or Reservation of Rights |
|---|---|---|
| (Superdry Limited Objection) | 2. The letter of credit provided to the Debtors by Superdry must either be assigned or cancelled, giving Superdry adequate time to provide a new letter of credit to the Successful Bidder as required by the sublease (the "Sublease").<br>3. Superdry expects that the Debtors' cure obligations will amount to more than the $0.00 amount specified in the Cure Notice, specifically, as a result of the Debtors' failure to arrange for an operable fire alarm system for the subleased premises, among other things. | subject to assumption and assignment as part of the Sale. Accordingly, the Debtors respectfully submit that Superdry's objection to the Sale is moot. |
| **Fastly**<br><br>(Informal objection to cure amount listed on Cure Notice) | 1. The Cure Notice should include the Fastly Master Subscription Agreement, effective date May 1, 2015 (the "Master Subscription Agreement").<br>2. The total cure amount in respect of the Fastly contracts (the "Fastly Contracts") is $53,869.23, not $0.00 as listed on the Cure Notice. | **Status: Resolved**<br><br>1. The Closing Designation Notice will include the Master Subscription Agreement.<br>2. The Debtors and Fastly have agreed that the cure amount in respect of the Fastly Contracts is $53,869.22. |
| **AOL Advertising, Inc.**<br><br>(Informal objection to cure amount listed on Cure Notice) | 1. The total cure amount in respect of contracts between the Debtors and AOL Advertising, Inc. is $24,615.22 (the "AOL Contracts"), not $0.00 as listed on the Cure Notice. | **Status: Resolved**<br><br>1. The Debtors and AOL have agreed that the cure amount in respect of the AOL Contracts is $24,615.19. |

6

58532815_8