**Presentment Date and Time:  September 14, 2016 at 10:00 a.m. (ET)**
**Objection Date and Time:  September 7, 2016 at 10:00 a.m. (ET)**

SIMPSON THACHER & BARTLETT LLP
Sandeep Qusba
William T. Russell, Jr.
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Counsel to the Official Committee*
*of Unsecured Creditors of Gawker Media LLC, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
|  |  |
|---|---|
| In re | Chapter 11 |
| Gawker Media LLC, *et al.*,[2] | Case No. 16-11700 (SMB) |
| Debtors. | (Jointly Administered) |

-----------------------------------------------------------x

**APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**OF GAWKER MEDIA LLC, *et al.,* FOR ENTRY OF AN ORDER**
**PURSUANT TO SECTIONS 328(a), 330 AND 1103(a)**
**OF THE BANKRUPTCY CODE AND FED. R. BANKR. P. 2014 AND 2016**
**FOR AUTHORITY TO RETAIN AND EMPLOY**
**DELOITTE FINANCIAL ADVISORY SERVICES LLP**
**EFFECTIVE *NUNC PRO TUNC* TO JUNE 28, 2016**

The Official Committee of Unsecured Creditors (the "**Committee**") of Gawker Media

LLC, *et al.* (collectively, the "**Debtors**"), by its co-chair, Ashley A. Terrill, hereby applies (the

"**Application**") for an Order, substantially in the form attached hereto **Exhibit A**, pursuant to 11

U.S.C. §§ 328(a), 330 and 1103(a) of title 11 of the United States Code (as amended, the

"**Bankruptcy Code**") and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure

---

[2]     The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011. King Kft.'s offices are located at Andrassy ut. 66 1062 Budapest, Hungary.

(as amended, the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (as amended, the "**Local Rules**") authorizing the employment and retention of Deloitte Financial Advisory Services LLP ("**Deloitte FAS**") as financial advisor for the Committee, effective *nunc pro tunc* to June 28, 2016. In support of the Application, the Committee relies upon the engagement letter between the Committee and Deloitte FAS, dated June 29, 2016 (the **"Engagement Letter"**), attached hereto as **Exhibit B,** the Declaration of John Doyle (the "**Doyle Declaration**"), attached hereto as **Exhibit C**, and the Declaration of Ashley A. Terrill (the "**Terrill Declaration**"), attached hereto as **Exhibit D**, each incorporated herein by reference. The Committee respectfully represents as follows:

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are sections 328(a), 330 and 1103(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1.

## BACKGROUND

2.      On June 10, 2016, Gawker Media LLC filed a voluntary petition for relief under chapter 11. Gawker Media Group, Inc. and Kinja Kft. followed with voluntary petitions for relief under chapter 11 on June 12, 2016. The factual background regarding the Debtors, including their business operations, their financial affairs and capital structure, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the *Declaration of William D. Holden in Support of First Day Motions* [Docket No. 7].

2

3.     By Order dated June 16, 2016 [Docket No. 41], these chapter 11 cases are being jointly administered. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, neither a trustee nor an examiner has been appointed in these chapter 11 cases.

4.     On June 24, 2016, the Office of the United States Trustee (the "**U.S. Trustee**") appointed the Committee in these cases pursuant to section 1102 of the Bankruptcy Code [Docket No. 62]. The Committee is presently composed of the following three creditors: (i) Terry Gene Bollea; (ii) Shiva Ayyadurai; and (iii) Ashley A. Terrill.

5.     The Committee has retained Deloitte FAS as its proposed financial advisors.

<u>**RELIEF REQUESTED**</u>

6.     Subject to this Court's approval, and pursuant to sections 328(a), 330 and 1103(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1, the Committee respectfully requests that the Court enter the Order in the form of Exhibit A authorizing the Committee to employ and retain Deloitte FAS as its financial advisor, effective *nunc pro tunc* to June 28, 2016, to perform financial advisory services pursuant to the terms of the Engagement Letter.

7.     The Committee has selected Deloitte FAS because Deloitte FAS and its professionals possess extensive experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code. The Committee believes that Deloitte FAS is well-qualified and able to advise and assist it in these chapter 11 cases in an efficient and timely manner.

A.    **Services to be Provided**

8.    The Committee respectfully submit that it is necessary and appropriate for it to employ and retain Deloitte FAS to provide the following services under the terms of the Engagement Letter:

- Assist and advise the Committee in connection with its identification, development, and implementation of strategies related to the Debtors' business plan and other matters, as agreed, relating to the restructuring of the Debtors' business operations;

- Assist the Committee in understanding the business and financial impact of various operational, financial, and strategic restructuring alternatives on the Debtors;

- Advise the Committee in connection with its negotiations and due diligence efforts with other parties;

- Assist Counsel and the Committee in understanding the Debtors' 363 sale process and go-to-market approach, including the marketing process, marketing materials, analysis of virtual room, letters of interest, transaction structure, interpretation of the due diligence process, and, as mutually agreed, such other advisory support as may be requested including but not limited to advice and recommendations related to evaluation of bids;

- Assist the Committee by performing certain forensic analyses relating to the Debtor's financial account information and prepetition transactions, including intercompany transactions;

- Advise the Committee on the Debtors' allocation of proceeds among their entities in connection with any sale transaction;

- Analyze fair value estimates or other valuations prepared by the Debtors and/or the Debtors' advisors, if any;

- Assist the Committee in its analysis of the Debtors' financial restructuring process, including its review of the Debtors' development of plans of reorganization and related disclosure statements;

- Assist the Committee in its review and analysis of potential contingency plans to reflect the impact of restructuring alternatives on the Debtors;

- Provide advice and recommendations designed to assist the Committee in its analysis regarding the refinement of Debtors' cash management and cash flow forecasting process;

4

- Assist the Committee in its review of Debtors' management, including management's development and execution of other restructuring-related activities;

- Assist the Committee in its review of various financial reports prepared for submission to the applicable court, and, as mutually agreed, such other reports that may be requested by parties-in-interest;

- Advise the Committee as it assesses Debtors' executory contracts, including assume versus reject considerations;

- Assist the Committee in evaluating claims asserted against the Debtors, including potential reclamation claims;

- Assist and advise the Committee in its analysis of liquidation scenarios;

- Advise the Committee in connection with its attendance and participation in hearings and meetings on matters within the scope of the Services to be performed under this engagement letter;

- Provide expert testimony on behalf of the Committee related to the foregoing items, as may be requested by the Committee and agreed to by Advisor;

- As requested by the Committee, analyze and assess documents of the Debtors in furtherance of the scope of Services set forth above; and

- Provide advice and recommendations with respect to other related matters as the Committee may request from time to time, as agreed to by Deloitte FAS.

**B.    <u>Professional Compensation</u>**

9.    Deloitte FAS intends to apply for compensation for professional services rendered in connection with these chapter 11 cases, subject to the Court's approval, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York, updated June 17, 2013 (the "**SDNY Guidelines**"), Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, effective as of May 17, 1996 (the "**UST Guidelines**"), the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 94] and

other Orders of the Court Orders, and seek reimbursement of actual, necessary expenses and

other charges that Deloitte FAS incurs.

10.    Deloitte FAS's hourly rates vary with the experience and seniority of the

individual professionals. Under the terms of the Engagement Letter, the applicable hourly billing

rates by personnel classification for this engagement are as follows:[3]

| Billing Category | Rates |
|---|---|
| Partner, Principal, Managing Directors | $595–$795 |
| Senior Vice President or Senior Manager | $535–$645 |
| Senior Associate to Manager | $375–$465 |

11.    The following professionals are presently expected to have primary responsibility

for providing services to the Committee: John Doyle and Mychal Harrison.  In addition, from

time to time, as these chapter 11 cases proceed, other professionals and paraprofessionals of

Deloitte FAS and its affiliates will provide services to the Committee.

12.    Deloitte FAS will maintain detailed records of actual and necessary costs and

expenses incurred in connection with the services described above.  It is Deloitte FAS's policy to

charge its clients for expenses incurred in connection with the client's case.  The expenses

charged to clients include, among other things, telephone charges, mail and express mail charges,

special or hand delivery charges, travel expenses, expenses for "working meals", as well as non-

ordinary overhead expenses such as secretarial and other overtime. All requests for

reimbursement of expenses will be consistent with SDNY Guidelines established by the

Bankruptcy Court and/or the Revised UST Guidelines.

---

[3]    These hourly rates are subject to periodic adjustments. In the event the hourly rates set forth herein are
adjusted during the pendency of these chapter 11 cases, Deloitte FAS will provide the Bankruptcy Court
and the U.S. Trustee with written notice of the new rates.

13.     The Committee believes that these rates, and the terms and conditions of the Engagement Letter, are reasonable.

### C.     Deloitte FAS's Disinterestedness

14.     Upon information and belief, Deloitte FAS does not represent and does not hold any interest materially adverse to the interests of the Debtors' estates or creditors or equity security holders in the matters upon which Deloitte FAS is to be engaged, except to the extent set forth in the Doyle Declaration attached hereto as **Exhibit C**.

15.     The Committee believes that the employment of Deloitte FAS is necessary and in the best interests of the estates and will enable the Committee to carry out its fiduciary duties owed to unsecured creditors under the Bankruptcy Code. The Committee respectfully submits that the relief requested in the Application is appropriate and should be granted by this Court.

### D.     Nunc Pro Tunc Approval

16.     The Committee and Deloitte FAS have taken efforts to expeditiously prepare and submit this Application upon confirmation of the Committee's selection of Deloitte FAS as its financial advisor.  Notwithstanding the foregoing, due to the status of pending matters already underway in the Debtors' bankruptcy cases, it was necessary for certain services to have begun prior to submission of this Application.  Upon information and belief, no party-in-interest would be prejudiced by the granting of the relief requested herein on a nunc pro tunc basis.

### Notice

17.     Notice of this Application has been provided to: (i) the Debtors, Gawker Media LLC, 114 Fifth Avenue, 2nd Floor, New York, NY 10011, Attn. Heather Dietrick (heather@gawker.com); (ii) counsel for the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Gregg M. Galardi (gregg.galardi@ropesgray.com); (iii)

the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Greg Zipes & Susan Arbeit; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel to US VC Partners LP, as Prepetition Second Lien Lender, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: David Heller (david.heller@lw.com) & Keith A. Simon, 885 Third Avenue, New York, New York 10022, Attn: Keith A. Simon (keith.simon@lw.com); (vii) counsel to Cerberus Business Finance, LLC, as DIP Lender, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Adam C. Harris (adam.harris@srz.com); (viii) Thomas & LoCicero PL, 601 S. Boulevard, Tampa, FL 33603, Attn: Gregg D. Thomas, (gthomas@tlolawfirm.com); and (ix) those persons who have formally appeared and requested service in these cases pursuant to Bankruptcy Rule 2002. A copy of this Application is also available on the website of the Debtors' notice and claims agent at https://cases.primeclerk.com/gawker. In light of the nature of the relief requested herein, the Committee submits that no other or further notice is necessary.

## NO PRIOR REQUEST

18.     No prior application for the relief requested herein has been made to this or any other court.

8

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court: (a) enter an order substantially in the form annexed hereto as **Exhibit A**, authorizing the retention and employment of Deloitte FAS under the terms of the Engagement Letter, *nunc pro tunc* to June 28, 2016; and (b) grant such other and further relief as the Court may deem just and proper.

Dated: August 22, 2016
      New York, New York

Respectfully submitted,

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF GAWKER MEDIA LLC, *et al.*

By: _____
Ashley A. Terrill, as authorized and
on behalf of the Committee

Sandeep Qusba
William T. Russell, Jr.
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
E-mail: squsba@stblaw.com
E-mail: wrussell@stblaw.com

08/22/2016 4:16 PM

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                        :

In re                                  :           Chapter 11
                                          :

Gawker Media LLC, *et al.*,[1]       :           Case No. 16-11700 (SMB)
                                          :

                     Debtors.        :          (Jointly Administered)
                                          :
------------------------------------------------------------x

## ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF DELOITTE FINANCIAL ADVISORY SERVICES LLP AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO SECTIONS 328(a), 330 AND 1103(a) OF THE BANKRUPTCY CODE EFFECTIVE *NUNC PRO TUNC* TO JUNE 28, 2016

This matter coming before the court on the Application of the Official Committee of Unsecured Creditors of Gawker Media LLC, *et al.,* for Entry of an Order Pursuant to Sections 328(a), 330 and 1103(a) of the Bankruptcy Code and Fed. R. Bankr. P. 2014 and 2016 for Authority to Retain and Employ Deloitte Financial Advisory Services LLP Effective *Nunc Pro Tunc* to June 28, 2016 (the "**Application**")[2]; the Court having reviewed the Application, the Declaration of John Doyle (the "**Doyle Declaration**") and the Declaration of Ashley A. Terrill; and the Court having found based on the representations made in the Application and in the Doyle Declaration that (a) Deloitte Financial Advisory Services LLP ("**Deloitte FAS**") does not hold or represent an interest adverse to the Debtors' estates and (b) Deloitte FAS is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by

---

[1]     The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011. King Kft.'s offices are located at Andrassy ut. 66 1062 Budapest, Hungary.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

section 327(a) of the Bankruptcy Code; the Court finding that (a) the Court has jurisdiction over

this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28

U.S.C. § 157(b); and (c) notice of the Application is sufficient under the circumstances and no

further notice is required; and the Court having determined that the legal and factual basis set

forth in the Application establish just cause for the relief granted herein and the Court having

determined that the relief sought in the Application is in the best interests of the Committee and

its constituents; and after due deliberation and sufficient cause appearing therefor, it is hereby:

ORDERED, that the Application is granted to the extent provided herein; and it is further

ORDERED that the Committee is authorized, pursuant to section 328(a) of the

Bankruptcy Code, and effective as of June 28, 2016, to employ and retain Deloitte FAS as its

financial advisor under the terms of the Engagement Letter;

ORDERED, that Deloitte FAS shall be compensated in accordance with the procedures

set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, the

Local Rules and any other such procedures as may be fixed by order of this Court; and it is

further

ORDERED, that this Court shall retain jurisdiction over any and all issues arising from or

related to the implementation and interpretation of this Order.

Dated: _____ __, 2016
       New York, New York

_____
THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

**Engagement Letter**

# Deloitte.

Deloitte Financial Advisory
Services LLP
John Doyle
111 S. Wacker Drive
Chicago, IL 60606
USA

Tel: + 312 486 5180
Fax: + 312 247 5180
www.deloitte.com

June 29, 2016

The Official Committee of Unsecured Creditors for Gawker Media LLC, et al.
c/o Co-Chairs Shiva Ayyadurai and Ashley A. Terrill
*Simpson Thacher & Bartlett LLP*
425 Lexington Avenue
New York, NY 10017

Re: Gawker Media LLC Chapter 11 Case

Dear Committee Members:

This letter sets forth the agreement between the Official Committee of Unsecured Creditors for Gawker Media LLC (the "Committee" or "you") and Deloitte Advisory[1] ("Advisor" and "we"), effective as of June 28, 2016. Advisor's personnel will provide to the Committee the services described herein with respect to the Chapter 11 cases of Gawker Media LLC, et al. (the "Debtors"). The General Business Terms & Conditions applicable to this engagement are attached to this letter as Appendix A and are incorporated herein by reference.

<u>UNDERSTANDING OF ROLES</u>

Advisor will provide the following services ("Services"), as requested by the Committee and agreed to by us:

- Assist and advise the Committee in connection with its identification, development, and implementation of strategies related to the Debtors' business plan and other matters, as agreed, relating to the restructuring of the Debtors' business operations;

- Assist the Committee in understanding the business and financial impact of various operational, financial, and strategic restructuring alternatives on the Debtors;

- Advise the Committee in connection with its negotiations and due diligence efforts with other parties;

- Assist Counsel and the Committee in understanding the Debtors' 363 sale process and go-to-market approach, including the marketing process, marketing materials, analysis of virtual room, letters of interest, transaction structure, interpretation of the due diligence process, and, as mutually agreed, such other advisory support as may be requested including but not limited to advice and recommendations related to evaluation of bids;

- Assist the Committee by performing certain forensic analyses relating to the Debtor's financial account information and prepetition transactions, including intercompany transactions;

---

[1] For purposes of this engagement agreement, "Deloitte Advisory" shall mean Deloitte Financial Advisory Services LLP.

1

The Office Committee of Unsecured Creditors of Gawker Media LLC, et al.
[c/o of co-chairperson Shiva Ayyadurai]

- Advise the Committee on the Debtors' allocation of proceeds among their entities in connection with any sale transaction;

- Analyze fair value estimates or other valuations prepared by the Debtors and/or the Debtors' advisors, if any;

- Assist the Committee in its analysis of the Debtors' financial restructuring process, including its review of the Debtors' development of plans of reorganization and related disclosure statements;

- Assist the Committee in its review and analysis of potential contingency plans to reflect the impact of restructuring alternatives on the Debtors;

- Provide advice and recommendations designed to assist the Committee in its analysis regarding the refinement of Debtors' cash management and cash flow forecasting process;

- Assist the Committee in its review of Debtors' management, including management's development and execution of other restructuring-related activities;

- Assist the Committee in its review of various financial reports prepared for submission to the applicable court, and, as mutually agreed, such other reports that may be requested by parties-in-interest;

- Advise the Committee as it assesses Debtors' executory contracts, including assume versus reject considerations;

- Assist the Committee in evaluating claims asserted against the Debtors, including potential reclamation claims;

- Assist and advise the Committee in its analysis of liquidation scenarios;

- Advise the Committee in connection with its attendance and participation in hearings and meetings on matters within the scope of the Services to be performed under this engagement letter;

- Provide expert testimony on behalf of the Committee related to the foregoing items, as may be requested by the Committee and agreed to by Advisor;

- As requested by the Committee, analyze and assess documents of the Debtors in furtherance of the scope of Services set forth above; and

- Provide advice and recommendations with respect to other related matters as the Committee may request from time to time, as agreed to by Advisor.

Advisor shall provide such other services as may be agreed to by Advisor and the Committee in writing based on discussions with you as the engagement progresses and additional information is obtained during the course of the engagement.

You acknowledge and agree that the Debtors are responsible for supplying complete and accurate information, representations, and books and records upon which we rely, and we shall have no responsibility for mistakes or omissions on our part arising as a result of having relied upon information, representations, or books and records provided by the Debtors, or on the Committee's or Debtors' behalf, that were inaccurate or incomplete. In addition, in connection with the Services provided hereunder, we will not audit or otherwise verify the materials provided to us, nor will we provide any assurances concerning the reliability, accuracy, or completeness of any materials provided by or on behalf of the Committee, Debtors, or any other party, and our Services cannot be relied on to

The Office Committee of Unsecured Creditors of Gawker Media LLC, et al.
[c/o of co-chairperson Shiva Ayyadurai]

disclose errors or fraud should they exist.  We shall have no responsibility for updating our Services unless pursuant to a new engagement letter.

_THE BANKRUPTCY CASE_

On June 10 and 12, 2016, the Debtors filed in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Committee has requested that Advisor perform the Services, and Advisor has agreed to perform the Services, subject to the terms and conditions of this engagement letter.  This engagement letter, and Advisor's obligations and responsibilities relating to this engagement, shall be effective as of the effective date on the first page of this letter, subject to, and conditioned on, obtaining Bankruptcy Court approval in the matter, In re: Gawker Media LLC, et al. -- Case No. 16-11700 (SMB)  (the "Case"), nunc pro tunc to such date.

In addition to Advisor's other rights or remedies, Advisor  may, in its reasonable discretion after consultation with the Committee and without any liability arising therefrom, terminate this engagement in the event that (a) a third party objects to Advisor's retention by the Committee in the Case on the terms and conditions set forth in this engagement letter, (b) a final order authorizing the employment of Advisor as financial advisors for the Committee is not issued by the Bankruptcy Court in the Case on or before sixty (60) days from date of execution of this letter on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to Advisor in its sole discretion, or (c) the application seeking such order is denied by the Bankruptcy Court in the Case.  In any such event, the Committee hereby agrees to withdraw or amend, promptly upon Advisor's request, any application filed or to be filed with the Bankruptcy Court to retain Advisor's Services in the Case.

_ENGAGEMENT STAFFING AND FEES_

I will serve as engagement Managing Director, and maintain overall responsibility for the engagement on behalf of Advisor.  Mychal Harrison will serve as the engagement manager, coordinating daily management of the engagement assisted, as appropriate, by staff.  Technical support may also be provided by other professionals who will be identified during the course of this engagement.  However, circumstances may occur that could result in changes to our anticipated staffing for this engagement.

The Committee agrees that Advisor will be compensated, as set for the below subject to Bankruptcy Court approval, at the applicable hourly rates for professional time set forth below plus reasonable expenses incurred during this engagement.  Our fees are based on the hours actually expended by Advisor personnel, multiplied by their applicable hourly billing rate for this engagement.  The applicable hourly billing rates by personnel classification for this engagement are as follows:

> Partner, Principal, Managing Directors:  $595 to $795/hour
> Senior Vice President or Senior Manager:  $535 to $645/ hour
> Senior Associate to Manager:  $375 to $465/hour

In the normal course of business, Advisor revises its hourly rates to reflect changes in responsibilities, increased experience, geographical differentials and increased costs of doing business.  Changes in applicable hourly rates for this engagement will be noted on the statements or invoices, as the case may be, for the first time period in which the revised rates became effective.

Because the scope and depth of our Services to you may change, it is difficult to estimate our total fees in advance.  We will endeavor to discuss changes in our scope and activities with you before proceeding and, if you request, provide fee estimates for specific assignments.

As to expenses, we will be entitled to reimbursement of reasonable, documented and actual expenses incurred in connection with this engagement, including but not limited to travel, report preparation, delivery services, photocopying and other costs included in providing the Services in accordance with

The Office Committee of Unsecured Creditors of Gawker Media LLC, et al.
[c/o of co-chairperson Shiva Ayyadurai]

the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under § 330 of the Bankruptcy Code ("UST Guidelines").

Advisor intends to apply for compensation for professional services rendered and for reimbursement of expenses incurred, in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the applicable local rules of bankruptcy procedure (the "Local Rules"), the UST Guidelines and applicable orders of the Bankruptcy Court.  In this case, payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court.  Payment of these invoices will be made on an interim basis by the Debtors subject to approval and allowance upon application to and order by the Bankruptcy Court.  Advisor intends to submit fee applications seeking approval of its fees and expenses on a periodic basis.  We will provide you with an invoice on a regular basis, with the invoice due pursuant to the payment mechanism provided by the Bankruptcy Court.

*DISCLOSURE OF RELATIONSHIPS*

As the Committee knows, Advisor is a large firm and we, as well as our affiliates, are engaged by new clients every day.  Therefore, we cannot assure that, following the completion of our internal conflict search, another engagement for the Debtors' creditors, or other parties-in-interest or their respective attorneys and accountants will not be accepted by Advisor or its affiliates.  Should any potential conflict come to the attention of Advisor, we will endeavor to resolve such potential conflict and will determine what action needs to be taken.

Further, Advisor and its affiliates may have provided professional services to, may currently provide professional services to, or may in the future provide such services to, the Debtors' creditors, other parties-in-interest, and their respective attorneys and accountants who are known to us to be assisting the parties-in-interest in this Case in matters unrelated to the Case.  The Committee agrees that Advisor and its personnel will have no responsibility to it relating to such professional services, nor any responsibility to use or disclose information Advisor possesses by reason of such services, whether or not such information might be considered material to the Committee.

*LIMITATIONS OF THE SERVICES*

The Services will not result in the issuance of any written or oral communications by Advisor to the Committee, Debtors or any third parties expressing any opinion, conclusion, or any other form of assurance with respect to, among other things, accounting policies, financial data, financial statements and related footnotes, appropriate application of generally accepted accounting principles, disclosure, operating or internal controls, compliance with the rules and regulations of the Securities and Exchange Commission or the Public Company Accounting Oversight Board, compliance with the Sarbanes-Oxley Act of 2002 and related rules and regulations, or any other matters.

The Committee understands that the Services may include access to the work of the Committee's or Debtors' other professional advisors or to financial statements or financial information or data reported on by such other professional advisors.  The Committee agrees that such access is not for the purpose of affirming or evaluating the procedures or professional standards used by such other professional advisors.  In this regard, we call your attention to the possibility that other professional advisors may perform procedures concerning the same information or data, and perhaps the same accounts and records, and reach different observations than Advisor for a variety of reasons, including the possibilities that additional or different information or data might be provided to them that was not provided to Advisor, that they might perform different procedures from Advisor, or that professional judgments concerning, among others, complex, unusual, or poorly documented matters may differ.

The Services to be provided by Advisor will not include any predictions or provide any opinions or other assurances concerning the outcomes of future events, including, without limitation, those that pertain to the operating results of the Debtors or any entity, the achievability of any business plan, the success of any investment, the recovery of any asset, or the ability to pay any debt.  By signing this letter, the Committee expressly acknowledges that Advisor does not guarantee, warrant, or otherwise provide any assurances that Debtors will restructure successfully.

4

The Office Committee of Unsecured Creditors of Gawker Media LLC, et al.
[c/o of co-chairperson Shiva Ayyadurai]

The Committee recognizes and acknowledges that by performing the Services, Advisor is not acting in any management capacity and that the Committee has not asked Advisor to make, nor has Advisor agreed to make, any business decisions on behalf of the Debtors or the Committee. All decisions about the Committee's activities and the Debtors' business or operations, including, but not limited to, decisions concerning the execution of transactions with other entities and the establishment of terms for such transactions, remain the sole responsibility of the Committee or Debtors and its Board of Directors, as applicable. In addition, the Committee expressly acknowledges and agrees that Advisor has been retained by the Committee, and not by the individual Committee members in their individual capacities. Such individual Committee members shall not be deemed clients of Advisor by virtue of this agreement.

_OTHER MATTERS_

The Committee agrees that, without Advisor's prior written permission, any reports, schedules, documents, or other materials provided by Advisor are not to be used, in whole or in part, by the Committee for any purpose other than in connection with this matter.

This engagement letter, incorporating by reference the attached General Business Terms & Conditions, constitute the entire agreement among the parties with respect to the subject matter hereof and supersede all prior agreements and understandings among the parties, whether written or oral, with respect to the subject matter hereof.

If the foregoing represents your agreement, please sign the enclosed copy of this letter in the space provided and return it to me; or if you have any questions, please call me at 312.330.2379. By signing this letter, you represent and warrant that you have the authority to enter into this engagement letter on behalf of the Committee. We appreciate the opportunity to work for you and look forward to your prompt response.

Very truly yours,

Deloitte Financial Advisory Services LLP

By: _____
John M. Doyle, Managing Director


Agreed and Accepted by:
The Official Committee of Unsecured Creditors for Gawker Media LLC et al.

By: _____
Name:    Shiva Ayyadurai
Title:    Co-Chair of the Committee

Date:    August 8, 2016

5

The Office Committee of Unsecured Creditors of Gawker Media LLC et al.
[c/o of chairperson]

*Appendix A*

# GENERAL BUSINESS TERMS & CONDITIONS

1. **Services**.

   a) The services (the "Services") provided by Deloitte Advisory ("Advisor") under the engagement letter to which these terms are attached (the "Engagement Letter") may include advice and recommendations, but Advisor will not make any decisions on behalf of the Committee in connection with the implementation of such advice and recommendations.

   b) The Deliverables (as defined below) are complete only when presented in their entirety and only for the purpose stated therein. Furthermore, (1) neither the Services nor any Deliverables, in whole or in part, shall constitute a fairness or solvency opinion; (2) Advisor will not provide any legal advice or address any questions of law; and (3) the performance of the Services does not constitute an audit conducted in accordance with generally accepted auditing standards, an examination of internal controls, or other attestation or review services in accordance with standards established by the American Institute of Certified Public Accountants, the Public Company Accounting Oversight Board (the "PCAOB"), or other regulatory body.

2. **Payment**. The Debtors or their estates will compensate Advisor under the terms of the Engagement Letter for the Services performed and expenses incurred, through the term or effective date of this engagement. Subject to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules, the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under § 330 of the Bankruptcy Code and applicable orders of the Bankruptcy Court. Advisor's invoices are due upon approval by the Bankruptcy Court. The Debtors shall be responsible for any taxes imposed on the Services or on this engagement, other than income taxes imposed by employment withholding for Advisor's personnel or on Advisor's income or property. In addition, Advisor will be compensated for any time and expenses (including, without limitation, reasonable, documented legal fees and expenses) that Advisor may incur in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, arbitration, or other proceedings (including, without limitation, those unrelated to the matters that are subject to this engagement) as a result of or in connection with the Services or the Engagement Letter.

3. **Term**. Unless terminated sooner as set forth below, this engagement shall terminate upon the completion of the Services. Either party may terminate this engagement, with or without cause, by giving thirty (30) days prior written notice to the other party. In the event of a termination for cause, the breaching party shall have the right to cure the breach within the notice period. Advisor may terminate this engagement upon written notice to the Committee if Advisor determines that the performance of any part of the Services would be in conflict with law or independence or professional rules.

4. **Advisor Technology, Property and Deliverables**.

   a) Advisor has rights in, and may, in connection with the performance of the Services, use, create, modify, or acquire rights in, works of authorship, materials, information, and other intellectual property (collectively, the "Advisor Technology").

   b) Upon full payment to Advisor hereunder, and subject to the terms and conditions contained herein, (i) the tangible items specified as deliverables or work product in the Engagement Letter (the "Deliverables") shall become the property of the Committee and (ii) Advisor hereby grants the Committee a royalty-free, fully paid-up, worldwide, nonexclusive license to use the Advisor Technology contained in the Deliverables in connection with the use of such Deliverables. Except for the foregoing license grant, Advisor or its licensors retain all rights in and to all Advisor Technology.

   c) To the extent Advisor Technology provided to Committee hereunder constitutes inventory within the meaning of section 471 of the Internal Revenue Code, such Advisor Technology is licensed to the Committee by Advisor as agent for Advisor Products Company LLC on the terms and conditions contained herein. The rights granted in this Section 4 do not apply to any Advisor Technology that is subject to a separate license agreement between Committee and any third party (including Advisor's affiliates)

5. **Limitation on Warranties**. This is a services engagement. Advisor warrants that it shall perform the Services in good faith and with due professional care. **DELOITTE FAS DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**

6. **Limitation on Damages**.

   a) Advisor, its subsidiaries and subcontractors, and their respective personnel shall not be liable to the Committee for any claims, liabilities, or expenses relating to this engagement ("Claims") for an aggregate amount in excess of the fees paid to Advisor pursuant to this engagement, except to the extent resulting from the gross negligence, bad faith or intentional misconduct of Advisor or its subcontractors. In no event shall Advisor, its subsidiaries or subcontractors, or

The Office Committee of Unsecured Creditors of Gawker Media LLC et al.
[c/o of chairperson]

their respective personnel be liable for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute a direct Claim), or any consequential, special, indirect, incidental, punitive, or exemplary loss, damage, or expense relating to this engagement.

b)  [Intentionally Omitted.]

**7.  Committee Responsibilities, Third Party Information, and Assumptions**.

a)  The Committee shall cooperate with Advisor in the performance by Advisor of the Services, including providing Advisor with timely access to data, information, and personnel of the Debtors.  The Debtors shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to Advisor for purposes of the performance of the Services.  The Committee acknowledges and agrees that Advisor's performance is dependent upon the timely and effective satisfaction of the Committee's responsibilities hereunder and timely decisions and approvals of the Committee in connection with the Services.  The Committee shall be solely responsible for, among other things:  (1) making all business decisions related to the Committee, (2) overseeing the Services, (3) evaluating the adequacy and results of the Services, and (4) accepting responsibility for the results of the Services.  For the avoidance of doubt, the foregoing does not alter Advisor's obligation to perform the Services in accordance with the terms hereof.  Advisor shall be entitled to rely on all decisions and approvals of the Committee.  With respect to the data and information provided by the Committee or the Debtors to the Advisor for the performance of the Services, the Committee shall have all rights required to provide such data and information, and shall do so only in accordance with applicable law and with any procedures agreed upon in writing.

b)  Advisor may use information and data furnished by parties other than the Committee and Debtors and their agents if Advisor in good faith believes that such information and data is reliable.  Advisor, however, shall neither be responsible for, nor provide any assurance regarding, the accuracy or completeness of any such information or data.

c)  Advisor shall be entitled to assume, without independent verification, the accuracy and completeness of any and all assumptions provided to Advisor by or on behalf of the Committee or the Debtors for purposes of the performance of the Services.

**8.  Force Majeure**.  Neither party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

**9.  Limitation on Actions**.  No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for nonpayment may be brought by a party not later than one year following the due date of the last payment owing to the party bringing such action.

**10.  Independent Contractor**.  Nothing contained in these terms shall alter in any way the duties imposed by law on Advisor in respect of the Services to be provided by Advisor under this engagement.  It is understood and agreed that Advisor is an independent contractor and that Advisor is not, and will not be considered to be, an agent, partner, or representative of the Committee.

**11.  Confidentiality and Internal Use.**

a)  All Services and Deliverables shall be solely for the Committee's benefit, and are not intended to be relied upon by any person or entity other than the Committee, acting through its members solely in their capacity as members of the Committee.  The Committee shall not disclose the Services or the Deliverables, or refer to the Services or Deliverables in any communication, to any person or entity other than legal counsel for the Committee.

b)  To the extent that, in connection with this engagement, either party (each, the "receiving party") comes into possession of any confidential information of the other (the "disclosing party"), it will not disclose such information to any third party without the disclosing party's consent, using at least the same degree of care as it employs in maintaining in confidence its own confidential information of a similar nature, but in no event less than a reasonable degree of care.  The disclosing party hereby consents to the receiving party disclosing such information (1) to contractors, whether located within or outside of the United States, in connection with this Agreement or the Services and that have agreed to be bound by confidentiality obligations similar to those in this Section 11(b); (2) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards or rules, or in connection with litigation pertaining hereto; or (3) to the extent such information:  (i) is or becomes publicly available other than as the result of a disclosure in breach hereof, (ii) becomes available to the receiving party on a nonconfidential basis from a source that the receiving party believes is not prohibited from disclosing such information to the receiving party, (iii) is already known by the receiving party without any obligation of confidentiality with respect thereto, or (iv) is developed by the receiving party independently of any disclosures made to the receiving party hereunder.

c)  No provision of these terms or the Engagement Letter is or is to be construed as a condition of confidentiality within the meaning of PCAOB Release 2005-014, Internal Revenue Code Sections 6011 and 6111 or the regulations thereunder, any related Internal Revenue Service guidance, or any other similar law, with respect to any Services, Deliverables or other materials of any kind provided hereunder relating to tax treatment or tax structure (collectively referred to as "Subject Tax Planning Advice").  Notwithstanding anything herein to the contrary, no provision of these terms or the Engagement Letter shall place any limitation on Committee's disclosure of any Subject Tax Planning

The Office Committee of Unsecured Creditors of Gawker Media LLC et al.
[c/o of chairperson]

Advice.  The Services and Deliverables shall be solely for Committee's benefit, and this engagement does not create privity between Advisor and any person or party other than Committee ("third party").  Neither the Services nor any Deliverables are intended for the express or implied benefit of any third party.  Unless otherwise agreed to in writing by Advisor, no third party is entitled to rely in any manner or for any purpose on the Services or Deliverables.  In the event of any unauthorized reliance as a result of distribution of the Deliverables or other work product of Advisor by a Committee member, such Committee member agrees to indemnify and hold harmless Advisor, its subcontractors, and their respective personnel from all third-party claims, liabilities, costs, and expenses.

12. **Survival and Interpretation**.  All provisions which are intended by their nature to survive performance of the Services shall survive such performance, or the expiration or termination of this engagement.  No affiliated or related entity of Advisor, or such entity's personnel, shall have any liability hereunder and the Committee will not bring any action against any such affiliated or related entity or such entity's personnel in connection with this engagement.  Without limiting the foregoing, such affiliated and related entities are intended third-party beneficiaries of these terms, and may in their own right enforce such terms.  **Each of the provisions of these terms shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any remedy.**  Any references herein to the term "including" shall be deemed to be followed by "without limitation".

13. **Assignment and Subcontracting.**  Except as provided below, neither party may assign any of its rights or obligations (including, without limitation, interests or Claims) relating to this Agreement or the Services without the prior written consent of the other party.  The Committee hereby consents to Advisor subcontracting or assigning any portion of the Services to any affiliate or related entity, whether located within or outside of the United States.  Services performed hereunder by Advisor's subcontractors shall be invoiced as professional fees on the same basis as Services performed by Advisor's personnel, unless otherwise agreed.

14. **Waiver of Jury Trial.  THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT.**

15. **Non-exclusivity.**  Advisor may (1) provide any services to any person or entity and (2) develop for itself, or for others, any materials or processes, including those that may be similar to those produced as a result of the Services, provided that, Advisor complies with its obligations of confidentiality set forth hereunder and under any other confidentiality agreements entered into in connection with the Case.

16. **Entire Agreement, Amendment, and Notices.**  These terms, and the Engagement Letter, including attachments, constitute the entire agreement between the parties with respect to this engagement; supersede all other oral and written representations, understandings, or agreements relating to this engagement; and may not be amended except by a written agreement signed by the parties.  In the event of any conflict or ambiguity between these terms and the Engagement Letter, these terms shall control.  All notices hereunder shall be (a) in writing, (b) delivered to the representatives of the parties at the addresses set forth in the Engagement Letter, unless changed by either party by notice to the other party, and (c) effective upon receipt.

17. **Governing Law, Jurisdiction and Venue and Severability**.  These terms, the Engagement Letter, including attachments, and all matters relating to this engagement shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof), except to the extent governed by the U.S. Bankruptcy Code, where applicable.  Any action based on or arising out of this engagement or the Services shall be brought and maintained exclusively in the Bankruptcy Court or, in the event the Bankruptcy Court does not have or maintain jurisdiction, in any state or federal court, in each case located in New York County, the State of New York.  Each of the parties hereby expressly and irrevocably submits to the jurisdiction of such courts for the purposes of any such action and expressly and irrevocably waives, to the fullest extent permitted by law, any objection that it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum.  If any provision of such terms or the Engagement Letter is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

## EXHIBIT C

**Doyle Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

|  | : |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| Gawker Media LLC, *et al.*,[1] | : | Case No. 16-11700 (SMB) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

------------------------------------------------------------x

## DECLARATION OF JOHN DOYLE IN SUPPORT OF APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF DELOITTE FINANCIAL ADVISORY SERVICES LLP AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS *NUNC PRO TUNC* TO JUNE 28, 2016

I, John Doyle, being duly sworn, declare and say:

1.      I am a Managing Director of Deloitte Financial Advisory Services LLP ("Deloitte FAS"), which has an office at 111 S. Wacker Drive, Chicago, IL, 60606.

2.      I am authorized to make this Declaration in connection with the proposed retention of Deloitte FAS as financial advisor to the Official Committee of Unsecured Creditors (the "Committee") of Gawker Media LLC, *et al.* (the "Debtors") as set forth in the Committee's application (the "Application") to employ and retain Deloitte FAS, *nunc pro tunc* to June 28, 2016, and in the engagement letter dated June 29, 2016 between Deloitte FAS and the Committee attached to the Application as Exhibit B (the "Engagement Letter").

---

[1]      The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d, Floor, New York, NY 10011. King Kft.'s offices are located at Andrassy ut. 66, 1062 Budapest, Hungary.

3.      The statements set forth in this Declaration are based upon my personal knowledge, upon information and belief, and upon client matter records kept in the ordinary course of business that were reviewed by me or other personnel of Deloitte FAS or its affiliates.

4.      Personnel of Deloitte FAS have considerable experience advising creditors' committees and assisting various parties-in-interest in restructuring and other business combination transactions, both inside and outside of chapter 11 proceedings.  For example, personnel of Deloitte FAS have assisted secured creditors, unsecured creditors' committees, bondholders, and equity holders in numerous bankruptcy cases and out-of-court restructurings, and have acted as financial advisors to both buyers and sellers in numerous business combination transactions.  Such experience renders Deloitte FAS qualified and able to provide services to the Committee during the pendency of the Cases.

5.      Except as set forth herein, and in the attachments hereto, to the best of my information, knowledge, and belief based on reasonable inquiry, (1) neither I, Deloitte FAS, nor any partner, principal, or managing director of Deloitte FAS that is anticipated to provide the services for which Deloitte FAS is to be retained (the "Engagement Partner/Principals/Directors") holds any interest adverse to the Debtors or their estates with respect to the matters on which Deloitte FAS is to be retained in the above-captioned chapter 11 cases (the "Cases"), and (2) Deloitte FAS and the Engagement Partners/Principals/Directors have no relationship to the Debtors, their significant creditors, certain other parties-in-interest herein, or to the attorneys that are known to be assisting the Debtors and Committee in the Cases, except as stated herein or on any attachment hereto submitted with the Application and any attachment thereto.

2

6.      In connection with its proposed retention by the Committee in the Cases, Deloitte FAS has undertaken a search to determine and to disclose whether it or its affiliates have any relationships with the entities listed on <u>Schedule 1</u>, whose specific names were provided to Deloitte FAS by the Committee.

7.      Deloitte FAS and its affiliates have relationships with thousands of clients, some of which may be creditors of the Debtors or other parties-in-interest.  Accordingly, Deloitte FAS or its affiliates from time to time have or may have banking or other relationships with or have provided professional services to, or may currently provide professional services to, and may in the future be engaged to provide professional services, in matters unrelated to the Cases, to entities that are the Debtors' creditors or other parties-in-interest in the Cases or to their respective affiliates.  A listing of such parties is attached to this Affidavit as <u>Schedule 2</u>.  Deloitte FAS believes that these connections have no bearing on the services for which Deloitte FAS' retention is being sought in the Cases.

8.      Deloitte FAS believes that the relationships described herein or on <u>Schedule 2</u> or in the Application or in attachments thereto do not impair Deloitte FAS' disinterestedness and Deloitte FAS does not represent an adverse interest in connection with the Cases.

9.      Despite the efforts described above to identify and disclose Deloitte FAS' connections with parties-in-interest in the Cases, and because Deloitte FAS is a nationwide firm with many employees, Deloitte FAS is unable to state with certainty that every client relationship or other connection has been disclosed.  In this regard, if Deloitte FAS discovers additional information that it determines requires disclosure, it will file a supplemental disclosure with the Court promptly.

10.     To the best of my knowledge, the connections of Deloitte FAS or its affiliates with any of the foregoing entities in matters unrelated to the Cases are set forth on <u>Schedule 2</u> and/or below:

(a)     Deloitte FAS and/or its affiliates provide services in matters unrelated to these Cases to certain of the Debtors' largest unsecured creditors and other potential parties-in-interest or their affiliates listed on <u>Schedule 2</u>;

(b)     Certain law firms, including Akerman LLP; Bird & Bird LLP; Cahill Gordon & Reindel LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Giskan Solotaroff & Anderson LLP; Latham & Watkins; Maples & Calder; Morrison Cohen LLP; Proskauer Rose LLP; Ropes & Gray LLP; Schulte Roth & Zabel LLP; Simpson Thacher & Bartlett LLP and Sullivan & Cromwell LLP, have provided, currently provide and may in the future provide legal services to Deloitte FAS or its affiliates in matters unrelated to the Cases.  Alternatively or further, as the case may be, Deloitte FAS and/or its affiliates have provided, currently provide, and may in the future provide services, in connection with matters unrelated to the Cases, to, or in connection with unrelated matters involving these law firms, and those additional law firms listed in <u>Schedule 2</u>;

(c)     Certain financial institutions or their respective affiliates (including AIG, American Express, and Voya Financial) listed on <u>Exhibit B</u> (i) are lenders to an affiliate of Deloitte FAS (Deloitte FAS is a guarantor of such indebtedness) and/or (ii) have financed a portion of the capital and/or capital loan requirements of various partners and principals, respectively, of Deloitte FAS and its affiliates;

(d)     In the ordinary course of its business, Deloitte FAS has connections in unrelated matters with its principal competitors, which may be parties in interest in these chapter 11 cases.  For example, from time to time, Deloitte FAS and one or more of such entities may work on assignments for the same client or may otherwise engage each other for various purposes;

(e)     Deloitte Consulting LLP ("<u>Deloitte Consulting</u>"), an affiliate of Deloitte Tax, and certain of its affiliates, have provided and will continue to provide services to the Executive Office of the United States Trustee in matters unrelated to these Cases; and

(f)     Certain parties-in-interest listed on <u>Schedule 2</u> may be adverse to and/or involved in litigation matters with Deloitte FAS and/or its affiliates in connection with matters unrelated to the Cases.

11.     Subject to the foregoing, neither I, Deloitte FAS, nor the Engagement Partners/Principals/Directors insofar as I have been able to ascertain, holds or represents any

4

interest adverse to the Debtors or their estates with respect to the matters on which Deloitte FAS is to be retained.

12.    Furthermore, through reasonable inquiry, I do not believe there is any connection between the personnel of Deloitte FAS or its affiliates who are anticipated to provide services to the Committee and the United States Bankruptcy Judge presiding in the Cases, the United States Trustee for Region 2, the Assistant United States Trustee for the Southern District of New York, and the attorney assigned to the Cases.

13.    Under the terms of the Engagement Letter, the services to be rendered may include the following:

- Assist and advise the Committee in connection with its identification, development, and implementation of strategies related to the Debtors' business plan and other matters, as agreed, relating to the restructuring of the Debtors' business operations;

- Assist the Committee in understanding the business and financial impact of various operational, financial, and strategic restructuring alternatives on the Debtors;

- Advise the Committee in connection with its negotiations and due diligence efforts with other parties;

- Assist Counsel and the Committee in understanding the Debtors' 363 sale process and go-to-market approach, including the marketing process, marketing materials, analysis of virtual room, letters of interest, transaction structure, interpretation of the due diligence process, and, as mutually agreed, such other advisory support as may be requested including but not limited to advice and recommendations related to evaluation of bids;

- Assist the Committee by performing certain forensic analyses relating to the Debtor's financial account information and prepetition transactions, including intercompany transactions;

- Advise the Committee on the Debtors' allocation of proceeds among their entities in connection with any sale transaction;

- Analyze fair value estimates or other valuations prepared by the Debtors and/or the Debtors' advisors, if any;

5

- Assist the Committee in its analysis of the Debtors' financial restructuring process, including its review of the Debtors' development of plans of reorganization and related disclosure statements;

- Assist the Committee in its review and analysis of potential contingency plans to reflect the impact of restructuring alternatives on the Debtors;

- Provide advice and recommendations designed to assist the Committee in its analysis regarding the refinement of Debtors' cash management and cash flow forecasting process;

- Assist the Committee in its review of Debtors' management, including management's development and execution of other restructuring-related activities;

- Assist the Committee in its review of various financial reports prepared for submission to the applicable court, and, as mutually agreed, such other reports that may be requested by parties-in-interest;

- Advise the Committee as it assesses Debtors' executory contracts, including assume versus reject considerations;

- Assist the Committee in evaluating claims asserted against the Debtors, including potential reclamation claims;

- Assist and advise the Committee in its analysis of liquidation scenarios;

- Advise the Committee in connection with its attendance and participation in hearings and meetings on matters within the scope of the Services to be performed under this engagement letter;

- Provide expert testimony on behalf of the Committee related to the foregoing items, as may be requested by the Committee and agreed to by Advisor;

- As requested by the Committee, analyze and assess documents of the Debtors in furtherance of the scope of Services set forth above; and

- Provide advice and recommendations with respect to other related matters as the Committee may request from time to time, as agreed to by Deloitte FAS.

14.    Subject to allowance and approval by the Court and the terms of the Engagement Letter, in exchange for the services thereunder, Deloitte FAS will charge the following hourly rates:

| Billing Category | Rates |
|---|---|
| Partner, Principal, Managing Director | $595–$795 |
| Senior Vice President or Senior Manager | $535–$645 |
| Senior Associate to Manager | $375–$465 |

Certain of the services set forth in the Engagement Letter will be performed by personnel of Deloitte Transactions and Business Analytics LLP ("DTBA"), an affiliate of Deloitte FAS.

15.    In addition to professional fees for the services described in the Engagement Letter, Deloitte FAS' fee applications will include requests for reimbursement of reasonable expenses, including travel, report production, delivery services, and other costs incurred in providing the services, subject to the applicable rules.

16.    Deloitte FAS intends to apply for compensation for professional services to be rendered in connection with the Cases and for reimbursement of expenses incurred, in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the District of Delaware and Orders of this Court. Payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by this Court.

17.    Deloitte LLP, an affiliate of Deloitte FAS has completed a reorganization of some of its businesses, including its financial advisory services, tax services, solutions, human capital and outsourcing. This reorganization is intended to align the organizational structure more closely with the manner in which business is conducted. These services are now being performed by entities affiliated with Deloitte FAS including, Deloitte & Touche LLP, DTBA, Deloitte Tax LLP and Deloitte Consulting. Accordingly, some services incidental to the tasks to be performed by Deloitte FAS in the Cases may be performed by personnel now employed by or associated with these affiliates of Deloitte FAS or their respective subsidiaries, including

subsidiaries located outside of the United States.   The fees and expenses with respect to such services will be included in the fee applications of Deloitte FAS.

18.     Deloitte FAS has received no promises regarding compensation in the Cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration.   With respect to the services to be provided to the Committee, Deloitte FAS has no agreement with any non-affiliated or unrelated entity to share any revenues earned in the Cases.

John Doyle
Managing Director
Deloitte Financial Advisory Services LLP

August 22, 2016

8

**SCHEDULE 1**

**Names Searched**

114 Fifth Avenue Ground Lessee LLC
114 Fifth Owner LP
204-210 Elizabeth Street LLC c/o S.W. Management LLC
20th Century Fox
3293 Pacific LLC
360i
A Mediocre Corporation
A Small Orange, LLC
A9.com Inc.
Access Inteligence, LLC
Accordant Media
Adam Clark Estes
Adam Pash
Adam Weinstein
Ad-Juster, Inc.
Admeld, LLC
ADP PayEx
ADP Workforce Now
Adsfactor Holdings Limited
Adslot
AdSlot Technologies, LTD.
Adtech US, Inc.
Advanced Electronic Solutions, Inc.
Aegis Group
Aegon Magyarorszag Zrt.
AGIS Fire & Security Kft.
AIG
AIG Europe Limited
Akerman LLP
Alan Henry
Alan Kwon
Albert Burneko
Albertson, Josh
Aleksander Chan
Alex Cranz
Alex Dickinson
Alex Palmer
Alex Pareene
Alexandra Cannon
Alexandra Philippides
Alexandre Dohrmann
Alissa Walker

1

All You Can Move SportPass Europe
Alliance Games
Allison Jones
Allison Wentz
Allure Media Pty Limited
Alyssa Bereznak
AM Lab Americas, LLC.
AMA Consulting Engineers P.C
Amanda Marandola
Amazon
Amazon Commerce Revenue
Amazon Services LLC
Amazon Web Services, Inc.
Amazon.com, Inc.
AMEX
Anastasia Weeks
Andrassy Palota Ingatlanforgalmazo Korlatolt Felelossegu Tarsasag
Andrea Park
Andrew Collins
Andrew Cush
Andrew Gorenstein
Andrew Harding
Andrew Hudson
Andrew Liszewski
Andy Orin
Angela Alzona
Angela Wang
Anna Merlan
Annis, Rose
Anthony Carnevale
Anthony Hack
AOL Advertising Inc.
AOL One
Apple Inc.
Ariana Cohen
Ariel Viera
Asana
Ashley Feinberg
Ashley Terril
Ashton Galloway
Assembly
Associated Press
Atlantic Metro Communications
Atlantic Metro Communications II, Inc.
Attila Illes
Aulistar Mark

Ava Gyurina
Baby Llama Productions LLC
Bajibot Media
Baker, Camie
Balazs Keki
BarkBox, Inc.
Barry Petchesky
Baru Advertising
Batty, Chris
Ben Regenspan
Benefit Resource, Inc.
Benjamin Dorson
Berman, Taylor
Bertolini, Lauren
Biddle, Sam
Big Mango, Inc.
Bird & Bird LLP
Blakeley, Richard Erand
Blane Bachelor
Blogwire
Blogwire Hungary Intellectual Property Licensing LLC
Blogwire Hungary Kft.
Blue Apron
Blue Wheel Media
Bluehost
Bluestone, Gabrielle
Bodnár, István
Brainy Labs, LLC
Brandon McCoy
Brandtale
Brannock & Humphries
Brendan O'Connor
Brian Colgan
Bridget Brown
Brigade Marketing
Brown, Ryan
Bryan Lufkin
Bryan Menegus
Budapesti Önkormányzat Hungary National Tax Authority
Burke, Tim
C&G Group Kft c/o Brody House Group
Cadreon, LLC.
Cahill Gordon & Reindel LLP
Caitleen Weaver
Camila Cabrer
Camilla Baker

Carmichael, Emma
Carmon, Irin
Casey Speer
Casper
Casper Sleep Inc.
Catalyst
Catherine LeClair
CDW Direct
Cecilia D'Anastasio
Centro
Cerberus Business Finance LLC
Cerberus Capital Management LP
Chad Bernstein
Chan, Casey
Charles Johnson and Got News, LLC
Chelsea Lo Pinto
Chelsey Hoffman
Cheryl Eddy
Chris Neveu
Chris Person
Chris Vespoli
Christina Blacken
Christopher Sadowski
Cisco
Citrin Cooperman & Co., LLP
ClickMeter
ClickStream
Climaco, Steve
Cloudinary Ltd.
Clover Hope
ClubW
Coen, Jessica
Cogent Communications
Colleen McMillan Colliers International
Colliers International Kft.
Coltiers Nemzetkozi Ingattanuzemeltet6 es Kezel6 Kft.
Combat Flip Flops, LLC.
Comic Cartel
ComScore, Inc.
Con Edison
Concur Technologies, Inc.
Cook, John
Cooke, Jim
Corbis Corporation
Corey Foster
Corporate Communication Bt.

Courtenay O'Connor
Craggs, Tommy
Cramer-Krasselt
Creative Circle, LLC.
Crecente, Brian
Criteo
Crossmedia
Curbed.com LLC
Curtis, Dustin
CytexOne Technology, LLC
D'Addario, John
Daniel Morgan
Darbyshire, Gabrielle
Darbyshire, Gaby
Darren Orf
Dashlane Inc.
DataGram
Datagram Incorporated
Daulerio, Albert
Dave McKenna
David Tracy
Dayna Evans
Deadspin
Defamer
DelGiudice, James
Denton, Nicholas
Desk.com
Devin Clark
Dewitt Stern Group, Inc.
Dialect Inc
Diana Moskovitz
Diane Kelly
Diaz, Jesus
Diego Pineda
Dietrick, Heather
DigitasLBi
Dimmitt, Elizabeth
Dimmitt, Genevieve
DineInFresh, Inc. dba Plated Dollar Shave Club, Inc.
Dollar Shave Club
Donohue, Lacey
DOUBLECLICK
DoubleVerify, Inc.
Dr. Torzsa Peter Bt.
Draftkings
DreamHost

Drew Magary
DRH Internet Inc
Driftaway Inc.
Drummond, Katie
Duncan, John
Dynect, Inc
Earnest Inc.
Ebel, Eyal
Eleanor Shechet
Elisa Solinas
Elizabeth Nadybal
Elizabeth Weinbloom
Emily Ambruso
Emily Herzig
Emma C Lanigan (Cookson)
Emma Carmichael
Empowering Media LA
Empowering Media NY
Emprese Cedente
Epstein, Jason
Equinox Fitness Clubs
Eric Goldfarb
Eric Ravenscraft
Erika Audie
Erin Gloria Ryan
Erin Pettigrew
Essence
Esther Inglis-Arkell
Ethan Sommer
Evan Narcisse
Eyal Ebel
F451
F451 fka Spicy Media Editora Ltda
F451 Media Editora Ltda.
Fabiola Lara
Facebook Ireland Limited
Facebook, Inc.
Factorylabs
Fallon
Fastly, Inc.
Federal Insurance Company
Fette, Ian
Fidelity
Fluxmob, LLC.
Framebridge, Inc.
Fried, Frank, Harris, Shriver & Jacobson LLP

Fritzie Andrade
Furman, Eliot, as custodian for Alexander Tiberius Furman
Futrelle, Genevieve
Future Publishing Limited
Future Publishing Ltd (US)
Gabrielle Bluestone
Gawker
Gawker Media Group, Inc.
Gawker Media LLC
Gawker Sales LLC
Gawker Stalker
Gawker.Com
GeekFuel, LLC.
General Mills, Inc.
George, Patrick
Georgopulos, Steph
Germain Lussier
Getty Images
Giaco Furino
Giacoman, Gabriela
Giri Nathan
Giskan Solotaroff & Anderson LLP
Gizmodo
Globalway Participacoes Ltda.
Gloria Clark
Goldin Solutions
Gonzalez, Robert
Google Inc.
Gorenstein, Andrew
Gorilla Nation Media, LLC
Grace Robertson
Graham, Kevin
Graze Inc.
Green Fox Academy
Greenmount Creek Limited
Greg Howard
Greg Lopez
Grothaus, Heidi
GroupDynamics Kft
Gunnar Optiks
Gyorgy Bokros
Hajtas Pajtas Kft.
Hale-Stern, Kaila
Hamer, Matt
Handy.com
Hannah Keyser

Happy Socks
Harder Mirell & Abrams
Hardigree, Matt
Hartford Casualty Insurance Company
Hatch Content, LLC
Hathaway, Jay
Havas
HeartWork, Inc.
Heather Dietrick
Heather Hynes
Heidi Grothaus
HelloFresh
Henry,Alan
Hilder, Jeff
Hillary Crosley
Holden, William
Holmes, Anna
Horizon Media
HostGator
Hostgator.com, LLC.
Houlihan Lokey, Inc.
Hover
Howard Kennedy
HTC Blinkfeed
Huckberry
Hudson Insurance Company
Hunter Slaton
Ian Fette
IBM
IDrive Inc.
Ilona Bilevych
Incisive Ltd
Incisive VNU Limited dba Incisive Incisive Ltd
Incisive VNU Ltd Index Exchange Inc.
Indochino
Infobahn Inc.
Inform Interiors
Initiative LA
Initiative NY
Integral Ad Science, Inc.
Internal Revenue Service
Interpublic Group of Companies
io9
IseeQ Kft.
iSocket, Inc.
ITVS

J.K Trotter
Jake Inferrera
Jalopnik
Jalsovszky Law Firm
James Bartus
James Bit Design
James Delgiudice
Jamie Weber
JapanCrate
Jared Auslander
Jason Parham
Jason Schreier
Jason Torchinsky
Jay Hathaway
Jefferson, Whitney
Jeffrey Hilder
Jeffries, Victor
Jelle Claeys Automotive Artwork
Jennifer Ouellette
Jesus Diaz
Jezebel
Jia Tolentino
Jillian Marie Lucas
Jim Boos
Jim Cooke
Joanna Rothkopf
Joel Johnson
John Appel
John Cook
John Duncan Klasko Immigration Law Partners, LLP
John Gelini
Jordan Sargent
Josh Bottino
Josh Laurito
Joshua Albertson
Joshua M Lees
Judy Steinbach
Julia Alvidrez
Julian Muller
Julianne Escobedo Shepherd
Jung Sin
Justin Cross
Justin Potter
Juzwiak, Rich
JW Player/LongTail Ad Solutions, Inc.
K&H Bank

Kaila Hale-Stern
Kang, Daniel
Kanwar Gill
Kara Brown
Kargo Global, Inc.
Karma Mobility Inc.
Kate Dries
Kate Knibbs
Kate Lovejoy
Katharine Trendacosta
Katherine Castellana
Katherine Fry
Kathryn McGinnis
Katie Drummond
Kavitha Reddy
Kéki, Balázs
Kelly Conaboy
Kelly Faircloth
Kelly Monson
Kelly Stout
Kepler Group
Kerrie Uthoff
Ketchum
Kevin Draper
Kforce Inc.
Kid Thursday LLC., dba Staus Audio
Kidder, Scott
Kinja Kft.
Kirk Hamilton
Kixer
Knibbs, Katharine
Kolozsvari Timea
Kornhaber Brown, LLC
Körtesi, Gáspár
Kotaku
Kovel Fuller
Kozma, Jozsef
Kravitha Reddy
Kristin Chan
Kruskopf & Company
Krux Digital, Inc.
Kwame Opam
Lacey Donohue
Lam, Brian
Latham & Watkins
Lauren Bertolini

Laurito, Josh
Lay It Out, Inc.
Layne, Ken
L-Cut Digital Media, Inc.
Leah Beckmann
Leah Finnegan
Lehnhoff, Jim
Leiberts Royal Green Appliances Inc.
Leitch, Will
LendingTree, LLC.
Levine Sullivan Koch & Schulz, LLP
Lewis Rice LLC
Libby, Mia
Lifehacker
Lily Newman
Lindsay Chipman
Lindsay MaHarry
Lindsey Jaffe
LionTree Advisors LLC
Liquid Advertising
Lisa Bolano
Lisanti, Mark
LiveIntent, Inc.
LiveRail, Inc.
LivWell
LJ DUFFY, Inc.
Logmein.com
LOLA
Lopez, Greg
Lucy Haller
Ma, Jesse
Madeleine Davies
Madeleine Stone
Madison Plus Select, Inc.
Magary, Drew
Malcolm Read
Mandy Mandelstein
Maples & Calder
Marchman, Tim
Margaret Taormina
Marina Galperina
Mario Aguilar
Maritza Sanche
Mark Weldon
Market Halsey Urban Renewal, LLC
MarkLogic

MarkMonitor Inc.
Marlena Agency Inc.
Matt Hardigree
Matt Novak
Matthew Hamer
Matthew Kulper
McAllister, Shep
McGarrah Jessee
McGill, Erin
McKenna, Dave
Me Undies
Meanith Huon
MediaGene, Inc. fka Infobahn, Inc.
Medialink
MediaMind Technologies, Inc.
Mediasmith Mediastorm, LLC
Megan Gilbert Megbizott
Melissa Green
Melissa Murray
Merch Direct, LLC
Merchant Importacao, Exportacao e Comercio, Ltda
Merkley and Partners
Merrill Communications, LLC
Metropolitan Cleaning, LLC
MeUndies
Mia Libby
Michael Fahey
Michael Kennelly
Michael Kuntz
Michael Lindsay
Michael Nunez
Michael Orell
Michael Roselli
Michele LaFauci
Michelle Chiang
Mike Ballaban
Mikolaj Szabo
MillerCoors
Ministry of Supply
Miranda Langrehr
Mitchell Williams
Mittelhammer, Eric
MNI
Moat, Inc.
Mobiles Republic, Inc.
MODCo Media

Mollie Horan
Moore Stephens Hezicomp Kft.
Morgan, Daniel
Morrison Cohen LLP
Mott & Bow
MoviePass
Mullen
MVMT Watches
Nachlin, Jim
Nameaction Brasil Serv de Inter Ltda
NameAction Inc.
NameCheap
Nandita Raghuram
Natasha Vargas-Cooper
Nathan Grayson
National Union Fire Insurance Co. of Pittsburgh PA
NatureBox
Neltz, Tamas
Nervora Digital Media Group, FZ-LLC
NetMediaEurope
NetRatings, LLC
Netsuite, Inc.
Netus Media Pty Limited dba Allure Media Pty LTD
Nevins, Maxwell
Nevora Digital Media Group
New York City Department of Finance
New York State Commissioner of Taxation and Finance
Newitz, Annalee
Newmark & Co. Real Estate, Inc.
Newscred
NewsCred, Inc.
Nicholas Murphy
Nick Stango
Nick Wong Photography
Noble People
Nokia
Nolan, Hamilton
Novak, Matt
NSONE Inc.
NVE, Inc.
NVIDIA
O'Connor, Courtenay
O'Connor, Maureen
OCP Collective Corp. dba Adcade, Inc.
Olson Kundig Architects
Olson Kundig Interiors

Omar Kardoudi
Omnicom Group
OnMarc Media Inc.
Operative Media, Inc.
Oppenheim Law Firm
Oppenheim Ugyvedi Iroda
Opportune LLP
Optimizely, Inc.
Oriole Media Corporation dba Juice Mobile
Oscar Z. Ianello Associates, Inc.
Owen & Fred Corp.
Pacific Coast News
Pacific Shaving Company
Parachute Home
Pareene, Alex
Parham, Jason
Pash, Adam
Patricia Hernadez
Patrick Ballester
Patrick Frawley
Patrick Klepek
Patrick Laffoon
Patrick Redford
Paul Sundue
PAX
Percona, Inc.
Pereira & Odell
Perfect World Entertainment
Peri Hochwald
Petchesky, Barry
Petrány, Máté
Petrol
Pettigrew, Erin
PGR Media Protein
Pixel Media Asia Limited
Plant Specialists LLC
Platinum Rye, LLC.
Plunkett, Thomas
Plunkett, Tom
Pop Chart Lab
Popken, Ben
Poprageous
Price, John
Prime Clerk LLC
Proskauer Rose LLP
Publicis Groupe

Puja Patel
Quench USA, Inc.
Quip NYC Inc.
QZZR REDBOOKS
R/West
Rachael Piper Consulting
Rachel Atwood
Randomhouse
Read, Malcom
RED Interactive Agency
Reddy, Kavi
Redscout LLC
Regenspan, Ben
RGFREE
Rhone Apparel Inc.
Riemer & Braunstein, LLP
Riley MacLeod
Risk Strategies Company
Rob Harvilla
Robert Finger
Robert Half
Roberts, Shane
Robischon, Noah Schreier, Jason
Rodger's Townsend
Ropes & Gray LLP
RPA
Rubicon
Ryan Brown
S&T Consulting Hungary Kft.
Sam Biddle
Sam Scherer
Sam Woolley
Samantha Lagani
Samer Kalaf
Samuel Griffel
Samuel Julian
Santa Monica Air Center, Inc.
Sarah Dedewo
Sarah Wiest
Sargent, Jordan
Schulte Roth & Zabel LLP
Schwartz, Diane Schweizer, Julia
Scocca, Thomas
Scott Kidder
Sean Buckley
Sean MacDonald

SeatGeek
Securities & Exchange Commission
Shane Roberts
Shenker & Bonaparte, LLP
Shep McAllister
Shiva Ayyadurai
Shopify
ShoreTel Inc.
Sicha, Choire
Silicon Valley Bank
SimpleReach, Inc.
Simpson Thacher & Bartlett LLP
Sizmek Technologies Inc.
Skillshare
Skillshare, Inc.
Skimbit Limited
SkimBit LTD.
Slack
SmartFX
SocialFlow, Inc.
Sommer, Ethan
Sophie Kleeman
Soundfreaq
Spacetime Media
Specless, LLC.
Spicy Media Editora LTDA
Spinelli, Mike
Sploid
SpruceWares
SquareSpace
Squarespace, Inc.
Stackcommerce
StackSocial
Staq, Inc.
Starcom SMG
Stassa Edwards
Status Audio
Steele, Lockhart
Stein, Sadie
Stephanie Schrader
Stephen Totilo
Sterling Rice Group
Steve Climaco
Steven Polletta
Stowawy Cosmetics
Structure Tone

STS Meida, Inc.
Stuart Cheshire
Submarine Leisure Club, Inc. (Wirecutter)
Submersive Media
Sullivan & Cromwell LLP
Sultana Khan
Sundue, Paul
Superdry
Suzy Kuzy, LLC.
SW Management LLC
Szasz, Peter
Szász, Péter
Szatmári, András
Szolgaltato
Taboola Inc.
Takayama, Greg
Tamas Neltz
TangentVector, Inc.
Tangible Media
Taomina, Margaret
Tapestry Associates LLC
Tara Jacoby
Tate, Ryan
TaxFyle
Taylor Berman
Team Mazda
Technorati, Inc.
Teresa Thomas
Terra Networks Brasil S.A.
Terry Gene Bollea
TGT
The Garage
The Hartford
The Oliver Group
The Rubicon Project, Inc.
The Sasquatch Soap Co., LLC. dba Dr. Squatch
The Status Audio
Thomas & Locicero PL
Thomas, Owen
Thorin Klosowski
Tiku, Nitasha
Tillman, Scott
Tim Barribeau
Tim Burke
Time Shred Services, Inc.
Times Internet Limited

Toder, Matthew
Tom Ley
Tom Plunkett
Tom Scocca
Tommy Craggs
Toth Eva Nagykanizsa
Totilo, Stephen
Trapani, Gina
Treasury of the United States
Tremor Video, Inc.
Trifolium LLC
Trotter, JK
TrueForm Concrete, LLC
TubeMogul
UCB
UCMS Group Hungary Kft.
Udemy
Udemy.com
Udvardi, Ramóna
United Healthcare Insurance Company
Urban Renewal, LLC.
US VC Partners LP
Valleywag
Varidesk
VC Partners LP
Veritas Pictures, Inc.
Veronica de Souza
Versus LLC
Victor Jeffreys
Viddler, Inc.
Viewster.com
Vizu Corporation
VNU Business Media Europe Limited Waves Gear, LLC.
VOX Media - Curbed Investment
Vox Media, Inc.
Voya Financial
VSN
Vuong, Phillip
Walker, Alissa
WavesGear
WB Wood NY
We Work
Weaver, Caity
weBoost
Weinbrecht, Adrian
Weinstein, Adam

Wentz, Allison
Wert, Ray
Wesley Siler WeWork LA LLC
Whitson Gordon
Wholesale LLC
Wholesale, LLC
Wieden & Kennedy
Wildcard Properties LLC
Wilk Auslander
William Arkin
William Haisley
William K. Harrington
William Turton
Wine Awesomeness
Winkelman (Ortega), Samantha
Woerner, Meredith
WPP
Wright's Media
Wrights Media, LLC
Writers Guild of America, East
Yannick LeJacq
Young America Capital
Zach Custer
Zachary Cianflone
Zachary Connett
Zeno Group
Zoe Stahl
Zwillgen PLLC

**SCHEDULE 2**

Parties-in-Interest and/or their affiliates for whom Deloitte FAS or its affiliates have provided or are currently providing services in matters unrelated to the Cases or with whom such parties have other business relationships (including banking relationships) or connections.

20th Century Fox
360i
A9.com, Inc.
Access Inteligence, LLC
ADP PayEx
Aegis Group
Aegon Magyarorszag Zrt.
AIG
Akerman LLP
Amazon
AMEX
AOL Advertising Inc.
Apple Inc.
Assembly
Associated Press
Atlantic Metro Communications
BarkBox, Inc.
Bird & Bird LLP
BlueApron.com
Cahill Gordon & Reindel LLP
Casper
Catalyst
CDW Direct
Cerberus Business Finance LLC
Cisco
ClubW
Cogent Communications
Colliers International Kft.
ComScore, Inc.
Con Edison
Concur Technologies, Inc.
Corbis Corporation
Creative Circle, LLC.
Criteo
Curbed.com LLC
Darbyshire, Gaby
Dashlane Inc.
Dollar Shave Club

DOUBLECLICK
Draftkings
DreamHost
Earnest Inc.
Equinox Fitness Clubs
Essence
Facebook Ireland Limited
Fallon
Fastly, Inc.
Federal Insurance Company
Fidelity 401k
Framebridge, Inc.
Fried, Frank, Harris, Shriver & Jacobson LLP
General Mills, Inc.
Getty Images
Giskan Solotaroff & Anderson LLP
Globalway Participacoes Ltda.
Google
Graze Inc.
Hartford Casualty Insurance Company
Havas
HelloFresh
Holden, William
Horizon Media
Houlihan Lokey, Inc.
Hover
HTC Blinkfeed
IBM
Indochino
Internal Revenue Service
Interpublic Group of Companies
Joel Johnson
John Cook
Kargo Global, Inc.
Kforce Inc.
Kinja Accounts Payable
Latham & Watkins
LendingTree, LLC.
LionTree Advisors LLC
LiveIntent, Inc.
LiveRail, Inc.
Logmein.com
LOLA
Maples & Calder
Mark Weldon
MarkLogic

MarkMonitor Inc.
Marlena Agency Inc.
Merkley and Partners
Merrill Communications, LLC
Michael Nunez
MillerCoors
MNI
Moat, Inc.
Moore Stephens Hezicomp Kft.
Morrison Cohen LLP
Mullen
National Union Fire Insurance Co. of Pittsburgh PA
NetSuite, Inc.
New York City Department of Finance
New York State Commissioner of Taxation and Finance
Newmark & Co. Real Estate, Inc.
Nicholas Murphy
Nokia
NVIDIA
Omnicom Group
Optimizely, Inc.
Oriole Media Corporation dba Juice Mobile
Patrick Frawley
PAX
Percona, Inc.
Perfect World Entertainment
Petrol
Price, John
Prime Clerk LLC
Proskauer Rose LLP
Publicis Groupe
Randomhouse
RED Interactive Agency
Risk Strategies Company
Robert Half
Ropes & Gray LLP
Rubicon
Schulte Roth & Zabel LLP
Securities & Exchange Commission
ShoreTel Inc.
Silicon Valley Bank
[Simpson Thacher & Bartlett LLP]
Slack
Squarespace, Inc.
Starcom SMG
Structure Tone

STS Meida, Inc.
Sullivan & Cromwell LLP
Szolgaltato
Team Mazda
Technorati, Inc.
Terra Networks Brasil S.A.
TGT
The Hartford
The Oliver Group
The Rubicon Project, Inc.
Tom Plunkett
Treasury of the United States
Tremor Video, Inc.
TubeMogul
UCB
Udemy
United Healthcare Insurance Company
Urban Renewal, LLC.
VC Partners LP
Versus LLC
Vox Media, Inc.
Voya Financial
VSN
We Work
Wholesale, LLC
Wildcard Properties LLC
WPP
Zeno Group

## **EXHIBIT D**

**Declaration of Ashley A. Terrill**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
                                        :
In re                                   :        Chapter 11
                                        :
Gawker Media LLC, *et al.*,[1]          :        Case No. 16-11700 (SMB)
                                        :
                    Debtors.            :        (Jointly Administered)
                                        :
----------------------------------------------------------x

**DECLARATION OF ASHLEY A. TERRILL IN SUPPORT OF APPLICATION OF THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
GAWKER MEDIA LLC, *et al.*, FOR ENTRY OF AN ORDER AUTHORIZING THE
RETENTION AND EMPLOYMENT OF DELOITTE FINANCIAL ADVISORY
SERVICES LLP AS FINANCIAL ADVISOR FOR
THE COMMITTEE EFFECTIVE *NUNC PRO TUNC* TO JUNE 28, 2016**

Pursuant to 28 U.S.C § 1746, I, Ashley A. Terrill, hereby submit this declaration (the "**Declaration**") under penalty of perjury:

1.      I am a creditor of Gawker Media, LLC (together with its debtor affiliates, the "**Debtors**") and was appointed by the Office of the United States Trustee as a member of the Official Committee of Unsecured Creditors (the "**Committee**") of the Debtors. I am the co-chair of the Committee, and I was part of the process and involved in selecting and engaging a financial advisor for the Committee.

2.      I have reviewed and am familiar with the contents of the *Application Of The Official Committee Of Unsecured Creditors Of Gawker Media LLLC, Et Al., For Entry Of An Order  Pursuant To Sections 328(A), 330 And 1103(A) Of The Bankruptcy Code And Fed. R. Bankr. P. 2014 And 2016 For Authority To Retain And Employ Deloitte Financial Advisory*

---

[1]    The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011. King Kft.'s offices are located at Andrassy ut. 66 1062 Budapest, Hungary.

*Services LLP Effective Nunc Pro Tunc To June 28, 2016* (the "**Application**").[2] In support of the Application, the Committee relies upon the Declaration of John Doyle, which is attached to the Application.

3.      Several financial services firms appeared before the Committee and sought to serve as the Committee's financial advisor. The Committee considered and interviewed each firm, prior to selecting Deloitte FAS as its financial advisor. The Committee selected Deloitte FAS because of Deloitte FAS's extensive general financial advisory experience and knowledge, and in particular, its experience in the fields of creditors' rights and business reorganization under chapter 11 of the Bankruptcy Code.

4.      The members of the Committee also reviewed Deloitte FAS's rates for services as set forth in the Application. The Committee believes these rates are reasonable. Each Committee member will also receive copies of Deloitte FAS's monthly invoices and fee applications and will have a full opportunity to review such fees and expenses.

5.      The facts set forth in this Declaration are based upon my personal knowledge, my review of the relevant documents, information provided to the Committee, information provided to the Committee by Deloitte FAS, and my personal opinion based upon my experience, knowledge, and information provided to me. I am authorized to submit this Declaration on behalf of the Committee, and if called upon to testify, I would testify competently to the facts set forth herein.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States, that the foregoing statements are true and correct.

---

[2]      Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Application.

2

Dated: August 22, 2016

Respectfully submitted,

Ashley A. Terrill, as authorized and on behalf
of the Committee