Page 1

1  UNITED STATES BANKRUPTCY COURT
2  SOUTHERN DISTRICT OF NEW YORK
3  Case No. 16-11700-smb
4  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
5  In the Matter of:
6
7  GAWKER MEDIA, LLC,
8
9            Debtor.
10 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
11
12                U.S. Bankruptcy Court
13                One Bowling Green
14                New York, NY   10004
15
16                August 9, 2016
17                10:45 AM
18
19
20
21
22
23  B E F O R E :
24  HON STUART M. BERNSTEIN
25  U.S. BANKRUPTCY JUDGE

1  Hearing re:  Motion to Set Last Day to File Proofs of Claim
2  Debtors Motion Pursuant to 11 U.S.C. 502 and 503, Fed. R.
3  Bankr. P. 2002 and 3003(c)(3), and Local Rules 3003-1 for
4  Entry of Order (I) Establishing a Deadline to File Proofs of
5  Claim, Certain Administrative Claims, and Procedures
6  Relating Thereto, and (11) Approving the Form and Manner of
7  Notice Thereof.
8
9  Hearing re:  Debtors' Motion for Entry of Interim and Final
10 Orders (I) Authorizing, but Not Directing, Payment of
11 Prepetition Wages, Salaries, Business Expenses, Employee
12 Benefits and Related Items, and (11) Directing All Financial
13 Institutions to Honor Checks for Payment of Such
14 Obligations.
15
16 Hearing re:  Application to Employ Cahill Gordon & Reindel
17 LLP as Special Litigation Counsel.
18
19
20
21
22
23
24
25 Transcribed by:  Sonya Ledanski Hyde

1  A P P E A R A N C E S :

2

3  ROPES & GRAY LLP

4       Attorney for the Debtor

5       1211 Avenue of the Americas

6       New York, NY 10036

7

8  BY:  GREGG M. GALARDI

9       JONATHAN M. AGUDELO

10

11 SIMPSON THACHER & BARTLETT LLP

12      Attorney for the Creditors Committee

13      425 Lexington Avenue

14      New York, NY 10017

15

16 BY:  WILLIAM T. RUSSELL, JR.

17      SANDY QUSBA

18

19 UNITED STATES DEPARTMENT OF JUSTICE

20      Attorney for the U.S. Trustee

21      201 Varick Street, Suite 1006

22      New York, NY 10014

23

24 BY:  GREG ZIPES

25

1          P R O C E E D I N G S

2          MR. GALARDI: Good morning, Your Honor.

3          THE COURT: Good day.

4          MR. GALARDI: For the record, Greg Galardi.

5   Before I just turn over to three matters, I just wanted -- I

6   know you have status conferences for the 18th, but I thought

7   I would give Your Honor just a little bit of background on

8   where we stand because I think it'll be relevant to the bar

9   date motion that we are seeking approval for, and then some

10  other matters.

11         We still expect -- as your Honor knows, we are in

12  a sales process. We do expect an auction to occur. That'll

13  be bids were due the 15th, 16th we expect for auction, and

14  the 18th is the hearing, so we do believe we will actually

15  have an auction.

16         Your Honor, we did file the schedules and

17  statements and then had the meeting with the US Trustee's

18  office. Hearing Your Honor about expeditiously pursuing

19  this case, we did seek to have in the motion -- that's the

20  first motion on the agenda -- a bar date of September 19th

21  as the date of the bar date. After thinking about it a

22  little bit and thinking about -- we had called Your Honor

23  for a calendar for October, giving the dates that are

24  available for us in October. I think it's the 4th and the

25  27th.

1           We would be prepared to move the bar date back 10
2    days.  We talked to the Committee.  I think it's probably
3    wise under the circumstances, given Labor Day and the
4    holiday. so we would suggest that if Your honor is -- and
5    that Your Honor may have questions about that, but that will
6    give us -- we still intend to mail and do the notice and the
7    publication pursuant to the terms, but put it to the
8    September 29th date.
9           THE COURT:  Well, that's fine, obviously.  You
10   have -- the problem here is you had to have a lot of
11   unliquidated court claims.
12          MR. GALARDI:  Correct.
13          THE COURT:  And I don't know when there's ever
14   going to be a distribution of the case.
15          MR. GALARDI:  Well, Your Honor, we are -- are
16   working through that and there's not as many -- I mean,
17   obviously there is --
18          [OVERLAPPING VOICES]
19          THE COURT:  Well, it only takes one, but you have
20   --
21          MR. GALARDI:  It only takes --
22          THE COURT:  You're going to have four, I think,
23   left.
24          MR. GALARDI:  Correct.  And as Your Honor is all
25   too aware, the Baleo is an appeal issue which could take a

1  time and...  But-- and whether we can liquidate it here or
2  liquidate some of these in the -- in the District Court,
3  obviously that's something we had a call with the Committee
4  to give them general status and then once the sale gets
5  done, I think were going to be talking about the plan and
6  how to best -- how best to resolve all of those issues.
7  There's an allocation among the estates, so that's another
8  reason why we think -- get -- we wanted to have the bar date
9  on file, but the extra 10 days, given (indiscernible) --
10              THE COURT:  It's not going to make a difference
11 anyway.
12              MR. GALARDI:  Yeah.  That's what we thought, it
13 wouldn't make a difference.  You still have the government
14 bar date out there in December anyway.  We do have a
15 potential government claim, so we still think we're on track
16 in the plan and disclosure statement.  We're still thinking
17 of a late October disclosure statement and a plan by year
18 end.  But we'll have to deal with those claims.
19              I don't know if Your Honor had any other comments
20 on the bar date --
21              THE COURT:  Yeah.
22              MR. GALARDI:  -- order or motion?
23              THE COURT:  Well, just a second.  One, do you have
24 your bar date order in front of you?
25              MR. GALARDI:  I'm getting it out.  Yes, Your

```
 1   Honor.
 2              THE COURT:  What's the difference between
 3   Paragraph 5(d) and Paragraph (8)?
 4              MR. GALARDI:  Paragraph 5 --
 5              THE COURT:  6(d)
 6              MR. GALARDI:  -- (d)...
 7              THE COURT:  That's the one that says equity
 8   security holders --
 9              MR. GALARDI:  Correct.
10              THE COURT:  -- don't have to file a claim unless
11   they also have a claim.
12              MR. GALARDI:  Right.
13              THE COURT:  And Paragraph 8 seems to say the same
14   thing.
15              MR. GALARDI:  And which paragraph says this?
16              THE COURT:  Eight.  Not sure of the language, by
17   the way.
18              MR. GALARDI:  Correct.  I think it probably -- in
19   much shorter language, I think it's the same thing.
20              THE COURT:  So why don't you take one and jettison
21   the other?
22              MR. GALARDI:  That's fine.  I think we're going to
23   take the longer until I look otherwise.
24              THE COURT:  So don't forget to re-number or re-
25   letter your paragraphs, though.
```

1                MR. GALARDI:  We will do so, Your Honor.
2                THE COURT:  All right.  So, does anyone else want
3    to be heard in connection with the bar date?  All right.
4    Submit a new order with the new bar date and I'll sign it.
5                MR. GALARDI:  Thank you, Your Honor.
6                THE COURT:  Okay.
7                MR. GALARDI:  Now, with respect to the second
8    matter that's on the agenda, this a matter that we've held
9    since the first day and we've got a series of interim
10   orders.  It is the wage motion, and I -- if I may approach
11   the bench with the redline?
12               THE COURT:  Thank you.
13               MR. GALARDI:  Your Honor, very briefly, we've
14   worked with the Committee to -- this goes to severance
15   payments, and one of the issues -- and Your Honor has
16   previously approved severance for employees with a couple
17   exclusions up to an amount of four weeks.
18               Your Honor, we do have a collective bargaining
19   agreement in this -- in this case.  And with respect to the
20   collective bargaining agreement, certain persons under the
21   collective bargaining agreement have additional severance
22   beyond that four weeks.
23               And one of the issues that we are -- have been
24   wrestling with with the Committees' -- with the Committee
25   working together in concert is the collective bargaining

1   agreement. You'll be happy to know, Your Honor, that --
2   well, you'll be -- know if you'll be happy to know, but we
3   are familiar that with Your Honor's Opinion, we're going in
4   collective bargaining agreements, there is no successor
5   clause in this collective bargaining agreement.
6   We are trying to get buyers to assume the
7   collective bargaining agreement, but they may not do so. If
8   they don't do so, we are familiar enough with the law that
9   we are trying to still not be in breach of the collective
10  bargaining agreement so we do not have to go through the
11  1113 process. We've been in contact with the
12  representatives of the Union. They will be filing, I
13  believe, a statement or an objection saying that the
14  collective bargaining agreement should be assumed. And we
15  are encouraging buyers to do so.
16  With all that said, one of the critical -- and we
17  think probably the only major obligation of the collective
18  bargaining agreement that would remain should a buyer not
19  take the collective bargaining agreement, is the payment of
20  severance obligations. And what we have agreed with the
21  Committee and what this order reflects, and Your Honor will
22  see it the redline, is that with respect to employees who
23  are subject to the collective bargaining agreement,
24  Paragraph 6 now provides that we will be able to make those
25  payments to the severance to the employees under the

1   collective bargaining agreement, as the collective
2   bargaining -- as the collective bargaining agreement
3   requires.  So, it's so we wont be in breach of an
4   obligation.  It'll be more than four weeks; sometimes it's
5   eight weeks.  I don't think there is many people higher than
6   eight weeks, and we appreciate the Committee working with us
7   to resolve that issue.
8            The only reason it is an interim order is that
9   there are still certain employees that would be entitled to
10  greater than four weeks that we have not addressed, but in
11  light of the sale and in light of potential bidders,
12  determining which employees they might take and which
13  employees they don't -- they won't take, what we have agreed
14  with the Committee is to adjourn this matter over to
15  September 13th, which we have a hearing scheduled for that
16  date, Your Honor, with an objection deadline of September
17  6th.
18           We think that date works well because if we are
19  successful with the sale and Your Honor approves the sale,
20  we believe the final part of August will be making offers to
21  employees to go with the new bidder.  We will then know by
22  around September 2nd, which is the date we think they -- the
23  sale will close, who will be and who will not be taken by
24  the buyers.  We'll be able to put some number on the
25  severance obligations, have a further discussion with the

1  Committee regarding that, and determine whether there is
2  need for a fight or not a fight regarding any balance of
3  severance.
4         With that, Your Honor, we would ask Your Honor --
5  and we will have to submit the order with the dates of
6  September 13th and 6th -- we'd ask Your Honor to approve the
7  third interim wage order with those dates included in them.
8         THE COURT:  Does anyone want to be heard in
9  connection with the application or the proposal for another
10 interim order?  Record should reflect there is no response.
11 I'll approve the interim order and I've adjourned the matter
12 to September 13th.
13        MR. GALARDI:  Thank you, Your Honor.
14        THE COURT:  Thank you.
15        MR. GALARDI:  The next matters that are on the
16 agenda, three of which are adjourned but one is -- has been
17 resolved with the Committee.  Your Honor, the Debtors filed
18 a series.  Your Honor may recall we had put a number of
19 professionals on an ordinary course.  Your Honor had
20 concerns about that.  We then filed separate 327(e)
21 applications with respect to a series of professionals.
22 Four -- there were four such applications.  I think another
23 one is actually pending.  Those -- of those four
24 applications, one of the applications was to retain the law
25 firm Cahill to handle one of the matters.  The Committee

1    filed an objection expressing concerns with respect to
2    allocation of liability, indemnification, contribution
3    rights, based on the fact that all of these counsel
4    represented not only the Debtor, but other -- other parties.
5            The U.S. Trustee had also given us an informal
6    objection asking for certain information.  Your Honor may
7    know from the docket, we filed some supplemental direct
8    declarations.  There was also a concern of how the fees
9    would be allocated among the various entities.
10           We talked with the Committee yesterday regarding
11   the four applications.  We've sought to adjourn three, but
12   with respect to Cahill, we reached an agreement with the
13   Committee regarding going forward subject to Your Honor's
14   approval with respect to Cahill.
15           In particular, Your Honor, the Committee agreed to
16   withdraw its objection to the Cahill to serve a special
17   counsel with respect to the Mail Media litigation, based on
18   an -- the explanation that Cahill and I gave them, with
19   respect to the particular circumstances of the litigation.
20           The circumstances are that Cahill has negotiated a
21   settlement currently.  The material terms of the settlement
22   is in the final phases of preparing the final documentation.
23   Cahill believes, but disclosed to the Committee in
24   confidence that it believes that publicly disclosing the
25   potential settlement terms at this time and on the record,

1   meaning with the press around, may be detrimental to
2   actually completing the documentation, but Cahill does not
3   expect, and advised, as did I, that there will be any issues
4   of contributions, indemnification or allocation among the
5   parties, and with those representations, we believe the
6   Committee has withdrawn its objection with respect to
7   Cahill.
8           If Your Honor wanted more details, I could give
9   them to you in Chambers.
10          THE COURT:  When we decide about it, the U.S.
11  Trustee has any issue with the retention of Cahill.  As I
12  understand it, Cahill is returning -- representing two
13  parties, the Debtor and a non-debtor party.
14          MR. GALARDI:  Correct.  A freelance writer.
15          THE COURT:  It has negotiated a settlement, which
16  everybody can take a look at I guess, and decide whether
17  it's fair or not, which would sort of render --
18          MR. GALARDI:  And Your Honor --
19          THE COURT:  -- render the entire thing academic at
20  that point.  But you're not prepared to -- the settlement
21  isn't finalized.  Is there any objection to --
22          MR. ZIPES:  Your Honor, I haven't seen the
23  settlement, but based on what's been said, we have no
24  objection.  We would have an allocation issue, as does the
25  Committee (indiscernible).

1          THE COURT:  Well, yeah, that's -- that becomes a

2    settlement issue at that point, not any -- not any other.

3          MR. ZIPES:  So we have no objection, Your Honor.

4          THE COURT:  All right, then I will approve the

5    Cahill retention.  You can submit an order on the balance of

6    the retentions or applications that are going to run.

7          MR. GALARDI:  Well, we have adjourned them to

8    August 18th with Your Honor, hoping to try to resolve them.

9    That is the sale hearing.  We'll see what we can do.  There

10   may -- in light of all the other issues with the claims,

11   that may further get adjourned, but right now we're putting

12   them on the 18th just to keep them on the calendar and

13   everybody working to achieve -- try to resolve or find other

14   counsel.  So, that's the -- that'll be the issue.

15         THE COURT:  Great.  And you can submit an order on

16   that one.

17         MR. GALARDI:  Your Honor, that concludes the

18   matters for us.

19         THE COURT:  Thank you very much.

20         MR. GALARDI:  Thank you.

21         MR. RUSSELL: Your Honor, very briefly, the

22   Committee wanted to make a very short statement.

23         THE COURT:  Sure.

24         MR. RUSSELL:  The Committee read this past weekend

25   on Page 6 of the New York Post that Mr. Denton is apparently

1   throwing a Gawker reunion party called "Against All Odds."
2           THE COURT:  Must be true if it's on Page 6, huh?
3           MR. RUSSELL:  Exactly, Your Honor.  Against all
4   Odds, a celebration of 14 years of independent journalism.
5   Apparently the Debtors are footing the bill for Mr. Denton's
6   party.  We reached out to the Debtors --
7           THE COURT:  And Mr. Denton's a Debtor also?
8           MR. RUSSELL:  He is, but not -- not in this case
9   and we don't represent his Creditor's Committee.  The
10  Debtor's represented to us that the cost of the party is
11  around $1,000, so it certainly wasn't worth filing any kind
12  of formal objection.
13          THE COURT:  It's costing you $1,000 too, but you
14  spent $1,000 just for you to tell me this now.
15          [OVERLAPPING CONVERSATION]
16          MR. RUSSELL:  Probably not far from it, but there
17  is an important principle here, which is why the Committee
18  wanted me to make a statement that... The Committee wanted
19  to note its objection to the use of Debtor funds by Mr.
20  Denton as part of any operative, rehabilitate his
21  reputation, and while the Debtors are taking a position that
22  this party is an ordinary course expense, the Committee
23  thinks throwing a party on the eve of the sale, the company
24  is not an ordinary course expense and going forward, we
25  would expect that at the very least, the Committee be given

1  notice of any expenditure like this in the future.
2           THE COURT: Well, certainly Debtor can't spend
3  money outside of the ordinary course of business. I don't
4  know if this is or is not.
5           MR. RUSSELL: But again, for $1,000, Your Honor,
6  it certainly wasn't worth seeking relief.
7           THE COURT: Okay.
8           MR. GALARDI: Your Honor, I do have to make a
9  couple comments, only because -- and I know it's costing
10 more than this -- one is it wasn't Mr. Denton throwing the
11 party. It was Gawker throwing the party. In fact, it is a
12 semi-annual event that Gawker does send for its medias and
13 writers. As soon as we heard about it, we did give the
14 Committee the expense. I thought that was the end of it.
15 To date, I think it's under $1,000. I don't expect it to
16 get higher. Historically, it's been well under $3,000. It
17 is not a Mr. Denton party. It is a Debtor party. I hope
18 this is the end of that conversation.
19          THE COURT: Thank you for that clarification.
20 Thank you, gentlemen. Have a nice day.
21          MR. RUSSELL: Thank you, Your Honor.
22          (Whereupon these proceedings were concluded at
23 10:58 AM)
24
25

```
1                        I N D E X
2
3                        RULINGS
4                                          Page      Line
5    Third Interim Wage Order Approved      11        11
6    Cahill Retention Approved              14        4-5
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                    C E R T I F I C A T I O N

2

3      I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6   Sonya Ledanski Hyde

7

   Digitally signed by Sonya Ledanski Hyde
   DN: cn=Sonya Ledanski Hyde, o=Veritext,
   ou, email=digital@veritext.com, c=US
   Date: 2016.08.17 13:46:26 -04'00'

8   Sonya Ledanski Hyde

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

25   Date:  August 17, 2016