Ropes & Gray LLP
Gregg M. Galardi
Jonathan P. Gill
Jonathan M. Agudelo
Stacy A. Dasaro
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                    :
In re                               :       Chapter 11
                                    :
Gawker Media LLC, *et al.*,[1]      :       Case No. 16-11700 (SMB)
                                    :
                    Debtors.        :       (Jointly Administered)
                                    :
                                    :       **Re: Docket No. 21, 77, 82, 182, 214**
                                    :
-------------------------------------------------------x

### NOTICE OF ENTRY OF SALE ORDER

**PLEASE TAKE NOTICE** that on June 13, 2016, Gawker Media LLC, Gawker Media

Group, Inc. and Kinja Kft., as debtors and debtors in possession in the above-captioned chapter

11 cases (collectively, the "Debtors"), filed the *Debtors' Motion for (I) an Order (A) Authorizing*

*and Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (B) Authorizing*

*and Approving the Debtors Entry Into and Assumption of the Stalking Horse Asset Purchase*

*Agreement, (C) Approving Notice Procedures, (D) Scheduling a Sale Hearing and (E) Approving*

*Procedures for Assumption and Assignment of Certain Contracts and Leases and Determining*

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011. Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

*Cure Amounts and (II) an Order (A) Authorizing the Sale of Substantially All of the Debtors Assets Free and Clear of All Claims, Liens, Rights, Interests And Encumbrances, (B) Approving the Asset Purchase Agreement and (C) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* [Docket No. 21] (the "Sale Motion"), seeking authorization and approval of sale and bidding procedures (the "Bidding Procedures") for substantially all of the Debtors' assets (the "Assets").

**PLEASE TAKE FURTHER NOTICE** that on July 8, 2016, the Bankruptcy Court entered the *Order (I) Authorizing and Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (II) Authorizing and Approving the Debtors Performance of Pre-Closing Obligations Under the Stalking Horse Asset Purchase Agreement, (III) Approving Notice Procedures, (IV) Scheduling a Sale Hearing and (V) Approving Procedures for Assumption and Assignment of Certain Contracts and Leases and Determining Cure Amounts* [Docket No. 82] (the "Bidding Procedures Order"),[2] granting certain relief requested by the Sale Motion as set forth therein.  Pursuant to the Bidding Procedures Order, the Auction was conducted on August 16, 2016, at the offices of Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036.

**PLEASE TAKE FURTHER NOTICE** that, at the conclusion of the Auction, in accordance with the Bidding Procedures Order, the Debtors, in consultation with the Committee, designated the bid from UniModa, LLC, a wholly-owned subsidiary of Univision Communications Inc. as the successful bid, notice of which was filed with the Bankruptcy Court that same day [Docket No. 182].

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Order (as defined herein).

58647566_5

**PLEASE TAKE FURTHER NOTICE** that on August 18, 2016, the Sale was approved at a hearing (the "Sale Hearing") held in the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that, on August 22, 2016, pursuant to the Court's approval of the Sale at the Sale Hearing, the Court entered the *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (II) Approving and Authorizing the Debtors' Entry Into the Asset Purchase Agreement and (III) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* [Docket No. 214] (the "Sale Order").  A copy of the Sale Order (without exhibits) is attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that you may obtain a complete copy of the Sale Order by accessing the website maintained by the Debtors' claims and noticing agent, Prime Clerk, at https://cases.primeclerk.com/gawker.

Dated: August 24, 2016
New York, New York

*/s/ Gregg M. Galardi*
ROPES & GRAY LLP
Gregg M. Galardi
Jonathan P. Gill
Jonathan M. Agudelo
Stacy A. Dasaro
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
gregg.galardi@ropesgray.com
jonathan.gill@ropesgray.com
jonathan.agudelo@ropesgray.com
stacy.dasaro@ropesgray.com

*Counsel to the Debtors*
*and Debtors in Possession*

## Exhibit A

**Sale Order**
**(without exhibits)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Gawker Media LLC, *et al.*,[1] | Case No. 16-11700 (SMB) |
| Debtors. | (Joint Administration Requested) |
| | **Re: Docket Nos. 21, 82** |

**ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS,
INTERESTS AND ENCUMBRANCES, (II) APPROVING AND AUTHORIZING THE
DEBTORS' ENTRY INTO THE ASSET PURCHASE AGREEMENT AND (III)
AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Upon the motion (the "Motion") of Gawker Media LLC, Gawker Media Group, Inc., and

Kinja Kft., the debtors and debtors in possession (collectively, the "Debtors"), for the entry of an

order, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the

"Bankruptcy Code"), and rules 1005, 2002, 6004, 6006, 9007, 9014 and 9019 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving and authorizing the

Debtors' assumption of the Asset Purchase Agreement by and between the Debtors and

UniModa, LLC (together with its permitted designees, successors and permitted assigns in

accordance with the APA, the "Buyer"), dated August 17, 2016 (substantially in the form

attached hereto as **Exhibit 1**, and as may be amended, modified or supplemented from time to

time in accordance with the terms thereof, the "APA"),[2] whereby the Debtors have agreed to sell,

---

[1]    The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).   The offices of Gawker Media and GMGI are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja's offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures or the APA, as applicable.

1

and Buyer has agreed to acquire, substantially all of the Debtors' assets (collectively, and as

specifically set forth and defined in the APA, the "Acquired Assets") other than the Excluded

Assets, and the Debtors have agreed to transfer and Buyer has agreed to assume certain of the

Debtors' liabilities (collectively, and as specifically set forth and defined in the APA, the

"Assumed Liabilities") (collectively, and including all actions taken or required to be taken in

connection with the implementation and consummation of the APA, the "Transactions");

(ii) authorizing and approving the sale of the Acquired Assets (the "Sale"), free and clear, to the

maximum extent permitted under section 363(f) of the Bankruptcy Code, of any and all interests,

including any Adverse Interests (as defined in Paragraph Q below) (other than Permitted Liens

and Assumed Liabilities), with all such Adverse Interests to attach to the proceeds of the Sale, in

the order of their priority, with the same validity, force and effect that they now have against the

Acquired Assets, subject with respect to such proceeds to any rights, claims and defenses the

Debtors or any parties in interest may possess with respect thereto; (iii) authorizing the

assumption and assignment to Buyer of certain executory contracts and unexpired leases of the

Debtors in accordance with the APA, the Bidding Procedures Order (as defined herein) and this

Order; and (iv) granting other relief; and the Court having entered an order approving the

bidding procedures and granting certain related relief on July 8, 2016 [Docket No. 82] (the

"Bidding Procedures Order"); and an auction (the "Auction") having been held on August 16,

2016 in accordance with the Bidding Procedures  Order; and Buyer having been deemed the

Successful Bidder by the Debtor, in consultation with the official committee of unsecured

creditors appointed in the Cases (the "Committee"), pursuant to the Bidding Procedures Order;

and the Court having conducted a hearing on the Motion on August 18, 2016 (the "Sale

Hearing") at which time all interested parties were offered an opportunity to be heard with

respect to the Motion; and the Court having reviewed and considered the Motion, declarations

and other evidence submitted in support thereof, the APA, the Bidding Procedures Order, the

record of the hearing before the Court on August 18, 2016; and having heard statements of

counsel and the evidence presented in support of the relief requested in the Motion at the Sale

Hearing; and due notice of the Motion, the APA, the Bidding Procedures Order and the Auction

having been provided; and having determined that the relief requested in the Motion is in the best

interests of the Debtors, their estates, their stakeholders and all other parties in interest; and the

Court having jurisdiction over this matter; and the legal and factual bases set forth in the Motion

and at the Sale Hearing establishing just cause for the relief granted herein; and after due

deliberation thereon,

**THE COURT HEREBY FINDS AS FOLLOWS:**

**Jurisdiction, Venue, Statutory Bases and Final Order**

A.      This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C.

§§ 157 and 1334.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may

enter a final order consistent with Article III of the United States Constitution. Venue of this

proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory and legal predicates for the relief requested in the Motion and

provided for herein are sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy

Rules 1005, 2002, 6004, 6006, 9007, 9014 and 9019.

**Notice of the Transactions, APA, Sale Hearing, Auction and the Cure Amounts**

D.      Actual written notice of the Sale Hearing, the Auction, the Motion and the Sale,

and a reasonable opportunity to object or be heard with respect to the Motion and the relief

requested therein, has been afforded to all known interested entities including to the following

3

parties: (i) the office of the United States Trustee for the Southern District of New York;

(ii) counsel to the Committee; (iii) parties who are known or reasonably believed to have

asserted any lien, encumbrance, claim or other interest in the Debtors' assets that are the subject

of the proposed sale of the Acquired Assets, if any; (iv) all parties who have filed a notice of

appearance and request for service of papers in the Cases pursuant to Bankruptcy Rule 2002;

(v) each of the Debtors' current landlords and each counterparty to the Debtors' Non-Residential

Leases and Other Executory Contracts (as defined in the APA); (vi) all applicable state and local

taxing authorities, including the Internal Revenue Service; (vii) each governmental agency that is

an interested party with respect to the sale of the Acquired Assets contemplated by the Stalking

Horse APA and the transactions proposed thereunder; (viii) the Securities and Exchange

Commission; and (ix) counsel to Buyer.

E.      The Debtors published notice of the time and place of the proposed Auction, the

time and place of the Sale Hearing and the time for filing an objection to the relief requested in

the Motion relating to the Sale in the United States edition of the *USA Today* on July 14, 2016.

F.      The foregoing notice was good, sufficient and appropriate under the

circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the

APA or the Transactions is required. The disclosures made by the Debtors concerning the APA,

the Auction, the Transactions and the Sale Hearing were good, complete and adequate.

G.      The Debtors have filed and served cure notices (the "Cure Notices") upon all non-

Debtor counterparties to all Non-Residential Leases and Other Executory Contracts notifying

such parties: (i) that the Debtors may seek to assume and assign such Leases and Contracts on

the Closing Date of the Sale as provided in the APA and (ii) of the Debtors' good faith estimates

of the cure amounts required in connection with such Lease or Contract.  The Debtors will also

4

file and serve an Assumption Notice upon the non-Debtor counterparties to the Contracts listed

on the Closing Designated Contract List, and the Debtors will file and serve, in accordance with

the Post-Closing Assumption and Assignment Procedures set forth herein, Post-Closing

Designation Notices upon the non-Debtor counterparties to the Non-Residential Leases and

Other Executory Contracts that Buyer designates for assumption and assignment.  The service of

the Cure and Assumption Notices and the service of the Post-Closing Designation Notices in

such manner will be good, sufficient and appropriate under the circumstances, and no further

notice is required.

### Highest and Best Offer

H.      As demonstrated by the evidence proffered or adduced at the Sale Hearing and the

representations of counsel made on the record at the Sale Hearing, the Debtors conducted a

marketing process in accordance with, and have otherwise complied in all material respects with,

the Bidding Procedures Order, and the Acquired Assets were adequately marketed by the

Debtors.  All interested persons and entities have been afforded a full, fair and reasonable

opportunity to (i) conduct due diligence investigations, (ii) submit higher or otherwise better bids

to purchase the assets of the Debtors and (iii) object and be heard in connection with the Sale

Motion and the relief granted by this Order.  The Auction contemplated by the Bidding

Procedures was held on August 16, 2016. At the conclusion of the Auction, Buyer was selected

by the Debtors, in consultation with the Committee, as the Successful Bidder.

I.      The consideration provided by Buyer under the APA constitutes or provides the

highest or otherwise best offer and provides fair and reasonable consideration to the Debtors for

the sale of all Acquired Assets and the assumption of all Assumed Liabilities, and the

performance of the other covenants set forth in the APA will provide a greater recovery for the

Debtors' estates than would be provided by any other available alternative.  Buyer is the

5

Successful Bidder for the Acquired Assets in accordance with the Bidding Procedures Order.

The Debtors' determination that the APA constitutes the highest or otherwise best offer for the

Acquired Assets is a valid and sound exercise of the Debtors' business judgment consistent with

their fiduciary duties. ~~Buyer has complied in all respects with the Bidding Procedures Order and~~

~~any other applicable order of this Court in negotiating and entering into the APA. The Sale and~~

~~APA likewise comply with the Bidding Procedures Order and all other applicable orders of this~~

~~Court.~~  **[SMB: 8/22/16]**

     J.     Entry of an order approving the APA and all the provisions thereof is a necessary

condition precedent to Buyer's consummation of the Transactions.

<u>**Good Faith of Buyer and Arms' Length Sale**</u>

     K.     Buyer is entering into the Transactions in good faith and is a good faith purchaser

within the meaning of section 363(m) of the Bankruptcy Code ~~and the court decisions~~

~~thereunder, and is therefore entitled to the full protection of that provision with respect to all~~

~~aspects of the transactions contemplated by the APA, including the acquisition of the Acquired~~

~~Assets, and otherwise has proceeded in good faith in all respects in connection with this~~

~~proceeding~~.  Neither the Sellers nor Buyer has engaged in any conduct that would cause or

permit the Transactions to be avoided or result in the imposition of any costs or damages under

section 363(n) of the Bankruptcy Code.  Specifically, Buyer has not acted in a collusive manner

with any person and the Purchase Price was not controlled by any agreement among the bidders.

In addition, none of Buyer or its respective affiliates, present or contemplated members, officers,

directors, partners, shareholders or any of their respective heirs, successors and assigns is an

"insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy

Code.  **[SMB: 8/22/16]**

L.      In accordance with section 365 of the Bankruptcy Code, including sections
365(b)(1) and 365(f)(2) of Bankruptcy Code, the Debtors have shown that Buyer has the
wherewithal, financial and otherwise, to perform all of its obligations under the APA.

### No Fraudulent Transfer

M.      The consideration provided by Buyer pursuant to the APA for its purchase of the
Acquired Assets, the assumption of the Assumed Liabilities and the performance of the
covenants contained in the APA constitute reasonably equivalent value and fair consideration
under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent
Transfer Act, the Uniform Voidable Transactions Act, and under the laws of the United States,
any state, territory, possession thereof or the District of Columbia.

N.      There has been no showing that any of the Debtors or Buyer (i) has entered into
the APA or proposes to consummate the Transactions for the purpose of hindering, delaying or
defrauding the Debtors' present or future creditors or (ii) is entering into the APA or proposing
to consummate the Transactions fraudulently, for the purpose of statutory or common law
fraudulent conveyance and fraudulent transfer claims, whether under the Bankruptcy Code or
under the laws of the United States, any state, territory, possession thereof or the District of
Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

### Successor Liability Matters

O.      By virtue of the consummation of the Transactions contemplated by the APA, (i)
Buyer is not a continuation of the Debtors or their respective estates, there is no continuity
between Buyer and the Debtors, there is no common identity between the Debtors and Buyer,
there is no continuity of enterprise between the Debtors and Buyer, and Buyer is not a mere
continuation of the Debtors or their estates, (ii) ~~Buyer is not holding itself out to the public as a
continuation of the Debtors or their respective estates~~ and (iii) the Transactions do not amount to

7

a consolidation, merger or *de facto* of Buyer and the Debtors and/or the Debtors' estates.

Accordingly, Buyer is not and shall not be deemed a successor to Seller as a result of the

consummation of the Transactions contemplated by the APA.  **[SMB: 8/22/16]**

**Validity of Transfer**

P.        Each Debtor's Board of Directors or equivalent and Buyer have authorized the

execution and delivery of the APA and the Transactions. The Debtors and Buyer (i) have full

corporate power and authority to execute and deliver the APA and all other documents

contemplated thereby, as applicable, (ii) have all of the power and authority necessary to

consummate the Transactions and (iii) have taken all action necessary to authorize and approve

the APA and to consummate the Transactions, and no further consents or approvals are required

for the Debtors or Buyer to consummate the Transactions contemplated by the APA, except as

otherwise set forth therein.

~~Q.        Buyer shall have no obligations with respect to any (a) Liens of any other kind,~~

~~(b) debts and claims (as that term is defined in section 101(5) of the Bankruptcy Code), including~~

~~all claims and causes of action of defamation, libel or slander with respect to any content~~

~~published by the Debtors prior to Closing, and (c) Liabilities, obligations, costs, expenses, causes~~

~~of action, avoidance actions, demands, guaranties, options, rights, contractual commitments,~~

~~settlements, injunctions, restrictions, encumbrances, reclamation rights, and similar matters of~~

~~any kind whatsoever, whether known or unknown, fixed or contingent, or arising prior to or~~

~~subsequent to the commencement of these chapter 11 cases (the "Cases"), and whether imposed~~

~~by agreement, understanding, law, equity or otherwise (each of the foregoing collectively or~~

~~individually, and including, to the extent not already specified above, Successor or Transferee~~

~~Liability (as defined in Paragraph 19 below), the "Adverse Interests") against or in respect of any~~

8

of the Debtors or their assets, including the Acquired Assets (other than Permitted Liens and

Assumed Liabilities).[SMB: 8/22/16]

R.       The Acquired Assets constitute property of the Debtors' estates and title thereto is

presently vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy

Code.

<u>**Section 363 Is Satisfied**</u>

S.       Entry into the APA and consummation of the Transactions contemplated thereby

constitute a valid and sound exercise of the Debtors' business judgment consistent with their

fiduciary duties and such acts are in the best interests of the Debtors, their respective creditors,

their estates and other parties in interest.  The Debtors have demonstrated both (i) good,

sufficient and sound business reasons and justifications and (ii) compelling circumstances for the

sale of the Acquired Assets to Buyer pursuant to section 363(b) of the Bankruptcy Code prior to,

and outside of, a plan of reorganization.  Such business reasons include the facts that (i) there is

substantial risk of deterioration of the value of the Acquired Assets if the Transactions are not

consummated quickly; (ii) the APA constitutes the highest and best offer for the Acquired

Assets; (iii) the APA and the consummation of the Transactions contemplated thereby present

the best opportunity to realize the value of the Acquired Assets and avoid decline and

devaluation of the Acquired Assets; and (iv) unless the sale of the Acquired Assets is

consummated expeditiously as provided for in the Motion and pursuant to the APA, creditors'

recoveries may be diminished.

T.       The **price at which the Acquired Assets are being sold is greater than the**

**aggregate value of all liens on the Acquired Assets.** Debtors may sell and assign the Acquired

Assets free and clear of all Adverse Interests (other than Permitted Liens and Assumed

Liabilities) because, with respect to each creditor asserting an Adverse Interest, one or more of

9

the standards set forth in sections 363(f)(3) of the Bankruptcy Code has been satisfied.  All

holders of Adverse Interests are adequately protected—thus satisfying section 363(e) of the

Bankruptcy Code—by having their Adverse Interests, if any, attach to the proceeds of the Sale,

in the same order of priority and with the same validity, force and effect that such Adverse

Interest holder had before the Sale, subject to any rights, claims and defenses of the Debtors or

their estates, as applicable, or as otherwise provided herein. {SMB: 8/22/16}

U.      Buyer would not have entered into the APA and would not consummate the sale

of all Acquired Assets, thus adversely affecting the Debtors, their estates, creditors, employees

and other parties in interest, if the sale of the Acquired Assets was not free and clear of all

Adverse Interests (other than Permitted Liens and Assumed Liabilities).  A sale of the Acquired

Assets, other than one free and clear of all Adverse Interests, would yield substantially less value

for the Debtors' estates, with less certainty than the Sale.

### Assumption and Assignment of the Designated Contracts

V.      The assumption and assignment of the Designated Contracts pursuant to the terms

of the Bidding Procedures Order, this Order and the APA are integral to the APA, are in the best

interests of the Debtors, their respective creditors, their estates and other parties in interest, and

represent the reasonable exercise of sound and prudent business judgment by the Debtors.

W.      The Debtors have met all requirements of section 365(b) of the Bankruptcy Code

for each of the Designated Contracts. The Debtors and/or Buyer, as applicable under the APA,

have (i) cured and/or provided adequate assurance of cure of any default existing prior to the date

of the Closing under all of the Designated Contracts, within the meaning of section 365(b)(1)(A)

of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation

to any counterparty for actual pecuniary loss to such party resulting from a default existing prior

to the date of the Closing under any of the Designated Contracts, within the meaning of section

10

365(b)(1)(B) of the Bankruptcy Code. ~~The assumption and assignment to Buyer of each of the Designated Contracts shall be free and clear of all Adverse Interests (other than Permitted Liens and Assumed Liabilities).~~[SMB: 8/22/16]

X.       Buyer has provided adequate assurance of its future performance under the relevant Designated Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. ~~Pursuant to section 365(f) of the Bankruptcy Code, the Designated Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, Buyer, notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.~~ {SMB: 8/22/16]

Y.       No default exists in the Debtors' performance under the Designated Contracts as of the date of the Closing other than the failure to pay Cure Amounts or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

### Compelling Circumstances for a Sale

Z.       To maximize the value of the Debtors' assets, it is critical that the Transactions close within the time constraints set forth in the APA.

AA.      The consummation of the Sale are necessary both to preserve and maximize the value of the Debtors' assets for the benefit of the Debtors, their estates, their creditors and all other parties in interest in the Cases, and to provide the means for the Debtors to maximize creditor recoveries.

BB.      The transactions contemplated by the APA and this Order neither impermissibly restructure the rights of any Debtor's creditors or equity holders nor impermissibly dictate the terms of a chapter 11 plan for any Debtor, and therefore, do not constitute a *sub rosa* chapter 11 plan.

11

CC.     Nothing in the APA creates any third party beneficiary rights in any person or entity not a party to the APA.

**NOW THEREFORE, ITS IS HEREBY ORDERED THAT:**

<u>General Provisions</u>

1.      The Motion is granted and approved to the extent set forth herein.

2.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court prior to the date hereof or as resolved in this Order, and all reservations of rights included therein, are withdrawn; provided that 114 Fifth Owner LP reserves its rights to object to the assumption and assignment of the lease between 114 Fifth Owner LP and Gawker Media to the Buyer, as set forth in the *Limited Objection and Reservation of Rights of 114 Fifth Owner LP to Debtors' Proposed Assumption and Assignment of 114 Fifth Avenue Lease* [Docket No. 175].  All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

3.      Findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures hearing held on July 7, 2016, are incorporated herein by reference.

4.      Where appropriate herein, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact.

<u>Approval and Assumption of the APA</u>

5.      The APA and all of the Transactions contemplated therein are approved. The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the

12

APA be authorized and approved in its entirety, with such amendments thereto as may be made

by the parties in accordance with this Order.

6.      The Debtors are authorized to (i) execute and consummate the APA (including,

for the avoidance of doubt, the agreements with respect to the Escrow Account set forth in the

APA), together with any and all instruments and documents that may be reasonably necessary to

implement the APA and to fully close the Transactions, including the sale to Buyer of all

Acquired Assets, in accordance with the terms and conditions set forth in the APA and this

Order; (ii) take any and all actions as may be necessary or appropriate to the performance of the

Debtors' obligations as contemplated by the APA and this Order, without any further corporate

action or order of this Court; and (iii) assume and assign any and all Designated Contracts as and

when provided in the APA.

7.      The consummation of the Sale and Transactions is legal, valid and properly

authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a),

363(b), 363(f), 363(m), 363(n), 365(b)(1) and 365(f)(2) of the Bankruptcy Code, and with

respect to the Designated Contracts (defined below), all of the applicable requirements of such

sections have been or will be complied with in respect of the Transactions as of the effective date

of assignment.

8.      ~~The sale of the Acquired Assets to Buyer will be, as of the Closing Date or such~~

~~later date as such Acquired Assets are transferred under the APA, a legal, valid and effective~~

~~transfer of such assets, and each transfer and assignment vests or will vest Buyer with all right,~~

~~title and interest of the Debtors to the Acquired Assets free and clear of all Adverse Interests~~

~~(other than Permitted Liens and Assumed Liabilities).~~**[SMB: 8/22/16]**

13

9.      Buyer has no obligation to proceed with the Closing unless and until all conditions precedent to its obligations to do so, as set forth in the APA, have been met, satisfied or waived in accordance with the terms of the APA.

10.     The Debtors are hereby authorized and directed, after consultation with the Committee, to instruct the Escrow Agent to (i) hold the Deposit in accordance with the APA and (ii) release and deliver the Deposit pursuant to the terms of the APA.

## Sale and Transfer Free and Clear of Adverse Interests

11.     Upon Closing (or thereafter as of the filing of a Post-Closing Designation Notice with respect to any Designated Contract, subject to the Post-Closing Assumption and Assignment Procedures[3] described herein), all of the Debtors' legal, equitable and beneficial right, title and interest in and to, and possession of, the Acquired Assets shall be immediately vested in Buyer pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code free and clear of Adverse Interests (other than Permitted Liens and Assumed Liabilities), with all Adverse Interests to attach to the proceeds of the Sale, in the order of their priority, with the same validity, force and effect that they now have against the Acquired Assets (subject with respect to such proceeds to any rights, claims and defenses the Debtors or any parties in interest may possess with respect thereto).  Such transfer shall constitute a legal, valid, binding and effective transfer of such Acquired Assets and shall vest Buyer with good and marketable title to the Acquired Assets.

12.     The holders of claims related solely to the Permitted Liens and Assumed Liabilities shall have the right to seek payment directly from Buyer on account of the Permitted Liens and Assumed Liabilities; *provided*, *however*, that Buyer reserves any and all rights,

---

[3]     The "*Post-Closing Assumption and Assignment Procedures*" shall mean those procedures for assumption and assignment of Non-Residential Leases and Other Executory Contracts described in Paragraphs 31–35 of this Order.

14

defenses or objections with regard to such Permitted Liens and Assumed Liabilities, including

Buyer's rights hereunder and under the APA.

13.     This Order is and shall be binding upon entities, including all filing agents, filing

officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of

deeds, registrars of patents, trademarks or other intellectual property, administrative agencies,

governmental departments, secretaries of state, federal and local officials and all other persons

and entities who may be required by operation of law, the duties of their office or contract, to

accept, file, register or otherwise record or release any documents or instruments, or who may be

required to report or insure any title or state of title in or to any lease; and each of the foregoing

persons and entities shall accept for filing following the payment of any filing fees any and all of

the documents and instruments necessary and appropriate to consummate the Transactions.

14.     Except with respect to the Assumed Liabilities, all persons and entities (and their

respective successors and assigns), including all Governmental Units (as defined in section

101(27) and 101(41) of the Bankruptcy Code), debt security holders, equity security holders,

affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees,

trade creditors, litigation claimants and other creditors holding Adverse Interests arising under or

out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the

ownership, sale or operation of the Acquired Assets and the business prior to the Closing or the

transfer of Acquired Assets to Buyer (whether prior to the Closing or thereafter as of the filing of

a Post-Closing Designation Notice for any Designated Contract, subject to the Post-Closing

Assumption and Assignment Procedures described herein), are hereby forever barred, estopped

and permanently enjoined from asserting such Adverse Interests (other than Permitted Liens and

Assumed Liabilities) against Buyer, its property or the Acquired Assets.  Following the Closing

(or thereafter as of the filing of a Post-Closing Designation Notice for any Designated Contract, subject to the Post-Closing Assumption and Assignment Procedures described herein), no holder of any Adverse Interest shall interfere with Buyer's title to or use and enjoyment of the Acquired Assets based on or related to any such Adverse Interest (other than Permitted Liens and Assumed Liabilities), or based on any action the Debtors may take in the Cases.  All persons or entities, presently or on or after the Closing, in possession of some or all of the Acquired Assets shall surrender possession of the Acquired Assets to Buyer or its respective designees.

~~15.~~    If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Adverse Interests (other than Permitted Liens and Assumed Liabilities) against or in the Acquired Assets shall not have delivered to the Debtors prior to the Closing of the Transactions in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all Adverse Interests (other than Permitted Liens and Assumed Liabilities) that the person or entity has with respect to such Acquired Assets, then only with regard to the Acquired Assets that are purchased by Buyer pursuant to the APA and this Order, (i) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Acquired Assets, and (ii) Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Adverse Interests (other than Permitted Liens and Assumed Liabilities) against Buyer and the applicable Acquired Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office. ~~For the avoidance of doubt, only Acquired Assets that are part of~~

16

~~the estates of the Debtors are being sold to Buyer free and clear of Adverse Interests (other than~~

~~Permitted Liens and Assumed Liabilities) pursuant to section 363(f) of the Bankruptcy~~

~~Code.~~**[SMB: 8/22/16]**

16.    To the extent permitted under applicable law, Buyer shall be authorized, as of the

Closing Date, to operate under any license, permit, registration and any other governmental

authorization or approval of the Debtors with respect to the Acquired Assets and the Non-

Residential Leases and Other Executory Contracts, and all such licenses, permits, registrations

and governmental authorizations and approvals are deemed to have been, and hereby are

transferred to Buyer as of the Closing Date.

17.    To the extent provided by section 525 of the Bankruptcy Code, no governmental

unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets

sold, transferred or conveyed to Buyer on account of the filing or pendency of the Cases.

<u>**No Successor or Transferee Liability**</u>

18.    Buyer is not and shall not be deemed, as a result of the consummation of the

Transactions, to:  (i) be a legal successor, or otherwise be deemed a successor to the Debtors

(other than, for Buyer, with respect to any obligations arising after the Closing as an assignee

under Assumed Contracts); (ii) have, *de facto* or otherwise, merged with or into the Debtors; or

(iii) be an alter ego or a mere continuation or substantial continuation or successor of the

Debtors in any respect.

19.    Except as expressly provided in the APA with respect to Assumed Liabilities,

Buyer shall have no liability whatsoever with respect to the Debtors' (or their predecessors or

affiliates) respective businesses or operations or any of the Debtors' (or their predecessors' or

affiliates') obligations (as described below, "<u>Successor or Transferee Liability</u>") based, in whole

or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or

character, or based upon any theory of labor law, employment law, the Employment Retirement

Income Security Act of 1974 and benefits law, antitrust, environmental, successor or transferee

liability, *de facto* merger or substantial continuity, labor and employment or products liability,

whether known or unknown as of the Closing, now existing or hereafter arising, asserted or

unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-

monetary obligations on account of any settlement or injunction, or any taxes arising, accruing or

payable under, out of, in connection with, or in any way relating to the operation of the Acquired

Assets or the Business prior to the Closing or such later time as Buyer is assigned and assumes

any Assumed Contract.  Except to the extent expressly included in the Assumed Liabilities or

otherwise provided for in the APA with respect to WARN liabilities, Buyer shall have no

liability or obligation under the WARN Act (29 U.S.C. §§ 2101 et seq.) or the Comprehensive

Environmental Response Compensation and Liability Act or any foreign, federal, state or local

labor, employment or environmental law whether of similar import or otherwise by virtue of

Buyer's purchase of the Acquired Assets or assumption of the Assumed Liabilities.  **Nothing**

**herein relieve the Buyer of any obligations imposed pursuant to a governmental unit's**

**police or regulatory powers on the owner or operator of property.  [SMB: 8/22/16]**

20.     Except as expressly provided in the APA with respect to the Assumed Liabilities,

nothing in this Order or the APA shall require Buyer to (i) continue or maintain in effect, or

assume any liability in respect of any employee, pension, welfare, fringe benefit or any other

benefit plan, trust arrangement or other agreements to which the Debtors are a party or have any

responsibility therefor including medical, welfare and pension benefits payable after retirement

or other termination of employment, or (ii) assume any responsibility as a fiduciary, plan sponsor

or otherwise, for making any contribution to, or in respect of the funding, investment or

administration of any employee benefit plan, arrangement or agreement (including but not

limited to pension plans) or the termination of any such plan, arrangement or agreement.

21.     All persons and entities are prohibited and enjoined from taking any action that

would adversely affect or interfere with, or which would be inconsistent with, the ability of the

Debtors to transfer the Acquired Assets to Buyer in accordance with the APA and this Order.

Effective upon the Closing, all persons and entities are forever prohibited and enjoined from

commencing or continuing in any matter any action or other proceeding, whether in law or

equity, in any judicial, administrative, arbitral or other proceeding against Buyer, or its assets

(including the Acquired Assets), or its successors and assigns, with respect to any (i) Adverse

Interest (other than Permitted Liens and Assumed Liabilities) or (ii) Successor or Transferee

Liability including the following actions with respect to clauses (i) and (ii): (a) commencing or

continuing any action or other proceeding pending or threatened; (b) enforcing, attaching,

collecting or recovering in any manner any judgment, award, decree or order; (c) creating,

perfecting or enforcing any Adverse Interest (other than Permitted Liens and Assumed

Liabilities); (d) asserting any setoff, right of subrogation or recoupment of any kind;

(e) commencing or continuing any action, in any manner or place, that does not comply with, or

is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements

or actions contemplated or taken in respect hereof; or (f) revoking, terminating or failing or

refusing to renew any license, permit or authorization to operate any of the Acquired Assets or

conduct any of the businesses operated with such assets, except as may be permitted by such

license, permit or authorization.

**Good Faith of Buyer**

22.    ~~Buyer has acted without collusion, in good faith, undertaking the Sale and Transactions contemplated by the APA (including the assumption and assignment of the Designated Contracts).~~ **[SMB: 8/22/16]**

23.    Buyer is entitled to all the protections and immunities of section 363(m) of the Bankruptcy Code.  ~~There has been no showing that the Debtors or Buyer engaged in any action or inaction that would cause or permit the Transactions to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.~~ **[SMB: 8/16/16]**

**Assumption and Assignment of Designated Contracts**

24.    Before the Sale Hearing, in accordance with and pursuant to Section 2.7 of the APA, Buyer provided to the Debtors a Closing Designated Contract List designating certain Non-Residential Leases and Other Executory Contracts for assumption by the Debtors and assignment to Buyer as of the Closing Date.  Within three (3) Business Days following the entry of this Order, the Debtors will file and serve by first class mail on all non-Debtor counterparties to the Non-Residential Leases and Other Executory Contracts included on the Closing Designated Contract List an Assumption Notice with respect to the Contracts listed on the Closing Designated Contract List and such notice will be good, sufficient and appropriate under the circumstances, and no further notice of the Closing Designated Contract List is required.

25.    Pursuant to Section 2.7 of the APA, from and after the Closing Date through the Designation Deadline,[4] Buyer shall provide written notice to the Debtors and the Debtors shall provide such notice to the affected counterparties within one (1) Business Day of receipt of such notice from Buyer designating any additional Non-Residential Leases and Other Executory

---

[4]    Designation Deadline is defined in the APA to mean 5:00 p.m. (prevailing Eastern time) on the date that is thirty (30) days from the Closing Date (or such longer period as may be agreed between Buyer and the counterparty of the applicable Contract).

Contracts for assumption by the Debtors and assignment to Buyer (the "Post-Closing

Designation Notice").

26.     The Debtors are authorized at the Closing (or thereafter as of the filing of a Post-

Closing Designation Notice for any Designated Contract) to assume and assign each of the

Designated Contracts in accordance with the APA and this Order to Buyer free and clear of all

Adverse Interests (other than Permitted Liens and Assumed Liabilities) pursuant to sections

105(a), 363 and 365 of the Bankruptcy Code **to the extent permitted by bankruptcy law** and to

execute and deliver to Buyer such documents or other instruments as may be necessary to assign

and transfer the Designated Contracts to Buyer. The payment of the applicable Cure Amounts by

Buyer shall (i) effect a cure of all defaults existing thereunder as of the Closing (or thereafter for

any Designated Contract that is assumed and assigned post-Closing, subject to the Post-Closing

Assumption and Assignment Procedures described herein), (ii) compensate for any actual

pecuniary loss to such non-Debtor counterparty resulting from such default and (iii) together

with the assumption of the Designated Contracts by the Debtors and the assignment of such

Designated Contracts to Buyer, constitute adequate assurance of future performance thereof.  For

purposes of this Order, "Cure Amounts" shall mean the applicable Cure Amounts on the Closing

Designated Contract List set forth on **Exhibit 2** attached hereto, or such other Cure Amounts as

agreed, in writing, by the Debtors, Buyer and the counterparty to the applicable Designated

Contract.  Subject to the Post-Closing Assumption and Assignment Procedures described herein

for any Designated Contract that is assumed and assigned post-Closing, the counterparties to the

Designated Contracts are forever bound by the applicable Cure Amounts and, upon payment of

such Cure Amounts as provided for herein, are hereby enjoined from taking any action against

21

Buyer or the Acquired Assets with respect to any claim for cure under the applicable Designated

Contracts.

27.        Any provision in any Designated Contract (including any Designated Contract

that becomes such post-Closing subject to the Post-Closing Assumption and Assignment

Procedures described herein) that prohibits or conditions the assignment of such Designated

Contract or allows the counterparty to such Designated Contract to terminate, recapture, impose

any penalty, condition on renewal or extension or modify any term or condition upon the

assignment of such Designated Contract, constitute unenforceable anti-assignment provisions

that are void and of no force and effect with respect to the Debtors' assumption and assignment

of such Designated Contracts in accordance with the APA but will be effective and binding upon

Buyer with respect to any purported assignment for the remaining term of such Designated

Contract.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy

Code for the assumption by the Debtors and assignment to Buyer of the Designated Contracts

have been satisfied.  Upon the Closing or such later time as is provided in the APA with respect

to the assumption and assignment of any Designated Contract, in accordance with sections 363

and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested with all right, title

and interest of the Debtors under the Designated Contracts, and such Designated Contracts shall

remain in full force and effect for the benefit of Buyer.

28.        Each non-Debtor counterparty to the Designated Contracts shall be forever

barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Buyer or

their respective property any assignment fee, acceleration, default, breach or claim or pecuniary

loss, or condition to assignment existing, arising or accruing as of the Closing (or thereafter as of

the filing of a Post-Closing Designation Notice for those that arise post-Closing and are not

22

barred by this Order with respect to any Designated Contract that is assumed and assigned post-Closing) or arising by reason of the Closing or the transfer of the Acquired Assets, including any breach related to or arising out of change-in-control in such Designated Contracts, or any purported written or oral modification to the Designated Contracts and (ii) asserting against Buyer (or its property, including the Acquired Assets) any claim, counterclaim, breach, or condition asserted or assertable against the Debtors existing as of the Closing (or thereafter as of the filing of a Post-Closing Designation Notice for those that arise post-Closing and are not barred by this Order with respect to any Designated Contract that is assumed and assigned post-Closing) or arising by reason of the transfer of the Acquired Assets, except for the Assumed Liabilities.  In addition, without relieving Buyer of its obligations under the APA, nothing in the Order, the Motion or the APA shall affect the Debtors' obligations under section 365(d)(3) of the Bankruptcy Code (or Buyer's assumption thereof) prior to the assumption and assignment or rejection of any Designated Contracts.

29.     Upon the Closing (or thereafter as of the filing of a Post-Closing Designation Notice for any Designated Contract), Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Designated Contracts and shall pay all outstanding undisputed Cure Amounts with respect thereto, and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Designated Contracts from and after such assignment. There shall be no assignment fees, increases or any other fees charged to Buyer or the Debtors as a result of the assumption and assignment of the Designated Contracts.

30.     ~~Buyer has provided adequate assurance of future performance under the Designated Contracts (including any Designated Contract that becomes such post-Closing)~~

~~within the meaning of sections 365(b)(1)(c), 365(b)(3) (to the extent applicable) and 365(f)(2)(B)~~

~~of the Bankruptcy Code.~~ [SMB: 8/22/16]

### **Post-Closing Assumption and Assignment Procedures**

31.     In the case of any Non-Residential Leases and Other Executory Contracts that the

Debtors seek to assume and assign from and after the Closing Date pursuant to Section 2.7 of the

APA, within one (1) Business Day following receipt of a notification by Buyer that a Non-

Residential Lease or Other Executory Contract is designated for assumption and assignment, the

Debtors shall file with the Court a Post-Closing Designation Notice of the Debtors' proposed

assumption and assignment of such Non-Residential Lease or Other Executory Contract,

substantially in the form attached hereto as **Exhibit 3**.  The assumption and assignment of each

such Non-Residential Lease or Other Executory Contract shall be effective as of the date of the

filing of the applicable Post-Closing Designation Notice without any further order of the Court,

with objections to the applicable cure amount, if any, to be resolved thereafter as set forth below.

32.     The Debtors will serve such Post-Closing Designation Notice via first class mail

on each of the following parties (the "Post-Closing Designation Notice Parties"): (i) each

counterparty to any Non-Residential Lease or Other Executory Contract (and their counsel, if

known) to be assumed or assigned by the Debtors, (ii) the Office of the United States Trustee,

(iii) counsel to the Committee, and (iv) counsel to Buyer.

33.     The Post-Closing Designation Notice will set forth the following information, to

the best of the Debtors' knowledge: (i) a description of the Non-Residential Lease or Other

Executory Contract that the Debtors are assuming and assigning, (ii) the name and address of the

affected counterparties (and their counsel, if known), (iii) a description of the deadlines and

procedures for filing objections to the Post-Closing Designation Notice (as set forth below), and

(iv) the proposed cure amounts that arise solely following the Closing and have not otherwise been paid in the ordinary course.

34.     Each counterparty to a Non-Residential Lease or Other Executory Contract listed on a Post-Closing Designation Notice may object to such Post-Closing Designation Notice solely with respect to the cure amount contained therein with respect to such counterparty's Non-Residential Lease or Other Executory Contract, and only to the extent such objection could not have been raised prior to the Closing.  Any such objection must be in writing and filed and served so that such objection is filed with this Court and actually received by the Debtors and the Post-Closing Designation Notice Parties no later than ten (10) days after the date the Debtors served the applicable Post-Closing Designation Notice.

35.     If no timely permitted objection is filed and served with respect to the Post-Closing Designation Notice, any non-Debtor party to such Non-Residential Lease or Other Executory Contract shall be deemed to have consented to the cure amount set forth in such Post-Closing Designation Notice.  If a timely permitted objection is properly filed and served on the Post-Closing Designation Notice Parties in the manner specified above, unless the parties agree otherwise in writing, a hearing will be scheduled to consider that objection.

## Other Provisions

36.     Other than in the Ordinary Course of Business, the Debtors shall not consent or agree to the allowance of any claim to the extent it would constitute a Permitted Lien or Assumed Liability without the prior written consent of Buyer.  Buyer shall have standing in the Cases to object to the validity, amount, or priority of any claim against the Debtors to the extent it would otherwise constitute a Permitted Lien or Assumed Liability, and the Court will retain the right to hear and determine such objections.

37.    Effective upon the Closing ~~and to the greatest extent allowed by applicable law~~,
the Debtors, on behalf of themselves and, **to the extent they have authority, on behalf of** their
respective past, present and future subsidiaries, parents, divisions, affiliates, agents,
representatives, insurers, attorneys, successors and assigns (collectively, the "Debtor Releasing
Parties"), hereby release, remise, acquit and forever discharge Buyer and its past, present and
future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys,
successors and assigns, and each of its and their respective directors, managers, officers,
employees, shareholders, members, agents, representatives, attorneys, contractors,
subcontractors, independent contractors, owners, insurance companies and partners (except, in
each case, the Debtor Releasing Parties) (collectively, in their capacities as parties being released
pursuant to this Paragraph 37, the "Buyer Released Parties"), from any and all claims, contracts,
demands, causes of action, disputes, controversies, suits, cross-claims, torts, losses, attorneys'
fees and expenses, obligations, agreements, covenants, damages, liabilities, costs and expenses,
whether known or unknown, whether anticipated or unanticipated, whether claimed or suspected,
whether fixed or contingent, whether yet accrued or not, whether damage has resulted or not,
whether at law or in equity, whether arising out of agreement or imposed by statute or common
law of any kind, nature, or description, including, without limitation as to any of the foregoing,
any claim by way of indemnity or contribution, which any Debtor Releasing Party has, may have
had or may hereafter assert against any Buyer Released Party arising from or related in any way,
either directly or indirectly, to the negotiation, documentation, performance or consummation of
the APA, any Related Agreements or any other agreements entered into in connection with the
transactions contemplated thereby; *provided*, *however*, that the foregoing release shall not apply
to the Debtors' rights or Buyer's obligations under this Order or the APA (including Section 6.9

26

of the APA), any Related Agreements and/or any other agreements entered into in connection

with the transactions contemplated hereby or thereby.  **Nothing herein shall be deemed to**

**release and non-derivative, direct claims.  [SMB: 8/22/16]**

38.    Subject to the terms of the APA, the APA and any related agreements may be

waived, modified, amended or supplemented by agreement of the Debtors and Buyer, in

consultation with counsel to the Committee, without further action or order of the Bankruptcy

Court if it does not have a material adverse effect on the Debtors' estates.  Any material

modification, waiver, amendment or supplement to the APA must be approved by order of the

Bankruptcy Court.

39.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby

modified with respect to the Debtors to the extent necessary, without further order of this Court,

to allow Buyer to deliver any notice provided for in the APA and allow Buyer to take any and all

actions permitted or required under the APA in accordance with the terms and conditions

thereof. Buyer shall not be required to seek or obtain any further relief from the automatic stay

under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any

other sale-related document.

40.    Neither the Debtors nor any of their Affiliates shall use, license or permit any

third party to use, any name, slogan, logo or trademark which is confusingly or deceptively

similar to any of the names, trademarks or service marks included in the Intellectual Property

included in the Acquired Assets, and each Debtor is directed to change its corporate name to a

name which (i) does not use the name "Gawker", "Gizmodo", "Kotaku", "Jalopnik",

"LifeHacker", "Deadspin", "Jezebel", "Kinja" or any other name that is a trademark of the

Debtors acquired by Buyer or references or reflects any of the foregoing in any manner

27

whatsoever, (ii) is otherwise substantially dissimilar to its present name and (iii) is approved in writing by Buyer.

41.    In connection with the Closing, the Debtors are authorized and directed to take such steps as necessary to hold any sale proceeds remaining after making payments required to be made under the Debtor in Possession financing or otherwise in connection with the Closing in a separate segregated account, and, without waiving or limiting the requirements under 363 of the Bankruptcy Code, are further authorized take such other and necessary steps to consummate the transactions contemplated by the APA, preserve the value of the Debtors' remaining assets, including but not limited to, obtaining insurance coverage consistent with coverage in existence prior to the Closing, including coverage for the remaining assets, the post-closing operations of the Debtors and the directors and officers of the Debtors (including tail coverage). No later than 14 days following the Closing, the Debtors will provide the Committee with a budget for post-closing operations (the "Post-Closing Budget"), which Post-Closing Budget shall be in substantially the same form as to the level of detail and categories, to the extent applicable, as the debtor in possession financing budget provided to the Committee prior to the Closing. The Committee reserves all rights with respect to objections to the Post-Closing Budget and the expenditures set forth therein.

42.    If and to the extent that any privileged information or work product is transferred to Buyer beyond as provided in the APA, such transfer shall be deemed inadvertent and shall not constitute a waiver of the privilege or other protection.  If Buyer is notified by the Debtors of an inadvertent transfer of privileged or other protected information, Buyer shall take all commercially reasonable steps to return or destroy the inadvertently transferred information as requested by the Debtors.

43.     Any allocation to be performed pursuant to the terms of Section 2.10 of the APA shall be for tax purposes only and shall not be binding on the Debtors in any other way, and the rights of all parties in interest, including the Committee, with respect to the allocation of the purchase price as between the Debtors are hereby preserved.

44.     Notwithstanding the terms of Section 3.25 or 6.12 of the APA, (i) the Debtors shall provide at least ten (10) Business Days' prior written notice to the Committee before making any payment under Section 3.25 or Section 6.12 of the APA; provided that no such payment shall be made if the Committee objects to such payment unless otherwise approved by the Court or such objection is resolved by the parties, and (ii) no stipulations, representations or obligations under such Section 3.25 or Section 6.12 of the APA shall be binding on the Court or the Committee.

45.     Within one (1) Business Day of the occurrence of the Closing of the Sale, the Debtors shall file and serve a notice of same, substantially in the form attached hereto as **Exhibit 4** (the "Notice of Sale Closing and Effective Date of Amendment of Case Caption"). Upon the filing of the Notice of Sale Closing and Effective Date of Amendment of Case Caption, the Debtors' case caption shall be amended to be in the form as set forth on such notice.

46.     The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

29

47.     This Court retains jurisdiction to:  (a) compel delivery of the Acquired Assets,

(b) protect Buyer and its assets, including the Acquired Assets, against any Adverse Interests

(other than Permitted Liens and Assumed Liabilities) and Successor or Transferee Liability,

(c) enter orders, as appropriate, pursuant to sections 105, 363 or 365 (or other applicable

provisions) of the Bankruptcy Code necessary to transfer the Acquired Assets and the

Designated Contracts to Buyer, and (d) adjudicate disputes between Buyer and holders of claims

related to the Assumed Liabilities regarding the Assumed Liabilities.

48.     All amounts, if any, to be paid by the Debtors to Buyer pursuant to the APA,

including any allowed claims for breach thereof, shall (i) constitute allowed administrative

expenses of the estates pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, (ii) be

protected as provided in the APA, (iii) not be altered, amended, discharged or affected by any

plan proposed or confirmed in the Cases without the prior written consent of Buyer and (iv) be

due and payable if and when any of the Debtors' obligations arise under the APA without further

order of the Court.

49.     Nothing contained in (a) any chapter 11 plan confirmed in these Cases, (b) any

order confirming any such chapter 11 plan, or (c) any order of any type or kind in these Cases,

any subsequent chapter 7 cases in which these Cases may be converted or any related

proceedings subsequent to the entry of this Sale Order shall conflict with or derogate from the

provisions of the APA (or any agreement contemplated thereby) or this Order, and to the extent

of any conflict or derogation between this Order or the APA (or any agreement contemplated

thereby) and such future plan or order, the terms of this Order and the APA (any agreement

contemplated thereby)  shall control.

30

50.     The Transactions contemplated hereunder shall not be affected by any bulk sales

laws.

51.     Buyer has standing to seek to enforce the terms of this Order.

52.     The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

53.     All time periods set forth in this Order shall be calculated in accordance with

Bankruptcy Rule 9006(a).

54.     To the extent there are any inconsistencies between the terms of the Bidding

Procedures Order, this Order and the APA, the terms of this Order shall control.


Dated:  August 22, 2016
        New York, New York


*/s/ Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge

31

If you would like to download the order with exhibits [Docket No. 214],
please go to the website: https://cases.primeclerk.com/gawker/Home-DocketInfo


If you have questions about this notice,
please call (855) 639-3375 (domestic toll-free),
(917) 651-0323 (international),
email gawkerinfo@primeclerk.com, or
visit https://cases.primeclerk.com/gawker.