ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Jonathan M. Agudelo
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors
and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Gawker Media LLC, *et al.*,[1] | : | Case No. 16-11700 (SMB) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

------------------------------------------------------x

## NOTICE OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF CITRIN COOPERMAN & COMPANY, LLP AS INDEPENDENT AUDITOR AND ACCOUNTING SERVICES PROVIDER FOR THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE AND OPPORTUNITY FOR HEARING

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") on the application (the

"Application," a copy of which is attached hereto) of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") to retain and employ Citrin Cooperman & Company,

LLP as their independent auditor and accounting services provider effective *nunc pro tunc* to the

Petition Date (as defined in the Application) will be held before the Honorable Stuart M.

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011. Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

Bernstein of the United States Bankruptcy Court for the Southern District of New York (the

"Court"), in Room 723, One Bowling Green, New York, New York 10004-1408, on

**September 13, 2016 at 10:00 a.m. (prevailing Eastern Time).**

      **PLEASE TAKE FURTHER NOTICE** that responses or objections to the Application

and the relief requested therein, if any, shall be in writing, shall conform to the Federal Rules of

Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York,

shall set forth the basis for the response or objection and the specific grounds therefore, and shall

be filed with the Court electronically in accordance with General Order M-399 by registered

users of the Court's case filing system (the User's Manual for the Electronic Case Filing System

can be found at http://www.nysb.uscourts.gov, the official website for the Court), with a hard

copy delivered directly to chambers pursuant to Local Bankruptcy Rule 9028-1 and served so as

to be actually received no later than **September 8, 2016**, **at 4:00 p.m**. **(prevailing Eastern**

**Time)** (the "Objection Deadline"), upon: (i) the Debtors, Gawker Media LLC, 114 Fifth Avenue,

2d Floor, New York, New York   10011, Attn. Heather Dietrick (heather@gawker.com);

(ii) counsel for the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New

York 10036, Attn: Gregg M. Galardi (gregg.galardi@ropesgray.com);  (iii) the Office of the

United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New

York, NY 10014, Attn: Greg Zipes & Susan Arbeit; (iv) the Internal Revenue Serivce, Attn:

Centralized  Insolvency  Operation,  2970  Market  Street,  Philadelphia,  PA  19104

(mimi.m.wong@irscounsel.treas.gov); (v) the United States Attorney's Office for the Southern

District of New York, Attn: Bankruptcy Division, 86 Chambers Street, 3rd Floor, New York, NY

10007  (david.jones6@usdoj.gov;  Jeffrey.Oestericher@usdoj.gov;  Joseph.Cordaro@usdoj.gov;

Carina.Schoenberger@usdoj.gov); (vi) counsel to Cerberus Business Finance, LLC, as DIP

2

Lender, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Adam C. Harris (adam.harris@srz.com); (vii) counsel to US VC Partners LP, as Prepetition Second Lien Lender, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: David Heller (david.heller@lw.com) & Keith A. Simon, 885 Third Avenue, New York, New York 10022, Attn: Keith A. Simon (keith.simon@lw.com); (viii) counsel for the Official Committee of Unsecured Creditors, Simpson Thacher & Bartlett, 425 Lexington Ave., New York, NY 10017, Attn: Sandy Qusba (squsba@stblaw.com) and William T. Russell (wrussell@stblaw.com); (ix) Citrin Cooperman & Company, LLP, 529 Fifth Avenue, New York, NY 10017, Attn: John Bonelli (jbonelli@citrincooperman.com); and (x) parties that have requested notice pursuant to Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Application may be obtained free of charge by visiting the website of Prime Clerk LLC at http://cases.primeclerk.com/gawker. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.  The Debtors will file an agenda before the Hearing, which may modify or supplement the Application to be heard at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that if no objections or other responses are timely filed and served with respect to the Application, the Debtors shall, on or after the Objection Deadline, submit to the Court an order substantially in the form annexed as **Exhibit A** to the Application, which order the Court may enter with no further notice or opportunity to be heard.

Dated:  August 30, 2016  
       New York, New York

*/s/ D. Ross Martin*                   
ROPES & GRAY LLP  
Gregg M. Galardi  
D. Ross Martin  
Jonathan M. Agudelo  
1211 Avenue of the Americas  
New York, NY 10036-8704  
Telephone: (212) 596-9000  
Facsimile: (212) 596-9090  
gregg.galardi@ropesgray.com  
ross.martin@ropesgray.com  
jonathan.agudelo@ropesgray.com  

*Counsel to the Debtors*  
*and Debtors in Possession*

4

**Hearing Date and Time: September 13, 2016 at 10:00 a.m. (ET)**
**Objection Deadline: September 8, 2016 at 4:00 p.m. (ET)**

ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Jonathan M. Agudelo
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------x
                                                      :
In re                                                 :          Chapter 11
                                                      :
Gawker Media LLC, *et al.*,[1]                        :          Case No. 16-11700 (SMB)
                                                      :
                              Debtors.                :          (Jointly Administered)
                                                      :
-----------------------------------------------------x

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER**
**AUTHORIZING THE RETENTION AND EMPLOYMENT OF CITRIN**
**COOPERMAN & COMPANY, LLP AS INDEPENDENT AUDITOR AND**
**ACCOUNTING SERVICES PROVIDER FOR THE DEBTORS AND DEBTORS IN**
**POSSESSION EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

Gawker Media LLC ("Gawker Media"), Gawker Media Group, Inc. ("GMGI"), and

Kinja Kft. ("Kinja") debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "Debtors"), respectfully submit this application (the "Application") for entry of

an order, substantially in the form attached hereto as **Exhibit A**, authorizing the employment and

retention of Citrin Cooperman & Company, LLP ("Citrin") as the Debtors' independent auditor

and accounting services provider, effective *nunc pro tunc* to the Petition Date. In support of this

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011. Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

Application, the Debtors submit the Declaration of Michael Rhodes, a Partner of Citrin, which is attached hereto as **Exhibit B** (the "Citrin Declaration"), and the declaration of William D. Holden, the Chief Restructuring Officer of GMGI and Gawker Media, which is attached hereto as **Exhibit C** (the "Holden Declaration"), both of which are incorporated herein by reference. In further support of this Application, the Debtors respectfully represent as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

### Procedural Background

4.      On June 10, 2016, Gawker Media filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition Date"). On June 12, 2016, Gawker Media Group, Inc. ("GMGI") and Kinja Kft. ("Kinja") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      On June 16, 2016 the Court entered an order authorizing the joint administration and procedural consolidation of the Debtors' chapter 11 cases (the "Chapter 11 Cases") pursuant to Bankruptcy Rule 1015(b) [Docket No. 41].

6.      On June 24, 2016, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the official committee of unsecured creditors (the

"Committee").  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

7.      The Debtors are operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      The factual background regarding the Debtors, their business operations, their capital and debt structure, and the events leading up to the filing of these Chapter 11 Cases are set forth in detail in the *Declaration of William D. Holden in Support of First Day Motions* [Docket No. 7].

**Relief Requested**

9.      By this Application, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the retention and employment of Citrin as their independent auditor and accounting services provider in accordance with the terms and conditions set forth in that certain (i) engagement letter between the Debtors and Citrin dated as of December 14, 2015, for auditing services, (ii) engagement letter between Gawker Media and Citrin dated as of December 15, 2015, for tax preparation and compliance services, (iii) engagement letter between Gawker Media and Citrin dated as of August 12, 2016, for a New York State sales and use tax audit, and (iv) that certain engagement letter between the Gawker Media and Citrin dated as of August 30, 2016, for a retirement plan audit (collectively, the "Engagement Agreements"), copies of which are annexed hereto as **Exhibit 1** to **Exhibit A** and incorporated herein by reference.

**Citrin's Qualifications**

10.      Citrin is well qualified to provide accounting services, tax preparation services and independent auditing services to the Debtors.    Citrin has extensive experience and

3

knowledge in performing the Auditing and Accounting Services (as defined herein) and is recognized for its experience and expertise in the provision of such services to large and complex business entities. Moreover, Citrin is a nationally recognized full-service accounting, tax and consulting firm with nine offices and more than 800 employees in the United States. Citrin's qualifications, including a description of its staffing and approach in providing services are more fully set forth in the Citrin Declaration.

11.     The Debtors have determined in the exercise of their business judgment that the size of their business operations and complexity of their current financial status require them to employ an accounting advisory firm and an independent auditor with knowledge of the Debtors' industry and business experience to provide the Auditing and Accounting Services.

12.     The Debtors believe that Citrin is well-qualified to provide the Auditing and Accounting Services to the Debtors in a cost-effective, efficient, and timely manner. Retaining Citrin will enable the Debtors to carry out their duties in these Chapter 11 Cases. Citrin has extensive experience and an excellent reputation in providing such services to complex business entities and is well-suited to provide the services that the Debtors require. Moreover, Citrin has been providing services to the Debtors since 2010 so it is intimately familiar with the Debtors' business operations.

**Services to Be Provided**

13.     Prior to the commencement of the Chapter 11 Cases and in the ordinary course of business, the Debtors engaged Citrin to provide a broad range of auditing, accounting services, including, among other services, annual financial statement audits, annual benefit plan audits, preparation of annual corporate U.S. tax returns, response to general and targeted audits, and accounting advisory services (collectively, the "Auditing and Accounting Services"). Citrin has

4

agreed to continue to provide the Auditing and Accounting Services to the Debtors in accordance with the terms and conditions set forth in the Citrin Declaration and in the Engagement Agreements.

14.     Subject to further order of the Court, and consistent with the Engagement Agreements, the Debtors request the retention and employment of Citrin to render the following, among other, Auditing and Accounting Services:

      a.  provide general and technical accounting advice;

      b.  assist with due diligence requests such as coordinating workpaper reviews and responding to management inquiries about historical accounting records;

      c.  provide fiscal audit for the year ending December 31, 2015;

      d.  provide audit services, relating to an employee benefit plan audit for the year ending December 31, 2015; and

      e.  respond to New York State sales and use tax audit.

15.     The Auditing and Accounting Services provided by Citrin will not duplicate or overlap with the other services performed by the Debtors' other retained consultants and advisors.   Citrin understands that the Debtors have retained and may retain additional professionals during the terms of the Engagement Agreements, and Citrin agrees to work cooperatively with the Debtors to avoid duplication of services.  Citrin has advised the Debtors that it will make every effort to avoid duplication of work between Citrin and other professionals retained in the Chapter 11 Cases.

16.     The Debtors respectfully request that Citrin's retention be made effective *nunc pro tunc* to the Petition Date so that Citrin may be compensated for the services it has provided before this Application is heard by the Court.  Citrin has provided services to Gawker Media and GMGI in advance of approval of this Application in anticipation that its retention would be

approved *nunc pro tunc* to the Petition Date.  The Debtors submit that these circumstances are of

a nature warranting retroactive approval.  See Bank Brussels Lambert v. Coan (In re AroChem

Corp.), 176 F.3d 610, 621 (2d Cir. 1999) (noting that bankruptcy courts have discretion to

authorize *nunc pro tunc* approval of professional retentions); Cushman & Wakefield of Conn.,

Inc. v. Keren Ltd. P'ship (In re Keren Ltd. P'ship), 189 F.3d 86, 87 (2d Cir. 1999) (explaining

factors to consider in determining whether *nunc pro tunc* approval is appropriate).  Further, the

Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc*

employment because Citrin has provided, and will continue to provide, valuable services to the

Debtors' estates in the interim period.

17.    Courts in this jurisdiction routinely approve *nunc pro tunc* employment similar to

that requested herein.  See, e.g., In re SunEdison, Inc., No. 16-10992 (SMB) (Bankr. S.D.N.Y.

June 8, 2016) (order approving employment of independent auditor and tax consultant *nunc pro

tunc*); In re AOG Entm't, Inc., No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 3, 2016) (same); In

re Republic Airways Holdings Inc., No. 16-10429 (SHL) (Bankr. S.D.N.Y. Apr. 27, 2016) (order

approving employment of independent auditor *nunc pro tunc*); In re Sabine Oil & Gas Corp., No.

15-11835 (SCC) (Bankr. S.D.N.Y. Oct. 16, 2015) (order approving employment of independent

auditor and accounting services provider *nunc pro tunc*); In re Chassix Holdings, Inc., No. 15-

10578 (MEW) (Bankr. S.D.N.Y. Apr. 24, 2015) (same); In re Eagle Bulk Shipping Inc., No. 14-

12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014) (same).

## Professional Compensation

18.    Subject to Court approval, and in accordance with section 330(a) of the

Bankruptcy Code and the *Order Establishing Procedures for Interim Compensation and

Reimbursement of Expenses of Professionals* (the "Interim Compensation Order") [Docket No.

94], and as set forth in the Citrin Declaration, the Debtors propose to compensate Citrin on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by Citrin according to its customary reimbursement policies.

19.    Citrin intends to apply for compensation for professional services and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court.  The hourly rates and corresponding rate structure Citrin will use in these Chapter 11 Cases are the same as the hourly rates and corresponding rate structure that Citrin uses in non-restructuring matters, including for those services provided to Gawker Media and GMGI prior to the Petition Date.

20.    Citrin operates in a national marketplace for accounting services in which rates are driven by multiple factors relating to the individual professional, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

21.    Citrin's current hourly rates for matters related to these Chapter 11 Cases range as follows:

| **Billing Category** | **Range** |
| :---: | :---: |
| Partners | $475-560 |
| Managers and Directors | $410-460 |
| Staff Accountants | $200-250 |
| Support Staff | $90-190 |

58464255_10

22.    The hourly rates set forth above are set at a level designed to compensate Citrin fairly for the work of its professionals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to annual adjustments to reflect economic and other conditions.

23.    Additional services may be provided under the Engagement Agreements in connection with these Chapter 11 Cases. These services may include additional audit procedures in connection with the audit services already provided and other accounting and financial reporting research and consultation services related to the restructuring and related financing activities (the "Accounting Consultation Services"), as may be required in chapter 11 cases like these cases, which were not specifically contemplated in the Engagement Agreements. The hourly rates and corresponding rate structure Citrin will use for the Accounting Consultation Services will be the same as those used for the Auditing and Accounting Services contemplated by the Engagement Agreements.

24.    The rate structure provided by Citrin for postpetition services is not significantly different from (a) the rates that Citrin charges for other similar types of representations or (b) the rates that other comparable accounting services firms would charge to do work substantially similar to the work Citrin will perform in these Chapter 11 Cases.

25.    Consistent with its practices with other clients, Citrin provided the Debtors with a courtesy discount for certain annual audit and tax preparation services (the "Courtesy Discount"). The Courtesy Discount, consistent with industry practices of other similarly-situated accounting firms, is limited to fixed-fee audit and tax services. It is not customarily applied to non-fixed fee auditing or accounting and tax advisory services. Citrin will continue to apply the Courtesy Discount to all applicable postpetition services provided to the Debtors. However, it is

8

anticipated that the Courtesy Discount will not be applicable to the postpetiton services being provided to the Debtors as they relate to non-fixed fee auditing and accounting advisory services billed at the hourly rates discussed above.

26.      It is Citrin's policy to charge its clients in all areas of practice for all identifiable, non-overhead expenses incurred in connection with each client's case that would not have been incurred except for representation of that particular client.  It is also Citrin's policy to charge its clients only the amount actually incurred by Citrin in connection with such items.  Examples of such expenses include, among other things, postage, overnight mail, courier delivery, transportation, overtime expenses, photocopying, airfare, meals, and lodging.  In addition, Citrin professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

27.      Citrin will not charge the Debtors more than $0.10 per page for standard duplication in its offices in accordance with Local Rule 2016-1 and the Amended Guidelines for *Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*. Citrin does not charge its clients for incoming facsimile transmissions.

28.      Citrin intends to file monthly fee statements and interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the U.S. Trustee Guidelines and the Interim Compensation Order.  Such statements and applications will include time records setting forth, in a summary format, a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.  Citrin will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the Services.

## Compensation Received by Citrin from the Debtors

29.     As noted above, prior to the Petition Date, Citrin provided services to Gawker

Media and GMGI including the Auditing and Accounting Services (the "Prepetition Services").

As discussed above, consistent with its practices with other clients, Citrin applied a Courtesy

Discount to the costs incurred for Prepetition Services that were related to fixed fee audit and tax

preparation services.  The Courtesy Discount was not provided for Prepetition Services related to

targeted, non-fixed fee accounting and tax preparation services.  The Courtesy Discount ranged

between 15-20% and was determined on a per-invoice basis based upon many factors including,

among other things, overall level of effort and projected time to be incurred relative to the fixed

fee.

30.     As of the Petition Date, no amounts were outstanding with respect to invoices

issued by Citrin for the Prepetition Services.

31.     The Debtors paid $220,234.00 to Citrin during the period 90 days prior to the

Petition Date in compensation for the Prepetition Services.

32.     As set forth in the Citrin Declaration, the Debtors paid $5,000.00 to Citrin on May

25, 2016 as an advance payment retainer.  As of the Petition Date, the Debtors' retainer balance

with Citrin remained $5,000.00.  Subject to this Court's approval, Citrin intends to apply this

advance in partial payment of any fees and expenses requested as part of Citrin's first fee

application.

## Citrin's Disinterestedness

33.     To the best of the Debtors' knowledge, Citrin: (a) is a "disinterested person," as

such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b)

of the Bankruptcy Code and, as required by section 327(a) and referenced by section 328(c) of

58464255_10

the Bankruptcy Code, and, except as disclosed and described in the Citrin Declaration (and below), neither holds nor represents any interest adverse to the Debtors and the Debtors' estates and (b) except as disclosed and described in the Citrin Declaration (and below), has no connection to the Debtors or to their significant creditors or certain other potential parties- in-interest ("Interested Parties") whose names were supplied to Citrin by the Debtors.

34.    Based entirely and in reliance upon the Citrin Declaration, and except as specifically disclosed therein, none of Citrin's past or current engagements would or does appear to create an interest materially adverse to the interests of the Debtors, creditors, or equity security holders in this case.  To the extent Citrin discovers any additional matters or any pertinent relationships that require disclosure during the period of Citrin's retention, Citrin has indicated that it will promptly supplement the information contained in the Citrin Declaration.

35.    As described in more detail in the Citrin Declaration, Citrin, among other things, has searched its client databases to determine whether it represents, or has represented, certain of the Debtors' creditors or other Interested Parties in these proceedings, and/or matters wholly unrelated to these proceedings.  Due to the size of Citrin and the number of creditors and other parties involved in this case, however, Citrin may have represented certain of the Debtors' creditors or other Interested Parties in matters wholly unrelated to these Chapter 11 Cases and which it did not disclose in the Citrin Declaration.

36.    As specifically disclosed in the Citrin Declaration, Citrin has in the past provided personal tax return preparation services to Nick Denton, the Debtors' founder and current President and Chief Executive Officer of GMGI and President of Gawker Media.  Citrin is no longer providing and will not in the future provide any services to Mr. Denton.  Citrin provided services to Mr. Denton in connection with the preparation of his personal tax returns for the

11

2012, 2013 and 2014 tax years and the preparation of an extension request for his personal tax return for the 2015 tax year.

37.    One Citrin accountant, Andrew Rotter, has in the past provided services to both the Debtors and Mr. Denton.  Mr. Rotter, a Partner in Citrin's tax department, has supervised the preparation of both the Debtors' and Mr. Denton's tax returns.  In total, Mr. Rotter has provided the Debtors with approximately 40 hours of services over the past year, less than 5% of the total services provided by Citrin to the Debtors over that period.  Mr. Rotter, however, will not provide any services to the Debtors moving forward.  Further, Mr. Rotter, along with others at Citrin that have provided services to Mr. Denton, will be firewalled from any involvement with the work being provided to the Debtors and access to information stored in Citrin's electronic and paper files related to the Debtors.

38.    The services Citrin provided to Mr. Denton, with the exception of the 2015 extension request, were billed at a fixed-fee of $2,000.00 per tax return.  In 2014, Gawker Media paid $2,000.00 to Citrin for the services provided to Mr. Denton related to the 2012 tax return.  In 2015, Citrin issued an invoice to Mr. Denton in the amount of $4,000.00 for the services related to the 2013 and 2014 tax returns.  Citrin has elected to waive any fees related to Mr. Denton's 2015 extension request, approximately 0.25 hours of work.

39.    The invoice Citrin provided to Mr. Denton in July 2015 for the 2013 and 2014 tax returns remains outstanding.  Accordingly, Citrin is a creditor in Mr. Denton's personal chapter 11 bankruptcy case.

40.    To the best of the Debtors' knowledge, information and belief, Citrin, except as specifically disclosed in the Citrin Declaration or herein, (a) has no connection with the Debtors, their creditors, other parties in interest, the attorneys or accountants of any of the foregoing, the

12

U.S. Trustee, or any person employed in the Office of the U.S. Trustee; and (b) does not hold

any interest adverse to the Debtors' estates.

## Basis for Relief

41.    The Debtors seek retention of Citrin as their independent auditor and accounting

services provider pursuant to section 327(a) of the Bankruptcy Code, which provides that a

debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers,
> auctioneers, or other professional persons, that do not hold or
> represent an interest adverse to the estate, and that are disinterested
> persons, to represent or assist the [debtor] in carrying out the
> [debtor]'s duties under this title.

11 U.S.C. § 327(a).

42.    Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the
> name of the [firm] to be employed, the reasons for the selection,
> the professional services to be rendered, any proposed arrangement
> for compensation, and, to the best of the applicant's knowledge, all
> of the [firm's] connections with the debtor, creditors, any other
> party in interest, their respective attorneys and accountants, the
> United States trustee, or any person employed in the office of the
> United States trustee.

43.    The Debtors submit that for all the reasons stated above and in the Citrin

Declaration, the retention and employment of Citrin as the Debtors' independent auditor and

accounting services provider is warranted.  Further, as set forth in the Citrin Declaration and

except as otherwise disclosed therein (a) Citrin is a "disinterested person" within the meaning of

section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code,

and does not hold or represent any interest adverse to the Debtors' estates, and (b) Citrin has not

represented the Debtors' creditors or any other parties in interest or their respective attorneys in

any matter relating to the Debtors' estates.

13

44.     Courts in this jurisdiction routinely grant relief similar to that requested herein.

See, e.g., In re SunEdison, Inc., No. 16-10992 (SMB) (Bankr. S.D.N.Y. June 8, 2016) (order

approving employment of independent auditor and tax consultant); In re AOG Entm't, Inc., No.

16-11090 (SMB) (Bankr. S.D.N.Y. June 3, 2016) (same); In re Republic Airways Holdings Inc.,

No. 16-10429 (SHL) (Bankr. S.D.N.Y. Apr. 27, 2016) (order approving employment of

independent auditor); In re Sabine Oil & Gas Corp., No. 15-11835 (SCC) (Bankr. S.D.N.Y. Oct.

16, 2015) (order approving employment of independent auditor and accounting services

provider); In re Chassix Holdings, Inc., No. 15-10578 (MEW) (Bankr. S.D.N.Y. Apr. 24, 2015)

(same); In re Eagle Bulk Shipping Inc., No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014)

(same).

## Notice

45.     Notice of this Motion has been provided in accordance with the *Order

Establishing Certain Notice, Case Management, and Administrative Procedures and Omnibus

Hearing Dates* [Docket No. 93].    The Debtors submit that, in view of the facts and

circumstances, such notice is sufficient and no other or further notice need be provided.

14

## Conclusion

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated: August 29, 2016
      New York, New York

Heather Dietrick
President & General Counsel

**<u>Exhibit A</u>**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                            :

In re                      :         Chapter 11

                         :

Gawker Media LLC, *et al.*,[1]   :        Case No. 16-11700 (SMB)

                         :

          Debtors.      :         (Jointly Administered)

                         :

------------------------------------------------------x

## ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN CITRIN COOPERMAN & COMPANY, LLP AS INDEPENDENT AUDITOR AND ACCOUNTING SERVICES PROVIDER *NUNC PRO TUNC* TO THE PETITION DATE

Upon the Application, dated August 30, 2016 (the "<u>Application</u>"),[2] of Gawker Media LLC and its above-captioned debtor affiliates, as debtors and debtors in possession (the "<u>Debtors</u>"), for an order authorizing the Debtors to retain Citrin Cooperman & Company, LLP ("<u>Citrin</u>") to serve as the Debtors' independent auditor and accounting services provider effective *nunc pro tunc* to the Petition Date in accordance with the terms and conditions of that certain (i) engagement letter between the Debtors and Citrin dated as of December 14, 2015, for auditing services, (ii) engagement letter between Gawker Media and Citrin dated as of December 15, 2015, for tax preparation and compliance services, (iii) engagement letter between Gawker Media and Citrin dated as of August 12, 2016, for a New York State sales and use tax audit, and (iv) that certain engagement letter between Gawker Media and Citrin dated as of August 30, 2016, for a retirement plan audit (collectively, the "<u>Engagement Agreements</u>"), copies of which are annexed hereto as **Exhibit A**, pursuant to sections 327(a) and 330 of title 11

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). The offices of Gawker Media and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011. Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

of the United States Codes (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of

the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy

Rules"); and the Court having reviewed the Application the Declaration of Michael Rhodes,

a Partner of Citrin (the "Citrin Declaration"), and the declaration of William D. Holden (the

"Holden Declaration"); and the Court having found that the Court has jurisdiction over

this  matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that the

Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having

found that venue of this proceeding and the Application in this district is proper pursuant to

28 U.S.C. §§ 1408 and 1409; and the Court having found based on the representations made

in the Application and in the Citrin Declaration that (a) Citrin does not hold or represent an

interest adverse to the Debtors' estates and (b) Citrin is a "disinterested person" as defined in

section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy

Code; and the Court having found that the relief requested in the Application is in the best

interests of the Debtors' estates, their creditors, and other parties in interest; and the Court

having found that the Debtors provided adequate and appropriate notice of the Application

under the circumstances and that no other or further notice is required; and the Court having

reviewed the Application; and the Court having determined that the legal and factual bases

set forth in the Application establish just cause for the relief granted herein; and no

objections to the Application having been filed; and after due deliberation and sufficient cause

appearing therefor, it is hereby

**ORDERED, THAT:**

1.      The Application is GRANTED to the extent set forth herein, *nunc pro tunc* to the Petition Date.

2.      The Debtors, as debtors in possession, are authorized, pursuant to sections 327(a) and 329 of the Bankruptcy Code, Bankruptcy Rules 2014, 2016, and 5002, and Local Rule 2014-1 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Bankruptcy Rule 2014-1, to employ and retain Citrin, effective *nunc pro tunc* to the Petition Date, as their independent auditor and accounting services provider in accordance with the terms and conditions set forth in the Engagement Agreements attached hereto as **Exhibit 1**.

3.      Citrin does not hold or represent any interest adverse to the Debtors' estates with respect to the matters upon which it is to be employed and is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

4.      The terms of the Engagement Agreements are approved in all respects except as set forth herein.

5.      Citrin shall file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code.  Notwithstanding anything to the contrary set forth above, the U.S. Trustee shall retain rights to respond or object to Citrin's interim and final applications for compensation based on the reasonableness standard provided for in section 330 of the Bankruptcy Code.

6.      Citrin shall apply any remaining amounts of its prepetition retainer as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to the first Order of the Court awarding fees and expenses to Citrin.

7.      Citrin shall use reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these Chapter 11 Cases.

8.       None of the fees payable to Citrin shall constitute a "bonus" or fee enhancement under applicable law.

9.       In the event Citrin seeks reimbursement for attorneys' fees pursuant to the terms of the Engagement Agreements, the invoices supporting time records from such attorneys shall be included in Citrin's own application and such invoices and time records shall be subject to the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed 11 U.S.C. § 330, dated January 30, 1996 (the "U.S. Trustee Guidelines") and the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code.

10.       The Debtors shall be bound by the indemnification, contribution, reimbursement, exculpation, and other provisions of the Engagement Agreements, and will indemnify and hold harmless Citrin and its affiliates, and its and their respective directors, officers, members, agents, employees, and controlling persons, and each of their respective successors and assigns (collectively, the "Indemnified Persons"), pursuant to the Engagement Agreements during the pendency of these Chapter 11 Cases, subject to the following conditions:

a.       All requests of Indemnified Persons for payment of indemnity, contribution, or otherwise shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Engagement Agreements, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the orders of this Court, and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided* that in no event shall an Indemnified Person be indemnified or  receive contribution to the extent that any claim arose or expense has resulted from any such losses finally judicially determined by a court of competent jurisdiction to have primarily resulted from the bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence, or willful misconduct on the part of that or any other Indemnified Person.

b.       In no event shall an Indemnified Person be indemnified or receive contribution or other payment under the indemnification provisions of the

Engagement Agreements if the Debtors or a representative of the Debtors' estates asserts a claim for, and the Court determines by final order that such claim primarily arose out of, such person's bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence, or willful misconduct on the part of that or any other Indemnified Person.

c.      In the event an Indemnified Person seeks reimbursement for attorneys' fees from the Debtors pursuant to the Engagement Agreements, the invoices and supporting time records from such attorneys shall be annexed to Citrin's own interim and final fee applications, and such invoices and time records shall be subject to the U.S. Trustee Guidelines and the approval of the Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

11.      Notwithstanding anything to the contrary in the Engagement Agreements, in the event that an Indemnified Person is not entitled to indemnification on account of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct, it shall also not be entitled to any claim or right of contribution, limitation of liability, or exoneration.

12.      The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted in this Order.

13.      To the extent this Order is inconsistent with the Engagement Agreements, this Order shall govern.

14.      The Court retains exclusive jurisdiction with respect to all matters arising from, or related to, the retention of Citrin and the implementation and interpretation of this Order.

Dated: September ___, 2016
       New York, New York

_____
HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1 to Proposed Order</u>**

**Engagement Agreements**



December 14, 2015

Mr. Josh Albertson, Chief Operating Officer
Gawker Media Group, Inc. and Subsidiaries
114 Fifth Avenue, Floor 2
New York, NY 10011

Dear Josh:

We are pleased to confirm our understanding of the services we are to provide for Gawker Media Group, Inc. and Subsidiaries (the "Company") for the year ended December 31, 2015.

We will audit the financial statements of Gawker Media Group, Inc. and Subsidiaries, which comprise the consolidated   balance sheet as of December 31, 2015, and the related consolidated statements of income, changes in shareholders' equity, and cash flows for the year then ended, and the related notes to the consolidated financial statements.

## Audit Objective

The objective of our audit is the expression of an opinion about whether your financial statements are fairly presented, in all material respects, in conformity with U.S. generally accepted accounting principles. Our audit will be conducted in accordance with auditing standards generally accepted in the United States of America and will include tests of your accounting records and other procedures we consider necessary to enable us to express such an opinion. We will issue a written report upon completion of our audit of Gawker Media Group, Inc. and Subsidiaries's financial statements. Our report will be addressed to Josh Albertson, Chief Operating Officer and the shareholders of Gawker Media Group, Inc. and Subsidiaries. We cannot provide assurance that an unmodified opinion will be expressed. Circumstances may arise in which it is necessary for us to modify our opinion or add an emphasis-of-matter or other-matter paragraph. If our opinion is other than unmodified, we will discuss the reasons with you in advance. If, for any reason, we are unable to complete the audit or are unable to form or have not formed an opinion, we may decline to express an opinion or withdraw from this engagement.

## Audit Procedures

Our procedures will include tests of documentary evidence supporting the transactions recorded in the accounts, tests of the physical existence of inventories, and direct confirmation of certain assets and liabilities by correspondence with selected customers, creditors, and financial institutions. We will also request written representations from your attorneys as part of the engagement. At the conclusion of our audit, we will require certain written representations from you about the financial statements and related matters.

An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements; therefore, our audit will involve judgment about the number of transactions to be examined and the areas to be tested. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements. We will plan and perform the audit to obtain reasonable assurance

Mr. Josh Albertson
Gawker Media Group, Inc. and Subsidiaries
December 14, 2015
Page 2

about whether the financial statements are free of material misstatement, whether from (1) errors, (2) fraudulent financial reporting, (3) misappropriation of assets, or (4) violations of laws or governmental regulations that are attributable to the Company or to acts by management or employees acting on behalf of the Company.

Because of the inherent limitations of an audit, combined with the inherent limitations of internal control, and because we will not perform a detailed examination of all transactions, there is a risk that material misstatements may exist and not be detected by us, even though the audit is properly planned and performed in accordance with U.S. generally accepted auditing standards. In addition, an audit is not designed to detect immaterial misstatements or violations of laws or governmental regulations that do not have a direct and material effect on the financial statements. However, we will inform the appropriate level of management of any material errors, fraudulent financial reporting, or misappropriation of assets that comes to our attention. We will also inform the appropriate level of management of any violations of laws or governmental regulations that come to our attention, unless clearly inconsequential. Our responsibility as auditors is limited to the period covered by our audit and does not extend to any later periods for which we are not engaged as auditors.

Our audit will include obtaining an understanding of the Company and its environment, including internal control, sufficient to assess the risks of material misstatement of the financial statements and to design the nature, timing, and extent of further audit procedures. An audit is not designed to provide assurance on internal control or to identify deficiencies in internal control. However, during the audit, we will communicate to you and those charged with governance internal control related matters that are required to be communicated under professional standards.

We may from time to time, and depending on the circumstances, use third-party service providers in serving your account. Third-party service providers include individuals who are not employed by our firm. We may share confidential information about you with these service providers, but remain committed to maintaining the confidentiality and security of your information. Accordingly, we maintain internal policies, procedures, and safeguards to protect the confidentiality of your personal information. In addition, we will secure confidentiality agreements with all service providers to maintain the confidentiality of your information, and we will take reasonable precautions to determine that they have appropriate procedures in place to prevent the unauthorized release of your confidential information to others. In the event that we are unable to secure an appropriate confidentiality agreement, you will be asked to provide your consent prior to the sharing of your confidential information with the third-party service provider. Furthermore, we will remain responsible for the work provided by any such third-party service providers.

## Management Responsibilities

You agree to assume all management responsibilities for the tax services and any other nonattest services we provide; oversee the services by designating an individual, preferably from senior management, with suitable skill, knowledge, or experience; evaluate the adequacy and the results of the services; and accept responsibility for them.

Mr. Josh Albertson
Gawker Media Group, Inc. and Subsidiaries
December 14, 2015
Page 3

You are responsible for establishing and maintaining internal controls, including monitoring ongoing activities; for the selection and application of accounting principles; and for the preparation and fair presentation of the financial statements in conformity with U.S. generally accepted accounting principles. You are also responsible for making all financial records and related information available to us and for the accuracy and completeness of that information. You are also responsible for providing us with (a) access to all information of which you are aware that is relevant to the preparation and fair presentation of the financial statements, (b) additional information that we may request for the purpose of the audit, and (c) unrestricted access to persons within the Company from whom we determine it necessary to obtain audit evidence.

Your responsibilities include adjusting the financial statements to correct material misstatements and confirming to us in the management representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole.

You are responsible for the design and implementation of programs and controls to prevent and detect fraud, and for informing us about all known or suspected fraud affecting the Company involving (a) management, (b) employees who have significant roles in internal control, and (c) others where the fraud could have a material effect on the financial statements. Your responsibilities include informing us of your knowledge of any allegations of fraud or suspected fraud affecting the Company received in communications from employees, former employees, regulators, or others. In addition, you are responsible for identifying and ensuring that the Company complies with applicable laws and regulations.

### Engagement Administration, Fees, and Other

We understand that your employees will prepare all cash, accounts receivable, and other confirmations we request and will locate any documents selected by us for testing.

Gawker Media Group, Inc. and Subsidiaries agrees to hold Citrin Cooperman & Company, LLP, its successors and assigns, partners, principals and employees, harmless to the fullest extent permitted by law from any litigation expense, including attorneys' fees, incurred in connection with any request (by subpoena or otherwise) for testimony, documents or other information concerning the Company by any governmental agency or investigative body or in any litigation or dispute to which the Company is a party other than claims by the Company against Citrin Cooperman & Company, LLP. The indemnification will survive termination of this letter of engagement. If this occurs, we shall be entitled to compensation for our time and reimbursement for our reasonable out-of-pocket expenses in complying with such request or demand.

Michael Rhodes is the engagement partner and is responsible for supervising the engagement and signing the report or authorizing another individual to sign it. We expect to begin our preliminary audit work on December 15, 2015, our year end field work approximately April 18, 2016 and to issue our report no later than June 30, 2016.

To ensure that Citrin Cooperman & Company, LLP's independence is not impaired under the AICPA *Code of Professional Conduct*, you agree to inform the engagement partner before entering into any substantive employment discussions with any of our personnel.

Mr. Josh Albertson
Gawker Media Group, Inc. and Subsidiaries
December 14, 2015
Page 4

We estimate that our fees for these services will be $50,000. You will also be billed for travel and other out-of-pocket costs such as report production, word processing, postage, etc. The fee estimate is based on anticipated cooperation from your personnel and the assumption that unexpected circumstances will not be encountered during the engagement. If significant additional time is necessary, we will keep you informed of any problems we encounter and our fees will be adjusted accordingly. Our invoices for these fees will be rendered each month as work progresses and are payable on presentation.

In accordance with our firm policies, work may be suspended if your account becomes overdue and will not be resumed until your account is paid in full. You acknowledge and agree that we are not required to continue work in the event of your failure to pay any statement or invoice from us in accordance with our customary invoice terms. Should work be suspended, Citrin Cooperman & Company, LLP shall not be liable to you for any damages that occur as a result of our ceasing to render services. In the event that a situation arises that precludes us from completing the engagement, you agree to pay us for the time we incurred on this engagement at our standard hourly rates.

Any dispute arising out of or relating to this engagement, or breach thereof, shall first be submitted for good faith mediation administered by the American Arbitration Association ("AAA") under its Rules for Professional Accounting and Related Services Disputes (the "Rules"). The parties agree to discuss their differences in good faith and to attempt, with facilitation by the mediator, to reach a consensual resolution of the dispute. The mediation shall be treated as a settlement discussion and shall be confidential. The mediator may not testify for any party in any later proceeding related to the dispute. No recording or transcript shall be made of the mediation proceeding. Each party shall bear its own costs in the mediation. Absent an agreement to the contrary, the fees and expenses of the mediator shall be shared equally by the parties. Mediation shall take place at a place to be designated by the parties in New York, New York. No litigation, arbitration or other proceeding shall be commenced prior to sixty (60) days after the parties' first appearance before the mediator.

If the matter is not resolved by mediation within sixty (60) days of its submission to the mediator, then the parties shall submit the dispute for arbitration administered by the AAA under the Rules.

The arbitration will be conducted before a single arbitrator selected from the AAA's Panel of Accounting Professionals and Attorneys and shall take place at a place to be designated by the parties. The arbitrator shall be a fit and impartial person and shall have at least ten (10) years' experience in commercial litigation, accounting or a similar field connected to the subject matter of the dispute. The arbitrator, with the aforementioned requisite qualifications, shall be selected pursuant to Section 13 of the Rules.

The arbitrator shall issue his or her final award in a written and reasoned decision to be provided to each party. In his or her decision, the arbitrator will declare one party the prevailing party. The arbitrator shall have the power to award all reasonable legal fees associated with the arbitration and prior mediation. The arbitrator shall have no authority to award non-monetary or equitable relief of any sort. The arbitrator shall not have authority to award damages that are punitive in nature, or that are not measured by the prevailing party's actual compensatory loss.

Any discovery sought in connection with the arbitration must be expressly approved by the arbitrator only upon a showing of substantial need by the party seeking discovery.

Mr. Josh Albertson
Gawker Media Group, Inc. and Subsidiaries
December 14, 2015
Page 5

All aspects of the arbitration shall be treated as confidential. The parties and the arbitrator may disclose the existence, content or result of the arbitration only as expressly provided by the Rules.

The award reached as a result of the arbitration will be binding on the parties, and confirmation of the arbitration award may be sought in any court having jurisdiction.

Any and all claims by you arising with respect to or relating to this engagement must be commenced within one (1) year following the date on which Citrin Cooperman & Company, LLP delivers its auditor's report associated with this engagement. If the auditor's report is not delivered to you, for any reason, any and all claims by you arising under this engagement must be commenced within one (1) year of the date you are informed of the engagement's termination.

Citrin Cooperman & Company, LLP shall not be liable for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under this engagement letter for an amount in excess of the Company's actual damages. In no event shall Citrin Cooperman & Company, LLP be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs).

This agreement and any dispute relating in any way to this engagement will be governed by the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply.

This agreement can only be amended in writing and signed by an authorized person at Citrin Cooperman & Company, LLP and you.

We appreciate the opportunity to be of service to you and believe this letter accurately summarizes the significant terms of our engagement. If you have any questions, please let us know. If you agree with the terms of our engagement as described in this letter, please sign the enclosed copy and return it to us.

Very truly yours,

CITRIN COOPERMAN & COMPANY, LLP

Agreed and accepted:

Josh Albertson, Chief Operating Officer
Gawker Media Group, Inc. and Subsidiaries

1/4/16
Date



**CITRIN**COOPERMAN
Attest & Assurance | Tax Compliance & Research | Specialty & Consulting

December 15, 2015

Mr. Josh Albertson, Chief Operating Officer
Gawker Media, LLC
114 Fifth Avenue, Floor 2
New York, NY 10011

Dear Mr. Albertson:

We appreciate the opportunity to work with you. This letter is to confirm and specify the terms of our engagement and to clarify the nature and extent of the tax services we will provide.

## Tax Compliance Services

We will prepare your 2015 federal, state and local business income tax returns and any other related returns listed on Exhibit 1. You may request that we prepare additional 2015 related tax returns by listing them in the appropriate space on Exhibit 1. You may include such returns as payroll tax, sales tax, Forms 1099, foreign account reporting and related business entities for which you have signing authority. If during the course of our engagement we become aware of any additional filings that may be required, we will inform you of the obligation and prepare them upon your authorization.

We will prepare all returns covered in this engagement from information you furnish us. We will not audit or verify the data you submit, although we may ask you to clarify it or furnish us with additional data.

We will e-file your returns as required by the taxing authorities. We will provide you with a copy of the income tax returns for your review prior to electronic transmission. After you have reviewed the returns, you must provide us with a signed authorization indicating that you have reviewed the returns and that, to the best of your knowledge, they are correct. We cannot transmit the returns to the taxing authorities until we have the signed authorization.

We will perform our services in accordance with applicable professional standards. Our work in connection with the preparation of your business income tax returns does not include any procedures designed to discover significant errors, fraud, defalcations or other irregularities, should any exist. We will render such accounting and bookkeeping assistance as we find necessary for preparing the business income tax returns.

Our firm has offices in several states located throughout the United States and a wholly owned and controlled offshore affiliate. Your return may be processed in any of our locations based on our scheduling needs and availability.

We will use our professional judgment in preparing your returns. Whenever we are aware that a possibly applicable tax law is unclear or that there are conflicting interpretations of the law by authorities (e.g., tax agencies and courts), we will share with you our knowledge of the possible positions that may be taken on your return. In accordance with our professional standards, we will follow whatever position you request, as long as it is consistent with the codes, regulations and interpretations that have been promulgated. If the Internal Revenue Service should later contest the position taken, there may be an assessment of additional tax plus interest and penalties. We assume no liability for any such additional penalties, interest or assessments.

CITRIN COOPERMAN & COMPANY, LLP
529 FIFTH AVENUE   NEW YORK, NY 10017  |  TEL 212.697.1000  |  FAX 212.697.1004                    CITRINCOOPERMAN.COM

AN INDEPENDENT FIRM ASSOCIATED WITH MOORE STEPHENS

Gawker Media, LLC
Page 2

## Client Responsibilities

You will provide us with all information required for preparing complete and accurate returns no later than 30 days prior to their original due date (or extended due date, if applicable). We cannot ensure that your returns will be completed by their applicable due date if all of your information is not provided to us within this time frame, and we assume no liability for any penalties and interest that may occur as a result. You should retain all the documents, books and records that form the basis of income and deductions. The documents may be necessary to prove the accuracy and completeness of the returns to a taxing authority.

You have the final responsibility for the income tax returns and, therefore, you should review them carefully before you sign them.

You are responsible for management decisions and functions. That responsibility includes designating an individual with suitable skill, knowledge or experience to oversee all the specific services we perform as part of this engagement, as well as evaluating the adequacy and results of the services performed.

You are responsible for establishing and maintaining internal controls, including monitoring ongoing activities. Our engagement will not include any analysis or consideration of the adequacy of your internal controls. However, we would be pleased to provide this service as a separate engagement and we would require a separate engagement letter to confirm the scope and related terms of the service.

You are responsible for providing us all information necessary to identify all states and foreign countries in which you are "doing business" or deriving income and the extent of business operations in each relevant state and/or country. Based upon the state income information which you provide, we will inform you of any additional state income tax filing requirements.

You are also responsible for identifying to us all bank or brokerage accounts that you own or control, or in which you have an interest, that are located or maintained outside the United States. Additionally, you are responsible for identifying to us ownership in any foreign assets or entities.

## Request for Additional Services

You may in the future request assurance and tax services that are not specified in this engagement letter. If this occurs, we may issue a separate engagement letter to confirm the scope and related terms of the additional services. In the absence of any other written communication from us, our services for the 2015 tax year will be governed by the terms of this engagement letter.

To be of greatest assistance to the company, we should be advised in advance of proposed transactions and other developments with a potential tax impact.

All returns are subject to examination by taxing authorities. In the event of an examination, the company may be requested to produce documents, records or other evidence to substantiate the items of income and deduction shown on the tax returns. In preparing your returns, we rely on your representations that you have complied with applicable documentation requirements. If an examination occurs, we will be available, upon request, to assist or represent the organization. Such additional services are not included in our fee for the preparation of the returns specified in this letter, and therefore, we will render invoices to you at our standard hourly rates, plus out-of-pocket expenses.

CITRIN COOPERMAN & COMPANY, LLP
529 FIFTH AVENUE   NEW YORK, NY 10017   |   TEL 212.697.1000   |   FAX 212.697.1004
AN INDEPENDENT FIRM ASSOCIATED WITH MOORE STEPHENS

CITRINCOOPERMAN.COM

Gawker Media, LLC
Page 3

## Responses to Third Parties

As a result of our services to you, we may be requested or subpoenaed to provide information or documents (some of which may be privileged) to you or a third party in a legal, administrative or similar proceeding in which we are not a party. If this occurs, our efforts in responding to such requests or subpoenas will be billable to you as a separate engagement irrespective of whether we are providing any other services to you at that time. You agree that we shall be entitled to compensation for our time and for reimbursement for all associated expenses, including any legal fees incurred in responding to such requests or subpoenas.

In the event that you request us to supply tax returns or tax information directly to a third party, we are required by law to obtain a specific consent letter signed by you. We will supply the letter for your signature.

## Records Retention

It is the policy of Citrin Cooperman & Company, LLP ("Citrin Cooperman") to return all original client documents at the completion of an engagement. It is your responsibility to retain and protect your records for possible future use, including potential examination by any government or regulatory agencies. We will retain a copy of the records related to this engagement for a term not to exceed seven years after filing of the tax return[s] prepared pursuant to this engagement letter.

## Invoicing and Collection

Our fees for these services will be based upon the amount of time required to complete our engagement at our standard billing rates for the personnel involved, plus out-of-pocket expenses.

Payments for services are due when rendered.  Interim billings may be submitted as work progresses and expenses are incurred. In accordance with our firm policies, work may be suspended if your account becomes overdue and will not be resumed until your account is paid in full. You acknowledge and agree that we are not required to continue work in the event of your failure to pay any statement or invoice from us in accordance with our customary invoice terms.

Should work be suspended, Citrin Cooperman shall not be liable to you for any damages that occur as a result of our ceasing to render services. In the event that a situation arises that precludes us from preparing a complete and accurate return, you agree to pay us for the time we incurred on this engagement at our standard hourly rates.

## Agreement

This agreement can only be amended in writing and signed by an authorized person at Citrin Cooperman and you.

Any dispute arising out of or relating to this engagement, or breach thereof, shall first be submitted for good faith mediation administered by the American Arbitration Association ("AAA") and its Rules for Professional Accounting and Related Services Disputes. The parties agree to discuss their differences in good faith and to attempt, with facilitation by the mediator, to reach a consensual resolution of the dispute. The mediation shall be treated as a settlement discussion and shall be confidential. The mediator may not testify for any party in any later proceeding related to the dispute. No recording or transcript shall be made of the mediation proceeding. Each party shall bear its own costs in the mediation. Absent an agreement to the contrary, the fees and expenses of the mediator shall be shared equally by the parties.

CITRIN COOPERMAN & COMPANY, LLP
529 FIFTH AVENUE   NEW YORK, NY 10017  |  TEL 212.697.1000  |  FAX 212.697.1004
AN INDEPENDENT FIRM ASSOCIATED WITH MOORE STEPHENS

CITRINCOOPERMAN.COM

Gawker Media, LLC
Page 4

Mediation shall take place at a place to be designated by the parties in New York, New York. No litigation, arbitration or other proceeding shall be commenced prior to sixty (60) days after the parties' first appearance before the mediator.

If the matter is not resolved by mediation within sixty (60) days of its submission to the mediator, then the parties shall submit the dispute for arbitration administered by the American Arbitration Association under its Professional Accounting and Related Services Dispute Resolution Rules (the "Rules").

The arbitration will be conducted before a single arbitrator selected from the AAA's Panel of Accounting Professionals and Attorneys and shall take place at a place to be designated by the parties in New York, New York. The arbitrator shall be a fit and impartial person and shall have at least ten (10) years' experience in commercial litigation, accounting or a similar field connected to the subject matter of the dispute. The arbitrator, with the aforementioned requisite qualifications, shall be selected pursuant to the Rules.

The arbitrator shall issue his or her final award in a written and reasoned decision to be provided to each party. In his or her decision, the arbitrator will declare one party the prevailing party. The arbitrator shall have the power to award all reasonable legal fees associated with the arbitration and prior mediation. The arbitrator shall have no authority to award non-monetary or equitable relief of any sort. The arbitrator shall not have authority to award damages that are punitive in nature, or that are not measured by the prevailing party's actual compensatory loss.

Any discovery sought in connection with the arbitration must be expressly approved by the arbitrator only upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitrator may disclose the existence, content or result of the arbitration only as expressly provided by the Rules.

The award reached as a result of the arbitration will be binding on the parties and confirmation of the arbitration award may be sought in any court having jurisdiction.

Any and all claims by you arising with respect to or relating to this engagement must be commenced within one (1) year following the date on which Citrin Cooperman delivered the tax return(s) associated with this engagement. If the tax return(s) are not delivered to you, for any reason, any and all claims by you arising under this engagement must be commenced within one (1) year of the date you are informed of the engagement's termination.

Citrin Cooperman shall not be liable to **Gawker Media, LLC** for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services provided under this engagement letter for an amount in excess of **Gawker Media, LLC** actual damages. In no event shall Citrin Cooperman be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs). Citrin Cooperman's maximum liability to you arising for any reason to the services rendered under this engagement shall be limited to the fees paid to Citrin Cooperman for the services.

You agree to indemnify us for any legal fees incurred by us as a result of any inaccurate or false representations made to us by you.

This agreement and any dispute relating in any way to this engagement will be governed by the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply.

CITRIN COOPERMAN & COMPANY, LLP
529 FIFTH AVENUE   NEW YORK, NY 10017  |  TEL 212.697.1000  |  FAX 212.697.1004
AN INDEPENDENT FIRM ASSOCIATED WITH MOORE STEPHENS

CITRINCOOPERMAN.COM

Gawker Media, LLC
Page 5

If the above accurately sets forth your understanding of our tax engagement, please sign the enclosed copy of this letter and return it to our office.

We are pleased that you have placed your trust in us and we look forward to working with you on this engagement and others in the future.

Very truly yours,

Citrin Cooperman & Company, LLP

**CLIENT ACCEPTANCE**

Accepted by:

Mr. Josh Albertson, Chief Operating Officer
Gawker Media, LLC

1 / 11 / 16
Date

Gawker Media, LLC

Page 6

# EXHIBIT 1

## LIST OF OTHER TAX RETURNS TO BE PREPARED FOR GAWKER MEDIA, LLC

1. Other returns (such as payroll, sales and use tax, commercial rent tax, foreign bank account reports, etc.) Please add or delete returns as applicable.

   _____

   _____

   _____

   _____

   _____

2. 2015 Business Returns for the following Related Entities (under common ownership): Please add or delete entities as applicable.

   _____

   _____

   _____

   _____

_____ Client Initial



CITRINCOOPERMAN®
FOCUS ON WHAT COUNTS

August 12, 2016

Mr. Josh Albertson
Gawker Media LLC
2 West 17th Street
New York, New York 10011

## AGREEMENT TO PROVIDE SERVICES

Dear Josh,

Thank you for this opportunity to offer services to Gawker Media LLC ("Gawker" or the "Company"). It was a pleasure speaking with you recently regarding the Company's background and the sales tax services you are seeking.

The purpose of this letter is to document the agreement between Citrin Cooperman & Company, LLP ("CC" or "Citrin Cooperman") and Gawker with respect to the state tax consulting services described below.

### Tax Services

The scope of this sales tax consulting engagement includes assisting Gawker with a New York sales/use tax audit. The Company is currently being audited by the New York State Department of Taxation and Finance (the "Department") for sales/use tax for the period June 1, 2010 through August 31, 2015 (note the end date of the audit period may be adjusted). Gawker requested CC's assistance with the conduct and management of this audit. Specifically, CC will:

1. Discuss with Gawker the availability of specific records requested by the Department and, if necessary, assist in the identification of alternative records;
2. Review Company records prior to conducting any meetings with Department personnel;
3. Based on review of records, develop overall audit strategy;
4. Manage the submission of documents to the Department and address any issues that may arise;
5. Conduct meetings with the Department;
6. Review the Department's proposed assessment (if any) for accuracy and consistency;
7. Communicate with Gawker regarding the availability of additional records needed to address any proposed assessment;
8. Correspond with the Department as related to making revisions to any proposed assessment;
9. If applicable, determine the best procedural strategy to protest all or part of the proposed assessment; and
10. Propose potential methods and/or processes to minimize future sales/use tax liabilities.

We will use our professional judgment in providing our services. Whenever we are aware that a possibly applicable tax law is unclear or that there are conflicting interpretations of the law by authorities, we will share with you our

CITRIN COOPERMAN & COMPANY, LLP
529 FIFTH AVENUE, NEW YORK, NY 10017   TEL 212.697.1000 | FAX 212.697.1004                    CITRINCOOPERMAN.COM

AN INDEPENDENT FIRM ASSOCIATED WITH MOORE STEPHENS

knowledge of the possible positions that may be taken.  If any state taxing authority should later contest any position taken, there may be an assessment of additional tax plus interest and penalties.  We assume no liability for any such additional penalties, interest or assessments.

## Client Responsibilities

Gawker will provide the necessary information for CC to perform the above described analysis.  In addition, you will make yourself and/or members of your staff available to discuss our research findings.

## Request for Additional Services

You may in the future request services that are not specified in this engagement letter.  If this occurs, we may issue a separate engagement letter to confirm the scope and related terms of the additional services.

## Responses to Third Parties

As a result of our services to you, we may be requested or subpoenaed to provide information or documents (some of which may be privileged) to you or a third party in a legal, administrative or similar proceeding in which we are not a party. If this occurs, our efforts in responding to such requests or subpoenas will be billable to you as a separate engagement irrespective of whether we are providing any other services to you at that time.  You agree that we shall be entitled to compensation for our time and for reimbursement for all associated expenses, including any legal fees incurred in responding to such requests or subpoenas.

## Records Retention

It is the policy of CC to return all original client documents at the completion of an engagement. It is your responsibility to retain and protect your records for possible future use, including potential examination by any government or regulatory agencies. We will retain a copy of the records related to this engagement for a term not to exceed seven years after we have rendered our services.

## Invoicing and Collection

CC's fee for the services will be based on the hourly billing rates for the professionals that will work on this engagement.  Eugene Ruvere, State and Local Tax Partner, will be the primary person responsible for this engagement.  Eugene's hourly billing rate is $475 per hour.  Staff expected to be involved in this project have billing rates that currently range from $90 to $410.

Payments for services are due when rendered.  Interim billings may be submitted as work progresses and expenses are incurred. In accordance with our firm policies, work may be suspended if your account becomes overdue and will not be resumed until your account is paid in full. You acknowledge and agree that we are not required to continue work in the event of your failure to pay any statement or invoice from us in accordance with our customary invoice terms.

Should work be suspended, Citrin Cooperman shall not be liable to you for any damages that occur as a result of our ceasing to render services. In the event that a situation arises that precludes us from completing this agreement, you agree to pay us for the time we incurred on this engagement at our standard hourly rates.

## Agreement

This agreement can only be amended in writing and signed by an authorized person at Citrin Cooperman and you.

Any dispute arising out of or relating to this engagement, or breach thereof, shall first be submitted for good faith mediation administered by the American Arbitration Association ("AAA") and its Rules for Professional Accounting and Related Services Disputes. The parties agree to discuss their differences in good faith and to attempt, with facilitation by the mediator, to reach a consensual resolution of the dispute. The mediation shall be treated as a settlement discussion and shall be confidential. The mediator may not testify for any party in any later proceeding related to the dispute. No recording or transcript shall be made of the mediation proceeding. Each party shall bear its own costs in the mediation. Absent an agreement to the contrary, the fees and expenses of the mediator shall be shared equally by the parties. Mediation shall take place at a place to be designated by the parties in (City), (State). No litigation, arbitration or other proceeding shall be commenced prior to sixty (60) days after the parties' first appearance before the mediator.

If the matter is not resolved by mediation within sixty (60) days of its submission to the mediator, then the parties shall submit the dispute for arbitration administered by the American Arbitration Association under its Professional Accounting and Related Services Dispute Resolution Rules (the "Rules").

The arbitration will be conducted before a single arbitrator selected from the AAA's Panel of Accounting Professionals and Attorneys and shall take place at a place to be designated by the parties. The arbitrator shall be a fit and impartial person and shall have at least ten (10) years' experience in commercial litigation, accounting or a similar field connected to the subject matter of the dispute. The arbitrator, with the aforementioned requisite qualifications, shall be selected pursuant to the Rules.

The arbitrator shall issue his or her final award in a written and reasoned decision to be provided to each party. In his or her decision, the arbitrator will declare one party the prevailing party. The arbitrator shall have the power to award all reasonable legal fees associated with the arbitration and prior mediation. The arbitrator shall have no authority to award non-monetary or equitable relief of any sort. The arbitrator shall not have authority to award damages that are punitive in nature, or that are not measured by the prevailing party's actual compensatory loss.

Any discovery sought in connection with the arbitration must be expressly approved by the arbitrator only upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitrator may disclose the existence, content or result of the arbitration only as expressly provided by the Rules.

The award reached as a result of the arbitration will be binding on the parties and confirmation of the arbitration award may be sought in any court having jurisdiction.

Any and all claims by you arising with respect to or relating to this engagement must be commenced within one (1) year following the date on which Citrin Cooperman delivered the tax return(s) associated with this engagement. If the tax return(s) are not delivered to you, for any reason, any and all claims by you arising under this engagement must be commenced within one (1) year of the date you are informed of the engagement's termination.

Citrin Cooperman shall not be liable to you for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under this engagement letter for an amount in excess of your actual damages. In no event shall Citrin Cooperman be liable for consequential, special, indirect, incidental,

punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs).

You agree to indemnify us for any legal fees incurred by us as a result of any inaccurate or false representations made to us by you.

This agreement and any dispute relating in any way to this engagement will be governed by the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply.

If you agree with the terms of this agreement, please execute this letter on the line below designated for your signature.

We are pleased that you have placed your trust in us and we look forward to working with you on this engagement and others in the future.


Very truly yours,

*Citrin Cooperman & Company LLP*
Citrin Cooperman & Company, LLP


**CLIENT ACCEPTANCE**

Approved by:

_____
Signature

William D. Holden, CRO
Name, Title

8 / 30 / 14
Date



CITRIN**COOPERMAN**®
FOCUS ON WHAT COUNTS

August 30, 2016
Mr. Josh Albertson
Gawker Media, LLC
114 Fifth Avenue
New York, NY 10011

Dear Mr. Albertson:

We are pleased to confirm our understanding of the services we are to provide for Gawker Media, LLC (the "Plan") for the year ended December 31, 2015, in connection with its annual reporting obligation under the Employee Retirement Income Security Act of 1974 ("ERISA").

Except as described below, we will audit the financial statements of Gawker Media, LLC, which comprise the statement of net assets available for benefits as of December 31, 2015, and the related statement of changes in net assets available for benefits for the year then ended, and the related notes to the financial statements (the "financial statements") and report on the supplemental schedules of the Plan for the year ended December 31, 2015. The following supplementary information accompanying the financial statements, as applicable, will be subjected to the auditing procedures applied in our audit of the financial statements and certain additional procedures:

1. Assets (Held at End of Year)

2. Loans or Fixed Income Obligations in Default or Classified as Uncollectible.

3. Leases in Default or Classified as Uncollectible.

4. Reportable Transactions.

5. Nonexempt Transactions.

6. Delinquent Participant Contributions.

These financial statements and supplemental schedules are required to be included in the Plan's Form 5500 filing with the Employee Benefits Security Administration (EBSA) of the Department of Labor ("DOL").

**Audit Objective**

Our audit will be conducted in accordance with auditing standards generally accepted in the United States of America except that, as permitted by 29 CFR 2520.103-8 of the DOL's Rules and Regulations for Reporting and Disclosure under ERISA and as instructed by you, we will not perform any auditing procedures with respect to asset information prepared and certified by Fidelity Investments, the custodian, in accordance with 29 CFR 2520.103-5, other than comparing the information with the related information included in the financial statements and supplemental schedules. Under ERISA, the Plan administrator is generally responsible to the Plan participants for the financial information and the ability of the certifying entity to issue such ERISA certification. Because of the significance of the information that we will not audit, we will not express an opinion on the financial statements and supplemental schedules. We will issue a written report upon completion of our audit of the Plan's financial statements. Our report will be addressed to the Plan Trustee of the Plan. We cannot provide assurance that a limited-scope disclaimer of opinion as permitted by Regulation 2520.103-8 of the DOL's Rules and Regulations for Reporting and Disclosure under ERISA will be expressed. Circumstances may arise in which it is necessary for us to make further modifications to our report, such as adding an emphasis-of-matter or other-matter paragraph. The form and content of the information included in the financial statements and supplemental schedules, other than that derived from the information certified to by the custodian, will be audited by us in accordance with auditing standards generally accepted in the United States of America, and will be subjected to tests of your accounting records and other procedures we

**CITRIN COOPERMAN & COMPANY, LLP**
529 FIFTH AVENUE, NEW YORK, NY 10017   TEL 212.697.1000 | FAX 212.697.1004

CITRINCOOPERMAN.COM

AN INDEPENDENT FIRM ASSOCIATED WITH MOORE STEPHENS

Mr. Josh Albertson
Gawker Media, LLC
August 30, 2016
Page 2

consider necessary to enable us to express an opinion that they are presented in compliance with the DOL's Rules and Regulations for Reporting and Disclosure under ERISA. If for any reason we are unable to complete the engagement, we may decline to issue a report or withdraw from this engagement.

## Audit Procedures

Our procedures will include tests of documentary evidence supporting the transactions recorded in the accounts and direct confirmation of investments except those certified by the custodian, plan obligations, benefit obligations, and certain other assets and liabilities by correspondence with financial institutions, and other third parties. We will also request written representations from your attorneys as part of the engagement, and they may bill you for responding to this inquiry. At the conclusion of our audit, we will require certain written representations from you about the financial statements and related matters.

An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements; therefore, our audit will involve judgment about the number of transactions to be examined and the areas to be tested, except that assets and related transactions certified to by the custodian will not be tested. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements. We will plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether from (1) errors, (2) fraudulent financial reporting, (3) misappropriation of assets, or (4) violations of laws or governmental regulations, including prohibited transactions with parties in interest or other violations of ERISA rules and regulations, that are attributable to the Plan or to acts by management or employees acting on behalf of the Plan.

Because of the inherent limitations of an audit, combined with the inherent limitations of internal control, and because we will not perform a detailed examination of all transactions, there is a risk that material misstatements may exist and not be detected by us, even though the audit is properly planned and performed in accordance with U.S. generally accepted auditing standards, except as previously noted. In addition, an audit is not designed to detect immaterial misstatements or violations of laws or governmental regulations that do not have a direct and material effect on the financial statements. However, we will inform the appropriate level of management of any material errors, fraudulent financial reporting, or misappropriation of assets that comes to our attention. We will also inform the appropriate level of management of any violations of laws or governmental regulations that come to our attention, unless clearly inconsequential, and will include prohibited transactions in the supplemental schedule of nonexempt transactions as required by the instructions to Form 5500. Our responsibility as auditors is limited to the period covered by our audit and does not extend to any later periods for which we are not engaged as auditors.

Except as described in the "Audit Objective" section, our audit will include obtaining an understanding of the Plan and its environment, including internal control, sufficient to assess the risks of material misstatement of the financial statements and to design the nature, timing, and extent of further audit procedures. An audit is not designed to provide assurance on internal control or to identify deficiencies in internal control. However, during the audit, we will communicate to you and those charged with governance internal control related matters that are required to be communicated under professional standards.

We may from time to time, and depending on the circumstances, use third-party service providers in serving your account. Third-party service providers include individuals who are not employed by our firm. We may share confidential information about you with these service providers, but remain committed to maintaining the confidentiality and security of your information. Accordingly, we maintain internal policies, procedures, and safeguards to protect the confidentiality of your personal information. In addition, we will secure confidentiality agreements with all service providers to maintain the confidentiality of your information and we will take reasonable precautions to determine that they have appropriate procedures in place to prevent the unauthorized release of your confidential

Mr. Josh Albertson
Gawker Media, LLC
August 30, 2016
Page 3

information to others. In the event that we are unable to secure an appropriate confidentiality agreement, you will be asked to provide your consent prior to the sharing of your confidential information with the third-party service provider. Furthermore, we will remain responsible for the work provided by any such third-party service providers.

In addition, we will perform certain procedures directed at considering the Plan's compliance with applicable Internal Revenue Service ("IRS") requirements for tax exempt status and ERISA plan qualification requirements. However, you should understand that our audit is not specifically designed for and should not be relied upon to disclose matters affecting plan qualifications or compliance with the ERISA and IRS requirements. If during the audit we become aware of any instances of any such matters or ways in which management practices can be improved, we will communicate them to you.

## Management Responsibilities

You are responsible for establishing and maintaining internal controls, including monitoring ongoing activities; for the selection and application of accounting principles; for establishing an accounting and financial reporting process for determining fair value measurements; and for the preparation and fair presentation of the financial statements in conformity with U.S. generally accepted accounting principles. You are also responsible for making all financial records and related information available to us and for the accuracy and completeness of that information, including the completeness and accuracy of the certification by the custodian, and for determining if the certification from the trustee includes the fair value of investments as of the Plan's year end. You are also responsible for providing us with (1) access to all information of which you are aware that is relevant to the preparation and fair presentation of the financial statements, (2) additional information that we may request for the purpose of the audit, and (3) unrestricted access to persons within the Plan from whom we determine it necessary to obtain audit evidence.

Your responsibilities include adjusting the financial statements to correct material misstatements and confirming to us in the written management representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole.

You are responsible for the design and implementation of programs and controls to prevent and detect fraud, and for informing us about all known or suspected fraud affecting the Plan involving (1) Plan management, (2) employees who have significant roles in internal control, and (3) others where the fraud could have a material effect on the financial statements. Your responsibilities include informing us of your knowledge of any allegations of fraud or suspected fraud affecting the Plan received in communications from employees, former employees, regulators, or others. In addition, you are responsible for identifying and ensuring that the Plan complies with applicable laws and regulations. You are also responsible for the fair presentation of the supplemental schedules and the form and content of the financial statements and supplemental schedules  in conformity with the DOL's Rules and Regulations for Reporting and Disclosure under ERISA. You agree to include our report on the supplementary information in any document that contains, and indicates that we have reported on, the supplementary information. You also agree to include the audited financial statements with any presentation of the supplementary information that includes our report thereon.

You agree to assume all management responsibilities for the tax services, if any, and any other nonattest services we provide; oversee the services by designating an individual, preferably from senior management, with suitable skill, knowledge, and/or experience; evaluate the adequacy and results of the services; and accept responsibility for them.

Mr. Josh Albertson
Gawker Media, LLC
August 30, 2016
Page 4

### Engagement Administration, Fees, and Other

We understand that your personnel will prepare schedules, analyses, and all confirmations we request and will locate any invoices or other documents selected by us for testing.

The audit documentation for this engagement is the property of Citrin Cooperman & Company, LLP and constitutes confidential information. However, we may be requested to make certain audit documentation available to the U.S. DOL pursuant to authority given to it by law. If requested, access to such audit documentation will be provided under the supervision of Citrin Cooperman & Company, LLP personnel. Furthermore, upon request, we may provide copies of selected audit documentation to the U.S. DOL. The U.S. DOL may intend, or decide, to distribute the copies of information contained therein to others, including other governmental agencies.

Gawker Media, LLC agrees to hold Citrin Cooperman & Company, LLP, its successors and assigns, partners, principals and employees, harmless to the fullest extent permitted by law from any litigation expense, including attorneys' fees, incurred in connection with any request (by subpoena or otherwise) for testimony, documents or other information concerning the Plan by any governmental agency or investigative body or in any litigation or dispute to which the Plan is a party other than claims by the Plan against Citrin Cooperman & Company, LLP. The indemnification will survive termination of this letter of engagement. If this occurs, we shall be entitled to compensation for our time and reimbursement for our reasonable out-of-pocket expenses in complying with such request or demand.

Soula Tsambiras is the engagement director and is responsible for supervising the engagement and signing the report or authorizing another individual to sign it. We expect to begin our audit on approximately September 1, 2016 and issue our report no later than October 15, 2016. As you have instructed, our engagement does not include preparation of the Plan's Form 5500.

Our firm has offices in several states located throughout the United States and a wholly owned and controlled offshore affiliate. Work on your engagement may be performed in any of our locations based on our scheduling needs and availability.

The AICPA's Audit and Accounting Guide, *Employee Benefit Plans*, requires that, before an auditor's report on the Plan's financial statements can be included with a filed Form 5500 (including any related schedules), the auditor must review the Form 5500 and consider whether there are any material inconsistencies between the other information in the Form and the audited financial statements (including the required supplemental schedules) or any material misstatement of fact. We will, therefore, not issue our auditor's report until the completed Form 5500 has been provided for our review.

To ensure that Citrin Cooperman & Company, LLP's independence is not impaired under the AICPA *Code of Professional Conduct*, you agree to inform the engagement partner before entering into any substantive employment discussions with any of our personnel.

Our fees for these services will be based on actual time spent at our standard hourly rates. Our standard hourly rates vary according to the degree of responsiblity involved and the experience level of the personnel assigned to your engagement. You will also be billed for travel and other out-of-pocket costs such as report production, word processing, postage, etc. The fee estimate is based on anticipated cooperation from your personnel and your plan administrator and the assumption that unexpected circumstances will not be encountered during the engagement. In addition, our fees assume that your Form 5500 has been prepared correctly and your service provider will perform any adjustments necessary to the form. If significant additional time is necessary, we will discuss it with you and arrive at a new fee estimate before we incur the additional costs. Our invoices for these fees will be rendered each month as work progresses and are payable on presentation.

Mr. Josh Albertson
Gawker Media, LLC
August 30, 2016
Page 5

In accordance with our firm policies, work may be suspended if your account becomes overdue and will not be resumed until your account is paid in full. You acknowledge and agree that we are not required to continue work in the event of your failure to pay any statement or invoice from us in accordance with our customary invoice terms. Should work be suspended, Citrin Cooperman & Company, LLP shall not be liable to you for any damages that occur as a result of our ceasing to render services. In the event that a situation arises that precludes us from completing the engagement, you agree to pay us for the time we incurred on this engagement at our standard hourly rates.

Any dispute arising out of or relating to this engagement, or breach thereof, shall first be submitted for good faith mediation administered by the American Arbitration Association ("AAA") under its Rules for Professional Accounting and Related Services Disputes (the "Rules"). The parties agree to discuss their differences in good faith and to attempt, with facilitation by the mediator, to reach a consensual resolution of the dispute. The mediation shall be treated as a settlement discussion and shall be confidential. The mediator may not testify for any party in any later proceeding related to the dispute. No recording or transcript shall be made of the mediation proceeding. Each party shall bear its own costs in the mediation. Absent an agreement to the contrary, the fees and expenses of the mediator shall be shared equally by the parties. Mediation shall take place at a place to be designated by the parties in New York, New York. No litigation, arbitration or other proceeding shall be commenced prior to sixty (60) days after the parties' first appearance before the mediator.

If the matter is not resolved by mediation within sixty (60) days of its submission to the mediator, then the parties shall submit the dispute for arbitration administered by the AAA under the Rules.

The arbitration will be conducted before a single arbitrator selected from the AAA's Panel of Accounting Professionals and Attorneys and shall take place at a place to be designated by the parties. The arbitrator shall be a fit and impartial person and shall have at least ten (10) years' experience in commercial litigation, accounting or a similar field connected to the subject matter of the dispute. The arbitrator, with the aforementioned requisite qualifications, shall be selected pursuant to Section 13 of the Rules.

The arbitrator shall issue his or her final award in a written and reasoned decision to be provided to each party. In his or her decision, the arbitrator will declare one party the prevailing party. The arbitrator shall have the power to award all reasonable legal fees associated with the arbitration and prior mediation. The arbitrator shall have no authority to award non-monetary or equitable relief of any sort. The arbitrator shall not have authority to award damages that are punitive in nature, or that are not measured by the prevailing party's actual compensatory loss.

Any discovery sought in connection with the arbitration must be expressly approved by the arbitrator only upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitrator may disclose the existence, content or result of the arbitration only as expressly provided by the Rules.

The award reached as a result of the arbitration will be binding on the parties, and confirmation of the arbitration award may be sought in any court having jurisdiction.

Any and all claims by you arising with respect to or relating to this engagement must be commenced within one (1) year following the date on which Citrin Cooperman & Company, LLP delivers its auditor's report associated with this engagement. If the auditor's report is not delivered to you, for any reason, any and all claims by you arising under this engagement must be commenced within one (1) year of the date you are informed of the engagement's termination.

Mr. Josh Albertson
Gawker Media, LLC
August 30, 2016
Page 6

Citrin Cooperman & Company, LLP shall not be liable for any actions, damages, claims, liabilities, costs, expenses, or losses in any way arising out of or relating to the services performed under this engagement letter for an amount in excess of the Plan's actual damages. In no event shall Citrin Cooperman & Company, LLP be liable for consequential, special, indirect, incidental, punitive, or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs).

This agreement and any dispute relating in any way to this engagement will be governed by the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply.

This agreement can only be amended in writing and signed by an authorized person at Citrin Cooperman & Company, LLP and you.

We appreciate the opportunity to be of service to the Plan and believe this letter accurately summarizes the significant terms of our engagement. If you have any questions, please let us know. If you agree with the terms of our engagement as described in this letter, please sign the enclosed copy and return it to us.

Very truly yours,

CITRIN COOPERMAN & COMPANY, LLP

CLIENT ACCEPTANCE
Approved by:

_____
Signature

William D. Holden, C.R.O.
Name, Title

8/30/16
Date

## **Exhibit B**

### **Michael Rhodes Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                  :
In re                                             :        Chapter 11
                                                  :
Gawker Media LLC, *et al.*,[1]                    :        Case No. 16-11700 (SMB)
                                                  :
                         Debtors.                 :        (Jointly Administered)
                                                  :
------------------------------------------------------------x

### DECLARATION OF MICHAEL RHODES IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF CITRIN COOPERMAN & COMPANY, LLP AS INDEPENDENT AUDITOR AND ACCOUNTING SERVICES PROVIDER *NUNC PRO TUNC* TO THE PETITION DATE

I, Michael Rhodes, declare as follows:

1.      I am familiar with the matters set forth herein and, if called as a witness, I could and would testify thereto.  Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Application.

2.      I am a Partner of Citrin Cooperman & Company, LLP ("Citrin"), and am duly authorized to execute this declaration (the "Declaration") on behalf of Citrin.

*3.*      I make this Declaration in support of the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Citrin Cooperman & Company, LLP as Independent Auditor and Accounting Services Provider for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* (the "Application").

4.      This Declaration is also submitted as the statement required pursuant to §§ 327(a), 329 and 504 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).  The offices of Gawker Media and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

Code") and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Qualifications

5.     Citrin is a nationally recognized full-service accounting, tax and consulting firm with nine offices and more than 800 employees in the United States.  Citrin's professionals have considerable experience providing accounting, tax, auditing and financial advisory services to businesses in a chapter 11 environment.  Citrin has been previously engaged in bankruptcy matters by creditors' committees, debtors, trustees, and examiners, including in matters involving pre-packaged chapter 11 plans as well as Section 363 sales.

6.     As further described below and in the Application, Citrin and the personnel who are assigned to this engagement have a solid understanding of the Debtors' business.  Citrin has performed services for Gawker Media and GMGI during both the pre-petition and post-petition periods advising the Debtors' management on behalf of and for the benefit of the Debtors and their estates, with regard to the Debtors' current potential tax basis and the associated tax impact of potential transaction scenarios.

7.     The principal professionals who have rendered, and are expected to render, services to the Debtors are Oren Bossin, Paul LiRosi, Eugene Ruvere, Michael Freel and myself.

## Scope of Services

8.     Citrin has agreed to provide a broad range of auditing and accounting services (collectively, the "Auditing and Accounting Services") to the Debtors in the above-captioned chapter 11 cases pursuant to the terms and conditions of that certain (i) engagement letter between the Debtors and Citrin dated as of December 14, 2015, for auditing services, (ii) engagement letter between Gawker Media and Citrin dated as of December 15, 2015, for tax preparation and compliance services, (iii) engagement letter between Gawker Media and Citrin

58464255_10

dated as of August 12, 2016, for a New York State sales and use tax audit, and (iv) that certain engagement letter between Gawker Media and Citrin dated as of August 30, 2016, for a retirement plan audit (collectively, the "Engagement Agreements"), copies of which are attached as **Exhibit 1** to **Exhibit A** of the Application. The Auditing and Accounting Services agreed upon include among other things, the following, if and to the extent requested:[2]

      a.   provide general and technical accounting advice;

      b.   assist with due diligence requests such as coordinating workpaper reviews and responding to management inquiries about historical accounting records;

      c.   provide fiscal audit for the year ending December 31, 2015;

      d.   provide audit services, relating to an employee benefit plan audit for the year ending December 31, 2015; and

      e.   respond to New York state sales and use tax audit.

9.     All of the Citrin personnel assigned to the Debtors' matters, including myself, will use our best efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these Chapter 11 Cases.

### Compensation

10.     Citrin's retention by the Debtors is conditioned upon its ability to be retained in accordance with its terms and conditions of employment, including the proposed compensation arrangements, as modified herein with respect to the Engagement Agreements.

11.     As of the Petition Date, Citrin had received $220,234.00 in payments from the Debtors pursuant to the Engagement Agreements. In the period since the Petition Date, Citrin has provided services for which payment in the amount of $28,530.00 is owed by the Debtors.

---

[2] The summary provided herein is for illustrative purposes only and is subject to the Engagement Agreements in all respects. In the event of any inconsistency between the summary of services as set forth herein and the Engagement Agreements, the Engagement Agreements will control.

58464255_10

12.     Citrin intends to apply for compensation for professional services rendered on an hourly basis and for reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court.

13.     The hourly rates and corresponding rate structure Citrin will use in these Chapter 11 Cases are the same as the hourly rates and corresponding rate structure that Citrin uses in non-restructuring matters, including for those services provided to Gawker Media and GMGI prior to the Petition Date.

14.     Citrin operates in a national marketplace for accounting services in which rates are driven by multiple factors relating to the individual professional, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

15.     Citrin's current hourly rates for matters related to these Chapter 11 Cases range as follows:

| **Billing Category** | **Range** |
| --- | --- |
| Partners | $475-560 |
| Managers and Directors | $410-460 |
| Staff Accountants | $200-250 |
| Support Staff | $90-190 |

16.     The hourly rates set forth above are set at a level designed to compensate Citrin fairly for the work of our professionals and to cover fixed and routine expenses.  Hourly rates

4

vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to annual adjustments to reflect economic and other conditions.

17.     The rate structure we have provided for postpetition services is not significantly different from (a) the rates that Citrin charges for other similar types of representations or (b) the rates that other comparable accounting services firms would charge to do work substantially similar to the work Citrin will perform in these chapter 11 cases.

18.     Consistent with our practices with other clients, Citrin provided the Debtors with a courtesy discount for certain annual audit and tax services (the "Courtesy Discount").  Such discount, consistent with industry practices of other similarly-situated accounting firms, is limited to fixed-fee audit and tax services.  The Courtesy Discount is not customarily applied to non-fixed fee auditing or accounting advisory services.  We will continue to apply the Courtesy Discount to all applicable postpetition services provided to the Debtors.  However, it is anticipated that the Courtesy Discount will not be applicable to any of the postpetiton services being provided to the Debtors as they relate to non-fixed fee auditing and accounting advisory services billed at the hourly rates discussed above.

19.     It is Citrin's policy to charge its clients in all areas of practice for all identifiable, non-overhead expenses incurred in connection with each client's case that would not have been incurred except for representation of that particular client.  It is also Citrin's policy to charge our clients only the amount actually incurred by Citrin in connection with such items.  Examples of such expenses include, among other things, postage, overnight mail, courier delivery, transportation, overtime expenses, photocopying, airfare, meals, and lodging.  In addition, Citrin professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

5

20.     Additional services may be provided under the Engagement Agreements in connection with these chapter 11 cases.  These services may include additional audit procedures in connection with the audit services already provided and other accounting and financial reporting research and consultation services related to the restructuring and related financing activities (the "Accounting Consultation Services"), as may be required in chapter 11 cases like these cases, which were not specifically contemplated in the Engagement Agreements.  The hourly rates and corresponding rate structure Citrin will use for the Accounting Consultation Services will be the same as those used for the Auditing and Accounting Services contemplated by the Engagement Agreements.

21.     Citrin intends to file monthly fee statements and interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the U.S. Trustee Guidelines and the Interim Compensation Order.  Such statements and applications will include time records setting forth, in a summary format, a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.  Citrin will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the Services.

**Compensation Received by Citrin from the Debtors**

22.     As noted above, prior to the Petition Date, Citrin provided services to Gawker Media and GMGI including Auditing and Accounting Services (the "Prepetition Services").  As discussed above, consistent with our practices with other clients, Citrin applied a Courtesy Discount to the costs incurred for Prepetition Services that were related to fixed fee audit and tax services.  The Courtesy Discount was not provided for Prepetition Services related to targeted,

6

non-fixed fee accounting and tax advisory services.  The Courtesy Discount ranged between 15-20% and was determined on a per-invoice basis based upon many factors including, among other things, overall level of effort and projected time to be incurred relative to the fixed fee.

23.    As of the Petition Date, no amounts were outstanding with respect to invoices issued by Citrin for the Prepetition Services.

24.    Citrin has received $220,234.00 from the Debtors during the period 90 days prior to the Petition Date in compensation for the Prepetition Services.

25.    On May 25, 2016, the Debtors paid $5,000.00 to Citrin as an advance payment retainer.  As of the Petition Date, the Debtors' retainer balance with Citrin remained $5,000.00. Subject to this Court's approval, Citrin intends to apply this advance in partial payment of any fees and expenses requested as part of Citrin's final fee application.

## **Disinterestedness**

26.    In connection with its proposed retention by the Debtors in these Chapter 11 Cases, Citrin undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. Specifically, Citrin obtained from the Debtors and their representatives the names of individuals and entities that may be parties in interest in these Chapter 11 Cases (the "Interested Parties") and such parties are listed on **Exhibit 1** hereto.  Citrin has searched its client databases, which contain the names of individuals and entities that are present or former clients of Citrin, to determine whether Citrin has been engaged by or can otherwise identify any relationship with any Interested Parties identified to Citrin by the Debtors and listed on **Exhibit 1** hereto.

27.    To the best of my knowledge, information and belief after reasonable inquiry, other than as disclosed in this Declaration, neither I, Citrin, nor any of our professionals or employees participating in or connected with Citrin's engagement with the Debtors: (i) is related

7

to the Debtors or any other party in interest herein, the United States Trustee for this District, or anyone employed in the United States Trustee's Office for this District; or (ii) has any connection with or holds or represents any interest adverse to the Debtors, its estate, its creditors or any other Interested Party or their respective attorneys in the matters on which Citrin is proposed to be retained.

28.     As part of its practice, Citrin is involved in many different matters and may appear in cases, proceedings, and transactions involving many different attorneys, accountants, financial consultants, and investment bankers, some of whom now, or may in the future, represent claimants and other parties in interest in these cases.  Except as otherwise provided for herein, Citrin has not been engaged by, and will not be engaged by or represent the interests of, any such parties in relation to the Debtors or their Chapter 11 Cases.  Citrin does not have any relationship with any such attorneys, accountants, financial consultants, or investment bankers that would be adverse to the Debtors or their estates.

29.     By way of further disclosure, Citrin has in the past provided personal tax return preparation services to Nick Denton, the Debtors' founder and current President and Chief Executive Officer of GMGI and President of Gawker Media.  Citrin is no longer providing and will not in the future provide any services to Mr. Denton.

30.     Citrin provided services to Mr. Denton in connection with the preparation of his personal tax returns for the 2012, 2013 and 2014 tax years and the preparation of an extension request for his personal tax returns for the 2015 tax year.  One Citrin accountant, Andrew Rotter, has in the past provided services to both the Debtors and Mr. Denton.  Mr. Rotter, a Partner in Citrin's tax department, has supervised the preparation of both the Debtors' and Mr. Denton's tax returns.  In total, Mr. Rotter has provided the Debtors with approximately 40 hours of

services over the past year, less than 5% of the total services provided by Citrin to the Debtors over that period.  Mr. Rotter, however, will not provide any services to the Debtors moving forward.  Further, Mr. Rotter, along with others at Citrin that have provided services to Mr. Denton, will be firewalled from any involvement with the work being provided to the Debtors and access to information stored in Citrin's electronic and paper files related to the Debtors.

31.     The services Citrin provided to Mr. Denton, with the exception of the 2015 extension request, were billed at a fixed-fee of $2,000.00 per tax return.  In 2014, Citrin received $2,000.00 from Gawker Media for the services we provided to Mr. Denton related to the 2012 tax return.  In 2015, Citrin issued an invoice to Mr. Denton in the amount of $4,000.00 for the services related to the 2013 and 2014 tax returns.  Citrin has elected to waive any fees related to Mr. Denton's 2015 extension request, approximately 0.25 hours of work.

32.     The invoice Citrin provided to Mr. Denton in July 2015 for the 2013 and 2014 tax returns remains outstanding.  Accordingly, Citrin is a creditor in Mr. Denton's personal chapter 11 bankruptcy case.

33.     To the extent Citrin discovers any facts bearing on the matters described herein during the period of Citrin's retention, Citrin undertakes to amend and supplement the information contained in this Affidavit to disclose such facts.

34.     Based on all of the foregoing, I believe that Citrin is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code.

35.     No agreement presently exists to share with any other person or firm any compensation received by Citrin for its services in this case.  If any such agreement is entered into, Citrin undertakes to amend and supplement this Declaration to disclose the terms of any such agreement.

36.     No promises have been received by Citrin, or by any employee thereof, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

37.     I am generally familiar with the Bankruptcy Code and the Bankruptcy Rules, and Citrin will comply with them, subject to the Orders of this Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 30 th day of August, 2016.

Michael Rhodes
Citrin Cooperman & Company, LLP

*[Signature Page to Rhodes Declaration – Citrin Cooperman]*

## **<u>Schedule 1</u>**

## **Conflicts List**

**List of Schedules**

| Schedule | Category |
| --- | --- |
| 1(a) | Debtors and Trade Names |
| 1(b) | Current and Recent Former Directors and Officers |
| 1(c) | Potential Contract Counterparties |
| 1(d) | Insurers |
| 1(e) | Other Interested Parties |
| 1(f) | Landlords |
| 1(g) | Litigants |
| 1(h) | Professionals |
| 1(i) | Shareholders |
| 1(j) | Significant Customers |
| 1(k) | Significant Unsecured Creditors |
| 1(l) | Significant Vendors |
| 1(m) | Taxing Authorities |
| 1(n) | U.S. Trustee and Key Court Personnel for the Southern District of New York |
| 1(o) | Utilities |
| 1(p) | Employees and Independent Contractors |

## SCHEDULE 1(a)

## Debtors and Trade Names

Gawker Media Group, Inc.

Gawker Media LLC

Kinja Kft.

Blogwire Hungary Intellectual Property Licensing LLC

Blogwire Hungary Kft.

Gawker.Com

Blogwire Hungary Intellectual Property Licensing LLC

Blogwire Hungary Kft.

Curbed.com LLC

Gawker Sales LLC

Gawker.Com

RGFREE

Vox Media, Inc.

Blogwire

Deadspin

Defamer

Gawker

Gawker Stalker

Gizmodo

io9

Jalopnik

Jezebel

Kinja

Kotaku

Lifehacker

Sploid

Valleywag

**SCHEDULE 1(b)**

**Current and Recent Former Directors and Officers**

Albertson, Josh

Darbyshire, Gabrielle

Denton, Nicholas

Dietrick, Heather

Epstein, Jason

Fette, Ian

Holden, William

Kidder, Scott

Plunkett, Thomas

Szasz, Peter

Tillman, Scott

Weinbrecht, Adrian

## SCHEDULE 1(c)

### Contract Counterparties

114 Fifth Avenue Ground Lessee LLC

114 Fifth Owner LP

204-210 Elizabeth Street LLC c/o S.W. Management LLC

204-210 Elizabth Street LLC

3293 Pacific LLC

A Mediocre Corporation

A Small Orange, LLC.

A9.com, Inc.

Access Inteligence, LLC

Adam Clark Estes

Adam Pash

Adam Weinstein

Ad-Juster, Inc.

Admeld, LLC

Adsfactor Holdings Limited

AdSlot Technologies, LTD.

Adtech US, Inc.

Aegon Magyarorszag Zrt.

AGIS Fire & Security Kft.

AIG

Alan Henry

Alan Kwon

Albert Burneko

Aleksander Chan

Alex Cranz

Alex Dickinson

Alex Pareene

Alexandra Cannon

Alexandra Philippides

Alexandre Dohrmann

Alissa Walker

All You Can Move SportPass Europe

Allison Jones

Allison Wentz

Allure Media Pty Limited

AM Lab Americas, LLC.

Amanda Marandola

Amazon Services LLC

Amazon Web Services, Inc.

Amazon.com, Inc.

Anastasia Weeks

Andrassy Palota Ingatlanfogalmazo Kft.

Andrea Park

Andrew Collins

Andrew Cush

Andrew Gorenstein

Andrew Harding

Andy Orin

Angela Alzona

Angela Wang

Anna Merlan

Anthony Carnevale

Anthony Hack

AOL Advertising Inc.

Ariana Cohen

Ariel Viera

Ashley Feinberg

Ashton Galloway

Atlantic Metro Communications II, Inc.

Attila Illes

Ava Gyurina

Balazs Keki

BarkBox, Inc.

Barry Petchesky

Ben Regenspan

BlueApron.com

Brainy Labs, LLC

Brandon McCoy

Brendan O'Connor

Bridget Brown

Bryan Lufkin

Bryan Menegus

C&G Group Kft c/o Brody House Group

Cadreon, LLC.

Caitleen Weaver

Camila Cabrer

Camilla Baker

Casey Speer

Casper Sleep Inc.

Catherine LeClair

Cecilia D'Anastasio

Chad Bernstein

Chelsey Hoffman

Cheryl Eddy

Chris Neveu

Chris Person

Chris Vespoli

Christina Blacken

ClickMeter

ClickStream

Cloudinary Ltd.

Clover Hope

ClubW

Colleen McMillan

Colliers International

Colliers International Kft.

Coltiers Nemzetkozi Ingattanuzemeltet6 es Kezel6 Kft.

Combat Flip Flops, LLC.

Comic Cartel

ComScore, Inc.

Corporate Communications Bt.

Courtenay O'Connor

Daniel Morgan

Darren Orf

Dashlane Inc.

DataGram

Datagram Incorporated

Dave McKenna

David Tracy

Dayna Evans

Devin Clark

Diana Moskovitz

Diane Kelly

Diego Pineda

DineInFresh, Inc. dba Plated

Dollar Shave Club, Inc.

DOUBLECLICK

Dr. Torzsa Peter Bt.

DreamHost

Drew Magary

Driftaway Inc.

Earnest Inc.

Eleanor Shechet

Elisa Solinas

Emily Ambruso

Emily Herzig

Emma Carmichael

Emprese Cedente

Eric Goldfarb

Eric Ravenscraft

Erika Audie

Erin Gloria Ryan

Erin Pettigrew

Esther Inglis-Arkell

Ethan Sommer

Evan Narcisse

Eyal Ebel

F451

F451 fka Spicy Media Editora Ltda

F451 Media Editora Ltda.

Fabiola Lara

Facebook Ireland Limited

Facebook, Inc.

Fastly, Inc.

Federal Insurance Company

Fluxmob, LLC.

Framebridge, Inc.

Fritzie Andrade

Future Publishing Limited

Gabrielle Bluestone

GeekFuel, LLC.

Germain Lussier

Giri Nathan

Globalway Participacoes Ltda.

Gloria Clark

Google Inc.

Gorilla Nation Media, LLC

Grace Robertson

Graze Inc.

Green Fox Academy

Greg Howard

Greg Lopez

GroupDynamics Kft

Gunnar Optiks

Gyorgy Bokros

Hajtas Pajtas Kft.

Handy.com

Hannah Keyser

Happy Socks

Heather Dietrick

Heather Hynes

Heidi Grothaus

HelloFresh

Hillary Crosley

Hostgator.com, LLC.

Huckberry

Hunter Slaton

Ian Fette

IDrive Inc.

Ilona Bilevych

Incisive Ltd

Incisive VNU Limited dba Incisive Incisive Ltd

Incisive VNU Ltd

Index Exchange Inc.

Infobahn Inc.

Integral Ad Science, Inc.

IseeQ Kft.

J.K Trotter

| | |
|---|---|
| Jake Inferrera | Justin Cross |
| Jalsovszky Law | Justin Potter |
| James Bartus | JW Player / LongTail Ad Solutions, Inc. |
| James Bit Design | Kaila Hale-Stern |
| James Delgiudice | Kanwar Gill |
| Jamie Weber | Kara Brown |
| JapanCrate | Kargo Global, Inc. |
| Jared Auslander | Karma Mobility Inc. |
| Jason Parham | Kate Dries |
| Jason Schreier | Kate Knibbs |
| Jason Torchinsky | Kate Lovejoy |
| Jay Hathaway | Katharine Trendacosta |
| Jeffrey Hilder | Kathryn McGinnis |
| Jennifer Ouellette | Katie Drummond |
| Jia Tolentino | Kavitha Reddy |
| Jillian Marie Lucas | Kelly Conaboy |
| Jim Boos | Kelly Faircloth |
| Jim Cooke | Kelly Monson |
| Jim Cooke | Kelly Stout |
| Joanna Rothkopf | Kerrie Uthoff |
| Joel Johnson | Kevin Draper |
| John Appel | Kid Thursday LLC., dba Staus Audio |
| John Cook | Kirk Hamilton |
| John Gelini | Kixer |
| Jordan Sargent | Kolozsvari Timea |
| Josh Bottino | Kravitha Reddy |
| Josh Laurito | Krux Digital, Inc. |
| Joshua Albertson | Lacey Donohue |
| Judy Steinbach | Lauren Bertolini |
| Julia Alvidrez | Leah Beckmann |
| Julian Muller | Leah Finnegan |
| Julianne Escobedo Shepherd | LendingTree, LLC. |
| Jung Sin | Lindsay Chipman |

Lindsey Jaffe

Lisa Bolano

LiveIntent, Inc.

LiveRail, Inc.

LOLA

Lucy Haller

Madeleine Davies

Madeleine Stone

Madison Plus Select, Inc.

Malcolm Read

Mandy Mandelstein

Margaret Taormina

Marina Galperina

Mario Aguilar

Maritza Sanche

Mark Weldon

Market Halsey Urban Renewal, LLC.

MarkMonitor Inc.

Matt Hardigree

Matt Novak

Matthew Hamer

Matthew Kulper

Mediagene, Inc.

MediaGene, Inc. fka Infobahn, Inc.

MediaMind Technologies, Inc.

Megan Gilbert

Megbizott

Melissa Green

Melissa Murray

Merch Direct, LLC

Merchant Importacao, Exportacao e Comercio, Ltda - ME

MeUndies

Mia Libby

Michael Fahey

Michael Kuntz

Michael Lindsay

Michael Nunez

Michael Orell

Michael Roselli

Michele LaFauci

Michelle Chiang

Mike Ballaban

Mikolaj Szabo

Ministry of Supply

Miranda Langrehr

Moat, Inc.

Mobiles Republic, Inc.

Mollie Horan

Moore Stephens Hezicomp Kft.

Mott & Bow

MoviePass

MVMT Watches

Nameaction Brasil Serv de Inter Ltda ME

NameAction Inc.

Nandita Raghuram

Natasha Vargas-Cooper

Nathan Grayson

NatureBox

Nervora Digital Media Group, FZ-LLC

NetMediaEurope

Netus Media Pty Limited dba Allure Media Pty LTD

Nevora Digital Media Group

NewsCred, Inc.

Nicholas Murphy

Nick Stango

Noble People

OCP Collective Corp. dba Adcade, Inc.

Omar Kardoudi

OnMarc Media

Operative Media, Inc.

Oppenheim Ugyvedi Iroda

Opportune LLP

Optimizely, Inc.

Oriole Media Corporation dba Juice Mobile

Oscar Z. Ianello Associates, Inc.

Owen & Fred Corp.

Pacific Shaving Company

Parachute Home

Patricia Hernadez

Patrick Ballester

Patrick Klepek

Patrick Laffoon

Patrick Redford

Paul Sundue

PAX

Percona, Inc.

Perfect World Entertainment

Peri Hochwald

Pixel Media Asia Limited

Platinum Rye, LLC.

Pop Chart Lab

Poprageous

Puja Patel

Quench USA, Inc.

Quip NYC Inc.

Rhone Apparel Inc.

Riley MacLeod

Rob Harvilla

Robert Finger

Ryan Brown

S&T Consulting Hungary Kft.

Sam Biddle

Sam Scherer

Sam Woolley

Samantha Lagani

Samer Kalaf

Samuel Griffel

Sarah Dedewo

Sarah Wiest

Scott Kidder

Sean Buckley

Sean MacDonald

SeatGeek

Shane Roberts

Shep McAllister

Shopify

SimpleReach, Inc.

Skillshare, Inc.

Skimbit Limited

SkimBit LTD.

SmartFX

SocialFlow, Inc.

Sophie Kleeman

Soundfreaq

Specless, LLC.

Spicy Media Editora LTDA

SpruceWares

Squarespace, Inc.

Stackcommerce

Staq, Inc.

Starcom SMG

Stassa Edwards

Stephanie Schrader

Stephen Totilo

Steve Climaco

Steven Polletta

Stowawy Cosmetics

STS Meida, Inc.

Stuart Cheshire

Sultana Khan

Superdry Wholesale, LLC

Suzy Kuzy, LLC.

Szolgaltato

Taboola Inc.

Tamas Neltz

Tara Jacoby

Taylor Berman

Technorati, Inc.

Terra Networks Brasil S.A.

TGT

The Rubicon Project, Inc.

The Sasquatch Soap Co., LLC. dba Dr. Squatch

The Status Audio

Thorin Klosowski

Tim Burke

Time Shred Services, Inc.

Times Internet Limited

Tom Ley

Tom Plunkett

Tom Scocca

Tommy Craggs

Toth Eva Nagykanizsa

Tremor Video, Inc.

UCMS Group Hungary Kft.

Udemy.com

Veronica de Souza

Victor Jeffreys

Viddler, Inc.

VNU Business Media Europe Limited

Waves Gear, LLC.

We Work

Wesley Siler

WeWork LA LLC

Whitson Gordon

William Arkin

William Haisley

William Turton

Wine Awesomeness

Wrights Media, LLC

Writers Guild of America, East

Yannick LeJacq

Zach Custer

Zachary Connett

Zoe Stahl

## SCHEDULE 1(d)

### Insurers

Aegon Magyarorszag Zrt.

AIG Europe Limited

Dewitt Stern Group, Inc.

Federal Insurance Company

Hartford Casualty Insurance Company

Hudson Insurance Company

National Union Fire Insurance Co. of Pittsburgh PA

United Healthcare Insurance Company

**SCHEDULE 1(e)**

**<u>Other Interested Parties</u>**

Cerberus Business Finance LLC

Houlihan Lokey, Inc.

K&H Bank

Latham & Watkins

Prime Clerk LLC

Riemer & Braunstein, LLP

Schulte Roth & Zabel LLP

Securities & Exchange Commission

Securities & Exchange Commission – NY Office

Silicon Valley Bank

Sullivan & Cromwell LLP

US VC Partners LP

**SCHEDULE 1(f)**

**<u>Landlords</u>**

Andrassy Palota Ingatlanforgalmazo Korlatolt Felelossegu Tarsasag

114 Fifth Owner LP

## SCHEDULE 1(g)

### Litigants

Aulistar Mark

Andrew Hudson

Zachary Cianflone

Lindsay MaHarry

Katherine Castellana

Elizabeth Nadybal

Chelsea Lo Pinto

Tim Barribeau

Patrick Frawley

Elizabeth Weinbloom

Kristin Chan

Samuel Julian

Brian Colgan

Benjamin Dorson

Rachel Atwood

Michael Kennelly

Alyssa Bereznak

Lily Newman

Kwame Opam

Terry Gene Bollea

Mitchell Williams

Meanith Huon

Ashley Terril

Charles Johnson and Got News, LLC

Teresa Thomas

Shiva Ayyadurai

Christopher Sadowski

## SCHEDULE 1(h)

### Professionals

Akerman LLP

Cahill Gordon & Reindel LLC

Citrin Cooperman & Co., LLP

Giskan Solotaroff & Anderson LLP

Goldin Solutions

Jalsovszky Law Firm

John Duncan

Klasko Immigration Law Partners, LLP

Levine Sullivan Koch & Schulz, LLP

Maples & Calder

Morrison Cohen LLP

Newmark & Co. Real Estate, Inc.

Oppenheim Law Firm

Opportune LLP

Proskauer Rose LLP

Trifolium LLC

Wilk Auslander

Zwillgen PLLC

## SCHEDULE 1(i)

### Shareholders

Berman, Taylor

Bertolini, Lauren

Blakeley, Richard Erand

Bluestone, Gabrielle

Brown, Ryan

Carmichael, Emma

Carmon, Irin

Chan, Casey

Coen, Jessica

Cooke, Jim

Craggs, Tommy

Crecente, Brian

D'Addario, John

Darbyshire, Gaby

Daulerio, Albert

DelGiudice, James

Denton, Nick

Diaz, Jesus

Dietrick, Heather

Dimmitt, Elizabeth

Dimmitt, Genevieve

Duncan, John

Ebel, Eyal

Furman, Eliot, as custodian for Alexander Tiberius Furman under the NYUTMA

Futrelle, Genevieve

Giacoman, Gabriela

Gorenstein, Andrew

Greenmount Creek Limited

Hale-Stern, Kaila

Hamer, Matt

Hardigree, Matt

Holmes, Anna

Jefferson, Whitney

Kang, Daniel

Kidder, Scott

Kozma, Jozsef

Lam, Brian

Layne, Ken

Lehnhoff, Jim

Leitch, Will

Lisanti, Mark

Lopez, Greg

Ma, Jesse

McGill, Erin

Nachlin, Jim

Newitz, Annalee

Nolan, Hamilton

O'Connor, Maureen

Pash, Adam

Petrány, Máté

Pettigrew, Erin

Plunkett, Tom

Read, Malcom

Robischon, Noah

Schreier, Jason

Schwartz, Diane

Schweizer, Julia

Scocca, Thomas

| | |
|---|---|
| Sicha, Choire | Henry, Alan |
| Spinelli, Mike | Hilder, Jeff |
| Steele, Lockhart | Jeffries, Victor |
| Stein, Sadie | Juzwiak, Rich |
| Takayama, Greg | Kéki, Balázs |
| Tate, Ryan | Knibbs, Katharine |
| Thomas, Owen | Körtesi, Gáspár |
| Toder, Matthew | Laurito, Josh |
| Trapani, Gina | Libby, Mia |
| US VC Partners LP | Magary, Drew |
| Vuong, Phillip | Marchman, Tim |
| Wert, Ray | McAllister, Shep |
| Winkelman (Ortega), Samantha | McKenna, Dave |
| Woerner, Meredith | Mittelhammer, Eric |
| Albertson, Josh | Morgan, Daniel |
| Annis, Rose | Neltz, Tamas |
| Baker, Camie | Nevins, Maxwell |
| Batty, Chris | Novak, Matt |
| Biddle, Sam | O'Connor, Courtenay |
| Bodnár, István | Pareene, Alex |
| Burke, Tim | Parham, Jason |
| Climaco, Steve | Petchesky, Barry |
| Cook, John | Popken, Ben |
| Curtis, Dustin | Price, John |
| Donohue, Lacey | Reddy, Kavi |
| Drummond, Katie | Regenspan, Ben |
| Fette, Ian | Roberts, Shane |
| George, Patrick | Sargent, Jordan |
| Georgopulos, Steph | Sommer, Ethan |
| Gonzalez, Robert | Sundue, Paul |
| Graham, Kevin | Szász, Péter |
| Grothaus, Heidi | Szatmári, András |
| Hathaway, Jay | Taomina, Margaret |

Tiku, Nitasha

Totilo, Stephen

Trotter, JK

Udvardi, Ramóna

Walker, Alissa

Weaver, Caity

Weinstein, Adam

Wentz, Allison

## SCHEDULE 1(j)

### Significant Customers

| | |
|---|---|
| 20th Century Fox | Earnest |
| 360i | Empowering Media LA |
| A9.com Inc. (Amazon Match Buy) | Empowering Media NY |
| Accordant Media | Essence |
| Adslot | f451 - US |
| Aegis Group | Facebook |
| Alliance Games | Factorylabs |
| Allure Media - GM | Fallon |
| Amazon | Future Publishing Ltd (US) |
| Amazon Commerce Revenue | General Mills, Inc. |
| AOL One | Google (BizDev) |
| Asana (Customer) | Graze |
| Assembly | Havas |
| Baru Advertising | Horizon Media |
| Blue Apron | HostGator |
| Blue Wheel Media | Hover |
| Bluehost | HTC Blinkfeed |
| Brigade Marketing | IBM |
| Casper | Indochino |
| Centro | Initiative LA |
| Cisco | Initiative NY |
| Cramer-Krasselt | Interpublic Group of Companies |
| Criteo | iSocket, Inc. |
| Crossmedia | ITVS |
| Desk.com | Kepler Group |
| Dialect Inc | Ketchum |
| DigitasLBi | Kovel Fuller |
| Dollar Shave Club | Kruskopf & Company |
| Draftkings | Liquid Advertising |

LivWell

Logmein.com

MarkLogic

McGarrah Jessee

Me Undies

Mediagene Inc - US

Mediasmith

Mediastorm, LLC

Merkley and Partners

MillerCoors

MNI

MODCo Media

Mullen

NameCheap

Newscred

Nokia

NVIDIA

Omnicom Group

Pereira & Odell

Petrol

PGR Media

Protein

Publicis Groupe

R/West

Rachael Piper Consulting

Randomhouse

RED Interactive Agency

Rodger's Townsend

RPA

Rubicon

Skillshare

Slack

Spacetime Media

SquareSpace

StackSocial

Status Audio

Sterling Rice Group

Superdry Wholesale LLC

Taboola (Biz Dev)

Tangible Media

TaxFyle

The Garage Team Mazda

TubeMogul

UCB

Udemy

Varidesk

Viewster.com

VOX Media - Curbed Investment

VSN

WavesGear

weBoost

Wieden & Kennedy

Wildcard Properties LLC

WPP

Wright's Media

Zeno Group

**SCHEDULE 1(k)**

**Significant Unsecured Creditors**

| | |
|---|---|
| Ad-Juster, Inc. (media) | JW Player (Longtail Ad Solutions, Inc.) |
| ADP Workforce Now | Katherine Fry |
| Akerman LLP | Kinja Accounts Payable |
| Alex Palmer | Krux Digital |
| Andrew Harding | L-Cut Digital Media, Inc. |
| AOL Advertising | Market Halsey Urban Renewal, LLC |
| Associated Press | Marlena Agency Inc. |
| Blane Bachelor | Medialink |
| Brandtale | Merrill Communications, LLC |
| CDW Direct | Metropolitan Cleaning, LLC |
| Cloudinary Ltd. | Moat Inc. |
| Concur Technologies, Inc. | Morrison Cohen LLP |
| Corbis Corporation | Newmark & Co. Real Estate, Inc. |
| Corey  Foster | Nick Wong Photography |
| Creative Circle, LLC. | NSONE Inc. |
| DataGram | Operative Media, Inc |
| DoubleVerify, Inc. | Optimizely, Inc. |
| DRH Internet Inc | Pacific Coast News |
| Equinox Fitness Clubs - Corp Accts | Plant Specialists LLC |
| Fastly | QZZR |
| Fried, Frank, Harris, Shriver & Jacobson LLP | REDBOOKS |
| Getty Images | Risk Strategies Company |
| Giaco Furino | Shenker & Bonaparte, LLP |
| Google Inc. (DoubleClick) | SimpleReach, Inc. |
| Google, Inc. (Analytics) | Sizmek Technologies Inc. |
| Hunter Slaton | Specless |
| Ian Fette | STAQ, INC. |
| Jelle Claeys Automotive Artwork | Submarine Leisure Club, Inc. (Wirecutter) |
| Joshua M Lees | Submersive Media |

The Hartford

The Oliver Group

Viddler, Inc.

# SCHEDULE 1(l)

## Significant Vendors

| | |
|---|---|
| 114 Fifth Avenue | Kforce Inc. |
| ADP PayEx | Kornhaber Brown, LLC |
| Advanced Electronic Solutions, Inc. | Lay It Out, Inc. |
| AMA Consulting Engineers P.C. | Leiberts Royal Green Appliances Inc. |
| AMEX Corporate GM - 01006 | Lewis Rice LLC |
| Andrew Liszewski | LionTree Advisors LLC |
| Apple Inc. (media) | LJ DUFFY, Inc. |
| Baby Llama Productions LLC | Maples & Calder (GM LLC) |
| Bajibot Media | NetRatings, LLC |
| Big Mango, Inc. | Netsuite, Inc. |
| Bird & Bird LLP | NVE, Inc. |
| Brannock & Humphries | OCP Collective Corp. |
| Cahill Gordon & Reindel LLP | Olson Kundig Architects |
| Cannes Trip 2015 | Olson Kundig Interiors |
| Catalyst | OnMarc Media Inc. |
| Cerberus Capital Management LP | Opportune LLP |
| ComScore Inc. | Redscout LLC |
| Con Edison (210) | Robert Half |
| CytexOne Technology, LLC | Ropes & Gray LLP |
| Dynect, Inc | Santa Monica Air Center, Inc. |
| Emma C Lanigan (Cookson) | Structure Tone |
| Fidelity 401k | SW Management LLC |
| Harder Mirell & Abrams | TangentVector, Inc. |
| Hatch Content, LLC | Tapestry Associates LLC |
| HeartWork, Inc. | Thomas & Locicero PL |
| Houlihan Lokey | Treasury of the United States |
| Howard Kennedy | TrueForm Concrete, LLC |
| Inform Interiors | Veritas Pictures, Inc. |
| Jesus Diaz (vendor) | Versus LLC |

Vizu Corporation

Voya Financial 401K

WB Wood NY

Young America Capital

**SCHEDULE 1(m)**

**<u>Taxing Authorities</u>**

Internal Revenue Service

Budapesti Önkormányzat

Hungary National Tax Authority

New York City Department of Finance

New York State Commissioner of Taxation and Finance

## SCHEDULE 1(n)

### U.S. Trustee and Key Court Personnel for the Southern District of New York

| | |
|---|---|
| Cecilia G. Morris | Paul K. Schwartzberg |
| James L. Garrity | Richard C. Morrissey |
| Martin Glenn | Serene Nakano |
| Mary Kay Vyskocil | Susan Arbeit |
| Michael E. Wiles | Susan Golden |
| Robert D. Drain | Sylvester Sharp |
| Robert E. Grossman | Victor Abriano |
| Sean H. Lane | William K. Harrington |
| Shelley C. Chapman | |
| Stuart M. Bernstein | |
| Alicia Leonhard | |
| Amanda Cassara | |
| Andrea B. Schwartz | |
| Andy Velez-Rivera | |
| Anna M. Martinez | |
| Brian S. Masumoto | |
| Cheuk M. Ng | |
| Danny A. Choy | |
| Ercilia A. Mendoza | |
| Greg M. Zipes | |
| Guy A. Van Baalen | |
| Ilusion Rodriguez | |
| Kathleen Schmitt | |
| Linda A. Riffkin | |
| Lisa Penpraze | |
| Maria Catapano | |
| Mary V. Moroney | |
| Myrna R. Fields | |
| Nadkarni Joseph | |

**SCHEDULE 1(o)**

**<u>Utilities</u>**

114 Fifth Avenue Ground Lessee

Atlantic Metro Communications

Benefit Resource, Inc.

Cogent Communications

Con Edison

ShoreTel Inc.

## SCHEDULE 1(p)

### Employees and Independent Contractors

| | |
|---|---|
| Asd Mario Aguilar | Devin Clark |
| Joshua Albertson | Gloria Clark |
| Angelica Alzona | Steve Climaco |
| Fritzie Andrade | Ariana Cohen |
| Erika Audie | Andrew Collins |
| Jared Auslander | Zachary Connett |
| Ilene Baker | John Cook |
| Michael Ballaban | James Cooke |
| Patrick Ballester | Alexandra Cranz |
| Chad Bernstein | Hillary Crosley |
| Lauren Bertolini | Justin Cross |
| Sam Biddle | Andrew Cush |
| Ilona Bilevych | Zach Custer |
| Christina Blacken | Madeleine Davies |
| Gabrielle Bluestone | Maritza De Leon |
| James Boos | Veronica de Souza |
| Joshua Bottino | Sarah Dedewo |
| Robert Bricken | Ernest Deeb |
| Ryan Brown | Nick Denton |
| Kara Brown | Alexander Dickinson |
| Bridget Brown | Heather Dietrick |
| Timothy Burke | Alexandre Dohrmann |
| Albert Burneko | Lacey Donohue |
| Camila Cabrer | Kevin Draper |
| Alexandra Cannon | Kathryn Dries |
| Emma Carmichael | Katherine Drummond |
| Anthony Carnevale | Eyal Ebel |
| Casey Chan | Cheryl Eddy |
| Michelle Chiang | Stassa Edwards |

| | |
|---|---|
| Adam Estes | Samer Kalaf |
| Michael Fahey | Omar Kardoudi Segarra |
| Georgia Faircloth | Hannah Keyser |
| Ashley Feinberg | Sophie Kleeman |
| Ian Fette | Patrick Klepek |
| Robert Finger | Thorin Klosowski |
| Ashton Galloway-Taylor | Michele Lafauci |
| Marina Galperina | Patrick Laffoon |
| John Gelini | Samantha Lagani |
| Patrick George | Miranda Langrehr |
| Kanwar Gill | Joshua Laurito |
| Ariel Gononsky | Catherine LeClair |
| George Grayson | Thomas Ley |
| Melissa Green | Mia Libby |
| Samuel Griffel | Michael Lindsay |
| Heidi Grothaus | Katelyn Lovejoy |
| Ava Gyurina | Germain Lussier |
| Anthony Hack | Riley MacLeod |
| William Haisley | Andrew Magary |
| Lucy Haller | Amanda Mandelstein |
| Kirk Hamilton | Timothy Marchman |
| Matt Hardigree | Alex Mason |
| Andrew Harding | Shepherd McAllister |
| Alan Henry | Kathryn McGinnis |
| Patricia Hernandez-Ramos | David McKenna |
| Emily Herzig | Colleen McMillan |
| Clover Hope | Bryan Menegus |
| Mollie Horan | Anna Merlan |
| Heather Hynes | Maria Misra |
| Attila Illes | Kelly Monson |
| Jacob Inferrera | Daniel Morgan |
| Victor Jeffreys | Diana Moskovitz |
| Richard Juzwiak | Julian Muller |

| | |
|---|---|
| Nick Murphy | Michael Roselli |
| Melissa Murray | Joanna Rothkopf |
| Evan Narcisse | William Sansom |
| Giri Nathan | Jordan Sargent |
| Tamas Neltz | Samuel Scherer |
| Chris Neveu | Stephanie Schrader |
| Hamilton Nolan | Jason Schreier |
| Matthew Novak | Jillian Schulz |
| Michael Nunez | Taryn Schweitzer |
| Brendan O'Connor | Thomas Scocca |
| Courtenay O'Connor | Eleanor Shechet |
| Michael Orell | Julianne Shepherd |
| Darren Orf | Hunter Slaton |
| Andrew Orin | Elisa Solinas |
| Raphael Orlove | Ethan Sommer |
| Jennifer Ouellette | Casey Speer |
| Alexander Pareene | Zoe Stahl |
| Andrea Park | Nicholas Stango |
| Adam Pash | Judith Steinbach |
| Puja Patel | Madeleine Stone |
| Christopher Person | Kelly Stout |
| Barry Petchesky | Richard Sundue |
| Alexandra Philippides | Margaret Taormina |
| Diego Pineda | Jia Tolentino |
| Steven Polletta | Jason Torchinsky |
| John Price | Stephen Totilo |
| Nandita Raghuram | David Tracy |
| Eric Ravenscraft | Katharine Trendacosta |
| Kavitha Reddy | Joseph Trotter |
| Patrick Redford | William Turton |
| Benjamin Regenspan | Kerrie Uthoff |
| Shane Roberts | Christopher Vespoli |
| Grace Robertson | Alissa Walker |

| | |
|---|---|
| Angela Wang | Jamie Condliffe |
| Jamie Weber | Chris Mills |
| Anastasia Weeks | James Whitbrook |
| Allison Wentz | David Nield |
| Samuel Woolley | Kathryn Jezer-Morton |
| András Szatmári | Madeleine Collier |
| Attila Kocsis | Fruzsina Kuhari |
| Balázs Kéki | Robert Stokes |
| Balázs Pőcze | Adam Kovac |
| Dmitry Lambrianov | Jared "Jay Allen" Goodwin |
| Gábor Kacsik | Anthony Dejolde |
| Gáspár Körtesi | Carlos Rebato |
| György Bokros | Carlos Hierro |
| Ildikó Kriston | Matias Martinez |
| István Bodnár | Eduardo Marin |
| János Hardi | Miguel Redondo |
| László Heves | Zolani Stewart |
| Levente Molnár | Reshma Bhai |
| Linda Bucsánszki | Manisha Aggarwal |
| Luca Németh | Lindsay Handmer |
| Márton Borlay | Daniel Strudwick |
| Mikhail Mitrofanov | Eva Jurczyk |
| Olivér Kovács | Mihir Patkar |
| Péter Szász | Toshihisa Nakamura |
| Ramóna Udvardi | Kirsten O'Regan |
| Szabolcs Vida | Alexandra Nursall |
| Szilvia Németh | Nicholas Cameron |
| Zoltán Balázs | Ralph Jones |
| Zoltán Kalmár | Elizabeth Edgar |
| George Dvorsky | Rawiya Elkhadir |
| Luke Plunkett | Ian Dransfield |
| Brian Ashcraft | Stefan Janke |
| Andrew Liszewski | Mark Wilson |

| | |
|---|---|
| Sniff Petrol Limited | Halmar Sveinbjornsson |
| James Fell | Amit Reut |
| Peter Ryan | Rosa Gregori |
| Manuel Mendez Perez | Sarah Moroz |
| Angel Jiminez | Jason Richards |
| Jacob Rose | Ravi Somaiya |
| Bram Gieben | Reut Amit |
| Eva Holland | Michael "Massoud" Martin |
| Nathan Thompson | Fariha Roisin |
| Priya Elias | William Herkewitz |
| Scaachi Koul | Lev Hellebust (Bratishenko) |
| Helen Appleyard | Pranav Dixit |
| Omar Karduodi Segarra | Danny Allen |
| Cara Ellison | Karan Atul Shah |
| Estelle Tang | James Baker |
| Anupa Mistry | Gary Cutlack |
| Brodie Lancaster | Adelaide Dugdale |
| Jess Shanahan | Katherine Hannaford |
| Jesus Diaz | Brian Hogg |
| Herbert Lui (Wonder Shuttle Media, Inc) | Andrew James |
| Graham Ruthven | Chris Mcveigh |
| Stacy May Fowles | Apoorva Prasad |
| Andrew Gibney | Michelle Tofi |
| Daniel Harris | Yareniz Saavedra Padilla |
| Alex Hess | Carlos Risco |
| Chris Koentges | Elias Notario Perez |
| Kevin O'Brien | Eric Tecayehuatl |
| Achal Prabhala | Robert Boffard |
| David Sommer | Guy Combs |
| Monica Heisey | Joel Meadows |
| Sara Mcculloch | Chris Harris |
| Jakob Wenngren | Guy Porepp |
| Alex Bejerstrand | Anthony Mark Dewhurst |

Peter Orosz

Ryan Pierce

Neill Watson

George Williams

Chris Harris

Natasha Chenier

Esther Sassaman

Luke Malone

Mikhail Mitrofanov

Leo Wichtowski

Kevin Mahon

Simon Parkin

Quintin Smith

Kathleen Williams

Ollie Barder

Simon Mapp

Andrew Mcmillen

David Veselka

Kevin Mahon

David Gilson

Mark O'Neill

Spanner Spencer

Tom Cassell

Kenneth Gibson

Clare Kane

Zolani Stewart

Josephine Huetlin

## **Exhibit C**

**William D. Holden Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
                                             :

In re                                   :        Chapter 11

                                           :

Gawker Media LLC, *et al.*,[1]     :        Case No. 16-11700 (SMB)

                                           :

               Debtors.      :        (Jointly Administered)

                                           :

------------------------------------------------------x

**DECLARATION OF WILLIAM D. HOLDEN IN SUPPORT OF
DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
AUTHORIZING THE RETENTION AND EMPLOYMENT OF CITRIN
COOPERMAN & COMPANY, LLP AS INDEPENDENT AUDITOR AND
ACCOUNTING SERVICES PROVIDER FOR THE DEBTORS AND DEBTORS IN
POSSESSION EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

I, William D. Holden, being duly sworn, hereby declare as follows:

      1.      I am the Chief Restructuring Officer of Gawker Media LLC ("Gawker Media"),

located at 114 Fifth Avenue, 2d Floor, New York, New York 10014.

      2.      I submit this declaration (this "Declaration") in support of the application (the

"Application")[2] of the Debtors for an Order, pursuant to sections 327(a) and 330 of title 11 of the

United States Codes (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules")

authorizing the employment of Citrin Cooperman & Company, LLP ("Citrin") as independent

auditor and accounting services provider to the Debtors *nunc pro tunc* to the Petition Date.  The

facts set forth herein are based on my personal knowledge or information provided to me by the

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).  The offices of Gawker Media LLC and Gawker Media Group, Inc. are located at 114 Fifth Avenue, 2d Floor, New York, NY 10011.  Kinja Kft.'s offices are located at Andrassy ut 66. 1062 Budapest, Hungary.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Application.

Debtors' management, employees or members of my staff working under my supervision, other

professionals, and my review of the books and records and relevant documents.

### The Debtors' Selection of Citrin

3.      Citrin is proposed to serve as independent auditor and accounting services

provider to the Debtors, responsible for the matters described in the Application.  The Debtors

recognize that a careful selection should be made when selecting and managing any professional

acting for debtors in a chapter 11 case, to ensure that the professionals are subject to the same

client-driven market forces, scrutiny, and accountability as professionals in non-bankruptcy

engagements.

4.      Here, Citrin has been engaged by the Debtors since 2010 and Citrin was subjected

to the client-driven market forces and scrutiny when it was originally retained.    The

contemplated engagement continues Citrin's engagement on the same terms subject only to

standard periodic rate increases.

5.      In addition, under the contemplated engagement, Citrin will charge only those

actual and necessary expenses, for which it bills its clients, incurred in connection with the

rendering of accounting services described in the Application, by category and nature of services

rendered.

6.      My understanding is that when Citrin was originally retained in 2010, Gawker

Media considered alternative accounting firms as part of its selection process.  Gawker Media's

decision to retain Citrin required consideration of cost, but more importantly, its expertise in

providing accounting services to similarly-situated companies.  Citrin was retained in a non-

bankruptcy environment, and was subjected to the competition in the non-bankruptcy

marketplace when it was retained.

2

**Rate Structure**

7.      In my capacity as Chief Restructuring Officer, I am responsible, along with Heather Dietrick (General Counsel), for monitoring outside professional services firms retained by the Debtors in the ordinary course of business.  As indicated above, Citrin has informed the Debtors that its rates for the Auditing and Accounting Services are comparable to or less than the rates Citrin charges for similar matters in a non-bankruptcy environment.  As discussed below, I, or members of my team, or employees working under my supervision, are responsible for reviewing the invoices regularly submitted by Citrin.

**Cost Supervision**

8.      The Debtors recognize that it is their responsibility to monitor closely the billing practices of professional services firms that they retain to ensure the fees and expenses paid by the estate remain consistent with the Debtors' expectations and the exigencies of these Chapter 11 Cases.  The Debtors will continue to review the invoices that Citrin regularly submits, and together with Citrin, address any unforeseen fees and expenses, as necessary.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

58464255_10

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: August **30**, 2016

William D. Holden