SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------x

ST. PAUL FIRE & MARINE INSURANCE
COMPANY,

      Plaintiff,

 - against -

GAWKER MEDIA, LLC,

      Defendant.

-----------------------------------------------------------------x

Index No. _____

**COMPLAINT FOR DECLARATORY JUDGMENT**

   Plaintiff St. Paul Fire & Marine Insurance Company ("Travelers"), by its attorneys, Putney, Twombly, Hall & Hirson LLP, as and for its Complaint for Declaratory Judgment against Defendant Gawker Media, Inc. ("Gawker"), alleges upon information and belief, as follows:

### PARTIES, JURISDICTION AND VENUE

   1. At all times relevant hereto, Travelers was a foreign corporation authorized to issue policies of insurance in the State of New York.

   2. Gawker is a New York corporation with its principal business offices located in New York, New York.

   3. The claims asserted herein arise under the common law of the State of New York. This Court has jurisdiction over this action as both Travelers and Gawker regularly conduct and transact business in New York County.

4. Venue is properly laid in the County of New York since Gawker maintains its principal office in New York County.

## SUBSTANTIVE ALLEGATIONS

5. From at least 2014 to date Gawker has been a media company engaged in the business of attracting the attention of others for the purpose of seeking customers or supporters or increasing sales or business.

6. Gawker is a media company engaged in the business of transmitting audio and visual material over the Internet. Such material is entertainment, music, or news programming, or advertising transmitted with that programming.

7. Gawker is a media company engaged, in whole or in part, in the business of creating and producing material for distribution or sale to others.

8. Gawker is a named insured under a policy of insurance issued by Travelers, policy number ZPP-14T16747-14-47, policy period 10/22/14-10/22/15 (the "Primary Policy").

9. Subject to all of its terms and conditions, the Primary Policy provides coverage for damages because of "bodily injury" and "property damage" occurring during the Policy period, 10/22/14-10/22/15 time period and caused by an "event," and for damages for "advertising injury" and "personal injury" caused by enumerated offenses that takes place during the Policy period.

10. The Primary Policy defines "bodily injury" as "any physical harm, including sickness or disease, to the physical health of other persons," including mental anguish, injury, or illness, and emotional distress "if [they] result[] in or from such physical harm, sickness, or disease."

11. The Primary Policy defines "event" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

12. The Primary Policy defines "personal injury" as "injury, other than bodily injury or advertising injury, that's caused by a personal injury offense."

13. The term "personal injury offense" is defined in the Primary Policy to include: libel, or slander in or with "covered material" (defined to mean any material in an form of expression, including material made known in or with any electronic means of communication, such as the Internet); making known to any person or organization covered material that disparages the business, services or work of others; or making known to any person covered material that violates a person's right of privacy.

14. The Primary Policy defines "advertising injury" as "injury other than bodily injury or personal injury, that's caused by an advertising injury offense."

15. The term "advertising injury offense" is defined in the Primary Policy to include: libel or slander in or with "covered material" (defined to mean any material in an form of expression, including material made known in or with any electronic means of communication, such as the Internet); making known to any person or organization any covered material that disparages the business, services or work of others; or making known to any person covered material that violates a person's right of privacy.

16. The Primary Policy contains the following exclusion:

**Advertising, broadcasting, or publishing business.**

We won't cover personal injury that results from any of the following personal injury offenses committed by or for any protected person whose business is advertising, broadcasting, or publishing, if such offense is committed in any advertising, broadcasting, or publishing done by or for that protected person:

    · Libel, or slander, in or with covered material.

    · Making known to any person or organization covered material that disparages the business, premises, products, services, work, or completed work of others.

    · Making known to any person or organization covered material that violates a person's right of privacy.

    Nor will we cover advertising injury that results from an offense committed by or for any protected person whose business is advertising, broadcasting, or publishing.

17. The Primary Policy contains the following exclusion:

    **Deliberately breaking the law.**

    We won't cover personal injury or advertising injury that results from:

    · the protected person knowingly breaking any criminal law; or

    · any person or organization breaking any criminal law with the consent or knowledge of the protected person.

18. The Primary Policy contains the following exclusion:

    **Expected or intended bodily injury or property damage.**

    We won't cover bodily injury or property damage that's expected or intended by the protected person.

19. The Primary Policy contains the following exclusion:

    **Material previously made known or used.**

    We won't cover personal injury or advertising injury that results from:

    · any material that was first made known before this agreement begins; or

    · any advertising idea or advertising material, or any slogan or title, of others whose unauthorized use in your advertising was first committed before this agreement begins.

20. The Primary Policy contains the following exclusion:

> **Field of Entertainment.**
>
> We won't cover personal injury or advertising injury that results from the content of, or the advertising or publicizing for, any Properties or Programs which are within your Field of Entertainment Business.

21. The Primary Policy contains the following exclusion:

> **Described work.**
>
> We won't cover injury or damage or medical expenses that result from your work described in the Coverage Summary.

22. The Coverage Summary referenced in the "**Described Work**" endorsement states: "ALL CLAIMS RELATED TO ADVERTISING AND PERSONAL INJURY ARISING OUT OF MEDIA CONTENT ARE EXCLUDED."

23. Gawker also is insured under a under an umbrella policy of insurance issued by Travelers, policy number ZUP-14T16759-14-47, policy period 10/22/14-10/22/15 (the "Umbrella Policy").

24. The Umbrella Policy contains definitions and exclusions substantially similar to those set forth above with respect to the Primary Policy.

25. On or about May 2, 2016, Mr. Terry Bollea filed a lawsuit against, among others, Gawker in the Circuit Court of the Sixth Judicial Circuit, Pinnellas County, Florida (the "Bollea Lawsuit").

26. Mr. Bollea's claims against Gawker are premised on Gawker's disclosure of the transcript of a recording to the National Enquirer in which Mr. Bollea made racist comments, and alleges that "Gawker participated in, facilitated and/or contributed to the use and public dissemination of the content of the court-protected confidential transcript to the Enquirer" (¶49).

27. Mr. Bollea's complaint asserts claims against Gawker for: (i) intentional interference with contractual relations and advantageous business relationships and (ii) intentional infliction of emotional distress.

28. With respect to his claim for intentional interference with contractual relations and advantageous business relationships, Mr. Bollea alleges at paragraph 122 of his complaint that he has suffered "substantial economic injury, loss, damages and harm from actual interference with Plaintiff's employment, endorsement and other contracts and advantageous business relationships in an amount subject to proof."

29. With respect to his claim for intentional interference with contractual relations and advantageous business relationships, Mr. Bollea alleges at paragraph 125 of his complaint that Gawker's conduct was intentional as to any damages caused to him, and he expressly disclaims any acts of negligence engaged in by Gawker as to him.

30. With respect to his claim for intentional infliction of emotional distress, Mr. Bollea alleges at paragraph 131 of his complaint that he has suffered "emotional injury, damage, loss, harm, anxiety, embarrassment, humiliation, shame and severe emotional distress."

31. With respect to his claim for intentional infliction of emotional distress, Mr. Bollea alleges at paragraph 133 of his complaint that Gawker's conduct was intentional as to any damages caused to him, and he expressly disclaims any acts of negligence engaged in by Gawker as to him.

32. On or about May 4, 2016, the Bollea Lawsuit was tendered by Gawker to Travelers for coverage.

33. None of the damages sought in the Bollea Lawsuit are within the coverage provided by the Primary or Umbrella Policies and, by letter dated May 26, 2016, Travelers properly declined Mr. Bollea's tender.

34. Travelers is entitled to judgment in the form of a declaration that it does not owe Gawker defense or indemnity coverage under the Primary Policy or Umbrella Policy for the claims asserted against Gawker in the Bollea Lawsuit.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Relief – No Duty to Defend and Indemnify)

35. Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs 1 through 34 of the Complaint, inclusive, as if fully set forth at length herein.

36. None of the claims asserted against Gawker in the Bollea Lawsuit seek damages covered by the Primary or Umbrella Policies.

37. None of claims asserted against Gawker in the Bollea Lawsuit seek damages because of "bodily injury" or "property damage" caused by an "event."

38. Even if Mr. Bollea sought damages because of "bodily injury" or "property damage" caused by an "event," coverage for such damages would be precluded by one or more of the foregoing exclusions contained in the Policies.

39. To the extent Mr. Bollea seeks damages because of "personal injury" caused by a "personal injury offense," coverage for such damages would be precluded by the one or more of the foregoing exclusions contained in the Policies.

40. None of claims asserted against Gawker in the Bollea Lawsuit seek damages because of "advertising injury" caused by an "advertising injury offense."

41. To the extent Mr. Bollea seeks damages because of "advertising injury" caused by an "advertising injury offense," coverage for such damages would be precluded by the one or more of the foregoing exclusions contained in the Policies.

42. By reason of the foregoing, Travelers is entitled to a declaration that it has no obligation under the Primary Policy or the Umbrella Policy to provide insurance coverage to Gawker for the claims asserted against Gawker in the Bollea Lawsuit.

43. Upon information and belief, Gawker disputes the foregoing and maintains that Travelers is obligated to defend and/or indemnify Gawker with respect to the Bollea Lawsuit under the Primary Policy and/or the Umbrella Policy.

44. There exists a real, actual and justiciable controversy between Travelers and Gawker as to their respective rights and obligations under the Primary Policy and Umbrella Policy with respect to the Bollea Lawsuit.

45. Travelers has no adequate remedy at law.

WHEREFORE, Travelers demands judgment against Gawker and requests that the Court:

1. On Travelers' First Cause of Action, determine and declare that:

   (i) Travelers has no duty to defend Gawker in connection with the claims asserted against Gawker in the underlying Bollea Lawsuit;

   (ii) Travelers has no duty to indemnify Gawker in connection with the claims asserted against Gawker in the underlying Bollea Lawsuit; and

2. Grant such other and further relief as it may deem just, proper, and

equitable, including interest, cost and attorneys' fees.

Dated: New York, New York
August __, 2016

                              PUTNEY TWOMBLY HALL & HIRSON LLP

                              By _____
                                  Thomas A. Martin

                              Thomas A. Martin
                              James M. Strauss
                              521 Fifth Avenue
                              New York, New York 10175
                              Telephone: 212-682-0020
                              Telefax: 212-682-9380
                              *Attorneys for Plaintiff*