## Exhibit A

**Engagement Agreements**



Attest & Assurance | Tax Compliance & Research | Specialty & Consulting

December 14, 2015

Mr. Josh Albertson, Chief Operating Officer
Gawker Media Group, Inc. and Subsidiaries
114 Fifth Avenue, Floor 2
New York, NY 10011

Dear Josh:

We are pleased to confirm our understanding of the services we are to provide for Gawker Media Group, Inc. and Subsidiaries (the "Company") for the year ended December 31, 2015.

We will audit the financial statements of Gawker Media Group, Inc. and Subsidiaries, which comprise the consolidated  balance sheet as of December 31, 2015, and the related consolidated statements of income, changes in shareholders' equity, and cash flows for the year then ended, and the related notes to the consolidated financial statements.

## Audit Objective

The objective of our audit is the expression of an opinion about whether your financial statements are fairly presented, in all material respects, in conformity with U.S. generally accepted accounting principles. Our audit will be conducted in accordance with auditing standards generally accepted in the United States of America and will include tests of your accounting records and other procedures we consider necessary to enable us to express such an opinion. We will issue a written report upon completion of our audit of Gawker Media Group, Inc. and Subsidiaries' financial statements. Our report will be addressed to Josh Albertson, Chief Operating Officer and the shareholders of Gawker Media Group, Inc. and Subsidiaries. We cannot provide assurance that an unmodified opinion will be expressed. Circumstances may arise in which it is necessary for us to modify our opinion or add an emphasis-of-matter or other-matter paragraph. If our opinion is other than unmodified, we will discuss the reasons with you in advance. If, for any reason, we are unable to complete the audit or are unable to form or have not formed an opinion, we may decline to express an opinion or withdraw from this engagement.

## Audit Procedures

Our procedures will include tests of documentary evidence supporting the transactions recorded in the accounts, tests of the physical existence of inventories, and direct confirmation of certain assets and liabilities by correspondence with selected customers, creditors, and financial institutions. We will also request written representations from your attorneys as part of the engagement. At the conclusion of our audit, we will require certain written representations from you about the financial statements and related matters.

An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements; therefore, our audit will involve judgment about the number of transactions to be examined and the areas to be tested. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements. We will plan and perform the audit to obtain reasonable assurance

CITRIN COOPERMAN & COMPANY, LLP
529 FIFTH AVENUE   NEW YORK, NY 10017   |   TEL 212.697.1000   |   FAX 212.697.1004              CITRINCOOPERMAN.COM

AN INDEPENDENT FIRM ASSOCIATED WITH MOORE STEPHENS

Mr. Josh Albertson
Gawker Media Group, Inc. and Subsidiaries
December 14, 2015
Page 2

about whether the financial statements are free of material misstatement, whether from (1) errors, (2) fraudulent financial reporting, (3) misappropriation of assets, or (4) violations of laws or governmental regulations that are attributable to the Company or to acts by management or employees acting on behalf of the Company.

Because of the inherent limitations of an audit, combined with the inherent limitations of internal control, and because we will not perform a detailed examination of all transactions, there is a risk that material misstatements may exist and not be detected by us, even though the audit is properly planned and performed in accordance with U.S. generally accepted auditing standards. In addition, an audit is not designed to detect immaterial misstatements or violations of laws or governmental regulations that do not have a direct and material effect on the financial statements. However, we will inform the appropriate level of management of any material errors, fraudulent financial reporting, or misappropriation of assets that comes to our attention. We will also inform the appropriate level of management of any violations of laws or governmental regulations that come to our attention, unless clearly inconsequential. Our responsibility as auditors is limited to the period covered by our audit and does not extend to any later periods for which we are not engaged as auditors.

Our audit will include obtaining an understanding of the Company and its environment, including internal control, sufficient to assess the risks of material misstatement of the financial statements and to design the nature, timing, and extent of further audit procedures. An audit is not designed to provide assurance on internal control or to identify deficiencies in internal control. However, during the audit, we will communicate to you and those charged with governance internal control related matters that are required to be communicated under professional standards.

We may from time to time, and depending on the circumstances, use third-party service providers in serving your account. Third-party service providers include individuals who are not employed by our firm. We may share confidential information about you with these service providers, but remain committed to maintaining the confidentiality and security of your information. Accordingly, we maintain internal policies, procedures, and safeguards to protect the confidentiality of your personal information. In addition, we will secure confidentiality agreements with all service providers to maintain the confidentiality of your information, and we will take reasonable precautions to determine that they have appropriate procedures in place to prevent the unauthorized release of your confidential information to others. In the event that we are unable to secure an appropriate confidentiality agreement, you will be asked to provide your consent prior to the sharing of your confidential information with the third-party service provider. Furthermore, we will remain responsible for the work provided by any such third-party service providers.

## Management Responsibilities

You agree to assume all management responsibilities for the tax services and any other nonattest services we provide; oversee the services by designating an individual, preferably from senior management, with suitable skill, knowledge, or experience; evaluate the adequacy and the results of the services; and accept responsibility for them.

Mr. Josh Albertson
Gawker Media Group, Inc. and Subsidiaries
December 14, 2015
Page 3

You are responsible for establishing and maintaining internal controls, including monitoring ongoing activities; for the selection and application of accounting principles; and for the preparation and fair presentation of the financial statements in conformity with U.S. generally accepted accounting principles. You are also responsible for making all financial records and related information available to us and for the accuracy and completeness of that information. You are also responsible for providing us with (a) access to all information of which you are aware that is relevant to the preparation and fair presentation of the financial statements, (b) additional information that we may request for the purpose of the audit, and (c) unrestricted access to persons within the Company from whom we determine it necessary to obtain audit evidence.

Your responsibilities include adjusting the financial statements to correct material misstatements and confirming to us in the management representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole.

You are responsible for the design and implementation of programs and controls to prevent and detect fraud, and for informing us about all known or suspected fraud affecting the Company involving (a) management, (b) employees who have significant roles in internal control, and (c) others where the fraud could have a material effect on the financial statements. Your responsibilities include informing us of your knowledge of any allegations of fraud or suspected fraud affecting the Company received in communications from employees, former employees, regulators, or others. In addition, you are responsible for identifying and ensuring that the Company complies with applicable laws and regulations.

### Engagement Administration, Fees, and Other

We understand that your employees will prepare all cash, accounts receivable, and other confirmations we request and will locate any documents selected by us for testing.

Gawker Media Group, Inc. and Subsidiaries agrees to hold Citrin Cooperman & Company, LLP, its successors and assigns, partners, principals and employees, harmless to the fullest extent permitted by law from any litigation expense, including attorneys' fees, incurred in connection with any request (by subpoena or otherwise) for testimony, documents or other information concerning the Company by any governmental agency or investigative body or in any litigation or dispute to which the Company is a party other than claims by the Company against Citrin Cooperman & Company, LLP. The indemnification will survive termination of this letter of engagement. If this occurs, we shall be entitled to compensation for our time and reimbursement for our reasonable out-of-pocket expenses in complying with such request or demand.

Michael Rhodes is the engagement partner and is responsible for supervising the engagement and signing the report or authorizing another individual to sign it. We expect to begin our preliminary audit work on December 15, 2015, our year end field work approximately April 18, 2016 and to issue our report no later than June 30, 2016.

To ensure that Citrin Cooperman & Company, LLP's independence is not impaired under the AICPA *Code of Professional Conduct*, you agree to inform the engagement partner before entering into any substantive employment discussions with any of our personnel.

Mr. Josh Albertson
Gawker Media Group, Inc. and Subsidiaries
December 14, 2015
Page 4

We estimate that our fees for these services will be $50,000. You will also be billed for travel and other out-of-pocket costs such as report production, word processing, postage, etc. The fee estimate is based on anticipated cooperation from your personnel and the assumption that unexpected circumstances will not be encountered during the engagement. If significant additional time is necessary, we will keep you informed of any problems we encounter and our fees will be adjusted accordingly. Our invoices for these fees will be rendered each month as work progresses and are payable on presentation.

In accordance with our firm policies, work may be suspended if your account becomes overdue and will not be resumed until your account is paid in full. You acknowledge and agree that we are not required to continue work in the event of your failure to pay any statement or invoice from us in accordance with our customary invoice terms. Should work be suspended, Citrin Cooperman & Company, LLP shall not be liable to you for any damages that occur as a result of our ceasing to render services. In the event that a situation arises that precludes us from completing the engagement, you agree to pay us for the time we incurred on this engagement at our standard hourly rates.

Any dispute arising out of or relating to this engagement, or breach thereof, shall first be submitted for good faith mediation administered by the American Arbitration Association ("AAA") under its Rules for Professional Accounting and Related Services Disputes (the "Rules"). The parties agree to discuss their differences in good faith and to attempt, with facilitation by the mediator, to reach a consensual resolution of the dispute. The mediation shall be treated as a settlement discussion and shall be confidential. The mediator may not testify for any party in any later proceeding related to the dispute. No recording or transcript shall be made of the mediation proceeding. Each party shall bear its own costs in the mediation. Absent an agreement to the contrary, the fees and expenses of the mediator shall be shared equally by the parties. Mediation shall take place at a place to be designated by the parties in New York, New York. No litigation, arbitration or other proceeding shall be commenced prior to sixty (60) days after the parties' first appearance before the mediator.

If the matter is not resolved by mediation within sixty (60) days of its submission to the mediator, then the parties shall submit the dispute for arbitration administered by the AAA under the Rules.

The arbitration will be conducted before a single arbitrator selected from the AAA's Panel of Accounting Professionals and Attorneys and shall take place at a place to be designated by the parties. The arbitrator shall be a fit and impartial person and shall have at least ten (10) years' experience in commercial litigation, accounting or a similar field connected to the subject matter of the dispute. The arbitrator, with the aforementioned requisite qualifications, shall be selected pursuant to Section 13 of the Rules.

The arbitrator shall issue his or her final award in a written and reasoned decision to be provided to each party. In his or her decision, the arbitrator will declare one party the prevailing party. The arbitrator shall have the power to award all reasonable legal fees associated with the arbitration and prior mediation. The arbitrator shall have no authority to award non-monetary or equitable relief of any sort. The arbitrator shall not have authority to award damages that are punitive in nature, or that are not measured by the prevailing party's actual compensatory loss.

Any discovery sought in connection with the arbitration must be expressly approved by the arbitrator only upon a showing of substantial need by the party seeking discovery.

Mr. Josh Albertson
Gawker Media Group, Inc. and Subsidiaries
December 14, 2015
Page 5

All aspects of the arbitration shall be treated as confidential. The parties and the arbitrator may disclose the existence, content or result of the arbitration only as expressly provided by the Rules.

The award reached as a result of the arbitration will be binding on the parties, and confirmation of the arbitration award may be sought in any court having jurisdiction.

Any and all claims by you arising with respect to or relating to this engagement must be commenced within one (1) year following the date on which Citrin Cooperman & Company, LLP delivers its auditor's report associated with this engagement. If the auditor's report is not delivered to you, for any reason, any and all claims by you arising under this engagement must be commenced within one (1) year of the date you are informed of the engagement's termination.

Citrin Cooperman & Company, LLP shall not be liable for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under this engagement letter for an amount in excess of the Company's actual damages. In no event shall Citrin Cooperman & Company, LLP be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs).

This agreement and any dispute relating in any way to this engagement will be governed by the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply.

This agreement can only be amended in writing and signed by an authorized person at Citrin Cooperman & Company, LLP and you.

We appreciate the opportunity to be of service to you and believe this letter accurately summarizes the significant terms of our engagement. If you have any questions, please let us know. If you agree with the terms of our engagement as described in this letter, please sign the enclosed copy and return it to us.

Very truly yours,

CITRIN COOPERMAN & COMPANY, LLP

Agreed and accepted:

Josh Albertson, Chief Operating Officer
Gawker Media Group, Inc. and Subsidiaries

1/4/16
Date



**CITRINCOOPERMAN**

Attest & Assurance | Tax Compliance & Research | Specialty & Consulting

December 15, 2015

Mr. Josh Albertson, Chief Operating Officer
Gawker Media, LLC
114 Fifth Avenue, Floor 2
New York, NY 10011

Dear Mr. Albertson:

We appreciate the opportunity to work with you. This letter is to confirm and specify the terms of our engagement and to clarify the nature and extent of the tax services we will provide.

### Tax Compliance Services

We will prepare your 2015 federal, state and local business income tax returns and any other related returns listed on Exhibit 1. You may request that we prepare additional 2015 related tax returns by listing them in the appropriate space on Exhibit 1. You may include such returns as payroll tax, sales tax, Forms 1099, foreign account reporting and related business entities for which you have signing authority. If during the course of our engagement we become aware of any additional filings that may be required, we will inform you of the obligation and prepare them upon your authorization.

We will prepare all returns covered in this engagement from information you furnish us. We will not audit or verify the data you submit, although we may ask you to clarify it or furnish us with additional data.

We will e-file your returns as required by the taxing authorities. We will provide you with a copy of the income tax returns for your review prior to electronic transmission. After you have reviewed the returns, you must provide us with a signed authorization indicating that you have reviewed the returns and that, to the best of your knowledge, they are correct. We cannot transmit the returns to the taxing authorities until we have the signed authorization.

We will perform our services in accordance with applicable professional standards. Our work in connection with the preparation of your business income tax returns does not include any procedures designed to discover significant errors, fraud, defalcations or other irregularities, should any exist. We will render such accounting and bookkeeping assistance as we find necessary for preparing the business income tax returns.

Our firm has offices in several states located throughout the United States and a wholly owned and controlled offshore affiliate. Your return may be processed in any of our locations based on our scheduling needs and availability.

We will use our professional judgment in preparing your returns. Whenever we are aware that a possibly applicable tax law is unclear or that there are conflicting interpretations of the law by authorities (e.g., tax agencies and courts), we will share with you our knowledge of the possible positions that may be taken on your return. In accordance with our professional standards, we will follow whatever position you request, as long as it is consistent with the codes, regulations and interpretations that have been promulgated. If the Internal Revenue Service should later contest the position taken, there may be an assessment of additional tax plus interest and penalties. We assume no liability for any such additional penalties, interest or assessments.

Gawker Media, LLC
Page 2

## Client Responsibilities

You will provide us with all information required for preparing complete and accurate returns no later than 30 days prior to their original due date (or extended due date, if applicable). We cannot ensure that your returns will be completed by their applicable due date if all of your information is not provided to us within this time frame, and we assume no liability for any penalties and interest that may occur as a result. You should retain all the documents, books and records that form the basis of income and deductions. The documents may be necessary to prove the accuracy and completeness of the returns to a taxing authority.

You have the final responsibility for the income tax returns and, therefore, you should review them carefully before you sign them.

You are responsible for management decisions and functions. That responsibility includes designating an individual with suitable skill, knowledge or experience to oversee all the specific services we perform as part of this engagement, as well as evaluating the adequacy and results of the services performed.

You are responsible for establishing and maintaining internal controls, including monitoring ongoing activities.  Our engagement will not include any analysis or consideration of the adequacy of your internal controls. However, we would be pleased to provide this service as a separate engagement and we would require a separate engagement letter to confirm the scope and related terms of the service.

You are responsible for providing us all information necessary to identify all states and foreign countries in which you are "doing business" or deriving income and the extent of business operations in each relevant state and/or country. Based upon the state income information which you provide, we will inform you of any additional state income tax filing requirements.

You are also responsible for identifying to us all bank or brokerage accounts that you own or control, or in which you have an interest, that are located or maintained outside the United States. Additionally, you are responsible for identifying to us ownership in any foreign assets or entities.

## Request for Additional Services

You may in the future request assurance and tax services that are not specified in this engagement letter. If this occurs, we may issue a separate engagement letter to confirm the scope and related terms of the additional services.  In the absence of any other written communication from us, our services for the 2015 tax year will be governed by the terms of this engagement letter.

To be of greatest assistance to the company, we should be advised in advance of proposed transactions and other developments with a potential tax impact.

All returns are subject to examination by taxing authorities. In the event of an examination, the company may be requested to produce documents, records or other evidence to substantiate the items of income and deduction shown on the tax returns.  In preparing your returns, we rely on your representations that you have complied with applicable documentation requirements. If an examination occurs, we will be available, upon request, to assist or represent the organization.  Such additional services are not included in our fee for the preparation of the returns specified in this letter, and therefore, we will render invoices to you at our standard hourly rates, plus out-of-pocket expenses.

CITRIN COOPERMAN & COMPANY, LLP
529 FIFTH AVENUE   NEW YORK, NY 10017   |   TEL 212.697.1000   |   FAX 212.697.1004
AN INDEPENDENT FIRM ASSOCIATED WITH MOORE STEPHENS

CITRINCOOPERMAN.COM

## Responses to Third Parties

As a result of our services to you, we may be requested or subpoenaed to provide information or documents (some of which may be privileged) to you or a third party in a legal, administrative or similar proceeding in which we are not a party. If this occurs, our efforts in responding to such requests or subpoenas will be billable to you as a separate engagement irrespective of whether we are providing any other services to you at that time. You agree that we shall be entitled to compensation for our time and for reimbursement for all associated expenses, including any legal fees incurred in responding to such requests or subpoenas.

In the event that you request us to supply tax returns or tax information directly to a third party, we are required by law to obtain a specific consent letter signed by you. We will supply the letter for your signature.

## Records Retention

It is the policy of Citrin Cooperman & Company, LLP ("Citrin Cooperman") to return all original client documents at the completion of an engagement. It is your responsibility to retain and protect your records for possible future use, including potential examination by any government or regulatory agencies. We will retain a copy of the records related to this engagement for a term not to exceed seven years after filing of the tax return[s] prepared pursuant to this engagement letter.

## Invoicing and Collection

Our fees for these services will be based upon the amount of time required to complete our engagement at our standard billing rates for the personnel involved, plus out-of-pocket expenses.

Payments for services are due when rendered. Interim billings may be submitted as work progresses and expenses are incurred. In accordance with our firm policies, work may be suspended if your account becomes overdue and will not be resumed until your account is paid in full. You acknowledge and agree that we are not required to continue work in the event of your failure to pay any statement or invoice from us in accordance with our customary invoice terms.

Should work be suspended, Citrin Cooperman shall not be liable to you for any damages that occur as a result of our ceasing to render services. In the event that a situation arises that precludes us from preparing a complete and accurate return, you agree to pay us for the time we incurred on this engagement at our standard hourly rates.

## Agreement

This agreement can only be amended in writing and signed by an authorized person at Citrin Cooperman and you.

Any dispute arising out of or relating to this engagement, or breach thereof, shall first be submitted for good faith mediation administered by the American Arbitration Association ("AAA") and its Rules for Professional Accounting and Related Services Disputes. The parties agree to discuss their differences in good faith and to attempt, with facilitation by the mediator, to reach a consensual resolution of the dispute. The mediation shall be treated as a settlement discussion and shall be confidential. The mediator may not testify for any party in any later proceeding related to the dispute. No recording or transcript shall be made of the mediation proceeding. Each party shall bear its own costs in the mediation. Absent an agreement to the contrary, the fees and expenses of the mediator shall be shared equally by the parties.

Gawker Media, LLC
Page 4

Mediation shall take place at a place to be designated by the parties in New York, New York. No litigation, arbitration or other proceeding shall be commenced prior to sixty (60) days after the parties' first appearance before the mediator.

If the matter is not resolved by mediation within sixty (60) days of its submission to the mediator, then the parties shall submit the dispute for arbitration administered by the American Arbitration Association under its Professional Accounting and Related Services Dispute Resolution Rules (the "Rules").

The arbitration will be conducted before a single arbitrator selected from the AAA's Panel of Accounting Professionals and Attorneys and shall take place at a place to be designated by the parties in New York, New York. The arbitrator shall be a fit and impartial person and shall have at least ten (10) years' experience in commercial litigation, accounting or a similar field connected to the subject matter of the dispute. The arbitrator, with the aforementioned requisite qualifications, shall be selected pursuant to the Rules.

The arbitrator shall issue his or her final award in a written and reasoned decision to be provided to each party. In his or her decision, the arbitrator will declare one party the prevailing party. The arbitrator shall have the power to award all reasonable legal fees associated with the arbitration and prior mediation. The arbitrator shall have no authority to award non-monetary or equitable relief of any sort. The arbitrator shall not have authority to award damages that are punitive in nature, or that are not measured by the prevailing party's actual compensatory loss.

Any discovery sought in connection with the arbitration must be expressly approved by the arbitrator only upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitrator may disclose the existence, content or result of the arbitration only as expressly provided by the Rules.

The award reached as a result of the arbitration will be binding on the parties and confirmation of the arbitration award may be sought in any court having jurisdiction.

Any and all claims by you arising with respect to or relating to this engagement must be commenced within one (1) year following the date on which Citrin Cooperman delivered the tax return(s) associated with this engagement. If the tax return(s) are not delivered to you, for any reason, any and all claims by you arising under this engagement must be commenced within one (1) year of the date you are informed of the engagement's termination.

Citrin Cooperman shall not be liable to **Gawker Media, LLC** for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under this engagement letter for an amount in excess of **Gawker Media, LLC** actual damages. In no event shall Citrin Cooperman be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs). Citrin Cooperman's maximum liability to you arising for any reason to the services rendered under this engagement shall be limited to the fees paid to Citrin Cooperman for the services.

You agree to indemnify us for any legal fees incurred by us as a result of any inaccurate or false representations made to us by you.

This agreement and any dispute relating in any way to this engagement will be governed by the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply.

Gawker Media, LLC
Page 5

If the above accurately sets forth your understanding of our tax engagement, please sign the enclosed copy of this letter and return it to our office.

We are pleased that you have placed your trust in us and we look forward to working with you on this engagement and others in the future.

Very truly yours,

Citrin Cooperman & Company, LLP

**CLIENT ACCEPTANCE**

Accepted by:

Mr. Josh Albertson, Chief Operating Officer
Gawker Media, LLC

1/14/16

Date

CITRIN COOPERMAN & COMPANY, LLP
529 FIFTH AVENUE   NEW YORK, NY 10017  |  TEL 212.697.1000  |  FAX 212.697.1004
AN INDEPENDENT FIRM ASSOCIATED WITH MOORE STEPHENS

CITRINCOOPERMAN.COM

## EXHIBIT 1

LIST OF OTHER TAX RETURNS TO BE PREPARED FOR GAWKER MEDIA, LLC

1. Other returns (such as payroll, sales and use tax, commercial rent tax, foreign bank account reports, etc.) Please add or delete returns as applicable.

_____

_____

_____

_____

_____

2. 2015 Business Returns for the following Related Entities (under common ownership): Please add or delete entities as applicable.

_____

_____

_____

_____

_____ Client Initial

CITRIN COOPERMAN & COMPANY, LLP
529 FIFTH AVENUE   NEW YORK, NY 10017  |  TEL 212.697.1000  |  FAX 212.697.1004

AN INDEPENDENT FIRM ASSOCIATED WITH MOORE STEPHENS

CITRINCOOPERMAN.COM



CITRINCOOPERMAN®
FOCUS ON WHAT COUNTS

August 12, 2016

Mr. Josh Albertson
Gawker Media LLC
2 West 17th Street
New York, New York 10011

### AGREEMENT TO PROVIDE SERVICES

Dear Josh,

Thank you for this opportunity to offer services to Gawker Media LLC ("Gawker" or the "Company"). It was a pleasure speaking with you recently regarding the Company's background and the sales tax services you are seeking.

The purpose of this letter is to document the agreement between Citrin Cooperman & Company, LLP ("CC" or "Citrin Cooperman") and Gawker with respect to the state tax consulting services described below.

### Tax Services

The scope of this sales tax consulting engagement includes assisting Gawker with a New York sales/use tax audit. The Company is currently being audited by the New York State Department of Taxation and Finance (the "Department") for sales/use tax for the period June 1, 2010 through August 31, 2015 (note the end date of the audit period may be adjusted). Gawker requested CC's assistance with the conduct and management of this audit. Specifically, CC will:

1. Discuss with Gawker the availability of specific records requested by the Department and, if necessary, assist in the identification of alternative records;
2. Review Company records prior to conducting any meetings with Department personnel;
3. Based on review of records, develop overall audit strategy;
4. Manage the submission of documents to the Department and address any issues that may arise;
5. Conduct meetings with the Department;
6. Review the Department's proposed assessment (if any) for accuracy and consistency;
7. Communicate with Gawker regarding the availability of additional records needed to address any proposed assessment;
8. Correspond with the Department as related to making revisions to any proposed assessment;
9. If applicable, determine the best procedural strategy to protest all or part of the proposed assessment; and
10. Propose potential methods and/or processes to minimize future sales/use tax liabilities.

We will use our professional judgment in providing our services. Whenever we are aware that a possibly applicable tax law is unclear or that there are conflicting interpretations of the law by authorities, we will share with you our

CITRIN COOPERMAN & COMPANY, LLP
529 FIFTH AVENUE, NEW YORK, NY 10017   TEL 212.697.1000  |  FAX 212.697.1004                    CITRINCOOPERMAN.COM

AN INDEPENDENT FIRM ASSOCIATED WITH MOORE STEPHENS

knowledge of the possible positions that may be taken. If any state taxing authority should later contest any position taken, there may be an assessment of additional tax plus interest and penalties. We assume no liability for any such additional penalties, interest or assessments.

## Client Responsibilities

Gawker will provide the necessary information for CC to perform the above described analysis. In addition, you will make yourself and/or members of your staff available to discuss our research findings.

## Request for Additional Services

You may in the future request services that are not specified in this engagement letter. If this occurs, we may issue a separate engagement letter to confirm the scope and related terms of the additional services.

## Responses to Third Parties

As a result of our services to you, we may be requested or subpoenaed to provide information or documents (some of which may be privileged) to you or a third party in a legal, administrative or similar proceeding in which we are not a party. If this occurs, our efforts in responding to such requests or subpoenas will be billable to you as a separate engagement irrespective of whether we are providing any other services to you at that time. You agree that we shall be entitled to compensation for our time and for reimbursement for all associated expenses, including any legal fees incurred in responding to such requests or subpoenas.

## Records Retention

It is the policy of CC to return all original client documents at the completion of an engagement. It is your responsibility to retain and protect your records for possible future use, including potential examination by any government or regulatory agencies. We will retain a copy of the records related to this engagement for a term not to exceed seven years after we have rendered our services.

## Invoicing and Collection

CC's fee for the services will be based on the hourly billing rates for the professionals that will work on this engagement. Eugene Ruvere, State and Local Tax Partner, will be the primary person responsible for this engagement. Eugene's hourly billing rate is $475 per hour. Staff expected to be involved in this project have billing rates that currently range from $90 to $410.

Payments for services are due when rendered. Interim billings may be submitted as work progresses and expenses are incurred. In accordance with our firm policies, work may be suspended if your account becomes overdue and will not be resumed until your account is paid in full. You acknowledge and agree that we are not required to continue work in the event of your failure to pay any statement or invoice from us in accordance with our customary invoice terms.

Should work be suspended, Citrin Cooperman shall not be liable to you for any damages that occur as a result of our ceasing to render services. In the event that a situation arises that precludes us from completing this agreement, you agree to pay us for the time we incurred on this engagement at our standard hourly rates.

## Agreement

This agreement can only be amended in writing and signed by an authorized person at Citrin Cooperman and you.

Any dispute arising out of or relating to this engagement, or breach thereof, shall first be submitted for good faith mediation administered by the American Arbitration Association ("AAA") and its Rules for Professional Accounting and Related Services Disputes. The parties agree to discuss their differences in good faith and to attempt, with facilitation by the mediator, to reach a consensual resolution of the dispute. The mediation shall be treated as a settlement discussion and shall be confidential. The mediator may not testify for any party in any later proceeding related to the dispute. No recording or transcript shall be made of the mediation proceeding. Each party shall bear its own costs in the mediation. Absent an agreement to the contrary, the fees and expenses of the mediator shall be shared equally by the parties. Mediation shall take place at a place to be designated by the parties in (City), (State). No litigation, arbitration or other proceeding shall be commenced prior to sixty (60) days after the parties' first appearance before the mediator.

If the matter is not resolved by mediation within sixty (60) days of its submission to the mediator, then the parties shall submit the dispute for arbitration administered by the American Arbitration Association under its Professional Accounting and Related Services Dispute Resolution Rules (the "Rules").

The arbitration will be conducted before a single arbitrator selected from the AAA's Panel of Accounting Professionals and Attorneys and shall take place at a place to be designated by the parties. The arbitrator shall be a fit and impartial person and shall have at least ten (10) years' experience in commercial litigation, accounting or a similar field connected to the subject matter of the dispute. The arbitrator, with the aforementioned requisite qualifications, shall be selected pursuant to the Rules.

The arbitrator shall issue his or her final award in a written and reasoned decision to be provided to each party. In his or her decision, the arbitrator will declare one party the prevailing party. The arbitrator shall have the power to award all reasonable legal fees associated with the arbitration and prior mediation. The arbitrator shall have no authority to award non-monetary or equitable relief of any sort. The arbitrator shall not have authority to award damages that are punitive in nature, or that are not measured by the prevailing party's actual compensatory loss.

Any discovery sought in connection with the arbitration must be expressly approved by the arbitrator only upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitrator may disclose the existence, content or result of the arbitration only as expressly provided by the Rules.

The award reached as a result of the arbitration will be binding on the parties and confirmation of the arbitration award may be sought in any court having jurisdiction.

Any and all claims by you arising with respect to or relating to this engagement must be commenced within one (1) year following the date on which Citrin Cooperman delivered the tax return(s) associated with this engagement. If the tax return(s) are not delivered to you, for any reason, any and all claims by you arising under this engagement must be commenced within one (1) year of the date you are informed of the engagement's termination.

Citrin Cooperman shall not be liable to you for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under this engagement letter for an amount in excess of your actual damages. In no event shall Citrin Cooperman be liable for consequential, special, indirect, incidental,

punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs).

You agree to indemnify us for any legal fees incurred by us as a result of any inaccurate or false representations made to us by you.

This agreement and any dispute relating in any way to this engagement will be governed by the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply.

If you agree with the terms of this agreement, please execute this letter on the line below designated for your signature.

We are pleased that you have placed your trust in us and we look forward to working with you on this engagement and others in the future.

Very truly yours,

Citrin Cooperman & Company, LLP

**CLIENT ACCEPTANCE**

Approved by:

_____
Signature

William D. Holden, CRO
Name, Title

8 / 30 / 14
Date



CITRIN**COOPERMAN**®
FOCUS ON WHAT COUNTS

August 30, 2016
Mr. Josh Albertson
Gawker Media, LLC
114 Fifth Avenue
New York, NY 10011

Dear Mr. Albertson:

We are pleased to confirm our understanding of the services we are to provide for Gawker Media, LLC (the "Plan") for the year ended December 31, 2015, in connection with its annual reporting obligation under the Employee Retirement Income Security Act of 1974 ("ERISA").

Except as described below, we will audit the financial statements of Gawker Media, LLC, which comprise the statement of net assets available for benefits as of December 31, 2015, and the related statement of changes in net assets available for benefits for the year then ended, and the related notes to the financial statements (the "financial statements") and report on the supplemental schedules of the Plan for the year ended December 31, 2015. The following supplementary information accompanying the financial statements, as applicable, will be subjected to the auditing procedures applied in our audit of the financial statements and certain additional procedures:

1. Assets (Held at End of Year)

2. Loans or Fixed Income Obligations in Default or Classified as Uncollectible.

3. Leases in Default or Classified as Uncollectible.

4. Reportable Transactions.

5. Nonexempt Transactions.

6. Delinquent Participant Contributions.

These financial statements and supplemental schedules are required to be included in the Plan's Form 5500 filing with the Employee Benefits Security Administration (EBSA) of the Department of Labor ("DOL").

**Audit Objective**

Our audit will be conducted in accordance with auditing standards generally accepted in the United States of America except that, as permitted by 29 CFR 2520.103-8 of the DOL's Rules and Regulations for Reporting and Disclosure under ERISA and as instructed by you, we will not perform any auditing procedures with respect to asset information prepared and certified by Fidelity Investments, the custodian, in accordance with 29 CFR 2520.103-5, other than comparing the information with the related information included in the financial statements and supplemental schedules. Under ERISA, the Plan administrator is generally responsible to the Plan participants for the financial information and the ability of the certifying entity to issue such ERISA certification. Because of the significance of the information that we will not audit, we will not express an opinion on the financial statements and supplemental schedules. We will issue a written report upon completion of our audit of the Plan's financial statements. Our report will be addressed to the Plan Trustee of the Plan. We cannot provide assurance that a limited-scope disclaimer of opinion as permitted by Regulation 2520.103-8 of the DOL's Rules and Regulations for Reporting and Disclosure under ERISA will be expressed. Circumstances may arise in which it is necessary for us to make further modifications to our report, such as adding an emphasis-of-matter or other-matter paragraph. The form and content of the information included in the financial statements and supplemental schedules, other than that derived from the information certified to by the custodian, will be audited by us in accordance with auditing standards generally accepted in the United States of America, and will be subjected to tests of your accounting records and other procedures we

CITRIN COOPERMAN & COMPANY, LLP
529 FIFTH AVENUE, NEW YORK, NY 10017    TEL 212.697.1000 | FAX 212.697.1004              CITRINCOOPERMAN.COM

AN INDEPENDENT FIRM ASSOCIATED WITH MOORE STEPHENS

Mr. Josh Albertson
Gawker Media, LLC
August 30, 2016
Page 2

consider necessary to enable us to express an opinion that they are presented in compliance with the DOL's Rules and Regulations for Reporting and Disclosure under ERISA. If for any reason we are unable to complete the engagement, we may decline to issue a report or withdraw from this engagement.

## Audit Procedures

Our procedures will include tests of documentary evidence supporting the transactions recorded in the accounts and direct confirmation of investments except those certified by the custodian, plan obligations, benefit obligations, and certain other assets and liabilities by correspondence with financial institutions, and other third parties. We will also request written representations from your attorneys as part of the engagement, and they may bill you for responding to this inquiry. At the conclusion of our audit, we will require certain written representations from you about the financial statements and related matters.

An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements; therefore, our audit will involve judgment about the number of transactions to be examined and the areas to be tested, except that assets and related transactions certified to by the custodian will not be tested. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements. We will plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether from (1) errors, (2) fraudulent financial reporting, (3) misappropriation of assets, or (4) violations of laws or governmental regulations, including prohibited transactions with parties in interest or other violations of ERISA rules and regulations, that are attributable to the Plan or to acts by management or employees acting on behalf of the Plan.

Because of the inherent limitations of an audit, combined with the inherent limitations of internal control, and because we will not perform a detailed examination of all transactions, there is a risk that material misstatements may exist and not be detected by us, even though the audit is properly planned and performed in accordance with U.S. generally accepted auditing standards, except as previously noted. In addition, an audit is not designed to detect immaterial misstatements or violations of laws or governmental regulations that do not have a direct and material effect on the financial statements. However, we will inform the appropriate level of management of any material errors, fraudulent financial reporting, or misappropriation of assets that comes to our attention. We will also inform the appropriate level of management of any violations of laws or governmental regulations that come to our attention, unless clearly inconsequential, and will include prohibited transactions in the supplemental schedule of nonexempt transactions as required by the instructions to Form 5500. Our responsibility as auditors is limited to the period covered by our audit and does not extend to any later periods for which we are not engaged as auditors.

Except as described in the "Audit Objective" section, our audit will include obtaining an understanding of the Plan and its environment, including internal control, sufficient to assess the risks of material misstatement of the financial statements and to design the nature, timing, and extent of further audit procedures. An audit is not designed to provide assurance on internal control or to identify deficiencies in internal control. However, during the audit, we will communicate to you and those charged with governance internal control related matters that are required to be communicated under professional standards.

We may from time to time, and depending on the circumstances, use third-party service providers in serving your account. Third-party service providers include individuals who are not employed by our firm. We may share confidential information about you with these service providers, but remain committed to maintaining the confidentiality and security of your information. Accordingly, we maintain internal policies, procedures, and safeguards to protect the confidentiality of your personal information. In addition, we will secure confidentiality agreements with all service providers to maintain the confidentiality of your information and we will take reasonable precautions to determine that they have appropriate procedures in place to prevent the unauthorized release of your confidential

Mr. Josh Albertson
Gawker Media, LLC
August 30, 2016
Page 3

information to others. In the event that we are unable to secure an appropriate confidentiality agreement, you will be asked to provide your consent prior to the sharing of your confidential information with the third-party service provider. Furthermore, we will remain responsible for the work provided by any such third-party service providers.

In addition, we will perform certain procedures directed at considering the Plan's compliance with applicable Internal Revenue Service ("IRS") requirements for tax exempt status and ERISA plan qualification requirements. However, you should understand that our audit is not specifically designed for and should not be relied upon to disclose matters affecting plan qualifications or compliance with the ERISA and IRS requirements. If during the audit we become aware of any instances of any such matters or ways in which management practices can be improved, we will communicate them to you.

**Management Responsibilities**

You are responsible for establishing and maintaining internal controls, including monitoring ongoing activities; for the selection and application of accounting principles; for establishing an accounting and financial reporting process for determining fair value measurements; and for the preparation and fair presentation of the financial statements in conformity with U.S. generally accepted accounting principles.  You are also responsible for making all financial records and related information available to us and for the accuracy and completeness of that information, including the completeness and accuracy of the certification by the custodian, and for determining if the certification from the trustee includes the fair value of investments as of the Plan's year end. You are also responsible for providing us with (1) access to all information of which you are aware that is relevant to the preparation and fair presentation of the financial statements, (2) additional information that we may request for the purpose of the audit, and (3) unrestricted access to persons within the Plan from whom we determine it necessary to obtain audit evidence.

Your responsibilities include adjusting the financial statements to correct material misstatements and confirming to us in the written management representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole.

You are responsible for the design and implementation of programs and controls to prevent and detect fraud, and for informing us about all known or suspected fraud affecting the Plan involving (1) Plan management, (2) employees who have significant roles in internal control, and (3) others where the fraud could have a material effect on the financial statements. Your responsibilities include informing us of your knowledge of any allegations of fraud or suspected fraud affecting the Plan received in communications from employees, former employees, regulators, or others. In addition, you are responsible for identifying and ensuring that the Plan complies with applicable laws and regulations. You are also responsible for the fair presentation of the supplemental schedules and the form and content of the financial statements and supplemental schedules  in conformity with the DOL's Rules and Regulations for Reporting and Disclosure under ERISA. You agree to include our report on the supplementary information in any document that contains, and indicates that we have reported on, the supplementary information. You also agree to include the audited financial statements with any presentation of the supplementary information that includes our report thereon.

You agree to assume all management responsibilities for the tax services, if any, and any other nonattest services we provide; oversee the services by designating an individual, preferably from senior management, with suitable skill, knowledge, and/or experience; evaluate the adequacy and results of the services; and accept responsibility for them.

Mr. Josh Albertson
Gawker Media, LLC
August 30, 2016
Page 4

**Engagement Administration, Fees, and Other**

We understand that your personnel will prepare schedules, analyses, and all confirmations we request and will locate any invoices or other documents selected by us for testing.

The audit documentation for this engagement is the property of Citrin Cooperman & Company, LLP and constitutes confidential information. However, we may be requested to make certain audit documentation available to the U.S. DOL pursuant to authority given to it by law. If requested, access to such audit documentation will be provided under the supervision of Citrin Cooperman & Company, LLP personnel. Furthermore, upon request, we may provide copies of selected audit documentation to the U.S. DOL. The U.S. DOL may intend, or decide, to distribute the copies of information contained therein to others, including other governmental agencies.

Gawker Media, LLC agrees to hold Citrin Cooperman & Company, LLP, its successors and assigns, partners, principals and employees, harmless to the fullest extent permitted by law from any litigation expense, including attorneys' fees, incurred in connection with any request (by subpoena or otherwise) for testimony, documents or other information concerning the Plan by any governmental agency or investigative body or in any litigation or dispute to which the Plan is a party other than claims by the Plan against Citrin Cooperman & Company, LLP. The indemnification will survive termination of this letter of engagement. If this occurs, we shall be entitled to compensation for our time and reimbursement for our reasonable out-of-pocket expenses in complying with such request or demand.

Soula Tsambiras is the engagement director and is responsible for supervising the engagement and signing the report or authorizing another individual to sign it. We expect to begin our audit on approximately September 1, 2016 and issue our report no later than October 15, 2016. As you have instructed, our engagement does not include preparation of the Plan's Form 5500.

Our firm has offices in several states located throughout the United States and a wholly owned and controlled offshore affiliate. Work on your engagement may be performed in any of our locations based on our scheduling needs and availability.

The AICPA's Audit and Accounting Guide, *Employee Benefit Plans*, requires that, before an auditor's report on the Plan's financial statements can be included with a filed Form 5500 (including any related schedules), the auditor must review the Form 5500 and consider whether there are any material inconsistencies between the other information in the Form and the audited financial statements (including the required supplemental schedules) or any material misstatement of fact. We will, therefore, not issue our auditor's report until the completed Form 5500 has been provided for our review.

To ensure that Citrin Cooperman & Company, LLP's independence is not impaired under the AICPA *Code of Professional Conduct*, you agree to inform the engagement partner before entering into any substantive employment discussions with any of our personnel.

Our fees for these services will be based on actual time spent at our standard hourly rates. Our standard hourly rates vary according to the degree of responsiblity involved and the experience level of the personnel assigned to your engagement. You will also be billed for travel and other out-of-pocket costs such as report production, word processing, postage, etc. The fee estimate is based on anticipated cooperation from your personnel and your plan administrator and the assumption that unexpected circumstances will not be encountered during the engagement. In addition, our fees assume that your Form 5500 has been prepared correctly and your service provider will perform any adjustments necessary to the form. If significant additional time is necessary, we will discuss it with you and arrive at a new fee estimate before we incur the additional costs. Our invoices for these fees will be rendered each month as work progresses and are payable on presentation.

Mr. Josh Albertson
Gawker Media, LLC
August 30, 2016
Page 5

In accordance with our firm policies, work may be suspended if your account becomes overdue and will not be resumed until your account is paid in full. You acknowledge and agree that we are not required to continue work in the event of your failure to pay any statement or invoice from us in accordance with our customary invoice terms. Should work be suspended, Citrin Cooperman & Company, LLP shall not be liable to you for any damages that occur as a result of our ceasing to render services. In the event that a situation arises that precludes us from completing the engagement, you agree to pay us for the time we incurred on this engagement at our standard hourly rates.

Any dispute arising out of or relating to this engagement, or breach thereof, shall first be submitted for good faith mediation administered by the American Arbitration Association ("AAA") under its Rules for Professional Accounting and Related Services Disputes (the "Rules"). The parties agree to discuss their differences in good faith and to attempt, with facilitation by the mediator, to reach a consensual resolution of the dispute. The mediation shall be treated as a settlement discussion and shall be confidential. The mediator may not testify for any party in any later proceeding related to the dispute. No recording or transcript shall be made of the mediation proceeding. Each party shall bear its own costs in the mediation. Absent an agreement to the contrary, the fees and expenses of the mediator shall be shared equally by the parties. Mediation shall take place at a place to be designated by the parties in New York, New York. No litigation, arbitration or other proceeding shall be commenced prior to sixty (60) days after the parties' first appearance before the mediator.

If the matter is not resolved by mediation within sixty (60) days of its submission to the mediator, then the parties shall submit the dispute for arbitration administered by the AAA under the Rules.

The arbitration will be conducted before a single arbitrator selected from the AAA's Panel of Accounting Professionals and Attorneys and shall take place at a place to be designated by the parties. The arbitrator shall be a fit and impartial person and shall have at least ten (10) years' experience in commercial litigation, accounting or a similar field connected to the subject matter of the dispute. The arbitrator, with the aforementioned requisite qualifications, shall be selected pursuant to Section 13 of the Rules.

The arbitrator shall issue his or her final award in a written and reasoned decision to be provided to each party. In his or her decision, the arbitrator will declare one party the prevailing party. The arbitrator shall have the power to award all reasonable legal fees associated with the arbitration and prior mediation. The arbitrator shall have no authority to award non-monetary or equitable relief of any sort. The arbitrator shall not have authority to award damages that are punitive in nature, or that are not measured by the prevailing party's actual compensatory loss.

Any discovery sought in connection with the arbitration must be expressly approved by the arbitrator only upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitrator may disclose the existence, content or result of the arbitration only as expressly provided by the Rules.

The award reached as a result of the arbitration will be binding on the parties, and confirmation of the arbitration award may be sought in any court having jurisdiction.

Any and all claims by you arising with respect to or relating to this engagement must be commenced within one (1) year following the date on which Citrin Cooperman & Company, LLP delivers its auditor's report associated with this engagement. If the auditor's report is not delivered to you, for any reason, any and all claims by you arising under this engagement must be commenced within one (1) year of the date you are informed of the engagement's termination.

Mr. Josh Albertson
Gawker Media, LLC
August 30, 2016
Page 6

Citrin Cooperman & Company, LLP shall not be liable for any actions, damages, claims, liabilities, costs, expenses, or losses in any way arising out of or relating to the services performed under this engagement letter for an amount in excess of the Plan's actual damages. In no event shall Citrin Cooperman & Company, LLP be liable for consequential, special, indirect, incidental, punitive, or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs).

This agreement and any dispute relating in any way to this engagement will be governed by the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply.

This agreement can only be amended in writing and signed by an authorized person at Citrin Cooperman & Company, LLP and you.

We appreciate the opportunity to be of service to the Plan and believe this letter accurately summarizes the significant terms of our engagement. If you have any questions, please let us know. If you agree with the terms of our engagement as described in this letter, please sign the enclosed copy and return it to us.

Very truly yours,

*Citrin Cooperman & Company, LLP*

CITRIN COOPERMAN & COMPANY, LLP

CLIENT ACCEPTANCE
Approved by:

_____
Signature

William D. Holden, C.R.O
Name, Title

4/30/16
Date