**Hearing Date and Time: December 1, 2016 at 10:30 a.m. (Eastern Time)**
**Response Deadline: November 14, 2016 at 4:00 p.m. (Eastern Time)**

ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Jonathan M. Agudelo
Peter Walkingshaw (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------x
                                        :
In re                                   :         Chapter 11
                                        :
Gawker Media LLC, *et al.*,[1]          :         Case No. 16-11700 (SMB)
                                        :
                    Debtors.            :         (Jointly Administered)
                                        :
--------------------------------------------------------x

**NOTICE OF DEBTORS' FIRST OMNIBUS OBJECTION**
**TO PROOFS OF CLAIM FILED BY MEANITH HUON,**
**AND MOTION TO APPLY FED. R. CIV. P. 12(B)(6) AND 12(C)**
**<u>PURSUANT TO BANKRUPTCY RULES 9014 AND 7012</u>**

   **PLEASE TAKE NOTICE** that the undersigned have filed the attached *Debtors' First*

*Omnibus Objection to Proofs of Claim Filed by Meanith Huon, and Motion to Apply Fed. R. Civ.*

*P. 12(b)(6) and 12(c) Pursuant to Bankruptcy Rules 9014 and 7012* (the "<u>Objection</u>"), which

seeks to alter your rights by disallowing your claims against the above-captioned Debtors.  The

Debtors also seek to have certain of the Federal Rules of Civil Procedure to apply in connection

with the determination of your claim.

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft) (5056).  Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022.  Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Objection will take place on **December 1, 2016 at 10:30 a.m. (Eastern Time)** before the Honorable Judge Stuart M. Bernstein, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Courtroom No. 723.

**PLEASE TAKE FURTHER NOTICE** that responses to the Objection and the relief requested therein, if any, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall set forth the basis for the response or objection and the specific grounds therefore, and shall be filed with the Court electronically in accordance with General Order M-399 by registered users of the Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website for the Court), with a hard copy delivered directly to chambers pursuant to Local Bankruptcy Rule 9028-1 and served so as to be actually received no later than **November 14, 2016**, **at 4:00 p.m. (Eastern Time)** (the "response Deadline"), upon: (i) the Debtors, Gawker Media LLC, c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022 (wholden@opportune.com); (ii) counsel for the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036, Attn: Gregg M. Galardi (gregg.galardi@ropesgray.com); (iii) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Greg Zipes & Susan Arbeit; (iv) the Internal Revenue Service, Attn: Centralized Insolvency Operation, 2970 Market Street, Philadelphia, PA 19104 (mimi.m.wong@irscounsel.treas.gov); (v) the United States Attorney's Office for the Southern District of New York, Attn: Bankruptcy Division, 86

Chambers Street, 3rd Floor, New York, NY 10007 (david.jones6@usdoj.gov; Jeffrey.Oestericher@usdoj.gov; Joseph.Cordaro@usdoj.gov; Carina.Schoenberger@usdoj.gov); (vi) counsel to Cerberus Business Finance, LLC, as DIP Lender, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Adam C. Harris (adam.harris@srz.com); (vii) counsel to US VC Partners LP, as Prepetition Second Lien Lender, Latham & Watkins LLP, at both 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: David Heller (david.heller@lw.com) and 885 Third Avenue, New York, New York 10022, Attn: Keith A. Simon (keith.simon@lw.com); (viii) counsel for the Official Committee of Unsecured Creditors, Simpson Thacher & Bartlett, 425 Lexington Ave., New York, NY 10017, Attn: Sandy Qusba (squsba@stblaw.com) and William T. Russell (wrussell@stblaw.com); and (ix) parties that have requested notice pursuant to Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written response to the relief requested in the Objection by the Response Deadline, the Bankruptcy Court may deem any opposition waived, treat the Objection as conceded, and enter an order granting the relief requested in the Objection without further notice or hearing.

[*Remainder of this page intentionally left blank*]

**PLEASE TAKE FURTHER NOTICE** that a copy of the Objection may be obtained free of charge by visiting the website of Prime Clerk LLC at http://cases.primeclerk.com/gawker. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: October 31, 2016
      New York, New York

           */s/ D. Ross Martin*
           ROPES & GRAY LLP
           Gregg M. Galardi
           D. Ross Martin
           Jonathan M. Agudelo
           Peter Walkingshaw (admitted *pro hac vice*)
           1211 Avenue of the Americas
           New York, NY 10036-8704
           Telephone: (212) 596-9000
           Facsimile: (212) 596-9090
           gregg.galardi@ropesgray.com
           ross.martin@ropesgray.com
           jonathan.agudelo@ropesgray.com
           peter.walkingshaw@ropesgray.com

           *Counsel to the Debtors*
           *and Debtors in Possession*

Ropes & Gray LLP
Gregg M. Galardi
D. Ross Martin
Peter Walkingshaw (*pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------
|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| Gawker Media LLC, *et al.*,[1] | : | Case No. 16-11700 (SMB) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
-----------------------------------------------------x

### DEBTORS' FIRST OMNIBUS OBJECTION TO
### PROOFS OF CLAIM FILED BY MEANITH HUON,
### AND MOTION TO APPLY FED. R. CIV. P. 12(B)(6) AND 12(C)
### PURSUANT TO BANKRUPTCY RULES 9014 AND 7012

Pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(d),

Gawker Media LLC ("Gawker Media"), Gawker Media Group, Inc. ("GMGI"), and Gawker

Hungary Kft. ("Gawker Hungary") as debtors and debtors in possession (collectively, the

"Debtors") in the above-captioned cases (the "Bankruptcy Cases"), hereby submit this objection

(the "Objection") to ten proofs of claim (Nos. 14, 15, 19, 20, 21, 22, 23, 24, 46, and 47 (the

"Huon Claims")) filed by Meanith Huon.  The Huon Claims all assert liability for defamation

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

1

(and other torts arising from the same statements), and all relate to an action filed in the United States District Court for the Northern District of Illinois. This Court should disallow most of the Huon Claims because they are duplicative and superseded (leaving one claim against each of the three Debtors). This Court should disallow the remaining non-duplicative claims (and indeed all claims, to the extent not duplicative), because all are disallowable both (a) as a matter of *res judicata* and (b) on the merits, as a matter of law. In support of this Objection, the Debtors respectfully represent and set forth as follows.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are section 502 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (the "Bankruptcy Code"); and Rules 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2.      Although the Huon Claims should not be considered personal injury tort claims, *see infra* ¶¶ 28-36, there is no question that this Court can disallow any claim that is based on *res judicata* or collateral estoppel as a threshold matter. Section 157(b)(2) does not make all determinations regarding disallowance of personal injury tort claims into non-core proceedings. A bankruptcy court can "summarily dispose of claims which have no basis in law." *See In re Chateaugay Corp.*, 111 B.R. 67, 76 (Bankr. S.D.N.Y. 1990), *aff'd, sub nom. LTV Corp. v. Valley Fid. Bank & Tr. Co. (In re Chateaugay Corp.)*, 130 B.R. 403 (S.D.N.Y. 1991), *aff'd in part, rev'd in part*, 961 F.2d 378 (2d Cir. 1992). Disallowance of a claim based on *res judicata* is among the rulings that the bankruptcy court can make. *Id.* at 69, 75.

## RELIEF REQUESTED

3.      By this Motion, the Debtors request entry of an order (the "Proposed Order") (a) disallowing and expunging seven of the Huon Claims (Nos. 14, 15, 19, 20, 21, 23 and 24) as duplicative and (b) disallowing and expunging any and all remaining Huon Claims (at least Nos. 22, 46, and 47) because the Debtors have no liability on account of such claims, based on *res judicata*, and alternatively on the merits.

## BACKGROUND

### I.    The Huon Claims

4.      Notwithstanding his 10 filed proofs of claim, in essence Mr. Huon asserts a claim against each Debtor in the amount of $100,000,000 under Illinois law for defamation *per se*, defamation *per quod*, and other intentional torts.[2] Notably, the underlying facts do not start with a Gawker Media story, but instead with publication by a different company than Gawker Media, Breaking Media LLC ("Breaking Media"), and its website *abovethelaw.com*.

5.      On or about May 6, 2010, *abovethelaw.com* published a story regarding Mr. Huon.  Mr. Huon then commenced a civil action (the "Huon Defamation Action") against Breaking Media and various other persons involved in the *abovethelaw.com* story, in the United States District Court for the Northern District of Illinois (the "Illinois Federal Court").  That action was brought in diversity jurisdiction.

6.      Gawker Media website *Jezebel.com* then published, on May 11, 2011, a four-paragraph story reporting on Mr. Huon's lawsuit against *abovethelaw.com* and Breaking Media (the "Gawker Story").  Ex. 4, Gawker Story.  Two months after the Gawker Story, Mr. Huon

---

[2] Between August 21, 2016 and September 19, 2016, Mr. Huon filed 10 separate claims against the Debtors, each for $100,000,000. Each of Huon's claims states that the basis of the claim is "Defamation Per Se, Defamation Per Quod and Other Intentional To" [sic]. While Claims No. 14, 15, 23 and 24 attach no supporting documentation, Claims No. 19, 20, 21, 22, 46, and 47 all attach the same complaint in a civil action, discussed *infra*.

amended his complaint in the Huon Defamation Action to add Gawker Media as a defendant, and later by further amendment added GMGI and Gawker Hungary.  *See* Ex. 5, District Court Memorandum Opinion and Order in Huon Defamation Action at 1-2 (discussing procedural history).  After additional further amendment, Huon filed his Fourth Amended Complaint (Ex. 6, the "Complaint"), a copy of which serves as the sole supporting basis for his claim. Mr. Huon alleges that he was defamed and otherwise injured by the following aspects of the Gawker Story and website comments:

- The Headline of Gawker Story

- Summary of criminal proceedings against Mr. Huon

- Quotations from the original complaint against *abovethelaw.com* and the original *abovethelaw.com* article in the Gawker Story

- Screenshot of the *abovethelaw.com* article

- Use of "booking photograph" of Mr. Huon

- Statements made in website comments section below the *Jezebel.com* story, on the theory that "Defendants control, block, edit and promote the comments that users can leave.

Compl. ¶¶ 104-111.

7.      In his Fourth Amended Complaint (the operative complaint), Mr. Huon alleged nine causes of action against the Debtors. Comp. ¶¶ 169-273. the Debtors moved to dismiss, and the Illinois Federal Court dismissed with prejudice all of the counts against the Debtors, as follows (a separate ground for dismissal of claims based on reader comments is also included:

[*remainder of page intentionally left blank*]

| **Cause of Action** | **Basis for Dismissal** |
| --- | --- |
| Defamation *per se* | Statements protected by the innocent-construction rule (Op. 22) |
| Defamation *per quod* | Failure to plead special damages (Op. 25) |
| False Light Invasion of Privacy | Claim premised on same statements as defamation (Op. 27) |
| Intrusion upon Seclusion | No allegations to support prying or intrusion (Op. 29-30) |
| Intentional Infliction of Emotional Distress | Claim premised on same statements as defamation (Op. 31) |
| Conspiracy to Defame | No pleading of independent tort, and no pleading of conspiratorial agreement (Op. 33) |
| Conspiracy to Invade Plaintiff's Privacy – False Light | No pleading of independent tort, and no pleading of conspiratorial agreement (Op. 33) |
| Tortious Interference with Prospective Economic Advantage | Failure to plead facts, beyond conclusory statements, to establish reasonable business expectancy (Op. 34) |
| Cyberstalking & Cyberbullying | Statute does not support a private right of action (Op. 36) |
| Claims based on statements in blog comments section | Barred by Communications Decency Act, 47 U.S.C. § 230(c)(1), and failure to plead Debtors were responsible for creating comments (Op. 8-12) |

After the Illinois Federal Court granted the Debtors' motions to dismiss, certain claims remained against the non-Gawker-affiliated defendants.  However, in September 2015 all causes of action against all parties in the Huon Defamation Action were resolved, and the Illinois Federal Court entered judgment in favor of the Debtors.

8.      Mr. Huon took an appeal to the United States Court of Appeals for the Seventh

Circuit (the "Court of Appeals").  Mr. Huon did not obtain a stay pending appeal.  The Debtors

agreed to modify the automatic stay applicable in these cases to allow the proceedings in the

Court of Appeals to proceed.  However, the Court of Appeals has not decided the matter.

## APPLYING BANKRUPTCY RULE 7012 TO THIS PROCEEDING

9.      Pursuant to section 502(b)(1) of the Bankruptcy Code, a claim is disallowed to the

extent that it is unenforceable against the debtor and property of the debtor, under any agreement

or applicable nonbankruptcy law.  *Travelers Cas. & Sur. Co. of N. Am. v. Pac. Gas & Elec. Co.*,

549 U.S. 443, 452 (2007).  Mr. Huon's allegations have already been resolved in favor of the

Debtors, and consequently, the Debtors object to the Huon Claims and seek entry of an order

disallowing and expunging the Huon Claims in their entirety.  The Huon Claims should be

disallowed based on issue preclusion.  In addition, to the extent that this Court does not resolve

the claim as a matter of law on issue preclusion grounds, the Huon Claims should be disallowed

on the merits for the reasons set forth in the state-court proceeding, as set forth below.

10.     A proof of claim has *prima facie* validity and is "deemed allowed" until an

objection is filed.  To overcome this *prima facie* effect, the objecting party must bring forward

evidence equal in probative force to the evidence underlying the proof of claim.  *In re Oneida,

Ltd.*, 400 B.R. 384 (Bankr. S.D.N.Y. 2009) (quoting *In re Allegheny Intern., Inc.* 954 F.2d 167,

173 (3d Cir. 1992).  The claimant must then "prove by a preponderance of the evidence that

under applicable law the claim should be allowed." *Id.*; *Helliwell v. George R. Burrows, Inc. (In

re George R Burrows, Inc.)*, 156 F.2d 640, 641 (2d Cir. 1946) ("[A]s soon as the trustee

introduced any substantial evidence in opposition the claimants needed to establish by a

preponderance of all the evidence that the claims as filed were based on facts which entitled the

claimants to their allowance under the law.  The burden of over-all proof was then on the claimants.").

11.     This contested matter and resolution of the Huon Claims (as with several other claims filed in these bankruptcy cases) will be made more orderly and efficient by applying certain parts of Rule 7012.  The supporting information for the Huon Claims is, in its entirety, a copy of a civil action complaint filed in the New Jersey State Court.  The allegations sound in tort, in contrast to contractual claims that are typically susceptible to the more summary, informal procedures of an ordinary claims objection hearing.

12.     Indeed, in many circumstances, bankruptcy courts in this District have analogized their resolution of proofs of claim based on outside litigation to the ordinary civil litigation process, without formally invoking and applying Rule 7012. "In bankruptcy cases, courts have traditionally analogized a creditor's claim to a civil complaint, a trustee's objection to an answer." *In re 20/20 Sport, Inc.*, 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) (Lifland, J.). Further, "[i]n determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." *In re DJK Residential LLC*, 416 B.R. 100, 106-07 (Bankr. S.D.N.Y. 2009) (sustaining claim objection and disallowing claim that repeated causes of action in related litigation for failing to satisfy Fed. R. Civ. P. 9 when claimants failed to show that claim was facially plausible); *see also In re Residential Capital, LLC*, 518 B.R. 720, 726, 731-32 (Bankr. S.D.N.Y. 2014) (disallowing claims, based on complaint filed pre-petition in state court, that failed to state "a plausible basis for the Debtors' liability" under federal pleading standards).

13.     In this contested matter, the Court should direct that Federal Rules of Civil Procedure 12(b)(6) and/or 12(c) (available pursuant to Bankruptcy Rule 7012(b) and 9014(a))

shall apply. "The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." Fed. R. Bankr. P. 9014.

14.     Following application of Rule 12(b)(6) and Rule 12(c), this Court could then consider the Complaint (attached to the Huon Claims), this Objection, any response and any reply papers, either to be briefing on a motion to dismiss or a motion for judgment on the pleadings.

## OBJECTION

15.     Pursuant to section 502(a) of the Bankruptcy Code, a filed proof of claim is deemed allowed unless a party in interest objects thereto. *See* 11 U.S.C. § 502(a). Pursuant to Bankruptcy Rule 3007(d)(3) a debtor may object to claims and seek their disallowance where such claims "have been amended by subsequently filed proofs of claim." Fed. R. Bankr. P. 3007(d)(3). Pursuant to Bankruptcy Rule 3007(d)(1), a debtor may object to claims on the grounds that they are duplicative of other claims filed by the same claimant. Fed. R. Bankr. P. 3007(d)(1). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that it is unenforceable against the debtor and property of the debtor, under any agreement or applicable law. *See* 11 U.S.C. § 502(b)(1). For these reasons, as set forth more fully below, the Debtors object to all Proofs of Claim submitted by Mr. Huon and seek entry of an order disallowing and expunging each Proof of Claim in its entirety.

## I.     Superseded and Duplicative Claims

### A.     Claims 14, 15, 19, 20, 21, 23 and 24 Must Be Disallowed and Expunged as Amended and Superseded by Other Claims

16.     Pursuant to Bankruptcy Rule 3007(d)(3), a debtor may object to claims and seek their disallowance where such claims "have been amended by subsequently filed proofs of claim…." Fed. R. Bankr. P. 3007(d)(3). The Debtors have determined that Mr. Huon expressly

amended each of the Huon Claims listed on **Schedule 1 of Exhibit 1** attached hereto in the

column "Claims to be Disallowed and Expunged" (collectively, the "**Amended and Superseded**

**Claims**"), as identified by the corresponding entry in the Column "Surviving Claims."  Holden

Decl. ¶ 3.  The estates should not be required to pay more than once on the same obligation and,

additionally, elimination of the Amended and Superseded Claims will enable Prime Clerk LLC

("Prime Clerk") to maintain a Claims Register that more accurately reflects valid claims against

the Debtors. To avoid the possibility of multiple recoveries on the same claim asserted by Mr.

Huon, the Debtors respectfully request that the Court disallow the Amended and Superseded

Claims in their entirety and that Prime Clerk be permitted to revise the Claims Register to reflect

as such.

>    **B.**    **Alternatively, Claim Nos. 23 and 24 Must Be Disallowed as Duplicative of Claim 46**

17.    To the extent that either is not amended and superseded, Mr. Huon's Claim Nos.

23 and 24 is entirely duplicative of Claim No. 46 and must be expunged on those grounds.

Holden Decl. ¶ 4.  Claim 46 by it own terms amends and supersedes Claim 19, filed on

September 18, 2016. Claim 19 in turn amends and supersedes a claim filed on August 21, 2016,

but it does not specify the claim by claim number. Because both Claim 23 and Claim 24 were

submitted on August 21, 2016, it is not clear whether Claim 19 is intended to amend and

supersede Claim 23, Claim 24 or both. To the extent both are not amended and superseded, any

surviving claim must be disallowed as duplicative.

18.    Like Claim 46, both Claim 23 and 24 assert a claim against Gawker Media LLC

for $100,000,000 for the same asserted basis ("Defamation Per Se, Defamation Per Quod, and

other Intentional Tor [sic]") and attach no supporting documentation that would differentiate

either claim from Claim 46. Although Claim 19 does not expressly state which of these two

claims it amends and supersedes, Bankruptcy Rule 3007(d)(1) permits a debtor to object to a claim on the grounds that it is duplicative of a claim filed by the same claimant. Fed. R. Bankr. P. 3007(d)(1). As with the Amended and Superseded Claims, the estates should not be required to pay more than once on the same obligation and elimination of Claim 23 and 24 will enable Prime Clerk to maintain a Claims Register that more accurately reflects the valid claims against the Debtors. Consequently, to avoid the possibility of multiple recoveries on the same claim by Mr. Huon, the Debtors respectfully request that the Court disallow Claim 24 in its entirety and that Prime Clerk be permitted to revise the Claims Register to reflect as such.

## II.    Claims 22, 46, and 47 (and any Other Huon Claims Not Superseded or Duplicative) Are Precluded from Receiving a Distribution Under the Doctrine of *Res Judicata*

19.    Pursuant to Bankruptcy Code section 502(b)(1), the Court shall disallow a claim that is "unenforceable against the debtor and the property of the debtor … under applicable law." 11 U.S.C. § 502(b)(1). The only support for Huon Claims Nos. 22, 46, and 47 against the Debtors is the Fourth Amended Complaint, for which the Illinois Federal Court has entered judgment in favor of the Debtors.  There is no stay of that judgment.  Accordingly, Mr. Huon's claims are barred by the doctrine of claim preclusion, or *res judicata*.

20.    As the Court knows, claim preclusion "forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001) (internal quotation marks omitted).  Federal common law governs the preclusive effect of a federal court judgment. *Id.* at 891.  The preclusive effect of a diversity judgment is the same *res judicata* effect "that would be applied by state courts in the State in which the federal diversity court sits." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). The

Huon Defamation Action was in diversity in a federal court in Illinois, and thus Illinois preclusion law applies.

21.    Under Illinois law, the doctrine of *res judicata* bars a claim when "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there was an identity of cause of action; and (3) there was identity of parties or their privies." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 335 (1996). There is no question that the second two elements are met. There is identity of causes of action: the Huon Claims are based entirely on the Fourth Amended Complaint in the Huon Defamation Action. There is an identity of the parties: Mr. Huon is the plaintiff/claimant and the three Gawker entities are the defendants/debtors.

22.    The question presented is whether, under Illinois law, a judgment that is pending appeal has *res judicata* effect.[3] The typical rule in almost all jurisdictions is that a final judgment, even if on appeal, does have *res judicata* effect. *See generally* Restatement (Second) of Judgments §§ 13, 17. However, for unusual reasons, this is somewhat of an open question under Illinois law. In *Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995), Judge Easterbrook surveyed this issue in detail, concluding that (a) the Illinois Supreme Court had long followed the Restatement rule, (b) the Illinois Supreme Court appears to have (without analysis or discussion) made a contrary statement (*i.e.* that a pending appeal prevents *res judicata* effect) and (c) there might be a difference between collateral estoppel and claim preclusion. *Id.* Over the following twenty years, a split of authority developed in the intermediate Illinois appellate courts, and the Illinois Supreme Court has not resolved it. *See generally Langone v. Schad, Diamond & Shedden, P.C.*, 406 Ill. App. 3d 820, 834-35 (App. Ct. 2010).

---

[3] Because Mr. Huon's claim was involuntarily dismissed with prejudice, the judgment entered by the District Court constitutes a "final judgment on the merits" under Illinois law. *Rein* 172 Ill.2d at 335-36 (involuntary dismissal with prejudice operates as a final judgment on the merits for purposes of *res judicata*).

23.     Any federal court (including a bankruptcy court) faced with a dispositive issue of State law must consider the issue as if it were sitting as the highest court of the State; it does not take as binding authority the decisions of intermediate state appellate courts.  *Comm'r of Internal Revenue v. Bosch*, 387 U.S. 456, 465 (1967); *West v. AT&T*, 311 U.S. 223 (1940); *Findley v. Falise (In re Joint E. & S. Dist. Asbestos Litig.)*, 78 F.3d 764, 776 (2d Cir. 1996); *see Salve Regina College v. Russell*, 499 U.S. 225 (1991) (like federal district courts, courts of appeals consider issues of unsettled state law *de novo*).  It is clear from Judge Easterbrook's scholarly analysis in *Rogers* (although that court did not have to decide the question) that the better view is that the Illinois Supreme Court would, at least for full claims preclusion, hold that a trial court judgment has immediate preclusive effect even if on appeal.  The Illinois Federal Court has entered a final judgment in the Huon Defamation Action and there has been no stay of the judgment. Ex. 7, Judgment Entered in Huon Defamation Action. Therefore that judgment has full *res judicata* effect in this Court.

24.     Accordingly, Claims 22, 46, and 47 (and any claims otherwise not held duplicative or superseded) are barred by the doctrine of claim preclusion, and should be disallowed and expunged in their entirety.

### III.    Claims 22, 46, and 47 (and the Other Huon Claims) Fail to Allege Facts That Would Support a Finding That the Debtor Is Legally Liable to Huon

25.     The Huon Claims must also be disallowed on the grounds that he has failed to allege facts that, if true, would support a finding that the debtor is legally liable to the claimant. Specifically, a claimant bears the initial burden of alleging facts sufficient to support the claim, and only then is the claim afforded a *prima facie* presumption of validity.  *E.g.*, *In re Aiolova*, No. 11-10503 (BRL), 2013 WL 5818893, at *2 (Bankr. S.D.N.Y. Oct. 29, 2013).  If the claimant meets this initial burden, then the objecting party may come forward with evidence of equal or

greater value than that provided by the claimant in conjunction with the proof of claim. *E.g.*, *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). But if the claimant fails to meet this initial burden, an objector need only object to the claim pursuant to the applicable rules. *See, e.g.*, *eCast Settlement Corp. v. Tran (In re Tran)*, 369 B.R. 312, 318 (S.D. Tex 2007).

26.    In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts look to the pleading requirements set forth in the Federal Rules of Civil Procedure. *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009); *see also In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014). Accordingly, to meet his initial burden, Mr. Huon must allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between the possibility and the plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

27.    Even if the Huon Claims are not disallowed based on *res judicata*, they do not meet the *Iqbal* standard. For the reasons set for in the opinion of the Illinois Federal Court, the Huon Claims do not survive a motion to dismiss. Ex 4, District Court Memorandum Opinion and Order in Huon Defamation Action.

## IV.    The Huon Claims Can Be Determined by This Court

28.    Nor can Mr. Huon contend that this Court does not have the power to determine the merits of his claims. This Court can fully adjudicate disallowance of the Huon Claims, which assert causes of action for defamation and related torts, because they are not personal injury tort claims within the meaning of 28 U.S.C. 157(b). Core proceedings include allowance or disallowance of claims against the estate, except "the liquidation or estimation of contingent or

unliquidated personal injury tort or wrongful death claims against the estate for purposes of

distribution." 28 U.S.C. § 157(b)(2)(B)   The Bankruptcy Code does not define what constitutes

a "personal injury tort claim," and therefore court decisions have delineated the scope of that

term.

29.    Although courts in this District have taken two different approaches on this

question, the Huon Claims do not fall within the definition of "personal injury tort claim"

regardless of which authority is followed.  At least three decisions in this District have adopted a

so-called "narrow view," limiting personal injury tort claims to those that involve a "trauma or

bodily injury."  *Vinci v. Town of Carmel (In re Vinci)*, 108 B.R. 439, 442 (Bankr. S.D.N.Y.

1989) (Schwartzberg, J.) (a tort without trauma or bodily injury is not within the statutory

exception for a personal injury tort); *Perino v. Cohen (In re Cohen)*, 107 B.R. 453 (S.D.N.Y.

1989) (Brieant, J.) (same); *Siewert v. Christy (In re Finley, Kumble, Wagner, Heine, Underberg,*

*Manley, Myerson, & Casey)*, 194 B.R. 728, 734 (S.D.N.Y. 1995) (Keenan, J.) (adopting narrow

view to find that legal  malpractice does not constitute a personal injury claim).

30.    More recently, Judge Glenn adopted a so-called "hybrid approach" to decide this

issue with respect to proofs of claim for intentional infliction of emotional distress.   He

conducted a "searching analysis" into the specifics of each claim that asserts "the invasion of

personal rights" for "earmarks of a financial, business or property tort claim, or a contract."  *In re*

*Residential Capital, LLC*, 536 B.R. 566, 572, 575 (Bankr. S.D.N.Y. 2015) ("*ResCap*"). The

*ResCap* court concluded that it had core jurisdiction to hear and determine the disallowance of

proofs of claim asserting intentional infliction of emotional distress arising from the servicing of

home mortgages.  *Id.* at 575.

31.     The Huon Claims do not qualify as a personal injury tort claim under either (a) the *Vinci/Cohen/Finley-Kumble* line of decisions or (b) the *ResCap* approach.  The Huon Claims (which incorporate the last complaint filed in Mr. Huon's defamation action) allege against Gawker Media eight causes of action.[4]  None of the causes of action asserted by Mr. Huon involves "trauma or bodily injury."  *E.g.*, *Vinci*, 108 B.R. at 442.

32.     The Huon Claims also bear the "earmarks of a financial, business or property tort claims, or a contract claim" and are therefore not a personal injury tort claim.  *ResCap*, 536 B.R. at 572.   The underlying Complaint alleges that Mr. Huon's "success" "derives from his professional reputation as an attorney and his standing in the community."  Compl. ¶ 5.  The specific damages that Mr. Huon asserts are each related to his reputation in the marketplace of financial and business activity.  These include "loss of reputation and business," and "decline in prospective business, loss of job or economic opportunities, loss of clients and business deals." Compl. ¶ 163-164.  He asserts "humiliation and embarrassment" and similar harms, Compl. ¶¶ 5, 164-165, but humiliation and lost reputation resulting from a business tort do not constitute a personal injury tort.  *In re Finley Kumble*, 194 B.R. at 734.

33.     The rulings of numerous other courts support a conclusion that defamation is not a personal injury tort claim when asserted as a proof of claim in bankruptcy.  *Massey Energy Co. v. W. Va. Consumers for Justice*, 351 B.R. 348, 351 (E.D. Va. 2006) (defamation and business conspiracy are not personal injury tort claims); *Mitan v. Davis (In re Davis)*, 334 B.R. 874, 878 n.2 (Bankr. W.D. Ky. 2005) (core jurisdiction over objection to proof of claim based on alleged

---

[4]  The causes of action are (1) defamation *per se*, (2) defamation *per quod*; (3) false light invasion of privacy; (4) intrusion upon seclusion; (5) intentional infliction of emotional distress; (6) civil conspiracy; (7) tortious interference with Prospective Economic Advantage and (8) cyberstalking and cyberbulling.

defamation contained on website), *aff'd in part, rev'd in part on other grounds sub nom. Davis v.*

*Mitan (In re Davis)*, 347 B.R. 607 (W.D. Ky. 2006).[5]

34.    The same is true for the "intentional infliction" genre of torts that the Huon

Claims allege against the Debtors.    A claim for emotional distress damages not arising out of

physical injury is not a "personal injury tort claim."    *ResCap*, 536 B.R. at 576; *see In re Atron*

*Inc. of Mich.*, 172 B.R. 541 (Bankr. W.D. Mich. 1994) (civil rights complaint alleging damages

for mental and emotional distress does not qualify); *Priest v. Interco, Inc. (In re Interco, Inc.)*,

135 B.R. 359 (Bankr. E.D. Mo. 1991) (age discrimination complaint alleging emotional distress

does not qualify).    Further, on its face Mr. Huon's cause of action for intentional interference

with prospective economic advantage, is not a personal injury tort claim.

35.    Furthermore, Section 157(b)(2)(B) designates only "liquidation" and "estimation

for purposes of distribution" are non-core, requiring a district court to enter final orders.    Section

101(5) of the Bankruptcy Code indicates that "claims" fall into different categories, and the

statutory language of Section 157(b)(2) is clear that only determination of the "liquidated-

unliquidated" distinction is non-core.[6]    Thus a bankruptcy court can determine, as a core

proceeding, the issue of whether the claim is "disputed-undisputed," in the language of section

101(5) of the Bankruptcy Code.    Of course, if the claim objection cannot be resolved as a matter

of law at the outset or on summary judgment, a creditor asserting a personal injury tort claim has

a right to a trial (if a trial is necessary) in the district court.    But this is under the separate <u>venue</u>

provision of Section 157(b)(5).    *See Stern v. Marshall*, 564 U.S. 462, 479 (2011) (section

---

[5] The Supreme Court of the United States has considered, but declined to decide (on waiver grounds), whether a defamation claim is a personal injury tort claim under section 157(b)(2).    *Stern*, 564 U.S. at 479.

[6] Obviously if instead there is to be an estimation of a personal injury tort claim under section 502(c) of the Bankruptcy Code, that necessarily incorporates both a determination of the amount of the claim ("liquidation") and the probability of there being liability ("disputed" claims).

157(b)(5) concerns mere venue, is not jurisdictional, and therefore can be waived). Thus, "a finding that the claim is subject to disallowance as a matter of law is not tantamount to a determination on the merits of the personal injury tort or wrongful death claim." *In re Chateaugay Corp.*, 111 B.R. at 76-77.

36.     Finally, to the extent that this Court concludes that any portion of dispositive pre-trial rulings or the objection to any particular cause of action is a non-core proceeding, this Court must conduct those pretrial proceedings in the first instance.  Mr. Huon might consent (whether expressly or impliedly) to this Court's entry of final orders regarding his claim.   Section 157(c)(2).  Even if he does not consent, pursuant to Section 157(c)(1) this Court must hear the proceeding and submit proposed findings of fact and conclusions of law to the district court.  *See Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2174-75 (2014) (construing statute to apply Section 157(c)(1) to any proceeding for which the bankruptcy court cannot enter final orders).

## RESPONSES TO THIS OBJECTION

37.     Any responses to this Objection must be filed on or before 4:00 p.m. (New York Time) on November 14, 2016, in accordance with the procedures set forth in the notice of this Objection.

## RESERVATION OF RIGHTS

38.     Neither the filing of this Objection nor entry of the Proposed Order shall affect any rights of the Debtors, their estates, the Plan Administrator, or any other party in interest in these chapter 11 cases to object to the Huon Claims for any purposes, including, without limitation, allowance and distribution under the Proposed Plan.

39.    The Debtors and their estates reserve any and all rights to amend, supplement or otherwise modify this Objection or the Proposed Order.  The Debtors and their estates also reserve any and all rights, claims and defenses with respect to any and all of the Huon Claims, and nothing included in or omitted from this Objection or the Proposed Order is intended or shall be deemed to impair, prejudice, waive or otherwise affect any rights, claims, or defenses of the Debtors and their estates with respect to the Huon Claims.

## NOTICE

40.    Notice of this Objection has been provided to: (i) the Office of the United States Trustee for the Southern District of New York; (ii) Simpson Thacher & Bartlett LLP, counsel to the Official Committee of Unsecured Creditors of Gawker Media LLC, et al.; (iii) Latham & Watkins LLP, counsel to US VC Partners LP, as Second Lien Lender; (iv) the address of the Claimant, provided on the Huon Claims; and (v) all parties requesting notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that further notice of this Objection is neither required nor necessary.

[*Remainder of this page intentionally left blank*]

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Proposed Order, and (b) grant such other and further relief as may be just and proper.

Dated: October 31, 2016  
New York, New York

/s/ D. Ross Martin
_____

ROPES & GRAY LLP  
Gregg M. Galardi  
D. Ross Martin  
Peter Walkingshaw  
1211 Avenue of the Americas  
New York, NY 10036-8704  
Telephone: (212) 596-9000  
Facsimile: (212) 596-9090  
gregg.galardi@ropesgray.com  
ross.martin@ropesgray.com  
peter.walkingshaw@ropesgray.com

*Counsel to the Debtors*  
*and Debtors in Possession*

# EXHIBIT 1

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                    :
In re                                               :        Chapter 11
                                                    :
Gawker Media LLC, *et al.*,[1]                      :        Case No. 16-11700 (SMB)
                                                    :
                        Debtors.                    :        (Jointly Administered)
                                                    :
------------------------------------------------------------x

### ORDER GRANTING DEBTORS' FIRST OMNIBUS
### OBJECTION TO PROOFS OF CLAIM FILED BY MEANITH HUON

Upon the objection of Gawker Media LLC ("Gawker Media") and its motion (together,

the "Objection") for the entry of an order (the "Order") (i) disallowing Proof of Claim Nos. 14,

15, 19, 20, 21, 22, 23, 24, 46, and 47 filed by Meanith Huon (the "Huon Claims") and (ii)

making Federal Rules of Civil Procedure 12(b)(6) and 12(c) applicable to the Objection pursuant

to Bankruptcy Rule 7012 and 9014, as more fully set forth in the Objection; and the Court having

found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and

the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the

Court having found that venue of this proceeding and the Objection in this district is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in

the Objection is in the best interests of Gawker Media's estate, its creditors, and other parties in

interest; and the Court having found that Gawker provided appropriate notice of the Objection

and the opportunity for a hearing on the Objection under the circumstances; and the Court having

reviewed the Objection and having heard the statements in support of the relief requested therein

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Objection and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Objection is sustained as set forth herein.  All capitalized terms used but not defined herein shall have the meanings attributed to such terms in the Objection.

2.      Federal Rules of Civil Procedure 12(b)(6) and 12(c) are applicable to this contested matter pursuant to Bankruptcy Rules 7012 and 9014.

3.      The Huon Claims are disallowed in their entirety.

4.      Prime Clerk LLC, the Court-appointed claims agent in these Chapter 11 Cases, is hereby authorized and directed to make such revisions to the official claims register as are necessary to reflect the disallowance of the Huon Claims.

5.      The Debtors are authorized to take all actions necessary to implement this Order.

6.      The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Dated: _____, 2016

_____
THE HONORABLE STUART M BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

**Schedule 1**

| CLAIMS TO BE DISALOWED AND EXPUNGED | DATE FILED | AMENDEDAND SUPERSEDED BY CLAIM NO. | DATE AMENDED AND SUPERSEDED | CLAIMED DEBTOR | CLAIM AMOUNT |
|---|---|---|---|---|---|
| 14 | 8/21/2016 | 21 | 9/18/2016 | Gawker Media Group, Inc. | $100,000,000 |
| 15 | 8/21/2016 | 20 | 9/18/2016 | Kinja, Kft. | $100,000,000 |
| 19 | 9/18/2016 | 46 | 9/19/2016 | Gawker Media, LLC | $100,000,000 |
| 20 | 9/18/2016 | 47 | 9/19/2016 | Kinja Kft. | $100,000,000 |
| 21 | 9/18/2016 | 22 | 9/19/2016 | Gawker Media Group, Inc. | $100,000,000 |
| 24 | 8/21/2016 | 19 | 9/18/2016 | Gawker Media, LLC | $100,000,000 |
| 23 | 8/21/2016 | 19 | 9/19/2016 | Gawker Media, LLC | $100,000,000 |

3

## **EXHIBIT 2**

**Holden Declaration**

ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Peter Walkingshaw (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
                                       :

In re                            :        Chapter 11
                                         :

Gawker Media LLC, *et al.*,[1]      :        Case No. 16-11700 (SMB)
                                       :

           Debtors.         :        (Jointly Administered)
                                       :

-------------------------------------------------------x

**DECLARATION OF WILLIAM D. HOLDEN IN SUPPORT OF THE DEBTORS'**
**OMNIBUS OBJECTION TO CERTAIN SATISFIED CLAIMS**

I, William D. Holden, being duly sworn, hereby declare as follows:

        1.        I am the Chief Restructuring Officer of Gawker Media LLC ("Gawker Media").

As Chief Restructuring Officer I am responsible for all claims management related matters for

the Debtors.  I am generally familiar with the Debtors day-to-day operations, financing

arrangements, business affairs, and books and records that reflect, among other things, the

Debtors' liabilities and the amount thereof owed to their creditors as of the Petition Date.  I have

read the *Debtors' Omnibus Objection to Proofs of Claim Filed by Meanith Huon* (the

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (5056).  Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022.  Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

"Objection") and am directly, or by and through the Debtors' advisors and personnel, familiar

with the information contained therein and the exhibits attached thereto.[2]

2.     I am authorized to submit this declaration (this "Declaration") in support of the

Objection.  All matters set forth in this Declaration are based on: (a) my personal knowledge;

(b) my review of relevant documents; (c) my view, based on my experience and knowledge of

the Debtors' operations, books and records, and personnel; (d) information supplied to me by

others at the Debtors' request; and (e) as to matters involving United States bankruptcy law or

rules or other applicable laws, my reliance on the advice of counsel or other advisors to the

Debtors.  If called upon to testify, I could and would testify competently to the facts set forth

herein.

3.     To the best of my knowledge, information, and belief, insofar as I have been able

to ascertain after reasonable inquiry, considerable time and resources have been expended to

ensure a high level of diligence in reviewing and reconciling the proofs of claim filed against the

Debtors in these chapter 11 cases.  Upon a thorough review of the proofs of claim filed in these

chapter 11 cases and supporting documentation thereto, the Debtors have determined that the

liabilities listed on **Schedule 1** to the proposed order (the "Order") annexed to the Objection (the

"Amended and Superseded Claims") should be disallowed and expunged because such claims

were amended and superseded by later-filed proofs of claim.  Accordingly, to prevent an

unwarranted recovery by the claimant asserting the Amended and Claims to the detriment of

other creditors, I believe that this Court should disallow and expunge the Amended and

Superseded Claims from the Debtors' Claims Register

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the
Objection.

4.      Furthermore, to the extent that either is not amended or superseded by Claim 19, Claim Nos. 23 and 24 should be disallowed and expunged because the claims asserted are entirely duplicative of Claim 46.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge and belief.

Dated: October 31ˢᵗ, 2016

_____
William D. Holden

## <u>EXHIBIT 3</u>

**Martin Declaration**

Rᴏᴘᴇs & Gʀᴀʏ LLP
Gregg M. Galardi
D. Ross Martin
Peter Walkingshaw (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| Gawker Media LLC, *et al.*,[1] | ) Case No. 16-11700 (SMB) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**DECLARATION OF D. ROSS MARTIN IN SUPPORT OF THE**
**DEBTORS' FIRST OMNIBUS OBJECTION TO**
**PROOFS OF CLAIM FILED BY MEANITH HUON,**
**AND MOTION TO APPLY FED. R. CIV. P. 12(B)(6) AND 12(C)**
**PURSUANT TO BANKRUPTCY RULES 9014 AND 7012**

Pursuant to 28 U.S.C. § 1746, D. Ross Martin declares as follows:

1.    I am a partner with the law firm Ropes & Gray LLP, counsel to Gawker

Media LLC ("Gawker Media), Gawker Media Group, Inc. ("GMGI"), and Gawker Hungary Kft..

("Gawker Hungary"), (collectively, the "Debtors"), as debtors and debtors in possession in the

above-captioned cases.

---

[1]    The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

2.      I submit this declaration in support of the *Debtor's First Omnibus Objection to Proofs of Claim Filed by Meanith Huon, and Motion to Apply Fed. R. Civ. P. 12(b)(6) and12(c) Pursuant to Rules 9014 and 7012* (the "Objection").

3.      Attached as Exhibit 4 is a true and correct copy of an article published by Debtor Gawker Media LLC's website *Jezebel*, as that article was appended as an exhibit to the Second Amended Complaint in the Huon Defamation Action.

4.      Attached as Exhibit 5 is a true and correct copy of the Memorandum Opinion and Order issued by the Illinois Federal District Court in the Huon Defamation Action on December 4, 2014, dismissing all causes of action asserted against the Debtors by Claimant Meanith Huon with prejudice.

5.      Attached as Exhibit 6 is a true and correct copy of the Fourth Amended Complaint in the Huon Defamation Action as filed by Claimant Meanith Huon on November 11, 2012.

6.      Attached as Exhibit 7 is a true and correct copy of the judgment entered in favor of the Debtors and against Claimant Meanith Huon in the Huon Defamation Action.

Dated: October 31, 2016
        Boston, Massachusetts

                                        */s/ D. Ross Martin*
                                        D. Ross Martin

**<u>EXHIBIT 4</u>**

**Gawker Story**

Case: 1:11-cv-03054 Document #: 23-4 Filed: 07/22/11 Page 1 of 1 PageID #:248

Acquitted Rapist Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer
http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist#
File Edit View Favorites Tools Help meanith huon Sign in

Acquitted Rapist Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer
http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist#
File Edit View Favorites Tools Help meanith huon Sign in

Favorites
Acquitted Rapist Sues Blog For Calling Him Serial...

JEZEBEL

4,374 views, May 11, 2011 6:45 PM LATEST MEANITH HUON

LAWSUITS

# Acquitted Rapist Sues Blog For Calling Him Serial Rapist

Irin Carmon —A Chicago man who was acquitted on a sexual assault charge is suing the legal blog Above The Law for implying that he's a serial rapist. If Meanith Huon gets his way, blogger sloppiness may cost ATL $50 million.

Huon, a lawyer, was initially charged with two counts of sexual assault, two counts of sexual abuse, and one count of unlawful restraint. A woman had jumped out of his car, ran through a cornfield barefoot, and knocked on a random person's door saying he had forced her into sexual activity. She later said she believed she was spending time with him for a job opportunity related to alcohol promotions, until he allegedly yelled at her to perform oral sex. Huon's version was that it was a consensual encounter, and

Jezebel on Facebook
Like
59,922 people like Jezebel.
Libby Nelson Melinda Graciel Dani
Brooke
Facebook social plugin

NEWER STORIES

LAWSUITS 6:45 PM Acquitted Rapist Sues Blog For Calling Him Serial Rapist





Huon is also suing local law enforcement authorities in Madison County, Illinois for prosecutorial misconduct. His beef with Above The Law stems from a roundup post entitled "Rape Potpurri," in which blogger Elie Mystal mistakenly believes that news accounts of the same incident are different incidents that should have tipped the woman off that Huon was a serial offender. "The content of the article were [sic] defamatory in that it incorrectly and recklessly portrayed Mr. Huon as a serial rapist by treating the same complaining witness as three different women," says the complaint, according to *Forbes*.

"And this, people, is why God invented Google," wrote Mystal in the original post, linking to articles that in fact described the same case. The lesson learned: Google only takes you so far.

Lawyer Sues Legal Blog For $50 M Over Rape Story [Forbes]
Related: Rape Potpurri [ATL]

| DISCUSSION THREADS | Featured | All | Start a new thread |

SarahMC                                                    11 May 2011 9:16 PM

Just because a man is acquitted of rape does not mean he did not commit rape. That a jury would decide "not guilty" does not magically erase what he did--if he did, in fact, rape someone. The vast majority of rapists are never convicted of rape. Does that make them not rapists?

9    The Best Videos of the Week

10   TLC's Horrific Reenactment Of An Amniotic Sac Falling Out Of Woman

11   10 Things You May Have Missed On TV This Week

12   Jon Hamm Is Emotional, Very Emotional

13   Same Sex Couples Required To Marry If They Want Partners To Receive Health Insurance

14   Can Kate Middleton Bring Back Pantyhose?

15   Bachmann Signs Anti-Porn Pledge Saying Blacks Were Better Off During Slavery

16   The *Arrested Development* Movie Is Happening, People

17   Kristen Stewart "Grossed Out" By Casey Anthony Comparisons

## EXHIBIT 5

**Huon District Court Opinion**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MEANITH HUON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 03054 |
| | ) | |
| BREAKING MEDIA, LLC a/k/a BREAKING | ) | Judge John J. Tharp, Jr. |
| MEDIA; BREAKING MEDIA, INC. a/k/a | ) | |
| BREAKING MEDIA; DAVID LAT; ELIE MYSTAL; | ) | |
| JOHN LERNER; DAVID MINKIN; GAWKER | ) | |
| MEDIA, LLC a/k/a GAWKER MEDIA; BLOGWIRE | ) | |
| HUNGARY SZELLEMI ALKOTAST HASZNOSITO | ) | |
| KFT; GAWKER MEDIA GROUP, INC. a/k/a | ) | |
| GAWKER MEDIA; GAWKER ENTERTAINMENT, | ) | |
| LLC; GAWKER TECHNOLOGY, LLC; GAWKER | ) | |
| SALES, LLC; NICK DENTON; IRIN CARMON; and | ) | |
| GABY DARBYSHIRE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Meanith Huon ("Huon"), brings state law claims for defamation and related torts against two groups of defendants: the Above the Law ("ATL") defendants and the Gawker defendants.[1] Huon initially sued the ATL defendants for publishing an allegedly defamatory article on AboveTheLaw.com that discussed his criminal trial for sexual assault charges. He subsequently amended his complaint to include claims against the Gawker defendants for publishing an allegedly defamatory article on Jezebel.com about the filing of this lawsuit against

---

[1] The ATL defendants are Breaking Media, LLC a/k/a Breaking Media; Breaking Media, Inc. a/k/a Breaking Media; David Lat ("Lat"); Elie Mystal ("Mystal"); John Lerner ("Lerner"); and David Minkin ("Minkin"). The Gawker defendants are Gawker Media, LLC a/k/a Gawker Media ("Gawker Media, LLC"); Blogwire Hungary Szellemi Alkotast Hasznosito KFT ("Blogwire Hungary"); Gawker Media Group, Inc. a/k/a Gawker Media ("Gawker Media Group, Inc."); Gawker Entertainment, LLC ("Gawker Entertainment"); Gawker Technology, LLC ("Gawker Technology"); Gawker Sales, LLC ("Gawker Sales"); Nick Denton ("Denton"); Irin Carmon ("Carmon"); and Gaby Darbyshire ("Darbyshire").

1

the ATL defendants. The current Fourth Amended Complaint (the "Complaint") seeks relief against all the defendants for defamation *per se* (Count I), defamation *per quod* (Count II), false light invasion of privacy (Count III), intrusion upon seclusion (Count IV), intentional infliction of emotion distress (Count V), conspiracy to defame (Count VI), conspiracy to invade privacy (Count VII), tortious interference with prospective economic advantage (Count VIII), and cyberstalking and cyberbullying (Count IX). The ATL defendants have moved to dismiss all the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Several of the Gawker defendants have likewise moved to dismiss all the claims against them. For the reasons stated below, the Gawker defendants' motion to dismiss [174] is granted and the ATL defendants' motion to dismiss [178] is granted in part and denied in part.

## BACKGROUND

Meanith Huon is an attorney licensed to practice law in Illinois.[2] On July 2, 2008, Huon was charged with two counts of criminal sexual assault, two counts of criminal sexual abuse, and one count of unlawful restraint. The charges arose out of his alleged interactions with "Jane Doe" on June 29, 2008, in Madison County, Illinois. *See* Gawker Motion to Dismiss, Dkt. 191, at 25 (Exhibit A). Approximately one year later, on July 17, 2009, Huon was charged with cyberstalking and witness harassment based on allegations involving the same Jane Doe. *See id.*

---

[2] In reviewing a motion to dismiss, the Court may consider: (1) the plaintiff's complaint and any documents attached to it, (2) documents attached to the motion to dismiss that are critical to the complaint and referred to in it, (3) additional facts set forth in the plaintiff's response to the motion or in any documents attached to the response, as long as those additional facts are consistent with the allegations in the complaint, and (4) information that is subject to proper judicial notice (such as public records). *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). When considering these materials, the Court accepts the plaintiff's factual allegations as true and construes all reasonable inferences in favor of the plaintiff. *Gessert v. United States*, 703 F.3d 1028, 1033 (7th Cir. 2013). The factual background is therefore summarized with this standard in mind and, except where otherwise indicated, is drawn from the Complaint (Dkt. 162) and accompanying exhibits (Dkts. 162-1 through 162-21).

at 29 (Exhibit C). Huon was tried on the 2008 sexual assault charges in May 2010 in Madison County. The trial began on May 4 and ended on May 6 with his acquittal on both charges. *See* Exhibit A to ATL Motion to Dismiss, Dkt. 190-1, at 2-4; Exhibit B to ATL Motion to Dismiss, Dkt. 190-2, at 2. The 2009 cyberstalking and witness harassment charges were ultimately dismissed in December 2011.

The charges against Huon and his criminal trial received publicity in local media and legal news sources; several of the resultant articles are relevant to the instigation of this case. On July 2, 2008, the day the sexual assault and related charges were filed, an article about those charges appeared in the *Madison County Record* (the "Madison County Article"). *See* Exhibit C to Response to ATL Motion to Dismiss, Dkt. 194-8. The following day, July 3, 2008, the legal blog AboveTheLaw.com published a post by defendant Lat (the "2008 ATL Post") that included the one-line statement "Lawyer of the Day: Meanith Huon" along with a link to the Madison County Article. Next, on August 24, 2009, a post discussing both the 2008 and 2009 charges appeared on the blog LawyerGossip.com (the "Lawyer Gossip Post"). *See* Exhibit F to Response to ATL Motion to Dismiss, Dkt. 194-13. Finally, on May 6, 2010, AboveTheLaw.com published an article by defendant Mystal titled "Rape Potpourri" (the "ATL Article").

The ATL Article provided information and commentary on two "rape stories": (1) the arrest of former New York Giants linebacker Lawrence Taylor based on a rape allegation, and (2) the allegations at issue in Huon's criminal trial and the opening statement made by Huon's defense lawyer at trial. The section of the ATL Article on Huon purported to link to and quote, *inter alia*, the Lawyer Gossip Post, the Madison County Article (which was also linked to in the 2008 ATL Post), and an article in the *Belleville News Democrat* titled "Testimony: Woman says

she was raped by attorney posing as scout for models" (the "BND Article").[3] At some point following the ATL Article's initial publication, an update was added toward the end of the piece indicating that Huon had been acquitted of the charges discussed.[4] AboveTheLaw.com allows readers to post comments on its articles (subject to certain terms of use), and the ATL Article eventually generated over 107 comments or replies from users.[5]

On May 6, 2011, one year after publication of the ATL Article, Huon sued the ATL defendants and the John Does who posted comments on the ATL Article for defamation, intentional infliction of emotional distress, and false light invasion of privacy.[6] *See* Initial Complaint, Dkt. 1. The filing of this suit, like the criminal charges against Huon, generated its share of publicity. On May 11, 2011, an article by defendant Carmon entitled "Acquitted Rapist Sues Blogger for Calling Him Serial Rapist" appeared on the women's interest blog Jezebel.com (the "Jezebel Article").[7] The Jezebel Article discussed Huon's criminal trial for sexual assault,

---

[3] In his response to the ATL motion to dismiss, Huon disputes the existence of the BND Article. However, the copy of the ATL Article attached as an exhibit to the Complaint reveals that the ATL Article presented the BND Article as one of its sources and indicates the title of the BND Article. Huon does not dispute the ATL Article's reliance on the Madison County Article and Lawyer Gossip Post.

[4] The update stated: "**UPDATE:** Meanith Huon was acquitted of these charges. Please check here for our continuing coverage." The words "check here" appeared in red text, as did other words and phrases in the ATL Article that were presented as hyperlinks.

[5] A saved version of the ATL Article is attached to the Complaint at Dkt. 162-8. The ATL Article is no longer available on AboveTheLaw.com, but it remains available online via the Internet Archive Wayback Machine at http://web.archive.org/web/20100512094544/http://abovethelaw.com/2010/05/rape-potpourri/ (last visited Dec. 4, 2014).

[6] The ATL defendants were served on June 15, 2011. *See* Waiver of Service of Summons, Dkt. 167; Waiver of Service of Summons, Dkt. 167-1. The current Complaint does not name any John Doe defendants.

[7] The headline of the Jezebel Article was changed at some point following the piece's initial publication. Screenshots of the original version are attached to the Complaint at Dkt. 162-12 and at Dkt. 162-16, at 2. The version with the changed headline is still available on Jezebel.com at http://jezebel.com/5800878/man-acquitted-of-sexual-assault-sues-blog-for-calling-him-serial-rapist (last visited Dec. 4, 2014).

Case: 1:11-cv-03054 Document #: 215 Filed: 12/04/14 Page 5 of 37 PageID #:2988

his lawsuit against local law enforcement authorities for prosecutorial misconduct, and his initial complaint against the ATL defendants in the instant suit. The Jezebel Article mentioned the title of the ATL Article and included links to the ATL Article and other relevant sources. The Jezebel Article also included an image containing Huon's arrest photograph superimposed over a screenshot of the start of the ATL Article. Users who are invited by Gawker Media editors or by previously invited users may post comments on Jezebel.com articles (subject to certain terms of use), and the Jezebel Article eventually generated over 80 comments or replies from such users. According to Huon, some of the user comments were written by employees of the Gawker defendants, posting under aliases.

On July 11, 2011, two months after publication of the Jezebel Article, Huon filed a First Amended Complaint which added new allegations and defendants related to, *inter alia*, the Jezebel Article and associated comments. The three individual Gawker defendants and "Gawker Media" were among the defendants added to the suit in the First Amended Complaint. Huon soon filed a Second Amended Complaint which removed certain of the other recently added defendants. Gawker Media and the individual Gawker defendants were subsequently served on August 24, 2011. *See* Waiver of Service of Summons, Dkt. 167; Waiver of Service of Summons, Dkt. 167-1.

On September 21, 2011, the ATL defendants moved to dismiss the Second Amended Complaint. Shortly thereafter, Gawker Media, the individual Gawker defendants, and Jezebel.com (which has since been dropped from the suit) likewise filed a motion to dismiss. The two motions to dismiss were fully briefed at the time the case was transferred to this Court's docket on August 3, 2012. Upon reviewing the case, the Court dismissed the Second Amended Complaint without prejudice due to deficiencies in the allegations respecting diversity

jurisdiction. The Court denied the two motions to dismiss as moot in light of that ruling. Huon then filed a Third Amended Complaint which contained updated jurisdictional allegations, added new claims and defendants,[8] and removed some defendants. Since the jurisdictional allegations in the Third Amended Complaint were still insufficient, the Court again dismissed the complaint without prejudice.[9] On November 15, 2012, Huon filed the current Complaint with further updated jurisdictional information. The ATL defendants and certain of the Gawker defendants subsequently filed their respective motions to dismiss which are now under consideration.[10]

Based on the information in the Complaint and the notifications of affiliates filed pursuant to Federal Rule of Civil Procedure 7.1 and Local Rule 3.2, this matter is properly before the Court under diversity jurisdiction in accordance with 28 U.S.C. § 1332. Huon, a citizen of Illinois, is seeking compensatory damages in an amount well in excess of $75,000 and punitive damages of $100,000,000. The corporate ATL defendants are: (1) Breaking Media, Inc., a New York corporation that owns and operates AboveTheLaw.com and has its principal place of business in New York, and (2) Breaking Media, LLC, an inactive limited liability company that has merged into Breaking Media, Inc. The corporate Gawker defendants, which own and/or

---

[8] The defendants added in the Third Amended Complaint were Blogwire Hungary, Gawker Entertainment, Gawker Sales, and Gawker Technology. There is no evidence of service on the docket as to these four defendants, nor have there been any attorney appearances for them. Gawker Entertainment, Gawker Sales, and Gawker Technology are mentioned in the Gawker notification of affiliates filed pursuant to Federal Rule of Civil Procedure 7.1 and Local Rule 3.2; however, Blogwire Hungary is not mentioned in that filing.

[9] The Court provided guidance to Huon as to the jurisdictional deficiencies in his complaints at the time of each dismissal.

[10] The Gawker motion to dismiss was filed on behalf of "Gawker Media a/k/a Gawker.com, Jezebel.com, Nick Denton, Irin Carmon, and Gaby Darbyshire." *See* Gawker Motion to Dismiss, Dkt. 191, at 1. Jezebel.com is no longer named as a defendant in this case. More important to note is the fact that the motion was *not* filed on behalf of the four Gawker defendants that were named for the first time in the Third Amended Complaint. As previously noted, there is no evidence of service as to those four defendants.

operate Jezebel.com, are: (1) Gawker Media Group, Inc., a Cayman Islands corporation that has

its principal place of business in New York, (2) Gawker Media, LLC, a limited liability company

whose only member is Gawker Media Group, Inc., (3) Gawker Entertainment, a limited liability

company whose only member is Gawker Media, LLC, (4) Gawker Sales, a limited liability

company whose only member is Gawker Media, LLC, (5) Gawker Technology, a limited

liability company whose only member is Gawker Media, LLC, and (6) Blogwire Hungary, a

Hungarian entity that is similar to a U.S. limited liability company.[11] The individual ATL

defendants—John Lerner, the Chief Executive Officer of Breaking Media; David Lat, the

founding and managing editor of AboveTheLaw.com; David Minkin, the publisher of

AboveTheLaw.com; and Elie Mystal, a writer and editor for AboveTheLaw.com—are all

citizens of New York. Two of the individual Gawker defendants—Gaby Darbyshire, the Chief

Operating Officer of Gawker Media; and Irin Carmon, a reporter for Jezebel.com—are also

citizens of New York. Nick Denton, the founder and owner of Gawker Media, is a citizen of

Hungary and the United Kingdom.

## DISCUSSION

    "To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to

relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir.

---

[11] The record does not reveal Blogwire Hungary's members. This information is necessary to determine Blogwire Hungary's citizenship. *See Fellowes, Inc. v. Changzhou Xinrui Fellowes Office Equip. Co.*, 759 F.3d 787, 790 (7th Cir. 2014) ("[Since] Changzhou Fellowes is closer to a limited liability company than to any other business structure in this nation, it does not have its own citizenship—and it *does* have the . . . citizenship of its member . . . ."). But given that Blogwire Hungary has not appeared or been served in this case, is not discussed in any of the relevant filings besides the Complaint, and is likely a dispensable party that could be dropped from the lawsuit at a later date if necessary, the missing information about its citizenship is not a barrier to the Court's current exercise of jurisdiction over this matter. *Cf. Howell by Goerdt v. Tribune Entm't Co.*, 106 F.3d 215, 217-18 (7th Cir. 1997) (dismissing a corporate defendant named in the complaint whose citizenship was unknown and who was only briefly mentioned in the case filings).

2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009)). Although a court must accept all of the plaintiff's factual allegations

as true when reviewing the complaint, conclusory allegations merely restating the elements of a

cause of action do not receive this presumption. *Id.* "Where a complaint pleads facts that are

'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### A.    Liability for Publishing User Comments

All of Huon's claims other than his intrusion upon seclusion claim seek to hold the

defendants liable for publishing "the actionable and offensive statements," a phrase Huon uses to

refer collectively to the statements he challenges in the ATL Article, the Jezebel Article, and the

reader comments associated with each of those articles. The defendants argue that Section

230(c)(1) of the Communications Decency Act (the "CDA"), 47 U.S.C. § 230(c)(1), bars Huon's

claims against them based on reader comments.[12] Section 230(c)(1) states: "No provider or user

of an interactive computer service shall be treated as the publisher or speaker of any information

provided by another information content provider." *Id.* The CDA explicitly preempts liability

under any inconsistent state or local laws. *Id.* § 230(e)(3). For purposes of the CDA, an

---

[12] The Gawker defendants raised this argument in their motion to dismiss. The ATL
defendants did not address the question of their liability for reader comments in their motion to
dismiss or reply, and Huon did not raise the issue in his response to their motion—despite being
on notice of the CDA's potential applicability to this case by virtue of the Gawker motion to
dismiss. Since the ATL defendants could simply file a subsequent partial motion to dismiss
premised on the CDA, or a summary judgment motion with respect to that issue, and Huon has
already presented his legal arguments on the statute's proper interpretation in his response to the
Gawker motion to dismiss, the Court will address the import of the CDA with respect to both the
ATL defendants and the Gawker defendants.

interactive computer service is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." *Id.* § 230(f)(2). An information content provider is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id.* § 230(f)(3). In essence, the CDA says that "an online information system must not 'be treated as the publisher or speaker of any information provided by' someone else." *Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008).

Huon argues that the reader comments do not constitute information provided by "someone else," and that the defendants therefore are not protected by the CDA.[13] In support of this argument, he relies on the following allegations in the Complaint: (1) that the ATL Article and the Jezebel Article were designed to incite users to post defamatory comments in order to generate advertising revenue, (2) that the defendants encouraged users to post defamatory comments in response to the articles and subsequently edited those comments, (3) that the Gawker defendants intentionally placed defamatory comments about Huon in a prominent location, which encouraged other users to post defamatory comments, and (4) that some of the allegedly defamatory comments posted in response to the Jezebel Article were written by employees of the Gawker defendants, posting under aliases. None of these allegations takes the reader comments at issue outside the protection provided by the CDA.

---

[13] Huon does not dispute that the defendants qualify as "provider[s] or user[s] of an interactive computer service."

First, a website does not incite the posting of unlawful content merely by providing a forum for that content. *See Chicago Lawyers' Comm.*, 519 F.3d at 671-72 ("Nothing in the service craigslist offers induces anyone to post any particular listing or express a preference for discrimination . . . ."). This approach has been applied even where the forum is likely to or frequently does contain postings of an unlawful nature. *See, e.g.*, *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 968-69 (N.D. Ill. 2009) (citing *Chicago Lawyers' Comm.*, 519 F.3d at 671) (rejecting the plaintiff's argument that Craigslist induced users to post unlawful ads by having an "adult services" category and granting judgment on the pleadings for the defendant). Huon's argument that the defendants incited defamatory comments is further undercut by the ATL defendants' and Gawker defendants' written policies, which Huon sets forth in the Complaint, that prohibit the posting of defamatory or otherwise illegal material. *See Dart*, 665 F. Supp. 2d at 969 ("Plaintiff's argument that Craigslist causes or induces illegal content is further undercut by the fact that Craigslist repeatedly warns users not to post such content."); *see also Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1171 (9th Cir. 2008) ("[T]he website did absolutely nothing to encourage the posting of defamatory content—indeed, the defamatory posting was contrary to the website's express policies.").

Second, numerous courts have determined that the CDA applies even where a website edits third-party content or manipulates such content to make it more prominent. *See, e.g.*, *Dowbenko v. Google Inc.*, No. 14-10195, 2014 WL 4378742, at *3 (11th Cir. Sept. 5, 2014) (finding that the plaintiff's defamation claim was preempted by the CDA despite his allegation that Google "manipulated its search results to prominently feature the article at issue"); *Fair Hous. Council*, 521 F.3d at 1169 ("A website operator who edits user-created content—such as by correcting spelling, removing obscenity or trimming for length—retains his [CDA]

Case 1:11-cv-03054   Document #: 215   Filed: 11/04/14 Page 11 of 53 PageID #:2974

immunity . . . ."); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish . . . or alter content—are barred [by the CDA]."). Thus, the fact that the defendants allegedly engaged in editorial functions such as determining the order of comments or making edits to them does not transform the defendants into "providers" of the comments for CDA purposes.

Finally, the allegation (on "information and belief") that some of the Jezebel Article comments were written by Gawker employees using aliases contains insufficient factual content to allow the Court to reasonably infer that the Gawker defendants were involved in creating those comments.[14] The Complaint does not allege that any of the named individual Gawker defendants posted comments to the article. Nor does it allege that the Gawker employees who allegedly posted comments did so within the scope of their employment, which is a required element of a *respondeat superior* claim in Illinois. *See Wilson v. Edward Hosp.*, 981 N.E.2d 971, 978 (2012); *cf. Marquis v. Omniguide, Inc.*, 714 F. Supp. 2d 640, 646 (N.D. Tex. 2010) (granting a motion to dismiss with respect to an allegedly defamatory statement made by an unidentified company representative, where the plaintiff failed to allege that the representative acted within the scope of his employment). As a result of these pleading deficiencies, which are not resolved by the additional allegations in Huon's response to the Gawker motion to dismiss,[15] the

---

[14] Huon makes no similar argument as to the ATL defendants.

[15] The response states: "Gawker's writers are under constant pressure to generate web traffic to keep their jobs; writers' compensation is based on the amount of web traffic the story generates. Journalist Drew Johnson has traced hundreds of 'anonymous' comments posted to promote Gawker stories to actual Gawker employees . . . ." Response to Gawker Motion to Dismiss, Dkt. 192, at 2 (footnotes omitted). The response further states: "Mr. Johnson has investigated Gawker writers creating aliases to promote their own stories and Gawker employees creating fake accounts to promote Gawker stories on Reddit.com. He concluded that the practice of creating fake accounts to post 'anonymous' comments online to promote Gawker's stories

Complaint fails to state a plausible claim that the Gawker defendants were "providers" of the comments allegedly written by Gawker employees.

Accordingly, Huon's claims are dismissed with prejudice to the extent they seek to hold the defendants liable for publishing the reader comments associated with the ATL Article and the Jezebel Article; the remaining sections of this opinion will address the defendants' liability for publishing only the content of the articles themselves.

### B.   Defamation (Counts I and II)

Huon brings defamation *per se* and *per quod* claims based on statements in the ATL Article and the Jezebel Article. "A defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Green v. Rogers*, 234 Ill. 2d 478, 491, 917 N.E.2d 450, 459 (2009). The elements of a defamation claim for both *per quod* and *per se* actions are "that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused

---

appear to be a companywide policy." *Id.* at 17. In support of these statements, Huon attaches a 2008 article indicating that Gawker writers receive a monthly salary plus a bonus based on the number of page views their posts receive, a July 2012 article describing recently introduced changes to Gawker's comment system, and several online posts written by Johnson in 2012. *See* Exhibits B through D to Response to Gawker Motion to Dismiss, Dkts. 195-2 through 195-7. The posts by Johnson suggest that a Gawker writer hired in February 2012 writes his Gawker articles using an alias and that, between March 2010 and November 2012, several Gawker employees or interns used aliases to create "shell" accounts on Reddit.com in order to promote Gawker articles. Read in conjunction with these supporting exhibits, none of the new factual allegations in Huon's response create a reasonable inference that Gawker employees, acting within the scope of their employment, used aliases to post comments *to the Jezebel Article*. In fact, none of the new allegations concern Gawker employees posting comments to *any* Gawker articles. Rather, the new allegations either describe developments after the publication of the Jezebel Article, suggest that some Gawker employees used aliases to post on non-Gawker websites, or "reveal" that Gawker compensates writers based on the popularity of their works, an unremarkable proposition which does nothing to push Huon's claim regarding the Gawker defendants' responsibility for some of the comments across the line "between possibility and plausibility."

damages." *Id.* at 491, 917 N.E.2d at 459. The two types of defamation claims differ only with respect to the plaintiff's burden to plead and prove damages. In a defamation *per quod* action, damage to the plaintiff's reputation is not presumed and the plaintiff must plead and prove special damages. *Tuite v. Corbitt*, 224 Ill. 2d 490, 501, 866 N.E.2d 114, 121 (2006); *see also Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 390, 882 N.E.2d 1011, 1018 (2008) ("special damages [are] actual damages of a pecuniary nature"). In a defamation *per se* action, damage is presumed if the statement falls within one of the five defamation *per se* categories recognized in Illinois:

> (1) statements imputing the commission of a crime; (2) statements imputing infection with a loathsome communicable disease; (3) statements imputing an inability to perform or want of integrity in performing employment duties; (4) statements imputing a lack of ability or that otherwise prejudice a person in his or her profession or business; and (5) statements imputing adultery or fornication.

*Tuite*, 224 Ill. 2d at 501, 866 N.E.2d at 121. Even if a statement falls within one of these categories, however, it is not actionable as defamation *per se* if it is reasonably capable of an innocent construction. *Id.* at 502, 866 N.E.2d at 121. In applying the innocent construction rule, "courts must interpret the words 'as they appeared to have been used and according to the idea they were intended to convey to the reasonable reader.'" *Id.* at 512, 866 N.E.2d at 123 (quoting *Bryson v. News Am. Publ'ns, Inc.*, 174 Ill. 2d 77, 93, 672 N.E.2d 1207, 1217 (1996)). The preliminary determination of whether a statement is actionable as defamation *per se* is a question of law. *Id.* at 510, 866 N.E.2d at 126.

Statements that do not contain verifiable facts—such as opinions or rhetorical hyperbole—are not actionable as defamation; it is a question of law whether a statement is factual in nature. *Madison v. Frazier*, 539 F.3d 646, 654 (7th Cir. 2008). Statements that are not about the plaintiff also are not actionable as defamation. *BASF AG v. Great Am. Assurance Co.*,

Case: 1:11-cv-03054 Document #: 115 Filed: 11/04/14 Page 14 of 53 PageID #:2977

522 F.3d 813, 820 (7th Cir. 2008) (citing *Solaia Tech., LLC v. Specialty Publ'g Co.*, 221 Ill. 2d 558, 579, 852 N.E.2d 825, 839 (2006)). Further, statements that are privileged cannot support a defamation claim. *Solaia Tech.*, 221 Ill. 2d at 585, 852 N.E.2d at 839. As relevant here, the fair report privilege protects publication of defamatory statements in a report of an official proceeding, provided that the report is "complete and accurate" or is "a fair abridgement" of the proceeding. *Id.* at 585, 588, 852 N.E.2d at 842, 843. Since the availability of the privilege hinges not on the reporter's status or source but on the accuracy and fairness of the report, the privilege applies regardless of whether the reporter is part of the established press and regardless of whether the reporter obtained the information directly from the official proceeding. *See, e.g.*, *Missner v. Clifford*, 393 Ill. App. 3d 751, 761, 914 N.E.2d 540, 550 (2009) ("Both media and nonmedia reporters may claim protection under the privilege."); *Bannach v. Field Enters., Inc.*, 5 Ill. App. 3d 692, 693, 284 N.E.2d 31, 32 (1972) (applying the privilege to a newspaper article that was based on a wire service report of an official proceeding).[16] It is a question of law whether the privilege applies. *Solaia Tech.*, 221 Ill. 2d at 585, 852 N.E.2d at 842.

### 1.   Defamation *Per Se* (Count I)

Huon alleges that some of the statements in the ATL Article and the Jezebel Article fall under the first, third, fourth, and fifth defamation *per se* categories, but does not specify which statements are the basis of his defamation *per se* claim. The defendants argue that each potentially actionable statement is protected by the fair report privilege, is not about Huon, does not contain verifiable facts, does not fall into one of the defamation *per se* categories, or is

---

[16] Huon's contention that the privilege does not apply to bloggers because they are not "reporters" is therefore incorrect.

reasonably capable of an innocent construction.[17] The Court agrees with the defendants with respect to most of the statements in the ATL Article and all of the statements in the Jezebel Article, as explained below.

### a.    The ATL Article

The allegedly defamatory portions of the ATL Article consist of: (1) five text blocks summarizing Jane Doe's testimony and defense counsel's opening statement at Huon's criminal trial,[18] (2) commentary introducing and reflecting on the trial summaries in those text blocks, (3) a section facetiously suggesting the use of sexual consent forms and proposing putatively humorous language for such a form, and (4) a section containing quotations from the Madison County Article and the Lawyer Gossip Post and suggesting that if Jane Doe had Googled Huon before agreeing to meet him, she would have found those or similar articles.[19]

---

[17] The Gawker defendants also argue that the allegedly defamatory statements in the Jezebel Article are not actionable based on the "incremental harm" doctrine. Illinois courts have not recognized that doctrine, however. *Trudeau v. ConsumerAffairs.com, Inc.*, No. 10 C 7193, 2011 WL 3898041, at *8 (N.D. Ill. Sept. 6, 2011) (citing *Myers v. The Telegraph*, 332 Ill. App. 3d 917, 925, 773 N.E.2d 192, 200 (2002)).

[18] The ATL defendants assert that these five text blocks are quotations from the BND Article. The ATL Article itself suggests that to be the case, although it is not a model of journalistic clarity in that regard. Huon, for his part, disputes the existence of the BND Article, as noted previously. This question is irrelevant, however; if the material in the text blocks is defamatory and unprivileged, liability attaches regardless of whether it is original material or a republication. *See Owens v. CBS Inc.*, 173 Ill. App. 3d 977, 992, 527 N.E.2d 1296, 1307 (1988) ("[T]he republisher of a defamatory statement made by another is himself liable for defamation . . . ."); *see also Hale v. Scott*, 371 F.3d 917, 919 (7th Cir. 2004) (citing *Owens*, 173 Ill. App. 3d at 994, 527 N.E.2d at 1308).

[19] In his response to the ATL motion to dismiss, Huon also raises a new argument that the inclusion of a hyperlink to the Lawyer Gossip Post in the ATL Article constitutes a republication of statements in the Lawyer Gossip Post that Huon claims are defamatory. This theory is not viable because the CDA, which is applicable to this case for the reasons explained in Section A, provides liability protection for both linking to and posting third-party content. *See, e.g.*, *Nieman v. Versuslaw, Inc.*, No. 12-3104, 2012 WL 3201931, at *8 (C.D. Ill. Aug. 3, 2012) (finding that the plaintiff's invasion of privacy and defamation claims, which were based on links appearing on the defendants' websites, were barred by the CDA), *aff'd*, 512 F. App'x 635 (7th Cir. 2013).

The text blocks summarizing Huon's criminal trial are protected by the fair report privilege. Although the ATL Article does not explicitly state that it is reporting on Huon's trial, it is clear both from the phrasing in the article (including references to "testimony" and defense counsel's opening statement) and from a comparison of the article with the trial transcript, Exhibit B to ATL Motion to Dismiss, Dkt. 190-2, that those portions of the article constitute a report of an "official proceeding." Huon takes issue with the fact that the article only reports on material from the first day of his trial, but the fair report privilege does not apply only to coverage of trials in their entirety. *Cf. Solaia Tech.*, 221 Ill. 2d at 589, 852 N.E.2d at 844 (finding that the privilege applies to reporting on a complaint even when there has not been any judicial action). Further, while the article does not provide a complete report of everything that happened during the first day of Huon's trial, it is a "fair abridgment" of the proceedings. *See generally id.* at 590 (noting that a report is a fair abridgment if it conveys a "substantially correct account"). The article accurately summarizes Jane Doe's testimony as well as the defense's theory of the case, as explained in the defense opening, and does not convey an erroneous impression of what was said at the trial. *See id.* The fair report privilege therefore applies.

The commentary interspersed among the text blocks summarizing the trial likewise cannot support a defamation claim. The statements suggesting that Huon was an alleged rapist, that he listed Craigslist ads claiming to be a talent scout, that he came up with a scheme to meet women, and that he lied about himself and his intentions are all protected by the fair report privilege.[20] These statements, which serve to introduce and supplement the information in the

---

[20] Most of these statements appear in the commentary about Huon that precedes the first text block summarizing the trial; that commentary reads: "We cover the rape allegations of . . . any alleged attorney rapists near you. . . . A St. Louis-area lawyer came up with an excellent little game to meet women. Meanith Huon allegedly listed Craigslist ads where he claimed to be a talent scout for models. . . . Huon's potentially harmless lies allegedly turned dastardly, pretty

text blocks, can be traced back to material in the trial transcript and do not convey an erroneous impression of what was stated.[21] Other commentary statements in the article suggesting that Huon's version of the events was "incredible," that his encounter with Jane Doe "end[ed] badly," and that Huon was "wanton," "depraved," "dastardly," and a "potential rapist" are non-actionable statements of opinion (*e.g.*, "Our next story [is] from the files of the wanton and depraved . . . . [A]pparently there are a lot of depraved dudes walking around out there that are potential rapists."). The remaining commentary statements that Huon claims are defamatory are simply not about him (*e.g.*, "I [Mystal] once pretended to be an Ostrich rancher . . . .").

The section of the article about sexual consent forms is also not actionable as defamation. That section consists of the following text:

> It seems to me that there is entirely too much (alleged) raping going on in this country. If this keeps up, men and women are going to have to start carrying around sexual consent forms on their persons.
>
>> I, the undersigned, being of sound mind and hot body, do hereby consent to affixing my ____ to the other party's ____. Such amorous undulations include, but are not limited to, ____, ____, and

---

quickly." In addition, a comment after the third text block summarizing the trial questions whether "lying . . . about your job and your intentions to get [a woman] into [your] car counts as consensual."

[21] Huon challenges the ATL Article's use of the words "rape" and "rapist" given that he was charged with "criminal sexual assault" and not "rape." However, a report does not need to use the exact verbiage as the official proceeding in order to be protected by the fair report privilege. *See, e.g.*, *Harrison v. Chi. Sun-Times, Inc.*, 341 Ill. App. 3d 555, 572, 793 N.E.2d 760, 774 (2003) (finding that the fair report privilege applied where an article stated that the plaintiff had been convicted of kidnapping, even though she was actually found guilty of "wrongful removal"); *see also In re Det. of Lieberman*, 201 Ill. 2d 300, 315, 776 N.E.2d 218, 227 (2002) ("[T]he offense of rape was subsumed by the subsequently created offenses of criminal and aggravated criminal sexual assault . . . ."). Moreover, the term "rape" was used multiple times on the first day of Huon's trial, including by defense counsel in his opening argument. Thus, the fact that some of the statements in the ATL Article contain the words "rape" or "rapist" does not bring those statements outside the protection of the fair report privilege.

17

Case 1:11-cv-03054 Document #: 215 Filed: 11/04/14 Page 18 of 53 PageID #:2981

> ____, and all proposals will be considered so long
> as no animals (barnyard or otherwise) are involved.
>
> I claim no rights to future ____, ____, or ____, in
> exchange for this brief interruption in my chronic
> loneliness.
>
> While I may be quite intoxicated right now, I know
> damn well what I'm doing.

This section is not about Huon and does not contain any statements of fact, and therefore cannot support a defamation claim.

By contrast, the section containing the statements about Googling Huon cannot be disposed of so readily. That section appears after introductory material indicating that there were rape allegations against Huon and that Jane Doe testified that she met him after responding to a Craigslist ad he posted to recruit promotional models. The section states:

> And this, people, is why God invented Google. Had the victim
> Googled Huon, she would have found stories like this, from the
> Madison County Record:
>
> > A Chicago attorney who was posing as a supervisor
> > for a company that sets up promotions for alcohol
> > sales at area bars was charged in Madison County
> > July 2, with two counts of criminal sexual assault,
> > two counts of criminal sexual abuse and one count
> > of unlawful restraint.
> >
> > Meanith Huon, 38, of 3038 S Canal St. in Chicago,
> > was arrested by the Chicago Police Department on
> > July 1, and was transferred to Madison County the
> > next day.
>
> Or she might have come across this link, at Lawyer Gossip:
>
> > Lawyer, Meanith Huon, 39, who was originally
> > charged with criminal sexual assault, sexual abuse
> > and unlawful restraint is now facing charges of
> > harassment and cyber stalking!

Read in context, this material suggests that Huon was charged with sexual assault and related offenses, and then subsequently charged with harassment and cyberstalking, all prior to the Jane

18

Case 1:11-cv-03054 Document #: 211 Filed: 11/04/14 Page 19 of 33 PageID #:2981

Doe incident. It thus creates the impression that he was alleged to have committed sexual assault

on two occasions—the first being the incident that prompted the sexual assault charges

mentioned in the Madison County Article and Lawyer Gossip Post, and the second being the

incident involving Jane Doe. The section also suggests that Huon posed as a promotions

supervisor in order to meet women on an occasion prior to his interactions with Jane Doe. Since

the section is erroneously presented as chronicling events unconnected to the Jane Doe incident,

it is not a "substantially correct account" of an official proceeding and the statements within it

are not protected by the fair report privilege. Further, since the statements convey the impression

that Huon was charged with sexual assault on a prior occasion and that he posed as a promotions

supervisor on a prior occasion, they qualify as defamation *per se*[22] and are not reasonably

capable of an innocent construction. *Cf. Solaia Tech.*, 221 Ill. 2d at 593-94, 852 N.E.2d at 846-47

(finding that a statement implying that a civil complaint had accused the plaintiff of committing

a crime was not capable of an innocent construction); *Kumaran*, 247 Ill. App. 3d at 227, 617

N.E.2d at 199 (finding that an article that impugned the plaintiff's personal integrity was not

capable of an innocent construction).

---

[22] The suggestion that Huon was charged with sexual assault on a prior occasion falls within multiple defamation *per se* categories. *Cf. Solaia Tech.*, 221 Ill. 2d at 592 (finding that a statement implying that the plaintiff had been accused of committing a crime fell "within several of the recognized categories of defamation *per se*"). The suggestion that he posed as a promotions supervisor on a prior occasion falls within the fourth defamation *per se* category, since Illinois courts recognize that attacks related to personal integrity and character can "prejudice" a plaintiff in his profession if he is engaged in a profession that requires a high degree of integrity. *See Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005); *see also Kumaran v. Brotman*, 247 Ill. App. 3d 216, 227, 617 N.E.2d 191, 199 (1993) ("By portraying plaintiff as a swindler, the article could be found to prejudice his teaching ability and integrity because it presented him as someone who would not be an acceptable role model for young students."); *Green v. Rogers*, 384 Ill. App. 3d 946, 959, 895 N.E.2d 647, 661 (2008) (noting that statements impugning personal integrity can prejudice a lawyer in his profession), *aff'd in part and rev'd in part on other grounds*, 234 Ill. 2d 478, 917 N.E.2d 450 (2009).

19

 Accordingly, Count I survives as to the ATL defendants only with respect to the statements in the section about Googling Huon that imply: (1) that Huon was charged with sexual assault on an occasion prior to the Jane Doe incident, and (2) that he posed as a promotions supervisor in order to meet women on an occasion prior to allegedly posting the ad to which Jane Doe responded (collectively, the "two actionable implications in the ATL Article"). Count I is dismissed with prejudice with respect to all other statements in the ATL Article.

<div align="center">

**b.    The Jezebel Article**

</div>

Huon alleges that the Jezebel Article is defamatory based on: (1) the original article headline and the image placed directly below it, (2) the article's report of his criminal trial, (3) the article's report of his lawsuit based on the ATL Article, (4) a statement in the article commenting on the ATL Article and Huon's lawsuit, and (5) the hyperlink to the ATL Article placed at the bottom of the article.

The original headline of the Jezebel Article was "Acquitted Rapist Sues Blog For Calling Him Serial Rapist." The image below it contains Huon's arrest photograph superimposed over a screenshot showing the ATL Article's headline ("Rape Potpourri") and first two sentences ("We've got a couple of rape stories, but I don't have enough rape humor to fill out two posts. So we'll tackle them together."). Huon alleges that the Jezebel Article's headline and the placement of his arrest photograph near the words "rapist" and "rape" in the headline and screenshot imply that he committed rape. Although it is defamatory *per se* to falsely suggest that a person is a rapist, the challenged items are not actionable as defamation *per se* because they are reasonably capable of an innocent construction. *See generally Tuite*, 224 Ill. 2d at 502, 866 N.E.2d at 121. The headline itself expressly states that Huon was acquitted, and even if one interprets it to imply that, despite the acquittal, Huon is a rapist, it would still not be actionable as defamation *per se*

<div align="center">

20

</div>

under the innocent construction rule. Under Illinois law, "the innocent construction rule requires a writing 'to be read as a whole.'" *Id.* at 512 (quoting *John v. Tribune Co.*, 24 Ill. 2d 437, 442, 181 N.E.2d 105, 108 (1962)). Therefore, "a headline and the text of the article to which it refers are to be considered as one document and . . . . the 'import of the entire article' must be considered in reaching a determination of reasonable innocent construction." *Harrison*, 341 Ill. App. 3d at 570, 793 N.E.2d at 772 (quoting *Owen v. Carr*, 134 Ill. App. 3d 855, 860, 478 N.E.2d 658, 662 (1985), *aff'd*, 113 Ill. 2d 273, 497 N.E.2d 1145 (1986)). However one might interpret the Jezebel Article headline and accompanying image, the associated article clearly indicates that Huon was acquitted of the charges against him. Indeed, its opening words are "A Chicago man who was acquitted on a sexual assault charge . . . ." Thus, considered in the context of the article as a whole, the headline and image are reasonably capable of an innocent construction and are not actionable as defamation *per se*. *Cf. Salamone v. Hollinger Int'l, Inc.*, 347 Ill. App. 3d 837, 840-41, 807 N.E.2d 1086, 1090-91 (2004) (finding that a headline that implied that the plaintiff was a mobster was reasonably capable of an innocent construction since the text of the article indicated that the plaintiff was only *reputed* to be a mobster); *Antonelli v. Field Enters., Inc.*, 115 Ill. App. 3d 432, 435, 450 N.E.2d 876, 878 (1983) (same); *see also Knafel v. Chi. Sun-Times, Inc.*, 413 F.3d 637, 642 (7th Cir. 2005) (citing *Salamone*, 347 Ill. App. 3d 837, 807 N.E.2d 1086, and *Antonelli*, 115 Ill. App. 3d 432, 450 N.E.2d 876).

Huon's allegations based on the report of his criminal trial in the Jezebel Article likewise cannot support a defamation claim. Huon alleges that the report is defamatory insofar as it suggests that the jury acquitted him partly on the basis of a bartender's testimony. The challenged statement appears at the end of the article's discussion of his trial and reads as follows: "Huon's version was that it was a consensual encounter, and partly on the strength of a

21

bartender's testimony that the woman had been drinking and asked where to go to have fun, the

jury believed him." Huon asserts that the Gawker defendants never spoke to any jurors and

simply invented the idea that the jury relied on the bartender's testimony in reaching its decision.

That is an odd argument given that the bartender's testimony about the victim's drinking and

inquiry about where to go to have fun was almost certainly evidence that *the defense* elicited at

trial; Huon does not explain how a report that credits defense evidence with contributing to a

verdict of acquittal could defame the successful defendant. In any event, regardless of who

elicited the testimony, the statement about the jury's deliberations is not actionable for the simple

reason that it is not defamatory, much less defamatory *per se*. *See Green*, 234 Ill. 2d at 491, 917

N.E.2d at 459 ("A defamatory statement is a statement that harms a person's reputation to the

extent it lowers the person in the eyes of the community or deters the community from

associating with her or him."). The import of the statement is that the jury found reason to

discredit Jane Doe's claims and therefore acquitted Huon of the charges; it thus bolsters rather

than defames his reputation.

      The challenged statements within the report of Huon's lawsuit against the ATL

defendants are also not actionable as defamation. The text relating to Huon's lawsuit reads as

follows:

> A Chicago man who was acquitted on a sexual assault
> charge is suing the legal blog Above The Law for implying that
> he's a serial rapist. If Meanith Huon gets his way, blogger
> sloppiness may cost ATL $50 million.
>     . . . .
>     . . . His beef with Above The Law stems from a roundup
> post entitled "Rape Potpurri," in which blogger Elie Mystal
> mistakenly believes that news accounts of the same incident are
> different incidents that should have tipped the woman off that
> Huon was a serial offender. "The content of the article were [sic]
> defamatory in that it incorrectly and recklessly portrayed Mr. Huon

> as a serial rapist by treating the same complaining witness as three
> different women," says the complaint, according to Forbes.
>     "And this, people, is why God invented Google," wrote
> Mystal in the original post, linking to articles that in fact described
> the same case. The lesson learned: Google only takes you so far.

Huon argues that the description of his lawsuit suggests that he did not contest any aspects of the

ATL Article other than the implication that he was a serial rapist. In addition, he alleges that the

reference to "blogger sloppiness" minimizes the ATL Article's inaccuracies and bolsters the

suggestion that he only objected to the serial rapist implication. These arguments are unavailing,

however, since the Jezebel Article contains a "fair abridgment" of Huon's initial complaint and

is therefore protected by the fair report privilege.[23] Although Huon later amended his complaint

to add additional allegations about the ATL Article, the initial complaint was premised solely on

the serial rapist implication. *See* Initial Complaint, Dkt. 1. In addition, it asserted that Mystal

omitted relevant information, acted recklessly, and did not read "the original source." *Id.* at 4-5.

Thus, in suggesting that Mystal was sloppy and that Huon only challenged the serial rapist

implication, the Jezebel Article conveys an accurate impression of Huon's initial complaint.

    The two remaining components of the Jezebel Article that Huon challenges are also

inadequate to support a defamation claim. Huon alleges that the comment at the end of the report

of his lawsuit ("Google only takes you so far") implies that he has a criminal background that

does not show up in a Google search. But to a reasonable reader, this statement suggests that

Mystal should have performed further investigation when writing the ATL Article rather than

merely relying on Google; it implies that had Mystal done so, he would not have made the

mistake that he did. Contrary to Huon's argument, the observation that Mystal was mistaken, and

---

[23] The Court takes judicial notice of Huon's initial complaint. *See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013) ("We may take judicial notice of documents that are part of the public record, including pleadings, orders, and transcripts from prior proceedings in the case.").

would have caught his mistake had he not relied exclusively on Google, suggests that Huon was *not* involved in any prior similar episodes of sexual misconduct and implies nothing defamatory about him. Finally, Huon alleges that the hyperlink to the ATL Article placed at the bottom of the Jezebel Article constitutes a republishing of the allegedly defamatory content in the ATL Article. As explained above, however, the CDA provides liability protection for hyperlinking to third-party content in these circumstances. *See Nieman*, 2012 WL 3201931, at *8.

Since none of the statements or suggestions in the Jezebel Article can support a defamation *per se* claim, Count I is dismissed with prejudice with respect to the Gawker defendants.

## 2.    Defamation *Per Quod* (Count II)

Huon alleges that some of the statements in the ATL Article and the Jezebel Article, while not constituting defamation *per se*, nonetheless are defamatory and support a defamation *per quod* claim. The defendants argue that Huon has not pleaded special damages with the specificity required by Rule 9(g). As the Seventh Circuit has recently explained:

> [Rule] 9(g), says that special damages must be "specifically stated". It can be hard to know how specific is specific enough, but "specifically" must be something less than the "particularity" standard that Rule 9(b) prescribes for allegations of fraud. We need not probe the meaning of "specifically", because it is enough to identify a concrete loss.

*Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 2829 (2014). In *Pippen*, the plaintiff's complaint identified "specific business opportunities that had been available to him earlier but that, following the defendants' statements, were available no more," which the Seventh Circuit found sufficiently pleaded special damages. *Id.* at 615; *see also Underground Solutions, Inc. v. Palermo*, No. 13 C 8407, 2014 WL 4703925, at *6 (N.D. Ill. Sept. 22, 2014) (citing *Pippen*, 734 F.3d at 614) (finding that special damages were sufficiently

pleaded where the complaint quoted emails from specific customers expressing concerns about using the plaintiff's products after reading the allegedly defamatory reports). In a prior case, the Seventh Circuit found that special damages were sufficiently pleaded where, "[a]lthough not naming the particular customers it lost, plaintiff listed specific figures of its gross sales before and after the publication [of the defamatory letter]." *Continental Nut Co. v. Robert L. Berner Co.*, 345 F.2d 395, 397 (7th Cir. 1965); *see also Action Repair, Inc. v. Am. Broad. Cos.*, 776 F.2d 143, 150 (7th Cir. 1985) (citing *Continental Nut*, 345 F.2d 395) (finding that the plaintiff's complaint failed to adequately plead special damages).

Here, the Complaint alleges that the allegedly defamatory statements "caused injury to Plaintiff's legal practice, business operations and good will," Complaint, Dkt. 162, ¶ 186, that Huon has "suffered damage to business, trade, profession and occupation," *id.* ¶ 197, and that he has suffered "pecuniary loss directly from a loss of clients in his legal practice and the loss of profit from business deals and interactions," *id.* ¶ 204. These allegations are nothing more than general, conclusory statements of economic loss allegedly resulting from publication of defamatory comments. In contrast to the plaintiffs in *Pippen*, *Underground Solutions*, and *Continental Nut*, Huon has not identified—or even suggested the existence of—any specific lost opportunities or clients, and has not provided any information indicating the relative success of his legal practice before and after publication of the ATL Article and Jezebel Article. Therefore, the Court finds that Huon has not pleaded special damages with sufficient specificity. *Cf. Tamburo v. Calvin*, No. 94 C 5206, 1995 WL 121539, at *9 (N.D. Ill. Mar. 17, 1995) (finding

that the plaintiff's allegations of "lost sales," "a devastating loss of business," and "loss of business reputation," were not specific enough to satisfy the requirements of Rule 9(g)).[24]

In his response to the ATL motion to dismiss, Huon requests leave to replead his defamation *per quod* claim.[25] Given that Huon has had numerous opportunities to amend his pleadings and has been on notice of the potential deficiencies in his defamation *per quod* claim since September 2011 (when the ATL defendants filed a motion to dismiss the Second Amended Complaint and raised the special damages issue), the Court finds that granting leave to replead is not warranted. *Cf. Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 347 (7th Cir. 2012) (affirming the district court's dismissal with prejudice where the plaintiffs had three opportunities to plead their claims, including an opportunity after a motion to dismiss in the case had been fully briefed). Huon has had ample opportunity to buttress his damage allegations but has not done so. Accordingly, Count II is dismissed with prejudice, and Huon can only move forward on his defamation claims with respect to statements that are actionable as defamation *per se*.[26]

---

[24] In his responses to the defendants' motions to dismiss, Huon attempts to buttress his defamation *per quod* claim by alleging that he also suffered a different type of pecuniary loss. He states that after publication of the ATL Article (which reported that he had allegedly claimed to be a talent scout) and the Jezebel Article (which linked to the ATL Article), a woman falsely accused him of posing as a talent scout, and he incurred attorney's fees in defending against the charges. This creative line of reasoning does not save Huon's defamation *per quod* claim, however, since the "talent scout" statement in the ATL Article is not actionable as defamation, as explained in Section B.1. Further, Huon has not plausibly alleged that publication of the ATL Article and Jezebel Article "caused" him to incur the attorney's fees, since he does not allege that the woman in question read the articles.

[25] Huon has not requested leave to replead any of his other claims.

[26] Even if Huon had adequately pleaded special damages, his defamation *per quod* claim would largely fail. Pursuant to the analysis in Section B.1.a, an adequately pleaded defamation *per quod* claim would survive only as to the two implications in the ATL Article that the Court finds to be actionable as defamation *per se*. And pursuant to the analysis in Section B.1.b, an adequately pleaded defamation *per quod* claim might survive as to the original headline of the Jezebel Article and the image placed directly below it, since the Court finds that material to be

## C.      False Light Invasion of Privacy (Count III)

Huon alleges that the defendants placed him in a false light by publishing the allegedly defamatory statements in the ATL Article and the Jezebel Article. Three elements are required to state a claim for the tort of false light invasion of privacy under Illinois law. First, the allegations must show that the plaintiff was "'placed in a false light before the public as a result of the defendants' actions.'" *Raveling v. HarperCollins Publishers Inc.*, No. 04-2963, 2005 WL 900232, at *3 (7th Cir. Mar. 4, 2005) (quoting *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 17, 607 N.E.2d 201, 209 (1992)). Second, the court "'must determine whether a finder of fact could decide that the false light in which the plaintiff was placed would be highly offensive to a reasonable person.'" *Id.* (quoting *Lovgren v. Citizens First Nat'l Bank of Princeton*, 126 Ill. 2d 411, 419-20, 534 N.E.2d 987, 990 (1989)). Third, the plaintiff must allege "'that the defendants acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false.'" *Id.* (quoting *Kolegas*, 154 Ill. 2d at 17-18, 607 N.E.2d at 209-10). Although false light is a branch of the tort of invasion of privacy, it is closely related to the tort of defamation, and the same privileges apply to false light and defamation claims. *Sullivan v. Conway*, 157 F.3d 1092, 1098-99 (7th Cir. 1998). Thus, where a false light claim is premised on allegedly defamatory statements that a court finds are not actionable as defamation, the false light claim fails as a matter of law. *See Madison*, 539 F.3d at 659 ("[B]ecause Madison's unsuccessful defamation *per se* claim is the basis of his false-light claim, his false-light invasion of privacy claim fails as well."); *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003) ("Muzikowski has not asserted special

---

not actionable as defamation *per se* in light of the innocent construction rule, a rule which does not apply to defamation *per quod* actions and which thus would not preclude a defamation *per quod* claim based on the same material. *See generally Tuite*, 224 Ill. 2d at 501-02.

27

damages, and so the claim can succeed only on the statements [that are defamatory *per se*]."); *cf.*
*Tuite*, 224 Ill. 2d at 515, 866 N.E.2d at 129.

The Court need only examine Huon's false light claim with respect to the two actionable
implications in the ATL Article, since the Court has determined that the Jezebel Article and the
remainder of the ATL Article are not actionable as either defamation *per se* or *per quod*. The
Court finds that Huon has adequately stated a false light claim on the basis of the two actionable
implications in the ATL Article. Huon has adequately stated a defamation claim based on those
implications, a finder of fact could decide that the implications would be highly offensive to a
reasonable person, and the defendants have not challenged the sufficiency of Huon's allegations
regarding actual malice. Accordingly, Count III is dismissed with prejudice as to the Gawker
defendants, survives as to the ATL defendants with respect to the two actionable implications in
the ATL Article, and is dismissed with prejudice as to the ATL defendants with respect to all
other statements in the ATL Article.

### D.       Intrusion upon Seclusion (Count IV)

Huon alleges that the defendants intentionally and unreasonably intruded into his
seclusion. The Illinois Supreme Court has joined the Illinois appellate courts in expressly
recognizing the tort of intrusion upon seclusion. *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414,
425 (2012). The elements required to state a claim for the tort are: "(1) an unauthorized intrusion
or prying into a plaintiff's seclusion; (2) the intrusion would be 'highly offensive or
objectionable to a reasonable person;' (3) the matters upon which the intrusion occurred were
private; and (4) the intrusion caused anguish and suffering." *Vega v. Chi. Park Dist.*, 958 F.
Supp. 2d 943, 959 (N.D. Ill. 2013) (quoting *Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 71, 813
N.E.2d 1013, 1017 (2004)). "The nature of this tort depends upon some type of highly offensive

prying into the physical boundaries or affairs of another person. The basis of the tort is not

publication or publicity. Rather, the core of this tort is the offensive prying into the private

domain of another." *Lovgren*, 126 Ill. 2d at 416-17, 534 N.E.2d at 989; *see also Vega*, 958 F.

Supp. 2d at 959 (quoting *Lovgren*, 126 Ill. 2d at 417, 534 N.E.2d at 989). "Examples of prying

into private matters are opening a person's mail, searching a person's safe or wallet, and

reviewing a person's banking information." *Vega*, 958 F. Supp. 2d at 959 (citing *Lawlor*, 983

N.E.2d at 424).

Huon's Complaint is devoid of any factual allegations that the defendants engaged in acts

of prying or intrusion. To the contrary, the Complaint alleges that defendants invented "facts,"

improperly interpreted or relied on various articles that were readily available online, and failed

to contact Huon or conduct investigations prior to publishing the ATL Article and the Jezebel

Article. Rather than painting a picture of overzealous journalists who pried into Huon's private

affairs, the Complaint depicts shoddy journalists who made up information and could not be

bothered to do much more than copy and paste or summarize information from other articles

easily findable on the internet. As Huon has not alleged any intrusion, which is the first element

of this tort, he has failed to adequately plead his intrusion upon seclusion claim.[27] *See Vega*, 958

F. Supp. 2d at 961 ("Aside from peering into the windows of Vega's private residence, none of

the other allegations are sufficient to state a plausible claim for intrusion upon seclusion.

Accordingly, [the] motion to dismiss . . . is granted for all claims except the claim that the

investigators peered into Vega's windows."); *Lovgren*, 126 Ill. 2d at 417, 534 N.E.2d at 989

(finding that the plaintiff had failed to adequately plead the tort of intrusion into seclusion of

---

[27] In light of this ruling, the Court finds it unnecessary to discuss the remaining elements
of the tort or to reach the ATL defendants' alternate argument that the fair report privilege
precludes Huon's intrusion upon seclusion claim.

Case 1:11-cv-03054    Document #: 211    Filed: 10/04/13    Page 30 of 53    PageID #:2993

another because "the alleged offensive conduct and subsequent harm resulted from the defendants' act of publication, not from an act of prying"). Count IV is therefore dismissed with prejudice as to all defendants.[28]

### E.    Intentional Infliction of Emotional Distress (Count V)

Huon alleges that the defendants' publication of the allegedly defamatory statements in the ATL Article and the Jezebel Article constituted intentional infliction of emotional distress. Under Illinois law, a plaintiff must satisfy three requirements to state a claim for intentional infliction of emotional distress. *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 746-47 (7th Cir. 2008) (citing *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001)). First, "the conduct involved must be truly extreme and outrageous . . . . [It] must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker*, 256 F.3d at 490. Second, "the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress." *Id.* Third, "the conduct must in fact cause severe emotional distress." *Id.* In evaluating whether allegedly defamatory statements constitute "extreme and outrageous" conduct, Illinois courts consider the context of the statements, including whether the defendant improperly used "'a position of power which

---

[28] To the extent that Huon's Complaint can be read as attempting to state a claim for the tort of public disclosure of private facts, it fails for a similar reason: Huon has not identified any statements in the ATL Article or the Jezebel Article that reveal private facts about him. Since "private facts" are "intimate personal facts," matters of public record—including information such as a person's name, address, and age—do not qualify. *Best v. Malec*, No. 09 C 7749, 2010 WL 2364412, at *5 (N.D. Ill. June 11, 2010) (citing *Johnson v. K mart Corp.*, 311 Ill. App. 3d 573, 578-79, 723 N.E.2d 1192, 1196 (2000) and *Geisberger v. Willuhn*, 72 Ill. App. 3d 435, 439, 390 N.E.2d 945, 948 (1979)). As explained above, the challenged portions of the articles consist of statements that are about matters of public record (*e.g.*, Huon's arrests, criminal trial, and lawsuits), statements that are allegedly false (*e.g.*, the two actionable implications in the ATL Article), statements that are not about Huon, and statements that are not factual in nature (*e.g.*, opinions); by definition, none of these items constitute private facts.

gives him the ability to adversely affect the plaintiff's interests.'" *Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010) (quoting *Kolegas*, 154 Ill. 2d at 22, 607 N.E.2d at 212).

Since statements that do not rise to the level of defamation logically cannot rise to the even higher level of "extreme and outrageous conduct," the Court need only examine Huon's intentional infliction of emotional distress claim with respect to the two actionable implications in the ATL Article. *Cf. Flentye v. Kathrein*, 485 F. Supp. 2d 903, 922 (N.D. Ill. 2007) ("Under Illinois law, defamatory statements, if sufficiently extreme and outrageous, can support an IIED claim."); *Huon v. Beatty*, No. 1-09-2234, 2011 WL 9717454, at *1 (Ill. App. Ct. Mar. 25, 2011) ("Because the plaintiff asserts the same allegations from his [unsuccessful] defamation claims as the basis for his claims of IIED, the same allegations cannot constitute extreme and outrageous conduct.").[29] Drawing all reasonable inferences in Huon's favor, Huon has adequately alleged the elements of a claim for intentional infliction of emotional distress based on the implication that he was charged with sexual assault prior to his encounter with Jane Doe. Although the defendants argue that none of the allegedly defamatory statements constitute "extreme and outrageous conduct," Illinois courts have held that making sufficiently egregious defamatory statements can rise to that level in similar contexts.[30] *See, e.g.*, *Kolegas*, 154 Ill. 2d at 20-25, 607 N.E.2d at 211-13 (holding that radio disc jockeys' derogatory statements constituted defamation *per se* and supported a claim for intentional infliction of emotional distress); *see also Flentye*, 485 F. Supp. 2d at 922 (denying a motion to dismiss an intentional infliction of emotional distress claim premised on allegedly defamatory statements that included "assertions of a sexually repugnant nature"). Accordingly, Count V is dismissed with prejudice as to the Gawker

---

[29] This should come as no surprise to Huon, who was also the plaintiff in the *Beatty* case. The conduct on which Huon sued in *Beatty* is unrelated to the events at issue here.

[30] The ATL defendants do not challenge the adequacy of the allegations that the statements were intended to inflict, and in fact caused, severe emotional distress.

defendants, survives as to the ATL defendants with respect to the implication in the ATL Article

that Huon was previously charged with sexual assault, and is dismissed with prejudice as to the

ATL defendants with respect to all other statements in the ATL Article.

### F.    Conspiracy (Counts VI and VII)

Huon alleges that the defendants conspired to publish the allegedly defamatory

statements in the ATL Article and the Jezebel Article in order to present him in a false light

(Count VII) and to defame him (Count VI). Under Illinois law, the elements of civil conspiracy

are: "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some

concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the

furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz

v. Johnston*, 209 Ill. 2d 302, 317, 807 N.E.2d 461, 470 (2004). Where a plaintiff successfully

establishes the existence of a conspiracy, co-conspirators may be held jointly liable for actions

by other members of the conspiracy. *See Geinosky*, 675 F.3d at 750. Liability for conspiracy

requires an underlying tort, however; "if a 'plaintiff fails to state an independent cause of action

underlying his conspiracy allegations, the claim for conspiracy also fails.'" *Jones v. City of Chi.*,

No. 08 C 3501, 2011 WL 1898243, at *6 (N.D. Ill. May 18, 2011) (quoting *Thomas v. Fuerst*,

345 Ill. App. 3d 929, 936, 803 N.E.2d 619, 626 (2004)). In addition, Illinois courts recognize the

intracorporate conspiracy doctrine, which provides that "because the acts of an agent are

considered to be the acts of the principal, an agent acting within the scope of his employment

cannot conspire with the principal nor with other agents." *Milliman v. McHenry Cnty.*, No. 11 C

50361, 2012 WL 5200092, at *4 (N.D. Ill. Oct. 22, 2012) (citing *Buckner v. Atl. Plant Maint.,

Inc.*, 182 Ill. 2d 12, 24, 694 N.E.2d 565, 571 (1998)); *see also Frontline Commc'ns, Inc. v.

Comcast Corp.*, No. 12-CV-8527, 2013 WL 4777370, at *3 (N.D. Ill. Sept. 5, 2013) ("Illinois

law is clear that a civil conspiracy does not exist between a corporations' own officers or employees.").

Since conspiracy is not an independent tort, the Court need only consider Huon's conspiracy claims with respect to the two actionable implications in the ATL Article, which the Court has found can support Huon's false light and defamation *per se* claims against the ATL defendants. Because the Gawker defendants are not liable for those claims, and because Huon has not alleged that there was a conspiratorial agreement between the ATL defendants and the Gawker defendants,[31] the Gawker defendants are not liable for the statements in the ATL Article under a conspiracy theory. As to the ATL defendants, since Huon's conspiracy claims based on the ATL Article are premised on an alleged agreement between the individual ATL defendants, all of whom are officers or employees of Breaking Media, the intracorporate conspiracy doctrine bars his conspiracy claims. Counts VI and VII are therefore dismissed with prejudice as to both the ATL defendants and the Gawker defendants.

## G. Tortious Interference with Prospective Economic Advantage (Count VIII)

Huon alleges that the defendants tortiously interfered with his business interests by publishing the ATL Article and the Jezebel Article. To state a claim for tortious interference with prospective economic advantage under Illinois law, a plaintiff must allege: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from

---

[31] The allegations in the Complaint provide no basis to infer a conspiratorial agreement between the ATL defendants and the Gawker defendants. Moreover, the additional allegations in Huon's responses to the motions to dismiss reveal that he has not premised his conspiracy claims on such an agreement. *See* Response to Gawker Motion to Dismiss, Dkt. 192, at 14; Response to ATL Motion to Dismiss, Dkt. 193, at 29.

the defendant's interference." *Voyles v. Sandia Mortgage Corp.*, 196 Ill. 2d 288, 300-01, 751
N.E.2d 1126, 1133-34 (2001) (quoting *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 406-07, 667
N.E.2d 1296, 1299 (1996)) (internal quotation marks omitted). A reasonable expectancy
"requires more than the hope or opportunity of a future business relationship." *Bus. Sys. Eng'g,
Inc. v. Int'l Bus. Machines Corp.*, 520 F. Supp. 2d 1012, 1022 (N.D. Ill. 2007) (citing *Anderson*,
172 Ill. 2d at 408, 667 N.E.2d at 1300), *aff'd*, 547 F.3d 882 (7th Cir. 2008); *see also Fredrick v.
Simmons Airlines, Inc.*, 144 F.3d 500, 503 (7th Cir. 1998) (quoting *Anderson*, 172 Ill. 2d at 408,
667 N.E.2d at 1299).

The Complaint states that Huon "held a reasonable expectation of entering into valid
business relationships, both in his legal practice and in business," and that he had an "expectancy
of entering into valid business relationships with members of the public including, but not
limited to, his retention as an attorney." Complaint, Dkt. 162, ¶¶ 258, 259. The Complaint also
alleges that Huon has suffered "a decline in prospective business" and "remains concerned that
individuals and organizations including prospective legal clients will choose not to utilize his
services." *Id.* ¶ 160, 164. These conclusory statements, which are unsupported by any facts other
than the assertion that Huon is a licensed attorney, are insufficient to allege that Huon had a
reasonable business expectancy. *See Del Monte Fresh Produce, N.A., Inc. v. Kinnavy*, No. 07 C
5902, 2010 WL 1172565, at *6 (N.D. Ill. Mar. 22, 2010) ("*Twombly* does require that Kinnavy
set forth facts that make it plausible that she had a reasonable expectancy . . . ."). At best the
statements establish, when read in the light most favorable to the plaintiff, that Huon *hoped* to
obtain legal clients or enter into other business relationships.[32] As Huon has thus failed to

---

[32] That Huon was facing criminal charges until December 2011 further undermines the
plausibility of his claim to have had reasonable business expectancies when the ATL Article and
Jezebel Article were published.

adequately allege a reasonable business expectancy, *see Bus. Sys. Eng'g*, 520 F. Supp. 2d at
1022, it is unnecessary to consider whether he has satisfied any of the other elements of a
tortious interference claim. *See Fredrick*, 144 F.3d at 503 (affirming dismissal of a tortious
interference claim where the plaintiff "failed to allege any reasonable expectation of a business
relationship" and instead alleged "merely that he wished to continue working as a commercial
pilot"); *Pulliam v. Am. Express Travel Related Servs. Co.*, No. 08 C 6690, 2009 WL 1586012, at
*6 (N.D. Ill. June 4, 2009) (dismissing a tortious interference claim where the plaintiff failed to
allege facts sufficient to support a reasonable business expectancy); *Emery v. Ne. Ill. Reg'l
Commuter R.R. Corp.*, No. 02 C 9303, 2003 WL 22176077, at *10 (N.D. Ill. Sept. 18, 2003)
(dismissing a tortious interference claim where the plaintiff alleged "no more than the mere hope
[of obtaining] concrete opportunities"). Accordingly, Count VIII is dismissed with prejudice as
to all defendants.

### H.   Cyberstalking and Cyberbullying (Count IX)

Huon alleges that the defendants violated the Illinois cyberstalking statute, 720 ILCS
5/12-7.5, and asks the Court to create a private cause of action for cyberstalking. Illinois courts
apply a four-factor test to determine whether to imply a private right of action from a statute:

> Implication of a private right of action is appropriate if: (1) the
> plaintiff is a member of the class for whose benefit the statute was
> enacted; (2) the plaintiff's injury is one the statute was designed to
> prevent; (3) a private right of action is consistent with the
> underlying purpose of the statute; and (4) implying a private right
> of action is necessary to provide an adequate remedy for violations
> of the statute.

*Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460, 722 N.E.2d 1115, 1117-18 (1999).
With respect to the fourth factor, a private right of action is generally implied "only in cases
where the statute would be ineffective, as a practical matter, unless a private right of action were

35

implied." *Abbasi ex rel. Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 395, 718 N.E.2d 181, 186 (1999). Since no Illinois court has addressed the question of whether there is an implied private right of action under the cyberstalking statute, this Court must predict how the Illinois Supreme Court would decide the issue. *See Iowa Physicians' Clinic Med. Found. v. Physicians Ins. Co. of Wisconsin*, 547 F.3d 810, 813 (7th Cir. 2008). The Court is mindful, however, of the Seventh Circuit's admonishment that federal courts sitting in diversity should be cautious in expanding state law beyond the boundaries established in that state's courts. *See King v. Damiron Corp.*, 113 F.3d 93, 97 (7th Cir. 1997); *see also Markos v. Chicago Park Dist.*, No. 01 C 5544, 2002 WL 1008459, at *8 (N.D. Ill. May 13, 2002) (citing *King*, 113 F.3d at 97) (finding that an Illinois statute did not imply a private right of action).

Assuming without deciding that the first three factors of the *Fisher* test are met in this situation, the Court declines to imply a private right of action because doing so is not necessary to provide an adequate remedy for violations of the cyberstalking statute. The statute already provides a stiff penalty by categorizing cyberstalking as a Class 4 felony, *see* 720 ILCS 5/12-7.5(b), which is punishable by between one and three years of imprisonment, 730 ILCS 5/5-4.5-45; *see also People v. Sucic*, 401 Ill. App. 3d 492, 494, 928 N.E.2d 1231, 1234 (2010) (affirming defendant's conviction and three-year sentence for violating the Illinois cyberstalking statute). In addition, and as Huon's Complaint makes evident, a variety of tort remedies are potentially available to individuals who allege that they are victims of cyberstalking. Huon offers no argument that the combination of potential criminal prosecution and other civil causes of action provides inadequate remedies to victims of cyberstalking; in view of these remedies, the Court concludes that a private right of action under the statute is unnecessary and so declines to imply

one.[33] *Cf. Metzger v. DaRosa*, 209 Ill. 2d 30, 42, 805 N.E.2d 1165, 1171 (2004) ("We cannot say that the statutory framework . . . is so deficient that it is necessary to imply a private right of action . . . to effectuate its purpose."); *Lane v. Fabert*, 178 Ill. App. 3d 698, 702-03, 533 N.E.2d 546, 549 (1989) (declining to imply a private right of action where the statute at issue imposed a "substantial" fine and where the complaint demonstrated that "a wide array of remedies" was available to a plaintiff in such a situation). Accordingly, Huon cannot prevail on his cyberstalking claim and Count IX is dismissed with prejudice as to all defendants.

\* \* \*

For the reasons stated above, the Gawker defendants' motion to dismiss [174] is granted and the ATL defendants' motion to dismiss [178] is granted in part and denied in part. All of Huon's claims against the Gawker defendants are dismissed with prejudice. Huon's claims against the ATL defendants in Counts II, IV, VI, VII, VIII, and IX are dismissed in their entirety with prejudice. Huon's claims against the ATL defendants in Counts I and III survive only with respect to the two actionable implications in the ATL Article. Huon's claims against the ATL defendants in Count V survive only with respect to the implication in the ATL Article that he was charged with sexual assault prior to his encounter with Jane Doe. Huon's claims against the ATL defendants in Counts I, III, and V are dismissed with prejudice in all other respects.

Date: December 4, 2014

_____
John J. Tharp, Jr.
United States District Judge

---

[33] In light of this ruling, the Court finds it unnecessary to reach the additional argument raised by the ATL defendants that the cyberstalking statute does not apply to the activity at issue.

## __EXHIBIT 6__

**Huon Fourth Amended Complaint**

## IN THE UNITED STATES DISTRICT
## FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| **MEANITH HUON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **CIVIL ACTION NO.:   1: 11-cv-3054** |
| ) | |
| ) | **JURY TRIAL DEMANDED** |
| ) | |
| **BREAKING MEDIA, LLC a/k/a** ) | |
| **BREAKING MEDIA;** ) | |
| **BREAKING MEDIA, INC. a/k/a** ) | |
| **BREAKING MEDIA;** ) | |
| **DAVID LAT; ELIE MYSTAL;** ) | |
| **JOHN LERNER; DAVID MINKIN;** ) | |
| **("ABOVETHELAW DEFENDANTS");** ) | |
| ) | |
| **GAWKER MEDIA, LLC a/k/a** ) | |
| **GAWKER MEDIA;** ) | |
| **BLOGWIRE HUNGARY SZELLEMI** ) | |
| **ALKOTAST HASZNOSITO KFT** ) | |
| **GAWKER MEDIA GROUP, INC. a/k/a** ) | |
| **GAWKER MEDIA;** ) | |
| **GAWKER ENTERTAINMENT, LLC** ) | |
| **GAWKER TECHNOLOGY, LLC** ) | |
| **GAWKER SALES, LLC,** ) | |
| **NICK DENTON; IRIN CARMON;** ) | |
| **GABY DARBYSHIRE** ) | |
| **("JEZEBEL DEFENDANTS").** ) | |
| ) | |
| **Defendants.** ) | |

## FOURTH AMENDED COMPLAINT

Plaintiff, Meanith Huon, complains of the Defendants as follows:

## CAUSE OF ACTION

1.       This a diversity action brought pursuant to 28 U.S.C. Section 1332 for defamation

(both per se and per quod), invasion of privacy (both false light and unreasonable intrusion upon

1

seclusion of another), intentional infliction of emotional distress, civil conspiracy (to defame

Plaintiff and to invade his privacy), <u>cyberstalking</u> and <u>cyberbullying</u>.

2.      This action arises out of Defendants' dissemination of knowingly false statements

about Plaintiff, Meanith Huon, in a variety of national and international social media as well as

on the Internet. To wit, Defendants falsely depicted Mr. Huon as, among other things, a rapist, a

serial rapist, a lawyer who posed as a supervisor and a talent scout to meet women, as someone

who got away with rape, and as a sexual deviant.   Defendants' statements were intended to, and

were in fact, read by many in the United States and people worldwide, including potential

business employers, clients, family and friends of Mr. Huon.

3.      Defendants' statements about Mr. Huon are untrue and were made with knowledge

of their falsity or with reckless disregard to the truth of such statements. Defendants wrote and

published, and intended for republication, the statements with malice and a conscious disregard

for the truth for the purpose of furthering Defendants' own agenda of generating ad revenue,

generating website traffic and comments among its website users, inciting users to post their own

defamatory content, publishing web content, preserving Defendants' influence in social media,

and/or securing material business and economic advantage.

4.      The false, malicious and defamatory statements that Defendants published on the

Internet websites evidence a highly offensive and outrageous prying by Defendants into

Plaintiff's private life and affairs.  By its conduct, Defendants engaged in cyberbullying and/or

cyberstalking of Mr. Huon.

5.      Defendants' broad dissemination of defamatory statements about Mr. Huon has

caused severe economic, competitive and reputational harm to Mr. Huon. The success of Mr.

Huon derives from his professional reputation as an attorney and his standing in the community.

Case: 1:11-cv-03054   Document #: 133   Filed: 12/13/13   Page 3 of 53   PageID #:1748

Plaintiff has sustained loss of business and employment opportunities and has suffered a loss of

reputation in the business and legal community. Additionally, Mr. Huon personally has suffered

humiliation and embarrassment as a result of the dissemination of the false statements by

Defendants.

6.       Plaintiff seeks compensatory and punitive damages against Defendants for their

actions, as well as injunctive relief, enjoining Defendants (either directly or through any third

party) from further publishing or re-publishing the actionable and offensive statements either on

websites or elsewhere, from further publishing or re-publishing any detail from Plaintiff's private

life or affairs and from unreasonably intruding upon Plaintiff's right of privacy.


## JURISDICTION AND VENUE

7.       This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. Section 1332, in that complete diversity exists between Plaintiff and the Defendants and

the matter in controversy exceeds the sum of $75,000.00 dollars, exclusive of interest and costs.

8.       Venue is proper pursuant to 28 U.S.C. §1391 (b), because a substantial part of the

events or omissions giving rise to the claim occurred within the district.   Furthermore,

Defendants directed their conduct toward Plaintiff in this district.  Additionally, the state in which

the victim of Defendants' defamation lived has jurisdiction over the victim's defamation suit.

## THE PARTIES

9.       At all relevant times, Plaintiff, Meanith Huon, was and is a citizen of the State of

Illinois.  Citizenship for purposes of diversity jurisdiction is domicile, and domicile is the place

one intends to remain.  Dakuras v. Edwards, 312 F.3d 256, 258 (7th Cir. Ill. 2002).  Mr. Huon has

lived and practiced in Illinois since May of 1996 and intends to remain in Illinois.

10.     The Abovethelaw Defendants and the Jezebel Defendants have not disclosed their affiliates as required under FRCP 7.1 and Local Rule 3.2.    Plaintiff, Meanith Huon, has filed or will be filing a motion for expedited and limited discovery to compel the Defendants to disclose their affiliates.

11.     At all relevant times, Defendant, Breaking Media, LLC a/k/a Breaking Media, is a limited liability company organized and operating under the laws of the State of New York with its principal place of business in New York.  Thus, Breaking Media, LLC a/k/a Breaking Media is a citizen of New York, pursuant to 28 U.S.C. 1332(c).

12.     On or about March 7, 2008, Defendant, Breaking Media, LLC, changed its name from Dead Horse Media, LLC to Breaking Media, LLC.  Exhibit 1.  Gavin D. McElroy signed as an authorized person on the Certificate of Amendment of the Articles of Organization of Dead Horse Media, LLC.  Exhibit 1.  Mr. McElroy is a partner with the New York firm of Frankfurt Kurnit Klein & Selz and a citizen of New York.  http://www.fkks.com/bios.asp?attorneyID=11

13.     The New York Secretary of State does not require LLCs to disclose all its members when the LLC formation document is filed.  NY CLS LLC § 203.

14.     At all relevant times, Defendant, Breaking Media, Inc. a/k/a Breaking Media, is a Delaware corporation organized and operating under the laws of the State of New York with its principal place of business in New York.  Thus, Breaking Media, Inc. a/k/a Breaking Media is a citizen of New York and Delaware, pursuant to 28 U.S.C. 1332(c).

15.     On or about December 30, 2011, Defendant, Breaking Media, Inc. merged with Breaking Media, LLC.  See Exhibit 2.  John Lerner signed the Certificate of Merger of Breaking Media, LLC, New York limited liability company, into Breaking Media, Inc., a Delaware

4

corporation, as Chief Executive Officer and Manager of Breaking Media, LLC.    Carter Burden

III signed the Certificate of Merger as president of Breaking Media, Inc. Exhibit 2.  Separate

corporations lose their separate identity after merger.  Hoefferle Truck Sales, Inc. v. Divco-

Wayne Corp., 523 F.2d 543, 548-549 (7th Cir. Ill. 1975).  After a foreign corporation merges into

a Delaware corporation, the surviving corporation for diversity jurisdiction is a citizen of

Delaware.  Hoefferle Truck Sales, Inc. v. Divco-Wayne Corp., 523 F.2d 543, 548-549 (7th Cir.

Ill. 1975).

        16.    The name of the surviving corporation is Breaking Media, Inc.  Exhibit 2.

Defendant, Breaking Media, Inc. d/b/a Breaking Media is a continuation of or merger of

Breaking Media, LLC d/b/a Breaking Media.  In this case, the surviving corporation is Breaking

Media, Inc., a citizen of both New York and Delaware, with its principal place of business in

New York.

        17.    At all relevant times, Defendant John Lerner was and is a citizen of the State of

New York.  Defendant Lerner was and is the Chief Executive Officer of Breaking Media.

http://breakingmedia.com/contact-us/ ; http://www.linkedin.com/in/jlerner?trk=pub-pbmap.

        18.    At all relevant times, Carter Burden, III was and is a citizen of the State of New

York.  He is president of Breaking Media, Inc.  http://www.logicworks.net/about-us/team;

https://twitter.com/G_Clouds;

http://investing.businessweek.com/research/stocks/private/person.asp?personId=11177217&privc

apId=6814589&previousCapId=351238&previousTitle=GLOBAL%20ITECHNOLOGY%20IN

C.

19.     At all relevant times, Defendant, Breaking Media, LLC a/k/a Breaking Media, and

Defendant, Breaking Media, Inc. a/k/a Breaking Media owns, operates, controls, and/or publishes

several websites, including Abovethelaw.com and BreakingMedia.com which disseminate

information worldwide via the Internet.

20.     At all relevant times, Defendant, David Lat, was and is a citizen of the State of

New York.  Defendant Lat was and is the managing editor of Abovethelaw.com.  Defendant Lat

is the founding editor of Above the Law.  Prior to Above the Law, Lat worked as a litigation

associate at Wachtell, Lipton, Rosen & Katz, in New York.  He lives in New York, New York.

http://abovethelaw.com/author/david-lat/; http://twitter.com/DavidLat;

http://www.facebook.com/davidlat.

21.     At all relevant times, Defendant, Elie Mystal, was and is a citizen of the State of

New York.  Defendant Mystal was and is a writer and editor for Abovethelaw.com.   Defendant

Mystal lives in New York, New York and has written editorials for the New York Daily News

and the New York Times.   http://abovethelaw.com/author/elie-mystal/;

http://www.facebook.com/mystal.

22.     At all relevant times, Defendant, David Minkin was and is a citizen of the State of

New York.  Defendant Minkin was and is the publisher of Abovethelaw.com and

Breakingmedia.com.  Defendant Minkin can be reached at 212.334.1871 x1 (New York area

code). http://breakingmedia.com/contact-us/; http://www.linkedin.com/in/davidminkin.

23.     Defendants, Breaking Media, LLC a/k/a Breaking Media, Breaking Media, Inc.

a/k/a Breaking Media, Lat, Mystal, Lerner, and Minkin shall sometimes hereinafter be referred to

as the "Abovethelaw Defendants."

6

24.     At all relevant times, Defendant, Gawker Media LLC a/k/a Gawker Media, was
and is a limited liability company organized and operating under the laws of the State of
Delaware with its principal place of business in New York.   In response to a request for the
original formation document for Gawker Media, LLC, the Delaware Secretary of State produced
a Certificate of Incorporation for Blogwire, Inc.  The sole incorporator of Blogwire, Inc. is Nick
Denton.  Exhibit 3.  The Delaware Secretary of State allows a Delaware corporation to be
converted to a Delaware LLC.  6 Del. C. § 18-214.

25.     The Delaware Secretary of State does not require LLCs to disclose the identity of
all their members.   6 Del. C. § 18-201.

26.     Defendant, Nicholas Denton signed the Application for Authority of Defendant,
Gawker Media, LLC as the manager of  Defendant, Gawker Media, LLC.  Exhibit 3.  Defendant,
Gabrielle Darbyshire signed the Biennial Statement of Defendant, Gawker Media, LLC as a
member of  Defendant, Gawker Media, LLC.  Exhibit 3. Jesse Ma signed the Biennial Statement
of  Defendant, Gawker Media as a legal associate.  Exhibit 3.

27.     At all relevant times, Defendant Nick Denton was and is, a citizen  of Hungary
and the United Kingdom.  He resides at 76 Crosby Street, Apt 2B, New York, NY 10012-3957
and/or 81 Spring Street, Apt. 2B, New York, NY 10012-3904.  Mr. Denton was the founder of
Gawker Media and currently owns Gawker Media.  http://www.facebook.com/nicknotned;
http://advertising.gawker.com/execteam/.

28.     At all relevant times, Defendant, Gabby Darbyshire was and is a citizen of the
State of New York.  Defendant Darbyshire was, and currently is, the Chief Operating Officer of

7

Gawker Media. http://twitter.com/gabyd; http://www.linkedin.com/pub/gabrielle-

darbyshire/0/3/56; http://www.npr.org/2011/01/03/132613645/Gawker-Wants-To-Offer-More-

Than-Snark-Vicious-Gossip

29.     At all relevant times, Jesse Ma was and is a citizen of the State of New York.  He

is an associate counsel at Gawker Media.  http://jessema.com/;

http://www.linkedin.com/in/jessema; https://twitter.com/jessema.

30.     At all relevant times, Defendant, Gawker Entertainment, LLC, was and is a New

York limited liability company.  Thus, Defendant, Gawker Entertainment, LLC, was and is a

citizen of New York, pursuant to 28 U.S.C. 1332(c).

31.     Jan Cohen signed the Articles of Organization of Defendant, Gawker

Entertainment, LLC. Exhibit 4.  Gabrielle Darbyshire signed as the managing member on the

Biennial Statement of  Defendant, Gawker Entertainment, LLC. Exhibit 4.   Exhibit 4.  Jesse Ma

signed the Biennial Statement of Defendant, Gawker Entertainment, LLC as legal associate.

Exhibit 4.   Defendants also filed documents with the California Secretary of State.  Exhibit 5.

The managers or members listed are Gawker Media, LLC and "Nick Penton" for Gawker

Entertainment, LLC.

32.     At all relevant times, Jan Cohen was and is, a citizen  of the United Kingdom.

http://www.linkedin.com/in/janpcohen;

http://iapps.courts.state.ny.us/attorney/AttorneyDetails?attorneyId=5520699; http://jpcesq.com/

33.     At all relevant times, Defendant, Gawker Technology, LLC, was and is a New York limited liability company.  Thus, Defendant, Gawker Technology, LLC,  was and is a citizen of New York, pursuant to 28 U.S.C. 1332(c).

34.     Nicholas Denton is identified as the president of Gizmodo, LLC a/k/a Defendant, Gawker Technology, LLC, Exhibit 6.   Nick Denton signed the Certificate of Amendment to the Articles of Organization of Defendant, Gawker Technology, LLC, on behalf Gawker Media.  Exhibit 6.  Gabrielle Darbyshire signed the Biennial Statements as a director, member, and vice president.  Exhibit 6.  Jesse Ma is identified as a legal associate.  Exhibit 6.  Defendants also filed documents with the California Secretary of State.  Exhibit 5.   The managers or members listed are Gawker Media, LLC and "Nick Penton" for Gawker Entertainment, LLC and Gawker Technology, LLC (f/k/a Gizmodo LLC).

35.     At all relevant times, Defendant, Gawker Sales LLC was and is a New York limited liability company.  Thus, Defendant, Gawker Sales LLC,  was and is a citizen of New York, pursuant to 28 U.S.C. 1332(c).

36.     Defendant, Gabrielle Darbyshire is identified as the organizer in the Articles of Organization for Defendant, Gawker Sales LLC.  Exhibit 7.  Ms. Darbyshire is identified as the COO of Defendant, Gawker Sales LLC in the Biennial Statement.  Exhibit 7.  Defendant, Nicholas Denton is identified as the  president of Defendant, Gawker Sales LLC in the Biennial Statement.  Exhibit 7.

37.     At all relevant times, Defendant, Gawker Media Group Inc. a/k/a Gawker Media, was and is a Cayman Islands corporation with its principal place of business in New York City, New York.  Thus, Defendant, Gawker Media Group Inc. a/k/a Gawker Media,  is a citizen of the

Cayman Islands, pursuant to 28 U.S.C. 1332(c). Defendant, Gawker Media Group, Inc. is a shell

corporation for the Defendants, Gawker Media LLC, Gawker Entertainment LLC, Gawker

Technology LLC, Gawker Sales LLC. http://blogs.reuters.com/felix-salmon/2010/12/01/the-

new-gawker-media/; http://www.newyorker.com/online/blogs/johncassidy/2010/12/gawker-

stalker-nick-denton-spotted-in-cayman-islands.html.

38.     The offices of Gawker Media Group Inc. a/k/a Gawker Media are located at 210

Elizabeth Street, Fourth Floor, New York, NY 10012, and its principal place of business is in

New York City, New York. http://advertising.gawker.com/contact/;

http://advertising.gawker.com/execteam/.

39.     At all relevant times, Defendant, BLOGWIRE HUNGARY SZELLEMI

ALKOTAST HASZNOSITO KFT, a/k/a Gawker Media was and is a Hungarian offshore

company. Thus, Defendant, BLOGWIRE HUNGARY SZELLEMI ALKOTAST

HASZNOSITO KFT is a citizen of Hungary, pursuant to 28 U.S.C. 1332(c). Defendant,

BLOGWIRE HUNGARY SZELLEMI ALKOTAST HASZNOSITO KFT, owns the domains

Gawker.com and Jezebel.com. http://whois.domaintools.com/gawker.com;

http://whois.domaintools.com/jezebel.com.

40.     At all relevant times, the principal place of business of Defendant, BLOGWIRE

HUNGARY SZELLEMI ALKOTAST HASZNOSITO KFT a/k/a Gawker Media is New York

City, New York. http://advertising.gawker.com/contact/;

http://advertising.gawker.com/execteam/.

41.     A "KFT" is a Hungarian corporate entity. Tempel Steel Corp. v. Loranger Ipari

KFT, 1998 U.S. Dist. LEXIS 4003 (N.D. Ill. Mar. 27, 1998) ("Dismissal of the action would

seem inappropriate here, given (1) what would appear to be a strong likelihood that the necessary

diversity of citizenship actually exists and (1)[sic] the consequent potential for curing the existing

error under Section 1653."); Hawkins v. Borsy, 2007 U.S. Dist. LEXIS 14358 (E.D. Va. Feb. 6,

2007); Dorfman v. Marriott Int'l Hotels, Inc., 2001 U.S. Dist. LEXIS 642 (S.D.N.Y. Jan. 26,

2001); Tableau Software, Inc. v. AnyAspect KFT, 2008 U.S. Dist. LEXIS 11364 (N.D. Cal. Feb.

1, 2008); Dorfman v. Felvono, 2002 U.S. Dist. LEXIS 3749 (S.D.N.Y. Mar. 5, 2002).

42.     A "KFT" has similar characteristics as a U.S. limited liability company.

Hungary's offshore legislation provides for the incorporation of a low-tax offshore company

(KFT).http://www.offshore-fox.com/offshore-corporations/offshore_corporations_0408.html;

http://www.atrium-incorporators.com/hungary-company-formation/  A Google of "KFT" reveals

PDF documents on doing business in Hungary.  (Some of these password protected PDF

documents cannot be uploaded to Pacer. Exhibit 8 is left intentionally blank.)

43.      Thus, Defendant, BLOGWIRE HUNGARY SZELLEMI ALKOTAST

HASZNOSITO KFT is a Hungarian limited liability company that owns the domains

Gawker.com and Jezebel.com.

44.      Defendants, Gawker Media LLC a/k/a Gawker Media, BLOGWIRE HUNGARY

SZELLEMI ALKOTAST HASZNOSITO KFT, Gawker Media Group Inc. a/k/a Gawker,

Gawker Entertainment LLC, Gawker Technology LLC, Gawker Sales LLC owns, operates,

controls, and/or publishes several websites, including Gawker.com and Jezebel.com, which

disseminate information worldwide via the Internet.

45.      At all relevant times, Defendant, Gawker Media LLC a/k/a Gawker Media owned,

operated, controlled, and/or published Fleshbot.com, a pornographic website.

46.     At all relevant times, Defendant, Irin Carmon was and is a citizen of the State of

New York.  Defendant Carmon is a reporter for Jezebel.com.  http://twitter.com/irincarmon;

http://irincarmon.com/

47.     Defendants, Gawker Media LLC a/k/a Gawker Media, BLOGWIRE HUNGARY

SZELLEMI ALKOTAST HASZNOSITO KFT, Gawker Media Group Inc. a/k/a Gawker Media,

Gawker Entertainment, LLC, Gawker Technology, LLC, Defendant, Gawker Sales LLC, Nick

Denton, Gabby Darbyshire, Irin Carmon  shall sometimes hereinafter be referred to as the

"Jezebel Defendants."

48.     The Jezebel Defendants are in the business of hosting websites designed to defame

targeted victims with obscene, false and fraudulent headlines and blog posts for the purpose of

generating web traffic which translates into advertising revenue.  In that regard, the Jezebel

Defendants, and each them, by and through their websites, disseminate pornography, salacious

headlines, blog posts and photographs concerning their targeted victims, thereby inflaming the

public and, thereafter, encouraging their readers to defame, malign, disparage and harass the

targeted victims by posting their own extreme, outrageous, and defamatory comments on these

websites.

**FACTS**

49.     Plaintiff , Meanith Huon, is an attorney   licensed to practice law in the State of

Illinois since May 9, 1996.  He is admitted to practice before the Northern District of Illinois, the

Central District of Illinois, the Southern District of Illinois,  (including the Federal Trial Bar for

the Northern District of Illinois), and the Seventh Circuit.  Mr. Huon has never been convicted of

12

a felony or misdemeanor.

50.    On or about July 2, 2008, Plaintiff was falsely accused by "Jane Doe" and charged with criminal sexual assault.  The investigating detectives never interviewed two key witnesses at the scene of the alleged occurrence.   According to the police report, the investigating detective told Mr. Huon that "that at no time was he being accused of striking [Jane Doe] nor physically threatening her with violence."  The investigating detective  stated in his report that he told Mr. Huon that Jane Doe "had been very intimidated by Huon reportedly yelling at her" and that "a small amount of physical contact" was alleged by Jane Doe.  The investigating detectives asked Jane Doe to contact Mr. Huon by telephone to arrange for a private meeting between Jane Doe and Mr. Huon.

51.    Shortly after his arrest in 2008, Jane Doe visited Mr. Huon's then defense attorney, William Lucco, but was turned away.   In 2009, Jane Doe Googled "Meanith Huon" and stalked him online, in an attempt to communicate with him.  Jane Doe found a blog that contained postings on God and musings on life, including the posting "10 reasons why I'd make a good husband for you 'dede'."   The blog did not state anything threatening or intimidating and did not refer to Jane Doe by her legal name.  Jane Doe advised Madison County prosecutors that she Googled Mr. Huon and found the aforesaid blog.  Unable to pressure Mr. Huon into accepting a guilty plea of 12 years in the 2008 case, the Madison County State's Attorney's Office retaliated by falsely arresting Mr. Huon and prosecuting him for cyberstalking and witness harassment  in 2009.

52.    In May of 2010, a trial was held in Madison County, Illinois and, after only two hours of deliberation, Plaintiff , Meanith Huon, was acquitted of the sexual assault charges.

13

53.     After Mr. Huon was acquitted in May of 2010, the cyberstalking and witness

harassment  charges in the 2009 case were not dismissed until almost seven months later on or

about December 6, 2011.  On or about the same day, the Madison County State's Attorney whose

office had prosecuted the case was sworn into office as an elected judge.

54.     Defendants are not reporters or journalists whose conduct is governed by a code of

ethics in news gathering and reporting, such as the Society of Professional Journalist Code of

Ethics.   http://www.spj.org/ethicscode.asp.  News organizations like the New York Times and

Business Week have a code of ethics.

55.     Defendants are website operators and bloggers who created websites to generate

advertising dollars from the traffic, including sponsored or moderated comments and discussions.

Defendants generate web traffic and advertising dollars by defaming individuals like Mr. Huon

and profiting from other people's miseries.

56.     Defendants did not make a report of an official proceeding but posted comments

from other web sources on the Internet. Solaia Technology, LLC v. Specialty Pub. Co., 221 Ill.2d

558, 588 (Ill. 2006).

57.     Defendants did not make a report that was a complete and accurate or a fair

abridgement of the official proceeding. Solaia Technology, LLC v. Specialty Pub. Co., 221 Ill.2d

558, 588 (Ill. 2006).

## I. ABOVETHELAW.COM

58.     On or about May 6, 2010, on the day that Plaintiff, Meanith Huon, was acquitted

of all sexual assault charges, the Abovethelaw Defendants, disseminated, published, and re-

published numerous actionable and offensive statements via a post on Abovethelaw.com which are false, misleading and defamatory statements of fact.

59.     The Abovethelaw Defendants posted a story on a former New York Giants linebacker who was charged with third-degree rape involving a 15 year-old girl . The Abovethelaw Defendants followed this story with the prefatory comment that the next story regarding Mr. Huon is "from the files of the wanton and depraved". What can be more wanton and depraved than raping a 15 year-old girl?

60.     On the day that Plaintiff, Meanith Huon, was acquitted of all sexual assault charges, the Abovethelaw Defendants posted  "breaking rape coverage". The Abovethelaw.com Post is set forth herein below and a copy is attached as Exhibit 9:

## Rape Potpourri

We've got a couple of rape stories…

        "Here at ATL, we're your one-stop shop for breaking rape coverage. We cover the rape allegations of the rich and famous, as well as any alleged attorney rapists near you…

        Our next story from the files of the wanton and depraved is a little more in our wheelhouse. A St. Louis-area lawyer came up with an excellent little game to meet women. Meanith Huon allegedly listed Craigslist ads where he claimed to be a talent scout for models.

        So far, so good.  I once pretended to be an Ostrich rancher from sub-Saharan Africa because I was trying to impress bubble gum princesses at a BU party.  But Huon's potentially harmless lies allegedly turn dastardly, pretty quickly:

        The victim said she responded to a Craigslist ad posted by Huon in late

15

June, seeking promotional models, sending her resume, her phone number and two pictures of herself…

The two agreed to meet at the downtown St Louis bar Paddy O's, the victim testified.

But the next day, the victim was running late and called Huon. He told her to meet him at another bar, but when she got there, he told her the other promotional models left, and so he was going to interview her, the victim said.

And this people, is why God invented Google. Had the victim Googled Huon, she would have found stories like this, from the Madison County Record:

A Chicago attorney who was posing as a supervisor for a company that sets up promotions for alcohol sales at area bars was charged in Madison County July 2, with two counts of criminal sexual assault, two counts of criminal sexual abuse and one count of unlawful restraint.

Meanith Huon, 38, of 3038 S Canal St. in Chicago, was arrested by the Chicago Police Department on July 1, and was transferred to Madison County the next day.

Or she might have come across this link, at Lawyer Gossip:

Lawyer, Meanith Huon, 39, who was originally charged with criminal sexual assault, sexual abuse and unlawful restraint is now facing charges of harassment and cyber stalking!

Of course, women shouldn't have to assume that every guy they meet is a potential rapist. But apparently there are a lot of depraved dudes walking around out there that are potential rapists.

In any event:

Huon and the woman went to a couple of bars near Busch Stadium, then to a Laclede's Landing bar before Huon asked the victim if she wanted to go to Pop's

16

in Sauget to meet the other models.

The woman agreed, but told Huon she didn't have enough gas in her car, so she went with him, she said.

This is gonna end badly.

As Huon's Honda Civic crossed the Poplar Street Bridge, the victim said Huon drove past the Sauget exit and continued north on Interstate 55. As the car was moving, Huon fondled the woman, then forced her to perform oral sex on him, the victim said.

Oh, come on. If somebody was driving and tried to "force" me to perform oral sex on them. I'd just get out of the stupid car. Which is to say, I'd do *exactly* what the victim did in this case.

Huon exited Interstate 55 near New Douglas, looking, the victim said, for a secluded place to make out with her. The victim leaped from the moving car, she said, to escape Huon, leaving her cell phone, purse, shoes and identification in his car.

"If he wasn't going to take me back to the freeway, I had made a decision to do anything I could to get out of that car," the victim testified.

Assistant State's Attorney Chris Hoell showed pictures to the jury of the woman's bruised knees, skinned feet and cut toes.

Damn. If you can't get a woman to consensually stay in a moving vehicle, can you really get her to consensually agree to sex (insofar as lying to her about your job and your intentions to get her into the car counts as consensual in the first place)?

Obviously, Huon sees things differently.

Mike Mettes, Huon's defense lawyer, said during his opening statement that Huon and the victim met, but at some point in the evening, it became social

17

and the two of them had consensual sex.  But the victim asked for $500 and threatened if Huon didn't pay her, she would "cry rape," the attorney argued.

So we're not denying that she hurled herself out of a moving vehicle, we're contending that she jumped out of the car to make it look like she was raped? Right, sure. That sounds like the definition of incredible.

It seems to me that there is entirely too much (alleged) raping going on in this country. If this keeps up, men and women are going to have to start carrying around sexual consent forms on their persons.

I, the undersigned, being of sound mind and hot body, do hereby consent to affixing my _____to the other party's_____.  Such amorous undulations include, but are not limited to,_____ , _____, and _____, all proposals will be considered so long as no animals (barnyard or otherwise) are involved.

I claim no rights to future _____ , _____, or _____ , in exchange for this brief interruption in my chronic loneliness.

While I may be quite intoxicated right now, I know damn well what I'm doing.

61.     Defendants, Breaking Media, LLC a/k/a Breaking Media, Breaking Media, Inc. a/k/a Breaking Media, Lat, Mystal, Lerner, and Minkin published and disseminated the defamatory blog post and comments worldwide via the Internet.

62.     The post was written by Defendant Mystal. Defendants continued to republish and disseminate the above-mentioned defamatory statements worldwide after May 6, 2010.

63.     The actionable and offensive statements set forth in the Abovethelaw.com post include:

        a.      Stating and/or inferring that Plaintiff is an attorney rapist;

18

       b.      Stating and/or inferring that Plaintiff is wanton and depraved;

       c.      Stating and/or inferring that Plaintiff had an excellent game to meet women;

       d.      Stating  that Plaintiff allegedly listed Craigslist ads where he claimed to be a talent scout for models thereby inferring that Plaintiff is a sexual predator;

       e.      Stating and/or inferring that Plaintiff told lies and is a liar;

       f.      Stating and/or inferring that Plaintiff is dastardly;

       g.      Stating that the complainant is a "victim" of Plaintiff thereby inferring that the complainant was actually criminally assaulted by Plaintiff;

       h.      Stating that the complainant responded to a Craigslist ad posted by Plaintiff in late June seeking promotional models thereby inferring that Plaintiff is some kind of sexual predator;

       i.      Stating that if the complainant had Googled Plaintiff's name, she would have found other stories in the Madison County Record and other sites inferring that Plaintiff had a criminal record, that there was more than one woman victim or was otherwise dangerous;

       j.      Stating that Plaintiff was posing as a supervisor for a company that sets up promotions for alcohol sales at area bars;

       k.      Stating and/or inferring that Plaintiff is a potential rapist and/or "depraved dude" walking around who is a potential rapist;

       l.      Stating and/or inferring that Plaintiff fondled the complainant and forced her to perform oral sex on him;

       m.      Stating that a photograph of the complainant showed bruised knees, skinned feet and cut toes, thereby inferring that Plaintiff caused physical harm to the complainant;

       n.      Stating and/or inferring that Plaintiff lied to the complainant about a job and his intentions in order to lure her into a car;

o.      Stating that the complainant hurled herself out of a moving vehicle thereby inferring that she was assaulted and/or in danger of being assaulted by Plaintiff;

p.      Stating and/or inferring that Plaintiff has committed rape;

q.      Stating and/or inferring that Plaintiff is chronically lonely, was desirous of a hot body, sought amorous undulations and has or would have sexual relations with a barnyard animal;

r.      Stating and/or inferring that Plaintiff requires a consent form in order to have sex;

s.      Stating and/or inferring that Plaintiff had raped the complainant in "breaking rape coverage" on the date that he was acquitted of sexual assault charges;

t.      Stating and/or inferring that the complainant is a minor or bubble-gum princess;

u.      Stating and/or inferring that Plaintiff's acts or conduct was more depraved and wanton than  raping a 15 year-old girl;

v.      Stating and/or inferring that Plaintiff was a sex offender or sexual predator;

w.      Stating and/or inferring that Plaintiff was a pedophile;

x.      Stating and/or inferring that Plaintiff used the Internet to meet women for sex.

y.      Stating and/or inferring that Plaintiff told complainant that  "other promotional models left" and that Plaintiff " was going to interview her" thereby inferring that Plaintiff  lured complainant under the guise of a job interview.

z.      Stating and/or inferring that "This is gonna end badly" thereby inferring that the allegations of rape are credible.

aa.      Stating and/or inferring that "Oh, come on.  If somebody was driving and tried to "force" me to perform oral sex on them, I'd just get out of the stupid car.  Which is to

20

say, I'd do exactly what the victim did in this case", thereby improving the credibility of the defamation.

bb.    Stating and/or inferring that the jury was allowed to consider the defense of rape in their deliberations: ""Damn. If you can't get a woman to consensually stay in a moving vehicle, can you really get her to consensually agree to sex (insofar as lying to her about your job and your intentions to get her into the car counts as consensual in the first place)? Obviously, Huon sees things differently."

cc.    Stating and/or inferring that "It seems to me that there is entirely too much (alleged) raping going on in this country", thereby inferring that Plaintiff got away with rape and improving the credibility of the rape charges on the date of Mr. Huon's acquittal.

64.    Defendants knew or should have known that certain statements in the blog post were false at the time they were made and published.

65.    Defendants did not make a report of the official proceedings but relied on sources on the Internet. <u>Myers v. The Telegraph</u>, 332 Ill.App.3d 917, 922 (5th Dist. 2002).

66.    Defendants never reviewed the transcript of the official proceedings before making the post.

67.    The Abovethelaw Defendants by their attorney have admitted in pleadings filed with the Court that the defamatory posting contained no hyperlink to a news article.

68.    Some of the aforesaid defamatory matter do not appear in the official record or proceedings.

69.    Some of the aforesaid statements charged Mr. Huon with unfair business practices, impugning his integrity, prejudicing his practice of law, and/or implying that he

21

committed a crime and falls within several of the recognized categories of defamation *per se.*
Solaia Technology, LLC v. Specialty Pub. Co., 221 Ill.2d 558, 590 (Ill. 2006).

70.     Defendants' posting was not a fair abridgment of the official proceedings and did

not convey to readers "a substantially correct account."  Restatement (Second) of Torts § 611,

Comment f, at 300 (1977).

71.     Defendants' posting  expanded on the official report by the addition of fabricated

evidence designed to improve the credibility of the defamation.  Snitowsky v. NBC Subsidiary

(WMAQ-TV), Inc., 297 Ill.App.3d 314, 310 (1st Dist. 1988).

72.     Defendants intentionally omitted, among other things, the following facts:

a.     The complainant that is the subject of all the news articles is the same woman.

b.     The jury was not allowed to consider the consent defense, because Mr. Huon did

not testify and the trial judge barred the consent defense before closing arguments.  Thus, the

jury had to have found that no sexual contact took place.

c.     The complainant sustained minor injuries from walking or running in a cornfield.

d.     There was no evidence of a Craigslist ad for a job for promotional modeling.

e.     There was no evidence that Mr. Huon represented himself as a talent scout.

f.     The video evidence at trial showed Mr. Huon, dressed in shorts, on a Sunday

afternoon with the complainant, in a bar.

f.     There was no DNA evidence of semen and the complainant never went to the

hospital.

g.     The detectives never interviewed the two key witnesses at the scene who testified

at trial that the complainant gave different versions of the alleged incident.

h.      The detectives asked the complainant to call Mr. Huon to arrange a private meeting and to ask for money.

i.      The complainant had gone drinking with Mr. Huon at several bars for hours.

j.      There was no physical evidence presented that the complainant jumped out of a moving car.

k.      There was no evidence of force presented at trial.   The police report stated that complainant alleged that Mr. Huon raised his voice but that Mr. Huon never threatened the complainant.

l.      The photograph of the complainant showed no injuries (besides from her walking in a cornfield barefoot) and showed her clothes to be completely intact with no tears.

m .    Mr. Huon was not a St. Louis-area lawyer .   He was a financial advisor for St. Louis-based Edward Jones Investments at the time of the alleged incident.

n.      The complainant was 26 years old at the time of the alleged incident and not a minor or a bubble gum princess.

o.      The complainant's boyfriend was arrested in 2008 and  convicted and sentenced in 2009  in Federal Court in St. Louis, Missouri for possession and intent to distribute cannabis.

p.      Mr. Huon was not charged with "rape" to the extent that he was not charged with forcing the complainant to have vaginal sexual intercourse by penile penetration.

q.      The complainant made conflicting statements to two key witnesses—who were never interviewed by the detectives.

r.      Defendants omitted that Mr. Huon had been acquitted on May 6, 2010.

73.     Defendants defamed Mr. Huon and placed him in a false light by inaccurately reporting his defense attorney's opening argument.   Defendants omitted that Mr. Huon's defense

23

counsel was relying on information contained in the police report that was replete with false

statements and that opening argument is not a statement of the facts.

74.    Defendants created the following consent form which further defamed Mr. Huon

and placed him in a false light :

> I, the undersigned, being of sound mind and hot body, do hereby consent
> to affixing my _____to the other party's_____.  Such amorous undulations
> include, but are not limited to,_____ , _____, and _____, all proposals will be
> considered so long as no animals (barnyard or otherwise) are involved.
>
> I claim no rights to future _____ , _____, or
> _____ , in exchange for this brief interruption in my chronic loneliness.
>
> While I may be quite intoxicated right now, I know damn well what I'm
> doing. Exhibit 9.

75.    The consent form defames Mr. Huon and places him in a false light in that it

suggests that he has "chronic loneliness", was seeking a "brief interruption" for a "hot body"

from anyone other than a "barnyard" animal.

76.    The consent form defames Mr. Huon and places him in a false light in that he

intimated as a rapist who needs to use a consent form.

77.    The consent form defames Mr. Huon and places him in a false light in that the trial

judge barred the consent defense and Mr. Huon's defense attorneys were barred from arguing

consent.   Consent was not a defense submitted to the jury for their deliberation.

78.    Defendants conducted no investigation into the reliability or accuracy of the

sources of the news articles or allegations on the internet.   Defendants never contacted Mr.

Huon before publishing the defamatory post.

79.     Defendants relied on a posting by a blog called Lawyergossip.com. Defendants omitted that when Mr. Huon had asked Lawyergossip.com to remove the false and defamatory statements, Lawyergossip.com contacted the Madison County States Attorney's Office, who called Mr. Huon's defense attorney and threatened to bring more criminal charges against Mr. Huon.

80.     Defendants omitted that when Mr. Huon asked the newspapers to remove the false and defamatory statements, a reporter contacted   Mr. Huon's defense attorneys to complain during trial, adversely affecting Mr. Huon's relationship with his defense attorney .

81.     The Abovethelaw Defendants have a history of cyberstalking or cyberbullying Mr. Huon.  On or about July 3, 2008, Defendants  called Mr. Huon "Lawyer of the Day" and linked the post to a defamatory article from the Madison County Record that contained false statements and defamed Mr. Huon.   Defendants' post and links continued to be republished on the Abovethelaw.com website and were made available worldwide on May 6, 2011.   The post continued to be made available online to the world, including Illinois readers, after May 6, 2011. A true and correct copy of this posting by Above The Law.com is attached hereto as Exhibit 10.

82.     The Abovethelaw Defendants intentionally invented facts in the postings by identifying the same complainant that is the subject of several news articles or postings as multiple and different victims.   The writer and editor, both Harvard-educated attorneys, have the competency to read news articles or postings  that are written at the 6th grade level.

83.     The Abovethelaw Defendants knew or should have known that the same complainant was the subject of the various news articles and postings, because    Defendants called Mr. Huon in the July 3, 2008 posting " Lawyer of the Day" and attached a link to an article regarding the complainant.

25

84. The Abovethelaw Defendants knew or should have known that the allegations about Mr. Huon were false when Defendants' own posting falsely stated that Mr. Huon posed as a talent scout and as a supervisor for a promotions company. Clearly, Mr. Huon cannot pose as two different people to the same woman.

85. The Abovethelaw Defendants falsely stated or intimated that there were other women victims that Mr. Huon allegedly had raped but did not explain that the same woman is the subject of all news stories or blog posts and that Mr. Huon was acquitted of sexual assault.

86. The Abovethelaw Defendants moderate and control its users' comments. The Defendants have a written policy on the content of the users' comments and can moderate, control, delete, and/or promote comments and discussions:

**Monitoring and Enforcement; Termination**

We have the right to:

■Remove or refuse to post any User Contributions for any reason in our sole discretion.

■Take any action with respect to any User Contribution that we deem necessary or appropriate in our sole discretion if we believe that such User Contribution violates the Terms of Use, including the Content Standards, infringes any intellectual property right, threatens the personal safety of users of the Website and the public or could create liability for the Company.

■Disclose your identity to any third party who claims that material posted by you violates their rights, including their intellectual property rights or their right to privacy.

■Take appropriate legal action, including without limitation, referral to law enforcement, for any illegal or unauthorized use of the Website.

■Terminate your access to all or part of the Website for any or no reason, including without limitation, any violation of these Terms of Use.

\*                                    \*                                    \*

**Content Standards**

26

These content standards apply to any and all User Contributions and Interactive Services. User Contributions must in their entirety comply with all applicable federal, state, local and international laws and regulations. Without limiting the foregoing, User Contributions must not:

■Contain any material which is defamatory, obscene, indecent, abusive, offensive, harassing, violent, hateful, inflammatory or otherwise objectionable.

■Promote sexually explicit or pornographic material, violence, or discrimination based on race, sex, religion, nationality, disability, sexual orientation or age.

■Infringe any patent, trademark, trade secret, copyright or other intellectual property rights of any other person.

■Violate the legal rights (including the rights of publicity and privacy) of others or contain any material that could give rise to any civil or criminal liability under applicable laws or regulations or that otherwise may be in conflict with these Terms of Use and our Privacy Policy www.abovethelaw.com/privacy-policy/

■Be likely to deceive any person.

■Promote any illegal activity, or advocate, promote or assist any unlawful act.

■Cause annoyance, inconvenience or needless anxiety or be likely to upset, embarrass, alarm or annoy any other person.

■Be used to impersonate any person, or to misrepresent your identity or affiliation with any person or organization.

■Involve commercial activities and/or sales without our prior written consent, such as contests, sweepstakes and other sales promotions, barter, advertising or pyramid schemes.

■Give the impression that they emanate from us, if this is not the case.
http://abovethelaw.com/terms-of-service/.  Exhibit 11.

87.    The post was designed to incite users of the site to post their own defamatory

comments.   Defendants, and each of them, took an active part in encouraging users of the site

to post these salacious comments and, thereafter,  on information and belief, edited these

comments.  There were more than 107 comments or replies by users all of which resulted from

the active participation, incitement and encouragement of Defendants.

27

98.     The following is an example of a defamatory comment posted by a user of the website.  The Abovethelaw Defendants' user identified as "LatherRinseRepeat", posted the false and defamatory statement that "Huon has a history . . . Looks like he's in for another ass kicking" on the Abovethelaw.com website on or after May 6, 2011.   A copy of this posting is attached as Exhibit 12.   The aforesaid statement continued to be posted on the Abovethelaw.com website and made available worldwide after May 6, 2011.

99.     Defendants knew or should have known that the aforesaid statements were false at the time they were made and published.  Defendants did not promptly remove this comment even though the defamatory and false statement violated the Abovethelaw.com's own written content standards prohibiting "any material which is defamatory, obscene, indecent, abusive, offensive, harassing, violent, hateful, inflammatory or otherwise objectionable."

## II.   JEZEBEL.COM

100.     More than one year after Plaintiff , Meanith Huon, was acquitted of sexual assault charges, on or about May 11, 2011, the Jezebel Defendants posted a blog post on the Jezebel.com website entitled "**Acquitted Rapist Sues Blogger For Calling Him Serial Rapist**" with an image of Mr. Huon's mugshot.  The post was written by Defendant Carmon.  The said post was disseminated, published and republished worldwide on the Internet.   The Jezebel.com post is set forth herein below as follows:

## Acquitted Rapist Sues Blogger For Calling Him Serial Rapist  [Mugshot of Meanith Huon]

A Chicago man who was acquitted on a sexual assault charge is suing the legal blog Above The Law for implying that he's a serial rapist. If Meanith Huon gets his way,

28

blogger sloppiness may cost ATL $50 million.

Huon, a lawyer, was initially charged with two counts of sexual assault, two counts of sexual abuse, and one count of unlawful restraint. A woman had jumped out of his car, ran through a cornfield barefoot, and knocked on a random person's door saying he had forced her into sexual activity. She later said she believed she was spending time with him for a job opportunity related to alcohol promotions, until he allegedly yelled at her to perform oral sex. Huon's version was that it was a consensual encounter, and partly on the strength of a bartender's testimony that the woman had been drinking and asked where to go to have fun, the jury believed him.

Huon is also suing local law enforcement authorities in Madison County, Illinois for prosecutorial misconduct. His beef with Above The Law stems from a roundup post entitled "Rape Potpurri," in which blogger Elie Mystal mistakenly believes that news accounts of the same incident are different incidents that should have tipped the woman off that Huon was a serial offender. "The content of the article were [sic] defamatory in that it incorrectly and recklessly portrayed Mr. Huon as a serial rapist by treating the same complaining witness as three different women," says the complaint, according to Forbes.

"And this, people, is why God invented Google," wrote Mystal in the original post, linking to articles that in fact described the same case. The lesson learned: Google only takes you so far.

A true and correct copy of the Jezebel.com Post is attached hereto as Group Exhibit 13.

101.    A link to the Abovethelaw.com blog post was and is placed below the defamatory blog post:

Related: Rape Potpurri [ATL].  Group Exhibit 13.

29

102.    There were more than 4,374 views of the blog post.

103.    The Jezebel Defendants continue to publish and disseminate the aforesaid blog post.  Below the blog post in Discussions Section is the original headline:

"Acquitted Rapist Sues Blog For Calling Him Serial Rapist".  Group Exhibit 14.

104.    The Gawker Media Defendants disseminated, published, and republished the same defamatory blog post from Abovethelaw.com notwithstanding the fact that Abovethelaw.com had removed the defamatory blog post from its website.

105.    The rule that each republication of a libel constitutes a separate cause of action which starts the statute of limitations running anew is firmly established in Illinois.  MIDWEST BANK BUILDERS v. DUN & BRADSTREET, INC., 1978 U.S. Dist. LEXIS 17937 (N.D. Ill. May 4, 1978).  Republication can constitute a new cause of action if the publication is altered so as to reach a new audience or promote a different product. Lyssenko v. Int'l Titanium Powder, LLC, 2010 U.S. Dist. LEXIS 29771 (N.D. Ill. Mar. 25, 2010); When a defamatory statement is published to a third person, that person in turn may be liable for republication of the communication to yet another individual.  Solaia Tech., LLC v. Specialty Publ. Co., 221 Ill. 2d 558, 598 (Ill. 2006)

106.    Defendant republishes a defamatory statement when  defendant edits and retransmits the defamatory material, or distributes the defamatory material for a second time with the goal of reaching a new audience online.   Where substantive material is added to a website, and that material is related to defamatory material that is already posted, a republication has occurred.  Davis v. Mitan (In re Davis), 347 B.R. 607, 611-612 (W.D. Ky. 2006); Woodhull v. Meinel, 145 N.M. 533 (N.M. Ct. App. 2008).

107.    The Jezebel.com post is replete with actionable and offensive statements which are false, misleading and defamatory statements of fact, including the following:

    a.    Stating and/or inferring that Plaintiff is an "Acquitted Rapist";

    b.    Stating and/or inferring that Plaintiff is a rapist;

Case 1:11-cv-09055   Document # 162   Filed 11/05/12   Page 31 of 53   PageID #:1073

      c.      Stating and/or inferring that Plaintiff is a serial rapist;

      d.      Stating and /or inferring that Plaintiff had raped more than one woman.

      e.      Stating and /or inferring that the lesson is that Google only takes you so far, thereby, inferring that Mr. Huon has a criminal background that does not show up in a Google search;

      f.      Stating and/or inferring that Plaintiff has committed a crime by posting his mugshot more than one year after he was acquitted;

      g.      Stating  and/or inferring that Plaintiff is a sexual predator or sex offender;

      h.      Stating  and/or inferring that Plaintiff was acquitted "partly on the strength of a bartender's testimony that the woman had been drinking and asked where to go to have fun".

108.    In addition to the actionable and offensive statements made by the Jezebel Defendants, the Jezebel Defendants engaged in other intentional acts of wrongdoing in an effort to intimidate, harass and destroy Plaintiff's reputation and to invade Plaintiff's privacy including, but  not limited to:

      a.      Encouraging, aiding and abetting users of the Jezebel.com website to post salacious and defamatory statements about Plaintiff; and

      b.      Posting Plaintiff's booking photo on its website and encouraging readers to Google Plaintiff's telephone number and address so that they may contact, harass and intimidate Plaintiff and interfere with Plaintiff's ability to conduct his business and maintain a livelihood.

109.    On information and belief, the Jezebel Defendants screens its commenters for inflammatory/defamatory posts, selects those who write  most inflammatory and defamatory comments to be commenters, and encourages these already defamation-prone commenters to post more comments and continue to escalate the dialogue for the purpose of increasing the inflammatory and defamatory nature of the comments, to increase traffic to its website for the

Case 1:11-cv-09053    Document 14    Filed 11/05/21    Page 32 of 53    PageID #:1774

purpose of generating more revenue.

110.    On information and belief, certain commenters may actually be Jezebel Defendants' employees, posting under an alias, and on information and belief, several defamatory statements about Mr. Huon by unidentified "commenters" are actually Jezebel Defendants'' employees. Plaintiff believes that discovery will reveal this to be the case.

111.    The Jezebel Defendants encourage and create an environment where defamation flourishes.  The Jezebel Defendants promote posts from commentators that are the most inflammatory.  The commentators feed off of one another's inflammatory comments to the point of committing major defamations against the subject of the story.

112.    Defendant, Nick Denton, the founder of Gawker Media and Gawker plans a business model based on comments and conversation, not posts and ads.

http://www.poynter.org/latest-news/mediawire/174904/gawker-plans-a-business-model-based-on-comments-and-conversation-not-posts-and-ads/.

113.    According to Reuters, the Jezebel Defendants want to monetize comments:

In an internal memo on Thursday, Denton announced the formation of a new sales unit that will focus on helping advertisers and brands take part in the new commenting system…

According to the memo, Gawker is creating a new content unit within the sales department that will be headed by Ray Wert, formerly editor of the Gawker-owned automotive blog Jalopnik. This new unit will take over responsibility for all of Gawker's branded content functions, as well as marketing communications and events — and the purpose of the unit will be to promote the new Gawker discussion platform as a way for marketers and brands to engage with customers in an open forum. Says Denton:
> We all know the conventional wisdom: the days of the banner advertisement are numbered. In two years, our primary offering to marketers will be our discussion platform.

http://blogs.reuters.com/felix-salmon/2012/05/22/how-gawker-wants-to-monetize-comments/.  Exhibit 15.

114.    Reuters described the Jezebel Defendants' commenting system designed to generate more money with advertisers as follows:

So Gawker's new commenting system is based around threads, with the default view

32

being the main, most interesting thread. It's possible to click through to other threads, and every thread — indeed, every comment — has its own unique URL; what's more, the person who starts a thread has quite a lot of control over which comments in that thread will get featured.

What that means is that if an advertiser buys a sponsored post — and sponsored posts have been part of Gawker's menu of offerings for some time now — then once the new commenting system is in place, the advertiser will have a reasonably large degree of control of the conversation that most people see in that post. http://blogs.reuters.com/felix-salmon/2012/05/22/how-gawker-wants-to-monetize-comments/.  Exhibit 15.

115.    Defendants state on their website that it is the policy of the Defendants to only post comments that Defendants "love":

How do I get approved to comment?

We only approve the comments we love—so make sure you're adding something of quality to the post. Stay on-topic and seek to further the conversation. Leave us a juicy story on the #tips page or throw your hat into the ring of our open forums . . .

Do you have any tips for auditioning?

Leaving multiple high-quality comments on different threads with your newly created account increases your chances of getting approved.   See attached Group Exhibit 16.

116.    The Jezebel Defendants control, block, edit and promote the comments that users can leave regarding the blog post.   Defendants promote some comments and do not publish other comments. Defendants can promote certain comments by users, placing the comments at the top of the page or in a prominent location for all readers to view.   Defendants have "Featured" and "Promoted Discussion" Comments.   See attached Group Exhibit 16.

117.    The Jezebel Defendants' written policy states that its Comments and Discussion Section is by "invitation" only:

33

Case 1-11-cv-09053  Document 1-1616  Filed 11/05/21  Page 344 of 59  PageID #:1178

7. Comments – The comments sections on GM Sites are accessible to users by invitation only (such invitations coming either from Gawker Media editors directly or by referral from existing comment users). Gawker Media's comment user registration system has been designed so that, if the user so chooses, they can remain completely anonymous, even to us. Gawker Media will not accept responsibility for information posted in the Comments. In order to make our comments useful and interesting, the following guidelines have been established for comment users:

a. Do not post threatening, harassing, defamatory, or libelous material.

b. Do not intentionally make false or misleading statements.

c. Do not offer to sell or buy any product or service.

d. Do not post material that infringes copyright or any other intellectual property interest.

e. Do not post information that you know to be confidential or sensitive or otherwise in breach of the law.

f. Keep all comments relevant to the particular GM Site where the comment is being posted.

Please note that once you post a comment to one of our sites, it becomes part of the public conversation. Our policy is that we will not remove a user's comments unless we deem them to be in violation of our Terms of Use. So if you want to say something that you will later regret personally, it is advisable that you use a username that does not identify you. We cannot remove your comments simply because you have a change of heart about making them.

Additionally, it is our policy not to delete comment accounts. Gawker Media, however, reserves the right to remove comments and comment accounts entirely at its discretion, including for alleged violations of Terms of Use or legal rights.

Gawker Media is not responsible for the content of user comments. If a third party complains that your comment violates our Terms of Use or their rights, we will invite them to respond in the comments themselves. If they pursue the complaint, we will make reasonable efforts to contact you by the means you have provided us, to alert you to the situation. We will protect your contact information as described in our Privacy Policy, but may be compelled to turn it over pursuant to legal process. Exhibit 17.

118.    The terms and conditions of the Jezebel Defendants' Comments and Discussion Section is under the Advertising link for Jezebel.com:  http://advertising.gawker.com/legal/.

119.    The Jezebel Defendants violated is own terms and conditions by defaming Mr. Huon and encouraging its users to harass and defame Mr. Huon.

120.    In this case, the Jezebel Defendants promoted defamatory comments or inflammatory comments regarding Mr. Huon, thereby encouraging users to post more defamatory comments regarding Mr. Huon.

121.    Defendants' blog post was designed to incite users of the site to post their own defamatory comments.   Defendants, and each of them, took an active part in encouraging users

35

of the site to post these salacious comments and, thereafter, on information and belief, edited

these comments.  There were more than 80 comments or replies by users all of which resulted

from   the active participation, incitement and encouragement of Defendants.

122.   Defendants intentionally promoted, moderated, edited and/or selected comments

that called Mr. Huon a rapist and that defamed Mr. Huon.  The following are just some of the

defamatory comments posted by users of the website:

a.   SarahMc, wrote:

Just because a man is acquitted of rape does not mean he did not commit rape. That a jury

would decide "not guilty" does not magically erase what he did--if he did, in fact, rape

someone. The vast majority of rapists are never convicted of rape. Does that make them

not rapists?

b.   Dinosaurs and Nachos, girlfriend!, wrote: Innocent until proven guilty is a widely

misunderstood concept. It basically means that the mere fact that someone is charged with

a crime is not itself evidence that the person committed a crime.

Then you go to court. In court, there will be evidence presented. This evidence is where

an actual, legal determination is made. Nobody is declared "innocent" in a court of law,

they are found guilty or not guilty.

"Not guilty" is absolutely not the same thing as "innocent" from a legal standpoint. Those

words do not mean the same thing in the world of law. "Innocent until proven guilty" is

merely a concept for laymen to try to keep their non-lawyer brains from jumping to (non-

legal) conclusions.

c.   SorciaMacnasty, wrote: Nevermind "serial rapist," he sounds like a foreal crazy

person.

36

d.      deafblindmute, wrote:   According to the link under "strength" he traveled to another city, used a false name, and then pretended to be a representative of a liquor company and advertised a job for a model. Now, that doesn't mean that he did/didn't rape her, but it is a goddamn shady way to start off an evening.

He must have had some damn good lawyers to push that out of the jury's mind.

My big question is, if she tried to run from him that night and he acknowledges that they were together and there was some sexual interaction going on, what was his defense? I don't care how drunk you are, in the middle of a wanted sexual encounter you don't jump out of a moving car and run through a cornfield barefoot (fun fact: the bristly hair on corn leaves feel like thousands of needles when you run through it). I mean, it's sort of his word against hers for what was happening in the car, but we know that a third person saw her after she ran from him.

Any more legally knowledgeable people know how a jury is supposed to treat this type of evidence? Does the fact that its word vs. word in the car disqualify her claims to being assaulted even though she ran away from him and said she was assaulted that night? How can any sexual assault case be tried if that counts as reasonable doubt?

Arg this is more perplexing the more I think about it. Everything points to rape (his shady actions and lies earlier in the night; her running from him to a stranger), but there is no conclusive evidence I have heard speak of that proves he did/didn't do it.

God, it's almost as if our legal system is imperfect or something :/

e.      CassandraSays, writes:

Thanks, bartender and lawyer, for reminding me that since I have a vagina I'm not allowed to go out in public and attempt to engage in any sort of enjoyable activity unless

37

I'm willing to have sex. With anyone who asks - my presence in a bar gives blanket permission to any guy who happens to find me attractive. I mean, if I didn't want to be raped I'd just stay at home, right?

f.      lanboyo, writes:   So he is actually upset about the "Serial" rapist part, actually he is just a one time accused rapist.

g.      JadeSays, writes:

Weird. I didn't know "where do I go to have fun" meant the same thing as "where do I go to get raped." It's great that that jury made that clear to me, otherwise I could get myself in some sticky situations like apparently accidentally begging to be raped. AWE. SOME.

h.      rachel723, writes:

you know it's women like you who don't understand the rules that make the rest of us ladies look bad.

I'm glad you learned before you actually got raped not to complain now if you do, you were asking for it!!

/sarcasm

i.      vikkitikkitavi, writes:

She jumped out of a moving car, leaving her shoes and purse behind and ran barefoot through a cornfield and pounded on a stranger's door to help her?

Fuck this "he's been acquitted" noise. He's a rapist alright, so we may as well call him one.

j.      tomsomething, writes:

I know you're going to get a million comments like hits, but the phrase "acquitted rapist" probably won't fly for a person who has already demonstrated his letigiousitousnicity.

38

k.    cool_as_KimDeal, writes:

Well shit! I didn't know kicking back at a bar and asking where I should go to have fun

meant that I hereby consent to any and all sexual activity, with anybody, with this

bartender here as my witness. Can I sign away my right to consent here on my bar tab?

Okay, great.

l.    HeartRateRapid, writes:

Yea, all those crazy bitches going to the cops and lying about being raped. Except that

false reports for stolen cars are more common. False rape reports make up less than 3% of

all reported rapes, and as I'm sure you know, it horrendously underreported.

Exhibit 18.

123.    The Jezebel Defendants blocked and prevented Mr. Huon from posting a reply

under his legal name.

124.    On a later date, the Jezebel Defendants moderated or censored Mr. Huon's attempt

to post a reply by removing or redacting his post.  None of the other users had their post redacted.

Exhibit 19.

125.    The Jezebel Defendants strategy is to monetize comments by encouraging,

promoting, editing, and publishing defamatory posts by its users directed at the subject of its post.

The Jezebel Defendants' strategy for monetizing the comments from advertisers is to have a

comment and discussion section that is larger in length than the original post.   The Jezebel

Defendants promote the most inflammatory posts to encourage more posting, thereby, creating

more monetizing opportunities from its sponsored advertising.

126.    Defendants, and each of them, engaged in a deliberate campaign to

defame and besmirch Plaintiff's name and reputation by disseminating, publishing and

republishing actionable and offensive statements about Plaintiff as more fully set forth herein

below.  Moreover, the Gawker Media Defendants engaged in a deliberate campaign to

relentlessly and unreasonably intrude into Plaintiff's right of privacy.

127.    The Jezebel Defendants promoted the following comment:

a/k/a Andpreciouslittleofthat, posted and edited a post to read: "Ed: Two seconds of

proper Googling will get you to Mr. Huon's firm webpage, complete with his phone

number, should you want to call and offer any critiques.   Exhibit 20.

128.    The Jezebel Defendants intentionally superimposed the arrest photograph of Mr.

Huon on the Abovethelaw.com blog post so that the words "**Rape Potpourri**" would be next to

Mr. Huon's photograph identifying him as a rapist.

129.    The Jezebel Defendants intentionally published and disseminated Mr. Huon's

arrest photograph next to the word "Rapist" and encouraged readers to Google Mr. Huon for his

address and telephone number for the malicious purpose of harassing and cyberstalking Mr.

Huon.

130.    A Google search of "Meanith Huon" results in the Jezebel Defendants' post being

the first search result.

131.    Defendants' attorneys published Mr. Huon's date of birth and Social Security

Number, in violation of FRCP 5.2, in this action on the publicly accessible Pacer System.  Mr.

Huon subsequently filed a Motion to Strike.  [Docket Nos. 109 and 110.]

132.    The Jezebel Defendants' attorneys have admitted in its pleadings that the Jezebel

Defendants viewed Mr. Huon as a sex offender and seek to track  Mr. Huon, who has never been

convicted of a felony or misdemeanor:

There is certainly a public interest in knowing about alleged sex crimes, and indeed, there

40

has been a great deal of legislative effort and attention to tracking and reporting on sex offenders . . .

It is curious, and somewhat frightening that the defendants Huon has targeted for his harassing lawsuits are those who publish on the internet precisely the place he has used as a stalking ground on at least two occasions, and the very tool he has used in the past for bullying . . .

It is understandable that Plaintiff is familiar with the "cyberstalking" statute.  He has, after all been criminally charged with violating it (emphasis supplied) (Defendants' Memorandum, pages 12, 16, Docket No. 58).

133.    Defendants and its attorneys knew or should have known that the aforesaid statements are false.

134.    Defendants' attorneys in its pleadings describe Mr. Huon as a "serial plaintiff who has repeatedly been charged with crimes relating to the sexual abuse of women".   (Defendants' Memorandum, page 25, Docket No. 58).  Defendants and its attorneys knew or should have known that the aforesaid statement are false.

135.    Defendants and its attorneys seem to believe that just because Mr. Huon was falsely arrested, he can be defamed, bullied, harassed.  But as the Seventh Circuit noted, "such a rule 'would strip people who had done bad things of any legal protection against being defamed; they would be defamation outlaws.'" Desnick v. American Broadcasting Companies, Inc., 44 F.3d 1345, 1351  (7th Cir. 1995).

136.    The attorney litigation privilege does not cover the publication of defamatory matter that has no connection whatsoever with the litigation. Restatement (Second) of Torts § 586 comment.  Kurczaba v. Pollock, 318 Ill.App.3d 686, (1st Dist. 2000).

137.    The clients are principals, the attorney is an agent, and under the law of agency the principal is bound by his chosen agent's deeds. The rule is that all of the attorney's misconduct becomes the problem of the client.  Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc., 570 F.3d 845, 848 (7th Cir. Ill. 2009).  Thus, the Jezebel Defendants are bound by

the defamatory statements made by its attorneys that Mr. Huon is an alleged sex offender who

needs to be targeted and tracked.

138. Various versions of the same Jezebel.com blog post continue to be published and

republished and disseminated on the Internet worldwide.

139. The Jezebel Defendants republished or disseminated the same defamatory blog

post from Abovethelaw.com without explaining that the blog post contained false statements.

Defendants falsely stated that Abovethelaw.com was "sloppy".      Defendant,

Abovethelaw.com, had disseminated false statements regarding Mr. Huon.

140. The Jezebel Defendants knew that Mr. Huon sued Abovethelaw.com for

publishing a defamatory blog post replete with false statements and that Mr. Huon was acquitted

more than a year ago. Defendants knew that Mr. Huon filed a false arrest and malicious

prosecution lawsuit against Madison County, Illinois and several defendants. But Defendants

continued to make false statements insisting that Mr. Huon was a serial rapist and that "The

lesson learned : Google only takes you so far."

141. Defendants continued to publish and disseminate the false statements after

Abovethelaw.com removed its defamatory statements regarding Mr. Huon.

142. Defendants engaged in retaliatory and vigilante justice by cyberstalking and

cyberbullying Mr. Huon, posting his booking photo on its website and encouraging readers to

Google Mr. Huon's telephone number and address and to contact him.

143. Defendants continued to call Mr. Huon a "rapist" who had been acquitted and

suggested that had the complainant investigated Mr. Huon by other methods besides Google, the

complainant would have learned that Mr. Huon was a serial rapist. Defendants knew that Mr.

Huon had no prior convictions and had no other arrests for rape.

42

144.     Defendants defamed Mr. Huon and placed him in a false light as a serial rapist who got away with rape when Defendants placed an arrest photograph of Mr. Huon next to the bold title "**Acquitted Rapist Sues Blog for Calling Him Rapist**". Defendants" described the false statements made by Abovethelaw.com ad allegations made by Mr. Huon.   Defendants then closed with the words: " The lesson learned : Google only takes you so far" .  Defendants falsely intimated and made the false statement that Mr. Huon is a serial rapist, that he got away with rape, and that he was a sex offender who needed to be tracked and reported to members of the general public.

145.     Defendants knew that Mr. Huon had sued Madison County, Illinois and several defendants for defamation, false arrest, malicious prosecution but never reported in detail the allegations of the Madison County lawsuit to its readers by posting a link to the Madison County lawsuit complaint.   Defendants conducted no investigation into the allegations.   Defendants knew of the allegations in the lawsuit Mr. Huon filed against Madison County, Illinois and several defendants but never discussed in detail the false arrest or malicious prosecution of Mr. Huon.   Defendants never contacted Mr. Huon before publishing and disseminating the false statements.

146.     Defendants knew that Abovethelaw.com had published false statements regarding Mr. Huon.   Nevertheless, Defendants rushed to judge and convict Mr. Huon as a rapist in social media.

147.     In fact, the Jezebel Defendants engaged in the same reckless or intentional misconduct as the Abovethelaw Defendants—after being put on notice that the Abovethelaw Defendants made false statements and misread the news stories or posts on the Internet.    The

Jezebel Defendants either never read the news stories or intentionally misrepresented the news stories.

148.     Defendants intentionally omitted, among other things, the following facts:

a.       The jury was not allowed to consider the consent defense, because Mr. Huon did not testify and the trial judge barred the consent defense before closing arguments.  Thus, the jury had to have found that no sexual contact took place.

b.       The complainant sustained minor injuries from walking or running in a cornfield.

c.       There was no evidence of a Craigslist ad for a job for promotional modeling.

d.       There was no evidence that Mr. Huon represented himself as a supervisor for an alcohol promotional company.

e.       The video evidence at trial showed Mr. Huon, dressed in shorts, on a Sunday afternoon with the complainant, in a bar.

f.       There was no DNA evidence of semen and the complainant never went to the hospital.

g.       The detectives never interviewed the two key witnesses at the scene who testified at trial that the complainant gave different versions of the alleged incident.

h.       The detectives asked the complainant to call Mr. Huon to arrange a private meeting and to ask for money.

i.       The complainant had gone drinking with Mr. Huon at several bars for hours.

j.       There was no physical evidence presented that the complainant jumped out of a moving car.

44

k.      There was no evidence of force presented at trial.   The police report stated that complainant alleged that Mr. Huon raised his voice but that Mr. Huon never threatened the complainant.

l.      The photograph of the complainant showed no injuries (besides from her walking in a cornfield barefoot) and showed her clothes to be completely intact with no tears.

m .    The bartender testified she saw Mr. Huon and the complainant playing video games.

n.     The complainant's boyfriend was arrested in 2008 and  convicted and sentenced in 2009  in Federal Court in St. Louis, Missouri for possession and intent to distribute cannabis.

o.     Mr. Huon was not charged with "rape" to the extent that he was not charged with forcing the complainant to have vaginal sexual intercourse by penile penetration.

p.     The complainant made conflicting statements to two key witnesses—who were never interviewed by the detectives.

149.    Defendants disregarded the complaints from several readers that the blog post defamed Mr. Huon.

150.    Defendants intentionally defamed Mr. Huon and placed him in a false light to generate website traffic and buzz in its Comments and Discussion Section and, thereby, to increase advertising dollars.

151.    The Jezebel Defendants knew or should have known that certain statements in the aforesaid blog post were false at the time they were made and published.

152.    Defendants did not make a report of the official proceedings but relied on sources on the Internet. <u>Myers v. The Telegraph</u>, 332 Ill.App.3d 917, 922 (5th Dist. 2002).

153.    Defendants never reviewed the transcript of the official proceedings before making the post.

154.    Some of the aforesaid defamatory matter do not appear in the official record or proceedings.

155.    Some of the aforesaid statements charged Mr. Huon with unfair business practices, impugning his integrity, prejudicing his practice of law, and/or implying that he committed a crime and falls within several of the recognized categories of defamation *per se*. Solaia Technology, LLC v. Specialty Pub. Co., 221 Ill.2d 558, 590 (Ill. 2006).

156.    Defendants' posting was not a fair abridgment of the official proceedings and did not convey to readers "a substantially correct account."  Restatement (Second) of Torts § 611, Comment f, at 300 (1977).

157.    Defendants' posting  expanded on the official report by the addition of fabricated evidence designed to improve the credibility of the defamation.  Snitowsky v. NBC Subsidiary (WMAQ-TV), Inc., 297 Ill.App.3d 314, 310 (1st Dist. 1988).


**Efforts by Plaintiff to Remove Actionable and Offensive Statements**

158.    Plaintiff has, on several occasions, contacted one or more of the Abovethelaw Defendants and the Jezebel Defendants for the purpose of convincing them to remove the actionable and offensive statements from their respective websites and to convince the said Defendants to refrain from engaging in the wrongful acts.  Notwithstanding repeated requests, Defendants and each of them, failed to remove the actionable and offensive statements from their respective websites after being requested to do so, continued to host these websites with the offensive content, actively inviting and encouraging defamatory content, republished the actionable and offensive statements and edited comments, and continued to engage in the

46

wrongful acts.

## **Public Perception**

159.    Since the publication of the actionable and offensive statements, any individual reading these publications might believe that Plaintiff is a criminal and/or engaged in criminal activity.

160.    Since the publication of the actionable and offensive statements, any individual reading the publications might believe that Plaintiff:

      a.    Is a rapist;

      b.    Is a sexual predator;

      c.    Is a sex offender;

      d.    Lacks the integrity or ability to perform and/or discharge his duties as an attorney;

      e.    Lacks the integrity or ability to perform and/or discharge his duties as a business consultant; and

      f.    Lacks the integrity or ability to perform in his trade, profession, and business.

Plaintiff remains concerned that individuals and organizations including prospective legal clients will choose not to utilize his services based upon the actionable and offensive statements.

## **Intent and Actual Malice**

161.    Defendants, and each of them, acted with intent and actual malice in that they have tried and actively continue to try to cause substantial personal and professional harm to Plaintiff. Defendants, and each of them, had every opportunity to investigate the reliability and accuracy of the publications but failed to do so.

162.    Defendants acted with the intent to tortuously interfere with Plaintiff's business interests by dissuading prospective parties who read the publications, from becoming Plaintiff's clients and or doing business with him.

## The Harm Suffered By Plaintiff

163.    As a result of the actionable and offensive statements, Plaintiff has suffered a loss of reputation and business. In the legal and business community integrity, honesty and trust constitutes a substantial component of both retaining clients and obtaining new business.  The actionable and offensive statements make Plaintiff appear to be a criminal, a sexual predator, a sex offender, dishonest and someone you would never want to do business with.

164.    The actionable and offensive statements by Defendants have proximately caused Plaintiff to suffer damages including a decline in prospective business, loss of job or economic opportunities, loss of clients and business deals.  Furthermore, the actionable and offensive statements have negatively affected Plaintiff's personal relationships and have caused him to experience shame, severe emotional distress, loss of social status, esteem, and impairment of normal social functioning.

165.    Plaintiff's damages including both economic and personal injury damages, are unknown at this time and have not yet been fully realized, but are believed to be well in excess of Seventy-Five Thousand Dollars ($75,000.00).

## Plaintiff's Need For Injunctive Relief

166.    Although Plaintiff seeks compensatory and punitive damages, Plaintiff has no adequate remedy at law. Consequently, injunctive relief is necessary.

167.    Plaintiff has suffered and will continue to suffer irreparable harm if this Court Does not enjoin Defendants from publishing the actionable and offensive statements and enjoin the wrongful acts.  Plaintiff's livelihood, profession, business, personal life and relationships,

48

personal well-being and health will continue to be disrupted, negatively affected and substantially injured as a result of Defendants' actionable and offensive statements and the wrongful acts.

168.    Plaintiff will suffer irreparable harm in the absence of appropriate injunctive relief.  In contrast, Defendants will suffer no harm, because they have no legal right to engage in the publication of the actionable and offensive statements or to engage in the wrongful acts.

## CLAIMS FOR RELIEF

## COUNT I

### (Defamation *Per Se* Against All Defendants)

169.  Plaintiff repeats and realleges paragraphs 1 to 168 of this Fourth Amended Complaint as paragraphs 1 to 168 of Count I as though fully set forth herein.

170.    Defendants, and each of them, published the actionable and offensive statements on  the Internet which were viewed by third parties.

171.    The actionable and offensive statements include verifiably false statements the defamatory character of which is apparent on its face and which are susceptible to only one meaning and are of such a nature and character as to impute:

      a.      Criminal wrongdoing to Plaintiff;

      b.      False accusations of fornication;

      c.      That Plaintiff is unable to perform or lacks integrity in performing his employment duties; and/or

      d.      That Plaintiff lacks ability or otherwise prejudices him in his profession. The actionable and offensive statements, therefore, constitute defamation *per se*.

172.    The actionable and offensive statements  prejudice Plaintiff and impute a lack of ability to perform in his trade as an attorney or as a businessman.

173.    The actionable and offensive statements are so obviously harmful to Plaintiff that injury to Plaintiff and Plaintiff's integrity, virtue, human decency, respect for others and reputation within the legal and business community and elsewhere may be presumed.

174.    Defendants, and each of them, published the actionable and offensive statements without any cloak of privilege and with actual malice.

175.    The contents of the posts and comments were defamatory and false.

176.    The publication of the posts  and comments constitute publications by Defendants.

177.    The erroneous and inflammatory comments concerning Mr. Huon were applied to Mr. Huon on the entire web page .   Any and all viewers of the blog post understood the defamatory (i.e. criminal, loathsome, immoral) meaning of the erroneous inflammatory information concerning Mr. Huon.

178.   Mr. Huon  sustained  special  harm  as  a  result  of  the  publication  of  the erroneous  and  inflammatory  communications  by  Defendants,  including,  but  not  limited  to, the loss of his professional reputation.

179.    As a result of Defendants' conduct and the publication of the actionable and offensive statements, Plaintiff has suffered and continues to suffer damages including but not limited to, impairment of reputation and standing in the community, loss of business and harmed reputation, personal humiliation, mental anguish and pain and suffering.

180.    The actionable and offensive statements further convey a perception that Plaintiff exercises poor judgment as an attorney, has repeatedly committed sexual assault and will do so in the future, and that he is unable to responsibly carry out his fiduciary duties and obligations to his clients, the courts, his colleagues and the community.

181.    In addition to compensatory and punitive damages in a sum well in excess of the minimum jurisdiction of this Court, Plaintiff is entitled to injunctive relief  in a form of an order:

50

a.    Compelling Defendants, and each of them, to remove the actionable and

offensive statements from the Internet;

b.    Enjoining Defendants, and each of them, from further publishing or

repeating the actionable and offensive statements; and

c.    Enjoining Defendants, and each of them, from interfering with Plaintiff's

law practice and maligning Plaintiff's personal, business and professional reputation.


## COUNT II

### (Defamation *per quod* Against All Defendants)

182.  Plaintiff repeats and realleges paragraphs 1 to 168 of this Fourth

Amended Complaint as paragraphs 1 to 164 of Count II as though fully set forth herein.

183.    Defendants, and each of them, published the actionable and offensive statements

on the Internet, which were viewed by third parties.

184.    Actionable and offensive statements include verifiably false statements which

would be interpreted by the reader as defamatory.  Specifically those persons who read the

actionable and offensive statements would construe the statements in such a way so as to impute

to Plaintiff a history of criminal wrongdoing and rape.  Furthermore, persons who read the

actionable and offensive statements, would impute to Plaintiff a lack of ability to perform in his

trade as an attorney or as a businessman and would further impute to Plaintiff a lack of integrity,

virtue, human decency, and respect for others such that persons reading these statements would

not want to deal with Plaintiff either as a lawyer or as businessman.

185.    Defendants, and each of them, published the actionable and offensive statements

without any cloak of privilege, with actual malice, and with the intent to injure Plaintiff's

business and reputation in the legal and the business community.

186.    The actionable and offensive statements published by Defendants, and each of

51

them, have directly and proximately caused harm to Plaintiff's professional standing amongst lawyers and businessmen and has damaged Plaintiff's reputation for honesty and integrity, and has caused injury to Plaintiff's legal practice, business operations and good will and have negatively impacted the public's confidence in Plaintiff.

187.    The contents of the posts and comments were defamatory in that the above-mentioned statements were false.

188.    Each of the above statements contained in the posts that are of and concerning Mr. Huon is false, untrue, and defamatory, and the posts are libelous on their face.

189.    The Defendants, and each of them, jointly or separately, knew the statements as they apply to Mr. Huon to be false, and that the posts were intended by the Defendants to convey false or defamatory statements about Mr. Huon.

190.    The Defendants, and each of them, jointly or individually, wrote, printed, published and circulated, or caused to be written, printed, published and circulated, the libelous statements concerning Mr. Huon either with knowledge of the falsity of the statements or with reckless disregard for their truth.

191.    The statements were so understood by those who read them to have the defamatory meaning ascribed to them in this complaint and the Defendants, and each of them, jointly or separately, intended the statements   to be so understood and read by users and visitors of the website.

192.    The Defendants, and each of them, jointly or separately, intended the statements to be so understood and read by those who read the statements via third-party distribution, where permission for such further distribution was known and encouraged by the Defendants.

193.    At the time the statements were publicly distributed throughout the world, the Defendants, and each of them, jointly and separately, were in possession of evidence that would raise serious doubt about the truth of the statements made. Nevertheless, the Defendants, and each of them, jointly and separately, without due regard for the truth, falsity, or malicious nature

52

of the statements, formulated, published, and disseminated the statements.

194.    The defamatory statements were written and published with reckless disregard for the truth of the matter, and Defendants knew at the time the statements were formulated that they were false and injurious to Plaintiffs. The statements were intended by Defendants, and each of them, to directly injure Mr. Huon with respect to Mr. Huon' reputation, character, and business.

195.    Defendants, each of them, were also negligent in publishing the statements. With ordinary and reasonable care, Defendants would have realized, or could have discovered, that the statements pertaining to Mr. Huon were obviously false and grossly libelous, offensive and damaging to Mr. Huon.

196.    The defamatory statements   were not privileged in any manner. The statements were intended by Defendants, and each of them, to directly injure Mr. Huon with respect to his reputation, character, and business.

197.    As a legal result of the intentional and malicious conduct of the Defendants, and each of them, jointly and severally, Mr. Huon has suffered damage to business, trade, profession and occupation, all to Mr. Huon's special damages in a sum to be determined at time of trial.

198.    By engaging in the misconduct alleged above, the Defendants each engaged in unjust and deceitful conduct with the willful and conscious disregard for the rights of Mr. Huon. Defendants were aware of the probable dangerous consequences of their misconduct and willfully and deliberately failed to avoid those consequences, including subjecting Mr. Huon to cruel and unjust hardship, in conscious disregard of Mr. Huon's rights. Thus, an award of exemplary and punitive damages is justified.

199.    The publication of the blog posts constitute publication by Defendants.

200.    The erroneous and inflammatory comments concerning Mr. Huon were applied to Mr. Huon on the entire web page .   Any and all viewers of the blog post understood the defamatory (i.e. criminal, loathsome, immoral) meaning of the erroneous inflammatory information concerning Mr. Huon.

201.    Mr. Huon sustained special harm as a result of the publication of the erroneous and inflammatory communications by Defendants, including, but not limited to, the loss of his professional reputation.

202.    Moreover, as the result of the defamatory publication referred to herein, Mr. Huon has sustained irreparable harm to his reputation, emotional distress and loss of standing in the community.

203,    Defendants' acts described herein were reckless, outrageous, willful, and malicious, warranting the imposition of punitive damages.

204.    Plaintiff has, and will suffer, special damages and pecuniary loss directly from a loss of clients in his legal practice and the loss of profit from business deals and interactions in an amount well in excess of Seventy-Five Thousand ($75,000.00).

205.    Publication of the actionable and offensive statements by Defendants, and each of them, was done knowingly, willfully, maliciously, wantonly, and with the intent to confuse, mislead or deceive potential clients and business associates, and to create a false impression as to the nature of Plaintiff's integrity and virtue, and to disparage Plaintiff's reputation before the public and specifically within the legal and business community.

206.    In addition to compensatory and punitive damages in a sum well in excess of the minimum jurisdiction of this Court, Plaintiff is entitled to injunctive relief  in a form of an order:

a.    Compelling Defendants, and each of them, to remove the actionable and offensive statements from the Internet;

b.    Enjoining Defendants, and each of them, from further publishing or repeating the actionable and offensive statements; and

c.    Enjoining Defendants, and each of them, from interfering with Plaintiff's law practice and maligning Plaintiff's personal, business and professional reputation.

54

## COUNT III

### (Invasion of Privacy – False Light - Against All Defendants)

207.  Plaintiff repeats and realleges paragraphs 1 to 168 of this Fourth Amended Complaint as paragraphs 1 to 168 of Count III as though fully set forth herein.

208.   Defendants, and each of them, published the actionable and offensive statements on the Internet which were viewed by third parties.

209.   The actionable and offensive statements include verifiably false statements susceptible to only one meaning, that are of such a nature and character as to invade Plaintiff's privacy by placing Plaintiff in a false light before the public.

210.   The actionable and offensive statements are so obviously and naturally harmful to Plaintiff that injury to Plaintiff, and Plaintiff's integrity, virtue, human decency, respect for others, reputation within the legal and business community and elsewhere may be presumed.

211.   The false light in which the actionable and offensive statements placed Plaintiff would be highly offensive to the reasonable person.

212.   Defendants' published the actionable and offensive statements without any cloak of privilege, with actual malice, with knowledge of or with reckless disregard for the falsity of the statements.

213.   In light of the forgoing, Defendants, and each of them, have invaded Plaintiff's privacy by placing Plaintiff in a false light before the legal and business community and before the public.

214.   In intentionally or recklessly stating and intimating the above-mentioned false statements, Defendants invaded Mr. Huon's privacy by portraying him in a false light.

215.   The false light in which Defendants portrayed Mr. Huon would be highly offensive to a reasonable person.

216.   Defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Mr. Huon would be placed.

217.     The publicity created by Defendants, and each of them, jointly or separately, placed Plaintiff in a false light in the public eye in that the reports were fabricated by Defendants, and each of them, and publicly conveyed, and was intended to convey, a calculatedly false and inaccurate impression of Mr. Huon as criminal and immoral person.

218.     The publicity created by the statements were highly objectionable to Mr. Huon, and would be to any person of ordinary sensibilities. The statements made Mr. Huon the object of scorn and ridicule by many residents of the Illinois and the United States and the world. The reports were intended to and did directly injure the Mr. Huon with respect to Mr. Huon's right to be left alone, as well as the Mr. Huon's reputation, character, and business.

219.     The formulation, publication, and public dissemination of the statements   by the Defendants was done with actual malice in that it was done with all or some of Defendants' knowledge of the reports' falsity, or in reckless disregard of the truth. At all relevant times, all or some of the Defendants were aware, or should have been aware, of facts contrary to the Defendants' malicious allegations.

220.     The publicity created by Defendants, and each of them, was done with malice in that it was made either with knowledge of the falsity of the statements or in reckless disregard of the truth. The statements describing Mr. Huon's actions, character and intention were calculated falsehoods.

221.     Defendants, and each of them, were also negligent in publishing the statements. With ordinary and reasonable care, Defendants would have realized, or could have discovered, that the reports were obviously false and grossly libelous, offensive, and damaging to Mr. Huon.

222.     As a legal result of the statements, Mr. Huon has suffered a loss of social status, esteem, and acceptance, causing him to experience shame, severe emotional distress, and impairment of normal social functioning, all to his general damages in a sum not determined at this time, but in excess of $75,000.00.

223.     As a further legal result of the above-mentioned disclosure, Mr. Huon has suffered

injury in his business, all to the Mr. Huon's special damages in an amount to be proven at trial.

224.    In making the disclosure described above, Defendants, and each of them, are guilty of unjust and deceitful conduct amounting to oppression, fraud, or malice in that Defendants made the disclosure with a willful disregard of Mr. Huon's rights. Defendants' acts in formulating, publishing, and disseminating the statements on their website, and in their allowing other websites and entities to freely reprint their materials, and in allowing readers to post their own defamatory comments, were done with the knowledge by Defendants that these acts would cause Mr. Huon to suffer great humiliation, mental anguish, and injury. Defendants' acts were therefore willful, wanton, intentional, and actually malicious and oppressive, justifying the award of exemplary and punitive damages according to proof at trial.

225.    As the result of so portraying Mr. Huon, Mr. Huon sustained severe personal injuries including, but not limited to, emotional distress, irreparable damage to his reputation, loss of standing in the community, and injury to his professional reputation.

226.    Defendants, and each of them, jointly and individually, wrote, printed, published, circulated, and continue to make available on their websites the defamatory statements for the purpose of, among other things, injuring Mr. Huon's reputation, injuring and interfering with his businesses, and publicly embarrassing and humiliating Mr. Huon. Defendants did so in furtherance of their agenda of preserving their influence worldwide and locally in social media, to generate website traffic, to generate advertising dollars, to sell more newspapers, and/or to advance their own material and economic advantage.

227.    Defendants' widespread and continued dissemination of statements that Mr. Huon is guilty of criminal and immoral conduct has exposed Mr. Huon to contempt, ridicule and embarrassment, and injury to his reputation and economic loss.

228.    The impact of Defendants' defamatory statements is particularly severe as a result of the fact that many readers of the websites are lawyers, attorneys, judicial clerks, law clerks, decision makers, businessmen or individuals employed in business and the legal community.

229.     The aforesaid conduct by Defendants, and each of them, was undertaken with the specific intent to cause injury to Mr. Huon, and that such conduct was despicable and carried out with willful and conscious disregard of Plaintiffs' rights and feelings and with ill-will, all of which constitutes "malice."

230.     The foregoing conduct by Defendants, and each of them, was also intended to and did subject Mr. Huon to unjust hardship in conscious disregard of Mr. Huon's rights and, as such, constituted "oppression." As a direct and proximate result of Defendants' actions, Mr. Huon's reputation, which is vital for the continuing success of his profession and business, has been severely damaged by Defendants' conduct. By reason of such ill-will, malice and oppression, Mr. Huon is entitled to punitive or exemplary damages against Defendants, and each of them, in an amount sufficient to punish them and deter them from further similar conduct.

231.     Defendants' acts of defaming Mr. Huon were reckless, outrageous, willful, and malicious, warranting the imposition of punitive damages.

232.     In addition to compensatory and punitive damages in a sum well in excess of the minimum jurisdiction of this Court, Plaintiff is entitled to injunctive relief  in a form of an order:

a.     Compelling Defendants, and each of them, to remove the actionable and offensive statements from the Internet;

b.     Enjoining Defendants, and each of them, from further publishing or repeating the actionable and offensive statements; and

c.     Enjoining Defendants, and each of them, from interfering with Plaintiff's law practice and maligning Plaintiff's personal, business and professional reputation.


## COUNT IV

**(Invasion of Privacy – Unreasonable Intrusion Upon the Seclusion of Another - Against the All Defendants)**


1 to 233.  Plaintiff repeats and realleges paragraphs 1 to 168 of this Fourth

58

Amended Complaint as paragraphs 1 to 168 of Count IV as though fully set forth herein.

234.    The Defendants engaged in acts of wrongdoing identified in the aforesaid paragraphs in an effort to intentionally, unreasonably, and without authorization, intrude into Plaintiff's seclusion and/or to otherwise pry into Plaintiff's seclusion and right of privacy.

235     The wrongful acts by the   Defendants are offensive and objectionable to a reasonable person.

236.    The wrongful acts by the   Defendants constitute an unreasonable intrusion upon the private matters of Plaintiff.

237.    In light of the foregoing, the Defendants, and each of them, have invaded Plaintiff's privacy thereby proximately causing Plaintiff personal pain, anguish, suffering, humiliation, loss of reputation, loss of business and impairment of standing in the community.

238.    In addition to compensatory and punitive damages in a sum well in excess of the minimum jurisdiction of this Court, Plaintiff is entitled to injunctive relief enjoining the Defendants from engaging in the wrongful acts identified in the aforesaid paragraphs.

## COUNT V

### (Intentional Infliction of Emotional Distress Against All Defendants)

239.  Plaintiff repeats and realleges paragraphs 1 to 168 of this Fourth Amended  Complaint as paragraphs 1 to 168 of Count V as though fully set forth herein.

240.    The actionable and offensive statements and the wrongful acts constitute conduct by Defendants, and each of them, that was extreme and outrageous.

241.    In publishing the actionable and offensive statements and engaging in the wrongful acts, Defendants intended to cause Plaintiff emotional distress and/or recklessly or consciously disregarded the probability that their acts would cause Plaintiff emotional distress.

242.    Defendants' acts of perpetuating false and inflammatory information concerning Mr. Huon, specifically constituted extreme and outrageous conduct.

59

243.    As a legal result of the intentional and malicious conduct of the Defendants, and each of them, jointly and separately, Mr. Huon has suffered damages.

244.    As an actual and proximate result of the acts of Defendants, and each of them, as herein alleged, Plaintiff has suffered severe and extreme emotional distress.

245.    In addition to compensatory and punitive damages in a sum well in excess of the minimum jurisdiction of this Court, Plaintiff is entitled to injunctive relief  in a form of an order:

a.    Compelling Defendants, and each of them, to remove actionable and offensive statements from the Internet;

b.    Enjoining Defendants, and each of them, from further publishing or repeating the actionable and offensive statements; and

c.    Enjoining Defendants, and each of them, from interfering with Plaintiff's law practice and maligning Plaintiff's personal, business and professional reputation.

## COUNT VI

### (Conspiracy to Defame Plaintiff Against All Defendants)

246.  Plaintiff repeats and realleges paragraphs 1 to 168 of this Fourth Amended Complaint as paragraphs 1 to 168 of Count VI as though fully set forth herein.

247.    Defendants agreed between and among themselves, and with each other, to publish the actionable and offensive statements for the unlawful purpose of defaming Plaintiff and injuring Plaintiff's integrity, virtue, human decency, respect for others and his reputation within the legal and business community and dissuading the public from contacting, communicating or associating with Plaintiff.

248.    Defendants together, and each of them individually, published one or more of the actionable and offensive statements in furtherance of this common scheme, and Defendants together, and each one of them individually, did so knowingly and willfully.

249.    Defendants conspired to and did publish the actionable and offensive statements

without any cloak of privilege and with actual malice.

250.    In addition to compensatory and punitive damages in a sum well in excess of the minimum jurisdiction of this Court, Plaintiff is entitled to injunctive relief in a form of an order:

a.    Compelling Defendants, and each of them, to remove the actionable and offensive statements from the Internet;

b.    Enjoining Defendants, and each of them, from further publishing or repeating the actionable and offensive statements; and

c.    Enjoining Defendants, and each of them, from interfering with Plaintiff's law practice and maligning Plaintiff's personal, business and professional reputation.

## COUNT VII

### (Conspiracy to Invade Plaintiff's Privacy – False Light - Against All Defendants)

251.  Plaintiff repeats and realleges paragraphs 1 to 168 of this Fourth Amended Complaint as paragraphs 1 to 168 of Count VII as though fully set forth herein.

252.    Defendants agreed between and among themselves, and with each other, to publish the actionable and offensive statements on the Internet for the unlawful purpose of invading Plaintiff's privacy by placing Plaintiff in a false light, and injuring Plaintiff's integrity, virtue, human decency, respect for others and reputation within the legal and business community, and elsewhere, dissuading members of the public from contacting, communicating, or associating with Plaintiff.

253.    Defendants together, and each one of them individually, published one or more of the actionable and offensive statements on the Internet in furtherance of this common scheme and Defendants together, and each one of them individually, did so knowingly and willfully.

254.    Defendants conspired to and did so publish the actionable and offensive statements without any cloak of privilege and with actual malice.

255.    In light of the foregoing, Defendants did knowingly and willfully participate in a

common scheme to commit an unlawful act against Plaintiff.

256.     In addition to compensatory and punitive damages in a sum well in excess of the minimum jurisdiction of this Court, Plaintiff is entitled to injunctive relief in a form of an order:

a.     Compelling Defendants, and each of them, to remove the actionable and offensive statements from the Internet;

b.     Enjoining Defendants, and each of them, from further publishing or repeating the actionable and offensive statements; and

c.     Enjoining Defendants, and each of them, from interfering with Plaintiff's law practice and maligning Plaintiff's personal, business and professional reputation.

## COUNT VIII

**(Tortious Interference With Plaintiff's Economic Advantage Against All Defendants)**

257.  Plaintiff repeats and realleges paragraphs 1 to 168 of this Fourth Amended Complaint as paragraphs 1 to 168 of Count VIII as though fully set forth herein.

258.     At all times material hereto, Plaintiff held a reasonable expectation of entering into valid business relationships, both in his legal practice and in business.

259.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, had knowledge of Plaintiff's expectancy of entering into valid business relationships with members of the public including, but not limited to, his retention as an attorney.

260.     Publication on the Internet of the actionable and offensive statements by Defendants were made by Defendants with a reasonable expectation that prospective clients and business associates and potential employers of Plaintiff who read the actionable and offensive statements would choose not to interact with Plaintiff.

261.     Defendants, and each of them, knowingly, purposefully, maliciously and intentionally, published the actionable and offensive statements in order to prevent Plaintiff from securing new clients and creating new business relationships.

262.    Defendants, and each of them, acted with the intent to tortuously interfere with Plaintiff's business interests by dissuading prospective clients, prospective business associates and potential employers from becoming Plaintiff's legal clients and business partners or associates and from hiring Plaintiff.

263.    The actionable and offensive statements constitute an intentional and unjustifiable interference with prospective clients and business partners and associates of Plaintiff and caused prospective clients and business partners and associates to refrain from contacting and or doing business with Plaintiff.

264.    As a proximate result of Defendants' conduct and publication of the actionable and offensive statements, Plaintiff has suffered and continues to suffer damages including, but not limited to, loss of prospective business.

265.    In addition to compensatory and punitive damages in a sum well in excess of the minimum jurisdiction of this Court, Plaintiff is entitled to injunctive relief  in a form of an order:

    a.    Compelling Defendants, and each of them, to remove the actionable and offensive statements from the Internet;

    b.    Enjoining Defendants, and each of them, from further publishing or repeating the actionable and offensive statements; and

    c.    Enjoining Defendants, and each of them, from interfering with Plaintiff's law practice and maligning Plaintiff's personal, business and professional reputation.

## COUNT IX

### (Cyberstalking and Cyberbullying Against All Defendants)

266.  Plaintiff repeats and realleges paragraphs 1 to 168 of this Fourth Amended Complaint as paragraphs 1 to 168 of Count IX as though fully set forth herein.

267.    Illinois has enacted a law to protect people from Cyberbullying or Cyberstalking.

268.    Sec. 12-7.5. Cyberstalking provides as follows:

(a) A person commits cyberstalking when he or she **engages in a course of conduct using electronic communication directed at a specific person**, and he or she knows or should know that would cause a reasonable person to:

(1) fear for his or her safety or the safety of a third person; **or**

**(2) suffer other emotional distress**.

(a-3) A person commits cyberstalking when he or she, knowingly and without lawful justification, **on at least 2 separate occasions**, **harasses another person through the use of electronic communication** and:

(1) at any time transmits a threat of immediate or   future bodily harm, sexual assault, confinement, or restraint and the threat is directed towards that person or a family member of that person; or

(2) **places that person or a family member of that person in reasonable apprehension** of immediate or future bodily harm, sexual assault, confinement, or restraint; or

(3) at any time knowingly **solicits the commission of an act by any person which would be a violation of this Code directed towards that person** or a family member of that person.

(a-5) A person commits cyberstalking when he or she, knowingly and without lawful justification, **creates and maintains an Internet website or webpage which is accessible to one or more third parties for a period of at least 24 hours, and which contains statements harassing another person** and:

(1) which communicates a threat of immediate or future bodily harm, sexual assault, confinement, or restraint, where the threat is directed towards that person or a family member of that person, or

(2) **which places that person or a family member of that person in reasonable apprehension** of immediate or future bodily harm, sexual assault, confinement, or restraint, or

(3) **which knowingly solicits the commission of an act by any person** which would be a violation of this Code directed towards that person or a family member of that person.

(b) Sentence. Cyberstalking is a Class 4 felony; a second or subsequent conviction is a Class 3 felony.

(c) For purposes of this Section:

64

(1) "Course of conduct" means 2 or more acts, including but not limited to acts in which a defendant directly, **indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, threatens, or communicates to** or about, a person, engages in other non-consensual contact, or interferes with or damages a person's property or pet. The incarceration in a penal institution of a person who commits the course of conduct is not a bar to prosecution under this Section.

(2) "Electronic communication" means any transfer of signs, signals, writings, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system. **"Electronic communication" includes transmissions by a computer through the Internet to another computer**.

(3) "Emotional distress" means significant mental suffering, anxiety or alarm.

(4) "Harass" means to engage in a knowing and willful course of conduct directed at a specific person that alarms, torments, or terrorizes that person.

(5) "Non-consensual contact" means any contact with the victim that is initiated or continued without the victim's consent, including but not limited to being in the physical presence of the victim; appearing within the sight of the victim; approaching or confronting the victim in a public place or on private property; appearing at the workplace or residence of the victim; entering onto or remaining on property owned, leased, or occupied by the victim; or placing an object on, or delivering an object to, property owned, leased, or occupied by the victim.

(6) "Reasonable person" means a person in the victim's circumstances, with the victim's knowledge of the defendant and the defendant's prior acts.

(7) "Third party" means any person other than the person violating these provisions and the person or persons towards whom the violator's actions are directed.

(d) Telecommunications carriers, commercial mobile service providers, and providers of information services, including, but not limited to, Internet service providers and hosting service providers, are not liable under this Section, except for willful and wanton misconduct, by virtue of the transmission, storage, or caching of electronic communications or messages of others or by virtue of the provision of other related telecommunications, commercial mobile services, or information services used by others in violation of this Section. (Source: P.A. 95-849, eff. 1-1-09; 96-328, eff. 8-11-09; 96-686, eff. 1-1-10; 96-1000, eff. 7-2-10; 96-1551, eff. 7-1-11.)  (Emphasis supplied.)

269.  Defendants engaged in a course of conduct using electronic communication

directed at Mr. Huon when Defendants published false statements of Mr. Huon calling or

intimating that he is a serial rapist or a rapist, publishing his booking photograph, and publishing

his address. Defendants knew or should have known that this would cause a reasonable person

to suffer emotional distress.

270. Pleading in the alternative, Defendants created and maintained an Internet website

or webpage which is accessible to one or more third parties for a period of at least 24 hours, and

which contains statements harassing Mr. Huon which placed Mr. Huon in reasonable

apprehension of immediate or future bodily harm, sexual assault, confinement, or restraint.

Defendants called or intimated that Mr. Huon was a rapist or a serial rapist, published his

booking photograph, and published his address.

271. Defendants created and maintained an Internet website or webpage which is

accessible to one or more third parties for a period of at least 24 hours, and which contains

statements harassing Mr. Huon and which knowingly solicits the commission of an act   by any

person which would be a violation of this Code directed towards Mr. Huon.   Defendants

encouraged its users to look up Mr. Huon's telephone number and contact information and harass

and cyberstalk him.  Defendants' attorneys published Mr. Huon's date of birth and Social

Security Number and personal information on the Pacer website.

272. As a legal result of this intentional and malicious conduct of the Defendants, and

each of them, jointly and separately, Mr. Huon has suffered damages well in excess of the

minimum jurisdiction of this Court.

273. Mr. Huon is asking the Court to create a civil cause of action for cyberstalking and

cyberbullying.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment on behalf of

Plaintiff and against Defendants, jointly and severally, and to award Plaintiff, on each Count:

1.       Compensatory damages in an amount well in excess of the minimum jurisdiction of this Court and not less than Seventy-Five Thousand Dollars ($75,000.00) ;

2.       Punitive damages in an appropriate amount to punish Defendants in excess of One Hundred Million Dollars ($100,000,000);

3.       Injunctive relief :

a.       Compelling Defendants, and each of them, to remove the actionable and offensive statements from the Internet;

b.       Enjoining Defendants, and each of them, from further publishing or repeating the actionable and offensive statements; and

c.       Enjoining Defendants, and each of them, from interfering with Plaintiff's law practice and maligning Plaintiff's personal, business and professional reputation.

4.       Costs of suit incurred herein;

5.       Attorney's fees if permissible by law;

6.       The transfer of the domain names Abovethelaw.com, Jezebel.com, and Gawker.com to Plaintiff.

7.       An order for injunctive relief against any individual or entity from posting an article, blog post or comment that relies on the defamatory statements of the Defendants as a source.

8.       Such other and further relief as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, Meanith Huon, demands a jury trial on all issues triable.

67

November 15, 2012

Respectfully submitted,

/s/ Meanith Huon

Meanith Huon
The Huon Law Firm
PO Box 441
Chicago, Illinois 60690
Phone: (312) 405-2789
E-mail: huon.meanith@gmail.com
IL ARDC. No.: 6230996

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of November, 2012, I caused to be served a true and correct copy of the foregoing Plaintiff's Fourth Amended Complaint by causing copies of same to be served electronically on all counsel of record who have appeared in this case.

<div style="text-align: right">

/s/Meanith Huon_____
Meanith Huon
PO Box 441
Chicago, Illinois 60690
Phone: (312) 405-2789
E-mail: huon.meanith@gmail.com

</div>

# STATE OF NEW YORK

# DEPARTMENT OF STATE

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on September 27, 2012.

Daniel E. Shapiro
First Deputy Secretary of State

Rev. 06/07

080312000 576

CSC 45
DRAW DOWN

CERTIFICATE OF AMENDMENT

OF THE

ARTICLES OF ORGANIZATION OF

DEAD HORSE MEDIA LLC

(Under Section Two Hundred Eleven of the Limited Liability Company Law)

It is hereby certified that:

1.    The name of the limited liability company (the "Company") is Dead Horse Media LLC.

2.    The date of filing of the Company's Initial Articles of Organization was December 14,
2005.    Original Name : Meta Media LLC.

3.    The subject matter of the amendment effected hereby is as follows:

        To change the name of the Company from Dead Horse Media LLC to Breaking
        Media LLC

4.    To accomplish the foregoing amendments, Article 1 of the Articles of Organization of the
Company, relating to the name of the company, is hereby amended as follows:

        "1. The name of the company is Breaking Media LLC".

**IN WITNESS WHEREOF**, I have subscribed the foregoing certificate of amendment of the
articles of organization on the date set forth below and do hereby affirm, under the penalties of
perjury, that the statements contained herein have been examined by me and are true and
correct.

Dated: March 7, 2008

Gavin D. McElroy, Authorized Person

FKKS: 348648.v1                                                              15084.300

080312000576

080312000 576

CSC 45
DRAW DOWN

### CERTIFICATE OF AMENDMENT

### OF THE

### ARTICLES OF ORGANIZATION

### OF

### DEAD HORSE MEDIA LLC

### (Under Section Two Hundred Eleven of the Limited Liability Company Law)

1 CC

**STATE OF NEW YORK
DEPARTMENT OF STATE**

FILED   MAR 1 2 2008

TAX $_____

BY: _____   JTC

**FRANKFURT KURNIT KLEIN & SELZ, PC
488 MADISON AVENUE
NEW YORK, NEW YORK 10022
(212) 980-0120**

Cust ref # 481758 RLm

2008 MAR 12 PH 2:24

JTC

2008 MAR 12 PH 12:19

RECEIVED

FKKS: 348648.v1

15084.300

620

**CT-07**

**111 216 000**

486

New York State Department of State
Division of Corporations, State Records and Uniform Commercial Code
One Commerce Plaza, 99 Washington Avenue
Albany, NY 12231
www.dos.state.ny.us

# APPLICATION FOR AUTHORITY
## OF

Breaking Media, Inc.

*(Insert Corporate Name)*

Under Section 1304 of the Business Corporation Law

FIRST: The name of the corporation is:

Breaking Media, Inc.

If the name does not contain a required word or abbreviation indicating corporate character pursuant to § 301 of the Business Corporation Law, the corporation agrees to add the word or abbreviation _____ to the end of its name for use in this state.

*(Do not complete this section unless the corporation's true name is not available pursuant to §301 or § 302 of the Business Corporation Law.)* The fictitious name under which the corporation will do business in New York is:

Breaking Publishing

SECOND: The jurisdiction in which the corporation was organized is:

Delaware                                    The date of its incorporation is: September 8, 2011

THIRD: This corporation is formed to engage in any lawful act or activity for which a corporation may be organized under the Business Corporation Law, provided that it is not formed to engage in any act or activity requiring the consent or approval of any state official, department, board, agency or other body without such consent or approval first being obtained.

FOURTH: The county within this state in which the office of the corporation is to be located is:

New York

*(A county in New York State must be stated. Please note that the corporation is not required to have an actual physical office in this state.)*

DOS-1336-f-I (Rev. 07/11)

Page 1 of 3

111216000486

**FIFTH:** The Secretary of State is designated as agent of the corporation upon whom process against the corporation may be served. The address to which the Secretary of State shall mail a copy of any process accepted on behalf of the corporation is:

611 Broadway, Suite 907D
New York, NY 10012
Attn: Chief Executive Officer

---

**SIXTH:** *(Check the statement that applies.)*

☒ The foreign corporation has not since its incorporation or since the date its authority to do business in New York was last surrendered, engaged in any activity in this state.

☐ The consent of the State Tax Commission is attached.

X _____
*(Signature)*

Carter Burden III
_____
*(Name of Signer)*

President
_____
*(Title of Signer)*

# Delaware

PAGE 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "BREAKING MEDIA, INC." IS DULY INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL CORPORATE EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE FIFTEENTH DAY OF DECEMBER, A.D. 2011.

AND I DO HEREBY FURTHER CERTIFY THAT THE FRANCHISE TAXES HAVE NOT BEEN ASSESSED TO DATE.

4981771   8300

111298280

You may verify this certificate online at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 9231992

DATE: 12-15-11

**CT-07**

111216000

486

# APPLICATION FOR AUTHORITY
## OF

Breaking Media, Inc.

*(Insert Corporate Name)*

Under Section 1304 of the Business Corporation Law

Filed by: Patricia Kelley

*(Name)*
Foley Hoag, LLP, 155 Seaport Blvd.

*(Mailing Address)*
Boston, MA 02210

*(City, State and Zip Code)*

*Note:* This form was prepared by the New York State Department of State for filing an application for authority for a business corporation. It does not contain all optional provisions under the law. You are not required to use this form. You may draft your own form or use forms available at legal stationery stores. The Department of State recommends that legal documents be prepared under the guidance of an attorney. Annexed to the application for authority must be a Certificate of Existence from the official who files and maintains incorporation records in the jurisdiction of the corporation's incorporation. (Please note: This official is generally the Secretary of State and many jurisdictions refer to the Certificate of Existence as a Certificate of Good Standing.) The application must be submitted with a $225 filing fee. Checks should be made payable to the Department of State.   CSt ref # 8334155mc

(For Office Use Only)

**DRAWDOWN**

ICC

STATE OF NEW YORK
DEPARTMENT OF STATE

FILED DEC 16 2011

TAX $_____

BY: _____

new york

533

**CT-07**

**111230000** 283

## CERTIFICATE OF MERGER

OF

### BREAKING MEDIA LLC
(a New York limited liability company)

INTO

### BREAKING MEDIA, INC.
(a Delaware corporation)

## UNDER SECTION 904(a) OF THE NEW YORK BUSINESS CORPORATION LAW

The undersigned, being the Manager of Breaking Media LLC, a New York limited liability company, and the President of Breaking Media, Inc., a Delaware corporation, hereby certify as follows:

**FIRST:** The true name and jurisdiction of formation or organization of each of the constituent entities of the merger are as follows:

| Name | State of Organization/Formation |
|------|-------------------------------|
| Breaking Media LLC | New York |
| Breaking Media, Inc. | Delaware |

The fictitious name of Breaking Media, Inc. is "Breaking Publishing".

**SECOND:** Breaking Media LLC, which was originally formed under the name "META MEDIA LLC", filed its initial articles of organization with the Department of State of the State of New York on December 14, 2005.

**THIRD:** The Surviving Corporation filed its initial certificate of incorporation with the Secretary of State of Delaware on September 8, 2011. The Surviving Corporation filed its Application for Authority to transact business as a foreign corporation by the Department of State of the State of New York on December 16, 2011.

**FOURTH:** An Agreement and Plan of Merger (the "Merger Agreement") has been approved and executed by each of the constituent entities.

**FIFTH:** The name of the surviving corporation is Breaking Media, Inc., a Delaware corporation (the "Surviving Corporation").

**SIXTH:** The Surviving Corporation agrees that it may be served with process in the State of New York in any action or special proceeding for the enforcement of any liability or obligation of Breaking Media LLC, and for the enforcement as provided in the New York Business Corporation Law, of the right of members and owners of Breaking Media LLC to receive payment for their interests against the Surviving Corporation.

B3943309v2

**SEVENTH:** The Surviving Corporation hereby designates the New York Secretary of State as its agent upon whom process against it may be served in the manner set forth in Section 306(b) of the New York Business Corporation Law, in any action or special proceeding. The post office address to which the Secretary of State shall mail a copy of any process served upon the Secretary of State is:

> Breaking Media, Inc.
> 611 Broadway, Suite 907D
> New York, NY 10012
> Attn: John Lerner

**EIGHTH:** The Surviving Corporation agrees that, subject to the provisions of Section 623 of the New York Business Corporation Law, Section 1005 of the New York Limited Liability Company Law or any applicable statute, it will promptly pay to the members of Breaking Media LLC the amount, if any, to which they shall be entitled under the provisions of the New York Business Corporation Law, the New York Limited Liability Company Law or any applicable statute relating to the right of shareholders, members and owners to receive payment for their interests.

**NINTH:** The merger shall be effective on December 31, 2011.

**TENTH:** The merger of Breaking Media LLC into Breaking Media, Inc. is permitted by the laws of Delaware, the state of incorporation of the Surviving Corporation, and is in compliance therewith.

**ELEVENTH:** The executed Merger Agreement is on file at the principal place of business of the Surviving Corporation, located at 611 Broadway, Suite 907D, New York, NY 10012.

*[Signatures to follow]*

B3943309v2

- 2 -

IN WITNESS WHEREOF, Breaking Media LLC and Breaking Media, Inc. have caused this Certificate of Merger to be executed by the undersigned, as of the 29th day of December, 2011.

BREAKING MEDIA LLC,
a New York limited liability company

By:
Name: John Lerner
Title: Chief Executive Officer and Manager

BREAKING MEDIA, INC.,
a Delaware corporation

By:
Name: Carter Burden III
Title: President

*Signature Page to New York Certificate of Merger*

CT-07

111250000 *283*

# Certificate of Merger

## OF

## Breaking Media LLC into

## Breaking Media, Inc.

Under Section 1003 of the Limited Liability Company Law

2011 DEC 29 PH 3:28

**STATE OF NEW YORK**
**DEPARTMENT OF STATE**

FILED    DEC 3 0 2011

TAX S.

BY:

Filed by:

Pat Kelley, Foley Hoag LLP
155 Federal Street
Boston MA 02210

DRAWDOWN

Cst ref# 8347887my

2011 DEC 30 AM 10:55

329

CT-07

**12010400 1031**

New York State Department of State
Division of Corporations, State Records and Uniform Commercial Code
One Commerce Plaza, 99 Washington Avenue
Albany, NY 12231
www.dos.state.ny.us

# CERTIFICATE OF AMENDMENT
## OF

Breaking Media, Inc.

*(Insert Name of Foreign Corporation)*

Under Section 1309 of the Business Corporation Law

**FIRST:** The name of the corporation as it appears on the index of names in the Department of

State is: _____ Breaking Media, Inc. _____

*(Complete this paragraph only if the corporation has agreed to use a fictitious name in New York State.)* The fictitious name
the corporation has agreed to use in New York State is:

Breaking Publishing

**SECOND:** The jurisdiction of incorporation of the corporation is:

Delaware

**THIRD:** The date on which the corporation was authorized to do business in New York State is:

12/16/2011

**FOURTH:** The Application for Authority is amended as follows:

*(If the true name of the foreign corporation has been changed, set forth a statement that the change of name has been effected
under the laws of the jurisdiction of incorporation and the date the change was so effected.)*

Paragraph ___FIRST___ of the Application for Authority is amended to

follows:

Article 1 is being amended to discontinue the use of the corporation's current fictitious name.

DOS-1559-f-f (Rev. 05/10)

Page 1 of 2

12010400103|

Paragraph    N/A    of the Application for Authority is amended to read in its entirety as follows:

N/A

_____/s/_____
(Signature)

John Lerner
_____
(Name of Signer)

Chief Executive Officer
_____
(Title of Signer)

## CT-07

## CERTIFICATE OF AMENDMENT
## OF

Breaking Media, Inc.
_____
(Insert Name of Foreign Corporation)

Under Section 1309 of the Business Corporation Law

Filer's Name:    Patricia F. Kelley, Sr. Corporate Paralegal

Address:    Foley Hoag LLP, 155 Seaport Blvd.

City, State and Zip Code:    Boston, MA  02210

NOTE: This form was prepared by the New York State Department of State. It does not contain all optional provisions under the law. You are not required to use this form. You may draft your own form or use forms available at legal stationery stores. The Department of State recommends that all documents be prepared under the guidance of an attorney. The certificate must be submitted with a $60 filing fee.

*For Office Use Only*

STATE OF NEW YORK
DEPARTMENT OF STATE

FILED   JAN 0 4 2012

TAX $_____

BY:   *LAH*
NEW YORK

**DRAWDOWN**

CSt Ref # 8352225 ny

DOS-1559-f-l (Rev. 05/10)

1136

PAGE 1



# State of Delaware

**SECRETARY OF STATE**
**DIVISION OF CORPORATIONS**
**P.O. BOX 898**
**DOVER, DELAWARE 19903**

*121033669*

*9916566*
*MEANITH HUON*
*PO BOX 441*
*CHICAGO*          *IL     60690*

*09-14-2012*

ATTN: MEANITH HOUN

| DESCRIPTION | AMOUNT |
|---|---|
| GAWKER MEDIA LLC | |
| 3532534    4100    Plain Copy | |
| Plain Copy Fee | 12.00 |
| Expedite Fee, 24 Hour | 20.00 |
| FILING TOTAL | 32.00 |
| TOTAL PAYMENTS | 32.00 |
| SERVICE REQUEST BALANCE | .00 |

SENT BY: AMEX; 212 937 2124; JUN-3-02

STATE OF DELAWARE
SECRETARY OF STATE PAGE 1
DIVISION OF CORPORATIONS
FILED 01:30 PM 06/03/2002
020353593 – 3532534

Case 1:11-cv-03054 Document #: 162-3 Filed: 11/15/12 Page 2 of 11 PageID #:1826

JUN 03 2002 1:17PM    HP LASERJET 3200

# CERTIFICATE OF INCORPORATION

## OF

## BLOGWIRE, INC.

### ARTICLE I

### Name

The name of the corporation is Blogwire, Inc. (the "Corporation").

### ARTICLE II

### Registered Office and Registered Agent

The address of the registered office of the Corporation in the State of Delaware is Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle. The name of the registered agent of the Corporation at such address is The Corporation Trust Company.

### ARTICLE III

### Corporate Purpose

The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware (the "General Corporation Law").

### ARTICLE IV

### Capital Stock

The total number of shares of all classes of stock that the Corporation has authority to issue is 1,000, all of which shall be shares of Common Stock, par value $.01 per share.

### ARTICLE V

### Directors

To the fullest extent permitted by the General Corporation Law as it now exists and as it may hereafter be amended, no director of the Corporation shall be personally

liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director.

## ARTICLE VI

### Bylaws

The directors of the Corporation shall have the power to adopt, amend or repeal the bylaws of the Corporation.

## ARTICLE VII

### Amendment

The Corporation reserves the right to amend, alter, change or repeal any provision of this Certificate of Incorporation, in the manner now or hereafter prescribed by law, and all rights conferred on stockholders in this Certificate of Incorporation are subject to this reservation.

## ARTICLE VIII

### Incorporator

The name and mailing address of the sole incorporator is as follows:

Name                                Address

Nicholas Denton                     301 Elizabeth Street, Apt. 2U
                                    New York, New York 10012

I, THE UNDERSIGNED, being the sole incorporator hereinbefore named, for the purpose of forming a corporation pursuant to the General Corporation Law of the Sate of Delaware, do make this Certificate of Incorporation, hereby declaring and certifying that this is my act and deed and the facts herein stated are true, and accordingly have hereunto set my hand this 3rd day of June, 2002.

Nicholas Denton

2

**Delaware Division of Corporations**
**401 Federal Street – Suite 4**
**Dover, DE 19901**
Phone: 302-739-3073
Fax: 302-739-3812

**Certificate of Conversion from a**
**Delaware or Non-Delaware Corporation to**
**a Delaware Limited Liability Company**

Dear Sir or Madam:

    Enclosed please find a form for a Certificate of Conversion from a Delaware or Non-Delaware Corporation to a Delaware Limited Liability Company. The fee to file the Certificate of Conversion is $200.00. Also, enclosed please find a form for a Certificate of Formation that is required to be filed simultaneously with the Certificate of Conversion. The fee for filing the Certificate of Formation is $90.00.  Please submit the filing with 1 cover sheet with Conversion first. You will receive a stamped "filed" copy of your document. If you would like a certified copy it will be an additional $100.00. ($50.00 for the Conversion and $50.00 for the Formation) Expedited services are available please contact our office concerning these fees.  Delaware entities converting to any other non-Delaware or domestic entity must also pay all applicable taxes.  Please contact our Franchise Tax Department for assistance.  Please make any check payable to "Delaware Secretary of State".

    In order to process your request in a timely manner, please include a cover letter with your name, address and telephone/fax number to enable us to contact you if necessary.  For your convenience a cover sheet is available at the following link. http://corp.delaware.gov/filingmemo.pdf. Please make sure you thoroughly complete all information requested on these forms. It is important that the execution be legible, we request that you print or type your name under the signature line.

    Thank you for choosing Delaware as your corporate home. Should you require further assistance in this or any other matter, please don't hesitate to call us at (302) 739-3073.

Sincerely,

Department of State
Division of Corporations

Rev 09/05

Case 1:21-cv-09054-Document 71-21-3 Filed 11/15/21 Page 54 of 54 PageID #:1925

STATE OF DELAWARE
CERTIFICATE OF CONVERSION
FROM A CORPORATION TO A
LIMITED LIABILITY COMPANY PURSUANT TO
SECTION 18-214 OF THE LIMITED LIABILITY ACT

1.) The jurisdiction where the Corporation first formed is_____.

2.) The jurisdiction immediately prior to filing this Certificate is_____.

3.) The date the corporation first formed is_____.

4.) The name of the Corporation immediately prior to filing this Certificate is
_____.

5.) The name of the Limited Liability Company as set forth in the Certificate of
Formation is _____.

IN WITNESS WHEREOF, the undersigned have executed this Certificate on the
_____day of _____, A.D._____.

By:_____
Authorized Person

Name:_____
Print or Type

**STATE *of* DELAWARE**
**LIMITED LIABILITY COMPANY**
**CERTIFICATE *of* FORMATION**

• **First:** The name of the limited liability company is _____

_____

• **Second:** The address of its registered office in the State of Delaware is

_____ in the City of _____

Zip Code_____.

The name of its Registered agent at such address is _____

_____.

• **Third:** (Insert any other matters the members determine to include herein.)

**In Witness Whereof**, the undersigned have executed this Certificate of Formation this
_____ day of _____, 20_____.

By:_____
          Authorized Person(s)

Name:_____
          Typed or Printed

F040823000 275

New York State
Department of State
Division of Corporations, State Records
and Uniform Commercial Code
41 State Street
Albany, NY 12231
www.dos.state.ny

# APPLICATION FOR AUTHORITY
## OF

### Gawker Media LLC
(Insert name of Foreign Limited Liability Company)

Under Section 802 of the Limited Liability Company Law

**FIRST:** The name of the limited liability company is: ___Gawker Media, LLC___

If the name does not contain a required word or abbreviation pursuant to Section 204 of the Limited Liability Company Law, the following word or abbreviation is added to the name for use in this state:

(Do not complete this section unless the limited liability company's true name is not available pursuant to §204 of the Limited Liability Company Law.) The fictitious name under which the limited liability company will do business in New York is:_____

**SECOND:** The jurisdiction of organization of the limited liability company is:___Delaware___
_____ . The date of its organization is:___April 8, 2004___

**THIRD:** The county within this state in which the office, or if more than one office, the principal office of the limited liability company is to be located is:_____New York____.
(A county in New York State must be stated. Please note that the limited liability company is not required to have an actual physical office in this state.)

**FOURTH:** The Secretary of State is designated as agent of the limited liability company upon whom process against it may be served. The address within or without this state to which the Secretary of State shall mail a copy of any process served against him or her is:_____

Gawker Media LLC

76 Crosby Street
New York, NY 10012

DOS-1381 (Rev. 06/03)

**FIFTH:** (Complete the statement that applies)

The address of the office required to be maintained in the jurisdiction of its formation is: _____

    The Corporation Trust Company

    1209 Orange Street, Wilmington, DE  19801

No office is required to be maintained in the jurisdiction of its formation. The address of the principal office of the limited liability company is: _____

_____

_____

**SIXTH:** The foreign limited liability company is in existence in its jurisdiction of formation at the time of filing of this application.

**SEVENTH:** The name and address of the Secretary of State or other authorized official in its jurisdiction of organization where a copy of its articles of organization is filed is: _____

    Office of the Secretary of State
    401 Federal St., Suite 3

    Dover, DE 19901



X   Nic An L
    *(Signature)*

    **Nicholas Denton**
    *(Type or print name)*

    **Manager**
    *(Title or capacity of signer)*

**Please Note:** A certificate of existence or, if no such certificate is issued by the jurisdiction of formation, a certified copy of the articles of organization of the limited liability company and all subsequent amendments therefore, or if no articles of organization have been filed, a certified copy of the certificate filed as its organizational base and all amendments thereto, must be attached to the application for authority when submitted for filing. If such certificate or certified copy is in a foreign language, a translation in English thereto under oath of the translator shall be attached.

2

# Delaware

PAGE 1

## The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "GAWKER MEDIA LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE FOURTH DAY OF MAY, A.D. 2004.

3

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

3532534  8300

040323402

AUTHENTICATION: 3091020

DATE: 05-04-04

F040823000 275

## APPLICATION FOR AUTHORITY
### OF

**Gawker Media LLC**
*(Insert name of Foreign Limited Liability Company)*

Under Section 802 of the Limited Liability Company Law

Filed by:   **Hunter N. Norton, c/o Withers Bergman LLP**
(Name)

**157 Church Street  P.O. Box 426**
(Mailing address)

**New Haven, CT 06502-0426**

(City, State and Zip code)

NOTE: This form was prepared by the New York State Department of State for filing an application for authority for a foreign limited liability company to conduct business in New York State. It does not contain all optional provisions under the law. You are not required to use this form. You may draft your own form or use forms available at legal supply stores. The Department of State recommends that legal documents be prepared under the guidance of an attorney. The certificate must be submitted with a $250 filing fee made payable to the Department of State.

*(For office use only.)*

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED

AUG 23 2004

TAX $

BY:

280

06/28/04   MON 17:52   [TX/RX NO 8357]

NYS DEPARTMENT OF STATE
DIVISION OF CORPORATIONS
41 State Street
Albany, NY 12231-0002

*Biennial Statement*

| | FILING PERIOD | FEE |
|---|---|---|
| 3093449 | 08/2006 | $9.00 |

Section 301 of the Limited Liability Company Law requires limited liability companies to update and provide a current service of process address to the Department of State every two years. Please sign, review and complete this form as necessary, and then return the statement with the required fee. The following is the service of process address currently on file with the Department of State:

STATE OF NEW
DEPARTMENT OF STATE
FILED AUG 18 2006

06081800
2269

GAWKER MEDIA LLC
76 CROSBY STREET
NEW YORK, NY 10012

**For: GAWKER MEDIA LLC**

Service of Process Address is the address to which the Secretary of State will forward any legal papers accepted on behalf of the limited liability company which commence a legal action against the company.

☑  **THE ADDRESS CURRENTLY ON FILE IS CORRECT.**

Only complete this box if the address presently set forth in the Department's records for the purpose is to be changed

| SERVICE OF PROCESS ADDRESS SHOULD BE CHANGED TO | |
|---|---|
| | |
| | |
| | |

GABRIELLE DARBYSHIRE
PRINT OR TYPE NAME OF SIGNER

MEMBER, AUTHORISED SIGNATORY
PRINT OR TYPE THE TITLE
OR CAPACITY OF SIGNER

SIGNATURE OF MEMBER, MANAGER,
AUTHORIZED PERSON OR ATTORNEY-IN-FACT

2269

**IMPORTANT NOTICE**

06081800

A New York Limited Liability Company which is no longer conducting business must file a Certificate of Dissolution pursuant to section 705 of the Limited Liability Company Law, and a foreign Limited Liability Company no longer conducting business in New York State should file a Surrender of Authority pursuant to section 806 of the Limited Liability Company Law or a Termination of Existence pursuant to section 807 of the Limited Liability Company Law. Questions regarding the filing of these certificates should be directed to the NYS Department of State, Division of Corporations, 41 State Street, Albany, NY 12231-0001 or by calling 518-473-2492.

Filing Period − the filing period is the calendar month during which the original Articles of Organization or Application for Authority was filed or the effective date that limited liability company existence began, if stated in the Articles of Organization.

Filing Fee: The statutory filing fee is $9.00. Checks and money orders must be made payable to the "Department of State". DO NOT mail cash.

Return this entire form, completed, with your $9.00 fee, in the self-mailer envelope, to the Department of State, Division of Corporations, 41 State Street, Albany, NY 12231-0002.

Failure to timely file this statement will be reflected in the Department's records as past due or delinquent.

DOS-1299 (09/99)

NYS Department of State
Division of Corporations, Records and UCC
Albany, NY 12231-0002
www.dos.state.ny.us

## Limited Liability Company
## Biennial Statement

For Internal Use Only

**3093449**

AR0808080500  2195

**Business Name:**

**GAWKER MEDIA LLC**

3093449

Filed By: _____

GAWKER MEDIA LLC
76 CROSBY STREET
NEW YORK, NY 10012

Cash # (if different than film #): _____

| Required Fee: | $9.00 |
| Filing Period: | 08/2008 |
| (Make checks payable to the Department of State) | |

The Limited Liability Company Law requires limited liability companies to provide a current address for service of process to the Department of State every two years in the calendar month in which the limited liability company was formed or authorized. Please review the address for service of process in Part 1. Update the information in the space provided, if necessary. If no changes are necessary, proceed to Part 2. A limited liability company which fails to timely file its Biennial Statement shall be shown to be past due on the Department of State's records.

**Part 1: Address for Service of Process** (Address must be within the United States)

| GAWKER MEDIA LLC 76 CROSBY STREET NEW YORK, NY 10012 | Name | | |
| | Address | | |
| | City | State | Zip |

**Part 2: Signature of Member, Manager, Attorney-in-Fact or Authorized Person**

Signature

Title of Signer (Please Print) MEMBER

Name of Signer (Please Print) GABRIELLE DARBYSHIRE

Send the completed form, together with the $9.00 filing fee made payable to the Department of State, in the self-mailer envelope, to the Department of State, Division of Corporations, 41 State Street, Albany, NY 12231-0002.

To pay with a credit card, send a Credit Card Authorization Form to the Department of State with your Biennial Statement. The Credit Card Authorization Form is available from the Department of State's website at www.dos.state.ny.us or by calling (518) 473-2492. The Biennial Statement with the Credit Card Authorization Form may be faxed to (518) 486-4680.

Call (518) 473-6385 if you have questions regarding this form.

A domestic limited liability company must file this form until it files Articles of Dissolution. A foreign limited liability company must file this form until it files a Certificate of Surrender of Authority or a Certificate of Termination of Existence.

DOS-1299 (07/06)

080805002195

NYS Department of State
Division of Corporations, Records and UCC
Albany, NY 12231-0002
www.dos.state.ny.us

# Limited Liability Company
# Biennial Statement

For Internal Use Only

## 3093449

**Business Name:**

**GAWKER MEDIA LLC**

3093449

GAWKER MEDIA LLC
76 CROSBY STREET
NEW YORK, NY 10012



100081700
3124

Filed By: _____

Cash # (if different than firm #): _____

| Required Fee: | $9.00 |
|---|---|
| Filing Period: | 08/2010 |

(Make checks payable to the Department of State)

The Limited Liability Company Law requires limited liability companies to provide a current address for service of process to the Department of State every two years in the calendar month in which the limited liability company was formed or authorized. Please review the address for service of process in Part 1. Update the information in the space provided, if necessary. If no changes are necessary, proceed to Part 2. A limited liability company which fails to timely file its Biennial Statement shall be shown to be past due on the Department of State's records.

**Part 1: Address for Service of Process** (Address must be within the United States)

| GAWKER MEDIA LLC<br>76 CROSBY STREET<br>NEW YORK, NY 10012 | Name<br>GAWKER MEDIA LLC | | |
|---|---|---|---|
| | Address<br>210 Elizabeth St, 4th Floor | | |
| | City<br>New York | State<br>NY | Zip<br>10012 |

**Part 2: Signature of Member, Manager, Attorney-in-Fact or Authorized Person**

Signature _Jerrella_

Title of Signer (Please Print) _Legal Associate_

Name of Signer (Please Print) _Jose Ma, Esq._

Send the completed form, together with the $9.00 filing fee made payable to the Department of State, in the self-mailer envelope, to the Department of State, Division of Corporations, 99 Washington Ave. Albany, NY 12231-0001.

To pay with a credit card, send a Credit Card Authorization Form to the Department of State with your Biennial Statement. The Credit Card Authorization Form is available from the Department of State's website at www.dos.state.ny.us or by calling (518) 473-2492. The Biennial Statement with the Credit Card Authorization Form may be faxed to (518) 486-4680.

Call (518) 473-6385 if you have questions regarding this form.

A domestic limited liability company must file this form until it files Articles of Dissolution. A foreign limited liability company must file this form until it files a Certificate of Surrender of Authority or a Certificate of Termination of Existence.

DOS-1209 (07/08)

# Biennial Statement

NYS Department of State
Division of Corporations, State Records &
Uniform Commercial Code
http://www.dos.ny.gov

**BUSINESS NAME:**   GAWKER MEDIA LLC

**FILING PERIOD:**   08/2012

**Part 1 - Service of Process Address (Address must be within the United States or its territories)**

| Name |
|---|
| GAWKER MEDIA LLC |

| Address Line 1 |
|---|
| 210 ELIZABETH STREET |

| Address Line 2 |
|---|
| 4TH FLOOR |

| City | State | Zip Code |
|---|---|---|
| NEW YORK | NY | 10012 |

## Signer Information

I affirm that the statements contained herein are true to the best of my knowledge, that I am authorized to sign this Biennial Statement and that my signature typed below constitutes my electronic signature.

| Electronic Signature |
|---|
| JESSE MA |

| Capacity of Signer |
|---|
| AUTHORIZED PERSON |

## FILED WITH THE NYS DEPARTMENT OF STATE ON: 8/7/2012
## FILING NUMBER: 120807006917 - 3093449

04/25/2005 10 38 FAX 12124879777          White Fleischner Fino          002/004

F 050426 000 915

New York State
Department of State
Division of Corporations, State Records
and Uniform Commercial Code
Albany, NY 12231

# ARTICLES OF ORGANIZATION
## OF
# GAWKER ENTERTAINMENT, LLC

Under Section 203 of the Limited Liability Company Law

**FIRST:** The name of the limited liability company is **GAWKER ENTERTAINMENT, LLC.**

**SECOND** The purpose for which the Company is organized is to transact any lawful business for which limited liability companies may be formed

**THIRD:** The county within this state in which the office of the limited liability company is to be located is New York County

**FOURTH:** The Secretary of State is designated as agent of the limited liability company upon whom process against it may be served  The address within or without this state to which the Secretary of State shall mail a copy of any process against the limited liability company served upon it is  81 Spring Street, New York, NY 10012 Attn Mr Nicholas Denton

Jan Cohen, Esq
Organizer

04/25/2005 10 38 FAX  12124879777          White Fleischner Fino                      ☑003/004

F 050426 000 915

ARTICLES OF ORGANIZATION
OF
GAWKER ENTERTAINMENT, LLC

Under Section 203 of the Limited Liability Company Law

FILED 2005 APR 26 PM 3:38

Filed by

Jan Cohen, Esq
Cohen & Czarnik LLP
140 Broadway
36th Floor
New York, NY 10005

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED  APR 26 2005

TAX S
BY

RECEIVED
2005 APR 25 PM 12:01

2

050426 000 966

NYS Department of State
Division of Corporations, Records and UCC
Albany, NY 12231-0002
www.dos.state.ny.us

## Limited Liability Company
## Biennial Statement

For Internal Use Only

07041900
2370

**3196528**

**Business Name:**

**GAWKER ENTERTAINMENT, LLC**

3196528

Filed By: _RSH_

GAWKER ENTERTAINMENT, LLC
ATTN: MR. NICHOLAS DENTON
81 SPRING STREET
NEW YORK, NY 10012

Cash # (if different than film #): _____

| **Required Fee:** | **$9.00** |
| **Filing Period:** | **04/2007** |
| (Make checks payable to the Department of State) | |

The Limited Liability Company Law requires limited liability companies to provide a current address for service of process to the Department of State every two years in the calendar month in which the limited liability company was formed or authorized. Please review the address for service of process in Part 1. Update the information in the space provided, if necessary. If no changes are necessary, proceed to Part 2. A limited liability company which fails to timely file its Biennial Statement shall be shown to be past due on the Department of State's records.

**Part 1: Address for Service of Process** (Address must be within the United States)

| GAWKER ENTERTAINMENT, LLC ATTN: MR. NICHOLAS DENTON 81 SPRING STREET NEW YORK, NY 10012 | Name SAME | | |
| | Address 76 CROSBY ST | | |
| | City NEW YORK | State NY | Zip 10012 |

**Part 2: Signature of Member, Manager, Attorney-in-Fact or Authorized Person**

Signature
MANAGING MEMBER
Title of Signer (Please Print)

GABRIELLE DARBYSHIRE
Name of Signer (Please Print)

Send the completed form, together with the $9.00 filing fee made payable to the Department of State, in the self-mailer envelope, to the Department of State, Division of Corporations, 41 State Street, Albany, NY 12231-0002.

To pay with a credit card, send a Credit Card Authorization Form to the Department of State with your Biennial Statement. The Credit Card Authorization Form is available from the Department of State's website at www.dos.state.ny.us or by calling (518) 473-2492. The Biennial Statement with the Credit Card Authorization Form may be faxed to (518) 486-4680.

Call (518) 473-6385 if you have questions regarding this form.

A domestic limited liability company must file this form until it files Articles of Dissolution. A foreign limited liability company must file this form until it files a Certificate of Surrender of Authority or a Certificate of Termination of Existence.

DOS-1299 (07/06)

070419002370

NYS Department of State
Division of Corporations, Records and UCC
Albany, NY 12231-0002
www.dos.state.ny.us

# Limited Liability Company
# Biennial Statement

For Internal Use Only

## 3196528

**Business Name:**

**GAWKER ENTERTAINMENT, LLC**

3196528

GAWKER ENTERTAINMENT, LLC
76 CROSBY ST
NEW YORK, NY 10012

AR09042400

3153

Filed By: _____

Cash # (if different than film #): _____

| | |
|---|---|
| **Required Fee:** | **$9.00** |
| **Filing Period:** | **04/2009** |
| (Make checks payable to the Department of State) | |

The Limited Liability Company Law requires limited liability companies to provide a current address for service of process to the Department of State every two years in the calendar month in which the limited liability company was formed or authorized. Please review the address for service of process in Part 1. Update the information in the space provided, if necessary. If no changes are necessary, proceed to Part 2. A limited liability company which fails to timely file its Biennial Statement shall be shown to be past due on the Department of State's records.

**Part 1: Address for Service of Process** (Address must be within the United States)

GAWKER ENTERTAINMENT, LLC
76 CROSBY ST
NEW YORK, NY 10012

Name: GAWKER ENTERTAINMENT, LLC
Address: 210 ELIZABETH ST, FOURTH FLOOR
City: NEW YORK   State: NY   Zip: 10012

**Part 2: Signature of Member, Manager, Attorney-in-Fact or Authorized Person**

Signature
Title of Signer (Please Print): VICE PRESIDENT

Name of Signer (Please Print): BABY DARBYSHIRE

Send the completed form, together with the $9.00 filing fee made payable to the Department of State, in the self-mailer envelope, to the Department of State, Division of Corporations, 99 Washington Ave. Albany, NY 12231-0001.

To pay with a credit card, send a Credit Card Authorization Form to the Department of State with your Biennial Statement. The Credit Card Authorization Form is available from the Department of State's website at www.dos.state.ny.us or by calling (518) 473-2492. The Biennial Statement with the Credit Card Authorization Form may be faxed to (518) 486-4680.

Call (518) 473-6385 if you have questions regarding this form.

A domestic limited liability company must file this form until it files Articles of Dissolution. A foreign limited liability company must file this form until it files a Certificate of Surrender of Authority or a Certificate of Termination of Existence.

DOS-1299 (07/06)

NYS Department of State
Division of Corporations, Records and UCC
Albany, NY 12231-0002
www.dos.state.ny.us

# Limited Liability Company Biennial Statement

For Internal Use Only

## 3196528

**Business Name:**

**GAWKER ENTERTAINMENT, LLC**

3196528

GAWKER ENTERTAINMENT, LLC
210 ELIZABETH ST
FOURTH FLR
NEW YORK, NY 10012

11042700 2814

Filed By: _____

Cash # (if different than firm #): _____

| Required Fee: | $9.00 |
|---|---|
| Filing Period: | 04/2011 |

(Make checks payable to the Department of State)

The Limited Liability Company Law requires limited liability companies to provide a current address for service of process to the Department of State every two years in the calendar month in which the limited liability company was formed or authorized. Please review the address for service of process in Part 1. Update the information in the space provided, if necessary. If no changes are necessary, proceed to Part 2. A limited liability company which fails to timely file its Biennial Statement shall be shown to be past due on the Department of State's records.

**Part 1: Address for Service of Process** (Address must be within the United States)

| GAWKER ENTERTAINMENT, LLC 210 ELIZABETH ST FOURTH FLR NEW YORK, NY 10012 | Name |  |  |
|---|---|---|---|
|  | Address |  |  |
|  | City | State | Zip |

**Part 2: Signature of Member, Manager, Attorney-in-Fact or Authorized Person**

Jessella
Signature

Senior Legal Associate
Title of Signer (Please Print)

Jessella
Name of Signer (Please Print)

Send the completed form, together with the $9.00 filing fee made payable to the Department of State, in the self-mailer envelope, to the Department of State, Division of Corporations, 99 Washington Ave. Albany, NY 12231-0001.

To pay with a credit card, send a Credit Card Authorization Form to the Department of State with your Biennial Statement. The Credit Card Authorization Form is available from the Department of State's website at www.dos.state.ny.us or by calling (518) 473-2492. The Biennial Statement with the Credit Card Authorization Form may be faxed to (518) 486-4680.

Call (518) 473-6385 if you have questions regarding this form.

A domestic limited liability company must file this form until it files Articles of Dissolution. A foreign limited liability company must file this form until it files a Certificate of Surrender of Authority or a Certificate of Termination of Existence.

DOS-1299 (07/06)

110427002814

200801910034

| LLC-5 | File # _____ |



# State of California
## Secretary of State

## LIMITED LIABILITY COMPANY
## APPLICATION FOR REGISTRATION

A $70.00 filing fee AND a certificate of good standing from an authorized public official of the jurisdiction of formation must accompany this form.

**IMPORTANT – Read instructions before completing this form.**

**FILED**
In the office of the Secretary of State
of the State of California

JAN 1 7 2008

This Space For Filing Use Only

---

**ENTITY NAME** (End the name in Item 1 with the words "Limited Liability Company," or the abbreviations "LLC" or "L.L.C." The words "Limited" and "Company" may be abbreviated to "Ltd." and "Co.," respectively.)

1. NAME UNDER WHICH THE FOREIGN LIMITED LIABILITY COMPANY PROPOSES TO REGISTER AND TRANSACT BUSINESS IN CALIFORNIA

GAWKER TECHNOLOGY, LLC

2. NAME OF THE FOREIGN LIMITED LIABILITY COMPANY, IF DIFFERENT FROM THAT ENTERED IN ITEM 1 ABOVE

---

**DATE AND PLACE OF ORGANIZATION**

3. THIS FOREIGN LIMITED LIABILITY COMPANY WAS FORMED ON ___03___ - ___18___ - ___05___ IN ___NEW YORK___
                                                      (MONTH)   (DAY)   (YEAR)        (STATE OR COUNTRY)

AND IS AUTHORIZED TO EXERCISE ITS POWERS AND PRIVILEGES IN THAT STATE OR COUNTRY.

---

**AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and both Items 4 and 5 must be completed. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 4 must be completed (leave Item 5 blank).)

4. NAME OF AGENT FOR SERVICE OF PROCESS

Incorporating Services, Ltd.

5. IF AN INDIVIDUAL, ADDRESS OF INITIAL AGENT FOR SERVICE OF PROCESS IN CALIFORNIA | CITY | STATE CA | ZIP CODE

---

**APPOINTMENT** (The following statement is required by statute and should not be altered.)

6. IN THE EVENT THE ABOVE AGENT FOR SERVICE OF PROCESS RESIGNS AND IS NOT REPLACED, OR IF THE AGENT CANNOT BE FOUND OR SERVED WITH THE EXERCISE OF REASONABLE DILIGENCE, THE SECRETARY OF STATE OF THE STATE OF CALIFORNIA IS HEREBY APPOINTED AS THE AGENT FOR SERVICE OF PROCESS OF THIS FOREIGN LIMITED LIABILITY COMPANY.

**OFFICE ADDRESSES** (Do not abbreviate the name of the city.)

7. ADDRESS OF THE PRINCIPAL EXECUTIVE OFFICE | CITY AND STATE | ZIP CODE

76 CROSBY STREET | NEW YORK , NY | 10012

8. ADDRESS OF THE PRINCIPAL OFFICE IN CALIFORNIA, IF ANY | CITY | STATE CA | ZIP CODE

---

**EXECUTION**

9. I DECLARE I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.

JAN 16, 2008
DATE

_(signature)_
SIGNATURE OF AUTHORIZED PERSON

GABRIELLE DARBYSHIRE, MEMBER
TYPE OR PRINT NAME AND TITLE OF AUTHORIZED PERSON

---

LLC-5 (REV 04/2007) | APPROVED BY SECRETARY OF STATE

# State of New York
# Department of State    } ss:

I hereby certify, that GIZMODO, LLC a NEW YORK Limited Liability Company
filed Articles of Organization pursuant to the Limited Liability Company
Law on 03/18/2005, and that the Limited Liability Company is existing so
far as shown by the records of the Department.

A Certificate of Amendment GIZMODO, LLC, changing its name to GAWKER
TECHNOLOGY, LLC, was filed 07/11/2005.

***

*WITNESS my hand and the official seal
of the Department of State at the City of
Albany, this 14th day of January two
thousand and eight.*

*Special Deputy Secretary of State*

*200801150414  J02*

I hereby certify that the foregoing
transcript of _____ page(s)
is a full, true and correct copy of the
original record in the custody of the
California Secretary of State's office.

SEP 1 8 2012

Date:_____

DEBRA BOWEN, Secretary of State



# State of California
## Secretary of State

**STATEMENT OF INFORMATION**
(Limited Liability Company)

L

43

Filing Fee $20.00. If amendment, see instructions.

**IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

**FILED**
in the office of the Secretary of State
of the State of California

**JUL  0 8 2009**

A/8cc/ec
This Space For Filing Use Only

1.  LIMITED LIABILITY COMPANY NAME (Please do not alter if name is prepinted.)

GAWKER TECHNOLOGY, LLC
200801910034

**DUE DATE:**

**FILE NUMBER AND STATE OR PLACE OF ORGANIZATION**

| 2.  SECRETARY OF STATE FILE NUMBER | 3.  STATE OR PLACE OF ORGANIZATION |
|---|---|
| 200801910034 | NEW YORK |

**COMPLETE ADDRESSES FOR THE FOLLOWING** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| 4.  STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY AND STATE | ZIP CODE |
|---|---|---|
| 76 CROSBY STREET | NEW YORK, NY | 10012 |

| 5.  CALIFORNIA OFFICE WHERE RECORDS ARE MAINTAINED (DOMESTIC ONLY) | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | CA | |

**NAME AND COMPLETE ADDRESS OF THE CHIEF EXECUTIVE OFFICER, IF ANY**

| 6.  NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| | | | |

**NAME AND COMPLETE ADDRESS OF ANY MANAGER OR MANAGERS, OR IF NONE HAVE BEEN APPOINTED OR ELECTED, PROVIDE THE NAME AND ADDRESS OF EACH MEMBER** (Attach additional pages, if necessary.)

| 7.  NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| NICK PENTON | 76 CROSBY STREET | NEW YORK, NY | 10012 |

| 8.  NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| GAWKER MEDIA LLC | 76 CROSBY STREET | NEW YORK, NY | 10012 |

| 9.  NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| | | | |

**AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and Item 11 must be completed with a California address. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 11 must be left blank.)

| 10  NAME OF AGENT FOR SERVICE OF PROCESS |
|---|
| INCORPORATING SERVICES, LTD. (C2892002) |

| 11.  ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | CA | |

**TYPE OF BUSINESS**

| 12.  DESCRIBE THE TYPE OF BUSINESS OF THE LIMITED LIABILITY COMPANY |
|---|
| ONLINE MEDICA COMPANY |

13.  THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

| ALAN MILLER | *Alan Smith* | AGENT | 7/7/2009 |
|---|---|---|---|
| TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | SIGNATURE | TITLE | DATE |

LLC-12 (REV 03/2007)    APPROVED BY SECRETARY OF STATE



# State of California
## Secretary of State

### STATEMENT OF INFORMATION
(Limited Liability Company)

**33**

**Filing Fee $20.00.  If amendment, see Instructions.**

## IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM

1. LIMITED LIABILITY COMPANY NAME  *(Please do not alter if name is preprinted.)*

   Gawker Technology LLC

**FILED**
In the office of the Secretary of State
of the State of California

FEB 0 3 2010

This Space For Filing Use Only

**DUE DATE:**

### FILE NUMBER AND STATE OR PLACE OF ORGANIZATION

| 2. SECRETARY OF STATE FILE NUMBER | 3. STATE OR PLACE OF ORGANIZATION |
|---|---|
| 200801910034 | New York |

### NO CHANGE STATEMENT

☑ If there has been no change in any of the information contained in the last Statement of Information filed with the Secretary of State, check the box and proceed to Item 13.

If there have been any changes to the information contained in the last Statement of Information filed, or no Statement of Information has been previously filed, this form must be completed in its entirety.

### COMPLETE ADDRESSES FOR THE FOLLOWING  *(Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)*

| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY AND STATE | ZIP CODE |
|---|---|---|
| | | |

| 5. CALIFORNIA OFFICE WHERE RECORDS ARE MAINTAINED (DOMESTIC ONLY) | CITY | STATE<br>CA | ZIP CODE |
|---|---|---|---|
| | | | |

### NAME AND COMPLETE ADDRESS OF THE CHIEF EXECUTIVE OFFICER, IF ANY

| 6. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| | | | |

### NAME AND COMPLETE ADDRESS OF ANY MANAGER OR MANAGERS, OR IF NONE HAVE BEEN APPOINTED OR ELECTED, PROVIDE THE NAME AND ADDRESS OF EACH MEMBER  *(Attach additional pages, if necessary.)*

| 7. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| | | | |
| 8. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| | | | |
| 9. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| | | | |

### AGENT FOR SERVICE OF PROCESS  *(If the agent is an individual, the agent must reside in California and Item 11 must be completed with a California address.  If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 11 must be left blank.)*

| 10. NAME OF AGENT FOR SERVICE OF PROCESS |
|---|
| |

| 11. ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE<br>CA | ZIP CODE |
|---|---|---|---|
| | | | |

### TYPE OF BUSINESS

| 12. DESCRIBE THE TYPE OF BUSINESS OF THE LIMITED LIABILITY COMPANY |
|---|
| |

13. THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

| Gabrielle Darbyshire | *(signature)* | COO | 1/20/2010 |
|---|---|---|---|
| TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | SIGNATURE | TITLE | DATE |

LLC-12R (REV 03/2007)                                    APPROVED BY SECRETARY OF STATE



I hereby certify that the foregoing
transcript of _____ page(s)
is a full, true and correct copy of the
original record in the custody of the
California Secretary of State's office.

SEP 1 8 2012

Date:_____

DEBRA BOWEN, Secretary of State



# State of California
# Secretary of State

**STATEMENT OF INFORMATION**
(Limited Liability Company)

Filing Fee $20.00. If amendment, see instructions.

**IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

31

L

**FILED**
In the office of the Secretary of State
of the State of California

**JUL 17 2009**

ACC
This Space For Filing Use Only

1. LIMITED LIABILITY COMPANY NAME (Please do not alter if name is preprinted)

GAWKER ENTERTAINMENT, LLC
200802810002

**DUE DATE:**

**FILE NUMBER AND STATE OR PLACE OF ORGANIZATION**

| 2. SECRETARY OF STATE FILE NUMBER | 3. STATE OR PLACE OF ORGANIZATION |
|---|---|
| 200802810002 | NEW YORK |

**COMPLETE ADDRESSES FOR THE FOLLOWING** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY AND STATE | ZIP CODE |
|---|---|---|
| 720 14TH ST | SACRAMENTO, CA | 95814 |

| 5. CALIFORNIA OFFICE WHERE RECORDS ARE MAINTAINED (DOMESTIC ONLY) | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

**NAME AND COMPLETE ADDRESS OF THE CHIEF EXECUTIVE OFFICER, IF ANY**

| 6. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| | | | |

**NAME AND COMPLETE ADDRESS OF ANY MANAGER OR MANAGERS, OR IF NONE HAVE BEEN APPOINTED OR ELECTED, PROVIDE THE NAME AND ADDRESS OF EACH MEMBER** (Attach additional pages, if necessary.)

| 7. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| NICK PENTON | 76 CROSBY ST | NEW YORK, NY | 10012 |
| 8. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| GAWKER MEDIA LLC | 76 CROSBY ST | NEW YORK, NY | 10012 |
| 9. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| | | | |

**AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and Item 11 must be completed with a California address. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 11 must be left blank.)

10. NAME OF AGENT FOR SERVICE OF PROCESS

INCORPORATING SERVICES, LTD. (C2892002)

| 11. ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | CA | |

**TYPE OF BUSINESS**

12. DESCRIBE THE TYPE OF BUSINESS OF THE LIMITED LIABILITY COMPANY

ONLINE MEDIA COMPANY

13. THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT

| ALAN MILLER | Alan Smith | AGENT | 7/7/2009 |
|---|---|---|---|
| TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | SIGNATURE | TITLE | DATE |

LLC-12 (REV 05/2007)    APPROVED BY SECRETARY OF STATE



# State of California
## Secretary of State

**L**

*12*

### STATEMENT OF INFORMATION
(Limited Liability Company)

Filing Fee $20.00. If this is an amendment, see instructions.

**IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

**FILED**
in the office of the Secretary of State
of the State of California

**FEB 1 7 2012**

This Space For Filing Use Only

1. LIMITED LIABILITY COMPANY NAME

   Gawker Entertainment, LLC

**File Number and State or Place of Organization**

| 2. SECRETARY OF STATE FILE NUMBER | 3. STATE OR PLACE OF ORGANIZATION (If formed outside of California) |
|---|---|
| 200802810002 | New York |

**No Change Statement**

4. If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.

   [✓] If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed to Item 15.

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 5 and 7 cannot be P.O. Boxes.)

| | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 5. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | | |
| 6. MAILING ADDRESS OF LLC, IF DIFFERENT THAN ITEM 5 | CITY | STATE | ZIP CODE |
| 7. CALIFORNIA OFFICE WHERE RECORDS ARE MAINTAINED (DOMESTIC ONLY) | CITY | STATE  CA | ZIP CODE |

**Name and Complete Address of the Chief Executive Officer, If Any**

| 8. NAME | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|

**Name and Complete Address of Any Manager or Managers, or if None Have Been Appointed or Elected, Provide the Name and Address of Each Member** (Attach additional pages, if necessary.)

| 9. NAME | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 10. NAME | ADDRESS | CITY | STATE | ZIP CODE |
| 11. NAME | ADDRESS | CITY | STATE | ZIP CODE |

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 13 must be completed with a California address, a P.O. Box is not acceptable. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 13 must be left blank.

| 12. NAME OF AGENT FOR SERVICE OF PROCESS | | | | |
|---|---|---|---|---|
| 13. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE  CA | ZIP CODE | |

**Type of Business**

14. DESCRIBE THE TYPE OF BUSINESS OF THE LIMITED LIABILITY COMPANY

15. THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 1/31/2012 | Gaby Darbyshire | COO | *Gaby Darbyshire* |
|---|---|---|---|
| DATE | TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | TITLE | SIGNATURE |

| LLC-12 (REV 01/2012) | APPROVED BY SECRETARY OF STATE |
|---|---|



I hereby certify that the foregoing
transcript of_____, page(s)
is a full, true and correct copy of the
original record in the custody of the
California Secretary of State's office.

SEP 1 8 2012

Date:_____ 65

*Debra Bowen*

DEBRA BOWEN, Secretary of State

**LLC-5**  File # **2 0 0 8 0 2 8 1 0 0 0 2**

## State of California
### Secretary of State

## LIMITED LIABILITY COMPANY
## APPLICATION FOR REGISTRATION

**FILED**
In the office of the Secretary of State
of the State of California

**JAN 25 2008**

A $70.00 filing fee AND a certificate of good standing from an authorized public official of the jurisdiction of formation must accompany this form.

**IMPORTANT – Read instructions before completing this form.**

This Space For Filing Use Only

ENTITY NAME (End the name in Item 1 with the words "Limited Liability Company," or the abbreviations "LLC" or "L L C." The words "Limited" and "Company" may be abbreviated to "Ltd." and "Co.," respectively.)

1  NAME UNDER WHICH THE FOREIGN LIMITED LIABILITY COMPANY PROPOSES TO REGISTER AND TRANSACT BUSINESS IN CALIFORNIA

**GAWKER ENTERTAINMENT, LLC**

2  NAME OF THE FOREIGN LIMITED LIABILITY COMPANY IF DIFFERENT FROM THAT ENTERED IN ITEM 1 ABOVE

---

DATE AND PLACE OF ORGANIZATION

3  THIS FOREIGN LIMITED LIABILITY COMPANY WAS FORMED ON  **04** - **26** - **05**  IN  **NEW YORK**
(MONTH) (DAY) (YEAR)  (STATE OR COUNTRY)

AND IS AUTHORIZED TO EXERCISE ITS POWERS AND PRIVILEGES IN THAT STATE OR COUNTRY

---

AGENT FOR SERVICE OF PROCESS (If the agent is an individual, the agent must reside in California and both Items 4 and 5 must be completed. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 4 must be completed (leave Item 5 blank).)

4  NAME OF AGENT FOR SERVICE OF PROCESS
Incorporating Services, Ltd.

5  IF AN INDIVIDUAL, ADDRESS OF INITIAL AGENT FOR SERVICE OF PROCESS IN CALIFORNIA     CITY          STATE     ZIP CODE
                                                                                                      CA

---

APPOINTMENT (The following statement is required by statute and should not be altered.)

6  IN THE EVENT THE ABOVE AGENT FOR SERVICE OF PROCESS RESIGNS AND IS NOT REPLACED, OR IF THE AGENT CANNOT BE FOUND OR SERVED WITH THE EXERCISE OF REASONABLE DILIGENCE, THE SECRETARY OF STATE OF THE STATE OF CALIFORNIA IS HEREBY APPOINTED AS THE AGENT FOR SERVICE OF PROCESS OF THIS FOREIGN LIMITED LIABILITY COMPANY.

---

OFFICE ADDRESSES (Do not abbreviate the name of the city.)

7  ADDRESS OF THE PRINCIPAL EXECUTIVE OFFICE                          CITY AND STATE          ZIP CODE

76 CROSBY STREET                                                     NEW YORK, NY   10012

8  ADDRESS OF THE PRINCIPAL OFFICE IN CALIFORNIA, IF ANY             CITY          STATE     ZIP CODE
                                                                                   CA

---

EXECUTION

9  I DECLARE I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.

JANUARY 25, 2008                          _Gabrielle Darbyshire_ (signature)
DATE                                       SIGNATURE OF AUTHORIZED PERSON

                                          GABRIELLE DARBYSHIRE, MEMBER
                                          TYPE OR PRINT NAME AND TITLE OF AUTHORIZED PERSON

LLC-5 (REV 04/2007)                                                 APPROVED BY SECRETARY OF STATE

# State of New York
# Department of State } ss:

I hereby certify, that GAWKER ENTERTAINMENT, LLC a NEW YORK Limited
Liability Company filed Articles of Organization pursuant to the Limited
Liability Company Law on 04/26/2005, and that the Limited Liability
Company is existing so far as shown by the records of the Department.

***

*WITNESS my hand and the official seal
of the Department of State at the City of
Albany, this 14th day of January two
thousand and eight.*

*Special Deputy Secretary of State*

*200801150412  102*

**200802810002**

Case: 1:11-cv-03054 Document #: 162-5 Filed: 11/15/12 Page 12 of 12 PageID #:1855

03/17/2005 14 56 FAX  12124879777          White Fleischner Fino                    ☑ 002/004

**0503180000 286**

New York State
Department of State
Division of Corporations, State Records
and Uniform Commercial Code
Albany, NY 12231

# ARTICLES OF ORGANIZATION
## OF
## GIZMODO, LLC

Under Section 203 of the Limited Liability Company Law

**FIRST:** The name of the limited liability company is **GIZMODO, LLC.**

**SECOND:** The purpose for which the Company is organized is to transact any lawful business for which limited liability companies may be formed

**THIRD·** The county within this state in which the office of the limited liability company is to be located is: New York County

**FOURTH:** The Secretary of State is designated as agent of the limited liability company upon whom process against it may be served. The address within or without this state to which the Secretary of State shall mail a copy of any process against the limited liability company served upon it is. 81 Spring Street, New York, NY 10012 Attn: Mr Nicholas Denton

Jan Cohen, Esq
Organizer

03/17/2005 14 58 FAX 12124878777          White Fleischner Fino                    ☑003/004

F-050318000286

---

## ARTICLES OF ORGANIZATION
## OF
## GIZMODO, LLC

Under Section 203 of the Limited Liability Company Law

Filed by:

Jan Cohen, Esq.
Cohen & Czarnik LLP
140 Broadway
36th Floor
New York, NY 10005

FILED
2005 MAR 18 AM 9: 55

RECEIVED
2005 MAR 17 PM 3: 03

STATE OF NEW YORK
DEPARTMENT OF STATE

MAR 18 2005

FILED
TAX $
BY:

2

297

07/08/2005 18:46 FAX 2124879777          WHITE FLEISCHNER & FINO          ☑003

F 0507110 0 0 757

New York State
Department of State
Division of Corporations, State Records
and Uniform Commercial Code
Albany, NY 12231

## CERTIFICATE OF AMENDMENT
## OF
## ARTICLES OF ORGANIZATION
## OF

## GIZMODO, LLC

Under Section 211 of the Limited Liability Company Law

FIRST: The name of the limited liability company is **GIZMODO, LLC.**

If the name of the limited liability company has been changed, the name under which it was organized is:

SECOND: The date of the filing of the articles of organization is: <u>March 18, 2005</u>

THIRD: The amendment effected by this certificate of amendment is as follows:

Paragraph First of the Articles of Organization relating to <u>the limited liability company name</u> is hereby amended to read as follows: "<u>First: The name of the limited liability company is GAWKER TECHNOLOGY, LLC.</u>"

Nick Denton
President

07/08/2005 16:46 FAX 2124879777          WHITE FLEISCHNER & FINO                    ☒004

F 05071100 0 757

## CERTIFICATE OF AMENDMENT
## OF
## ARTICLES OF ORGANIZATION
## OF
## GIZMODO, LLC

Under Section 211 of the Limited Liability Company Law

Filed by:

Nick Denton
C/o Gawker Media
81 Spring Street
New York, NY 10012

STATE OF NEW YORK
DEPARTMENT OF STATE

FILED   JUL 1 1 2005
TAX $
BY:

2          794

NYS Department of State
Division of Corporations, Records and UCC
Albany, NY 12281-0002
www.dos.state.ny.us

## Limited Liability Company
## Biennial Statement

For Internal Use Only

**07031000**

**3178939**

**Business Name:**

**GAWKER TECHNOLOGY, LLC**

3178939

Filed By: _____

GAWKER TECHNOLOGY, LLC
ATTN: MR. NICHOLAS DENTON
81 SPRING STREET
NEW YORK, NY 10012

Cash # (if different than film #): _____

| **Required Fee:** | $9.00 |
|---|---|
| **Filing Period:** | 03/2007 |

(Make checks payable to the Department of State)

The Limited Liability Company Law requires limited liability companies to provide a current address for service of process to the Department of State every two years in the calendar month in which the limited liability company was formed or authorized. Please review the address for service of process in Part 1. Update the information in the space provided, if necessary. If no changes are necessary, proceed to Part 2. A limited liability company which fails to timely file its Biennial Statement shall be shown to be past due on the Department of State's records.

**Part 1: Address for Service of Process** (Address must be within the United States)

| GAWKER TECHNOLOGY, LLC ✓<br>ATTN: MR. NICHOLAS DENTON ✓<br>~~81 SPRING STREET~~<br>NEW YORK, NY 10012 ✓ → | Name GAWKER TECHNOLOGY LLC | | |
|---|---|---|---|
| | Address 76 CROSBY ST | | |
| | City NEW YORK . | State NY | Zip 10012 |

**Part 2: Signature of Member, Manager, Attorney-in-Fact or Authorized Person**

Signature _____
Title of Signer (Please Print) DIRECTOR, MEMBER

Name of Signer (Please Print) GABRIELLE DARBYSHIRE

Send the completed form, together with the $9.00 filing fee made payable to the Department of State, in the self-mailer envelope, to the Department of State, Division of Corporations, 41 State Street, Albany, NY 12231-0002.

To pay with a credit card, send a Credit Card Authorization Form to the Department of State with your Biennial Statement. The Credit Card Authorization Form is available from the Department of State's website at www.dos.state.ny.us or by calling (518) 473-2492. The Biennial Statement with the Credit Card Authorization Form may be faxed to (518) 486-4680.

Call (518) 473-6385 if you have questions regarding this form.

A domestic limited liability company must file this form until it files Articles of Dissolution. A foreign limited liability company must file this form until it files a Certificate of Surrender of Authority or a Certificate of Termination of Existence.

DOS-1299 (07/06)

NYS Department of State
Division of Corporations, Records and UCC
Albany, NY 12231-0002
www.dos.state.ny.us

# Limited Liability Company
# Biennial Statement

For Internal Use Only

## 3178939

AR09842800

2005

**Business Name:**

**GAWKER TECHNOLOGY, LLC**

3178939

Filed By: _____ KH

GAWKER TECHNOLOGY, LLC
ATTN: MR. NICHOLAS DENTON
76 CROSBY ST
NEW YORK, NY 10012

Cash # (if different than film #): _____

| Required Fee: | $9.00 |
| Filing Period: | 03/2009 |
| (Make checks payable to the Department of State) | |

The Limited Liability Company Law requires limited liability companies to provide a current address for service of process to the Department of State every two years in the calendar month in which the limited liability company was formed or authorized. Please review the address for service of process in Part 1. Update the information in the space provided, if necessary. If no changes are necessary, proceed to Part 2. A limited liability company which fails to timely file its Biennial Statement shall be shown to be past due on the Department of State's records.

**Part 1: Address for Service of Process** (Address must be within the United States)

GAWKER TECHNOLOGY, LLC
ATTN: MR. NICHOLAS DENTON
76 CROSBY ST
NEW YORK, NY 10012

Name: GAWKER TECHNOLOGY LLE
Address: 10 ELIZABETH ST, FOURTH FLOOR
City: NEW YORK   State: NY   Zip: 10012

**Part 2: Signature of Member, Manager, Attorney-in-Fact or Authorized Person**

Signature
Title of Signer (Please Print): VICE PRESIDENT

Name of Signer (Please Print): GABY DARBYSHIRE

Send the completed form, together with the $9.00 filing fee made payable to the Department of State, in the self-mailer envelope, to the Department of State, Division of Corporations, 99 Washington Ave. Albany, NY 12231-0001.

To pay with a credit card, send a Credit Card Authorization Form to the Department of State with your Biennial Statement. The Credit Card Authorization Form is available from the Department of State's website at www.dos.state.ny.us or by calling (518) 473-2492. The Biennial Statement with the Credit Card Authorization Form may be faxed to (518) 486-4680.

Call (518) 473-6385 if you have questions regarding this form.

A domestic limited liability company must file this form until it files Articles of Dissolution. A foreign limited liability company must file this form until it files a Certificate of Surrender of Authority or a Certificate of Termination of Existence.

DOS-1299 (07/06)

090423002005

NYS Department of State
Division of Corporations, Records and UCC
Albany, NY 12231-0002
www.dos.state.ny.us

## Limited Liability Company
## Biennial Statement

For Internal Use Only

## 3178939

**Business Name:**

**GAWKER TECHNOLOGY, LLC**

3178939

GAWKER TECHNOLOGY, LLC
210 ELIZABETH ST
FOURTH FLOOR
NEW YORK, NY 10012

**11032100**

2827

Filed By: _____

Cash # (if different than firm #): _____

| **Required Fee:** | **$9.00** |
| **Filing Period:** | **03/2011** |
| (Make checks payable to the Department of State) | |

The Limited Liability Company Law requires limited liability companies to provide a current address for service of process to the Department of State every two years in the calendar month in which the limited liability company was formed or authorized. Please review the address for service of process in Part 1. Update the information in the space provided, if necessary. If no changes are necessary, proceed to Part 2. A limited liability company which fails to timely file its Biennial Statement shall be shown to be past due on the Department of State's records.

**Part 1: Address for Service of Process** (Address must be within the United States)

| GAWKER TECHNOLOGY, LLC 210 ELIZABETH ST FOURTH FLOOR NEW YORK, NY 10012 | Name | | |
|---|---|---|---|
| | Address | | |
| | City | State | Zip |

**Part 2: Signature of Member, Manager, Attorney-in-Fact or Authorized Person**

Signature: _perseh._
Title of Signer (Please Print): Sr. Legal Associate

Name of Signer (Please Print): JESSEHa

Send the completed form, together with the $9.00 filing fee made payable to the Department of State, in the self-mailer envelope, to the Department of State, Division of Corporations, 99 Washington Ave. Albany, NY 12231-0001.

To pay with a credit card, send a Credit Card Authorization Form to the Department of State with your Biennial Statement. The Credit Card Authorization Form is available from the Department of State's website at www.dos.state.ny.us or by calling (518) 473-2492. The Biennial Statement with the Credit Card Authorization Form may be faxed to (518) 486-4680.

Call (518) 473-6385 if you have questions regarding this form.

A domestic limited liability company must file this form until it files Articles of Dissolution. A foreign limited liability company must file this form until it files a Certificate of Surrender of Authority or a Certificate of Termination of Existence.

DOS-1299 (07/06)

080109000828

# Articles of Organization
## of

## GAWKER SALES, LLC

*Under Section 203 of the Limited Liability Company Law*

FIRST:  The name of the limited liability company is:

## GAWKER SALES, LLC

SECOND:  The county within this state in which the office of the limited liability company is to be located is:

**New York**

THIRD:  (Optional) The latest date on which the limited liability company is to dissolve is:

FOURTH:  The Secretary of State is designated as agent of the limited liability company upon whom process against it may be served. The post office address within or without this state to which the Secretary of State shall mail a copy of any process against the limited liability company served upon him or her is:

## GAWKER SALES, LLC

**76 Crosby Street**
**New York, NY 10012**

FIFTH:  (Optional) The name and street address within this state of the registered agent of the limited liability company upon whom and at which process against the limited liability company can be served is:

SIXTH:  The effective date of the Articles of Organization is upon filing.

SEVENTH:  The limited liability company is to be managed by (check appropriate box):
- ☑ One or more members
- ☐ A class or classes of members
- ☐ One or more managers
- ☐ A class or classes of managers

IN WITNESS WHEREOF, this certificate has been subscribed on **January 8th, 2008** by the undersigned who affirms that the statements made herein are true under the penalties of perjury.

/S/ Gabrielle S. Darbyshire

Gabrielle S. Darbyshire - Organizer

080109000828

# Articles of Organization

of

## GAWKER SALES, LLC

(Under Section 203 of the Limited Liability Company Law)

HUBCO #29
DRAWDOWN

FILED

2008 JAN -9 PM 2:41

**Filer:**
Richard J. Girasole CPA PC
7522 13th Ave
Brooklyn, NY 11228

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED JAN 0 9 2008
TAX $_____ Ø
BY: _____ ISW

2008 JAN -9 PM 12:02
RECEIVED

ISW-Ø

918

NYS Department of State
Division of Corporations, Records and UCC
Albany, NY 12231-0002
www.dos.state.ny.us

## Limited Liability Company
## Biennial Statement

For Internal Use Only

**3615290**

**Business Name:**

**GAWKER SALES, LLC**

GAWKER SALES, LLC
76 CROSBY STREET
NEW YORK, NY 10012

3615290

2603

TO^21700

Filed By: _____ KH

Cash # (if different than film #): _____

| Required Fee: | $9.00 |
| Filing Period: | 01/2010 |

(Make checks payable to the Department of State)

The Limited Liability Company Law requires limited liability companies to provide a current address for service of process to the Department of State every two years in the calendar month in which the limited liability company was formed or authorized. Please review the address for service of process in Part 1. Update the information in the space provided, if necessary. If no changes are necessary, proceed to Part 2. A limited liability company which fails to timely file its Biennial Statement shall be shown to be past due on the Department of State's records.

**Part 1: Address for Service of Process** (Address must be within the United States)

| GAWKER SALES, LLC 76 CROSBY STREET NEW YORK, NY 10012 | Name Gawker Sales, LLC | | |
| | Address 210 Elizabeth, 4th Floor | | |
| | City New York | State NY | Zip 10012 |

**Part 2: Signature of Member, Manager, Attorney-in-Fact or Authorized Person**

Signature

PRESIDENT
Title of Signer (Please Print)

NICHOLAS DENTON
Name of Signer (Please Print)

Send the completed form, together with the $9.00 filing fee made payable to the Department of State, in the self-mailer envelope, to the Department of State, Division of Corporations, 99 Washington Ave. Albany, NY 12231-0001.

To pay with a credit card, send a Credit Card Authorization Form to the Department of State with your Biennial Statement. The Credit Card Authorization Form is available from the Department of State's website at www.dos.state.ny.us or by calling (518) 473-2492. The Biennial Statement with the Credit Card Authorization Form may be faxed to (518) 486-4680.

Call (518) 473-6385 if you have questions regarding this form.

A domestic limited liability company must file this form until it files Articles of Dissolution. A foreign limited liability company must file this form until it files a Certificate of Surrender of Authority or a Certificate of Termination of Existence.

DOS-1299 (07/06)

100217002603

NYS Department of State
Division of Corporations, Records and UCC
Albany, NY 12231-0002
www.dos.state.ny.us

## Limited Liability Company
## Biennial Statement

For Internal Use Only



**12012500**

2673

**3615290**

Business Name:

**GAWKER SALES, LLC**

3615290

GAWKER SALES, LLC
210 ELIZABETH
4TH FLOOR
NEW YORK, NY 10012

Filed By:

Cash # (if different than firm #): _____

| Required Fee: | $9.00 |
| Filing Period: | 01/2012 |

(Make checks payable to the Department of State)

The Limited Liability Company Law requires limited liability companies to provide a current address for service of process to the Department of State every two years in the calendar month in which the limited liability company was formed or authorized. Please review the address for service of process in Part 1. Update the information in the space provided, if necessary. If no changes are necessary, proceed to Part 2. A limited liability company which fails to timely file its Biennial Statement shall be shown to be past due on the Department of State's records.

**Part 1: Address for Service of Process** (Address must be within the United States)

| GAWKER SALES, LLC 210 ELIZABETH 4TH FLOOR NEW YORK, NY 10012 | Name | | |
|---|---|---|---|
| | Address | | |
| | City | State | Zip |

**Part 2: Signature of Member, Manager, Attorney-in-Fact or Authorized Person**

Signature

Title of Signer (Please Print)

GABY DARBYSHIRE
Name of Signer (Please Print)

Send the completed form, together with the $9.00 filing fee made payable to the Department of State, in the self-mailer envelope, to the Department of State, Division of Corporations, 99 Washington Ave. Albany, NY 12231-0001.

To pay with a credit card, send a Credit Card Authorization Form to the Department of State with your Biennial Statement. The Credit Card Authorization Form is available from the Department of State's website at www.dos.state.ny.us or by calling (518) 473-2492. The Biennial Statement with the Credit Card Authorization Form may be faxed to (518) 486-4680.

Call (518) 473-6385 if you have questions regarding this form.

A domestic limited liability company must file this form until it files Articles of Dissolution. A foreign limited liability company must file this form until it files a Certificate of Surrender of Authority or a Certificate of Termination of Existence.

DOS-1298 (07/08)

120125002673

# Rape Potpourri

By ELIE MYSTAL

We've got a couple of rape stories, but I don't have enough rape humor to fill out two posts. So we'll tackle them together.

Yes, I said "tackle," because the first rape allegation is being hurled at my childhood hero, former New York Giants linebacker Lawrence Taylor. The New York Times reports:




0
Tweet

Submit
in
Share

> The former New York Giants linebacker Lawrence Taylor was arrested early Thursday morning and will be charged with third-degree rape involving a 15-year-old girl at a hotel in Montebello, N.Y., according to police.
>
> The Journal News reported that the victim was a runaway from the Bronx who was taken to the Holiday Inn in Montebello by a pimp, according to Ramapo supervisor Christopher St. Lawrence. She was treated at a hospital.

I think Breaking Media executive editor Matt Creamer said it best: "Somewhere, Joe Theismann is smiling."

The little boy inside of me (I'm referring to my inner child, not my lunch) can't believe that the man who revolutionized the linebacker position could rape a little girl. I'm locked into my childhood memories right now, because the part of me that is a rational adult is currently puking his guts out in the bathroom. A 15-year-old girl? If the allegations are true, one can only hope that LT experiences the business end of a true giant in the penitentiary.

Here at ATL, we're your one-stop shop for breaking rape coverage. We cover the rape allegations of the rich and famous, as well as any alleged attorney rapists near you…

Our next story from the files of the wanton and depraved is a little more in our wheelhouse. A St. Louis-area lawyer came up with an excellent little game to meet women. Meanith Huon allegedly listed Craigslist ads where he claimed to be a talent scout for models.

So far, so good. I once pretended to be an Ostrich rancher from sub-Saharan Africa because I was trying to impress bubble gum princesses at a BU party. But Huon's potentially harmless lies allegedly turned dastardly, pretty quickly:

> The victim said she responded to a Craigslist ad posted by Huon in late June, seeking promotional models, sending her resume, her phone number and two pictures of herself...
>
> The two agreed to meet at the downtown St. Louis bar Paddy O's, the victim testified.
>
> But the next day, the victim was running late and called Huon. He told her to meet him at another bar, but when she got there, he told her the other promotional models left, and so he was going to interview her, the victim said.

And this, people, is why God invented Google. Had the victim Googled Huon, she would have found

> A Chicago attorney who was posing as a supervisor for a company that
> sets up promotions for alcohol sales at area bars was charged in Madison
> County July 2, with two counts of criminal sexual assault, two counts of
> criminal sexual abuse and one count of unlawful restraint.
>
> Meanith Huon, 38, of 3038 S Canal St. in Chicago, was arrested by the
> Chicago Police Department on July 1, and was transferred to Madison
> County the next day.

Or she might have come across this link, at Lawyer Gossip:

> Lawyer, Meanith Huon, 39, who was originally charged with criminal
> sexual assault, sexual abuse and unlawful restraint is now facing charges
> of harassment and cyber stalking!

Of course, women shouldn't have to assume that every guy they meet is a potential rapist. But
apparently there are a lot of depraved dudes walking around out there that are potential rapists.

In any event:

> Huon and the woman went to a couple of bars near Busch Stadium, then
> to a Laclede's Landing bar before Huon asked the victim if she wanted to
> go to Pop's in Sauget to meet the other models.
>
> The woman agreed, but told Huon she didn't have enough gas in her car,
> so she went with him, she said.

This is gonna end badly:

> As Huon's Honda Civic crossed the Poplar Street Bridge, the victim said
> Huon drove past the Sauget exit and continued north on Interstate 55. As
> the car was moving, Huon fondled the woman, then forced her to perform
> oral sex on him, the victim said.

Oh come on. If somebody was driving and tried to "force" me to perform oral sex on them, I'd just get
out of the stupid car. Which is to say, I'd do *exactly* what the victim did in this case:

> Huon exited Interstate 55 near New Douglas, looking, the victim said, for a
> secluded place to make out with her. The victim leaped from the moving
> car, she said, to escape Huon, leaving her cell phone, purse, shoes and
> identification in his car.
>
> "If he wasn't going to take me back to the freeway, I had made a decision
> to do anything I could to get out of that car," the victim testified.
>
> Assistant State's Attorney Chris Hoell showed pictures to the jury of the
> woman's bruised knees, skinned feet and cut toes.

Damn. If you can't get a woman to consensually stay in a moving vehicle, can you really get her to
consensually agree to sex (insofar as lying to her about your job and your intentions to get her into
the car counts as consensual in the first place)?

Obviously, Huon sees things differently:

> Mike Mettes, Huon's defense lawyer, said during his opening statement

> that Huon and the victim met at a networking event in the Chicago area. They hit it off
> socially and the two of them had consensual sex, but afterward the victim asked for
> $500 and threatened if Huon didn't pay her, she would "cry rape," the
> attorney argued.

So we're not denying that she hurled herself out of a moving vehicle, we're contending that she jumped out of the car to make it look like she was raped? Right, sure. That sounds like the definition of incredible.

It seems to me that there is entirely too much (alleged) raping going on in this country. If this keeps up, men and women are going to have to start carrying around sexual consent forms on their persons.

> I, the undersigned, being of sound mind and hot body, do hereby consent
> to affixing my _____ to the other party's _____. Such amorous undulations
> include, but are not limited to, _____, _____, and _____, and all proposals
> will be considered so long as no animals (barnyard or otherwise) are
> involved.
>
> I claim no rights to future _____, _____, or _____, in exchange for this
> brief interruption in my chronic loneliness.
>
> **UPDATE**: Meanith Huon was acquitted of these charges. Please check
> here for our continuing coverage.
>
> While I may be quite intoxicated right now, I know damn well what I'm
> doing.

Lawrence Taylor Arrested After Rape Allegation [New York Times]
Testimony: Woman says she was raped by attorney posing as scout for models [Belleville News Democrat]

**Earlier**: Did You Know That the Real World Has an STD Waiver?

💬 (107) Comments

Tags: Football, Rape, Sadness, Sex, Sports

A Legal Tabloid - News, Gossip, and Colorful Commentary on Law Firms and the Le - Windows Internet Explorer

http://abovethelaw.com/cgi-bin/mt/mt-search.cgi?IncludeBlogs=12&search=meanith+huon          ▼  ✦  ✕    Yahoo! Search

▼                    🔍 ▼ Web Search   📑 Bookmarks ▼  ☐ Settings ▼  ✉ Mail  ▼ 🔴 My Yahoo! ▼  🔲 Answers ▼  🎮 Games ▼

bove the Law - A Legal Tabloid - News, Gossip, ...                                      🏠 ▼ 🔝 ▼ 🖶 ▼ 📄 Page ▼

# ABOVE THE LAW
A Legal Tabloid

Keyword Search        Search

HOME    HOT TOPICS
        Big Law, Asia Chronicles, Bonuses, Bad Ideas, Law Schools, Roundtable, More       ARCHIVES    COMMUNITY    SUBSCRIBE    SEND TIPS

## Search Results

SUBSCRIBE
Enter your email address and start enjoying
Above The Law today!

Email:

Submit

## Non-Sequiturs: 07.03.08

*Thursday, July 3, 2008 3:40 PM - By David Lat*

* The Top 100 Law and Lawyer Blogs (with pride of place going to ATL). [Criminal Justice Degrees Guide]

* Skadden: this home to the hotties also has a strong track record on diversity. [Conglomerate]

* Bruce Springsteen fans will appreciate Katrina Kuh's case for more judicial citation to the Boss. [PrawfsBlawg]

* Convicted tax fraudster Wesley Snipes: has movie, will travel. [TaxProf Blog]

* Are we sure that Loyola 2L was a guy? [YouTube]

* Lawsuit of the Day: former Broward County Judge Jay Spechler sues Chief Judge Victor Tobin. [JAABlog]

* Lawyer of the Day: Meanith Huon. [Madison County Record]

⚖️
ABOVE THE LAW

DOWNLOAD THE PDF AND GET VALUABLE
INSIGHT SUCH AS:

• How to enable legal, compliance, information
  security, forensics and IT

• Managing your eDiscovery & FRCP Regulations

• Information Governance: Managing Discovery

📑 Recommend This!   ✉ Email   🔗 Link To                          💬 (20) Comments

🔵 Internet | Protected Mode: On

🌐  | Lycos Mail - Windo... | Above the Law - A L... | riverbender - Paint |    hp   Yahoo! Search  🔍  ▢📧📷🎮📶📁



Case: 1:11-cv-03054 Document #: 162-10 Filed: 11/15/12 Page 2 of 7 PageID #:1872

# Terms of Use
## www.abovethelaw.com

Last Modified: January 17, 2011

### Acceptance of the Terms of Use

Welcome to the website of Breaking Media, LLC ("Company", "we" or "us"). The following terms and conditions (together with any documents referred to in them) ("Terms of Use") apply to your use of www.abovethelaw.com], including any content, functionality and services offered on or through www.abovethelaw.com (the "Website"), whether as a guest or a registered user.

Please read the Terms of Use carefully before you start to use the site. By using the Website or by clicking to accept or agree to the Terms of Use when this option is made available to you], you accept and agree to abide by these Terms of Use and our Privacy Policy, found at www.abovethelaw.com/privacy-policy/ incorporated here by reference. If you do not want to agree to these Terms of Use or the Privacy Policy, you must exit the Website.

### Changes to the Terms of Use

We may revise and update these Terms of Use from time to time in our sole discretion. You are expected to check this page from time to time to take notice of any changes we made, as they are binding on you. All material changes will apply prospectively only. Your continued use of the Website following the posting of revised Terms of Use means that you accept and agree to the changes.

### Accessing the Website and Account Security

To use this Website, you represent and warrant that you are of legal age to form a binding contract with the



To use Facebook's social plugins, you must

Facebook social plugin

Follow @atiblog   34K followers

More subscription options ....

AWARD-WINNING iPad APP

WestlawNext

Access your research anytime, anywhere – even offline – with our mobile apps.

KNOW THE DIFFERENCE »

Why switch to a Concordance® solution?

## Prohibited Uses

You may use the Website only for lawful purposes and in accordance with these Terms of Use. You agree not to use the Website:

- In any way that violates any applicable federal, state, local and international law or regulation (including, without limitation, any laws regarding the export of data or software to and from the US or other countries).

- For the purpose of exploiting, harming or attempting to exploit or harm minors in any way by exposing them to inappropriate content, asking for personally identifiable information or otherwise.

- To transmit, or procure the sending of, any advertising or promotional material without our prior written consent, including any "junk mail", "chain letter" or "spam" or any other similar solicitation.

- To impersonate or attempt to impersonate the Company or a Company employee, another user, or person or entity (including, without limitation, the use of e-mail addresses associated with any of the foregoing).

- To engage in any other conduct that restricts or inhibits anyone's use or enjoyment of the Website, or which, as determined by us, may harm the Company or users of the Website or expose them to liability.

Additionally, you agree not to:

- Use the Website in any manner that could disable, overburden, damage, or impair the site or interfere with any other party's use of the Website, including their ability to engage in real time activities through the Website.

- Use any robot, spider or other automatic device, process or means to access the Website.

- Use any manual process to monitor or copy any of the material on the Website or for any other unauthorized purpose without our prior written consent.

biglaw markets for US associates based in the US who are considering or seeking a lateral move or transfer to Asia.

The CBLA is having a seminar on Wednesday November 14 that deals with U.S. publicly traded Chinese companies going private. This is a very relevant topic in today's market, as there is currently a large pipeline of such public to private deals at Private Equity downstream practices of U.S. firms in Hong Kong / China. While the deal flow in the HK / China markets at U.S. firms has been significantly down over the past 15 months, Private Equity practices have been relatively busy, with M&A deals as usual, but also recently very busy with public to private deals. In fact, some of our firm clients in Hong Kong are currently seeking US associate lateral hires with such experience.

During Evan Jowers and Robert Kinney's most recent visit to Hong Kong, for a few weeks in September, they met with a number of US senior partners of top PE transactional practices and in each case the discussion included the significant pipeline of public to private deals (thought to be a two year pipeline). Part of these

with real case experience will discuss the topic with the audience. Please see the details below and register by November 9, 2012 If you would like to attend.

Wednesday, November 14

4:00 p.m. – 4:30 p.m. | Registration and Refreshments

4:30 p.m. – 6:15 p.m. | Panel Discussion

6:15 p.m. – 7:00 p.m. | Reception

**Panelists**

• Ted Farris, Partner – Dorsey & Whitney LLP

• Catherine X. Pan-Giordano, Partner – Dorsey & Whitney LLP

• Christy Shue, former Executive Vice President & Corporate Secretary, Harbin Electric, Inc.

• Dennis Galgano, Vice Chairman, Head of International Investment Banking – Morgan Joseph TriArtisan LLC

• Helen Cheng, Director – Houlihan Lokey

• Anthony Tomaro, CPA, Managing Director, UHY Advisors NY, Inc.

**Moderator**

• Geoffrey Sant, Special Counsel – Dorsey & Whitney LLP

---

**Monitoring and Enforcement; Termination**

We have the right to:

- Remove or refuse to post any User Contributions for any reason in our sole discretion.

- Take any action with respect to any User Contribution that we deem necessary or appropriate in our sole discretion if we believe that such User Contribution violates the Terms of Use, including the Content Standards, infringes any intellectual property right, threatens the personal safety of users of the Website and the public or could create liability for the Company.

- Disclose your identity to any third party who claims that material posted by you violates their rights, including their intellectual property rights or their right to privacy.

- Take appropriate legal action, including without limitation, referral to law enforcement, for any illegal or unauthorized use of the Website.

- Terminate your access to all or part of the Website for any or no reason, including without limitation, any violation of these Terms of Use.

Without limiting the foregoing, we have the right to fully cooperate with any law enforcement authorities or court order requesting or directing us to disclose the identity of anyone posting any materials on or through the Website. YOU WAIVE AND HOLD HARMLESS THE COMPANY FROM ANY CLAIMS RESULTING FROM ANY ACTION TAKEN BY THE COMPANY DURING OR AS A RESULT OF ITS INVESTIGATIONS AND FROM ANY ACTIONS TAKEN AS A CONSEQUENCE OF INVESTIGATIONS BY EITHER THE COMPANY OR LAW ENFORCEMENT AUTHORITIES.

However, we can neither review all material before it is posted on the Website nor ensure prompt removal of objectionable material after it has been posted. Accordingly, we assume no liability for any action or inaction regarding transmissions, communications or content provided by any user or third parties. We have no liability or

Without limiting the foregoing, we have the right to fully cooperate with any law enforcement authorities or court order requesting or directing us to disclose the identity of anyone posting any materials on or through the Website. YOU WAIVE AND HOLD HARMLESS THE COMPANY FROM ANY CLAIMS RESULTING FROM ANY ACTION TAKEN BY THE COMPANY DURING OR AS A RESULT OF ITS INVESTIGATIONS AND FROM ANY ACTIONS TAKEN AS A CONSEQUENCE OF INVESTIGATIONS BY EITHER THE COMPANY OR LAW ENFORCEMENT AUTHORITIES.

However, we can neither review all material before it is posted on the Website nor ensure prompt removal of objectionable material after it has been posted. Accordingly, we assume no liability for any action or inaction regarding transmissions, communications or content provided by any user or third parties. We have no liability or responsibility to anyone for performance or nonperformance of the activities described in this paragraph.

**Content Standards**

These content standards apply to any and all User Contributions and Interactive Services. User Contributions must in their entirety comply with all applicable federal, state, local and international laws and regulations. Without limiting the foregoing, User Contributions must not:

- Contain any material which is defamatory, obscene, indecent, abusive, offensive, harassing, violent, hateful, inflammatory or otherwise objectionable.
- Promote sexually explicit or pornographic material, violence, or discrimination based on race, sex, religion, nationality, disability, sexual orientation or age.
- Infringe any patent, trademark, trade secret, copyright or other intellectual property rights of any other person.
- Violate the legal rights (including the rights of publicity and privacy) of others or contain any material

Corporate Secretary, Harbin Electric, Inc.

- Dennis Galgano, Vice Chairman, Head of International Investment Banking – Morgan Joseph TriArtisan LLC
- Helen Cheng, Director – Houlihan Lokey
- Anthony Tomaro, CPA, Managing Director, UHY Advisors NY, Inc.

**Moderator**

- Geoffrey Sant, Special Counsel – Dorsey & Whitney LLP

**Location**

New York University School of Law
Vanderbilt Hall, Classroom 220
40 Washington Square South
New York, NY 10012


Find out now.
It's simple,
it's free

responsibility to anyone for performance or nonperformance of the activities described in this paragraph.

## Content Standards

These content standards apply to any and all User Contributions and Interactive Services. User Contributions must in their entirety comply with all applicable federal, state, local and international laws and regulations. Without limiting the foregoing, User Contributions must not:

- Contain any material which is defamatory, obscene, indecent, abusive, offensive, harassing, violent, hateful, inflammatory or otherwise objectionable.

- Promote sexually explicit or pornographic material, violence, or discrimination based on race, sex, religion, nationality, disability, sexual orientation or age.

- Infringe any patent, trademark, trade secret, copyright or other intellectual property rights of any other person.

- Violate the legal rights (including the rights of publicity and privacy) of others or contain any material that could give rise to any civil or criminal liability under applicable laws or regulations or that otherwise may be in conflict with these Terms of Use and our Privacy Policy www.abovethelaw.com/privacy-policy/

- Be likely to deceive any person.

- Promote any illegal activity, or advocate, promote or assist any unlawful act.

- Cause annoyance, inconvenience or needless anxiety or be likely to upset, embarrass, alarm or annoy any other person.

- Be used to impersonate any person, or to misrepresent your identity or affiliation with any person or organization.

- Involve commercial activities and/or sales without our prior written consent, such as contests, sweepstakes and other sales promotions, barter, advertising or pyramid schemes.



New York University School of Law
Vanderbilt Hall, Classroom 220
40 Washington Square South
New York, NY 10012

**Find out now.**

It's simple,
it's free

Know the business profile
behind every click.

Learn More

bizo

Popular Posts

1.  Departure Memo of the Day:
    Parenting Gets The Best Of
    One Biglaw Associate

Case: 1:11-cv-03054 Document #:162-10 Filed: 11/15/12 Page 7 of 7 PageID #:1877

provided by you is accurate.

**Linking to the Website**

You may link to our homepage, provided you do so in a way that is fair and legal and does not damage our reputation or take advantage of it, but you must not establish a link in such a way as to suggest any form of association, approval or endorsement on our part where none exists.

You must not establish a link from any website that is not owned by you.

The Website must not be framed on any other site, nor may you create a link to any part of the Website other than the homepage.

The website from which you are linking must comply in all respects with the Content Standards set out in these Terms of Use.

You agree to cooperate with us in causing any unauthorized framing or linking immediately to cease. We reserve the right to withdraw linking permission without notice.

**Links from the Website**

If the Website contains links to other sites and resources provided by third parties, these links are provided for your convenience only. This includes links from advertisers, including banner advertisements. We have no control over the contents of those sites or resources, and accept no responsibility for them or for any loss or damage that may arise from your use of them. If you decide to access any of the third party websites linked to this Website, you do so entirely at your own risk and subject to the terms and conditions of use for such websites.

**Editorial Staff**

Managing Editor
David Lat

Editor
Elie Mystal

Assistant Editor
Staci Zaretsky

**How Can We Help You?**

Send tips to:
tips@abovethelaw.com

For tech issues email:
web@breakingmedia.com

For advertising or events email:
advertising@breakingmedia.com

For research or custom solutions email:
services@breakingmedia.com

Above the Law is published by Breaking Media.
For a full list of our sites, services and staff visit breakingmedia.com

TIME WELL





Case: 1:11-cv-03054 Document #: 162-12 Filed: 11/15/12 Page 1 of 1 PageID #:1879

Acquitted Rapist Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

File   Edit   View   Favorites   Tools   Help

http://jezebel.com 5890878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

meanith huon

Acquitted Rapist Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

File   Edit   View   Favorites   Tools   Help

http://jezebel.com 5890878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

meanith huon

Favorites

Acquitted Rapist Sues Blog For Calling Him Serial...

# JEZEBEL

LAWSUITS

## Acquitted Rapist Sues Blog For Calling Him Serial Rapist

4,374 views, May 11, 2011 6:45 PM          Like   3

**Irin Carmon** —A Chicago man who was acquitted on a sexual assault charge is suing the legal blog Above The Law for implying that he's a serial rapist. If Meanith Huon gets his way, blogger sloppiness may cost ATL $50 million.

Huon, a lawyer, was initially charged with two counts of sexual assault, two counts of sexual abuse, and one count of unlawful restraint. A woman had jumped out of his car, ran through a cornfield barefoot, and knocked on a random person's door saying he had forced her into sexual activity. She later said she believed she was spending time with him for a job opportunity related to alcohol promotions, until he allegedly yelled at her to perform oral sex. Huon's version was that it was a consensual encounter, and

MEANITH HUON

LATEST

Jezebel on Facebook
Like

59,922 people like Jezebel.

NEWER STORIES

LAWSUITS   Acquitted Rapist Sues Blog For
Calling Him Serial Rapist

EXHIBIT D



Case: 1:11-cv-03054 Document #: 162-13 Filed: 11/15/12 Page 1 of 1 PageID #:1880

Contact Irin Carmon:

DISCUSSIONS                                              FEATURED    ALL                    💬 COMMENT

                    💬 Discussion now closed.

SubvertAParadigm                                                          11 May 2011 7:39 PM

"Acquitted Rapist Sues Blog For Calling Him Serial Rapist"

WTF? Last time I checked, when a person is acquitted, he is legally not guilty. It doesn't matter if
you like it or not - he went through the same processes that we're all subject to.

                                                  Edited by SubvertAParadigm at 05/11/11 7:39 PM

Queenjulie  @SubvertAParadigm

If I were writing a blog post about a blog getting sued for multiple millions of dollars over
incorrectly labeling a person a rapist, I would be pretty damn careful not to incorrectly label him
a rapist myself. Apparently Jezebel feels differently.

ifes  @SubvertAParadigm  Agreed.

---

Carey Smears La Mer Moisturizer
on the Asses of Her Twins                                      13,452

**DIRT BAG**
Keira Knightley's Breasts Discuss
Anorexia, Feminism in *Allure*                                 441

**DUDE-BROS**
The Dude-Bro Spectrum

**TEXAS**                                                      7,685
Texas Trying to Secede from Union,
Austin Trying to Secede from Texas

**SQUEE**                                                      238
Adorable Puppy Doesn't Want a
Walk, Would Rather Stay In and
Catch Some Zs

**2012 ELECTION**                                              355
There Are Too Many Lady Senators
to Fit in the Bathroom at One Time

**FASHION NAZIS**                                              372
Coco Chanel Posed Naked for an

REUTERS EDITION: U.S.

Register Sign In

Search News & Quotes

Home | Business ▾ | Markets ▾ | World ▾ | Politics ▾ | Tech ▾ | Opinion ▾ | Breakingviews ▾ | Money ▾ | Life ▾ | Pictures ▾ | Video ▾

Investments | Insurance | Retirement

Learn more ▸

Allianz (Ⓘ)

© Allianz SE 2012. Advisory services provided by investment advisors of Allianz Asset Management. Property & casualty insurance offered through Fireman's Fund Insurance Company. Life insurance and annuities issued by Allianz Life Insurance Company of North America, which is not licensed in New York State and does not solicit business there. In New York, annuities and life insurance issued by Allianz Life Insurance Company of New York, New York City. All are part of Allianz SE. Guarantees based on the financial strength and claim-paying ability of the issuing company.

Opinion

» Analysis & Opinion Home

**Felix Salmon**

Follow Felix Salmon

Follow  🔊 RSS  ✉ Email  f Like  1.1k

# How Gawker wants to monetize comments

By Felix Salmon | MAY 22, 2012

✉ Email  🖨 Print  in Share  ✗ +1  🐦 Tweet  f Like  107

MEDIA

*Felix Salmon is the finance blogger at Reuters.*

ANY OPINIONS EXPRESSED HERE ARE THE AUTHOR'S OWN.

Case: 1:11-cv-03054 Document #: 162-14 Filed: 11/15/12 Page 2 of 4 PageID #:1882

# How Gawker wants to monetize comments

By Felix Salmon | MAY 22, 2012

✉ Email    🖨 Print    in Share    +1    Tweet    Like   107

**MEDIA**

Back in November, I grappled with the fact that online display ads in general, and banner ads in particular, are clearly not working very well; my suggested alternative was for brand advertisers to embrace the power of the external link. That was one suggestion; there are many, many more. But what they all have in common is that they're attempts to go beyond the ad, and to leverage the interactive power of the internet.

Over at Tumblr, David Karp is being characteristically vague about what he's offering to potential advertisers: all we know for the time being is that he "wants brands and marketers to use Tumblr as a way to tell stories that they can't otherwise tell on other social networks". Which sounds great, but doesn't even come close to answering the obvious first question, which is "how?". I understand that the idea is to sell space on the right hand side of the screen, and that clicking on one of those units will take Tumblr users to the advertiser's tumblog. But this seems uncomfortably close to the idea that advertisers buy a banner ad and that clicking on that banner ad will take users to the advertiser's website. The tumblog itself might well tell a story — but then again, so might the advertiser's website. The difficult thing is getting users to click on things, especially when those things look like — and are clearly labeled as — ads.

Similarly, Facebook's revenue problems are based on much the same underlying issue: Facebook itself is highly interactive and immersive, but the ads you find there are not. And while there are one or two companies I will follow on Facebook, they're invariably companies which are



**Felix Salmon is the finance blogger at Reuters.**

ANY OPINIONS EXPRESSED HERE ARE THE AUTHOR'S OWN.

**RECENT POSTS**

Counterparties: The tasks of the proletariat in the present recession

Why fuel-economy standards make sense

Charts of the day, mutual-fund outperformance edition

Counterparties: Unintended collateral

Similarly, Facebook's revenue problems are based on much the same underlying issue: Facebook itself is highly interactive and immersive, but the ads you find there are not. And while there are one or two companies I will follow on Facebook, they're invariably companies which are run by my friends. Facebook is a great place to keep up with what your friends are up to, but it still hasn't cracked the nut of working out how to make itself valuable to brand advertisers.

Now, Gawker Media's Nick Denton has a new idea:

In an internal memo on Thursday, Denton announced the formation of a new sales unit that will focus on helping advertisers and brands take part in the new commenting system....

According to the memo, Gawker is creating a new content unit within the sales department that will be headed by Ray Wert, formerly editor of the Gawker-owned automotive blog Jalopnik. This new unit will take over responsibility for all of Gawker's branded content functions, as well as marketing communications and events — and the purpose of the unit will be to promote the new Gawker discussion platform as a way for marketers and brands to engage with customers in an open forum. Says Denton:

> We all know the conventional wisdom: the days of the banner advertisement are numbered. In two years, our primary offering to marketers will be our discussion platform.

Last Friday, Denton gave me, along with a few other New York digital-media types, a preview of his new commenting system; yesterday, I had a pretty geeky conversation with Wert about how he intends to turn it into dollars.

## MORE REUTERS NEWS

Charts of the day, mutual-fund outperformance edition

Counterparties: Unintended collateral

How to protect New York from disaster

Can we have a TARP for jobs?

The necessity of a college education

Counterparties: Privatizing AIG

Poway: It's not too late to unwind

Counterparties: Obama's unemployment aphasia

Both sides "dug in" as Chicago teachers strike drags on

Libya attack may have been planned and organized, U.S. officials say

Dutch PM Rutte wins election as pro-euro parties sweep

Obama vows to track down ambassador's killers, tightens security

Insight: Iran parks oil off Malaysia to dodge Western sanctions

## TAG CLOUD

academe art autos banking Basel III bikes charts cities climate change commodities

Last Friday, Denton gave me, along with a few other New York digital-media types, a preview of his new commenting system; yesterday, I had a pretty geeky conversation with Wert about how he intends to turn it into dollars.

At Gawker, as at most other popular sites, the number of people reading the comments is vastly greater than the number of people writing them. But the way they're presented, they're not easy to read, there's far to many of them, and the signal-to-noise ratio tends to be extremely low.

So Gawker's new commenting system is based around threads, with the default view being the main, most interesting thread. It's possible to click through to other threads, and every thread — indeed, every comment — has its own unique URL; what's more, the person who starts a thread has quite a lot of control over which comments in that thread will get featured.

What that means is that if an advertiser buys a sponsored post — and sponsored posts have been part of Gawker's menu of offerings for some time now — then once the new commenting system is in place, the advertiser will have a reasonably large degree of control of the conversation that most people see in that post.

Denton's vision for Gawker Media's editorial product is very much moving towards comments and away from posts, and he reckons that advertisers will follow him in that direction if he blazes the trail. Expect Gawker's blog posts to get shorter, in future, and sometimes just be a headline, at least in the first instance, so that the conversation can get going before a pretty post can be put together. And if Denton's scheme goes according to plan, when you follow a link to a Gawker website, it will often — or maybe even usually — be a link to a comment, rather than to an original post. Eventually, it's possible to envisage a world where the distinction between the two is erased completely.

This is a very ambitious vision. Historically, Gawker has been pretty weak with respect to technological innovations, and so it's reasonable to take an I'll-believe-it-when-I-see-it approach

academe art autos **banking** Basel III
bikes **charts cities** climate change commodities
**counterparties** credit cards crime **davos**
default **economics** emerging markets
**employment** ETFs ethics **euro** Felix TV
governance **greece housing** imf
leadership M&A markets **media** munis
**philanthropy** private equity publishing
regulation risk **sovereign debt**
**stocks technocrats** technology trading
travel video **wine** world bank

**ARCHIVES**

September 2012

August 2012

July 2012

June 2012

May 2012

April 2012

March 2012

February 2012

January 2012

December 2011




completely.

This is a very ambitious vision. Historically, Gawker has been pretty weak with respect to technological innovations, and so it's reasonable to take an I'll-believe-it-when-I-see-it approach any time that Nick Denton claims to have invented a revolutionary new technology. As Wert said to me, forums have been around on the internet since the 90s, and no one's managed to reinvent them yet. But a few companies like Reddit and Quora have pointed in interesting directions, and Wert was quite open about wanting to ape Reddit's AMA ("ask me anything") feature for his new advertorial conversations.

The idea is for these things to be more a PR/marketing product than a brand-advertising product. The idea is to get challenger brands, in particular, to take part: they tend to be very open and transparent about what they're up to, and they love the idea of engaging with the public as much as possible, if they can do so in a reasonably controlled environment. When that kind of a brand has some kind of news they want to share, doing so through a Gawker Media sponsored post will be a pretty effective way of getting the news out to a large number of people while at the same time sending the message that they're trying to be as transparent as possible and are happy to answer lots of questions in a friendly and conversational and open manner. The metric for success, says Wert, isn't going to be the number of pageviews they get; rather, it will be the amount of earned media they get — the degree to which other media outlets pick up on the initial announcement and the rest of the information that the company reveals in the comments section.

The conversation will probably only go on for a day or two, but after that the post — and all its associated comments — will live on in perpetuity, a much more open and accessible record of the announcement than any press release could be.

The problem here, for Denton — and the reason why he got an editorial guy to run this new project — is the old one: how to persuade his websites' readers to read the sponsored posts and

January 2012
December 2011
November 2011
October 2011
September 2011
August 2011
July 2011
June 2011
May 2011
April 2011
March 2011
February 2011
January 2011
December 2010
November 2010
October 2010
September 2010
August 2010
July 2010
June 2010
May 2010
April 2010
March 2010
February 2010

The problem here, for Denton — and the reason why he got an editorial guy to run this new project — is the old one: how to persuade his websites' readers to read the sponsored posts and to engage in their comments sections. Wert's stated ambition — and you can hold him to this — is for his sponsored posts to be so well written and newsworthy and generally high quality that the editors of Gawker's websites will love to be able to feature them on their home pages. There have been very high-quality sponsored posts in the past, but Wert is going to have to work very hard, I think, to turn boring PR announcements into something of Gawker-level juiciness.

What's more, this move of Denton's is to a large degree a reversal of his stated aim back at the end of 2010, when he did his big network-wide redesign. Back then, I explained the departure of sales chief Chris Batty, now at Quartz, as being a function of the fact that Batty was a huge fan of the sponsored post, while Denton's redesign "essentially sacrifices the idea of having a sponsored post on the home page—something Batty was almost religious about—and replaces it with interstitial videos which aren't nearly as sharable, aren't extensible, and quite possibly won't even have permalinks." This move of Denton's, then, is a step backwards, in many ways, towards the Batty vision which he rejected two years ago.

Still, I do like the fact that Denton's constantly trying new things, constantly trying to reinvent what an online media company can and should be. Really ambitious brands, indeed, won't need Wert's help at all: they'll have the ability to dive straight into existing non-sponsored editorial posts and respond to commenters directly, much as they're already responding to people who talk about them on Twitter. But I suspect that the brands which do that will actually be more receptive, rather than less receptive, to Wert's sales pitch — they will already understand the power of conversation.

And in general, I like Denton's bigger idea of building a comments system designed more for the majority of readers who don't comment than it is for the minority of commenters themselves. I

April 2010
March 2010
February 2010
January 2010
December 2009
November 2009
October 2009
September 2009
August 2009
July 2009
June 2009
May 2009
April 2009
March 2009
June 2006

**RECENT POSTS**

Counterparties: The tasks of the proletariat in the present recession

Why fuel-economy standards make sense

Charts of the day, mutual-fund outperformance edition

Counterparties: Unintended collateral

How to protect New York from disaster

Can we have a TARP for jobs?




conversation.

And in general, I like Denton's bigger idea of building a comments system designed more for the majority of readers who don't comment than it is for the minority of commenters themselves. I don't believe for a minute that the new system will attract the big-name commenters — Dov Charney, Brian Williams — that Denton really wants. But I do think that the new system will make very high-end comments threads much more common. And when those things do appear, they're wonderful.

I used to help run a site, back in the early days of the blogosphere, called MemeFirst. The posts were short; the comments threads were long, and generally very high quality. We didn't have much of a signal-to-noise problem, because very few people knew we existed. We were basically just a group of friends using the web as a discussion aid. But the fact is that even though there are many more readers than there are commenters, there are also many more commenters than there are posters. And collectively, those commenters are faster and funnier and more knowledgeable than the staff of any website.

Nick Denton wants to be the first publisher to develop the ability to effectively tap into that collective wisdom. And then, he wants to try to sell his new-found ability to advertisers. If — and only if — Denton can do the former, I suspect that Ray Wert has a decent shot of being able to do the latter.

**PREVIOUS POST**
**Comments**
MAY 22, 2012
8:05 PM UTC

**9 comments so far** | **Comments RSS**    **NEXT POST**

"Facebook's revenue problems are based on much the same underlying issue:
Facebook itself is highly interactive and immersive, but the ads you find there are not… it
still hasn't cracked the nut of working out how to make itself valuable to brand
advertisers."

**Counterparties: Unintended collateral**

**How to protect New York from disaster**

**Can we have a TARP for jobs?**

**The necessity of a college education**

**Counterparties: Privatizing AIG**

**Poway: It's not too late to unwind**

**Counterparties: Obama's unemployment aphasia**

**Chart of the day, employment-status edition**

**Who is speaking for the poor?**

**Counterparties: Draghi makes his move**

**Chart of the day, party neighborhood edition**

**Counterparties: Europe's shrinking money funds**





Case: 1:11-cv-0[...] Document [...] Filed: 11/15/12 Page: 1 of 4 PageID #:1888

to remain anonymous.

### How do I get approved to comment?

We only approve the comments we love—so make sure you're adding something of quality to the post. Stay on-topic and seek to further the conversation. Leave us a juicy story on the #tips page or throw your hat into the ring of our open forums.

If we approve your comment, your username and password will be activated and you'll be able to login and comment freely from then on (or at least until you get banned).

### Do you have any tips for auditioning?

Leaving multiple high-quality comments on different threads with your newly created account increases your chances of getting approved.

Show your stuff—make your audition a worthy addition. "Firsts!", "yays" and "nays" will be summarily ignored. See Lifehacker's Guide To Weblog Comments for suggestions on how to begin.

We value intelligent contributions, respect for community etiquette, good grammar, and not feeding the trolls. Proper use of punctuation, capitalization and time taken in typing will earn you extra points. Ignoring any of the above will subtract considerably.

*Gawker's The Comments We Love and the Comments We Hate*

Exhibit



EXHIBIT

Huon is also suing local law enforcement authorities in Madison County, Illinois for prosecutorial misconduct. His beef with Above The Law stems from a roundup post entitled "Rape Potpurri," in which blogger Elie Mystal mistakenly believes that news accounts of the same incident are different incidents that should have tipped the woman off that Huon was a serial offender. "The content of the article were [sic] defamatory in that it incorrectly and recklessly portrayed Mr. Huon as a serial rapist by treating the same complaining witness as three different women," says the complaint, according to *Forbes*.

"And this, people, is why God invented Google," wrote Mystal in the original post, linking to articles that in fact described the same case. The lesson learned: Google only takes you so far.

Lawyer Sues Legal Blog For $50 M Over Rape Story [Forbes]
Related: Rape Potpurri [ATL]

DISCUSSION THREADS    Featured    All    Start a new thread

SarahMC                                    11 May 2011 9:16 PM

Just because a man is acquitted of rape does not mean he did not commit rape. That a jury would decide "not guilty" does not magically erase what he did—if he did, in fact, rape someone. The vast majority of rapists are never convicted of rape. Does that make them not rapists?

Pledge Saying Blacks Were Better Off During Slavery

11   Ann Coulter Calls Bill Maher A "Misogynist" To His Face

12   Same Sex Couples Required To Marry If They Want Partners To Receive Health Insurance

13   Jon Hamm Is Emotional, Very Emotional

14   Casey Anthony Juror Politely Slams Nancy Grace

15   The Arrested Development Movie Is Happening, People

16   TLC's Horrific Reenactment Of An Amniotic Sac Falling Out Of Woman

17   The Best Videos of the Week

18   10 Things You May Have Missed On TV This Week

19   Can Kate Middleton Bring Back



Pär Larsson

It was the unmentionables, wasn't it?

zegota

Well, you *did* mention them.

BettyCrockerPunkRock...

I find that comment to be sub-Par.

Hide 6 replies

Show promoted discussions only

About   Masthead   Forums   Jobs   Legal   Privacy   Permissions   Advertising   Subscribe   Send a tip

EXHIBIT F



Case: 1:11-cv-03054 Document #: 162-16 Filed: 11/15/12 Page 4 of 4 PageID #:1891

Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

File  Edit  View  Favorites  Tools  Help

Favorites

M Gmail - Huon v. Jezebel - ...    Man Acquitted Of Sexu... X

EXHIBIT F

**DISCUSSION THREADS**    Featured    All    Start a new thread

**Dinosaurs and Nachos, girlfriend!**    Thu 12 May 2011 10:39 AM

Here's a funny thought.

Truth is an absolute defense to a defamation claim, right? So if this guy sues Above the Law for defamation, Above the Law sort of gets the chance to re-try the rape case. Granted, there is not much defense for implying that one charge was actually three, so I think they are screwed there.

But if this guy sues them for defamation because they called him a rapist, Above the Law can try to show (in civil court, with a lower burden of proof) that he actually did commit the rape. The fact that he was later acquitted may make it harder, but not necessarily impossible.

**SorciaMacnasty: Hearts back plz, for the love...**    Thu 12 May 2011 10:13 AM

Nevermind "serial rapist," he sounds like a foreal crazy person.

**deafblindmute**    promoted by Domonicoreque    Thu 12 May 2011 6:04 AM

According to the link under "strength" he traveled to another city, used a false name, and then

Wages On

**WATCH**    Lindsay Lohan Hops On The 'Sexy Vampire' Bandwagon [NSFW]

**STUDY**    Braiding Hair Fills Men With Rage

**IN BRIEF**    Levi Johnston's Book Cover Is Basically Perfect

**I DO**    The Navy Won't Perform Same-Sex Marriages After All

**MOURNING**    A Family Comes Together In Joy And Grieving

**SNAP**    Happy Hump Day!

**JUDGMENT**

**FASHION**    Trio Behind Fake George Clooney Fashion Line Sentenced To Jail

**MIDWEEK**    This Week In Tabloids: Random



GAWKER MEDIA

ABOUT    OUR TITLES    OUR WORK    OUR PRODUCTS    CONTACT

LEGAL

TERMS OF USE    PRIVACY POLICY    CONTEST RULES    PERMISSIONS

The Terms of Use covers all of the Gawker Media sites ("GM Sites") and any associated content, including, but not limited to, email and RSS feeds. Please read this statement carefully before proceeding to access any of the GM Sites or Gawker Media content. Your use of the GM Sites indicates your agreement to abide by the Terms of Use in effect.

**1. Use of Content** – Gawker Media is pleased to make its original content available under a Creative Commons Attribution Non-Commercial License, for non-commercial reproduction with credit to the source site. This license permits anyone to do the following with original Gawker Media content, in any medium:

a. To reproduce, remix, or otherwise alter original Gawker Media site material so long as the logo is displayed and credit is given. This includes, specifically, permission:

   i. to reproduce quotes

   ii. to reproduce screenshots of any page of a Gawker Media site

   iii. to include original Gawker Media material in mash-ups, mixes, parodies, caricatures, etc… for movies, TV, print, or online



**7. Comments** – The comments sections on GM Sites are accessible to users by invitation only (such invitations coming either from Gawker Media editors directly or by referral from existing comment users). Gawker Media's comment user registration system has been designed so that, if the user so chooses, they can remain completely anonymous, even to us. Gawker Media will not accept responsibility for information posted in the Comments. In order to make our comments useful and interesting, the following guidelines have been established for comment users:

    a. Do not post threatening, harassing, defamatory, or libelous material.

    b. Do not intentionally make false or misleading statements.

    c. Do not offer to sell or buy any product or service.

    d. Do not post material that infringes copyright or any other intellectual property interest.

    e. Do not post information that you know to be confidential or sensitive or otherwise in breach of the law.

    f. Keep all comments relevant to the particular GM Site where the comment is being posted.

Please note that once you post a comment to one of our sites, it becomes part of the public conversation. Our policy is that we will not remove a user's comments unless we deem them to be in violation of our Terms of Use. So if you want to say something that you will later regret personally, it is advisable that you use a username that does not identify you. We cannot remove your comments simply because you have a change of heart about making them.

Additionally, it is our policy not to delete comment accounts. Gawker Media, however, reserves the right to remove comments and comment accounts entirely at its discretion, including for alleged violations of Terms of Use or legal rights.

Gawker Media is not responsible for the content of user comments. If a third party complains that your comment violates our Terms of Use or their rights, we will invite them to respond in the comments themselves. If they pursue the complaint, we will make reasonable efforts to contact you by the means you have provided us, to alert you to the situation. We will protect your contact information as described in our Privacy Policy, but may be compelled to turn it over pursuant to legal process.

**8. Image and Video Terms of Use** – Gawker Media sites typically display images, audio, and video (the "Material") as part of blog posts written by our editors. The types of Material editors are authorized to use on Gawker Media sites include



Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

Case: 1:11-cv-03054 Document #: 162-18 Filed: 11/15/12 Page 1 of 18 PageID #:1894

File    Edit    View    Favorites    Tools    Help

Favorites

Man Acquitted Of Sexu... ×    New Tab

**BringerofthePain**

No, but it does mean that you can't *call* them rapists without being sued. It's merely the difference between what they are and what they can be identified as in public. You can think he's a rapist to your hearts content, but you can't print it.

**taylvie3**

No, but someone found not guilty is innocent in the eyes of the law. Calling them differently on a blog opens you up to a libel suit. Truth would be a defense in a libel suit, but that would mean retrying a criminal case in a civil libel lawsuit to prevent paying $50M.

**SarahMC**

I understand that, but many people here are saying if a jury doesn't find a person guilty of something, it means they didn't do it, which is not true. For instance, Nicki693 above you just said if he's a rapist the facts will show it--which again, is not true. The facts might very well show it, but because the woman went out to get drunk, those facts are dismissed. I am not confused about what can and cannot be printed. I am confused by the view that if the courts don't convict someone, s/he must not have done it.

4:00 PM

**FASHION**    Trio Behind Fake George Clooney
Fashion Line Sentenced To Jail

**MIDWEEK**    This Week In Tabloids: Random
**MADNESS**    Chick Claims She Miscarried

23,386    Matt Bellamy's Fetus

**IN BRIEF**    Indiana Judge Lets Planned
Parenthood Defunding Stand

MORE STORIES



Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

Case: 1:11-cv-03054 Document #: 162-18 Filed: 11/15/12 Page 2 of 18 PageID #:1095

File    Edit    View    Favorites    Tools    Help

Favorites

Man Acquitted Of Sexu... ✕    New Tab

**Bringer of the Pain**

No, but it does mean that you can't *call* them rapists without being sued. It's merely the

4:00 PM

**FASHION**    Trio Behind Fake George Clooney
Fashion Line Sentenced To Jail

---

Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

File    Edit    View    Favorites    Tools    Help

Favorites

Man Acquitted Of Sexu... ✕    New Tab

**Dinosaurs and Nachos, girlfriend!**

Innocent until proven guilty is a widely misunderstood concept. It basically means that the mere fact that someone is charged with a crime is not itself evidence that the person committed a crime.

Then you go to court. In court, there will be evidence presented. This evidence is where an actual, legal determination is made. Nobody is declared "innocent" in a court of law, they are found guilty or not guilty.

"Not guilty" is absolutely not the same thing as "innocent" from a legal standpoint. Those words

about what can and cannot be printed. I am confused by the view that if the courts don't convict someone, s/he must not have done it.



Case: 1:11-cv-03054 Document #: 162-18 Filed: 11/15/12 Page 3 of 18 PageID #:1896

**Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer**

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

File   Edit   View   Favorites   Tools   Help

**BringerofthePain**

No, but it does mean that you can't *call* them rapists without being sued. It's merely the

---

4:00 PM

**FASHION**   Trio Behind Fake George Clooney
Fashion Line Sentenced To Jail

---

DISCUSSION THREADS    Featured    All    Start a new thread

**Dinosaurs and Nachos, girlfriend!**

Here's a funny thought.

Truth is an absolute defense to a defamation claim, right? So if this guy sues Above the Law for
defamation, Above the Law sort of gets the chance to re-try the rape case. Granted, there is not
much defense for implying that one charge was actually three, so I think they are screwed there.

But if this guy sues them for defamation because they called him a rapist, Above the Law can try
to show (in civil court, with a lower burden of proof) that he actually did commit the rape. The fact

Thu 12 May 2011 10:39 AM

---

Toilet Paper's Eternal Debate
Wages On

**WATCH**   Lindsay Lohan Hops On The
"Sexy Vampire" Bandwagon
[NSFW]
11,508

**STUDY**   Braiding Hair Fills Men With
Rage
5:00 PM
18,722

**IN BRIEF**   Levi Johnston's Book Cover Is
Basically Perfect
15,513

**I DO**   The Navy Won't Perform Same-
Sex Marriages After All





Case: 1:11-cv-03054 Document #: 162-18 Filed: 11/15/12 Page 5 of 18 PageID #:1898

Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

File   Edit   View   Favorites   Tools   Help

Google    huon jezebel

Man Acquitted Of Sexu... ×    New Tab

**FASHION**    Trio Behind Fake George Clooney
Fashion Line Sentenced To Jail

**BringerofthePain**

No, but it does mean that you can't *call* them rapists without being sued. It's merely the

---

Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

File   Edit   View   Favorites   Tools   Help

Google    huon jezebel

Man Acquitted Of Sexu... ×    New Tab

4:00 PM

**FASHION**    Trio Behind Fake George Clooney
Fashion Line Sentenced To Jail

**MIDWEEK**    This Week In Tabloids: Random
**MADNESS**    Chick Claims She Miscarried
23,386    Matt Bellamy's Fetus

**IN BRIEF**    Indiana Judge Lets Planned
Parenthood Defunding Stand

MORE STORIES

---

**deafblindmute**    promoted by Donovanesque                              Thu 12 May 2011 6:04 AM

According to the link under "strength" he traveled to another city, used a false name, and then
pretended to be a representative of a liquor company and advertised a job for a model. Now, that
doesn't mean that he did/didn't rape her, but it is a goddamn shady way to start off an evening.
He must have had some damn good lawyers to push that out of the jury's mind.

My big question is, if she tried to run from him that night and he acknowledges that they were
together and there was some sexual interaction going on, what was his defense? I don't care how
drunk you are, in the middle of a wanted sexual encounter you don't jump out of a moving car
and run through a cornfield barefoot (fun fact: the bristly hair on corn leaves feel like thousands
of needles when you run through it). I mean, it's sort of his word against hers for what was
happening in the car, but we know that a third person saw her after she ran from him.



**BringerofthePain**

No, but it does mean that you can't *call* them rapists without being sued. It's merely the

Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

Case: 1:11-cv-03054 Document #: 162-18 Filed: 11/15/12 Page 6 of 18 PageID #:1899
http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

Any more legally knowledgeable people know how a jury is supposed to treat this type of evidence? Does the fact that its word vs. word in the car disqualify her claims to being assaulted even though she ran away from him and said she was assaulted that night? How can any sexual assault case be tried if that counts as reasonable doubt?

Arg this is more perplexing the more I think about it. Everything points to rape (his shady actions and lies earlier in the night; her running from him to a stranger), but there is no conclusive evidence I have heard speak of that proves he did/didn't do it.

God, it's almost as if our legal system is imperfect or something : /

**CassandraSays**

Thu 12 May 2011 3:36 AM

**FASHION** Trio Behind Fake George Clooney
Fashion Line Sentenced To Jail

4:00 PM



**BringerofthePain**

No, but it does mean that you can't *call* them rapists without being sued. It's merely the

Any more legally knowledgeable people know how a jury is supposed to treat this type of evidence? Does the fact that its word vs. word in the car disqualify her claims to being assaulted even though she ran away from him and said she was assaulted that night? How can any sexual assault case be tried if that counts as reasonable doubt?

Arg this is more perplexing the more I think about it. Everything points to rape (his shady actions and lies earlier in the night; her running from him to a stranger), but there is no conclusive evidence I have heard speak of that proves he did/didn't do it.

God, it's almost as if our legal system is imperfect or something :/

**CassandraSays**

Thu 12 May 2011 3:36 AM



Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

Case: 1:11-cv-03054 Document #: 162-18 Filed: 11/15/12 Page 8 of 18 PageID #:1901

File   Edit   View   Favorites   Tools   Help

Favorites

Man Acquitted Of Sexu... ×    New Tab

**BringerofthePain**

No, but it does mean that you can't *call* them rapists without being sued. It's merely the

---

Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

File   Edit   View   Favorites   Tools   Help

Favorites

Man Acquitted Of Sexu... ×    New Tab

4:00 PM

**FASHION**   Trio Behind Fake George Clooney
Fashion Line Sentenced To Jail

**JadeSays**

**Wed 11 May 2011 10:20 PM**

Weird. I didn't know "where do I go to have fun" meant the same thing as "where do I go to get raped." It's great that that jury made that clear to me, otherwise I could get myself in some sticky situations like apparently accidentally begging to be raped.

AWE. SOME.

Edited by JadeSays at 05/11/11 10:21 PM

**rachel723**   promoted by SorciaMacnasty: He...

you know it's women like you who don't understand the rules that make the rest of us ladies look bad.

i'm glad you learned before you actually got raped not to complain now if you do, you were asking for it!!





Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

Case: 1:11-cv-03054 Document #: 162-18 Filed: 11/15/12 Page 10 of 18 PageID #:1903

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

File    Edit    View    Favorites    Tools    Help

Man Acquitted Of Sexu...    New Tab

**BringerofthePain**

No, but it does mean that you can't *call* them rapists without being sued. It's merely the

---

Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

File    Edit    View    Favorites    Tools    Help

Man Acquitted Of Sexu...    New Tab

**SorciaMacnasty:** Hearts back plz, for the love...

Clearly, you need to spend more time learning the lingo, grrl.

**SarahMC**    Wed 11 May 2011 9:16 PM

Just because a man is acquitted of rape does not mean he did not commit rape. That a jury would decide "not guilty" does not magically erase what he did--if he did, in fact, rape someone. The vast majority of rapists are never convicted of rape. Does that make them not rapists?

**Hide 2 replies**

**Nicki693**

@SarahMC: No, but our legal system makes it so that someone is innocent until proven guilty.

---

4:00 PM

**FASHION**    Trio Behind Fake George Clooney
Fashion Line Sentenced To Jail



Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

Case: 1:11-cv-03054 Document #: 162-18 Filed: 11/15/12 Page 11 of 18 PageID #:1904

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

File   Edit   View   Favorites   Tools   Help

Favorites

Man Acquitted Of Sexu...   ×    New Tab

**BringerofthePain**

No, but it does mean that you can't *call* them rapists without being sued. It's merely the

---

Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

File   Edit   View   Favorites   Tools   Help

Favorites

Man Acquitted Of Sexu...   ×    New Tab

**SarahMC**

I understand that, but many people here are saying if a jury doesn't find a person guilty of something, it means they didn't do it, which is not true. For instance, Nick1693 above you just said if he's a rapist the facts will show it—which again, is not true. The facts might very well show it, but because the woman went out to get drunk, those facts are dismissed. I am not confused about what can and cannot be printed. I am confused by the view that if the courts don't convict someone, s/he must not have done it.

**Dinosaurs and Nachos, girlfriend!**

Innocent until proven guilty is a widely misunderstood concept. It basically means that the mere fact that someone is charged with a crime is not itself evidence that the person committed a crime.

4:00 PM

FASHION   Trio Behind Fake George Clooney
Fashion Line Sentenced To Jail



Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

Case: 1:11-cv-03054 Document #: 162-18 Filed: 11/15/12 Page 12 of 18 PageID #:1905

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

File    Edit    View    Favorites    Tools    Help

Favorites

Man Acquitted Of Sexu... ✕    New Tab

**BringerofthePain**

No, but it does mean that you can't *call* them rapists without being sued. It's merely the

Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

File    Edit    View    Favorites    Tools    Help

Favorites

Man Acquitted Of Sexu... ✕    New Tab

**SarahMC**

I understand that, but many people here are saying if a jury doesn't find a person guilty of something, it means they didn't do it, which is not true. For instance, Nick1693 above you just said if he's a rapist the facts will show it—which again, is not true. The facts might very well show it, but because the woman went out to get drunk, those facts are dismissed. I am not confused about what can and cannot be printed. I am confused by the view that if the courts don't convict someone, s/he must not have done it.

**Dinosaurs and Nachos, girlfriend!**

Innocent until proven guilty is a widely misunderstood concept. It basically means that the mere fact that someone is charged with a crime is not itself evidence that the person committed a crime.

4:00 PM

**FASHION**    Trio Behind Fake George Clooney Fashion Line Sentenced To Jail

huon jezebel

Google



**Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer**

Case: 1:11-cv-03054 Document #: 162-18 Filed: 11/15/12 Page 13 of 18 PageID #:1906

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

File   Edit   View   Favorites   Tools   Help

Favorites

Man Acquitted Of Sexu... ×    New Tab

**BringerofthePain**

No, but it does mean that you can't *call* them rapists without being sued. It's merely the

"Not guilty" is absolutely not the same thing as "innocent" from a legal standpoint. Those words do not mean the same thing in the world of law. "Innocent until proven guilty" is merely a concept for laymen to try to keep their non-lawyer brains from jumping to (non-legal) conclusions.

---

**Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer**

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

File   Edit   View   Favorites   Tools   Help

Favorites

Man Acquitted Of Sexu... ×    New Tab

found guilty or not guilty.

**Hide 5 replies**

**vikkitikkitavi**    Wed 11 May 2011 9:09 PM

She jumped out of a moving car, leaving her shoes and purse behind and ran barefoot through a cornfield and pounded on a stranger's door to help her?

Fuck this "he's been acquitted" noise. He's a rapist alright, so we may as well call him one

FASHION   Trio Behind Fake George Clooney
Fashion Line Sentenced To Jail



Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

File    Edit    View    Favorites    Tools    Help

Favorites

Man Acquitted Of Sexu... ×    New Tab

**BringerofthePain**

No, but it does mean that you can't *call* them rapists without being sued. It's merely the

---

FASHION    Trio Behind Fake George Clooney
Fashion Line Sentenced To Jail

4:00 PM

---

**vikkitikkitavi**

She jumped out of a moving car, leaving her shoes and purse behind and ran barefoot through a cornfield and pounded on a stranger's door to help her?

Fuck this "he's been acquitted" noise. He's a rapist alright, so we may as well call him one.

**smartgal**    promoted by femme-bot

A jury of his peers aquitted him of the crime. I suppose you have facts that weren't presented to the jury?

**femme-bot**

The justice system sure sounds flawless

Wed 11 May 2011 9:09 PM

**messybessy**

Word. It's not like juries of peers acquit 95% of rape cases. Juries of peers exist in a vacuum where their judgement is in no way hindered by social misconceptions. That's why our legal system is like flawless.

**Hide 4 replies**

the.schwartz.is.not.with.me.    promoted by J...                    **Wed 11 May 2011 8:35 PM**

Excuse me, but can we not call this guy an "acquitted rapist"? He was acquitted, so he's not guilty. He is not a rapist, end of story. He is a man acquitted of rape, but he is most definitely not a rapist, modifying adjective or not.

**JadeSays**

Eh, redacted. Nevermind!

Edited by JadeSays at 05/11/11 10:24 PM

**Hide 1 reply**

**lavenderstain**                                                  **Wed 11 May 2011 7:58 PM**



Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

File   Edit   View   Favorites   Tools   Help

**lavenderstain**

Wed 11 May 2011 7:58 PM

you know, i really dislike this man as much as the next (maybe even more given that he tarnishes the repute of my profession) BUT he WAS acquitted, meaning you could have at least used "Alleged" before the rapist acquitted. if anyone deserves to be sued for defamation...

Hide 1 reply

**SubvertAParadigm**

Wed 11 May 2011 7:39 PM

"Acquitted Rapist Sues Blog For Calling Him Serial Rapist"

WTF? Last time I checked, when a person is acquitted, he is legally not guilty. It doesn't matter if you like it or not - he went through the same processes that we're all subject to.

Edited by SubvertAParadigm at 05/11/11 7:39 PM

**Queenjulie**

If I were writing a blog post about a blog getting sued for multiple millions of dollars over incorrectly labeling a person a rapist, I would be pretty damn careful not to incorrectly label him a rapist myself. Apparently Jezebel feels differently.

Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

File    Edit    View    Favorites    Tools    Help

Favorites

Man Acquitted Of Sexu...    New Tab

Case: 1:11-cv-03054 Document #: 162-18 Filed: 11/15/12 Page 17 of 18 PageID #:1910

Edited by SubvertAParadigm at 05/11/11 7:39 PM

**Queenjulie**

If I were writing a blog post about a blog getting sued for multiple millions of dollars over incorrectly labeling a person a rapist, I would be pretty damn careful not to incorrectly label him a rapist myself. Apparently Jezebel feels differently.

**Andrew_in_Seattle**   promoted by pleasantly...

Yeah, incredibly inept headline writing.

**doublylinkedlists**   promoted by SubvertAPar...

I really have to object to your statement "the same processes that we're all subject to" in regards to our justice system. Different types of people are subjected to RADICALLY different processes depending on many categories including race, gender, sexuality, ability, age and nationality. We do not have a fair justice system that is neutral in all cases. We have a racist and sexist justice system that ignores issues of difference, perpetuates discrimination, and calls it "neutrality".

**SubvertAParadigm**



### SubvertAParadigm

You can object to the minutiae of the statement all you want. The truth is, justice is a public value and therefore all justice systems are unfair and will never be truly fair to x, y, or z. It doesn't change the fact that legally if you are going to write a blog about someone who wrote a blog and is being sued for libel, you shouldn't actually write false statements in the title. That is a lie, and that is just another perpetuation of prejudices based on a system of "guilty until proven innocent," which is just as unfair. The guy was acquitted and whether or not we believe that is true is irrelevant to the material fact that he is currently, legally exonerated.

Edited by SubvertAParadigm at 05/12/11 6:20 AM

### doublylinkedlists    promoted by SubvertAPar...

What you call "minutiae" are actually the reasons why so many mentally challenged people are put to death, and why so many rapists walk free, and why so many nonviolent offenders are in prisons, and why so many prisons are terrible terrifying environments, and why rich people don't serve the same sentences are poor ones, and a million other things.

You want to sit there and talk about "legal this" and "legal that" as if there's some sort of "law" separate from what actually happens in the real world, and that this separate "law" is more relevant than observations about who is really subject to violence from the state and who isn't

Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

http://jezebel.com/5800876/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

Case: 1:11-cv-03054 Document #: 162-19 Filed: 11/15/12 Page 1 of 11 PageID #:1912

**doublylinkedlists**   promoted by SubvertAPar...

What you call "minutiae" are actually the reasons why so many mentally challenged people are put to death, and why so many rapists walk free, and why so many nonviolent offenders are in prisons, and why so many prisons are terrible terrifying environments, and why rich people don't serve the same sentences are poor ones, and a million other things.

You want to sit there and talk about "legal this" and "legal that" as if there's some sort of "law" separate from what actually happens in the real world, and that this separate "law" is more relevant than observations about who is really subject to violence from the state and who isn't.

I say that any discussion of "the law" and what's "legal" is incomplete when we pretend that we can talk about it "neutrally" (ie: from a white male perspective). And I say that referring to this important critical legal discourse as "minutiae" completely misses the point of having a justice system.

Otherwise, we just have another system where the "neutral" rich white male view of the world dominates, and other experiences are marginalized.

**SubvertAParadigm**



dominates, and other experiences are marginalized.

**SubvertAParadigm**

Oh please, you really have an agenda that is dealing with something completely beyond the realm of the story at hand. This isn't about who gets a fair trial and who doesn't. We all get the social injustices that happen to people for various reasons in the legal system. This isn't news to anyone here. It's like you didn't even read my reply. I'm not invalidating what you're saying, but in the realm of *what I was actually talking about versus what you decided to rant about they are two completely different things.* It is completely irrelevant whether or not the guy, according to popular opinion, raped someone. He was acquitted, and now he's suing a blog for misrepresenting him....WHILE BEING MISREPRESENTED ON THE BLOG THAT'S EXPLAINING THE STORY. Spare me the sociological context of law, because I already understand it. It doesn't change what's actually happening at this exact juncture.

Edited by SubvertAParadigm at 05/12/11 5:53 PM

**doublylinkedlists**   promoted by SubvertAPar...

It's obviously relevant because you don't give any reason other than "X is illegal. You shouldn't do X" as why Jezebel shouldn't have published the title the way they did. Maybe they didn't give a fuck. Maybe their lawyers told them they would get away with it. Maybe they realized the risks

### SubvertAParadigm

Obviously none of that reasoning is true though for Jezebel, because the title of the article was changed by this afternoon. I honestly have no faith in our justice system whatsoever, frankly. It doesn't mean we aren't all subject to the same set of rules, old dead rich white guy rules, shitty as that may be. It's not that I think you shouldn't do X because X is illegal. It's that X will get you sued because X is technically false by the laws exist to protect the not guilty people from being defamed. If it were legal to just slander everyone and anyone based on what we assumed was the just vs the actual outcome for a case, witch hunts would ensue and innocent people would also be targeted.

Edited by SubvertAParadigm at 05/12/11 9:04 PM

**Hide 8 replies**

### thePrototype

Wed 11 May 2011 7:28 PM

I know someone that is prepping his libel case. His criminal case has not yet started, but he has a tort lawyer on speed dial, and from the sounds of it his case might get dropped before it gets to a judge.

Edited by thePrototype at 05/11/11 7:29 PM

### tomsomething

Wed 11 May 2011 7:28 PM





### SubvertAParadigm

Obviously none of that reasoning is true though for Jezebel, because the title of the article was changed by this afternoon. I honestly have no faith in our justice system whatsoever, frankly. It doesn't mean we aren't all subject to the same set of rules, old dead rich white guy rules, shitty as that may be. It's not that I think you shouldn't do X because X is illegal. It's that X will get you sued because X is technically false by the laws exist to protect the not guilty people from being defamed. If it were legal to just slander everyone and anyone based on what we assumed was the just vs the actual outcome for a case, witch hunts would ensue and innocent people would also be targeted.

Edited by SubvertAParadigm at 05/12/11 9:04 PM

**Hide 8 replies**

### thePrototype

Wed 11 May 2011 7:28 PM

I know someone that is prepping his libel case. His criminal case has not yet started, but he has a tort lawyer on speed dial, and from the sounds of it his case might get dropped before it gets to a judge.

Edited by thePrototype at 05/11/11 7:29 PM

### tomsomething

Wed 11 May 2011 7:28 PM

Case: 1:11-cv-03054 Document #: 162-19 Filed: 11/15/12 Page 5 of 11 PageID #:1916

judge.

Edited by thePrototype at 05/11/11 7:29 PM

**tomsomething**    Wed 11 May 2011 7:28 PM

I know you're going to get a million comments like hits, but the phrase "acquitted rapist" probably won't fly for a person who has already demonstrated his letigiousitousnicity.

Edited by tomsomething at 05/11/11 7:29 PM

**mohamedzv2001**    Wed 11 May 2011 7:22 PM

So now to Jezebel, even if someone was acquitted, they're still a rapist, because ya know, an accusation is 100% true 100% of the time.

**HeartRateRapid**   promoted by onestrawplz

Yea, all those crazy bitches going to the cops and lying about being raped. Except that false reports for stolen cars are more common. False rape reports make up less than 3% of all reported rapes, and as I'm sure you know, it horrendously underreported.

I'm also uncomfortable with the way the article was titled, but please don't bring in the rape apology bingo by relying on the old idea that most women lie about it.





**HeartRateRapid**   promoted by onestrawplz

Yea, all those crazy bitches going to the cops and lying about being raped. Except that false reports for stolen cars are more common. False rape reports make up less than 3% of all reported rapes, and as I'm sure you know, it horrendously underreported.

I'm also uncomfortable with the way the article was titled, but please don't bring in the rape apology bingo by relying on the old idea that most women lie about it.

**zegota**

Regardless of the statistics, calling someone an "acquitted [thing they were acquitted for]" is kind of stupid. Unless it's OJ, cause fuck him.

**mohamedzv2001**

I don't see where I said, "Oh derr, everyone crying rape is lying". What I said is not all rape accusations are true, and you know what, THAT'S KIND OF TRUE.

And really, you assumed that I was saying that most women lie about it, I said no such thing.

I don't see where I said, "Oh derr, everyone crying rape is lying". What I said is not all rape accusations are true, and you know what, THAT'S KIND OF TRUE.

And really, you assumed that I was saying that most women lie about it, I said no such thing.

**HeartRateRapid**   promoted by onestrawplz

You didn't have to bring up false accusations of rape at all, as it has nothing to do with the story. This guy was acquitted but obviously there was a strong enough case to bring it to trial. Most rape cases don't go anywhere, partially because of the perception that women lie and make false accusations. Or that they have 'buyer's remorse' which seems to be part of what happened in this case. A bartender said she was smiling and drinking? Clearly that means consent for everything.

I'm just sick of reading variations of "ya know, an accusation is 100% true 100% of the time" every time I read an article with the word rape in it.

Edited by HeartRateRapid at 05/11/11 7:52 PM

**HeartRateRapid**   promoted by onestrawplz

Yea, I'm not okay with that either, I just don't see how "well sometimes women lie about being raped" really adds anything.



Case: 1:11-cv-03054 Document #: 162-19 Filed: 11/15/12 Page 8 of 11 PageID #:1919

**HeartRateRapid**   promoted by onestrawplz

Yea, I'm not okay with that either, I just don't see how "well sometimes women lie about being raped" really adds anything.

**Hide 5 replies**

**AndPreciousLittleofT...**                               Wed 11 May 2011 7:11 PM

Running terrified and barefoot through a cornfield doesn't fit my definition of a place "to go to have fun."

ED: Two seconds of proper Googling will get you to Mr. Huon's firm webpage, complete with his phone number, should you want to call and offer any critiques.

                                        Edited by AndPreciousLittleofThat at 05/11/11 7:14 PM

**cool_as_KimDeal**                                      Wed 11 May 2011 7:08 PM

Well shit! I didn't know kicking back at a bar and asking where I should go to have fun meant that I hereby consent to any and all sexual activity, with anybody, with this bartender here as my witness. Can I sign away my right to consent here on my bar tab? Okay, great.



Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

Case: 1:11-cv-03054 Document #: 162-19 Filed: 11/15/12 Page 9 of 11 PageID #:1920

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

File   Edit   View   Favorites   Tools   Help

phone number, should you want to call and offer any critiques.

Edited by AndPreciousLittleofThat at 05/11/11 7:14 PM

**cool_as_KimDeal**                    Wed 11 May 2011 7:08 PM

Well shit! I didn't know kicking back at a bar and asking where I should go to have fun meant that I hereby consent to any and all sexual activity, with anybody, with this bartender here as my witness. Can I sign away my right to consent here on my bar tab? Okay, great.

**taylvie3**

Don't forget to tip at least 20% for the waiver.

                                                   Hide 1 reply

**zegota**   promoted by Rooo sez BISH PLZ          Wed 11 May 2011 7:03 PM

"Acquitted Rapist"

Um, is my understanding off, or is this man not (legally) a rapist? It seems calling him an "acquitted rapist" paints a target on Jezebel's back. Might wanna change that heading.



Wed 11 May 2011 7:03 PM

**zegota** promoted by Rooo sez BISH PLZ

"Acquitted Rapist"

Um, is my understanding off, or is this man not (legally) a rapist? It seems calling him an "acquitted rapist" paints a target on Jezebel's back. Might wanna change that heading.

**Rooo sez BISH PLZ**

It might be worth at least a fact check. 8 figures is a mighty big number.

#corrections

**Pär Larsson** promoted by BettyCrockerPun...

Nah. This is Jez, man. Men are presumed guilty of original sin, until proven otherwise due to gayness or having been previously a woman - alongside some actually noteworthy news and commentary.

"Alleged rapist…" or "Aquitted man…" would have been, you know, responsible almost-journalism. Can't have that around here. People will get their unmentionables all in a twist.

**zegota**



Man Acquitted Of Sexual Assault Sues Blog For Calling Him Serial Rapist - Windows Internet Explorer

Case: 1:11-cv-03054 Document #: 162-19 Filed: 11/15/12 Page 11 of 11 PageID #:1922

http://jezebel.com/5800878/acquitted-rapist-sues-blog-for-calling-him-serial-rapist

commentary.

"Alleged rapist..." or "Aquitted man..." would have been, you know, responsible almost-journalism. Can't have that around here. People will get their unmentionables all in a twist.

zegota

And see, then you went too far in the other direction. ಠ_ಠ

BettyCrockerPunkRock...

I find that comment to be sub-Par.

**Hide 4 replies**

Show all discussions

About    Masthead    Forums    Jobs    Legal    Privacy    Permissions    Advertising    Subscribe    Send a tip



**Meanith Huon**                                                                 11 May 2011 10:41 PM

resplendent bitch moved this thread to #complaints (see Community Policy)

Show 2 replies

**JadeSays**                                                                     11 May 2011 10:20 PM

Weird. I didn't know "where do I go to have fun" meant the same thing as "where do I go to get
raped." It's great that that jury made that clear to me, otherwise I could get myself in some sticky
situations like apparently accidentally begging to be raped.

AWE. SOME.

Edited by JadeSays at 05/11/11 10:21 PM

Show 2 replies

**SarahMC**                                                                      11 May 2011 9:16 PM

Just because a man is acquitted of rape does not mean he did not commit rape. That a jury
would decide "not guilty" does not magically erase what he did—if he did, in fact, rape someone.
The vast majority of rapists are never convicted of rape. Does that make them not rapists?

Show 7 replies

**viktitikkitavi**                                                               11 May 2011 9:09 PM

She jumped out of a moving car, leaving her shoes and purse behind and ran barefoot through a



running terrified and barefoot through a cornfield doesn't fit my definition of a place "to go to have fun."

ED: Two seconds of proper Googling will get you to Mr. Huon's firm webpage, complete with his phone number, should you want to call and offer any critiques.

Edited by AndPreciousLittleofThat at 05/11/11 7:04 PM

**cool_as_KimDeal**                                             Wed 11 May 2011 7:08 PM

Well shit! I didn't know kicking back at a bar and asking where I should go to have fun meant that I hereby consent to any and all sexual activity, with anybody, with this bartender here as my witness. Can I sign away my right to consent here on my bar tab? Okay. great.

"Acquitted Rapist"

**zegota** promoted by Roosevor BISHPIZZ                        Wed 11 May 2011 7:03 PM

"Acquitted Rapist"

Um. is my understanding off, or is this man not (legally) a rapist? It seems calling him an "acquitted rapist" paints a target on Jezebel's back. Might wanna change that heading.

Show 1 reply

EXHIBIT G

## EXHIBIT 7

**Huon Judgment**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

MEANITH HUON,

Plaintiff(s),

v.                                              Case No.  11-cv-3054
                                                Judge John J. Tharp
BREAKING MEDIA, LLC et al.,

Defendant(s).

## <u>JUDGMENT IN A CIVIL CASE</u>

Judgment is hereby entered (check appropriate box):

☐        in favor of plaintiff(s)
         and against defendant(s)
         in the amount of $          ,

              which ☐ includes        pre–judgment interest.
                    ☐ does not include pre–judgment interest.

         Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

         Plaintiff(s) shall recover costs from defendant(s).

---

☒        in favor of defendant(s) Gawker Media, LLC. a/k/a Gawker Media, Blogwire Hungary Szellemi
Alkotast Hasnosito KFT, Gawker Media Group, Inc. a/k/a Gawker Media, Gawker Entertainment, LLC.,
Gawker Technology, LLC., Gawker Sales, LLC., Nick Denton, Irin Carmon, and Gaby Darbyshire
              and against plaintiff(s) Meanith Huon.
.
         Defendant(s) shall recover costs from plaintiff(s).

---

☐        other:

---

This action was *(check one)*:

☐ tried by a jury with Judge      presiding, and the jury has rendered a verdict.
☐ tried by Judge      without a jury and the above decision was reached.
☒ decided by Judge John J. Tharp on a motion to dismiss Plaintiff's Fourth Amended Complaint.

Date:  9/16/2015                    Thomas G. Bruton, Clerk of Court

                                    Alberta Rone, Deputy Clerk