ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Joshua Y. Sturm
Jonathan M. Agudelo
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
:
In re                                   :   Chapter 11
:
Gawker Media LLC, *et al.*,[1]          :   Case No. 16-11700 (SMB)
:
          Debtors.                      :   (Jointly Administered)
:
------------------------------------------------------x

**NOTICE OF FILING OF EXHIBIT C TO THE DISCLOSURE STATEMENT**
**FOR DEBTORS' AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION**

**PLEASE TAKE NOTICE** that on September 30, 2016, the Debtors filed the (i) *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 308] (the "Disclosure Statement") and (ii) *Debtors Motion For the Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Notice Procedures with Respect to Confirmation of the Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft., (III) the Form of Ballots and Notices in*

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

59601075_3

*Connection Therewith, and (IV) the Scheduling of Certain Dates with Respect Thereto* [Docket No. 309] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that on November 2, 2016, the Debtors filed the *Disclosure Statement for the Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 403] (as it may be modified, amended, or supplemented, the "Amended Disclosure Statement"), which indicated that a liquidation analysis would be provided as Exhibit C to such Amended Disclosure Statement (the "Liquidation Analysis").

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file the Liquidation Analysis attached hereto as **Exhibit A**, and incorporate the Liquidation Analysis into the Amended Disclosure Statement as Exhibit C thereto.

**PLEASE TAKE FURTHER NOTICE** that the hearing (the "Hearing") on the Motion to consider (i) the adequacy of the Proposed Disclosure Statement; (ii) the solicitation procedures with respect to confirmation of the Plan; (iii) the form of ballots and notices in connection therewith; and (iv) the scheduling of certain dates related thereto, will be held before the Honorable Stuart M. Bernstein of the United States Bankruptcy Court for the Southern District of New York (the "Court"), in Room 723, One Bowling Green, New York, New York 10004-1408, on **November 3, 2016, at 10:00 a.m. (New York Time)**.

[*Remainder of Page Intentionally Left Blank*]

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing.

| | |
|---|---|
| Dated: November 2, 2016<br>New York, New York | */s/ Gregg M. Galardi*<br>ROPES & GRAY LLP<br>Gregg M. Galardi<br>D. Ross Martin<br>Joshua Y. Sturm<br>Jonathan M. Agudelo<br>1211 Avenue of the Americas<br>New York, NY 10036-8704<br>Telephone: (212) 596-9000<br>Facsimile: (212) 596-9090<br>gregg.galardi@ropesgray.com<br>ross.martin@ropesgray.com<br>joshua.sturm@ropesgray.com<br>jonathan.agudelo@ropesgray.com<br><br>*Counsel to the Debtors*<br>*and Debtors in Possession* |

# **EXHIBIT A**

**Liquidation Analysis**

# LIQUIDATION ANALYSIS

**Introduction**

Under the "best interests" of creditors test set forth in section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of liquidation unless the plan provides each holder of a claim or interest who does not otherwise vote in favor of the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code. To demonstrate that the proposed Plan satisfies the "best interests" of stakeholders test, the Debtors, with the assistance of their restructuring advisor, Opportune LLP ("***Opportune***"), have prepared the following hypothetical liquidation analysis (the "***Liquidation Analysis***"), which is based upon certain assumptions discussed in the Disclosure Statement and in the accompanying notes to the Liquidation Analysis.

All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Disclosure Statement for the Debtors' Amended Joint Chapter 11 Plan of Liquidation* to which this Liquidation Analysis is attached.

**Methodology**

The Liquidation Analysis has been prepared assuming that the Debtors' chapter 11 cases are converted to Chapter 7 cases between December 15, 2016 and December 31, 2016 (the "**Chapter 7 Conversion Date**"). Except as otherwise noted herein, the Liquidation Analysis is based upon the unaudited consolidating balance sheets of the Debtors as of September 9, 2016, and those values, in total, are assumed to be representative of the Debtors' approximate assets and liabilities as of the Chapter 7 Conversion Date. It is assumed that, on the Chapter 7 Conversion Date, the Bankruptcy Court appoints a Chapter 7 trustee (the "**Trustee**") who would sell all of the Debtors' remaining assets and distribute the cash proceeds, net of liquidation-related costs, to stakeholders in accordance with relevant law. There can be no assurance that the recoveries realized from the sale of the assets would, in fact, approximate the amounts reflected in this Liquidation Analysis. Under section 704 of the Bankruptcy Code, a trustee must, among other duties, collect and convert the property of the estate as expeditiously as possible (generally at distressed prices), taking into account the best interests of stakeholders.

Importantly, the Liquidation Analysis makes at least four (4) critical assumptions for the purposes of a comparing the recoveries under a hypothetical Chapter 7 to the Plan: (i) the Trustee proceeds with the significant settlements with the creditors set forth in the Plan, including the settlement of the Bollea Claims; (ii) the Trustee proceeds with the allocation settlement and the intercompany settlement set forth in the Plan, thereby avoiding extensive legal costs and delay; (iii) the Trustee is able to succeed on the prosecution of the claims objections filed by the Debtors on the same time frame and for the same cost, despite having not been previously

involved in the Bankruptcy Cases; and (iv) the Trustee makes distributions to creditors before year end securing the corresponding tax benefits associated therewith.

**Global Notes & Assumptions**

1. **Basis of liquidation** - The Liquidation Analysis assumes the Debtors would be liquidated on an entity-by-entity basis.

2. **Allocation of Assets** - The allocation of sale proceeds in the Liquidation Analysis is in accordance with the Plan and the Liquidation Analysis assumes no litigation in relation to the allocation of assets among the Debtors.

3. **Dependence on unaudited financial statements** - Proceeds available for recovery are based upon the unaudited financial statements and balance sheets of the Debtors as of September 9, 2016, unless otherwise noted. Cash balances have been rolled forward through the Chapter 7 Conversion Date.

4. **Chapter 7 Liquidation Costs & Length of Liquidation Process** - The Debtors have assumed that liquidation would take approximately 6 - 12 months in order to pursue orderly sales of all the remaining assets, including marketing and sale of Gawker.com Assets, and administer and close the estates. In an actual liquidation, the wind down process and time period(s) could vary significantly, thereby impacting recoveries. For example, the uncertain duration and potential outcomes of the process to liquidate and allow Claims, including priority, contingent, litigation, rejection, and other Claims could substantially impact both the timing and the amounts of the distributions of asset proceeds to creditors. Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such liquidation.

   Pursuant to section 726 of the Bankruptcy Code, the allowed administrative expenses incurred by the Trustee, including expenses associated with selling the Debtors' assets, would be entitled to payment in full prior to any distributions to Chapter 11 Administrative Claims and Other Priority Claims. The estimates used in the Liquidation Analysis for these expenses include estimates for operational expenses and certain legal, accounting and other professionals, as well as an assumed 3% fee payable to a Trustee based on the amount of liquidated assets. It is assumed that Chapter 7 administrative and priority claims, post-Chapter 7 conversion expenses and professional fees, and the Trustee fees are entitled to payment in full prior to any distribution to creditors.

5. **Distribution of Net Proceeds** – Chapter 11 Administrative Claim amounts and Priority Claim amounts, trustee fees and other such claims that may arise in a liquidation scenario would be paid in full from the liquidation proceeds before the balance of those proceeds will be made available to pay secured and general unsecured claims. Under the absolute

priority rule, no junior creditor would receive any distribution until all senior creditors are paid in full, and no equity holder would receive any distribution until all creditors are paid in full. The assumed distributions to creditors as reflected in the Liquidation Analysis are estimated in accordance with the absolute priority rule.

6. **Preference or fraudulent transfers** – No recovery or related litigation costs have been attributed to any potential avoidance actions under the Bankruptcy Code, including potential preference or fraudulent transfer actions due to, among other issues, the costs of such litigation, the uncertainty of the outcome, and anticipated disputes regarding these matters.

7. **Litigation Costs** – The Debtors' have made certain estimates and assumptions in relation to the Article Lawsuits, although considered reasonable by the Debtors based upon their business judgement and input form their advisors, some of the assumptions in the Liquidation Analysis would likely not materialize resulting in materially different results in an actual chapter 7 liquidation.

**Gawker Media LLC, et al.,**
**Liquidation Analysis**

### LIQUIDATION VALUE BREAKDOWN

($ in thousands)

ENTITY: **Gawker Media LLC**

| | Notes | Net Book Value (NBV) | Recovery | | | |
|---|---|---|---|---|---|---|
| | | | Low | | High | |
| | | | % NBV | $ | % NBV | $ |
| **Assets** | | | | | | |
| Cash and cash equivalents | A | $53,869.7 | 100.0% | $53,869.7 | 100.0% | $53,869.72 |
| Restricted cash | B | 1,149.0 | 100.0% | 1,149.0 | 100.0% | 1,149.0 |
| Intangible assets | C | - | | - | | - |
| Intercompany receivables | D | 4,739.3 | 100.0% | 4,739.3 | 100.0% | 4,739.3 |
| Insider loan receivable | E | - | | - | | - |
| Tax refunds | F | 554.0 | 80.0% | 443.2 | 100.0% | 554.0 |
| Short-term investments | G | 100.0 | 50.0% | 50.0 | 100.0% | 100.0 |
| Gawker Hungary Distribution | H | - | | - | | - |
| **Gross liquidation proceeds** | | **$60,412.0** | | **$60,251.2** | | **$60,412.0** |

| | Notes | Total Cost | Low | | High | |
|---|---|---|---|---|---|---|
| | | | % | $ | % | $ |
| **Liquidation Costs** | | | | | | |
| Trustee Fees | I | | | (1,807.5) | | (1,812.4) |
| Trustee Professionals | J | (1,083.1) | 120% | (1,299.7) | 80% | (866.5) |
| **Total liquidation costs** | | **($1,083.1)** | | **($3,107.3)** | | **($2,678.8)** |
| **Proceeds available for distribution** | | **$59,328.8** | | **$57,143.9** | | **$57,733.1** |

### DISTRIBUTION OF LIQUIDATION PROCEEDS

| | Notes | Total Claim | Low | | High | |
|---|---|---|---|---|---|---|
| | | | % Claim | $ | % Claim | $ |
| **Proceeds available for distribution** | | **$59,328.8** | | **$57,143.9** | | **$57,733.1** |
| **Less: Secured Claims** | | | | | | |
| 2nd Lien Make Whole | K | (1,875.0) | 100.0% | (1,875.0) | 50.0% | (937.5) |
| **Total Secured Claims** | | **($1,875.0)** | **100.0%** | **($1,875.0)** | **50.0%** | **($937.5)** |
| **Remaining proceeds for distribution** | | | | **$55,268.9** | | **$56,795.6** |
| **Less: Priority claims** | | | | | | |
| Income tax obligations | L | - | | - | | - |
| Sales and Use tax audit claim | L | (500.0) | 100.0% | (500.0) | 100.0% | (500.0) |
| Other priority tax claims | L | (300.0) | 100.0% | (300.0) | 100.0% | (300.0) |
| **Total priority claims** | | **($800.0)** | **100.0%** | **($800.0)** | **100%** | **($800.0)** |
| **Remaining proceeds for distribution** | | | | **$54,468.9** | | **$55,995.6** |
| **Less: Unsecured Claims** | | | | | | |
| Unsecured claims [1] | M | (36,000.0) | 90.6% | (32,616.5) | 93.1% | (33,530.7) |
| Intercompany claims | M | (24,119.3) | 90.6% | (21,852.4) | 93.1% | (22,464.9) |
| **Total unsecured claims** | | **(60,119.3)** | **90.6%** | **(54,468.9)** | **93.1%** | **(55,995.6)** |
| **Remaining proceeds for distribution** | | | | **$0.0** | | **$0.0** |

[1] Predominantly litigation claims

**Gawker Media LLC, et al.,**
**Liquidation Analysis**

### LIQUIDATION VALUE BREAKDOWN

*($ in thousands)*      ENTITY:

| | Notes | Net Book Value (NBV) | Gawker Hungary Recovery | | | |
|---|---|---|---|---|---|---|
| | | | Low | | High | |
| | | | % NBV | $ | % NBV | $ |
| **Assets** | | | | | | |
| Cash and cash equivalents | A | $33,970.3 | 100.0% | $33,970.33 | 100.0% | $33,970.33 |
| Restricted cash | B | 127.7 | 100.0% | 127.7 | 100.0% | 127.7 |
| Intangible assets | C | 530.0 | 0.0% | - | 50.0% | 265.0 |
| Intercompany receivables | D | 23,802.1 | 90.6% | 21,565.0 | 93.1% | 22,169.5 |
| Insider loan receivable | E | - | | - | | - |
| Tax refunds | F | - | | - | | - |
| Short-term investments | G | - | | - | | - |
| Gawker Hungary Distribution | H | - | | - | | - |
| **Gross liquidation proceeds** | | **$58,430.1** | | **$55,663.0** | | **$56,532.5** |

| | Notes | Total Cost | Low | | High | |
|---|---|---|---|---|---|---|
| | | | % | $ | % | $ |
| **Liquidation Costs** | | | | | | |
| Trustee Fees | I | | | (1,669.9) | | (1,696.0) |
| Trustee Professionals | J | (716.9) | 120% | (860.3) | 80% | (573.5) |
| **Total liquidation costs** | | **($716.9)** | | **($2,530.2)** | | **($2,269.5)** |
| **Proceeds available for distribution** | | **$57,713.2** | | **$53,132.9** | | **$54,263.0** |

### DISTRIBUTION OF LIQUIDATION PROCEEDS

| | Notes | Total Claim | Low | | High | |
|---|---|---|---|---|---|---|
| | | | % Claim | $ | % Claim | $ |
| **Proceeds available for distribution** | | **$57,713.2** | | **$53,132.9** | | **$54,263.0** |
| **Less: Secured Claims** | | | | | | |
| 2nd Lien Make Whole | K | (1,875.0) | 100.0% | (1,875.0) | 50.0% | (937.5) |
| **Total Secured Claims** | | **($1,875.0)** | **100.0%** | **($1,875.0)** | **50.0%** | **($937.5)** |
| **Remaining proceeds for distribution** | | | | **$51,257.9** | | **$53,325.5** |
| **Less: Priority claims** | | | | | | |
| Income tax obligations | L | (8,048.0) | 100.0% | (8,048.0) | 100.0% | (8,048.0) |
| Sales and Use tax audit claim | L | - | | - | | - |
| Other priority tax claims | L | - | | - | | - |
| **Total priority claims** | | **($8,048.0)** | **100.0%** | **($8,048.0)** | **100.0%** | **($8,048.0)** |
| **Remaining proceeds for distribution** | | | | **$43,209.9** | | **$45,277.5** |
| **Less: Unsecured Claims** | | | | | | |
| Unsecured claims [1] | M | - | | - | | - |
| Intercompany claims | M | (4,739.25) | 100.0% | (4,739.3) | 100.0% | (4,739.3) |
| **Total unsecured claims** | | **(4,739.3)** | **100.0%** | **(4,739.3)** | **100.0%** | **(4,739.3)** |
| **Remaining proceeds for distribution** | | | | **$38,470.6** | | **$40,538.3** |

[1] Predominantly litigation claims

**Gawker Media LLC, et al.,**
**Liquidation Analysis**

### LIQUIDATION VALUE BREAKDOWN

($ in thousands)

ENTITY: **Gawker Media Group, Inc.**

| | Notes | Net Book Value (NBV) | Recovery | | | |
|---|---|---|---|---|---|---|
| | | | Low | | High | |
| | | | % NBV | $ | % NBV | $ |
| **Assets** | | | | | | |
| Cash and cash equivalents | A | $7.8 | 100.0% | $7.77 | 100.0% | $7.77 |
| Restricted cash | B | - | 100.0% | - | 100.0% | - |
| Intangible assets | C | - | 80.0% | - | 100.0% | - |
| Intercompany receivables | D | 317.2 | 90.6% | 287.3 | 93.1% | 295.4 |
| Insider loan receivable | E | 201.5 | 0.0% | - | 100.0% | 201.5 |
| Tax refunds | F | - | 80.0% | - | 100.0% | - |
| Short-term investments | G | - | 80.0% | - | 100.0% | - |
| Gawker Hungary Distribution | H | | | 38,470.6 | | 40,538.3 |
| **Gross liquidation proceeds** | | **$526.4** | | **$38,765.7** | | **$41,042.9** |

| | Notes | Total Cost | Low | | High | |
|---|---|---|---|---|---|---|
| | | | % | $ | % | $ |
| **Liquidation Costs** | | | | | | |
| Trustee Fees | I | | | (8.9) | | (15.1) |
| Trustee Professionals | J | (200.0) | 120% | (240.0) | 80% | (160.0) |
| **Total liquidation costs** | | **($200.0)** | | **($248.9)** | | **($175.1)** |
| **Proceeds available for distribution** | | **$326.4** | | **$38,516.9** | | **$40,867.8** |

### DISTRIBUTION OF LIQUIDATION PROCEEDS

| | Notes | Total Claim | Low | | High | |
|---|---|---|---|---|---|---|
| | | | % Claim | $ | % Claim | $ |
| **Proceeds available for distribution** | | **$326.4** | | **$38,516.9** | | **$40,867.8** |
| **Less: Secured Claims** | | | | | | |
| 2nd Lien Make Whole | K | (3,750.0) | 100.0% | (3,750.0) | 50.0% | (1,875.0) |
| **Total Secured Claims** | | **($3,750.0)** | **100.0%** | **($3,750.0)** | | **($1,875.0)** |
| **Remaining proceeds for distribution** | | | | **$34,766.9** | | **$38,992.8** |
| **Less: Priority claims** | | | | | | |
| Income tax obligations | L | - | | - | | - |
| Sales and Use tax audit claim | L | - | | - | | - |
| Other priority tax claims | L | - | | - | | - |
| **Total priority claims** | | **$0.0** | **0.0%** | **$0.0** | | **$0.0** |
| **Remaining proceeds for distribution** | | | | **$34,766.9** | | **$38,992.8** |
| **Less: Unsecured Claims** | | | | | | |
| Unsecured claims [1] | M | - | | - | | - |
| Intercompany claims | M | - | | - | | - |
| **Total unsecured claims** | | **-** | **0.0%** | **-** | **0.0%** | **-** |
| **Remaining proceeds for distribution** | | | | **$34,766.9** | | **$38,992.8** |

[1] Predominantly litigation claims

**Specific Notes to the Liquidation Analysis:**

*Gross Liquidation Proceeds*

    A. **Cash and cash equivalents**
- The cash and cash equivalents balances at Gawker Media and Gawker Hungary represent the sale proceeds from the sale of substantially all the assets of the Debtors. The liquidation proceeds of cash and cash equivalents for all entities holding cash is estimated to be 100% of the pro forma balance. The pro forma balance as of the Chapter 7 Conversion Date is based on the cash balances at September 9, 2016 adjusted for ongoing general operations and uses of cash, including restructuring professionals, based on projections prepared by the Debtors and their advisors.

    B. **Restricted cash**
- The liquidation proceeds of restricted cash for all entities holding restricted cash is estimated to be 100% of the pro forma balance. This represents amounts held in escrow which are expected to be fully recovered.

    C. **Intangible assets**
- Intangible assets represent the intellectual property associated with Gawker.com Assets. In a liquidation, the recovery is based on the market value of the intellectual property which is heavily dependent on the outcome of the litigation and Plan Settlements. Recovery range was assumed to be between 0% to 50% of the net book value based on the Debtors' business judgement and input from their advisors.

    D. **Intercompany receivables**
- Intercompany receivables recoveries are driven by the actual calculated recoveries by entity in the Liquidation Analysis. These recoveries are heavily dependent on the underlying assumptions of the analysis.

    E. **Insider loan receivable**
- The insider loan is an unsecured loan to Denton. The recovery of this loan is dependent on Denton's bankruptcy estate and plan of reorganization. In a liquidation, a recovery range of 0% to 100% is assumed.

    F. **Tax refunds**
- The tax refund represents income tax refunds for overpayment of taxes relating to fiscal year 2015. In a liquidation, a recovery range of 80% to 100% is assumed.

G. **Short-term investments**
- The short-term investments represent stocks held in privately owned entities. Based on recent transactions and market value of the stock, a recovery range of 50% to 100% is assumed in a liquidation.

H. **Gawker Hungary Distribution**
- The distribution from Gawker Hungary to GMGI is based on actual low and high recoveries at the Gawker Hungary entity based on the Liquidation Analysis. This represents residual proceeds available after satisfaction of all claims.

*Liquidation Costs*

I. **Trustee fees**
- Compensation for the Trustee would be limited to fee guidelines in section 326(a) of the Bankruptcy Code. The Debtors have assumed trustee fees of 3% of the gross liquidated proceeds to be distributed.

J. **Trustee professionals**
- Compensation for the Trustee's professionals (counsel and other legal, financial, and professional services) during the Chapter 7 Case are estimated based on the duration assumption of the liquidation process. In a liquidation, a range of 80% - 120% of estimates are expected.

*Claims*

K. **Secured claims**
- The secured claims represent the Second Lien Make-Whole Claim. It is assumed that in a Chapter 7 liquidation, the Plan Settlement with the holder of the Second Lien Make-Whole Claim will not be consummated and the recovery range on the Claim is estimated to be between 50% to 100%.

L. **Priority claims**
- The priority claims include fiscal year 2016 income tax obligations at Gawker Hungary and Sales and Use tax audit claim and other priority tax claims at Gawker Media. Based on the assumptions used in the Liquidation Analysis, a full recovery of priority claims is expected at each entity.

M. **Unsecured claims**
- *Unsecured claims* – Based on the Plan Settlements and review of claims, the Debtors estimate there would be no more than $36 million of Allowed Claims at Gawker Media, including contemplated settlements in the Plan and an estimate

for ongoing Article Lawsuits. The unsecured claims are predominately litigation claims. The Liquidation Analysis projects a blended recovery rate of approximately 90.6% - 93.1% for these Gawker Media claims.

- *Intercompany claims* – The total intercompany claim at each entity is based on the net book value of the intercompany loans and payables. Intercompany claims against Gawker Hungary are expected to be fully recovered based on the assumptions in the Liquidation Analysis. Intercompany claims against Gawker Media are projected to have a recovery rate of approximately 90.6% - 93.1%.

**Statement of Limitations**

The determination of the costs of, and proceeds from, the hypothetical liquidation of the Debtors' assets in a chapter 7 case is an uncertain process involving the use of significant estimates and assumptions that, although considered reasonable by the Debtors based upon their business judgment and input from their advisors, are inherently subject to uncertainties and contingencies beyond the control of the Debtors and their advisors. Inevitably, some assumptions in the Liquidation Analysis may not materialize in an actual chapter 7 liquidation, and unanticipated outcomes could materially affect the ultimate results in a chapter 7 liquidation. These include but are not limited to: (i) the uncertain market value of the few remaining non-cash assets; (ii) unanticipated expenses which could be required to litigate the allocation of assets; (iii) the ultimate characterization of intercompany claims, both from the U.S. and Hungarian perspective; and (iv) the outcome and associated substantial legal costs of pending litigation against Gawker Media in relation to the Article Lawsuits, for which an aggregate amount of damages asserted by plaintiffs or awarded to plaintiffs exceeds $500 million. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the proceeds that would be generated if the Debtors' assets were liquidated in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by independent accountants.

NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REFLECTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY. WHILE THE DEBTORS MAKE NO ASSURANCES, IT IS POSSIBLE THAT PROCEEDS RECEIVED FROM THE SALE OF INTANGIBLE ASSETS COULD BE MORE THAN IN THE HYPOTHETICAL CHAPTER 7 LIQUIDATION.

In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of Claims listed on the Debtors' financial statements. In addition, the Liquidation Analysis includes estimates for Claims not currently asserted in the Chapter 11 Bankruptcy Cases, but which could be asserted and allowed in a Chapter 7 liquidation, including unpaid Chapter 11 Administrative Claims, and Chapter 7 administrative claims such as wind down costs and trustee

fees. To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims used for purposes of preparing this Liquidation Analysis. Therefore, the Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and Interests under the Plan.

NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTORS. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.