**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re                                                : Chapter 11

Gawker Media LLC, *et al.*,[1]         : Case No. 16-11700 (SMB)

          Debtors.               : (Jointly Administered)

---------------------------------------------------------------x

### AFFIDAVIT OF PUBLICATION

I, Mark Brown, depose and say that I am employed by Prime Clerk LLC ("***Prime Clerk***"), the claims and noticing agent for the Debtors in the above-captioned Chapter 11 cases.

This Affidavit of Publication includes a sworn statement verifying that the *Notice of Voting and Objection Deadlines Regarding Amended Joint Chapter 11 Plan of Liquidation and Proposed Injunctions and Third-Party Releases*, as conformed for publication, was published on November 10, 2016, in the national edition of *USA Today*, as described in **Exhibit A** attached hereto.

Dated: November 11, 2016

                                                                                 Mark Brown

State of New York
County of New York

Subscribed and sworn to (or affirmed) before me on November 11, 2016, by Mark Brown, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature: _____

                                          **JAMES DALOIA**
                                **Notary Public, State of New York**
                                     No. 02DA6171472
                                **Qualified in Nassau County**
                              **Commission Expires Nov. 22, 2019**

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10020. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10020.

SRF 12062

**Exhibit A**



## VERIFICATION OF PUBLICATION

**COMMONWEALTH OF VIRGINIA**
**COUNTY OF FAIRFAX**

Being duly sworn, Toussaint Hutchinson says that he is the principal clerk of USA TODAY, and is duly authorized by USA TODAY to make this affidavit, and is fully acquainted with the facts stated herein: on **Thursday, November 10, 2016-** the following legal advertisement – **In re Gawker Media LLC, et al.–** was published in the national edition of **USA TODAY.**

_____
Principal Clerk of USA TODAY
November 10, 2016

This 10th day of November month 2016 year.

_____
Notary Public

Commonwealth of Virginia
Karen R. Levy
Notary Public
Commission No. 287084
My Commission Expires 2/29/2020

# Minimum wage gets bump to at least $12 in four states

Kevin McCoy
@kmccoynyc
USA TODAY

The lowest-paid hourly workers in four states won a boost in their minimum wage to at least $12-an-hour on Tuesday.

Voters in Arizona, Colorado, Maine and Washington approved increases in their states' respective hourly pay rates to at least $12 by 2020, according to late election results compiled by the Associated Press and Ballotpedia, a non-partisan online encyclopedia of elections and politics.

Roughly 2 million workers in the four states will see their wages increase, according to the National Employment Law Project, a worker advocacy organization.

Separately, South Dakota voters rejected a law that would have reduced the state's $8.55 per hour minimum wage to $7.50 for non-tipped employees under age 18.

The results further expand the pay gap with the 21 states where workers are covered by the $7.50-an-hour federal minimum wage, U.S. Department of Labor data show. Those states collectively account for less than half the nation's workforce.

YES ON 206!

ASTRID GALVAN, AP

**Workers with Living United for Change in Arizona lobby in Phoenix for higher wages.**

In Arizona, the outcome means the state's $8.05-an-hour minimum wage will rise to $10 next year and gradually increase to $12 in 2020. Starting in 2021, the pay rate will be adjusted annually based on the state's cost of living.

Colorado voters similarly approved a gradual hike in the state's $8.31-an-hour minimum wage, starting with an increase to $9.30 per hour next year. The pay rate will increase 90 cents in successive years until it reaches $12 per hour in 2020. The rate will also get an annual cost of living adjustment as of 2021.

Maine's $7.50-an-hour will rise to $12 by 2020. The change will start with an increase to $9 per hour in 2017, followed by three years of $1-an-hour hikes.

Increases after that would be determined by inflation.

Washington voters approved an even larger increase.

The Western state's $9.47-an-hour minimum wage will rise to $13.50 by 2020, starting with a jump to $11 next year.

Cost of living adjustments would determine the rate after 2020.

The approvals are the latest in a national movement to boost incomes for the nation's lowest-paid employees.

In recent years, approximately 20 states and dozens of cities and counties have approved minimum wage hikes via legislation or voter referendums while Congress has kept the federal pay floor unchanged.

The latest increases "will bring very badly needed pay hikes for 2.3 million workers," said Paul Sonn, general counsel for the National Employment Law Project.

He called minimum wage guarantees "one of the most popular public policies in America."

# Automakers reach out despite trade threats

Chris Woodyard
@ChrisWoodyard
USA TODAY

The nation's auto industry extended an olive branch Wednesday to Donald Trump even as it awaited further clues on whether the president-elect will follow through on campaign threats to end trade agreements.

The nervousness was reflected in auto-related stocks, which fell but not by a lot, even as the market in general rallied. Among Detroit's Big 3 early in the day, Ford was down 2.8%, General Motors was off 4.4%, and Fiat Chrysler fell 4.1%.

The auto industry will watch closely to see whether Trump immediately moves to end the North American Free Trade Agreement, which has become a cornerstone of the auto industry's opening of many plants in Mexico to take advantage of low labor rates and less regulation.

Ford Motor was singled out by Trump during the campaign for telling investors it has relocated all its small-car production to Mexico — even though the automaker says the move didn't cost a single American job.

Ford was quick to offer its congratulations Wednesday to Trump and the new Congress and indicate it's ready to work with the president on matters related to jobs and economy.

"We agree with Mr. Trump that it is really important to unite the country — and we look forward to working together to support economic growth and jobs," the statement read.

General Motors emphasized the importance of U.S. manufacturing in its message.

"GM looks forward to working with President-elect Donald J. Trump and the new Congress on policies that support a strong and competitive U.S. manufacturing base," the statement said. "GM will continue to do its part to transform the future of mobility and contribute to America's competitive strength."

The auto industry has become increasingly global as parts and cars are made around the world and shipped to different markets. Largely because of NAFTA, almost a dozen automakers have located plants in Mexico, shipping cars for sale in the USA.

They include not only Ford and General Motors but a raft of Asian and German makers, from Toyota and Honda to Volkswagen.

MARKETPLACE TODAY

To view more Classified listings, visit: www.USATODAYClassifieds.com

For advertising information: 1.800.397.0070 www.russelljohns.com/usat

NOTICES

LEGAL NOTICE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br>Gawker Media LLC, *et al.*,[1]<br>Debtors. | Chapter 11<br>Case No. 16-11700 (SMB)<br>(Jointly Administered) |

**NOTICE OF VOTING AND OBJECTION DEADLINES REGARDING AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION AND PROPOSED INJUNCTIONS AND THIRD-PARTY RELEASES**

**THE FOLLOWING CONCERNS THE APPROVAL PROCESS FOR A PROPOSED AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION. PLEASE TAKE NOTE THAT THE PLAN OF LIQUIDATION INCLUDES THE INJUNCTIONS AND THIRD-PARTY RELEASES DESCRIBED IN PARAGRAPH 8 OF THIS NOTICE.**

**TO ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS AND PARTIES IN INTEREST:**

**1. Solicitation of Votes on Amended Joint Chapter 11 Plan of Liquidation.** Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft., have filed a Amended Joint Chapter 11 Plan of liquidation.[2] The Bankruptcy Court has approved a disclosure statement for that Plan and authorized the Debtors to solicit votes on such Plan from creditors and equity holders in certain classes. The Bankruptcy Court has also set a hearing to consider Confirmation of the Plan.

**2. Voting Record Date.** The Voting Record Date for purposes of determining (a) which Holders of Claims or Equity Interests are entitled to vote on the Plan and (b) whether Claims or Equity Interests have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of the Claim was October 31, 2016.

**3. Voting Deadline.** If you held a Claim against or Equity Interest in one of the Debtors as of the Voting Record Date and timely filed a proof of claim or, in certain instances, such Claim or Equity Interest was listed on the Debtors' schedules, you are entitled to vote on the Plan. For your vote to be counted in connection with Confirmation of the Plan, you must follow the appropriate voting instructions, complete all required information on the Ballot, and execute and return the completed Ballot so that it is actually received in accordance with the voting instructions by **December 5, 2016, at 5:00 p.m., New York Time** (the "Voting Deadline"). Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote on the Plan.

**4. Solicitation Packages.** Solicitation Packages (except the Ballots) may be obtained at no charge from the claims agent retained by the Debtors in these chapter 11 cases (the "Notice and Claims Agent") by: (a) accessing the Notice and Claims Agent's website at https://cases.primeclerk.com/gawker/; (b) writing to the Notice and Claims Agent, by first-class mail, hand delivery, or overnight mail, Gawker Media LLC, et al., Prime Clerk LLC, 830 Third Avenue, 3rd Floor, New York, NY 10022; or (c) calling the Notice and Claims Agent at (855) 639-3375. You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at www.nysb.uscourts.gov. The Notice and Claims Agent will answer questions regarding the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, provide additional copies of all materials, and oversee the voting tabulation.

**5. Objections to the Plan.** The Court has established **December 5, 2016, at 4:00 p.m., New York Time** (the "Plan Objection Deadline"), as the deadline for filing and serving objections to the Confirmation of the Plan. Any objection to the Plan must (a) be in writing, (b) conform to the Bankruptcy Rules and the Local Bankruptcy Rules, (c) state the name and address of the objecting party and the amount and nature of the Claim or Equity Interest, (d) state with particularity the basis and nature of any objection to the Plan, (e) propose a modification to the Plan that would resolve such objection (if applicable), and (f) be filed, contemporaneously with a proof of service, with the Court and served so that it is actually received by each of the notice parties identified herein by the Plan Objection Deadline: **(i) Debtors:** Gawker Media LLC, c/o Opportune LLP, 10 East 53rd Street, 33rd Floor, New York, NY 10022, Attn: William D. Holden; **(ii) Counsel to the Debtors:** Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Gregg M. Galardi, D. Ross Martin, Joshua Y. Sturm, Jonathan M. Agudelo; **(iii) United States Trustee:** Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Room 1006, New York, NY 10014, Attn: Greg Zipes, Susan Arbeit; **(iv) Counsel to the Committee:** Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attn: Sandeep Qusba; and **(v) Counsel to the Second Lien Lender:** Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 606011, Attn: David Heller, Keith A. Simon, 885 Third Avenue, New York, New York 10022, Attn: Keith A Simon.

**6. Confirmation Hearing.** A hearing to confirm the Plan will commence on **December 13, 2016, at 10:00 a.m., New York Time** (the "Confirmation Hearing"), before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York. Please be advised that the Confirmation Hearing may be continued from time to time by the Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment being filed with the Court and served on parties entitled to notice under Bankruptcy Rule 2002 and the local rules of the Court or otherwise. The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing as permitted by the Bankruptcy Code.

**7. Plan Supplement.** The Debtors intend to file a Plan Supplement prior to the Confirmation Hearing that includes, among other things, the list of assumed Executory Contracts and Unexpired Leases. The Debtors do not intend to serve copies of the Plan Supplement on all parties in interest in these chapter 11 cases; the Plan Supplement, however, may be obtained from the Notice and Claims Agent in accordance with the preceding paragraph.

**8. Release, Exculpation, and Injunction Language in the Plan.** Please take notice that Article 9 of the Plan contains the following release, exculpation, and injunction provisions:

**EXCULPATION. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW AND APPROVED IN THE CONFIRMATION ORDER, NONE OF THE DEBTORS OR THE COMMITTEE, NOR ANY OF THEIR RESPECTIVE FORMER OR CURRENT DIRECTORS, OFFICERS, MEMBERS, EMPLOYEES, ADVISORS, AFFILIATES, ATTORNEYS, ACCOUNTANTS, FINANCIAL ADVISORS, INVESTMENT BANKERS, RESTRUCTURING ADVISORS, REPRESENTATIVES, OR AGENTS SHALL HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR EQUITY INTEREST FOR ANY ACT OR OMISSION IN CONNECTION WITH OR ARISING OUT OF, (I) ANY ACT, OMISSION, TRANSACTION, OR OTHER OCCURRENCE TAKING PLACE PRIOR TO THE EFFECTIVE DATE AND IN ANY WAY RELATING TO THE COMMENCEMENT AND PROSECUTION OF THE BANKRUPTCY CASES, (II) THE FORMULATION, NEGOTIATION, CONFIRMATION, OR CONSUMMATION OF THE PLAN, (III) THE SOLICITATION OF ACCEPTANCES OF THE PLAN, (IV) THE ADMINISTRATION OF THE PLAN OR PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, OR (V) THE ENFORCEMENT OF THE TERMS OF THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, AGREEMENTS, AND DOCUMENTS DELIVERED THEREUNDER; PROVIDED, HOWEVER, THAT THE FOREGOING SHALL NOT AFFECT THE LIABILITY OF ANY PERSON THAT OTHERWISE WOULD RESULT FROM ANY SUCH ACTIONS OR OMISSIONS CONSTITUTING WILLFUL MISCONDUCT OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER. IN ADDITION, THE EXCULPATED PARTIES SHALL, IN ALL RESPECTS, BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN. NOTHING HEREIN SHALL LIMIT THE LIABILITY OF THE PROFESSIONAL TO THEIR RESPECTIVE CLIENTS PURSUANT TO THE APPLICABLE ATTORNEY DISCIPLINARY RULES.**

**INJUNCTION AGAINST ASSERTING CLAIMS OF DEBTORS. ON AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES OTHER THAN THE PLAN ADMINISTRATOR ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR PROCEEDING (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEBT, RIGHT, OR CAUSE OF ACTION OF THE DEBTORS FOR WHICH A DEBTOR RETAINS SOLE AND EXCLUSIVE AUTHORITY TO PURSUE IN ACCORDANCE WITH ARTICLE 4 OF THE PLAN.**

**INJUNCTION AGAINST INTERFERENCE WITH PLAN. UPON THE ENTRY OF THE CONFIRMATION ORDER, EXCEPT AS EXPRESSLY PROVIDED IN THE PLAN, THE CONFIRMATION ORDER, OR A SEPARATE ORDER OF THE BANKRUPTCY COURT, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR EQUITY INTERESTS IN ANY OR ALL OF THE DEBTORS OR RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS (WHETHER PROOF OF SUCH CLAIMS OR EQUITY INTERESTS HAS BEEN FILED OR NOT), ALONG WITH THEIR RESPECTIVE PRESENT OR FORMER EMPLOYEES, PRESENT OR FORMER INDEPENDENT CONTRACTORS, PRESENT OR FORMER CONTENT PROVIDERS, PRESENT OR FORMER WRITERS, AGENTS, OFFICERS, DIRECTORS OR PRINCIPALS ARE PERMANENTLY ENJOINED, ON AND AFTER THE EFFECTIVE DATE, FROM (I) COMMENCING, CONDUCTING, OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION, OR OTHER PROCEEDING OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ANY PROCEEDING IN A JUDICIAL, ARBITRAL, ADMINISTRATIVE OR OTHER FORUM) AGAINST OR AFFECTING (A) THE DEBTORS AND THE PROPERTY OF ANY OF THE DEBTORS AND (B) THE RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS OR THE PROPERTY OF ANY OF THE RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS, TO THE EXTENT SUCH PROCEEDINGS AGAINST THE RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS ARISE OUT OF OR RELATE TO SUCH RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS' WORK PERFORMED OR CONTENT PROVIDED ON BEHALF OF THE DEBTORS, (II) ENFORCING, LEVYING, ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PREJUDGMENT ATTACHMENT), COLLECTING, OR OTHERWISE RECOVERING BY ANY MANNER OR MEANS, WHETHER DIRECTLY OR INDIRECTLY, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST (A) THE DEBTORS AND THE PROPERTY OF ANY OF THE DEBTORS AND (B) THE RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS OR THE PROPERTY OF ANY OF THE RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS, TO THE EXTENT SUCH ACTIONS RELATE TO WORK PERFORMED OR CONTENT PROVIDED ON BEHALF OF THE DEBTORS, (III) CREATING, PERFECTING, OR OTHERWISE ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY ENCUMBRANCE OF ANY KIND AGAINST (A) THE DEBTORS AND THE PROPERTY OF ANY OF THE DEBTORS AND (B) THE RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS OR THE PROPERTY OF ANY OF THE RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS, TO THE EXTENT SUCH ACTIONS RELATE TO WORK PERFORMED OR CONTENT PROVIDED ON BEHALF OF THE DEBTORS, (IV) ASSERTING ANY RIGHT OF SETOFF, DIRECTLY OR INDIRECTLY, AGAINST ANY OBLIGATION DUE (A) THE DEBTORS AND THE PROPERTY OF ANY OF THE DEBTORS AND (B) THE RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS OR THE PROPERTY OF ANY OF THE RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS, TO THE EXTENT SUCHACTIONS RELATE TO WORK PERFORMED OR CONTENT PROVIDED ON BEHALF OF THE DEBTORS, EXCEPT AS CONTEMPLATED OR ALLOWED BY THE PLAN, (V) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN, AND (VI) TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN; PROVIDED, HOWEVER, THAT THE FOREGOING INJUNCTION SHALL NOT APPLY TO ACTIONS OR OMMISSIONS THAT OCCUR AFTER THE EFFECTIVE DATE.**

**THIRD-PARTY RELEASES OF RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS. ON THE EFFECTIVE DATE AND EFFECTIVE SIMULTANEOUSLY WITH THE EFFECTIVENESS OF THIS PLAN, FOR GOOD AND VALUABLE CONSIDERATION, TO THE FULLEST EXTENT PERMITTED UNDER APPLICABLE LAW, EACH HOLDER OF A CLAIM OR EQUITY INTEREST THAT HAS RECEIVED OR IS DEEMED TO HAVE RECEIVED DISTRIBUTION(S) MADE UNDER THE PLAN SHALL BE DEEMED TO HAVE FOREVER RELEASED UNCONDITIONALLY EACH OF THE RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEBTS, RIGHTS, REMEDIES, CAUSES OF ACTION, AND LIABILITIES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT ARE OR MAY BE BASED IN WHOLE OR IN PART UPON ANY ACT, OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE OR EXISTING ON OR PRIOR TO THE PETITION DATE ARISING OUT OF OR RELATING TO SUCH RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS' WORK PERFORMED OR CONTENT PROVIDED ON BEHALF OF THE DEBTORS THAT ARE NOT THE RESULT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER, AND FOR WHICH THE DEBTORS HAVE DEBTOR INDEMNIFICATION OBLIGATIONS, PROVIDED, HOWEVER, THAT THE FOREGOING THIRD-PARTY RELEASES WILL APPLY ONLY TO RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS WHO VOTE IN FAVOR OF THE PLAN, AND ONLY TO THE EXTENT THAT EACH SUCH RELEASED EMPLOYEE AND INDEPENDENT CONTRACTOR WAIVES AND RELEASES ANY AND ALL OF ITS CLAIMS AGAINST THE DEBTORS FOR DEBTOR INDEMNIFICATION OBLIGATIONS, EXCEPT FOR ANY AMOUNTS ALREADY DUE AND OWING AS OF THE EFFECTIVE DATE.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE EXCULPATION, AND INJUNCTION PROVISIONS INCLUDED THEREIN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

Dated: November 4, 2016, New York, New York, */s/ Gregg M. Galardi*, ROPES & GRAY LLP, Gregg M. Galardi, D. Ross Martin, Joshua Y. Sturm, Jonathan Agudelo, 1211 Avenue of the Americas, New York, NY 10036-8704, Telephone: (212) 596-9000, Facsimile: (212) 596-9090, gregg.galardi@ropesgray.com, ross.martin@ropesgray.com, joshua.sturm@ropesgray.com, jonathan.agudelo@ropesgray.com, *Counsel to the Debtors and Debtors in Possession*

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

LEGAL NOTICE

## IF YOU PREPAID AN FHA-INSURED LOAN WITH SUNTRUST, YOUR LEGAL RIGHTS MAY BE AFFECTED BY A PROPOSED CLASS ACTION SETTLEMENT

**What is this Notice About?**

A federal court has preliminarily certified a class of borrowers who prepaid FHA-insured loans with SunTrust Mortgage, Inc. ("SunTrust") in the matter of Sarah Felix, et al. v. SunTrust Mortgage, Inc., No. 2:16-CV-00066-RWS, pending in the United States District Court for the Northern District of Georgia, Gainesville Division (the "Action").

The Action claims that SunTrust breached the notes it entered into with Plaintiff and the Class when it charged post-payment interest (*i.e.*, interest for a time period after the loan was paid in full) in a manner that violated the HUD regulations incorporated into the notes. Plaintiff also claims that SunTrust violated Georgia's usury laws. SunTrust denies liability.

In August 2016, the parties reached a settlement which the Court preliminarily approved on September 9, 2016. The Court will hold a Final Approval Hearing on February 6, 2017.

***This Notice is only a summary of your legal rights and choices. For more complete information, please read the full Notice, which you can obtain by visiting www.FelixMortgageSettlement.com.***

**Am I a Member of the Class?**

The Class consists of any person who had an FHA-insured loan for which (i) the date of the note is during a period beginning on June 1, 1996 and ending on January 20, 2015; (ii) SunTrust or a SunTrust affiliate–as of the date the total amount due on the loan was brought to zero–was the lender, mortgagee, or otherwise held legal title to the note; (iii) SunTrust collected interest for any period after the total amount due on the loan was brought to zero (*i.e.*, SunTrust collected "post-payment interest"); and (iv) SunTrust collected post-payment interest during the statute of limitations period applicable for the loan as shown by Exhibit A to the Settlement Agreement (a copy of which can be obtained by visiting www.FelixMortgageSettlement.com). Persons who had a loan brought to zero on the last calendar day of a month or on the first business day of a month are not included in the Class. Also excluded from the Class is anyone who received a payoff form SunTrust began using on or after April 1, 2016.

If you believe you are a Class member, but you did not receive a copy of the full Notice in the mail, you must contact the Administrator **immediately** by writing to: Felix Mortgage Settlement Administrator, P.O. Box 43034, Providence, RI 02940-3034.

**What Are The Terms of the Settlement?**

The Settlement requires that SunTrust pay Three Million Five Hundred Thousand Dollars ($3,500,000) (the "Settlement Fund"). The Settlement Fund will be used to pay Class members, as well as to pay Class Counsel's attorneys' fees and expenses and for a service award for the Plaintiff. Class Member Awards will be calculated as follows: (i) first, the Administrator will sum the total amount of post-payment interest SunTrust collected from all Class Members who do not opt-out of the Settlement; (ii) second, the Administrator will divide each Class Member's individual post-payment interest by the total amount of post-payment interest SunTrust collected from all Class Members who do not opt-out of the Settlement as calculated in (i) immediately above; and (iii) third, the Administrator will multiply the percentage calculated in (ii) immediately above by the Net Settlement Fund, with the calculation constituting the Class Member Award. Thus, by way of example, if SunTrust collected $100 in post-payment interest from Class Member X, $10,000,000 from all Class Members who do not opt-out and the Net Settlement Fund is $2.5 million, then Class Member X's Class Member Award would be $25; *i.e.* 100/10,000,000 x $2.5 million.

Plaintiff intends to seek a Class Representative Service Award from the Settlement Fund, which requires Court approval and will not exceed $7,500. Class Counsel will seek to have their expenses reimbursed and an award of attorneys' fees (a "Fee & Expense Award"), which requires Court approval and will not exceed 33% of the Settlement Fund or $1,155,000. The "Net Settlement Fund" is the amount of the $3.5 million Settlement Fund remaining after deductions for any Class Representative Service Award and Fee & Expense Award.

In addition to the monetary benefits, SunTrust agrees to certain injunctive relief as described in the Settlement.

**What Are My Rights?**

*Stay in the litigation as a class member.* To stay in the Class, you don't need to do anything. By staying in the Class, you are bound by all of the court's orders and have the right to recover from the Settlement Fund. You will give up any right you might have to sue SunTrust individually for all claims relating to post-payment interest. If you stay in the Class, you have the right to object to the Settlement. The process for objecting is described in the full Notice and the Settlement Agreement.

*Exclude Yourself.* If you don't want to be a part of the Class and want to keep any right to individually assert claims against SunTrust that you would otherwise give up by staying in the Class, you must exclude yourself from the Class by sending a valid exclusion request that is received by the Administrator by **January 2, 2017**. If you exclude yourself from the Class, you will not be bound by any of the Court's orders and you will not be able to participate in the Settlement. The full Notice explains how to opt out.

*Appear in the lawsuit.* If you stay in the Class, you may, but are not required to, appear through your own attorney (at your expense). Otherwise, Class counsel will represent you.

**Please read the full Notice carefully for additional details on how to exclude yourself or object. You can obtain the full Notice at www.FelixMortgageSettlement.com.**

When it comes to results
NOTHING WORKS LIKE
USA TODAY MARKETPLACE's
Classified Ads
1-800-397-0070

Classifieds work!
Place Your Ad HERE!
800-397-0070