ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Peter Walkingshaw (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| Gawker Media LLC, *et al.*,[1] | : | Case No. 16-11700 (SMB) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-------------------------------------------------------x

### NOTICE OF DEBTORS' MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 502(C) AND 1129 AND BANKRUPTCY RULES 3018 AND 3021 FOR APPROVAL OF CLAIMS ESTIMATION AND PLAN RESERVE PROCEDURES

**PLEASE TAKE NOTICE** that the undersigned have filed the attached *Debtors' Motion Pursuant to Bankruptcy Code Sections 105, 502(c) and 1129 and Bankruptcy Rules 3018 and 3021 for Approval of Claims Estimation and Plan Reserve Procedures* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will take place on **December 1, 2016 at 10:30 a.m. (Eastern Time)** before the Honorable Judge Stuart M. Bernstein, at the United States Bankruptcy Court for the Southern District of New York,

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022.  Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408,

Courtroom No. 723.

      **PLEASE TAKE FURTHER NOTICE** that responses to the Motion and the relief

requested therein, if any, shall be in writing, shall conform to the Federal Rules of Bankruptcy

Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall set forth

the basis for the response or objection and the specific grounds therefore, and shall be filed with

the Court electronically in accordance with General Order M-399 by registered users of the

Court's case filing system (the User's Manual for the Electronic Case Filing System can be

found at http://www.nysb.uscourts.gov, the official website for the Court), with a hard copy

delivered directly to chambers pursuant to Local Bankruptcy Rule 9028-1 and served so as to be

actually received no later than **November 28, 2016, at 4:00 p.m. (Eastern Time)** (the

"Response Deadline"), upon: (i) the Debtors, Gawker Media LLC, c/o Opportune LLP, Attn:

William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY

10022 (wholden@opportune.com); (ii) counsel for the Debtors, Ropes & Gray LLP, 1211

Avenue of the Americas, New York, New York 10036, Attn: Gregg M. Galardi

(gregg.galardi@ropesgray.com);  (iii) the Office of the United States Trustee for the Southern

District of New York, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Greg Zipes &

Susan Arbeit; (iv) the Internal Revenue Service, Attn: Centralized Insolvency Operation, 2970

Market Street, Philadelphia, PA 19104 (mimi.m.wong@irscounsel.treas.gov); (v) the United

States Attorney's Office for the Southern District of New York, Attn: Bankruptcy Division, 86

Chambers Street, 3rd Floor, New York, NY  10007 (david.jones6@usdoj.gov;

Jeffrey.Oestericher@usdoj.gov; Joseph.Cordaro@usdoj.gov; Carina.Schoenberger@usdoj.gov);

(vi) counsel to Cerberus Business Finance, LLC, as DIP Lender, Schulte Roth & Zabel LLP, 919

Third Avenue, New York, New York 10022, Attn: Adam C. Harris (adam.harris@srz.com);

(vii) counsel to US VC Partners LP, as Prepetition Second Lien Lender, Latham & Watkins LLP,

at both 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: David Heller

(david.heller@lw.com) and 885 Third Avenue, New York, New York 10022, Attn: Keith A.

Simon (keith.simon@lw.com); (viii) counsel for the Official Committee of Unsecured Creditors,

Simpson Thacher & Bartlett, 425 Lexington Ave., New York, NY 10017, Attn: Sandy Qusba

(squsba@stblaw.com) and William T. Russell (wrussell@stblaw.com); and (ix) parties that have

requested notice pursuant to Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written

response to the relief requested in the Motion by the Response Deadline, the Bankruptcy Court

may deem any opposition waived, treat the Motion as conceded, and enter an order granting the

relief requested in the Motion without further notice or hearing.

Dated: November 14, 2016
   New York, New York

        /s/ Gregg M. Galardi
        ROPES & GRAY LLP
        Gregg M. Galardi
        D. Ross Martin
        Peter Walkingshaw (admitted *pro hac vice*)
        1211 Avenue of the Americas
        New York, NY 10036-8704
        Telephone: (212) 596-9000
        Facsimile: (212) 596-9090
        gregg.galardi@ropesgray.com
        ross.martin@ropesgray.com
        peter.walkingshaw@ropesgray.com

        *Counsel to the Debtors and Debtors in*
        *Possession*

Hearing Date and Time: December 1, 2016 at 10:30 a.m. (Eastern Time)
Response Deadline: November 28, 2016 at 4:00 p.m. (Eastern Time)

ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Peter Walkingshaw (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
                                                  :

In re                                  :          Chapter 11
                                                  :

Gawker Media LLC, *et al.*,[2]      :          Case No. 16-11700 (SMB)
                                                  :

Debtors.                            :          (Jointly Administered)
                                                  :
-------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY CODE**
**SECTIONS 105, 502(C) AND 1129 AND BANKRUPTCY RULES 3018 AND 3021**
**FOR APPROVAL OF CLAIMS ESTIMATION AND PLAN RESERVE PROCEDURES**

       Gawker Media LLC ("Gawker Media"), Gawker Media Group, Inc. ("GMGI"), and

Gawker Hungary Kft. (f/k/a Kinja Kft., "Gawker Hungary") as debtors and debtors in possession

(collectively, the "Debtors") in the above-captioned cases (the "Bankruptcy Cases") hereby

submit this  motion (the "Motion") to request the entry of an order (the "Proposed Order"),

substantially in the form attached hereto as **Exhibit A**, authorizing and establishing certain

procedures for approving certain claims reserves and distributions and resolving certain

objections to confirmation of the Debtors' proposed amended joint chapter 11 plan of

---

[2] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022.  Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

liquidation, dated as of November 3, 2016 (as such plan may be amended or modified, the "Plan"), the confirmation hearing on which Plan is presently scheduled to commence on December 13, 2016 at 10:00 a.m. (the "Confirmation Hearing").    In support of this Motion, the Debtors respectfully represent and set forth as follows:

**Background**

**_General_**

1.    On June 10, 2016 (the "Petition Date"), Gawker Media filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").    On June 12, 2016, GMGI and Gawker Hungary each filed a voluntary petition for relief under the Bankruptcy Code.    The Debtors are operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    No request for the appointment of a trustee or examiner has been made in the Debtors' Bankruptcy Cases.    On June 24, 2012, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 62].

3.    On August 22, 2016, this Court entered the *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (II) Approving and Authorizing the Debtors' Entry Into the Asset Purchase Agreement and (III) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* [Docket No. 214] (the "Sale Order"), and on September 9, 2016, the Debtors consummated the sale of substantially all of their assets to Unimoda, LLC.  Pursuant to the Sale Order, the cash proceeds of the sale (the "Sale Proceeds") were transferred to a separate segregated account held by Gawker Media, without prejudice to any party in interest's right to contest the allocation of the Sale Proceeds.  *See* Sale Order at ¶¶ 41, 43.

-2-

***Claims Bar Date and Claims Objections***

4.      On July 21, 2016, the Debtors filed *Debtors' Motion Pursuant to 11 U.S.C. §§ 502 and 503, Fed. R. Bankr. P. 2002 and 3003(c)(3), and Local Rule 3003-1 for Entry of Order (I) Establishing a Deadline to File Proofs of Claim, Certain Administrative Claims, and Procedures Relating Thereto, and (II) Approving the Form and Notice Thereof* [Docket No. 127].    On August 11, 2016, the Bankruptcy Court entered an order granting the relief requested [Docket No. 168] and (i) fixed a deadline of September 29, 2016 (the "General Claims Bar Date") for filing proofs of claim in these Bankruptcy Cases, (ii) fixed a separate deadline of December 9, 2016 for governmental units to file proof of claims (the "Government Claims Bar Date," and, together with the General Claims Bar Date, the "Claims Bar Dates"), and (iii) established procedures for the filing of proofs of claim and the provision of appropriate notice of the Claims Bar Dates to potential claimants.

5.      As of the General Claims Bar Date, approximately 128 timely filed proofs of claim (excluding duplicate proofs of claim) were filed against Gawker Media (the "Gawker Media General Unsecured Claims").    These Gawker Media General Unsecured Claims include both claims set forth in liquidated and unliquidated amounts.    The vast majority of claims (by number of creditors) are indemnification claims for writers and others.    The Debtors expect that the number of claims requiring resolution in connection with the Plan and Plan reserves is approximately a dozen, perhaps fewer.

6.      On October 31, 2016, the Debtors filed eight objections [Docket Nos. 391–398] (the "Claim Objections"), including objections to various Gawker Media General Unsecured Claims, some of which were asserted in liquidated amounts and others of which were contingent and unliquidated. Responses to the Claims Objections are due November 14, 2016, and a hearing

on the Claims Objections is presently scheduled for December 1, 2016. Notwithstanding the filing of these Claims Objections, there are presently approximately 106 Gawker Media General Unsecured Claims (excluding duplicate proofs of claim) to which the Debtors have not filed a claims objection.

7.       As of the filing of this Motion, the Gawker Media General Unsecured Claims broadly fall into one of the following three categories.  First, there are the contingent and unliquidated claims subject to the Claims Objections filed by the Debtors on October 31, 2016 (the "Contested Claims").  Second, there are currently liquidated Gawker Media General Unsecured Claims.(the "Liquidated Claims").  Third, there are a number of contingent and/or unliquidated Gawker Media General Unsecured Claims as to which no objection has been filed (the "Unliquidated Claims").[3]

***Disclosure Statement and Plan***

8.       On November 2, 2016, the Debtors filed their *Disclosure Statement for Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 403] (as amended and including all exhibits and supplements thereto, the "Disclosure Statement") in support of the *Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* (as amended and including all exhibits thereto, the "Plan").[4]  A hearing to consider the adequacy of the Disclosure Statement was held on November 3, 2016, and on November 4, 2016, this Court entered an *Order Approving (I) The Adequacy of the Disclosure*

---

[3] Certain creditors have filed claims that are reflected on the claims registry as unliquidated but also specify a certain liquidated amount.  For example, A.J. Daulerio has filed a contingent and unliquidated claim that includes an estimate of the claim at $6 million.  To the extent that such claims contain a liquidated amount, in the absence of a Reserve Objection, the Debtors request that the Court estimate the Unliquidated Claim at zero for the purposes of proceeding at the Confirmation Hearing because (i) the claim is contingent or (ii) the claim is disputed.

[4] Capitalized terms used in the Motion and not otherwise defined herein have the meanings ascribed to them in the Plan or the Disclosure Statement Order, as appropriate.

*Statement, (II) Solicitation and Notice Procedures with Respect to Confirmation of the Amended*

*Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and*

*Gawker Hungary Kft., (III) The Form of Ballots and Notices in Connection Therewith, and (IV)*

*The Scheduling of Certain Dates with Respect Thereto* [Docket No. 413] (the "Disclosure

Statement Order").

9.      In accordance with the Disclosure Statement Order, the Debtors have commenced

solicitation of acceptances and rejections on the Plan.  Such acceptances and rejections are due

on December 5, 2016 at 4:00 p.m.  Moreover, pursuant to the Court-approved notice of the

hearing on confirmation, objections to confirmation of the Plan are due on December 5, 2016 at

5:00 p.m.

10.      Pursuant to the Plan and as part of the Plan Settlements incorporated therein,

unsecured creditors of Gawker Media will have first recourse to a total of at least $6.5 million of

Cash plus certain contingent proceeds described below (collectively the "Gawker Media

Available Assets").  The Cash component of the Gawker Media Available Assets will be fully

funded on the Effective Date and consists of a $3.75 million Gawker Media Claims Reserve, the

$0.75 million Gawker Media Second Lien Make-Whole Guaranty Reserve, and the $2.0 million

GMGI Plan Guaranty, each as described in greater detail in section 7 of the Disclosure

Statement.[5]  The Debtors contend that the cash component of the Gawker Media Available

---

[5] The Gawker Media Available Assets will also include 45% of Gawker Media Contingent Proceeds, which consist of any proceeds from the sale or disposition of the Gawker.com Assets and any recoveries from the Debtors' Retained Causes of Action, net of certain applicable costs and fees.  At present the Debtors have not ascribed a specific value to these contingent assets.  The Debtors believe that the cash component of the Gawker Media Available Assets will be sufficient to satisfy the Allowed Gawker Media General Unsecured Claims.  If necessary, the Debtors will present the valuation of these contingent assets at the confirmation hearing.

Assets is more than adequate to pay the full amount of the Allowed Gawker Media General

Unsecured Claims not yet subject to consensual settlement agreements.[6]

11.     The setting aside of the various components and amounts constituting the Gawker

Media Available Assets is integral to the global Plan Settlements embodied in the Plan.

Specifically, the primary group of interrelated disputes being resolved under the Plan Settlements

includes resolution of numerous disputes among the three Debtor entities and their respective

creditor and equity constituencies regarding (i) appropriate allocation of the Sale Proceeds, (ii)

allocation of certain related costs and loan repayments, (iii) resolution of intercompany

obligations, and (iv) potential claims and causes of action of Gawker Media against GMGI and

its directors and officers.  A litigated resolution of these disputes would have had a significant

effect on the potential recoveries of holders of general unsecured claims against Gawker Media

and holders of Equity Interests in GMGI.  The results of any such litigation would have been

uncertain for both sets of stakeholders and the Debtors estimate that the costs would have

consumed several million dollars of value that will be available for distribution if the Plan

Settlements are approved.

12.     The Plan Settlements work as an integrated whole; however, certain components

more directly address specific disputes.  For example, the creation of the $3.75 million Gawker

Media Claims Reserve and allocation of the 45% share of Gawker Media Contingent Proceeds is

part of (along with settlements with particular creditors) the resolution of disputes regarding the

allocation of Sale Proceeds, certain costs among the Debtor estates, and intercompany

obligations.  These disputes would have had the most significant direct impact on the cash

---

[6] Although the Debtors believe that Gawker Media Unsecured Creditors will receive distributions in the full amount of their Allowed claims, the Debtors expressly reserved, and did not waive, their right to proceed with confirmation in the event that Gawker Media Unsecured Creditors receive less than 100% on their Allowed Gawker Media General Unsecured Claims.  Indeed, pursuant to the Bollea Settlement (as defined in the Plan), Bollea will not be receiving the full amount of his Allowed Claim.

-6-

available to make distributions to the unsecured creditors of Gawker Media and Gawker Hungary, and ultimately, the holders of Equity Interests in GMGI. Next, the $2.0 million GMGI Plan Guaranty most directly addresses resolution of any potential claims and causes of action that Gawker Media might have against GMGI and its directors and officers. It too, however, addresses the allocation of Sale Proceeds, as the $2 million stands as a backstop for Gawker Media Unsecured Creditor recoveries. And finally, the $750,000 million Gawker Media Second Lien Make-Whole Guaranty Reserve resolves a separate legal dispute regarding the validity of asserted secured Second Lien Make-Whole Claims (described in greater detail in section 7.B. of the Disclosure Statement) by effectively subordinating $750,000 of the arguably secured claims of the Second Lien Lender to unsecured creditors of Gawker Media.

13.    The Plan Settlements are also inextricably intertwined with the Debtors' settlements with certain of their largest creditors. Indeed, absent the Plan Settlements noted above and the relief requested herein, the Debtors likely would not be able to both (i) settle the Bollea Claim and commit to make a distribution on that Claim and certain other Gawker Media General Unsecured Claims on the Effective Date of the Plan (which the Debtors are hopeful, will be before year end) and (ii) demonstrate that distributions to unsecured creditors and other stakeholders will comply with section 1129 of the Bankruptcy Code.

**Relief Requested**

14.    By this Motion, in furtherance of the Debtors' efforts to confirm the Plan before year end and in anticipation of receiving objections to confirmation based in whole or in part on the contention that the Gawker Media Available Assets are not adequate to pay the Allowed Gawker Media General Unsecured Claims (the "Reserve Objections"), the Debtors seek approval of procedures pursuant to Bankruptcy Code sections 105, 502(c) and 1129 and Bankruptcy Rules 3018 and 3021 (the "Gawker Media Claims Estimation and Plan Reserve Procedures"), that will

enable (i) a timely resolution of the Reserve Objections, (ii) the Debtors to demonstrate the

Plan's compliance with Bankruptcy Code section 1129, and (iii) the Debtors and their

stakeholders to obtain the substantial benefits of the Plan Settlements by making Plan

distributions before December 31, 2016.

## Jurisdiction and Venue

15.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.   The Motion is a core

proceeding pursuant to 28 U.S.C. § 157(b).   The statutory predicates for the relief requested

herein are sections 105(a), 502(c) and 1129 of the Bankruptcy Code, 11 U.S.C. §§ 105(a),

502(c); Rules 3018 and 3021 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"); and Rule 3018-1 of the Local Bankruptcy Rules for the Southern District of New York

(the "Local Rules")

## Proposed Gawker Media Claims Estimation Plan Reserve Procedures

16.     Pursuant to the Disclosure Statement Order, any party objecting to the Plan is

required to file an objection by December 5, 2016 at 5:00 p.m.  Disclosure Statement Order ¶ 22.

Any such objection (a "Confirmation Objection") must state with particularity the basis and

nature of the Confirmation Objection. *Id.*

17.     Moreover, as this Court well knows, regardless of whether or not any

Confirmation Objection is filed, the Debtors will be required to demonstrate that the Plan

satisfies the requirements of section 1129.

18.     Therefore, to demonstrate compliance with section 1129 and specifically address

any Confirmation Objection that includes an objection or challenge to the sufficiency of the

Gawker Media Available Assets to be available to pay claims, (*i.e.*, a Reserve Objection) the

Debtors propose the following Gawker Media Claims Estimation and Plan Reserve Procedures:[7]

a.   To the extent that any Contested Claim is not disallowed by a pending Claims Objection and the holder of such Contested Claim does not file a Reserve Objection, the Contested Claim will be estimated at zero for purposes of the Confirmation Hearing unless the Court orders that the Contested Claim be estimated at a different amount for the purposes of the Confirmation Hearing and Plan distributions pursuant to these procedures.

b.   The Debtors shall include the amount set forth in the Liquidated Claim in demonstrating the adequacy of the Gawker Media Available Assets at the Confirmation Hearing unless the holder of such Liquidated Claim files an objection to confirmation requesting a higher reserve or objects to the Plan on the basis that the Gawker Media Available Assets are inadequate to pay Allowed Gawker Media General Unsecured Claims in full. In the event that the holder of a Liquidated Claim files a Reserve Objection, the Debtors may contest the Confirmation Objection and seek to estimate the Allowed amount of the Liquidated Claim at an amount less than the amount specified in the Liquidated Amount pursuant to these procedures.

c.   Absent the filing of a Reserve Objection by a holder of an Unliquidated Claim, the Debtors may estimate the Unliquidated Claim at zero for purposes of the Confirmation Hearing and Plan distributions.  In the event that the holder of an Unliquidated Claim files a Reserve Objection, then the Court will determine the estimated amount of the Unliquidated Claim at the Confirmation Hearing pursuant to these procedures.

d.   Any holder of a Claim making a Reserve Objection (the "Reserve Objector") shall, as part of the Reserve Objection:

    i.   identify (i) the Gawker Media Unsecured Claim by proof(s) of claim numbers for which a reserve is requested and (ii) except to the extent provided in the proof(s) of claim state with particularity (a) the nature and basis of the Claim, (b) the amount of the reserve requested by the Reserve Objector and (c) the legal and factual support for the reserve requested;

    ii.   provide the Debtors with all documents and information  the Reserve Objector proposes to submit to the Court in order to support the amount of the reserve requested, except any such information that is attached to the proof(s) of claim identified in (i) above; and

---

[7] To the extent any Claims to which the Debtors have already objected are not disallowed by virtue of the Debtors' objections, the Claim subject to the Claims Objection shall be deemed a Reserve Objection to be addressed at the confirmation hearing.

      iii.    identify any witness(es) relevant to the Reserve Objection and provide dates such witness(es) are available for deposition between December 5 and December 12, 2016.

e.    To the extent necessary, the Debtors will schedule depositions of a witness at a mutually agreeable date and time between December 5 and December 12, 2016, which depositions shall be held at the offices of Ropes & Gray in New York.

f.    Each Reserve Objector shall have a right to request a single deposition from a representative of the Debtors, to be scheduled at a mutually agreeable time between December 5 and December 12, 2016 to be held at the offices of Ropes & Gray in New York. A Reserve Objector shall, in addition to the matters set forth in (d) above, set forth in its Reserve Objection the proposed topics for deposition testimony by such Debtor representative, in the manner contemplated by Rule 30(b)(6) (but which need not be by separate document).

g.    The Debtors shall submit any requests for further information no later than December 9, 2016 at 5:00 p.m. as part of any opposition to a Reserve Objection.

h.    Reserve Objectors shall respond to the Debtors' requests for further information no later than December 11, 2016 at 5:00 p.m.

i.    The hearings on the Reserve Objections (the "<u>Estimation Hearings</u>") will be conducted as part of the Confirmation Hearing, unless otherwise agreed to by the parties or ordered by the Court.

j.    Pursuant to Bankruptcy Code section 502(c), the Estimation Hearings shall be summary proceedings conducted to determine the estimated allowed amount of the Reserve Objectors' Claims for distribution purposes under the Debtors' Proposed Plan and the adequacy of the Gawker Media Available Assets.  In such summary proceedings:

      i.    the parties shall be permitted to call one (1) witness each for live testimony as to the *bona fides* of the Reserve Objector's Claim and the requested reserve, unless the Court permits otherwise; and

      ii.    the Court shall determine the amount of any reserve required for the specific Reserve Objector's Claim and whether the Gawker Media Available Assets are adequate and sufficient.[8]

k.    Procedures for exchange of proposed exhibits and other evidence shall be set forth in a pre-trial order to be submitted not later than December 9, 2016 at 12:00 p.m., after consultation with Reserve Objectors (and any disputes to be resolved by the Court).

---

[8] In the event that the Court determines that the Gawker Media Available Assets are not adequate and sufficient, the Debtors reserve their right to make such modifications to the Plan and seek confirmation of such modified Plan at the Confirmation Hearing.

l.      The Debtors may consensually resolve any Reserve Objection either through settlement of the Reserve Objector's Claim or the establishment of a mutually agreed upon reserve for such Claim.  Any such settlement or reserve shall be announced on the record of the Confirmation Hearing.

## Argument

19.     This Court may approve procedures for resolving objections to confirmation, estimating claims for the purposes of establishing Plan reserves and enabling the Debtors to make post-confirmation distributions to stakeholders.  For the reasons set forth below, approval of the Gawker Media Claims Estimation and Plan Reserve Procedures and their use at the Confirmation Hearing is both proper and warranted.

**I.      The Gawker Media Reserve Estimation Procedures Will Enable the Debtors Timely to Address Reserve Objections and Demonstrate That the Plan Complies With Certain Requirements of Section 1129**

20.     Because the Plan provides that certain impaired classes will not receive distributions, the Debtors will be proceeding to confirmation under Bankruptcy Code section 1129(b) if any class does not vote in favor of the Plan and a creditor of such class objects to confirmation of the Plan.  In that regard, the Debtors will be required to demonstrate, among other things, that the Plan is "fair and equitable" with respect to, among others, the Gawker Media General Unsecured Creditors.  *See* 11 U.S.C. § 1129(b)(2).  Thus, the Debtors will be required to demonstrate that with respect to the Gawker Media General Unsecured Creditors either that (i) the Plan provides that each holder of a Gawker Media General Unsecured Claim will receive property of a value equal, as of the Effective Date of the Plan, to the allowed amount of such holder's claim, or (ii) provide that the holder of any claim or interest junior to the claims of the Gawker Media General Unsecured Claims will not receive or retain any property of the estate.  *Id.* § 1129(b)(2)(B).

-11-

21.     The Proposed Plan does not provide that holders of any claim or interest junior to that of the Gawker Media General Unsecured Claims will receive property before the Gawker Media General Unsecured Claims are paid in full.  As a result of the Plan Settlements, however, certain distributions are contemplated to Gawker Hungary that would permit equity holders of GMGI to receive distributions.  Consequently, the Debtors will seek to demonstrate the adequacy of the Gawker Media Available Assets to pay the full amount of Allowed Gawker Media General Unsecured Claims and thereby render unavailing any possible indirect challenge.  Thus, to carry their evidentiary burden, the Debtors request that the Gawker Media Claims Estimation and Plan Reserve Procedures be approved. Indeed, the Court's approval of such Procedures will also facilitate the Debtors' ability to address other potential objections to Plan confirmation. *See, e.g.*, *id.* §§ 1129(a)(3), 1129(a)(7).

22.     Additionally, Bankruptcy Rule 3021 provides that the Debtors shall make distribution both to creditors whose claims have been allowed and to interest holders whose interests have not been disallowed.  Fed. R. Bankr. P. 3021.  This Court's approval of the Gawker Media Claims Estimation and Plan Reserve Procedures will enable the Debtors to not only efficiently and cost-effective address claims, but also make distributions prior to year-end, increasing the value available to distribute to creditors and interest holders as a whole. In fact, as the Debtors will demonstrate at the Confirmation Hearing, there will be significant additional value available to stakeholders if these cases are resolved before the end of the calendar year and distributions permitted to be made, and the approval of the Gawker Media Claims Estimation Procedures will enable the Debtors to demonstrate that such year end distributions will not prejudice the recoveries available to holders of Gawker Media General Unsecured Claims that are ultimately allowed.

## II.    This Court Is Authorized to Estimate Any Disputed Contingent or Unliquidated Claims Not Resolved by Claim Objection

23.    This Court has the power to estimate "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c)(1).  Waiting on the resolution of drawn out legal proceedings delays a debtor's reorganization and distributions on claims.  *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) (citing *O'Neill v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 981 F.2d 1450, 1461 (5th Cir. 1993)); *see also In re Lionel LLC*, No. 04-17324, 2007 WL 2261539, at *2 (Bankr. S.D.N.Y. Aug. 3, 2007) (noting that, without estimation, lengthy proceedings result in "delayed distributions, which in turn, greatly devalue the claims of all creditors as they cannot use the assets until they receive them") (citation omitted).

24.    Thus, estimation is appropriate when, as here, unliquidated or contingent claims may "unduly delay the administration of the case."  11 U.S.C. § 502(c).  Specifically, absent estimation, certain Gawker Media Unsecured Creditors could assert that they are entitled to distributions beyond the Gawker Media Available Assets.  As a result, certain, and likely the most critical, Plan Settlements could be placed at risk.  At the very least, the Debtors would be required to delay creditor distributions for a very significant period of time while numerous claims are liquidated, perhaps in other courts.  As a result, there would inevitably be fewer assets to distribute and those assets would only be distributed after most, if not all, of the claims were liquidated.  Thus, estimation is appropriate and proper in the present circumstances because it avoids undue delay and unnecessary costs in the administration of these Chapter 11 cases.  For this reason as well, the Gawker Media Claims Estimation Procedures should be approved. *See In re Enron Corp.*, No. 1–83–02495, 2006 WL 538552, at *3-4 (Bankr. S.D.N.Y. Jan. 6, 2006)

(estimating claim where required reserve in the amount of the claim would have delayed the Debtor's next scheduled distribution absent estimation).

III.    **The Gawker Media Claims Estimation Procedures Provide the Court With Flexible Procedures That May Properly Be Applied to Determine Whether the Plan Complies With Bankruptcy Code Section 1129**

25.    This Court has wide discretion and flexibility in establishing equitable procedures for estimation. *In re Lionel*, 2007 WL 2261539, at *5 (noting that a Bankruptcy Court "may use whichever method is best suited to the circumstances" and summarizing cases); *see also In re Quigley Co.*, 346 B.R. 647, 653 (Bankr. S.D.N.Y. 2006) (Bernstein J.) (estimation for voting procedures); *In re Chemtura Corp.*, 448 B.R. 635, 649 (Bankr. S.D.N.Y. 2011) ("For both procedure and analytical methodology, bankruptcy courts may use whatever method is best suited to the contingencies of the case.").

26.    In determining which procedures to use, courts must ensure that the chosen procedures are consistent with the policy underlying chapter 11.  In other words, the procedures must place a paramount importance on resolving claims quickly and efficiently.  *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 137 (3d Cir. 1982).  In designing the procedures to be used, this Court should also give attention to the "economic realities" and relative "economic interests" of claimants.  *In re Quigley*, 346 B.R. at 658.

27.    Courts may, in their discretion, select a number of different procedures that align with chapter 11.  *See, e.g.*, *In re Baldwin-United Corp.*, 55 B.R. 885, 889 (Bankr. S.D. Ohio 1985) (summary trial); *In re Windsor Plumbing Supply Co.*, 170 B.R. 503, 517 (Bankr. E.D.N.Y. 1994) (review of written submissions of proposed facts); *In re Lane*, 68 B.R. 609, 613 (Bankr. D. Hawaii 1986) (review of pleadings and briefs followed by oral argument).  Whichever procedure a bankruptcy court selects, they need not conduct a full evidentiary trial to estimate a claim.  Such a trial with all the applicable procedural rules, time-consuming motion practice, and litany

-14-

of evidentiary issues, is likely to cause significant delay, running contrary to the requirement that reorganization be accomplished as quickly and efficiently as possible. *Bittner*, 691 F.2d at 137.

28.     In circumstances as are present here, courts have often used their discretion to select summary trial-like procedures. *See, e.g.*, *In re Baldwin-United Corp.*, 55 B.R. at 899 (describing a summary trial procedure with no jury and live testimony by one witness per side as fair in terms of due process); *In re Lionel*, 2007 WL 2261539, at *5 (stating that "when a bankruptcy creditor files a proof of claim, it submits itself to the bankruptcy court's equitable powers and thereby waives its right to a jury trial").  Because of the exigencies of time described above, the Debtors believe that the Gawker Media Claims Estimation and Plan Reserve Procedures strike a fair and appropriate balance between maximizing value for holders of Allowed Claims and Interests and providing creditors with disputed Gawker Media General Unsecured Claims a fair and reasonable opportunity to demonstrate the need for, and any amount required to, ensure that they receive an appropriate distribution if, and when, their claim is allowed.  Accordingly, the Gawker Media Claims Estimation and Plan Reserve Procedures should be approved on this ground as well.

## Reservation of Rights

29.     Neither the filing of this Motion nor entry of the Proposed Order shall affect any rights of the Debtors, their estates, the Plan Administrator, or any other party in interest in these Bankruptcy Cases to object to Claims for any purposes, including, without limitation, allowance and distribution under the Plan, or any rights of the holders of any Claim to contest any objection.

30.     The Debtors and their estates reserve any and all rights to amend, supplement, or otherwise modify this Motion or the Proposed Order, and to file additional motions for purposes of voting on the Plan with respect to any and all claims filed in these Bankruptcy Cases. The

-15-

Debtors and their estates also reserve any and all rights, claims and defenses with respect to any and all of the Claims, and nothing included in or omitted from this Motion or the Proposed Order is intended or shall be deemed to impair, prejudice, waive or otherwise affect any rights, claims, or defenses of the Debtors and their estates with respect to the Claims.

## Notice

31.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the Southern District of New York; (ii) Simpson Thacher & Bartlett LLP, counsel to the Official Committee of Unsecured Creditors of Gawker Media LLC, et al.; (iii) Latham & Watkins LLP, counsel to US VC Partners LP, as Second Lien Lender; (iv) all parties requesting notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; and (v) all parties that have filed claims against Debtor Gawker Media LLC.  The Debtors respectfully submit that further notice of this Motion is neither required nor necessary.

## Conclusion

For the foregoing reasons, the Debtors respectfully request that the Court (a) enter

the Proposed Order, and (b) grant such other and further relief as may be just and proper.

Dated: November 14, 2016
      New York, New York

             */s/ Gregg M. Galardi*

ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Peter Walkingshaw (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
gregg.galardi@ropesgray.com
ross.martin@ropesgray.com
peter.walkingshaw@ropesgray.com

*Counsel to the Debtors and Debtors in Possession*

# **EXHIBIT A**

## **Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                  :
In re                               :        Chapter 11
                                    :
Gawker Media LLC, *et al.*[1]          :        Case No. 16-11700 (SMB)
                                    :
                 Debtors.     :        (Jointly Administered)
                                    :
--------------------------------------------------------x

## ORDER GRANTING DEBTORS' OMNIBUS MOTION FOR THE ESTABLISHMENT OF PROCEDURES IN AID OF CONFIRMATION

Upon the motion dated November 14, 2016 (the "Motion") of Gawker Media LLC ("Gawker Media"), Gawker Media Group, Inc. ("GMGI"), and Gawker Hungary Kft. (f/k/a Kinja Kft., "Gawker Hungary") as debtors and debtors in possession (collectively, the "Debtors") seeking entry of an order authorizing and establishing certain procedures in aid of confirmation, all as more fully described in the Motion; and due and proper notice of the motion having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Motion is granted to the extent provided herein; and it is further

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

59653309_16

ORDERED that, pursuant to the Plan and section 502(c) of the Bankruptcy Code, any

contingent and unliquidated claims that may survive until confirmation and for which the

claimants timely object to the Gawker Media Claims Reserve shall be estimated; and it is further

ORDERED that the following deadlines and procedures shall govern the estimation of

the aforementioned claims:

a.  To the extent that any Contested Claim is not disallowed by a pending Claims
    Objection and the holder of such Contested Claim does not file a Reserve
    Objection, the Contested Claim will be estimated at zero for purposes of the
    Confirmation Hearing unless the Court orders that the Contested Claim be
    estimated at a different amount for the purposes of the Confirmation Hearing and
    Plan distributions pursuant to these procedures.

b.  The Debtors shall include the amount set forth in the Liquidated Claim in
    demonstrating the adequacy of the Gawker Media Available Assets at the
    Confirmation Hearing unless the holder of such Liquidated Claim files an
    objection to confirmation requesting a higher reserve or objects to the Plan on the
    basis that the Gawker Media Available Assets are inadequate to pay Allowed
    Gawker Media General Unsecured Claims in full. In the event that the holder of a
    Liquidated Claim files a Reserve Objection, the Debtors may contest the
    Confirmation Objection and seek to estimate the Allowed amount of the
    Liquidated Claim at an amount less than the amount specified in the Liquidated
    Amount pursuant to these procedures.

c.  Absent the filing of a Reserve Objection by a holder of an Unliquidated Claim,
    the Debtors may estimate the Unliquidated Claim at zero for purposes of the
    Confirmation Hearing and Plan distributions.  In the event that the holder of an
    Unliquidated Claim files a Reserve Objection, then the Court will determine the
    estimated amount of the Unliquidated Claim at the Confirmation Hearing
    pursuant to these procedures.

d.  Any holder of a Claim making a Reserve Objection (the "Reserve Objector")
    shall, as part of the Reserve Objection:

    i.   identify (i) the Gawker Media Unsecured Claim by proof(s) of claim
         numbers for which a reserve is requested and (ii) except to the extent
         provided in the proof(s) of claim state with particularity (a) the nature and
         basis of the Claim, (b) the amount of the reserve requested by the Reserve
         Objector and (c) the legal and factual support for the reserve requested;

    ii.  provide the Debtors with all documents and information  the Reserve
         Objector proposes to submit to the Court in order to support the amount of
         the reserve requested, except any such information that is attached to the
         proof(s) of claim identified in (i) above; and

- 2 -

         iii.      identify any witness(es) relevant to the Reserve Objection and provide dates such witness(es) are available for deposition between December 5 and December 12, 2016.

e.      To the extent necessary, the Debtors will schedule depositions of a witness at a mutually agreeable date and time between December 5 and December 12, 2016, which depositions shall be held at the offices of Ropes & Gray in New York.

f.      Each Reserve Objector shall have a right to request a single deposition from a representative of the Debtors, to be scheduled at a mutually agreeable time between December 5 and December 12, 2016 to be held at the offices of Ropes & Gray in New York. A Reserve Objector shall, in addition to the matters set forth in (d) above, set forth in its Reserve Objection the proposed topics for deposition testimony by such Debtor representative, in the manner contemplated by Rule 30(b)(6) (but which need not be by separate document).

g.      The Debtors shall submit any requests for further information no later than December 9, 2016 at 5:00 p.m. as part of any opposition to a Reserve Objection.

h.      Reserve Objectors shall respond to the Debtors' requests for further information no later than December 11, 2016 at 5:00 p.m.

i.      The hearings on the Reserve Objections (the "Estimation Hearings") will be conducted as part of the Confirmation Hearing, unless otherwise agreed to by the parties or ordered by the Court.

j.      Pursuant to Bankruptcy Code section 502(c), the Estimation Hearings shall be summary proceedings conducted to determine the estimated allowed amount of the Reserve Objectors' Claims for distribution purposes under the Debtors' Proposed Plan and the adequacy of the Gawker Media Available Assets.  In such summary proceedings:

         i.      the parties shall be permitted to call one (1) witness each for live testimony as to the *bona fides* of the Reserve Objector's Claim and the requested reserve, unless the Court permits otherwise; and

         ii.      the Court shall determine the amount of any reserve required for the specific Reserve Objector's Claim and whether the Gawker Media Available Assets are adequate and sufficient.

k.      Procedures for exchange of proposed exhibits and other evidence shall be set forth in a pre-trial order to be submitted not later than December 9 at 12:00 p.m., after consultation with Reserve Objectors (and any disputes to be resolved by the Court).

And it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters

arising from or related to this order.

Dated: _____, 2016
      New York, New York

                                       _____

                                       THE HONORABLE STUART M. BERNSTEIN
                                       UNITED STATES BANKRUPTCY JUDGE