Hearing Date & Time: December 1, 2016 at 10:30 a.m. (Eastern Time)

CHIESA SHAHINIAN & GIANTOMASI PC
One Boland Drive
West Orange, New Jersey 07052
Telephone: (973) 325-1500
Facsimile: (973) 325-1501
Robert E. Nies, Esq. (rnies@csglaw.com)
Michael R. Caruso, Esq. (mcaruso@csglaw.com)

*Attorneys for Mitchell Williams*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GAWKER MEDIA LLC, et al., | Case No. 16-11700 (SMB) |
| Debtors.[1] | (Jointly Administered) |

**OPPOSITION TO OBJECTION OF DEBTOR GAWKER MEDIA LLC TO PROOF OF CLAIM NO. 6 FILED BY MITCHELL WILLIAMS, AND MOTION TO APPLY FED. R. CIV. P. 12(b)(6) AND 12(c) PURSUANT TO BANKRUPTCY RULES 9014 AND 7012**

TO:    THE HONORABLE STUART M. BERNSTEIN
       UNITED STATES BANKRUPTCY JUDGE

Mitchell Williams ("**Williams**"), a creditor of Debtor Gawker Media LLC ("**Gawker**" or "**Debtor**"), by and through his undersigned counsel Chiesa Shahinian & Giantomasi PC, respectfully files this opposition (the "**Opposition**") to Debtor's Objection to Proof of Claim No. 6 filed by Mitchell Williams, and Motion to Apply Fed. R. Civ. P. 12 (b)(6) and 12(c) Pursuant to Bankruptcy Rules 9014 and 7012 (the "**Objection**") [Dkt. No. 391] and, in support of his Opposition to the Objection, states:

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Lft.) (5056).  Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022.  Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

6322832.3

**PRELIMINARY STATEMENT**

1.      Debtor's Objection[2] seeks to disallow for all purposes the Williams Claim by applying res judicata and collateral estoppel principles to avoid litigating a contested, non-core personal injury defamation tort.  If successful, it would render moot Williams' right to appeal a summary judgment in New Jersey State Court, and avoid issues concerning bankruptcy court jurisdiction, the need to adjudicate disputed, material facts on an Objection, and fundamental due process rights.  Indeed, disallowance of the Williams Claim by this Court on the Objection before the New Jersey State Court appeal is heard would be tantamount to an impermissible appeal under the Rooker-Feldman doctrine.  In other words, for this Court to rule on estoppel issues by treating the summary judgment as "final" it necessarily has to rule the summary judgment was properly entered - - exactly the issue Williams was given the right to appeal in the New Jersey State Court.

2.      Alternatively, Debtor asks the Court to apply Fed. R. Civ. P. 12(b)(6) and 12(c) to factually intensive and disputed defamatory statements, again effectively converting a claim objection to an impermissible appeal of two New Jersey State Court orders.  Debtor has twice previously been denied that equivalent relief in the New Jersey State Court.  Consequently, it would be, at this stage of the litigation, an extra judicial act to disallow the Williams Claim on the hearing date of the Objection.

3.      The Williams Claim does not exist in a vacuum.  Nine days before Debtor filed for bankruptcy, aspects of the Williams Claim (i) were already scheduled to be tried before a jury on June 27, 2016 in the New Jersey State Court; and (ii) had survived Gawker's motions to (a) dismiss under New Jersey Court Rule ("R.") 4:6-2(e), and (b) reconsider that refusal to dismiss

---

[2] Unless otherwise stated or clear from the context, capitalized terms shall have the meaning ascribed to them in the Objection.

three surviving defamation statements for failure to state a claim or, as a matter of law, on the pleadings. The three challenged defamatory statements published by Gawker - - presently before this Court as the Williams Claim - - are that, in connection with a youth baseball tournament, Williams: (1) ordered a "beanball" thrown at an opposing batter; (2) used profanity, such as "motherfucker", in addressing an umpire/referee in front of children; and (3) called an opposing player a "pussy". Those three defamatory statements were dismissed by the New Jersey State Court on June 1, 2016 by Order Granting Defendant Gawker Media, LLC's Motion for Summary Judgment (the "**SJO**"). The SJO was without a written or reasoned oral opinion, and without findings of undisputed material facts and conclusions of law, as required by R. 4:46-2(c) and R. 1:7-4(a). See also Comment 7 to R. 1:6-2. The SJO expressly acknowledged Williams' right to appeal the summary judgment dismissal with prejudice. Applying estoppel principals to the SJO, when its validity has not been upheld on appeal, is improper. Consequently, disallowance of the Williams Claim would (i) require the Bankruptcy Court effectively to act as an appellate court in review of the SJO of a state judge, (ii) negate Williams' expressly preserved right to appeal a facially defective summary judgment, (iii) eviscerate Williams' right to a jury trial of non-core, personal injury torts; and (iv) deprive Williams of any opportunity to recover a dividend from a liquidated and substantial bankruptcy estate.

4. To accomplish this fatal objective, Debtor relies principally on the misapplication of estoppel doctrines. Debtor would avoid having to defend on appeal in the Appellate Division of the New Jersey State Court a facially defective summary judgment by, instead, opting to have this Court act as an appellate tribunal and apply an equally indefensible application of res judicata and collateral estoppel principles to defeat the appeal. Those principles simply do not apply because, as stated in detail below, the SJO is not final, is subject to appeal, and is likely to

6322832.3

be overturned on appeal since there was no written or reasoned oral summary judgment decision or compliance with the other mandatory provisions of R. 4:46-2(c) and R. 1:7-4(a).

5.      Alternatively, Debtor would again seek to have this Court act as an appellate tribunal to avoid litigating the merits of its three published defamatory statements under Federal Rules of Civil Procedure 12(b)(6) - - failure to state a claim upon which relief can be granted - - and 12(c) - - for judgment on the pleadings.  That would be, however, Debtor's third attempt to dispose of the three remaining defamatory statements on the pleadings, not the merits.  As the factual record and procedural history of the litigation in the New Jersey State Court shows, Debtor had previously filed in that action a comparable motion under R. 4:6-2(e), a motion which only partially succeeded, leaving intact as well-plead three distinct defamatory statements sounding in tort. Gawker then filed a reconsideration motion of the New Jersey State Court's refusal to dismiss these three defamatory Gawker statements.  The reconsideration motion also was denied.  It is those three statements, those that survived dismissal for failure to state a claim, for judgment on the pleadings and for reconsideration, that ultimately would be dismissed by a patently defective summary judgment decision a week before Gawker filed for bankruptcy.  And those claims would be dismissed by the Bankruptcy Court, not the New Jersey State Court hearing the SJO appeal.

6.      Williams respectfully submits that granting Debtor's Objection to the Williams Claim may be a convenient way to eliminate a potentially valuable defamation damage claim, but it would turn upside down basic concepts of fairness, justice and due process.  It also would violate the Rooker-Feldman doctrine.  The Court and the litigants necessarily must grapple with the more substantive legal and complex factual issues of whether a defamation tort claim is core or non-core; whether Williams should be permitted to liquidate his defamation tort claims before

a jury in the New Jersey State Court, the U.S. District Court, or in some limited fashion before this Court; and how Williams' ability to recover from Debtor's estate, after a court liquidates and fixes the allowance and amount of the Williams Claim, might best be preserved.

## **PROCEDURAL AND RELEVANT FACTUAL HISTORY**

7.      Williams's complaint and jury demand -- filed on September 24, 2014 in the New Jersey State Court -- asserted five (5) causes of action against Gawker and twelve (12) causes of action against The MLB Network, Inc., the former employer of Williams. (Declaration of Rahul Munshi, the "Munshi Dec.", at ¶ 2; see also Objection, Exhibit 3).

8.      On March 6, 2015, the New Jersey State Court entered an Order granting in part and denying in part Gawker's Motion to Dismiss. (Munshi Dec. ¶3; see also Objection, Exhibit 4). Specifically, the New Jersey State Court denied Gawker's motion as to three challenged defamatory statements published by Gawker - - presently before this Court as the Williams Claim - - that, in connection with a youth baseball tournament, Williams: (1) ordered a "beanball" thrown at an opposing batter; (2) used profanity, such as "motherfucker", in addressing an umpire/referee in front of children; and (3) called an opposing player a "pussy". (Id.).

9.      On May 7, 2015, the New Jersey State Court denied Gawker's Motion for Reconsideration of the refusal to dismiss three surviving defamation statements ((Munshi Dec. ¶4 & Exhibit A). The lawsuit continued through discovery as to those three surviving defamation statements. (Id.).

10.     After discovery closed, Gawker moved for summary judgment against Williams. On June 1, 2016, the New Jersey State Court granted summary judgment for Gawker, dismissed with prejudice all claims against Gawker, and expressly preserved for Williams the right and

"ability to appeal all rulings as to Gawker defendants." (Munshi Dec. ¶6; see also Objection, Exhibit 5). The New Jersey State Court did not provide a written or reasoned oral opinion supporting the ruling. Nor did the New Jersey State Court render findings of material, undisputed facts and conclusions of law.

11. Nine days later, on June 10, 2016, Gawker filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 11, 2016, the Williams Claim was filed in the Chapter 11 case. As of the Peition Date, Williams had no obligation or responsibility to file the Appeal and had time to do so after the Petition Date. (Munshi Dec. ¶7).

12. Before Gawker's bankruptcy filing and before the entry of the SJO, the Williams Claim was scheduled to be tried before a jury on June 27, 2016 in the New Jersey State Court. (Munshi Dec. ¶8).

13. Contemporaneous with his filing of Opposition to the Objection, Williams has moved before the Bankruptcy Court for relief from the automatic stay to pursue and perfect his appeal of the SJO in the Appellate Division of the New Jersey State Court. (Munshi Dec. ¶10).

## LEGAL ARGUMENT

14. Williams respectfully requests that the Court deny Debtor's Objection because: (i) issue preclusion does not apply to the Williams Claim and this Court cannot under the Rooker-Feldman doctrine apply estoppel principals to an in-firm, not final state court SJO that is clearly subject to Appeal; (ii) the Rooker-Feldman doctrine bars Debtor from re-litigating a dismissal on the pleadings of the three surviving defamatory statements; and (iii) this Bankruptcy Court lacks jurisdiction to conclusively determine the Williams Claim.

**I.      Issue Preclusion Does Not Apply To The Williams Claim.**

    **A. Before This Court Addresses Estoppel Issues It Must Decide The SJO Was Proper – An Impermissible Review Of A SJO Entered In The New Jersey State Court.**

15.    According to the Rooker–Feldman doctrine, "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court determinations or to evaluate [federal] claims that are inextricably intertwined with the state court's [decision] in a judicial proceeding." Marks v. Stinson, 19 F.3d 873, 885 n. 11 (3d Cir.1994) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)). "[T]here are four requirements that must be met for the Rooker–Feldman doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court [orders or] judgments; (3) those [orders or] judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state [orders or] judgments." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir.2010). All four requirements are met here.

    **B. Estoppel Principals Do Not Apply.**

16.    Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must accord judicial proceedings brought in a state tribunal the "same full faith and credit ... as they have by law or usage in the courts of such State...." 28 U.S.C. § 1738. Federal courts must, accordingly, "defer to the law of preclusion of the state in which a judgment was rendered." Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985); Allegheny Int'l Inc. v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1429 (3d Cir.1994). Here, the prior judgment at issue was rendered by the New Jersey State Court. Thus, the doctrine of collateral estoppel as articulated by New Jersey law will be applied.

7

17. A party asserting collateral estoppel in New Jersey must show that:

   i. the issue to be precluded is identical to the issue decided in the prior proceeding;
   ii. the issue was actually litigated in the prior proceeding;
   iii. the court in the prior proceeding issued a final judgment on the merits;
   iv. the determination of the issue was essential to the prior judgment; and
   v. the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

In re Mullarkey, 536 F.3d 215, 225 (3d Cir.2008) (citing Twp. of Middletown v. Simon, 193 N.J. 228 (2008)); see also In re Docteroff, 133 F.3d 210, 214–15 (3d Cir.1997) (federal collateral estoppel allows a court to accept facts found by a previous court).

18. Collateral estoppel requires that the prior action must be "***sufficiently firm*** to be accorded preclusive effect." In re Brown, 951 F.2d 564, 569 (3d Cir. 1991). (Emphasis supplied). Sufficient firmness is established by "examining whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." Id. For purposes of issue preclusion, a judgment is sufficiently firm, conclusive and final where there is nothing in the record that indicates that the "court has any intention of revisiting the issue ..., that its findings are unreliable, that [the losing party] did not have sufficient opportunity to be heard before the court entered judgment, or that the ... court gave insufficient consideration to the issue." In re Docteroff, 133 F.3d at 217 (quoting Restatement (Second) of Judgments § 13 (1982)) (citing In re Brown, 951 F.2d 564, 569 (3d Cir.1991)). The record in the New Jersey State Court fails in three of these considerations.

19. The bankruptcy judges analyze whether the factors of collateral estoppel are met "after a careful review of the record of the prior case, a hearing at which the parties have the opportunity to offer evidence, and the [prior court's] making of findings of fact and conclusions

8

6322832.3

of law." Feng Li v. Peng, 516 B.R. 26 (D.N.J. 2014); Haize v. Hanover Ins. Co., 536 F.2d 576, 579 (3d Cir.1976)).

20. Here, the summary judgment dismissal of Williams claims against Gawker, as memorialized by the SJO, is **not** a sufficiently firm, conclusive adjudication on the merits. There is no well-reasoned written or oral opinion, based on documents and/or testimony, which made any findings of undisputed material facts with regard to Williams' defamation claims. There are no conclusions of law. There is nothing to suggest that the SJO was entered with due deliberation. To the contrary, the SJO decides nothing, addresses no specific defamatory statements, and expressly preserves for Williams the right and "ability to appeal all rulings as to Gawker defendants." Therefore, the SJO is infirm and unreliable, as it expresses an intention for a court of competent jurisdiction to revisit the issues de novo. Accordingly, issue preclusion does not apply to the Williams Claim because the New Jersey State Court did not issue a final judgment on the merits.

21. Williams is contemporaneously moving for relief from the automatic stay to perfect and pursue his appeal against Debtor in the Appellate Division of the New Jersey State Court.

**II.     The Rooker-Feldman Doctrine Bars Debtor's Objection to the Williams Claim On the Pleadings Under Fed. R. Civ. P. 12(b)(6) and 12(c).**

22. According to the Rooker–Feldman doctrine, "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court determinations or to evaluate [federal] claims that are inextricably intertwined with the state court's [decision] in a judicial proceeding." Marks v. Stinson, 19 F.3d 873, 885 n. 11 (3d Cir.1994) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)). "[T]here are four requirements that must be met for the Rooker–Feldman doctrine

9

to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court [orders or] judgments; (3) those [orders or] judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state [orders or] judgments." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir.2010). All four requirements are met here.

23. Adjudicating Debtor's Objection to the Williams Claim would require the Bankruptcy Court to engage impermissibly in appellate review of the three defamatory statements upheld by the New Jersey State Court over Debtor's motion to dismiss under R. 4:6-2, the corollary to Fed. R. Civ. P. 12(b)(6) and 12(c), and its' motion for reconsideration under R. 4:49-2. Those three defamatory statements are that Williams: (1) ordered a "beanball" thrown at an opposing batter; (2) used profanity, such as "motherfucker", in addressing an umpire/referee in front of children; and (3) called an opposing player a "pussy". By disposing of the Williams Claim "on the merits", under Fed. R. Civ. P. 12(b)(6) and 12(c), the Debtor asks this Court to review and overturn the New Jersey State Court's separate orders denying in part the Debtor's motion to dismiss and denying in part Debtor's motion for reconsideration. The state court already ruled on those issues and, separately, preserved Williams' right to appeal the erroneous SJO. This type of preemptive Objection is exactly what Rooker–Feldman is meant to prevent: an attempt to invalidate a state court decision in a separate federal court action.

24. This case meets the requirements of the Rooker–Feldman doctrine because: (1) Debtors lost in state court to dispose the three defamatory statements on the pleadings as a matter of law; (2) the gravamen of Debtor's Objection to the Williams Claim and attempt to apply Fed. R. Civ. P. 12(b)(6) and 12(c) specifically addresses the validity of the three defamatory statements as a matter of law based solely on the pleadings; (3) the New Jersey State Court

10

orders denying Debtor's motions to dismiss and for reconsideration were entered before Debtor filed bankruptcy; and (4) to obtain the relief Debtor seeks, the Bankruptcy Court would have to review and reject the New Jersey State Court 's two prior orders. See Great W. Mining & Mineral Co., 615 F.3d at 166; see also Willoughby v. Zucker, Goldberg & Ackerman, LLC, 2014 WL 2711177 (D.N.J. June 16, 2014)(Unpublished). This review of a state court's orders is precisely what a federal court may not do under Rooker–Feldman.

### III.    The Williams' Claim Cannot Be Determined By This Court.

25.    Federal district and bankruptcy courts are courts of limited jurisdiction. Section 1334 of Title 28 of the United States Code vests in the district court "original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a), (b). District courts have the power to refer cases or proceedings under Title 11 to the bankruptcy courts. Id. § 157(a). Bankruptcy courts are authorized to hear matters as "a unit of the district court." Id. § 151. Bankruptcy judges may enter appropriate orders and judgments in core proceedings as defined in Section 157(b)(2). Id. § 157(b). Bankruptcy judges may also hear non-core related proceedings, but they may not enter final orders absent the consent of the parties. Id. § 157(c). Absent consent, they must submit proposed findings of fact and conclusions of law to the district court, where they are subject to de novo review. Id.

26.    Section 157(b)(5) states:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5). Most courts interpret this provision to mean that all personal injury tort claims fall outside of the subject matter jurisdiction of a bankruptcy court and must be tried in

the district court. See Adams v. Cumberland Farms, Inc., No. 95-1736, slip op. at 3 (1st Cir. May 7, 1996) (1996 WL 228567).

27. The term "personal injury tort claim" is not expressly defined in Title 28 or Title 11. Moore v. Idealease of Wilmington, 358 B.R. 248, 250 (E.D.N.C. 2006); In re Ice Cream Liquidation, Inc., 281 B.R. 154, 160 (Bankr. D. Conn. 2002). As a result, courts have disagreed as to what constitutes a "personal injury tort claim," adopting one of three diverging views.

28. Courts adopting the narrowest definition of the term - - the one embraced by Debtor - - hold that a personal injury tort claim requires an actual physical injury. Perino v. Cohen (In re Cohen), 107 B.R. 453, 455 (S.D.N.Y. 1989)(holding that racial discrimination is not a personal injury tort).

29. Courts adopting the most expansive view of Section 157(b)(5) find that a personal injury tort claim is not limited to a claim involving bodily injury. Boyer v. Balanoff (In re Boyer), 93 B.R. 313, 317 (Bankr. N.D.N.Y. 1988) (holding that a civil rights deprivation is a personal injury tort). In Boyer, the Bankruptcy Court for the Northern District of New York explained that the term "'personal injury tort embraces a broad category of private or civil wrongs or injuries for which a court provides a remedy in the form of an action for damages, and includes damage to an individual's person and any invasion of personal rights, such as libel, slander and mental suffering." Id. (citing Black's Law Dictionary 707, 1335 (5th ed. 1979).

30. Many courts have reached a middle ground between the narrow and expansive views, analyzing whether a claim falls within the purview of a personal injury tort claim under the expansive view, yet retaining bankruptcy jurisdiction over the claim if it has "earmarks of a financial, business or property tort claim, or a contract claim." Ice Cream Liquidation, 281 B.R.

at 161; Adelson v. Smith (In re Smith), 389 B.R. 902, 908 (Bankr. D. Nev. 2008). The middle ground encompasses torts involving bodily and reputational harm, without including those personal injury torts designated by statute only. Smith, 389 B.R. at 908. The Smith court found this approach the most appealing because "it is closely aligned with what are traditionally thought of as the 'common law torts;' and while it includes emotional and reputational harms, it does not go so far as to allow nonbankruptcy law to define certain torts as personal injury torts." Id.

31. The court in Ice Cream Liquidation rejected the narrow approach because, as shown by Section 522(d)(11) of the Bankruptcy Code, Congress knew how to say "personal bodily injury" when it wanted to use that specific phrase. 281 B.R. at 160. The court also disagreed with the broad approach because it may place too much reliance on how a tort was categorized by nonbankruptcy law, increasing the risk that financial, business, property, or contract tort claims could be withdrawn from the bankruptcy system, contrary to the intent of Congress. Id. at 161.

32. Numerous courts have used the middle ground or hybrid approach to support the conclusion that defamation is a personal injury tort claim within the meaning of Section 157(b)(5). See Hansen v. Borough of Seaside Park (In re Hansen), 164 B.R. 482, 485-86 (D.N.J. 1994) (holding that a defamation claim is a personal injury tort claim); Control Center, L.L.C. v. Lauer, 288 B.R. 269, 279, 286 (M.D. Fla. 2002) (same); Smith, 389 B.R. at 908 (holding that a libel claim is a personal injury tort claim); Rizzo v. Passialis (In re Passialis), 292 B.R. 346, 352 (Bankr. N.D. Ill. 2003) (holding that a slander claim is a personal injury tort claim).

33. Williams' three defamatory statements meet the standard of a personal injury tort claim under both the expansive view and the "hybrid" analysis. The complaint and its five (5)

13

causes of action against Debtor for intentional defamation, defamation per se, negligent defamation, invasion of privacy – false light, and negligent misrepresentation are personal injury tort claims within the meaning of Section 157(b)(5). These causes of action lack any financial, business, property or contract characteristics that would support an argument that the Bankruptcy Court has jurisdiction over them, especially when compared to Williams' twelve (12) causes of action against the co-defendant Major League Baseball in the New Jersey State Court. They are published personal attacks against Williams' character and reputation. Williams does not consent, under Section 157(c)(2), to the Bankruptcy Court's entry of a final order regarding the Williams Claim.

## CONCLUSION

For each of the reasons set forth above, Williams respectfully requests that the Court deny Debtor's Objection, and grant Williams such other, further relief as may be appropriate.

Respectfully submitted,

**CHIESA SHAHINIAN & GIANTOMASI PC**
*Attorneys for Mitchell Williams*


By:   */s/ Robert E. Nies*
        ROBERT E. NIES

One Boland Drive
West Orange, New Jersey 07052
Tel:    (973) 530-2012
Fax:   (973) 530-2212
E-Mail:  rnies@csglaw.com

Dated: November 17, 2016