Hearing Date & Time: _____, 2016 at \_\_\_\_ a.m. (Eastern Time)

Objection Deadline: _____ \_\_, 2016

CHIESA SHAHINIAN & GIANTOMASI PC
One Boland Drive
West Orange, New Jersey 07052
Telephone: (973) 325-1500
Facsimile: (973) 325-1501
Robert E. Nies, Esq. (rnies@csglaw.com)
Michael R. Caruso, Esq. (mcaruso@csglaw.com)

*Attorneys for Mitchell Williams*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GAWKER MEDIA LLC, <u>et al</u>., | Case No. 16-11700 (SMB) |
| Debtors. [1] | (Jointly Administered) |

**MOTION OF MITCHELL WILLIAMS FOR AN ORDER (I) MODIFYING THE AUTOMATIC STAY, FOR "CAUSE", PURSUANT TO 11 U.S.C. § 362(d) TO PERMIT AN APPEAL IN STATE COURT LITIGATION INVOLVING A PERSONAL INJURY DEFAMATION CLAIM AGAINST DEBTOR; (II) AUTHORIZING A TRIAL IN STATE COURT OF WILLIAMS' PERSONAL INJURY DEFAMATION CLAIM AGAINST DEBTOR, SOLELY TO ESTABLISH LIABILITY AND AMOUNT OF WILLIAMS' CLAIM; AND (III) GRANTING SUCH OTHER AND FURTHER RELIEF AS MAY BE APPROPRIATE**

TO:    THE HONORABLE STUART M. BERNSTEIN
       UNITED STATES BANKRUPTCY JUDGE

Mitchell Williams ("**Williams**"), a creditor of Debtor Gawker Media LLC ("**Gawker**" or "**Debtor**"), by and through his undersigned counsel Chiesa Shahinian & Giantomasi PC, files this motion for an order (i) modifying the automatic stay, for "cause", pursuant to 11 U.S.C. § 362(d) to permit an appeal in State Court litigation involving a personal injury defamation claim

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Lft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

6329426.1

against debtor; (ii) authorizing a trial in state court of Williams' personal injury defamation claim against debtor, solely to establish liability and amount of Williams' claim; and (iii) granting such other and further relief as may be appropriate. In support of his Motion, Williams respectfully states:

## PRELIMINARY STATEMENT

1. Williams seeks modification of the automatic stay to allow the perfection and prosecution of an appeal (the "**Appeal**") of a summary judgment order dismissing Williams' personal injury tort claim for defamation by Gawker entered on June 1, 2016, in litigation titled <u>Mitchell Williams v. The MLB Network, Inc., The Gawker Media Group, Inc., and Gawker Media, LLC</u>, Superior Court of New Jersey, Camden County, Law Division, Docket No.: L-3675-14, and, if successful on the Appeal, to litigate through and including trial by jury to a final determination of the Williams Claim by the Superior Court of New Jersey (the "**New Jersey State Court**").

2. The New Jersey State Court litigation entails three defamatory statements published by Gawker that, in connection with a youth baseball tournament, Williams: (1) ordered a "beanball" thrown at an opposing batter; (2) used profanity, such as "motherfucker", in addressing an umpire/referee in front of children; and (3) called an opposing player a "pussy". Those three defamatory statements were dismissed by the New Jersey State Court on June 1, 2016 by Order Granting Defendant Gawker Media, LLC's Motion for Summary Judgment (the "**SJO**"). The SJO was without a written or reasoned oral opinion, and without findings of undisputed material facts and conclusions of law, as required by New Jersey Court Rule ("<u>R</u>.") 4:46-2(c) and <u>R</u>. 1:7-4(a). <u>See</u> also Comment 7 to <u>R</u>. 1:6-2. The SJO expressly acknowledged Williams' right to appeal the summary judgment dismissal with prejudice.

2

3.  The automatic stay prevents Williams from (i) appealing a patently defective summary judgment; (ii) liquidating in short order his non-core, personal injury, defamation tort claim before a jury in the New Jersey State Court; and (iii) recovering a dividend from a liquidated and substantial bankruptcy estate. As shown below, "cause" exists for modifying the automatic stay to permit the Appeal and, if successful, to allow Williams to proceed to trial by jury for a final determination in the New Jersey State Court, a court of competent jurisdiction. Williams seeks no relief from stay to enforce any judgment entered in his favor against Debtor outside of this bankruptcy.

## JURISDICTION, VENUE, & STATUTORY PREDICATES

4.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. A request to modify the automatic stay is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are section §105 and 362(d)(1) of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "**Bankruptcy Code**") and Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## PROCEDURAL & RELEVANT FACTUAL HISTORY

5.  Williams' complaint and jury demand (the "**Williams Complaint**") -- filed on September 24, 2014 in the New Jersey State Court -- asserted five (5) causes of action against Gawker and twelve (12) causes of action against The MLB Network, Inc., the former employer of Williams. (Declaration of Rahul Munshi, attached as Exhibit B, the "Munshi Dec.", at ¶2 and Exhibit 1). Williams asserts personal injury, defamation tort claims against Gawker and various claims against The MLB Network, Inc.

6.  On March 6, 2015, the New Jersey State Court entered an Order granting in part and denying in part Gawker's Motion to Dismiss the Williams Complaint. (Munshi Dec. ¶3 and

Exhibit 2). Specifically, the New Jersey State Court denied Gawker's motion as to the three challenged defamatory statements published by Gawker identified above. (Id.).

7. On May 7, 2015, the New Jersey State Court denied Gawker's Motion for Reconsideration of the refusal to dismiss the three surviving defamation statements (Munshi Dec. ¶4 and Exhibit 3). The lawsuit continued through discovery as to those three surviving defamation statements. (Id.).

8. In discovery, Debtor answered an interrogatory propounded by Williams as follows: "Gawker has a Media Content Insurance policy with American International Group, Inc. (AIG) that might be applicable to the claim asserted in this case, with a coverage limit of $1 Million. Gawker has provided notice under this policy." (Munshi Dec. ¶5).

9. After discovery closed, Gawker moved for summary judgment against Williams. On June 1, 2016, the New Jersey State Court granted summary judgment for Gawker and entered the SJO, which SJO dismissed with prejudice all (remaining three) defamation statements by Gawker and expressly preserved for Williams the right and "ability to appeal all rulings as to Gawker defendants." (Munshi Dec. ¶6 and Exhibit 4). The New Jersey State Court did not provide a written or reasoned oral opinion supporting the ruling. (Id.). Nor did the New Jersey State Court render findings of undisputed material facts or conclusions of law.

10. Nine days later, on June 10, 2016 (the "**Petition Date**"), Gawker filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. As of the Petition Date, Williams was not required, nor obligated, to file an appeal or to file any other action to preserve his right to appeal the SJO. (Munshi Dec. at ¶7). On July 11, 2016, Williams filed Proof of Claim No. 6 (the "**Williams Claim**") in the Chapter 11 case based on the three defamatory statements under New Jersey law. (Munshi Dec. at ¶9). A confirmation hearing on Debtor's proposed amended

4

joint Chapter 11 plan of liquidation dated as of November 3, 2016 (the "**Plan**") is presently scheduled to commence on December 13, 2016. (Id.).

11. Before Gawker's bankruptcy filing and before the entry of the SJO, the Williams Claim was scheduled to be tried before a jury on June 27, 2016 in the New Jersey State Court. (Munshi Dec. at ¶8).

12. Contemporaneous with the filing of the Motion, Williams has filed opposition (the "**Opposition**") to Debtor's Objection to the Williams Claim. (Munshi Dec. at ¶10). The Opposition argues, among other things, that the Bankruptcy Court lacks jurisdiction to conclusively determine the Williams Claim.

## RELIEF REQUESTED

13. Pursuant to section 362(d)(1) of the Bankruptcy Code and Bankruptcy Rule 4001(a), Williams respectfully requests that the Court modify the automatic stay to permit Williams, and his counsel, to appeal (the "**Appeal**") the SJO in the Appellate Division of the New Jersey State Court. A proposed form of order approving the relief requested herein is attached hereto as **Exhibit A** (the "**Proposed Order**").

## BASIS FOR RELIEF REQUESTED

### I. Legal Standard for Modifying the Automatic Stay

14. Section 362(a)(1) of the Bankruptcy Code imposes an automatic stay of the commencement or continuation of all litigation against a debtor upon the debtor's filing of a bankruptcy petition. See 11 U.S.C. § 362(a)(1); In re Project Orange Assocs., LLC, 432 B.R. 89, 101 (Bankr. S.D.N.Y. 2010). The Court, however, may grant a modification of the automatic stay "for cause," pursuant to section 362(d)(1) of the Bankruptcy Code. 11 U.S.C. § 362(d)(1). Section 362(d)(1) provides that, "[o]n request of a party in interest and after notice and a hearing,

the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause . . . ." Id.; see also In re Lynn Lord, 325 B.R. 121, 129 (Bankr. S.D.N.Y 2005) (the moving party must "demonstrate[] cause for relief from the automatic stay").

15. Neither section 362(d)(1) nor its legislative history defines what constitutes "cause" for relief from the automatic stay. In re Touloumis, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994). "'Cause' is an intentionally broad and flexible concept which must be determined on a case-by-case basis." Project Orange, 432 B.R. at 103. Thus, the decision whether to modify the stay falls within the discretion of the Bankruptcy Court. In re Marketxt Holdings, Corp., 428 B.R. 579, 585 (S.D.N.Y. 2010) (citing Sonnax Indus., Inc. v. Tri-Component Prod. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir. 1990)).

16. Courts in the Second Circuit consider twelve factors, established in the Second Circuit's seminal Sonnax decision, to determine on a case-by-case basis whether relief from the automatic stay is appropriate. Sonnax, 907 F.2d at 1286; see In re Lehman Bros. Holdings Inc., 435 B.R. 122, 138 (S.D.N.Y. 2010), aff'd sub nom. Suncal Cmtys. I LLC v. Lehman Commercial Paper, Inc., 402 F. App'x 634 (2d Cir. 2010) ("Sonnax . . . is routinely referenced as the leading relief from stay precedent in this Circuit."); see also In re Salander O'Reilly Galleries, 453 B.R. 106, 119 (Bankr. S.D.NY. 2011).

17. The twelve Sonnax factors that govern the section 362(d)(1) inquiry are:

(1) whether relief would result in a partial or complete resolution of the issues;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

6

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

18. Courts are not required to consider all twelve Sonnax factors in every case, but instead should consider "'only those factors relevant to [the] particular case.'" Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship (In re Burger Boys, Inc.), 183 B.R. 682, 688 (S.D.N.Y. 1994) (quoting In re Touloumis, 170 B.R. at 828). Indeed, Sonnax itself considered only four of the twelve factors that it enumerated because they were the only "factors . . . relevant to the instant case." Sonnax, 907 F.2d at 1286.

## II. Cause Exists to Modify the Automatic Stay to Permit the Appeal to Proceed

19. In this case, six of the Sonnax factors—specifically, factors one, two, seven, ten, eleven and twelve—are relevant to this Motion. All six factors weigh in favor of modifying the automatic stay to allow the Appeal to proceed so that the New Jersey State Court (or other state court of competent jurisdiction) may liquidate and fix the allowance and

7

amount of Williams' personal injury, defamation tort claims.

*Factor One: Whether Relief Would Result in a Partial or Complete Resolution of the Issues*

20. Factor one weighs heavily in favor of modifying the automatic stay because permitting the Appeal to proceed will result in complete resolution of the issues involved in the Williams Claim. The Appeal involves three defamatory statements as explained above. After the close of discovery, the New Jersey State Court issued the SJO, which SJO dismissed Williams' defamation tort claims against Gawker without a written or reasoned oral opinion, and without findings of undisputed material facts and conclusions of law, in contravention of R. 4:46-2(c) and R. 1:7-4(a). See also Comment to R. 1:6-2. The SJO also preserved expressly for Williams the right and "ability to appeal all rulings as to Gawker defendants." Therefore, the SJO resolved nothing, is not final, and is inherently unreliable, thus necessitating perfection and prosecution of the Appeal.  Modification of the automatic stay to permit the Appeal to proceed will afford Williams due process and enable the parties to completely resolve liability and, if necessary, fix the amount of damages resulting from the three defamatory statements at issue.  Damages must be decided ultimately before a jury, either in the New Jersey State Court or other court of competent jurisdiction as required by 28 U.S.C. § 157(b)(5).  Williams does not, however, seek relief to enforce any damage award outside of bankruptcy.

*Factor Two: Lack of Any Connection with or Interference with the Bankruptcy Case*

*21.*    Factor two also weighs in favor of modifying the automatic stay to permit the Appeal to proceed.  Litigation of the Appeal will not interfere with the Debtor's bankruptcy case because prosecuting the Appeal, and if necessary, completing a trial in New Jersey State Court is the most efficient, cost-effective, and timely manner to fix the amount of the Williams Claim.

8

Moreover, Debtors apparently have insurance coverage for Williams' defamation tort claims. Specifically, Debtor has a Media Content Insurance policy with American International Group, Inc. (AIG) for $1 Million. At worst, even if that insurance policy or any other coverage is unavailable to defend or satisfy the Williams Claim, in whole or in part, the effect of the Appeal (and ultimately a jury verdict) in Williams favor will be the liquidation and preservation of the Williams Claim. Williams does not seek to enforce any judgment or perfect a post-petition lien. Instead, the allowed unsecured Williams Claim will be entitled to the same treatment as other similarly situated claims in these Chapter 11 cases. The Appeal, therefore, will not interfere with the bankruptcy case any more or less than any other allowed unsecured claim. Williams will share *pari passu* in a distribution from Debtor's estate to the extent his defamation tort claims are adjudicated as valid and allowed in a fixed, liquidated amount.[2]

*Factor Seven: Whether Litigation in Another Forum Would Prejudice the Interest of Other Creditors*

22.    Factor seven similarly weighs in favor of modifying the automatic stay because permitting the Appeal to proceed will not prejudice the interests of other creditors. The purpose of the Appeal is to adjudicate, liquidate, fix and preserve the Williams Claim by a court of competent jurisdiction and, if necessary, before a jury. If Williams is successful and the SJO is reversed on Appeal, then the Debtor's estate is in no worse position than if the defamation tort claim was liquidated and fixed before the Petition Date. Conversely, if the Debtor is

---

[2] At the time of the filing of the Motion, Debtor had filed its Notice of Debtors' Motion Pursuant to Bankruptcy Code Sections 105, 502(C) and 1129 and Bankruptcy Rules 3018 and 3021 for Approval of Claims Estimation and Plan Reserve Procedures (the "Disallowance Motion"). Williams anticipates having to object to the Disallowance Motion on multiple grounds, but for purposes of this Motion, an estimation process, particularly to fix a claim for distributions under a Plan, cannot preempt a trial by jury of a personal injury claim that could be promptly heard in New Jersey State Court.

9

successful and the SJO is affirmed on Appeal, then the Debtor's estate will benefit by the disallowance and expungement of a valuable defamation tort claim. Simply put, creditors of the Debtor's estate (other than Williams) have nothing significant to gain or lose by permitting the Appeal to proceed. Denial of the Motion, however, will severely prejudice Williams' interests as a creditor and due process rights as a litigant given the facially defective SJO. Indeed, the denial of the Motion is tantamount to the Bankruptcy Court's impermissible appellate review of Williams defamation tort claims – since it effectively would preclude the New Jersey Appellate Division from ruling on the validity and enforceability of the SJO, despite the trial court's express preservation of that right for Williams.

*Factor Ten: The Interests of Judicial Economy and the Expeditious and Economical Resolution of the Litigation*

23.  Factor ten weighs in favor of modifying the automatic stay because permitting the Appeal to proceed will serve the interests of judicial economy and the expeditious resolution of the litigation. The New Jersey State Court has presided over the case since 2014. All discovery is completed and closed. But for entry of the SJO, a jury trial of the Williams' Claim was imminent, having been scheduled originally for trial on June 27, 2016 by the New Jersey State Court. Allowing the Appeal to proceed in the New Jersey State Court will serve the interests of judicial economy. Permitting the Appeal to proceed will allow the parties and the New Jersey State Court to bring these disputed issues expeditiously to resolution.

*Factor Eleven: Whether the Parties Are Ready for Trial in the Other Proceeding*

24.  Factor eleven also weighs in favor of modifying the automatic stay to permit the Appeal to proceed. The parties, having long ago concluded discovery in the New Jersey State Court, are ready to litigate the SJO Appeal. The Appellate Division of the New Jersey State

Court will be ready to hear and resolve the Appeal after this Court issues an order modifying the automatic stay to permit the Appeal to proceed, and, if necessary, to conduct a jury trial – one that already has been listed on the trial calendar of the New Jersey State Court.

*Factor Twelve: Impact of the Stay on the Parties and the Balance of Harms*

25. Finally, factor twelve weighs in favor of modifying the automatic stay to permit the Appeal to proceed. The impact of the automatic stay has been to foreclose the parties from resolving three defamatory statements in the case, to delay the New Jersey State Court from closing the case, and to prevent Williams from liquidating and fixing the issue of liability and the amount of damages on his personal injury, defamation tort claims. The requested modification of the automatic stay will benefit all parties by permitting the ultimate and final resolution of the Williams Claim without risk of harm to creditors or to any other interested party.

### NOTICE

26. Notice of this Motion has been provided in accordance with the Order Establishing Certain Notice, Case Management, and Administrative Procedures and Omnibus Hearing Dates (ECF No. 93). Williams submits that such notice is sufficient and no other or further notice need be provided.

27. No previous request for the relief sought herein has been made by Williams to this or any other Court.

### CONCLUSION

28. For each of the reasons set forth above, the Sonnax factors weigh heavily in favor of the requested modification of the automatic stay and, therefore, cause exists for the Court to modify the automatic stay to allow the Appeal to proceed and, if necessary, to complete a jury trial of the Williams Claim in New Jersey State Court. Williams respectfully requests that

the Court enter an order (substantially in the form of <u>Exhibit A</u> attached hereto) granting the Motion and for such other and further relief, as may be appropriate.

        Respectfully submitted,

        **CHIESA SHAHINIAN & GIANTOMASI PC**
        *Attorneys for Mitchell Williams*

        By:   */s/ Robert E. Nies*
             ROBERT E. NIES

        One Boland Drive
        West Orange, New Jersey 07052
        Tel:   (973) 530-2012
        Fax:  (973) 530-2212
        E-Mail:  rnies@csglaw.com

Dated: November 17, 2016