Hearing Date & Time: December 1, 2016 at 10:30 a.m. (Eastern Time)

CHIESA SHAHINIAN & GIANTOMASI PC
One Boland Drive
West Orange, New Jersey 07052
Telephone: (973) 325-1500
Facsimile: (973) 325-1501
Robert E. Nies, Esq. (rnies@csglaw.com)
Michael R. Caruso, Esq. (mcaruso@csglaw.com)

*Attorneys for Mitchell Williams*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GAWKER MEDIA LLC, et al., | Case No. 16-11700 (SMB) |
| Debtors.[1] | (Jointly Administered) |

**MITCHELL WILLIAMS' OBJECTION TO DEBTORS' MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 502(c) AND 1129 AND BANKRUPTCY RULES 3018 AND 3021 FOR APPROVAL OF CLAIMS ESTIMATION AND PLAN RESERVE PROCEDURES**

TO:   THE HONORABLE STUART M. BERNSTEIN
        UNITED STATES BANKRUPTCY JUDGE

Mitchell Williams ("**Williams**"), a creditor of Debtor Gawker Media LLC ("**Gawker**" or "**Debtor**"), by and through his undersigned counsel Chiesa Shahinian & Giantomasi PC, respectfully files this objection (the "**Objection**") to *Debtors' Motion Pursuant to Bankruptcy Code Sections 105, 502(c) and 1129 and Bankruptcy Rules 3018 and 3021 for Approval of Claims Estimation and Plan Reserve Procedures* [Dkt. 444] (the "**Estimation Motion**")[2] and, in support of his Objection, states:

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Lft.) (5056).  Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022.  Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

[2] Capitalized terms not otherwise defined herein shall have the same meaning as in the Estimation Motion.

6339459.2

**PRELIMINARY STATEMENT**

1.  The Estimation Motion follows on the heels of Debtor's Objection [Dkt. No. 391] to Proof of Claim No. 6 filed by Mitchell Williams (the "**Williams Claim**"). The Estimation Motion is the Debtor's second attempt to disallow and expunge the non-core Williams Claim. The Williams' Claim is based on contingent, unliquidated damages against Gawker for personal injury, defamation torts to his character and reputation. The Williams Claim was scheduled to be tried before a jury in the Superior Court of New Jersey (the "**New Jersey State Court**") on June 27, 2016 – nine days before Debtor filed for bankruptcy and before the New Jersey State Court erroneously entered a summary judgment order ("**SJO**") dismissing the Williams Claim.

2.  Williams has filed opposition (the "**Opposition**") [Dkt. 459] to the Debtor's Objection to the Williams' Claim. Contemporaneously, Williams has moved for modification of the automatic stay (the "**Lift Stay Motion**") [Dkt. 460] to allow the perfection and prosecution of an appeal (the "**Appeal**") of the SJO and, if successful on the Appeal, to litigate through and including trial by jury to a final determination of the Williams Claim in the New Jersey State Court.

3.  The Estimation Motion designates the Williams' Claim as a "Contested Claim" whose treatment is "estimated at zero… for the purposes of the Confirmation Hearing **and Plan distributions** pursuant to these procedures." [Dkt. 444 at page 12]. (Emphasis supplied). Therefore, the Estimation Motion seeks to disallow the Williams Claim, just like the Debtor's Objection, by improperly adjudicating Debtor's liability and damages at zero, thus depriving Williams of his due process right to appeal the SJO and his Seventh Amendment right to have a jury conclusively determine the issues of Debtor's liability and damages. The Bankruptcy Court lacks authority to estimate the Williams Claim for the purpose of distribution. Instead, the

Williams Claim must be liquidated in the New Jersey State Court (or, arguably, in the District Court), which liquidation will not unduly delay the administration of the Chapter 11 case.

## PROCEDURAL AND RELEVANT FACTUAL HISTORY

4. The procedural and relevant factual history is set forth in the Opposition, Lift Stay Motion and the separate Declaration of Rahul Munshi (the "Munshi Dec.") that accompanied each pleading. For the sake of brevity, those facts are not repeated here but are expressly incorporated by reference.

## OBJECTION

5. As a matter of law, the Bankruptcy Court does not have jurisdiction to estimate the non-core Williams' Claim for the purpose of distribution under the Debtor's Plan. Even if the Bankruptcy Court were to erroneously conclude that it has jurisdiction to estimate for the purpose of distribution, the Williams Claim is readily capable of liquidation at a jury trial in the New Jersey State Court in short order before the close of the Debtor's Chapter 11 case (provided the Lift Stay Motion is granted and Williams is successful on Appeal).

**I.    Estimation of the Williams' Claim for Purposes of Distribution is Proscribed by 28 U.S.C. §157(b)(2)(B).**

6. Title 28 U.S.C. § 157(b)(2)(B) states, in relevant part:

Core proceedings include, but are not limited to –
allowance or disallowance of claims against the estate…, and estimation of claims or interests for the purposes of confirming a plan under chapter 11… of title 11 **but not the liquidation or estimation of contingent or unliquidated personal injury tort… claims against the estate for purposes of distribution in a case under title 11**.

28 U.S.C. § 157(b)(2)(B). (Emphasis supplied).

7. Title 28 of the United States Code draws a critically important distinction between the estimation of an unliquidated claim for the purpose of confirming a plan (which includes estimation for voting) and estimation for purposes of distribution. The former is a core matter; the latter is noncore. In re North American Health Care, Inc., 544 B.R. 684, 688 (2016)(citing 28

3

U.S.C. § 157(b)(2)(B)). A bankruptcy court may estimate personal injury tort claims for purposes of confirming a chapter 11 plan, however, fixing the final amount of any such claim for purposes of distribution under the plan must be determined by a district court or other court of competent jurisdiction. See <u>Collier on Bankruptcy</u> ¶ 3.06[1] (16th ed. 2015). Consequently, a bankruptcy court is prohibited by 28 U.S.C. §157(b)(2)(B) from liquidating or fixing the value of non-core personal injury tort claims for distribution purposes. <u>In re G-I Holdings, Inc.</u>, 323 B.R. 583, 615 (Bankr. D.N.J. 2005) (holding that if a bankruptcy court determines that a personal injury tort is allowable as a matter of law, section 157(b)(2)(B) prevents the bankruptcy court from valuing that claim; rather, sections 157(b)(5) and 1411(a) direct where such a valuation is to take place and by what procedure---a jury trial in the district court); see also <u>In re Hoffinger Industries, Inc.</u>, 307 B.R. 112 (Bankr. E.D. Ark. 2004) (bankruptcy court may not estimate contingent or unliquidated personal injury claims for purposes of distribution, but may do so for purposes of determining feasibility of Chapter 11 plan of reorganization); <u>In re Keenan</u>, 201 B.R. 263, 267 (Bankr. S.D. Cal. 1996) (the Rooker-Feldman doctrine precludes "using the claims estimation process as a mechanism for *de novo* or appellate review of state court judgments [as this] does violence to the roles and relationships of the federal and state judiciaries").

8.  Here, Gawker's published personal attacks against Williams' character and reputation are personal injury, defamation, torts. In particular, the three defamatory statements against Williams -- and his five (5) causes of action against Debtor for intentional defamation, defamation per se, negligent defamation, invasion of privacy – false light, and negligent misrepresentation -- meet the standard of a personal injury tort claim under both the expansive view and the "hybrid" analysis of Section 157(b)(5). (See cases cited on pages 11 to 14 of Williams' Opposition to Debtor's Objection to the Williams Claim, Dkt. 459, summarized

4

herein[3]). The Bankruptcy Court lacks jurisdiction to conclusively determine, and thus liquidate for distribution purposes, the Williams Claim within the meaning of Section 157(b)(5). Simply put, a jury trial is necessary (and mandated by the Judicial Code and Seventh Amendment) for fixing the value of Debtor's liability and damages. A jury trial will occur only after Williams is successful on Appeal. Under the Rooker-Feldman doctrine, only the Appellate Division of the New Jersey State Court may determine and adjudicate the validity of the SJO, which on its face is defective for each of the reasons set forth in William's Opposition. The Appeal will proceed expeditiously upon the Court granting Williams' Lift Stay Motion. Therefore, the Estimation Motion should be denied with respect to the proposed zero Plan distributions on the Williams Claim.

II. **Liquidation of the Williams' Claim in New Jersey State Court Will Not Unduly Delay the Administration of the Bankruptcy Case Under 11 U.S.C. § 502(c).**

9. Section 502(c)(1) of the Bankruptcy Code provides, in relevant part:

There shall be estimated for purpose of allowance under this section –
any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case.

11 U.S.C. § 502(c)(1).

10. The Bankruptcy Code only requires the Court to estimate pending tort claims if their liquidation would unduly delay the administration of the case. 11 U.S.C. § 502(c)(1). O'Neill v. Continental Airlines, Inc. (In re Continental Airlines, Inc.), 981 F.2d 1450, 1461 (5th Cir. 1993) In re Apex Oil Co., 107 B.R. 189, 193 (Bankr. E.D. Mo. 1989) (the duty to estimate is

---

[3] Adelson v. Smith (In re Smith), 389 B.R. 902, 908 (Bankr. D. Nev. 2008) (the middle ground or hybrid approach to Section 157(b)(5) encompasses torts involving bodily and reputational harm, such as a libel claim); Control Center, L.L.C. v. Lauer, 288 B.R. 269, 286 (M.D. Fla. 2002) (a defamation claim is a personal injury tort under Section 157(b)(5)); Rizzo v. Passialis (In re Passialis), 292 B.R. 346, 352 (Bankr. N.D. Ill. 2003) (a slander claim is a personal injury tort claim); Boyer v. Balanoff (In re Boyer), 93 B.R. 313, 317 (Bankr. N.D.N.Y. 1988)(a personal injury tort "includes damage to an individual's person and any invasion of personal rights, such as libel, slander and mental suffering.").

not mandatory until the court determines that liquidation of the claim outside of the bankruptcy court would unduly delay the bankruptcy proceeding). This does not mean that claims should be estimated just because it would take longer to liquidate them. In fact, liquidation of the claims is the general rule and estimation the exception despite the fact that liquidation may be more time consuming. Dow Corning Corp., 211 B.R. 545, 562 (Bankr. E.D. Mich. 1997).

11.    Delay is undue only if it is unjustifiable. Dow Corning, 211 B.R. at 563; In re Teigen, 228 B.R. 720, 723 (Bankr. S.D. 1998). To determine whether the delay attendant with liquidation is unjustified, the Court must consider all the circumstances in the case. It is an inherently fact-based inquiry. The costs and benefits associated with both liquidation and estimation should be evaluated. Dow Corning, 211 B.R. at 563. The Court must also consider the rights of all of the parties in interest, not just the Debtor, in deciding whether delay in administration of the case is justified. Dow Corning, 211 B.R. at 566. Here, the burden is on Debtor to establish that the normal mode of liquidating claims would create undue delay. Dow Corning, 211 B.R. at 573; In re Statewide Realty Co., 159 B.R. 719, 725 (Bankr. D.N.J. 1993). It is a burden that Debtor has failed to carry at least with respect to the Williams Claim.

12.    There are good reasons to except the Williams Claim from estimation for purposes of distribution. First, the Williams Claim may be liquidated in New Jersey State Court in short order without any undue delay of the administration of the Chapter 11 case. Nine days before Debtor filed for bankruptcy (and before the entry of the SJO), the Williams Claim was scheduled to be tried before a jury on June 27, 2016 in the New Jersey State Court. (See Munshi Dec. accompanying the Lift Stay Motion, Dkt. 460 at ¶¶6-8). The Lift Stay Motion is pending before the Bankruptcy Court and, in the event it is granted, Williams will diligently perfect and prosecute his Appeal. If Williams is successful on Appeal, a jury trial in the New Jersey State Court will quickly follow (as the case is already on the trial calendar) and conclude before the

Chapter 11 case is closed. In the interim, the Debtor should maintain a sufficient reserve in the Plan in the event Williams is successful against Debtor on Appeal and on remand at a jury trial.

13. Second, estimation for distribution purposes is particularly unjustifiable as to Williams because it destroys his constitutional right to a jury trial. Williams has a Seventh Amendment right to have a jury determine liability and damages on the published personal attacks against his character and reputation. Third, Williams' dissatisfaction in the event the Bankruptcy Court renders an inaccurate or erroneous estimate of Debtor's liability and damages may lead to an appeal of the estimation. See, e.g., Bittner v. Borne Chem. Co., 691 F.2d 134, 135 (3d Cir. 1982); Dow Corning, 211 B.R. at 564. As a result, estimation under § 502(c)(1) of the Bankruptcy Code is duplicative and will delay, rather than expedite, the administration of the Chapter 11 case by prolonging the liquidation of the Williams' non-core personal injury, defamation tort claims.

14. Estimation for purposes of distribution is unwarranted as to the Williams Claim. To the extent the Williams Claim is estimated, it must be for the narrow, limited purposes of voting (see e.g., In re Farley, Inc., 146 B.R. 748 (N.D. Ill. 1992)), determining whether a plan is feasible (In re Poole Funeral Chapel, 63 B.R. 527 (N.D. Ala. 1986)), determining solvency (In re G-I Holdings, Inc., 323 B.R. 583 (Bankr D.N.J. 2005) and/or similar issues related to Plan confirmation.

### III. Williams' Objection to Specific Estimation Procedures.

15. As stated above, estimation procedures for the Williams Claim serve one purpose only: to fix a reserve under the proposed Plan for voting purposes. There can be no estimation process to estimate the Williams Claim, a personal injury tort claim, for distribution purposes.[4]

---

[4] Williams will timely submit a Reserve Objection and, accordingly, the provisions of paragraph 18 of the Estimation Motion, particularly sub-paragraphs (c) through (k), would apply to Williams.

16. Before the Gawker bankruptcy was filed, Williams and Gawker had completed all discovery in the New Jersey State Court. There is therefore no additional factual discovery required to estimate the Williams Claim and depositions are unnecessary. The remaining "pre-trial" exchange of documents, identification of witnesses for the estimation hearing, and obligation to confer on the terms of a pre-trial order, are acceptable to Williams.

## CONCLUSION

For each of the reasons set forth above, Williams respectfully requests that the Court deny Debtor's Estimation Motion, and grant Williams such other and further relief as may be appropriate.

Respectfully submitted,

**CHIESA SHAHINIAN & GIANTOMASI PC**
*Attorneys for Mitchell Williams*

By: */s/ Robert E. Nies*
    ROBERT E. NIES

One Boland Drive
West Orange, New Jersey 07052
Tel:  (973) 530-2012
Fax:  (973) 530-2212
E-Mail:  rnies@csglaw.com

Dated: November 28, 2016

6339459.2