ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Peter H. Walkingshaw (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
                                                      :
In re                                                 :    Chapter 11
                                                      :
Gawker Media LLC, *et al.*,[1]                        :    Case No. 16-11700 (SMB)
                                                      :
                            Debtors.                  :    (Jointly Administered)
                                                      :
------------------------------------------------------x

**DEBTORS' OBJECTION TO MOTION FOR RELIEF FROM THE
AUTOMATIC STAY BY MITCHELL WILLIAMS [DOCKET NO. 460]**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this objection (this "Objection") to the *Motion of Mitchell Williams for an Order (I) Modifying the Automatic Stay, for "Cause", Pursuant to 11 U.S.C. §362(d) to Permit an Appeal in State Court Litigation Involving a Personal Injury Defamation Claim Against Debtor; (II) Authorizing a Trial in State Court of Williams' Personal Injury Defamation Claim Against Debtor, Solely to Establish Liability and Amount of William' Claim; and (III) Granting Such Other and Further*

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

*Relief as May Be Appropriate* [Docket No. 460] (the "Stay Motion") filed by claimant Mitchell Williams. In support of this Objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.  By the Stay Motion, Williams seeks an order modifying the automatic stay to not only allow him to begin the process of appealing a state court decision that dismissed his claims against Debtor Gawker Media LLC ("Gawker Media"), but also authorize him to litigate through and including a subsequent jury trial in state court should his appeal be successful. Importantly, Williams waited to file the Stay Motion until the eve of confirmation and only after the Debtors filed their substantive objection (the "Claim Objection") [Docket No. 391] to his proof of claim, Claim No. 6 (the ("Williams Claim") and a motion to approve procedures to estimate claims for plan reserve purposes (the "Claims Estimation and Plan Reserves Procedures") [Docket No. 444] that would apply to the Williams Claim in the event that the Claim Objection was not granted.

2.  As set forth below, under Bankruptcy Code section 362(d), Williams bears the heavy burden of showing that sufficient "cause" exists to lift the stay, yet he offers no compelling reason as to why in the present circumstances the automatic stay should now be modified, and the Debtors compelled to spend time and effort on a lengthy appeal process, when this Court may fully and expeditiously address the Williams Claim in the claims administration process. Specifically, in support of the Stay Motion, Williams asserts that the pending state court action is "ready for trial" (Stay Motion ¶ 24) and that such a trial is necessary to "completely resolve liability" (Stay Motion ¶ 20). The trial court has, however, already dismissed with prejudice all of the claims alleged against Gawker Media by Williams. Moreover, despite that decision having been rendered over six months ago, Williams waited more than 5 months since the commencement of these chapter 11 cases to file the Stay Motion and initiate an interlocutory

appeal from the state court's dismissal order (the "Summary Judgment Order"). Thus, as set forth below, cause does not exist to modify the automatic stay at this time and the Stay Motion should be denied. Indeed, granting such relief would be extremely prejudicial to the Debtors given that the Debtors are prepared to proceed on the Claim Objection at the December 1 hearing, and that this Court has the requisite jurisdiction and authority to adjudicate the Claim Objection.

## BACKGROUND

3.  Williams is a former Major League Baseball player who alleges that certain articles published by websites owned by Gawker Media defamed him. Williams filed a complaint (the "Complaint") in the Superior Court of Camden County, New Jersey (the "New Jersey Trial Court") on September 24, 2014. In the Complaint Williams asserted twelve causes of action against The MLB Network and five causes of action against Gawker Media.

4.  Gawker Media moved to dismiss the Complaint, and on March 6, 2015 the New Jersey Trial Court entered an order dismissing the claims against Gawker Media except those relating to three challenged statements. Stay Motion, Ex. B ("Munshi Decl."), Ex. 2, Motion to Dismiss Order. After discovery Gawker Media moved for summary judgment on Williams' remaining claims, and on June 1, 2016 the New Jersey Trial Court granted summary judgment for Gawker Media, but did so with Williams having the "ability to appeal all rulings as to Gawker Defendants." Munshi Decl., Ex. 4, Summary Judgment Order.

5.  On June 10, 2016 (the "Petition Date") Gawker Media filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, Williams' action against The MLB Network has proceeded; however, it has not yet concluded because the planned jury trial has been adjourned twice by the New Jersey Trial Court. Munshi Decl. ¶ 8.

3

6. On July 11, 2016, Williams filed the Williams Claim in the amount of $50,000,000. As supporting documentation, Williams attached only the Complaint.

7. On October 31, 2016, Gawker Media filed the Claim Objection. On November 14, 2016 the Debtors filed their motion seeking approval of the Claims Estimation and Plan Reserves Procedures. On November 17, 2016, Williams responded to these pleadings by filing his opposition to the Claim Objection and the Stay Motion, making his first request for relief from the automatic stay. By the Stay Motion Williams seeks to initiate an interlocutory appeal (the "Interlocutory Appeal") to reverse the order of the New Jersey Trial Court granting summary judgment to Gawker Media with respect to those claims that were not dismissed by the New Jersey Trial Court at the motion to dismiss stage. Stay Motion ¶ 2. The Debtors shall file a substantially contemporaneous response to Williams' opposition to the Claim Objection with this Objection.

**ARGUMENT**

**I. Williams Has Failed to Establish Cause for Relief from the Automatic Stay**

8. Williams has sought relief from the automatic stay applicable in the Gawker Media chapter 11 case for "cause" under Bankruptcy Code section 362(d)(1). Stay Motion ¶¶ 15, 19. Although the Bankruptcy Code does not define "cause," in the context of pending litigation, the Second Circuit has established the following twelve non-exhaustive list of factors to consider when determining whether sufficient "cause" exists to modify the automatic stay:

(1) whether relief would result in a partial or complete resolution of the issues;

(2) whether there is any connection with or would be interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

4

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) whether stay relief would be in the interests of judicial economy and further the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) the impact of the stay on the parties and the balance of harms.

*Sonnax Indus, Inc. v. TRI Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990) (enumerating factors); *see also Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999) (vacating a district court order granting stay relief where the bankruptcy court had not applied the *Sonnax* factors).

9. Williams concedes that the *Sonnax* factors apply to the Stay Motion, *see* Stay Motion ¶ 17, and cannot deny that he bears the burden of establishing cause. *Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43, 48 (2d Cir. 1997) ("[A] bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause."). Moreover, Williams tacitly concedes that the Court need only consider those factors relevant to this particular case, *see* Stay Motion ¶ 17, arguing that factors one, two, seven, ten, eleven, and twelve weigh in favor of granting the Stay Motion. *See* Stay Motion ¶ 19. As demonstrated below, however, those factors do not weigh in favor of granting the Stay Motion, and when

5

coupled with factors four, five and six that Williams fails to address, the *Sonnax* factors overwhelmingly weigh against granting the Stay Motion.

### A. *The Sonnax Factors Upon Which Williams Relies Do Not Establish Cause for Granting the Stay Motion*

#### 1. Relief from the Automatic Stay Is Not Necessary for There to Be a Partial or Complete Resolution of the Issues

10. Williams argues that relief from the stay will result in resolution of the issues involved in Williams' defamation action and thus, that the first *Sonnax* factor weighs in favor of granting the Stay Motion. Stay Motion ¶ 20. In fact, relief from the automatic stay is not necessary to resolve the issues between the parties.

11. First, all issues between the parties have already been resolved by the New Jersey Trial Court. As noted above, the New Jersey Trial Court's Summary Judgment Order dismissed all remaining claims against Gawker Media with prejudice.[2] In the Stay Motion, Williams addresses this indisputable fact contending that the Summary Judgment Order "resolved nothing [and] is not final" because it noted Williams retained the ability to appeal the decision against him. Stay Motion ¶ 20. A pendent appeal does not, however, diminish the finality of a state court trial order so long as the law of that state would afford that order preclusive effect, and importantly at least one bankruptcy court in this Circuit has denied relief from the automatic stay to resolve a pendent appeal where the trial court judgment is sufficiently final under the relevant state law to afford it preclusive effect. *See, e.g.*, *Westport Taxi Serv., Inc. v. Westport Transit Dist. (In re Westport Transit Dist.)*, 141 B.R. 543, 545 (Bankr. D. Conn. 1992) (denying creditor's motion to lift stay to resolve debtor's appeal where state law gave preclusive effect to trial court judgment).

---

[2] By the Stay Motion, Williams seemingly only seeks to appeal the Summary Judgment Order. *See* Stay Motion ¶¶ 2, 22.

12. Critically, courts in the state of New Jersey follow the approach of the Restatement (Second) of Judgments and give preclusive effect to final trial court decisions notwithstanding the pendency on an appeal. *See Gregory Mktg. Corp. v. Wakefern Food Corp.*, 207 N.J. Super 607, 624 (N.J. Super. 1985) ("[R]es *judicata* and collateral estoppel should be applied even if the final judgment in the prior action is pending on appeal."), *rev'd on other grounds by Watkins v. Resorts Int'l Hotel & Casinos Inc.*, 124 N.J. 398 (1991); *N.J. Div. of Child Protection & Permanency v. J.H.*, No. A-1322-12T3, 2014 WL 1464469, at *5 n.3 (N.J. Super. Ct. App. Div. Apr. 16, 2014) (findings subject to a pendent appeal are final for purposes of collateral estoppel); *see also* Restatement (Second) of Judgments § 13 (1982) (noting that although jurisdictions are not uniform "[t]he better view is that a judgment otherwise final remains so despite the taking of an appeal unless what is called an appeal actually consists of a trial *de novo*"). Consequently, the Summary Judgment Order should be given preclusive effect in these chapter 11 cases.

13. Second, even setting aside the fact that Williams' causes of action have been finally resolved by the New Jersey Trial Court, any relief to which he might eventually be entitled is both remote and contingent, and in such circumstances courts in the Southern District have found that the first *Sonnax* factor weighs against lifting the stay. *See In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) (first *Sonnax* factor weighs against lifting stay where pendent appeal would need to be resolved and substantial proceedings would be required following a successful appeal); *In re Residential Capital, LLC*, No. 12-12020 MG, 2012 WL 3423285, at *6 (Bankr. S.D.N.Y. Aug. 14, 2012) (modifying stay not warranted when resolution of the issues "may not be immediate"). Specifically, because Williams' action against The MLB Network is still

7

pending, Williams does not yet have an appeal as of right. *Vitanza v. James*, 397 N.J. Super. 516, 518 (N.J. App. Div. 2008) (holding order granting summary judgment on liability an unappealable interlocutory order since "to be appealable, as of right, a matter must be resolved by the trial court as to all issues and all parties"). In that regard, to even begin the appellate process, Williams must first seek and obtain permission to pursue an interlocutory appeal. Given the interrelationship with the causes of action against the MLB and the present proceedings, Gawker Media would oppose any such relief and there can be no assurances that Williams would be granted leave rather than being required to the await the outcome of the trial with respect to the MLB.

14. Moreover, even if there were some chance that Williams would be granted leave to appeal, this case differs significantly from the typical case in which courts have modified the automatic stay to permit an appeal. First, this is not a situation in which the parties have fully briefed the appeal and all that remains is either oral argument or disposition by the appellate court. *See, e.g.*, *In re Keene Corp.*, 171 B.R. 180, 182 (Bankr. S.D.N.Y. 1994) (Bernstein, J.) (granting relief for debtor's appeal of an adverse judgment to proceed when all that remained was oral argument and automatic stay prevented recovery by movant from third party). Here, Williams seeks leave to pursue the *perfection* and prosecution of his appeal (Stay Motion ¶ 1). Thus, the appellate process has not yet begun, and the ultimate resolution of the Interlocutory Appeal therefore remains remote. Furthermore, even if Williams were to eventually prevail in an appeal, he would still need to return to the trial court to prove his claim, as a successful appeal in the present circumstances only means that there were factual issues to be resolved at trial. In such similar circumstances, courts have found that the first *Sonnax* factor weighs against lifting the stay. *See In re Residential Capital, LLC*, 501 B.R. 624, 644 (Bankr. S.D.N.Y. 2013)

8

("*ResCap*") (first *Sonnax* factor weighs against stay when claimant would still need to prove his claim at the trial level should his fully-briefed appeal succeed).

15. The claims administration process in these chapter 11 cases does, however, allow for the expeditious resolution. Specifically, as discussed in the Claim Objection, this Court has jurisdiction to determine the Williams Claim. Williams is not asserting a claim for bodily injury. *Vinci v. Town of Carmel (In re Vinci)*, 108 B.R. 439, 442 (Bankr. S.D.N.Y. 1989) (Schwartzberg, J.) (a tort without trauma or bodily injury is not within the statutory exception for a personal injury tort). Indeed, even under the fact-intensive approach adopted by Judge Glenn in *ResCap* for determining whether claims are personal injury claims, Williams alleges damage to his business interests as a professional commentator for Major League Baseball's television network. These are the sorts of claims that have financial, business, property or contract characteristics, and as such are not personal injury claims. *In re Residential Capital, LLC*, 536 B.R. 566, 572 (Bankr. S.D.N.Y. 2015). Since this Court has jurisdiction to determine the claim, the most immediate and efficient manner by which to resolve the issues would be to address the Claim Objection and, if necessary, estimate the Williams Claim, not grant the Stay Motion and await the outcome of an appeal and trial that would take many months, if not years. Accordingly, this factor actually weighs heavily against granting the Stay Motion.

### 2. Stay Relief Will Interfere with the Chapter 11 Cases

16. Williams also argues that stay relief should be granted because prosecution of the Interlocutory Appeal "will not interfere with the Debtor's bankruptcy estate" and because "prosecuting the [Interlocutory Appeal], and if necessary, completing a trial in the [New Jersey Trial Court] is the most efficient, cost-effective, and timely manner to fix the amount" of the Williams Claim. As shown above, further proceedings with respect to the Williams Claim are

presently unnecessary and any relief Williams might eventually obtain would only come at the end of a lengthy appeal process and subsequent trial. More importantly, even if further proceedings were necessary (and they are not), Williams offers no reason why protracted litigation in state court would resolve the Williams Claim in a more "efficient, cost-effective, and timely manner" than the claims administration process overseen by this Court. Indeed, even if this Court lacked jurisdiction to enter a final order, which it does not, it will be far more expeditious and cost effective for this Court to submit proposed findings of fact and conclusions of law to the district court pursuant to section 157(c)(1). *See Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2174-75 (2014) (construing statute to apply Section 157(c)(1) to any proceeding for which the bankruptcy court cannot enter final orders).

### 3. Litigation in Another Forum Would Prejudice the Interests of Other Creditors

17. Williams asserts that litigation in another forum will not prejudice the interests of other creditors because "creditors of the Debtor's estate (other than Williams) have nothing significant to gain or lose by permitting the appeal to proceed." Stay Motion ¶ 22. This is simply not true as unsecured creditors of Gawker Media are adversely affected by the delay caused by and the cost incurred in connection with the Interlocutory Appeal. Specifically, pursuant to section 4.03 of the proposed Plan, unsecured creditors of Gawker Media will not receive distributions from the Gawker Media Claims Reserve until such time as all claims are finally determined. *See* Plan §§ 1.01, 4.03(a). Consequently, the unsecured creditors of Gawker Media will be prejudiced by the appeal and retrial in the Williams litigation because their distributions would need to await the appeal, a retrial and possibly further appeals. What the Debtors have proposed, however, is that the Williams Claims be determined by this Court, leaving Mr.

10

Williams to pursue his state court or other remedies after confirmation and thereby minimizing, if not avoiding altogether, any prejudice to the unsecured creditors of Gawker Media.

### 4. Judicial Economy and the Economical Resolution of Litigation Are Best Served by Maintaining the Automatic Stay

18.     Williams states in conclusory fashion that stay relief will benefit judicial economy because the New Jersey Trial Court has already conducted proceedings with respect to his claim. Stay Motion ¶ 23. This assertion ignores the facts that (i) the most efficient way to resolve Williams Claim is to apply the principle of direct estoppel and disallow his claim, and (ii) a lengthy appeal process stands between him and the possibility of returning his claim to the New Jersey Trial Court. In that regard, in *ResCap* this Court recognized that the interests of judicial economy would not be well-served by modifying the stay to permit an appeal that would not immediately resolve the merits of that claim. *ResCap*, 501 B.R. at 644 (denying stay relief where "stay relief would only result in in adjudication of [movant's] ability to bring the claims . . . [and] the actual merits of the claims [would] still have to be litigated and decided"). Here, Williams cannot dispute that resolution of the Interlocutory Appeal would be costly in terms of both judicial resources and resources of the estate and will not itself result in a fixing of the Williams Claim even should he prevail.

19.     Moreover, it is indisputable that in the first instance, judicial economy is far better served by addressing the Claim Objection. Specifically, the Debtors' contention is that the Williams Claim should be disallowed based on the preclusive effect of the Summary Judgment Order. And as the United States Supreme Court has recognized, the doctrine of collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless

11

litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). Accordingly, this factor weighs against granting relief from the automatic stay.

### 5. The Appeal Has Not Yet Been Initiated and the Parties Are Therefore Not Ready for Trial

20. Williams also asserts that because discovery in the state court action was complete at the time his claims were dismissed that his state court claims are "ready for trial." Stay Motion ¶ 24. This assertion fails to acknowledge the fact that at the close of discovery the trial court found that he was unable to create an issue of material fact for trial and then dismissed his claims with prejudice. Accordingly, the parties are not "ready for trial" because the parties would only return to the trial court after the resolution of the Interlocutory Appeal, and would only do so if Williams were to prevail. At that stage, both parties would have to prepare again.

21. Moreover, as the matter presently stands, the parties are not even ready with respect to the Interlocutory Appeal. Williams' action against The MLB Network is still pending, so the Summary Judgment Order of which he complains is not yet appealable as of right. *Vitanza*, 397 N.J. Super. at 518 (holding order granting summary judgment on liability an unappealable interlocutory order since "to be appealable, as of right, a matter must be resolved by the trial court as to all issues and all parties"). Even if he were granted the right to pursue an Interlocutory Appeal, no oral argument has been scheduled and no briefs have been written. Accordingly it would likely be many months before any actual determination of the Interlocutory Appeal would occur. Moreover, even if Williams were to prevail in his Interlocutory Appeal (and he offers no reason why he should beyond conclusory statements that the trial court order is defective), the pre-trial process and the actual trial itself would still need to be conducted before a new decision fixing his claim could be rendered. Even the trial which Williams repeatedly asserts was scheduled for July of this year (Stay Motion ¶ 11; Munshi Decl. ¶ 8) has yet to

proceed against The MLB Network. So, Williams' suggestion that this matter could be placed on the New Jersey Trial Court's calendar upon a grant of the relief he seeks is plainly wrong. Because even a hypothetical resolution of the Interlocutory Appeal and subsequent trial in Williams' favor would only take place long after a modification of the automatic stay, this factor also weighs against the relief Williams seeks by the Stay Motion.

### 6.    The Balance of Harms Weighs in Favor of Maintaining the Automatic Stay

22.    The final *Sonnax* factor upon which Williams relies also weighs heavily in favor of maintaining the stay. As discussed above, Williams filed the Stay Motion more than five months after filing his proof of claim and only two weeks before the hearing on confirmation of the proposed Plan. Had his claim been truly pressing, he could have pursued the Stay Motion much earlier. More importantly, as set forth above the relative harm to Gawker Media and its unsecured creditors is far more prejudicial than the harm to Williams of having this Court give the proper effect to the Summary Judgment Order and allowing Mr. William to later pursue his state court or other remedies.

23.    In fact, the relief Williams seeks presents only a mere possibility of eventual recovery against the Debtors at some unpredictable but undeniably distant date in the future, whereas the harm to the Debtors and the unsecured creditors of Gawker Media from having to simultaneously litigate both the Interlocutory Appeal and Confirmation and delay potential distributions is substantial. Timely resolution of these chapter 11 cases inures to the benefit of all bona fide creditors, and the Debtors should not be hindered in pursuing that resolution by now having to relitigate a claim already dismissed by the New Jersey Trial Court. Accordingly the final *Sonnax* factor cited by Williams weighs against granting the Stay Motion.

### B. Williams Ignores Three Factors That Also Weigh Heavily Against Granting the Stay Motion

#### 1. No Specialized Tribunal Is Required to Hear Further Proceedings with Respect to Williams' Claim

24. Williams does not address the fact that no specialized tribunal is required to determine the Williams Claim, a factor which weighs against stay relief. Specifically, Williams seeks relief to commence the Interlocutory Appeal in the Appellate Division of the Superior Court of New Jersey. That is not a specialized tribunal with respect to defamation actions, but rather the body that hears appeals from the trial courts of general jurisdiction in New Jersey. The Interlocutory Appeal does not present any esoteric or highly specialized issues of state law. Indeed, the issue Williams seeks to appeal is whether a genuine issue of material fact exists with respect to a First Amendment defense raised by Gawker Media – i.e. one of *federal* law. To the extent Williams might argue that this Court lacks jurisdiction to consider his claim, the Debtors reiterate that further proceedings are unnecessary. Should the Court disagree, it has jurisdiction to finally resolve the Williams Claim and even if it didn't, the Debtors submit that the submission of findings of fact and conclusions of law to the district court would be a more efficient manner of resolving the claim given the exigencies of resolving these chapter 11 cases in a timely fashion. Accordingly, the fourth *Sonnax* factor also weighs against granting the Stay Motion.

#### 2. The Debtors' Insurer Has Not Assumed Full Responsibility for Defending the Action

25. Williams also fails to address the fact that no insurance carrier assumed responsibility for defending the action, and thus, that the Interlocutory Appeal would present a drain on estate resources. Bankruptcy courts will sometimes lift the stay to allow actions against a debtor to proceed when the only drain on resources as a result of the litigation will be on the

14

resources of the debtor's insurer. *See* 2 Collier on Bankruptcy ¶ 362.07 (16th ed. 2010) (noting relief from stay appropriate where insurance sufficient to cover judgment and defense costs). That is, when an insurer has agreed to provide coverage and is paying costs of defense, and the plaintiff will not be pursuing other estate assets, the stay is sometimes lifted. Here, however, the Gawker Media estate would have to bear the expense of the proposed appeal and any subsequent proceedings, none of which is necessary to resolve the claim. Accordingly, this *Sonnax* factor also weighs against granting the Stay Motion.

### 3. The Proposed Appeal Does Not Primarily Involve Third Parties

26. Nor does Williams address the fact that the Interlocutory Appeal is one in service solely of eventually recovering from Gawker Media. Thus, although Courts are more likely to lift the automatic stay when the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question, *Sonnax*, 907 F.2d at 1286, those are not the facts in the present case. Here, Gawker Media would be the named appellee in the Interlocutory Appeal and the eventual recovery, were it ever to occur, would come from Gawker Media's estate. Accordingly, this factor also weighs against modifying the automatic stay.

*[Remainder of page intentionally left blank]*

15

## **CONCLUSION**

27. Williams has failed to meet his burden of demonstrating cause for lifting the stay. Consequently, the Stay Motion should be denied.

Dated: November 28, 2016
New York, New York

 */s/ Gregg M. Galardi*
ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Peter Walkingshaw (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
gregg.galardi@ropesgray.com
ross.martin@ropesgray.com
jonathan.agudelo@ropesgray.com
peter.walkingshaw@ropesgray.com

*Counsel to the Debtors
and Debtors in Possession*