ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Peter Walkingshaw (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------
|                                   : |                              |
| In re                             : | Chapter 11                   |
|                                   : |                              |
| Gawker Media LLC, *et al.*,[1]    : | Case No. 16-11700 (SMB)      |
|                                   : |                              |
|                  Debtors.         : | (Jointly Administered)       |
|                                   : |                              |
------------------------------------------------------x

# DEBTORS' REPLY IN SUPPORT OF THEIR OBJECTION TO THE WILLIAMS CLAIM [DOCKET NUMBER 391] AND IN OPPOSITION TO THE WILLIAMS RESPONSE [DOCKET NUMBER 459]

The Debtors file this Reply in Support of their Objection to the Williams Claim and in

Opposition to the Williams Response, and respectfully represent as follows:

---

[1] Gawker Media Group, Inc. ("GMGI"), and Gawker Hungary Kft. (f/k/a Kinja Kft., "Gawker Hungary") are also debtors and debtors in possession in these cases, and together with Gawker Media LLC (as debtor and debtor in possession) are refereed to herein as the "Debtors"). The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

## REPLY

1. On October 31, 2016, the Debtors filed their objection ("the Claim Objection") [Dkt No. 391] to claim No. 6, filed by Mitchell Williams (the "Williams Claim"). On November 17, 2016, Mr. Williams responded to those pleadings by filing a motion to lift stay and a substantive response to the Claim Objection (the "Response") [Dkt. No. 459].

2. The Response challenges the Claim Objection on three substantive grounds. First, Williams contends that this Court cannot address the Claim Objection under the Rooker-Feldman doctrine. Resp. 9-11. Second, Mr. Williams contends that the doctrine of collateral estoppel cannot apply because the underlying state court decision is subject to appeal and is in the form of a two-page agreed order rather than a full written opinion. Third, Mr. Williams asserts that this Court cannot decide the Claim Objection because it is an objection to a personal injury claim over which this Court lacks jurisdiction under 28 U.S.C. § 157(b)(5). As demonstrated below, the first two arguments fail on legal grounds, and the third argument is one already rejected by the Supreme Court of the United States in *Stern v. Marshall*, 564 U.S. 462 (2010). Consequently, this Court should sustain the Claim Objection.

### I. The Rooker-Feldman Doctrine Does Not Apply

3. In his first argument, Mr. Williams' contends that the Rooker-Feldman doctrine precludes this Court from ruling on the Claims Objection. Mr. Williams' reliance on the Rooker-Feldman doctrine is simply misplaced. Specifically, the "Rooker-Feldman doctrine . . . is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. Rooker-Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to

stay or dismiss proceedings in deference to state-court actions." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

4.  In that regard, Mr. Williams' Response correctly recites the requirements for invoking the Rooker-Feldman doctrine:

> (1) the federal plaintiff lost in state court; (2) <u>the plaintiff complains</u> of injuries caused by the state-court [orders or] judgments; (3) those [orders or] judgments were rendered before the federal suit was filed; and (4) <u>the plaintiff is inviting</u> the district court <u>to review and reject the state [orders or] judgments</u>.

Resp. 7 (emphasis added) (citing *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)); *accord Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 89 (2d Cir. 2005); *In re Ridgemour Meyer Props. LLC*, No. 08-13153 (SMB), 2016 WL 5395836, at *5 (Bankr. S.D.N.Y. Sept. 27, 2016). However, Gawker Media won in the state court and is seeking recognition of that existing state-court judgment, not a review and rejection of it. *See In re Roland*, 294 B.R. 244, 249 & n.8 (Bankr. S.D.N.Y. 2003); *In re Best Payphones, Inc.*, No. 01–15472 (SMB), 2002 WL 31767796, at *4 (Bankr. S.D.N.Y. Dec. 11, 2002).

5.  In fact, Mr. Williams' attempt to invoke Rooker-Feldman in this case is, however, exactly what the Supreme Court warned about in *Exxon Mobil v. Saudi Basic Industries*, plainly stating that preclusion law is what governs. 544 U.S. at 291-94 (limiting application of Rooker-Feldman to a very specific set of cases and finding issue preclusion is more often applicable where a state court has already ruled). Indeed, the *Saudi Basic Industries* Court noted that the Supreme Court had declined to invoke Rooker-Feldman, in a case arising from the Second Circuit, even when a prevailing state-court plaintiff tried to invoke the doctrine. *Id.* at 287-88 (citing *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987)). Here Gawker Media was the prevailing party, and indeed a prevailing defendant, in the New Jersey action that Mr. Williams had decided

2

against him. In a recent case involving an attempt to invoke Rooker-Feldman in a claims-objection proceeding, Judge Glenn noted that the doctrine only applies when the harm alleged arises from the state-court judgment itself, not from the allegations of the state-court suit. *In re Residential Capital, LLC*, 501 B.R. 624, 639-41 (Bankr. S.D.N.Y. 2013). Here the Williams Claim is based on the state court allegations. Rooker-Feldman does not apply; instead as set forth below, the Claims Objection should be sustained on the basis of preclusion law.

## II.     The Williams Claim Should Be Disallowed Under New Jersey Law

6.      The current claims litigation is in exactly the same procedural posture as was a case previously decided by this Court. *In re Best Payphones, Inc.*, 2002 WL 31767796 (holding the only avenue for appeal of the state court decision was the United States Supreme Court, not the bankruptcy court). In both that case and this, there was a pre-bankruptcy state court case, a summary judgment subject to appeal, a subsequent bankruptcy filing, a proof of claim, and a claims objection before the decision of a state court in the appeal. The only distinction is that *Best Payphones* concerned New York preclusion law, and this case concerns New Jersey preclusion law. It is a distinction without a difference in result.

7.      Gawker Media's Claim Objection discussed in detail the fact that New Jersey law addresses this situation as a type of collateral estoppel—"direct estoppel"—because the parties and the claims at issue are the same. *Restatement (Second) of Judgments* § 17 cmt. c. The parties are the same: Mr. Williams (the state-court plaintiff) has asserted a proof of claim against Gawker Media (the state-court defendant). The claims are the same: his only supporting documentation to the proof of claim is the copy of the complaint in the state-court action. Mr. Williams' Response does not, and cannot, address or deny these facts, which justify only one conclusion—he is presently estopped or precluded from obtaining a recovery on the Williams Claim.

3

8.     Indeed, Mr. Williams' only response is entirely without support. In particular, Mr. Williams asserts that the decision below is not sufficiently "firm" to invoke collateral estoppel. However, issue preclusion applies "whenever an action is sufficiently firm to be accorded conclusive effect," *Hills Dev. Co v. Twp. of Bernards*, 510 A.2d 621, 652 (N.J. 1986) (citation and internal quotations omitted), and the principal case he cites, *In re Brown*, 951 F.2d 564 (3d Cir. 1991), actually supports Gawker Media's position. In *Brown* the Third Circuit Court of Appeals considered the preclusive effect of a New Jersey state-court summary judgment in bankruptcy and concluded that:

> The summary judgment is sufficiently final so that it should be given preclusive effect as to the matters considered and decided in that phase of the controversy between the Browns and the bank. To litigate those issues again in the bankruptcy court would be the "kind of waste of judicial resources" that we referred to in *In re Braen*, 900 F.2d at 625. The questioned procedural errors of the state trial judge are matters to be reviewed in the New Jersey courts, rather than in the bankruptcy court.

*Id*. at 570. The *Brown* case involved summary judgment as to liability only. *Id.* at 565-66. Thus as in the present case the matter was not yet appealable, but still determined to be subject to collateral estoppel effects. In that regard, Mr. Williams' argument that because the trial court said there could be an appeal, the ruling is "infirm and unreliable" for collateral estoppel purposes simply misses the critical legal point—<u>*because*</u> the trial court ruling is no longer subject to reconsideration (*i.e.*, is final), it is therefore sufficiently firm to have a preclusive effect in this Court. *Id*.

9.     Instead of grappling with New Jersey collateral estoppel law, Mr. Williams suggests that the New Jersey court acted cavalierly and outside the bounds of appropriate judicial norms, asserting, among other things that: (i) "nothing to suggest that the [summary judgment] was entered with due deliberation," Resp. 9; (ii) the summary judgment is "infirm and unreliable,"

4

*id.*; and that the summary judgment was "facially defective," Resp. 3.  In the final analysis, a short, agreed order reflecting a bench ruling is no less a final order of a court than any other.  Any other legal rule would open a "flood of litigation pouring in on the bankruptcy courts," *Brown*, 951 F.2d at 570, in every collateral estoppel case about exactly what form the first-court's order took: endorsement on a motion, minute-order on the docket, order with reference to findings made orally on the record, or a full written decision.[1]

10.     Nor is there any basis for Mr. Williams' charge that summary judgment was granted without due deliberation.  In the state court case, the parties exchanged written discovery, conducted thirteen depositions over more than a year,[2] and submitted extensive briefing addressing summary judgment.  *See* Mem. in Support of Def. Gawker Media, LLC's Mot. fFor Summ. J., *Williams v. MLB Network, Inc.*, No. CAM-L-3675-14 (N.J. Super. Ct. Law Div. April 29, 2016).  The summary judgment hearing spanned two days of oral argument as well as submission of photographs and video of Williams' conduct at the little league game.  This was full and fair litigation.  Invoking preclusion requires no more.  To repeat the holding of *Brown*: "The questioned procedural errors of the state trial judge are matters to be reviewed by the New Jersey courts, rather than in the bankruptcy court." *Id.* at 570.

---

[1] The Debtor notes that Mr. Williams' Response brief creates some confusion when it cites to *Feng Li v. Peng*, 516 B.R. 26 (D.N.J. 2014).  The quotation from that case provided by Mr. Williams includes the bracketed phrase "[prior court's]."  That inserted, bracketed phrase changes the meaning of the sentence.  The quoted portion of the *Feng Li* case stands only for the proposition that in the Third Circuit the bankruptcy court must hold an evidentiary hearing regarding the collateral estoppel factors.  *Id.* at 42; *see also In re Ross*, 602 F.2d 604 (3d Cir. 1979).  In this District, courts do not always require the more fulsome evidentiary record simply to show the preclusion factors.  *In re DPH Holdings Corp.*, No. 05-44481, 2010 WL 3491186, at *2 (Bankr. S.D.N.Y. Aug. 31, 2010); *In re Red Dot Scenic, Inc.*, 313 B.R. 181, 183-84 (Bankr. S.D.N.Y. 2004).

[2] Williams, Williams' wife, the Gawker Media writer, three MLB employees, three umpires from the games at issue, a Ripken Baseball official, two assistant coaches, and a "team mom" were deposed.

5

11. In sum, the identity of issues and parties is clear and the issues were joined, so the prior summary judgment order has a preclusive effect in this Court under New Jersey law, and therefore also in this Court. Accordingly, the Claim Objection should be granted.

### III. This Court Has Jurisdiction And Authority To Disallow The Williams Claim

12. Mr. Williams' arguments regarding this Court's ability to consider his proof of claim is similarly flawed. Specifically, citing a 1996 slip opinion, Mr. Williams' asserts that 28 U.S.C. § 157(b)(5) denies "subject matter jurisdiction" to a bankruptcy court regarding determination of a personal injury tort claim. Resp. 11-12. That is flatly incorrect because the Supreme Court has held that Section 157(b)(5) is not a jurisdictional statute. *Stern v. Marshall*, 564 U.S. 462, 479 (2010).

13. In that regard, Mr. Williams does not address any of the authority that Gawker Media raised in the Claim Objection regarding this Court's subject matter jurisdiction. He ignores *In re Chateaguay*, 111 B.R. 67, 75 (Bankr. S.D.N.Y. 1990), which concluded that a bankruptcy court could make preclusion rulings regarding personal injury tort claims. Mr. Williams lost his case against Gawker Media in the state court and now cannot relitigate that claim in bankruptcy court. This Court has the power and authority to make that threshold determination.

14. Furthermore, even if more analysis were required regarding whether this involves a personal injury tort claim, this Court can fully adjudicate the Williams Claim whether under the strict test or the middle-ground test (which different courts in this District have adopted) regarding the definition of personal injury tort claims that Mr. Williams tries to invoke. *See In re Residential Capital, LLC*, 536 B.R. 566 (Bankr. S.D.N.Y. 2015) (adopting the middle-ground approach); *Vinci v. Town of Carmel (In re Vinci)*, 108 B.R. 439, 442 (Bankr. S.D.N.Y 1989) (adopting the strict approach); *Perino v. Cohen (In re Cohen)*, 107 B.R. 453 (S.D.N.Y. 1989)

(adopting the strict approach); *Siewert v. Christy (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey)*, 194 B.R. 728, 734 (S.D.N.Y. 1995) (adopting the strict approach); Resp. 12-14. Mr. Williams' effort, however, falls short as it relies on a misstatement of Gawker Media's position and a misunderstanding of the case law. The Debtors do not only argue for the strict position that personal injury tort claims must involve bodily injury, which three decisions in this District have adopted. Obj. 15-16.

15.     As the Objection states, at 16-17, even if this Court agreed with the case-by-case, fact-specific "middle-ground" approach that Judge Glenn set forth in *In re Residential Capital, LLC*, 536 B.R. 566 (Bankr. S.D.N.Y. 2015), Mr. Williams is not asserting a personal injury tort claims. Mr. Williams states *ipse dixit* that his claims are personal injury tort claims, but the middle-ground approach looks at the allegedly harmful act and supposed damages, and evaluates the issue case-by-case. *Id.* at 572, 575. He does not contest that the *Deadspin.com* story about his _behavior at a baseball event_ was directly related to his _business_ role as (at the time) a _professional commentator for Major League Baseball's_ own television network, a role Mr. Williams had because his prior _business_ had been as a _professional baseball player_. These are therefore business-related claims not personal injury tort claims.

7

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court (a) disallow the Williams Claim, and (b) grant such other and further relief as may be just and proper.

Dated: November 28, 2016
      New York, New York

*/s/ Gregg M. Galardi*
ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Peter Walkingshaw (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
gregg.galardi@ropesgray.com
ross.martin@ropesgray.com
peter.walkingshaw@ropesgray.com

*Counsel to the Debtors
and Debtors in Possession*