Ropes & Gray LLP
Gregg M. Galardi
D. Ross Martin
Peter Walkingshaw (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------- x
                                                    :
In re                                               :        Chapter 11
                                                    :
Gawker Media LLC, *et al.*,[1]                      :        Case No. 16-11700 (SMB)
                                                    :
            Debtors.                                :        (Jointly Administered)
                                                    :
-------------------------------------------------- x

### DEBTORS' REPLY IN SUPPORT OF OMNIBUS OBJECTIONS TO PROOFS OF CLAIM OF GOT NEWS LLC AND CHARLES C. JOHNSON

Gawker Media LLC ("Gawker Media"), Gawker Media Group Inc. ("GMGI"), and

Gawker Hungary Kft. ("Gawker Hungary"), each as debtor and debtor in possession (the

"Debtors") in the above-captioned cases (the "Bankruptcy Cases"), has objected (Dkt #396, 397,

the "Objections") to claims Nos. 52, 54, 202, 223, 246 and 298 (the "GotNews/Johnson

Claims"), filed by Got News LLC ("Got News") and Charles C. Johnson ("Johnson"). Got News

and Johnson jointly responded in an Opposition to Objections (Dkt. #452, the "Response"). In

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

further support of the Objections to the GotNews/Johnson Claims, the Debtors further represent and state as follows.

## **PRELIMINARY STATEMENT**

1.      As set forth in the proofs of claim, the GotNews/Johnson Claims were all based solely on a complaint in the California courts that asserts Got News and Johnson "have been injured in the State of California" (the "California Complaint").  The California Complaint was filed only against Gawker Media, not the other Debtors.

2.      Now in their Response, Got News and Johnson change their position.  First they drop the cause of action based on alleged "civil rights violations conspiracy" which was plainly baseless.  Second, regarding the alleged defamation claims, they now contend that "this is not a transferred California case," but instead "this is not a California action—it is a New York proof of claim," and argue now for New York choice of law.  Resp. 7-8.  This runs head first into a statute-of-limitations defense, so there is no allowable claim.

3.      On the secondary "false light" claim, where their new-found affinity for New York forum and choice-of-law would still not support a claim, Got News and Johnson argue for the application of Missouri law.  The Response fails to address that a federal district court in Missouri ruled (the "Missouri Federal Court Decision") (a) that in the very first complaint they filed regarding the *Gawker* articles, Got News and Johnson had not alleged any injury in Missouri, and (b) that the contacts to Missouri were so tenuous that there was not even personal jurisdiction.  *See Johnson v. Gawker Media, LLC*, No. 4:15-CV-1137 CAS, 2016 WL 193390 (E.D. Mo. Jan. 15, 2016) (the "Missouri Federal Action").  It fails to mention that the Missouri Supreme Court has never recognized such a cause of action.

2

4.      Regarding GMGI and Gawker Media, Got News and Johnson contend for the first time (in the Response) that those Debtors "are subject to veil-piercing and alter-ego liability." Resp. 19-20. This ignores the fundamental truth that those causes of action do not belong to creditors such as Got News and Johnson. Those causes of action belong to the Gawker Media estate, and indeed are being settled in the proposed chapter 11 plan.

5.      These changes and new theories highlight that the Got News and Johnson proofs of claim are their <u>fourth iteration</u> of trying to assert causes of action against Gawker Media, with the Response, which yet again changes theories (to New York and Missouri law, plus the alter-ego theory), being a <u>fifth iteration</u>. As demonstrated both in the Objections and below, the GotNews/Johnson Claims are nothing more than a last-ditch effort to save causes of action that are entirely without merit.

## **REPLY**

### I."    **The Response Makes Clear That The Got News/Johnson Claims Are Not Personal Injury Tort Claims**

6.      The original Objections address in detail the many reasons why the GotNews/Johnson Claims are not personal injury tort claims. Nowhere does the Response address cases such as *In re Chateaguay Corp.*, 111 B.R. 67, 76 (Bankr. S.D.N.Y. 1990) (subsequent history omitted), that conclude the bankruptcy court can make threshold determinations such as statute of limitations. It does not address the Debtors' straightforward textual argument that if there is a pre-trial motion to deny liability (not "liquidation" of the allowable damages amount or "estimation" of the claim), the bankruptcy court can hear and determine the matter. In fact, the Response reveals that there are additional reasons that this Court may resolve these claims.

7.      First, the Debtors had taken a conservative position in the Objections and raised arguments concerning "personal injury tort claim" on the basis that Mr. Johnson's claims were the primary claims being asserted (he was the first listed plaintiff in the California lawsuit).  Obj. 12 n.17.  However, the outset of the Response makes crystal clear that Got News and Mr. Johnson view the claims in the opposite way, with the Got News claims being  primary:

> The defamatory articles specifically link to Mr. Johnson's work on GotNews.com and treat them as being one and the same, making their interests coextensive. At a minimum, all claims relating to his publications on GotNews.com defame both Mr. Johnson and Got News.

Resp. 2 n.4.  Thus, the type of liability and harm alleged are "financial, business or property claims," which are personal injury tort claims under the view taken by courts in this District.  *See In re Residential Capital, LLC*, 536 B.R. 566, 572 (Bankr. S.D.N.Y. 2015); *see also Vinci v. Town of Carmel (In re Vinci)*, 108 B.R. 439, 442 (Bankr. S.D.N.Y. 1989) (Schwartzberg, J.); *Perino v. Cohen (In re Cohen)*, 107 B.R. 453, 455 (S.D.N.Y. 1989) (Brieant, J.); *Siewert v. Christy (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey)*, 194 B.R. 728, 734 (S.D.N.Y. 1995) (Keenan, J.).

8.      Second, Got News attempts to say it has a personal injury tort claim by invoking section 101(41) of the Bankruptcy Code, which defines "person" to include artificial entities. Resp. 5 n.14.  But the word "person" is not the same as "personal injury tort claim."  The Bankruptcy Code frequently uses the words "personal" and "personally" to refer specifically to individuals, to the exclusion of artificial entities.  Indeed, the Response does not even look to the very next definition in the Bankruptcy Code, section 101(41): "personally identifying information" applies only to individuals.  *Compare, e.g.*, 11 U.S.C. § 111(a)(2) ("personal financial information"), 507(a)(7) ("personal, family or household use"), 1106(a)(6) ("personal

4

liability"), *with* 11 U.S.C. § 363(b), 506(b) ("personal property").   The context matters when interpreting the undefined term "personal", and the context of "personal injury tort claims" points to meaning only individuals.   This plain-language reading also jibes with the conclusion of three courts in this District (cited in the Objections) that have concluded that the term "personal injury tort claim" means a claim giving rise to bodily injury.   Obj. 35.   The only court that appears to have directly confronted the question reached the obvious conclusion that an artificial entity cannot have a "personal injury tort claim" under the Bankruptcy Code.   *In re Lost Peninsula Marina Dev. Co., LLC*, No. 10-10264, 2010 WL 3070134, at *2 (E.D. Mich. Aug. 4, 2010).

9.    Third, once this Court hears and determines the claims of the artificial entity Got News, even if Mr. Johnson's claims were personal injury tort claims, this Court could hear and determine his claims based on the threshold matter of collateral estoppel.   *See Chateaugay Corp.,* 111 B.R. at 76 (bankruptcy court can decide preclusion arguments regarding personal injury tort claims).    The Response itself states that "[Got News and Mr. Johnson's] interests are coextensive."   Resp. 2 n.4.   This satisfies any test of privity for collateral estoppel purposes.[2] The special statutory treatment for personal injury tort claims is not meant to be an expansive loophole in core bankruptcy jurisdiction allowing corporate-entity creditors to escape bankruptcy

---

[2] *See, e.g., Howard v. Town of Bethel*, 481 F. Supp. 2d 295, 301 (S.D.N.Y. 2007) ("'In the context of collateral estoppel, privity does not have a single well-defined meaning . . . Rather, privity is an amorphous concept not easy of application . . . and includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and [those who are] coparties to a prior action . . . '") (*quoting Buechel v. Bain*, 97 N.Y.2d 295, 304 (2001)); *Hallinan v. Rep. Bank & Trust Co.*, No. 06 Civ.185 HB, 2006 WL 1495232, at *3 (S.D.N.Y. June 1, 2006) (noting that "[t]he doctrines of collateral estoppel in general, and of privity in particular, are shaped by fundamental notions of due process'" and explaining that "privity exists either where 1) 'a party to a previous suit was, at the time of the litigation, acting as either a fiduciary or organizational agent of the person against whom preclusion is asserted'" or 2) the nonparty 'exercised some degree of actual control' over the conduct of the prior proceeding") (*quoting Stichting v. Schrieber*, 327 F.3d 173, 185 (2d Cir. 2003)).

court jurisdiction by claiming some individual has "coextensive" interests.[3]  An entity (such as Got News) cannot assert business-related torts in a chapter 11 case and then seek to evade bankruptcy court decision of those claims by the expediency of having the individual owner of the business file a parallel proof of claim form, and then assert a right to the district court (essentially on behalf of both).  Section 157(b)'s limited carve-out for only certain aspects of litigation of personal injury tort claims should not be construed in ways that create procedural roadblocks that allow disruption of chapter 11 cases.

## II."    Each Component Of The GotNews/Johnson Claims Should Be Summarily Disallowed

10.    As noted in the Preliminary Statement, the Response reframes the asserted claims and causes of action.  The direct result of these changes is that the GotNews/Johnson Claims may now be disallowed.

### A."The Section 1983 Cause of Action Is Withdrawn and that Portion of the GotNews/Johnson Claims Must Be Disallowed

11.    Got News and Johnson have already withdrawn one of their causes of action. Specifically, Count VI of the California Complaint alleged a "Conspiracy to Interfere with Civil Rights," without alleging any state action (a requirement for federal civil rights claims under § 1983), and invoking the wrong section of the United States Code for conspiracy liability.  Buried in a footnote in the middle of the Response, Resp. 6 at n.15, Got News and Johnson have abandoned this Count.  That portion of the GotNews/Johnson Claims should thus be disallowed.

---

[3] It is critical to recall that the core/non-core distinction for personal injury tort claims is not a constitutional matter, but rather only a statutory distinction.  There is no indication that Congress thought it should lead to significant interference with bankruptcy administration.  *Cf. EBIA v. Arkison*, 134 S. Ct. 2165, 2173 (2014) (28 U.S.C. § 157(b), (c) construed to preserve bankruptcy court authority to hear matters even with constitutional issue and statutory gap).

**B.**  The Claims Against GMGI and Gawker Hungary Must Be Disallowed Because those Claims Belong to the Gawker Media Estate, Not Got News or Johnson

12.     The Response reveals that the only basis for claims against GMGI and Gawker Hungary is veil piercing and alter ego.  Resp. 19-20.  Those claims should be summarily disallowed because Gawker Media is a Delaware entity.  In particular, it is well settled that if state law empowers an entity itself to bring veil piercing and alter ego claims, then those claims belong exclusively to the bankruptcy estate after the petition date, not to creditors—and Delaware is such a state.  *E.g.*, *In re Enron Corp.*, No. 01 B 16034(AJG), 2003 WL 1889040, at *3 (Bankr. S.D.N.Y. Apr. 17, 2003); *see also In re Alper Holdings USA, Inc.*, 398 B.R. 736, 759 (Bankr. S.D.N.Y. 2008); *In re OODC, LLC*, 321 B.R. 128, 137 (Bankr. D. Del. 2005); *M-Tek Kiosk, Inc. v. Clayton*, No. 1:15CV886, 2016 WL 2997505, at *6 (M.D.N.C. May 23, 2016).[4]  Accordingly, the GotNew/Johnson Claims asserted against GMGI and Gawker Hungary should be disallowed.

**C.**  Having Stated that They Intend the GotNews/Johnson Claims to be a New Action in a New Forum and Under New York and Missouri Law, the Statute of Limitations Bars the GotNews/Johnson Claims

13.     Got News and Johnson also go to great lengths in the Response to argue that their proofs of claim are not the same as the California Complaint, and are instead some form of new action in a New York forum (this Court), asserting claims under New York and Missouri law.  Accepting those contentions as true, the Got News/Johnson Claims should be dismissed because they are barred by the applicable statute of limitations in New York.

14.     The New York statute of limitations for defamation claims is one year.  N.Y. C.P.L.R. § 215(3).  The complained-of *Gawker* articles were all published in December 2014.

---

[4] The terms veil piercing and alter ego are interchangeable under Delaware law.  *Winner Acceptance Corp. v. Return on Capital Corp.*, No. 3088-VCP, 2008 WL 5452063, at *5 n.32 (Del. Ch. Dec. 23, 2008).

7

The petition date in the chapter 11 case of Gawker Media was June 10, 2016, more than one year after the publication of the articles at issue, and the proofs of claim were filed later still. The GotNews/Johnson Claims, brought as new actions in New York (exactly as the Response now describes them), would thus be unenforceable against the debtor or its property under applicable law because they were not being commenced within the prescribed time. 11 U.S.C. § 502(b)(1); N.Y. C.P.L.R. § 201.

15.    So too regarding any alleged Missouri cause of action for false light, which is a form of invasion of privacy. Specifically, the New York Borrowing Statute, N.Y. C.P.L.R. § 202, provides that for a non-New-York-law action, the shorter of the statutes of limitations applies (New York or the other state), unless the plaintiff was a resident of the other state when the cause of action accrued.[5] The most analogous cause of action in New York, comparable to false light, also has a one-year statute of limitations. N.Y. C.P.L.R. § 215(3) ("violation of the right to privacy [under statute]"). The Missouri Federal Court Decision already determined that Mr. Johnson and Got News were not residents of Missouri at the relevant time. Therefore the statute of limitations is one year, and any alleged Missouri-law false light claim is not enforceable as a matter of law. 11 U.S.C. § 502(b)(1); N.Y. C.P.L.R. §§ 201, 202.

16.    In sum, based on the Response, all of the GotNews/Johnson Claims, reformulated as a new, independent New York forum action, must be disallowed because the statute of limitations has passed.

### D."Even if Not Barred by the Statute of Limitations, any Missouri False Light Cause of Action Fails Under Clear Missouri Supreme Court Precedent

---

[5] The Borrowing Statute reads: "An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."

17.    Even assuming, *arguendo*, that the alleged Missouri-law false light cause of action were not barred by the statute of limitations, the Got News/Johnson Claims should still be dismissed because such a cause of action does not exist in Missouri except in unusual circumstances not present here. *Farrow v. St. Francis Med. Ctr.*, 407 S.W.2d 579, 600-02 (Mo. 2013) (*en banc*) (affirming the grant of dismissal of an invasion of false light claim). False light is not a substitute for defamation claims: The Missouri Supreme Court "has declined to recognize a cause of action for invasion of privacy when recovery is sought for untrue statements." *Id.* at 601. The *Farrow* decision does cite an intermediate Missouri appellate court case regarding an employer who failed to remove an employee's name from a website, where the employee "wanted to be left alone." *Id.* at 601-02 (*discussing Meyerkord v. Zibatoni*, 276 S.W.3d 319 (Mo. App. E.D. 2008)). Notably, though, the Missouri Supreme Court did not adopt or approve of that conclusion. *See Cockram v. Genesco, Inc.*, 680 F.3d 1046, 1057 (8th Cir. 2012) (no false light claims); *Cochran v. Hoefer*, No. 14-00600-CV-W-GAF, 2015 WL 12731916 (W.D. Mo. Apr. 20, 2015). The Missouri Supreme Court in *Farrow* also specifically distinguished a case such as *Meyerkord*, and one such as the present, in which the damage is to reputation. 407 S.W.2d at 601-02. Got News and Mr. Johnson are not in any way stating they want to be left alone. To the contrary, they are alleging reputational damage while they remain in the public eye in the online news business.[6]

### III."    Even if Got News and Johnson Retreat to Asserting the California Law Causes of Action, the GotNews/Johnson Claims Must Be Disallowed

---

[6] Having abandoned California law as a basis for false light causes of action, and having turned to Missouri law, this Court should be aware that New York law also would not support any allowable claim. *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 123 (1993) (noting that "[w]hile courts of other jurisdictions have adopted" privacy torts such as "publicity that unreasonably places another in false light," New York has "no common law of privacy"); *Costanza v. Seinfeld*, 693 N.Y.S.2d 897, 899 (N.Y. Sup. Ct. 1999), *aff'd*, 719 N.Y.S.2d 29 (N.Y. App. Div. 2001) (noting that "false light and invasion of privacy [claims] must be dismissed . . . because New York law does not and never has allowed a common law claim for invasion of privacy").

18.     The shift in the basis for the GotNews/Johnson Claims, to a "New York proof of claim" alleging New York and Missouri causes of action, should mean that this Court does not have to address the question of whether the California Anti-SLAPP statute applies in connection with claims allowance, under *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15 (2000).[7]  Statute of limitations quickly resolves the case, as discussed *supra*.  Nevertheless, because Got News and Johnson have changed positions before, this Reply will briefly address grounds for disallowance that are raised by the Got News and Johnson Response.

A.  The Allegedly Defamatory Statements

19.     The California Complaint focused on twelve allegedly defamatory statements, and the original Objection addressed them sufficiently.  The Got News and Johnson Response tries to push the dispute regarding these twelve statements into various minutiae of collateral issues.  The Response, however, may be distilled into two arguments that are easily rejected.  First, the Response contends that some of the *Gawker* accusations about his journalism are false and defamatory because (paraphrasing) "[Got News] only reported on what sources said" and it was therefore improper for *Gawker* to imply (so they say) that Got News and Johnson should be responsible for what the sources said.  Resp. 10-11.  But at the same time, they contend that *Gawker* should be liable for reporting what "sources said" (commenters, Facebook posts, etc).

---

[7] There is a split of authority in the Courts of Appeals on the question of whether Anti-SLAPP statutes apply in federal diversity cases.  The majority of courts of appeals have held that such statutes do apply in diversity, *Godin v. Schencks*, 629 F.3d 79, 81, 92 (1st Cir. 2010); *Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164, 168-69 (5th Cir. 2009); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999), while the District of Columbia Circuit has held Anti-SLAPP statutes do not apply in diversity, *Abbas v. Foreign Policy Gp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015) (*citing Makeff v. Trump Univ. LLC*, 715 F.3d 254 (9th  Cir. 2013) (Kozinski, J., dissenting)).  The Second Circuit has at least one decision that applied the California Anti-SLAPP statute in a diversity case, *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138 (2d Cir. 2013) (Cabranes, J.).  The Response of Got News and Johnson cites to later Second Circuit cases that may have reserved on the issue.  *See Ernst v. Carrigan*, 814 F.3d 116, 119 n.1 (2d Cir. 2016); *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014).  The application of state law in diversity, under *Erie R. Co. v. Thompkins*, 304 U.S. 64 (1938), is not the same as the application of state law in bankruptcy claims allowance, under *Raleigh v. Ill.Dept' of Revenue*, 530 U.S. 15 (2000), which is not based on any of the *Erie* line of cases.

10

This inconsistency entirely undermines the basis on which the GotNews/Johnson Claims rest. Second, regarding many of the statements, Gawker Media points out that the entire purpose of the three articles was satirical commentary. The Response spills a great deal of ink, Resp. 12-17, trying to combat this simple observation that satire is not actionable, with complex discussions of collateral facts and the law of public-figure status and levels of fault in defamation claims. The reality is that Got News and Johnson themselves recognized it as satire, in a 115-page pleading that they filed with the Missouri Federal Court but was actually stricken by that court for non-compliance with local rules. *See* Missouri Federal Court Action Dkt. No. 37 (stricken) (copy attached at Exhibit 1), at 64.[8] The upshot is that the Claims are not allowable, for these reasons and the arguments made by the Debtors in the in the original Objections.

20.    Got News and Johnson also try to save their claims by stating that there are "many other false and defamatory statements" from sources "incorporated into the complaint." Resp. 9. That is belied by the California Complaint itself, which merely attaches a list and a stack of articles, comments, and Twitter posts. In the actual counts where the causes of action are set forth, only the twelve statements are specifically alleged to be defamatory, and these "other false and defamatory statements" are pleaded by general incorporation and attachment of

---

[8] In that stricken pleading Got News and Johnson constructed an elaborate conspiracy theory regarding civil rights issues in Ferguson, Missouri in an attempt to justify why the satire could be confined to only part of the *Gawker* articles, was supposedly ineffective satire, and why *Gawker* was somehow liable for defamation:

> There is a very very subtle level of satire in the bestiality section. Subtle, because it presupposes one is entirely familiar with the work of Johnson. . . . Plaintiffs' lengthy efforts to acquire the juvenile records of Michael Brown, and his . . . countermainstream-media-narrative approach to covering the Ferguson Riots were likely major motivators for [Gawker Media's] decision to attack and defame Johnson. Johnson had received tips from confidential - not anonymous - sources in law enforcement that Michael Brown had been implicated in a murder as a minor. Plaintiffs spent enormous resources, alongside other media establishments, trying to acquire those records, even pursuing the records to the Missouri Supreme Court, but to no avail. Gawker and a litany Gawker writers spilled much ink indicting the American criminal justice system, police, and holding Brown to be a blameless martyr. [T]he general Gawker audience would probably not have been [aware of Got News and Johnson's efforts].

*Id*. at 64.

documents.  This is a form of inappropriate "shotgun pleading."  *E.g.*, *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 625 (S.D.N.Y. 1999) (finding that "shotgun pleading" demonstrates "utter disrespect" for Federal Rule of Civil Procedure 8), *abrogated on other grounds by Curanaj v. Cordone*, No. 10-CV-5689 (ER), 2012 WL 4221042 (S.D.N.Y. Sept. 19, 2012).  These other statements are not defamatory or actionable in fact and/or law.  The Debtors reserve the right to contest such statements at any evidentiary hearing (whether on estimation or full objection) if the Court determines that it should consider those allegations, and provides a sampling of its responses in <u>Annex 1</u>, attached hereto.

  B. <u>Immunity Under Section 230 of the Communications Decency Act, for Alleged Defamatory Statements in Comments Section of Websites</u>

  21. As a final contention, Got News and Johnson also now try to borrow allegations from someone else's complaint—they say that they have allowable claims because Mr. Huon has a single claim that has survived a motion to dismiss, based on a Seventh Circuit ruling that is tightly confined to the facts that Mr. Huon pleaded.  Resp. 17-19.  As is discussed in the Debtors' Supplemental Memorandum regarding Mr. Huon's claims, filed contemporaneously herewith, Mr. Huon appears to have two very limited potential bases of liability that the Seventh Circuit did not dismiss.  The first is liability based on allegations (unproven) that a defamatory anonymous comment on a Gawker website was actually authored by a Gawker employee.  The second is liability based on the moderation of the comments section on the Gawker Media website, which the Seventh Circuit decided it did not need to address one way or the other.

  22. The twelve statements alleged as defamatory in the California Complaint contain four anonymous comments.  The Response says that the allegations here are "essentially identical" to those of Mr. Huon.  First, the statements themselves are not defamatory, as explained in the original Objections and above.

23.     Second, the Got News and Johnson Response tries to cloak itself in the allegations

that Mr. Huon made regarding the nature of the comments section of Gawker Media websites,

trying to avoid the Debtors' defense of immunity under Section 230 of the Communications

Decency Act.   However, the allegations of the California Complaint are not the same that Mr.

Huon made in Illinois.   Got News and Johnson do not have any allegation that their complained-

of comments were employee-authored.   Their allegations regarding the comment sections of

Gawker Media websites do not address the editorial policies regarding comments (comment

moderation).   Instead, there is a totally different and nonsensical allegation—that somehow the

reader-commenters became full-fledged "agents" of Gawker Media because Gawker Media

created a marketplace of ideas with the intent of having "passionate discussion and reveal[ing]

the truth. . . .   [including] by [s]haring, recommending, and following" comments posted by

readers.    Resp. 18.   The case that the Response cites, *Enigma Software Grp. USA, LLC v.*

*Bleeping Comput. LLC,* 2016 U.S. Dist. LEXIS 89160 (S.D.N.Y. July 8, 2016), involves a

completely different set of facts in which an expressly appointed "staff member" posted content

for the website being accused of defamation:

> [Defendant] manages the Forums through a hierarchy of "member
> groups," comprised of "staff members" who are appointed to
> "generate and control [the] content" posted therein. Id. ¶¶ 45, 54,
> 60. The third-highest "member group" is made up of "Advisors,"
> whom [Defendant] holds out as experts who "can be trusted to give
> correct and understandable answers to [users'] questions." Id. ¶¶
> 50-51. Above Advisors are "Global Moderators," who enjoy
> "special powers" to enforce rules governing the Forums, e.g., by
> "closing" discussions, editing the content of users' posts, and
> suspending the posting privileges of users who violate the rules. Id.
> ¶¶ 48-49. Finally, Lawrence Abrams, [Defendant]'s owner,
> occupies the highest member group as the overall "Admin" of the
> Forums. Id. ¶ 47. Abrams has the "final say when appointing all
> other staff positions." Id.

> Whenever an Advisor, Global Moderator, or Admin posts . . .
> "[Defendant] clearly identifies that the post has been made by [a
> Defendant staff member]." Id. ¶ 53.[3]

*Id.* at *14.  The Gawker Media website comments denoted as reader comments are nothing like

this.  They are squarely statements of "another information content provider" for which Gawker

Media has immunity under Section 230 of the Communications Decency Act.  *See generally*

*FTC v. LeadClick Media LLC*, 838 F.3d 158 (2d Cir. 2016); *Ricci v. Teamsters Union Local 456*,

781 F.3d 25 (2d Cir. 2015).

C.  <u>California Anti-SLAPP Law Application</u>

24.      If this Court does not disallow the GotNews/Johnson Claims for the reasons set

forth above, and then concludes that the California Anti-SLAPP Statute applies, there are several

straightforward facts that bear on the "probability" (required by Cal. Civ. Proc. Code § 425.16)

of Got News and Johnson prevailing on their causes of action, in addition to those noted in the

Debtors' original Objection.  Got News and Johnson themselves have evidenced the weakness of

these claims by not pursuing California Action for over six months after the Missouri Federal

Court dismissed them.  They had not even taken the step of serving the complaint on the

defendants.

25.      In addition, it is now clear that the Got News claims would fail in California for

an entirely independent reason.  The California Complaint was not signed by any attorney, and

Got News is an artificial entity that must be represented by counsel in that action.  The default

rule is that such actions are improper.  *See, e.g.*, *CLD Constr., Inc. v. City of San Ramon*, 120

Cal. App. 4th 1141, 1145 (2004) ("[U]nder a long-standing common law rule of procedure, a

corporation, unlike a natural person, cannot represent itself before courts of record in propria

persona, nor can it represent itself through a corporate officer, director or other employee who is

14

not an attorney. It must be represented by licensed counsel in proceedings before courts of record"); *Paradise v. Nowlin*, 86 Cal. App. 2d 897, 898 (1948) ("A natural person may represent himself and present his own case to the court although he is not a licensed attorney. A corporation is not a natural person. It is an artificial entity created by law and as such it can neither practice law nor appear or act in person. Out of court it must act in its affairs through its agents and representatives and in matters in court it can act only through licensed attorneys. A corporation cannot appear in court by an officer who is not an attorney and it cannot appear in propria persona"). California courts have moderated this rule, but only when "persuaded it is more *appropriate and just* to treat a corporation's failure to be represented by an attorney as a defect that may be corrected, on such terms as are just *in the sound discretion of the court*." *CLD Constr. Inc.*, 120 Cal. App. 4th at 1149 (emphasis added).

26.    It was not reasonable for Got News to let the California Complaint sit fallow for six months prepetition without obtaining counsel. Got News had counsel in the prior Missouri Federal Action, so it knew it needed counsel and how to obtain counsel. In their Response to this Court, Got News and Johnson state that the California Complaint was filed because they thought that dismissal of the Missouri Federal Action "was imminent." Resp. 2 n.3. The filing of the California Complaint was a calculated, tactical litigation decision to preserve the action in a California forum under the California statute of limitations.

27.    For an entity like Got News, that requires counsel. Their Response in this Court first tries to back away from the California Complaint, saying that they have separate "New York proofs of claim" that are not a continuation of the California Complaint. As demonstrated above, the simplest resolution of the proofs of claim is on that basis – they are disallowable because of the statute of limitations in New York and the New York Borrowing Statute. The Debtors are

concerned that Got News will try to retreat back to using the California Complaint as the basis for its proof of claim, using a complaint that was in fact filed improperly under California law.  If it does so, it would not be "appropriate and just," *CLD Constr. Inc.*, 120 Cal. App. 4th at 1149, to allow Got News to cure its failure to obtain counsel in California in order to justify attempts to disrupt confirmation of a chapter 11 plan with this claim.  The ever-changing theories of liability and requests for more delays, more discovery, and more process demonstrates that the GotNews/Johnson Claims are procedural gamesmanship likely brought principally for procedural hold-up value.

Pg 17 of 23

WHEREFORE, for the reasons set forth herein, Gawker Media respectfully request that the Court disallow the GotNews/Johnson Claims and grant such other relief as is just under the circumstances.

Dated: November 29, 2016
     New York, New York

                    /s/ D. Ross Martin

ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Peter Walkingshaw (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
gregg.galardi@ropesgray.com
ross.martin@ropesgray.com
jonathan.agudelo@ropesgray.com
peter.walkingshaw@ropesgray.com

*Counsel to the Debtors*
*and Debtors in Possession*

**ANNEX 1 TO**
**DEBTORS' REPLY IN SUPPORT OF OMNIBUS OBJECTIONS TO**
**PROOFS OF CLAIM OF GOT NEWS LLC AND CHARLES C. JOHNSON**

1.      Twelve of the challenged statements are clearly not defamatory because

they are not making negative statements about Johnson or are not statements at all:

| Statement | Source | Quote |
|---|---|---|
| O | December 15 Trotter Article | Public Defecation in Totality Within The Article |
| R | December 15 Trotter Article | Bestiality Considered As A Whole In The Article |
| S | Twitter | Gawker and Gawker Writer Twitter Comments |
| U | Twitter | america@gregghoward88, "@ironmikegallego @ChuckCJohnson yung [sic] chuck the wolf brings it out of me.  he's a uniter" |
| V | Twitter | "AnnaMerlan@annamerlan, 'We need to know the truth ASAP about Chuck C. Johnson and Floor-[Defecating] - gate: link to 'Wait, Did Clowntroll Blogger Chuck Johnson [Defecate] On The Floor One Time?'" |
| W | Twitter | "Erin Gloria Ryan@morninggloria, 'Important journalism happening at Gawker dot com.  link to: 'Which of These Disgusting Chuck Johnson Rumors are True?'" |
| AA | Twitter | "Keenan@jktrotter, '@ChuckCJohnson indeed....that's why it was a rumor...'" |
| AB | Twitter | "Keenan@jktrotter, '@ChuckCJohnson caveats, chuck.  we said there was no evidence (#1 and #3) or that our source supplied a credible accusation (#2).'" |
| AC | Twitter | "Adan Weinstein @AdamWeinstein, 'this chucky-[defecating]-the-floor rumor is flying alllllll around social media – I just saw it on updog and hapnin: link to, 'Wait, Did Clowntroll Blogger Chuck Johnson [Defecate] On The Floor One Time?'" |
| AE | Twitter | Gawker @Gawker, "The Dailly Caller can't quit @ ChuckCJohnson: link to "The Daily Caller Can't Quit Chuck Johnson" |
| AF | Twitter | Gawker @ Gawker, "What is @ chuckcjohnson, and why? The web's worst journalist, explained.  link to: "What is Chuck Johnson, and Why?  The Web's Worst Journalist, Explained" |
| AG | Twitter | Gawker @ Gawker, 'Which of these disgusting @ chuckcjohnson rumors are actually true?  link to: "Which of These Disgusting Chuck Johnson Rumors Are True" |

"Statements" O, R, and S are not statements at all; they are merely restatements and summaries of other subjects Johnson finds offensive.  Similarly, "statements" AE, AF, and AG contain no commentary about Johnson and instead merely link to the Gawker Articles, which are not themselves defamatory.  Statements AC, V, and W similarly link to the article at issue and make no statements about Johnson, instead expressing the protected opinions of Weinstein, Merlan and Ryan that the articles written by Howard and Trotter were significant.

2.     Read in context, Howard's comment in Statement U is a response to another Twitter user who commented, "what an unusually US-centric point of view from you, Greg." Opp. 79.  Johnson cannot seriously allege that a statement that he is newsworthy enough to cause Howard to write a more US-centric article is defamatory, and the Opposition's effort to do so clearly illustrates the bad faith effort by Johnson and Got News to waste as much of this Court's time and resources as possible analyzing spurious claims.

3.     Finally, Statements AA and AB do not include any negative statements about Johnson whatsoever.  Instead, they represent explanations from Trotter, in a conversation *with Johnson*, as to why the statements from the Gawker Articles are not libelous.  *See, e.g., Huon v. Denton*, No, 15-3049, 2016 WL 6682931, at *3 (7th Cir. Nov. 14, 2016) (explaining that commentary about an allegedly libelous statement is not itself libelous).[1]  Johnson's effort to silence protected discussions and debate, despite his own long-standing and much-maligned history of using the Internet to threaten and harass, should not be condoned by this Court.

---

[1] Significantly, Johnson's half of the conversation is not available to place these statements in their proper context, Opp. 83, as Johnson was permanently suspended from Twitter last year after asking supporters for funds to "take out" a civil rights activist and his tweets are therefore no longer available for viewing.  *See* Caitlin Dewey, *Charles Johnson, one of the Internet's most infamous trolls, has finally been banned from Twitter*, THE WASHINGTON POST (May 26, 2015), https://www.washingtonpost.com/news/the-intersect/wp/2015/05/26/charles-johnson-one-of-the-internets-most-infamous-trolls-has-finally-been-banned-from-twitter/.

4.    Two of the statements merely present opinions about Johnson's journalistic acumen:

| Statement | Source | Quote |
|-----------|--------|-------|
| K | December 9 Trotter Article | "You may be aware that Charles C. Johnson of GotNews.com had a role in several notorious (and false) stories published by Tucker Carlson's Daily Caller." |
| L | December 9 Howard Article | "…he's been caught lying many times before…" |

Both of these statements merely reflect Trotter and Howard's opinion of Johnson's journalistic ability. When one journalist criticizes another, the appropriate inquiry is whether the critique is a "supportable interpretation" of the plaintiff's work. *Moldea v. New York Times Co.*, 22 F.3d 310, 311-13 (D.C. Cir. 1994). Johnson does not dispute he had a role in the articles criticized by Trotter and Howard, and given the objective untruth of much of the so-called journalism referenced in the articles, including Johnson's "journalistic assertion" regarding the residence of a sitting United States Senator, it is clear that the statements from Trotter and Howard are "supportable interpretations" of Johnson's work.

5.    Three of the statements discuss statements originally presented as rumors, that the Debtors stated were unreliable and should not be taken as fact by readers:

| Statement | Source | Quote |
|-----------|--------|-------|
| N | December 15 Trotter Article | "Verdict: There is no evidence that Chuck Johnson took a [defecate] on the floor in college. Chuck Johnson was, however, so thoroughly disliked in college that his classmates chose to blame an unattributed [defecation] on him." |
| P | December 15 Trotter Article | "Verdict: There is no evidence that Chuck Johnson was arrested in 2002 for pinning a sheep to the fence and [fornicating with] it. Johnson is, however, the kind of guy about whom random people make up and circulate rumors about him being arrested in 2002 for pinning a sheep to a fence and [fornicating with] it." |
| Q | December 15 Trotter Article | "A search through public records and the archives of local newspapers did not turn up any mention of an arrest matching the one our source described. (This does not necessarily mean that the arrest didn't occur, though; editors |

3

| | | don't necessarily publish all incidents involving the police, and public records databases would not contain an expunged record)." |
| --- | --- | --- |

Statements N and P all appear within the December 15 Trotter Article, which was explicitly presented as asking <u>questions</u> about facts. Questions are not actionable. *Abbas v. Foreign Policy Grp. LLC*, 783 F.3d 1328, 1338 (D.C. Cir. 2015) ("[I]t is generally settled as a matter of defamation law" that "a question, 'however embarrassing or unpleasant to its subject, is not an accusation.'") (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993)). Indeed, these statements in fact explicitly indicate that there is no evidence of any of the claims made against Johnson, and suggest that they are fabricated. The suggestion that Johnson is the "kind of guy" who would be so disliked as to generate false rumors is far from a claim that the rumors are true. Such a suggestion is protected by the First Amendment, which shields "even sharp attacks on the character, motives, or moral qualifications" of figures like Johnson from liability. *Okun v. Super. Ct. of L.A. Cnty.*, 29 Cal. 3d 442, 451, 629 P.2d 1369, 1374 (1981).

6.    Similarly, Statement Q was also presented in the December 15 Trotter Article, and is also connected with constitutionally protected <u>questions</u> rather than allegations that could conceivably be defamatory. Furthermore, Statement Q is not about Johnson at all; instead, it is a pair of statements regarding publicly available information about one of the rumors. Johnson cannot conceivably assert that either of the statements are false (*i.e.*, that a public records search *did* turn up a bestiality arrest, or that editors publish all police incidents), and so they are not defamatory.

7.    Four of the statements at issue are humorous efforts to satirize Johnson:

| Statement | Source | Quote |
| --- | --- | --- |
| T | Twitter | 'america@gregghoward88, 'torn.  i kinda feel like sheep[fornicating] is something you grow into.  on the other |

4

| | | | hand @chuckcjohnson is a prodigy: links to 'Which of these Disgusting Chuck Johnson Rumors are True?'" |
|---|---|---|---|
| X | Twitter | | "Taylor Berman@tcberman, 'Rumor 3: Johnson [fornicated with] a sheep: link to 'Which of These Disgusting Chuck Johnson Rumors are True?'" |
| AD | Twitter | | "Adam Weinstein @AdamWeinstein, 'when chuck johnson poops on your floor allegedly [picture of sad kitten]'" |
| AI | Twitter | | "Grrrreg Howlard @gregghoward88, 'no one's saying chuck Johnson [defecated] on the floor in college.  but… can chuck Johnson prove he didn't [defecate] on the floor in college?'" |

These statements all arise from a journalistic dispute between Gawker Media and Got News, and are satirical criticisms of both Johnson's self-importance as an alleged journalist and his aggressive and take-no-prisoners style rather than personal attacks.  For example, Statement T does not claim Johnson has engaged in "sheep[fornicating]"; instead, it parodies his own insistence that he is a prodigy who quickly masters anything, such as journalism.  Statement X links to the December 15 Trotter Article, which is tongue-in-cheek about Johnson generally but nevertheless explicitly indicates that the rumors are made up.  The statement is therefore, when read in context, a joke rather than a serious claim.  Statement AD is a joke about the emotional impact of the allegation, which parodies both the absurdity of the claim and Johnson's hypersensitivity towards criticism, which is intended to be humorous because of his own history of threatening and harassing others.  Finally, Statement AI is not a claim that Johnson defecated on the floor; instead, it parodies his "gotcha" style of journalism, where he makes spurious allegations with little factual support to back up his claims.

8.      Generally speaking, tongue-in-cheek efforts at satirical humor, whether in good taste or not, are not actionable as defamation.  *See, e.g., Knievel v. ESPN, Inc.*, 393 F.3d 1068, 1074-75 (9th Cir. 2005) (photo caption stating "Evel Knievel proves you are never too old to be a pimp" not actionable); *Geary v. Goldstein*, 1996 WL 447776, at *3 (S.D.N.Y. Aug. 8, 1996)

(use of plaintiff's picture in a sexual parody did not defame plaintiff by implying she was a porn

star); *see also Polygram Records, Inc.*, 170 Cal. App. 3d 545, 554-56 (1985) (noting that the

"discernibly humorous intent" of a publisher and the "comedic context" of a publication negates

alleged defamatory meaning). All of these statements are tongue-in-cheek efforts at satire, with

the context plainly marking them as such, and they are therefore non-actionable.

9.      Finally, three of the statements—including Statements V and W, discussed

above—are statements by third parties and are therefore not attributable to Debtors:

| Statement | Source | Quote |
|---|---|---|
| M | December 9 Howard Article | "I think you made my year by writing an entire article based on my comment…I am so glad when someone googles his name this will appear. I hope him pooping in stark follows him forever…" |
| AH | Twitter | "Hiphoptimusprime>J.K. Trotter, 'You do realize that this may, paradoxically, actually make people feel sorry for Chuck and anger for you, all the while padding Chuck's page views AND his bank account in a bizzaro combo of Streisand Effect/Stockholm Syndrome?'" |
| AJ | Twitter | All comments by *Cmcalumna* discussing public defecation |

Statement M is a user comment that merely expresses the emotional impact of one of the Gawker

Articles on the commenter, and is therefore protected under the CDA. 47 U.S.C. §§ 230(c)(1),

(e)(3) ("No provider . . . of an interactive computer service shall be treated as the publisher or

speaker of any information provided by another speaker of any information provided by another

information content provider" and "[n]o cause of action may be brought" nor any "liability . . .

imposed under any State or local law . . . inconsistent with" this section). The remaining

statements are even more clearly not attributable to Debtors, as these statements were made on

Twitter rather than any website owned or controlled by Debtors. *Id.*

6