Hearing Date & Time: **December 1, 2016 at 10:30 a.m. (Eastern Time)**

CHIESA SHAHINIAN & GIANTOMASI PC
One Boland Drive
West Orange, New Jersey 07052
Telephone: (973) 325-1500
Facsimile: (973) 325-1501
Robert E. Nies, Esq. (rnies@csglaw.com)
Michael R. Caruso, Esq. (mcaruso@csglaw.com)

*Attorneys for Mitchell Williams*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GAWKER MEDIA LLC, et al., | Case No. 16-11700 (SMB) |
| Debtors.[1] | (Jointly Administered) |

**REPLY TO DEBTORS' OBJECTION [DOCKET NO. 492] TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY BY MITCHELL WILLIAMS [DOCKET NO. 460]**

TO:   THE HONORABLE STUART M. BERNSTEIN
      UNITED STATES BANKRUPTCY JUDGE

Mitchell Williams ("**Williams**"), a creditor of Debtor Gawker Media LLC ("**Gawker**" or "**Debtor**"), by and through his undersigned counsel Chiesa Shahinian & Giantomasi PC, files this reply to *Debtors' Objection* [Docket No. 492] (the "**Objection**") *to Motion For Relief from the Automatic Stay By Mitchell Williams* [Docket No. 460] (the "**Lift Stay Motion**"). In reply to the Objection and in further support of his Lift Stay Motion[2], Williams respectfully states:

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Lft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

[2] Capitalized terms not otherwise defined herein shall have the same meanings as in the Lift Stay Motion and Objection.

**PRELIMINARY STATEMENT**

1. In large part, the Lift Stay Motion and Debtor's Objection both argue the fact-intensive application of the Sonnax factors for stay relief, a process which arguably requires an evidentiary hearing. Although Sonnax cited twelve factors to consider, in this case variations of those twelve factors reduce to two fundamental issues before the Bankruptcy Court on the Lift Stay Motion (and, incidentally, arguably are dispositive of Debtor's objection to the Williams Claim and Williams' objection to Debtor's motion to estimate the Williams' Claim). First, whether the Bankruptcy Court can render a judicial determination that the SJO is procedurally validly entered under New Jersey law. Determination of that issue is a prerequisite to determining whether the SJO should be afforded preclusive effect, which requires a finding of a sufficiently "firm" judgment under New Jersey law, and, therefore, whether the Bankruptcy Court can dispense with consideration of the other Sonnax factors. Second, key to a timely adjudication of the Williams Claim is whether it is a non-core personal injury defamation tort. While this Court has the jurisdiction to make core versus non-core adjudications, application of the Sonnax criteria will differ greatly dependent upon that determination.

2. For each of the reasons set forth below and in Williams' prior pleadings, Williams respectfully submits that the Bankruptcy Court cannot, under the Rooker-Feldman doctrine and estoppel principles, determine that the SJO was validly entered under New Jersey law. Even if the Bankruptcy Court could make that determination, the SJO is not sufficiently firm under New Jersey law to warrant application of collateral estoppel to wipe out the Williams Claim. Furthermore, once a non-core determination is made, the Bankruptcy Court

2

cannot, under § 157(b)(5), adjudicate the liability or amount of the Williams Claim because it is in fact a non-core personal injury tort. As a result, the Lift Stay Motion should be granted (and the Court should deny Debtor's Objection and separate motion to estimate the Williams Claim for distribution purposes – which relief Debtor now concedes would be improper). (See Agenda for Hearing to be Held on December 1, 2016, Dkt. 500).

## WILLIAMS' REPLY TO THE OBJECTION

3. Nothing in the Objection precludes a finding that Williams has sufficiently established "cause" for relief from the automatic stay, 11 U.S.C. 362(d), under each of the Sonnax factors listed below; specifically factors one, two, seven, ten, eleven and twelve (as originally set forth in the Lift Stay Motion) in addition to factors five and six.

*Factor One: Relief from the Stay is Necessary for There to Be a Complete Resolution of the Issues*

4. Relief from the stay to allow Williams to prosecute the Appeal in New Jersey State Court is necessary for there to be a complete resolution of the Williams Claim. Simply put, the Bankruptcy Court cannot enter a final judgment on the Williams Claim, a non-core personal injury defamation claim with a jury demand, for purposes of fixing and liquidating the amount of Williams' damages for distribution. That can only be accomplished in New Jersey State Court (or, arguably, in the District Court). Relief from the stay, therefore, is necessary for the most expeditious and efficient adjudication of the Williams Claim.

5. The substantive issues between the parties have not been resolved by the New Jersey State Court. The SJO resolved nothing because it contained no findings of facts, let alone identify material undisputed facts to warrant the New Jersey State Court granting Gawker summary judgment. The SJO contained no rulings or conclusions of law. The SJO was without a

3

written or reasoned oral opinion. The SJO is patently defective, does not comply with the New Jersey Rules of Court, and is invalid under New Jersey law, all of which will be the subject of the Appeal. By definition, therefore, the SJO would not be sufficiently firm or final and is not afforded preclusive effect under New Jersey law. For these reasons, Debtor's reliance on Westport Tax Serv., Inc. v. Westport Transit Dist. (In re Westport Transit Dist.), 141 B.R. 543, 545 (Bankr. D. Conn. 1992) (see Objection ¶11) is inapposite.

6. The SJO is not a final decision or order because an appeal of the SJO would be interlocutory and the standard of review on appeal would be de novo. See e.g., L.A. v. NJ Div. of Youth and Fam. Servs., 217, N.J. 311, 323 (2014) ("[i]n reviewing a grant of summary judgment, we review the decision de novo, applying the same standard as the trial court"); accord Manahawkin Convalescent v. O'Neill, 217 N.J. 99 (2014); Turner v. Wong, 363 N.J. Super. 186, 198-99 (App. Div. 2003). Debtor repeatedly acknowledges the interlocutory nature of the SJO in its Objection. (See Objection ¶¶13, 21). Debtor also concedes a de novo review on appeal precludes finality. (Id. ¶12). Therefore, Debtor's arguments about the preclusive effect of the purported "final" SJO under New Jersey law are unavailing and in fact support relief from stay. The procedural defects in the entry of the SJO can only be considered by the New Jersey State Court, not the Bankruptcy Court sitting as a de facto appellate court.

7. Third, there is no pending interlocutory Appeal because Gawker's bankruptcy filing nine days after entry of the SJO automatically stayed Williams from taking any action in the New Jersey State Court. Also inapposite, therefore, are the New Jersey cases that Debtor cites (see Objection ¶12) seeking to afford preclusive effect to a final trial court decision notwithstanding the pendency of an appeal. The Williams case is different because there is no final trial court decision and there is no pending Appeal; there is only a SJO that is barely more

4

than a page in length despite numerous depositions and two days of oral argument. Debtor further argues "findings subject to a pendent appeal are final for purposes of collateral estoppel" (see Objection ¶12 citing N.J. Div. of Child Protection & Permanency v. J.H., 2014 WL 1464469 at 5 n.3 (N.J. Super. Ct. App. Div. Apr. 16, 2014)) but that argument is misplaced, and the cited case inapposite, because for Williams there were no factual findings of undisputed material facts by the New Jersey State Court.

8. A threshold matter, therefore, is a determination that the SJO was procedurally validly entered under New Jersey law. Williams has argued already that this Court cannot make that determination as an appellate court. To the contrary, only the Appellate Division of the New Jersey State Court can determine the validity of the SJO in light of the complete absence of any findings of fact, conclusions of law, or a written opinion.

9. Finally, compelling the Bankruptcy Court to attempt to (partially) resolve Williams Claim for voting purposes, for a reserve amount, but not for allowance purposes, would inevitably engender further litigation among the parties and prolong, rather than expedite, a complete resolution of the Williams Claim. In the event the Bankruptcy Court disallows the Williams Claim on collateral estoppel grounds i.e., finds the SJO is a final order and was procedurally and validly entered in accordance with New Jersey law, Williams will have the right to appeal that ruling. Alternatively, the Bankruptcy Court may deny Debtor's objection to the Williams Claim, deny the Lift Stay Motion, and estimate the Williams Claim for purposes of plan confirmation (but not distribution). That outcome, however, will leave unresolved where to adjudicate the fixed, liquidated amount of the Williams Claim – an issue appropriate only for a jury in an Article III court or the New Jersey State Court. Therefore, granting the Lift Stay Motion will result in a complete resolution of the Williams Claim, in relatively short order. By

contrast, denying the Lift Stay Motion will result in remote, contingent relief without a complete resolution of the Williams Claim. For each of the reasons set forth above, the first Sonnax factor weighs heavily in favor of granting the Lift Stay Motion.

*Factor Two: Stay Relief Will Not Interfere with the Bankruptcy Case*

10. Stay relief will not interfere with the bankruptcy case because, as a matter of law, the Bankruptcy Court cannot conclusively determine the non-core Williams Claim. The Bankruptcy Court cannot fix and liquidate the Williams Claim for distribution purposes. As a result, the Appeal and, if necessary, a jury trial in New Jersey State Court will be a more efficient, cost-effective, and timely resolution of the Williams Claim -- as opposed to the claims estimation and reserve process overseen by the Bankruptcy Court for purposes of plan confirmation. The Appeal will enable Williams to preserve and liquidate the Williams Claim and share in the Plan proceeds, a right that every other, similarly situated, personal injury, defamation tort claimant already holds. Despite Debtor's representation in the Objection, there is no proof that the Debtor's insurer, American International Group, Inc. (AIG), has denied coverage for the Williams' Claim under the Debtor's $1 Million Media Content Insurance policy. Debtor simply could attach the denial of coverage letter as an exhibit to the Objection.

*Factor Seven: Litigation in Another Forum Will Not Prejudice the Interests of Other Creditors*

11. Litigation in the New Jersey State Court will not prejudice the Gawker creditors. There are at most two discrete events to occur in the New Jersey State Court: 1) an interlocutory Appeal, and, if successful, 2) a jury trial. All of this can occur in relatively short order because the appeal may be brought on an emergent basis and the case is already on the trial calendar of

6

the New Jersey State Court. By contrast, there will be more delay attendant to the Bankruptcy Court's impermissible appellate review of Williams defamation tort claims or withdrawal of the reference to the District Court.

*Factor Ten: Judicial Economy and the Expeditious and Economical Resolution of the Litigation Are Best Served By Lifting the Stay*

12. Debtor argues that "judicial economy is far better served by addressing the Claim Objection… and the Williams Claim should be disallowed based on the preclusive effect of the Summary Judgment Order." Of course the Bankruptcy Court's disallowance of the Williams Claim will be faster and more efficient than any other outcome, but it will also be an extra judicial outcome as the Bankruptcy Court cannot sit as an appellate court to rule on the validity and finality of the SJO and certainly cannot render a final judgment on the liquidated amount of Williams non-core personal injury defamation claim.

*Factor Eleven: The Parties Are Ready for Trial in the New Jersey State Court*

13. The parties are closer to a jury trial in the New Jersey State Court than they would be if a jury trial were to occur in the District Court. All discovery has concluded and the case is already on the trial calendar as to co-defendant Major League Baseball. Lifting the stay, perfecting and prosecuting the Appeal are the only events to occur before the jury trial. Yet, Debtor contends filing for leave to appeal an interlocutory order is time consuming and filled with uncertainty. To the contrary, under New Jersey Court Rule 4:42-2, Williams would file a motion with the trial court to certify that there is no just reason for delay in enforcement of the summary judgment grant, and that final judgment be entered provided there is: (1) a complete adjudication of a separate claim; (2) a complete adjudication of all the rights and liabilities

asserted in the litigation as to any party; or (3) where a partial summary judgment or other order for payment of part of a claim is awarded. Williams meets all three conditions.

*Factor Twelve: The Balance of Harms Weighs in Favor of Lifting the Stay*

14. Maintaining the stay will deprive Williams of his due process right to Appeal facially defective SJO and, if successful, litigate his claims before a jury. The deprivation of these fundamental rights should not fairly be measured against Debtor's perceived benefit: quick payments to other creditors at Williams' expense and a potential tax savings by confirmation in 2016. This is especially true when the outcome of lifting the stay, and Williams' success on Appeal and at trial, would be a fixed, liquidated general unsecured claim entitled to the same treatment as every other similarly situated defamation tort claimant.

*Factor Five: The Debtor Has Insurance That Might Cover the Williams Claim*

15. Debtor argues that no insurance carrier has assumed full responsibility for defending the action and, therefore, the interlocutory Appeal would present a drain on estate resources. However, in discovery, Debtor answered an interrogatory propounded by Williams as follows: "Gawker has a Media Content Insurance policy with American International Group, Inc. (AIG) that might be applicable to the claim asserted in this case, with a coverage limit of $1 Million. Gawker has provided notice under this policy." (Munshi Dec. ¶5). Debtor does not affirmatively state whether any insurer has denied responsibility for the Williams Claim. Nor does Debtor submit a denial of coverage letter. Before the Court rules on the Lift Stay Motion, it is incumbent on Debtor to confirm whether it has insurance to cover the Williams Claim, as the availability of insurance would weigh heavily in favor of lifting the stay.

*Factor Six: Whether the Action Primarily Involves Third Parties*

16. Although the Appeal concerns only the SJO and Williams defamation tort claims against Gawker, the underlying action and potential jury trial involves Williams's breach of contract claims against Major League Baseball. Therefore, to afford complete relief and resolution, it is necessary for Williams to obtain stay relief, prosecute his Appeal and, if necessary, prove his case at one trial among all defendants. After all, the present absence of a resolution as to all parties under the SJO is precisely why it is interlocutory and not final.

## CONCLUSION

17. For each of the reasons set forth above and those set forth in the Lift Stay Motion, the Sonnax factors weigh heavily in favor of the requested modification of the automatic stay and, therefore, cause exists for the Court to overrule the Objection, modify the automatic stay to allow the Appeal to proceed and, if necessary, to complete a jury trial of the Williams Claim in New Jersey State Court. Williams respectfully requests that the Court enter an order (substantially in the form of Exhibit A attached to the Lift Stay Motion) granting the Lift Stay Motion and for such other and further relief, as may be appropriate.

    Respectfully submitted,

    **CHIESA SHAHINIAN & GIANTOMASI PC**
    *Attorneys for Mitchell Williams*

    By:   /s/ Robert E. Nies
        ROBERT E. NIES

    One Boland Drive
    West Orange, New Jersey 07052
    Tel:   (973) 530-2012
    Fax:   (973) 530-2212
    E-Mail:  rnies@csglaw.com

Dated: November 29, 2016