ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Joshua Y. Sturm
Jonathan M. Agudelo
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------x
|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| Gawker Media LLC, *et al.*,[1] | : | Case No. 16-11700 (SMB) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

--------------------------------------------------------x

**NOTICE OF HEARING ON DEBTORS' MOTION TO APPROVE SETTLEMENT
AMONG GAWKER MEDIA LLC, MAIL MEDIA INC., ASSOCIATED NEWSPAPERS
LIMITED, DAILY MAIL GENERAL TRUST PLC, AND JAMES KING**

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") on the annexed motion (the

"Motion," a copy of which is attached hereto) of the above captioned debtors (the "Debtors")

will be held before the Honorable Stuart M. Bernstein, in the United States Bankruptcy Court for

the Southern District of New York, One Bowling Green, Courtroom 723, New York, New York

10004 (the "Bankruptcy Court") on **December 29, 2016 at 10:00 a.m. (prevailing Eastern

Time)**.

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections ("Objections")
to the Motion shall be in writing, shall conform to the Bankruptcy Rules, and the Local Rules,
shall be filed with the Bankruptcy Court, shall set forth the basis for the response or objection
and the specific grounds therefore, and shall be filed with the Bankruptcy Court electronically in
accordance with General Order M-399 by registered users of the Bankruptcy Court's case filing
system (the User's Manual for the Electronic Case Filing System can be found at
http://www.nysb.uscourts.gov, the official website for the Bankruptcy Court), with a hard copy
delivered directly to chambers pursuant to Local Bankruptcy Rule 9028-1 and served so as to be
actually received no later than **December 23, 2016 at 4:00 p.m. (prevailing Eastern Time)** (the
"Objection Deadline") upon the following parties: (i) the Debtors, Attn. William D. Holden
(profinvoices@gawker.com); (ii) counsel for the Debtors, Ropes & Gray LLP, 1211 Avenue of
the Americas, New York, NY 10036, Attn: Gregg M. Galardi
(gregg.galardi@ropesgray.com);  (iii) special litigation counsel for the Debtors, Cahill Gordon &
Reindel LLP, 80 Pine Street, New York, NY 10005, Attn: Susan Buckley; (iii) the Office of the
United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New
York, NY 10014, Attn: Greg Zipes & Susan Arbeit; (iv) the Internal Revenue Service; (v) the
United States Attorney for the Southern District of New York; (vi) counsel to the Official
Committee of Unsecured Creditors, Simpson Thacher & Bartlett, 425 Lexington Avenue, New
York, NY 10017, Attn: Sandy Qusba (squsba@stblaw.com) and William T. Russell
(wrussell@stblaw.com); (vii) counsel to US VC Partners LP, Latham & Watkins LLP, 330 North
Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: David Heller (david.heller@lw.com) &
Keith A. Simon, 885 Third Avenue, New York, New York 10022, Attn: Keith A. Simon
(keith.simon@lw.com); (viii) counsel to Cerberus Business Finance, LLC, Schulte Roth & Zabel

2

LLP, 919 Third Avenue, New York, New York 10022, Attn: Adam C. Harris
(adam.harris@srz.com); (ix) counsel for Mail Media Inc., Clare Locke LLP, 902 Prince Street,
Alexandria, VA 22314, Attn: Thomas A. Clare; (x) counsel to James King, Saul Ewing LLP,
1037 Raymond Boulevard, Suite 1520, Newark, New Jersey 07102, Attn: Sharon L. Levine; and
(xi) those persons who have formally appeared and requested service in these cases pursuant to
Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE** that if an Objection to the Motion is not
received by the Objection Deadline, the Debtors shall, on or after the Objection Deadline, submit
to the Bankruptcy Court an order substantially in the form annexed as **<u>Exhibit B</u>** to the Motion,
which order the Bankruptcy Court may enter with no further notice or opportunity to be heard.


Dated: November 29, 2016
      New York, New York

*/s/ Gregg M. Galardi*
ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Joshua Y. Sturm
Jonathan M. Agudelo
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel for the Debtors and Debtors in
Possession*

56566141_5

ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Joshua Y. Sturm
Jonathan M. Agudelo
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
                                                        :
In re                                                   :    Chapter 11
                                                        :
Gawker Media LLC, *et al.*,[1]                          :    Case No. 16-11700 (SMB)
                                                        :
                        Debtors.                        :    (Jointly Administered)
                                                        :
--------------------------------------------------------x

**DEBTORS' MOTION TO APPROVE SETTLEMENT AMONG GAWKER MEDIA LLC,**
**MAIL MEDIA INC., ASSOCIATED NEWSPAPERS LIMITED, DAILY MAIL**
**GENERAL TRUST PLC, AND JAMES KING**

Gawker Media LLC ("Gawker Media"), Gawker Media Group, Inc., and Gawker

Hungary Kft. (f/k/a Kinja Kft.) (the foregoing parties, collectively, the "Debtors") hereby submit

this motion (the "Motion") for an order, substantially in the form attached as Exhibit B,

approving the settlement agreement (the "Settlement Agreement"), a copy of which is attached as

Exhibit A, among Gawker Media, Mail Media Inc. ("MMI"), Associated Newspapers Limited

("AML"), Daily Mail General Trust plc ("DMGT"), and James King ("King") (the foregoing

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

parties, collectively, the "Settling Parties"). In support of the Motion, the Debtors respectfully represent and set forth as follows:

**JURISDICTION AND AUTHORITY**

1.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**BACKGROUND**

**A.      Procedural Background**

2.      On June 10, 2016, Gawker Media filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Gawker Media Petition Date"). On June 12, 2016, GMGI and Gawker Hungary each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3.      On June 16, 2016 the Bankruptcy Court entered an order authorizing the joint administration and procedural consolidation of the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 41].

4.      On June 24, 2016, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee"). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

5.      The Debtors are operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Additional factual background regarding the

2

Debtors, their business operations, their capital and debt structure, and the events leading up to the filing of these chapter 11 cases are set forth in detail in the *Declaration of William D. Holden in Support of First Day Motions* [Docket No. 7].

6.      On September 30, 2016, the Debtors filed a disclosure statement (as subsequently amended, the "Disclosure Statement") for their joint chapter 11 plan of liquidation (as subsequently amended, the "Plan"). The Bankruptcy Court approved the Disclosure Statement on November 4, 2016 [Docket No. 413]. The confirmation hearing in respect of the Plan is scheduled to begin on December 13, 2016.

**B.      The Mail Media Dispute**

7.      The dispute among the Settling Parties relates to an article written by King and published by Gawker on March 4, 2015, subsequently updated on March 6, 2015 ("the "March 6 Article") (collectively, the "Articles"). MMI[2] subsequently commenced a pre-petition lawsuit against Gawker in respect of the Articles captioned *Mail Media Inc. d/b/a Mail Online v. Gawker Media, LLC and James King* (Index No. 159134/2015, N.Y. Sup. Ct.) (the "Lawsuit") in the Supreme Court of the State of New York (the "State Court").  MMI alleges two causes of action for defamation against Gawker and King. The Lawsuit is in the pre-trial stage.

8.      MMI filed a proof of claim against Gawker Media [No. 42] for $1 million relating exclusively to the Lawsuit (the "MMI Proof of Claim"). King filed a proof of claim against each of the Debtors for alleged indemnity obligations owing in respect of the Lawsuit, among other things.[3]

---

[2] According to a pleading filed by MMI in the Lawsuit, MMI is a services company that contracts with ANL related to the website Mail Online. Mail Online is published by ANL. ANL and MMI are subsidiaries of DMGT.

[3] The Debtors have objected to King's claim against Gawker Hungary in its entirety on the basis that King has not established the right to indemnification or advancement from Gawker Hungary.  *See Debtors' First Omnibus Objection to Claims (No Liability Gawker Hungary Kft. (f/k/a Kinja Kft) Indemnification Claims)* [Docket No. 394].

3

C.    **The Settlement**

9.    The Settlement Agreement is the result of a good faith and arm's-length discussion among the Settling Parties and provides for the resolution of the Lawsuit.

10.    The Settlement Agreement provides[4] that within five days of the Bankruptcy Court's entry of an order granting the Motion, Gawker shall (i) include an Editor's Note statement at the beginning of the March 6 Article, as more particularly set forth in paragraph 1 of the Settlement Agreement; (ii) replace the current illustration for the post with another illustration that Gawker deems suitable to the post that does not incorporate the Daily Mail's logo; and (iii) publish a statement by DailyMail.com in a scribd viewer (the "Statement") following a note by Gawker, each as more particularly set forth in paragraph 3 and Exhibit A to the Settlement Agreement. The Settlement Agreement further provides that within ten days of the Bankruptcy Court's entry of an order approving the Motion, counsel for Gawker and King shall file an executed Stipulation of Discontinuance in the State Court.  The Settlement Agreement does not provide for any monetary consideration among the parties.

11.    The Settlement Agreement contains mutual releases in favor of the Settling Parties, solely for claims relating to the Articles and the Statement.

## RELIEF REQUESTED AND BASIS FOR RELIEF

12.    By this Motion, the Debtors seek entry of an order approving the Settlement Agreement, including the releases contained therein.

---

[4] This summary of the Settlement Agreement is provided for the convenience of the Court and parties in interest. To the extent there are any discrepancies between this summary and the Settlement Agreement itself, the terms and language of the Settlement Agreement shall govern. Unless defined herein, capitalized terms defined in the Settlement Agreement shall have the meanings ascribed to them therein.

4

13.    The Debtors believe that the requirements of Rule 9019 are satisfied because the

Settlement Agreement, including the mutual releases therein, are fair, equitable, and reasonable

given the issues involved and the potential burden to the estate deriving from litigation.

14.    Bankruptcy Rule 9019(a) permits a debtor in possession to compromise claims,

subject to bankruptcy court approval. Fed. R. Bankr. P. 9019(a). The legal standard for

determining the propriety of a bankruptcy compromise is whether the settlement is in the "best

interests of the estate." *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 523 (S.D.N.Y. 1993).

The United States Supreme Court has noted that "[c]ompromises are a 'normal part of the process

of reorganization.'" *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.

Anderson*, 390 U.S. 414, 424 (1968) (citation omitted). The decision to approve a particular

compromise lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R.

115, 123 (S.D.N.Y. 1994). In exercising its discretion, the bankruptcy court must make an

independent determination that the settlement is fair and equitable. *Id.* at 122. The court may

consider the opinions of the debtor in possession and its counsel that the settlement is fair and

equitable. *Id.*; *see also In re Purofied Down Prods. Corp.*, 150 B.R. at 522. This discretion

should be exercised by the bankruptcy court "in light of the general public policy favoring

settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (S.D.N.Y. 1998); *Shugrue*, 165

B.R. at 123 ("[T]he general rule [is] that settlements are favored and, in fact, encouraged").

15.    To approve a proposed compromise, a bankruptcy court is not required to decide

numerous issues of law and fact raised by the settlement, but rather should "canvass the issues

and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"

*Finkelstein v. W. T. Grant Co. (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing

*Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *see also In re Purofied Down Prods. Corp.,*

5

150 B.R. at 522 ("the court need not conduct a 'mini-trial' to determine the merits of the underlying [dispute]"). In deciding whether a particular settlement falls above the "lowest point in the range of reasonableness," courts consider the following *Iridium* factors:

    i.    the balance between the litigation's possibility of success and the settlement's future benefits;

    ii.    the likelihood of complex and protracted litigation, 'with its attendant expense, inconvenience, and delay';

    iii.    the paramount interests of creditors;

    iv.    whether other parties in interest support the settlement;

    v.    the 'competency and experience of counsel' supporting, and '[t]he experience and knowledge of the bankruptcy court judge' reviewing, the settlement;

    vi.    the nature and breadth of releases to be obtained by officers and directors; and

    vii.    the extent to which the settlement is the product of arm's length bargaining.

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (quoting *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

16.    The Debtors believe that the requirements of Rule 9019 are satisfied because the Settlement Agreement represents a fair, equitable, and comprehensive resolution of the parties' disputes with regard to the Articles, falls well above the lowest point in the range of reasonableness, and satisfies each of the *Iridium* factors.

17.    With respect to the first two *Iridium* factors, there is no question that the Settlement Agreement is better for the Debtors on a risk-adjusted basis than the results of any potential litigation strategy. The Debtors' professionals worked to assess the Debtors' rights and obligations with respect to the Lawsuit. Based on this analysis, the Debtors believe that the

benefits to be received in an immediate settlement via the Settlement Agreement far outweigh the complexities, uncertainties, and costs of litigating the Claim with MMI.

18.      With respect to the third and fourth *Iridium* factors, the Settlement Agreement and the releases contained therein are beneficial to Gawker Media, its estate, its creditors, and other parties in interest. The Debtors have determined, in their sound business judgment, that consummating the Settlement Agreement is the best means of resolving its disputes with MMI. The Settlement Agreement settles the Lawsuit for no monetary consideration from the Debtors. MMI's $1 million claim, had it ultimately been allowed, could have diluted recoveries under the Plan to Gawker Media's unsecured creditors.  The Settlement Agreement also eliminates any indemnity obligations that Gawker Media's estate may have had to King in respect of the Lawsuit.

19.      With regard to the last three *Iridium* factors, the Settlement Agreement was negotiated among and is supported by competent counsel of the parties thereto. The mutual releases are narrowly tailored to relate solely to claims that the Settling Parties could have had against each other relating to the Articles or the Statement.  Finally, the Settlement Agreement is proposed by the parties in good faith and without collusion and is the product of arm's-length bargaining.

20.      For the foregoing reasons, the Debtors respectfully requests that the Court approve the Settlement Agreement.

### NOTICE

21.      Notice of this Motion has been provided in accordance with the *Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Implementing Certain Notice and*

*Case Management Procedures* [Docket No. 93].  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## NO PREVIOUS REQUEST

22.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court approve the Settlement Agreement and enter the proposed order attached as <u>Exhibit B</u>, granting the relief requested in the Motion and such other and further relief for the Debtors as may be just or proper.

Dated: November 29, 2016
      New York, New York

                                       */s/ Gregg M. Galardi*
                                        ROPES & GRAY LLP
                                        Gregg M. Galardi
                                        D. Ross Martin
                                         Joshua Y. Sturm
                                         Jonathan M. Agudelo
                                         1211 Avenue of the Americas
                                         New York, NY 10036-8704
                                         Telephone: (212) 596-9000
                                         Facsimile: (212) 596-9090
                                         gregg.galardi@ropesgray.com
                                         ross.martin@ropesgray.com
                                         joshua.sturm@ropesgray.com
                                         jonathan.agudelo@ropesgray.com

                                         *Counsel to the Debtors*
                                         *and Debtors in Possession*

## Exhibit A

**Settlement Agreement**

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (this "Agreement") is made and entered into by and between (i) Mail Media Inc. ("MMI"), a Delaware corporation with its principal place of business in New York, New York, Associated Newspapers Limited ("ANL"), a United Kingdom limited company with its principal place of business in London, England and Daily Mail General Trust plc ("DMGT"), a United Kingdom corporation with its principal place of business in London, England on the one hand, and (ii) Gawker Media, LLC ("Gawker"), a Delaware limited liability company with its principal place of business in New York, and James King ("King"), a resident of the State of New York on the other hand. MMI, ANL, DMGT, Gawker, and King are each sometimes referred to herein as a "Party" and are jointly referred to herein as the "Parties." This Agreement shall be effective as of the date on which the last of each of the Parties executes this Agreement, subject only to approval of this Agreement by the Bankruptcy Court (as defined below) ("the Approval").

## RECITALS

WHEREAS, on March 4, 2015, Gawker published an article ("the March 4 Article"), authored by King, headlined: "My Year Ripping Off the Web With the Daily Mail Online". On March 6, 2015, Gawker updated the article. The updated article ("the March 6 Article") is available at http://tktk.gawker.com/my-year-ripping-off-the-web-with-the-daily-mail-online-1689453286. The March 4 Article and the March 6 Article are collectively referred to herein as "the Articles";

WHEREAS on March 4, 2015, MMI sent Gawker a letter stating that the allegations made by King in the March 4 Article were false and requesting that if Gawker decided to publish those allegations, then it should publish MMI's response to those allegations in full alongside the Article, but Gawker declined to publish the entire response;

WHEREAS, on September 3, 2015, MMI instituted an action against Gawker and King by filing a complaint with the Supreme Court of the State of New York, County of New York (Index No. 159134/2015) ("the Action"). The complaint alleges that the Articles defamed MMI. On November 25, 2015, Gawker and King each filed answers responding to the complaint and denying all liability;

WHEREAS, on June 10, 2016, Gawker filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York ("the Bankruptcy Court");

WHEREAS MMI, ANL and DMGT continue to believe that their claims against Gawker and King are meritorious and that they would ultimately prevail on those claims in a trial;

WHEREAS Gawker and King continue to believe that their defenses against MMI, ANL and DMGT are meritorious and that they would ultimately prevail on those defenses in a trial;

WHEREAS, to avoid the burden, distraction, expense and uncertainty of litigation, MMI, ANL, DMGT, Gawker, and King wish to settle, compromise and finally resolve all claims that MMI, ANL or DMGT could have asserted against King and/or Gawker (or its current or former

officers, directors and employees) arising out of the Articles and to resolve all defenses that could have been asserted as against such claims;

NOW, THEREFORE, in consideration of the promises and undertakings set forth herein, and with the intent to be legally bound thereby, the Parties agree as follows:

THE SETTLEMENT CONSIDERATION

1.      Within five (5) days of the Approval, Gawker shall include an Editor's Note at the beginning of the March 6 Article which reads:  "Per an agreement with DailyMail.com, DailyMail.com's entire statement in response to this post has been reproduced at the end of the post and the original illustration has been replaced with one that doesn't make use of DailyMail.com's trademark."  Gawker agrees not to republish or cause to be republished the March 4 Article or move the March 6 Article from its current location on Gawker's website.  The Parties expressly agree that in the event Gawker should sell, assign or otherwise transfer Gawker.com or its archives to a third party, such a sale, assignment or transfer is not a violation of this paragraph.

2.      Within five (5) days of the Approval, Gawker shall replace the current illustration for the post (which incorporates the Daily Mail's logo) with another illustration Gawker deems suitable to the post that does not incorporate the Daily Mail's logo.

3.      Within five (5) days of the Approval, Gawker shall publish DailyMail.com's entire statement in response to the post at the end of the March 6 Article in a scribd viewer window following a note that reads:  "DailyMail.com's entire statement in response to this post is reproduced below."  A copy of DailyMail.com's entire statement is attached as Exhibit A hereto.

4.      Within ten (10) days of the Approval, counsel for Gawker and King shall file a Stipulation of Discontinuance executed by counsel for all parties to the Action with the Supreme Court of the State of New York, County of New York in the form attached as Exhibit B.

SCOPE AND EFFECT OF SETTLEMENT; MUTUAL RELEASES

5.      The obligations incurred pursuant to this Agreement shall be in full and final disposition of all claims that any of the Parties now have, could have, or ever had relating to the Articles (including without limitation all claims that could have been asserted) against King, Gawker, or any of Gawker's current or former directors, officers or employees, or against MMI, ANL, DMGT or any of their current or former officers, directors or employees.

6.      Upon the performance of the Settlement Consideration specified in Paragraphs 1-4 above, the Parties shall have fully, finally, and forever released and discharged all claims that they now have, could have, or ever had relating to the Articles (including without limitation all claims that could have been asserted) against King, Gawker or any of Gawker's current or former directors, officers or employees, or against MMI, ANL, DMGT or any of their current or former directors, officers or employees, and shall forever be enjoined from instituting, commencing or prosecuting any such claims.

-2-

7.     Except for claims for breach of this Agreement, MMI, ANL and DMGT release, remise, quitclaim and forever discharge the Gawker Releasees (as defined below) from, and MMI, ANL and DMGT covenant not to bring, commence, assert or prosecute against them, any claims, cross-claims, debts, demands, rights or causes of action or liabilities of any kind or nature whatsoever, whether legal, equitable, or statutory, liquidated or unliquidated, fixed or contingent, known or unknown, suspected or unsuspected, reasonably discoverable or not, which MMI, ANL or DMGT now has, could have, or ever had relating to the Articles (including without limitation all claims that could have been brought), as well as the statement attached as Exhibit A to this Agreement, before any court, arbitrator, or other tribunal in any jurisdiction. As used herein, the term "Gawker Releasees" means (i) Gawker, (ii) King and (iii) any other person or entity against whom any claims, cross-claims, debts, demands, rights, or causes of action or liabilities could have been asserted based on the status or capacity of such person or entity as a parent, subsidiary, business unit, officer, director, shareholder, current or former employee, attorney and/or agent of Gawker or King, or based on any action taken or omitted to be taken relating to the Articles by such person or entity in such capacity.

8.     Except for claims for breach of this Agreement, Gawker and King remise, quitclaim and forever discharge the MMI Releasees (as defined below) from, and Gawker and King covenant not to bring, commence, assert, or prosecute against them, any claims, cross-claims, debts, demands, rights, or causes of action or liabilities of any kind or nature whatsoever, whether legal, equitable, or statutory, liquidated or unliquidated, fixed or contingent, known or unknown, suspected or unsuspected, reasonably discoverable or not, which Gawker or King now have, could have, or ever had relating to the Articles (including without limitation all claims that could have been brought), as well as the statement attached as Exhibit A to this Agreement, before any court, arbitrator, or other tribunal in any jurisdiction. As used herein, the term "MMI Releasees" means (i) MMI, (ii) ANL, (iii) DMGT, and (iv) any other person or entity against whom any claims, cross-claims, debts, demands, rights, or causes of action or liabilities could have been asserted based on the status or capacity of such person or entity as a parent, subsidiary, business unit, officer, director, shareholder, current or former employee, attorney and/or agent of MMI, ANL or DMGT, or based on any action taken or omitted to be taken relating to the Articles by such person or entity in such capacity.

<u>WAIVER OF BENEFITS</u>

9.     The Parties expressly waive any and all provisions, rights, and benefits conferred by any law of the United States, or any state or territory of the United States, or principle of common law or foreign law, which may have the effect of limiting the releases set forth above. Without limiting the generality of the foregoing, the Parties shall be deemed by operation of law to have relinquished to the full extent permitted by law, the provisions, rights and benefits of California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM OR HER, MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

-3-

The Parties expressly waive the rights and benefits conferred by California Civil Code § 1542. The Parties acknowledge that the foregoing waiver was separately bargained for and a key element of the settlement of which the above release is a part.

## NO ADMISSION OF WRONGDOING AND EXCLUSIONS

10.    This Agreement and all negotiations, statements, and proceedings in connection herewith shall not be, in any event, (i) construed as or deemed to be evidence of, an admission of, or concession of any liability or wrongdoing and shall not be offered or received in evidence in any action or proceeding (except an action to enforce this Agreement), or be used in any way as an admission, concession, or evidence of any liability or wrongdoing of any nature; or (ii) construed as, or deemed to be evidence of, an admission or concession that MMI, ANL, DMGT, or any other person or entity, has or has not suffered any damage, or that King, Gawker, or any of Gawker's current or former oficers, directors or employees bear any responsibility for any alleged damages. This Agreement involves the settlement of claims which are denied and contested and nothing contained herein shall be construed as an admission by King, Gawker, or any of Gawker's current or former directors, officers or employees of any liability of any kind to MMI, ANL, DMGT, or any other person or entity.

## MISCELLANEOUS PROVISIONS

11.    The Parties have carefully read, and know and understand, the full contents of this Agreement, and agree that the terms of this Agreement were negotiated at arm's-length in good faith by the Parties and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

12.    This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the Parties or their successors-in-interest.

13.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

14.    The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

15.    Each separately numbered term of this Agreement is contractual, not merely a recital.

16.    This Agreement contains the entire agreement and understanding between the Parties concerning the subject matter hereof, and supersedes any prior or contemporaneous discussion or agreements thereon.  The Parties acknowledge that no Party, or any agent, representative, attorney, or client of a Party, has made any promise, representation, or warranty whatsoever, express or implied, that is not contained herein concerning the subject matter hereof, to induce any other Party to execute the Agreement.  The Parties acknowledge that they have not executed the Agreement in reliance on any promise, representation, or warranty not contained herein.

17.    This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for

the Parties to this Agreement shall exchange among themselves electronic copies of original signed counterparts.

18.     This Agreement is binding upon and shall inure to the benefit of the Parties and their respective subsidiaries, affiliates, agents, successors, executors, heirs and assigns.

19.     The construction, interpretation, operation, effect, and validity of this Agreement shall be governed by New York law exclusive of any conflict of laws rules that would require the application of the law of any other jurisdiction.

20.     Any action to enforce this Agreement or any of its terms shall be brought in the Bankruptcy Court.  This Paragraph shall not be deemed a waiver of personal jurisdiction or other jurisdictional defenses for any purposes other than the enforcement of this Agreement.

21.     This Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties, and each Party has contributed substantially and materially to the preparation of this Agreement.

22.     If any term, provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants, and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated, *provided*, however, that Paragraphs 1-4 and 7-8 which are material and integral provisions of this Agreement without which the parties would not have entered into this Agreement, shall not be severable from this Agreement.

23.     All persons executing this Agreement warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms, subject only, in the case of Gawker, to the Approval.

24.     Each Party shall be responsible for its own expenses (including, without limitation, attorneys' fees) incurred by it in connection with the Action, this Agreement, and other matters referred to herein.

25.     Any notices, requests, or demands concerning this Agreement shall be sent by email and Federal Express to:

> For MMI, ANL and DMGT:
>
> > Thomas A. Clare, Esq.
> > CLARE LOCKE LLP
> > 902 Prince Street
> > Alexandria, VA 22314
> > Tel: (202) 628-7400
> > E-mail:tom@clarelocke.com

For Gawker and King:

      Susan Buckley, Esq.
      CAHILL GORDON & REINDEL LLP
      80 Pine Street
      New York, NY 10005
      Tel: (212) 701-3862
      Email: sbuckley@cahill.com

Any Party may from time to time change its address or other information for purposes of notices to that Party by giving written notice specifying such change to the other Parties.

      IN WITNESS WHEREOF, the undersigned Parties have executed this Agreement.

Gawker Media, LLC           Mail Media Inc.

_____  11/28/16     _____
By: William D. Holden    Date    By: Richard Caccappolo   Date
    Chief Restructuring Officer        Treasurer


                    Associated Newspapers Limited

_____
James King        Date

                    _____
                    By: Kevin Beatty    Date
                        Director


                    Daily Mail and General Trust plc


                    _____
                    By: Kevin Beatty    Date
                        Director

For Gawker and King:

Susan Buckley, Esq.
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, NY 10005
Tel: (212) 701-3862
Email: sbuckley@cahill.com

Any Party may from time to time change its address or other information for purposes of notices to that Party by giving written notice specifying such change to the other Parties.

IN WITNESS WHEREOF, the undersigned Parties have executed this Agreement.

Gawker Media, LLC                                    Mail Media Inc.


_____                   _____
By: William D. Holden        Date                   By: Richard Caccappolo        Date
    Chief Restructuring Officer                         Treasurer


_____                   Associated Newspapers Limited
James King                   Date                   11·28·16

                                                    _____
                                                    By: Kevin Beatty             Date
                                                        Director


                                                    Daily Mail and General Trust plc


                                                    _____
                                                    By: Kevin Beatty             Date
                                                        Director


-6-

For Gawker and King:

Susan Buckley, Esq.
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, NY 10005
Tel: (212) 701-3862
Email: sbuckley@cahill.com

Any Party may from time to time change its address or other information for purposes of notices to that Party by giving written notice specifying such change to the other Parties.

IN WITNESS WHEREOF, the undersigned Parties have executed this Agreement.

Gawker Media, LLC                    Mail Media Inc.

_____      _____ 29th November, 2016
By:  William D. Holden      Date      By:  Richard Caccappolo      Date
     Chief Restructuring Officer           Treasurer


_____      Associated Newspapers Limited
James King                  Date
                            _____ 29th November '16
                            By:  Kevin Beatty      Date
                                 Director


                            Daily Mail and General Trust plc

                            _____ 29th November '16
                            By:  Kevin Beatty      Date
                                 Director

-6-

# EXHIBIT A

# Daily **Mail**.com

## Statement by DailyMail.com – 5 March 2015

We utterly refute James King's claim that DailyMail.com depends on 'dishonesty, theft of copyright material', and the publication of material we 'know to be inaccurate'.

King was a freelancer who worked sporadic shifts at DailyMail.com. Before he left he had had become unreliable and late, had missed 14 entire shifts in 10 months, and on one occasion failed to turn up for two shifts after being arrested by police.

He threatened a woman editor with violence and had to be repeatedly reminded about the need for proper attribution in his work.

He offered a version of the story published by Gawker to the Washington Post last year – they rejected it after its inaccuracies and his unreliability were pointed out.

These are some of the many inaccuracies in his Gawker article:

- He claims in his Gawker piece he had a conversation with our Managing Editor Keith Poole outside our building during which our Mr Poole described George Clooney as a 'lying bastard'. He told the Washington Post this conversation took place in an elevator and was between our Mr Poole and another person. FACT: Both our Mr Poole and the person involved confirm they had a conversation in the elevator, but Mr Clooney was not called a 'lying bastard'. There was no conversation between King and our Managing Editor, outside the building or in the elevator. DailyMail.com has never sought to make light of its error in publishing the story about Mr Clooney, which was an error not a fabrication. We apologised promptly and profusely at the time.

- He suggests we published a picture, purportedly of a woman who died of cancer, knowing it was another woman of the same name. He admits he helped find the picture on social media, but says he sent a note saying it was likely not the same woman. FACT: It was King who suggested it was the correct picture, which we published in good faith, believing it to be of the right woman. In fact the woman in the picture we used was the sister-in-law of the dead woman, who shared the same first and last names, and looked extraordinarily similar to her. We can find no note from King, apart from one he sent after the woman in the photograph complained, saying he had been unable to confirm the picture was of the correct woman.

- He quotes a headline about a 'private school teen' killer, which he claimed was inaccurate and written by one of our editors to make the killer a 'stock tabloid character'. FACT: King told the Washington Post the teenage killer in question had never been to a private school. He told Gawker the killer had been at a private school for three months. In fact he killed his father for money left by his dead mother to pay for his private schooling – so his attendance at a private school was central to the story.

DailyMail.com, 51 Astor Place 9th Floor, New York, NY 10003, United States

Registered office: 160 Greentree Drive, Suite 101, Dover, DE 19904, United States

# Daily **Mail**.com

- He claims we identified a woman as a porn star with HIV, and the woman, who was not a porn star and not HIV positive, sued. FACT: We published a genuine story about an un-named newcomer to the porn industry who was HIV positive, but it was illustrated with a stock image of a model posing on a bed before a camera. The model turned out to be a well-known porn star, who sued. We removed the picture.

- He claims DailyMail.com wrote an article suggesting Taylor Swift was a lesbian, which was mysteriously withdrawn. FACT: The article, which did not mention lesbianism, was a diary item written by The Mail on Sunday in London and put to Ms Swift's PR repeatedly before publication. The PR called the paper after publication, apologised for not having responded earlier, and asked for the story to be withdrawn because it was not accurate.

- He claims the DailyMail.com photo desk ran the Today Show's photos despite its explicit denial, showing a cavalier attitude towards rights and cease and desist orders. FACT: No copyright photos were used, grabs were credited and linked and we have never had a complaint from NBC about this story.

- He claims that he was told original links should not be placed higher than the first pictures and was told not to link to the New York Daily News. FACT: This is demonstrably false. We always strive to link prominently and, in fact, we had to give Mr King several verbal reminders of this policy.

DailyMail.com is the world's biggest news site because it takes its journalism very seriously.

It receives 21.2 million visits a day from 13.9 million people, almost half of which are direct visits to one of our home pages and apps - because they have come to trust and love DailyMail.com and MailOnline.com as their go-to site for daily news.

It is also the site that every major newsroom in the UK and US follows obsessively because of our unrivalled record of posting both exclusive and breaking news stories.

We will continue to let that journalistic record speak for itself.

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MAIL MEDIA INC. d/b/a *MAIL ONLINE*,

                        Plaintiff,

    -against-

GAWKER MEDIA, LLC AND JAMES KING,

                        Defendants.

Index No. 159134/2015

**STIPULATION OF
DISCONTINUANCE**

**WHEREAS**, on September 3, 2015 Plaintiff Mail Media Inc. instituted this defamation action against Defendants Gawker Media, LLC and James King;

**WHEREAS**, on November 25, 2015 Defendants responded to the Complaint asserting various defenses and denying all liability;

WHEREAS, on [date] Mail Media Inc., Associated Newspapers Ltd. and Daily Mail General Trust plc, on the one hand, and Gawker Media, LLC and James King, on the other hand, entered into a Settlement Agreement and Release of Claims that resolves all of the claims that were or could have been brought in this action;

**WHEREAS**, no party to this action is an infant or incompetent for which a committee has been appointed;

**WHEREAS**, there is no person not a party to the settlement who has any interest in the subject matter of this action;

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and between the undersigned, as follows:

1.    The above-referenced action is hereby discontinued, with prejudice, and without costs,

damages, or fees, to any party, and an order to that effect may be entered without further notice.

Dated: New York, New York
        December __, 2016


NESENOFF & MILTENBERG, LLP          CAHILL GORDON & REINDEL LLP
*Attorneys for Plaintiff*              *Attorneys for Defendants*


By: _____     By: _____
    Andrew T. Miltenberg                 Susan Buckley
    363 Seventh Avenue, 5th Floor        80 Pine Street
    New York, New York 10001             New York, New York 10005-1772
    (212) 736-4500                       (212) 701-3000
    amiltenberg@nmllplaw.com             sbuckley@cahill.com

**<u>Exhibit B</u>**

**Proposed Order**

Ropes & Gray LLP
Gregg M. Galardi
D. Ross Martin
Joshua Y. Sturm
Jonathan M. Agudelo
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
                                                        :
In re                                                   :    Chapter 11
                                                        :
Gawker Media LLC, *et al.*,[1]                          :    Case No. 16-11700 (SMB)
                                                        :
                            Debtors.                    :    (Jointly Administered)
                                                        :
-------------------------------------------------------x

**ORDER APPROVING DEBTORS' MOTION TO APPROVE SETTLEMENT AMONG**
**GAWKER MEDIA LLC, MAIL MEDIA INC., ASSOCIATED NEWSPAPERS LIMITED,**
**DAILY MAIL GENERAL TRUST PLC, AND JAMES KING**

Upon consideration of the *Debtors' Motion to Approve Settlement Among Gawker Media LLC, Mail Media Inc., Associated Newspapers Limited, Daily Mail General Trust plc, and James King* (the "Motion") seeking an order approving that certain Settlement Agreement[2] among Gawker Media LLC, Mail Media Inc., Associated Newspapers Limited, Daily Mail General Trust plc, and James King, dated November 29, 2016, a copy of which is attached as Exhibit A;

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

[2] All capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

56566141_5

and it appearing that no other or further notice need be provided; and no objections to approval

of the Settlement Agreement having been filed or received; and it appearing that the relief

requested is in the best interests of this estate, its creditors, and other parties-in-interest; and the

Court having reviewed the Settlement Agreement; and after due deliberation and sufficient cause

appearing therefor, it is hereby:

**ORDERED THAT:**

1.      The Motion is GRANTED.

2.      The Settlement Agreement attached as <u>Exhibit A</u> is hereby approved in all

respects pursuant to Bankruptcy Rule 9019.

3.      The MMI Claim is hereby settled as of the date that Gawker Media satisfies each

of the conditions contained in paragraphs 1-4 of the Settlement Agreement (the "<u>Completion

Date</u>"). The Debtors are authorized to direct Prime Clerk on or after the Completion Date to

cause the claims register to be amended to reflect that the MMI Claim has been satisfied pursuant

to settlement.

4.      The Settlement Agreement may be modified, amended, or supplemented through

a written agreement by and among the Settling Parties in accordance with the terms thereof

without further order of the Court.

5.      This Court retains jurisdiction with respect to all matters arising from or related to

the Settlement Agreement or enforcement of this Order, including the authority to interpret,

implement, and enforce the terms and provisions of the Settlement Agreement and this Order.

Dated: _____, 2016
     New York, New York

                  _____
                  HONORABLE STUART M. BERNSTEIN
                  UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

Settlement Agreement