UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

In re:                                              :

                                                    :  Chapter 11

GAWKER MEDIA LLC,                                   :

                                                    :  Case No.: 16-11700 (SMB)

              Debtors.[1]                           :

---------------------------------------------------------x

### GENERAL OBJECTION OF CLAIMAINTS CHARLES C. JOHNSON AND GOT NEWS LLC TO DEBTORS' AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR GAWKER MEDIA GROUP, INC., GAWKER MEDIA LLC, AND GAWKER HUNGARY KFT

TO THE HONORABLE STUART M. BERNSTEIN

UNITED STATES BANKRUPTCY JUDGE:

      Claimants Charles C. Johnson ("Johnson") and Got News LLC ("Got News") (collectively, "Claimants") hereby file this General Objection to Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft. (Doc. No. 403).   The Amended Plan may not be confirmed a) under 11 U.S.C. § 1129(a)(1) & (a)(4) because it does not comply with 11 U.S.C. § 1123(b); and b) under 11 U.S.C. § 1129(b)(1), for it is unreasonable, it discriminates unfairly and is neither fair nor equitable.   In support hereof, Claimants state as follows:

## I.  BACKGROUND

      1.    On September 30, 2016, Debtors filed their disclosure statement, annexing thereto the Debtors' Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.  (Doc. No. 308, Ex. A).

---

[1]   The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Lft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

2.      On November 2, 2016, Debtors filed an amended disclosure statement, annexing thereto the Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.  ("Amended Plan") (Doc. No. 403, Ex. A).

3.      Following a hearing on November 3, 2016, the Court entered an Order approving, *inter alia*, the adequacy of the disclosure statement for the Amended Plan.  (Doc. No. 413).

4.      On November 8, 2016, Debtors filed their solicitation version of the disclosure statement for the Amended Plan, including the solicitation version of the Amended Plan.  (Doc. No. 427).

## II.     OBJECTIONS TO CONFIRMATION

A.     The Ayyadurai and Terrill Settlements Are Unreasonable, Unfair, and Inequitable

5.      Pursuant to 11 U.S.C. § 1129(a)(1), a chapter 11 plan must comply with all applicable provisions of the Bankruptcy Code, which necessarily includes 11 U.S.C. § 1123.

6.      A chapter 11 plan may "provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estate" and "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."  11 U.S.C. §§ 1123(b)(3)(A), (b)(6).  Courts analyze settlements under section 1123 by applying the same standard applied under Rule 9019 of the Bankruptcy Rules, which permits a court to "approve a compromise or settlement."  *See* Fed. R. Bankr. P. 9019(a); *see, e.g., Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co., Inc.)*, 177 B.R. 791, 794 n.4 (S.D.N.Y. 1995) ("Irrespective of whether a claim is settled as part of a plan pursuant to section 1123(b)(3)(A) of the Bankruptcy Code or pursuant to separate motion under Bankruptcy Rule 9019, the standards applied by the Bankruptcy Court for approval are the same."), aff'd, 68 F.3d 26 (2d Cir. 1995).  A court may approve a settlement under Rule 9019 of the Bankruptcy Rules if it is fair and equitable and in the best interests of the estate.  *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968) (hereinafter, "TMT Trailer Ferry"); *see also HSBC Bank USA, N.A. v. Fane (In re MF Global Inc.)*, 466 B.R. 244, 247

(Bankr. S.D.N.Y. 2012).   The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court.  *See Nellis v. Shugrue*, 165 B.R. 115, 122-23 (S.D.N.Y. 1994).

7.    Though the Court may "give weight to the [debtors'] opinion that the settlement is fair and equitable, [it] may not simply adopt the [debtors'] position without making its own independent inquiry." *In re NII Holdings*, 536 B.R. 61, 99 (Bankr. S.D.N.Y. 2015) quoting *In re Soup Kitchen Int'l Inc.*, 506 B.R. 29, 37 (Bankr. E.D.N.Y. 2014).

8.    When courts in this Circuit consider whether a settlement is within the range of reasonableness, they apply the following factors:

> (1)    the balance between the litigation's possibility of success and the settlement's future benefits;
> (2)    the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay;
> (3)    the paramount interests of creditors;
> (4)    whether other parties in interest support the settlement;
> (5)    the nature and breadth of releases to be obtained by officers and directors;
> (6)    the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement; and
> (7)    the extent to which the settlement is the product of arm's-length bargaining."

*In re NII Holdings*, 536 B.R. 61, 100 (Bankr. S.D.N.Y. 2015) citing *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) ("Iridium").

9.    Such reasonableness is also required under 11 U.S.C. § 1129(a)(4).

10.    Pursuant to Article 4, § 4.01(d), of the Amended Plan, the claimants in the Ayyadurai Claims and Terrill Claims (as defined in the Amended Plan, Art. 1) will received $750,000 and $500,000, respectively.  These settlements do not meet the first, second, third, and seventh *Iridium* factors, rendering them unreasonable, unfair, and inequitable.

11.    Dr. Shiva Ayyadurai asserted a claim, in Proof of Claim No. 268, for $35,000,000, which was objected to by Debtors on October 21, 2016.  (Doc. No. 372).  Debtors correctly objected on the basis of the claims arising from the 2012 articles being time-barred under the

Massachusetts statutes of limitations.  *See* Doc. No. 372 at p. 12.  The harm Dr. Ayyadurai alleges to have suffered, including the loss of his position at the Massachusetts Institute of Technology, arose from those articles, not the 2014 article commenting on his marriage to Fran Drescher. Further, with respect to the issue of the invention of e-mail, Dr. Ayyadurai was featured widely throughout the media and was a limited-purpose public figure, in addition to the notoriety from his then-forthcoming marriage to television and film star Fran Drescher.  As the claims he invented e-mail were factually contradicted by early internet pioneers, the libel claims could not survive the actual malice test.  There is no evidence that Gawker, rather than the articles cited by Gawker, were the cause of the loss of the faculty position, and the marriage to Ms. Drescher proceeded. With questionable liability and questionable damages, a settlement in the amount of $750,000 far exceeds its reasonable value.

12.     Ashley Terrill asserted a claim, in Proof of Claim No. 269, for $10,000,000, which was objected to by Debtors on October 31, 2016. (Doc. No. 399).  In her claim, she asserts Gawker falsely portrayed her as paranoid and fanciful.  Although Gawker may well be liable to Ms. Terrill, her damages are questionable and a settlement in the amount of $500,000 far exceeds its reasonable value.

13.     Notably, both the claims of Ms. Terrill and Dr. Ayyadurai were prosecuted by the same attorney, Charles Harder, who prevailed against Gawker on behalf of Terry Bollea a/k/a Hulk Hogan; unlike Mr. Bollea, who had a liquidated invasion of privacy claim, the other two claims sounded primarily in libel and are unliquidated.  Fear of Mr. Harder, rather than impartial analysis of the claims, appears to have motivated the Ayyadurai and Terrill settlements.

14.     Reviewing the *Iridium* factors, neither of those two settlements meet the range of reasonableness.

15.     As to the first factor, as Dr. Ayyadurai's claim had a minimal likelihood of success and neither had substantial damages arising from the alleged defamation, let alone offered evidence of damages, the estate benefits little as against the claimants' possibilities of success.

- 4 -

16.     As to the second factor, the nature of the litigation is no more complex or protracted than claims, such as Mr. Johnson & Got News, who have not settled.  Although Claimants object to the proposed estimation procedures, those procedures would resolve the Ayyadurai and Terrill claims as easily as any other libel claim.

17.     As to the third factor, these two settlements represent $1,250,000, with the remainder of the Gawker Media Claims Reserve being $3,750,000.  If the settlements were not approved, a full $5,000,000 would be available to the unsecured creditors, who would take on a *pro rata* basis; Dr. Ayyadurai and Ms. Terrill would be allocated their *pro rata* share, which is unlikely to amount to $1.25 million.  These claimants should not be compensated at the expense of the remaining unsecured creditor class and such settlements are, in effect, unfairly discriminatory.

18.     Finally,[2] as to the seventh factor, arms-length bargaining is not apparent where Attorney Harder negotiated them while the Bollea sword of Damocles was hanging over Gawker.  Mr. Bollea's claim was liquidated, unlike the Ayyadurai and Terrill claims, but Ayyadurai and Terrill had an unfair advantage of bloc negotiation.  All three creditors comprised the Official Committee of Unsecured Creditors; it is patently unfair for the Committee members to receive beneficial treatment at the expense of the remaining unsecured creditors.

B.      <u>The Third Party Releases and Injunctions are Improper</u>

19.     Under the Amended Plan, at Article 9, §§ 9.02, 9.04, & 9.07, claimants are permanently enjoined from commencing or continuing suits against employees and independent contractors of Debtors and all claims against them are deemed exculpated and released, except in the case of gross negligence or willful misconduct.

---

[2]    Although Claimants do not challenge the experience and knowledge of the Bankruptcy Court Judge, under the sixth factor, it must be observed that, as personal injury torts, the evaluation of the claims more properly belong in the District Court.

20.    Although Section 9.07 requires that the released employees and independent contractor vote for the plan and waive claims of indemnity against Debtors, Sections 9.02 & 9.04 have no such requirements for the injunction and exculpation to apply.

21.    As set forth in the proofs of claims of Claimants Charles C. Johnson and Got News, LLC, Claimants instituted litigation in California not only against Debtor Gawker Media, LLC, but also against its paid staff writers, J.K. Trotter and Greg Howard.[3]  *See, e.g.* Proof of Claim No. 54.

22.    The claims against Gawker Media also arise from the writings of Debtors' Kinja authors, being employees or independent contractors whose true identities are unknown.

23.    Thus, if the Amended Plan is confirmed, Claimants would be likely precluded from pursuing their claims against Trotter, Howard, and the Kinja authors.

24.    Non-debtor releases are only permissible in the Second Circuit where "truly unusual circumstances render the release terms important to success of the plan." *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 142-43 (2d Cir. 2005); *SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 960 F.2d 285, 293 (2d Cir. 1992) ("In bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan.")  Courts will only tolerate non-debtor releases, however, in "circumstances that may be characterized as unique." *In re Metromedi*a, 416 F.3d at 142. As non-debtor releases should be rare, courts have found that "the mere fact of financial contribution by a non-debtor cannot be enough to trigger the right to a *Metromedia/Drexel* release." *Cartalemi v. Karta Corp. (In re Karta Corp.)*, 342 B.R. 45, 55 (S.D.N.Y. 2006).

25.    Under *Metromedia*, the Bankruptcy Court may consider unique circumstances that include "whether the estate received substantial consideration; the enjoined claims were 'channeled' to a settlement fund rather than extinguished; the enjoined claims would indirectly

---

[3] Although Debtors have previously raised questions as to procedural concerns, Claimants intend to cure any alleged defect.

impact the debtor's reorganization 'by way of indemnity or contribution'; and the plan otherwise provided for the full payment of the enjoined claims.  Nondebtor releases may also be tolerated if the affected creditors consent."  *In re Metromedia*, 416 F.3d at 142 (citations omitted).

26.    No unique circumstances are present to warrant injunctive relief, exculpation, and third-party releases.

27.    First, the Estate receives nothing in exchange for the injunctive relief and exculpation set forth in Sections 9.02 & 9.04.  The injunction, therefore, plays no part, let alone the important part required by *Drexel*.

28.    Second, under Section 9.07, the Estate only receives votes for confirmation and a release of indemnity claim.  Whether voting for the plan confirmation is a benefit for the Estate is an exercise in circular reasoning; it is not a benefit if the plan is not otherwise subject to confirmation.  And, although the Second Circuit, in *Metromedia* recognized the impact of indemnity or contribution, it cited *Menard-Sanford v. Mabey (In re A.H. Robins Co.),* 880 F.2d 694, 701 (4th Cir. 1989) for this proposition.  *See* 416 F.3d at 142.  In *A.H. Robins,* the claimants were guaranteed payment in full for their claims; the only issue was "which of two funds will pay" the claims.  *See Menard-Sanford v. Mabey (In re A.H. Robins Co.*), 880 F.2d 694, 701-02 (4th Cir. 1989).  That issue is not present here; the unsecured creditors, including Claimants, are to be paid *pro rata*, rather than in full.

29.    Moreover, although Howard and Trotter both claim indemnity in Proof of Claim Nos. 171, 203, 239, 241, 249 and 252, he sets forth no basis under which Debtors are required to indemnify them.  No contractual indemnification provision is attached or referenced.  "A private employer, it is said, has a common-law right of indemnity against an employee whose negligence has made the employer liable."  *United States v. Gilman*, 347 U.S. 507, 508, 74 S. Ct. 695, 696 (1954).  The Howard and Trotter claims, in the absence of a contractual right, claim the exact opposite of what the common-law provides; thus, the Estate gets no benefit from the release of invalid indemnity claims.

30.     Further, the Kinja authors are not even known to have asserted indemnification claims against Debtors.

31.     The Estate has not otherwise received substantial contribution, there is no channeling to a settlement fund, claims are not being paid in full, and the creditors do not all consent.  There is nothing otherwise unique about the plan.  The injunction is not an important part of the plan and it can otherwise succeed.

### III.    <u>CONCLUSION</u>

Debtors have provided no good reason why the Ayyadurai and Terrill claims should be settled for 25% of what would otherwise belong to the claims reserve.  As a result, the Amended Plan is unreasonable, unfair, and inequitable.  Further, there are no unique circumstances to warrant the third-party release and injunction, especially where the Estate obtains no actual benefit and the claims are not fully funded.

WHEREFORE Claimants respectfully request this Honorable Court deny confirmation of the Amended Plan.

Dated: December 5, 2016.                        Respectfully Submitted,

*/s/ Jay M. Wolman*
Jay M. Wolman (JW0600)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tele:   702-420-2001
Fax:    305-437-7662
Email:  ecf@randazza.com

*Attorney for Charles C. Johnson*
*and Got News LLC*