**COHEN & GRESSER LLP**
800 Third Avenue
New York, New York 10022
Telephone: (212) 957-7600
Facsimile: (212) 957-4514
Daniel H. Tabak
Mark Spatz

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
In re:                                                      :   Chapter 11
                                                            :
Gawker Media LLC et al.,                                    :
                                                            :   Case No. 16-11700 (SMB)
                            Debtor.                         :
                                                            :
                                                            :
------------------------------------------------------------x

**RESPONSE OF TERRY G. BOLLEA TO OBJECTION OF
MITCHELL WILLIAMS TO CONFIRMATION OF
AMENDED JOINT CHAPTER 11 PLAN
OF LIQUIDATION FOR GAWKER MEDIA GROUP, INC.,
GAWKER MEDIA LLC, AND GAWKER HUNGARY KFT. [Dkt. 427]**

Terry G. Bollea, an unsecured creditor, responds to the Objection of Mitchell Williams to Confirmation of Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc. ("GMGI"), Gawker Media LLC ("Gawker Media"), and Gawker Hungary Kft. (together with Gawker Media and GMGI, the "Debtors") (the "Plan") [Dkt. 427] (the "Williams Objection" or "Objection").

**PRELIMINARY STATEMENT**

1.      No objector has directly challenged the settlement of judgment creditor Terry G. Bollea's claims against Debtors. That settlement, together with the settlements of claims brought by Shiva Ayyadurai and Ashley Terrill and the resolution of inter-Debtor allocation and other

issues, have conferred significant benefits on these bankruptcy estates: Debtors (and their other creditors and equity-holders) will see millions of dollars in savings through tax optimization and the avoidance of litigation fees, and Debtors will be able to make distributions in 2016 – if Debtors' proposed Plan is confirmed.

2. While no objector challenges the fairness and reasonableness of Mr. Bollea's settlement, only one creditor, Mitchell Williams, even hints at any concern with Mr. Bollea's settlement. Mr. Williams makes two contentions about Mr. Bollea's settlement, each of which betrays a misunderstanding of both the history behind these bankruptcy cases and the terms of the Plan.

3. First, Mr. Williams complains that the Bollea, Ayyadurai and Terrill claims are "legally indistinguishable" from Mr. Williams's claim but were put in a different class to ensure that an impaired class would vote for the proposed plan. Mr. Williams is wrong on both counts – his claim is readily distinguishable because judgment has already been rendered against him and his claims against Gawker Media were dismissed with prejudice in New Jersey state court; regardless, his claim is included in the same class as the other claims.

4. Second, Mr. Williams suggests there may be something untoward in Debtors' assignment of "valuable" content to Mr. Bollea as part of the settlement. But Mr. Williams fails to acknowledge that this "valuable" content is almost entirely comprised of illegally-recorded, sexually-explicit videos of Mr. Bollea. And despite the events of this case, he also fails to recognize that Gawker Media's posting of some of this content resulted in the very judgment that precipitated these bankruptcy cases and caused the assets associated with Gawker.com to be considered so "toxic" that no prospective purchaser was interested in them. Indeed, Gawker Media is barred from using large portions of the content as a result of a permanent injunction

included in the judgment against it and by a protective order in the underlying action. As with any other hazardous material, this content is a liability for Debtors rather than an asset, and it must be disposed of properly.

5. In sum, there has been no direct objection to Mr. Bollea's settlement with Debtors, and the only concerns about the settlement are baseless. Mr. Bollea respectfully requests that the Court approve his settlement with Debtors and the Plan that is built on it.

## BACKGROUND

**The Posting of Illegally-Recorded, Sexually-Explicit Content Results in a $140.1 Million Judgment for Mr. Bollea**

6. In October 2012, Gawker Media, Nick Denton and A.J. Daulerio (the "Judgment Debtors") posted on Gawker.com secretly and illegally-recorded video footage of Mr. Bollea engaging in sexual activity in a private bedroom (the "Gawker Video").

7. In order to protect his privacy, Mr. Bollea sued the Judgment Debtors and a number of other defendants in *Bollea v. Gawker Media, LLC, et al.*, No. 12012447-CI-011 (Fla. 6th Jud. Cir., Pinellas Cty.) (the "Bollea I Litigation"). Mr. Bollea's claims against the Judgment Debtors proceeded to trial on five claims: (1) publication of private facts; (2) invasion of privacy based on intrusion; (3) violation of Florida's common law right of publicity; (4) intentional infliction of emotional distress; and (5) violation of Florida's Security of Communications Act.

8. On March 18, 2016, the jury in the Bollea I Litigation returned a verdict for Mr. Bollea on all counts and awarded $115 million in compensatory damages against the Judgment Debtors. The jury also found that each of the Judgment Debtors acted with the "specific intent to harm [Mr. Bollea] when they posted the video on the Internet," and thus punitive damages against each of them were warranted. On March 21, 2016, the jury awarded Mr. Bollea an

additional $25.1 million in punitive damages divided as follows: $15 million against Debtor, $10 million against Mr. Denton, and $100,000 against Mr. Daulerio.

9. On June 7, 2016, the jury's verdict in the Bollea I Litigation was reduced to a Final Judgment, which include a Permanent Injunction preventing the Judgment Debtors from making certain use of the videos in their possession. Ex. A (Permanent Injunction).

10. As a result of the Final Judgment in Bollea I, on June 10, 2016, Gawker Media filed a voluntary petition for relief under Chapter 11. On June 12, 2016, GMGI and Gawker Hungary filed voluntary petitions for relief under Chapter 11.

**The Disclosure of Additional Illegally-Recorded, Sexually-Explicit Content Results in the Filing of Bollea II**

11. In July and August 2015, while the Bollea I Litigation was pending, *The National Enquirer* and *Radar Online* published articles disclosing the contents of recordings of Mr. Bollea, which they reported were part of sealed discovery in the Bollea I Litigation. While the Judgment Debtors dispute that they provided the materials underlying *The National Enquirer* and *Radar Online* articles, there is no dispute that it would be a violation of a protective order in the Bollea I Litigation if they did so.

12. On May 2, 2016, Mr. Bollea filed a new action against several defendants, including Gawker Media and others, in the Sixth Judicial Circuit in and for Pinellas County, Florida, Case No. 16-002861-CI (the "Bollea II Litigation"). In the Bollea II Litigation, Mr. Bollea asserts claims against Gawker Media for intentional interference with contractual relations and advantageous business relationships and intentional infliction of emotional distress. The Bollea II Litigation is currently stayed.

**The Debtors Cannot Find a Buyer for Assets Rendered Toxic by the Bollea-Related Content**

13. On August 22, 2016, this Court entered an Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (II) Approving and Authorizing the Debtors' Entry Into the Asset Purchase Agreement and (III) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases (the "Sale Order"). Dkt. No. 214. Pursuant to the Sale Order, Debtors sold substantially all of their assets to Unimoda, LLC ("Unimoda") for $135 million.

14. Unimoda, however, decided not to purchase Debtors' flagship site, Gawker.com, which has subsequently stopped publishing. *See* Claire Atkinson & Emily Saul, *Gossip Site Gawker Will Shut Down Next Week*, NEW YORK POST (Aug. 18, 2016, 1:10 PM), http://nypost.com/2016/08/18/gossip-site-gawker-will-shut-down-next-week. Regarding Debtors' inability to find a purchaser for Gawker.com, Mr. Denton explained, "[d]esirable though the other properties are, we have not been able to find a single media company or investor willing also to take on Gawker.com." *Id*. Indeed, many media sources have said that the sale of Gawker.com was not possible because it is considered "toxic" as a result of the Bollea litigation.[1]

**Mr. Bollea's Proofs of Claim Include the Bollea I Litigation, the Bollea II Litigation, and Messrs. Denton's and Daulerio's Indemnification Claims**

15. On August 17, 2016, Mr. Bollea obtained an order in proceedings supplementary in the Bollea I litigation transferring certain of Mr. Daulerio's assets to Mr. Bollea. Ex. B (Order

---

[1] *See, e.g.*, David Folkenflik, *On the Demise of Gawker.com: Unsparing, Satiric and Brutal*, THE TWO-WAY: BREAKING NEWS FROM NPR (Aug. 19, 2016, 4:49 PM), http://www.npr.org/sections/thetwo-way/2016/08/19/490657591/on-the-demise-of-gawker-com-unsparing-satiric-and-brutal ("Univision will instead shut down Gawker.com, a site whose brand is too toxic to touch."); Alyssa Newcomb, *Gawker Will Shut Down Next Week*, NBC NEWS (Aug. 18, 2016, 1:09 PM), http://www.nbcnews.com/tech/tech-news/gawker-will-shut-down-next- week-n633681 ("It was widely believed that any winning bidder would shutter Gawker.com, considered a toxic asset.").

on Proceedings Supplementary). Among those assets were rights of indemnity that Mr. Daulerio claims to have for Gawker Media and GMGI to pay all or part of Mr. Daulerio's share of the Final Judgment.

16. On September 26, 2016, Mr. Bollea timely filed proofs of claim for $140.1 million against Gawker Media, LLC and GMGI and for $130 million against Gawker Hungary resulting from his judgment in the Bollea I Litigation. Claim Nos. 49, 51, 83. The proofs of claim included claims based on the indemnification rights of Messrs. Denton and Daulerio. *Id.* Mr. Bollea also filed additional proofs of claim against Debtors for undetermined amounts relating to Bollea II. Claim Nos. 52, 67, 87, 191. There has been no objection to Mr. Bollea's proofs of claim. In addition, Messrs. Denton and Daulerio filed proofs of claim against Debtors that sought indemnification of the punitive damages assessed against them. On November 28, 2016, Debtors filed an objection to Mr. Daulerio's claims that are based on his indemnity rights.

**Mr. Bollea's Settlement with the Debtors Is Integrated into a Plan that Saves Millions of Dollars and Is Designed to Provide Full Recovery for All Creditors**

17. Mr. Bollea believes that an appeal would likely sustain the finding of liability in the Bollea I Litigation as well as damages awards that exceed Debtors' assets available for distribution under a plan. There is no genuine dispute regarding Gawker Media's posting of a sexually-explicit video of Mr. Bollea without his consent, so the primary (if not exclusive) basis for Gawker Media to contest liability would be its contention that the First Amendment protects Gawker Media's publication of the video. Neither the testimony of Gawker Media's witnesses at trial nor the substantial body of case law rejecting First Amendment protection for the publication of sexually-explicit videos support Gawker Media's legal argument. As to damages, Mr. Bollea believes the award would be sustained because (i) the economic damages award was supported by the only expert testimony offered at trial, (ii) the non-economic damage award is in

6

line with similar cases, and (iii) the punitive damage awards are not excessive because they were a fraction of the compensatory damage award and were tailored by the jury to the net worth of each defendant.

19. While Mr. Bollea believes he would have been successful on appeal, he chose to settle with Debtors because the alternative to settlement – years of additional litigation – would have increased the litigation costs on both sides while delaying any recovery for Mr. Bollea for many years. Indeed, continued litigation would likely reduce the maximum recovery Mr. Bollea could obtain due to the squandered tax benefits and significant litigation costs Debtors would incur on, among other issues, inter-Debtor allocation and claims disputes.

19. On November 2, 2016, Debtors filed a Disclosure Statement for The Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft. Dkt. No. 403. The disclosure statement included a description of Mr. Bollea's settlement, including that he would be paid $31 million in cash from Gawker Media based on an Allowed Gawker Media General Unsecured Claim amount of $115,000,000 and that he would receive a "Pro Rata share of Distributions from the Gawker Media Contingent Proceeds Creditor Account" based on an "Allowed Gawker Media General Unsecured Claim amount of $115,000,000" (the "Bollea Settlement").

20. On November 30, 2016, Debtors filed a Plan Supplement Pursuant to the Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media, LLC, and Gawker Hungary, Kft., which attached a Settlement Agreement between Mr. Bollea and Debtors as its Exhibit C. Dkt. No. 516 at 15. In addition to the financial terms identified in the November 2, 2016 disclosure statement, the Bollea Settlement also requires that Debtors deliver to Mr. Bollea any copies, portions, or excerpts of the Gawker Video as well as a 30-

7

minute video delivered to Mr. Daulerio at Gawker in September 2012 and any related transcripts or recordings in Debtors' possession, custody, or control (the "Content"), *id*. at 24, and that Debtors transfer to Mr. Bollea any rights, title, and interest in the Content, including any works of authorship, ownership rights, copyrights, and other intellectual property rights. *Id.* at 25.

21. Tellingly, no creditor or other party in interest has objected to the settlement as a whole or the $31 million cash payment Mr. Bollea will receive.

**ARGUMENT**

22. Mr. Williams makes a number of arguments in his Objection that appear to be based on serious misunderstandings of the Plan and its terms. Instead of burdening the Court with a voluminous submission identifying all those misunderstandings, Mr. Bollea is submitting this response to address the Objection as it relates to the Bollea Settlement.

**I.   MR. WILLIAMS'S ARGUMENTS ABOUT THE CLASSIFICATION OF HIS CLAIM ARE OFF BASE**

23. Mr. Williams's primary concern as it relates to Mr. Bollea is that Mr. Williams is upset because he believes he has been placed in Class 2E (the Gawker Media General Unsecured Convenience Class) rather than Class 2C (the Gawker Media General Unsecured Claims Class). According to Mr. Williams, this is unfair because the Bollea, Terrill and Ayyadurai "claims are legally indistinguishable from" Mr. Williams's claim. Williams Objection at 2. Both the premise and conclusion of Mr. Williams's argument are mistaken.

24. As an initial matter, it is hard to understand how Mr. Williams can believe that his claims are "legally indistinguishable" from the Bollea, Terrill and Ayyadurai claims. Mr. Bollea holds a judgment for $140.1 million <u>in his favor</u>. Mr. Williams, on the other hand, holds an order granting summary judgment <u>against him</u> and dismissing his claims against Gawker Media. The Ayyadurai and Terrill litigations had not proceeded to any judgment at all. In addition, all

8

the non-Debtor defendants in the Bollea, Terrill and Ayyadurai cases filed indemnification claims against Debtors. Mr. Williams, on the other hand, has another defendant from whom he can recover without impacting Debtors. And, while Mr. Williams views it as a vice rather than virtue, the other three creditors he singles out have settled their claims with Debtors, which has helped Debtors resolve inter-Debtor claim and allocation issues and resulted in significant savings to Debtors' estates. As the Court explained, the settling tort creditors could be classified separately because they "have settlements. They have different rights." Ex. C (Transcript of December 1, 2016 Hearing at 14:8-10).

25. In any event, Mr. Williams is simply mistaken in his belief that his claim has been included in Class 2E rather than Class 2C. "Class 2E consists of holders of Gawker Media General Unsecured Claims and Gawker Media Punitive Damage Claims that elected to vote to accept the Plan and have their Claims against all Debtors treated as [Convenience Claims]." Dkt. No. 427 at 49. In order to become a member of Class 2E, a creditor must have affirmatively elected to join the class by signing and returning the Election Form to the Voting Agent by December 5, 2016 at 5:00 P.M. *Id*. at 257 (capitalized terms are defined in the referenced Election Form); *see also id.* at 19 ("Each holder of a General Unsecured Claim against Gawker Media or GMGI *will have an option on its Ballot to elect to participate* in the Gawker Media Convenience Class or the GMGI Convenience Class, as applicable." (emphasis added)). Mr. Williams apparently has not done so, and his claim therefore remains in Class 2C.[2]

---

[2] Based on his erroneous premise, Mr. Williams pitches the elaborate tale that the Bollea, Terrill and Ayyadurai claims were separately classified to create an impaired class of creditors that would vote in favor of the Plan, with Mr. Bollea holding an "inflated Allowed Claim" of $115 million impaired only by the exclusion of Post-Petition interest. Williams Objection at 3. Mr. Williams ignores that Mr. Bollea is a judgment creditor against Gawker Media for $130 million and also asserted claims based on the potential indemnification rights of Messers. Denton and Daulerio. Indeed, Mr. Bollea now owns Mr. Daulerio's indemnification rights, and while both of them have filed proofs of claim based on those rights, there is an objection only to Mr. Daulerio's claim. *See supra*, ¶ 16.

9

## II. MR. WILLIAMS'S OBJECTIONS TO THE TRANSFER OF CONTENT TO MR. BOLLEA ARE MERITLESS BECAUSE THE CONTENT HAS PROVEN ITSELF TO BE A LIABILITY, NOT AN ASSET, TO THE ESTATES

26. Mr. Williams also complains that Gawker Media's general unsecured creditors "are not receiving other valuable consideration, such as the Content" because the Content has been assigned to Mr. Bollea as part of the Bollea Settlement. Mr. Williams's criticism ignores the fundamental reason for these bankruptcy cases: Gawker's publication on Gawker.com of some of that Content led to a $140.1 million verdict, which was the precipitating event for this Bankruptcy, and has made Gawker.com so toxic that even the purchaser of the rest of Debtors' assets, Unimoda, chose to leave Gawker.com behind. Moreover, Debtors could not even use most of the Content they propose to transfer due to a protective order and the Permanent Injunction that is part of the Final Judgment in the Bollea I Litigation. In short, the Content is a liability, not an asset, and Debtors' ability to sell Gawker.com and related assets will increase once this toxic Content has been excised.[3]

---

[3] As Mr. Williams tacitly acknowledges in his Objection, the Bollea Settlement itself reflects that the Content has no value. *See* Williams Objection ¶ 11. Mr. Bollea's allowed claim is $115 million based upon $31 million in cash and a maximum additional recovery of $84 million from the Gawker Media Contingent Proceeds Creditor Account. *See* Dkt. No. 516 at 21, 24. The Content is assigned no value because it has no value.

10

## CONCLUSION

27. Mr. Bollea respectfully requests that the Court confirm the Plan.

Dated: December 9, 2016
New York, New York

        Respectfully submitted

        ___/s/Daniel H. Tabak_____
        Daniel H. Tabak
        Mark Spatz
        COHEN & GRESSER LLP
        800 Third Avenue, 21st Floor
        New York, New York 10003
        Tel:  (212) 957-7600
        dtabak@cohengresser.com
        mspatz@cohengresser.com

        Eric B. Fisher
        Jessica L. Jimenez
        BINDER & SCHWARTZ LLP
        366 Madison Avenue, Sixth Floor
        New York, New York 10017
        Tel:  (212) 933-4551
        efisher@binderschwartz.com
        jjimenez@binderschwartz.com

        Shane B. Vogt (admitted *pro hac vice*)
        BAJO CUVA COHEN TURKEL
        100 N. Tampa Street, Suite 1900
        Tampa, Florida 33602
        Tel:  (813) 868-6650
        shane.vogt@bajocuva.com

        *Attorneys for Terry G. Bollea*