# Exhibit A

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA

TERRY GENE BOLLEA professionally
known as HULK HOGAN,

        Plaintiff,

vs.

GAWKER MEDIA, LLC, NICK DENTON,
and A.J. DAULERIO,

        Defendants.
_____/

Case No. 12-012447CI-11

## PERMANENT INJUNCTION

**THIS CAUSE** came before the Court on Plaintiff, Terry Gene Bollea's, Motion for Entry of Final Judgment and Permanent Injunction filed on May 25, 2016, in the above-styled action. Mr. Bollea's claim for permanent injunctive relief was tried before the Court concurrently with the jury trial held March 1 through 21, 2016. Upon consideration of all relevant filings, the law, the evidence presented at trial, and the jury's March 18, 2016 and March 21, 2016 verdicts, and being otherwise fully advised in the premises, the Court finds as follows:

### Background

1.    Mr. Bollea sued Defendants, Gawker Media, LLC ("Gawker"), Nick Denton, and A.J. Daulerio (collectively, "Gawker Defendants"), for monetary and injunctive relief after they posted on the Internet a one minute forty-one second (1:41) video of Mr. Bollea engaged in consensual sexual activity and private conversations in a private bedroom (the "Gawker Video") and a written commentary about the Gawker Video.

2.    After a three-week trial in this invasion of privacy case, the jury found in favor of Mr. Bollea and against all Gawker Defendants on all five counts of Plaintiff's First Amended Complaint. The jury returned a verdict awarding $115 million in compensatory damages, jointly and severally, against all Gawker Defendants, as well as punitive damages in the amount of $15 million against Gawker, $10 million against Mr. Denton, and $100,000 against Mr. Daulerio.

3. The jury found that Gawker Defendants' actions in posting the Gawker Video invaded Mr. Bollea's privacy, intentionally caused him severe emotional distress, and violated Florida's Security of Communications Act. The jury expressly found that Mr. Denton personally participated in the posting of the Gawker Video, and found by clear and convincing evidence that all of the Gawker Defendants acted with malice. The jury also found against Gawker Defendants on their First Amendment and Good Faith affirmative defenses.

4. The Court considered the factual record in full in reviewing the jury's determination that the Gawker Video was not a matter of legitimate public concern. Based upon the weight of the evidence presented at trial, this Court agrees with the jury's finding that the Gawker Video was not a matter of legitimate public concern, and was therefore not protected under the First Amendment.

5. Now that the trial has concluded, Mr. Bollea seeks a permanent, prohibitory injunction against Gawker Defendants' public disclosure, publication, exhibition, posting or broadcasting of any nudity or sexual activity, whether video or audio, contained in the Gawker Video, which was an edited excerpt from the full length 30-minute video that Gawker possessed (the "30-Minute Video"), or contained in the 30-Minute Video.

6. For the reasons set forth herein, Mr. Bollea is entitled to relief so the Court grants Mr. Bollea's request for this narrowly tailored permanent injunctive relief.

7. Before trial, this Court granted a temporary injunction in Mr. Bollea's favor regarding the materials at issue here. Florida's Second District Court of Appeal reversed and held that the pretrial temporary injunction was an "unconstitutional prior restraint under the First Amendment." But that decision, like an even earlier decision made by a federal district court, had no preclusive effect and did not present any insuperable obstacle to Mr. Bollea prevailing on the merits after a full trial. *Gawker Media,* 129 So. 3d 1196, 1204 (Fla. 2d DCA 2014); *P.M. Realty & Investments, Inc. v. City of Tampa*, 863 So. 2d 1269 (Fla. 2d DCA 2004); *Bellair v. City of Treasure Island*, 611 So. 2d 1285 (Fla. 2d DCA 1992). The decisions of Florida's Second District Court and the federal district court applied the strict prior restraint standard, which is inapplicable to a motion for injunction after a full trial on the merits. *See Advanced Training Systems v. Caswell Equipment Co.*, 352 N.W.2d 1, 11 (Minn. 1984); *Balboa Island Village Inn v. Lemen*, 156 P.3d 339, 349 (Cal. 2007). Further, after the jury was presented with the extensive trial evidence, it found that the Gawker Video was not a matter of public concern

entitled to protection under the First Amendment. Accordingly, the above preliminary, pretrial rulings are not preclusive and this Court retains the full authority to determine Mr. Bollea's claim for permanent injunctive relief on the merits. *See David Vincent, Inc. v. Broward Cnty, Florida*, 200 F.3d 1325 (11th Cir. 2000) (applying Florida law and holding that the state court's denial of a temporary injunction does not preclude plaintiffs from later pursuing a permanent injunction).

### Standards Governing Permanent Injunctive Relief

8. Permanent injunctive relief may be properly granted only when the plaintiff establishes three elements: (1) the act or conduct to be enjoined violates a clear legal right; (2) there is no adequate remedy at law; and (3) injunctive relief is necessary to prevent an irreparable injury. *Legakis v. Loumpos*, 40 So. 3d 901, 903 (Fla. 2d DCA 2010); *Hollywood Towers Condo. Ass'n, Inc. v. Hampton*, 40 So. 3d 784, 786 (Fla. 4th DCA 2010). Public interest must also be weighed. *Shaw v. Tampa Elec. Co.*, 949 So. 2d 1066, 1069 (Fla. 2d DCA 2007). The equities must also be balanced, including whether the potential harm to the defending party outweighs the benefit to the plaintiff. *Liza Danielle, Inc. v. Jamko, Inc.*, 408 So. 2d 735, 740 (Fla. 3d DCA 1982).

9. The Court must consider the totality of circumstances and determine whether injunctive relief is necessary to achieve justice between the parties. *Davis v. Joyner*, 409 So. 2d 1193, 1195 (Fla. 4th DCA 1982). The appropriateness of an injunction against a tort "depends upon a comparative appraisal of all of the factors in the case, including the following primary factors: (a) the nature of the interest to be protected; (b) the relative adequacy to the plaintiff of injunction and of other remedies; (c) any unreasonable delay by the plaintiff in bringing suit; (d) any related misconduct on the part of a plaintiff; (e) the relative hardship likely to result to defendant if an injunction is granted and to plaintiff if it is denied; (f) the interests of third persons and of the public; and (g) the practicability of framing and enforcing the order or judgment." *Id*.

### Findings of Fact

10. Mr. Bollea is a former professional wrestler known as "Hulk Hogan."

11. Bubba Clem, a friend of Mr. Bollea, installed a concealed security camera in his bedroom at his home. It was small, nondescript, and appeared to be a motion detector. It did not signal whether it was or was not recording. Instead, it had a small red light that flashed

continuously, even if the camera was not recording. The bedroom camera was installed high in a corner, above cabinets in the bedroom. It was positioned to record the Clems' bed, and fed directly into a dedicated DVD recorder. The bedroom camera recorded only if someone pressed the record button.

12. In 2007, Mr. Bollea went to Mr. Clem's house where he engaged in consensual sexual activity and conversation with Heather Clem, Mr. Clem's then-wife, with Mr. Clem's knowledge and consent. These activities and conversation were recorded and became the subject for the Gawker Video.

13. Mr. Bollea presented evidence that he did not know that he was being recorded.

14. After hearing the evidence at trial, the jury found that Gawker Defendants' knew or had reason to know that Mr. Bollea was recorded without his knowledge or consent.

15. Gawker.com is an Internet website.

16. Mr. Daulerio was the editor in chief of Gawker.com from January 2012 until February 2013. He worked at a different Gawker-owned website before that time period. Consistent with Mr. Denton's editorial philosophy, Mr. Daulerio believes in publishing anything he believes to be "true and interesting."

17. In March 2012, TMZ reported that there may be a "Hulk Hogan sex tape." Mr. Bollea and his attorney, David Houston, conducted an interview with TMZ. During that interview, Mr. Bollea discussed the alleged tape and said that he never consented to being filmed in any such tape, never consented to its release, and would seek to prosecute anyone who distributed such a tape. TMZ wrote an article about the existence of the tape, but did not post any video footage.

18. In April 2012, a website called "thedirty.com" published photographs that were allegedly still frames from a tape of Mr. Bollea having sexual relations. The photographs did not contain explicit content and were removed after Mr. Houston contacted the website and gained its assurances that it would not publish any video footage of Mr. Bollea engaged in sexual relations.

19. Thereafter, Gawker received the 30-Minute Video in the mail. Mr. Daulerio then watched the 30-Minute Video.

20. Mr. Daulario posted the Gawker Video without contacting any of the participants in the Video. He further testified that he still would have posted the Gawker Video even if he had been absolutely certain that Mr. Bollea had been secretly recorded without his permission.

21. After hearing the evidence at trial, the jury found that Gawker Defendants knew or had reason to know that Mr. Bollea was recorded without his knowledge or consent.

22. Mr. Daulerio edited the 30-Minute Video into the sexually explicit Gawker Video excerpt, and, on October 4, 2012, posted the Gawker Video with subtitles and a graphic narrative describing the Gawker Video on Gawker.com under the headline "Even for a Minute, Watching Hulk Hogan Have Sex in a Canopy Bed is Not Safe For Work but Watch it Anyway."

23. The accompanying narrative written by Mr. Daulerio said that "Because the internet has made it easier for all of us to be shameless voyeurs and deviants, we love to watch famous people have sex, because it's something the public is not supposed to see…."

24. After hearing the evidence at trial, the jury found that Mr. Bollea had a reasonable expectation of privacy in the bedroom, and Gawker Defendants' posting of the Gawker Video was a wrongful intrusion.

25. According to Gawker Defendants' expert, Peter Horan, Gawker's business is driven by spikes in website traffic. When Gawker generates traffic, it generates advertising revenue and increases the value of the Gawker brand.

26. Mr. Denton testified that his business success and reputation are measured by audience growth. He also testified that invasion of privacy can have "incredibly positive effects on society" and he believes in total information transparency.

27. The Gawker Video generated traffic to Gawker.com in 2012. From its posting on October 4, 2012 through June 30, 2013, the post received over 8.6 million page views and over 5.3 million unique page views. By July 2013, the Gawker Video had been viewed 2.5 million times on Gawker.com.

28. In the year after the Gawker Video was posted, Gawker's audience increased by 38 percent. During that same period, Gawker's revenue increased by 30 percent.

29. While the Gawker Video webpage itself carried no advertising, visitors who clicked on links to other Gawker stories and websites that were found on that webpage saw ads and generated revenue for Gawker. The more people who viewed pages with ads, the more money Gawker made, even if the visitors did not actually click on the ads.

30. The evidence at trial and jury verdict show that Mr. Bollea did not authorize the use of his name or likeness on Gawker's website for a commercial or advertising purpose.

31. During his testimony, Mr. Daulerio indicated that that the purpose of the post was not to try to disprove anything Mr. Bollea had previously said in public.

32. Mr. Daulerio's narrative makes no mention of Mr. Bollea ever writing or talking about his sex life in a public forum.

33. Mr. Daulerio testified that he knew of no such statements by Mr. Bollea when he posted the Gawker Video.

34. Mr. Daulerio tesitfied that neither Mr. Bollea's penis nor sexual positions were newsworthy.

35. Mr. Daulerio testified that the post had nothing to do with the biographies written about Mr. Bollea and his ex-wife.

36. Mr. Daulerio testified that his only purpose in posting the Gawker Video was to show the public its contents.

37. However, after hearing the evidence at trial, the jury found that the Gawker Video was not a matter of legitimate public concern.

38. After hearing the evidence at trial, the jury found that by posting the Gawker Video, the Gawker Defendants publicly disclosed private facts about Mr. Bollea that a reasonable person would find highly offensive.

39. After hearing the evidence at trial, the jury found that the Gawker Video was posted in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.

40. After hearing the evidence at trial, the jury found that posting of the Gawker Video was extreme and outrageous to a person of ordinary sensibilities.

41. Thus, the Gawker Video was a morbid and sensational prying into Mr. Bollea's private life for its own sake. A reasonable member of the pubic, with decent standards, would have no concern in the explicit content of the Gawker Video.

## Conclusions of Law

42. Publication of the explicit content of the Gawker Video and/or the 30-Minute Video would violate a clear legal right and cause irreparable injury for which Mr. Bollea has no adequate remedy at law. Consideration of the public interest favors injunctive relief. Injunctive

relief is therefore required to prevent that violation and harm, and to protect the public interest. Moreover, balancing the equities demonstrates that imposing a permanent injunction will inflict little, if any, potential harm on Gawker Defendants, and certainly no harm that could possibly outweigh the benefit to Mr. Bollea.

43. The public interest is served by prohibiting any further use or disclosure of the explicit content of the Gawker Video or 30-Minute Video. The public has no legitimate interest in watching or hearing explicit video footage of Mr. Bollea engaged in sexual activity.

44. Mr. Bollea established by clear and convincing evidence that Gawker Defendants maliciously engaged in intentional misconduct, including: (1) publicly disclosing private facts regarding Mr. Bollea; (2) intruding on Mr. Bollea's seclusion; (3) infringing on Mr. Bollea's right of publicity under Florida law; (4) intentionally inflicting emotional distress on Mr. Bollea; and (5) violating the Florida Security of Communications Act, Section 934.03, Florida Statutes.

45. Gawker Defendants' posting of the Gawker Video was the type of "morbid and sensational prying into private lives for its own sake, with which a reasonable member of the public, with decent standards, would say that he had no concern" described in *Toffoloni v. LFP Publ'g Group, LLC*, as lacking constitutional protection. 572 F.3d 1201, 1211 (11th Cir. 2009).

46. Regardless of Mr. Bollea's status as a celebrity, the nature of the character he portrays, and any public statements he made about his personal and sex life, the facts and circumstances of this case do not legally justify or authorize Gawker Defendants' posting explicit video footage of Mr. Bollea without his consent, derived from an illegally recorded video of Mr. Bollea naked and engaged in sexual activity in a private bedroom. Consequently, based upon the findings set forth herein, and as a matter of law, Gawker Defendants' publication of the Gawker Video does not constitute protected speech. *Toffoloni*, 572 F.3d at 1211.

47. The fact that people, even celebrities, talk about their sex lives or make private recordings of themselves naked or having sex in the privacy of a bedroom, does not give the public the right to watch that person naked or having sex without that person's consent. These are materials that a reasonable member of the public, with decent standards, is not supposed to see and has no legitimate justification or right to see.

48. Mr. Bollea demonstrated through competent, substantial evidence the violation of several clear legal rights—he has proven that Gawker Defendants violated his privacy rights and right of publicity, intentionally inflicted emotional distress upon him, and violated the Florida Security of Communications Act.

49. Although in most cases reliance must rest upon the judgment of those who decide what to publish or broadcast, those who exercised the editorial discretion in this case admitted that the Gawker Video was not posted to address any matter of legitimate public concern. Accordingly, even if deference to editorial discretion were required here, the publishers conceded that the explicit content of the Gawker Video was an exploitation of public curiosity where no legitimate public interest exists.

50. Mr. Bollea will suffer irreparable harm unless a permanent injunction is entered to prohibit further public dissemination of the explicit content of the Gawker Video and the 30-Minute Video. Such irreparable harm includes further invasions of Mr. Bollea's privacy and infliction of emotional distress.

51. There is no adequate remedy at law for Mr. Bollea. The publication of the explicit contents of Gawker Video or the 30-Minute Video would constitute an invasion of Mr. Bollea's privacy and violation of Florida law accompanied by extensive harm which an award of monetary damages is insufficient to address.

52. While the jury's award of compensatory damages represents an attempt to redress the harm and injuries Mr. Bollea suffered in the past as a result of the posting of the Gawker Video, several factors require that an injunction issue to prohibit any further distribution of explicit audio or visual footage of Mr. Bollea engaged in sexual activity in a private bedroom. First, while Gawker Defendants are not currently making the Gawker Video or 30-Minute Video available, there is no court order currently in place that prohibits them from doing so. Second, Gawker Defendants continue to possess additional footage of Mr. Bollea, including the full 30-Minute Video that they received, the contents of which have never been made public. Third, material posted on the Internet is captured or saved and can be subsequently re-posted by others.

53. Based upon the factual findings contained herein, the totality of circumstances demonstrate that injunctive relief is necessary to achieve justice between the parties. *Davis*, 409 So. 2d at 1195.

Accordingly, it is

**ORDERED AND ADJUDGED** that

1. Gawker Defendants are hereby enjoined from publicly posting, publishing, exhibiting, broadcasting, or disclosing any nudity or sexual activity, whether video or audio, contained in the Gawker Video or the 30-Minute.

2. This Court reserves jurisdiction to enforce, modify, or supplement this Permanent Injunction, and to issue additional relief, including, but not limited to, an order requiring that Gawker Defendants deliver all copies of the Gawker Video or the 30-Minute Video, and any other excerpts thereof, to Mr. Bollea and/or his counsel, pending resolution of any appellate proceedings in this case.

**ORDERED** in Pinellas County, Florida, on _____, 2016.

_____
Pamela A.M. Campbell
Circuit Judge

> ORIGINAL SIGNED
> Circuit Court
> Pinellas County, Florida
>
> JUNE 7, 2016
>
> Pamela A.M. Campbell
> Circuit Judge

Copies to: Attached Service List

# **BOLLEA v. GAWKER**
Case No: 12 012447 CI 11

### **Service List**

| | |
|---|---|
| Alia L. Smith, Esquire | asmith@lskslaw.com |
| Allison M. Steele, Esquire | asteele@rahdertlaw.com |
| Barry A. Cohen, Esquire | bcohen@tampalawfirm.com |
| Charles D. Tobin, Esquire | charles.tobin@hklaw.com |
| Charles J. Harder, Esquire | charder@hmafirm.com |
| David R. Houston, Esquire | dhouston@houstonatlaw.com |
| Douglas E. Mirell, Esquire | dmirell@hmafirm.com |
| Gregg D. Thomas, Esquire | gthomas@tlolawfirm.com |
| Jennifer J. McGrath, Esquire | jmcgrath@hmafirm.com |
| Kenneth G. Turkel, Esquire | kturkel@bajocuva.com |
| Michael Berry, Esquire | mberry@lskslaw.com |
| Michael D. Sullivan, Esquire | msullivan@lskslaw.com |
| Michael W. Gaines, Esquire | mgaines@tampalawfirm.com |
| Paul J. Safier, Esquire | psafier@lskslaw.com |
| Rachel E. Fugate, Esquire | rfugate@tlolawfirm.com |
| Seth D. Berlin, Esquire | sberlin@lskslaw.com |
| Shane B. Vogt, Esquire | svogt@bajocuva.com |
| Terri DeLeo | teri.deleo@bajocuva.com |
| Timothy J. Conner, Esquire | timothy.conner@hklaw.com |
| Robert Rogers, Esquire | Robert.rogers@hklaw.com |
| James Case | jamescase@aol.com |