## EXHIBIT C

**Proposed Form of Order Approving Amended Plan**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
                                        :

In re:                                  :     Chapter 11
                                          :

Gawker Media LLC, *et al.*[1]          :     Case No. 16-11700 (SMB)
                                          :

                    Debtors.        :     Jointly Administered
                                          :

--------------------------------------------------------------------X

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR GAWKER MEDIA GROUP, INC., GAWKER MEDIA LLC, AND GAWKER HUNGARY KFT.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), having:[2]

    a.           commenced, on June 10, 2016, in respect of Gawker Media LLC ("Gawker Media") and on June 12, 2016, in respect of Gawker Media Group, Inc. ("GMGI") and Gawker Hungary Kft. ("Gawker Hungary") (the filing date in respect of each Debtor, the "Petition Date"), the Bankruptcy Cases by filing voluntary petitions in the United States Bankruptcy Court for the Southern District of New York (the "Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

    b.           continued to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

    c.           filed, on September 30, 2016, the (i) *Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 308, Exhibit A], which plan and related documents were subsequently amended, (ii) *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 308], which disclosure statement and related documents were subsequently amended, and (iii) *Debtors' Motion for the Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) the*

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Each Debtor's mailing address is c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

[2] Unless otherwise noted herein, capitalized terms not defined in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order") shall have the meanings ascribed to them in the Plan (as defined herein). The rules of interpretation set forth in Section 1.01 of the Plan shall apply to this Confirmation Order.

*Solicitation and Notice Procedures with Respect to Confirmation of the Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft., (III) the Form of Ballots and Notices in Connection Therewith, and (IV) the Scheduling of Certain Dates with Respect Thereto* [Docket No. 309];

d.    filed, on November 2, 2016, (i) the *Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 403, Exhibit A to Exhibit A], which plan and related documents were subsequently amended; (ii) the *Disclosure Statement for the Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 403, Exhibit A], which disclosure statement and related documents were subsequently amended; and (iii) the Liquidation Analysis attached as Exhibit C to the *Disclosure Statement for the Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 405];

e.    filed, on November 8, 2016, the (i) *Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 427, Exhibit A to Exhibit A]; and (ii) *Disclosure Statement for the Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 427, Exhibit A] (the "Disclosure Statement"), as approved by the Disclosure Statement Order (as defined herein);

f.    caused distribution, on or before November 7, 2016 (the "Solicitation Date"), of the forms of ballots and notices (collectively, the "Solicitation Packages") and notice of the confirmation hearing and the deadline for objecting to confirmation of the Plan (in substantially the form attached as exhibit 2 to the Disclosure Statement Order, the "Confirmation Hearing Notice"), consistent with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and the solicitation procedures approved thereby (the "Solicitation Procedures"); (as defined herein), and as evidenced by, among others, the *Affidavit of Service of Solicitation Materials* [Docket No. 446] (the "Solicitation Affidavit") filed on November 14, 2016 by Prime Clerk LLC;

g.    caused, on November 10, 2016, notice of the confirmation hearing to be published in *USA Today* (National Edition) (in substantially the form attached as exhibit 3 of the Disclosure Statement Order, the "Publication Notice"), as evidenced by the *Affidavit of Publication* [Docket No. 440];

h.    filed and served, on November 30, 2016, the *Notice of Filing of Plan Supplement Pursuant to the Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 516] ("Plan Supplement"), as evidenced by the *Affidavit of Service* [Docket No. 553];

i.     filed and served, on December 6, 2016, the *Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Debtors' Amended Joint Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 563] (the "Voting Report"), as evidenced by the *Affidavit of Service* [Docket No. 573];

j.     filed and served, on December 9, 2016, the *Debtors' (I) Memorandum of Law in Support of Confirmation of Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft. and (II) Omnibus Reply to Objections Thereto* [Docket No. 574] (the "Confirmation Brief"), as evidenced by the *Affidavit of Service* [Docket No. [__]]; and

k.     filed, on December 11, 2016, the *Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 576, Exhibit A] (the "Plan"), and served the same as evidenced by the *Affidavit of Service* [Docket No. [__]].

**THIS COURT HAVING:**

l.     entered, on November 4, 2016, the *Order Approving (I) the Adequacy of the Disclosure Statement, (II) Solicitation and Notice Procedures with Respect to Confirmation of the Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft., (III) the Form of Ballots and Notices in Connection Therewith, and (IV) the Scheduling of Certain Dates with Respect Thereto* [Docket No. 413] (the "Disclosure Statement Order"), by which the Court approved, among other things, (i) the Disclosure Statement, finding it contained adequate information within the meaning of section 1125 of the Bankruptcy Code; (ii) the Solicitation Procedures, finding the Solicitation Procedures provide for a fair and equitable voting process and are consistent with Bankruptcy Code section 1126; and (iii) the Solicitation Packages, finding the Solicitation Packages adequately address the particular needs of the Bankruptcy Cases;

m.    set December 5, 2016, at 4:00 p.m., prevailing Eastern Time, as the deadline for filing objections to the Plan (the "Plan Objection Deadline")

n.     set December 5, 2016, at 5:00 p.m., prevailing Eastern Time, as the deadline for voting on the Plan;

o.     set December 13, 2016, at 10:00 a.m., prevailing Eastern Time, as the date and time for the hearing (the "Confirmation Hearing") on confirmation of the Plan ("Confirmation") pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

p.     reviewed the Plan, the Plan Supplement, the Disclosure Statement, the Voting Report, the Confirmation Brief, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and

reservations of rights filed by parties in interest on the docket of the Bankruptcy
Cases, if any;

q.    held the Confirmation Hearing;

r.    heard the statements, arguments, and objections made by counsel in respect of
Confirmation;

s.    considered all testimony, documents, filings, and other evidence admitted at the
Confirmation Hearing; and

t.    taken judicial notice of all papers and pleadings filed in the Bankruptcy Cases
referred to in the Plan or Disclosure Statement, and all evidence proffered or
adduced and all arguments made at the Confirmation Hearing;

**NOW, THEREFORE**, the Court having considered the legal and factual bases set forth

in the documents filed in support of Confirmation and all evidence proffered or adduced by

counsel at the Confirmation Hearing; and after due deliberation thereon and good cause

appearing therefor:

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND
ORDERED THAT:**

A.    <u>Findings of Fact and Conclusions of Law</u>

1.    The findings of fact and the conclusions of law set forth in this

Confirmation Order constitute findings of fact and conclusions of law in accordance with

Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.   All

findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in

relation to Confirmation are hereby incorporated into this Confirmation Order to the extent not

inconsistent herewith.   To the extent any of the following findings of fact constitute conclusions

of law, they are adopted as such.   To the extent any of the following conclusions of law

constitute findings of fact, they are adopted as such.   To the extent any finding of fact or

conclusion of law set forth in this Confirmation Order (including any findings of fact or

4

conclusions of law announced by the Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

### B. Jurisdiction and Venue (28 U.S.C. §§ 157(b)(2) and 1334(a))

2.       This Court has jurisdiction over the Bankruptcy Cases pursuant to 28 U.S.C. §§ 157 and 1334.  The Court has jurisdiction to enter an order determining that the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b).

### C. Notice and Transmittal of Solicitation Materials; Adequacy of Solicitation Notices

3.       The Plan, the Disclosure Statement, the Disclosure Statement Order, the ballots for voting on the Plan, the Confirmation Hearing Notice, the Plan Supplement, and the other materials distributed by the Debtors in connection with Confirmation of the Plan (collectively, the "Confirmation Materials") (a) were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, with the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and with the Solicitation Procedures approved in the Disclosure Statement Order and no such other further notice is required, and (b) (c) provided all parties in interest with due and proper notice of the Confirmation Hearing and the objection deadline to Confirmation.

### D. Voting

4.       On December 6, 2016, Prime Clerk, LLC (the "Voting and Distribution Agent") filed the Voting Certification with the Court.  As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures, and the Local Rules.

59965816_3

**E.**     **Good Faith Solicitation (11 U.S.C. § 1125(e))**

5.     Based on the record before the Court in the Bankruptcy Cases, the Debtors and

their respective members, directors, officers, employees, representatives, attorneys, financial

advisors, investment bankers, agents, restructuring advisors, and other professionals have acted

in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance

with the applicable provisions of the Solicitation Procedures, the Bankruptcy Code, the

Bankruptcy Rules, and the Local Rules in connection with all of their respective activities

relating to the solicitation of acceptances to the Plan, their participation in the Bankruptcy Cases,

and the activities described in section 1125 of the Bankruptcy Code and therefore are entitled to

the protections afforded by section 1125(e) of the Bankruptcy Code.

**F.**     **Plan Supplement**

6.     The filing and notice of the Plan Supplement were proper and in accordance with

the Plan, the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and

no other or further notice is or shall be required.

**G.**     **Modifications to the Plan**

7.     Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan

since entry of the Disclosure Statement Order are consistent with the provisions of the

Bankruptcy Code, constitute technical changes and do not materially or adversely affect or

change the treatment of any other Claims or Equity Interests.  Pursuant to Bankruptcy Rule 3019,

these modifications do not require additional disclosure under section 1125 of the Bankruptcy

Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they

require that the holders of Claims or Equity Interests be afforded an opportunity to change

previously cast acceptances or rejections of the Plan.  The disclosure of any Plan modifications

prior to or on the record at the Confirmation Hearing constitutes due and sufficient notice of any

59965816_3

and all Plan modifications.   The Plan as modified shall constitute the Plan submitted for Confirmation.

## H.    Burden of Proof

8.    The Debtors, as the proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

## I.    Bankruptcy Rule 3016

9.    The Plan is dated and identifies the Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

## J.    Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))

10.    The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.  Specifically:

a.    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  As required by section 1123(a)(1), in addition to Administrative Claims, United States Trustee Fees, Professional Fee Claims, and Priority Tax Claims, which need not be classified, Article 2 of the Plan designates 22 Classes of Claims and Equity Interests.  As required by section 1122(a) of the Bankruptcy Code, the Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests.  The Plan thus satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

b.    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Article 2 of the Plan specifies that Classes 1B, 2B, 3B, and 3C are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

c.    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Article 2 of the Plan sets forth the treatment of Classes 1A, 1C, 1D, 1E(i), 1E(ii), 1F, 1G, 2A, 2C, 2D, 2E, 2F(i), 2F(ii), 2(G), 3A, and 3D(i), which are the Impaired Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

7

d.    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.    Article 2 of the Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class except to the extent that a holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

e.    <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>.    The Plan and the various documents included in the Plan Supplement provide adequate and proper means for implementation of the Plan, including, without limitation: (i) the consummation of the transactions contemplated under Article 3 of the Plan and those occurring on the Effective Date, the Gawker Media Claims Reserve Distribution Date, and the Gawker Media Contingent Proceeds Distribution Date (collectively, the "<u>Plan Transactions</u>"); (ii) the cancellation of certain existing agreements, obligations, instruments, and Equity Interests; (iii) the vesting of all property of the estate of each Debtor not otherwise distributed or released on the Effective Date in that Debtor for the benefit of the holders of Claims against and Equity Interests in that Debtor consistent with the treatments set forth in Article 3 of the Plan; (iv) the appointment of the Plan Administrator, and granting to the Plan Administrator the duties, powers, and rights set forth in sections 4.08-4.11 of the Plan and § 1 of the Plan Administrator Agreement; and (v) the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents in furtherance of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

f.    <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>.    The Plan Transactions contemplate the liquidation of each of the Debtors and do not provide for issuance of equity securities by any of the Debtors or for any voting rights for holders of Equity Interests.    Accordingly, section 1123(a)(6) of the Bankruptcy Code is inapplicable to the Plan.

g.    <u>Designation of Directors, Officers, or Trustee (11 U.S.C. § 1123(a)(7))</u>.    Pursuant to section 4.07 of the Plan, upon the Effective Date, any of the Debtors' remaining officers and members of their boards of directors shall be deemed to have resigned, if they have not already done so, without the necessity of any further action or writing.    On and after the Effective Date, the Debtors will be managed by the Plan Administrator pursuant to the Plan Administrator Agreement.    The initial Plan Administrator, Opportune LLP, was disclosed in the Plan Administrator Agreement filed as part of the Plan Supplement, which is consistent with the interests of creditors and equity holders and public policy and consequently the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

h.    <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>.    The additional provisions of the Plan listed below are appropriate and consistent with the applicable provisions of the Bankruptcy Code and, therefore, are consistent with section 1123(b) of the Bankruptcy Code.

59965816_3

    (i)      <u>Impairment/Unimpairment of Any Class of Claims or Equity Interests (11 U.S.C. § 1123(b)(1))</u>.  Pursuant to the Plan, Classes 1B, 2B, 3B, and 3C are Unimpaired, and Classes 1A, 1C, 1D, 1E(i), 1E(ii), 1F, 2A, 2C, 2D, 2E, 2F(i), 2F(ii), and 2(G) are Impaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

    (ii)    <u>Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))</u>.  Article 7 of the Plan provides for the rejection of all of the Debtors' executory contracts and unexpired leases (excluding insurance policies and the Intercompany Services Agreements necessary to preserve the Gawker.com Assets) as of the Effective Date unless such an executory contract or unexpired lease (ii) has been assumed, assumed and assigned, or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, or (iii) is the subject of a motion to assume which is pending at the time of the Confirmation Date.

    (iii)   <u>Retention of Claims (11 U.S.C. § 1123(b)(3))</u>.  In accordance with section 1123(b)(3) of the Bankruptcy Code, sections 4.05, 4.06, and 4.08 of the Plan provides that, the Plan Administrator shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Debtors' rights to commence, prosecute, or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

    (iv)   <u>Other Appropriate Provisions (11 U.S.C. § 1123(b)(6))</u>.  The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (A) distributions to holders of Claims and Equity Interests, (B) resolution of Disputed Claims, (C) allowance of certain Claims, (D) the Plan Settlements, (E) releases by the Debtors of certain parties, (F) releases by certain third parties, (G) exculpations of certain parties, and (H) retention of Court jurisdiction, thereby satisfying the requirements of section 1123(b)(6).

i.    <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>.  Any defaults under the Intercompany Services Agreement assumed under the Plan are deemed cured as part of the Intercompany Settlement.  The Plan does not otherwise provide for the assumption of any executory contract or unexpired lease pursuant to section 365(b)(1) of the Bankruptcy Code.  Accordingly, section 1123(d) of the Bankruptcy Code is not applicable to the Plan.

**K.**    **The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))**

11.    The Debtors have complied with the applicable provisions of the Bankruptcy

Code, as required by section 1129(a)(2) of the Bankruptcy Code.  Specifically:

a.    the Debtors are eligible debtors under section 109 of the Bankruptcy Code and are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;

b.    the Debtors have complied with all applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

c.    the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in transmitting the Confirmation Materials and related notices and in soliciting and tabulating the votes on the Plan.

**L.**    **Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))**

12.    Any payment made or to be made by the Debtors or by a person acquiring

property under the Plan, for services or for costs and expenses in connection with the Bankruptcy

Cases, or in connection with the Plan and incident to the Bankruptcy Cases, has been approved

by, or is subject to the approval of, the Court as reasonable.  Accordingly, the Plan satisfies

section 1129(a)(4) of the Bankruptcy Code.

**M.**    **Plan Administrator (11 U.S.C. § 1129(a)(5))**

13.    The Debtors disclosed the identity of the Plan Administrator in the Plan

Administrator Agreement.  The identity and nature of compensation of any insiders to be

retained or employed by the Debtors were disclosed in the Plan Supplement or at the

Confirmation Hearing, including the Debtors' continued employment of Thomas Plunkett.

Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy

Code.

**N.    No Rate Changes (11 U.S.C. § 1129(a)(6))**

14.    The Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction.    Accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable.

**O.    Best Interests of Creditors (11 U.S.C. § 1129(a)(7))**

15.    Each holder of an Impaired Claim or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

16.    In that regard, the liquidation analysis attached as **Exhibit C** to the Disclosure Statement (the "Liquidation Analysis") and the other evidence related thereto in support of the Plan that was submitted or adduced at the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that holders of Allowed Claims in every Class will recover as much or more under the Plan on account of such Claim or Equity Interest, as of the Effective Date, than the amount such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. Accordingly, the Plan satisfies the "best interest of creditors" test under section 1129(a)(7) of the Bankruptcy Code.

**P.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))**

17.    Classes 1B, 2B, 3B, and 3C are Unimpaired by the Plan pursuant to section 1124 of the Bankruptcy Code and, accordingly, holders of Claims or Equity Interests in such Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Classes 1A, 1C, 1D, 1E(i), 1E(ii), 1F, 1G, 2A, 2C, 2D, 2E, 2F(i), 2F(ii), 2G, 3A, 3D(i),

3D(ii), 3E are Impaired by the Plan.  Classes 1A, 1C, 1D, 1E(ii), 1F, 2A, 2C, 2D, 2E, 2F(i), 2G,

3A, 3D(ii) and 3E have voted to accept the Plan, as established by the Voting Certification.

Holders of Claims or Equity Interests in Classes 1E(i), 1G, 2F(ii), and 3D(i) will not receive or

retain any property on account of their Claims or Equity Interests and, accordingly, such Claims

and Equity Interests are Impaired and such holders are deemed to have rejected the Plan pursuant

to section 1126(g) of the Bankruptcy Code.

**Q.  Treatment of Administrative Claims and Priority Tax Claims (11 U.S.C.
§ 1129(a)(9))**

18.    The treatment of Administrative Claims and Priority Tax Claims pursuant to

Article 2 of the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

Accordingly, the Debtors have satisfied the requirements of section 1129(a)(9) of the Bankruptcy

Code.

**R.    Acceptance By at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10))**

19.    Claims in Classes 1A, 1C, 1D, 1E(ii), 1F, 2A, 2C, 2D, 2E, 2F(i), 2(G), 3A, 3D(ii)

and 3E are entitled to vote under the Plan.  Classes 1A, 1C, 1D, 1E(ii), 1F, 2A, 2C, 2D, 2E,

2F(i), 2G, 3A, 3D(ii) and 3E have voted to accept the Plan, as established by the Voting

Certification.  Accordingly, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code as to

each Debtor.

**S.    Feasibility (11 U.S.C. § 1129(a)(11))**

20.    The Plan satisfies section 1129(a)(11) of the Bankruptcy Code because it provides

for the liquidation of any remaining assets of the Debtors.

**T.    Payment of Fees (11 U.S.C. § 1129(a)(12))**

21.    As set forth in sections 2.05(a)(ii), 2.06(a)(ii), and 2.07(a)(ii) of the Plan, all fees

payable pursuant to section 1930 of title 28 of the United States Code, and any interest thereon

pursuant to section 3717 of title 31 of the United States Code, due and payable through the
Effective Date shall be paid by the Debtors on or before the Effective Date (or as soon thereafter
as is practical) and amounts due thereafter shall be paid by the applicable Debtor in accordance
therewith until the earlier of the conversion or dismissal of the applicable Debtor's Bankruptcy
Case under section 1112 of the Bankruptcy Code or closing of the applicable Debtors'
Bankruptcy Case pursuant to section 350(a) of the Bankruptcy Code.

**U.**      **No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))**

22.     The Debtors are not required by a judicial or administrative order, or by statute, to
pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is
inapplicable in the Bankruptcy Cases.

**V.**      **None of the Debtors is an Individual (11 U.S.C. § 1129(a)(15))**

23.     None of the Debtors is an individual.  Accordingly, section 1129(a)(15) of the
Bankruptcy Code is inapplicable in the Bankruptcy Cases.

**W.**      **No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))**

24.     The Debtors are moneyed, business, or commercial corporations.  Accordingly,
section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Bankruptcy Cases.

**X.**      **Confirmation of Plan Over Non-Acceptance of Impaired Classes (11 U.S.C.
§ 1129(b))**

25.     The Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code
notwithstanding that the requirements of section 1129(a)(8) have not been met because the
Debtors have demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of
the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate
unfairly" and is "fair and equitable" with respect to the Rejecting Class (as defined herein).

26.     The Plan does not "discriminate unfairly" against any holders of Equity Interests in Class 1G deemed to reject the Plan (the "Rejecting Class").  The treatment of such holders is proper because all similarly situated classes of holders of Class 1G will receive substantially similar treatment, and the Debtors have a valid rationale, including the rationales articulated in the Confirmation Brief and at the Confirmation Hearing, for the Plan's classification scheme and the disparate treatment, if any, provided for different Classes.

27.     The Plan is also "fair and equitable" with respect to the Rejecting Class. No holder of Claims or Equity Interests junior to the Rejecting Class is receiving a distribution under the Plan.

28.     The Plan, therefore, satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**Y.      Only One Plan (11 U.S.C. § 1129(c))**

29.     The Plan is the only plan filed in the Bankruptcy Cases, and, accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in the Bankruptcy Cases.

**Z.      Principal Purpose of the Plan (11 U.S.C. § 1129(d))**

30.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

**AA.     Not Small Business Cases (11 U.S.C. § 1129(e))**

31.     None of the Bankruptcy Cases are small business cases, as that term is defined in the Bankruptcy Code, and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in the Bankruptcy Cases.

14

**BB.** **Plan Implementation**

32.     The terms of the Plan, including, without limitation, the Plan Supplement and all

exhibits and schedules thereto, and all other documents filed in connection with the Plan, or

executed or to be executed in connection with the Plan Transactions and all amendments and

modifications of any of the foregoing made pursuant to the provisions of the Plan governing such

amendments and modifications (collectively, the "Plan Documents") are incorporated by

reference, are approved in all respects, and constitute an integral part of this Confirmation Order.

**CC.** **Binding and Enforceable**

33.     The Plan and the Plan Documents have been negotiated in good faith and at arm's

length with the Committee and each of the parties subject to the Plan Settlements and, subject to

the occurrence of the Effective Date, shall bind any holder of a Claim or Equity Interest and such

holder's respective successors and assigns, whether or not the Claim or Equity Interest is

Impaired under the Plan, whether or not such holder has accepted the Plan, whether or not such

holder is entitled to a distribution under the Plan and whether or not such holder appeared in the

Bankruptcy Cases.    The Plan and the Plan Documents constitute legal, valid, binding, and

authorized obligations of the respective parties thereto and shall be enforceable in accordance

with their terms.    Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan

Documents shall apply and be enforceable notwithstanding any otherwise applicable

nonbankruptcy law unless expressly limited by this Order.

**DD.** **Plan Proposed in Good Faith**

34.     The Debtors have proposed the Plan (including the Plan Documents and all other

documents necessary to effectuate the Plan) in good faith and not by any means forbidden by the

law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.    In determining that the Plan

has been proposed in good faith, the Court has examined the totality of the circumstances

surrounding the filing of the Bankruptcy Cases, the docket in the Bankruptcy Cases and the
proceedings therein and considered the testimony and other evidence adduced or provided
regarding the formulation of the Plan, the facts and record of the Bankruptcy Cases, the
Disclosure Statement, and the record of the Confirmation Hearing.  The Plan was proposed with
the purpose of maximizing the value of the Debtors' estates and to effectuate a liquidation of the
Debtors. The Plan was the product of negotiations conducted at arm's length among the Debtors,
the Committee, certain of their creditors, including former employees and independent
contractors and significant equity holders.   The Plan's classification provisions, the Plan
Settlements, the Exculpation, the Debtor Releases, the Third-Party Releases and the Injunction
Provisions have been negotiated in good faith and at arm's length, are consistent with sections
105, 1122, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary and
proper for the Debtors' liquidation and to preserve the value of the stakeholders' recoveries and
distributions under the Plan.  Accordingly, the Debtors (and all of their respective subsidiaries,
insurers, agents, representatives, directors, managers, officers, equity holders, principals, current
and former members, financial advisors, partners, attorneys, accountants, investment bankers,
consultants, representatives, and other professionals) have been, are, and will continue to act in
good faith if they proceed to: (a) consummate the Plan and the Plan Transactions and the
agreements, settlements, transactions, and transfers contemplated thereby in accordance with the
terms of this Confirmation Order, the Plan and the Plan Documents; and (b) take the actions
authorized and directed or contemplated by this Confirmation Order.

**EE.**    **Vesting of Assets**

35.    Except as otherwise provided in the Plan, upon the Effective Date, pursuant to
Section 1141(b) of the Bankruptcy Code, all property of the estate of each Debtor not otherwise
distributed or released on the Effective Date shall vest in that Debtor for the benefit of the

holders of Claims against and Equity Interests in that Debtor consistent with the treatments set

forth in Article 3 of the Plan.  Pursuant to section 1123(b)(3) of the Bankruptcy Code, after the

Effective Date, each of the Debtors shall retain and enforce any claims or interests belonging to

each of their respective chapter 11 bankruptcy estates, including, but not limited to, the Retained

Causes of Action that were not released by the Plan.  From and after the Effective Date, the

Debtors, acting through the Plan Administrator, may take any action consistent with the terms of

the Plan, and execute, deliver, implement, and fully perform any and all obligations, instruments,

documents and papers or otherwise in connection with any of the foregoing, free of any

restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were

no pending cases under any chapter or provision of the Bankruptcy Code, except as explicitly

provided in the Plan and in this Confirmation Order.  The Debtors are specifically authorized to

sell the Gawker.com Assets pursuant to section 4.11 of the Plan without further approval of this

Court.

**FF.    The Gawker Media Available Assets**

36.    Holders of Allowed Gawker Media General Unsecured Claims that are not

otherwise resolved as of the Effective Date of the Plan will have recourse to cash of at least $6.5

million, which amount is the aggregate of the Gawker Media Claims Reserve ($3.75 million), the

Gawker Media Contingent Proceeds Creditor Account, the Gawker Media Second Lien Make-

Whole Reserve (0.75 million), and the GMGI Plan Guaranty Reserve ($2.0 million)

(collectively, the "Gawker Media Available Assets").

37.    The Debtors presented evidence at the Confirmation Hearing demonstrating that the Allowed Gawker Media General Unsecured Claims as of the Confirmation Date that are not otherwise resolved finally in the Plan and to be paid on or before the Effective Date are projected to be Allowed in an amount no greater than $6.5 million.  Consequently, the Gawker Media Available Assets are likely sufficient to satisfy the Allowed Gawker Media General Unsecured Claims in full in cash.

38.    In addition, to the extent that the Gawker Media Available Assets are not sufficient to pay Allowed Gawker Media General Unsecured Claims in full, the Court finds that holders of such Allowed Gawker Media Unsecured Claims are not being treated unfairly or receiving disparate treatment.  Based on the testimony and evidence adduced at the Confirmation Hearing, such holders will receive distributions on their Allowed Claims that are no less favorable than the holders of Allowed Gawker Media Unsecured Claims being settled and receiving on or before the Effective Date.

**GG.    Executory Contracts and Unexpired Leases**

39.    The Debtors have exercised sound business judgment in determining whether to assume or reject each of their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code and Article 7 of the Plan.

40.    Claims created by the rejection of executory contracts and unexpired leases pursuant to section 7.01 of the Plan, or the expiration or termination of any executory contract or unexpired lease prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Plan Administrator no later than thirty (30) days after the Effective Date.

18

**HH.** **Discharge, Compromise, Settlement, Release, Exculpation, and Injunction Provisions**

41.    The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Article 4 and Article 9 of the Plan.  Sections 105(a) and 1123(b) of the Bankruptcy Code permit issuance of the injunctions and approval of the releases, exculpations, and injunctions set forth in Article 9 of the Plan. Based upon the record of the Bankruptcy Cases and the evidence submitted or adduced at the Confirmation Hearing, the Court finds that the discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Articles 4 and 9 of the Plan are consistent with the Bankruptcy Code and applicable law and are just and proper.

**II.**    **Debtor Releases**

42.    The releases by the Debtors described in section 9.03 of the Plan (the "Debtor Releases") are an integral and necessary part of the Plan and represent a valid exercise of the Debtors' business judgment.   As set forth in the Confirmation Brief and in the evidence submitted in support of Confirmation of the Plan, the Debtor Releases are in the best interests of the Debtors, the Debtors' estates, and all holders of Claims and Equity Interests.   The Debtor Releases are narrowly tailored.  The Debtors considered the potential Causes of Action raised by the Committee and others identified to the Debtors during the course of the Bankruptcy Cases. The Debtor Releases have carved out Claims against the chapter 11 estate of Nicholas Denton (the Debtors' former Chief Executive Officer and founder) and certain other Claims. Furthermore, the Debtor Releases extend solely to those Released Employees and Independent Contractors who (a) vote in favor of the Plan and (b) waive and release any and all Claims relating to Debtor Indemnification Obligations.

19

43.     The Debtor Releases are (a) in exchange for good and valuable consideration provided by the Released Parties; (b) a good-faith compromise and settlement of the Claims and Causes of Action released by the Debtors; (c) fair, equitable, and reasonable; and (d) given and made after due notice and opportunity for hearing. The Debtor Releases were conspicuously set off in bold font in the Disclosure Statement, the Plan, the Confirmation Hearing Notice, and the Publication Notice.  The Debtor Releases are consistent with applicable law and represent a valid settlement and release of Claims and Causes of Action that the Debtors may have pursuant to section 1123 of the Bankruptcy Code.

**JJ.      Third-Party Release**

44.     The Court has jurisdiction to consider the third-party releases described in section 9.05 of the Plan (the "Third-Party Releases").  The Claims and Causes of Action covered by the Third-Party Releases are based on conduct for which one or more Debtors might be liable for Debtor Indemnification Obligations. Employees and Independent Contractors have filed Claims against the Debtors for Debtor Indemnification Obligations for potential and threatened litigation.

45.     The Third Party Releases are given and made after due notice and opportunity for hearing.  The Third Party Releases were conspicuously set off in bold font in the Disclosure Statement, the Plan, the Confirmation Hearing Notice, and the Publication Notice.

46.     The Third-Party Releases are an integral and necessary part of the Plan and represent a valid exercise of the Debtors' business judgment.  As set forth in the Confirmation Brief and in the evidence submitted in support of Confirmation of the Plan, the Third-Party Releases are in the best interests of the Debtors, the Debtors' estates and all holders of Claims and Equity Interests.  Additionally, the Third-Party Releases are fair, equitable, and reasonable.

59965816_3

47.     The Third-Party Releases are narrowly tailored.  The Third-Party Releases only apply to any act, omission, transaction, event, or other occurrence taking place or existing on or prior to the Sale Closing Date arising out of or relating to a Released Employees and Independent Contractors' work performed or content provided on behalf of the Debtors that are not the result of gross negligence or willful misconduct as determined by a Final Order, and for which the Debtors have Debtor Indemnification Obligations.

48.     The Third-Party Releases are given in exchange for good and valuable consideration provided by the Released Employees and Independent Contractors.  The Released Employees and Independent Contractors have voted in favor of the Plan and are waiving and releasing all claims against the Debtors for Debtor Indemnification Obligations, unless otherwise agreed to by the Debtors or their insurance carriers.  Each holder of a Claim or Equity Interest that has received or is deemed to have received distributions made under the Plan in turn benefits from an immediate distribution.  Absent the Third-Party Releases in favor of the Released Employees and Independent Contractors, the Debtors might have been required to set aside additional reserves in respect of Debtor Indemnification Obligations, the Plan Settlements may not have been agreed to, and are therefore important to the Plan.  Furthermore, the Debtors would be subject to substantial Claims for Debtor Indemnification Obligations in respect of claims or causes of action brought against the Released Employees and Independent Contractors.

49.     The Third-Party Releases are appropriate in light of the unique circumstances in the Bankruptcy Cases affecting the claims and causes of action covered by the Third-Party Releases, specifically (a) the limited statute of limitations affecting such causes of action in major jurisdictions such as California and New York; and (b) the implication of issues relating to

21

the First Amendment of the United States Constitution affecting the Released Employees and Independent Contractors.

### KK.    Exculpation

50.    The Debtors formulated the Plan after negotiating with the Committee in good faith. The negotiations surrounding the Plan could not have occurred without the protection from liability that the exculpation provision in section 9.04 (the "Exculpation") provides.    The Exculpation protects the Debtor's estates from the possibility of incurring Debtor Indemnification Obligations in respect of the actions covered by the Exculpation.    The Exculpation is integral and essential to the Plan. The Exculpation is appropriately tailored to protect the Debtors and the Committee, and certain specified advisors and affiliates (the "Exculpated Parties"), for the actions described in the Exculpation.    The Exculpation was conspicuously set off in bold font in the Disclosure Statement, the Plan, the Confirmation Hearing Notice, and the Publication Notice.

51.    Negotiation and compromise among the Exculpated Parties was important to the formulation of the consensual Plan.    The Exculpation is beneficial to the Debtors' estates, as the Debtors would otherwise have contingent indemnification obligations to certain of the Exculpated Parties that are the Debtors' directors or employees.    The Exculpation is appropriately tailored and includes a carve-out for gross negligence and willful misconduct.

### LL.    Injunctions

52.    The injunction provisions set forth in sections 9.01 (the "Claims Injunction") and 9.02 of the Plan (the "Plan Interference Injunction," and together with the Claims Injunction, the "Injunction Provisions") (a) are an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (b) are an integral element of the transactions incorporated into the Plan; (c) confer material benefits on, and are in the best interests of, the Debtors, the

22

Debtor's estates, and their creditors; and (d) are important to the overall objectives of the Plan. The Claims Injunction is necessary to preserve the authority of the Debtors and the Plan Administrator to pursue retained claims under the Plan. The Plan Interference Injunction is necessary to preserve and enforce the terms of the Plan, the Debtor Releases, the Third-Party Releases, and the Exculpation. The Injunction Provisions are a key component of the efficient liquidation of the Debtors' estates and prevent the potential for collateral attack of the Plan's terms.

53.    The Injunction Provisions were conspicuously set off in bold font in the Disclosure Statement, the Plan, the Confirmation Hearing Notice, and the Publication Notice.

54.    The Injunction Provisions are narrowly tailored to achieve their purpose. The Claims Injunction is limited to any Claim, debt, right, or Cause of Action for which a Debtor retains sole and exclusive authority to pursue in accordance with Article 4 of the Plan. The Plan Interference Injunction (a) is limited to conduct arising before the Effective Date and (b) may be lifted after a party obtains relief from the Bankruptcy Court before pursuing any enjoined actions.

## MM.    The Plan Settlements

55.    Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates the compromises and settlements pursuant to the Plan Settlements to achieve a beneficial and efficient resolution of the Bankruptcy Cases for all parties in interest. The Plan Settlements resolve the most significant disputes regarding the Debtors' estates without protracted litigation that would have otherwise resulted in respect of the Claims and Causes of Action that are being resolved. The economic effect of the Plan Settlements allows approximately $6.5 million of funds immediately available for distribution to holders of Allowed Claims in Classes 2C and 2D in accordance with the Article 3 of the Plan.

23

56.    The Plan Settlements (a) are an integral element of the transactions incorporated into the Plan; (b) confer material benefits on, and are in the best interests of, the Debtors, the Debtors' estates, and the holders of Claims and Equity Interests by allowing a distribution to all Allowed Claims and Equity Interests pursuant to the terms of the Plan; (c) confer substantial cost savings and tax savings for the Debtors and the Debtors' estates by allowing for the substantial consummation of the Plan in 2016; (d) are important to the overall objectives of the Plan to finally resolve all Claims or Causes of Action settled by the Plan Settlements among or against the parties in interest in the Bankruptcy Cases with respect to the Debtors; and (e) are consistent with, and satisfy the requirements of, sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, Bankruptcy Rule 9019, and other applicable law.

### i.    *Second Lien Make-Whole Claims Settlement*

57.    The settlement between the Debtors and the Second Lien Lender set forth in section 4.01(a) of the Plan (the "Second Lien Make-Whole Claims Settlement") settles any outstanding claims that the Second Lien Lender may assert arising from or in connection with, the Second Lien Make Whole Provision (the "Second Lien Make Whole Claim").  In full and complete settlement, release, and discharge of, and in exchange for, the Second Lien Make Whole Claim, the Second Lien Lender will receive a guaranteed payment of $1.5 million under the Plan, plus a Claim of $750,000 against each of Gawker Media, Gawker Hungary, and GMGI, junior to each respective Debtor's unsecured creditors. The Debtors will also pay the Second Lien Lender Expenses on the Effective Date, as set forth in section 4.01 of the Plan.

58.    The Second Lien Make-Whole Claims Settlement is in the best interests of the Debtors' estates and the holders of Claims and Equity Interests.  The Second Lien Make-Whole Claims Settlement is fair, equitable and falls above the lowest point in the range of

reasonableness.  As set forth in the Confirmation Brief and in the evidence submitted in support of Confirmation of the Plan, absent the Second Lien Make-Whole Claims Settlement, the Debtors would at least litigate whether the Second Lien Lender is entitled to payment on the Second Lien Make Whole Claim.  As more fully stated in the Disclosure Statement, the Debtors would dispute in its entirety the enforceability of the Second Lien Make-Whole Provision, on the grounds, among others, that it is an unenforceable penalty (and not an enforceable liquidated damage) under New York law.  Separately, the GMGI estate could argue that the security interest of the Second Lien Lender in the equity of Gawker Hungary could be avoided as a preferential transfer.  The Second Lien Lender could raise several defenses to this argument, including that (a) the perfection could be a transfer for contemporaneous new value, (b) Gawker Hungary and GMGI were solvent at the time of perfection of the Second Lien Loan and (c) the Second Lien Lender is not an insider.  The Debtors' probability of success in respect of the Second Lien Make Whole Claim is uncertain.  Continued litigation over the Second Lien Make-Whole Claim would delay confirmation of a plan and distribution to the Debtors' creditors and equity holders.  The Second Lien Lender would have a $3.75 million secured Claim against each of the Debtors if the Debtors were unsuccessful in challenging the Second Lien Make Whole Provision which the Debtors would need to satisfy or maintain a separate Claims reserve before making distributions to other holders of non-Priority Claims and Equity Interests.  The Second Lien Make-Whole Claims Settlement avoids these costs and balances the Debtors' likelihood of success in litigation against the Second Lien Lender, yielding a benefit to holders of Allowed General Unsecured Claims and the Allowed Gawker Media Punitive Damage Claims in the form of immediate distributions under the Plan.

59965816_3

59.     The Second Lien Make-Whole Claims Settlement is a product of arms-length, good faith negotiations between the Second Lien Lender and the Debtors, each of whom were represented by skilled and experienced professionals.   The Debtors' independent director reviewed and approved the Second Lien Make-Whole Claims Settlement.   The Committee supports the Second Lien Make-Whole Claims Settlement.   No party has opposed the Second Lien Make-Whole Claims Settlement.

### ii.    *Intercompany Settlement*

60.     The settlement among the Debtors set forth in section 4.01(b) of the Plan (the "Intercompany Settlement") settles the Claims or Causes of Action that any Debtor may assert against any other Debtor, including, without limitation, on account of (a) the Gawker Hungary Intercompany Notes; (b) the GMGI Promissory Note; (c) claims or causes of action arising based on subrogation, veil piercing or *alter ego*, (d) the allocation among the Debtors' estates of (i) the Unimoda Purchase Price; (ii) amounts allegedly due among Gawker Media and Gawker Hungary pursuant to the Intercompany Services Agreements; (iii) the payment of outstanding principal, accrued interest and fees under the DIP Loan and the Second Lien Term Loan; (iv) the professional fees and other administrative expenses accrued from each Debtor's Petition Date through the closing of the Unimoda Sale; (v) the Final Professional Fees; (vi) the Second Lien Make-Whole Claims Settlement; and (vii) other claims among the Debtors' estates.

61.     The Plan resolves the Intercompany Claims among the Debtors by (a) allocating 60% of the Unimoda Purchase Price to Gawker Media and 40% to Gawker Hungary; (b) providing that GMGI will make the $2 million GMGI Plan Guaranty in satisfaction of Gawker Media's Intercompany Claims against GMGI, which reserve will be used to satisfy holders of Gawker Media General Unsecured Claims and Gawker Media Punitive Damages; (c) providing

59965816_3

that GMGI will transfer 45% of Gawker Media Contingent Proceeds to the Gawker Media

Contingent Proceeds Creditor Account, which will be used to satisfy holders of Gawker Media

General Unsecured Claims and Gawker Media Punitive Damages Claims; and (d) providing that

Gawker Media will make a $[] million distribution to Gawker Hungary in partial satisfaction of

Gawker Hungary's Intercompany Claims against GMGI, with an additional distribution to satisfy

the Gawker Media Gawker Hungary Intercompany Claims of any Cash remaining at Gawker

Media after Gawker Media General Unsecured Claims and Gawker Media Punitive Damage

Claims have been satisfied pursuant to Section 3.02(c) and 3.02(d) of the Plan.  Gawker Media

will receive no distributions in respect of its Claims against Gawker Hungary.  Each of the

Debtors additionally agrees to the terms of the Plan Settlements and the establishment of the Plan

Reserve Accounts.

62.    The Intercompany Settlement is in the best interests of the Debtors, the Debtors'

estates and the holders of Claims and Equity Interests.  The Intercompany Settlement is fair,

equitable and falls above the lowest point in the range of reasonableness.    Absent the

Intercompany Settlement, the Debtors would be required to litigate intercompany disputes

regarding the allocation of assets and liabilities among each Debtor which would involve several

contested questions of law and fact that would require prolonged analysis, discovery, and

litigation proceedings, specifically: (a) Gawker Hungary and Gawker Media's Claims against

each other for outstanding intercompany receivables due from Gawker Media under the

Intercompany Services Agreements; (b) the rate pricing agreement between Gawker Hungary

and Gawker Media under the Master License Agreement; and (c) the allocation of the Unimoda

Purchase Price among the three Debtors, as the assets sold in the Unimoda Sale were not

allocated to any particular Debtor.  Furthermore, the Debtors would need to consider whether to

pursue Causes of Action against each other, including those disclosed by the Debtors in the
Disclosure Statement, specifically: (i) a breach of fiduciary duty claim by Gawker Media against
GMGI, its sole member; and (ii) substantive consolidation, veil piercing, or *alter ego* claims by
Gawker Media against GMGI.   As set forth in the Confirmation Brief and in the evidence
submitted in support of Confirmation of the Plan, the outcome of such litigation would be
uncertain and the cost of litigation substantial.   Continued litigation over the Intercompany
Claims would delay Confirmation of a Plan and distribution to the Debtors' creditors and equity
holders. Each of the foregoing intercompany disputes, if litigated, would delay distributions to
holders of Allowed Claims and Equity Interests entitled to receive distributions under the Plan.
Depending on the outcome of such intercompany disputes, holders of Gawker Media General
Unsecured Claims, Gawker Media Punitive Damages Claims, and GMGI Preferred Shares could
be entitled to a lower distribution or no distribution at all on their Allowed Claims and Allowed
Equity Interests.  The Committee supports the Intercompany Settlement. No party has opposed
the Intercompany Settlement.

63.     The Intercompany Settlement is a product of arms-length, good faith negotiations
among the Debtors. The Debtors' independent director reviewed and approved the Intercompany
Settlement. The Committee supports the Intercompany Settlement. No party has opposed the
Intercompany Settlement.

### iii.     *Bollea Claims Settlement*

64.     The settlement between the Debtors and Bollea set forth in section 4.01(c) of the
Plan and in the settlement agreement attached as exhibit C of the Plan Supplement (the "Bollea
Claims Settlement") settles the Bollea Claims, including but not limited to the Bollea I Lawsuit
and the Bollea II Lawsuit. In full and complete settlement, release, and discharge of, and in

exchange for, the Bollea Claims, Bollea will receive $31,000,000 in Cash from Gawker Media

and his Pro Rata share (calculated based on an Allowed Gawker Media General Unsecured

Claim amount of $84,000,000) of Distributions from the Gawker Media Contingent Proceeds

Creditor Account.

65.    The Bollea Claims Settlement is in the best interests of the Debtors, the Debtors'

estates and the holders of Claims and Equity Interests. The Bollea Claims Settlement is fair,

equitable and falls above the lowest point in the range of reasonableness. Absent the Bollea

Claims Settlement, the Debtors will expend substantial litigation expenses (a) pursuing the

appeal of the trial court judgment that Bollea obtained against Gawker Media in the Bollea I

Lawsuit for $115 million in compensatory damages (the "Bollea Compensatory Judgment") and

$15 million in punitive damages (the "Bollea Punitive Damages Judgment"), as well as a $10

million punitive damages judgment against Nicholas Denton and a $100,000 punitive damages

judgment against Albert Daulerio; and (b) defending the Bollea II Lawsuit. Denton and Daulerio

have filed claims against the Debtors asserting that the Debtors have Debtor Indemnification

Obligations in respect of the judgments against them in the Bollea I Lawsuit. As set forth in the

Confirmation Brief and in the evidence submitted in support of Confirmation of the Plan, the

Debtors' probability of success in respect of the Debtors' probability of success in respect of the

Bollea Claims is uncertain. The Debtors have estimated that the cost of appealing the Bollea I

Lawsuit and defending the Bollea II Lawsuit could be in the millions of dollars. Furthermore,

continued litigation in respect of the Bollea Claims would involve several contested questions of

law and fact that would require prolonged analysis, discovery, and litigation proceedings.

Continued litigation over the Bollea Claims would delay confirmation of a plan and distribution

to the Debtors' creditors and equity holders. If the Bollea Compensatory Judgment and the

Bollea Punitive Damage Judgment were ultimately allowed at their full amount, it would eliminate all non-contingent distributions to holders of Allowed Gawker Media General Unsecured Claims. The Bollea Claims Settlement permits holders of Allowed Gawker Media General Unsecured Claims to receive a distribution on their Claims.

66.     The Bollea Claims Settlement is a product of arms-length, good faith negotiations between Bollea and the Debtors, each of whom were represented by skilled and experienced professionals. The Debtors' independent director reviewed and approved the Bollea Claims Settlement. The Committee supports the Bollea Claims Settlement.

### iv.     *Terrill Claims Settlement*

67.     The settlement between the Debtors and Terrill set forth in section 4.01(d) of the Plan and in the settlement agreement attached as exhibit E of the Plan Supplement (the "Terrill Claims Settlement") settles the Terrill Claims, including but not limited to the lawsuit brought by Terrill captioned *Ashley Terrill v. Gawker Media LLC, et al.*, No. 16-CV-00411 (S.D.N.Y.) which asserts damages of at least $10 million (the "Terrill Lawsuit"). In full and complete settlement, release, and discharge of, and in exchange for, the Terrill Claims, Terrill will receive $500,000 in Cash from Gawker Media. Terrill has waived any entitlement to Distributions from the Gawker Media Contingent Proceeds Creditor Account.

68.     The Terrill Claims Settlement is in the best interests of the Debtors, the Debtors' estates and the holders of Claims and Equity Interests. The Terrill Claims Settlement is fair, equitable and falls above the lowest point in the range of reasonableness. Absent the settlement of the Terrill Claims, the Debtors will expend substantial litigation expenses defending the Terrill Lawsuit. As set forth in the Confirmation Brief and in the evidence submitted in support of Confirmation of the Plan, the Debtors' probability of success in respect of the Terrill Claims

and the Terrill Lawsuit is uncertain. Furthermore, continued litigation over the Terrill Claims
would at the very least delay distribution to the Debtors' stakeholders.

69.    The Terrill Claims Settlement is a product of arms-length, good faith negotiations
between Terrill and the Debtors, each of whom were represented by skilled and experienced
professionals. The Debtors' independent director reviewed and approved the Terrill Claims
Settlement. The Committee supports the Terrill Claims Settlement.

### v.    *Ayyadurai Claims Settlement*

70.    The settlement between the Debtors and Ayyadurai set forth in section 4.01(d) of
the Plan and in the settlement agreement attached as exhibit D of the Plan Supplement (the
"Ayyadurari Claims Settlement") settles the Ayyadurai Claims, including but not limited to the
lawsuit brought by Ayyadurai captioned *Ayyadurai v. Gawker Media LLC, et al.*, No. 16-CV-
10853 (D. Mass.), which asserts damages of at least $35 million (the "Ayyadurai Lawsuit"). In
full and complete settlement, release, and discharge of, and in exchange for, the Ayyadurai
Claims, Ayyadurai will receive $750,000 in Cash from Gawker Media. Ayyadurai has waived
any entitlement to Distributions from the Gawker Media Contingent Proceeds Creditor Account.

71.    The Ayyadurai Claims Settlement is in the best interests of the Debtors, the
Debtors' estates and the holders of Claims and Equity Interests. The Ayyadurai Claims
Settlement is fair, equitable and falls above the lowest point in the range of reasonableness.
Absent the settlement of the Ayyadurai Claims, the Debtors could expend substantial litigation
expenses defending the Ayyadurai Lawsuit. As set forth in the Confirmation Brief and in the
evidence submitted in support of Confirmation of the Plan, the Debtors' probability of success in
respect of the Ayyadurai Claims and the Ayyadurai Lawsuit is uncertain. Furthermore, continued
litigation over the Ayyadurai Claims would at the very least delay distribution to the Debtors'
stakeholders.

31

72.     The Ayyadurai Claims Settlement is a product of arms-length, good faith negotiations between Ayyadurai and the Debtors, each of whom were represented by skilled and experienced professionals. The Debtors' independent director reviewed and approved the Ayyadurai Claims Settlement. The Committee supports the Ayyadurai Claims Settlement.

**NN.    <u>Retention of Jurisdiction.</u>**

73.     Except as otherwise provided in any of the Plan Documents, the Court shall retain jurisdiction over the Bankruptcy Cases and all matters arising out of, or related to, the Bankruptcy Cases and the Plan, including the Retained Causes of Action identified in Exhibit B of the Plan Supplement and those set forth in section 8.01 of the Plan.

**OO.    <u>Waiver of Stay</u>**

74.     Given the facts and circumstances of these cases, it is appropriate that the 14-day stay imposed by Bankruptcy Rules 3020(e) be waived.  In that regard, the Court finds that it is in the best interests of the Debtors and their estates that the Debtors be permitted to make distributions prior to the Effective Date of the Plan in connection with the Plan Settlement with creditors Bollea, Terrill, Ayyadurai and Williams and the holders of Allowed GMGI General Unsecured Convenience Claims and Gawker Media General Unsecured Convenience Claims prior to December 31, 2016, even if the conditions to the Effective Date of the Plan have not been satisfied or waived by the Debtors prior to December 31, 2016.

**BASED ON THE FORGOING, IT IS HEREBY ORDERED THAT:**

**A.    <u>Confirmation</u>**

75.     The Plan is confirmed under section 1129 and the other applicable provisions of the Bankruptcy Code. The terms of the Plan Documents are incorporated by reference into, and are an integral part of, the Plan and this Confirmation Order and are authorized and approved,

and the Debtors are authorized to implement their provisions and consummate the Plan without any further authorization except as expressly required by the Plan or this Confirmation Order.

## B.    Omission of Reference to Particular Plan Provisions

76.    The failure to specifically describe or include any particular provision of the Plan or the Plan Documents in this Confirmation Order shall not diminish or impair the effectiveness of such provision, and such provision shall have the same validity, binding effect and enforceability as every other provision of the Plan and the Plan Documents.

## C.    Deemed Acceptance of the Plan as Modified

77.    All changes, amendments, alterations and modifications to the Plan made after entry of the Disclosure Statement Order are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to accept the Plan, as altered, amended or modified subsequent to the entry of the Disclosure Statement Order. Each of the Debtors is deemed to have voted to accept the Plan pursuant to the Solicitation Procedures. No holder of a Claim is entitled to change such holders' vote as a consequence of the changes, amendments or modifications to the Plan after entry of the Disclosure Statement Order.

## D.    Plan Implementation

78.    General Authorization. The transactions described in the Plan, the other Plan Documents, and this Confirmation Order are hereby approved. On or before the Effective Date, and after the Effective Date, as necessary, and without any further order of the Court or other authority, the Debtors and their respective directors, officers, members, agents, attorneys, financial advisors, and investment bankers are authorized and empowered pursuant to section 1142(b) of the Bankruptcy Code and other applicable laws to and shall (a) grant, issue, execute,

33

deliver, file, or record any agreement, document, or security, and the documents contained in the

Plan or the Plan Documents (as modified, amended, and supplemented pursuant to the provisions

of the Plan governing such modifications, amendments, and supplements), in substantially the

form included therein, or any other documents related thereto and (b) take any action necessary

or appropriate to implement, effectuate, and consummate the Plan, the Plan Documents, or this

Confirmation Order, in accordance with their terms. All such actions taken or caused to be taken

shall be deemed to have been authorized and approved by the Court without further approval,

act, or action under any applicable law, order, rule, or regulation, including, among other things,

(a) all transfers of assets that are to occur pursuant to the Plan, the Plan Documents, or this

Confirmation Order; (b) the incurrence of all obligations contemplated by the Plan, the Plan

Documents, or this Confirmation Order and the making of all distributions under the Plan, the

Plan Documents, or this Confirmation Order; and (c) entering into any and all transactions,

contracts, leases, instruments, releases, and other documents and arrangements permitted by

applicable law, order, rule, or regulation. The approvals and authorizations specifically set forth

in this Confirmation Order are nonexclusive and are not intended to limit the authority of the

Debtors or the Plan Administrator to take any and all actions necessary or appropriate to

implement, effectuate, and consummate any and all documents or transactions contemplated by

the Plan or this Confirmation Order pursuant to section 1142(b) of the Bankruptcy Code.

Pursuant to section 1142 of the Bankruptcy Code, to the extent that, under applicable

nonbankruptcy law or the rules of any stock exchange, any of the foregoing actions that would

otherwise require approval of the equity holders or directors (or any equivalent body) of the

Debtors, such approval shall be deemed to have occurred and shall be in effect from and after the

Effective Date without any further action by the equity holders or directors (or any equivalent body) of the Debtors.

79.    <u>Filing and Recording</u>. On the Effective Date, or as soon thereafter as is practicable, the Debtors, as applicable, shall, if required, file any documents required to be filed in such jurisdictions so as to effectuate the provisions of the Plan. This Confirmation Order is and shall be binding upon and shall govern the acts of all persons or entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any stamp tax or similar tax imposed by state or local law.

**E.    <u>Binding Effect</u>**

80.    On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the Plan, the Plan Documents, and this Confirmation Order shall bind any holder of a Claim or Equity Interest and such holder's respective successors and assigns, whether or not: (a) the Claim or Equity Interest is Impaired under the Plan; (b) such holder has accepted the Plan; (c) such holder has failed to vote to accept or reject the Plan or voted to reject the Plan; (d) such holder is entitled to a distribution under the Plan; (e) such holder will receive or retain any property or interests in property under the Plan; (f) such holder

35

has filed a Proof of Claim in the Bankruptcy Cases, or (g) such holder appeared or took any action in the Bankruptcy Cases (provided such holder received constitutionally adequate notice of the Bankruptcy Cases). The Plan, the Plan Documents, and this Confirmation Order constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan, the Plan Documents, and this Confirmation Order shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law to the fullest extent permitted by law.

**F.      Operation as of the Effective Date**

81.     Upon the occurrence of the Effective Date, the terms of the Plan, the Plan Documents, and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all holders of Claims against or Equity Interests in the Debtors (irrespective of whether their Claims or Equity Interests are deemed to have accepted the Plan), all entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each entity acquiring property under the Plan, any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors, and any Person having received constitutional adequate notice of the Bankruptcy Cases.

**G.      Distributions**

82.     All distributions pursuant to the Plan shall be made in accordance with Article 3 of the Plan, unless the Court expressly authorizes in this Confirmation Order or otherwise, and such methods of distribution are approved.

**H.      Retained Assets**

83.     To the extent that the retention by the Debtors of assets held immediately prior to emergence in accordance with the Plan is deemed, in any instance, to constitute a "transfer" of

property, such transfer of property to the Debtors (a) is or shall be a legal, valid, and effective transfer of property; (b) vests or shall vest the Debtors with good title to such property, free and clear of all liens, charges, Claims, encumbrances, or interests, except as expressly provided in the Plan or this Confirmation Order; (c) does not and shall not constitute an avoidable transfer under the Bankruptcy Code or under applicable nonbankruptcy law; and (d) does not and shall not subject the Debtors to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including by laws affecting successor or transferee liability.

## I.   Treatment of Executory Contracts and Unexpired Leases

84.   Rejection of the Executory Contracts and Unexpired Leases pursuant to section 7.01 of the Plan and sections 365(a) and 1123(b)(2) of the Bankruptcy Code is hereby approved. Any executory contract or unexpired lease (excluding insurance policies and the Intercompany Services Agreements necessary to preserve the Gawker.com Assets) that (i) has not expired by its own terms on or prior to the Confirmation Date, (ii) has not been assumed, assumed and assigned, or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, or (iii) is not the subject of a motion to assume which is pending at the time of the Confirmation Date, shall be deemed rejected on the Effective Date.

85.   Executory contracts and unexpired leases entered into by the Debtors after the Petition Date shall remain enforceable after the Effective Date by all parties pursuant to their terms.

86.   After the Effective Date, the Debtors, acting through the Plan Administrator, may settle any dispute regarding the amount of any cure cost required by section 365(b) of the Bankruptcy Code without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

87.     Pursuant to section 7.02 of the Plan, Claims created by the rejection of executory contracts and unexpired leases pursuant to Section 7.01 of the Plan, or the expiration or termination of any executory contract or unexpired lease prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Plan Administrator no later than sixty (60) days after the Effective Date.  Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to section 7.01 of the Plan for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Debtors' estates and their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article 5 of the Plan.

**J.     Plan Administrator**

88.     The Plan Administrator is Opportune LLP, whose appointment is hereby approved. Any successor Plan Administrator shall be determined in accordance with the Plan Administrator Agreement.

**K.     Exemption from Transfer Taxes**

89.     Pursuant to section 1146(c) of the Bankruptcy Code, none of (a) the issuance, transfer or exchange of any security under, in furtherance of, or in connection with, the Plan, (b) the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by the Plan (including real and personal property), or (c) the disposition and/or encumbrance of assets in connection with any transactions contemplated hereunder (including

38

any subsequent sale of property pursuant to the Plan), shall be subject to any stamp, real estate

transfer, mortgage recording sales, use, or other similar tax.

## L.    Governmental Approvals Not Required

90.    This Confirmation Order shall constitute all approvals and consents required, if

any, by the laws, rules, or regulations of any state or any other governmental authority with

respect to the implementation or consummation of the Plan and the Plan Documents.

## M.    Tax Withholding

91.    The Debtors shall comply with all tax withholding and reporting requirements

imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be

subject to such withholding and reporting requirements. Notwithstanding any provision in the

Plan to the contrary, the Debtors shall be authorized to take all actions necessary or appropriate

to comply with such withholding and reporting requirements, including liquidating a portion of

the distribution to be made under the Plan to generate sufficient funds to pay applicable

withholding taxes, withholding distributions pending receipt of information necessary to

facilitate such distributions or establishing any other mechanisms they believe are reasonable and

appropriate.

## N.    Compromise and Settlement of Claims, Equity Interests, and Controversies

92.    Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy

Code and in consideration for the classification, distributions, releases, and other benefits

provided pursuant to the Plan, on the Effective Date, the provisions of the Plan shall constitute a

good faith compromise and settlement of all Claims (including the Claims settled by the Plan

Settlements), Equity Interests, controversies, or issues relating to the contractual, legal, and

subordination rights that a holder of a Claim or Equity Interest may have with respect to any

Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed

Claim or Equity Interest, as reflected in the Plan Settlements.

93.    The Plan Settlements are hereby approved, as each is in the best interests of the

Debtors, their estates, and holders of Claims and Equity Interests and each is fair, equitable, and

within the range of reasonableness.

94.    The Bollea Claims Settlement, as set forth in section 4.01(c) of the Plan and in

exhibit C of the Plan Supplement (as such settlement agreement may be modified in non-material

respects prior to the Effective Date) is in the best interest of the Debtors, their estates, and

holders of Claims and Equity Interests and each is fair, equitable, and within the range of

reasonableness.

95.    The Terrill Claims Settlement, as set forth in section 4.01(d) of the Plan and in

exhibit E of the Plan Supplement (as may be modified in non-material respects prior to the

Effective Date) is in the best interest of the Debtors, their estates, and holders of Claims and

Equity Interests and each is fair, equitable, and within the range of reasonableness.

96.    The Ayyadurai Claims Settlement as set forth in section 4.01(d) of the Plan and in

the settlement agreement attached as exhibit D of the Plan Supplement (as such settlement

agreement may be modified in non-material respects prior to the Effective Date) is in the best

interest of the Debtors, their estates, and holders of Claims and Equity Interests and each is fair,

equitable, and within the range of reasonableness.

97.    In accordance with the provisions of the Plan and subject to section 4.06 of the

Plan, pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code, without

any further notice to or action, order, or approval of the Bankruptcy Code, after the Effective

Date, the Debtors, acting through the Plan Administrator, may compromise and settle Claims against the Debtors and their estates and Causes of Action against any person or entity.

**O.    Record Date for Distributions to Holders of Allowed Claims**

98.    Except as otherwise provided in the Plan, all distributions to holders of Allowed Claims shall be made by the Debtors to the holders of Allowed Claims of record as of the Distribution Record Date.

**P.    Debtor Releases**

99.    The release provisions as set forth in sections 9.03 of the Plan are approved in their entirety pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and shall be immediately effective as of the Effective Date and binding on all persons to the extent set forth therein.

**Q.    Third-Party Releases**

100.    The release provisions as set forth in sections 9.05 of the Plan are approved in their entirety pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and shall be immediately effective as of the Effective Date and binding on all persons to the extent set forth therein.

**R.    Exculpation**

101.    The exculpation provision set forth in section 9.04 of the Plan is hereby approved in its entirety pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and shall be immediately effective as of the Effective Date and binding on the Debtors, the holders of all Claims and Equity Interests, and any other person or entity identified in the Plan, and their respective successors and assigns.

59965816_3

**S.**       **Injunction**

102.    The injunction provisions set forth in sections 9.01 and 9.02 of the Plan are hereby approved in their entirety pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and shall be immediately effective as of the Effective Date and binding on all persons to the extent set forth therein.

**T.**       **Certain Government Matters**

103.    As to the United States of America, its agencies, departments, or agents (collectively, the "United States"), nothing in the Plan or Confirmation Order shall limit or expand the scope of discharge, release or injunction to which the Debtors are entitled to under the Bankruptcy Code, if any.  The discharge, release and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar the United States from, subsequent to the Confirmation Order, pursuing any police or regulatory action.

104.    Accordingly, notwithstanding anything contained in the Plan or Confirmation Order to the contrary, nothing in the Plan or Confirmation Order shall discharge, release, impair or otherwise preclude: (a) any liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (b) any Claim of the United States arising after the Effective Date; (c) any valid right of setoff or recoupment of the United States against any of the Debtors; or (d) any liability of the Debtors under police or regulatory statutes or regulations to any Governmental Unit (as defined by section 101(27) of the Bankruptcy Code) as the owner, lessor, lessee or operator of property that such entity owns, operates or leases after the Effective Date. Nor shall anything in this Confirmation Order or the Plan: (i) enjoin or otherwise bar the United States or any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence; or (ii) divest any court, commission, or tribunal of jurisdiction to determine whether any liabilities asserted by the United

42

States or any Governmental Unit are discharged or otherwise barred by this Confirmation Order,

the Plan, or the Bankruptcy Code.

105.    Moreover, nothing in the Confirmation Order or the Plan shall release or

exculpate any non-debtor, including any Released Parties, from any liability to the United States,

including but not limited to any liabilities arising under the Internal Revenue Code, the

environmental laws, or the criminal laws against the Released Parties, nor shall anything in this

Confirmation Order or the Plan enjoin the United States from bringing any claim, suit, action or

other proceeding against the Released Parties for any liability whatsoever; provided, however,

that the foregoing sentence shall not limit the scope of discharge granted to the Debtors under

sections 524 and 1141 of the Bankruptcy Code.

### U.    Payment of Insurance Proceeds

106.    Every insurer that is party to an insurance policy with a Debtor is authorized to

make distributions out of any such insurance policy or proceeds of such policy directly to the

insured Debtor pursuant to the terms of the insurance policy, whether to reimburse the insured

Debtor's estate, exhaust and/or settle coverage under the insurance policy, and/or retire the

insurance policy.

### V.    Notice of Entry of Confirmation Order and Occurrence of the Effective Date

107.    As soon as practicable after the Effective Date, the Debtors shall file with the

Court and serve by first class mail or overnight delivery service a notice of the entry of this

Confirmation Order and occurrence of the Effective Date, in substantially the form annexed

hereto as **Exhibit 2** (the "Confirmation and Effective Date Notice"), on each of the following at

their respective addresses last known to the Debtors: (a) the Office of the U.S. Trustee for the

Southern District of New York and (b) all parties in the Voting and Distribution Agent's records,

including: (i) all known creditors and holders of Claims; (ii) all known Equity Holders; (iii)

43

counsel to the Committee; (iv) counsel to the Prepetition Second Lien Lender; (v) the United

States Attorney's Office for the Southern District of New York; (vi) the Internal Revenue

Service; (vii) the United States Securities and Exchange Commission; and (viii) any party that

has requested notice pursuant to Bankruptcy Rule 2002. Such service shall constitute adequate

and sufficient notice pursuant to Bankruptcy Rule 2002(f)(7), 2002(i)-(l) and 3020(c) of the

confirmation of the Plan, the entry of this Confirmation Order and occurrence of the Effective

Date.

**W.      Cancellation and Surrender of Instruments, Securities, and Existing Agreements**

108.    On the Effective Date and concurrently with the applicable distributions made

pursuant to Articles 3 of the Plan, except for the Membership Interests in Gawker Media and

Gawker Hungary, all notes, instruments, certificates, and other documents evidencing Claims or

Equity Interests against the Debtors shall be deemed cancelled and of no further force and effect

against the Debtors, without any further action on the part of any Debtor.  From and after the

making of the applicable distributions pursuant to the Plan, the holders of such notes,

instruments, certificates, and other documents shall have no rights against the Debtors arising

from or relating to such notes, instruments, certificates, and other documents or the cancellation

thereof, except the rights provided pursuant to the Plan.

**X.      Professional Compensation and Reimbursement Claims**

109.    All final requests for compensation or reimbursement of costs and expenses

pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services

rendered to the Debtors or the Committee prior to the Effective Date must be filed with the

Bankruptcy Court and served on the Plan Administrator, Debtors, the Committee, their

respective counsel, and the United States Trustee, no later than sixty (60) days after the Effective

Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such

44

Professionals or other entities for compensation or reimbursement of costs and expenses must be filed and served on the Plan Administrator, the United States Trustee, and the requesting party no later than twenty (20) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

110.    The Professional Fee Claim Reserve as set forth in section 5.03 of the Plan is hereby approved. In the event there is a remaining balance in the GMGI, Gawker Media, or Gawker Hungary Professional Fee Claim Reserve after payment of all Allowed Professional Fee Claims against the applicable Debtor, in accordance with Section 2.03 of the Plan, such remaining amount, if any, shall be returned to the applicable Debtor for distribution pursuant to the Plan.

111.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Second Lien Lender Expenses will be paid on the Effective Date pursuant to section 4.01(a) of the Plan.

### Y.    Effect of Confirmation Order on Other Orders

112.    Unless expressly provided for herein, nothing in the Plan or this Confirmation Order shall affect any orders entered in the Bankruptcy Cases pursuant to section 365 of the Bankruptcy Code or Bankruptcy Rule 9019.

### Z.    Inconsistency

113.    In the event of any inconsistency between the Plan (including the Plan Supplement) and this Confirmation Order, this Confirmation Order shall govern. To the extent any provision of any final Plan Supplement document may conflict or is inconsistent with any provision in the Plan, the terms of the final Plan Supplement document shall govern and be binding and exclusive.

45

**AA.** **Authorization to Consummate**

114.    The Debtors are authorized to consummate the Plan and the Plan Transactions at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to consummation set forth in Article 6 of the Plan.

**BB.** **Substantial Consummation**

115.    On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**CC.** **No Waiver**

116.    The failure to specifically include any particular Plan Document or provision of the Plan or Plan Document in this Confirmation Order will not diminish the effectiveness of such document or provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in their entirety, the Plan Documents are approved in the entirety, and all are incorporated herein by this reference.

**DD.** **Severability**

117.    Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified; and (c) nonseverable and mutually dependent.

**EE.** **Administrative Claims Bar Date**

118.    Except as otherwise provided in the Plan, requests for payment of Administrative Claims (other than Professional Fee Claims) not required to be have been filed by a prior Administrative Claim Bar Date, must be filed and served on the Debtors and Plan Administrator within sixty (60) days of the Effective Date.  Holders of Administrative Claims that are required to, but do not, file and serve a request for payment of such Administrative Claims by such date

shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be filed and served on the applicable Debtor and the requesting party no later than the Administrative Claims Objection Deadline, which is the date that is one-hundred-twenty (120) days after the Effective Date.

**FF.    Dissolution of the Committee**

119.    On the Effective Date, the Committee shall dissolve and all members, employees, or agents thereof shall be released and discharged from all rights and duties arising from or related to the Bankruptcy Cases, except to the extent necessary to prosecute any appeals or other matters with respect to which they have been granted standing. The Debtors shall not be responsible for paying any fees or expenses incurred by the members of or advisors to the Committee after the Effective Date, except such fees and expenses incurred and approved with respect to the submission of the Committee's final fee application.

**GG.    Effect of Non-Occurrence of Effective Date**

120.    If the Effective Date does not occur pursuant to section 6.04 of the Plan, then: (a) the Plan shall be null and void in all respects, and (b) nothing contained in the Plan shall (i) constitute a waiver or release of any claims by or against, or any interest in, the Debtors or (ii) prejudice in any manner the rights of the Debtors or any other party in interest.

**HH.    Debtors' Actions Post-Confirmation Through the Effective Date**

121.    During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate their business as a debtor in possession, subject to the oversight of the Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of the Court that is in full force and effect.

59965816_3

## II.    Conditions to Effective Date

122.    The Plan shall not become effective unless and until the conditions set forth in section 6.02 of the Plan have been satisfied or waived pursuant to section 6.03 of the Plan.

123.    Notwithstanding anything to the contrary in the Plan or any other Plan Document, if the Effective Date has not occurred on or before December 28, 2016, then the Debtors are authorized, but not directed, to make distributions in respect of the Bollea Claims Settlement, the Terrill Claims Settlement, the Ayyadurai Claims Settlement, and the Allowed Gawker Media General Unsecured Convenience Claims on or after December 29, 2016.

## JJ.    Bankruptcy Rule 3020(e)

124.    The 14-day stay of this Confirmation Order set forth in Bankruptcy Rule 3020(e) is waived, and this Confirmation Order shall become immediately effective.

## KK.    Resolution of Certain Confirmation Objections

125.    Except as set forth below, all objections, responses, reservations, statements, and comments in opposition to the Plan, other than those resolved as set forth in paragraphs 126 through 135 of this Confirmation Order or in revisions to the Plan approved by this Confirmation Order or withdrawn with prejudice prior to, or on the record at, the Confirmation Hearing are overruled on the merits in all respects. Any withdrawn objections are deemed withdrawn with prejudice.

### i.    *Publicis Confirmation Objection Resolution*

126.    In resolution of the *Limited Objection of Publicis Media Agencies' to Confirmation of the Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 544], notwithstanding anything to the contrary in the Plan, the setoff and recoupment rights of Starcom Worldwide, Inc. and its affiliated agencies in the media advertising and related business, if any, related to proof of claim

48

nos. 307, 309, and 310 filed in the Bankruptcy Cases, are not extinguished by virtue of the Plan or this Confirmation Order.

### ii.    *Williams Claims Settlement*

127.    Mitchell Williams ("Williams") filed proof of claim no. 6 against Gawker Media (the "Williams Claim").  The Williams Claim asserts a single claim of $50 million under New Jersey law based on alleged defamation and related torts against Gawker Media, which were the subject of a pre-petition lawsuit against Gawker Media and a non-Debtor defendant (the "New Jersey Lawsuit"). On October 31, 2016, the Debtors objected to the Williams Claim pursuant to the *Objection of Debtor Gawker Media LLC to Proof of Claim No. 6 Filed by Mitchell Williams, and Motion to Apply Fed. R. Civ. P. 12(b)(6) and 12(c) Pursuant to Bankruptcy Rules 9014 and 7012* [Docket No. 391] (the "Williams Claim Objection"). Williams opposed the Williams Claim Objection pursuant to the *Opposition to Objection of Debtor Gawker Media LLC to Proof of Claim No. 6 Filed by Mitchell Williams, and Motion to Apply Fed. R. Civ. P. 12(b)(6) and 12(c) Pursuant to Bankruptcy Rules 9014 and 7012* [Docket No. 459].

128.    On November 14, 2016, the Debtors filed the *Debtors' Motion Pursuant to Bankruptcy Code Sections 105, 502(c) and 1129 and Bankruptcy Rules 3018 and 3021 for Approval of Claims Estimation and Plan Reserve Procedures* [Docket No. 444] (the "Estimation Motion"). Williams opposed the Estimation Motion pursuant to the *Reserve Objection in Further Support of Objection of Mitchell Williams to Debtors' Motion Authorizing and Establishing Certain Procedures for Approving Certain Claims Reserves and Distributions [Dkt. 444]* (Docket No. 552) (the "Williams Estimation Objection").

129.    On November 17, 2016, Williams filed the *Motion of Mitchell Williams for an Order (I) Modifying the Automatic Stay, for "Cause", Pursuant to 11 U.S.C. § 362(d) to Permit*

*an Appeal in State Court Litigation Involving a Personal Injury Defamation Claim Against Debtor; (II) Authorizing a Trial in State Court of Williams' Personal Injury Defamation Claim Against Debtor, Solely to Establish Liability and Amount of Williams' Claim; and (III) Granting Such Other and Further Relief as May be Appropriate* [Docket No. 460-1] (the "Williams Lift Stay Motion").

130.    Williams objected to confirmation of the Plan pursuant to the *Objection of Mitchell Williams to Confirmation of Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft. [Dkt. 427]* (Docket No. 545) (the "Williams Confirmation Objection").

131.    In resolution of the Williams Confirmation Objection, the Williams Claim Objection, the Williams Lift Stay Motion, and in full in full and complete satisfaction, release, and discharge of, and in exchange for, the Williams Claims (the "Williams Claim Settlement"), Williams is deemed to have an Allowed Gawker Media General Unsecured Convenience Class claim in the amount of $25,000. The Debtors are authorized to make an additional payment to Williams for $100,000 (the "Insurance Proceeds Payment") on or as soon as reasonably practicable after the Effective Date. The Debtors' insurer is authorized to reimburse the Debtors for the Insurance Proceeds Payment pursuant to the terms of the insurance policy and any other agreement with the Debtors. Upon the Debtors' payment of the $125,000, Williams shall be deemed to have withdrawn with prejudice the Williams Lift Stay Motion and shall enjoined from taking any appeal from the pre-petition dismissal and summary judgment of the New Jersey Lawsuit or taking any other action with respect to the Debtors or any of the Debtors' Employee and Independent Contractors related to the New Jersey Lawsuit.

50

132.   The Williams Claim Settlement is in the best interests of the Debtors, the Debtors'

estates and the holders of Claims and Equity Interests. The Williams Claim Settlement is fair,

equitable and falls above the lowest point in the range of reasonableness. The Williams Claim

Settlement consensually resolves the Williams Claim (which was asserted for $50 million), the

New Jersey Lawsuit, and the Estimation Motion as it applies to Williams for $125,000. The

Williams Claim Settlement also achieves a resolution of Williams' Confirmation Objection.

Additionally, the Debtors will not need to expend estate resources in continuing to prosecute the

Williams Claim Objection and the New Jersey Lawsuit.

133.   The Williams Claim Settlement is a product of arms-length, good faith

negotiations between Williams and Gawker Media, both of whom were represented by skilled

and experienced professionals. Gawker Media's independent director reviewed and approved the

Williams Claim Settlement. The Committee supports the Williams Claim Settlement. All parties

in interest have been provided with adequate notice of the Williams Claim Settlement pursuant to

Bankruptcy Rule 6004.

### iii.   *Daulerio Confirmation Objection Resolution*

134.   In resolution of the *Limited Objection of Albert James Daulerio to Confirmation*

*of the Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc.,*

*Gawker Media LLC, and Gawker Hungary Kft. [doc. #413-1], with reservation of rights* (Docket

No. 543) and the *Debtors' Omnibus Objection to Proofs of Claim Nos. 293, 294, and 295 filed*

*by Albert James Daulerio* [Docket No. 493] and (ii) *Debtors' Motion Pursuant to Bankruptcy*

*Code Sections 105 and 502(e)(1) and Bankruptcy Rule 3018 for Estimation of Claim Nos. 293,*

*294 and 295 filed by Albert James Daulerio* [Docket No. 495], the Debtors are authorized to

establish and fund a reserve of $500,000 with respect to the three proofs of claim (Nos. 293, 294,

295) filed by Daulerio against the Debtors. The Debtors and Daulerio reserve their rights in respect of the Daulerio Claims Objection, but in no event will payment on the Daulerio Claims exceed $500,000.

135.    For the avoidance of doubt, Daulerio is a Released Party and a Released Employee and Independent Contractor, as such terms are defined in the Plan, with respect to any actions other than the Bollea I Lawsuit.

New York, New York
Dated: _____, 2016

_____
THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

52

## EXHIBIT 1

**Plan**

## **EXHIBIT 2**

**Form of Confirmation and Effective Date Notice**

Ropes & Gray LLP
Gregg M. Galardi
D. Ross Martin
Joshua Y. Sturm
Jonathan M. Agudelo
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------x
                                           :
In re                                      :        Chapter 11
                                           :
Gawker Media LLC, *et al.*,[1]             :        Case No. 16-11700 (SMB)
                                           :
                   Debtors.                :        (Jointly Administered)
                                           :
--------------------------------------------------------x

**NOTICE OF (I) ENTRY OF ORDER CONFIRMING THE DEBTORS'**
**AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR**
**GAWKER MEDIA GROUP, INC., GAWKER MEDIA LLC, AND**
**GAWKER HUNGARY KFT. AND (II) OCCURRENCE OF EFFECTIVE DATE**

**TO ALL CREDITORS, INTEREST HOLDERS, AND OTHER PARTIES IN INTEREST:**

        **PLEASE TAKE NOTICE** that an order [Docket No. --] (the "Confirmation Order")
confirming the *Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media
Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* (as may be modified, the "Plan"),
was entered by the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, and
docketed by the Clerk of the United States Bankruptcy Court for the Southern District of New
York (the "Bankruptcy Court") on December [--], 2016.  Unless otherwise defined in this notice,
capitalized terms used herein shall have the meanings ascribed to them in the Plan and
Confirmation Order.

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker
Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Each Debtor's mailing addresses is
c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New
York, NY 10022.

**PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order, the Plan and the related documents, may be obtained free of charge by visiting the website of Prime Clerk LLC at https://cases.primeclerk.com/gawker/.  You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on December [--], 2016.

**PLEASE TAKE FURTHER NOTICE** that, unless otherwise provided by the Plan, the Confirmation Order, any other applicable order of the Bankruptcy Court, or agreed to by the holder of an Allowed Administrative Expense Claim and the Debtors, all requests for payment of Administrative Claims (other than Professional Fee Claims) not required to be have been filed by a prior Administrative Claim Bar Date, must be filed and served on the Debtors and Plan Administrator **within sixty (60) days of the Effective Date, [_____], 2017**.  Holders of Administrative Claims that are required to, but do not, file and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests, if any, must be filed and served on the applicable Debtor and the requesting party **no later than** one-hundred-twenty (120) days after the Effective Date, [_____], 2017.

**PLEASE TAKE FURTHER NOTICE** that all final requests for compensation or reimbursement of costs and expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered to the Debtors or the Committee prior to the Effective Date must be filed with the Bankruptcy Court and served on the Plan Administrator, the Debtors, the Committee, their respective counsel, and the United States Trustee, **no later than sixty (60) days after the Effective Date, [_____], 2017**, unless otherwise ordered by the Bankruptcy Court.  Objections to applications of such Professionals or other entities for compensation or reimbursement of costs and expenses must be filed and served on the Plan Administrator, the United States Trustee, and the requesting party **no later than** twenty (20) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

**PLEASE TAKE FURTHER NOTICE** that, unless otherwise provided by an order of the Bankruptcy Court, any Claims created by the rejection of executory contracts and unexpired leases pursuant to Section 7.01 of the Plan, or the expiration or termination of any executory contract or unexpired lease prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Plan Administrator **no later than** thirty (30) days after the Effective Date, [_____], 2017.  Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to Section 7.01 for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Debtors' estate and their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article 5 of the Plan.

2

**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtors, any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan and whether or not such holder or Entity voted to accept the Plan.

Dated: December [--], 2016
      New York, New York

*/s/ Draft*

ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Joshua Y. Sturm
Jonathan M. Agudelo
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
gregg.galardi@ropesgray.com
ross.martin@ropesgray.com
joshua.sturm@ropesgray.com
jonathan.agudelo@ropesgray.com

*Counsel to the Debtors*
*and Debtors in Possession*