# SPECIAL INVESTIGATIVE TECHNIQUES IN PUBLIC CORRUPTION INVESTIGATIONS

by: Dan Bernstein
Assistant United States Attorney
Southern District of Florida

# GENERAL CONSIDERATIONS

- Extremely important cases - Crimes by public officials undercut confidence in
- government while an acquittal can make a defendant into a hero

- Often not easy or popular to prosecute - Elected officials have popular support and may claim political targeting

- Witnesses run personal and financial risks for cooperating and are less likely to come forward if cases do not result in convictions

- Need thick skin - defendants may try to put the government on trial

# PRESENTATION WILL DEAL WITH THE FOLLOWING

- Identifying potential targets

- Developing an investigative theory

- Choosing the best investigative techniques

- Issues unique to proactive investigations

- Special considerations in public corruption investigations

# IDENTIFYING POTENTIAL TARGETS

- Law enforcement and government sources, including inspectors general, and contract compliance and oversight personnel

- Complaining citizens; business competitors or political rivals; disgruntled current or former employees; paid informants and cooperating defendants; individuals involved in the illegal activity who are seeking to limit or eliminate their criminal exposure by blowing the whistle on corrupt conduct

- Print, television, and internet media outlets

# IDENTIFYING POTENTIAL TARGETS

- Specific target may be identified - Consider credibility - Does source have a motive to lie? Is there corroboration?

- Transactions may be identified or appear suspect without specific targets

  Need to identify the entities and individuals involved and make a preliminary assessment of the roles played by these individuals, such as decision makers, knowledgeable actors, unwitting participants, and knowledgeable but uninvolved potential witnesses

- Always follow the money - Determine who profited from the transaction and how - Corruption cases are always about the money

# DEVELOPING AN INVESTIGATIVE THEORY

- Theory gives direction to the investigation, but be flexible

- First step is making an initial assessment of whether the alleged corrupt conduct appears to be criminal, or whether it is civil or administrative in nature

- Second step is identifying elements needed to prove the crimes

- Third step is to try to anticipate possible factual and legal issues and defenses and build your case to rebut or avoid them.

# MAIN TYPES OF INVESTIGATIONS

- Historical cases - based on document analysis and witness interviews


- Proactive/undercover cases - running gamut from one day and one deal to elaborate and long-running multi-transaction and multi-target operations

# CHOOSING THE BEST INVESTIGATIVE TECHNIQUES

- Determining which investigative tools to use depends on a variety of factors, including the nature of the alleged violations, the type of investigation you are conducting, and the resources you have available

- Normal progression from simple to complex, with information from initial steps leading to more advanced steps, such as search warrants and wiretaps

- Mix and match your methods as appropriate

# HISTORICAL INVESTIGATIVE TECHNIQUES

- Public Source Information

- Internet and media sources

- Court filings, including criminal histories, divorces and other lawsuits, bankruptcy filings, and administrative proceedings before agencies such as the SEC, FTC, and insurance and banking regulators

- Choicepoint, Autotrack, property records

- Financial disclosure forms; Campaign contribution records; Lobbyist registrations and disclosures

# HISTORICAL INVESTIGATIVE TECHNIQUES

- Information from Parallel Proceedings

- Corruption cases are often set in backdrop of contract disputes and fraud cases. There may be ongoing civil litigation or administrative proceedings generating valuable information, and you should obtain relevant depositions, pleadings, transcripts and court orders.

- Despite common interests, do not work in tandem or actively use the civil litigant to further your investigation, such as by giving them questions to ask    at depositions or having them seek documents for you.

# HISTORICAL INVESTIGATIVE TECHNIQUES

- Mail Covers

- Very useful in identifying target's banks, investment firms, et al

- Trash Pulls - "Dumpster Diving"

- Can be very useful if target has recently become aware that they are under suspicion - panic can cause carelessness in disposing of valuable records

# HISTORICAL INVESTIGATIVE TECHNIQUES

- Grand Jury Subpoenas - Documents

- Used to gather foundational materials. Consider whether the entity being served can be relied on to not disclose the subpoena, or whether the records sought are worth the risk

- Issue as early as possible - document production can be slow, particularly with voluminous requests, older records, and/or smaller producing institutions

# HISTORICAL INVESTIGATIVE TECHNIQUES

- Grand Jury Subpoenas - Documents to Obtain

- Bank, brokerage, and other investment account records

- Credit reports & credit card records

- Loan and mortgage records

- Telephone records

- Corporate records

# HISTORICAL INVESTIGATIVE TECHNIQUES

- Grand Jury Subpoenas - Documents

- Do quick initial review to determine subpoena compliance. Do not assume full compliance since many institutions see subpoena compliance as a nuisance and distraction from their "real" business.

- Documents must reviewed and cataloged for use during the investigation and for discovery and trial evidence purposes.

- Document review is time and labor intensive, but is usually the heart of any meaningful historical corruption case.

# HISTORICAL INVESTIGATIVE TECHNIQUES

- Witness Interviews

- Essential investigative steps which require serious thought, planning, and preparation.  When possible, conduct interviews after you have obtained and reviewed the documents related to the witness.

- General rule - your way up the chain of involvement and culpability

- Remember to consider interviewing the current and former confidants

# HISTORICAL INVESTIGATIVE TECHNIQUES

- Grand Jury Subpoenas - Testimony

- General rule - do not use the grand jury as your interviewing forum.  Usually far better to get voluntary interviews first.

- Two main situations to use grand jury testimony as an investigative tool

- Witnesses who may have useful information but will not agree to a  voluntary interview

- Possible defense witnesses - find out what they will say and lock them into that story.

# HISTORICAL INVESTIGATIVE TECHNIQUES

- Immunity

- A double-edged sword.  Gets you needed testimony but can cast doubt since people tend to dislike and distrust immunized witnesses.

- Weigh the costs and benefits carefully.  Jurors will understand immunizing lower-level witnesses to build a case against the main targets.

- Attempt to secure testimony through cooperation plea agreements Jurors are more likely to believe a witness who has accepted responsibility for their actions by pleading guilty than one who has received a "free pass."

# HISTORICAL INVESTIGATIVE TECHNIQUES

- Laboratory Analysis

- Handwriting and fingerprint analysis can be very useful in cases with key      documents and knowledge, intent, and/or participation questions.  Fingerprints can often be found on documents even after an extended period of time.

- Before requesting handwriting analysis, speak to your examiner to find out if  the questioned documents can be analyzed with any degree of certainty.  If  there is little chance of success, you may not want to do the analysis, particularly if fact witnesses can identify the handwriting or signature.

- Make the analysis request as early as possible

# HISTORICAL INVESTIGATIVE TECHNIQUES

- Tax Return Disclosure Requests - 26 USC Section 6103

- Very useful since targets often understate income on tax returns and overstate it on loan applications, corporate filings, and financial statements.

- Disclosure requests take a significant showing and a court order, and normally come after the investigation has substantiated some level of wrongdoing.

- After tax information is obtained under a disclosure order, there are important restrictions on their use and handling.

# HISTORICAL INVESTIGATIVE TECHNIQUES

- E-Mail Account Information from Internet Service Providers ("ISP")

- Two main types of information you will want: identification of the account holder; and, the stored content of the e-mails maintained on the system.

- Can be very valuable since people use e-mail freely and do not realize or care that hitting erase or delete does not remove the content from the system.

- Court orders and search warrants are needed to get this information. Since ISPs frequently delete content from their systems, use preservation letters asking ISPs to save the content while you obtain the necessary court orders and search warrants for disclosure.

# HISTORICAL INVESTIGATIVE TECHNIQUES

- Search Warrants

- One of the most powerful investigative tools in corruption cases.  Obtains evidence on a surprise basis, before it can be redacted, destroyed, or withheld even when production is required by a grand jury subpoena.

- Provides an opportunity to identify and interview those present at search site.

- Serve contemporaneous grand jury subpoena for the same documents

# HISTORICAL INVESTIGATIVE TECHNIQUES

- Search Warrants - Timing is Key Issue

- Need to be far enough along in investigation to develop probable cause and to know what you are actually looking for.

- The search exposes the investigation, so it generally should not be done until you have exhausted any covert opportunities.

- But, if you wait too long and your target becomes suspicious or aware of the investigation, valuable evidence may be destroyed or moved.

# HISTORICAL INVESTIGATIVE TECHNIQUES

- Search Warrants - They are Not Cost Free

- First and foremost, must commit to promptly and thoroughly review everything seized. This can be an extremely time and labor intensive. If you are not ready, willing, and able to do this review, don't do the search.

- Second, be aware of the public impact of a search on a high-profile target or location. It may bring attention to your investigation, increase public scrutiny on you and the target, and raise expectations that charges are imminent.

- Third, need to plan to best execute the warrant while limiting disruption of important functions when searching a government office. public building

# HISTORICAL INVESTIGATIVE TECHNIQUES

- Search Warrants - Computers and Computerized Data

- Any business or office search warrant is going to include computers and computerized data, and you must be able to seize and use this information.

- Have computer specialists involved in planning and executing the search so that computers and system data can be copied on the scene.  It is not desirable or feasible to take away the computers and deal with it later.

- Before searching, try to determine if review the seized data will require specialized assistance and equipment, and how you will make this information available for discovery and later trial use

# PROACTIVE INVESTIGATIVE TECHNIQUES

- Physical Surveillance

- Surveillance is valuable to corroborate information which has been received, to link targets, and identify people associated with the known targets

- Trackers ("Bumper Beepers")

- A slap-on tracker put on in a public place does not require a court order. An order is required to hard-wire a longer-lasting tracker onto a vehicle.

- Beware that under federal law, you are now required to disclose a tracker warrant to the person whose vehicle was tracked at the conclusion of its use. Delays of this notification are at the discretion of the court.

# PROACTIVE INVESTIGATIVE TECHNIQUES

- Pen Register and Trap and Trace Orders

- Allows real-time capture of the incoming and outgoing phone numbers for a particular phone number, and can also order phone company to provide subscriber information for each captured number.

- Requires a court order which can be based on a showing that the information sought is likely to be relevant to the criminal investigation.

# PROACTIVE INVESTIGATIVE TECHNIQUES

- Consensual Recordings

- Audio or video recordings where one party to the call or meeting (normally an undercover agent or cooperating witness) has agreed to record the conversation. These are authorized without any court order so long as the consenting party is on the line or in the room.

- Consensual recordings are the "bread and butter" of proactive investigations.

# PROACTIVE INVESTIGATIVE TECHNIQUES

- Title III Wiretaps and Recording Devices

- Extremely effective tools to investigate ongoing criminal activity, since they allow recording of phone calls and conversations without the presence or participation of an undercover agent or cooperating witness.

- Requires court order based on probable cause and satisfaction of other requirements, including exhaustion of other investigative options. The internal review process for a federal Title III is very demanding.

- Title III's are labor intensive, requiring real-time monitoring and minimization, and regular progress reports to the authorizing judge

# PROACTIVE INVESTIGATIVE TECHNIQUES

- Undercover Operations - Development and Planning Stage Is Key

- First step is determining what you are trying to achieve (i.e. proving a completed crime, infiltrating ongoing criminal activity, developing new cases on suspected corrupt officials, identifying criminals).

- Second step is creating and implementing a scenario designed to effectively and efficiently achieve those goals. Scenario must be realistic in light of targets, resources, and objectives

# PROACTIVE INVESTIGATIVE TECHNIQUES

- Undercover Operations - Avoiding the Usual Defenses

- Any undercover scenario needs to squarely present the criminal opportunity to the targets. Do not give the target a lack of knowledge or intent defense.

- Plan to avoid entrapment claims. Don't push too hard, offer too much money, or make it too easy, and offer opportunities for the target to back out.

# PROACTIVE INVESTIGATIVE TECHNIQUES

- Undercover Operations - Time, Labor, and Resource Intensive

- Must be patient - will take time to develop trust and opportunities

- Money will have to be spent for payoffs and to set up an undercover business, create appearances, wine and dine targets, etc

- Manpower will be needed - UCAs, case agents, surveillance, et al

# PROACTIVE INVESTIGATIVE TECHNIQUES

- Undercover Operations - Undercover Agents are Crucial

- Should make every effort to introduce a UCA into the scenario.

- UCA is essentially unimpeachable in contrast to either a cooperating defendant who is attempting to avoid charges or get a sentence reduction, or a paid informant, both of whom may have motives to lie

# PROACTIVE INVESTIGATIVE TECHNIQUES

- Undercover Operations - Lights, Camera, Action!

- With or without UCA, to the extent possible, you should have consensual or Title III recordings of every meeting and call.

- Tapes are unimpeachable and jurors expect them.

# ISSUES UNIQUE TO PROACTIVE INVESTIGATIONS

- Predication

- A reasonable basis to suspect the target is or has engaged in criminal activity.  Much lower than probable cause standard.

- Criminal investigations should not be fishing expeditions or integrity testing  operations, and predication helps prevent overreaching

- Predication helps overcome entrapment defense, claims of selective or vindictive prosecution, and Hyde Amendment (attorney's fees) claims

# ISSUES UNIQUE TO PROACTIVE INVESTIGATIONS

- Handling the Cooperating Witness ("CW")

- Give specific directions to the CW and make sure that the CW is told that no "freelancing" is permitted.  Enforce this from the beginning, and do not let the CW seize control, even if he or she appears to be producing results.

- Corroborate the CW as much as possible, even on small points, and make      sure all contacts between the CW and the targets are recorded.  Jurors tend to disbelief the uncorroborated, unrecorded word of a paid witness.

- Plan for impact of CW's plea agreement, immunity, or payments on the jury.

# ISSUES UNIQUE TO PROACTIVE INVESTIGATIONS

- Flipping a Corrupt Insider - Law Enforcement's "Silver Bullet"

- Leaving a flipped insider in place can be an extremely effective tool in an ongoing public corruption case because of the knowledge and access they can bring to the investigation.

- Can be used to strengthen or build cases against existing targets and to identify, predicate, investigate, and prosecute other targets.

- In setting with institutional or high-level corruption, a flipped target in place may be the key to gaining entry to a "closed-shop" of corruption.

# ISSUES UNIQUE TO PROACTIVE INVESTIGATIONS

- Flipping a Corrupt Insider - Inherent Risks

- Beware of: being double-crossed by a flipped insider who warns other targets and/or helps them generate exculpatory recordings; inadvertent leaks; the insider committing other crimes or wrongdoing while "on our side."

- Must also make sure that you keep the insider safe.

# ISSUES UNIQUE TO PROACTIVE INVESTIGATIONS

- The Flip Attempt

- Determine the right target to pitch. Normally neither the top nor the bottom target. Assess which target may be most effective as a continuing cooperator

- Use the element of surprise and make strongest presentation possible.

- If target wants to cooperate, start by getting a confession.

- If target wants to consult an attorney, they need to do it on the spot.

# SPECIAL CONSIDERATIONS IN PUBLIC CORRUPTION INVESTIGATIONS

- Impact of charges is enormous on elected officials or high-level appointees. Mere existence of an investigation can destroy a career or a life.

- Proceed carefully - you do not want to be used by someone looking to settle a political score or strike back at a business rival.

- Conduct the investigation and prosecution "by the book." Expect the defense to attack not only the charges, but also the conduct of the investigation.

- Be prepared for heightened public and press scrutiny. Remember that in any big corruption case, the "world is watching.