## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (this "Agreement") is made and entered into by and between (i) Mail Media Inc. ("MMI"), a Delaware corporation with its principal place of business in New York, New York, Associated Newspapers Limited ("ANL"), a United Kingdom limited company with its principal place of business in London, England and Daily Mail General Trust plc ("DMGT"), a United Kingdom corporation with its principal place of business in London, England on the one hand, and (ii) Gawker Media, LLC ("Gawker"), a Delaware limited liability company with its principal place of business in New York, and James King ("King"), a resident of the State of New York on the other hand. MMI, ANL, DMGT, Gawker, and King are each sometimes referred to herein as a "Party" and are jointly referred to herein as the "Parties." This Agreement shall be effective as of the date on which the last of each of the Parties executes this Agreement, subject only to approval of this Agreement by the Bankruptcy Court (as defined below) ("the Approval").

## RECITALS

WHEREAS, on March 4, 2015, Gawker published an article ("the March 4 Article"), authored by King, headlined: "My Year Ripping Off the Web With the Daily Mail Online". On March 6, 2015, Gawker updated the article. The updated article ("the March 6 Article") is available at http://tktk.gawker.com/my-year-ripping-off-the-web-with-the-daily-mail-online-1689453286. The March 4 Article and the March 6 Article are collectively referred to herein as "the Articles";

WHEREAS on March 4, 2015, MMI sent Gawker a letter stating that the allegations made by King in the March 4 Article were false and requesting that if Gawker decided to publish those allegations, then it should publish MMI's response to those allegations in full alongside the Article, but Gawker declined to publish the entire response;

WHEREAS, on September 3, 2015, MMI instituted an action against Gawker and King by filing a complaint with the Supreme Court of the State of New York, County of New York (Index No. 159134/2015) ("the Action"). The complaint alleges that the Articles defamed MMI. On November 25, 2015, Gawker and King each filed answers responding to the complaint and denying all liability;

WHEREAS, on June 10, 2016, Gawker filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York ("the Bankruptcy Court");

WHEREAS MMI, ANL and DMGT continue to believe that their claims against Gawker and King are meritorious and that they would ultimately prevail on those claims in a trial;

WHEREAS Gawker and King continue to believe that their defenses against MMI, ANL and DMGT are meritorious and that they would ultimately prevail on those defenses in a trial;

WHEREAS, to avoid the burden, distraction, expense and uncertainty of litigation, MMI, ANL, DMGT, Gawker, and King wish to settle, compromise and finally resolve all claims that MMI, ANL or DMGT could have asserted against King and/or Gawker (or its current or former

officers, directors and employees) arising out of the Articles and to resolve all defenses that could have been asserted as against such claims;

      NOW, THEREFORE, in consideration of the promises and undertakings set forth herein, and with the intent to be legally bound thereby, the Parties agree as follows:

THE SETTLEMENT CONSIDERATION

1.     Within five (5) days of the Approval, Gawker shall include an Editor's Note at the beginning of the March 6 Article which reads: "Per an agreement with DailyMail.com, DailyMail.com's entire statement in response to this post has been reproduced at the end of the post and the original illustration has been replaced with one that doesn't make use of DailyMail.com's trademark." Gawker agrees not to republish or cause to be republished the March 4 Article or move the March 6 Article from its current location on Gawker's website. The Parties expressly agree that in the event Gawker should sell, assign or otherwise transfer Gawker.com or its archives to a third party, such a sale, assignment or transfer is not a violation of this paragraph.

2.     Within five (5) days of the Approval, Gawker shall replace the current illustration for the post (which incorporates the Daily Mail's logo) with another illustration Gawker deems suitable to the post that does not incorporate the Daily Mail's logo.

3.     Within five (5) days of the Approval, Gawker shall publish DailyMail.com's entire statement in response to the post at the end of the March 6 Article in a scribd viewer window following a note that reads: "DailyMail.com's entire statement in response to this post is reproduced below." A copy of DailyMail.com's entire statement is attached as Exhibit A hereto.

4.     Within ten (10) days of the Approval, counsel for Gawker and King shall file a Stipulation of Discontinuance executed by counsel for all parties to the Action with the Supreme Court of the State of New York, County of New York in the form attached as Exhibit B.

SCOPE AND EFFECT OF SETTLEMENT; MUTUAL RELEASES

5.     The obligations incurred pursuant to this Agreement shall be in full and final disposition of all claims that any of the Parties now have, could have, or ever had relating to the Articles (including without limitation all claims that could have been asserted) against King, Gawker, or any of Gawker's current or former directors, officers or employees, or against MMI, ANL, DMGT or any of their current or former officers, directors or employees.

6.     Upon the performance of the Settlement Consideration specified in Paragraphs 1-4 above, the Parties shall have fully, finally, and forever released and discharged all claims that they now have, could have, or ever had relating to the Articles (including without limitation all claims that could have been asserted) against King, Gawker or any of Gawker's current or former directors, officers or employees, or against MMI, ANL, DMGT or any of their current or former directors, officers or employees, and shall forever be enjoined from instituting, commencing or prosecuting any such claims.

7. Except for claims for breach of this Agreement, MMI, ANL and DMGT release, remise, quitclaim and forever discharge the Gawker Releasees (as defined below) from, and MMI, ANL and DMGT covenant not to bring, commence, assert or prosecute against them, any claims, cross-claims, debts, demands, rights or causes of action or liabilities of any kind or nature whatsoever, whether legal, equitable, or statutory, liquidated or unliquidated, fixed or contingent, known or unknown, suspected or unsuspected, reasonably discoverable or not, which MMI, ANL or DMGT now has, could have, or ever had relating to the Articles (including without limitation all claims that could have been brought), as well as the statement attached as Exhibit A to this Agreement, before any court, arbitrator, or other tribunal in any jurisdiction. As used herein, the term "Gawker Releasees" means (i) Gawker, (ii) King and (iii) any other person or entity against whom any claims, cross-claims, debts, demands, rights, or causes of action or liabilities could have been asserted based on the status or capacity of such person or entity as a parent, subsidiary, business unit, officer, director, shareholder, current or former employee, attorney and/or agent of Gawker or King, or based on any action taken or omitted to be taken relating to the Articles by such person or entity in such capacity.

8. Except for claims for breach of this Agreement, Gawker and King remise, quitclaim and forever discharge the MMI Releasees (as defined below) from, and Gawker and King covenant not to bring, commence, assert, or prosecute against them, any claims, cross-claims, debts, demands, rights, or causes of action or liabilities of any kind or nature whatsoever, whether legal, equitable, or statutory, liquidated or unliquidated, fixed or contingent, known or unknown, suspected or unsuspected, reasonably discoverable or not, which Gawker or King now have, could have, or ever had relating to the Articles (including without limitation all claims that could have been brought), as well as the statement attached as Exhibit A to this Agreement, before any court, arbitrator, or other tribunal in any jurisdiction. As used herein, the term "MMI Releasees" means (i) MMI, (ii) ANL, (iii) DMGT, and (iv) any other person or entity against whom any claims, cross-claims, debts, demands, rights, or causes of action or liabilities could have been asserted based on the status or capacity of such person or entity as a parent, subsidiary, business unit, officer, director, shareholder, current or former employee, attorney and/or agent of MMI, ANL or DMGT, or based on any action taken or omitted to be taken relating to the Articles by such person or entity in such capacity.

WAIVER OF BENEFITS

9. The Parties expressly waive any and all provisions, rights, and benefits conferred by any law of the United States, or any state or territory of the United States, or principle of common law or foreign law, which may have the effect of limiting the releases set forth above. Without limiting the generality of the foregoing, the Parties shall be deemed by operation of law to have relinquished to the full extent permitted by law, the provisions, rights and benefits of California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM OR HER, MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Parties expressly waive the rights and benefits conferred by California Civil Code § 1542. The Parties acknowledge that the foregoing waiver was separately bargained for and a key element of the settlement of which the above release is a part.

NO ADMISSION OF WRONGDOING AND EXCLUSIONS

10. This Agreement and all negotiations, statements, and proceedings in connection herewith shall not be, in any event, (i) construed as or deemed to be evidence of, an admission of, or concession of any liability or wrongdoing and shall not be offered or received in evidence in any action or proceeding (except an action to enforce this Agreement), or be used in any way as an admission, concession, or evidence of any liability or wrongdoing of any nature; or (ii) construed as, or deemed to be evidence of, an admission or concession that MMI, ANL, DMGT, or any other person or entity, has or has not suffered any damage, or that King, Gawker, or any of Gawker's current or former oficers, directors or employees bear any responsibility for any alleged damages. This Agreement involves the settlement of claims which are denied and contested and nothing contained herein shall be construed as an admission by King, Gawker, or any of Gawker's current or former directors, officers or employees of any liability of any kind to MMI, ANL, DMGT, or any other person or entity.

MISCELLANEOUS PROVISIONS

11. The Parties have carefully read, and know and understand, the full contents of this Agreement, and agree that the terms of this Agreement were negotiated at arm's-length in good faith by the Parties and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

12. This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the Parties or their successors-in-interest.

13. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

14. The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

15. Each separately numbered term of this Agreement is contractual, not merely a recital.

16. This Agreement contains the entire agreement and understanding between the Parties concerning the subject matter hereof, and supersedes any prior or contemporaneous discussion or agreements thereon. The Parties acknowledge that no Party, or any agent, representative, attorney, or client of a Party, has made any promise, representation, or warranty whatsoever, express or implied, that is not contained herein concerning the subject matter hereof, to induce any other Party to execute the Agreement. The Parties acknowledge that they have not executed the Agreement in reliance on any promise, representation, or warranty not contained herein.

17. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for

the Parties to this Agreement shall exchange among themselves electronic copies of original signed counterparts.

18. This Agreement is binding upon and shall inure to the benefit of the Parties and their respective subsidiaries, affiliates, agents, successors, executors, heirs and assigns.

19. The construction, interpretation, operation, effect, and validity of this Agreement shall be governed by New York law exclusive of any conflict of laws rules that would require the application of the law of any other jurisdiction.

20. Any action to enforce this Agreement or any of its terms shall be brought in the Bankruptcy Court. This Paragraph shall not be deemed a waiver of personal jurisdiction or other jurisdictional defenses for any purposes other than the enforcement of this Agreement.

21. This Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties, and each Party has contributed substantially and materially to the preparation of this Agreement.

22. If any term, provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants, and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated, *provided*, however, that Paragraphs 1-4 and 7-8 which are material and integral provisions of this Agreement without which the parties would not have entered into this Agreement, shall not be severable from this Agreement.

23. All persons executing this Agreement warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms, subject only, in the case of Gawker, to the Approval.

24. Each Party shall be responsible for its own expenses (including, without limitation, attorneys' fees) incurred by it in connection with the Action, this Agreement, and other matters referred to herein.

25. Any notices, requests, or demands concerning this Agreement shall be sent by email and Federal Express to:

    For MMI, ANL and DMGT:

        Thomas A. Clare, Esq.
        CLARE LOCKE LLP
        902 Prince Street
        Alexandria, VA 22314
        Tel: (202) 628-7400
        E-mail:tom@clarelocke.com

For Gawker and King:

    Susan Buckley, Esq.
    CAHILL GORDON & REINDEL LLP
    80 Pine Street
    New York, NY 10005
    Tel: (212) 701-3862
    Email: sbuckley@cahill.com

Any Party may from time to time change its address or other information for purposes of notices to that Party by giving written notice specifying such change to the other Parties.

IN WITNESS WHEREOF, the undersigned Parties have executed this Agreement.

Gawker Media, LLC

By: _/s/ William D. Holden_    11/28/16
    William D. Holden    Date
    Chief Restructuring Officer

_____
James King              Date

Mail Media Inc.

_____
By: Richard Caccappolo      Date
    Treasurer

Associated Newspapers Limited

_____
By: Kevin Beatty           Date
    Director

Daily Mail and General Trust plc

_____
By: Kevin Beatty           Date
    Director

For Gawker and King:

> Susan Buckley, Esq.
> CAHILL GORDON & REINDEL LLP
> 80 Pine Street
> New York, NY 10005
> Tel: (212) 701-3862
> Email: sbuckley@cahill.com

Any Party may from time to time change its address or other information for purposes of notices to that Party by giving written notice specifying such change to the other Parties.

IN WITNESS WHEREOF, the undersigned Parties have executed this Agreement.

Gawker Media, LLC                              Mail Media Inc.

_____                 _____
By: William D. Holden         Date             By: Richard Caccappolo        Date
    Chief Restructuring Officer                    Treasurer


_____  11-28-16       Associated Newspapers Limited
James King                    Date

                                               _____
                                               By: Kevin Beatty              Date
                                                   Director


                                               Daily Mail and General Trust plc

                                               _____
                                               By: Kevin Beatty              Date
                                                   Director

-6-

For Gawker and King:

    Susan Buckley, Esq.
    CAHILL GORDON & REINDEL LLP
    80 Pine Street
    New York, NY 10005
    Tel: (212) 701-3862
    Email: sbuckley@cahill.com

Any Party may from time to time change its address or other information for purposes of notices to that Party by giving written notice specifying such change to the other Parties.

    IN WITNESS WHEREOF, the undersigned Parties have executed this Agreement.

| Gawker Media, LLC | Mail Media Inc. |
|---|---|
| By: William D. Holden    Date<br>Chief Restructuring Officer | By: Richard Caccappolo    29th November, 2016<br>Treasurer |
| James King    Date | Associated Newspapers Limited<br>By: Kevin Beatty    29th November '16<br>Director |
|  | Daily Mail and General Trust plc<br>By: Kevin Beatty    29th November '16<br>Director |

-6-

# EXHIBIT A

# DailyMail.com

## Statement by DailyMail.com – 5 March 2015

We utterly refute James King's claim that DailyMail.com depends on 'dishonesty, theft of copyright material', and the publication of material we 'know to be inaccurate'.

King was a freelancer who worked sporadic shifts at DailyMail.com. Before he left he had had become unreliable and late, had missed 14 entire shifts in 10 months, and on one occasion failed to turn up for two shifts after being arrested by police.

He threatened a woman editor with violence and had to be repeatedly reminded about the need for proper attribution in his work.

He offered a version of the story published by Gawker to the Washington Post last year – they rejected it after its inaccuracies and his unreliability were pointed out.

These are some of the many inaccuracies in his Gawker article:

- He claims in his Gawker piece he had a conversation with our Managing Editor Keith Poole outside our building during which our Mr Poole described George Clooney as a 'lying bastard'. He told the Washington Post this conversation took place in an elevator and was between our Mr Poole and another person. FACT: Both our Mr Poole and the person involved confirm they had a conversation in the elevator, but Mr Clooney was not called a 'lying bastard'. There was no conversation between King and our Managing Editor, outside the building or in the elevator. DailyMail.com has never sought to make light of its error in publishing the story about Mr Clooney, which was an error not a fabrication. We apologised promptly and profusely at the time.

- He suggests we published a picture, purportedly of a woman who died of cancer, knowing it was another woman of the same name. He admits he helped find the picture on social media, but says he sent a note saying it was likely not the same woman. FACT: It was King who suggested it was the correct picture, which we published in good faith, believing it to be of the right woman. In fact the woman in the picture we used was the sister-in-law of the dead woman, who shared the same first and last names, and looked extraordinarily similar to her. We can find no note from King, apart from one he sent after the woman in the photograph complained, saying he had been unable to confirm the picture was of the correct woman.

- He quotes a headline about a 'private school teen' killer, which he claimed was inaccurate and written by one of our editors to make the killer a 'stock tabloid character'. FACT: King told the Washington Post the teenage killer in question had never been to a private school. He told Gawker the killer had been at a private school for three months. In fact he killed his father for money left by his dead mother to pay for his private schooling – so his attendance at a private school was central to the story.

DailyMail.com, 51 Astor Place 9th Floor, New York, NY 10003, United States

Registered office: 180 Greentree Drive, Suite 101, Dover, DE 19904, United States

# DailyMail.com

- He claims we identified a woman as a porn star with HIV, and the woman, who was not a porn star and not HIV positive, sued. FACT: We published a genuine story about an un-named newcomer to the porn industry who was HIV positive, but it was illustrated with a stock image of a model posing on a bed before a camera. The model turned out to be a well-known porn star, who sued. We removed the picture.

- He claims DailyMail.com wrote an article suggesting Taylor Swift was a lesbian, which was mysteriously withdrawn. FACT: The article, which did not mention lesbianism, was a diary item written by The Mail on Sunday in London and put to Ms Swift's PR repeatedly before publication. The PR called the paper after publication, apologised for not having responded earlier, and asked for the story to be withdrawn because it was not accurate.

- He claims the DailyMail.com photo desk ran the Today Show's photos despite its explicit denial, showing a cavalier attitude towards rights and cease and desist orders. FACT: No copyright photos were used, grabs were credited and linked and we have never had a complaint from NBC about this story.

- He claims that he was told original links should not be placed higher than the first pictures and was told not to link to the New York Daily News. FACT: This is demonstrably false. We always strive to link prominently and, in fact, we had to give Mr King several verbal reminders of this policy.

DailyMail.com is the world's biggest news site because it takes its journalism very seriously.

It receives 21.2 million visits a day from 13.9 million people, almost half of which are direct visits to one of our home pages and apps - because they have come to trust and love DailyMail.com and MailOnline.com as their go-to site for daily news.

It is also the site that every major newsroom in the UK and US follows obsessively because of our unrivalled record of posting both exclusive and breaking news stories.

We will continue to let that journalistic record speak for itself.

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

MAIL MEDIA INC. d/b/a *MAIL ONLINE*,

        Plaintiff,

-against-

GAWKER MEDIA, LLC AND JAMES KING,

        Defendants.

Index No. 159134/2015

**STIPULATION OF DISCONTINUANCE**

---

  WHEREAS, on September 3, 2015 Plaintiff Mail Media Inc. instituted this defamation action against Defendants Gawker Media, LLC and James King;

  WHEREAS, on November 25, 2015 Defendants responded to the Complaint asserting various defenses and denying all liability;

  WHEREAS, on [date] Mail Media Inc., Associated Newspapers Ltd. and Daily Mail General Trust plc, on the one hand, and Gawker Media, LLC and James King, on the other hand, entered into a Settlement Agreement and Release of Claims that resolves all of the claims that were or could have been brought in this action;

  WHEREAS, no party to this action is an infant or incompetent for which a committee has been appointed;

  WHEREAS, there is no person not a party to the settlement who has any interest in the subject matter of this action;

  **NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and between the undersigned, as follows:

Pg 14 of 14

1. The above-referenced action is hereby discontinued, with prejudice, and without costs, damages, or fees, to any party, and an order to that effect may be entered without further notice.

Dated: New York, New York
December __, 2016

| | |
|---|---|
| NESENOFF & MILTENBERG, LLP<br>*Attorneys for Plaintiff* | CAHILL GORDON & REINDEL LLP<br>*Attorneys for Defendants* |
| By: _____<br>    Andrew T. Miltenberg<br>    363 Seventh Avenue, 5th Floor<br>    New York, New York 10001<br>    (212) 736-4500<br>    amiltenberg@nmllplaw.com | By: _____<br>    Susan Buckley<br>    80 Pine Street<br>    New York, New York 10005-1772<br>    (212) 701-3000<br>    sbuckley@cahill.com |