**Hearing Date and Time: February 14, 2017 at 10:00 a.m. (Eastern Time)**
**Objection Deadline: February 3, 2017 at 4:00 p.m. (Eastern Time)**

ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Joshua Y. Sturm
Jonathan M. Agudelo
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
: 
In re : Chapter 11
:
Gawker Media LLC, *et al.*,[1] : Case No. 16-11700 (SMB)
:
Debtors. : (Jointly Administered)
:
------------------------------------------------------x

**NOTICE OF HEARING ON DEBTORS' MOTION TO APPROVE**
**SETTLEMENT BETWEEN GAWKER MEDIA LLC AND IAN FETTE**

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") on the annexed motion (the "Motion," a copy of which is attached hereto) of the above captioned debtors (the "Debtors") will be held before the Honorable Stuart M. Bernstein, in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 723, New York, New York 10004 (the "Bankruptcy Court") on **February 14, 2017 at 10:00 a.m. (prevailing Eastern Time)**.

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

60439318_5

**PLEASE TAKE FURTHER NOTICE** that any responses or objections ("Objections") to the Motion shall be in writing, shall conform to the Bankruptcy Rules, and the Local Rules, shall be filed with the Bankruptcy Court, shall set forth the basis for the response or objection and the specific grounds therefore, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399 by registered users of the Bankruptcy Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website for the Bankruptcy Court), with a hard copy delivered directly to chambers pursuant to Local Bankruptcy Rule 9028-1 and served so as to be actually received no later than **February 3, 2017 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline") upon the following parties: (i) the Debtors, Gawker Media LLC, c/o Opportune LLP, 10 East 53rd Street, 33rd Floor, New York, NY 10022, Attn: William D. Holden, Chief Restructuring Officer (wholden@opportune.com); (ii) counsel for the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Gregg M. Galardi (gregg.galardi@ropesgray.com);  (iii) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Greg Zipes & Susan Arbeit; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel to the Official Committee of Unsecured Creditors, Simpson Thacher & Bartlett, 425 Lexington Avenue, New York, NY 10017, Attn: Sandy Qusba (squsba@stblaw.com) and William T. Russell (wrussell@stblaw.com); (vii) counsel to US VC Partners LP, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: David Heller (david.heller@lw.com) & Keith A. Simon, 885 Third Avenue, New York, New York 10022, Attn: Keith A. Simon (keith.simon@lw.com); (viii) counsel to Cerberus Business Finance, LLC, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York

2

10022, Attn: Adam C. Harris (adam.harris@srz.com); (ix) counsel for Ian Fette, Pryor & Mandelup, LLP, 675 Old Country Road, Westbury, New York 11590, Attn: J. Logan Rappaport (lr@pryormandelup.com); and (x) those persons who have formally appeared and requested service in these cases pursuant to Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE** that if an Objection to the Motion is not received by the Objection Deadline, the Debtors shall, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form annexed as **Exhibit A** to the Motion, which order the Bankruptcy Court may enter with no further notice or opportunity to be heard.

Dated: January 24, 2017  
　　　　New York, New York

*/s/ Gregg M. Galardi*  
ROPES & GRAY LLP  
Gregg M. Galardi  
D. Ross Martin  
Joshua Y. Sturm  
Jonathan M. Agudelo  
1211 Avenue of the Americas  
New York, NY 10036-8704  
Telephone: (212) 596-9000  
Facsimile: (212) 596-9090

*Counsel for the Debtors and Debtors in Possession*

3

60439318_5

Hearing Date and Time: February 14, 2017 at 10:00 a.m. (Eastern Time)
Objection Deadline: February 3, 2017 at 4:00 p.m. (Eastern Time)

ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Joshua Y. Sturm
Jonathan M. Agudelo
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
                               :
In re                              :          Chapter 11
                               :
Gawker Media LLC, *et al.*,[1]       :          Case No. 16-11700 (SMB)
                               :
                Debtors.        :          (Jointly Administered)
                               :
------------------------------------------------------x

**DEBTORS' MOTION TO APPROVE SETTLEMENT**
**BETWEEN GAWKER MEDIA LLC AND IAN FETTE**

      Gawker Media LLC ("Gawker Media"), Gawker Media Group, Inc. ("GMGI"), and Gawker Hungary Kft. ("Gawker Hungary") as debtors and debtors in possessions (collectively, the "Debtors") in the above-captioned cases (the "Bankruptcy Cases") hereby submit this motion (the "Motion") for an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), approving the settlement and release agreement (the "Settlement Agreement"), a copy of which is attached as Exhibit 1 to the Proposed Order, between Gawker Media and Ian Fette

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

("Fette" and, together with Gawker Media, the "Settling Parties"). In support of the Motion, the Debtors respectfully represent and set forth as follows:

## JURISDICTION AND AUTHORITY

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

### A. Procedural Background

2. On June 10, 2016 (the "Petition Date"), Gawker Media filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). On June 12, 2016, GMGI and Gawker Hungary each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

3. On June 16, 2016 the Bankruptcy Court entered an order authorizing the joint administration and procedural consolidation of the Bankruptcy Cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 41].

4. On June 24, 2016, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee"). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

5. The Debtors are operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Additional factual background regarding the Debtors, their business operations, their capital and debt structure, and the events leading up to the filing of the Bankruptcy Cases are set forth in detail in the *Declaration of William D. Holden in Support of First Day Motions* [Docket No. 7].

**B.    Fette's Employment with Gawker Media**

6. Fette accepted employment with Gawker Media as its Chief Technology Officer on June 19, 2015. The terms of Fette's employment with Gawker Media are set forth in his Employment Agreement dated as of June 15, 2015 (the "Employment Agreement").

7. The Employment Agreement provides for certain "Severance Benefits" in the event of a termination of Fette's employment without Cause (as defined in the Employment Agreement) or alteration in reporting lines such that Fette no longer reports to the Chief Executive Officer of Gawker Media (each, a "Separation"). The severance benefits provided by the Employment Agreement include the payment of (i) Fette's base salary for six months (the "Separation Period") and (ii) any COBRA premiums during the Separation Period (collectively, the "Severance Benefits").

8. As of the Petition Date Fette continued to be employed by the Debtors with an annual salary of $370,000.

9. On September 9, 2016, pursuant to this Court's *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (II) Approving and Authorizing the Debtors' Entry Into the Asset Purchase Agreement and (III) Authorizing the Debtors to Assume and Assign Certain Executory Contracts*

3

*and Unexpired Leases* [Docket No. 214], the Debtors sold substantially all of their assets (the "Sale") to Unimoda, LLC ("Unimoda").

10.  As part of the Sale, Unimoda offered Fette the opportunity to continue his employment with Unimoda reporting to the Chief Technology Officer of Unimoda, Mark Kortekaas. The Debtors' records reflect that Fette declined that opportunity.

11.  On September 23, 2016, Fette's employment with Gawker Media was terminated (the "Fette Separation"). Fette asserts that he was terminated without cause and/or that a Separation occurred on account of an alteration in his reporting lines. Gawker Media denies the same.

**C.    The Fette Claims**

12.  On July 14, 2016, the Court entered an order [Docket No. 100] appointing Prime Clerk LLC ("Prime Clerk") as the notice and claims agent in these chapter 11 cases. Among other things, Prime Clerk is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these chapter 11 cases and (b) maintain the official Claims Register for the Debtors (the "Claims Register").

13.  Fette filed two proofs of claim against Gawker Media: (a) Claim No. 93 on September 26, 2016, asserting a general unsecured claim of $188,599.64 for the Severance Benefits (as subsequently amended on October 18, 2016 by Claim No. 319, the "GUC Claim") and (b) Claim No. 91 on September 27, 2016, which was inadvertently filed and is identical to the GUC Claim (the "Duplicate GUC Claim").

14.  Fette also filed two requests for payment against Gawker Media: (a) Claim No. 96 on September 26, 2016, asserting a general administrative expense claim of $188,599.64 for the Severance Benefits (the "Administrative Expense Claim") and (b) Claim No. 89 on September

4

27, 2016, which was inadvertently filed and is identical to the Administrative Expense Claim (the "Duplicate Administrative Expense Claim" and, together with the GUC Claim, the Duplicate GUC Claim, and the Administrative Expense Claim, the "Fette Claims").

### D.    The Settlement Agreement[2]

15.    The Settlement Agreement is the result of a good faith and arm's-length negotiation among the Settling Parties and provides for the resolution of the Fette Claims.

16.    The Settlement Agreement provides that within five business days of the Bankruptcy Court's entry of an order granting the Motion, the Debtors will pay to Fette the sum of $160,000 (One Hundred Sixty Thousand Dollars and Zero cents) (the "Settlement Payment"). The payment of the Settlement Payment shall be in full satisfaction of any claims asserted or that could be asserted by Fette against the Debtors arising out of the Fette Separation, including the Fette Claims.  Further, Fette waives and shall not be entitled to any distributions or payments pursuant to the Plan.

17.    The Settlement Agreement also contains (a) a release executed by Fette in favor of the Debtors and their affiliates, officers, agents, administrators, servants, employees, attorneys, successors, parent, subsidiaries, and assigns, solely for claims relating to the Fette Claims and Fette's employment with Gawker Media  (the "Fette Release") and (b) a release executed by the Debtors in favor of Fette solely for claims arising from Fette's employment by Debtors, the Fette Separation, and the Fette Claims, including, but not limited to, any potential avoidance claims under applicable federal and/or state laws (the "Debtors' Release" and, together with the Fette Release, the "Release").

---

[2] This summary of the Settlement Agreement is provided for the convenience of the Court and parties in interest.  To the extent there are any discrepancies between this summary and the Settlement Agreement itself, the terms and language of the Settlement Agreement shall govern.  Unless defined herein, capitalized terms defined in the Settlement Agreement shall have the meanings ascribed to them therein.

5

60439318_5

## RELIEF REQUESTED AND BASIS FOR RELIEF

18. By this Motion, the Debtors seek entry of an order approving the Settlement Agreement, including the Release contained therein.

19. The Debtors believe that the requirements of Rule 9019 are satisfied because the Settlement Agreement, including the Release contained therein, is fair, equitable, and reasonable given the issues involved and the potential burden to the estate that would result from litigating the Fette Claims.

20. Bankruptcy Rule 9019(a) permits a debtor in possession to compromise claims, subject to bankruptcy court approval. Fed. R. Bankr. P. 9019(a). The legal standard for determining the propriety of a bankruptcy compromise is whether the settlement is in the "best interests of the estate." *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 523 (S.D.N.Y. 1993). The United States Supreme Court has noted that "[c]ompromises are a 'normal part of the process of reorganization.'" *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (citation omitted). The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). In exercising its discretion, the bankruptcy court must make an independent determination that the settlement is fair and equitable. *Id*. at 122. The court may consider the opinions of the debtor in possession and its counsel that the settlement is fair and equitable. *Id.*; *see also In re Purofied Down Prods. Corp.*, 150 B.R. at 522. This discretion should be exercised by the bankruptcy court "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (S.D.N.Y. 1998); *Shugrue*, 165 B.R. at 123 ("[T]he general rule [is] that settlements are favored and, in fact, encouraged").

21. To approve a proposed compromise, a bankruptcy court is not required to decide numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Finkelstein v. W. T. Grant Co. (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *see also In re Purofied Down Prods. Corp.*, 150 B.R. at 522 ("the court need not conduct a 'mini-trial' to determine the merits of the underlying [dispute]"). In deciding whether a particular settlement falls above the "lowest point in the range of reasonableness," courts consider the following *Iridium* factors:

   i. the balance between the litigation's possibility of success and the settlement's future benefits;

   ii. the likelihood of complex and protracted litigation, 'with its attendant expense, inconvenience, and delay';

   iii. the paramount interests of creditors;

   iv. whether other parties in interest support the settlement;

   v. the 'competency and experience of counsel' supporting, and '[t]he experience and knowledge of the bankruptcy court judge' reviewing, the settlement;

   vi. the nature and breadth of releases to be obtained by officers and directors; and

   vii. the extent to which the settlement is the product of arm's length bargaining.

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (quoting *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

22. The Debtors believe that the requirements of Rule 9019 are satisfied because the Settlement Agreement represents a fair, equitable, and comprehensive resolution of the Fette Claims, falls well above the lowest point in the range of reasonableness, and satisfies each of the *Iridium* factors.

23. With respect to the first two *Iridium* factors, there is no question that the Settlement Agreement is better for the Debtors on a risk-adjusted basis than the results of any potential litigation strategy. The Debtors' professionals worked to assess the Debtors' rights and obligations with respect to the Fette Claims. Based on this analysis, the Debtors believe that the benefits to be received in an immediate settlement via the Settlement Agreement far outweigh the complexities, uncertainties, and costs of filing an objection and litigating the Fette Claims.

24. With respect to the third and fourth *Iridium* factors, the Settlement Agreement and the releases contained therein are beneficial to the Debtors, their estate, their creditors, and other parties in interest. The Debtors have determined, in their sound business judgment, that consummating the Settlement Agreement is the best means of resolving their disputes with Fette. The Settlement Agreement settles the Fette Claims for the cash payment of consideration in the amount of $160,000 (One Hundred Sixty Thousand Dollars and Zero cents), which is approximately 15% less than the amount the Debtors would owe if the Fette Claims were Allowed in full. While the Debtors do not believe that the Fette Claims would ultimately be allowed in full, the costs of litigating an objection to the Fette Claims would be substantial, which would result in diluted recoveries under the Plan to the Debtors' creditors.

25. With regard to the last three *Iridium* factors, the Settlement Agreement was negotiated among and is supported by competent counsel of the parties thereto. The mutual releases are narrowly tailored to relate solely to claims that the Settling Parties could have had against each other relating to Fette's employment with Gawker Media. Finally, the Settlement Agreement is proposed by the parties in good faith and without collusion and is the product of arm's-length bargaining.

26. For the foregoing reasons, the Debtors respectfully request that the Court approve the Settlement Agreement.

## NOTICE

27. Notice of this Motion has been provided in accordance with the *Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures* [Docket No. 93]. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## NO PREVIOUS REQUEST

28. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court approve the Settlement Agreement and enter the Proposed Order attached as Exhibit A, granting the relief requested in the Motion and such other and further relief for the Debtors as may be just or proper.

Dated: January 24, 2017
New York, New York

*/s/ Gregg M. Galardi*
ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Joshua Y. Sturm
Jonathan M. Agudelo
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
gregg.galardi@ropesgray.com
ross.martin@ropesgray.com
joshua.sturm@ropesgray.com
jonathan.agudelo@ropesgray.com

*Counsel to the Debtors
and Debtors in Possession*