## Exhibit A

**Proposed Order**

ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Joshua Y. Sturm
Jonathan M. Agudelo
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
                                                      :
In re                                                 :    Chapter 11
                                                      :
Gawker Media LLC, *et al.*,[1]                        :    Case No. 16-11700 (SMB)
                                                      :
             Debtors.                                 :    (Jointly Administered)
                                                      :
------------------------------------------------------x

**ORDER APPROVING DEBTORS' MOTION TO APPROVE**
**SETTLEMENT BETWEEN GAWKER MEDIA LLC AND IAN FETTE**

Upon consideration of the *Debtors' Motion to Approve Settlement Between Gawker Media LLC and Ian Fette* (the "Motion") seeking an order approving the Settlement Agreement[2] between Gawker Media LLC and Ian Fette, dated January 24, 2017, a copy of which is attached hereto as Exhibit 1; and it appearing that no other or further notice need be provided; and no objections to approval of the Settlement Agreement having been filed or received; and it appearing that the relief requested is in the best interests of this estate, its creditors, and other

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

[2] All capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

60439318_5

parties-in-interest; and the Court having reviewed the Settlement Agreement; and after due deliberation and sufficient cause appearing therefor, it is hereby:

**ORDERED THAT:**

    1.    The Motion is GRANTED.

    2.    The Settlement Agreement attached hereto as <u>Exhibit 1</u> is hereby approved in all respects pursuant to Bankruptcy Rule 9019.

    3.    The Fette Claims are hereby settled as of the date that the Debtors make the Settlement Payment (the "<u>Completion Date</u>").  The Debtors are authorized to direct Prime Clerk on or after the Completion Date to cause the Claims Register to be amended to reflect that the Fette Claims have been resolved as settled.

    4.    The Settlement Agreement may be modified, amended, or supplemented through a written agreement by and among the Settling Parties in accordance with the terms thereof without further order of the Court.

    5.    This Court retains jurisdiction with respect to all matters arising from or related to the Settlement Agreement or enforcement of this Order, including the authority to interpret, implement, and enforce the terms and provisions of the Settlement Agreement and this Order.

Dated: _____, 2017
       New York, New York

                                  HONORABLE STUART M. BERNSTEIN
                                  UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

Settlement Agreement

# SETTLEMENT AND RELEASE AGREEMENT

THIS SETTLEMENT AND RELEASE AGREEMENT (the "**Settlement Agreement**") is made and entered into as of the 24th day of January, 2017, by and between, Ian Fette ("**Fette**"), on the one hand, and Gawker Media LLC ("**Gawker Media**"). The parties to this Settlement Agreement are sometimes referred to herein individually as a "**Party**" and collectively as the "**Parties**." This Settlement Agreement shall be effective as of the date on which the last of each of the Parties executes this Agreement (the "**Settlement Effective Date**"), subject only to approval of this Settlement Agreement by the Bankruptcy Court (as defined below) (the "**Approval**").

## RECITALS

WHEREAS, Fette and Gawker Media are parties to that certain Employment Agreement dated as of June 15, 2015 (the "**Employment Agreement**") whereby Gawker Media offered Fette employment as Chief Technology Officer and Fette accepted the terms of such employment by his execution of the Employment Agreement on June 19, 2015.

WHEREAS, the Employment Agreement contains certain "Severance Benefits" which provide for the payment of (i) Fette's base salary for six months (the "**Separation Period**") and (ii) any COBRA premiums during the Separation Period (collectively, the "**Severance Benefits**") in the event of a termination of Fette's employment without Cause (as defined in the Employment Agreement) or alteration in reporting lines such that Fette no longer reports to the Chief Executive Officer of Gawker Media (each, a "**Separation**");

WHEREAS, on June 10, 2016 (the "**Petition Date**"), Gawker Media filed a voluntary petition (the "**Petition**") for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") and on June 12, 2016, Gawker Media Group, Inc. ("**GMGI**"), and Gawker Hungary Kft. ("**Gawker Hungary**" and, together with Gawker Media and GMGI, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court;

WHEREAS, as of the Petition Date Fette continued to be employed by the Debtors with an annual salary of $370,000;

WHEREAS, on July 14, 2016, the Court entered an order [Docket No. 100] appointing Prime Clerk LLC ("**Prime Clerk**") as the notice and claims agent in these chapter 11 cases. Among other things, Prime Clerk is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these chapter 11 cases and (b) maintain the official Claims Register for the Debtors (the "**Claims Register**");

WHEREAS, on September 9, 2016, pursuant to the Court's *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (II) Approving and Authorizing the Debtors' Entry Into the Asset Purchase Agreement and (III) Authorizing the Debtors to Assume and Assign Certain*

*Executory Contracts and Unexpired Leases* [Docket No. 214], the Debtors sold substantially all of their assets (the "**Sale**") to Unimoda, LLC ("**Unimoda**");

WHEREAS, as part of the Sale, Unimoda offered Fette the opportunity to continue his employment with Unimoda reporting to the Chief Technology Officer of Unimoda, Mark Kortekaas.  The Debtors' records reflect that Fette declined that opportunity;

WHEREAS, on September 23, 2016, Fette ceased to be an employee of Gawker Media (the "**Fette Separation**").  Fette asserts that he was terminated without cause and Gawker Media denies the same;

WHEREAS, (i) on September 26, 2016, Fette filed a proof of claim, Claim No. 93, asserting a general unsecured claim of $188,599.64 for the Severance Benefits (as subsequently amended on October 18, 2016 by Claim No. 319, the "**Fette GUC Claim**") and (ii) on September 27, 2016, Fette inadvertently filed an identical proof of claim, Claim No. 91 (the "**Duplicate GUC Claim**");

WHEREAS, (i) on September 26, 2016, Fette filed a request for payment, Claim No. 96, asserting a general administrative claim of $188,599.64 for the Severance Benefits (the "**Fette Administrative Expense Claim**") and (ii) on September 27, 2016, Fette inadvertently filed an identical request for payment, Claim No. 89 (the "**Duplicate Administrative Expense Claim**" and, together with the Fette GUC Claim, the Duplicate GUC Claim, and the Fette Administrative Expense Claim, the "**Fette Claims**");

WHEREAS, Fette asserts that he is entitled to the Severance Benefits and believes that the Fette Claims against Gawker Media are meritorious and that he would ultimately prevail on those claims if Gawker Media filed an objection and the claims were litigated before the Bankruptcy Court;

WHEREAS, Gawker Media asserts that Fette is not entitled to the Severance Benefits and believes that the Fette Claims would be disallowed by the Bankruptcy Court if it filed an objection and the claims were litigated before the Bankruptcy Court;

WHEREAS, to avoid the burden, distraction, expense and uncertainty of litigation, Fette and Gawker Media wish to settle, compromise and finally resolve the Fette Claims;

NOW, THEREFORE, in consideration of the promises and undertakings set forth herein, and with the intent to be legally bound thereby, the Parties agree as follows:

## SETTLEMENT

1. **Settlement Payment**: Within five (5) business days of the Approval, Gawker Media will pay to Fette the sum of $160,000 (One Hundred Sixty Thousand Dollars and Zero cents) (the "**Settlement Payment**").  The Settlement Payment shall be made to Fette, by wire transfer and Fette shall provide Debtors' counsel with the requisite account and routing information as may be necessary to ensure his receipt of the Settlement Payment.  The payment of the Settlement Payment shall be in full satisfaction of any

claims asserted or that could be asserted by Fette against the Debtors arising out of the Fette Separation, including the Fette Claims. Further, Fette waives and shall not be entitled to any distributions or payments pursuant to the Plan. Following the completion of the Settlement Payment, the Debtors are authorized to direct Prime Clerk to cause the Claims Register to be amended to reflect that the Fette Claims have been resolved as settled.

2.   **No Admission of Wrongdoing and Exclusions**. This Settlement Agreement and all negotiations, statements, and proceedings in connection herewith shall not be, in any event, (i) construed as or deemed to be evidence of, an admission of, or concession of any liability or wrongdoing by either Party, and shall not be offered or received in evidence in any action or proceeding (except an action to enforce this Settlement Agreement), or be used in any way as an admission, concession, or evidence of any liability or wrongdoing of any nature by either Party or with respect to any defense or denial of liability by Debtors; or (ii) construed as, or deemed to be evidence of, an admission or concession that Fette has or has not suffered any damage, or that the Debtors, or any of the Debtors' current or former officers, directors or employees bear or do not bear any responsibility for any alleged damages. This Settlement Agreement involves the settlement of claims which are denied and contested and nothing contained herein shall be construed as an admission by the Debtors or any of the Debtors' current or former directors, officers or employees of any liability of any kind to Fette or any other person or entity nor as an admission by Fette that Debtors' or any of the Debtors' current or former directors, officers, or employees do not bear any liability of any kind to Fette or any other person or entity.

3.   **Arm's-Length and Voluntary Settlement.** The Parties have carefully read, and know and understand, the full contents of this Settlement Agreement, and agree that the terms of this Settlement Agreement were negotiated at arm's-length in good faith by the Parties and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

**RELEASE**

4.   **Release of All Claims.**

(a)   In compliance with the Employment Agreement, except as otherwise set forth in this Settlement Agreement, Fette hereby releases, acquits and forever discharges the Debtors and their affiliates, officers, agents, administrators, servants, employees, attorneys, successors, parent, subsidiaries, and assigns (each, a "**Released Party**" and, collectively, the "**Released Parties**"), of and from any and all claims, liabilities, demands, causes of action, costs, expenses, attorneys' fees, damages, indemnities and obligations of every kind and nature, in law, equity, or otherwise, known and unknown, suspected and unsuspected, disclosed and undisclosed, arising out of or in any way related to agreements, events, acts, omissions, or conduct at any time prior to and including the Settlement Effective Date arising from Fette's employment by Debtors, the Fette Separation, and the Fette Claims (the "**Release**"). The Release includes, but is not

limited to: (i) claims and demands arising out of or in any way connected with Fette's employment with Gawker Media, or the termination of that employment; (ii) claims or demands related to Fette's compensation or benefits with Gawker Media, including but not limited to, wages, salary, bonuses, commissions, vacation pay, fringe benefits, expense reimbursements, incentive pay, severance pay, or any other form of compensation; (iii) claims pursuant to any federal, state or local law, statute, or cause of action including, but not limited to, claims for discrimination, harassment, retaliation, attorneys' fees or other claim arising under the federal Civil Rights Act of 1964, as amended; the federal Americans with Disabilities Act of 1990, as amended; the federal Age Discrimination in Employment Act of 1967, as amended; the federal Family Medical Leave Act, as amended; the federal Worker Adjustment and Retraining Notification Act, as amended; the Employee Retirement Income Security Act of 1974, as amended; New York Human Rights Law (N.Y. Exec., §290 et seq.); New York Equal Pay Law (N.Y. Lab., §194); New York WARN Act (N.Y. Lab., §860, et seq.) New York Military Spousal Leave Law (N.Y. Lab., §202-i) as amended; (iv) all tort claims, including without limitation, claims for fraud, defamation, emotional distress, and discharge in violation of public policy; and (v) all claims for breach of contract, wrongful termination, and breach of the implied covenant of good faith and fair dealing.  To the extent permitted by law, Fette also promises to never directly or indirectly bring or participate in an action against any Released Party under California Business & Professions Code Section 17200 or any unfair competition law of any jurisdiction.  The Release does not include the release of any claims which by law cannot be waived in a private agreement between an employer and employee.  Moreover, the Release does not prohibit Fette from filing a charge with the Equal Employment Opportunity Commission (the "**EEOC**") or equivalent state agency in his state or participating in an EEOC or state agency investigation.  However, Fette does agree to waive his right to monetary or other recovery should any claim be pursued with the EEOC, state agency, or any other federal, state or local administrative agency on his behalf arising out of or related to his employment with and/or separation from Gawker Media.

(b)    Debtors hereby release, acquit and forever discharge Fette (a "**Released Party**") of and from any and all claims, liabilities, demands, causes of action, costs, expenses, attorneys' fees, damages, indemnities and obligations of every kind and nature, in law, equity, or otherwise, known and unknown, suspected and unsuspected, disclosed and undisclosed, arising out of or in any way related to agreements, events, acts, omissions, or conduct at any time prior to and including the Settlement Effective Date arising from Fette's employment by Debtors, the Fette Separation, and the Fette Claims, including, but not limited to, any potential avoidance claims under applicable federal and/or state laws (the "**Release**").

5. **Waiver.**  Fette understands that the Release includes a release of all claims known or unknown.  In giving the Release, which includes claims which may be unknown to Fette at present, Fette acknowledges that he has read and understands Section 1542 of the California Civil Code which reads as follows:  "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his

settlement with the debtor." Fette hereby expressly waives and relinquishes all rights and benefits under that section and any law of any jurisdiction of similar effect with respect to the release of any unknown or unsuspected claims you may have against the Debtors.

6. **Acknowledgements and Representations.** In connection with the Release, Fette acknowledges and represents that:

    (a) he has not suffered any discrimination or harassment by any of the Released Parties on account of his race, gender, national origin, religion, marital or registered domestic partner status, sexual orientation, age, disability, medical condition or any other characteristic protected by law;

    (b) he has not been denied any leave, benefits or rights to which he may have been entitled under the FMLA or any other federal or state law, and that he has not suffered any job-related wrongs or injuries for which he might still be entitled to compensation or relief;

    (c) except as expressly provided in this Settlement Agreement, he has been paid all wages, bonuses, compensation, benefits and other amounts that any of the Released Parties have ever owed to him, and he understands that, other than the Settlement Payment, he will not receive any additional compensation, severance, or benefits after the Settlement Effective Date, with the exception of any vested right he may have under the terms of a written ERISA- qualified benefit plan;

    (d) except as otherwise set forth in this Settlement Agreement, he has not filed any charges, complaints, grievances, arbitrations, lawsuits, or claims against the Debtors, with any local, state or federal agency, union or court from the beginning of time to the Settlement Effective Date and that he will not do so at any time hereafter, based upon events occurring prior to the Settlement Effective Date and that in the event any agency, union, or court ever assumes jurisdiction of any lawsuit, claim, charge, grievance, arbitration, or complaint, or purports to bring any legal proceeding on his behalf, he will ask any such agency, union, or court to withdraw from and/or dismiss any such action, grievance, or arbitration, with prejudice; and

    (e) he will not disparage the Debtors, or their officers, directors, employees or agents, in any manner likely to be harmful to them or their business, business reputation or personal reputation; provided, however, that statements which are made in good faith in response to any question, inquiry or request for information required by legal process shall not violate this representation.

**MISCELLANEOUS PROVISIONS**

7. **Modification or Amendment.** This Settlement Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the Parties or their successors-in-interest.

8. **Headings.**  The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

9. **Waiver of Breach.**  The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

10. **Numbered Paragraphs.**  Each separately numbered term of this Settlement Agreement is contractual, not merely a recital.

11. **Entire Agreement.**  This Settlement Agreement contains the entire agreement and understanding between the Parties concerning the subject matter hereof, and supersedes any prior or contemporaneous discussion or agreements thereon.  The Parties acknowledge that no Party, or any agent, representative, attorney, or client of a Party, has made any promise, representation, or warranty whatsoever, express or implied, that is not contained herein concerning the subject matter hereof, to induce any other Party to execute the Settlement Agreement. The Parties acknowledge that they have not executed the Settlement Agreement in reliance on any promise, representation, or warranty not contained herein.

[*Remainder of this page intentionally left blank*]

**IN WITNESS WHEREOF**, the Parties execute this Settlement Agreement as of January 24th, 2017.

Date: 24 January, 2017

_____
Ian Fette

Date: January 24th, 2017

_____
GAWKER MEDIA, LLC
By: William D. Holden
Print: _____ Title: CRO

[Signature Page to Settlement Agreement]