ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Peter Walkingshaw (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
:
In re                                                       :     Chapter 11
:
Gawker Media LLC, *et al.*,[1]                              :     Case No. 16-11700 (SMB)
:
             Debtors.                    :     (Jointly Administered)
:
---------------------------------------------------------x

# DEBTOR'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF ITS OMNIBUS OBJECTIONS TO CLAIMS OF CHARLES C. JOHNSON AND GOT NEWS LLC

Gawker Media LLC, as debtor and debtor in possession ("Gawker Media" or the "Debtor") hereby submits its supplemental brief concerning the scope of this Court's authority to hear and determine all aspects of the allowance and disallowance of proofs of claim filed by GotNews LLC ("GotNews") and Mr. Charles C. Johnson ("Johnson", and together with GotNews, the "Claimants"). The Debtor respectfully states as follows:

## PROCEDURAL BACKGROUND AND QUESTIONS PRESENTED

1.  On December 9, 2015, eight months prior to the petition dates in these chapter 11 cases, the Claimants commenced a lawsuit captioned *Johnson v. Gawker Media LLC* [Superior

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (5056). Each Debtor's mailing address is c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

1

Court of California, County of Fresno, Case No. 15 CECG 3734] (the "California Case") against each of the above-captioned debtors (the "Debtors") and other non-Debtor parties in the Superior Court of California, Fresno County (the "California State Court"). However, the Claimants never served a summons or the complaint on any of the Debtors (or other named defendants) during that eight-month period.

2.      Nothwithstanding the Claimaints failure to serve a summons on the Debtors, on September 28, 2016, one day before the bar date in these cases, GotNews filed Proofs of Claim Nos. 53, 202, and 298 (the "GotNews Claims"), and Mr. Johnson filed Proofs of Claim Nos. 54, 223, and 246 (the "Johnson Claims", and together with the GotNews Claims, the "GotNews/Johnson Claims"), against the Debtors in these chapter 11 cases. Subsequently, on October 31, 2016, the Debtors objected to the GotNews/Johnson Claims [Docket Nos. 396, 397] (the "Claims Objections"), commencing contested matters, and initial briefing occurred [Docket Nos. 452, 501]. On December 1, 2016, the Court held an initial hearing on the Claims Objections.

3.      The Claimants subsequently objected to confirmation of the Debtors' joint plan of liquidation. Those confirmation objections were settled, with the terms of that settlement contained in the confirmation order [Docket No. 638]. As a result, each of the Claimants now has only a single claim remaining against Gawker Media, all other defendants were released, and the Claimants may only recover the allowed amount of their respective claim from the Gawker Media estate (and then Reorganized Gawker Media, after the Effective Date of the Plan), up to a maximum amount in the aggregate of $1.5 million.

4.      At the December 1, 2016 hearing, the Court directed the parties meet and confer and propose a scheduling order for further proceedings in these contested matters. On January

24, 2017, the Parties submitted a proposed agreed order, providing that they would brief and argue two issues (and any relevant subissues). Specifically, the parties will address the following questions:

    a.    Whether the GotNews/Johnson Claims are "personal injury tort or wrongful death claims" within the meaning of that term in 28 U.S.C. § 157(b)(2)(B) ("<u>Section 157(b)(2)(B)</u>").

        i.  As to the GotNews Claim, whether as a corporate entity (i.e. not a natural person) GotNews can have a "personal injury tort" claim under 28 U.S.C. § 157(b)(2)(B).

        ii.  As to both Claimants, whether a defamation claim and related torts that do not involve physical or bodily injury are "personal injury tort" claims under 28 U.S.C. § 157(b)(2)(B).

    b.    Whether the California Anti-SLAPP law applies with respect to the Claim Objections and this contested matter.

This is Gawker Media's supplemental memorandum on these issues.

## LEGISLATIVE HISTORY OF THE TERM "PERSONAL INJURY TORT OR WRONGFUL DEATH CLAIMS"

    5.    The bankruptcy court provisions of Title 28 as enacted in 1978 (at the time of the Bankruptcy Code enactment) did not have a concept of "personal injury or wrongful death claims"; that phrase is found in the 1984 amendments that revamped the relationship between the bankruptcy courts and district courts.

    **A.**    **Enactment History—The Statutory Drafting**

3

6. In the wake of *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50 (1982), Congress substantially rewrote the statutory provisions regarding the division of authority between the bankruptcy courts and the district courts. Those changes primarily addressed the constitutional concerns raised in *Marathon*, regarding causes of action brought by the estate. There has never been any question that the determination of the amount of creditor claims against the estate is at the core of the bankruptcy process and that bankruptcy courts can resolve such claims. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1940 (2015); *Stern v. Marshall*, 564 U.S. 462, 474-75 (2011).

7. However, at the time the 1984 amendments were being drafted, a separate issue came to the attention of Congress. *See generally In re Cohen*, 107 B.R. 453, 455 (Bankr. S.D.N.Y. 1989). The early chapter 11 case involving the Johns-Manville Company addressed significant asbestos-related claims. Following that case and during the writing of the 1984 amendments, "many personal injury attorneys . . . not enjoying the process" in *Manville*, lobbied Congress to exempt similar claims from bankruptcy jurisdiction. *See In re Dow Corning Corp.*, 215 B.R. 346, 353-54 (Bankr. E.D. Mich.), *supplemented,* 215 B.R. 526 (Bankr. E.D. Mich. 1997).

8. The initial proposed language only excluded "personal injury tort" claims from determination by the bankruptcy courts. 130 Cong. Rec. S13109 (daily ed. May 21, 1984). However, during the legislative process this statutory language was revised to the phrase "personal injury tort or wrongful death claims." 130 Cong. Rec. H7473 (daily ed. June 29, 1984); 130 Cong Rec. H20208 (daily ed. June 29, 1984) (same).

9. The only other potentially relevant (pre-existing) statutory language comes from an entirely different title of the United States Code. The original 1978 Bankruptcy Code did

4

include a concept of "personal bodily injury." 11 U.S.C. § 522(d)(11). That language is contained in Title 11 (the Bankruptcy Code) and not in Title 28 (the Judicial Code).

### B. Other Legislative History

10. The congressional committee reports and floor statements mostly restate the statutory language. The various additional statements can be divided into essentially four categories.

11. First are various statements that explicitly described the exclusion of "personal injury tort" claims as "a narrow category of cases," a "narrow range of cases," and a "minor exception." 130 Cong. Rec. H7491 (daily ed. June 29, 1984) (Statements of Rep. Kastenmeier).

12. Second, there is one instance where an "example" is given of a "personal injury tort or wrongful death claim." That sole example of a involves an automobile accident. 130 Cong. Rec. S17155 (daily ed. June 19, 1984).

13. Third are generalized statements regarding the scope of this exception in Section 157(b)(2)(B). The sponsor of the Senate legislation introducing Section 157(b)(2)(B), Senator DeConcini, stated that the exception still "permits the bankruptcy court to make final decisions on *most other matters* pending before it." 130 Cong. Rec. S6099 (daily ed. May 21, 1984) (Statements of Sen. DeConcini) (emphasis added).

14. Fourth, there are statements noting the involuntary nature of tort creditors. *See, e.g.*, 130 Cong. Rec. S6098 (daily ed. May 21, 1984) (Statements of Sen. DeConcini).

## ARGUMENT

### I. STATUTORY CANONS OF CONSTRUCTION AND THE APPROPRIATE USE OF THE LEGISLATIVE HISTORY SUPPORTS THE CONCLUSION THAT THE EXEMPTION SHOULD BE NARROWLY CONSTRUED AND LIMITED TO CLAIMS MADE BY NATURAL PERSONS.

5

15. As discussed in prior briefing, nationwide there are three judicial approaches regarding the scope of the statutory term. There is a narrow approach, limiting the term to cases involving bodily injury. There is a broad approach, in which many more tort claims are said to fall within that term. And there is a middle-ground approach, when certain courts address the scope of Section 157(b)(2)(B) on a case-by-case, fact-specific basis.[2] As shown below, the "personal injury tort" exception should be narrowly construed.

### A. GotNews Cannot Assert a Personal Injury Tort Claim Because the Word "Personal" Applies Only to Natural Persons.

16. GotNews does not have a "personal injury tort" claim because it is a limited liability company, not a natural person. Specifically, the Supreme Court has held that the word "personal," used in federal statutes, refers to natural persons and not artificial entities. *FCC v. AT&T Inc.*, 562 U.S. 397, 402-07 (2011). The Court in *FCC v. AT&T* expressly distinguished the use of the word "person" from the word "personal." Even where "person" is a statutory defined term that includes artificial entities (as the Bankruptcy Code does), the ordinary usage of the adjective "personal" describes individuals, not companies (as in personal expenses, personal life, and personal opinion). This is even more so when the word "personal" is read in context. For example, in the *FCC v. AT&T* case, the statutory phrase described "personal privacy." In

---

[2] As discussed in the original brief, in this District there is no governing case from the Court of Appeals and there is a difference among the other decided opinions. Most courts (including two district courts) have adopted the narrow approach. *Siewert v. Christy (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey)*, 194 B.R. 728, 734 (S.D.N.Y. 1995); *Perino v. Cohen (In re Cohen)*, 107 B.R. 453, 455 (S.D.N.Y. 1989); *Vinci v. Town of Carmel (In re Vinci)*, 108 B.R. 439, 442 (Bankr. S.D.N.Y. 1989). One bankruptcy court has adopted the middle-ground approach. *In re Residential Capital, LLC*, 536 B.R. 566, 572, 575 (Bankr. S.D.N.Y. 2015) ("ResCap").
   In an early case addressing the different question of whether the automatic stay should be lifted to allow the prosecution of an individual's state-court defamation action, Bankruptcy Judge Schwartzberg rested his decision on the statement, without analysis, that Section 157(b)(5) supported the bankruptcy court not hearing the action. *In re Goidel*, 150 B.R. 885, 888 (Bankr. S.D.N.Y. 1993). However, *Goidel's* broad, jurisdictional reading of the statute has been definitively rejected by the United States Supreme Court, which has concluded that Section 157(b)(5) is merely a venue provision. *Stern v. Marshall*, 564 U.S. 462, 479 (2011).
   The Supreme Court has also expressly declined to decide whether defamation claims fall within this statutory definition, when presented with the question in a merits case. *Id*. Thus what is clear is that there is no significant reasoned authority in this District supporting the broadest of the three approaches to the meaning of "personal injury tort or wrongful death claims."

6

Section 157(b)(2)(B) it describes "personal injury." *See also In re Lost Peninsula Marina Dev. Co., LLC*, No. 10-10264 2010 WL 3070134, at *2 (E.D. Mich. Aug. 4, 2010); *cf. Roemer v. Commissioner of Internal Revenue*, 176 F.3d 693, 699 n.4 (9th Cir. 1983) ("Although a corporation may sue for certain types of defamation, a corporation by its very nature cannot suffer a personal injury. A corporation is a business entity and not a human being; thus a corporation can only be protected against false statements affecting its trade or business."); *Northern Pac. R. Co. v. Whalen*, 149 U.S. 157, 163 (1893) ("[A]s a corporation cannot be said to have life or health or senses, the only ground on which to obtain either damages or an injunction . . . is injury to its property."). For this simple reason, GotNews does not have a personal injury tort claim, and this Court can fully hear and determine the allowance and disallowance of that claim.

    **B.  "Personal Injury," Read in Context, Means "Bodily Injury."**

    17.  Section 157(b)(2)(B) does not define the term "personal injury," and therefore the term takes on its common or ordinary meaning. As a court in this District previously observed not far after the enactment of Section 157(b)(2)(B), "in the traditional, plain-meaning sense of the words," the term "personal injury" denotes a physical or bodily injury, "such as a slip and fall or psychiatric impairment beyond mere shame and humiliation." *In re Cohen*, 107 B.R. 453, 455 (Bankr. S.D.N.Y. 1989). Read in isolation, as defined in dictionaries, the term "personal injury" is susceptible to a narrow and a broad reading.[3]

---

[3] Dictionary definitions in effect at the time of the passage of Section 157(b)(2)(B) demonstrate the potential narrow and broad interpretations of "personal injury." *Black's Law Dictionary* defined "personal injury" as:

> In a narrow sense, a hurt or damage done to a man's person, such as a cut or bruise, a broke limb, or the like, as distinguished from an injury to his property or his reputation. The phrase is chiefly used in this connection with actions of tort for negligence and under worker's compensation statutes. But the term is also used (chiefly in statutes) in a much wider sense, and as including any injury which is an invasion of personal rights, and in this signification it may include

7

18.     More importantly, reading the term "personal injury" in full context—the phrase "personal injury tort or wrongful death claims"—shows that Congress meant bodily injury. Among the core canons of statutory construction is the doctrine that words should be "known by the company they keep." *See, e.g., In re Adelphia Commc'n Corp.*, 336 B.R. 610, 656 (Bankr. S.D.N.Y. 2006). Courts rely on this rule *noscitur a sociis* "to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Gustafson v. Alloyd Co.,* 513 U.S. 561, 575 (1995). The statutory language of Section 157(b)(2)(B) directly associates "personal injury tort" with "wrongful death." Wrongful death claims can only relate to bodily injury, and personal injury tort claims must be construed similarly. The GotNews/Johnson Claims do not assert any such bodily injury claims, and therefore the rights provided in Section 157(b)(2)(B) to have district court consideration of a proof of claim do not apply here.

**C.     The Enactment History Supports the Textual Interpretation.**

19.     The enactment history—actual changes in language as considered by Congress—also supports the conclusion that the exception in Section 157(b)(2)(B) only applies when a personal injury tort relates to a bodily injury tort and not a broader set of torts that would include defamation claims.

20.     Specifically, the Senate legislation introducing the concept to the 1984 amendments referred only to "personal injury tort claims." When the House considered the legislation, it added the language "and wrongful death," to the phrase. This demonstrates that

---

such injuries to the person as libel or slander, criminal conversation, malicious prosecution, false imprisonment, and mental suffering.

*Personal Injury*, Black's Law Dictionary (5th ed., 1979). *Webster's Third New International Dictionary* defined "personal injury" as: "1. An injury affecting one's physical and mental person as contrasted with one causing damage to one's property; 2. An injury giving rise to a personal action at law." *Personal Injury*, Webster's Third New International Dictionary (2nd ed., 1961).

8

when the House read the Senate language, it read it to mean bodily harm and was concerned that the language did not go far enough. It makes natural and intuitive sense that the phrase "wrongful death" would need to be added if "personal injury" focused on bodily harm, because at common law (and thus in many states), in the event of the most extreme bodily injury (death), the victim could not sue. The survivors have a separate, independent cause of action for wrongful death. Thus, the House's addition of the phrase "wrongful death" is powerful evidence of a focus on bodily harm to individuals—from enactment history, not a mere floor speech.

21.     The fact that Congress did not use the phrase "personal bodily injury" from Section 522(d)(11) of the Bankruptcy Code does not change this conclusion. The two phrases are located in different Titles of the United States Code. Furthermore, the primary focus of the 1984 amendments was on the structure of the bankruptcy courts, and it would be improper to read the new language added in Section 157(b)(2)(B) in light of the totally unrelated Section 522(d)(11) of Title 11, which addresses exempt assets.

### D.     Other Legislative History Supports a Narrow Interpretation of "Personal Injury."

22.     The only court in this District to examine the legislative history of Section 157(b)(2)(B) has noted that "[t]here is no legislative history that would bring the plaintiff's claim for a tort without trauma within the statutory exception for a personal injury tort" and that "the legislative history indicates that Congress intended this exception for a 'narrow range' of claims." *In re Cohen*, 107 B.R. at 455. The floor speeches and committee reports are summarized above. None of them shows a specific concern that district courts determine non-bodily-injury claims, such as defamation claims or business torts.

23.     The four types of statements in this legislative history are: (a) that the exception to bankruptcy court power be narrow, (b) that an example of the type of action is an automobile

9

accident, (c) that the exception would continue to allow bankruptcy courts to decide most other matters, and (d) that there was concern for some "involuntary creditors." *See supra* ¶¶ 11-14. These statements do not come close to suggesting that all tort claims should be covered merely because tort creditors are in a sense "involuntary" creditors. Indeed, the ambiguity in these statements shows why committee reports and floor speeches are not a reliable guide to interpretation of the statute.

24. A contrary interpretation would create an exception that swallows the rule, eliminating bankruptcy courts' jurisdiction in a vast number of cases where, as here, emotional or reputational injuries are incidentally alleged in conjunction with harms to business interests. *See In re Interco*, 135 B.R. 359, 362 (E.D. Mo. 1991); *see also In re Atron, Inc. of Michigan*, 172 B.R. 541, 544-45 (W.D. Mich. 1994); *In re Betholet*, 126 B.R. 413, 416 (Bankr. D.N.H. 1991). In the final analysis, with the use of ordinary canons of construction, the text of the statute is sufficiently plain that resort to legislative history presents more dangers than benefit and is inappropriate. The legislative history that may be appropriate to use (such as the enactment history of the statute) does not in any way point in favor of a broad interpretation and instead supports the conclusion that the phrase is meant to cover only bodily injury torts.

### E. Neither Mr. Johnson Nor GotNews Allege Claims Based on Personal Injury or Wrongful Death.

25. The claims alleged by Mr. Johnson allege emotional or reputational harms and business injuries—neither of which qualify as the type of physical or bodily harm of a "personal injury tort" claim. The Johnson claims—alleging defamation and false light—do not involve physical or bodily trauma. At most, these harms assert some emotional or reputational injury. *See* Compl. ¶¶ 237, 239, 240, 246 ("Johnson and Got News, LLC have been damaged in

10

reputation . . . ."). Emotional suffering without physical harm insufficient to be a "personal injury tort." *See In re Atron Inc. of Michigan*, 172 B.R. 541, 544 (Bankr. W.D. Mich. 1994).

26. At its core, Mr. Johnson's claim is predicated on business injury. In this litigation, Johnson has described his interests as "coextensive" with those of his business. [Docket No. 452, at ¶ 1 n.4]. His claim asserts "pecuniary damages of lost business and that business investments" and that a "business has been placed in jeopardy." Compl. ¶¶ 236, 237, 238, 239, 240, 245, 246. Injuries to Mr. Johnson's business interests are plainly not injuries to his person, and thus even if this Court were to adopt the *ResCap* middle-ground, claim-specific approach, this Court has the authority to adjudicate the claims.

## II.    CALIFORNIA'S ANTI-SLAPP STATUTE APPLIES IN THIS CONTESTED MATTER.

27. This Court's determination of the allowance and disallowance of the GotNews/Johnson Claims must take into account the California Anti-SLAPP Statute. "Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation" and "[u]nless some federal interest requires a different result, there is no reason why the state interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000) (internal quotations and citations omitted). *Raleigh* held that the state law burden of proof regarding tax claims must be applied in the bankruptcy claims allowance process. The same rationale, and the plain text of the Bankruptcy Code, require that when state law makes a cause of action unenforceable, the result must be the same in bankruptcy— disallowance of the claim.

11

28.     California's Anti-SLAPP law contains one key provision regarding the plaintiffs' burden that is relevant at this stage of the proceedings.[4]  Instead of the usual motion to dismiss, a defendant (here Gawker Media) can file a special "Anti-SLAPP Motion." Cal. Code Civ. Proc. § 425.16(b).  Both sides can file supplemental affidavits.  The Anti-SLAPP statute then shifts the <u>burden onto the plaintiff to establish **a probability** that he will succeed</u> on the claim. *Id.* (emphasis added).  This is plainly a higher standard than the "plausibility" standard of a typical motion to dismiss.  If the Anti-SLAPP motion succeeds, the complaint is stricken and therefore the cause of action is unenforceable.  Because the purpose of the Bankruptcy Code is to equitably divide the assets of the debtor amongst its creditors and interest holders, it would make no sense to allow the GotNews Claim to dilute the recoveries of other parties to the bankruptcy with a claim that would fail in the forum in which it was brought.

### A.   Bankruptcy Courts Must Disallow Claims if they Would be Unenforceable Outside of Bankruptcy.

29.     Section 502(b) of the Bankruptcy Code sets forth Congress' rules for what claims are allowable and disallowable in bankruptcy.  Section 502(b)(1) sets forth an express adoption of state law, in a particular way, focusing on whether the claim is unenforceable outside of bankruptcy:

> shall allow such claim in such amount, except to the extent that—
> (1) such claim is unenforceable against the debtor and property of
> the debtor, under any agreement or applicable law for a reason
> other that because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b)(1).

30.     The most recent Supreme Court cases regarding Section 502(b)(1), *Raleigh* and *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443 (2007), emphasize that

---

[4] The California Anti-SLAPP law also provides that the defendant (here Gawker Media) shall recover its legal fees if it succeeds on an Anti-SLAPP Motion.  Cal. Code Civ. Proc. § 425.16(c).  Gawker Media reserves rights concerning such a claim for fees.

12

the enforceability or unenforceability of the claim is determinative. "[A]ny defense to a claim that is available outside of bankruptcy is also available in bankruptcy." *Travelers*, 549 U.S. at 450. California's Anti-SLAPP law applies to Mr. Johnson's and GotNews' claims because it is substantive state law, and the Supreme Court has held that state substantive law governs the adjudication of prepetition claims. In *Raleigh*, the Court again stated the "basic federal rule in bankruptcy is that state law govern[s] the substance of claims, Congress generally having left the determination of property rights in the assets of a bankrupt's estate to state law." 530 U.S. at 20 (citation and internal quotation marks omitted).

31. The most recent Second Circuit decision on this topic concluded that the affirmative defense of statute of limitations, usually asserted at the outset of a lawsuit, must also follow state law when being determined in the context of a bankruptcy claims allowance. *In re Coudert Bros. LLP*, 673 F.3d 180 (2d Cir. 2012). That court noted that the the rules for use of state law in bankruptcy can be "more difficult to discern" than in diversity cases. *Id.* at 187. As the Supreme Court stated in *Vanston Bondholders Protective Cmte. v. Green*, 329 U.S. 156 (1946):

> What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law. . . . In determining what claims are allowable and how a debtor's assets shall be distributed, a bankruptcy court does not apply the law of the state where it sits. *Erie R.R. v. Tompkins*, 304 U.S. 64, has no such implication. That case decided that a federal district court acquiring jurisdiction because of diversity of citizenship should adjudicate controversies as if it were only another state court. But bankruptcy courts must administer and enforce the Bankruptcy Act as interpreted by this Court in accordance with authority granted by Congress to determine how and what claims shall be allowed . . . .

13

*Id.* at 161, 162-63 (citation omitted). *See generally* Note, *Federal Modification of State Law: Erie and the Bankruptcy Statute of Limitations*, 62 Yale L.J. 479 (1953). The *Coudert* decision noted that state law would have applied in diversity, and there was no anti-forum-shopping reason to deny application of state law. The filing of the bankruptcy should not change the result: "Under these circumstances, it would be fundamentally unfair to allow Coudert's bankruptcy, coming as it did in the midst of the Connecticut action, to deprive Statek of the state-law advantages adhering to the exercise of its venue privilege." *Coudert*, 673 F.3d at 190.

32. In this case, what is good for the goose is good for the gander. GotNews and Mr. Johnson would not have enforceable claims in New York because of statute of limitations. They filed their complaint in California on the eve of the expiration of that state's statute of limitations. But a California court, the only venue in which the action would be timely, will only tolerate such a defamation action to continue if the claims can withstand the heightened burden of an Anti-SLAPP motion. Otherwise, the claim is unenforceable, to use the language of Section 502(b)(1). To paraphrase *Coudert*, "it would be fundamentally unfair to allow [Gawker Media's] bankruptcy . . . to [allow GotNews and Johnson to avoid the burden] adhering to the exercise of its venue privilege." *Id.*

    **B.**     **The Substantial Majority of Decisions Conclude that Anti-SLAPP Laws Apply in Diversity under *Erie*, and Therefore Under *Coudert*, they Also Would Apply in Bankruptcy.**

33. Courts have found that Anti-SLAPP provisions constitute substantive rights because they shift the burden of proof at an early stage in the case, providing a form of immunity from suit. *See, e.g., Godin v. Schencks*, 629 F.3d 79, 89-90 (1st Cir. 2010) (Maine Anti-SLAPP); *U.S.* ex. rel. *Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999) (California Anti-SLAPP); *Sherrod v. Breitbart*, 843 F. Supp. 2d 83, 85 (D.D.C. 2012) (District of

14

Columbia Anti-SLAPP). These courts conclude that Anti-SLAPP laws do not conflict with the Federal Rules of Civil Procedure, and that such laws are substantive, thus satisfying all possible tests for application of the *Erie* doctrine and make state law applicable in federal court. The shift in the burden under Anti-SLAPP laws necessarily has great "importance to the outcome of the case" and is precisely the type of outcome-determinative state law the Supreme Court identified in *Raleigh*. 530 U.S. at 20. This Court should adopt the analysis of those courts (which the Debtor does not set forth here), and the analysis from *Coudert* that there generally is not a reason for the rule in bankruptcy to be more restrictive than under *Erie*.

### C. Even Under the *Erie* Analysis of a Minority of Decisions, California's Anti-SLAPP Law Applies to this Bankruptcy Claims Allowance Contested Matter.

34. A small minority of courts of appeals' decisions (one majority opinion and one dissent) have concluded that Anti-SLAPP laws are in direct conflict with certain of the Federal Rules of Civil Procedure, and therefore cannot be applied in diversity cases. *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333-34 (D.C. Cir. 2015); *Makaeff v. Trump University LLC*, 715 F.3d 254, 274 (9th Cir. 2013) (Kozinski, J., concurring). To reach that conclusion they hold that the concept of an Anti-SLAPP motion and its heightened burden is in conflict with Federal Rules of Civil Procedure 12(b)(6) and 56. This direct conflict with a valid Rules Enabling Act provision means, to those courts, that the Anti-SLAPP laws cannot apply in diversity.

35. However, this rationale fails precisely because this is a federal bankruptcy claims allowance proceeding, which is a contested matter under the Federal Rules of Bankruptcy Procedure. Certain of the Federal Rules of Civil Procedure <u>do not automatically apply</u> in contested matters such as this one. And among the rules that do not apply is Rule 12(b)(6). Under Bankruptcy Rule 9014, the bankruptcy court can also direct that Rule 56 not apply. Bankruptcy claims allowance is designed to be a flexible proceeding with the express statutory

15

goal of determining what claims would be "unenforceable" under state law. Even if *Abbas* and the *Makaeff* dissent are correct in their analysis (and they are not), their rule for *Erie* cases that involve diversity jurisdiction cannot apply in claims allowance proceedings that are part of bankruptcy jurisdiction.[5]

        **D.**        **To the Extent That California's Anti-SLAPP Law is Procedural, it is the Paradigmatic Example of a Procedural Rule "Bound Up" With Substance.**

        36.        The dispute among the courts of appeals regarding the application of Anti-SLAPP laws in diversity cases arises under the analysis of a concurring opinion in the case of *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (Stevens, J., concurring).[6] Although Gawker Media does not believe that this Court needs to reach the issue, for completeness that concurring opinion provides another category of state laws applicable in federal court. An Anti-SLAPP law should also be applicable in federal court because it is a procedural rule "bound up" with substance. Justice Stevens noted in his *Shady Grove* concurrence that the line between procedure and substance is blurry and the two categories overlap. *Shady Grove*, 559 at 419 (Stevens, J., concurring). Specifically, state procedures that are "seemingly procedural rules *that make it significantly more difficult to bring or prove a claim*, thus serving to limit the scope of the claim," are among the rules that are "bound up" with substantive laws, and these should be applied when federal courts decide issues of state law. *Id.* at 420 (emphasis added). In *Godin*, the First Circuit specifically found that because the Anti-

---

[5] The Second Circuit has commented on the substantive nature of the California Anti-SLAPP statute (in a case involving a transferred action), but it has not decided the question of whether that Anti-SLAPP is substantive in a diversity proceeding first brought in New York. *See Liberty Synergystics Inc. v. Microflo Ltd.* 718 F.3d 138, 148 (2d Cir. 2013).

[6] As the narrowest opinion concurring in the result in a case which resulted in no majority opinion, Justice Stevens' concurrence in *Shady Grove* is the controlling opinion in the Supreme Court's most recent case confronting the application of the *Erie* doctrine. *Marks v. U.S.*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.") (internal citations and quotations omitted).

16

SLAPP law at issue had "both substantive and procedural aspects," it could not be displaced by federal procedural law and the Anti-SLAPP statute applied. *Godin*, 629 F.3d at 89.

37. In short, GotNews and Johnson cannot file claims in this bankruptcy case based on causes of action brought in California court and yet then seek to escape application of California Anti-SLAPP law.

### III. PROCEEDINGS AFTER DETERMINATION OF STATUS AS PERSONAL INJURY TORT CLAIMS

#### A. Because GotNews is an Artificial Entity and Cannot Have a Personal Injury Tort Claim, this Court Should Hear and Determine that Claim and then Apply Collateral Estoppel to the Johnson Claim.

38. As discussed above, because GotNews is a limited liability company, it is not entitled to a district court determination of the allowance or disallowance of its claim; the GotNews claim is simply not a "personal" injury tort claim under any interpretation of that term. *See supra* ¶ 16. Therefore this Court may hear and determine all aspects of the GotNews Claim. Critically, that determination will also bind Mr. Johnson.

39. Specifically, it is well established that a bankruptcy court may disallow claims on grounds of res judicata and collateral estoppel, even if the claim were a personal injury tort claim. *In Chateaugay Corp.*, 111 B.R. 67, 76 (Bankr. S.D.N.Y. 1990). That is because a bankruptcy court may make threshold determinations regarding claims that fall squarely within the meaning of the term "personal injury tort . . . claims," including, among other things, whether such claims are barred by the applicable statute of limitations, fail to state a claim with a basis in fact or law, or are otherwise subject to preclusion. *Id.* Otherwise creditors could cause significant disruption by labeling their claims as personal injury tort claims and insisting on a district court ruling on disallowance. Here, and assuming arguendo that the Court determines

that the Johnson Claim is properly a "personal injury tort" claim, the Court may still finally and full resolve the Johnson Claim after it first resolves the substantially identical GotNews Claim.

40.     The most appropriate procedure (if the Court determines that the Johnson Claim is a personal injury tort claim) is for this Court to hold in abeyance the contested matter concerning the Johnson Claim, hear and determine the GotNews Claim, and then determine that the Johnson Claim is finally and fully determined based on has the same result (whether allowance or disallowance) by virtue of collateral estoppel.  There are four specific reasons that justify such a process in this case.

41.     First, the claims are exactly identical, as asserted.  The proofs of claim make no distinction between the substantive claims or the harms alleged to GotNews and Mr. Johnson. They both have a single attached document, a copy of the complaint filed in the California Case (less exhibits).  The allegations of that complaint treat both plaintiffs collectively.

42.     Second, following the alternative approach would encourage creditors in other cases to gain leverage if the creditor is a business with a single owner who is an individual.  Such an individual owner could simply file a parallel claim and assert that there is a personal injury tort claim (especially if using a broad definition of that term).  This could lead to a greater amount of claims litigation than Congress intended that has to be conducted in the district court. This would be highly disruptive to bankruptcy administration.

43.     Third, Mr. Johnson cannot assert that he is inequitably being stripped of some right to trial outside of bankruptcy court that he was diligently pursuing.  Quite to the contrary, Mr. Johnson took no action concerning the claims in California state court, showing no significant interest in prosecuting them until faced with the bar date in these cases and potential bankruptcy court determination of his claim.  He has not sought to lift the stay to return the case

18

to California. This is not a situation in which Mr. Johnson chose another court and was actively pursuing it and had that path interrupted by the commencement of the chapter 11 case.

44. Fourth, and perhaps most importantly, Mr. Johnson has no cognizable statutory right or interest in sequencing the litigation to avoid this application of collateral estoppel. There is an exact analogy to this scenario that involves the tension between constitutional rights and preclusion. Specifically, parties have from time to time argued that when they have a Seventh Amendment right to civil trial by jury, they cannot have such a claim decided against them by a court based on preclusion from a prior, non-jury action. The Supreme Court has rejected that proposition in bankruptcy cases. *Katchen v. Landy*, 382 U.S. 323, 328 (1966). Finally, bankruptcy cases and the scheme of the Bankruptcy Code for claims allowance are a specific exception to the doctrine that federal courts should sequence litigation to preserve the constitutional right to trial by jury. *Id.* at 337-40 (rejecting the application of *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959) in bankruptcy claims proceedings). Certainly if a constitutional right to adjudication by a jury is not offended by a bankruptcy claims litigation that leads to issue preclusion, then the mere statutory right to a district court adjudication in Section 157(b)(2)(B) is not offended by this Court conducting a claims litigation that leads to preclusive effect on Mr. Johnson.

**B.     Even if the GotNews/Johnson Claims are Personal Injury Tort Claims, this Court May Conduct all Proceedings Until Trial.**

45. Even if this Court were to conclude that it cannot finally hear and determine the allowance of the GotNews/Johnson Claims, this Court should still conduct proceedings regarding the claims. Under Section 157(b)(2)(B), the allowance or disallowance of a "personal injury tort or wrongful death claim" is a non-core proceeding. Bankruptcy Courts are specifically directed to conduct the hearings in non-core proceedings and then make a report and recommendation to

19

the district court. 28 U.S.C. § 157(c)(1). Congress strongly preferred that bankruptcy courts conduct the hearings in non-core matters, such as the consideration of dispositive motions, including motions to dismiss, for judgment on the pleadings, and summary judgment motions. *See Executive Benefits Life Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014) (finding the policy in favor of bankruptcy court determination is so strong that *Stern*-governed core proceedings should be treated as non-core matters even in absence of express statutory command). Only at the final stage of trial does Section 157(b)(5) require that the district court preside over the claims objection contested matter. Because defamation claims are often resolved on early dispositive motions (based on various First Amendment doctrines) and again potentially on summary judgment (based on very high scienter requirements and other doctrines), there is every reason for this Court to hear the allowance of the GotNews/Johnson Claims even if it it would ultimately issue a report and recommendation.

Dated: January 25, 2017
      New York, New York

*/s/ Gregg M. Galardi*
ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Peter Walkingshaw (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
gregg.galardi@ropesgray.com
ross.martin@ropesgray.com
peter.walkingshaw@ropesgray.com

*Counsel to the Debtors
and Debtors in Possession*

20