RANDAZZA LEGAL GROUP, PLLC
Jay M. Wolman
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tele: 702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

*Attorney for Claimants,*
*Charles C. Johnson and Got News LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:                                        :
                                              : Chapter 11
GAWKER MEDIA LLC,                             :
                                              : Case No.: 16-11700 (SMB)
                    Debtors.[1]               :
-------------------------------------------------------x

## RESPONSE TO DEBTORS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF ITS OMNIBUS OBJECTIONS TO CLAIMS OF CHARLES C. JOHNSON AND GOT NEWS, LLC

Claimants Charles C. Johnson ("Johnson") and Got News, LLC ("Got News") (collectively, "Claimants") hereby respond to Debtor Gawker Media, LLC ("Debtor") and file their Supplemental Brief in support of their claims against Debtor, with specific attention to their claims being "personal injury tort…claims" under 28 U.S.C. § 157(b)(2)(B) and the inapplicability of the California Anti-SLAPP law, Cal. Code. of Civ. P. § 425.16, to Debtor's Claim Objections, and state as follows:

. . .


. . .

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Lft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

## I. Procedural Background

1. Claimant Johnson is a resident of the State of California and Claimant Got News, LLC, is organized and domiciled in that jurisdiction. Claimant Johnson is the Chief Executive Officer of Got News.

2. In December 2014, Debtor maliciously libeled Claimant Johnson through its employees J.K. Trotter and Greg Howard, as well as through its pseudonymous Kinja authors, through false accusations of vile and disgusting acts, including bestiality and public defecation. Debtor engaged in this campaign against Claimant Johnson on the pages of its "Deadspin" and flagship "Gawker.com" websites. These libels also falsely accused Claimant Johnson of lying in his published journalism. All of these false and defamatory accusations were published on multiple webpages operated and controlled by Debtor and on social media platforms, such as Twitter, through accounts operated and controlled by Debtor and/or its employees and agents. These libels, which were also false light invasions of privacy, caused Claimant Johnson considerable reputational, emotional, and financial harm, and they so identified him with Claimant Got News that it, too, was a victim of Debtor's tortious conduct and suffered reputational and financial harm as well.

3. Despite being given six months to take responsibility for its misdeeds, Debtor failed to retract its libel, apologize, or take any other remedial steps. As set forth the California action, Debtor's *modus operandi* was to make extreme and outrageous statements, without regard for the truth, and without reasonable inquiry, in order to attract readers and generate revenue. As this Court is well aware, that business model ultimately imploded, resulting in multiple lawsuits and a substantial judgment against it.

4. Among those who decided that Debtor should not be permitted to get away with defamation for profit, Claimants reluctantly took the step to seek justice, risking that Debtor and its functionaries would employ the "Streisand effect" to republish the false accusations previously made in reporting on the suit itself. Thus, on June 19, 2015, Claimants filed suit against Debtor and its employees, J.K. Trotter and Greg Howard, in the Twenty-First Judicial Circuit Court,

St. Louis County, Missouri, Case No. 15SL-CC02099 ("Missouri litigation") asserting claims for defamation and false light invasion of privacy arising from the aforesaid false and defamatory statements. On July 23, 2015, Debtor and the other defendants removed the Missouri litigation to the United States District Court for the Eastern District of Missouri, Case No. 4:15-cv-01137. That action was dismissed *without prejudice* for lack of personal jurisdiction on January 15, 2016.

5. During the course of the Missouri litigation, Debtor stated it would be subject to personal jurisdiction in California and New York. In anticipation of the dismissal in the Missouri litigation, Claimants instituted an action on December 9, 2015, against Debtor, Howard, and Trotter, in the Superior Court of California, County of Fresno, Case No. 15 CECG 3734 ("California action"), raising the claims that had been raised against them in the Missouri litigation, with specific reference to statements identified by Claimants as false and defamatory during the course of that proceeding.

6. Upon filing the California action, the Superior Court issued a Notice of Case Management Conference scheduled for April 11, 2016, at which Claimant Johnson appeared, *pro se*, and attempted to appear *in propia persona* for Claimant Got News. As a result, the Superior Court issued an Order to Show Cause,[2] scheduling a hearing for June 16, 2016. On June 10, 2016, Debtor filed its voluntary petition in this court. Because the automatic stay did not apply to the prosecution of the claims against Howard and Trotter, Mr. Johnson appeared at the previously scheduled hearing and notified the court of Debtor's bankruptcy petition, whereupon the hearing was continued to December 15, 2016. Although Debtor attempts to suggest Claimants failed to prosecute, it neglects to mention that California affords a plaintiff three years to serve a summons

---

[2] Under California law, corporations that appear *in propia persona* may proceed with their right to sue upon the appearance of counsel for the corporation, which is without prejudice to a defendant. See *CLD Constr., Inc. v. City of San Ramon,* 120 Cal. App. 4th 1141, 1152 (1st Dist. Ct. App. 2004). California counsel for Claimant Got News (and Claimant Johnson) entered an appearance in the California action on December 14, 2016 and attended the December 15, 2016 hearing. Counsel for Debtor appeared as well and the matter was continued to June 15, 2017. Subsequent to the confirmation of the plan in Debtor's bankruptcy case, and in compliance therewith, Claimants voluntarily dismissed Howard and Trotter from the California action. With the dismissal of the non-debtor defendants, the California action should be entirely subject to the automatic stay.

and complaint upon a defendant.³ See Cal. Code of Civ. P. § 583.210(a). Claimants, without the assistance of counsel, diligently appeared or attempted to appear at all hearings as required.

7. On September 28, 2016, Claimant Johnson filed his proof of claim against Debtor as Claim No. 223 and Claimant Got News, LLC, filed its proof of claim against Debtor as Claim No. 298. Both claims were timely filed. In support of their proofs of claims, Claimants affixed copies of the complaint in the California action.

8. On October 31, 2016, Debtor filed objections to those claims seeking, in part, to apply the California Anti-SLAPP law [Docket Nos. 396 & 397]. Claimants filed their timely oppositions to Debtor's objections on November 16, 2016. [Docket No. 452]. Debtor replied on November 29, 2016. [Docket No. 501].

9. The Parties appeared for a hearing on December 1, 2016, whereupon argument was made by Claimants and Debtor,⁴ and the Court ordered further proceedings relative to the discrete issues raised in this supplemental brief. A further hearing is scheduled for February 14, 2017.

## II.    Analysis

10. Nothing in the legislative history indicates that defamation or invasion of privacy claims are not "personal injury torts". In fact, all of the history provided by Debtor would preclude their narrow interpretation when Congress was expressly acting to ensure the district court would hear such claims. Similarly, although some courts have permitted the California Anti-SLAPP law to be heard in cases involving diversity jurisdiction, it does not follow that the procedural mechanisms can apply in an objection to claim proceeding.

---

³ Debtor also neglects to mention its ongoing, post-petition libel. See, e.g., Trotter, J.K., "What did Internet Troll Chuck Johnson Know about Peter Thiel's Secret War on Gawker?" (Jun. 17, 2016) (reiterating false accusation of misreporting a story about Sen. Menendez) available at <http://gawker.com/what-did-internet-troll-chuck-johnson-know-about-peter-1782110939>.

⁴ At that hearing and in response to objections to claims, other claimants also argued that the district court was required to hear defamation claims as personal injury claims under 28 U.S.C. § 157(b)(2)(B). All of those other claims have been resolved.

A.  Personal Injuries are More Than Just Bodily Injuries

11. Although Debtor mentions the reorganization of authority between the bankruptcy courts and the district courts in the wake of *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50 (1982), it fails to explain what motivated the *Marathon* decision. The concern in that case was the extent to which Congress could empower Article I courts. The Supreme Court specifically observed that "Congress cannot 'withdraw from [Art. III] judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.'" 458 U.S. at 69 n.23, quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272, 284 (1856). Such suits involved "private rights", as opposed to "public rights" created legislatively.

12. During debate over the Bankruptcy Amendments and Federal Judgeship Act of 1983, Pub. L. 98-353, Senator Robert Dole specifically noted:

> This title establishes an article I bankruptcy court, with judges appointed for limited terms, to handle the routine business of bankruptcy claims based upon State law, which under *Marathon* will require the attention of article III judges, will be referred to the district courts except where the parties consent to bankruptcy court jurisdiction. One of those areas reserved for attention of the district courts will be personal injury claims, which are exempted from the definition of core proceeding under the bill. 130 Cong. Rec. S20083 (daily ed. June 29, 1984).

However, none of the legislative history, including that cited by Debtor, specifically addresses whether defamation claims are "personal injury" claims.[5]

i.  Slander and Libel are Common-Law Personal Injury Claims

13. In determining the meaning of "personal injury", this Court must look to the common law understanding. Over a century ago, in determining whether a slander was among the "willful and malicious injuries to the person or property of another" not discharged in bankruptcy, the Kentucky Court of Appeals found that a slander is a "personal injury—that is, an injury to his person", and further explained its holding in the context that "[t]he act of Congress must be

---

[5] There is no inconsistency with including defamation claims among the "narrow range of cases" that are personal injury cases raised by Rep. Kastenmeir. 130 Cong. Rec. H7491. As Debtor notes, the sole example was an automobile accident claim; by Debtor's logic, all medical malpractice claims would be excluded. None of the remainder of the legislative history cited provides any further insight.

- 5 -

understood as having used the words in the section quoted with reference to their common-law acceptation. Sutherland on Statutory Construction, 289." *Sanderson v. Hunt*, 116 Ky. 435, 438, 76 S.W. 179, 179 (1903); accord *McDonald v. Brown,* 23 R.I. 546, 51 A. 213 (1902); *Nat'l Sur. Co. v. Medlock,* 2 Ga. App. 665, 58 S.E. 1131 (1907). The *Sanderson* decision was adopted by the Sixth Circuit Court of Appeals, similarly finding a libel to be a "personal injury" under the common law such that it would not be dischargeable under the bankruptcy act. *Thompson v. Judy,* 169 F. 553 (6th Cir. 1909);[6] see also *Parker v. Brattan,* 120 Md. 428, 434-35, 87 A. 756, 758 (1913). This understanding was also adopted by at least one district court in the Second Circuit. See *In re Bernard*, 278 F.734, 735 (E.D.N.Y. 1921).

14.  Congress, in drafting Section 157(b)(2)(B) must, therefore, be understood as having used the words "personal injury" with reference to its common-law acceptation. From the earliest cases, claims sounding in defamation have been deemed a "personal injury." Indeed, this Court recognized as much nearly twenty years ago when it wrote in *In re Boyer*, 93 B.R. 313, 317 (Bankr. N.D.N.Y. 1988), in the context of a Section 1983 & 1985 claim:

> The term "personal injury tort" embraces a broad category of private or civil wrongs or injuries for which a court provides a remedy in the form of an action for damages, and includes damage to an individual's person and any invasion of personal rights, such as libel, slander and mental suffering, BLACK'S LAW DICTIONARY 707, 1335 (5th ed. 1979).

Accord *Soukup v. Employers' Liab. Assur. Corp.*, 341 Mo. 614, 625, 108 S.W.2d 86, 90 (1937) citing 3 Words & Phrases, Fourth Series, p. 90 (workers' compensation case observing that "The words 'personal injuries' as defined by lexicographers, jurists and textwriters and by common acceptance, denote an injury either to the physical body of a person or to the reputation of a person, or to both.")

15.  Simply put, "[t]here is no firm basis to support the proposition that libel and slander were considered to be other than personal injuries at common law." *McNeill v. Tarumianz*, 138 F. Supp. 713, 717 (D. Del. 1956). In support thereof, the Delaware district court quoted 1 Blackstone

---

[6]  The *Thompson* decision was generally met with approval by the Second Circuit Court of Appeals in *In re Conroy,* 237 F. 817 (2d Cir. 1916).

Commentaries 129, which classified rights of "personal security" to consist "in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health and his reputation." *Id.* at 716 (further noting that the courts consider "rights of personal security" as synonymous with "personal injury").[7]

16.     The Supreme Court of Pennsylvania, in 1825, laid down the following common law history in the context of a claim involving a decedent:

> That a personal action dies with the person is an ancient and uncontested maxim. But the term "personal action," requires explanation. In a large sense, all actions except those for the recovery of real property, may be called personal. This definition would include contracts for the payment of money, which never were supposed to die with the person. The maxim must therefore be taken in a more restricted meaning. It extends to all wrongs attended with actual force, whether they affect person or property; and to all injuries to the person only, though without force. Thus stood originally the common law, in which an alteration was made by the stat. 4. Ed. 3. c. 7, which gave an action to an executor for an injury done to the personal property of his testator in his life, which was extended to the executor of an executor by stat. 25, Ed. 3. And by the stat. 31, Ed. 3 c. 11, administrators have the same remedy as executors. These statutes received a liberal construction from the judges, but they do not extend to injuries to the person of the deceased, nor to his freehold. So that no action now lies, by an executor or administrator for an assault and battery of the deceased, or trespass *vi et armis*, on his land, **or for slander; because it is merely a personal injury.**

*Lattimore v. Simmons*, 13 Serg. & Rawle 183, 184-85 (Pa. 1825) (emphasis added).

17.     The Supreme Court of Wisconsin, in 1874, expounded upon this concept in a matter involving state bankruptcy law. It observed "A libel or a slander might deprive a man of

---

[7] The Georgia Supreme Court in *Johnson v. Bradstreet Co.*, 87 Ga. 79, 81-82, 13 S.E. 250, 251 (1891) expounded upon this understanding:
  At common law, absolute personal rights were divided into personal security, personal liberty, and private property. The right of personal security was subdivided into protection to life, limb, body, health, and reputation. 3 Blackst. Com. 119. If the right to personal security includes reputation, then reputation is a part of the person, and an injury to the reputation is an injury to the person. Under the head of "security in person," Cooley includes the right to life, immunity from attacks and injuries, and to reputation. Cooley on Torts (2d ed.), 23, 24. See, also, Pollock on the Law of Torts, *7. Bouvier classes among absolute injuries to the person, batteries, injuries to health, slander, libel, and malicious prosecutions. 1 Bouv. L. Dic. (6th ed.) 636. "Person" is a broad term, and legally includes, not only the physical body and members, but also every bodily sense and personal attribute, among which is the reputation a man has acquired. Reputation is a sort of right to enjoy the good opinion of others, and is capable of growth and real existence, as an arm or a leg. If it is not to be classed as a personal right, where does it belong? No provision has been made for any middle class of injuries between those to person and those to property, and the great body of wrongs arrange themselves under the one head or the other. Whether viewed from the artificial arrangement of law writers, or the standpoint of common sense, an injury to reputation is an injury to person.

employment, destroy his credit, ruin his business, and greatly impair his estate; yet an action therefor would be an action for a personal injury, the effect of the wrong on the estate of the injured party being merely incidental." *Noonan v. Orton*, 34 Wis. 259, 263 (1874). That same year, the Supreme Court of Virginia recognized that an "action of slander" did "involve a claim for personal damages" and, as such, did not pass to the assignee in bankruptcy. *Dillard v. Collins*, 66 Va. 343, 345-47 (1874).

18. Similarly, a claim by a wife for slander was deemed a "personal injury" claim such that, under the law at that time, her husband was required to join in the suit. See, e.g., *Smalley v. Anderson*, 18 Ky. 56 (1825) (in a claim for "personal injury", husband was required to join suit with wife in claim for slander accusing her of adultery); accord *Gibson v. Gibson*, 43 Wis. 23, 26-27 (1877); *Leonard v. Pope*, 27 Mich. 145, 146 (1873) (a claim for slander is "a personal grievance or cause of action"). The U.S. Court of Appeals for the Fifth Circuit agreed that "libel is a personal injury" and that "[a]t common law, libel and slander were classified as injuries to the person, or personal injuries. 3 Blackstone, 119; Cooley on Torts (2d Ed.) 23, 24; Bouvier, Law Dictionary, verbo 'Injury.'" *Times-Democrat Pub. Co. v. Mozee*, 136 F. 761, 763 (5th Cir. 1905). Although the law now recognizes spousal independence, the nature of the action has not changed.

19. The principle that slander and libel are personal injuries is one that was generally recognized, and, as seen above, it tended to be addressed in cases involving decedents. Blackstone, in his Commentaries (vol. 3, p. 302), stated the rule: "In actions merely personal, arising *ex delicto*, for wrongs actually done or committed by the defendant, as trespass, battery, and slander, the rule is that *actio personalis moritur cum persona*; and it shall never be revived either by or against the executors or other representatives." Thus, by statute, states such as Illinois, in overriding the common law to permit actions to survive, expressly carved out slander and libel as being personal injuries that would not survive. See *Holton v. Daly*, 106 Ill. 131, 139 (1882) quoting Ill. Rev. Stat. 1874, p. 126 ("actions to recover damages for an injury to the person, except slander and libel, … shall also survive.").

20. In contrast, a claim for wrongful death was not recognized at common law precisely because personal injury actions did not survive under the *action personalis moritur cum persona* universal maxim. Statutes were, therefore, enacted to permit claims for wrongful death "compensatory of the damages sustained by the heirs or next of kin, who had, or are supposed to have had, a pecuniary interest in the life of the intestate." *Burns v. Grand R. & I. R. Co.*, 113 Ind. 169, 171, 15 N.E. 230, 231 (1888). Specifically, "[t]hese statutes, while they do not in terms revive the common law right of action for personal injury, nor make it survive the death of the injured person, create a new right in favor and for the benefit of the next of kin or heirs of the person whose death has been wrongfully caused." *Id.*

21. Debtor mistakenly believes that the addition of "wrongful death" implies that because only such a claim can arise from the death of a natural person's body, the term "personal injury" must be construed similarly in context. Debtor misunderstands that a wrongful death claim is not a common law personal injury claim; thus it had to be specifically added. The addition of wrongful death claims does not, however, modify the common law understanding of "personal injury," which included libel and slander.

22. The legislative history, therefore, shows that claims for wrongful death were added because they were not recognized at common law to be a "personal injury." Libel and slander, on the other hand, were. The legislative record is otherwise silent as to the specific torts that made up a "personal injury" claim and therefore should be understood to include all such claims at common law, including slander and libel. Although Debtor worries that claims for emotional damages will "create an exception that swallows the rule" (Debtor's Brief at 10), it creates a straw-man argument, improperly lumping in claims that are not common law "personal injury" claims that happen to provide for emotional distress damages. Those claims are different, statutory causes of action; the only statutory claim included in Section 157(b)(2)(B) is the wrongful death claim.

Thus, when Congress enacted Section 157(b)(2)(B), it necessarily imported the common law meaning of "personal injury" and, therefore, libel and slander claims.[8]

    ii.    Claimant Got News is Entitled to Invoke Section 157(b)(2)(B)

23. Debtors seek to treat Claimant Got News, as a corporate person, differently under Section 157(b)(2)(B) than Claimant Johnson. There is no reason for this. As libel is a "personal injury" tort, there is no basis to suggest a corporate person should be treated any differently than a natural person. Simply because it cannot suffer a battery does not mean it is foreclosed from all personal injury claims. As explained by the Georgia Supreme Court in *Johnson v. Bradstreet Co.*, 87 Ga. 79, 81-82, 13 S.E. 250, 251 (1891), an "injury to reputation is an injury to person." Although a corporation may be unable to suffer a physical, bodily injury, it can suffer an injury to reputation.

24. Debtor's citations are inapposite. The U.S. Supreme Court has <u>not</u> said that a corporation cannot suffer a personal injury; rather, *N.P.R. Co. v. Whalen*, 149 U.S. 157, 162-163 (1893), address actions in <u>nuisance</u>, which can only either affect life, health, senses, or property, and not reputation. Debtor's quote from *Roemer v. Commissioner of Internal Revenue,* 176 F.3d 693, 699 n. 4 (9th Cir. 1983), was a matter of pure *dicta*; the Ninth Circuit had no occasion to pass upon whether a corporation could, in fact, suffer a personal injury. Subsequent cases, such as *In re Lost Peninsula Marina Dev. Co., LLC,* 2010 U.S. Dist. LEXIS 78532 (E.D. Mich. 2010), wrongly rely upon such *dicta.* In fact, the Ninth Circuit's entire basis was *DiGiorgio Fruit Corp. v. American Federation of Labor,* which does not say a corporation cannot suffer a "personal injury"; it merely says that "a corporation has no reputation in the personal sense", yet "it has a business reputation". 215 Cal.App.2d 560, 571, 30 Cal.Rptr. 350, 356 (1963). The Second Circuit has specifically refrained from finding a dichotomy between a business reputation and the reputation

---

[8] Similarly, as invasions of personal rights, Claimants' false light invasion of privacy claims are "personal injury" claims. See M*ercado v. Fuchs (In re Fuchs)*, No. 05-36028-BJH-7, 2006 Bankr. LEXIS 4543, at *6-7 (U.S. Bankr. N.D. Tex. Jan. 26, 2006) (finding invasion of privacy claim to be a "personal injury" under Section 157(b)(2)(B)); see also *Bernstein v. Nat'l Broad. Co.*, 129 F. Supp. 817, 825 (D.D.C. 1955) ("The tort of invasion of privacy being a personal injury….")

of a natural person. See *Agar v. Commissioner,* 290 F.2d 283, 294 (2d Cir. 1961). However, the Eleventh Circuit specifically answered in the affirmative the question "[i]s damage to one's business reputation a personal injury?" *Fabry v. Commissioner*, 223 F.3d 1261, 1270 (11th Cir. 2000).

25.     In fact, the purpose of Section 157(b)(2)(B) was to properly address claims that should be heard by an Article III court. As noted above, such was prompted by the *Marathon* decision, a case where the sole litigants were corporate persons. Where a natural person would have a right to have a matter heard by an Article III court but a corporate person does not, such denial of equal protection would be unlawfully violative of due process under the Fifth Amendment. See *Bolling v. Sharpe,* 347 U.S. 497 (1954) (holding equal protection claims implicate due process).

26.     Even if corporate persons could be treated differently from natural persons for claims arising from the same transaction, it would be improper to abide Debtor's suggestion to have the Bankruptcy Court determine the corporate claim first, in order to then argue a preclusive effect against the natural person. This attempted end-run around a specifically mandated statutory provision, grounded in Constitutional rights, should not be condoned. This is not what the Supreme Court was considering in *Katchen v. Landy,* 382 U.S. 313 (1966); in *Katchen,* the determination involved a single party who submitted to equity jurisdiction. Claimant Johnson has not taken action to deprive himself of his rights. Where Congress has acted to provide for access to Article III courts, it would run afoul of the intent of the law to make that access ephemeral.

27.     Although Debtor at least has the decency to acknowledge that is its purpose, it would set an unconscionable precedent. Many natural persons conduct business through or have some relationship with a corporate person such that harms giving rise to their individual personal injury claims would also harm the corporate person. As a result, debtors who would seek to deprive such natural persons of their right to be heard by an Article III court could simply involuntarily join or otherwise implead the related corporate person, have that matter heard first, and then attempt to preclude the natural person's claim on that basis.

B.  The California Anti-SLAPP Law Does Not Apply

28. Debtor's motion is not about allowance of claims; it is about whether a state law procedural mechanism is to apply in a non-adversarial, contested matter. Although some federal courts permit the application of the California Anti-SLAPP law, Cal. Code Civ. P. § 425.16, in civil cases arising from diversity jurisdiction, it has never been found applicable to a contested claim proceeding in bankruptcy court. The differences between the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure demonstrate that it makes little sense to do take such an unprecedented step.

29. The very nature and purpose of a proof of claim differs from a traditional complaint, rendering the California law impracticable. As this Court is aware:

> Correctly filed proof of claims "constitute *prima facie* evidence of the validity and amount of the claim . . . . To overcome this *prima facie* evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the *prima facie* case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 U.S. Dist. LEXIS 143957, 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 Collier on Bankruptcy ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

*In re Residential Capital, LLC*, 519 B.R. 890, 907 (Bankr. S.D.N.Y. 2014).

30. In contrast, under Cal. Code Civ. P. § 425.16(b)(1):

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

31. California courts have established a two-step process: first, the defendant must establish the action arose from protected speech or petitioning activity, then "then the burden shifts to the plaintiff to establish a probability that the plaintiff will prevail on the claim, *i.e.*, make a

- 12 -

*prima facie* showing of facts which would, if proved at trial, support a judgment in plaintiff's favor. In making its determination, the trial court is required to consider the pleadings and the supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Dowling v. Zimmerman*, 85 Cal. App. 4th 1400, 1417, 103 Cal. Rptr. 2d 174, 188 (2001) (internal citations and quotation marks omitted).

    32.    Further,

> [t]o establish a probability of prevailing, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. For purposes of this inquiry, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. In making this assessment it is the court's responsibility to accept as true the evidence favorable to the plaintiff. The plaintiff need only establish that his or her claim has minimal merit to avoid being stricken as a SLAPP.

*Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 291, 46 Cal. Rptr. 3d 638, 662-63, 139 P.3d 30, 50 (2006) (internal citations and quotation marks omitted).

    33.    This process makes little sense in a non-adversarial, claims objection proceeding. First, as noted, Claimants' proofs of claim already enjoy a presumption of *prima facie* validity under Fed. R. Bankr. P. 3001(f) and Claimants' submissions must be accepted as true. Thus, as a matter of law, Claimants will always prevail on a California anti-SLAPP motion, having the "minimal merit" which would support allowance of the claim. Second, once a party objects to a proof of claim and introduces evidence of invalidity, a claimant must prove his claim by a preponderance of the evidence, not merely a probability of prevailing. Debtor would require a bankruptcy court to make an unnecessary finding that a disallowed claim nevertheless had a probability of prevailing. The burden shifting framework does not work in a contested claim proceeding, even if it might work for an adversarial matter or in a case under the Rules of Civil Procedure.

16-11700-smb    Doc 745    Filed 02/08/17    Entered 02/08/17 15:43:32    Main Document
Pg 14 of 19


34. Notably, even in diversity cases, the entirety of the California Anti-SLAPP law is not imported in its entirety. Unlike in California state courts, a denial of an Anti-SLAPP motion is not an appealable interlocutory order in Federal courts. See *Hyan v. Hummer*, 825 F.3d 1043 (9th Cir. 2016). Federal courts do not apply the timing requirements set forth in Section 425.16(f), which directly collides with the timeline allowed under Fed. R. Civ. P. 56. See *Sarver v. Chartier*, 813 F.3d 891 (9th Cir. 2016). Federal courts do not stay discovery upon the filing of an Anti-SLAPP motion, as otherwise directed by Section 425.16(g). See *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845 (9th Cir. 2001).

35. Even the very idea of the burden-shifting framework has been questioned by the Ninth Circuit. See *Englert v. MacDonell*, 551 F.3d 1099, 1102 (9th Cir. 2009) (reserving the issue with respect to a parallel Oregon statute). The D.C. Circuit directly confronted this issue in *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1335 (2015). In *Abbas*, the D.C. Circuit directly rejected the idea that an analogous burden-shifting framework created a substantive, quasi-immunity from suit, because the law collided with Rules 12 and 56 as to how a showing is to be made, rendering it inapplicable pursuant to *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 398-99, 130 S. Ct. 1431 (2010). See 783 F.3d at 1335.

36. Debtor attempts to distinguish *Abbas* by highlighting the non-mandatory nature of applying Rules 12(b)(6) and 56, suggesting that collision is avoided if those rules are not applied. Debtor's Brief at 15-16. First, it bears observing that Debtor, in its objections to the claims, did move to apply Rule 12(b)(6), rending its own argument moot. Thus, where § 425.16 does conflict with Rule 7012, its application would directly collide with this Court's authority to "direct that one or more of the other rules in Part VII shall apply." Fed. R. Bankr. P. 9014(c). Second, although Debtor argues that the Court can "otherwise direct" Rule 7056 not apply per Rule 9014, it provides no reason why the normal rules should be avoided here; Claimants located but one case where a bankruptcy court made such direction to permit the parties to "flesh out the record", there on a motion to employ, not a claims objection. See *In re Rusty Jones, Inc.*, 109 B.R. 838, 845 (Bankr. N.D. Ill. 1989). Fleshing out a record would similarly be reason not to apply § 425.16 where

Debtor has otherwise obtained a briefing schedule in order for it to take discovery. See Dkt. No. 703. Essentially, the only reason to "otherwise direct" Rule 7056 not apply is because it collides with § 425.16. Third, to not apply certain rules simply because Claimants are California citizens would deny such citizens equal protection in a manner to be so violative of due process that it is an offense to the Fifth Amendment. See *Shapiro v. Thompson*, 394 U.S. 618, 642, 89 S. Ct. 1322, 1335 (1969).

37.  Moreover, it makes little sense to import the California procedure where Fed. R. Bankr. P. 3007 permits parties in interest *other* than the debtor to object to a claim. It could well be impracticable where a debtor does not believe protected speech was involved, but a third party does. It is not equitable for one class of objector (a debtor) to potentially enjoy the benefits of the California procedure (attorneys' fees) and not others (other creditors).

38.  Contrary to the assertion of Debtor, the procedures of § 425.16 are not "bound up" with the law of libel, even to the extent Justice Stevens's concurrence in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 599 U.S. 393, 419-410 (2010), is controlling. First, Debtor fails to identify what the substantive law is that Section 425.16 is bound up with. The California Anti-SLAPP law is not limited to the law of libel; it also applies to other state law claims. See, e.g., *State Farm Mut. Auto. Ins. Co. v. Lee*, 193 Cal. App. 4th 34, 122 Cal. Rptr. 3d 183 (2011) (application to abuse of process and unfair business practice claims); *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 3 Cal. Rptr. 3d 636, 74 P.3d 737 (2003) (application to malicious prosecution claims); *Fremont Reorganizing Corp. v. Faigin*, 198 Cal. App. 4th 1153, 131 Cal. Rptr. 3d 478 (2011) (application to breach of confidence, breach of fiduciary duty, equitable indemnity, and violation of Cal. R. Prof. Conduct 3-310(C)); *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP,* 133 Cal.App.4th 658, 674–675, 35 Cal. Rptr. 3d 31 (2005) (application to legal malpractice and breach of fiduciary duty claims). Section 425.16 is not analogous to a bond posting requirement, statute of limitations, evidentiary rule, or verdict capping identified by Justice Stevens, all of which have a substantive quality. See *Shady Grove,* 599 U.S. at 419-410. Here, Debtor seeks to employ a burden shifting framework that could appear at but

one discrete stage of a diversity case and has no role in a claim objection; this is not even, then, an example of a "state-imposed burden[ ] of proof", which would go to the ultimate outcome. *Id.* at 410 n. 4. There is no question that Claimants have the ultimate burden of proof, with or without the Anti-SLAPP motion. Thus, as it is not sufficiently bound up with any particular substantive law, it is not applicable in this matter.[9]

39.   Claims in a bankruptcy case are distinguishable from adversarial matters, especially those brought in district court on the basis of diversity jurisdiction. Claimants did not choose this forum; Debtor did by filing its petition. In doing so, it effectively stripped Claimants of their usual litigation rights. As Debtor says, "what is good for the goose is good for the gander". Debtor's Brief at 14. It would be inequitable to allow Debtor the benefit of a normal civil case, such as the use of Section 425.16, while simultaneously denying Claimants the benefits of such a case, by having deprived them of their chosen forum.

C.   This Matter Should Be Heard by the District Court

40.   Moving forward, this matter should proceed before the district court. Debtor incorrectly asserts that *Exec. Bens. Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014) commands that this Court first determine the case; rather, it held that having summary judgment first heard by the bankruptcy court, to be followed by *de novo* review by the district court, was permissible under 28 U.S.C. § 157(c). See *Messer v. Magee (In re FKF 3, LLC)*, No. 13-CV-3601 (KMK), 2016 U.S. Dist. LEXIS 117258, at *52 n.11 (S.D.N.Y. Aug. 30, 2016). Section 157(c)(1) says that a bankruptcy court "may" hear a non-core proceeding, not that it must.

41.   The standard as to whether the bankruptcy court should hear the non-core proceeding in the first instance under Section 157(c)(1) is not well articulated. Guidance from cases under Section 157(d), regarding withdrawal, however, may be informative. In such cases, the considerations are "(1) whether the case is likely to reach trial; (2) whether protracted discovery

---

[9]   Although Debtor noted the availability of fees under § 425.16, such provision is secondary to the burden-shifting framework. If the Bankruptcy Court does not perform the mechanism to determine whether or not a probability of success occurs, it would never reach the issue of fees. Section 425.16 does not create a substantive right to fees in all libel cases; only those cases where a defendant is successful on a motion to strike.

with court oversight will be required; and (3) whether the bankruptcy court has familiarity with the issues presented." *In re Times Circle East, Inc.*, 1995 U.S. Dist. LEXIS 11642, 1995 WL 489551, at *3 (S.D.N.Y. Aug. 15, 1995). All three factors warrant the matter being heard by the District Court in the first instance.

42. This case is likely to reach trial. Claimants have properly asserted multiple false and defamatory statements as libelous. Because of the defenses asserted by Debtor, it is more probable than not that multiple statements will require factual determinations beyond otherwise being readily apparent on their face. Debtor has asserted a defense of lack of actual malice; such will require probing and evidence into its research, editorial, and publication process. Debtor has asserted a defense under Section 230 of the Communications Decency Act; such will require probing and evidence into its business practices, sources, and publication processes. Neither do Claimants have any confidence that this matter will reach settlement; as noted above, even after having filed a bankruptcy petition arising from publication malfeasance, Debtor continued to defame Claimants.

43. Moreover, this non-core proceeding will likely require a jury trial to determine the claim's value. As having filed personal injury tort claim, Claimants are entitled to and claim the right to trial by jury. See 28 U.S.C. § 1411(a). The Second Circuit has found that jury trials in non-core proceedings are likely prohibited "due to the district court's de novo review of such proceedings." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).

44. Protracted discovery with court oversight will be required. Among other matters, without limitation: Claimants will seek depositions from Trotter, Howard, and Debtor. Claimants will require discovery of the identities of the Kinja authors and will seek to depose them. Claimants will seek discovery from Debtor as to its business practices, including editorial and publication decisions and social media cross-promotion, as well as the source code relative to the Kinja and website platforms. Claimants will require detailed discovery into the readership and extent of circulation. Claimants anticipate significant litigation over several of these items.

45.     The Bankruptcy Court is unfamiliar with the issues presented.  A LEXIS search for cases involving "actual malice" or "section 230", involving "libel", "slander", or "defamation", yielded only six decision in three cases in this Court.  This is not the typical claim arising in a Chapter 11 proceeding.  Such cases and issues arise with far more frequency before the District Court.

46.     Because all of the factors favor the District Court, the Bankruptcy Court should not hear these non-core proceedings.

### III.    Conclusion

47.     As set forth above, the California Anti-SLAPP law is not applicable to a contested matter under Fed. R. Bankr. P. 3007, especially as it relates to the allowance of claims.  The state statute conflicts with the Federal procedures and otherwise is unworkable where a proof of claim is already *prima facie* evidence of a possibility of prevailing.  Notwithstanding, Claimants filed their proofs of claims knowing they would ultimately prevail, whether or not the California Anti-SLAPP law applies.

48.     The claims asserted by Claimants are personal injury tort claims that should be heard by the District Court for all further proceedings.  Congress must be deemed to have understood the meaning of the term "personal injury" when it legislated, a meaning that, for centuries, has included causes of action sounding in libel and slander, as well as false light invasion of privacy.  Debtor has failed to demonstrate that any different meaning was intended.

49.     Both of the issues raised by Debtor show a determined intent to attempt to avoid facing liability for the multiple calumnies it heaped upon Claimants.  Claimants are entitled to be heard and to vindicate their claims.[10]

. . .



. . .

---

[10]    Claimants will never truly be able to vindicate their claims, as they generously agreed to a cap on damages in order to permit the other victims of Debtor to resolve their claims within Debtor's available assets.

- 19 -

Dated: February 8, 2017.                    Respectfully Submitted,

*/s/ Jay M. Wolman*
Jay M. Wolman (JW0600)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tele:   702-420-2001
Fax:    305-437-7662
Email: ecf@randazza.com

*Attorney for Charles C. Johnson
and Got News LLC*