ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Peter Walkingshaw (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
:
In re                                                                     :    Chapter 11
:
Gawker Media LLC, *et al.*,[1]                              :    Case No. 16-11700 (SMB)
:
                   Debtors.                              :    (Jointly Administered)
:
-------------------------------------------------------x

## DEBTOR GAWKER MEDIA'S REPLY IN FURTHER SUPPORT OF ITS OMNIBUS OBJECTIONS TO CLAIMS OF CHARLES C. JOHNSON AND GOTNEWS LLC

      Gawker Media LLC, as debtor and debtor in possession ("Gawker Media" or the "Debtor"), hereby submits its reply brief as part of "Stage One" under this Court's Scheduling Order [Docket No. 703], concerning the scope of this Court's authority to hear and determine all aspects of the allowance and disallowance of proofs of claim filed by GotNews LLC ("GotNews") and Mr. Charles C. Johnson ("Johnson", and together with GotNews, the "Claimants"), and the appropriate standard for such adjudication. In reply to the response filed by the Claimants [Docket No. 745] ("Resp."), the Debtor respectfully states as follows:

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (5056). Each Debtor's mailing address is c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

1

I.  **THE NARROW INTERPRETATION OF "PERSONAL INJURY TORT" CLAIMS ADVOCATED BY THE DEBTOR IS PROPER**

   A.  **The Claimants' Reliance On An Old Common-Law Interpretation of "Personal Injury Tort . . . Claims" Is Misplaced**

1.  As set forth in its Supplemental Brief [Docket No. 707] ("Suppl. Br."), the Debtor contends that a proper reading of the phrase "personal injury tort or wrongful death claims" in 28 U.S.C. § 157(b)(2)(B) does not include the libel, defamation, and other non-physical injury claims alleged by the Claimants, because the term "personal injury" in accepted contemporary parlance is limited to physical or bodily injuries and is in keeping with the text and structure of the statute. Suppl. Br. ¶¶ 17-24. In their Response, Claimants make two arguments. First, the Claimants contend that in determining the meaning of the phrase "personal injury tort or wrongful death claims" in Section 157(b)(2)(B), the Court must look to a century-old "common law understanding" of the term "personal injury," which Claimants contend included slander, libel, and defamation. Resp. ¶ 13. Second, Claimants contend that under *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50 (1982) a broad reading of the phrase "personal injury tort or wrongful death claims" is required because such suits involve "private rights," and that *Marathon* therefore gives a reason to take a broad reading of the phrase to include slander, libel, and defamation. As demonstrated below, these arguments run afoul of four straightforward interpretive principles of statutory construction and rely on an incorrect interpretation of *Marathon* and its progeny.

2.  First, the Supreme Court has made clear that a court should not adopt an old common-law usage when the common-law meaning is obsolete or inconsistent with the statute's purpose. *Taylor v. United States*, 495 U.S. 575, 595 (1990); *see also Perrin v. United States*, 444 U.S. 37, 45 (1979). For example in *Taylor*, the Court rejected a common-law definition of

2

"burglary" when used in a modern comprehensive statutory scheme.  *Taylor*, 495 U.S. at 595.  Similarly, Section 157(b)(2)(B) was part of the comprehensive amendments made to the Bankruptcy Code and the authority of Article I bankruptcy courts in 1984, and, consequently, there is simply no basis upon which to conclude that Congress intended to import any common-law meaning for the phrase "personal injury tort."  Instead, as shown in the Debtor's Supplemental Brief, *see* Suppl. Br. ¶¶ 17-24, and below, the better view is that Congress intended a narrower reading of the phrase.  Consequently, Claimants' reliance is entirely misplaced in citing hundred-year-old common-law cases from the state supreme courts of Kentucky (1825 & 1903), Rhode Island (1901), Maryland (1913), Missouri (1937), Pennsylvania (1825), Wisconsin (1874 & 1877), Georgia (1891), Virginia (1874), Michigan (1873), Illinois (1882), and Indiana (1888), which in turn largely rely on the even-earlier Blackstone's Commentaries of the 18th Century.  *See* Resp. ¶ 19.

        3.      In addition, the Court should take a narrower interpretation of "personal injury tort . . . claims," rather than the common-law meaning advocated by the Claimants, because the Supreme Court has confronted this type of argument in an analogous situation and found that using a contemporary meaning is appropriate.  Specifically, in *Perrin,* the Supreme Court found that "the record of hearings and floor debates discloses that Congress <u>made no attempt to define</u> the statutory term," and consequently, the Court concluded that Congress "relied on the accepted contemporary meaning."  *Perrin*, 444 U.S. at 45 (emphasis added).  Likewise in the present case, neither the text of the 1984 amendments nor the legislative history attempts to define the statutory phrase "personal injury tort or wrongful death claims."  Thus, the rationale of the Supreme Court in *Perrin* supports this Court using the common contemporary meaning of "personal injury tort . . . claims" to interpret Section 157(b)(2)(B), as advocated by the Debtor.

3

4. Second, in support of their position, Claimants also cite pre-Code bankruptcy cases interpreting the phrase "willful and malicious <u>injury to the person</u> or property of another." Resp. ¶ 13 (emphasis added) (*citing Thompson v. Judy*, 169 F. 553 (6th Cir. 1909); *In re Conroy*, 237 F. 817 (2d Cir. 1916); *Sanderson v. Hunt*, 116 Ky. L. Reptr. 626 (Ky. 1903)). Claimants' reliance on these cases is also misplaced. First, these cases interpreted a different phrase ("injury to the person") in the very different context of whether a claim was dischargeable. *Thompson*, 169 F. at 554; *In re Conroy*, 237 F. at 817; *Sanderson*, 116 Ky. L. Reptr. at 179-80. Therefore, they have no bearing on the meaning of "personal injury tort or wrongful death claims" in Section 157(b)(2)(B).

5. It is true that some cases have interpreted the Bankruptcy Code by reference to old Bankruptcy Act principles and existing case law when the statute was not otherwise changed. *See, e.g.*, *Dewsnup v. Timm*, 502 U.S. 410 (1992); *Midlantic Nat'l Bank v. N.J. Dep't Env't Prot.*, 474 U.S. 494, 507 (1986); *In re Klein Sleep Prods.*, 78 F.3d 18, 27 (2d Cir. 1996). But the Code modified many concepts from the Act and so courts are cautious in using that analysis. *See, e.g.*, *Bank of America Nat'l Trust and Sav. Assoc. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 448-49; *id.* at 460-63 (Thomas, J., concurring). This case, where the meaning Claimants want to be incorporated came from a different statutory section and new language is now used to cover the old concept, is an inappropriate vehicle for importing a pre-Code interpretation of statutory language. Here the term relied on by Claimants, "injury to the person," appeared in Section 17 of the Bankruptcy Act of 1898, which governed nondischargeability. *See* Act July 1, 1898, c. 541, 30 Stat. 550 (U.S. Comp. St. 1901, p.3428). The 1978 Bankruptcy Code abandoned the phrase "injury to the person" in Section 523, the new nondischangeability

4

provision, and now refers to "injury to another entity" to cover the broad common-law concept. 11 U.S.C. § 523(a), (b).

6. It would be therefore be improper, when interpreting the different phrase "personal injury tort . . . claims," to import a pre-Code judicial interpretation of the Bankruptcy Act term "injury to the person" when the present section of the Bankruptcy Code does not still use the old Bankruptcy Act terminology. And, it would be especially inappropriate to borrow the old cases in this circumstance to interpret an entirely different section of the bankruptcy laws. Indeed, the provisions regarding the scope of bankruptcy court authority and the wholesale amendments of 1984 were the sort of major departures from the prior Bankruptcy Act scheme that strongly caution against interpreting provisions of the post-1984 Bankruptcy Code using old concepts and cases interpreting the Bankruptcy Act, especially those interpreting entirely different sections. *203 N. LaSalle*, 526 U.S. at 448-49. Thus, the Claimants reliance on the old nondischargeability cases is also misplaced.

7. Third, the broad interpretation that Claimants advance also runs counter to the overall structure of the statute. *See, e.g.*, *Kmart Corp. v. Cartier Inc.*, 486 U.S. 281, 291 (1981) (considering the "design of the statute as a whole"); *Washington Cty. v. Gunther*, 452 U.S. 161, 178 (1981) (interpreting the meaning of an amendment consistently with the purposes of the statute as a whole). As this Court knows, the 1978 Bankruptcy Code gave broad authority to the bankruptcy courts. The 1984 amendments gave as-broad-as-possible authority to the bankruptcy courts (as compared to requiring district court handling of matters) in the wake of *Marathon*. *See Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2173 (2014) (interpreting the statute to give maximum remaining authority to bankruptcy courts). In this context and in the wake of *Marathon*, the proper interpretation of Section 157(b)(2)(B) is to read the bankruptcy court's

5

authority to reflect this congressional intent, which means that the exception for "personal injury tort . . . claims" should not be interpreted broadly so as to impinge on the overall scheme.

8. Claimants would instead have this Court take the broadest view and read *Marathon* as support that they have the right to proceed in a district court. This is a misreading of *Marathon*. This proceeding is about the allowance or disallowance of claims against the estate, and *Marathon*, which dealt with causes of action of the estate brought against other parties, has nothing to do with it at all. *Marathon*, 458 U.S. at 56-57. This is not a constitutional issue of "private rights" as Claimants assert. There is no question that Congress can fully assign every kind of initial claims adjudication to the bankruptcy courts, and this case does not involve counterclaims or setoffs. *See, e.g.*, *Stern v. Marshall*, 564 U.S. 462, 499 (2011) (matters that would "necessarily be resolved in the claims allowance process" may constitutionally be resolved by bankruptcy courts).

9. Fourth and finally, adopting Claimants' proposed 19th-century-common-law meaning, instead of an ordinary "accepted contemporary meaning," leads to an absurd interpretation of the phrase "personal injury tort or wrongful death claims." *See, e.g.*, *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 531 (1994) (rejecting an interpretation of a statute that led to "incongruous results"); *United States v. American Trucking Ass'ns*, 310 U.S. 534, 542-43 (1940) (refusing to interpret a statute in a way that led to an "absurd or futile result[]"). Specifically, the Claimants ask this Court to adopt the old common-law meaning, which they themselves note would exclude any right-of-survivorship actions. Resp. ¶ 19. Under their proffered interpretation, if the creditor has a personal injury and subsequently dies from some independent cause before the bankruptcy case is filed, the creditor's executor or administrator would lose status as a "personal injury tort" claimant. Yet, the statute also includes

6

"wrongful death claims," a particular kind of survivorship action available to the victim's family when the victim is killed by the tortious act. In other words, in the Claimants' view of the statute, Congress thought to include wrongful death survivorship claims, but used an old common-law definition of personal injury that would exclude every other type of survivorship claim. Thus, the Claimants' interpretation leads to an absurd conclusion. There is, however, a natural, simple, and contemporary reading of what Congress intended when it was lobbied for the exception in Section 157(b)(2)(B): all bodily injury claims including those claims brought under survivorship statutes, plus wrongful death claims, which also arise from bodily injury but accrue to the victim's family. This gives a logical, coherent reading to the entire phrase "personal injury tort or wrongful death claims" without taking a broad view that does violence to the structure of the statute that generally commits claims adjudication to bankruptcy courts. Consequently, on this basis the Claimants' interpretation of "personal injury tort . . . claims" should be rejected as well.

### B. Because GotNews Is Not A Natural Person, This Court May Adjudicate The Claims Of GotNews Regardless Of Whether The Court Adopts The Broad Or Narrow View Of "Personal Injury Tort"

10. As set forth in its Supplemental Brief, the Debtor contends that because GotNews is not a natural person, it cannot have a "personal injury tort" claim as that phrase is used in Section 157(b)(2)(B). Suppl. Br. ¶ 16. In the Response Claimants argue that because libel is a "personal injury tort," any libel plaintiff has a personal injury tort claim. Those arguments are easily rebutted for two reasons. First, it ignores critical case law. Second, Claimants rely on an incorrect reading of *Marathon*.

11. As set forth in the Debtor's Supplemental Brief, GotNews is a limited liability company and simply cannot have a "personal injury tort . . . claim." In support, the Debtor cited

7

the Supreme Court case of *FCC v. AT&T*, in which the word "personal" was held to apply only to natural persons, thus different than "person," and expressly rejected Claimants' proffered argument that "'personal' must mean relating to [all statutorily defined] 'persons': namely, corporations and other entities as well as individuals." *FCC v. AT&T Inc.*, 562 U.S. 397, 402 (2011). Claimants' Response offers nothing to counter this argument.

12. Additionally, and as described in more detail above, *see supra* ¶¶ 7-8, Claimants' argument relies on an incorrect interpretation of *Marathon* to argue that their claim can also only be heard by an Article III court. *See* Resp. ¶ 25. This proceeding is a claims allowance, and there is no *Marathon* right to an Article III court. The issue at hand is solely a statutory question—what limited category of claims adjudication Congress actually decided to assign to the district courts, solely as a matter of statute. When the statute uses the word "personal" in "personal injury tort and wrongful death claims," it makes clear that only individuals qualify. There is no indication anywhere that corporations and limited liability companies are to have special treatment for personal injury tort claims.

## II. THE ANTI-SLAPP STATUTE MUST APPLY BECAUSE CLAIMANTS CANNOT HAVE A GREATER CLAIM IN BANKRUPTCY THAN IN CALIFORNIA WHERE THEY FILED THEIR ACTION

13. In the Debtor's Supplemental Brief, the Debtor argued that this Court must apply the burden-setting state law of the California Anti-SLAPP Statute in deciding whether the GotNews/Johnson Claims are allowed or disallowed, as a matter of the Bankruptcy Code and Supreme Court case law. The Claimants contend, however, that (a) because of the mere filing of their proofs of claim they have "prima facie" valid claims and therefore the case must proceed to full discovery and trial; and (b) that the Anti-SLAPP statute should not apply because it is merely procedural and under the *Erie* doctrine the Court only applies a "substantive" rule in federal

8

court. This Court should reject the Claimants' arguments because they run counter to the text of the Bankruptcy Code and Supreme Court case law holding that state law is taken into account in allowing proofs of claim. This Court should conclude that the claims be disallowed if they cannot pass the Anti-SLAPP Statute's hurdle that the claims have a "probability of success," and order briefing on that specific issue as contemplated by the Anti-SLAPP Statute.

14. The Claimants make an incorrect argument that the filing of a proof of claim gives them a prima facie claim and that therefore the Anti-SLAPP Statute must be ignored. Section 502(a) of the Bankruptcy Code provides that a proof of claim is valid on its face, but only until an objection is filed. Once that objection is filed (as Gawker Media has done), Section 502(b) then sets the rules under which the claim is allowed or disallowed. Claimants ignore this entirely. Section 502(b)(1) provides the baseline rule, and the precise statutory text is critical. The bankruptcy court "shall allow such claim . . . except to the extent that . . . (1) such claim is unenforceable . . . under any . . . applicable law." If the claim would be unenforceable under nonbankruptcy law, the claim is disallowed.

15. That is how the Supreme Court has interpreted these provisions. As discussed in the Debtor's Supplemental Brief, in *Raleigh v. Illinois Dep't of Revenue*, the Supreme Court held that state-law burden-shifting rules must be applied in the claims allowance process. 530 U.S. 15 (2000). The fact that a proof of claim is "prima facie valid" was not dispositive and did not give a different federal process to prove the claim. "[E]qual treatment of comparable creditors in and out of bankruptcy . . . can be provided by a bankruptcy court as a matter of course." *Raleigh*, 530 U.S. at 25. The California Anti-SLAPP Statute sets forth conditions under which the GotNews/Johnson Claims are unenforceable under California law. "[A]ny defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers*

*Cas. & Sur. of America v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007). At the very outset the cause of action must have a "probability of success" or it cannot be carried further in the California courts. If this Court does not apply the Anti-SLAPP Statute, it would lead to GotNews and Mr. Johnson having a different and stronger claim in bankruptcy than they would have in state court, and that is precisely the result that *Raleigh*, *Travelers*, and the Bankruptcy Code reject.

16. What is most telling about Claimants' response is that they do not address *Raleigh* or *Travelers* at all. They jump to discussing *Erie* cases regarding the application of Anti-SLAPP laws in diversity jurisdiction (not bankruptcy jurisdiction). Here, the Claimants have ignored another touchstone of bankruptcy law, even though it was cited and discussed by the Debtor in its Supplemental Brief. *Erie* does not apply in the bankruptcy claims allowance process. *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 162-63 (1946). In this vein, the Supreme Court's unanimous opinion in *Raleigh*, which is now the seminal opinion on applying state-law rules regarding the allocation of the burden in claims allowance, does not rely on any *Erie* cases.

17. Finally, to whatever extent this Court deems the *Erie* cases to be relevant (although it should not do so), this Court should follow the weight of authority from several courts of appeals, holding that Anti-SLAPP laws are substantive and should be applied in federal diversity litigation. *See, e.g., Godin v. Schencks*, 629 F.3d 79, 89-90 (1st Cir. 2010) (Maine Anti-SLAPP); *U.S.* ex. rel. *Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999) (California Anti-SLAPP).

## **CONCLUSION**

18. For the foregoing reasons, this Court has authority to hear and determine the GotNews/Johnson Claims and should order Stage Two briefing (and affidavits) on the Anti-SLAPP question of whether the Complaint attached to the proofs of claim has a "probability of success."

Dated: February 10, 2017　　　　　　　　*/s/ Gregg M. Galardi*
　　　　New York, New York　　　　　　　ROPES & GRAY LLP
　　　　　　　　　　　　　　　　　　　　Gregg M. Galardi
　　　　　　　　　　　　　　　　　　　　D. Ross Martin
　　　　　　　　　　　　　　　　　　　　Peter Walkingshaw (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　1211 Avenue of the Americas
　　　　　　　　　　　　　　　　　　　　New York, NY 10036-8704
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 596-9000
　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 596-9090
　　　　　　　　　　　　　　　　　　　　gregg.galardi@ropesgray.com
　　　　　　　　　　　　　　　　　　　　ross.martin@ropesgray.com
　　　　　　　　　　　　　　　　　　　　peter.walkingshaw@ropesgray.com

　　　　　　　　　　　　　　　　　　　　*Counsel to the Debtors*
　　　　　　　　　　　　　　　　　　　　*and Debtors in Possession*