**Hearing Date and Time: March 22, 2017 at 10:00 a.m. (Eastern Time)**
**Response Deadline: March 13, 2017 at 4:00 p.m. (Eastern Time)**

ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                                                         :
In re                                                    :    Chapter 11
                                                         :
Gawker Media LLC, *et al.*,[1]                           :    Bankruptcy Case No. 16-11700 (SMB)
                                                         :
              Debtors.                                   :    (Jointly Administered)
                                                         :
---------------------------------------------------------x

**NOTICE OF GAWKER MEDIA'S (I) OBJECTION TO IRS CLAIMS**
**PURSUANT TO BANKRUPTCY CODE SECTION 502(B) AND (II) MOTION**
**FOR A DETERMINATION OF 2013, 2014 AND 2015 FEDERAL TAX**
**LIABILITY PURSUANT TO BANKRUPTCY CODE SECTIONS 502(B) AND 505(A)**

**PLEASE TAKE NOTICE** that the undersigned have filed the attached *Gawker Media's (I) Objection to IRS Claims Pursuant to Bankruptcy Code Section 502(b) and (II) Motion for a Determination of 2013, 2014 and 2015 Federal Tax Liability Pursuant to Bankruptcy Code Sections 502(b) and 505(a)* (the "Objection"), which seeks to alter the rights of the United States of America, Department of Treasury, Internal Revenue Service (the "IRS") by disallowing Claim Nos. 317, 323, and 333 filed by the IRS against the above-captioned Debtor Gawker Media LLC ("Gawker Media"), and determining that Gawker Media does not have any federal income tax

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

60815672_8

liability for the tax years 2013, 2014 and 2015.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Objection will take place on **March 22, 2017 at 10:00 a.m. (Eastern Time)** before the Honorable Judge Stuart M. Bernstein, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Courtroom No. 723.

**PLEASE TAKE FURTHER NOTICE** that responses to the Objection and the relief requested therein, if any, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall set forth the basis for the response or objection and the specific grounds therefore, and shall be filed with the Court electronically in accordance with General Order M-399 by registered users of the Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website for the Court), with a hard copy delivered directly to chambers pursuant to Local Bankruptcy Rule 9028-1 and served so as to be actually received no later than **March 13, 2017, at 4:00 p.m. (Eastern Time)** (the "Response Deadline"), upon: (i) Gawker Media, c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022 (wholden@opportune.com); (ii) counsel for Gawker Media, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036, Attn: Gregg M. Galardi (gregg.galardi@ropesgray.com); (iii) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Greg Zipes & Susan Arbeit; (iv) the Internal Revenue Service, Attn: Centralized Insolvency Operation, 2970 Market Street, Philadelphia, PA 19104 (mimi.m.wong@irscounsel.treas.gov); (v) the

2

United States Attorney's Office for the Southern District of New York, Attn: Bankruptcy Division, 86 Chambers Street, 3rd Floor, New York, NY 10007 (david.jones6@usdoj.gov; Jeffrey.Oestericher@usdoj.gov; Joseph.Cordaro@usdoj.gov; Carina.Schoenberger@usdoj.gov); (vi) counsel to Cerberus Business Finance, LLC, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Adam C. Harris (adam.harris@srz.com); (vii) counsel to US VC Partners LP, Latham & Watkins LLP, at both 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: David Heller (david.heller@lw.com) and 885 Third Avenue, New York, New York 10022, Attn: Keith A. Simon (keith.simon@lw.com); (viii) counsel for the Official Committee of Unsecured Creditors, Simpson Thacher & Bartlett, 425 Lexington Ave., New York, NY 10017, Attn: Sandy Qusba (squsba@stblaw.com) and William T. Russell (wrussell@stblaw.com); and (ix) parties that have requested notice pursuant to Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written response to the relief requested in the Objection by the Response Deadline, the Bankruptcy Court may deem any opposition waived, treat the Objection as conceded, and enter an order granting the relief requested in the Objection without further notice or hearing.

[*Remainder of this page intentionally left blank*]

**PLEASE TAKE FURTHER NOTICE** that a copy of the Objection may be obtained free of charge by visiting the website of Prime Clerk LLC at http://cases.primeclerk.com/gawker. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

| | |
|---|---|
| Dated: February 17, 2017<br>New York, New York | */s/ Gregg M. Galardi*<br>ROPES & GRAY LLP<br>Gregg M. Galardi<br>D. Ross Martin<br>1211 Avenue of the Americas<br>New York, NY 10036-8704<br>Telephone: (212) 596-9000<br>Facsimile: (212) 596-9090<br>gregg.galardi@ropesgray.com<br>ross.martin@ropesgray.com<br><br>*Counsel to the Debtors*<br>*and Debtors in Possession* |

Hearing Date and Time: March 22, 2017 at 10:00 a.m. (Eastern Time)
Response Deadline: March 13, 2017 at 4:00 p.m. (Eastern Time)

ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
                                      :
In re                                 :    Chapter 11
                                      :
Gawker Media LLC, *et al.*,[1]        :    Bankruptcy Case No. 16-11700 (SMB)
                                      :
            Debtors.                  :    (Jointly Administered)
                                      :
------------------------------------------------------x

**GAWKER MEDIA'S (I) OBJECTION TO IRS CLAIMS PURSUANT TO
BANKRUPTCY CODE SECTION 502(B) AND (II) MOTION FOR A
DETERMINATION OF 2013, 2014 AND 2015 FEDERAL TAX LIABILITY
PURSUANT TO BANKRUPTCY CODE SECTIONS 502(B) AND 505(A)**

Gawker Media LLC ("Gawker Media"), as a debtor and debtor in possession in the above-referenced jointly administered cases (the "Bankruptcy Cases"), hereby (i) submits this objection pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3007(a) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to Claim Nos. 317 (the "Original IRS Claim"), 323 (the "First Amended IRS Claim"), and 333 (the "Second Amended IRS Claim," and together with the Original IRS

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

1

60815672_8

Claim and the First Amended IRS Claim, the "IRS Claims")[2] filed by the United States of America, Department of Treasury, Internal Revenue Service (the "IRS") and (ii) moves pursuant to sections 502(b) and 505(a) of the Bankruptcy Code for this Court to determine Gawker Media's federal income tax liabilities for the tax years 2013, 2014 and 2015 (collectively, the "Objection"). In support of this Objection, Gawker Media respectfully represents and sets forth as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the Objection pursuant to 28 U.S.C. §§ 157, 1334 and 2201(a), as well as sections 105(a), 106 and 505(a) of the Bankruptcy Code. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B). The statutory predicates for the relief requested herein are sections 105(a), 502 and 505(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9014.

## RELIEF REQUESTED

2. By this Objection, Gawker Media requests the entry of an order (the "Proposed Order"), substantially in the form attached hereto as Exhibit A, (i) expunging the Original IRS Claim and First Amended IRS Claim that have been amended by the Second Amended IRS Claim under Bankruptcy Code section 502(b), and (ii) disallowing the Second Amended IRS Claim based on a determination, under Bankruptcy Code sections 502(b) and 505, that Gawker Media has no federal income tax liability for the tax years 2013, 2014 and 2015.

## BACKGROUND

### I. THE BANKRUPTCY CASES

3. On June 10, 2016, Gawker Media filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On June 12, 2016, Gawker Media Group, Inc. ("GMGI"),

---

[2] True and correct copies of the IRS Claims are attached as Exhibit B hereto.

and Gawker Hungary Kft. (f/k/a Kinja Kft., "Gawker Hungary") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the filing date in respect of each Debtor, the "Petition Date"). Gawker Media, Gawker Hungary, and GMGI (the "Debtors") are operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No request for the appointment of a trustee or examiner has been made in the Bankruptcy Cases. On June 24, 2016, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code [Docket No. 62] (the "Committee").

5. On July 14, 2016, the Court entered an order appointing Prime Clerk LLC ("Prime Clerk") as the notice and claims agent in the Bankruptcy Cases and authorizing Prime Clerk to, among other things, (a) receive, maintain, and record and otherwise administer the proofs of claim filed in the Bankruptcy Cases and (b) maintain the official Claims Register for the Debtors (the "Claims Register") [Docket No. 100].

6. On August 11, 2016, the Court entered an order establishing December 9, 2016 (the "Governmental Bar Date") as the deadline for all governmental units to file written proofs of claim asserting any claim against the Debtors that arose on or prior to the Petition Date [Docket No. 168] (the "Bar Date Order").

7. In accordance with the Bar Date Order, the Debtors provided written notice of the Governmental Bar Date to the IRS, among others.

8. On December 2, 2016, the Debtors filed the *Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* (as amended on December 11, 2016, the "Plan") [Docket No. 638, at 34-94].

9. On December 13, 2016, the hearing (the "Confirmation Hearing") on confirmation of the Debtors' Plan was held, at which hearing the Court stated that it would confirm the Plan.

10. Subsequently, on December 22, 2016, the Court entered the order confirming the Plan. *See Findings of Fact, Conclusions of Law, and Order Confirming the Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 638] (the "Confirmation Order").

11. The Confirmation Order and Plan provide that this Court retains jurisdiction to determine prepetition claims and tax disputes with respect to the Debtors. *See* Confirmation Order ¶ 46; Plan §§ 8.01(a), (b), (k), & (o).

12. As of the date of this Objection, the Effective Date (as defined in the Plan) has not yet occurred.

13. If any of the IRS Claims are allowed, such claims would be treated as priority claims under 11 U.S.C. § 507(a)(8)(A)(i) and the Plan.[3] Accordingly, such claims would receive payment in full. *See* Plan, §§ 2.01 and 2.06(a)(i) and (iv).

14. Pursuant to the Plan, Gawker Media reserved approximately $2.5 million to satisfy the IRS Claims. This reserve was agreed to by the IRS to be the maximum amount of liability that Gawker Media would have to the IRS for the 2014 and 2015 tax years. If those funds are not needed to pay the IRS Claims, Gawker Media anticipates distributing them in respect of an intercompany note to Gawker Hungary (unless those funds are needed for other bankruptcy claims and expenses of Gawker Media).

## II.   THE IRS CLAIMS

---

[3] The Plan is binding on both Gawker Media and the IRS, whose counsel negotiated specific language included in the Confirmation Order.

A.   **Gawker Media Satisfied Its Prepetition Tax Liabilities.**

15.   Prior to the Petition Date, Gawker Media filed all required federal income tax returns for the tax years 2013, 2014 and 2015 and paid all taxes shown on, and additional amounts associated with, those returns.

16.   Specifically, in December 2014, Gawker Media filed an amended federal income tax return (Form 1120) for the tax year 2013, reporting tax liability of $273,863 plus an associated penalty of $4,941, for a total liability of $278,804. *See* Exhibit C (the "2013 Tax Return"). Gawker Media paid this amount. *See infra* ¶¶ 19-20.

17.   On or about September 15, 2015, Gawker Media filed its federal income tax return (Form 1120) for the tax year 2014, reporting tax liability of $270,330 plus an estimated tax penalty of $4,876, for a total liability of $275,206. *See* Exhibit D (the "2014 IRS Transcript") and E ("2014 Tax Return"). Gawker Media paid this amount. *See* Exhibit D.

18.   On or about September 13, 2016, Gawker Media filed its federal income tax return (Form 1120) for the tax year 2015, reporting no tax liability and a net operating loss of $5,824,676. *See* Exhibit F ("2015 IRS Transcript") and G (the "2015 Tax Return").

19.   On or about November 14, 2016, Gawker Media filed a Corporation Application for Tentative Refund (Form 1139) with the IRS seeking to carry back its net operating loss from the tax year 2015 to the tax years 2013 and 2014, and claiming a refund of $273,863 for the tax year 2013 and $270,330 for the tax year 2014. *See* Exhibit H (the "Refund Application," and, together with the 2013, 2014 and 2015 Tax Returns, the "Gawker Media Tax Filings").

20.   On or about December 22, 2016, the IRS refunded $544,193 (the "IRS Refund") to Gawker Media, the entire amount Gawker Media requested regarding the tax years 2013 and 2014 in the Refund Application. *See* Exhibit D.

5

**B.    The IRS Filed Three Proofs Of Claim Prior To The Governmental Bar Date.**

21.    On October 12, 2016, the IRS filed the Original IRS Claim, which asserted a claim against Gawker Media for unpaid employment taxes.

22.    Gawker Media and the IRS engaged in cooperative discussions regarding that asserted employment tax claim. Upon request of IRS counsel, Gawker Media provided documents demonstrating to the IRS that, as permitted under applicable rules, Gawker Media's third-party professional employer organization had filed the requisite returns in aggregate form, including information for its other clients, and paid all required employment tax on Gawker Media's behalf. Subsequently, the IRS represented to Gawker Media that it was satisfied that Gawker Media had no outstanding unpaid employment tax liabilities and would withdraw such claims in an amendment to the Original IRS Claim.

23.    On November 14, 2016, while discussions regarding Gawker Media's employment tax obligations were ongoing, the IRS filed the First Amended IRS Claim, which asserted claims against Gawker Media both for unpaid employment tax liabilities and, for the first time, for federal income tax liabilities as well. The asserted income tax liability in the First Amended IRS Claim was approximately $290,000 for the tax year 2015 and $0 for the tax year 2014. In its First Amended IRS Claim, the IRS indicated that claims for income tax liability were "pending examination."

24.    By letter dated November 18, 2016, four days after the filing of the First Amended IRS Claim and about one month before payment of the IRS Refund to Gawker Media, the IRS notified Gawker Media that its 2014 and 2015 income tax returns were selected for examination (*i.e.,* audit).

25.    On December 8, 2016, the day before the Governmental Bar Date and after meeting personally with representatives of Gawker Media, the IRS filed the Second Amended

6

IRS Claim. The Second Amended IRS Claim no longer asserted any claims on account of employment tax liabilities, but increased the asserted amount of Gawker Media's potential income tax liability to $1,837,807 for the tax year 2014 and $630,806 for the tax year 2015 (each, including prepetition interest), resulting in an approximately $2.5 million priority claim against Gawker Media.[4] With respect to both the 2014 and 2015 tax liabilities, the IRS expressly noted that each was an "estimated liability" and stated in a footnote that the claim was "estimated . . . pending the completion of an audit, at which time the IRS will amend the claim accordingly." On that same date, the IRS sent Gawker Media a lengthy document request (the "Initial Document Request"), apparently seeking the information required to complete its audit.

26.   At no time has the IRS asserted a claim with respect to the 2013 tax year.

    **C.   Gawker Media Substantiated Its 2014 And 2015 Tax Returns.**

27.   Concerned about the language in the Second Amended IRS Claim and the upcoming December 13, 2016 Confirmation Hearing, counsel for the Debtors confirmed that the "estimated" 2014 and 2015 tax liability asserted by the IRS in the Second Amended IRS Claim was the maximum amount of liability, so that a proper reserve could be set.

28.   Two days following the Confirmation Hearing, on December 15, 2016, representatives of Gawker Media provided the IRS with extensive documentation and information responsive to the broad Initial Document Request. Since then, Gawker Media has received rolling requests from the IRS for additional documents and information. Gawker Media has promptly responded with responsive material, including, among other things, copies of the 2013, 2014 and 2015 Tax Returns, an organizational chart, general ledgers, trial balances, book to tax reconciliation spreadsheets, balance sheets and income statements of both Gawker Media and GMGI, cash flow statements, depreciation schedules, copies of intercompany agreements,

---

[4] The Second Amended IRS Claim did not assert any claim for tax year 2013.

7

including intercompany loans, for the tax years 2014 and 2015, and GMGI's consolidated audited financial statements for 2014. Gawker Media believes that the extensive material provided gives the IRS ample information to complete the IRS's audit of the 2014 and 2015 Tax Returns, but also continues to timely respond to the IRS's ongoing follow-up requests for additional materials and questions.

29. Despite providing the IRS with an extensive documentation and responding to IRS questions, the IRS has not assessed any liabilities against Gawker Media, issued a notice of deficiency proposing the assessment of any liabilities, or even finalized its "estimated" and "preliminary" claim. Nor has the IRS provided any explanation for the estimated 2014 and 2015 federal tax liability set forth in the Second Amended IRS Claim.

## ARGUMENT

### I. THE COURT SHOULD DISALLOW AND EXPUNGE THE ORIGINAL IRS CLAIM AND THE FIRST AMENDED IRS CLAIM [CLAIM NOS. 317 AND 323] AS AMENDED AND SUPERSEDED BY THE SECOND AMENDED IRS CLAIM [CLAIM NO. 333]

30. Pursuant to Bankruptcy Rule 3007(d)(3), a debtor may object to claims and seek their disallowance where such claims "have been amended by subsequently filed proofs of claim. . . ." Fed. R. Bankr. P. 3007(d)(3). The IRS expressly amended the Original IRS Claim by checking the applicable box on the First Amended IRS Claim. It also did the same with respect to the First Amended IRS Claim when it filed the Second Amended IRS Claim. Therefore, the Second Amended IRS Claim is the surviving claim of the IRS.

31. Consequently, to avoid the possibility of multiple recoveries on the same claim asserted by the IRS, Gawker Media respectfully requests that the Court disallow the Original IRS Claim and the First Amended IRS Claim in their entirety and authorize Prime Clerk to revise the

8

Claims Register to reflect that those claims are disallowed as amended and superseded.[5]

## II. THIS COURT SHOULD DETERMINE THAT GAWKER MEDIA HAS NO INCOME TAX LIABILITY FOR THE 2013, 2014 AND 2015 TAX YEARS AND THEREFORE DISALLOW THE SECOND AMENDED IRS CLAIM.

32. The IRS has not filed any claim with respect to the 2013 tax year. Nor has it provided any evidence, or even explanation, in support of the Second Amended IRS Claim and Gawker Media's purported 2014 and 2015 federal tax liabilities. More than two months has, however, now passed since the Governmental Bar Date and Gawker Media provided the IRS with the information necessary to substantiate its tax returns and Gawker Media and its affiliated Debtors are seeking to expeditiously wind down their estates and close their Chapter 11 Cases. Accordingly, for the benefit of its estate and the other Debtor estates and stakeholders, Gawker Media seeks not only disallowance of the Second Amended IRS Claim pursuant to Bankruptcy Code section 502(b), but also a separate determination from the Court pursuant to section 505(a) establishing the final amount of Gawker Media's 2013, 2014 and 2015 federal tax liabilities.[6]

### A. This Court Should Make A Determination Under Bankruptcy Code Section 505 With Respect To The 2013, 2014 And 2015 Tax Years.

33. Bankruptcy Code section 505(a) permits the Bankruptcy Court to determine "the amount or legality of any tax . . . or any addition to tax, whether or not previously assessed, whether or not paid." 11 U.S.C. § 505(a). In that regard, Bankruptcy Code section 505 provides procedures for a debtor to seek relief that is broader than the relief under Bankruptcy Code section 502 governing the allowance and disallowance of claims. In particular, Bankruptcy Code section 505 enables a debtor to obtain a final order determining once and for all its tax liabilities

---

[5] Because the Second Amended IRS Claim does not include a claim for unpaid employment taxes, this is consistent with the IRS's representation that they would withdraw that claim by a subsequent amendment.

[6] Although the Second Amended IRS Claim does not assert any amount on account of the 2013 tax year, Gawker Media requests that any section 505(a) determination by the Court extend to 2013 as well out of an abundance of caution because the IRS might, among other things, argue that potential adjustments to the 2014 and 2015 Tax Returns affect Gawker Media's 2013 income tax liability.

so that it may expeditiously administer assets of the estate "without 'fac[ing] potential post-bankruptcy tax liabilities. . . .'" *United States v. Amoskeag Bank Shares, Inc. (In re Amoskeag Bank Shares, Inc.)*, 239 B.R. 653, 659 (D.N.H. 1998) (citing S. Rep. No. 95–989, at 68 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5854). For the three reasons set forth below, the Court should make a determination that application of Bankruptcy Code section 505(a) is appropriate in the context of Gawker Media's objection to the Second Amended IRS Claim.

34. <u>First</u>, courts have concluded that relief under section 505 is particularly warranted when, as here, the taxing authority raises a "threat of a speculative tax liability." *In re Huddleston*, No. 94-50342, 1994 WL 764193, at *3 (Bankr. W.D. La. Dec. 2, 1994). As one case described, once a taxing authority suggests there is a potential tax liability, a responsible debtor cannot "disregard any possible liability" until the period of limitations has run. *United States v. Bushnell*, No. 1:95CV387, 1996 WL 544228, at *4 (D. Vt. July 10, 1996).

35. Because the IRS filed the Second Amended IRS Claim, Gawker Media faces such a "speculative tax liability. Indeed, despite Gawker Media's disagreement with the amounts asserted by the IRS, Gawker Media immediately responded to the filing of the Second Amended Proof of Claim by confirmed with the IRS that a reserve of $2.5 million on account of the estimated Second Amended IRS Claim would be adequate to cover any and all liability for the 2014 and 2015 tax years (the "<u>IRS Reserve</u>"). The establishment of this IRS Reserve, however, has significant effects and causes delays with respect to the expeditious liquidation and ultimate closing of all three of the Debtors' Bankruptcy Cases.

36. <u>First</u>, the establishment of the IRS Reserve requires Gawker Media to withhold distributions to, among others, the Gawker Hungary estate. This, in turn, renders Gawker Hungary unable to make final distributions to its owner, GMGI, which, in its own turn, renders

10

GMGI unable to make distributions to its preferred shareholders (including Mr. Denton, who has his own Chapter 11 case and obligations to his creditors). Thus, absent a consensual or court-ordered resolution of Gawker Media's 2014 and 2015 tax liabilities (and any potential 2013 tax liabilities), the pending audit and uncertainty regarding these amounts may require Gawker Media, or its plan administrator, to continue holding up $2.5 million of distributions for several more years until the relevant statute of limitations expires. This makes relief under section 505 especially appropriate in the present case because Gawker Media is reserving funds that could otherwise be paid to other parties. *See, e.g.*, *Ogle v. IRS (In re Agway, Inc.)*, No. 6:09-CV-1049, 2011 WL 3425507, at *4 (N.D.N.Y. Aug. 5, 2011) (finding a 505 determination was appropriate where the debtor set aside $5 million to pay tax claims that would otherwise be paid to unsecured creditors).

37.    Second, relief under Bankruptcy Code section 505 will enable the Debtors to satisfy a contractual obligation under the asset purchase agreement with UniModa LLC ("UniModa"), which was approved by the Court on August 22, 2016 [Docket No. 214]. Specifically, UniModa bargained, and Gawker Hungary contractually agreed, to dissolve Gawker Hungary promptly following resolution of its Bankruptcy Case. *Id.* § 6.12. Any delay in determining Gawker Media's income tax liabilities and corresponding delay of payment to Gawker Hungary on account of intercompany claims could impact Gawker Hungary's ability to dissolve as scheduled.

38.    Third, the IRS has not filed any claim with respect to the 2013 tax year and by resolving this Objection to the Second Amended IRS Claim, this Court will already be called upon to determine whether Gawker Media has any liability for 2014 and 2015 federal income taxes as well as the propriety of IRS granting the Refund Application and issuing the IRS

11

Refund. Thus, by applying Bankruptcy Code section 505 and making that a binding determination for those tax years, the Court will enable the Debtors and their shareholders to avoid the potential for future tax litigation, preserving judicial resources, reducing potential estate costs and providing recipients of distributions with finality. Moreover, courts have recognized that even the government benefits from an expeditious determination of tax liabilities under section 505. *See Schwartz v. Gardiner (In re Schwartz)*, 192 B.R. 90, 95 (Bankr. D.N.J. 1996) (holding that "the public fisc is aided rather than harmed by an earlier determination of liability."). It therefore is in the interest of all relevant parties that the Court make a determination under section 505(a) in ruling on the Objection to the Second Amended IRS Claim and fix Gawker Media's tax liability for the 2013, 2014 and 2015 tax years.

> **B.    The Court Should Determine That Gawker Media Has No Income Tax Liabilities For The 2013, 2014 And 2015 Tax Years.**

39.    Section 502(b) of the Bankruptcy Code provides that, upon an objection to a proof of claim, "the court, after notice and a hearing, shall determine the amount of such claim." *See* 11 U.S.C. § 502(b). The burden of proof for allowance of a tax claim in a bankruptcy case follows the burden under the applicable substantive tax law. *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 26 (2000). Here, the IRS bears the burden of proving Gawker Media's tax liability for the 2014 and 2015 tax years. *See* Tax Court Rule 142(a)(1) (IRS bears the burden of proof for new amounts not included in a notice of deficiency); *accord Parker v. Comm'r*, 103 T.C.M. (CCH) 1321, at *3 (T.C. 2012).

40.    In that regard, the conclusory statements in the Second Amended IRS Claim do not, by themselves, even provide *prima facie* evidence of the validity of the IRS tax claims for

12

2014 and 2015.[7] But, even assuming, *arguendo*, that they did establish a *prima facie* claim, Gawker Media will rebut any such presumption as well as any claim that Gawker Media has a liability in the 2013, 2014, or 2015 tax years with the Gawker Media Tax Filings already provided to the IRS and the additional documentary evidence it is prepared to submit to this Court. Indeed, because that evidence will overcome the conclusory liability amounts listed in the Second Amended IRS Claim and any other support the IRS will muster, the Second Amended IRS Claim should be disallowed. *See, e.g., United States v. Lease,* 346 F.2d 696, 701 (2d Cir. 1965) (finding that "[g]ood records will go far to overcome the presumption of correctness attaching to the assessment").

41.    Moreover, not only should the Second Amended IRS Claim be disallowed in its entirety pursuant to Bankruptcy Code section 505, this Court should determine that Gawker Media has no income tax liabilities for 2013, 2014 and 2015. Specifically, as detailed above, Gawker Media has already provided sufficient evidence to the IRS that it has no federal income tax liability for the 2013, 2014, or 2015 tax year. In particular, Gawker Media filed the 2013, 2014 and 2015 Tax Returns and paid all associated taxes. Indeed, less than two weeks after the filing of the Second Amended IRS Claim in December 2016, the IRS honored the Refund Application and fully refunded tax amounts that Gawker Media had previously **overpaid** for tax years 2013 and 2014.

42.    Moreover, in connection with the IRS's pending audit, Gawker Media has supplied extensive additional documentation substantiating the validity of its tax returns, including the specific items listed in paragraph 28 above. These documents, which Gawker

---

[7] As described further below, only formal assessments or notices of deficiency are afforded *prima facia* validity under tax law. *C.f. United States v. Josephberg*, 562 F.3d 478, 501 (2d Cir. 2009) (describing assessments as "one method of establishing tax liability" (citation removed)); *Ghilzai v. Comm'r*, 61 T.C.M. (CCH) 2247 (T.C. 1991) (describing a determination in a notice of deficiency is entitled to a "presumption of correctness"); 26 U.S.C. §§ 6201(e), 6211-6213 (laying out process for issuing notices of deficiencies and assessing additional income tax).

13

Media stands ready to introduce at an evidentiary hearing on the Objection, validate the positions taken in the Gawker Media Tax Filings and demonstrate that Gawker Media has no outstanding tax liabilities for 2013, 2014 and 2015.

43.    In stark contrast, the IRS has provided no explanation as to how its estimated amounts for the 2014 and 2015 tax years were calculated, let alone any documentary support for that calculation.[8] As a matter of non-bankruptcy tax law, the conclusory estimated claims set forth in the Second Amended IRS Claim are not entitled to a presumption of correctness. *See supra,* at n.7. Additionally, the Second Amended IRS Claim does not reflect the "consideration, resolution, conclusion, and judgment" by IRS, *Scar v. Comm'r,* 814 F.2d 1363, 1368 (9th Cir. 1987), or the bare minimum foundation or "ligaments of fact" necessary to be afforded any evidentiary weight. *Portillo v. Comm'r*, 932 F.2d 1128, 1133 (5th Cir. 1991); *see also United States v. Janis*, 428 U.S. 433, 442 (1976).

44.    The IRS's failure to meet these standards is fatal to the Second Amended IRS Claim because the IRS bears the ultimate burden of proof concerning its alleged increase in Gawker Media's tax obligations, when, as here, that increase is not grounded in any formal notice of deficiency.[9] *See* Tax Court Rule 142(a); *Parker*, 103 T.C.M. (CCH) 1321, at *4. This Court should therefore find that Gawker Media has no income tax liabilities for the tax years 2013, 2014 and 2015 and disallow the Second Amend IRS Claim in its entirety.

### RESPONSES TO THIS OBJECTION

45.    Any responses to this Objection must be filed on or before 4:00 p.m. (New York Time) on March 13, 2017, in accordance with the procedures set forth in the notice of this

---

[8] With respect to the 2013 tax year, the IRS did not even include any estimated claim for 2013 in its Second Amended IRS Claim despite an even longer period to review that prior tax year.

[9] The IRS also bears the burden of proof if its claim relies on statistical reconstructions. 26 U.S.C. § 7491(c). In the absence of any explanation of how the IRS derived the Second Amended IRS Claim, Gawker Media cannot be sure whether this applies here.

14

Objection.

**RESERVATION OF RIGHTS**

46. Neither the filing of this Objection nor entry of the Proposed Order shall affect any rights of Gawker Media, its estate, the Plan Administrator, or any other party in interest in the Bankruptcy Cases to object to the IRS Claims for any purposes, including, without limitation, allowance and distribution under the Plan.

47. Gawker Media and its estate reserve any and all rights to amend, supplement or otherwise modify this Objection or the Proposed Order. Gawker Media and its estate also reserve any and all rights, claims and defenses with respect to the IRS Claims, or any amendment thereto, and nothing included in or omitted from this Objection or the Proposed Order is intended or shall be deemed to impair, prejudice, waive or otherwise affect any rights, claims, or defenses of Gawker Media and its estate with respect to the IRS Claims.

**NOTICE AND SERVICE**

48. Notice of this Objection has been provided to: (i) the Office of the U.S. Trustee; (ii) Simpson Thacher & Bartlett LLP, counsel to the Committee; (iii) Latham & Watkins LLP, counsel to US VC Partners LP; (iv) Schulte Roth & Zabel LLP, counsel to Cerberus Business Finance, LLC; (v) the IRS; and (vi) all parties requesting notice in the Bankruptcy Cases pursuant to Bankruptcy Rule 2002.

49. A copy of this Objection has been sent via U.S. mail, postage pre-paid to: (i) U.S. Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001; (ii) United States Attorney's Office for the Southern District of New York, 86 Chambers Street, 3rd Floor, New York City, NY 10007; and (iii) the Internal Revenue Service, Centralized Insolvency Operation, P.O. Box 7346, Philadelphia, PA 19104.

50. Gawker Media respectfully submits that further notice or service of this Objection

is neither required nor necessary.

WHEREFORE, for the reasons set forth herein, Gawker Media respectfully requests that the Court (a) enter the Proposed Order attached as Exhibit A, and (b) grant such other and further relief as may be just and proper.

Dated: February 17, 2017  
      New York, New York

*/s/ Gregg M. Galardi*  
ROPES & GRAY LLP  
Gregg M. Galardi  
D. Ross Martin  
1211 Avenue of the Americas  
New York, NY 10036-8704  
Telephone: (212) 596-9000  
Facsimile: (212) 596-9090  
gregg.galardi@ropesgray.com  
ross.martin@ropesgray.com

*Counsel to the Debtors  
and Debtors in Possession*

16