**Chadbourne & Parke LLP**
1301 Avenue of the Americas
New York, New York 10019
Telephone: 212.408.1060
Facsimile: 212.957.5369
Samuel S. Kohn
James A. Copeland

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
|  | : |  |
| In re | : |  |
|  | : | Chapter 11 |
| Gawker Media LLC et al.,[1] | : |  |
|  | : | Case No. 16-11700 (SMB) |
| Debtors. | : |  |
|  | : | (Jointly Administered) |
|  | : |  |
----------------------------------------------------------------x

### OBJECTION OF HARDER MIRELL & ABRAMS LLP AND CHARLES J. HARDER, ESQ. TO MOTION OF THE DEBTORS FOR LEAVE PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE TO CONDUCT DISCOVERY CONCERNING POTENTIAL PLAN ISSUES AND POTENTIAL CAUSES OF ACTION, AND TO ESTABLISH DISCOVERY RESPONSE AND DISPUTE PROCEDURES

Non-parties Harder Mirell & Abrams LLP and Charles J. Harder, Esq. (together, the "Harder Firm"), by and through their undersigned counsel, hereby file this objection (the "Objection") to Debtors' *Motion for Leave Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to Conduct Discovery Concerning Potential Plan Issues and Potential Causes of Action, and to Establish Discovery Response and Dispute Procedures* dated October

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC's and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

11, 2016 [Docket No. 341] (the "Motion").[2]   In support of the Objection, the Harder Firm

respectfully states as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      The Debtors' Motion has not aged well.  Although it was plainly improper when

filed, six months later it is utterly groundless and should be denied.  The Debtors purportedly

sought to examine the Harder Firm to explore designation of the Harder Firm's clients' votes on

a then-unformulated Chapter 11 plan and to explore potential *prima facie* tort claims against

Peter Thiel and others.  Now, the Harder Firm's clients, Terry Bollea, Dr. Shiva Ayyadurai, and

Ashley Terrill (collectively, the "Harder Clients") have each executed settlements with the

Debtors in which the Debtors agreed not to seek most, if not all, of what the Motion requests.

Those settlements were approved by the Court as part and parcel of the Debtors' confirmed Plan

of Liquidation, which each of the Harder Clients voted to accept.  The Debtors accomplished all

of this without a Rule 2004 examination of any party to these cases, or for that matter, any non-

parties, like the Harder Firm.   The primary bases for the Motion—designation and plan

formulation—are now moot.  All that remains is the Debtors' purported "need" to "investigate

claims" that the Debtor has *already asserted exist* against a handful of known defendants.  Those

claims, however, are facially flawed and fail as a matter of law.  The Debtors' continued pursuit

of the Motion therefore is a waste of the estates' valuable and limited resources, and an

inappropriate attempt to take discovery from their adversaries' attorneys.

2.      The real object of the Debtors' ire is Peter Thiel, who the Debtors allege funded

the prosecution of Terry Bollea's lawsuit against Gawker, which resulted in a $140 million jury

award, and ultimately, a $31 million settlement in these cases. The Debtors and Nick Denton

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

apparently blame Mr. Thiel for their demise, even though he was not responsible for their tortious misconduct directed toward Mr. Bollea, which was and remains the real reason the Debtors and Mr. Denton were ordered to pay a $140 million judgment based on a jury verdict, following a full and fair trial on the merits.   The Motion seeks unnecessary and improper discovery from attorneys about litigation funding of Harder Clients *other than* Mr. Bollea (the Debtors and Denton agreed in their settlements not to seek any discovery relating to Mr. Bollea against any party or nonparty).  The Debtors claim to seek such discovery from the Harder Firm in order to investigate potential causes of action against Mr. Thiel (the Debtors and Denton released the Harder Firm from any and all claims, as part of their settlement with Mr. Bollea). Debtors' claims are devoid of merit, and likely will *never even* be pursued.   At this point, the Motion is relevant only to a fanciful claim for "tortious financing of litigation" that is *unavailable under New York law* and, even in jurisdictions that do recognize such a claim, is not actionable under the circumstances at issue in these cases.[3]

3.      The Debtors' discovery is based on a completely speculative hypothesized chain of events which they assert *might* lead them to eventually file a claim against Mr. Thiel (a claim which, in the end, will have no legal merit).  This is not what Rule 2004 examinations are for. The Motion is patently improper under applicable bankruptcy law and otherwise premised on the Debtors' purported desire to investigate a nonexistent cause of action.  The most logical and reasonable conclusion is that the Motion was filed for manifestly improper purposes to, at best, conduct a wild witch hunt to attempt to extract a settlement with Mr. Thiel, and at worst, satisfy Nick Denton's and the Debtors' animosity toward Mr. Thiel, the Harder Firm (which was

---

[3] The Debtors' fanciful argument that the Harder Firm did not protect its clients' best interests and instead conspired with Mr. Thiel to destroy Gawker, prevent its sale to Univision, and did so at the expense of the Harder Clients is false, contrary to the clear evidence showing substantial settlement payments to each of the Harder Clients, and the argument also is offensive and absurd.  By contrast, the Motion when filed attempted to interfere with the legitimate functions of the Creditors' Committee, which includes all three Harder Clients.

{00079760;1}
-3-

released by settlements approved by this Court), Mr. Bollea (who has released his claims against
the Debtors and Denton, has been released by them, and the Debtors and Denton further have
agreed not to pursue any discovery whatsoever relating to Mr. Bollea) and Dr. Ayyadurai and
Ms. Terrill, both of whom settled their lawsuits with and released their claims against the
Debtors and Denton, and nearly all discovery about them is now foreclosed by their respective
settlement agreements.

4.      Most of the developments mentioned above, including all of the settlements
between the Debtors, Denton and the Harder Clients, and this Court's approval of those
settlements, occurred *after* the Motion was filed.  The Motion lacked merit when it was filed six
months ago, and today it is utterly groundless and should be denied in its entirety.

## ARGUMENT

## I.      Legal Standard

5.      The purpose of Rule 2004 is to "allow the court to gain a clear picture of the
condition and whereabouts of the bankrupt's estate."  *Keene Corp. v. Johns-Manville Corp.* (*In
re Johns-Manville Corp.*), 42 B.R. 362, 364 (S.D.N.Y. 1984).  Rule 2004 is generally used to
examine the debtor, not its creditors.  *See In re GHR Energy Corp.,* 33 B.R. 451, 455 (Bankr. D.
Mass. 1983)) ("While it is true, in some instances, that creditors may possess information
relative to the debtor's business and conduct which the debtors do not possess, this would be the
exception."); *see also In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 586–87 (Bankr.
S.D.N.Y. 2001) (citing *In re Dinubilo,* 177 B.R. 932, 940–941 (E.D. Cal. 1993)) (the "purpose
[of a Rule 2004 examination] is to allow inquiry into the debtor's acts, conduct or financial
affairs so as to discover the existence and location of assets of the estate").  Moreover, given its
limited application, Rule 2004 cannot be used for "purposes of abuse or harassment" and it

"cannot stray into matters which are not relevant to the basic inquiry." *In re MF Glob. Inc.*, No. 11-02790 MG, 2013 WL 74580, at *1 (Bankr. S.D.N.Y. Jan. 8, 2013) (citing *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984)); *accord Picard v. Marshall* (*In re Bernard L. Madoff Inv. Secs. LLC*), Adv. Pro. No. 08–01789, 2014 WL 5486279, at *2 (Bankr. S.D.N.Y. Oct. 30, 2014) (finding a 2004 examination request improper where the requested discovery would have no bearing on the estate's property, liabilities, or financial condition).

6.       The party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks. *Picard*, 2014 WL 5486279, at *2. "Generally, good cause is shown if the [Rule 2004] examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *ePlus, Inc. v. Katz (In re Metiom, Inc.)*, 318 B.R. 263, 268 (S.D.N.Y. 2004) (quoting *In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993)); *accord Drexel Burnham*, 123 B.R. at 712. The Court must also "balance the competing interests of the parties, weighing the relevance . . . and necessity of the information sought by examination." *Id*. at 712.

7.       Finally, "the examination should not be so broad as to be more disruptive and costly to the [producing party] than beneficial to the [requesting party]." *In re Texaco, Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) (denying Rule 2004 examination requests that were not necessary to evaluate or propose a plan of reorganization). Thus, Rule 2004 examinations must be limited to a legitimate scope. *In re Drexel Burnham Lambert Group, Inc.,* 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (explaining that while a Rule 2004 examination "can be legitimately compared to a fishing expedition . . . however, the net, in the discretion of the Court, can be carefully stitched to limit its catch"); *Texaco,* 79 B.R. at 553.

{00079760;1}

## II.    The Debtors Cannot Show Good Cause For the Proposed Examination Because Two of the Three Purposes for Which They Allegedly Seek Information are Now Moot.

8.    Even if the Debtors were entitled to examine the Harder Firm, it would yield little, if any, benefit to the estates.  In October 2016 (six months ago), when the Debtors filed the Motion, they argued that a Rule 2004 examination was needed for three purposes: (1) to investigate alleged bases for designating the Harder Clients' votes; (2) to facilitate the formulation of a reorganization plan by better understanding creditors' economic incentives; and (3) to investigate whether the estate possesses certain claims, including certain claims for *prima facie* tort under New York law.  Motion at 1-2.

9.    The first two of these purposes—to explore vote-designation issues and help formulate a Chapter 11 plan—were questionable to begin with,[4] but now are completely moot. Without the purported benefit of a Rule 2004 exam, the Debtors reached comprehensive settlements with each of the Harder Clients, including Mr. Bollea.  Those settlements served as a cornerstone of the Debtors' efforts to formulate and propose a Chapter 11 plan in these cases that, ultimately, was confirmed by the Court, s*ee Findings of Fact, Conclusions of Law, and Order Confirming Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Grp., Inc., Gawker Media LLC, and Gawker Hungary KFT* [Docket No. 638] (the "Confirmation Order") and consummated by the Debtors, *see Notice of (I) Entry of Order Confirming the Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media*

---

[4]    The Harder Firm's motivations in this bankruptcy were clear: to maximize their clients' recoveries.  It is well within a creditor's right to protect its self-interest by seeking to maximize recovery under a prospective plan, *Adelphia Commc'ns Corp.*, 359 B.R. at 62; *see also In re Dune Deck Owners Corp.*, 175 B.R. 839, 844 (Bankr. S.D.N.Y. 1995) ("[A] creditor is free to vote its self-interest with respect to its claim."), even if a creditor does so in an aggressive or overreaching manner.  *Adelphia Commc'ns Corp.*, 359 B.R. at 62.  Importantly, much of the rhetoric directed at Mr. Thiel and the Harder Firm is based on a premise that they allegedly sought to "destroy Gawker."  The record in both the prepetition litigations and these Chapter 11 cases makes clear that the Harder Firm has pursued one goal: the vindication of its clients' rights that the Debtors brazenly and unapologetically violated.  To that end, the Harder Firm worked to maximize recoveries on their judgments and claims against the Debtors.  Those efforts resulted in Court-approved settlements with each Harder Client that allowed the Debtors to confirm the Plan of Liquidation and exit Chapter 11.

*LLC, and Gawker Hungary Kft. and (II) Occurrence of Effective Date* [Docket No. 825]. Thus,

contrary to the Debtors' earlier assertions, a Rule 2004 examination of the Harder Firm was

plainly unnecessary in the Debtors' efforts to formulate, propose, and obtain approval of a

Chapter 11 plan.

10.      Moreover, far from needing to designate the votes of the Harder Clients, the

Debtors reached an amicable settlement with each of the Harder Clients pursuant to which the

Harder Clients voted to accept the plan. *See* Confirmation Order at 15–17. Thus, even if there

had been a basis for designating creditors' votes, the benefit to the Debtors of discovery of that

basis is moot.

11.      Consequently, the only purported basis for proceeding with the Debtors' request

for a Rule 2004 examination is to investigate certain *prima facie* claims against Mr. Thiel and

others arising from alleged litigation finance agreements. Those claims, however, are not even

colorable, and therefore are highly unlikely to result in any recovery for the benefit of creditors.

## III.    Rule 2004 Discovery Regarding the Harder Firm and Mr. Thiel is Unwarranted Because No *Prima Facie* Tort Could Successfully Be Pleaded.

12.      The Debtors' third pretext for issuing a flurry of subpoenas is that they

purportedly want to explore whether they can bring *prima facie* tort claims against "Mr. Thiel

and/or other parties." Motion, ¶ 18. Any Rule 2004 examination to explore potential *prima

facie* tort claims would waste precious estate resources to creditors' detriment. Simply put, there

is no plausible *prima facie* tort claim regarding the Harder Clients' litigation because the Debtors

cannot, as a matter of law, establish either the element of malice or of lack of justification.

"[P]rima facie tort was designed to provide a remedy for intentional and malicious actions that

cause harm and for which no traditional tort provides a remedy, and not to provide a catch all

alternative for every cause of action which cannot stand on its legs." *Kickertz v. New York University*, 971 N.Y.S.2d 271, 280 (App. Div. 2013).

13.     The Debtors recognize that they cannot succeed on a *prima facie* tort claim unless they prove that the defendants were acting "without excuse or justification and motivated solely by malice." Motion, ¶ 41 (citation omitted). The Debtors concede they bear a "heavy burden" in attempting to bring such a claim. *Id.* Indeed, it is a burden they cannot possibly bear.

14.     Specifically with regard to the Bollea Litigation, the jury's finding of liability by itself demonstrates that the claim was not made "without excuse or justification."[5] *See Brandt v. Winchell*, 3 N.Y.2d 628, 636 (1958) (rejecting *prima facie* tort claim as a matter of law because persuading a government agency to bring charges is in the public interest even if motivated solely by malice). There can be no recovery under a *prima facie* tort theory "unless malevolence is the sole motive for defendant's otherwise lawful act or, in [other words], unless defendant acts from disinterested malevolence." *Posner v. Lewis*, 18 N.Y.3d 566, 570 n.2 (2012).

15.     The Debtors cannot meet either the justification or malice aspects of the test for a *prima facie* tort here. First, with respect to justification, not only did the jury find that Mr. Bollea's suit was meritorious, but the Debtors attempted on numerous occasions to obtain rulings from both the Florida trial court and the Florida appeals court dismissing the Bollea Litigation. In fact, under established privacy and First Amendment law, a cause of action exists for the public disclosure of private facts that are not a matter of public concern, and this cause of action has been upheld in circumstances where the private facts at issue are video footage or

---

[5]     This conclusion is unquestionably true as to Mr. Bollea because there can be no dispute that his motivations included the removal of the offensive video from Gawker.com. Mr. Bollea therefore, did not act solely out of malice, as required for a *prima facie* tort claim under New York law. *Reinforce, Inc. v. Birney*, 308 N.Y.16, 169 (1954).

photographs of a plaintiff in the nude or having sex. *Bartnicki v. Vopper*, 532 U.S. 514, 525 (2001) (extending First Amendment protection for illegal recordings, but only when the recordings depicted a matter of public concern); *City of San Diego v. Roe*, 543 U.S. 77, 84 (2004) (footage of police officer masturbating on Internet is not a matter of public concern); *Toffoloni v. LFP Publishing Group, LLC*, 572 F.3d 1201 (11th Cir. 2009) (nude photographs of former celebrity are not a matter of public concern, and publication of such photographs constitutes actionable invasion of privacy); *Judge v. Saltz Plastic Surgery, P.C.*, 367 P.3d 1006, 1013 (Utah 2016) (reversing summary judgment on privacy claim based on publication of nude photos of plaintiff, a patient at a plastic surgery complaint, without her consent as part of news story); *Michaels v. Internet Entertainment Group, Inc.*, 5 F. Supp. 2d 823, 841-42 (C.D. Cal. 1998) (publication of celebrity sex tape was not a matter of public concern). The Debtors, of course, had potential appellate arguments as to why the First Amendment permitted them to publish the sex video. However, the legal dispute serves to demonstrate that Mr. Bollea did not act without justification—he brought a colorable claim and won. Suing defendants on a colorable cause of action, whatever the ultimate disposition of any appeal in the Florida action, is not tortious.

16.    The Debtors also cannot establish the sort of malice required for a *prima facie* tort claim—that malevolence was the **sole** motive for Mr. Bollea's actions, or for the actions of the Harder Clients. Mr. Bollea had a valid and entirely understandable basis to sue because the Debtors posted an explicit video that invaded his privacy and then refused to take the video down when he asked them to do so. There is nothing "malevolent" about suffering injury and then suing for its redress. Seeking monetary compensation is, as a matter of law, not the sort of malevolence covered by the *prima facie* tort doctrine. "[A]llegations of pecuniary … motives

negate a cause of action for prima facie tort.'" *Niagara Mohawk Power Corp. v. Testone*, 708

N.Y.S.2d 527, 530 (App. Div. 2000). This would have remained true even if the Debtors were

to prevail on a First Amendment defense on appeal; Mr. Bollea suffered a clear and grievous

injury and properly went to the courts to seek compensation and injunctive relief. Likewise, the

other Harder Clients brought suit to redress actual injuries they suffered, injuries for which they

have received compensation in the form of the settlement agreements approved by this Court

and included in the Plan Supplement.

17.     The Debtors' suggestion of a *prima facie* tort claim fails for a third reason—the

*prima facie* doctrine solely covers intentional wrongs not addressed by traditional tort doctrines,

and does not apply either to claims potentially covered by existing torts nor to claims that are

barred under established tort law. *Belsky v. Lowenthal*, 405 N.Y.S.2d 319, 323 (App. Div. 1978)

("To blindly accept this rationale should not be an occasion for setting aside large bodies of case

law which have defined our limits, established our guidelines and set forth the essential elements

of traditional tort. Prima facie tort should not become a 'catch-all' alternative for every cause of

action which cannot stand on its legs."). "[I]t is well-settled that any claim that is covered by a

traditional tort cannot be the basis for a claim of prima facie tort – even if the traditional tort

claims turn out not to be viable." *Friends of Falun Gong v. Pacific Cultural Enterprises, Inc.*,

288 F. Supp. 2d 273, 284-85 (E.D.N.Y. 2003), *aff'd sub nom. Friends of Gong v. Pacific

Culture*, 109 Fed. Appx. 442 (2d Cir. 2004).

18.     Thus, in *Curiano v. Suozzi*, 63 N.Y.2d 113, 118-19 (1984), the New York Court

of Appeals dismissed a *prima facie* tort claim by a plaintiff who alleged an action was

maliciously prosecuted: "By using it, plaintiffs seek to avoid the stringent requirements we have

set for traditional torts, such as malicious prosecution, requirements which are necessary to

effectuate the strong public policy of open access to the courts for all parties without fear of reprisal in the form of a retaliatory lawsuit." *Curiano* should control here.  In *Curiano*,  New York's highest court has said that litigants may not use the *prima facie* tort doctrine to bring the sort of backdoor malicious prosecution claim that the Debtors are attempting to bring here.

19.    The Debtors' *prima facie* tort claim is also barred by the New York courts' rejection of claims for champerty and maintenance.[6] *Coopers & Lybrand v. Levitt*, 384 N.Y.S.2d 804, 807 (App. Div. 1976) (holding there is no "private claim for damages" for champerty and that no common law champerty doctrine exists in New York).  *Levitt* also rejects a *prima facie* tort claim based on the same allegations, because monetary losses as a result of allegedly improperly filed lawsuits are not recoverable under *prima facie* tort.  *Id.* at 498.

20.    The Debtors' *prima facie* tort claim is further barred by the statute of limitations, which is no greater than three years and runs from accrual, not discovery, of the cause of action. *Barrett v. Huff*, 776 N.Y.S.2d 678, 680 (App. Div. 2004); *see also Russek v. Dag Media Inc.*, 851 N.Y.S.2d 399, 400 (App. Div. 2008) (providing for one year statute of limitations).

21.    In sum, even if the Rule 2004 examination is ordered and the Debtors unearth what they deem a "silver bullet" sufficient to file suit against Mr. Thiel, that purported claim will fail as a matter of law and the estates will bear the cost of the Debtors' futile endeavor.

**IV.    Even if the Court Finds That the Debtors May Proceed With Discovery on Their Alleged Claims, Such Discovery May Not Be Directed Against the Harder Firm Because the Debtors Have Not Met the Heightened Burden for Such Discovery.**

---

[6]    "Champerty and maintenance" were common law tort causes of action against third parties who funded litigation, i.e., essentially claims for "tortious funding of litigation." *In re Primus*, 436 U.S. 412, 424 n. 15 (1978) ("Put simply, maintenance is helping another prosecute a suit; champerty is maintaining a suit in return for a financial interest in the outcome…."). "The origins of the doctrine of champerty are found in medieval England." *Osprey, Inc. v. Cabana Ltd.*, 532 S.E.2d 269, 273 (S.C. 2000).  The tort has been largely abolished throughout the country. *Del Webb Communities, Inc. v. Partington*, 652 F.3d 1145, 1156-57 (9th Cir. 2011) ("Only a handful of cases have applied maintenance and champerty as torts in the United States in the last one hundred years…. Even those cases have sharply limited the scope of the tort they recognized.").

22.    The Debtors have not satisfied the heightened standard for obtaining discovery from litigation counsel (i.e., the Harder Firm).    Such discovery may only be ordered after considering "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted."    *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71–72 (2d Cir. 2003).    "The rationale behind the presumption against such discovery is that even a deposition of counsel limited to relevant and nonprivileged information risks disrupting the attorney-client relationship and impeding the litigation."    *Yash Raj Films (USA) v. Kumar*, 2007 WL 3124557, at *4 (E.D.N.Y. Oct. 25, 2007).)    U.S. District Courts in the Second Circuit have repeatedly rebuffed attempts to take discovery from litigation counsel under this standard.    *Gragg v. International Management Group*, No. 5:03-CV-0904 (NPM/DEP), 2007 WL 1074894 (N.D.N.Y. Apr. 5, 2007); *Patsy's Italian Restaurant, Inc. v. Banas*, No. 06-CV-00729 (DLI)(RER), 2007 WL 174131 (E.D.N.Y. Jan. 19, 2007); *Resqnet.Com, Inc. v. Lansa, Inc.*, No. 01 Civ. 357 (RWS), 2004 WL 1627170 (S.D.N.Y. July 21, 2004).    *Creditsights, Inc. v. Ciasullo*, No. 05 Civ. 9345(DAB)(MHD), 2009 WL 3821441 (S.D.N.Y. Nov. 6, 2009), is similar to the case at bar.    In *Ciasullo*, the plaintiff sought leave to depose defendant's litigation counsel in the hope of obtaining evidence to support a motion for disqualification.    *Id.* at *1.    The Court held this was not sufficient justify taking discovery from opposing counsel.    *Id.*

23.    The Debtors' attempt to seek discovery from non-party opposing litigation counsel constitutes a significant threat to the attorney-client privilege and work-product doctrine and a significant impingement on the Harder Clients' rights.    Thus, even if the Court determines that there is some legal basis for permitting Rule 2004 discovery, the Court should deny the

Debtors' request to take discovery directly from the Harder Firm.  Such discovery—if permissible at all—should proceed in the first instance by means of requests directed to litigation parties, not lawyers.

**V.      Rule 2004 Discovery is Barred Because it is a Backdoor Attempt to Take Discovery on a Claim that the Debtors Have Not Asserted.**

24.      It is well established that a party cannot use Rule 2004 to take premature discovery and circumvent the limitations on discovery in adversary proceedings.  The Debtors' Motion does just that.  Even if one assumes that the Debtors genuinely believe that they have a viable claim, they are seeking to circumvent the proper procedure for discovery, which would be to bring a claim and then seek permission for discovery in that action from the proper tribunal. *See In re Herron*, 381 B.R. 184, 190 n. 9 (Bankr. D. Md. 2008) (noting that a when a debtor objects to a party's claim, each party "can seek information by discovery . . . pursuant to [Bankruptcy Rule] 9014, which incorporates [Bankruptcy Rules] 7026 and 7028-7037 in contested matters"); *In re Enron Corp.*, 281 B.R. 836, 841 (Bankr. S.D.N.Y. 2002) ("Based on Rule 2004's substantive differences, courts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure"); *In re Bellville*, 2002 WL 31761279, at *2 (Bankr. D. Vt. Aug. 9, 2002) (stating that the court would not permit a movant to thwart adversary proceeding rules and obtain through a Rule 2004 exam what it could not obtain through discovery in the adversary proceeding); *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 675 (Bankr. E.D. Pa. 1990) ("Many courts have expressed distaste for efforts of parties to utilize [Rule 2004] examinations to circumvent the restrictions of the [Federal Rules of Civil Procedure] in the context of adversary proceedings or contested matters."); *First Financial Savings Ass'n v. Kipp*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988)

("Rule 2004 may not be used to circumvent the protections offered under the discovery rules, 7026 to 7037.").

25.     The Debtors have already identified the potential claims and the particular defendants, if the Debtors believe those claims are viable, they are free to proceed; what they cannot do, however, is use a Rule 2004 examination tactically to circumvent traditional discovery rules under the Federal Rules of Civil Procedure.  *See Enron*, 281 B.R. at 841.  Under these circumstances, the Motion amounts to little more than gamesmanship by the Debtors seeking to gain some leverage in their dispute with Mr. Thiel.  It is manifestly improper to use Rule 2004 to examine non-party, non-creditor attorneys in a desperate attempt to win some strategic advantage in an unrelated matter.

26.     Indeed, it appears that the Debtors' refusal to drop their Motion as to the Harder Firm relates to their efforts to pressure Mr. Thiel to provide some settlement payment, and **not** to explore the Debtors' potential assets or otherwise administer the estate.  *See Julia Marsh, Gawker discussing 'potential settlement' with Peter Thiel reps*, N.Y. POST, Mar. 22, 2017, http://nypost.com/2017/03/22/gawker-discussing-potential-settlement-with-peter-thiel-reps. Given that the Debtors have little chance of succeeding on their *prima facie* tort claim (as discussed above), it is likely that the Debtors' true intention is to use Rule 2004 as subterfuge to conduct fishing expedition to learn about confidential, privileged facts so that they can leverage a settlement with Mr. Thiel on an otherwise frivolous claim.  Without question, Rule 2004 can never be used for such improper purposes.

## VI.    The Debtors Have Expressly Agreed in the Harder Clients' Settlement Agreements to Seek Limited or No Discovery From the Harder Firm.

27.     The Harder Clients' Court-approved settlements (which were incorporated into the Plan of Liquidation and Confirmation Order) expressly limit the scope of the Motion.  In the

Ayyadurai and Terrill settlement agreements, Debtors expressly waived any right to any discovery from the Harder Clients or from any third parties (including the Harder Firm) regarding the Harder Clients, with the sole exception "to [Terrill and Ayyadurai] only, any litigation financing agreement(s) relating to the Lawsuit[s prosecuted by the Harder Clients] or claims in the Lawsuit[s], and any non-privileged retainer agreements with Charles J. Harder, Esq. or the law firm of Harder Mirell & Abrams LLP relating to the Lawsuit[s] or claims in the Lawsuit[s]."[7]

28.    The limited exceptions in the settlement agreements permitting discovery "to Terrill only" and "to Ayyadurai only" do not encompass discovery requests, including requests for Rule 2004 examination, directed at the Harder Firm.

29.    In the Bollea Settlement Agreement, the Debtors went even further, agreeing not to seek "from Bollea or any other third party **any discovery about Bollea**, including, without limitation, discovery concerning **the subject matter of the 2004 Motion, litigation funding or finance**." Bollea Settlement Agreement ¶ 18 (Plan Supplement at 28) (emphasis added).

30.    As such, the Debtors have **waived** and **no longer have any right to seek** much of the discovery requested in the Motion. Even if the Debtors' discovery requests were directed to Terrill and Ayyadurai, the material which the Debtors can seek is limited to "any litigation financing agreement(s) relating to" the Terrill and Ayyadurai lawsuits and "any non-privileged retainer agreements" relating to those lawsuits.

31.    The information that the Debtors seek to obtain from retainer agreements, however, is inherently privileged. While the general "fact of retainer and identity of the client

---

[7]    Identical language appears in the Terrill and Ayyadurai Settlement Agreements, both of which are included in the Plan Supplement (Docket No. 516) and were specifically approved by this Court in the Confirmation Order. Ayyadurai Settlement Agreement ¶ 9 (Plan Supplement at 53); Terrill Settlement Agreement ¶ 10 (Plan Supplement at 61).

are not privileged, . . . any content that reveals the motive of the client in seeking representation . . . falls within the privilege." *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 101 (S.D.N.Y. 2009) (*citing United States v. Pape*, 144 F.2d 778, 782 (2d Cir. 1944)) (internal quotation marks and alterations omitted).

32.    Here, the Debtors seek disclosure of retainer agreements not to determine the identities of the Harder Clients or learn that the Harder Clients retained the Harder Firm, but to probe the psychology of the Harder Clients for the malice necessary to plead a *prima facie* tort claim.[8]    Thus, regardless whether the Harder Clients' retainer agreements are privileged,[9] either (1) those agreements contain no information of use to the Debtors, or (2) such information is itself privileged.  Either way, examination under Rule 2004 could not possibly assist the Debtors in their stated goals, and the Debtors' Motion should be denied.

33.    Moreover, as discussed above, the Second Circuit has held that the "risk of encountering privilege . . . issues" is a reason for denying discovery from a law firm.  *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65 at 72.  As such, insofar as the information the Debtors demand from the Harder Firm is privileged, the Motion should be denied.

---

[8] The Debtors' now-moot basis for Rule 2004 examination—to uncover the motivations of the Harder Clients in order to formulate a plan or designate their votes as cast in bad faith—would also have strayed into privileged territory for the same reason.

[9] When the settlement agreements refer to "non-privileged" retainer agreements, they arguably mean retainer agreements that are not privileged under the law applicable to the attorney-client relationship embodied in such agreements.  Under California law, which governs the relationship between the Harder Firm and its clients, "a written fee contract [between a lawyer and a client] shall be deemed to be a confidential communication" for purposes of privilege.  Cal. Bus. & Prof. Code § 6149.  Such a communication is protected from disclosure by the attorney-client privilege under Cal. Evid. Code § 954.

## CONCLUSION

34.    For the foregoing reasons and those stated by the other objecting parties, the

motion for Rule 2004 discovery should be denied in its entirety.

Date:   New York, New York
        April 18, 2017

Respectfully submitted,

**CHADBOURNE & PARKE LLP**

By:  /s/ James A. Copeland
    Samuel S. Kohn
    James A. Copeland
    1301 Avenue of the Americas
    New York, New York 10019-6022
    Tel.: 212.408.5100
    Fax: 212.541.5369
    skohn@chadbourne.com
    jcopeland@chadbourne.com

*Attorneys for Harder Mirell & Abrams LLP*
*and Charles J. Harder, Esq.*