SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Shana A. Elberg

- and -

One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Anthony W. Clark (admitted *pro hac vice*)
Robert A. Weber (admitted *pro hac vice*)

*Attorneys for Peter Thiel and Thiel Capital LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------- x
In re:                             :   Chapter 11
                                   :
GAWKER MEDIA LLC, et al.[1]        :   Case No. 16-11700 (SMB)
                                   :
                                   :
        Debtors.                   :
---------------------------------- x

**OBJECTION OF PETER THIEL AND THIEL CAPITAL LLC TO MOTION OF THE DEBTORS FOR LEAVE PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE TO CONDUCT DISCOVERY CONCERNING POTENTIAL PLAN ISSUES AND POTENTIAL CAUSES OF ACTION, AND TO <u>ESTABLISH DISCOVERY RESPONSE AND DISPUTE PROCEDURES</u>**

---

[1] The last four digits of the taxpayer identification number of the debtors (the "<u>Debtors</u>") are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). The mailing address for Gawker Media LLC and Gawker Media Group, Inc. are c/o Opportune LLP, Attn. William D. Holden, Chief Restructuring Officer, 10 East 56th Street, 33rd Flr., New York NY 10020, and the mailing address for Kinja Kft. is c/o Opportune LLP, Attn. William D. Holden, 10 East 53rd Street, 33rd Flr., New York NY 10020.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

RELEVANT BACKGROUND ................................................................................................3

ARGUMENT.............................................................................................................................4

    A.    The Motion Is Not Supported By Good Cause, Was Brought To Abuse
          And Harass, And Should Be Denied......................................................................4

    B.    The Proposed Examination Is Not Proportional. .....................................................8

    C.    The Proposed Procedures Should Not Be Approved. .............................................9

## **TABLE OF AUTHORITIES**

### **CASES**

*In re AOG Entertainment, Inc.*,
 558 B.R. 98 (Bankr. S.D.N.Y. Sept. 16, 2016) ............................................................. 4, 8

*ATI, Inc. v. Ruder & Finn, Inc.*,
 42 N.Y.2d 454 (1977) ........................................................................................................ 8

*Belton v. Citigroup, Inc.* (*Belton*),
 No. 15 CV 1934 (VB), 2015 U.S. Dist. LEXIS 144371 (S.D.N.Y. Oct. 14, 2015) ............. 7

*Brandt v. Winchell*,
 3 N.Y.2d 628 (1958) .......................................................................................................... 8

*Cooney v. Osgood Machinery Inc.*,
 81 N.Y.2d 66 (1993) .......................................................................................................... 6

*In re Duratech Industries, Inc.*,
 241 B.R. 283 (E.D.N.Y. 1999) .......................................................................................... 5

*Edwards v. Erie Coach Lines Co.*,
 17 N.Y.3d 306 (2011) ........................................................................................................ 6

*Guenther v. Novartis Pharmaceuticals Corp.*,
 No. 6:08-cv-456-Orl-31DAB, 2013 WL 12155490 (M.D. Fla. July 31, 2013) ................. 6

*In re Hughes,*
 281 B.R. 224 (Bankr. S.D.N.Y. 2002) ............................................................................... 6

*Martin v. Key Bank of New York (In re Martin)*,
 208 B.R. 807 (N.D.N.Y. 1997) .......................................................................................... 5

*Riverhead Centre, LLC v. Headriver LLC,*
 *No.* 00-27070, 2001 WL 1649269 (N.Y. Sup. Ct. Sept. 24, 2001) ................................... 7

*Schoolcraft v. City of New York*,
 103 F. Supp. 3d 465 (S.D.N.Y. 2015) ............................................................................... 7

*Schoolcraft v. City of New York*,
 133 F. Supp. 3d 563 (S.D.N.Y. 2015) ............................................................................... 7

*Sigmon v. Parker Chapin Flattau & Klimpl*,
 901 F.Supp. 667 (S.D.N.Y. 1995) ..................................................................................... 7

*In re SunEdison, Inc.*,
 562 B.R. 243 (Bankr. S.D.N.Y. Jan. 18, 2017) ......................................................... 4, 5, 8

*Whitney Information Network, Inc. v. Gagnon*,
    353 F. Supp. 2d 1208 (M.D. Fla. 2005) ..........................................................................6

**RULES**

Fed. R. Civ. P. 26(b)(1) ...............................................................................................................8

Peter Thiel and Thiel Capital LLC ("Thiel Capital")[2] hereby object (the "Objection") to the Motion of the Debtors for Leave Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to Conduct Discovery Concerning Potential Plan Issues and Potential Causes of Action, and to Establish Discovery Response and Dispute Procedures (the "Motion") [Docket No. 341], and respectfully represent as follows:

**PRELIMINARY STATEMENT**

The Motion was filed on October 10, 2016. Much has happened in these cases in the intervening six months: the Debtors' disclosure statement was approved, votes for their plan were solicited, the plan was confirmed, settlements with certain key creditors were approved, and the plan became effective. The Motion has been continued several times to allow settlement discussions to move forward among the Debtors, Mr. Thiel and Nick Denton, Gawker's founder and publisher. Although settlement discussions between Mr. Thiel and Mr. Denton have been productive, the Gawker Debtors to date have insisted upon their requested discovery and refused to participate meaningfully in settlement discussions, rendering this response necessary.[3]

The Motion was thin to begin with – based entirely on supposition and speculation derived from press reports. But whatever little support the Motion had when filed has

---

[2] In submitting this Objection, Mr. Thiel and Thiel Capital do not waive or consent to this Court's jurisdiction or the entry of final judgments in any matter or proceeding in which this Court is not constitutionally and statutorily authorized to do so, and reserve all rights.

[3] For example, in connection with an otherwise acceptable settlement agreement, Mr. Thiel has offered to provide releases to the Debtors' employees/contractors, but the Debtors contend that they have *already* procured such releases for these constituents pursuant to Article 9.05 of the Plan. This position is insupportable. Article 9.05 provides for a release in favor of certain employees and contractors *by holders of claims against and equity interests in the Debtors*, and Mr. Thiel is neither; therefore, his claims against the employees/contractors have not been released. This shows that the Debtors' refusal to negotiate and rigid insistence upon discovery is not in good faith nor consistent with Article 9.05 or the terms of the Bollea settlement agreement, which require the Debtors to "cooperate and work in good faith to secure settlement agreements with . . . Peter Thiel, and Thiel Capital, LLC[,]" which agreements "would include mutual general releases." Executed Settlement Agreement with Terry Gene Bollea (unsigned) ¶ 19 and Ex. C, (the "Bollea Settlement Agreement") [Docket No. 590-1]. Under these circumstances, the Motion is harassment and should be denied for that reason alone.

evaporated with the Debtors' subsequent plan confirmation and creditor settlements. In particular, in Court-approved settlements with Terry Bollea, Ashley Terrill and Dr. Shiva Ayyadurai, the Debtors waived their right to pursue the discovery requested in the Motion. For example, the Bollea settlement provides:

> [T]he Gawker Debtors shall not seek from Bollea *or any other third party* any discovery about Bollea, including, without limitation, discovery concerning the subject matter of the 2004 Motion, litigation funding or finance, the Bollea I Lawsuit, the Bollea II Lawsuit, the Bankruptcy Cases, the Denton Bankruptcy Case, the Daulerio Collection Proceedings, and/or any and all related proceedings, whatsoever.

Bollea Settlement Agreement ¶ 18 (emphasis added). The Terrill and Ayyadurai settlement agreements have similar restrictions. Thus, the Debtors are precluded by the express terms of these settlement agreements from seeking the instant discovery from Mr. Thiel.

Moreover, there is no good cause for the requested discovery. The Debtors' plan-related justifications no longer apply, since voting and confirmation already have occurred. Nor is the discovery needed to explore a possible *prima facie* intentional tort claim under New York law, for which the Debtors cite *no* authority holding that the conduct they allege – Mr. Thiel's funding of Mr. Bollea's successful invasion of privacy lawsuit against Gawker and others – is actionable as an intentional tort. Indeed, as the Motion concedes, a party cannot be held liable for a *prima facie* intentional tort under New York law unless the actor was motivated *solely* by malice; "[o]ther motives, such as 'profit, self-interest, or business advantage will defeat a *prima facie* tort claim.'" Motion ¶ 17 (quoting *Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F.Supp. 667, 681 (S.D.N.Y. 1995)). As the press articles relied on by the Debtors indicate, Mr. Thiel's funding of the Bollea action was driven by an economic motivation as well as a desire to protect privacy rights. Accordingly, even if New York law were to apply, no cause of action for *prima facie* tort will lie, and the requested discovery is moot. However, New York law likely

2

does not apply. The "injury" of which the Debtors complain is the funding of Mr. Bollea's state court action in Florida. Florida law thus likely governs the Debtors' putative claims against Mr. Thiel. Florida does not recognize causes of action for *prima facie* intentional tort. Therefore, discovery should be denied.

Finally, the Debtors have shown no cause to expedite the time periods for responding parties to produce requested responsive documents or a log of the documents that are subject to privilege, attorney work product, or other protection from disclosure. As explained further below, no discovery should be authorized. But if some limited discovery were to be granted, the six-month pendency of the Motion and repeated adjournments demonstrate that there is no particular urgency to it.

Accordingly, for the reasons set forth herein, and those to be established at a hearing on the Motion, the Motion should be denied.

## **RELEVANT BACKGROUND**

1. In March 2016, following a three week jury trial in Florida state court, Terry Bollea (a/k/a Hulk Hogan) obtained a judgment for $140.1 million in compensatory and punitive damages against Debtor Gawker, Mr. Denton and writer A.J. Daulerio for invasion of privacy and other related claims.

2. On June 10, 2016, Debtor Gawker Media LLC filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. Debtors Gawker Media Group, Inc. and Kinja Kft. filed their petitions on June 12, 2016. On information and belief, Mr. Bollea was the single largest creditor of the Debtors.

3. Following an auction, the Debtors closed on the sale of all or substantially all of their assets for approximately $135 million on September 9, 2016.

3

4. On September 30, 2016, the Debtors filed a proposed disclosure statement and plan (the "Plan") [Docket No. 308].

5. The Motion was filed on October 11, 2016.

6. On November 4, 2016, the Court entered an order [Docket No. 413] approving the Debtors' disclosure statement in respect of their proposed Plan, which was described as providing a 100% recovery for holders of allowed claims and a recovery to equity holders.[4]

7. On December 22, 2016, the Court entered an order confirming the Debtors' Plan (the "Confirmation Order") [Docket No. 638]. The Plan incorporates settlements with Mr. Bollea, Ms. Terrill and Dr. Ayyadurai. *See* Plan Art. 4; *see also* Confirmation Order ¶¶ 30, 56. The Bollea settlement resolved his Florida state court action, which had been appealed; that appeal now has been dismissed.

8. The Plan became effective on March 17, 2017.  [*See* Docket No. 825]

## ARGUMENT

**A.   The Motion Is Not Supported By Good Cause, Was Brought To Abuse And Harass, And Should Be Denied**.

9. "The party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks, and relief lies within the sound discretion of the Bankruptcy Court." *In re SunEdison, Inc.*, 562 B.R. 243, 249 (Bankr. S.D.N.Y. Jan. 18, 2017) (Bernstein, J.); *see also In re AOG Entm't, Inc.*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. Sept. 16, 2016) (Bernstein, J.). Good cause can be shown if "the proposed examination '"is necessary to establish the claim of the party seeking the examination or . . . denial of such request would cause the examiner undue hardship or injustice."'" *SunEdison,* 562 B.R. at 249 (quoting *In re Metiom, Inc.*, 318 B.R. 263,

---

[4]   *See* Tr. regarding Hearing Held on November 3, 2016 at 13 [Docket No. 447].

4

268 (S.D.N.Y. 2004). Relevance alone does not show good cause; rather, the court must balance the parties' competing interests. *See id.*

10. When Rule 2004 discovery is sought for abusive or harassing reasons, good cause does not exist. *See, e.g., In re Duratech Indus., Inc.,* 241 B.R. 283, 289 (E.D.N.Y. 1999) ("Significantly, Rule 2004 examinations may not be used for the purposes of abuse or harassment."); *Martin v. Key Bank of New York (In re Martin)*, 208 B.R. 807, 810–11 (N.D.N.Y. 1997) (denying Rule 2004 motion as abusive and harassing), *aff'd sub nom Martin v. Schaap Moving Sys., Inc.*, No. 97-5042, 1998 WL 405966, at *3 (2d Cir. 1998).

11. Two of the Debtors' three proffered justifications for the requested discovery are moot: to determine whether creditor votes on the Debtors' Plan should be designated under Bankruptcy Code section 1126(e), and to identify any "economic incentives arising from any of Mr. Thiel's litigation financing and/or control that Mr. Thiel might have over such creditor claims" and thereby develop "amended plans that can offer settlements to creditors." Motion ¶ 18. Since the Plan has been voted on, confirmed and become effective, there no longer are any arguable Plan-related reasons for the requested discovery.[5]

12. The Debtors' only other justification for the discovery is to evaluate whether they should bring claims against Mr. Thiel and others. *See* Motion ¶ 18. The Debtors admit that they do not presently have sufficient evidence in support of a claim against Mr. Thiel to satisfy Rule 11. *See id.* ¶¶ 18, 42 (asserting that discovery is needed from Mr. Thiel and Thiel Capital in order to determine whether to bring *prima facie* intentional tort claim against Mr. Thiel, and "whether [Debtors] have a reasonable basis to believe that they can meet" the heavy burden

---

[5] Even before these grounds were rendered moot, they did not justify discovery from Mr. Thiel and Thiel Capital, who were not creditors of the Debtors, did not vote on the Plan, and did not control any creditors' ability to vote, which, in any event, the Debtors could verify through discovery from the voting creditors.

5

required to allege such a claim).[6] But the Debtors' fundamental premise – that the funding of a successful lawsuit is actionable – completely lacks merit, and they cite *no authority* so holding, whether as a *prima facie* intentional tort or under any other legal theory.

13. The Debtors' theory is novel and highly speculative. Under either New York or Florida choice of law rules, Florida substantive tort law likely would govern any claim asserted by the Debtors against Mr. Thiel or Thiel Capital arising from the funding of the Bollea lawsuit in Florida state court.[7] Florida does not recognize any cause of action for *prima facie* intentional tort. *See Whitney Info. Network, Inc. v. Gagnon*, 353 F. Supp. 2d 1208, 1213 (M.D. Fla. 2005) ("Because Florida does not recognize this cause of action, Count V [*prima facie* intentional tort] will be dismissed and may not be included in any amended counterclaim.").

14. Even if New York law did apply – and the Motion never explains how it could to a claim against a California-based defendant who funded a successful lawsuit in Florida – the Debtors cannot plausibly assert a *prima facie* intentional tort claim under New York law, which

---

[6] The Debtors improperly cite *Belton v. Citigroup, Inc.* (*In re Belton*), No. 15 CV 1934 (VB), 2015 U.S. Dist. LEXIS 144371 (S.D.N.Y. Oct. 14, 2015), for the proposition that "a Rule 2004 examination would allow the Debtors to ascertain whether they have claims in connection with Mr. Thiel's (direct or indirect) actions and determine whether any wrongdoing has occurred." Motion ¶ 40 (citing *Belton* at *15). But *Belton* involved the reversal on appeal of bankruptcy court rulings denying credit card issuers' motions to compel arbitration of claims for violations of Bankruptcy Code section 524, not the propriety of a Rule 2004 examination. The Debtors also rely upon *In re Hughes*, 281 B.R. 224 (Bankr. S.D.N.Y. 2002), but that case likewise is far afield from the facts here. In *Hughes*, the discovery was sought by foreign representatives in an ancillary proceeding under Bankruptcy Code section 304. The foreign representatives served deposition subpoenas upon the auditors of the foreign debtor's managing agent. *Id.* at 226. The court overruled the auditors' objections, finding that the depositions were sought for permissible purposes, were not inconsistent with the scope of discovery permitted in the foreign proceeding, and were authorized under a separate federal statute (28 U.S.C. §1782(a)) that has no application here. *Id.* at 229-230.

[7] In New York, torts intended to deter or regulate conduct are governed by the substantive law of the jurisdiction in which the injury occurred. *See Edwards v. Erie Coach Lines Co.*, 17 N.Y.3d 306, 333-34 (N.Y. 2011) (citations omitted). New York's *prima facie* tort is a conduct-regulating rule that is intended to regulate the intentional infliction of harm. *See id.* at 318-19; *see also Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 74-75 (N.Y. 1993). Therefore, under New York choice of law rules, Florida tort law likely would apply to the Debtors' alleged claim. The result is the same under Florida choice of law rules. *See Guenther v. Novartis Pharm. Corp.*, No. 6:08-cv-456-Orl-31DAB, 2013 WL 12155490, at *2 (M.D. Fla. July 31, 2013) (noting that in tort cases, Florida applies presumption in favor of law of state where injury occurs).

6

places a heavy burden on a plaintiff to show that a defendant was "'*solely* motivated by malice'"; alternative motives, such as "'profit, self-interest, or business advantage'" will defeat the claim. Motion ¶ 41 (citations omitted).

15.     The Motion acknowledges that the very same news articles upon which Debtors rely state that Mr. Thiel's funding of the Bollea lawsuit was prompted by a desire to protect privacy rights by assisting people who were wronged by inappropriate, invasive or defamatory publications but lack the resources to fight for themselves. *See* Motion ¶ 42. The Motion also acknowledges that those same news reports state that the terms of Mr. Thiel's funding of the Bollea lawsuit include a share of any successful recovery. *See id.* The Debtors concede that such economic or other alternate motivations preclude an intentional tort claim. Indeed, in both of Debtors' cited cases, the courts ***rejected*** intentional tort claims for this very reason.[8] *See also Riverhead Ctr., LLC v. Headriver LLC*, No. 00-27070, 2001 WL 1649269, at *4 (N.Y. Sup. Ct. Sept. 24, 2001) (dismissing *prima facie* intentional tort claim against litigation funder for failure to state claim where plaintiff acknowledged that defendant "was motivated, in part, by economic self-interest").

16.     Accordingly, because the Motion acknowledges evidence that Mr. Thiel's actions were not motivated solely by malice and were instead motivated, at least in part, by economic

---

[8] The Debtors' intentional tort cases are factually inapposite and demonstrate that they cannot make out a plausible intentional tort claim here precisely because, as acknowledged in the Motion, Mr. Thiel's funding of the Bollea lawsuit was not motivated solely by malice. *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465 (S.D.N.Y. 2015), arose from a police officer's termination after he made accusations of improper practices by others in his precinct. A defendant officer accused of involvement in the improprieties asserted a counterclaim for intentional tort. The court dismissed the counterclaim as a matter of law because it alleged the plaintiff's actions were intended to create support for his later lawsuit and thus could not have been solely motivated by malice. *See id.* at 527. On reconsideration, the court confirmed its ruling on this issue. *See Schoolcraft v. City of New York*, 133 F. Supp. 3d. 563, 568 (S.D.N.Y. 2015) (stating "[t]he existence of monetary self-interest defeats an assertion of disinterested[ness]"). *Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F. Supp. 667 (S.D.N.Y. 1995), involved the termination of a pregnant law firm associate. She later sued, asserting intentional tort and other claims. The court dismissed her intentional tort claim as a matter of law because the law firm was downsizing and, thus, was motivated by something other than pure malice. *Id.* at 681.

7

and other considerations, no intentional tort claim would lie. *See AOG, Inc.*, 558 B.R. at 108-11 (denying Rule 2004 motion because movant's underlying claim was moot).[9] Since no claim for *prima facia* intentional tort can be supported, discovery in aid thereof is not warranted, and the Motion should be denied.

**B.     The Proposed Examination Is Not Proportional.**

18.    The 2015 amendments to the Federal Rules of Civil Procedure expressly incorporate the concept of proportionality in light of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). As this Court has recognized, the concept of an unbridled "fishing expedition" under Rule 2004 is outdated, and the spirit of proportionality also applies to Rule 2004 discovery "and is relevant to the determination of cause." *SunEdison*, 562 B.R. at 250.

19.    Here, the requested discovery is not important to the outcome of these Chapter 11 cases. The Debtors' Plan – a 100-cent plan that does not depend on any recoveries from Mr. Thiel to pay allowed claims – already has been confirmed and gone effective. The discovery is thus unrelated to creditor recoveries under the Plan and improper. In addition, the sweeping restrictions on Rule 2004 discovery which the Debtors agreed to in the Bollea, Terrill and

---

[9] New York law likewise provides immunity from a claim for intentional tort when a person's actions are in the public interest, even if such actions were motivated by ill will. *See, e.g.*, *Brandt v. Winchell*, 3 N.Y.2d 628, 635 (N.Y. 1958) ("The best interests of the public are advanced by the exposure of those guilty of offenses against the public and by the unfettered dissemination of the truth about such wrongdoers. Such a person is entitled to immunity from civil suit at the hands of the one exposed, for the truth is not to be shackled by fear of a civil action for damages. If the one who sets the agencies in motion is actuated by an evil motive he may perhaps be subject to judgment in the forum of morals but he is free from liability in a court of law."); *ATI, Inc. v. Ruder & Finn, Inc.*, 42 N.Y.2d 454, 460-61 (N.Y. 1977) (dismissing intentional tort claim for failure to state claim where defendant's conduct furthered public interest).

8

Ayyadurai settlements demonstrate that the putative benefit to be obtained from the proposed discovery is miniscule and far outweighed by the burden it would impose. Under these circumstances, *any* examination is disproportional. The Motion should be denied.

**C.   The Proposed Procedures Should Not Be Approved.**

20.    The Motion (¶ 45) and proposed Order also seek preapproval of certain shortened time periods and procedures for the conduct of the requested discovery, including, *inter alia*, the production of all responsive documents and a detailed privilege log within 21 days of service of a document request. The Motion should be denied as to Mr. Thiel and Thiel Capital for the reasons stated above. However, if any discovery is to be permitted, there is no need for the shortened timeframes proposed, as demonstrated by the many months the Motion has been pending and repeatedly continued. The Debtors' proposed procedures and shortened response periods are unduly burdensome, unjustified and should be denied.

16-11700-smb    Doc 870    Filed 04/18/17    Entered 04/18/17 15:54:48    Main Document
Pg 14 of 14

WHEREFORE, for the foregoing reasons, Mr. Thiel and Thiel Capital request that the Court deny the Motion and grant such other and further relief as is just and proper.

Dated: New York, New York
April 18, 2017

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: */s/ Shana A. Elberg*
Shana A. Elberg
Four Times Square
New York, New York 10036
(212) 735-3000

- and -

Anthony W. Clark (admitted *pro hac vice*)
Robert A. Weber (admitted *pro hac vice*)
920 N. King Street
Wilmington, Delaware 19801
(302) 651-3000

*Attorneys for Peter Thiel and Thiel Capital LLC*