# Exhibit D

3828

```
IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
         IN AND FOR PINELLAS COUNTY, FLORIDA
                  CIVIL DIVISION

TERRY GENE BOLLEA,
professionally known as HULK
HOGAN,

             Plaintiff,         Case No.
                                12-012447-CI-011
vs.

GAWKER MEDIA, LLC, aka GAWKER
MEDIA, NICK DENTON; A.J.
DAULERIO,

             Defendants.
_____/



              TRIAL PROCEEDINGS BEFORE
         THE HONORABLE PAMELA A.M. CAMPBELL,
                    and a jury


DATE:              March 18, 2016


TIME:              6:49 p.m. to 7:00 p.m.


PLACE:             Pinellas County Courthouse
                   545 1st Avenue North
                   Courtroom A
                   St. Petersburg, Florida


REPORTED BY:       Nathan F. Perkins, RDR
                   Aaron T. Perkins, RPR
                   Notaries Public, State of
                   Florida at Large


                   Volume 29
                   Pages 3828 to 3844
```

**Riesdorph Reporting Group, Inc. (813) 222-8963**

3829

```
 1   APPEARANCES:
 2
     CHARLES J. HARDER, ESQUIRE
 3   Harder, Mirell & Abrams, LLP
     1925 Century Park East
 4   Suite 800
     Los Angeles, California 90067
 5
          -  and  -
 6
     KENNETH G. TURKEL, ESQUIRE
 7   SHANE B. VOGT, ESQUIRE
     Bajo Cuva Cohen & Turkel, P.A.
 8   100 North Tampa Street
     Suite 1900
 9   Tampa, Florida 33602
10        -  and  -
11   DAVID R. HOUSTON, ESQUIRE
     The Law Office of David R. Houston
12   432 Court Street
     Reno, Nevada  89501
13
14        Attorneys for Plaintiff
15
16
17
18   APPEARANCES CONTINUED:
19
20
21
22
23
24
25
```

3830

```
 1
    APPEARANCES CONTINUED AS FOLLOWS:
 2

 3    MICHAEL D. SULLIVAN, ESQUIRE
      SETH D. BERLIN, ESQUIRE
 4    PAUL S. SAFIER, ESQUIRE
      Levine Sullivan Koch & Schulz, LLP
 5    1899 L Street, N.W.
      Suite 200
 6    Washington, D.C. 20036

 7         -  and  -

 8    MICHAEL BERRY, ESQUIRE
      Levine Sullivan Koch & Schulz, LLP
 9    1760 Market Street
      Suite 1001
10    Philadelphia, Pennsylvania  19103

11         -  and  -

12    RACHEL E. FUGATE, ESQUIRE
      Thomas & LoCicero, P.L.
13    601 South Boulevard
      Tampa, Florida 33606
14
           -  and  -
15
      HEATHER L. DIETRICK, ESQUIRE
16    Gawker Media, LLC
      President and General Counsel
17    210 Elizabeth Street
      Suite 4
18    New York, New York  10012

19         -  and  -

20    STEVEN L. BRANNOCK, ESQUIRE
      Brannock & Humphries, P.A.
21    1111 West Cass Street
      Suite 200
22    Tampa, Florida  33606

23         Attorneys for Defendant Gawker Media, LLC,
           et al.
24

25
```

3831

```
 1

 2
        ALSO PRESENT:
 3
          Terry Bollea
 4        Nick Denton
          A.J. Daulerio
 5        John Dackson, media technician
          Tim Piganelli, media technician
 6        Michael Boucher
          Seema Ghatnekar
 7        Maureen Walsh
          Michael Foley
 8        Jeff Anderson

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3832

|    |                                  |      |
|----|----------------------------------|------|
| 1  | I N D E X                        |      |
| 2  |                                  | PAGE |
| 3  |                                  |      |
| 4  | PROCEEDINGS                      | 3833 |
| 5  |                                  |      |
| 6  |                                  |      |
| 7  | REPORTER'S CERTIFICATE           | 3844 |

E X H I B I T S

PAGE

(NONE ADMITTED/RECEIVED)

3833

```
 1                P R O C E E D I N G S
 2         (Court called to order at 6:49 p.m.)
 3         THE COURT:  Thank you.  You can all be
 4  seated.
 5         Is there anything the Court needs to address
 6  prior to the jury coming in?
 7         MR. TURKEL:  Nothing from plaintiffs.
 8         THE COURT:  Mr. Sullivan?
 9         MR. SULLIVAN:  No, ma'am.
10         THE COURT:  All right.  Thank you.  Let's go
11  ahead and bring the jury in.
12         THE BAILIFF:  Yes, Judge.
13         (The jury returned to the courtroom at
14  6:51 p.m.)
15         THE COURT:  Thank you very much.
16         So, Ms. Adkins, are you the jury foreperson?
17         JUROR ADKINS:  No.
18         THE COURT:  Ms. Young?
19         JUROR YOUNG:  Yes.
20         THE COURT:  Has the jury reached a unanimous
21  verdict?
22         JUROR YOUNG:  We have.
23         THE COURT:  Could you please give the verdict
24  form to Deputy Hernandez?
25         (A document was handed to the judge.)
```

**Riesdorph Reporting Group, Inc. (813) 222-8963**

3834

1    THE COURT:  All right.  Thank you.
2    The clerk will please publish the verdict.
3    THE CLERK:  In the Circuit of the Sixth
4    Judicial Circuit, in and for Pinellas County,
5    Florida, Case No. 12-12447-CI, Terry Gene Bollea,
6    professionally known as Hulk Hogan, plaintiff, vs.
7    Gawker Media, LLC, a/k/a Gawker Media, Nick
8    Denton, A.J. Daulerio, defendants, verdict.
9    We the jury return the following verdict:
10   Did plaintiff prove that by posting the video
11   defendants publically disclosed private facts
12   about the plaintiff in a manner that reasonably --
13   that a reasonable person would find highly
14   offensive?
15   Yes.
16   Did plaintiff prove that the video was not a
17   matter of legitimate public concern?
18   Yes.
19   Did Nick Denton participate in posting of the
20   video on Gawker.com?
21   Yes.
22   Did plaintiff prove that defendants
23   wrongful -- wrongfully intruded into a place where
24   he had reasonable expectation of privacy?
25   Yes.

3835

1         Did plaintiff prove that the video was posted
2    in such a manner as to outrage or cause mental
3    suffering, shame, or humiliation to a person with
4    ordinary sensibilities?
5         Yes.
6         Did the plaintiff prove that the defendants
7    used plaintiff's name or likeness for a commercial
8    or advertising purpose?
9         Yes.
10        Did the plaintiff prove that he did not
11   authorize use of his name or likeness?
12        Yes.
13        Did the plaintiff prove that posting the
14   video was extreme and outrageous to a person of
15   ordinary sensibilities?
16        Yes.
17        Did plaintiff prove that the defendants
18   intended to cause him severe emotional distress or
19   acted with reckless disregard of high probability
20   of causing him severe emotional distress?
21        Yes.
22        Did plaintiff prove that posting of the video
23   caused severe emotional distress?
24        Yes.
25        Did plaintiff prove that defendants

1     intentionally used or disclosed the video?
2         Yes.
3         Did plaintiff prove that he had a reasonable
4     expectation of privacy in the bedroom where the
5     video was recorded?
6         Yes.
7         Did plaintiff prove that the defendants knew
8     or had reason to know that he was recorded on the
9     video without his knowledge or consent?
10        Yes.
11        As to only plaintiff's claim for violation of
12    the Florida Security of Communications Act, did
13    the defendants prove that they acted in good faith
14    reliance on a good faith determination that their
15    conduct was lawful?
16        No.
17        What is the total amount of money that will
18    fairly and adequately compensate plaintiff for any
19    economic injuries, losses, or damage caused by the
20    defendants' misconduct?
21        $55,000,000.
22        What is the total amount of money that will
23    fairly and adequately compensate Terry Bollea for
24    the emotional distress which resulted from the
25    defendants' posting of the video on the Internet?

3837

1       $60,000,000.
2       Total damages of plaintiff, $115,000,000.
3       Under the circumstances of this case, state
4   whether you find by clear and convincing evidence
5   that punitive damages are awarded against Gawker
6   Media, LLC.
7       Yes.
8       Nick Denton?
9       Yes.
10      A.J. Daulerio?
11      Yes.
12      Did defendants have a specific intent to harm
13  plaintiff when they posted the video on the
14  Internet?
15      Gawker Media, LLC?
16      Yes.
17      Nick Denton?
18      Yes.
19      A.J. Daulerio?
20      Yes.
21      So say we all the 18th day of March 2016,
22  foreperson of the jury.
23      THE COURT: Thank you very much. Would any
24  of the jurors like the jury -- or would any of the
25  counsel like the jurors polled at this time?

**Riesdorph Reporting Group, Inc. (813) 222-8963**

16-11700-smb    Doc 872-4    Filed 04/18/17    Entered 04/18/17 16:20:49    Exhibit D
Pg 12 of 18

3838

1          MR. TURKEL: Not necessary for the plaintiff.
2          MR. SULLIVAN: No, Your Honor.
3          THE COURT: All right. Thank you very much.
4    Would counsel please approach?
5          (At the bench)
6          THE COURT: So let's discuss time frame,
7    then, for the punitive damages. How much time do
8    you anticipate for punitives?
9          MR. TURKEL: Half day.
10         MR. VOGT: Half day. And I've just talked to
11   our expert, because -- it's awkward to do before
12   anything happens. He can be here Monday
13   afternoon from New York. So we can probably begin
14   arguing Monday morning and call him Monday
15   afternoon.
16         THE COURT: So have them convene Monday at --
17   when should I bring them back? Monday at 10:00?
18         MR. TURKEL: We're trying to stipulate to the
19   financial stuff so that there is no argument over
20   net worth.
21         MR. BERRY: We won't be able to stipulate to
22   it.
23         MR. TURKEL: So why don't we do this. Why
24   don't we put a day aside for it.
25         THE COURT: Monday?

1          MR. TURKEL:  Monday.  Or if you want to give
2     one day off for us to do the lawyer stuff, do it
3     Tuesday, if that's okay with the Court.
4          THE COURT:  Well -- so a half day.  And where
5     all do you --
6          Well, based on Mr. Berry saying he doesn't
7     think there is going to be much stipulation --
8          MR. BERRY:  I just need to confer with the
9     client.
10         THE COURT:  Sure.
11         MR. TURKEL:  Why don't we do this.  I mean,
12    obviously --
13         Well, whatever it is, it's obviously a large
14    verdict, and it's going to affect things.  But I
15    think at the end of the day, Judge, why don't we
16    just agree to be here Monday and let's call it at
17    9:30.  We will deal with whatever we have to deal
18    with.  And if -- I mean, I don't know what else to
19    do, but you can't leave the jury just hanging in
20    the air.
21         THE COURT:  No, I need to tell them when to
22    come.
23         MR. TURKEL:  So I think we just come back.
24    If you want to set it midmorning so we have some
25    time for lawyer stuff, do it at 10:00.

3840

```
 1              THE COURT:  Have them come at 10:00 and have
 2     you-all come an hour before?
 3              MR. TURKEL:  An hour, hour and a half.
 4              MR. BERRY:  There was still some issues with
 5     the expert as far documents that need to be
 6     produced and that these need to get sorted.
 7              THE COURT:  Of their expert?
 8              MR. TURKEL:  But that's what I'm saying.  If
 9     you bring them in midmorning, you don't leave them
10     floating in the wind, and we have an hour and a
11     half to deal with this stuff.
12              Does that make sense?
13              THE COURT:  Have them come in then, you're
14     saying, at 10:30?
15              MR. TURKEL:  10:00 or 10:30.  And then we
16     have some lawyer time if we have to deal with
17     whatever.  I mean, we were trying to get to a
18     place where we didn't fight about net worth.  And
19     I understand Mike's position.
20              So we may have to come in and do some lawyer
21     stuff before they convene for punitives.  So I
22     just feel like we could do 11:00.  You could do it
23     at 1:00 and tell them we have lawyer stuff in
24     morning, but then we'd need probably half of
25     Tuesday.
```

**Riesdorph Reporting Group, Inc. (813) 222-8963**

3841

1         MR. SULLIVAN:  Or else you'd have them
2    sitting around.
3         THE COURT:  Right.  Have them come at 1:00?
4         MR. TURKEL:  That's fine.
5         THE COURT:  One o'clock on Monday?
6         MR. TURKEL:  That's fine.
7         THE COURT:  Okay.
8         (In open court)
9         THE COURT:  All right.  So, ladies and
10   gentlemen of the jury, I was talking to the
11   attorneys about scheduling, because at this point
12   in time, as I instructed you in the first part of
13   the instructions, now there is a second phase for
14   the punitive damage aspect.  So if you-all will
15   please return, then, Monday morning -- or Monday
16   at one o'clock, and then we'll be working in the
17   morning doing our working out the legal issues and
18   that aspect of it, so that we should be able to
19   present the case to you Monday at one o'clock.
20        All right.  So with that, we're not going to
21   discharge you yet, as a jury, so you still have
22   all the same obligations that I have been telling
23   you all along.  It's only the things that you hear
24   and see in this courtroom altogether.
25        So at this point in time, please remember the

**Riesdorph Reporting Group, Inc. (813) 222-8963**

3842

1  rules. The deputies will be escorting you out to
2  your cars. So you are not to talk to anybody
3  about the people or parties involved in this case
4  over the weekend. You are not to do any of your
5  own research or homework on your own over the
6  weekend and -- or Monday morning.
7      And we'll just go from there. So please
8  remember those rules. Don't read any of the
9  media. Don't do your own homework. And then
10 we'll back on Monday and address the punitive
11 damages aspect.
12     So thank you-all so very much for all your
13 hanging in there with us all this time, so please
14 continue that, and we'll see you Monday, then, at
15 one o'clock. All right? Thank you-all very much.
16     So, Deputy Hernandez, if you will escort them
17 to their cars, please.
18     (The jury retired from the courtroom at
19 7:00 p.m.)
20     THE COURT: Anything else for this evening?
21     MR. TURKEL: No. We said Monday at 9:00?
22     THE COURT: So if the attorneys will be back
23 Monday at 9:00, and then that way we can do our
24 issues and plan to be with the jury, then, at
25 1:00. All right?

**Riesdorph Reporting Group, Inc. (813) 222-8963**

3843

1      MR. TURKEL:  Okay.

2      THE COURT:  Thank you very much.

3      (Trial proceedings adjourned at 7:00 p.m. )

**Riesdorph Reporting Group, Inc. (813) 222-8963**

3844

1       REPORTER'S CERTIFICATE

2

3

    STATE OF FLORIDA
4   COUNTY OF HILLSBOROUGH

5

6

7           I, Aaron T. Perkins, Registered Professional
    Reporter, certify that I was authorized to and did
    stenographically report the above proceedings and
8   that the transcript is a true and complete record
    of my stenographic notes.

9

10

11          I further certify that I am not a relative,
    employee, attorney, or counsel of any of the
12  parties, nor am I a relative or employee of any of
    the parties' attorney or counsel connected with
13  the action, nor am I financially interested in the
    action.

14

15

16          Dated this 18th day of March, 2016.

17

18

19

20

21

22  _____
        Aaron T. Perkins, RPR
23

24

25

**Riesdorph Reporting Group, Inc. (813) 222-8963**