Hearing Date and Time:  TBD<br>
Objection Deadline:  May 15, 2017 at 4:00 p.m. (ET)

CAHILL GORDON & REINDEL LLP
Susan Buckley
Joel H. Levitin
Eighty Pine Street
New York, New York  10005
Telephone:  (212) 701-3000
Facsimile:  (212) 269-5420

*Special Litigation Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Gawker Media LLC, *et al.*,[1] | : | Case No. 16-11700 (SMB) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-------------------------------------------------------x

**SUMMARY COVER SHEET TO**
**FINAL APPLICATION OF CAHILL GORDON & REINDEL LLP**
**AS SPECIAL LITIGATION COUNSEL TO THE DEBTORS FOR**
**ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES**
**RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED**
**<u>FOR THE PERIOD FROM JUNE 10, 2016 THROUGH MARCH 17, 2017</u>**

In accordance with the Local Rules for the Southern District of New York, Cahill Gordon & Reindel LLP ("Cahill"), Special Litigation Counsel to the debtors and debtors in possession in these proceedings (collectively, the "Debtors"), hereby submits this summary (this "Summary") of fees and expenses sought as actual, reasonable, and necessary in the fee application to which

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022.  Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Floor, New York, NY 10022.

this Summary is attached (the "Fee Application") for the period from June 10, 2016 through March 17, 2017 (the "Fee Period").

Cahill submits the Fee Application as a final fee application in accordance with the *Order Granting Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Cahill Gordon & Reindel LLP as Special Litigation Counsel Effective Nunc Pro Tunc to the Petition Date* entered by this Court on August 11, 2016 [Docket No. 169] (the "Retention Order"), and the *Findings of Fact, Conclusions of Law, and Order Confirming Amended Joint Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary KFT* entered by this Court on December 22, 2016 [Docket No. 638] (the "Confirmation Order").

## GENERAL INFORMATION

Name of Applicant:                          Cahill Gordon & Reindel LLP

Authorized to Provide
Professional Services to:                   The Debtors

Petition Date:                              June 10, 2016

Date of Retention Order:                    August 11, 2016 *nunc pro tunc* to June 10, 2016

## SUMMARY OF FEES AND EXPENSES SOUGHT IN THE FEE APPLICATION

Period for Which Compensation and/or        June 10, 2016, through
Reimbursement is Sought:                    and including March 17, 2017

Voluntary Fee Waiver During this Period:    Approximately $41,600.00, based on Agreed
                                            Discounted Rates

Total Amount of Compensation Sought
At Agreed Discounted Rates:                 Fees: $113,720.60
                                            Expenses: $986.83

This is a(n) ____ monthly ____ interim **X** final application. No prior final fee application was filed for this Fee Period.[2]

## SUMMARY OF FEES, PROFESSIONALS, AND RATES IN THE FEE APPLICATION

---

[2] Notice of this Fee Application will be served in accordance with the Post-Confirmation Order, and any objections to the relief requested in this Application must be addressed in accordance with the Confirmation Order.

| | |
|---|---|
| Blended Rate of Attorneys: | <u>$796.92</u> |
| Blended Rate of All Timekeepers: | <u>$796.92</u> |
| Number of Timekeepers: | 4 |
| Number of Attorneys in this Application Not Included in Staffing Plan Approved by Client: | N/A |
| Difference Between Fees Budgeted and Compensation Sought for the Fee Period: | N/A |
| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Fee Period: | 2 |
| Increase in Rates: | N/A |

Summary Chart of Previous Monthly Fee Statements and Fee Applications

| | | Monthly Fee Statements | | | | |
|---|---|---|---|---|---|---|
| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Paid to Date | Expenses Paid to Date |
| August 19, 2016 | 203 | 6/10-7/31/16 | $31,557.20 | $709.26 | $25,245.76 | $709.26 |
| September 19, 2016 | 272 | 8/1/16-8/31/16 | $25,440.00 | $99.16 | $20,352.00 | $99.16 |
| October 19, 2016 | 358 | 9/1/16-9/30/16 | $7,360.00 | $32.50 | $5,888.00 | $32.50 |
| November 18, 2016 | 469 | 10/1/16-10/31/16 | $18,403.40 | $56.97 | $14,779.69 | $56.97 |
| December 14, 2016[3] | N/A | 11/1/16-11/30/16 | $21,680.00 | $0 | $0 | $0 |
| February 9, 2017 | N/A | 12/1/16-12/31/16 | $8,080.00 | $40.88 | $0 | $0 |
| March 27, 2017 | N/A | 1/1/17-2/28/17 | $1,200.00 | $48.06 | $0 | $0 |
| **TOTALS** | | | **$113,720.60** | **$986.83** | **$66,265.45** | **$897.89** |
| | | | | | | |
| | | Fee Applications | | | | |
| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved to Date | Expenses Approved to Date |
| November 7, 2016 | 416 | 6/10/16-9/30/16 | $64,357.20 | $840.92 | $32,178.60 | $840.92 |
| | | | | | | |

---

[3] Cahill provided this and the later invoices to the Debtors, but did not file monthly fee statements with the Court.

Summary of Professionals

| Attorney | Position | Year First Admitted to Bar | Department | Hourly Billing Rate[4] | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Susan Buckley | Partner | 1978 | Media Litigation | $800 | 105.10 | $84,080.00 |
| Kevin J. Burke | Partner | 1981 | Litigation | $800 | 1.60 | $1,280.00 |
| Joel H. Levitin | Partner | 1987 | Bankruptcy & Restructuring | $800 | 34.70 | $27,760.00 |
| Julia K. Wood | Associate | 2013 | Litigation | $462 | 1.30 | $600.60 |
|  |  |  |  |  |  |  |
| **TOTAL** |  |  |  |  |  | $113,720.60 |

| Professionals | Blended Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|
| Partners and Counsel | $800 | 141.40 | $113,120.00 |
| Associates and Contract Attorneys | $462 | 1.30 | $600.60 |
| Paraprofessionals/Non-Legal Staff | N/A | 0 | 0 |
| **Blended Attorney Rate** | $796.92 |  |  |
| **Blended Rate for all Timekeepers** | $796.92 |  |  |
| **Total Fees Incurred** |  |  | $113,720.60 |

Summary by Project Category[5]

| Project Category | Total Hours Billed | Amount |
|---|---|---|
| Retention Issues | 33.50 | $26,800.00 |
| Mail Media Litigation | 68.10 | $54,040.60 |
| Fee Applications | 41.10 | $32,880.00 |
| **TOTAL** | 142.70 | $113,720.60 |

---

[4] As disclosed in the Cahill Retention Application, Cahill is charging special discounted hourly rates, well below Cahill's usual and customary rates, that were agreed upon for this matter. The discount amounts to approximately $41,600.00.

[5] These amounts are also broken out by monthly billing period on Exhibit E of the Fee Application.

Dated:  April 20, 2017
        New York, New York

                                      /s/ Joel H. Levitin_____
                                      Susan Buckley
                                      Joel H. Levitin
                                      CAHILL GORDON & REINDEL LLP
                                      Eighty Pine Street
                                      New York, New York 10005
                                      Telephone: (212) 701-3000
                                      Facsimile: (212) 269-5420
                                      jlevitin@cahill.com
                                      sgordon@cahill.com

                                      *Special Litigation Counsel to the*
                                      *Debtors and Debtors in Possession*

CAHILL GORDON & REINDEL LLP
Susan Buckley
Joel H. Levitin
Eighty Pine Street
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420

*Special Litigation Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Gawker Media LLC, *et al.*,[1] | : | Case No. 16-11700 (SMB) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-------------------------------------------------------x

**FINAL APPLICATION OF CAHILL GORDON & REINDEL LLP**
**AS SPECIAL LITIGATION COUNSEL TO THE DEBTORS FOR**
**ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES**
**RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED**
**FOR THE PERIOD FROM JUNE 10, 2016 THROUGH MARCH 17, 2017**

The law firm of Cahill Gordon & Reindel LLP ("Cahill"), Special Litigation Counsel to

the debtors and debtors in possession in these proceedings (the "Debtors") with respect to the

Mail Media Litigation (as defined below and in the Debtors' Application for Entry of an Order

Authorizing the Retention and Employment of Cahill dated July 25, 2016 (the "Cahill Retention

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492);
Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media
LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D.
Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker
Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd
Floor, New York, NY 10022.

Application") [Docket No. 131][2]), hereby files this final application (this "Fee Application") for the period of June 10, 2016 through and including March 17, 2017 (the "Fee Period") for (a) compensation in the amount of $113,720.60[3] for the actual and necessary legal services rendered by Cahill to the Debtors during the Fee Period, and (b) reimbursement for the actual and necessary expenses incurred by Cahill during the Fee Period in the amount of $986.83.   In support of this Fee Application, Cahill submits the declaration of Susan Buckley, Senior Counsel at Cahill (the "Buckley Declaration"), which is attached hereto as **Exhibit A** and incorporated herein by reference.   In further support of this Fee Application, Cahill respectfully states as follows:

## Preliminary Statement

1.    Throughout the Fee Period, Cahill has represented the Debtors with respect to the Mail Media Litigation.

2.    This representation has enabled the Debtors to finally resolve the Mail Media Litigation on very favorable terms.  Particularly given its involvement in this matter going back since September of 2015, Cahill submits that the compensation and expense reimbursement sought herein for the necessary and beneficial professional services it provided to the Debtors during the Fee Period are reasonable and appropriate, commensurate with the scale, nature, and complexity of the issues it was involved with during these chapter 11 cases and, therefore, should be allowed.

---

[2] The Cahill Retention Application was granted by Order dated August 11, 2016 [Docket No. 169].

[3] As disclosed in the Cahill Retention Application, Cahill is charging special discounted hourly rates, well below Cahill's usual and customary rates, that were agreed upon for this matter.  The discount amounts to approximately $41,600.00 for the Fee Period.

### Jurisdiction and Basis for Relief

3.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1(a) of the Local Rules for the Southern District of New York (the "Local Rules"), the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases* (the "US Trustee Guidelines"), the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, and the *Findings of Fact, Conclusions of Law, and Order Confirming Amended Joint Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary KFT* entered by this Court on December 22, 2016 [Docket No. 638] (the "Confirmation Order").

### Background

**A.      The Bankruptcy Filing and General Case Background.**

6.      Gawker Media LLC, together with its Debtor and non-Debtor affiliates, is an online media company and blog network.  The Debtors' current operations are principally located in New York City, New York.

7.      On June 10, 2016 (the "'Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. During the Fee Period, the Debtors operated their businesses and managed their properties as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code. On June 16, 2016, the Court entered an order authorizing the joint administration and procedural consolidation of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 41]. No request for the appointment of a trustee or examiner was made in these chapter 11 cases.

8.      On June 24, 2016, the Office of the United States Trustee for the Southern District of New York (the 'U.S. Trustee") formed the official committee of unsecured creditors (the "Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code [Docket No. 62].

9.      On July 13, 2016, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all retained professionals in these cases.

10.     On September 9, 2016, pursuant to this Court's *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (II) Approving and Authorizing the Debtors' Entry into the Asset Purchase Agreement and (III) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* [Docket No. 214], the Debtors sold substantially all of their assets to Unimoda, LLC ("Unimoda").

11.     On September 30, 2016, the Debtors filed the *Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* (as was subsequently modified and amended on November 2, 2016 and December 11, 2016, the "Plan").

12.     On December 22, 2016, the Court confirmed the Plan pursuant to the *Findings of Fact, Conclusions of Law, and Order Confirming the Amended Joint Chapter 11 Plan of*

Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.
[Docket No. 638]. The Effective Date (as defined in the Plan) occurred on March 17, 2017.

### B.    The Debtors' Retention of Cahill.

13.    On July 25, 2016, the Debtors filed the Cahill Retention Application.

14.    On August 11, 2016, the Court entered the *Order Granting Debtors' Application
for Entry of an Order Authorizing the Retention and Employment of Cahill Gordon & Reindel
LLP as Special Litigation Counsel Effective Nunc Pro Tunc to the Petition Date* [Docket No. 169]
(the "Retention Order"), attached hereto as **Exhibit B** and incorporated by reference.    The
Retention Order authorizes the Debtors to compensate and reimburse Cahill in accordance with
the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.    The Retention Order also
authorizes the Debtors to compensate Cahill at discounted hourly rates agreed to by Cahill for
this matter and to reimburse Cahill for Cahill's actual and necessary out-of-pocket expenses
incurred, subject to application to the Court. The particular terms of Cahill's engagement are
detailed in the Cahill Retention Application.

15.    The Retention Order authorized Cahill to continue to serve as counsel on all
matters in connection with the case captioned *Mail Media Inc. d/b/a Mail Online v. Gawker
Media LLC and James King*, No. 1591342015, then pending in the Supreme Court of the State of
New York, County of New York, and any other court of competent jurisdiction that may have
heard matters in connection with such case (the "Mail Media Litigation"), representing both
defendants, Gawker Media LLC ("Gawker") and James King ("Mr. King"), the freelance
reporter who authored the news report at issue in the Mail Media Litigation.

### C.    No Adverse Interests of Cahill.

16.    To the best of Cahill's knowledge and as disclosed in the *Declaration of Susan
Buckley* submitted in support of and as Exhibit B to the Cahill Retention Application (the

"Declaration"), Cahill does not represent or hold any interest adverse to the Debtors or their estates with respect to the matters for which Cahill has been retained and satisfies the requirements for employment as special counsel pursuant to section 327(e) of the Bankruptcy Code.

17.    Cahill performed the services for which it is seeking compensation on behalf of the Debtors and their estates, and not on behalf of any committee, creditor, or other entity, other than Mr. King.

18.    Pursuant to Bankruptcy Rule 2016(b), Cahill has not shared, nor has Cahill agreed to share, (a) any compensation it has received or may receive with another party or person other than with the partners, counsel, and associates of Cahill, or (b) any compensation another person or party has received or may receive.

**D.    Prior Fee Statements, Interim Fee Application, and Invoices.**

19.    Pursuant to the Interim Compensation Order, Cahill filed and had sent to the Debtors and the appropriate notice parties:  (i) a monthly fee statement, dated August 19, 2016, for compensation and for reimbursement of expenses for services rendered during the period from June 10, 2016 through July 31, 2016, in the amounts of $31,557.20 for fees and $709.26 for expenses [Docket No. 203] (the "First Monthly Fee Statement"); (ii) a monthly fee statement, dated September 19, 2016, for compensation and for reimbursement of expenses for services rendered during the period from August 1, 2016, through August 31, 2016, in the amounts of $25,440.00 for fees and $99.16 for expenses [Docket No. 272] (the "August Monthly Fee Statement"); and (iii) a monthly fee statement, dated October 19, 2016, for compensation and for reimbursement of expenses for services rendered during the period from September 1, 2016, through September 30, 2016, in the amounts of $7,360.00 for fees and $32.50 for expenses

[Docket No. 358] (the "September Monthly Fee Statement"); and (iv) a monthly fee statement, dated November 18, 2016, for compensation and for reimbursement of expenses rendered during the period from October 1, 2016 through October 31, 2016, in the amounts of $18,403.40 for fees and $56.97 for expenses [Docket No. 469] (the "October Monthly Fee Statement" and together with the First, August, and September Monthly Fee Statements, the "Monthly Fee Statements").

20.     Pursuant to the Interim Compensation Order, if no objections were received by the 35th day following the last day of the month for which compensation is sought in a given Monthly Fee Statement, the Debtors were required to promptly pay 80% of the fees and 100% of the expenses detailed in such Monthly Fee Statement. Cahill received payments for 80% of the fees and 100% of the expenses detailed in the First Monthly Fee Statement,[4] the August Monthly Fee Statement, the September Monthly Fee Statement and the October Monthly Fee Statement.

21.     On November 7, 2016, Cahill filed the *First Interim Application of Cahill Gordon & Reindel LLP as Special Litigation Counsel to the Debtors for Allowance of Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred for the Period from June 10, 2016 through September 30, 2016* [Docket No. 416] (the "Interim Fee Application").

22.     On December 15, 2016, the Court held a hearing (the "Interim Fee Hearing") on the Interim Fee Application and allowed 50 percent of the fee amounts requested, subject to review at the end of the case, along with a request that Cahill provide further detail on the work it

---

[4] Cahill also received payment of the full amount of the First Monthly Fee Statement from Univision and returned this payment.

performed, separated into categories, in future fee applications. The Court entered an Order with respect to the Interim Fee Application on December 23, 2016 [Docket No. 648].

23.    Cahill sent to the Debtors, but did not file or serve:[5]  (i) an invoice, dated December 14, 2016, for compensation and for reimbursement of expenses for services rendered during the period from November 1, 2016 through November 30, 2016, in the amounts of $21,680.00 for fees and $0 for expenses (the "November Invoice"); (ii) an invoice, dated February 9, 2017, for compensation and for reimbursement of expenses for services rendered during the period from December 1, 2016 through December 31, 2016, in the amounts of $8,080.00 for fees and $40.88 for expenses (the "December Invoice"); and (iii) an invoice, dated March 27, 2017, for compensation and for reimbursement of expenses for services rendered during the period from January 1, 2017 through February 28, 2017, in the amounts of $1,200.00 for fees and $48.06 for expenses (the "January/February Invoice").[6] The November Invoice, the December Invoice, and the January/February Invoice are collectively referred to herein as the "Invoices".

24.    Except for the payments referred to above, Cahill has not received any payment or promises of payment from any other source for services rendered in connection with the Debtors' chapter 11 cases.

---

[5] In light of the Court's comments at the Interim Fee Hearing, and to spare expense to the Debtors, Cahill elected not to seek any further monthly or interim compensation payments, but rather to wait until the cases were concluded and to seek approval only by this Fee Application.

[6] The Debtors inadvertently made payment to Cahill on its December 14, 2016 invoice, and Cahill has returned such payment.

## Fees and Expenses Incurred During the Fee Period

A.    **Customary Billing Disclosures.**

25.    Cahill's hourly rates are set at a level designed to compensate Cahill fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. The hourly rates and corresponding rate structure utilized by Cahill in these chapter 11 cases are equivalent to (or below, based on the discount) the hourly rates and corresponding rate structure used by Cahill for other similar litigation matters, whether in court or otherwise, regardless of whether a fee application is required.[7]

B.    **Fees Incurred During the Fee Period.**

26.    In the ordinary course of Cahill's practice, Cahill maintains computerized records of the time expended to render the professional services required by the Debtors and their estates. For the convenience of the Court and all parties-in-interest, attached hereto as **Exhibit C** is a summary of fees incurred and hours expended during the Fee Period, setting forth the following information:

(a)    the name of each attorney and paraprofessional for whose work on these chapter 11 cases compensation is sought;

(b)    each attorney's year of bar admission and their respective practice groups;

(c)    the aggregate time expended and fees billed by each attorney and each paraprofessional during the Fee Period;

(d)    the hourly billing rate for each attorney and each paraprofessional at Cahill's current discounted billing rates applicable to this matter; and

---

[7] In light of Cahill's limited role in the bankruptcy cases, the substantial rate discount provided in this matter, and the costs associated with having to produce relevant information, Cahill respectfully requests a waiver of any requirement to provide further information about customary and comparable compensation, as referenced in the US Trustee Guidelines.

(e)    a calculation of total compensation requested using the rates disclosed in the Retention Application.

27.    The following brief summary of services rendered during the Fee Period is not intended to be a detailed description of the work performed – the time records are set forth in the Monthly Fee Statements and the Invoices, which are attached hereto as **Exhibit D** and incorporated by reference herein.

28.    As discussed above, during the Fee Period, Cahill provided professional services to the Debtors in connection with the Mail Media Litigation, particularly trying to resolve it on the most favorable terms possible.  As summarized on **Exhibit E**, which is attached hereto and incorporated by reference herein, Cahill's services can be broken down into three categories: (A) professional retention; (B) litigation-related matters; and (C) billing and fee applications. The professional services provided by Cahill on behalf of the Debtors during the Fee Period were reasonable, necessary, and appropriate to the administration of these chapter 11 cases and related matters.

**(A)    Professional Retention**
Fees: $26,800.00; Total Hours: 33.50

29.    Cahill was provided with an extensive list of parties-in-interest to determine whether there were any conflict issues.  Given its specific and limited role in these bankruptcy cases, Cahill endeavored to minimize the costs involved in this process, including working with the Debtors' primary bankruptcy counsel and the office of the United States Trustee.  In addition, Cahill prepared and revised its retention application and proposed retention order.

**(B)    Litigation-Related Matters**
Fees: $54,040.60; Total Hours: 68.10

30.    The Mail Media Litigation was instituted in September 2015 with the filing of a complaint before the Supreme Court of the State of New York, County of New York.  The

- 10 -

dispute related to an article written by Mr. King and published by Gawker that was extremely critical of Mail Media and its journalistic practices. Cahill, which has a prominent media litigation practice and enjoys a national and international reputation for its expertise in this area, represented Gawker and Mr. King from the inception of the case.

31.    The case was hotly contested. Over the course of the fall and winter of 2015 and 2016, factual and legal research was conducted, extensive documentary discovery was undertaken, written discovery requests were served and answered, and the parties engaged in motion practice. Cahill devoted more than 675 hours to the litigation before Gawker filed its petition.

32.    In the spring of 2016, shortly before depositions in the litigation were to have commenced, plaintiff's counsel and Cahill lawyers began to explore the possibility of settling the matter, a task made more difficult because all parties to the litigation viewed it as raising serious matters of principle. By the timer Gawker filed its petition, the parties had reached a very rough agreement in principle but no details or final terms had been achieved.

33.    Gawker requested that Cahill agree to continue to serve as special litigation counsel during the bankruptcy cases, subject to the approval of this Court, because Gawker's management felt quite strongly that the progress that had been made might be impeded if Cahill lawyers did not continue to represent the Company going forward, even though Gawker understood that there would be substantial administrative expenses incurred in retaining an additional law firm.

34.    In the meantime, Mail Media filed a proof of claim against Gawker [No. 42] for $1 million relating exclusively to the Mail Media Litigation.

35.     During the course of these bankruptcy cases, Cahill lawyers engaged in lengthy and detailed negotiations with counsel for Mail Media, participated in numerous discussions with the client about potential settlement terms, drafted and revised documents necessary to achieve a settlement to reflect terms newly agreed by the parties, completed a settlement agreement, conformed the proposed settlement documents to comply with the requirements of the Bankruptcy Code, engaged in further negotiations with opposing counsel on specific terms of the agreement, assisted the Debtors' primary bankruptcy counsel in drafting the settlement approval motion and ultimately obtaining the approval of the settlement by this Court [Docket No. 659], and assisted the Debtors in consummating the settlement.

36.     As a result of such efforts and subsequent efforts, Cahill believes that the Debtors achieved a very favorable settlement of the Mail Media Litigation, requiring no monetary payment of any kind by Gawker.

**(C)    Billing and Fee Applications**
Fees: $32,880.00; Total Hours: 41.10

37.     Among other things, Cahill prepared four Monthly Fee Statements and the Interim Fee Application. As noted above, following the Interim Fee Hearing, during the Fee Period, Cahill did not submit any additional Monthly Fee Statements or otherwise incur any expenses in connection with monthly billing or fee applications, including not billing for the preparation of any of the Invoices.

**C.    Actual and Necessary Expenses Incurred During the Fee Period.**

38.     In the ordinary course of Cahill's practice, Cahill maintains a record of expenses incurred in the rendition of the professional services required by the Debtors and their estates and for which reimbursement is sought.

- 12 -

39.     As summarized on **Exhibit F**, which is attached hereto and incorporated by reference herein, and as provided separately in each of the Monthly Statements and the Invoices attached hereto as **Exhibit D**, Cahill has incurred a total of $986.83 in expenses on behalf of the Debtors during the Fee Period.  These charges are intended to reimburse Cahill's direct operating costs, which are not incorporated into Cahill's hourly billing rates.  Cahill charges external copying and computer research at the provider's cost without markup.  Cahill does not charge its clients for incoming facsimile transmissions. Only clients that actually use certain services are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.

### Voluntary Discount

40.     Without the agreed discount, Cahill would have charged an additional amount of approximately $41,600.00 during the Fee Period.

### Cahill's Requested Compensation and Reimbursement Should be Allowed

41.     Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement.

42.     In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—

(a)     the time spent on such services;

(b)     the rates charged for such services;

(c)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(d)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(e)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

43.    Cahill respectfully submits that the services for which it seeks compensation in this Fee Application were, at the time rendered, necessary for and beneficial to the Debtors. Cahill further believes that it performed the services for the Debtors economically, effectively, and efficiently, and the results obtained benefited all parties involved. Cahill further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors and all parties in interest.

44.    During the Fee Period, Cahill's hourly billing rates for attorneys are equivalent to and indeed well below the hourly rates and corresponding rate structure used by Cahill for similar matters, whether in court or otherwise, regardless of whether a fee application is required.

45.    In sum, Cahill respectfully submits that the professional services provided by Cahill on behalf of the Debtors during these chapter 11 cases were necessary and appropriate given the circumstances of these chapter 11 cases, the time expended by Cahill employees, the nature and extent of Cahill's services provided, the value of Cahill's services, and the cost of comparable services outside of bankruptcy, all of which are relevant factors set forth in Section 330 of the Bankruptcy Code. Accordingly, Cahill respectfully submits that the compensation sought herein is warranted and should be approved.

## Reservation of Rights and Notice

46.    It is possible that some professional time expended or expenses incurred during the Fee Period are not reflected in this Fee Application.  Cahill reserves the right to amend this Fee Application to include any such amounts.  The Debtors will provide notice of this Fee Application to the appropriate parties, including:  (i) Plan Administrator for Gawker Media LLC, c/o Opportune LLP,10 East 53rd Street, 33rd Floor, New York, New York 10022, Attn: William D. Holden (profinvoices@gawker.com); (ii) the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Greg Zipes and Susan Arbeit; and (iii) counsel for the Official Committee of Unsecured Creditors, Simpson Thacher & Bartlett, 425 Lexington Ave., New York, New York 10017, Attn: Sandy Qusba (squsba@stblaw.com) and William T. Russell (wrussell@stblaw.com) (each, a "Notice Party," and collectively, the "Notice Parties").  Any party that wishes to object to this Fee Application, must file its objection with the Court, with a copy to Chambers and serve it on the undersigned and the Notice Parties so that it is actually received on or before May 15, 2017 at 4:00 p.m. (prevailing Eastern Time).

## No Prior Request

47.    Other than as described above, no prior application for the relief requested herein has been made to this or any court.

WHEREFORE, Cahill respectfully requests that the Court enter an order:

(a) finally approving compensation for professional services provided during the Fee Period in the amount of $113,720.60;

(b) finally approving the reimbursement of actual, reasonable and necessary expenses incurred in the Fee Period in the amount of $986.83;

(c) finally approving the payment of $47,658.03, representing the unpaid portion of Cahill's incurred fees and expenses during the Fee Period;

(d) authorizing and directing the Debtors to pay the fees and expenses awarded; and

(e) granting such other and further relief as is just and proper under the circumstances.

Dated:   April 20, 2017
     New York, New York

/s/ Joel H. Levitin
Susan Buckley
Joel H. Levitin
CAHILL GORDON & REINDEL LLP
Eighty Pine Street
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420
jlevitin@cahill.com
sgordon@cahill.com

*Special Litigation Counsel to the
Debtors and Debtors in Possession*

- 16 -