**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
|  |  : |  |
| In re | : | Chapter 11 |
|  | : |  |
| Gawker Media LLC, *et al.*,[1] | : | Case No. 16-11700 (SMB) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

-----------------------------------------------------------------x

## <u>AFFIDAVIT OF SERVICE</u>

I, Michael Callo, depose and say that I am employed by Prime Clerk LLC ("***Prime Clerk***"), the claims and noticing agent for the Debtors in the above-captioned chapter 11 cases.

On April 18, 2017, at my direction and under my supervision, employees of Prime Clerk caused the following documents to be served via Email on the Master Email Service List attached hereto as **<u>Exhibit A</u>**:

- Post-Confirmation Order in Connection with Local Rule 3021-1 [Docket No. 865] (the "***Post-Confirmation Order***")

- Notice of Presentment of Proposed Order Granting Debtors' Objection to the Claims of Aladar Baldauf (Claim Nos. 326 and 332) [Docket No. 868] (the "***Notice of Presentment***")

On April 18, 2017, at my direction and under my supervision, employees of Prime Clerk caused the following documents, along with the Post-Confirmation Order and Notice of Presentment, to be served via First Class Mail on the Master First Class Mail Service List attached hereto as **<u>Exhibit B</u>**:

- Certified English Translation of the Budapest Court Judgment Dated September 30, 2015, a copy of which is attached hereto as **<u>Exhibit C.</u>** (the "***September Translation***")

- Certified English Translation of the Judgment of the Budapest Court of Appeals Dated April 26, 2016, a copy of which is attached hereto as **<u>Exhibit D.</u>** (the "***April Translation***")

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

- Certified English Translation of a K&H Bank Document Reflecting Payment on the Budapest Court Judgement, a copy of which is attached hereto as **Exhibit E.** (the "***K&H Bank Document***")

On April 18, 2017, at my direction and under my supervision, employees of Prime Clerk caused 1) the Notice of Presentment, September Translation, April Translation and K&H Bank Document to be served via First Class Mail and Overnight Mail on A. Baldauf, who address has been redacted for privacy, and 2) the Notice of Presentment to be served via Email on A. Baldauf, whose address has been redacted for privacy.

Dated: April 21, 2017

Michael Callo

State of New York
County of New York

Subscribed and sworn to (or affirmed) before me on April 21, 2017, by Michael Callo, proved to me based on satisfactory evidence to be the person who appeared before me.

Signature:

MARK M BROWN
NOTARY PUBLIC-STATE OF NEW YORK
No. 02BR6305738
Qualified in New York County
My Commission Expires June 09, 2018

SRF 15438

**<u>Exhibit A</u>**

Exhibit A

Master Email Service List

Served via Email

| DESCRIPTION | NAME | ADDRESS | EMAIL |
|---|---|---|---|
| Counsel to Fastly, Inc. | Bialson, Bergen & Schwab, PC | Attn:  Lawrence M. Schwab, Esq. & Thomas M. Gaa, Esq.<br>633 Menlo Avenue<br>Suite 100<br>Menlo Park CA 94025 | Tgaa@bbslaw.com<br>tom@bbslaw.com |
| Counsel to Terry Gene Bollea | Binder & Schwartz, LLP | Attn:  Eric B. Fisher, Esq. & Jessica L. Jimenez, Esq.<br>366 Madison Avenue<br>6th Floor<br>New York NY 10017 | efisher@binderschwartz.com<br>jjimenez@binderschwartz.com |
| Counsel to Superdry Wholesale, LLC and Superdry Retail, LLC | Brown Rudnick, LLP | Attn:  Andrew P. Strehle, Esq., & Jill C. Wexler, Esq.<br>One Financial Center<br>Boston MA 02111 | astrehle@brownrudnick.com<br>jwexler@brownrudnick.com |
| Counsel to Harder Mirell & Abrams LLP and Charles J.Harder, Esq | Chadbourne & Parke LLP | Attn: Samuel S. Kohn & James A. Copeland<br>1301 Avenue of the Americas<br>New York NY 10019-6022 | skohn@chadbourne.com<br>jcopeland@chadbourne.com |
| Counsel to Mitchell Williams | Chiesa Shahinian & Giantomasi, PC | Attn:  Robert E. Nies, Esq. & Michael R. Caruso, Esq.<br>One Boland Drive<br>West Orange NJ 07052 | rnies@csglaw.com<br>mcaruso@csglaw.com |
| Counsel to Mail Media | Clare Locke, LLP | Attn:  Joseph R. Oliveri<br>902 Prince Street<br>Alexandria VA 22314 | joe@clarelocke.com |
| Counsel to Terry G. Bollea | Cohen & Gresser, LLP | Attn:  Daniel H. Tabak, Esq. & Mark Spatz, Esq.<br>800 Third Avenue<br>New York NY 10022 | dtabak@cohengresser.com<br>mspatz@cohengresser.com |
| Counsel to unnamed claimants | Emery Celli Brinckerhoff & Abady, LLP | Attn:  Andrew G. Celli, Jr., Esq.<br>600 Fifth Avenue<br>10th Floor<br>New York NY 10020 | acelli@ecbalaw.com |
| Counsel to Terry Gene Bollea (Top 50 Creditor) | Harder Mirell & Abrams | Attn:  Charles J. Harder, Esq.<br>132 S Rodeo Dr.<br>Ste 301<br>Beverley Hills CA 90212 | charder@hmafirm.com |
| Counsel to 114 Fifth Avenue Owner LLC | Haynes and Boone, LLP | Attn:  Trevor Hoffmann, Esq.<br>30 Rockefeller Plaza<br>26th Floor<br>New York NY 10112 | trevor.hoffmann@haynesboone.com |
| Investment Banker to the Debtors | Houlihan Lokey, Inc. | Attn:  Reid Snellenbarger<br>111 South Wacker Dr.<br>37th Floor<br>Chicago IL 60606 | RSnellenbarger@HL.com |
| IRS Insolvency Section | Internal Revenue Service | Attn:  Centralized Insolvency Operation<br>2970 Market St.<br>Philadelphia PA 19104-5016 | Mimi.M.Wong@irscounsel.treas.gov |
| IRS Insolvency Section | Internal Revenue Service | Attn:  Centralized Insolvency Operation<br>P.O. Box 7346<br>Philadelphia PA 19101-7346 | Mimi.M.Wong@irscounsel.treas.gov |
| Counsel to US VC Partners, LP | Latham & Watkins, LLP | Attn:  David S. Heller, Esq.<br>330 North Wabash Avenue<br>Suite 2800<br>Chicago IL 60611 | david.heller@lw.com |

Exhibit A
Master Email Service List
Served via Email

| DESCRIPTION | NAME | ADDRESS | EMAIL |
|---|---|---|---|
| Counsel to US VC Partners, LP | Latham & Watkins, LLP | Attn: Keith A. Simon, Esq.<br>885 Third Avenue<br>New York NY 10022 | keith.simon@lw.com |
| Counsel to Univision Communications, Inc. | Latham & Watkins, LLP | Attn: Marc A. Zelina, Esq.<br>885 Third Avenue<br>New York NY 10022-4834 | Marc.Zelina@lw.com |
| Counsel to Starcom Worldwide, Inc. | Locke Lord, LLP | Attn: Casey B. Howard<br>Brookfield Place, 200 Vesey Street<br>20th Floor<br>New York NY 10281 | choward@lockelord.com |
| Counsel to Starcom Worldwide, Inc. | Locke Lord, LLP | Attn: Jonathan W. Young<br>111 Huntington Avenue<br>Boston MA 02199 | jonathan.young@lockelord.com |
| Counsel to Starcom Worldwide, Inc. | Locke Lord, LLP | Attn: Michael B. Kind<br>111 S. Wacker Drive<br>Chicago IL 60606-4410 | michael.kind@lockelord.com |
| Missouri Department of Revenue, Bankruptcy Unit | Missouri Department of Revenue, Bankruptcy Unit | Attn: Steven A. Ginther<br>PO Box 475<br>Jefferson City MO 65105-0475 | sdnyecf@dor.mo.gov |
| Counsel to Morrison Cohen LLP (Top 50 Creditor) | Morrison Cohen, LLP | Attn: Joseph T. Moldovan, Esq. & Robert K. Dakis, Esq.<br>909 Third Avenue<br>New York NY 10022-4784 | bankruptcy@morrisoncohen.com<br>rdakis@morrisoncohen.com |
| Counsel to 204-210 Elizabeth Street, LLC | Pollack & Sharan, LLP | Attn: Adam Paul Pollack, Esq.<br>15 Maiden Lane<br>Suite 1400<br>New York NY 10038 | adam@pollacksharan.com |
| Counsel to Ian Fette | Pryor & Mandelup, LLP | Attn: A. Scott Mandelup, Esq.<br>J. Logan Rappaport, Esq.<br>675 Old Country Road<br>Westbury NY 11590 | asm@pryormandelup.com<br>lr@pryormandelup.com |
| Counsel for St. Paul Fire & Marine Insurance Co. ("Travelers") | Putney, Twombly, Hall & Hirson, LLP | Attn: Thomas A. Martin, Esq.<br>Barbara M. Maisto, Esq.<br>521 Fifth Avenue<br>New York NY 10175 | tmartin@putneylaw.com<br>bmaisto@putneylaw.com |
| Counsel to Charles C. Johnson and Got News, LLC | Randazza Legal Group, PLLC | Attn: Jay M. Wolman, Esq.<br>100 Pearl Street<br>14th Floor<br>Hartford CT 06103 | ecf@randazza.com |
| Counsel to Silicon Valley Bank | Riemer & Braunstein, LLP | Attn: Alexander Rheaume, Esq.<br>3 Center Plaza<br>Boston MA 02108 | arheaume@riemerlaw.com |
| Counsel to Silicon Valley Bank | Riemer & Braunstein, LLP | Attn: Steven E. Fox, Esq.<br>Times Square Tower<br>Seven Times Square, Suite 2506<br>New York NY 10036 | sfox@riemerlaw.com |
| Counsel to unnamed claimants | Saul Ewing, LLP | Attn: Sharon L. Levine, Esq. & Dipesh Patel, Esq.<br>1037 Raymond Blvd.<br>Suite 1520<br>Newark NJ 07102 | slevine@saul.com<br>dpatel@saul.com |

Exhibit A
Master Email Service List
Served via Email

| DESCRIPTION | NAME | ADDRESS | EMAIL |
|---|---|---|---|
| Counsel to Cerberus Business Finance, LLC (DIP Lender) | Schulte Roth & Zabel, LLP | Attn: Frederic Ragucci, Esq. & Adam Harris, Esq.<br>919 Third Avenue<br>New York NY 10022 | adam.harris@srz.com<br>frederic.ragucci@srz.com |
| Securities and Exchange Commission - Headquarters | Securities & Exchange Commission | Attn: Secretary of the Treasury<br>100 F St., NE<br>Washington DC 20549 | secbankruptcy@sec.gov<br>NYROBankruptcy@sec.gov<br>SECBankruptcy-OGC-ADO@SEC.GOV |
| Securities and Exchange Commission - Regional Office | Securities & Exchange Commission – NY Office | Attn: Bankruptcy Dept.<br>Brookfield Place<br>200 Vesey St., Ste. 400<br>New York NY 10281-1022 | bankruptcynoticeschr@sec.gov |
| Counsel to UnitedHealthcare Insurance Company of New York and Unimerica Life Insurance Company of New York | Shipman & Goodwin, LLP | Attn: Eric S. Goldstein, Esq.<br>One Constitution Plaza<br>Hartford CT 06103-1919 | egoldstein@goodwin.com<br>bankruptcy@goodwin.com<br>bankruptcyparalegal@goodwin.com |
| Prepetiton Lender/First Lien Lender | Silicon Valley Bank | Attn: Jocelyn Hartmann<br>275 Grove Street<br>Suite 2-200<br>Newton MA 02466 | jhartmann@svb.com |
| Counsel to Peter Thiel | Skadden, Arps, Slate, Meagher & Flom, LLP | Attn: Anthony W. Clark, Robert A. Weber<br>One Rodney Square<br>920 N. King Street<br>Wilmington DE 19801 | Robert.Weber@skadden.com<br>Anthony.Clark@skadden.com |
| Counsel to Thiel Capital, LLC | Skadden, Arps, Slate, Meagher & Flom, LLP | Attn: Anthony W. Clark, Robert A. Weber<br>One Rodney Square<br>920 N. King Street<br>Wilmington DE 19801 | Robert.Weber@skadden.com<br>Anthony.Clark@skadden.com |
| Counsel to Peter Thiel | Skadden, Arps, Slate, Meagher & Flom, LLP | Attn: Shana A. Elberg<br>Four Times Square<br>New York NY 10036 | Shana.Elberg@skadden.com |
| Counsel to Thiel Capital, LLC | Skadden, Arps, Slate, Meagher & Flom, LLP | Attn: Shana A. Elberg<br>Four Times Square<br>New York NY 10036 | Shana.Elberg@skadden.com |
| Counsel to the New York State Department of Taxation & Finance | Special Bankruptcy Counsel | Attn: Enid Nagler Stuart<br>120 Broadway<br>24th Floor<br>New York NY 10271 | Enid.Stuart@ag.ny.gov |
| Counsel to ZDGM LLC (Stalking Horse Bidder) | Sullivan & Cromwell, LLP | Attn: Michael H. Torkin, Esq., Brian D. Glueckstein, Esq., & Alexa J. Kranzley, Esq.<br>125 Broad Street<br>New York NY 10004 | torkinm@sullcrom.com<br>gluecksteinb@sullcrom.com<br>kranzleya@sullcrom.com |
| United States Trustee Southern District of New York | United States Trustee William K. Harrington | Attn: Greg M. Zipes, Esq. & Susan Arbeit, Esq.<br>US Federal Office Building<br>201 Varick St., Room 1006<br>New York NY 10014 | susan.arbeit@usdoj.gov<br>greg.zipes@usdoj.gov |
| United States Attorney's Office for the Southern District of New York | US Attorney for Southern District of New York | Attn: Bankruptcy Division<br>86 Chambers St.<br>3rd Fl<br>New York NY 10007 | David.Jones6@usdoj.gov<br>Jeffrey.Oestericher@usdoj.gov<br>Joseph.Cordaro@usdoj.gov<br>Carina.Schoenberger@usdoj.gov |

Exhibit A
Master Email Service List
Served via Email

| DESCRIPTION | NAME | ADDRESS | EMAIL |
|---|---|---|---|
| Postpetiton Lender/Second Lien Lender | US VC Partners, LP | Attn: Mr. A. Jung<br>90 Third Avenue<br>19th Floor<br>New York NY 10022 | ajung@columbusnova.com |
| Writers Guild of America East, Inc., Union | Writers Guild of America East, Inc. | Attn: Ann Burdick, Esq.<br>250 Hudson Street<br>Ste 700<br>New York NY 10013 | aburdick@wgaeast.org |

## Exhibit B

Exhibit A

Master First Class Mail Service List

Served via First Class Mail

| DESCRIPTION | NAME | ADDRESS |
|---|---|---|
| United States Bankruptcy Court for the Southern District of New York | United States Bankruptcy Court for the Southern District of New York | Honorable Stuart M. Bernstein<br>One Bowling Green<br>Room 723<br>New York NY 10004 |
| United States Trustee Southern District of New York | United States Trustee William K. Harrington | Attn:  Greg M. Zipes, Esq. & Susan Arbeit, Esq.<br>US Federal Office Building<br>201 Varick St., Room 1006<br>New York NY 10014 |

**Exhibit C**



City of New York, State of New York, County of New York

I, Wendy Poon, hereby certify that the document "Judgment of the Budapest Court dated September 30, 2015" is, to the best of my knowledge and belief, a true and accurate translation from Hungarian into English.

_____
Wendy Poon, Project Assistant

Sworn to before me this
April 17, 2017

_____
Signature, Notary Public

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016  |  T 212.689.5555  |  F 212.689.1059  |  WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

**NOV 04, 2015**

1

**Budapest Court**
**70.P.22.409/2015/11**

[emblem]

In the proceedings regarding the **exercise of right to likeness**,

initiated by **plaintiff Aladár Baldauf (1052 Budapest, Semmelweis u. 5),**

represented by the Dr. Gerbár and Dr. Kálmán Law Firm (1119 Budapest, Fehérvári út 84/a),

against **first defendant atlatszo.hu Public Interest Non-Profit LLC (1084 Budapest, Déri Miksa u. 10.IV/9),**

represented by lawyer Dr. Csaba Tordai (1054 Budapest, Vécsey u. 4.III/4),

and **second defendant Kinja LLC (1124 Budapest, Csörsz u. 40),**

represented by lawyer Dr. László Bodolai (2040 Budaörs, Tárogató u. 26),

**the Budapest Court** hereby issues the following

### JUDGEMENT:

The Court has found that the first defendant infringed the plaintiff's personality right regarding the protection of likeness by using the plaintiff's likeness without his consent, placing it next to the article entitled "Former Party Leader Attacks with Fake US Hair Stylist Diploma", published on April 13, 2015 in the atlatszo.hu online media product, issued by the first defendant.

The Court has found that the second defendant infringed the plaintiff's personality right regarding the protection of likeness by using the plaintiff's likeness without his consent, placing it next to the article entitled "We've found the Hungarian Zelig", published on April 13, 2015 in the cink.hu online media product issued by the second defendant.

The Court hereby orders the first defendant to remove the plaintiff's likeness from next to the aforementioned article in the atlatszo.hu online media product issued by him.

The Court hereby orders the second defendant to remove the plaintiff's likeness from next to the aforementioned article in the cink.hu online media product issued by him.

The Court hereby restrains the defendants from further infringement.

The Court hereby orders the first defendant and the second defendant to pay the plaintiff HUF 12,700 (twelve thousand and seven hundred forints) each, for litigation costs.

**Budapest Court**
**70.P.22.409/2015/11**                   2

The Court hereby orders the first defendant and the second defendant to pay the State a non-imposed fee of HUF 18,000 (eighteen thousand forints) each, upon specific request.

An appeal may be filed against this Judgement within 15 days of receipt, which shall be submitted in writing to the Budapest Court, in 4 copies, addressed to the Budapest Court of Appeals.

In case of an appeal, legal representation before the Budapest Court of Appeals is mandatory.

Before the expiry of the deadline for appeal, the parties to the proceedings may request that the court of second instance rule on the appeal without holding a hearing.

If the appeal concerns only the amount or payment of litigation costs, the obligation to pay interest, the amount of the interest, the period of completion, or the payment of expenses advanced by the State, or if the appeal relates only to the Particulars of the Judgement, the court of second instance may rule on it without holding a hearing, unless the appellant requests a hearing in his/her appeal, or the other party requests a hearing at the invitation of the court of second instance.

## PARTICULARS

On April 13, 2015, the atlatszo.hu online media product issued by the first defendant and the cink.hu online media product issued by the second defendant published articles in connection with the plaintiff, entitled "Former Party Leader Attacks with a Fake US Hair Stylist Diploma" and "We've Found the Hungarian Zelig by Accident", respectively. As an illustration for the article, the atlatszo.hu website used a photo showing the plaintiff with his birthday cake, whereas the photo published on the cink.hu website showed the plaintiff sitting on a sofa in an apartment. The media products downloaded the photos used as illustrations from the plaintiff's Facebook page.

In a letter mailed on April 23, 2013, the plaintiff – and the Pallaus University referred to in the articles – stated that the articles published by the defendants contained numerous misstatements, and hence requested correction of the articles, adequate compensation and restoration of the situation preceding the infringement.

In a letter dated May 7, 2015, the plaintiff asked the defendants to remove the infringing photos from the websites within 48 hours. He demanded adequate compensation and restoration of the situation preceding the infringement. The letter of formal notice was received by the first defendant on May 22, 2015 and by the second defendant on May 20, 2015.

In his action, received on June 5, 2015, the plaintiff requested that the Court establish that the first defendant and the second defendant had infringed the plaintiff's personality rights by using the photos without his consent, order the defendants to discontinue the infringement and restore the situation preceding the infringement by removing the photos from the websites; furthermore, he requested that the court restrain the defendants from further infringement. The plaintiff based his action on the provisions of Chapter XXI/A of Act III of 1952 on the Code of Civil Procedure (hereinafter: CCP). He stated that the defendants had used his photos depicting personal life events, published on Facebook, without the plaintiff's knowledge. He became aware of that after one of his colleagues had brought it to his attention on April 23, 2015, when

**Budapest Court**
**70.P.22.409/2015/11**                    3

he immediately sent a letter of formal notice to the defendants because the article's content represented an infringement of personality rights. The plaintiff underlined that he was not considered a public figure.

In their substantive defense, the defendants requested that the action be dismissed. First of all, they argued that the plaintiff had not complied with the 30-day deadline for sending a letter of formal notice prior to filing an action, contesting the facts regarding the date for which the plaintiff claimed he had become aware of the articles. They argued that if the plaintiff was not able to prove unequivocally the date when he had become aware of the articles and the Court simply accepted the plaintiff's statement in this regard, it would basically render the legal deadline meaningless. They substantively stated that the plaintiff was considered a public figure, which was supported by the information published by the plaintiff on his Facebook profile. They added that the provisions of Article 2:44 of Act V of 2013 on the Civil Code (new CC) were a general clause that provided for the weighing of the infringement of the given personality right against the exercise of the fundamental right to freedom of expression, within the framework of assessment of proportionality, in case of any personality right of a public figure. The contested photos were used as illustrations for articles dealing with public affairs. The defendants underlined that the photos used had been published by the plaintiff himself, on his Facebook page accessible to anyone. The first defendant also argued that pursuant to Section 2.4 of Facebook's Terms of Service, accepted by the plaintiff, if someone published content or information using the Public setting, he/she allowed everyone to access and use that information and to associate the information with the relevant person (for example, his/her name and profile picture). In view of the above, by sharing the photo using the Public setting, the plaintiff consented to the use of the photo by third parties.

The plaintiff's action is well founded.

Pursuant to Article 346/A(1) of the CCP, if a person's likeness or recorded voice is produced or used without that person's consent, such person may send a written request for remedy of infringement within thirty days of becoming aware of such production or use, asking the producer or user to discontinue the infringement, provide adequate compensation and ensure adequate publicity for it at his/her own expense, remedy the infringement situation, restore the situation preceding the infringement and destroy the product of the infringement or eliminate its infringing quality.

Pursuant to Article 346/B (1), if the producer or user of the likeness or recorded voice fails to comply with the request for remedy of infringement within the deadline specified in days, the party submitting the request may file an action against such producer or user, according to the provisions of this Chapter. In this action, the plaintiff may demand the application of points a)-d) of Article 2:51(1) of the CC. A separate action may be filed to demand the application of other sanctions for infringement of personality rights. Pursuant to paragraph (3), the action shall be filed within 15 days of the last day of the deadline indicated for compliance with the request for remedy of infringement.

Article 346/A (1) of the CCP provides for a subjective deadline for submitting requests with regard to a likeness, meaning that the plaintiff may send a letter of formal notice to the user within 30 days of becoming aware of the publication of the likeness, not within 30 days of the actual publication. Logically, it is extremely difficult to prove the date when the plaintiff became aware of the above; on the other hand, the defendants are also not able to verify the plaintiff's statement in this regard. In view of the above, the Court was satisfied with the plaintiff's showing probability of the date of becoming aware of the information, for which the testimony of Veronika Gosztonyi Baldaufné and the letters of formal notice enclosed under reference number 5 were sufficient. Considering the above, the Court has accepted that the plaintiff sent a notice to the defendants regarding the likeness within the required deadline prior to filing an action.

Budapest Court
70.P.22.409/2015/11                    4

The law does not provide for a deadline for complying with the plaintiff's formal notice, leaving it up to the plaintiff. In his formal notice, the plaintiff indicated that the deadline for complying with his notice was 48 hours, i.e. two days. It can be established that the plaintiff filed an action within 15 days of the expiry of the said deadline.

Considering that pursuant to Article 346/A (1), the infringement on which these special actions are based is the unauthorized production or use of a likeness or recorded voice, the ruling on the legality of such production or use is logically governed by the provisions of the new CC applicable to the protection of likeness and recorded voice. Pursuant to Article 2:48(1) of the new CC, the consent of the person affected shall be required for producing or using his/her likeness or recorded voice. Pursuant to paragraph (2), the consent of the relevant person is not required for recording his/her likeness or voice, and for the use of such recording if made of a crowd or in a public event.

The first defendant argued that by publishing his photos on Facebook, thus making them accessible to anyone – in the light of the Terms of Service – the plaintiff had consented to the reproduction of the photos. Conversely, the Court underlines that the cited provision of Facebook's Terms of Service only warns the user that others may use his/her photos if they are shared with the Public setting, and it does not provide for anything else. The fact that a person publishes a photo of himself/herself on an online platform used for such purpose does not mean that by doing so, he/she consents to others using the given photo for their own purposes, without asking for permission. The consent preventing infringement of personality rights shall be express, and it may not be interpreted extensively at the expense of the holder of the right. (BH.2002.7).

Pursuant to Article 2:48(2) of the new CC, consent is not required for recording a likeness or voice, and for the use of such recording in a public event. Considering that both photos published by the defendants clearly depict personal life events, this condition does not apply. Therefore, the Court did not even investigate whether the plaintiff was considered a public figure, as the establishment of such fact alone does not exclude the infringement.

Based on the above, pursuant to Article 346/B (1) of the CCP and Article 2:51(1), points a), b) and d) of the new CC, the Court has established that there was an infringement, ordered the defendants to remove the photos and restrained the defendants from further infringement.

The Court notes that it did not have any reason not to consider it acceptable that the plaintiff was suing the publishers of the media products. Article 346/B (3) of the CCP stipulates that if the person considered to be the producer or user of the likeness is not a natural person, such person shall act as a party even if he/she has no trial capacity. However, given that the law does not specify which organization may or shall be considered the user of the likeness and hence the defendant, the Court considered the action against the publishers appropriate.

Pursuant to Article 3(3) of Decree 32/2003 (VIII.22) of the Minister of Justice, the Court has established that the fee of the lawyer representing the plaintiff, including VAT, shall be HUF 25,400, and ordered that each defendant shall pay half of this amount according to Article 78(1) of the CC. The plaintiff's legal representative was present in the hearing for three started hours, and the Court accepted one additional hour for the drafting of the application to initiate proceedings. The Court has ordered that each defendant pay half of the duties pursuant to Article 78(1) of the CCP and Article 13(2) of Decree 6/1986 (VI.26) of the Minister of Justice.

**Budapest Court**
**70.P.22.409/2015/11**                    5

The right to appeal against this Judgement is defined under Article 233(1) of the CCP.

Budapest, September 30, 2015

Sgd. Dr. Csilla Szabó

Judge

Certified true copy:
[initials]
[stamp:] BUDAPEST COURT, 15, BUDAPEST

2015 NOV 04.

**Fővárosi Törvényszék**    1
**70.P.22.409/2015/11.**



**A Fővárosi Törvényszék**

a Dr. Gerbár és Dr. Kálmán Ügyvédi Iroda (1119 Budapest, Fehérvári út 84/A.) által képviselt

**Baldauf Aladár (1052 Budapest, Semmelweis u. 5.) felperesnek**

a dr. Tordai Csaba ügyvéd (1054 Budapest, Vécsey u. 4. III/4.) által képviselt

**Atlatszo.hu Közhasznú Nonprofit Kft. (1084 Budapest, Déri Miksa u. 10. IV/9.) I.r. alperes és**

a dr. Bodolai László ügyvéd (2040 Budaörs, Tárogató u. 26.) által képviselt

**Kinja Kft. (1124 Budapest, Csörsz u. 40.) II.r. alperes ellen**

**képmáshoz való jog érvényesítése** iránt indított perében meghozta a következő

**Í T É L E T E T :**

A bíróság megállapítja, hogy az I.r. alperes megsértette a felperes képmás védelméhez fűződő személyiségi jogát azzal, hogy az általa kiadott atlatszo.hu internetes sajtótermékben 2015. ápirlis 13-án megjelent „Amerikai kamu-fodrászdiplomával támad az ex-pártvezető" című cikk mellett engedély nélkül felhasználta a felperes képmását.

A bíróság megállapítja, hogy a II.r. alperes megsértette a felperes képmás védelméhez fűződő személyiségi jogát azzal, hogy az általa kiadott cink.hu internetes sajtótermékben 2015. április 13-án megjelent „Véletlenül megtalálták a magyar Zeliget" című cikk mellett engedély nélkül felhasználta a felperes képmását.

A bíróság kötelezi az I.r. alperest, hogy az általa kiadott atlatszo.hu internetes sajtótermékből a fenti cikk mellől a felperes képmását távolítsa el.

A bíróság kötelezi a II.r. alperest, hogy az általa kiadott cink.hu internetes sajtótermékből a fenti cikk mellől a felperes képmását távolítsa el.

A bíróság az alpereseket a további jogsértéstől eltiltja.

A bíróság kötelezi az I.r. és II.r. alperest, külön – külön fizessenek meg a felperes részére 12.700 – 12.700 (tizenkétezer-hétszáz – tizenkétezer-hétszáz) forint perköltséget.

**Fővárosi Törvényszék**                    2
**70.P.22.409/2015/11.**

A bíróság kötelezi az I.r. és II.r. alperest, külön felhívásra fizessenek meg az állam javára fejenként 18.000 – 18.000 (tizennyolcezer – tizennyolcezer) forint le nem rótt illetéket.

Az ítélet ellen a kézhezvételtől számított 15 napon belül fellebbezésnek van helye, melyet a Fővárosi Ítélőtáblának címezve, a Fővárosi Törvényszéken kell 4 példányban írásban előterjeszteni.

Fellebbezés esetén a Fővárosi Ítélőtábla előtt a jogi képviselet kötelező.

A fellebbezési határidő lejárta előtt a peres felek kérhetik, hogy a fellebbezést a másodfokú bíróság tárgyaláson kívül bírálja el.

Ha a fellebbezés csak a perköltség nagyságára vagy viselésére, a kamatfizetési kötelezettségre, a kamat mértékére, teljesítési határidőre vagy az állam által előlegezett költség viselésére vonatkozik, illetőleg ha a fellebbezés csak az ítélet indokolása ellen irányul, akkor azt a másodfokú bíróság tárgyaláson kívül is elbírálhatja, kivéve, ha a fellebbező a fellebbezésében, vagy a másik fél a másodfokú bíróság felhívására tárgyalás tartását kéri.


# INDOKOLÁS


Az I.r. alperes által kiadott atlatszo.hu és a II.r. alperes által kiadott cink.hu internetes sajtótermék 2015. április 13-án „Amerikai kamu-fodrászdiplomával támad az ex-pártvezető" címmel és „Véletlenül megtaláltuk a magyar Zeliget!" címmel a felperessel kapcsolatban újságcikket tett közzé. Az atlatszo.hu oldalon a cikk illusztrációjaként egy olyan fénykép szerepel, ahol a felperes az általa kapott születésnapi tortával látható, a cink.hu oldalon közzétett fényképen pedig a felperes egy lakásban egy kanapén ül. A sajtótermékek az illusztrációként használt fényképeket a felperes Facebook oldaláról töltötték le.

A felperes – és a cikkben érintett Pallaus Egyetem – 2013. április 23-án postára adott levelében közölte, hogy az alperesek által közzétett cikkek számos valótlanságot tartalmaznak, erre tekintettel a cikkek helyreigazítását, megfelelő elégtételt, valamint a jogsértést megelőző állapot helyreállítását kérik.

A felperes 2015. május 7-én kelt levelében felhívta az alpereseket, hogy a jogsértő fényképeket 48 órán belül távolítsák el a honlapról. Követelte megfelelő elégtétel adását, illetve a jogsértést megelőző állapot helyreállítását. A felszólító levelet az I.r. alperes 2015. május 22-én, a II.r. alperes 2015. május 20-án átvette.

A felperes 2015. június 5-én érkezett keresetében kérte, hogy a bíróság állapítsa meg, hogy az I.r. és II.r. alperesek megsértették a felperes személyhez fűződő jogait a fényképek hozzájárulás nélküli felhasználásával, kérte, hogy kötelezze az alpereseket a jogsértés abbahagyására, illetve a jogsértést megelőző állapot helyreállítására olyan módon, hogy a fényképfelvételeket távolítsák el az oldalakról, és kérte továbbá, hogy a bíróság az alpereseket a további jogsértéstől tiltsa el. A felperes a keresetét a Polgári perrendtartásról szóló 1952. évi III. törvény (Pp.) XXI/A. fejezetében foglalt rendelkezésekre alapította. Előadta, hogy az alperesek a felperes tudta nélkül használták fel a Facebookon közzétett, magánéleti eseményeket megörökítő felvételeit. Erről 2015. április 23-án egy kollégája figyelemfelhívása alapján szerzett tudomást, amikor az alpereseknek haladéktalanul

Fővárosi Törvényszék                                        3
70.P.22.409/2015/11.

felszólító levelet küldött a cikk személyiségi jogsértést megvalósító tartalma miatt. A felperes kiemelte, hogy nem minősül közszereplőnek.

Az alperesek érdemi ellenkérelmükben a kereset elutasítását kérték. Elsődlegesen arra hivatkoztak, hogy a felperes a pert megelőző felszólító levél kiküldésére vonatkozó 30 napos határidőt nem tartotta be, vitatták a felperes tudomásszerzés időpontja kapcsán tett tényelőadását. Arra hivatkoztak, hogy amennyiben a felperes a tudomásszerzés időpontját kétséget kizáróan nem tudja igazolni, akkor azzal, ha a bíróság ezzel kapcsolatban pusztán a felperes állítását fogadja el, a törvényben írt határidőt valójában kiüresíti. Érdemben előadták, hogy a felperes közszereplőnek minősül, ezt a felperes által a Facebook profilján megadott adatok is alátámasztják. A Polgári Törvénykönyvről szóló 2013. évi V. törvény (új Ptk.) 2:44. §-ában foglalt rendelkezés pedig olyan generálklauzula, amely közéleti szereplők vonatkozásában valamennyi személyiségi jog esetén szükségessé tesz az adott személyiségi jogi jogsérelem és a véleménynyilvánítás szabadságához fűződő alapvető jog érvényesülésének az arányossági mérlegelés keretében történő összevetését. A kifogásolt képek olyan cikkek illusztrációjaként jelentek meg, amelyek közügyekkel foglalkoztak. Az alperesek kiemelték, hogy a felhasznált fényképeket a felperes maga tette közzé a bárki számára hozzáférhető Facebook oldalán. Az I.r. alperes hivatkozott arra is, hogy a Facebook felperes által is elfogadott felhasználási feltételei 2. pont 4. alpontja szerint ha valaki a nyilvános beállítás használatával tartalmat vagy információt tesz közzé, azzal bárkit képessé tesz arra, hogy hozzáférjen az adott információhoz, és azt felhasználja, valamint hogy az információt hozzá társítsa (például a nevét és a profilképét). Erre tekintettel a felperes a „nyilvános" megosztási beállítással hozzájárult ahhoz, hogy harmadik személyek a fényképét felhasználják.

A felperes keresete megalapozott.

A Pp. 346/A. § (1) bekezdése szerint akiről hozzájárulása nélkül képmás vagy hangfelvétel készül, illetve kerül felhasználásra, a készítésről, illetve a felhasználásról történt tudomásszerzés időpontjától számított harminc napon belül írásban a sérelem orvoslása iránti kérelmében kérheti a készítőtől, illetve a felhasználótól a jogsértés abbahagyását, azt, hogy adjon megfelelő elégtételt, és ennek biztosítson saját költségén megfelelő nyilvánosságot, a sérelmes helyzet megszüntetését, a jogsértést megelőző állapot helyreállítását és a jogsértéssel előállított dolog megsemmisítését vagy jogsértő mivoltától való megfosztását.

A Pp. 346/B. § (1) bekezdése alapján ha a képmás vagy hangfelvétel készítője, illetve felhasználója a sérelem orvoslása iránti kérelemben foglaltakat nem teljesíti az arra biztosított, napokban megállapított határidőben, a kérelmet előterjesztő fél ellene az e fejezetben foglaltak szerint keresetet indíthat. A keresetben a felperes a Ptk. 2:51. § (1) bekezdés a)-d) pontjában foglaltak alkalmazását kérheti. A személyiségi jogok megsértése egyéb szankcióinak alkalmazása iránt külön per indítható. A (3) bekezdés szerint a keresetet a sérelem orvoslása iránti kérelemben foglaltak teljesítésére rendelkezésre álló határidő utolsó napjától számított tizenöt nap alatt kell megindítani.

A Pp. 346/A. § (1) bekezdése a képmással kapcsolatban előterjeszthető igények közlésére szubjektív határidőt ír elő, azaz a felperes a felszólító levelet nem a képmás megjelenésétől, hanem az arról való tudomásszerzéstől számított 30 napon belül jogosult megküldeni a felhasználó részére. Értelemszerűen a felperesi tudomásszerzés kapcsán rendkívül nehéz bizonyítást folytatni, ugyanakkor az alperesek sincsenek abban a helyzetben, hogy az ezzel kapcsolatos felperesi állítást ellenőrizni tudják. Erre való tekintettel a bíróság megelégedett azzal, hogy a felperes a tudomásszerzés időpontját valószínűsítse, amire Baldaufné Gosztonyi Veronika tanú vallomása és az 5. sorszám alatt csatolt felszólító levelek elégségesek voltak. Erre való tekintettel a bíróság

**Fővárosi Törvényszék**                    4
**70.P.22.409/2015/11.**

elfogadta, hogy a felperes a perindítást megelőzően megfelelő határidőben közölte a képmással kapcsolatos felszólítást az alperesekkel.

A jogszabály nem határoz meg határidőt a felperes felhívásának teljesítésére, ezt a felperesre bízza. A felperesa felszólításban 48 órát, azaz két napot jelölt meg a kérelme teljesítésének határidejeként. Megállapítható, hogy a felperes ezen határidő leteltétől számított 15 napon belül benyújtotta a keresetlevelét.

Lévén, hogy a Pp. 346/A. § (1) bekezdése szerint ezen speciális perek alapjául szolgáló jogsértés a képmás – vagy hangfelvétel – hozzájárulás nélküli elkészítése, illetve felhasználása, a készítés, illetve felhasználás jogszerűségének megítélése során értelemszerűen az új Ptk. képmás és hangfelvétel védelmére vonatkozó szabályai az irányadók. Az új Ptk. 2:48. § (1) bekezdése szerint képmás vagy hangfelvétel elkészítéséhez és felhasználásához az érintett személy hozzájárulása szükséges. A (2) bekezdés alapján nincs szükség az érintett hozzájárulására a felvétel elkészítéséhez és az elkészített felvétel felhasználásához tömegfelvétel és nyilvános közéleti szereplésről készült felvétel esetén.

Az I.r. alperes hivatkozott arra, hogy a felperes azzal, hogy a Facebookon a bárki számára elérhető módon közzétette a róla készült felvételeket – figyelemmel a felhasználási szabályzatban foglaltakra is – hozzájárult a fénykép további felhasználásához. Ezzel szemben a bíróság kiemeli, hogy a Facebook felhasználási feltételeinek felhívott rendelkezése csak figyelmezteti a felhasználót, hogy nyilvános megosztás esetén a képei felhasználhatókká válnak más személy számára, ennél többet nem tartalmaz. Az, hogy egy személy egy erre alkalmas internetes felületen képet tesz közzé magáról, nem jelenti azt, hogy ezzel hozzájárulását adná ahhoz, hogy mások az adott felvételt a saját céljaikra a megkérdezése nélkül felhasználják. A személyhez fűződő jogok megsértését kizáró hozzájárulásnak kifejezettnek kell lennie, azt nem lehet a jogosult terhére kiterjesztően értelmezni (BH.2002.7.).

Az új Ptk. 2:48. § (2) bekezdése alapján engedély hiányában el lehet készíteni, illetve fel lehet használni nyilvános közéleti szereplésről készült felvételt. Tekintettel arra, hogy az alperesek által közzétett mindkét felvétel egyértelműen magánéleti eseményt örökít meg, ezen feltétel nem áll fenn. Ezért a bíróság nem is vizsgálta, hogy a felperes közszereplőnek minősül-e, lévén, hogy ennek megállapítása önmagában a jogsértést nem zárja ki.

A fentiek alapján a bíróság a Pp. 346/B. § (1) bekezdése és az új Ptk. 2:51. § (1) bekezdés a), b) és d) pontja alapján a jogsértést megállapította, kötelezte az alpereseket a fénykép eltávolítására és az alpereseket a további jogsértéstől eltiltotta.

A bíróság megjegyzi, hogy nem volt oka arra, hogy ne tartsa elfogadhatónak, hogy a felperes a sajtótermékek kiadóit perelte. A Pp. 346/B. § (3) bekezdése akként rendelkezik, hogy ha az, aki a képmás készítőjének vagy felhasználójának minősül, nem természetes személy, félként jár el akkor is, ha nincs perbeli jogképessége. Azonban miután a jogszabály nem utal arra, hogy mely szervezetet lehet vagy kell alperesként a képmás felhasználójának tekinteni, ezért a bíróság a kiadó perlését megfelelőnek találta.

A bíróság a felperesi képviselő áfával növelt ügyvéd munkadíját 25.400 Ft-ban állapította meg a 32/2003. (VIII.22.) IM rendelet 3. § (3) bekezdése alapján, és ennek megfizetésére az alpereseket fele-fele arányban kötelezte a Pp. 78. § (1) bekezdése alapján. A felperes jogi képviselője tárgyaláson három megkezdett órát volt jelen, és a bíróság a keresetlevél elkészítésére további egy

**Fővárosi Törvényszék**                                          5
**70.P.22.409/2015/11.**

munkaórát fogadott el. A bíróság a Pp. 78. § (1) bekezdése és a 6/1986. (VI.26.) IM rendelet 13. §
(2) bekezdése alapján fele-fele arányban kötelezte az alpereseket az illeték megfizetésére.

Az ítélet elleni fellebbezési jogot a Pp. 233. § (1) bekezdése biztosítja.

Budapest, 2015. szeptember 30.



A kiadmány hiteléül:

                                                          dr. Szabó Csilla s.k.
                                                                    bíró

**Exhibit D**


TRANSPERFECT

City of New York, State of New York, County of New York

I, Wendy Poon, hereby certify that the document "Judgment of the Budapest Court of Appeals dated April 26, 2016" is, to the best of my knowledge and belief, a true and accurate translation from Hungarian into English.

Wendy Poon, Project Assistant

Sworn to before me this
April 17, 2017

Signature, Notary Public

ANGELA LO
NOTARY
NO. 01LO6353549
QUALIFIED IN
NEW YORK COUNTY
COMM. EXP.
01-30-2021
STATE OF NEW YORK
PUBLIC

Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

JUNE 14, 2016 [handwritten:] *154 'SZ'*
Budapest Court of Appeals
1.Pf.21.458/2015/4/11

| BUDAPEST COURT 53 |
| --- |
| MAIN REGISTRATION NUMBER |
| [illegible]…………………………… |
| Mail/[illegible] |
| Received on:  **06/01/2016** |
| COPY: ……………. [illegible] ………… |
| ATTACHMENT:…. [illegible]…………. |
| MAIN REGISTRATION NUMBER: |
| [illegible] [handwritten:] *22409/15* |

[emblem]

In the appeal proceedings initiated by the first defendant under reference number 12 against Judgement number 70.P.22.409/2015/11 issued by the Budapest Court on September 30, 2015 in the action regarding the infringement of the right to likeness, initiated by plaintiff Aladár Baldauf (1052 Budapest, Semmelweis utca 5), represented by the Dr. Gerbár and Dr. Kálmán Law Firm (1114 Budapest, Fehérvári út 84/a, person assigned to the case: lawyer Dr. Szilvia Gerbár) against first defendant atlatszo.hu Public Interest Non-Profit LLC (1084 Budapest, Déri Miksa utca 10), represented by lawyer Dr. Csaba Tordai (1054 Budapest, Vécsey utca 4), and second defendant Kinja LLC (1123 Budapest, Csörsz utca 40), represented by lawyer Dr. László Bodolai (2040 Budaörs, Tárogató utca 26), the Budapest Court of Appeals hereby issues the following

### Judgement:

The Budapest Court of Appeals does not affect the non-contested part of the Judgement of the court of first instance, and it upholds the appealed provisions of the Judgement.

It orders the first defendant to pay the plaintiff HUF 19,050 (nineteen thousand and fifty forints) for the costs of the appellate proceedings within 15 days.

The non-imposed appeal fee of HUF 48,000 (forty-eight thousand forints) shall be borne by the State.

No appeal may be filed against this Judgement.

### Particulars

On April 13, 2015, the atlatszo.hu online media product issued by the first defendant and the cink.hu online media product issued by the second defendant published articles in connection with the plaintiff, entitled "Former Party Leader Attacks with a Fake US Hair Stylist Diploma" and "We've Found the Hungarian Zelig by Accident", respectively. A photo of the plaintiff downloaded from his Facebook page was used as illustration for the articles. In a letter dated May 7, 2015, the plaintiff asked the defendants to remove the infringing photo from the websites within 48 hours, demanded compensation and restoration of the situation preceding the infringement. The letter of formal notice was received by the first defendant on May 22, 2015 and by the second defendant on May 20, 2015, but they failed to comply with it.

In the action filed on June 5, 2015, the plaintiff requested the establishment of the fact that the first defendant and the second defendant infringed the plaintiff's personality rights by using the photos without his consent. He requested that the Court order the defendants to discontinue the infringement and restore the situation preceding the infringement by removing the photos from the websites. In addition, he requested that the Court restrain the defendants from further infringement.

In their substantive defense, the first defendant and second defendant requested that the action be dismissed.

Budapest Court of Appeals
1.Pf.21.458/2015/4/11                    2

In its Judgement, the court of first instance established that the first defendant had infringed the plaintiff's personality right regarding the protection of likeness by using the plaintiff's likeness without his consent, placing it next to the article entitled "Former Party Leader Attacks with a Fake US Hair Stylist Diploma", published on April 13, 2015 in the atlatszo.hu online media product issued by the first defendant. The court established that the second defendant had infringed on the plaintiff's personality right regarding the protection of likeness by using the plaintiff's likeness without his consent, placing it next to the article entitled "We've Found the Hungarian Zelig by Accident", published on April 13, 2015 in the cink.hu online media product issued by the second defendant.

The court ordered the first defendant and the second defendant to remove the plaintiff's likeness from next to the aforementioned articles published in the atlatszo.hu and cink.hu online media products. In addition, it restrained the defendants from further infringement.

It ordered that the first defendant and the second defendant pay the plaintiff HUF 12,700 each for litigation costs. It ordered that the first defendant and the second defendant pay the State a non-imposed fee of HUF 18,000 each, upon specific request.

The court accepted that prior to filing an action, the plaintiff sent to the defendants a letter of formal notice regarding the likeness within the required deadline. Namely, the law does not provide for a deadline for complying with the plaintiff's formal notice, leaving it up to the plaintiff. In his formal notice, the plaintiff indicated that the deadline for complying with his notice was 48 hours, i.e. two days. It can be established that the plaintiff filed an action within 15 days of the expiry of the said deadline.

He indicated that pursuant to Article 2:48(1) of the Civil Code, the consent of the person affected shall be required for using his/her likeness. He underlined that the cited provision of Facebook's Terms of Service only warns the user that his/her publicly shared photos might be used by others, but it does not provide for anything else. The fact that a person publishes a photo of himself/herself on an online platform used for such purpose does not mean that by doing so, he/she consents to others using the given photo for their own purposes, without asking for permission. The consent preventing infringement of personality rights shall be express, and it may not be interpreted extensively at the expense of the holder of the right. Considering that both photos published by the defendants clearly depict personal life events, Article 2:48(2) of the Civil Code does not apply. The court did not investigate whether the plaintiff was considered a public figure, as the establishment of such fact alone does not exclude the infringement. Based on the above, pursuant to Article 346/B (1) of the Code of Civil Procedure and Article 2:51(1), points a), b) and d) of the new Civil Code, the court established that there had been an infringement, ordered the defendants to remove the photo and restrained them from further infringement. Based on Article 346/B (3), the court of first instance deemed that suing the publisher was appropriate.

The first defendant filed an appeal against the above Judgement. In his appeal, he requested that the Budapest Court of Appeals amend the Judgement of the court of first instance, dismiss the action and order the plaintiff to pay the litigation costs. Following citation of Article 2:44 of the Civil Code, he indicated that according to the case-law of the Constitutional Court, the freedom of expression and freedom of press defined under Article IX (1) and (2) of the Fundamental Law shall apply also to photos published by the press, in connection with the right to likeness, hence it should be investigated in each specific case whether restriction of the freedom of press is justified by the protection of the right to human dignity.

According to the first defendant, Article 2:44 of the Civil Code applies also in connection with personality rights and hence the right to likeness, so an action regarding the infringement of the right to likeness may be dismissed not only in cases when the plaintiff gave consent and the cases defined under Article 2:48(2), but infringement of the right to likeness cannot be established either if the use is in line with Article 2:44.

The plaintiff's public Facebook page, which is accessible to anyone without logging in, attached to the proceedings, provides extensive information on the plaintiff's public engagement. In this context, he refers to himself as "journalist, reporter and policy-maker". He claims that he "contributes to the steering of the

Budapest Court of Appeals
1.Pf.21.458/2015/4/11                3

country's chariot not only as a businessman", giving a long list of his various public roles. According to the defendant, in his public appearances the plaintiff thus demands a public role, and is hence considered a public figure according to the case decision published under reference number BDT1999.4

The article was dealing with public affairs, presenting a network of companies that can be tied to the plaintiff. Accordingly, the defendant's actions fall within the most protected scope of freedom of expression. The published photo of the plaintiff was shared by the plaintiff himself, who posted it with so called „Public" setting, meaning that its use does not infringe the right to human dignity, as it cannot be assumed that someone would deliberately share with the general public a photo violating his/her human dignity.

He cited Article XXVIII of the Fundamental Law and AB Decision 28/2014 (IX.29) of the Constitutional Court. He did so to support the argument that the plaintiff had deliberately stepped out of the private sector and decided on his own that the contested photo appropriately represented the public manifestation of his personality. That is why, in the light of the prohibition of abuse of right defined under Article 1:5(1) of the Civil Code, the plaintiff is not entitled to seek legal protection in connection with the reproduction of a photo that he himself had made public, as it would be in conflict with the purpose of the law.

In his defense on appeal, the plaintiff requested that the Judgement of the court of first instance be upheld. He underlined that by publishing the photos on Facebook, the plaintiff had not consented to their use by others. Acceptance of Facebook's Terms of Service cannot be interpreted as consent to the use of the photo. He disagreed that the plaintiff was a public figure, noting that the photos had been taken in and depicted personal life situations, hence they were not subject to free use even if the plaintiff had been considered a public figure. He cited Curia Decision Number Pf.IV.21.553/2204.

The appeal is unfounded.

The court of first instance reviewed the relevant evidence presented by the parties, established the facts correctly based on the available data, fully cited the laws governing the ruling on the action, and issued a founded Judgement on the merits of the case, following proper application of such laws. With regard to the first defendant's arguments for appeal, the Budapest Court of Appeals indicates as follows.

Pursuant to Article 2:48(1) of the Civil Code, the consent of the person affected shall be required for producing or using his/her likeness or recorded voice. Pursuant to paragraph (2), the consent of the relevant person is not required for recording his/her likeness or voice, and for the use of such recording if made of a crowd or in a public event. Pursuant to Article 2:44, exercising the fundamental rights relating to the free debate of public affairs may diminish the protection of the personality rights of public figures, to the extent necessary and proportionate, without prejudice to human dignity.

There is no doubt that the photos depicting the plaintiff and used by the first defendant and the second defendant were also published by the plaintiff himself, on the Facebook page registered under his name. However, this can absolutely not be interpreted in a way that they can be subsequently published by anyone, anywhere, in connection with any topic, even if Facebook's Terms of Service technically provide for such an option. Namely, provision of consent to publish shall be reviewed not generally, but on a case by case basis, and the depicted person shall be entitled to decide who can use his/her likeness, in what way, in what scope, and in connection with what kind of messages it can be used as illustration.

Budapest Court of Appeals
1.Pf.21.458/2015/4/11                4

Article 2:44 of the Civil Code does not provide either for an authorization to use the plaintiff's likeness subject to litigation. According to the applicable law, the likeness of a person assuming a public role recorded during his/her public appearance may be used without the relevant person's consent only in connection with his/her public appearance, within the scope defined by and for the purpose of presenting his/her public expressions. Contrary to the first defendant's position, the likeness of public figures is not subject to free use, and photos taken of their personal life events shall not be used as illustrations for various ways of thinking or opinions that are independent of the specific expressions of the public figure. The fact that the plaintiff used to assume a public role in the past alone does not give the press the right to reproduce any likeness of the plaintiff depicting his personal life events, without his consent, for any purpose. Therefore, the photos depicting the plaintiff were published without the plaintiff's consent, in an arbitrary manner, resulting in the infringement of the plaintiff's personality rights.

In the light of the above, pursuant to Article 253(2) of the Code of Civil Procedure, the Budapest Court of Appeals has upheld the decision of the court of first instance, which was made on the merits of the case and based on the right causes. Considering that the first defendant is the losing party in the appeal proceedings in connection with his appeal, the Court of Appeals has ruled on the appeal proceedings costs pursuant to Article 78(1) of the Code of Civil Procedure. Accordingly, the first defendant shall reimburse the plaintiff for the costs of the appeal proceedings defined under Article 3(2), (5) and (6) of Decree 32/2003 (VIII.22) of the Minister of Justice, to be paid based on Article 4/A. Pursuant to Article 5(1) d) of Act XCIII of 1990, the first defendant is exempt from duties, thus the non-imposed appeal fee shall be borne by the State.

Budapest, April 26, 2016

Sgd. Dr. Zita Polák Fermanné
Head of Panel

Sgd. Dr. Zsuzsanna Szabó Véghné                Sgd. Dr. Mária Hegedűs
Judge Rapporteur                Judge

Certified true copy: [initials]
Dr. Zsuzsanna Horváth, Court Reporter
[stamp:] BUDAPEST COURT OF APPEALS
      74, BUDAPEST

2016 JÚN 1 4.   ( )

Fővárosi Ítélőtábla
1.Pf.21.458/2015/4/II.

FŐVÁROSI TÖRVÉNYSZÉK 53.

2016 -06- 0 1

22409/15



A Fővárosi Ítélőtábla a Dr. Gerbár és Dr. Kálmán Ügyvédi Iroda (1114 Budapest, Fehérvári út 84/a., ügyintéző: dr. Gerbár Szilvia ügyvéd) által képviselt Balduaf Aladár (1052 Budapest, Semmelweis utca 5.) felperesnek, a dr. Tordai Csaba ügyvéd (1054 Budapest, Vécsey utca 4.) által képviselt atlatszo.hu Közhasznú Nonprofit Kft. (1084 Budapest, Déri Miksa utca 10.) I. rendű, a dr. Bodolai László ügyvéd (2040 Budaörs, Tárogató utca 26.) által képviselt Kinja Kft. (1123 Budapest, Csörsz utca 40.) II. rendű alperesek ellen képmáshoz való jog megsértésének megállapítása iránt indított perében a Fővárosi Törvényszék 2015. szeptember 30. napján meghozott 70.P.22.409/2015/11. számú ítélete ellen az I. rendű alperes részéről 12. sorszám alatt előterjesztett fellebbezés folytán meghozta a következő

í t é l e t e t :

A Fővárosi Ítélőtábla az elsőfokú bíróság ítéletének nem fellebbezett részét nem érinti, fellebbezett rendelkezéseit helybenhagyja.

Kötelezi az I. rendű alperest, hogy 15 napon belül fizessen meg a felperesnek 19.050 (Tizenkilencezerötven) forint másodfokú perköltséget.

A le nem rótt 48.000 (Negyvennyolcezer) forint fellebbezési illetéket az állam viseli.

Az ítélet ellen fellebbezésnek nincs helye.

I n d o k o l á s

Az I. rendű alperes által kiadott atlatszo.hu, és II. rendű alperes által kiadott cink.hu internetes sajtótermék 2015. április 13-án „Amerikai kamu-fodrászdiplomával támad az ex-pártvezető" címmel és „Véletlenül megtaláltuk a magyar Zeliget!" címmel a felperessel kapcsolatban újságcikket tett közzé. A cikk illusztrációjaként a felperes Facebook oldaláról letöltött felperest ábrázoló fénykép szerepel. Felperes 2015. május 7-én kelt levélben felhívta az alpereseket, hogy a jogsértő fényképeket 48 órán belül távolítsák el a honlapról, követelte megfelelő elégtétel adását, illetve a jogsértést megelőző állapot helyreállítását. A felszólító levelet I. rendű alperes 2015. május 22-én, II. rendű alperes 2015. május 20-án átvette, annak nem tettek eleget.

Felperes 2015. június 5-én érkezett keresetében annak megállapítását kérte, hogy az I. és II. rendű alperesek megsértették a felperes személyhez fűződő jogait a fényképek hozzájárulás nélküli felhasználásával. Kérte, hogy kötelezze a bíróság az alpereseket a jogsértés abbahagyására, illetve a jogsértést megelőző állapot helyreállítására oly módon, hogy a fényképfelvételeket távolítsák el az oldalról. Kérte továbbá, hogy a bíróság az alpereseket a további jogsértéstől tiltsa el.

I. és II. rendű alperesek érdemi ellenkérelmükben a kereset elutasítását indítványozták.

Fővárosi Ítélőtábla
1.Pf.21.458/2015/4/II.                                    2

Az elsőfokú bíróság ítéletével megállapította, hogy az I. rendű alperes megsértette a felperes képmás védelméhez fűződő személyiségi jogát azzal, hogy az általa kiadott atlatszo.hu internetes sajtótermékben 2015. április 13. napján megjelent „Amerikai kamu-fodrászdiplomával támad az ex-pártvezető" című cikk mellett engedély nélkül felhasználta a felperes képmását. Megállapította, hogy a II. rendű alperes megsértette a felperes képmás védelméhez fűződő személyiségi jogát azzal, hogy az általa kiadott cink.hu internetes sajtótermékben 2015. április 13-án megjelent „Véletlenül megtalálták a magyar Zeliget!" című cikk mellett engedély nélkül felhasználta a felperes képmását.

Kötelezte az I. és II. rendű alperest, hogy az atlatszo.hu és a cink.hu internetes sajtótermékből a fenti cikk mellől a felperes képmását távolítsa el. Egyben az alpereseket a további jogsértéstől eltiltotta.

Kötelezte az I. és II. rendű alperest, hogy külön-külön fizessenek meg a felperes részére 12.700-12.700 forint perköltséget. Kötelezte az I. és a II. rendű alperest, hogy külön felhívásra fizessenek meg az állam javára fejenként 18.000-18.000 forint le nem rótt illetéket.

Elfogadta, hogy a felperes a perindítást megelőzően megfelelő határidőben közölte a képmással kapcsolatos felszólítást az alperesekkel. A jogszabály nem határoz ugyanis meg határidőt a felperes felhívásának teljesítésére, ezt a felperesre bízza. A felperes a felszólításban 48 órát, azaz két napot jelölt meg a kérelme teljesítésének határidejeként. Megállapítható, hogy a felperes ezen határidő leteltétől számított 15 napon belül benyújtotta a keresetlevelet.

Rámutatott, hogy a Ptk. 2:48. § (1) bekezdése szerint a képmás felhasználásához az érintett személy hozzájárulása szükséges. Kiemelte, hogy a Facebook felhasználási feltételeinek felhívott rendelkezése csak figyelmezteti a felhasználót, hogy nyilvános megosztás esetén a képei felhasználhatókká válnak más személy számára, ennél többet azonban nem tartalmaz. Az, hogy egy személy egy erre alkalmas internetes felületen képet tesz közzé magáról, nem jelenti azt, hogy ezzel hozzájárulást adna ahhoz, hogy mások az általa adott felvételt saját céljaikra, hozzárendezés nélkül felhasználják. A személyhez fűződő jogok megsértését kizáró hozzájárulásnak kifejezettnek kell lennie, azt nem lehet a jogosult terhére kiterjesztően értelmezni. Tekintettel arra, hogy az alperes által közzétett mindkét felvétel egyértelműen magánéleti eseményt örökít meg, a Ptk. 2:48. § (2) bekezdése sem alkalmazható. A bíróság nem vizsgálta, hogy a felperes közszereplőnek minősül-e, mert ennek megállapítása önmagában a jogsértést nem zárja ki. A fentiek alapján a bíróság a Pp. 346/B. § (1) bekezdése és az új Ptk. 2:51. § (1) bekezdés a), b) és d) pontja alapján a jogsértést megállapította, kötelezte az alpereseket a fénykép eltávolítására és őket a további jogsértéstől eltiltotta. Az elsőfokú bíróság a kiadó perlését a Pp. 346/B. § (3) bekezdése alapján megfelelőnek fogadta el.

Az ítélettel szemben I. rendű alperes terjesztett elő fellebbezést. Ebben azt kérte, hogy a Fővárosi Ítélőtábla az elsőfokú bíróság ítéletét változtassa meg, a keresetet utasítsa el, felperest pedig marasztalja perköltségben. A Ptk. 2:44. § felhívását követően rámutatott, hogy az Alkotmánybíróság gyakorlata szerint a sajtó útján közzétett fényképfelvételek esetében a képmáshoz való joggal összefüggésben is alkalmazni kell az Alaptörvény IX. cikkében a véleménynyilvánítás szabadságát és a sajtószabadságot elismerő (1) és (2) bekezdést, így minden egyes konkrét ügyben meg kell vizsgálni, hogy a sajtószabadság érvényesülésének korlátozását indokolja-e az emberi méltóság védelméhez való jog.

Az I. rendű alperes álláspontja szerint a személyiségi joggal, így a képmáshoz való joggal összefüggésben is alkalmazandó a Ptk. 2:44. §-a, így nem pusztán az vezet a képmáshoz való jog megsértésére irányuló kereset elutasítására, ha a felperes hozzájárulást ad, vagy a Ptk. 2:48. § (2) bekezdésének esetei állnak fenn, hanem a képmáshoz való jog megsértése akkor sem állapítható meg, ha a felhasználás megfelel a 2:44. §-ában foglaltaknak.

Felperes nyilvános, bejelentkezés nélkül bárki számára elérhető, az eljárás során csatolt Facebook oldala hosszasan foglalkozik a felperes közéleti szerepvállalásával. Ennek keretében önmagát „újságíró, riporter, szakpolitikus" megjelölésekkel illeti. Kijelenti, hogy „nem csak mint üzletember segíti az ország szekerének irányítását", illetve hosszasan sorolja különböző közéleti szerepvállalásait. Az alperesi álláspont szerint erre tekintettel a felperes a nyilvánosság előtt a közszereplés igényével lép fel, így a

Fővárosi Ítélőtábla
1.Pf.21.458/2015/4/II.                                3

BDT1999. 4. számon közzétett eseti döntés szerint közéleti szereplőnek minősül.
A cikk közüggyel foglalkozott, egy felpereshez köthető céghálózatot mutatott be. Az alperesi magatartás ennek megfelelően a véleménynyilvánítás szabadságának leginkább védett körébe tartozik. A felperesről közölt felvételt felperes maga osztotta meg, úgynevezett „Public" beállítással közzétette, ebből az következik, hogy az emberi méltóságot ennek felhasználása nem sérti, hiszen nem feltételezhető, hogy tudatosan önmagáról bárki a méltóságát sértő fényképet oszt meg a széles nyilvánossággal.
Felhívta az Alaptörvény XXVIII. cikkét, az Alkotmánybíróság 28/2014. (IX. 29.) számú AB határozatát. Ezzel kívánta azt az érvelést alátámasztani, miszerint a felperes önként maga lépett ki a magánszférából, maga határozott úgy, hogy a kifogásolt fényképfelvétel megfelelően kifejezi a személyiségének a külvilág felé való megnyilvánulását. Éppen ezért a Ptk. 1:5. § (1) bekezdése szerint joggal való visszaélés tilalmára is figyelemmel a felperes nem kereshet jogvédelmet az általa nyilvánosságra hozott fénykép utánközlésével kapcsolatban, mert az elszakadna a jog céljától.

Felperes fellebbezési ellenkérelmében az elsőfokú bíróság ítéletének helybenhagyását indítványozta.
Hangsúlyozta, hogy a felperes a fényképek Facebook-on való közzétételével a mások által való felhasználáshoz nem járult hozzá. A Facebook szabályzat elfogadása a fényképfelvétel felhasználásához való hozzájárulásként nem értelmezhető. Vitatta, hogy a felperes közszereplő, a felvételek egyébként is magánéleti szituációkban készültek, azt ábrázolják, ezért még akkor sem képezik szabd felhasználás tárgyát, ha a felperes közéleti szereplőnek minősülne. Felhívta a Kúria Pf.IV.21.553/2004. számú döntését.

A fellebbezés alaptalan.

Az elsőfokú bíróság a felek által felajánlott és relevanciával bíró bizonyítást lefolytatta, a rendelkezésre álló adatok alapján a tényállást helyesen állapította meg, a kereset elbírálása szempontjából irányadó jogszabályokat maradéktalanul felhívta, majd azok helytálló alkalmazását követően megalapozott érdemi döntést hozott. Az I. rendű alperes fellebbezési érvelésével összefüggésben a Fővárosi Ítélőtábla az alábbiakra mutat rá.

A Ptk. 2:48. § (1) bekezdése szerint képmás vagy hangfelvétel elkészítéséhez és felhasználásához az érintett személy hozzájárulása szükséges. A (2) bekezdés szerint nincs szükség az érintett hozzájárulására, a felvétel elkészítéséhez és az elkészített felvétel felhasználásához, tömegfelvétel és nyilvános közéleti szereplésről készült felvétel esetén. A 2:44. § szerint a közügyek szabad vitatását biztosító alapjogok gyakorlása a közéleti szereplői jogainak védelmét szükséges és arányos mértékben, az emberi méltóság sérelme nélkül korlátozhatja.

Kétségtelen, hogy a felperest ábrázoló és I. és II. rendű alperes által felhasznált felvételeket a felperes az általa regisztrált Facebook oldalon maga is nyilvánosságra hozta. Ez azonban semmiképpen nem értelmezhető akként, hogy azokat ezt követően bárki, bárhol, bármilyen témával összefüggésben közölheti, abban az esetben sem, ha erre a Facebook felhasználási feltételei szerint technikailag lehetőség van. A nyilvánosságra hozatalhoz való hozzájárulás megadása ugyanis nem általánosságban, hanem minden esetben külön-külön vizsgálandó, az ábrázolt személy jogosult annak meghatározására, hogy képmását ki, milyen módon és körben, milyen mondanivaló illusztrációjaként használja fel.

Nem ad felhatalmazást a felperes képmásának perbeli felhasználására a Ptk. 2:44. § sem. Az alkalmazandó jogszabályok szerint a közéleti szerepet vállaló személyek közéleti szereplése alkalmával készült képmása csak közszereplésükkel összefüggésben, a közéleti megnyilvánulásai által meghatározott körben, annak bemutatására használható fel az érintett hozzájárulása nélkül. I. rendű alperes álláspontjával ellentétben ezért a közélet résztvevőinek képmása nem szabad felhasználás tárgya,

Fővárosi Ítélőtábla
1.Pf.21.458/2015/4/II.                          4

magánéleti eseményekről készült felvételek nem szolgálhatnak különböző, a közszereplő konkrét megnyilvánulásaitól független gondolati tartalmak, vélemények illusztrálására. Önmagában az a körülmény, hogy a felperes korábban közéleti szerepet vállalt, a sajtót nem jogosítja fel arra, hogy a felperes magánéleti eseményeit megörökítő képmását hozzájárulása nélkül utóbb bármilyen célból felhasználja. A felperest ábrázoló fényképek közzététele ezért felperes hozzájárulása nélkül, önkényesen történt, azaz a felperes személyiségi joga sérelmével járt.

A fentiekre tekintettel az elsőfokú bíróság érdemben és indokainál fogva is helytálló döntését a Fővárosi Ítélőtábla a Pp. 253. § (2) bekezdése alapján helybenhagyta. Mivel a másodfokú eljárás során I. rendű alperes fellebbezését illetően pervesztes, a másodfokú perköltségről az ítélőtábla a Pp. 78. § (1) bekezdés alapján határozott. Ennek megfelelően I. rendű alperes köteles megfizetni felperes javára a 32/2003. (VIII. 22.) IM rendelet 3. § (2), (5) és (6) bekezdésében foglalt és a 4/A. § alapján járó másodfokú perköltséget. I. rendű alperes az 1990. évi XCIII. törvény 5. § (1) bekezdés d) pontja alapján illetékmentes, a le nem rótt fellebbezési illetéket ezért az állam viseli.

Budapest, 2016. április 26.

Fermanné dr. Polák Zita s.k.
a tanács elnöke

Véghné dr. Szabó Zsuzsanna s.k.                    dr. Hegedűs Mária s.k.
előadó bíró                                              bíró

A kiadmány hiteléül:
dr. Horváth Zsuzsanna írnok

**<u>Exhibit E</u>**



City of New York, State of New York, County of New York

I, Casey Dianni, hereby certify that the "K&H Bank Zrt." document is, to the best of my knowledge and belief and within the given parameters, a true and accurate translation from Hungarian into English.

Casey Dianni

Sworn to before me this

April 17, 2017

Signature, Notary Public

Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016  |  T 212.689.5555  |  F 212.689.1059  |  WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

**K&H Bank Zrt.**                                                                [logo:] K&H

1095 Budapest, Lechner Ödön fasor 9.
Tel: (06 1) 328 9000
Fax: (06 1) 328 9696
Budapest 1851
www.kh.hu • bank@kh.hu

**Transaction data**

| | | | |
|---|---|---|---|
| Transaction type | Bank wire – electronic, outside of bank | | |
| Accounting amount | -12,700 HUF | Settlement amount | -12,700 HUF |
| Accounting value date | 07/20/2016 | | |
| Originator's name | Kinja Kft. | | ███████████████ |
| Originator's account number | HU77 1040 1093 0002 7539 0000 0002 | | |
| Originator bank | K&H BANK ZRT | | |
| Transaction ID | ███████████ | Comment | Aladár Baldauf legal costs |
| Unique ID: | NOTPROVIDED | | |
| Date of settlement | 07/20/2016 | | |
| Transaction value date | | Transaction date | 07/20/2016 |

**Other data**

| | | | |
|---|---|---|---|
| Originator's ID | | Partner's ID | |
| Originator's type | | Partner's type | |
| Originator's country code | HU | Partner's country code | |
| Originator's ID type | | Partner's ID type | |
| Statistics code | | Organization ID | |
| Wire transfer authorization category | | Wire transfer authorization | |

**Actual originator**                          **Actual partner**

| | | |
|---|---|---|
| Actual originator's ID | | Actual partner's ID |
| Actual originator's ID type | | Actual partner's ID type |
| Actual originator | | Actual partner |
| Actual originator's type | | Actual partner's type |



[logo:]
K&H -
THE BANK OF THE HUNGARIAN PARALYMPIC TEAM
Member of the KBC Group

Company registry number: Cg. 01-10-041043  Registrar: Company Registry Court of Budapest Capital Regional Court

**K&H Bank Zrt.**

1095 Budapest, Lechner Ödön fasor 9.
telefon: (06 1) 328 9000
fax: (06 1) 328 9696
Budapest 1851
www.kh.hu • bank@kh.hu



## tranzakció adatai

| | | | |
|---|---|---|---|
| tranzakció típus | Átutalás -elektronikus bankon kívül | | |
| könyvelt összeg | -12,700 HUF | elszámolás összege | -12,700 HUF |
| könyvelés értéknapja | 2016.07.20 | tranzakció összege | |
| megbízó neve | Kinja Kft. | | |
| megbízó számlaszáma | HU77 1040 1093 0002 7539 0000 0002 | | |
| megbízó bank | K&H BANK ZRT | | |
| tranzakció azonosító | ███████████ | közlemény | Baldauf Aladár perköltség |
| egyedi azonosító | NOTPROVIDED | | |
| elszámolás napja | 2016.07.20 | | |
| tranzakció értéknapja | | tranzakció dátuma | 2016.07.20 |

## egyéb adatok

| | | | |
|---|---|---|---|
| megbízó azonosítója | | partner azonosítója | |
| megbízó típusa | | partner típusa | |
| megbízó országkódja | HU | partner országkódja | |
| megbízó azonosító típusa | | partner azonosító típusa | |
| statisztikai kód | | szervezetazonosító | |
| átutalás jogcím kategóriája | | átutalás jogcíme | |

## tényleges megbízó

| | | |
|---|---|---|
| tényleges megbízó azonosítója | | |
| tényleges megbízó azonosító típusa | | |
| tényleges megbízó | | |
| tényleges megbízó típusa | | |

## tényleges partner

| | | |
|---|---|---|
| tényleges partner azonosítója | | |
| tényleges partner azonosító típusa | | |
| tényleges partner | | |
| tényleges partner típusa | | |





a KBC csoport tagja