ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Plan Administrator
for the Debtors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
: 
In re : Chapter 11
: 
Gawker Media LLC, *et al.*,[1] : Case No. 16-11700 (SMB)
: 
Debtors. : (Jointly Administered)
: 
------------------------------------------------------x

**OMNIBUS REPLY IN SUPPORT OF MOTION FOR LEAVE PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE TO CONDUCT DISCOVERY CONCERNING POTENTIAL CAUSES OF ACTION AND TO <u>ESTABLISH DISCOVERY RESPONSE AND DISPUTE PROCEDURES</u>**

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

61937250_6

**Table of Contents**

I.   THE DEBTORS ARE ENTITLED TO CONDUCT A RULE 2004 EXAMINATION TO DETERMINE WHETHER TO PURSUE POTENTIAL ESTATE CAUSES OF ACTION ......... 4

   A.   The Debtors Have Good Cause To Conduct A Rule 2004 Examination To Determine Whether A Potential Estate Cause Of Action Against Thiel Exists .......................................... 5

   B.   The Objecting Parties' Legal Challenges To The Potential Estate Causes Of Action Are Not Grounds To Deny The Rule 2004 Motion .......................................................................... 5

   C.   The Proposed Rule 2004 Examination Is Proportional To The Needs Of These Cases ... 10

II.  THE RELIEF REQUESTED IN THE RULE 2004 MOTION IS CONSISTENT WITH THE CREDITOR SETTLEMENT AGREEMENTS .................................................................. 12

III. THE DEBTORS HAVE ACTED IN GOOD FAITH IN ACCORDANCE WITH THE BOLLEA SETTLEMENT AGREEMENT ................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Barrett v. Huff*,
  776 N.Y.S.2d 678 (App. Div. 2004)...................................................................................9

*Brandt v. Winchell*,
  3 N.Y. 2d 628 (N.Y. 1958) ................................................................................................7

*Creditsights, Inc. v. Ciasullo*,
  No. 05 Civ. 9345(DAB)(MHD), 2009 WL 3821441 (S.D.N.Y. Nov. 6, 2009) ...............12

*First Financial Savings Ass'n v. Kipp*,
  86 B.R. 490 (Bankr. W.D. Tex. 1988)...............................................................................7

*Glob. Burns, Jackson, Miller, Summit & Spitzer v. Lindner*,
  437 N.Y.S. 2d 895 (N.Y. Sup. Ct. 1981) ...........................................................................9

*Glob. Fin. Corp. v. Triarc Corp.*,
  93 N.Y.2d 525 (1999) ........................................................................................................9

*Gragg v. Int'l Mgmt. Group*,
  No. 5:03-CV-0904, 2007 WL 1074894 (N.D.N.Y. Apr. 5, 2007)...................................12

*In re Bellville*,
  Case No. 00-11144, 2002 WL 31761279 (Bankr. D. Vt. Aug. 9, 2002) ...........................6

*In re Enron Corp.*,
  281 B.R. 836 (Bankr. S.D.N.Y. 2002)...............................................................................6

*In re J & R Trucking, Inc.*,
  431 B.R. 818 (Bankr. N.D. Ind. 2010)...............................................................................6

*In re Recoton Corp.*,
  307 B.R. 751 (Bankr. S.D.N.Y. 2004)...............................................................................5

*In re Roman Catholic Church of the Diocese of Gallup*,
  513 B.R. 761 (Bankr. D.N.M. 2014) .................................................................................5

*In re SunEdison, Inc.*,
  562 B.R. 243 (Bankr. S.D.N.Y. 2017)...........................................................................4, 6

*In re Symington*,
  209 B.R. 678 (Bankr. D. Md. 1997) ..................................................................................6

*In re Wash. Mutual, Inc.*,
  408 B.R. 45 (Bankr. D. Del. 2009) ....................................................................................5

*Jemison v. Crichlow,*
    139 A.D.2d 332 (N.Y. App. Div. 1988) ..................................................................9

*Justinian Cap. SPC ex rel. Blue Heron Segregated Portfolio v. WestLB AG,*
    981 N.Y.S. 2d 302 (N.Y. Sup. Ct. 2014) ................................................................7

*Noveck v. PV Holdings Corp.,*
    742 F. Supp. 2d 284 (E.D.N.Y. 2010), *aff'd, appeal dismissed sub nom. Noveck v. Avis Rent A Car Sys., LLC*, 446 F. App'x 370 (2d Cir. 2011) ...................................13

*Schoolcraft v. City of New York,*
    103 F. Supp. 3d 465, 527 (S.D.N.Y. 2015)............................................................7

*Stacom v. Wunsch,*
    173 A.D.2d 401 (N.Y. App. Div. 1991) ...............................................................10

*State of California Pub. Employees' Ret. Sys. v. Shearman & Sterling,*
    741 N.E.2d 101 (2000)..........................................................................................13

*The Official Comm. of Unsecured Creds. of Hechinger Inv. Co. of Del., Inc. v. Friedman (In re Subpoena Issued to Dennis Friedman),*
    350 F.3d 65 (2d Cir. 2003).....................................................................................11

*Yash Raj Films (USA) v. Kumar,*
    No. 05-CV-3811 (FB)(KAM), 2007 WL 3124557 (E.D.N.Y. Oct. 25, 2007) .......12

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 2004(b) ................................................................................................4

Federal Rule of Civil Procedure 30(b)(6) ......................................................................10

William D. Holden, as Plan Administrator for the above-captioned debtors (the "Debtors"), through his attorneys Ropes & Gray LLP, files this omnibus reply in support of the *Motion of the Debtors for Leave Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to Conduct Discovery Concerning Potential Plan Issues and Potential Causes of Action, and to Establish Discovery Response and Dispute Procedures* [Docket No. 341] (the "Rule 2004 Motion") and in response to the objections filed by Harder Mirell & Abrams LLP ("Harder Law Firm"), Charles J. Harder (and together with Harder Law Firm, "Harder"), Thiel Capital LLC, Peter Thiel (and together with Thiel Capital LLC, "Thiel"), and Terry G. Bollea (collectively, the "Objecting Parties") to the Rule 2004 Motion[2] (collectively, the "Objections"), and respectfully represents and states as follows:

## PRELIMINARY STATEMENT

1. The Debtors have a fiduciary duty to maximize value for all stakeholders and to do so, a corresponding obligation to prudently investigate potentially viable estate causes of action. To that end and others, the Debtors filed the Rule 2004 Motion on October 11, 2016.

2. Since filing the Rule 2004 Motion, the Debtors have significantly advanced these bankruptcy cases in part, they believe, because of the Rule 2004 Motion. Indeed, shortly after filing the Rule 2004 Motion, the Debtors settled outstanding litigations brought by Mr. Bollea, Ms. Terrill, and Dr. Ayyadurai (collectively, the "Creditor Settlement Agreements"). These Creditor Settlement Agreements were approved as part of the December 22, 2016 order

---

[2] The Objections are: (i) *Objection of Harder Mirell & Abrams LLP and Charles J. Harder, Esq. to Motion of the Debtors for Leave Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to Conduct Discovery Concerning Potential Plan Issues and Potential Causes of Action, and to Establish Discovery Response and Dispute Procedures* [Docket No. 869] (the "Harder Objection"); (ii) *Objection of Peter Thiel and Thiel Capital LLC to Motion of the Debtors for Leave Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to Conduct Discovery Concerning Potential Plan Issues and Potential Causes of Action, and to Establish Discovery Response and Dispute Procedures* [Docket No. 870] (the "Thiel Objection"); and (iii) *Objection of Terry G. Bollea to Motion of the Debtors for Leave Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to Conduct Discovery Concerning Potential Plan Issues and Potential Causes of Action, and to Establish Discovery Response and Dispute Procedures* [Docket No. 871] (the "Bollea Objection").

1

61937250_6

confirming the *Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 638-1] (the "Plan"), which Plan went effective on March 17, 2017.[3]

3. Accordingly, the Debtors readily concede that parts of the relief originally requested in the Rule 2004 Motion are no longer being pursued, and have advised the Objecting Parties of the limited relief the Plan Administrator still seeks. Specifically, in light of the foregoing developments and consistent with the Creditor Settlement Agreements, at this juncture, the Plan Administrator only seeks relief under Rule 2004[4] to determine whether he should commence any cause of action against Mr. Thiel and/or related parties, including an action for *prima facie* tort under New York law (collectively, the "Potential Estate Causes of Action"). In that regard, the Rule 2004 Motion is directed solely to Thiel and Harder,[5] and as their counsel have been advised, no longer involves Plan-related issues and does not seek any expedited relief.

4. Such an examination is entirely proper. The Debtors have not released Thiel, nor have they waived their right to pursue the Rule 2004 Motion and discovery that is not expressly prohibited by the Creditor Settlement Agreements. Indeed, the Debtors maintain that at least certain discovery, which Thiel and Harder would not consensually provide, is necessary for the Debtors to enter into the proposed settlement agreement that included the "mutual releases" contemplated by the Cooperation to Secure Agreements attached as Exhibit C to the Creditor

---

[3] The Debtors have adjourned the hearing on the Rule 2004 Motion seven times in order to work in good faith with Mr. Thiel, Harder, and Mr. Bollea to facilitate a global resolution among Nick Denton, Mr. Thiel, Thiel Capital LLC and the Debtors, which would consensually resolve the Rule 2004 Motion. To date, these efforts have not borne fruit and indeed, the parties did not even engage the Debtors until February 2017, when they delivered an agreement already fully negotiated among Thiel, Bollea and Denton and included a full release of Thiel. At that point, the Debtors requested information that would have enabled them to assess whether to agree to release Thiel. Counsel to Thiel would not agree to provide such information.

[4] Capitalized terms not defined herein shall have the meanings ascribed to them in the Rule 2004 Motion.

[5] The Debtors acknowledge that they have released Harder from any liability under the settlement agreement with Bollea.

2

61937250_6

Settlement Agreement with Bollea (the "Bollea Settlement Agreement").  Thus, while the Objecting Parties seize on the Debtors' acknowledgement of that they will need to carry a heavy burden should they pursue a *prima facie* tort claim, the Objecting Parties entirely ignore the fact that Thiel sought a release from the Debtors, but provided no information upon which the Debtors could agree to that release and ignore the Debtors' and Plan Administrator's fiduciary obligation to determine whether there is a Potential Estate Cause of Action to pursue.  Consequently, by advocating the denial of the Rule 2004 Motion, the Objecting Parties are seeking what they could not obtain from the Debtors and Plan Administrator directly: a full release of any Potential Estate Causes of Action against Thiel for no consideration.

5. So, it is no surprise that the Objecting Parties may want to "move on," and not respond to the Rule 2004 Motion.  Mr. Bollea is free to do so as he has no obligations given the Bollea Settlement.  But for Thiel and Harder it is simply not that simple.  The Debtors' chapter 11 cases not only had their genesis in actions taken by Thiel but also stakeholder recoveries may have been adversely affected by his conduct.  Thus, although Mr. Thiel may facially point to financial or other reasons for his financing of the *Bollea I* lawsuit, and possibly other litigations against Gawker, the Debtors should be permitted discovery pursuant to the Rule 2004 Motion as to whether such reasons were pretext and whether there is a colorable claim that Mr. Thiel was solely motivated by malice or another actionable intention.  Moreover, although while the Objecting Parties all wish to contend that the hardships outweigh the potential benefits of such limited discovery, the potential value of the Plan Administrator's successful prosecution of a Potential Estate Cause of Action could well run in the millions to tens of millions of dollars.  Accordingly, the Debtors respectfully request that the Court exercise its discretion to grant the

3

Rule 2004 Motion as modified by the representations set forth herein and as the Court determines is just and proper.

## OMNIBUS REPLY

I. **THE DEBTORS ARE ENTITLED TO CONDUCT A RULE 2004 EXAMINATION TO DETERMINE WHETHER TO PURSUE POTENTIAL ESTATE CAUSES OF ACTION**

6. As set forth in the Rule 2004 Motion, the Court may authorize a Rule 2004 examination of any entity relating to the acts, conduct, or property or to the liabilities and financial condition of the Debtors, or to any matter which may affect the administration of the Debtors' estates. *See* Fed. R. Bankr. P. 2004(b). To prevail on such a request, the party seeking to conduct a Rule 2004 examination must show good cause by establishing that the proposed examination " 'is necessary to establish the claim of the party seeking the examination, *or* … denial of such request would cause the examiner undue hardship or injustice. *In re SunEdison, Inc.*, 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017) (internal citations omitted) (emphasis added). Furthermore, although the proponent of the Rule 2004 examination may not conduct a "fishing expedition," the scope of Rule 2004 discovery is still broad and may encompass broader discovery than is available under the Federal Rules of Civil Procedure. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. Nos. 08-01789 (SMB), 14-01840 (SMB), Case No. 09-11893 (SMB), 2014 WL 5486279, at *2 (Bankr. S.D.N.Y. Oct. 30, 2014).

7. The Objecting Parties do not even contend that the Debtors are pursuing a "fishing expedition," nor could they. The Debtors have tailored the discovery to obtain the information necessary to determine whether facts exist upon which they may prosecute a Potential Estate Cause of Action. Instead, the Objecting Parties challenge the Debtors' ability to bring a *prima facie* tort claim (one of the Potential Estate Causes of Action that the Debtors may bring against Thiel and/or other related persons/entities) on procedural grounds and on the merits

4

of the claim itself. As discussed below, none of these arguments is a basis upon which to deny the Debtors the opportunity to conduct a Rule 2004 examination.

      **A.    The Debtors Have Good Cause To Conduct A Rule 2004 Examination To Determine Whether A Potential Estate Cause Of Action Against Thiel Exists**

      8.    The Debtors seek to use a Rule 2004 examination to ascertain whether Thiel's conduct gives rise to a Potential Estate Cause of Action. The use of Rule 2004 as a pre-litigation discovery tool to determine whether a debtor can bring a cause of action against a third party is entirely appropriate so long as the proposed examination is not designed to abuse or harass. *See, e.g.*, *In re Wash. Mutual, Inc.*, 408 B.R. 45, 53 (Bankr. D. Del. 2009) (internal citations omitted) ("One of the primary purposes of a Rule 2004 examination is as a pre-litigation device."); *In re Recoton Corp.*, 307 B.R. 751, 756 (Bankr. S.D.N.Y. 2004) ("The Rule 2004 discovery sought by the Committee is thus *prima facie* consistent with the Rule's above-stated purposes of allowing the Committee to obtain information necessary to determine whether claims beneficial to the estates exist and whether to pursue such claims. The Committee also states unequivocally and convincingly that it has not decided whether or not to pursue litigation.").

      9.    As set forth more fully in the Rule 2004 Motion and below, the Debtors have pled sufficient facts to show that there is good cause for their investigation. Accordingly, the Plan Administrator requests that the Motion be granted.

      **B.    The Objecting Parties' Legal Challenges To The Potential Estate Causes Of Action Are Not Grounds To Deny The Rule 2004 Motion.**

      10.    The Objecting Parties request that this Court deny the Rule 2004 Motion because the Debtors could not possibly prevail on the *prima facie* tort claim. As demonstrated below, these objections miss the point. Moreover, to the extent the Court considers them, they fail to support the Objecting Parties contention that the Rule 2004 Motion should be denied. *In re Roman Catholic Church of the Diocese of Gallup*, 513 B.R. 761, 764-65 (Bankr. D.N.M. 2014)

5

(internal citation omitted) (Committee not required to show it would likely prevail in suit against Rule 2004 target as a condition to taking Rule 2004 discovery).

11. First, the Objecting Parties' legal grounds for denying a *prima facie* tort claim belong in a motion to dismiss or motion for summary judgment if and when the Plan Administrator determines to pursue a Potential Estate Cause of Action. *See, e.g.*, Bollea Objection ¶¶ 11, 42, 46; Harder Objection ¶¶ 14-16, 18-19; Thiel Objection ¶¶ 14-17. At this stage, the Court is simply to determine whether the Debtors have shown that good cause exists for a Rule 2004 examination. *SunEdison*, 562 B.R. at 249. And, to rule on the merits of a Potential Estate Cause of Action now would defeat one of the fundamental uses of Rule 2004: to conduct a pre-litigation examination to determine whether facts exist upon which to pursue a potential estate claim. *See, e.g.*, *In re Symington,* 209 B.R. 678, 684 (Bankr. D. Md. 1997) ("As an investigatory tool, [the] nature [of Rule 2004] is inquisitory rather than accusatory, although information discovered by its employment may presage litigation."); *In re J & R Trucking, Inc.*, 431 B.R. 818, 822 (Bankr. N.D. Ind. 2010) ("[A 2004 examination] allows the trustee to do the necessary investigatory work without the need for initiating formal litigation . . . one purpose for such an examination is to give the trustee the information needed to determine whether litigation should be filed.").

12. Moreover, in pursuing the Rule 2004 Motion, the Debtors are not, as Harder contends, circumventing the limitations on discovery in adversary proceedings. *See* Harder ¶¶ 24-25. There is no pending adversary proceeding that limits the permissible discovery as Harder contends, and as noted above, Rule 2004 permits broader discovery.[6]

---

[6] Each of the cases that Harder cites in support of his argument support the proposition, not applicable here, that a litigant to a pending adversary proceeding should not conduct a Rule 2004 examination. *See, e.g.*, *In re Enron Corp.*, 281 B.R. 836, 844 (Bankr. S.D.N.Y. 2002) (plaintiffs in an ongoing class action law suit in which discovery was stayed could not employ Rule 2004); *In re Bellville*, Case No. 00-11144, 2002 WL 31761279, at *3 (Bankr. D.

6

13. Additionally, even if the Court were to consider the merits of a *prima facie* tort claim, the Rule 2004 Motion should still be granted. As discussed in the Rule 2004 Motion, the Debtors would have an actionable *prima facie* tort claim to the extent that Mr. Thiel intended to destroy the Debtors' business without excuse or justification and motivated solely by malice toward the Debtors.[7] *See* Rule 2004 Motion ¶¶ 41-42. Thiel asserts that there is no possible cause of action because a newspaper article that the Debtors cite to references a range of possible motivations that Mr. Thiel may have had for funding *Bollea I*. Thiel Objection ¶ 15-16. But this ignores the possibility that some of those asserted grounds may merely be pretext. Thiel also analogizes his situation to *Brandt v. Winchell*, 3 N.Y. 2d 628 (N.Y. 1958), which affirmed dismissal of a *prima facie* tort claim where the defendant had openly reported the plaintiff's alleged crimes to law enforcement authorities. The factual circumstances in *Brandt* are simply different than Mr. Thiel's secret funding of civil litigation against the Debtors.

14. The Objecting Parties have not provided a consistent explanation of Mr. Thiel's motivation in funding *Bollea I,* any other litigation or other efforts to end the Debtors' business operations. Indeed, recently Mr. Thiel offered another explanation for his actions "to take down Gawker." Specifically, in an interview at the National Press Club on October 31, 2016 made subsequent to the filing the Rule 2004 Motion, Mr. Thiel was asked why he funded third-party litigation "to take down Gawker" and responded as follows:

---

Vt. Aug. 9, 2002) (movant could not procure information through Rule 2004 that it could not otherwise obtain through pending adversary proceeding); *First Financial Savings Ass'n v. Kipp*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988) (since Rule 2004 movant had already initiated an adversary proceeding, "it may no longer use Rule 2004 to obtain discovery relevant to the adversary.")

[7] Harder argues that a *prima facie* tort claim is barred because New York courts have rejected claims for champerty and maintenance. However, New York continues to recognize both claims under appropriate circumstances. *See, e.g.*, *Justinian Cap. SPC ex rel. Blue Heron Segregated Portfolio v. WestLB AG*, 981 N.Y.S. 2d 302, 303 (N.Y. Sup. Ct. 2014) ("New York . . . continues to recognize the [champerty and maintenance] doctrine under Judiciary Law § 489); *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 527 (S.D.N.Y. 2015) (explaining elements of *prima facie* tort claim).

7

> **Thomas Burr, President of the National Press Club (moderator):**
> You've had a feud with Gawker for more than a decade, as I said in my introduction. When did you decide that funding another person's lawsuit would be the best course of action to take down Gawker, and when did you set this in motion?
>
> **Mr. Thiel**: You know, it would have been roughly co-equal with the time the Harder firm started to work with Hogan, so over four or five years ago. You know, my initial view was that what you were supposed to do was you were supposed to take you beatings, crouch down, go into a fetal position and then hope they moved on to somebody else. And sort of around 2011, one of my friends convinced me that if Gawker could get away with this sort of sociopathic repeat behavior over and over, it was this tragedy of the commons. Nobody would ever – you know, they would continue to ruin lives one after another.
>
> And there were many people they did things to far worse than me. And so, I was convinced that if I didn't do something, nobody would.

Transcript of Interview by Thomas Burr with Peter Thiel, in Washington, D.C. (Oct. 31, 2016), at 14-15.[8] Mr. Thiel's response did not dispute his intention – to take down Gawker – and simply recounted when he settled on his method – to fund the Bollea litigation.

15. Furthermore, based on unsolicited filings in these chapter 11 cases, it is also clear that Harder was providing legal advice and/or information to Meanith Huon in his lawsuit against Gawker Media since at least 2012, with Harder's "client" paying the costs. *See* Letter from Meanith Huon to the Honorable Stuart M. Bernstein (Dec. 12, 2016) [Docket No. 582] (the "Huon Letter") at 5 (Emails between Messrs. Huon and Harder, dated Feb. 1, 2016) (Huon: "Do you think your client would be willing to reimburse [costs]?" Harder: "No problem.")) and at 7 (Email from Mr. Harder to Mr. Huon dated Dec. 11, 2013) (Harder: "Yes, the cavalry is still behind you. We would need to discuss specifics . . . .")).[9] The foregoing facts introduced into the

---

[8] A true and correct copy of the foregoing interview is attached hereto as **Exhibit A**.
[9] A true and correct copy of the Huon Letter is attached hereto as **Exhibit B**.

8

61937250_6

public record since the filing of the Rule 2004 Motion further demonstrate the Debtors' need for a targeted Rule 2004 examination into Mr. Thiel's motivations and actions toward the Debtors.[10]

16. Finally, Harder's contention that the Debtors' potential *prima facie* tort claim is barred by the statute of limitations is also incorrect. Specifically, Harder argues that a *prima facie* tort claim is time barred because the statute of limitation runs from accrual, not discovery, of the cause of action – without mentioning when it believes the *prima facie* tort cause of action accrual occurred. Harder Objection ¶ 20. One of the elements of a *prima facie* tort claim necessary for accrual of the cause of action is the plaintiff's special damages resulting from the defendant's intentional infliction of harm. For the Debtors, this would have occurred following the specific economic loss caused by entry of the judgment in the *Bollea I* lawsuit on June 7, 2016. *See, e.g.*, *Glob. Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529 (1999) (a plaintiff has no cause of action until it has suffered an injury); *Glob. Burns, Jackson, Miller, Summit & Spitzer v. Lindner*, 437 N.Y.S. 2d 895, 904 (N.Y. Sup. Ct. 1981) (special damages properly alleged in form of loss of business that could be established by documentary proof). Thus, a *prima facie* tort claim is not barred by the three-year statute of limitations applicable here where the harm alleged would be to the Debtors' economic interests.[11] *Barrett v. Huff*, 776 N.Y.S.2d 678, 680 (App. Div. 2004); *see also Jemison v. Crichlow,* 139 A.D.2d 332, 336 (N.Y. App. Div. 1988) (*aff'd.* 74

---

[10] Harder misses the mark in arguing that Mr. *Bollea's* intent or motives are relevant to a *prima facie* tort claim against Thiel and/or related persons. *See* Harder Objection ¶ 15 (Bollea bringing suit is not tortious); ¶ 16 (Bollea had a valid reason to sue); ¶¶ 16-18 (comparing *prima facie* tort claim to malicious prosecution action). A *prima facie* tort claim would focus on Mr. Thiel's actions and intentions, not Mr. Bollea's. Nor would the Debtors bring a malicious prosecution claim against Mr. Thiel, as Harder suggests. *Id.* at ¶ 18. Thiel was not the plaintiff in the *Bollea I* litigation.

[11] Separately, Thiel posits that Florida's substantive law, and not New York law would "likely" apply to a *prima facie* tort claim because New York choice of law rules provide that torts intended to deter or regulate conduct are governed by the substantive law of the jurisdiction in which the injury occurred. Thiel Objection ¶ 13 fn. 7. Here, the "injury" was to Gawker Media in New York, its principal place of business. While Thiel may have committed wrongful conduct outside of New York (a Rule 2004 examination would be required to determine where), the effect of the wrongful conduct was felt by Gawker Media in New York. In cases of purely economic injury, the cause of action generally accrues where the plaintiff resides and therefore sustains the economic loss. *See Global Fin.*, 93 N.Y.2d at 529. Accordingly, New York's substantive law would apply if the Debtors brought a *prima facie* tort claim.

9

N.Y.2d 726); *Stacom v. Wunsch,* 173 A.D.2d 401 (N.Y. App. Div. 1991) (*lv. denied* 78 N.Y.2d 859, 575 N.Y.S.2d 455, 580 N.E.2d 1058).

### C. The Proposed Rule 2004 Examination Is Proportional To The Needs Of These Cases

17. As explained above, the Debtors' targeted Rule 2004 examination request is aimed at determining whether they may be able to assert any Potential Estate Causes of Action against Thiel and/or related parties, which could bring millions of dollars in recovery for distribution to beneficiaries pursuant to the Plan. Thiel and Harder contend that even if the Rule 2004 examination is necessary to determine whether a Potential Estate Cause of Action exists or if denial of the Rule 2004 Motion would cause the Debtors undue hardship or injustice to the Debtors, the harm of responding to the information requested by the Rule 2004 Motion outweighs any potential estate benefits. This argument should be rejected.

18. First, Thiel is simply wrong in arguing that the requested discovery is not important to the outcome of the cases and unrelated to creditor recoveries. Thiel Objection ¶¶ 18-19. The proposed discovery requests for Thiel and Federal Rule of Civil Procedure 30(b)(6) subpoena for Thiel Capital is aimed at just two topics: (i) documents and communications regarding Thiel's relationship with Harder and potential or actual causes of action against the Debtors and (ii) documents and communications relating to Scott Sonnenblick's efforts to purchase, to take control of, or to facilitate a purchase of or taking control of, GMGI. *See* Rule 2004 Motion Appendices 2-3. Notably, Thiel does not argue that complying with the proposed Rule 2004 examination would be unduly burdensome. More fundamentally, the Court should decline Thiel's self serving request to substitute the Debtors' business judgment with Thiel's. It is uncontroverted that Mr. Thiel funded at least the *Bollea I* lawsuit, which judgment resulted in these chapter 11 cases and the loss of millions of dollars in the Debtors' enterprise value. It is

10

61937250_6

also incontestable that in order to effectuate a sale that maximized value for the Debtors' stakeholders, the Debtors had to remove gawker.com from the purchased assets and endure threats of litigation by Harder, potentially backed by funding Thiel, which depressed the market for potential buyers unwilling to risk a bid and be sued by Harder clients funded by Thiel. Thus, the Debtors believe that the Potential Estate Causes of Action could yield millions if not tens of millions dollars in recovery. Consequently, the importance and scope of the Debtors' proposed Rule 2004 examination plainly outweighs any hardship imposed on Harder and Thiel.

19. Nor are Harder's contentions correct that the Rule 2004 Motion should be denied because the Debtors are seeking privileged information and in any event because the Debtors have not met a heightened standard in requesting discovery from a law firm. Harder Objection ¶¶ 22, 33. First, Harder need not produce privileged information. As in any discovery, Harder may withhold documents on account of privilege and provide a privilege log, subject to the Debtors' right to challenge any such documents as not privileged. And, as Harder's own case citations provide, being an attorney or a law firm does offer an automatic shield from discovery. *The Official Comm. of Unsecured Creds. of Hechinger Inv. Co. of Del., Inc. v. Friedman (In re Subpoena Issued to Dennis Friedman)*, 350 F.3d 65, 72 (2d Cir. 2003) ("…the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered.").

20. Moreover, Harder's request that the Court employ a heightened standard for the Debtors to obtain discovery from "litigation counsel" misses an important point – he was not Thiel's litigation counsel. Moreover, Harder's argument is divorced from the law and the facts of this Rule 2004 Motion. Harder offers no legal support for his argument that the Debtors need

11

to meet a heightened legal standard to obtain discovery in the context of a request for a Rule 2004 examination. Further, to the extent that the Court considers additional factors in connection with discovery relating to attorneys, each of Harder's cited cases make clear that such a review is made when a party is seeking to *depose* opposing counsel in a lawsuit. *See, e.g.*, *Creditsights, Inc. v. Ciasullo*, No. 05 Civ. 9345(DAB)(MHD), 2009 WL 3821441, at *1 (S.D.N.Y. Nov. 6, 2009) ("We decline to authorize a deposition of plaintiff's trial attorney"); *Yash Raj Films (USA) v. Kumar*, No. 05-CV-3811 (FB)(KAM), 2007 WL 3124557, at *5 (E.D.N.Y. Oct. 25, 2007) (denying reconsideration of order which denied party the opportunity to depose opposing counsel in lawsuit); *Gragg v. Int'l Mgmt. Group*, No. 5:03-CV-0904 (NPM/DEP), 2007 WL 1074894, at *9-10 (N.D.N.Y. Apr. 5, 2007) (denying plaintiff's application for leave to depose opposing party's counsel in lawsuit). Here: (i) the Debtors are not seeking to depose Harder as part of a Rule 2004 examination; (ii) there is no pending lawsuit; and (iii) Harder has not held itself out as Thiel's litigation counsel even if there was a lawsuit.

## II.   THE RELIEF REQUESTED IN THE RULE 2004 MOTION IS CONSISTENT WITH THE CREDITOR SETTLEMENT AGREEMENTS

21.   The Objecting Parties also suggest, if not expressly contend, that the Rule 2004 Motion is being pursued in violation of or barred by the Creditor Settlement Agreements. *See* Harder Objection ¶ 14; Thiel at 2; Bollea ¶ 12. This is simply not true.

22.   The Debtors' settlement agreements with Ms. Terrill and Dr. Ayyadurai provide in relevant part:

> **2004 Motion and Associated Claims:** The Gawker Entities shall, upon execution of this Term Sheet, immediately suspend prosecution of the 2004 Motion until at least the Effective Date (the "**Suspension Period**"). The Gawker Entities shall not seek from [Ayyaduari] [Terrill] or any third party any discovery about [Ayyaduari] [Terrill], including, without limitation, discovery concerning the subject matter of the 2004 Motion, litigation funding or finance, the [Ayyaduari] [Terrill] Action, the Gawker BK Action, the Denton BK Action, and any and all related proceedings,

12

> except for the following discovery to [Ayyaduari] [Terrill] only: any litigation financing agreement(s) relating to the Lawsuit or claims in the lawsuit, and any non-privileged retainer agreements with Charles J. Harder, Esq. or the law firm of Harder Mirell & Abrams LLP to the Lawsuit or claims in the Lawsuit.

Ayyadurai Settlement Agreement ¶ 9; Terrill Settlement Agreement ¶ 10. The Bollea Settlement Agreement provides in relevant part:

> **2004 Motion and Associated Claims:** The Gawker Debtors will continue to suspend prosecution of the 2004 Motion through at least the Effective Date (the "**Suspension Period**"). In the event that the Suspension Period expires and the Gawker Debtors pursue the 2004 Motion, the Debtors shall not seek from Bollea or any other third party any discovery about Bollea, including, without limitation, discovery concerning the subject matter of the 2004 Motion, litigation funding or finance, the Bollea I Lawsuit, the Bollea II Lawsuit, the Bankruptcy Cases, the Denton Bankruptcy Case, the Daulerio Collection Proceedings, and/or any and all related proceedings, whatsoever.

Bollea Settlement Agreement ¶ 18. Nothing in the Creditor Settlement Agreements prevents the Debtors from pursuing the Rule 2004 Motion or seeking information from Thiel or Harder regarding Mr. Thiel's actions and motivations.[12] The Debtors are not requesting information about any of the three settled lawsuits in particular, and all of the Creditor Settlement Agreements expressly contemplated the continuation of the Rule 2004 Motion. And finally, Thiel is simply not a third-party beneficiary to any of the Creditor Settlement Agreements and thus cannot use them as cover to avoid a Rule 2004 examination.[13]

---

[12] Bollea makes the strained argument that the Debtors violate the Bollea settlement agreement in pursuing the Rule 2004 Motion because the Debtors have not provided releases to Thiel. Bollea ¶ 44. The Debtors did not agree to release Thiel as part of the Bollea settlement agreement. The Debtors and Bollea jointly agreed to cooperate and work in good faith to secure settlement agreements with Thiel and others. Bollea Settlement Agreement ¶ 19. As discussed in further detail below, the Debtors have worked in good faith to achieve a consensual resolution of the Rule 2004 Motion. That such efforts have not borne fruit to date does not mean, as Bollea argues, that the Debtors are required to release Thiel or else be in violation of the Bollea Settlement Agreement.

[13] Under New York law, only an intended third party beneficiary to a settlement agreement may enforce the settlement agreement. *Noveck v. PV Holdings Corp.*, 742 F. Supp. 2d 284, 295-96 (E.D.N.Y. 2010), *aff'd, appeal dismissed sub nom. Noveck v. Avis Rent A Car Sys., LLC*, 446 F. App'x 370 (2d Cir. 2011). In particular, there is nothing in the Creditor Settlement Agreements to suggest that any of their provisions were intended for Thiel's benefit. *See State of California Pub. Employees' Ret. Sys. v. Shearman & Sterling*, 741 N.E.2d 101, 104 (2000).

13

### III. THE DEBTORS HAVE ACTED IN GOOD FAITH IN ACCORDANCE WITH THE BOLLEA SETTLEMENT AGREEMENT

23. Throughout these chapter 11 cases, the Debtors have worked in good faith with all constituencies to effectuate a sale of substantially all of the Debtors assets and confirm the Plan. Taken together, these efforts resulted in the continuity of the Debtors' business through a sale to a subsidiary of Univision Communications, no job losses, a 100% distribution to the Debtors' creditors, and an initial distribution to the Debtors' equity holders. These results were hardly pre-ordained when the Debtors filed their petitions. As the Court is well aware, the $130 million judgment against the Debtors in *Bollea I* threatened an immediate shutdown and dismantling of the Debtors' business. It was not a given that the Debtors would be able to settle with Bollea, Ayyadurai, Terrill, and others or sell their assets for more than the stalking horse bid. The Debtors have achieved these results by working in good faith to achieve practical solutions that have benefited the estates and the Debtors' stakeholders.

24. Thiel and Bollea, however, argue that the Debtors have not worked in good faith because they have not withdrawn the Rule 2004 Motion. In particular, Thiel and Bollea point to the existence of an "agreement in principle" (according to Bollea) and "settlement discussions" (according to Thiel) between Messrs. Thiel and Denton. Bollea Objection ¶ 17; Thiel at 1. According to Thiel and Bollea, the Debtors have not worked in good faith because the Debtors have not agreed to provide Thiel with releases. Missing from either objection is the full set of facts.

25. Specifically, in February 2017, nearly two months after confirmation, the Debtors were provided with a fully negotiated settlement in February 2017 for signature between Messrs. Thiel and Denton and supported by Bollea, which the Debtors had no part in negotiating. The proposed settlement required the Debtors to release Thiel from all possible estate causes of

14

61937250_6

action for no consideration.  Despite not being involved in the settlement discussion, the Debtors were nonetheless prepared to consider providing Thiel with releases, but advised the parties that the Debtors would do so only upon Thiel providing the Debtors with information that would enable them to determine whether any Potential Estate Causes of Action exist.  As the Debtors explained, only after reviewing such information could the Debtors weigh the costs and benefits of any such litigation and determine whether an express release of Thiel was proper and brought to this Court.  Thiel, however, refused to provide any such information.

26. Thus, the Debtors were left with no option but to pursue the Rule 2004 Motion and seek the information necessary for the Plan Administrator to discharge his fiduciary obligation to stakeholders to make an informed decision as to whether to pursue a Potential Estate Cause of Action or not.[14]

---

[14] The Debtors respectfully disagree with Thiel's interpretation of their views on Article 9.05 of the Plan, and find it curious that Mr. Thiel chooses to highlight the extent of his good faith efforts in these cases by noting that he has offered not to sue the Debtors' former employees and contractors in exchange for a free release from the Debtors. Indeed, such a statement is nothing more than a continued threat to bring litigation that would have no economic motive behind it, as the employees and writers have waived their indemnification claims, and would be suspect and arguably vindictive.

15

61937250_6

## CONCLUSION

27. For all of the reasons set forth in the Rule 2004 Motion and in this Omnibus Reply, the Debtors respectfully request that the Court overrule the Objections, grant the Rule 2004 Motion as modified, and grant such other relief as is just and proper.

Dated: April 24, 2017
      New York, New York

*/s/ Gregg M. Galardi*
ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
gregg.galardi@ropesgray.com
ross.martin@ropesgray.com

*Counsel to the Plan Administrator for the Debtors*

16