Hearing Date and Time: June 20, 2017 at 10:00 a.m. (ET)
Objection Deadline: June 8, 2017 at 4:00 p.m. (ET)

ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Jonathan M. Agudelo
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
                :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Gawker Media LLC, *et al.*,[1] | : | Case No. 16-11700 (SMB) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

------------------------------------------------------x

**SUMMARY COVER SHEET TO THE SECOND AND FINAL
FEE APPLICATION OF ROPES & GRAY LLP, ATTORNEYS FOR
THE DEBTORS AND DEBTORS IN POSSESSION, FOR THE PERIOD
<u>FROM JUNE 10, 2016 THROUGH AND INCLUDING MARCH 17, 2017</u>**

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

# Amended Summary of Compensation Period

| | |
|---|---|
| NAME OF APPLICANT: | ROPES & GRAY LLP |
| AUTHORIZED TO PROVIDE PROFESSIONAL SERVICES TO: | THE DEBTORS |
| DATE CASES FILED: | JUNE 10 AND 12, 2016 |
| DATE OF RETENTION: | *NUNC PRO TUNC* TO JUNE 10, 2016 |
| DATE OF ORDER APPROVING EMPLOYMENT: | JULY 14, 2016 |
| PERIOD FOR WHICH COMPENSATION AND REIMBURSEMENT IS SOUGHT: | SECOND COMP PERIOD: Oct. 1, 2017 THROUGH AND INCLUDING MAR. 17, 2017<br>FULL COMP PERIOD: JUNE 10, 2016 THROUGH AND INCLUDING MAR. 17, 2017 |
| AMOUNT OF COMPENSATION SOUGHT AS ACTUAL, REASONABLE AND NECESSARY: | SECOND COMP PERIOD: $3,479,140.00<br>FULL COMP PERIOD: $7,460,598.75 |
| AMOUNT OF EXPENSE REIMBURSEMENT SOUGHT AS ACTUAL, REASONABLE AND NECESSARY: | SECOND COMP PERIOD: $130,560.16<br>FULL COMP PERIOD: $180,591.41 |
| TOTAL COMPENSATION PREVIOUSLY REQUESTED IN THESE CHAPTER 11 CASES: | $3,981,458.75 |
| TOTAL EXPENSES PREVIOUSLY REQUESTED IN THESE CHAPTER 11 CASES: | $50,031.25 |
| TOTAL COMPENSATION APPROVED BY INTERIM ORDER AND PAID TO DATE IN THESE CHAPTER 11 CASES: | $3,782,385.81 |
| TOTAL EXPENSES APPROVED BY INTERIM ORDER AND PAID TO DATE IN THESE CHAPTER 11 CASES: | $50,031.25 |
| BLENDED RATE OF ATTORNEYS IN THIS APPLICATION: | SECOND COMP PERIOD: $795.28<br>FULL COMP PERIOD: $781.00 |
| BLENDED RATE OF ALL TIMEKEEPERS IN THIS APPLICATION: | SECOND COMP PERIOD: $748.14<br>FULL COMP PERIOD: $735.37 |
| COMPENSATION PAID PURSUANT TO A MONTHLY FEE STATEMENT, BUT NOT YET ALLOWED ON A FINAL BASIS: | SECOND COMP PERIOD: $2,704,448.80<br>FULL COMP PERIOD: $6,486,834.61 |
| EXPENSES PAID PURSUANT TO A MONTHLY FEE STATEMENT, BUT NOT YET ALLOWED ON A FINAL BASIS: | SECOND COMP PERIOD: $129,473.52<br>FULL COMP PERIOD: $179,504.77 |
| NUMBER OF PROFESSIONALS INCLUDED IN THIS APPLICATION: | SECOND COMP PERIOD: 43<br>FULL COMP PERIOD: 86 |
| NUMBER OF PROFESSIONALS INCLUDED IN THIS APPLICATION NOT INCLUDED IN STAFFING PLAN: | SEE EXHIBIT F TO APPLICATION |
| DIFFERENCE BETWEEN FEES BUDGETED AND COMPENSATION SOUGHT IN THIS APPLICATION: | NONE |
| NUMBER OF ATTORNEYS AND PARAPROFESSIONALS BILLING FEWER THAN 15 HOURS IN THIS APPLICATION:[2] | SECOND COMP PERIOD: 19<br>TOTAL COMP PERIOD: 41 |
| RATE INCREASES NOT PREVIOUSLY APPROVED / DISCLOSED : | No. |
| THE EFFECT OF ANY RATE INCREASES THAT HAVE OCCURRED SINCE RETENTION: | Fees for the Second and Full Compensation Period were higher by an aggregate amount of $51,558.00 as a result of Ropes & Gray's customary annual rate adjustment, as detailed in Paragraph 23 of the Application. |

THIS IS A(N): _____ MONTHLY    __X__ INTERIM    __X__ FINAL APPLICATION.

---

[2] A total of 12 professionals and 7 paraprofessionals billed fewer than 15 hours during the Second Compensation Period and a total of 24 professionals and 17 paraprofessionals billed fewer than 15 hours during the Full Compensation Period. By and large the professionals were specialists required for discrete tasks; in various Monthly Fee Statements, Ropes & Gray voluntarily elected to write off time spent by persons billing less than two hours for the monthly period covered.

61561150_9

### Summary of Monthly Fee Statements for the First Compensation Period
### (June 10, 2016 through September 30, 2016)

| Date Served | Compensation Period | Requested Fees | Requested Expenses | Fees Paid to Date[3] | Expenses Paid To Date | Remaining Holdback |
|---|---|---|---|---|---|---|
| 8/19/16 | June 10, 2016 – July 31, 2016 | $1,757,179.25 | $15,706.50 | $1,669,320.29 | $15,706.50 | $87,858.96 |
| 9/20/16 | August 1, 2016 – August 31, 2016 | $1,175,380.00 | $22,299.24 | $1,116,611.00 | $22,299.24 | $58,769.00 |
| 10/20/16 | September 1, 2016 – September 30, 2016 | $1,048,899.50 | $12,025.51 | $996,454.53 | $12,025.51 | $52,444.97 |
| **First Comp Period Total** | | **$3,981,458.75** | **$50,031.25** | **$3,782,385.81** | **$50,031.25** | **$199,072.93** |

### Summary of Monthly Fee Statements for the Second Compensation Period
### (October 1, 2016 through March 17, 2017)

| Date Served | Compensation Period | Requested Fees | Requested Expenses | Fees Paid to Date | Expenses Paid | Holdback |
|---|---|---|---|---|---|---|
| 11/19/16 | October 1, 2016 – October 31, 2016 | $896,071.00 | $27,194.56 | $716,856.80 | $27,194.56 | $179,214.20 |
| 12/20/16 | November 1, 2016 – November 30, 2016 | $1,108,218.75 | $46,338.54 | $886,575.00 | $46,338.54 | $221,643.75 |
| 1/20/17 | December 1, 2016 – December 31, 2016 | $657,004.00 | $15,674.93 | $525,603.20 | $15,674.93 | $209,779.90 |
| 2/16/17 | January 1, 2017 – January 31, 2017 | $383,450.00 | $30,121.86 | $306,760.00 | $30,121.86 | $76,690.00 |
| 3/20/17 | February 1, 2017 – February 28, 2017 | $335,817.25 | $10,143.63 | $268,653.80 | $10,143.63 | $67,163.45 |
| N/A | March 1, 2017 – March 17, 2017 | $98,579.00 | $1,086.64 | $0.00 | $0.00 | $99,665.64 |
| **Second Comp Period Total** | | **$3,479,140.00** | **$130,560.16** | **$2,704,448.80** | **$129,473.52** | **$775,777.84** |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Full Comp Period Total** | | **$7,460,598.75** | **$180,591.41** | **$6,486,834.61** | **$179,504.77** | **$974,850.77** |

---

[3] This column includes fees paid pursuant to the First Interim Fee Order (as defined herein).

61561150_9

**Summary of Hours Billed By**
**Professionals and Paraprofessionals**

| Name | Department and Year Admitted | Hourly Billing Rate at Case Inception | Hourly Billing Rate in this Application | Number of Rate Increases[4] | Second Comp Period | | Full Comp Period | |
|---|---|---|---|---|---|---|---|---|
| | | | | | Hours Worked | Fees Incurred | Hours Worked | Fees Incurred |
| **Partners** | | | | | | | | |
| Leo Arnaboldi III | Tax Admitted in 1986 | $1,400.00 | $1,500.00 | 1 | 44.80 | $62,720.00 | 61.50 | $86,100.00 |
| Tony Horspool | Business Restructuring Admitted in 1991 | $1,360.00 | $1,180.00 | 1 | 2.00 | $2,720.00 | 2.00 | $2,720.00 |
| Daniel Martin | Business Restructuring Admitted in 2000 | $1,260.00 | $1,080.00 | 1 | 7.40 | $9,324.00 | 7.40 | $9,324.00 |
| Gregg Galardi | Business Restructuring Admitted in 1990 | $1,230.00 | $1,320.00 | 1 | 658.10 | $800,803.50 | 1,164.50 | $1,422,261.00 |
| D. Ross Martin | Business Restructuring Admitted in 1995 | $1,170.00 | $1,260.00 | 1 | 399.20 | $459,724.50 | 577.10 | $667,867.50 |
| David B. Hennes | Litigation Admitted in 1995 | $1,165.00 | $1,250.00 | 1 | - | - | 102.80 | $119,762.00 |
| James DeGraw | Corporate General Admitted in 1992 | $1,060.00 | $1,130.00 | 1 | - | - | 2.70 | $2,862.00 |

---

[4] As of February 1, 2017, the rates of timekeepers working on Ropes & Gray's representation of the Debtors increased according to the firm's customary annual rate adjustments that would normally have occurred on January 1, 2017.  Ropes & Gray notified the Court and the Debtors of these customary rate increases and received approval from the Debtors for the same prior to their taking effect.  *See Fourth Supplemental Declaration of Gregg M. Galardi in Support of Debtors' Application for Entry of an Order Authorizing the Retention of Ropes & Gray LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [Docket No. 786].

61561150_9

| Name | Department and Year Admitted | Hourly Billing Rate at Case Inception | Hourly Billing Rate in this Application | Number of Rate Increases4 | Second Comp Period | | Full Comp Period | |
|---|---|---|---|---|---|---|---|---|
| | | | | | Hours Worked | Fees Incurred | Hours Worked | Fees Incurred |
| Jonathan P. Gill | Corporate General Admitted in 1998 | $1,030.00 | $1,080.00 | 1 | 3.50 | $3,605.00 | 219.60 | $226,188.00 |
| Peter Ebb | Labor & Employment Admitted in 1990 | $990.00 | $1,050.00 | 1 | - | - | 3.10 | $3,069.00 |
| Dalila Argaez Wendlandt | Litigation Admitted in 2001 | $970.00 | $1,030.00 | 1 | 102.40 | $99,328.00 | 143.70 | $139,389.00 |
| Joanne De Silva | Corporate General Admitted in 1991 | $920.00 | $990.00 | 1 | - | - | 66.90 | $61,548.00 |
| Kathleen S. Gregor | Tax Admitted in 2005 | $920.00 | $975.00 | 1 | 3.80 | $3,420.00 | 3.80 | $3,420.00 |
| Alexandra Alperovich | Tax Admitted in 2004 | $900.00 | $960.00 | 1 | - | - | 5.50 | $4,950.00 |
| | | | | Total Partners | 1,221.20 | $1,441,645.00 | 2,360.60 | $2,749,460.50 |
| **Counsel** | | | | | | | | |
| Deidre Johnson | Litigation Admitted in 1998 | $900.00 | $960.00 | 1 | - | - | 5.60 | $5,040.00 |
| Evan Gourvitz | Litigation Admitted in 1999 | $895.00 | $955.00 | 1 | 3.20 | $2,864.00 | 3.20 | $2,864.00 |
| Justin Florence | Litigation Admitted in 2007 | $895.00 | $955.00 | 1 | 57.70 | $51,641.50 | 60.90 | $54,505.50 |
| Michael S. Winograd | Litigation Admitted in 2001 | $885.00 | $960.00 | 1 | 2.30 | $2,035.50 | 314.50 | $277,049.25 |
| James Wright | Business Restructuring Admitted in 2005 | $885.00 | $925.00 | 1 | - | - | 5.10 | $4,513.50 |

-v-

| Name | Department and Year Admitted | Hourly Billing Rate at Case Inception | Hourly Billing Rate in this Application | Number of Rate Increases4 | Second Comp Period | | Full Comp Period | |
|---|---|---|---|---|---|---|---|---|
| | | | | | Hours Worked | Fees Incurred | Hours Worked | Fees Incurred |
| Thomas Burke | Corporate General Admitted in 1995 | $850.00 | $910.00 | 1 | - | - | 2.90 | $2,465.00 |
| Erica Han | Corporate General Admitted in 2005 | $695.00 | $745.00 | 1 | 9.90 | $7,070.50 | 26.10 | $18,329.50 |
| | | | **Total Counsel** | | **73.10** | **$63,611.50** | **418.30** | **$364,766.75** |
| **Associates** | | | | | | | | |
| Joshua Sturm | Business Restructuring Admitted in 2007 | $895.00 | $955.00 | 1 | 458.30 | $412,798.25 | 713.60 | $640,799.50 |
| Kristina K. Alexander | Business Restructuring Admitted in 2010 | $865.00 | - | 0 | - | - | 349.60 | $300,111.75 |
| Marc B. Roitman | Business Restructuring Admitted in 2010 | $865.00 | $940.00 | 1 | - | - | 140.80 | $121,792.00 |
| Matthew Tolve | Litigation Admitted in 2009 | $865.00 | $940.00 | 1 | 16.00 | $11,245.00 | 16.00 | $11,245.00 |
| Jonathan Agudelo | Business Restructuring Admitted in 2010 | $820.00 | $925.00 | 1 | 607.60 | $508,185.25 | 1,235.20 | $1,021,669.25 |
| Lindita Bresa | Corporate General Admitted in 2009 | $820.00 | $925.00 | 1 | - | - | 66.90 | $54,858.00 |
| Shaw Kaneyasu-Speck | Corporate General Admitted in 2011 | $820.00 | $925.00 | 1 | 24.50 | $20,352.50 | 166.60 | $136,874.50 |
| Kevin Zaragoza | Tax Admitted in 2011 | $820.00 | $925.00 | 1 | 25.20 | $20,664.00 | 36.20 | $29,684.00 |

-vi-

| Name | Department and Year Admitted | Hourly Billing Rate at Case Inception | Hourly Billing Rate in this Application | Number of Rate Increases4 | Second Comp Period | | Full Comp Period | |
|---|---|---|---|---|---|---|---|---|
| | | | | | Hours Worked | Fees Incurred | Hours Worked | Fees Incurred |
| Claire Rosa | Tax Admitted in 2010 | $810.00 | $925.00 | 1 | - | - | 3.90 | $3,159.00 |
| Mark Cianci | Litigation Admitted in 2010 | $765.00 | $865.00 | 1 | - | - | 12.30 | $9,409.50 |
| Jennifer Cormier | Labor & Employment Admitted in 2012 | $765.00 | $865.00 | 1 | 1.20 | $1,038.00 | 8.30 | $6,469.50 |
| Meredith Parkinson | Business Restructuring Admitted in 2011 | $765.00 | $865.00 | 1 | 8.80 | $6,732.00 | 8.80 | $6,732.00 |
| Gabrielle Hirz | Tax Admitted in 2007 | $735.00 | $785.00 | 1 | 262.30 | $184,438.00 | 262.30 | $184,438.00 |
| Simone L. F. Waterbury | Litigation Admitted in 2006 | $725.00 | $775.00 | 1 | - | - | 6.10 | $4,422.50 |
| Taras Czebiniak | Corporate General Admitted in 2013 | $705.00 | - | 0 | - | - | 25.10 | $17,695.50 |
| Paul Kellogg | Litigation Admitted in 2011 | $705.00 | $825.00 | 1 | - | - | 61.90 | $43,639.50 |
| Elisa Durrette | Corporate General Admitted in 2013 | $695.00 | $815.00 | 1 | - | - | 18.80 | $13,066.00 |
| Stacy A. Dasaro | Business Restructuring Admitted in 2014 | $635.00 | - | 0 | - | - | 392.10 | $248,539.00 |
| S. Alexandra de Padua | Corporate General Admitted in 2014 | $635.00 | $755.00 | 1 | - | - | 40.60 | $25,781.00 |
| Sara Perkins Jones | Litigation Admitted 2012 | $625.00 | $745.00 | 1 | 17.80 | $11,125.00 | 17.80 | $11,125.00 |

61561150_9

| Name | Department and Year Admitted | Hourly Billing Rate at Case Inception | Hourly Billing Rate in this Application | Number of Rate Increases4 | Second Comp Period | | Full Comp Period | |
|---|---|---|---|---|---|---|---|---|
| | | | | | Hours Worked | Fees Incurred | Hours Worked | Fees Incurred |
| Emerson Siegle | Litigation Admitted 2013 | $625.00 | $745.00 | 1 | 50.50 | $31,562.50 | 65.70 | $41,062.50 |
| Elizabeth Bierut | Litigation Admitted in 2014 | $550.00 | $680.00 | 1 | 56.50 | $31,075.00 | 344.20 | $189,310.00 |
| Aleksandr Imas | Corporate General Admitted in 2014 | $550.00 | - | 0 | - | - | 5.70 | $3,135.00 |
| Hannah Jenkins | Corporate General Admitted in 2014 | $550.00 | $670.00 | 1 | 6.40 | $3,520.00 | 98.00 | $53,900.00 |
| Matthew Cable | Corporate General Admitted in 2014 | $540.00 | $670.00 | 1 | - | - | 14.30 | $7,722.00 |
| William A. McGee | Business Restructuring Admitted in 2015 | $540.00 | $670.00 | 1 | 425.60 | $234,975.00 | 667.40 | $365,547.00 |
| Edward Roche | Litigation Admitted 2014 | $540.00 | $670.00 | 1 | 19.70 | $10,638.00 | 58.30 | $31,482.00 |
| Peter Walkingshaw | Litigation Admitted in 2014 | $540.00 | $670.00 | 1 | 275.30 | $147,370.00 | 340.20 | $182,416.00 |
| David Soutter | Litigation Admitted in 2013 | $540.00 | $670.00 | 1 | 4.90 | $2,646.00 | 4.90 | $2,646.00 |
| Hanah Kim | Corporate General Admitted in 2016 | $470.00 | $590.00 | 1 | - | - | 94.10 | $44,227.00 |
| Lucy Corrigan | Corporate General Admitted in 2015 | $470.00 | $590.00 | 1 | - | - | 14.90 | $7,003.00 |
| Kathryn M. Roulett | Litigation Admitted in 2016 | $470.00 | $590.00 | 1 | - | - | 3.70 | $1,739.00 |
| James Sullivan | Corporate General Admitted in 2016 | $470.00 | $590.00 | 1 | - | - | 57.20 | $26,884.00 |

-viii-

| Name | Department and Year Admitted | Hourly Billing Rate at Case Inception | Hourly Billing Rate in this Application | Number of Rate Increases[4] | Second Comp Period | | Full Comp Period | |
|---|---|---|---|---|---|---|---|---|
| | | | | | Hours Worked | Fees Incurred | Hours Worked | Fees Incurred |
| Saqib M. Hussain | Litigation Admitted in 2015 | $455.00 | $485.00 | 1 | - | - | 46.00 | $20,930.00 |
| Averell Sutton | Corporate General Admitted in 2014 | $365.00 | $390.00 | 1 | 104.50 | $38,142.50 | 143.30 | $52,304.50 |
| Mary Kwan | Corporate General Admitted in 2016 | $340.00 | $365.00 | 1 | - | - | 11.40 | $3,876.00 |
| Sam Ashuraey | Business Restructuring Admitted in 2016 | $335.00 | $500.00 | 1 | 14.20 | $5,829.50 | 14.20 | $5,829.50 |
| Isha Ghodke | Litigation Admitted in 2016 | $335.00 | $500.00 | 1 | 70.40 | $23,584.00 | 70.40 | $23,584.00 |
| Andrew Simpson | Litigation Admitted in 2016 | $335.00 | $500.00 | 1 | 113.10 | $37,888.50 | 113.10 | $37,888.50 |
| Ani-Rae Lovell | Litigation Admitted in 2016 | $325.00 | $490.00 | 1 | 237.00 | $82,687.00 | 237.00 | $82,687.00 |
| Richard Wheeler | Corporate General Admitted in 1998 | $245.00 | $265.00 | 1 | - | - | 7.50 | $1,837.50 |
| Kevin Walsh | Contract Attorney Admitted in 2014 | $215.00 | $230.00 | 1 | - | - | 10.10 | $2,171.50 |
| Total Associates | | | | | 2,799.80 | $1,826,496.00 | 6,004.50 | $4,079,692.50 |

| Name | Department/Role | Hourly Billing Rate at Case Inception | Hourly Billing Rate in this Application | Number of Rate Increases | Second Comp Period | | Full Comp Period | |
|---|---|---|---|---|---|---|---|---|
| | | | | | Hours Worked | Fees Incurred | Hours Worked | Fees Incurred |
| **Paraprofessionals** | | | | | | | | |
| William Allen | Paralegal | $400.00 | $430.00 | 1 | 134.10 | $53,462.00 | 139.60 | $55,662.00 |

61561150_9

| Name | Department/Role | Hourly Billing Rate at Case Inception | Hourly Billing Rate in this Application | Number of Rate Increases | Second Comp Period | | Full Comp Period | |
|---|---|---|---|---|---|---|---|---|
| | | | | | Hours Worked | Fees Incurred | Hours Worked | Fees Incurred |
| Kathleen Kennedy | Litigation Technology Specialist | $390.00 | $420.00 | 1 | 4.80 | $1,872.00 | 4.80 | $1,872.00 |
| Marc K. Duffy | Managing Clerk | $370.00 | $370.00 | 0 | - | - | 7.00 | $2,590.00 |
| Linda Borrino | Paralegal | $360.00 | $385.00 | 1 | - | - | 2.30 | $828.00 |
| David Kolpin | Senior Research Librarian | $360.00 | $385.00 | 1 | - | - | 2.30 | $828.00 |
| Roberto Gonzalez | Paralegal | $350.00 | $375.00 | 1 | 117.70 | $41,442.50 | 229.20 | $80,467.50 |
| Melissa Karasavidis | Paralegal | $345.00 | $370.00 | 1 | - | - | 3.00 | $1,035.00 |
| Charles R. Brustman | Managing Clerk | $335.00 | $335.00 | 0 | - | - | 4.00 | $1,340.00 |
| Paul Lang | Managing Clerk | $335.00 | $335.00 | 0 | - | - | 10.90 | $3,651.50 |
| Mark Callahan | Paralegal | $310.00 | $335.00 | 1 | - | - | 4.70 | $1,457.00 |
| Peggy Burns | Paralegal | $300.00 | $320.00 | 1 | - | - | 6.00 | $1,800.00 |
| Joseph A. D'Imperio | Senior Designer | $295.00 | $310.00 | 1 | 6.30 | $1,858.50 | 13.20 | $3,894.00 |
| Carson Dottin | Senior Designer | $295.00 | $295.00 | 0 | - | - | 8.90 | $2,625.50 |
| Meir Weinberg | Paralegal | $285.00 | $325.00 | 1 | 130.10 | $38,114.50 | 256.00 | $73,996.00 |
| Charles D. Brustman | Paralegal | $270.00 | $290.00 | 1 | - | - | 24.30 | $6,223.50 |
| La-Toya Graham | Paralegal | $260.00 | $290.00 | 1 | - | - | 33.80 | $8,723.00 |
| Patrice Gramberg | Paralegal | $230.00 | $245.00 | 1 | - | - | 19.80 | $4,554.00 |
| Robert Baxter | Paralegal | $220.00 | - | 0 | - | - | 3.50 | $770.00 |

-x-

| Name | Department/Role | Hourly Billing Rate at Case Inception | Hourly Billing Rate in this Application | Number of Rate Increases | Second Comp Period | | Full Comp Period | |
|---|---|---|---|---|---|---|---|---|
| | | | | | Hours Worked | Fees Incurred | Hours Worked | Fees Incurred |
| Thomas Doherty | Litigation Support Technician | $215.00 | $230.00 | 1 | 14.50 | $3,117.50 | 14.50 | $3,117.50 |
| Doron Greene | Senior Designer | $215.00 | $230.00 | 1 | 12.00 | $2,580.00 | 18.00 | $3,870.00 |
| Fuk Chau Hon | Litigation Support Technician | $215.00 | $230.00 | 1 | - | - | 5.60 | $1,204.00 |
| Jessica Dias | Paralegal | $205.00 | $220.00 | 1 | 11.10 | $2,275.50 | 14.10 | $2,890.50 |
| Amanda Nunez | Paralegal | $205.00 | $235.00 | 1 | 3.50 | $717.50 | 3.50 | $717.50 |
| Caroline O'Neill | Paralegal | $205.00 | $220.00 | 1 | 9.50 | $1,947.50 | 12.50 | $2,562.50 |
| | | | | **Total Paraprofessionals** | **443.60** | **$147,387.50** | **841.50** | **$266,679.00** |
| | | | | **Total for All Professionals** | **4,537.70** | **$3,479,140.00** | **9,624.90** | **$7,460,598.75** |

| | Second Comp Period | Full Comp Period |
|---|---|---|
| Total Billed Hours for Attorneys ....................... | 4,094.10 | 8,783.40 |
| Total Billed Hours for Paraprofessionals ........... | 443.60 | 841.50 |
| Total Billed Hours ............................................. | 4,537.70 | 9,624.90 |
| Total Fees Requested ......................................... | $3,479,140.00 | $7,460,598.75 |
| Blended Rate for All Timekeepers .................... | $748.14 | $735.37 |
| Blended Rate for Attorneys ............................... | $795.28 | $781.00 |

-xi-

# TABLE OF CONTENTS

Jurisdiction ................................................................................................................ 2

Preliminary Statement ............................................................................................... 3

Compliance with the Guidelines ............................................................................... 4

Disclosure of Compensation and Requested Award .................................................. 6

Voluntary Reductions ................................................................................................ 11

Background ................................................................................................................ 11

Summary of Services Provided During the Second Compensation Period ................ 14

A.    Reporting (MOR/SEC) [Matter No. 2] ...................................................... 16

B.    Litigation [Matter No. 4] ............................................................................ 16

C.    Tax Matters [Matter No. 5] ......................................................................... 19

D.    Asset/Lien & Recovery Analysis [Matter No. 6] ....................................... 20

E.    R&G Retention & Fee Applications [Matter No. 8] ................................... 21

F.    Investigations [Matter No. 11] .................................................................... 21

G.    Sales [Matter No. 12] .................................................................................. 22

H.    Claims [Matter No. 13] ............................................................................... 22

I.    Travel [Matter No. 14] ................................................................................ 24

J.    Other Retention & Fee Applications [Matter No. 16] ................................ 25

K.    Executory Contracts/Leases [Matter No. 17] ............................................. 26

L.    Plan and Disclosure Statement [Matter No. 18] ........................................ 27

M.        Hearings [Matter No. 19] ...................................................................... 29

N.    Administration [Matter No. 20] .................................................................. 29

O.    Business Operations/Strategic Planning [Matter No. 21] ........................... 30

P.    Committee Matters/Meetings [Matter No. 22] ........................................... 31

Q.    Creditor & Shareholder Inquiries [Matter No. 23] ..................................... 32

R.    Corporate Matters [Matter No. 24] ............................................................. 32

S.    Employee Benefits Issues [Matter No. 25] ................................................ 32

T.    Relief from Stay & Adequate Protection [Matter No. 26] .......................... 33

Reasonable and Necessary Services Rendered by Ropes & Gray ............................. 34

Actual and Necessary Expenses Incurred by Ropes & Gray ..................................... 34

Ropes & Gray's Requested Compensation and Reimbursement Should be Allowed ................. 35

Notice ........................................................................................................................ 37

No Prior Request ....................................................................................................... 38

-xii-

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**STATUTES**

11 U.S.C. § 327 ................................................................................................................35

11 U.S.C. § 330 ....................................................................................................2, 35, 37

11 U.S.C. § 330(a)(1) .......................................................................................................35

11 U.S.C. § 330(a)(3) .......................................................................................................36

11 U.S.C. § 505 ................................................................................................................20

11 U.S.C. § 1102 ..............................................................................................................11

28 U.S.C. § 157 ..................................................................................................................2

28 U.S.C. § 157(b)(2) .........................................................................................................3

28 U.S.C. § 1334 ................................................................................................................2

28 U.S.C. § 1408 ................................................................................................................3

28 U.S.C. § 1409 ................................................................................................................3

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 1015(b) ................................................................................................11

Fed. R. Bankr. P. 2016 ...................................................................................................1, 3

Fed. R. Bankr. P. 2016-1 ...................................................................................................2

Fed. R. Bankr. P. 2016-1(a) ...............................................................................................3

Fed. R. Bankr. P. 2016(b) ................................................................................................14

General Order M-447 ..........................................................................................................2

61561150_9

## **EXHIBITS**

Exhibit A            Certification of Gregg M. Galardi

Exhibit B-1          Summary of Time Billed and Expenses Incurred by Project Category for the
                     Second Compensation Period

Exhibit B-2          Summary of Time Billed and Expenses Incurred by Project Category for the Full
                     Compensation Period

Exhibit C            Summary of Time Billed by Attorneys and Paraprofessionals for the Second and
                     the Full Compensation Period

Exhibit D            Customary and Comparable Compensation Disclosures

Exhibit E            Budget

                     Exhibit E – 1   Budget for October 1 – October 31, 2016

                     Exhibit E – 2   Budget for November 1 – November 30, 2016

                     Exhibit E – 3   Budget for December 1 – December 31, 2016

                     Exhibit E – 4   Budget for January 1 – January 31, 2017

                     Exhibit E – 5   Budget for February 1 – February 28, 2017

                     Exhibit E – 6   Budget for March 1 – March 21, 2017

Exhibit F            Staffing Plan

Exhibit G            Expense Summary for the Second and the Full Compensation Period

Exhibit G-1          Detail of Expenses and Disbursements for the Second Compensation Period

Exhibit H            Detail of Fees for the Second Compensation Period

61561150_9

ROPES & GRAY LLP
Gregg M. Galardi
D. Ross Martin
Jonathan M. Agudelo
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| Gawker Media LLC, *et al.*,[1] | : | Case No. 16-11700 (SMB) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

---

## SECOND AND FINAL FEE APPLICATION OF ROPES & GRAY LLP, ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION, FOR THE PERIOD FROM JUNE 10, 2016 THROUGH AND INCLUDING MARCH 17, 2017

Ropes & Gray LLP ("Ropes & Gray"), attorneys for Gawker Media LLC ("Gawker Media"), Gawker Media Group, Inc. ("GMGI"), and Gawker Hungary Kft., fka Kinja Kft. ("Gawker Hungary"), as debtors and debtors in possession (collectively, the "Debtors"), in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), submit this second interim and final fee application (this "Application") pursuant to sections 327, 330(a), 331, and 503(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy Rules

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

for the Southern District of New York (the "Local Bankruptcy Rules"), General Order M-447

entered by Chief Judge Cecelia G. Morris of the United States Bankruptcy Court for the

Southern District of New York on January 29, 2013 (the "Local Guidelines"), and the United

States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of

Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, adopted on

June 11, 2013 (the "UST Guidelines").

In this Application, Ropes & Gray requests: (a) interim and final allowance of

compensation in the aggregate amount of $3,479,140.00 for professional services performed and

the reimbursement of actual and necessary expenses in the aggregate amount of $130,560.16

incurred by Ropes & Gray during the period from October 1, 2016 through March 17, 2017 (the

"Second Compensation Period"); (b) final allowance of compensation in the aggregate amount of

$7,460,598.75 for professional services performed and the reimbursement of actual and

necessary expenses in the aggregate amount of $180,591.41 incurred by Ropes & Gray during

the period from June 10, 2016 through March 17, 2017 (the "Full Compensation Period"); and

(c) payment of the unpaid portion of all such allowed fees and expenses, including amounts held

back pursuant to the Interim Compensation Order (as defined herein) in the amount of

$974,850.77, which represents 5% of the fees from the First Compensation Period (as defined

herein) and 20% of the fees from the Monthly Fee Statements (as defined herein) that have been

held back during the Chapter 11 Cases, and 100% of the March Fees and Expenses (as defined

herein).  In support of this Application, Ropes & Gray respectfully states as follows:

### **Jurisdiction**

1.      The United States Bankruptcy Court for the Southern District of New York (the

"Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

61561150_9

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      The statutory and regulatory predicates for the relief requested herein are sections 327, 330(a), 331, and 503(b) of the Bankruptcy Code, Bankruptcy Rule 2016, and Local Bankruptcy Rule 2016-1(a).

**Preliminary Statement**

4.      During the Chapter 11 Cases, Ropes & Gray represented the Debtors professionally, diligently, and efficiently, advising them on a wide variety of highly complex matters and issues.  Ropes & Gray's representation enabled the Debtors to complete the sale of substantially all of their assets for $135 million, an amount $45 million (50%) more than the original stalking horse bid of $90 million, and confirm a chapter 11 plan of liquidation within a period of just over six months.

5.      From the outset of these cases, Ropes & Gray helped maintain the Debtors' business operations by ensuring that the Debtors experienced a relatively smooth transition into chapter 11, while minimizing disruptions and preserving the value of the Debtors' business for the sale of substantially all of the Debtors' assets.  During the Second Compensation Period, specifically, Ropes & Gray advised and assisted the Debtors in expeditious and complex negotiations with the official committee of unsecured creditors (the "Creditors' Committee") and three of the Debtors' most significant creditors in order to settle some of the largest litigation claims against the Debtors and ultimately reach agreement on a consensual chapter 11 plan of liquidation.  Ropes & Gray's efforts ultimately led to the successful, unopposed confirmation of that plan within only six months of the Petition Date and in time to allow for substantial distributions to be made during the 2016 tax year, an accomplishment that allowed the Debtors, and ultimately their creditors, to obtain substantial tax benefits.

-3-

6.      During the Second Compensation Period, Ropes & Gray attorneys worked with the Debtors to resolve the various claims filed against the Debtors, including claims related to the Article Lawsuits (as defined herein), tax claims, duplicate, satisfied and no liability claims, and rejection damages claims, among others.  Through discussions with claimants, the preparation and filing of claim objections, and the negotiation of settlements, Ropes & Gray significantly reduced the number of outstanding disputed claims down to less than ten claims and made significant progress on resolving those remaining claims.

7.      The Debtors' achievements in the relatively short length of these Chapter 11 Cases is all the more impressive in cases that (a) began with well-publicized personal disputes among key constituencies, (b) involved allegations of that the litigation of the lawsuit leading to the largest unsecured claim against Debtors had been financed by a third-party billionaire, and (c) required the Debtors' founder and former Chief Executive Officer to file a personal chapter 11 bankruptcy shortly after the Debtors' cases were filed.

8.      Ropes & Gray thus respectfully submits that the compensation and expense reimbursement sought herein for the necessary and beneficial professional services it provided to the Debtors during the Full Compensation Period is reasonable and appropriate, commensurate with the scale, nature, and complexity of these Chapter 11 Cases, and therefore, should be allowed.

## **Compliance with the Guidelines**

8.      This Application was prepared in accordance with (a) the Local Guidelines, (b) the UST Guidelines, and (c) the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 94] (the "Interim Compensation Order" and, together with the Local Guidelines and the UST Guidelines, collectively, the "Guidelines").

61561150_9

9.      Pursuant to and consistent with the relevant requirements of the Guidelines, as applicable, the following exhibits are annexed hereto:

a.  **Exhibit A** contains a certification by the undersigned counsel regarding compliance with the Guidelines;

b.  **Exhibit B** contains a list of Ropes & Gray's project categories, which comply with the categories listed in the Guidelines to the extent possible. Exhibit B-1 lists the total time billed to, and total compensation requested for, each category during the Second Compensation Period and Exhibit B-2 provides the same for the Full Compensation Period;

c.  **Exhibit C** contains a billing summary for the Full Compensation Period that includes the name of each attorney and paraprofessional for whose work compensation is sought, each attorney's year of bar admission and area of practice concentration, each attorney's and paraprofessional's hourly billing rate, and an indication of the amounts requested for each attorney or paraprofessional as part of the Application;

d.  **Exhibit D** contains a summary of Ropes & Gray's billing practices for the previous fiscal year for non-bankruptcy professionals. Specifically, Exhibit D compares (i) the blended hourly rates for Ropes & Gray's domestic non-bankruptcy attorneys and paraprofessionals who provided legal services over the previous fiscal year, with (ii) the blended hourly rates for (a) Ropes & Gray attorneys and paraprofessionals who provided services to the Debtors during the Second Compensation Period and (b) Ropes & Gray attorneys and paraprofessionals who provided services to the Debtors during the Full Compensation Period;

e.  **Exhibit E** contains budgets sent to the client for work performed during the Second Compensation Period, from October 1, 2016 through March 17, 2017;[2]

f.  **Exhibit F** contains staffing plans sent to the client that list the number of attorneys and paraprofessionals expected to work on each project category for work performed during the Second Compensation Period, from October 1, 2016 through March 17, 2017;[3]

---

[2] The budgets sent to the client for work performed during the First Compensation Period, from June 10, 2016 through September 30, 2016 were provided as Exhibit E to the First Interim Fee Application and are incorporated herein by reference.

[3] The staffing plans sent to the client for work performed during the First Compensation Period, from June 10, 2016 through September 30, 2016 were provided as Exhibit F to the First Interim Fee Application and are incorporated herein by reference.

61561150_9

    g.   **Exhibit G** contains a summary of Ropes & Gray's total actual and necessary out-of-pocket expenses and disbursements during the Second Compensation Period and the Full Compensation Period. In addition, attached hereto as **Exhibit G-1** is a complete itemization of expenses incurred by Ropes & Gray in connection with the services rendered during the Second Compensation Period;[4] and

    h.   **Exhibit H** contains Ropes & Gray's detailed time records for the Second Compensation Period prepared and submitted in accordance with the Guidelines.[5]

### Disclosure of Compensation and Requested Award

10.    On November 9, 2016, Ropes & Gray filed the *Amended First Interim Fee Application of Ropes & Gray LLP, Attorneys for the Debtors and Debtors in Possession for the Period from June 10, 2016 through September 30, 2016* [Docket No. 430] (the "First Interim Fee Application" and the period covered therein, the "First Compensation Period"). Pursuant to the First Interim Fee Application, Ropes & Gray sought approval of $3,981,458.75 in fees and $50,031.25 in expenses for the First Compensation Period. On December 21, 2016, the Court entered an order [Docket No. 637] (the "First Interim Fee Order") allowing 95% of the fees and 100% of the expenses requested in the First Interim Fee Application on an interim basis. Accordingly, the court authorized a release of $597,218.81 from the Monthly Fee Holdbacks (as defined in the Interim Compensation Order) relating to the First Compensation Period.

11.    By this Application, Ropes & Gray seeks an allowance pursuant to the Interim Compensation Order for the Second Compensation Period of $3,479,140.00 in fees for professional services rendered and $130,560.16 for reimbursement of actual expenses, for a total request of $3,609,700.16. In addition, Ropes & Gray seeks final allowance pursuant to the Interim Compensation Order for the Full Compensation Period of $7,460,598.75 in fees for

---

[4] A complete itemization of expenses for the First Compensation Period was provided in the First Interim Fee Application and is incorporated herein by reference.

[5] The time records for the First Compensation Period were provided in the First Interim Fee Application and are incorporated herein by reference.

61561150_9

professional services rendered and $180,591.41 for reimbursement of actual expenses, for a total request of $7,641,190.16 for the Full Compensation Period.

12.     During the Second Compensation Period, after internal review, as a courtesy to the Debtors, Ropes & Gray took voluntary reductions in fees in excess of $59,000.00[6] and expenses in excess of $43,500.00. Combined with the reductions taken in connection with the First Compensation Period, Ropes & Gray has, in total, taken voluntary reductions in fees in excess of $260,000.00[7] and expenses in excess of $80,000.00.

13.     During the Second Compensation Period, Ropes & Gray provided the Notice Parties (as defined in the Interim Compensation Order) with the following monthly fee statements:

a.     a monthly fee statement, dated November 19, 2016, for the period from October 1, 2016 through October 31, 2016 (the "October Fee Statement") seeking fees of $896,071.00 and expenses of $27,194.56 [Docket No. 476];

b.     a monthly fee statement, dated December 20, 2016, for the period from November 1, 2016 through November 30, 2016 (the "November Fee Statement") seeking fees of $1,108,218.75 and expenses of $46,338.54 [Docket No. 634];

c.     a monthly fee statement, dated January 20, 2017, for the period from December 1, 2016 through December 31, 2016 (the "December Fee Statement") seeking fees of $657,004.00 and expenses of $15,674.93 [Docket No. 691];

d.     a monthly fee statement, dated February 16, 2017, for the period from January 1, 2017 through January 31, 2017 (the "January Fee Statement") seeking fees of $383,450.00 and expenses of $30,121.86 [Docket No. 767]; and

e.     a monthly fee statement, dated March 20, 2017, for the period from February 1, 2017 through February 28, 2017 (the "February Fee Statement," and together with the October, November, December, and January Fee

---

[6] The voluntary reduction in fees does not include the 50% reduction for travel time.

[7] The voluntary reduction in fees does not include the 50% reduction for travel time.

61561150_9

Statements, the "Monthly Fee Statements") seeking fees of $335,817.25 and expenses of $10,143.63 [Docket No. 831].

14.     Ropes & Gray elected to not submit a monthly fee statement for $98,579.00 in professional fees and $1,086.64 in actual expenses incurred from March 1, 2017 to March 17, 2017 (the "March Fees and Expenses").

15.     With respect to the Second Compensation Period, Ropes & Gray's requested fees were less than the amount set forth in the corresponding budget approved by the client for each matter and the number of professionals and paraprofessionals did not exceed the staffing plan for any of the periods.

16.     With respect to the Full Compensation Period, Ropes & Gray's total requested fees and expenses were less than the aggregate amounts approved by the client in the monthly budgets.  By matter category, Ropes & Gray's requested fees were less than the amount set forth in the budgets for each matter category, except that Ropes & Gray exceeded the budget for Matter 0008 – R&G Retention & Fee Applications by approximately 45% or $95,000.00 during the First Compensation Period.  This was a result of an oversight in the budgeting process whereby no fees were explicitly budgeted for this matter category during the months of August and September 2016.  Instead, Ropes & Gray budgeted all work related to retention and fee applications – whether related to Ropes & Gray or other professionals – within Matter 0016. However, during those months, Ropes & Gray attorneys and paraprofessional spent time, approximately 140 hours, preparing a supplemental declaration in support of the Retention Order (as defined herein) and preparing and filing monthly fee statements for the months of June, July and August.

17.     Pursuant to the Interim Compensation Order, Ropes & Gray has received 80% of the fees and 100% of the expenses requested in the Monthly Fee Statements.  As of the date of

this Application, Ropes & Gray has not received and does not expect to receive any payment for the March Fees and Expenses in advance of the Court's approval of payments pursuant to this Application.

18.     The fees sought in the Application for the Second Compensation Period reflect an aggregate of 4,537.70 hours expended by Ropes & Gray professionals and paraprofessionals during the Second Compensation Period rendering necessary and beneficial legal services to the Debtors at a blended average hourly rate of $748.14 for both attorneys and paraprofessionals (and $795.28 for attorneys only).

19.     The fees sought in the Application for the Full Compensation Period reflect an aggregate of 9,624.90 hours expended by Ropes & Gray professionals and paraprofessionals during the Full Compensation Period rendering necessary and beneficial legal services to the Debtors at a blended average hourly rate of $735.37 for both attorneys and paraprofessionals (and $781.00 for attorneys only).

20.     Ropes & Gray maintains computerized records of the time expended and expenses incurred in the performance of professional services as required by the Interim Compensation Order, the Local Bankruptcy Rules, the Local Guidelines, and the UST Guidelines.  These records are maintained in the ordinary course of Ropes & Gray's practice. The time records for services rendered by Ropes & Gray during the Second Compensation Period is included as **Exhibit H** and a complete itemization of expenses incurred by Ropes & Gray in connection with the services rendered during the Second Compensation Period is included as **Exhibit G-1**.   The time records and itemization of expenses for the First Compensation Period was provided in the First Interim Fee Application and is incorporated herein by reference.

-9-

21.    The hourly rates and corresponding rate structure utilized by Ropes & Gray in these Chapter 11 Cases are equivalent to the hourly rates and corresponding rate structure predominantly used by Ropes & Gray for restructuring, workout, bankruptcy, insolvency and comparable matters, and similar complex corporate matters whether in court or otherwise, regardless of whether a fee application is required.  The rates and rate structure reflect that Ropes & Gray matters are typically national in scope and generally involve great complexity, high stakes, and severe time pressures.

22.    Ropes & Gray's hourly rates are set at a level designed to compensate Ropes & Gray fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with rates charged by comparable full-service law firms that provide restructuring services.

23.    As of February 1, 2017, the rates of timekeepers working on Ropes & Gray's representation of the Debtors increased according to the firm's customary annual rate adjustments.[8]  Ropes & Gray notified the Court and the Debtors of these customary rate increases and received approval from the Debtors for the same prior to their taking effect.  *See Fourth Supplemental Declaration of Gregg M. Galardi in Support of Debtors' Application for Entry of an Order Authorizing the Retention of Ropes & Gray LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [Docket No. 786] (the "Rate Increase Notice").

---

[8] Ropes & Gray's customary annual rate adjustment ordinarily goes into effect on January 1.  However, Ropes & Gray voluntarily delayed the application of the new rates with respect to services provided to the Debtors when it was possible that the Effective Date (as defined in the Chapter 11 Plan) would occur during the month of January.  After the Effective Date was delayed, Ropes & Gray notified the U.S. Trustee of the proposed rate increase and filed the Rate Increase Notice (as defined herein).  The rate adjustment went into effect as of February 1, 2017.

61561150_9

24.    Ropes & Gray regularly reviews its billing statements to ensure that the Debtors are only billed for services that were actual and necessary.  Moreover, to ensure compliance with the Guidelines, Ropes & Gray regularly reduces its expenses, particularly expenses related to travel and overtime meals.

## Voluntary Reductions

25.    During the Second Compensation Period, after internal review, as a courtesy to the Debtors, Ropes & Gray took voluntary reductions in fees in excess of $59,000.00[9] and expenses in excess of $43,500.00.   The Monthly Fee Statements reflect these voluntary reductions of fees and expenses.  Combined with the reductions taken in connection with the First Compensation Period, Ropes & Gray has, in total, taken voluntary reductions in fees in excess of $260,000.00[10] and expenses in excess of $80,000.00.

## Background

### General Case Background

26.    On June 10, 2016 (the "Petition Date"), Gawker Media filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On June 12, 2016, GMGI and Gawker Hungary each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On June 16, 2016 the Court entered an order authorizing the joint administration and procedural consolidation of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 41]. No request for the appointment of a trustee or examiner was made in these Chapter 11 Cases.

27.    On June 24, 2016, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") formed the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code [Docket No. 62].

---

[9] The voluntary reduction in fees does not include the 50% reduction for travel time.

[10] The voluntary reduction in fees does not include the 50% reduction for travel time.

61561150_9

28.     On September 9, 2016, the Debtors consummated the sale of substantially all of their assets for consideration in an amount in excess of $135 million.

29.     On November 4, 2016, the Court entered an order approving the adequacy of the disclosure statement for the Debtors' joint plan of liquidation (the "Disclosure Statement"). Shortly thereafter, the Debtors began solicitation of acceptances of the Chapter 11 Plan (as defined below).

30.     The deadline for voting on the Chapter 11 Plan occurred on December 5, 2016.  In total, over 170 creditors and interest holders voted to accept the Plan, while no Entities voted to reject the Plan.

31.     On December 22, 2016, the Bankruptcy Court confirmed the *Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 638, Exhibit A] (the "Chapter 11 Plan") pursuant to the *Findings of Fact, Conclusions of Law, and Order Confirming the Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 638] (the "Confirmation Order").  The Effective Date (as defined in the Chapter 11 Plan) occurred on March 17, 2017.  *See Notice of (I) Entry of Order Confirming the Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft. and (II) Occurrence of Effective Date* [Docket No. 825].

32.     Pursuant to the Chapter 11 Plan and the Plan Supplement (as defined in the Chapter 11 Plan), William D. Holden was appointed as the fiduciary responsible, as of the Effective Date, for the implementation of the applicable provisions of the Chapter 11 Plan and the liquidation of the remaining assets of the Debtors (the "Plan Administrator").

-12-

***Retention and Disinterestedness of Ropes & Gray***

33.    On June 20, 2016 the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Ropes & Gray LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* (the "Retention Application") [Docket No. 57].

34.    On July 14, 2016, the Court entered the *Order Authorizing the Retention and Employment of Ropes & Gray LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [Docket No. 101] (the "Retention Order"). The Retention Order authorizes the Debtors to compensate and reimburse Ropes & Gray in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Pursuant to the Retention Order, Ropes & Gray is authorized to be compensated on an hourly basis for professional services rendered to the Debtors and reimbursed for actual and necessary expenses incurred by Ropes & Gray in connection therewith.

35.    As disclosed in the Retention Application, to the best of the Debtors' knowledge and as disclosed in the *Declaration of Gregg M. Galardi in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Ropes & Gray LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* [Docket No. 78] and as subsequently supplemented[11] (the "Galardi Retention Declaration"):

---

[11] *See Supplemental Declaration of Gregg M. Galardi in Support of Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Ropes & Gray LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date*, filed on July 6, 2016 [Docket No. 78]; *Second Supplemental Declaration of Gregg M. Galardi in Support of Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Ropes & Gray LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date*, filed on July 25, 2016 [Docket No. 125]; *Third Supplemental Declaration of Gregg M. Galardi in Support of Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Ropes & Gray LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date*, filed on August 19, 2016 [Docket No. 208]; and *Fourth*

a. Ropes & Gray is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates, and

b. Ropes & Gray has no connection to the Debtors, their creditors, or other parties-in-interest, except as disclosed in the Galardi Retention Declaration.

36.    Ropes & Gray may have in the past represented, may currently represent, and likely in the future will represent parties-in-interest in connection with matters unrelated to the Debtors in these Chapter 11 Cases.    In the Galardi Retention Declaration, Ropes & Gray disclosed its connections to parties-in-interest that it has been able to ascertain using its reasonable efforts.  Ropes & Gray has updated the Galardi Retention Declaration, as appropriate, when Ropes & Gray has become aware of relevant and material new information.

37.    Ropes & Gray performed the services for which it is seeking compensation on behalf of the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

38.    Pursuant to Bankruptcy Rule 2016(b), Ropes & Gray has not shared, nor has Ropes & Gray agreed to share, (a) any compensation it has received or may receive with another party or person other than with the partners, counsel, and associates of Ropes & Gray, or (b) any compensation another person or party has received or may receive.

## Summary of Services Provided During the Second Compensation Period

37.    To provide a meaningful summary of services rendered on behalf of the Debtors, Ropes & Gray has established, in accordance with the Guidelines and its internal billing procedures, the following matter numbers in connection with these Chapter 11 Cases that are applicable to this Application:

---

*Supplemental Declaration of Gregg M. Galardi in Support of Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Ropes & Gray LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date*, filed on February 28, 2017 [Docket No. 786].

61561150_9

| Matter Number | Matter Description |
|---|---|
| 2 | Reporting (MOR/SEC) |
| 4 | Litigation |
| 5 | Tax Matters |
| 6 | Asset/Lien & Recovery Analysis |
| 8 | R&G Retention & Fee Applications |
| 11 | Investigations |
| 12 | Sales |
| 13 | Claims |
| 14 | Travel |
| 16 | Other Retention & Fee Applications |
| 17 | Executory Contracts/Leases |
| 18 | Plan and Disclosure Statement |
| 19 | Hearings |
| 20 | Administration |
| 21 | Business Operations/Strategic Planning |
| 22 | Committee Matters/Meetings |
| 23 | Creditor & Shareholder Inquiries |
| 24 | Corporate Matters |
| 25 | Employee Benefits Issues |
| 26 | Relief from Stay & Adequate Protection |

38.     The following is a summary, by matter, of the most significant professional services rendered by Ropes & Gray in connection with its role as counsel to the Debtors during the Second Compensation Period.  The summary of services rendered by Ropes & Gray during the First Compensation Period is provided in the First Interim Fee Application and incorporated herein by reference.  This summary is organized in accordance with Ropes & Gray's internal system of matter numbers.  The detailed descriptions set forth herein demonstrate that Ropes & Gray performed reasonable and necessary services for the Debtors in these Chapter 11 Cases.

-15-

A.     **Reporting (MOR/SEC) [Matter No. 2]**

Total Fees:     $8,931.00
Total Hours:    10.50

39.     This Matter Category includes time spent by Ropes & Gray attorneys and paraprofessionals during the Second Compensation Period relating to preparation of the Debtors' monthly operating reports (the "MORs").

40.     Specifically, with respect to the MORs, Ropes & Gray attorneys and paraprofessionals spent time:

(a)     Assisting the Debtors' chief restructuring officer, in preparing MORs for each of the periods from (i) September 1 to September 30, 2016; (ii) October 1 to October 31, 2016; (iii) November 1 to November 30, 2016; (iv) December 1 to December 31, 2016; and (v) January 1 to January 31, 2017;

(b)     Reviewing draft MORs for such periods prepared by Opportune LLP ("Opportune");

(c)     Having teleconferences with the U.S. Trustee regarding the content of the MORs; and

(d)     Filing the MORs for each of the periods from (i) September 1 to September 30, 2016 [Docket No. 503]; (ii) October 1 to October 31, 2016 [Docket No. 554]; (iii) November 1 to November 30, 2016 [Docket No. 675]; (iv) December 1 to December 31, 2016 [Docket No. 736]; and (v) January 1 to January 31, 2017 [Docket No. 817].

B.     **Litigation [Matter No. 4]**

Total Fees:     $304,076.50
Total Hours:    341.20

41.     This Matter Category includes time spent by Ropes & Gray attorneys and paraprofessionals during the Second Compensation Period (i) holding discussions with the Creditors' Committee regarding their request for discovery from the Debtors in connection with purported Debtor causes of action and coordinating discovery for the Creditors' Committee with respect thereto, (ii) filing the *Motion of the Debtors for Leave Pursuant to Rule 2004 of the*

-16-

*Federal Rules of Bankruptcy Procedure to Conduct Discovery Concerning Potential Plan Issues and Potential Causes of Action, and to Establish Discovery Response and Dispute Procedures* [Docket No. 341] (the "<u>Debtors' 2004 Motion</u>") and holding discussions with the parties subject to the Debtors' 2004 Motion, and (iii) supporting efforts relating to the Debtors' substantive pending non-bankruptcy litigation proceedings and coordinating with special counsel, as necessary to assure coordination with the Chapter 11 Cases.

### i.    *Review of Debtor Causes of Action*

42.    During the Second Compensation Period, Ropes & Gray continued its review of potential claims and causes of actions among the Debtor entities and their respective directors, officers, and employees, as well as claims and causes of action of the Debtors against unaffiliated third parties.  Ropes & Gray completed its review of various documents and conducted diligence and research regarding the viability and strength of these potential claims.  Following the completion of their review, Ropes & Gray attorneys compiled and presented their findings to the Special Committee of the Board of GMGI.

43.    During the Second Compensation Period, Ropes & Gray attorneys also continued to assist in preparing responses to the Creditors' Committee's document requests in connection with the Creditors' Committee's separate investigation of the Debtors' causes of action.

### ii.    *The Debtors' 2004 Motion*

44.    On October 11, 2016, the Debtors' filed the Debtors' 2004 Motion, seeking, among other things to obtain a "Rule 2004 Examination" in order to investigate the relationship between certain unsecured creditors and Peter Thiel.  During the Second Compensation Period, Ropes & Gray attorneys researched and prepared a response in anticipation of objections to the Debtors' 2004 Motion and engaged in initial discussions with the parties that were subject to the

61561150_9

Debtors' 2004 Motion in pursuit of a possible resolution.  As part of a settlement resolving the claims of certain unsecured creditors, the Debtors adjourned the hearing on and the objection deadline to the Debtors' 2004 Motion multiple times.  A contested hearing on the Debtors' 2004 Motion took place on April 25, 2017, after which the Court reserved decision.

### iii.  *Coordination with Debtors' Special Counsel*

45.    During the course of the Chapter 11 Cases, the Debtors continued to (a) prosecute their appeal of the Florida state court's decision in *Bollea v. Gawker Media, LLC, et al.*, No. 12012447-CI-011 (Fla. 6th Jud. Cir. Pinellas Cty.) awarding Terry G. Bollea $130 million in damages against Gawker Media (the "Bollea Judgment"), (b) defend against a pending Massachusetts District Court proceeding in a suit for libel, intentional interference with prospective economic advantage, intentional infliction of emotional distress, and negligent hiring and retention, filed by Shiva Ayyadurai, and (c) defend against a pending Southern District of New York proceeding in a suit for defamation, breach of confidence, breach of contract, intentional interference with prospective economic advantage, fraudulent misrepresentation, and negligent hiring and retention, filed by Ashley Terrill.

46.    While Ropes & Gray is not acting as the Debtors' primary counsel in these non-bankruptcy proceedings, Ropes & Gray attorneys spent time during the Second Compensation Period coordinating with the special litigation counsel acting as the Debtors' primary counsel in these proceedings ("Special Litigation Counsel") to ensure that the Debtors pursue a consistent strategy and to facilitate global negotiations to resolve litigation creditors' claims.  This included (a) reviewing and commenting on pleadings prepared by Special Litigation Counsel, (b) researching and analyzing issues relating to the appeal of the Bollea Judgment, and (c) engaging in multi-day settlement discussions directly tied to the chapter 11 plan process.  In

-18-

each of these tasks, Ropes & Gray and the Debtors' Special Litigation Counsel sought to avoid duplication of work.

**C.      Tax Matters [Matter No. 5]**

Total Fees:      $499,779.50
Total Hours:    543.60

47.      This Matter Category includes time spent by Ropes & Gray attorneys and paraprofessionals during the Second Compensation Period regarding tax structuring issues relating to the finalization of the Debtors' plan of liquidation, preparation of the Debtors' 2016 tax returns, and addressing interrelated tax claims asserted by Hungarian and U.S. taxing authorities. GMGI is a Cayman Island corporation, Gawker Media is a Delaware limited liability company, and Gawker Hungary is a Hungarian corporation. As a result, formulation, negotiation, and finalization of the inter-debtor settlements at the heart of the plan of liquidation implicated intersecting tax laws of these three jurisdictions in order to comply with applicable laws and regulations and maximize tax benefits available to the Debtors' estates. Specifically, Ropes & Gray tax specialist attorneys analyzed the impact on various proposed settlement scenarios of tax laws and regulations applicable to the Unimoda Sale (as defined herein) and assessments of prior tax years. These tax specialists corresponded and held conference calls with Ropes & Gray's corporate and restructuring specialist attorneys and Opportune to assist in the structuring of the various settlements embodied in the Chapter 11 Plan.

48.      Preparing 2016 tax returns for the separate Debtor entities in their applicable jurisdictions also required significant attention and expertise from Ropes & Gray tax, corporate and restructuring specialists to optimize treatment with respect to the Debtors' estates. The 2016 tax returns in each jurisdiction were required to address the effects during that tax year of the Unimoda Sale, settlements among the three Debtor estates as well as with third party plaintiffs,

-19-

and Plan Confirmation (as defined herein).    Ropes & Gray attorneys worked with tax professionals at Opportune to prepare these returns.    Gawker Hungary filed its 2016 tax return with the Hungarian taxing authority on February 27, 2017, and Gawker Media and GMGI filed their tax returns with the Internal Revenue Service (the "IRS"), New York State and New York City on March 2, 2017.

49.    Additionally, the Debtors had to address substantial prepetition tax claims asserted by the Hungarian taxing authority, the IRS, and New York City, while cooperating with ongoing tax audits.    Specifically, the Debtors prepared and filed objections and requests for bankruptcy court relief pursuant to Bankruptcy Code section 505 with respect to unliquidated prepetition tax claims asserted by the IRS and New York City [Docket Nos. 769, 770].    At the same time, the Debtors were also providing materials to satisfy rolling information and document requests from those agencies relating to audits of prior tax years.    The Debtors also engaged in ongoing discussions and negotiations with the Hungarian taxing authorities, while preparing documentation and providing that agency with extensive information in an effort to facilitate the ongoing Hungarian tax audit and resolve Hungarian tax claims.    These projects required the combined effort of Ropes & Gray tax, tax litigation, corporate and restructuring specialists working in conjunction with tax valuation experts at the Brattle Group and tax professionals at Opportune.

**D.    Asset/Lien & Recovery Analysis [Matter No. 6]**

Total Fees:    $13,078.00
Total Hours:   12.50

50.    This Matter Category includes time spent by a Ropes & Gray attorneys reviewing insurance policies and discussing coverage with insurance carriers in connection with possible recoveries on certain claims against the Debtors.    It also includes time spent negotiating and

finalizing the Debtors' stipulation with Nick Denton regarding the Debtors' potential claims in

Mr. Denton's individual chapter 11 case.

**E.    R&G Retention & Fee Applications [Matter No. 8]**

Total Fees:    $192,899.00
Total Hours:   273.60

51.    This Matter Category includes time spent by Ropes & Gray attorneys and

paraprofessionals relating to:

> (a)    implementing and following internally-established procedures, which require the continuous analysis of potential new conflicts;
>
> (b)    drafting and filing the Supplemental Retention Declarations;
>
> (c)    reviewing and revising invoices regarding privilege and compliance with applicable guidelines and rules;
>
> (d)    drafting, filing and communicating with the U.S. Trustee regarding the First Interim Fee Application; and
>
> (e)    drafting and serving the Monthly Fee Statements.

52.    As set forth in Exhibit A, Ropes & Gray estimates that approximately 6% (273.6

hours) of the total hours worked during the Second Compensation period (4,537.7hours) and

approximately 5.5% ($192,899.00) of the total fees billed during the Second Compensation

period ($3,479,140.00) were spent preparing invoices, including substantial time spent revising

and redacting time entries to ensure the preservation of privilege and work product and maintain

the confidential information regarding the Debtors' business operations.

**F.    Investigations [Matter No. 11]**

Total Fees:    $6,858.50
Total Hours:   8.60

53.    This Matter Category includes time spent by two Ropes & Gray attorneys during

the Second Compensation Period completing the Debtors' analysis of intercompany and

allocation issues.

### G.    Sales [Matter No. 12]

Total Fees:    $20,118.50
Total Hours:    23.20

54.    This Matter Category includes time spent by Ropes & Gray attorneys and paraprofessionals relating to certain post-closing requirements arising out of the Debtors' sale of substantially all of their assets (the "Unimoda Sale") to UniModa, LLC ("Unimoda"). These post-closing activities primarily included coordinating with Unimoda to resolve issues in connection with the assignment and assumption of certain executory contracts and payment of related cure costs and the resolution of the net working capital adjustment contemplated by the Asset Purchase Agreement.

### H.    Claims [Matter No. 13]

Total Fees:    $1,033,749.00
Total Hours:    1,505.00

55.    This Matter Category includes time spent by Ropes & Gray attorneys and paraprofessionals providing services related to the administration and resolution of claims against the Debtors' estates. Specifically, the attorneys and paraprofessionals spent time on, among other things: (a) negotiating and documenting the settlement of the claim arising from the Bollea Judgment (the "Bollea Judgment Claim"); (b) analyzing and researching issues related to substantive objections to claims arising out of ongoing prepetition litigation against the Debtors (the "Article Lawsuits"); (c) preparing objections to claims arising from the Article Lawsuits; (d) preparing omnibus objections to satisfied, duplicate and superseded claims; (e) negotiating and documenting settlements with various claimants, including a stipulation with certain of the Debtors' former employees; (f) drafting and revising pleadings regarding the administrative claims bar date and notice thereof; and (g) coordinating with Prime Clerk with regard to, among other issues, updating and maintaining the claims register.

-22-

### i.    *Bollea Judgment Claim*

56.    In connection with the development of the Chapter 11 Plan, the Debtors engaged in discussions with counsel to the Creditors' Committee and counsel to Bollea regarding the possible settlement of the Bollea Judgment Claim as the center piece of avoiding costly litigation over the allocation of the Debtors' assets across GMGI, Gawker Media, and Gawker Hungary. As a result of a multiple-day negotiation conducted at Ropes & Gray's New York office, the parties reached a settlement.  In addition to time spent orchestrating these negotiations, Ropes & Gray attorneys devoted time to documenting the terms of the settlement and incorporating its terms into the Plan Documents (as defined herein).

### ii.    *Article Lawsuit Claims Objections*

57.    In addition to the Bollea Judgment Claim, the largest unsecured claims against the Debtors were disputed claims arising from the Article Lawsuits, including, among others, claims filed by Shiva Ayyadurai ($35 million), Charles Johnson/Got News LLC ($24 million) and Ashley Terrill ($10 million).  In general, the Article Lawsuits arose from claims for invasion of privacy, defamation or related torts based on articles written for and published by Gawker Media. Excluding duplicate claims against multiple debtors, six claims were filed by plaintiffs in the Article Lawsuits and the aggregate amount asserted in those claims exceeded $500 million. During the Second Compensation Period Ropes & Gray attorneys researched, drafted and filed objections to all six of these claims.  Subsequent to the filing of the objections, Ropes & Gray attorneys engaged in negotiations and successfully settled five of the six claims, including the Ayyadurai and Terrill claims, for an aggregate amount of approximately $1.5 million.  These settlements were documented and, if necessary, presented to the court for approval.

58.     For the one remaining claim (the "Johnson/GotNews Claim"), the Debtors'
received a response to their objection and Ropes & Gray attorneys researched, prepared and filed
a reply to that response.   Oral argument regarding certain preliminary issues relating to the
Johnson/GotNews claim was held on December 1, 2016 and February 14, 2017.   Ropes & Gray
attorneys prepared for and participated in these oral arguments and engaged in various discussion
with counsel to the claimant, leading up to and following, the oral arguments.   These discussions
resulted in a narrowing of the issues presented and to be decided as a preliminary matter.
Following oral argument, the court took the matter under advisement.

### iii.     *Omnibus and Other Claims Objections*

59.     During the Second Compensation Period, Ropes & Gray prepared and filed six
omnibus objections to claims on the basis that such claims had been satisfied, were duplicative of
other claims filed, and were amended and superseded by subsequent claims filed.   Ropes & Gray
also drafted and filed additional objections to certain claims for which the Debtors assert no
liability.   The Court has entered orders expunging the majority of these claims upon the
claimant's failure to respond prior to the response deadline.   Ropes & Gray has also successfully
resolved certain claims for which the Debtors do not believe they are liable through discussions
with the claimant, resulting, in many cases, in the claimant withdrawing the claim.

## I.     Travel [Matter No. 14]

Total Fees:     $47,704.50
Total Hours:   105.00

60.     This Matter Category includes time spent by Ropes & Gray attorneys and
paraprofessionals related to travel in connection with hearings at the Bankruptcy Court for the
Southern District of New York and meetings with the Debtors' management.   As an
accommodation to the client and in compliance with the UST Guidelines, non-work travel time

was billed at 50% of the professional's or paraprofessional's billing rate, resulting in a voluntarily reduction of fees by approximately $47,704.50.

**J.      Other Retention & Fee Applications [Matter No. 16]**

Total Fees:    $73,188.50
Total Hours:   102.80

61.      This Matter Category includes time spent by Ropes & Gray attorneys and paraprofessionals providing services related to ensuring the retention of the Debtors' other professionals in these Chapter 11 Cases.  Specifically, the attorneys and paraprofessionals spent time:

(a)      reviewing the engagement letters of the Debtors' other professionals;

(b)      reviewing and presenting the retention application for Bush Ross, P.A., as special litigation counsel which application was approved by the Court on December 12, 2016 [Docket No. 578];

(c)      coordinating with the Debtors and ordinary course professionals with respect to ordinary course professional retentions and complying with the related disclosure requirements of applicable provisions of the Bankruptcy Code, including the preparation and filing of quarterly statements of fees paid to ordinary course professionals [Docket Nos. 305, 668]; and

(d)      assisting the Debtors' other professionals with the preparation and filing of their monthly fee statements.

62.      Ropes & Gray attorneys also spent additional time during the Second Compensation Period negotiating and consensually resolving the Creditors' Committee's objection to the retention application of Akin Gump Strauss Hauer & Feld LLP as special counsel to the Special Committee of the Board of GMGI, which application was approved by the Court on December 14, 2016 [Docket No. 599].

-25-

**K.**    **Executory Contracts/Leases [Matter No. 17]**

Total Fees:    $76,176.50
Total Hours:   92.20

63.    This Matter Category includes time spent by Ropes & Gray attorneys and paraprofessionals providing services related to the analysis, administration, assumption and/or assignment of the Debtors' executory contracts and leases, including:

(a)    Coordinating with Unimoda regarding questions related to assignment of certain executory contracts and leases in connection with the Unimoda Sale and related legal issues; and

(b)    Conducting a comprehensive general review and analysis of the Debtors' remaining executory contracts in connection with the development of the Chapter 11 Plan and liquidation of the Debtors' estates following Plan Confirmation.

64.    Specifically, during the Second Compensation Period, following the Debtor's detailed analysis of its three unexpired leases (the "Elizabeth Street Leases") and two subleases (the "Elizabeth Street Subleases") with respect to the premises at 208-210 Elizabeth Street, New York, New York, the Debtors assumed each of the Elizabeth Street Leases, the Elizabeth Street Subleases and the related sublease consents (collectively, the "Assumed Leases") pursuant to motions filed in November 2016 [Docket Nos. 455-57] and granted on December 1, 2016 [Docket Nos. 517-19].  Following Plan Confirmation, Ropes & Gray pursued various options for assigning these assumed leases as part of the liquidation of the Debtors' remaining assets. Ultimately, Ropes & Gray attorneys engaged in discussions and reach an agreement whereby the Debtors would assign the Assumed Leases to the landlord for the Elizabeth Street Leases in exchange for a lump sum payment and the reimbursement of certain prepaid, unearned amounts. Ropes & Gray attorneys worked to document this agreement and sought court approval of the assignment, which was granted on February 16, 2017 [Docket No. 766].

61561150_9

L.     **Plan and Disclosure Statement [Matter No. 18]**

Total Fees:     $824,154.50
Total Hours:   968.40

65.     This Matter Category includes time spent by Ropes & Gray attorneys and paraprofessionals related to developing the Chapter 11 Plan and accompanying amended disclosure statement, filed on November 2, 2016 [Docket No. 403] (the "Disclosure Statement"), seeking court approval of the Disclosure Statement, soliciting votes on the Chapter 11 Plan, and seeking confirmation of the Chapter 11 Plan ("Plan Confirmation").

66.     The development of the Chapter 11 Plan in these Chapter 11 Cases was complicated by a number of issues unique to these Chapter 11 Cases – e.g., the allocation of sale proceeds and expenses, resolution of various intercompany claims, and the treatment of disputed creditor claims asserted in amounts far in excess of the Debtors' assets.  After filing the initial joint plan of liquidation and disclosure statement [Docket No. 308], Ropes & Gray attorneys led discussions on behalf of the Debtors regarding revisions relating to a potential consensual plan with the Creditors' Committee, major preferred equity holders, secured lenders, and certain significant creditors.  The Debtors were ultimately able to reach a global resolution of the various disputes with each of these parties through a series of compromises.  These negotiations and consensual resolutions were instrumental in allowing the Debtors to pursue a solicitation schedule that ultimately resulted in Plan Confirmation and initial plan distributions before the end of 2016.

67.     In connection with the Chapter 11 Plan negotiation, Ropes & Gray attorneys drafted a plan support term sheet and agreement to guide discussions and memorialize the agreement among the various parties in interest.  Once an agreement was reached, Ropes & Gray attorneys prepared and filed a revised Disclosure Statement and Chapter 11 Plan on November 2,

-27-

2016, that reflected the consensual resolution and plan support agreement [Docket No. 403].

Ropes & Gray attorneys subsequently had further discussions with certain parties in interest and

further revised the Chapter 11 Plan ahead of the confirmation hearing to reflect certain

consensual agreements reached [Docket No. 576].

   68. In additional to the above, in connection with the Chapter 11 Plan and Disclosure

Statement and the solicitation of votes on and confirmation of the Chapter 11 Plan, Ropes &

Gray attorneys and paraprofessionals spent time:

  (a) Preparing for and attending the hearing on the adequacy of the Disclosure Statement;

  (b) Coordinating with Prime Clerk, LLC, the Debtors' notice and claims agent, for the solicitation and tabulation of votes on the Chapter 11 Plan;

  (c) Preparing the Plan Supplement and various revisions thereto, including drafting certain underlying documents and agreements;

  (d) Researching and preparing motions in connection with confirmation of the Chapter 11 Plan including the (i) *Debtors' Motion Pursuant to Bankruptcy Code Sections 105, 502(c) and 1129 and Bankruptcy Rules 3018 and 3021 for Approval of Claims Estimation and Plan Reserve Procedures* [Docket No. 444], (ii) *Debtors' Motion Pursuant to Bankruptcy Code Sections 105 and 502(e)(1) and Bankruptcy Rule 3018 for Estimation of Claim Nos. 293, 294, and 294 Filed by Albert James Daulerio* [Docket No. 495], and (iii) *Debtors' (I) Memorandum of Law in Support of Confirmation of Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft. and (II) Omnibus Reply to Objections Thereto* [Docket No. 574]; and

  (e) Preparing for and attending the hearing on confirmation of the Chapter 11 Plan, including discussions with interested parties regarding formal and informal objections to confirmation of the Chapter 11 Plan.

   69. Additionally, Ropes & Gray attorneys and paraprofessionals spent time during the

Second Compensation Period preparing and filing the *Debtors' Motion for Entry of a Second*

*Order Extending Exclusive Periods to File Chapter 11 Plan and Solicit Acceptances Thereof*

*Pursuant to Section 1121(d) of the Bankruptcy Code*, filed on December 2, 2016 [Docket No. 531], which was ultimately withdrawn after entry of the Confirmation Order.

70.     Following the Court's entry of the Confirmation Order, Ropes & Gray attorneys and paraprofessionals worked to satisfy the various conditions precedent to the occurrence of the effective date of the Chapter 11 Plan, including, among other things, (i) coordinating with Opportune regarding issues with and preparation for plan distributions, and (ii) finalizing and executing the plan administrator agreement.

**M.     Hearings [Matter No. 19]**

 Total Fees:    $50,911.00
 Total Hours:   63.60

71.     This Matter Category includes time spent by Ropes & Gray attorneys and paraprofessionals providing services related to preparing for and attending seven hearings during the Second Compensation Period, held on October 6, 2016, November 3, 2016, December 1, 2016, December 13, 2016, December 15, 2016, December 26, 2016, and February 14, 2017 (each, a "Hearing" and, collectively, the "Hearings"), including preparing agendas, orders, and binders related to the Hearings, settling orders before and after the Hearings, and corresponding with various parties and the Court's chambers in preparation for and after the Hearings. These services also included conferences to discuss multiple matters scheduled for a specific Hearing and coordinating Hearing logistics among the various parties.

**N.     Administration [Matter No. 20]**

 Total Fees:    $138,237.50
 Total Hours:   259.30

72.     This Matter Category includes time spent by Ropes & Gray attorneys and paraprofessionals related to the administrative efforts to effectively participate in the Chapter 11 Cases.  Specifically, this Matter Category includes time spent on a variety of tasks that were

-29-

necessary to ensure the efficient and smooth administration of legal services related to the Chapter 11 Cases. In that regard, much of the fees sought for this Matter Category reflect the considerable time spent by paraprofessionals and staff expended not only on preparing materials for all hearings, but also the preparation and filing of all pleadings and Motions. In addition, the time for which compensation is sought includes time spent by attorneys and paraprofessionals coordinating, managing, and administering these Chapter 11 Cases on a daily basis, including monitoring critical dates and maintaining a case calendar, task lists, and work-in-progress reports.

### O.    Business Operations/Strategic Planning [Matter No. 21]

Total Fees:     $39,618.00
Total Hours:    33.70

73.    This Matter Category includes time spent by Ropes & Gray attorneys advising the Debtors' management team on process and strategies to ensure a maximum recovery for the creditors of the Debtors' estates following the closing of the Unimoda Sale. Specifically, the attorneys and paraprofessionals spent time:

(a)    strategizing with and advising the Debtors' management and Board of Directors with regard to the settlement of litigation claims against the Debtors, most significantly the settlement of the Bollea Judgment Claim;

(b)    assisting the Debtors' management with strategizing, formulating, and effectuating the Chapter 11 Plan;

(c)    presenting findings related to issues relating to inter-Debtor allocations, potential inter-Debtor and third party causes of action and the settlement thereof in connection with the development of the Chapter 11 Plan; and

(d)    assisting the Debtors with their compliance with chapter 11 operating and reporting requirements.

-30-

74.    Additionally, in connection with each of the above, Ropes & Gray participated in numerous board meetings and special committee meetings, in order to advise members with regard to critical issues and decisions.

## P.    Committee Matters/Meetings [Matter No. 22]

Total Fees:    $74,133.00
Total Hours:   99.00

75.    This Matter Category includes time spent by Ropes & Gray attorneys and paraprofessionals providing services related to responding to the Creditors' Committee's formal and informal inquiries concerning the Debtors as well as coordinating with the Creditors' Committee with regard to the Chapter 11 Plan and the Plan Confirmation process, among other things, in order to ensure that the Creditors' Committee received adequate notice and information regarding the Chapter 11 Cases.  Time was spent:

(a)    Reviewing and preparing a form response to the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Issuance of Subpoenas for the Production of Documents and the Provision of Testimony by the Debtors* [Docket No. 294] (the "Committee 2004 Motion");

(b)    Reviewing and providing certain documents in response to the discovery requests contained in the Committee 2004 Motion;

(c)    Negotiating the consensual withdrawal of the Committee 2004 Motion;

(d)    Responding to the Creditors' Committee's request for the Debtors' consent to their standing to commence and prosecute certain claims;

(e)    Discussing potential global settlement structures in connection with the development of the Chapter 11 Plan and negotiating a plan term sheet that formed the basis for the consensual Chapter 11 Plan; and

(f)    Preparing for and attending calls and meetings with the Creditors' Committee related to the development of the Chapter 11 Plan and the Plan Confirmation process.

-31-

61561150_9

**Q.      Creditor & Shareholder Inquiries [Matter No. 23]**

Total Fees:    $14,182.50
Total Hours:   12.80

76.      This Matter Category includes time spent by Ropes & Gray attorneys responding to inquiries from creditors, shareholders, and other parties-in-interest regarding the status of the Debtors' cases and the payment or treatment of contracts and claims.

**R.      Corporate Matters [Matter No. 24]**

Total Fees:    $24,071.00
Total Hours:   29.30

77.      This Matter Category includes time spent by Ropes & Gray attorneys and paraprofessionals related to (a) corporate governance issues and balancing these issues with Court requirements and orders, (b) reviewing corporate matters, in connection with post-closing activities relating to the Unimoda Sale and the development of the Chapter 11 Plan, (c) addressing issues relating to maintenance of the Debtors' intellectual property, including trademark filings and a potential trademark infringement, and  (d) finalizing the change of the corporate name of Gawker Hungary  pursuant to the requirement of the Unimoda Sale.

**S.      Employee Benefits Issues [Matter No. 25]**

Total Fees:    $1,830.00
Total Hours:   1.80

78.      This Matter Category includes time spent by two Ropes & Gray attorneys responding to an inquiry from the United States Equal Employment Opportunity Commission regarding the Debtors' EEO-1 Report.

-32-

**T.      Relief from Stay & Adequate Protection [Matter No. 26]**

Total Fees:    $35,443.00
Total Hours:   51.60

79.      This Matter Category includes time spent by Ropes & Gray attorneys and paraprofessionals addressing (a) the motion by St. Paul Fire & Marine Insurance Company ("Travelers") seeking relief from the automatic stay, filed on September 2, 2016 [Docket No. 243] (the "Travelers Lift Stay Motion") and (b) the motion by Mitchell Williams ("Williams") seeking relief from the automatic stay, filed on November 17, 2016 [Docket No. 460] (the "Williams Lift Stay Motion").   During the Second Compensation Period, Ropes & Gray attorneys and paraprofessionals spent time working with counsel to Travelers to negotiate and document a consensual resolution to the Travelers Lift Stay Motion and the Debtors' objection thereto [Docket No. 307].   On January 24, 2017 the Debtors and Travelers entered into a stipulation filed with the Court [Docket No. 702] and approved by order of the Court on February 10, 2017 [Docket No. 749], whereby Travelers agreed to withdraw the Travelers Lift Stay Motion without prejudice.

80.      During the Second Compensation Period, Ropes & Gray attorneys and paraprofessionals also spent time reviewing the Williams Lift Stay Motion, researching and drafting an objection to the Williams Lift Stay Motion, which was filed on November 29, 2016 [Docket No. 504].   In connection therewith, Ropes & Gray attorneys spent time researching the effect of the automatic stay on certain rights of the Debtors as well as other parties-in-interest. After oral argument was held before the Court on December 1, 2016, Ropes & Gray attorneys and counsel to Williams worked to resolve the issues related to the Williams Lift Stay Motion and the Debtors' objection to the claim filed by Williams.   The parties reached a monetary

settlement that was approved through the Confirmation Order and resulted in the withdrawal of the Williams Lift Stay Motion.

## Reasonable and Necessary Services Rendered by Ropes & Gray

91.     The foregoing professional services provided by Ropes & Gray on behalf of the Debtors during the Full Compensation Period were reasonable, necessary, and appropriate to the administration of these Chapter 11 Cases and related matters.  Many of the services performed by partners and associates of Ropes & Gray were provided by Ropes & Gray's Restructuring Group.  Ropes & Gray has a prominent practice in the area and enjoys a national and international reputation for its expertise in financial reorganizations and restructurings of troubled companies.  The attorneys at Ropes & Gray have represented either the debtor or the creditors' committee or have acted as special counsel in many large chapter 11 cases.

92.     In addition, due to the facts and circumstances of these Chapter 11 Cases, attorneys from Ropes & Gray's other practice groups, such as the corporate, litigation, and tax groups, were also involved with Ropes & Gray's representation of the Debtors.  These practice groups also enjoy a national and international reputation for their expertise.  Overall, Ropes & Gray brings to these Chapter 11 Cases a particularly high level of skill and knowledge.

## Actual and Necessary Expenses Incurred by Ropes & Gray

80.     As summarized in **Exhibit G** attached hereto and set forth in detail for the Second Compensation Period in **Exhibit G-1** attached hereto, Ropes & Gray has incurred a total of $130,560.16 in expenses on behalf of the Debtors during the Second Compensation Period and a total of $180,591.41 in expenses on behalf of the Debtors during the Full Compensation Period. These charges are intended to reimburse Ropes & Gray's direct operating costs, which are not incorporated into Ropes & Gray's hourly billing rates.  Ropes & Gray charges external copying and computer research at the provider's cost without markup.  Only clients who actually use

-34-

services of the types set forth in **Exhibit G** and **Exhibit G-1** of this Fee Application are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.

81.     The time constraints imposed by the circumstances of these Chapter 11 Cases required Ropes & Gray attorneys and other employees to devote substantial time during the evenings and on weekends to perform services on behalf of the Debtors.  These services were essential to meet deadlines, respond to daily inquiries from various creditors and other parties-in-interest on a timely basis, satisfy the demands of the Debtors' businesses, and ensure the orderly administration of their estates.  Consistent with firm policy and the Retention Application, Ropes & Gray employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs.  Ropes & Gray's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of legal services.

82.     The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these Chapter 11 Cases.

### Ropes & Gray's Requested Compensation and Reimbursement Should be Allowed

85.     Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

-35-

In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—

(a)    the time spent on such services;

(b)    the rates charged for such services;

(c)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(d)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(e)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

86.    Ropes & Gray respectfully submits that the services for which it seeks compensation in this Application were, at the time rendered, necessary for and beneficial to the Debtors and the Debtors in Possession. Ropes & Gray further believes that it performed the services for the Debtors economically, effectively, and efficiently, and the results obtained benefited all parties involved. Ropes & Gray further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, Debtors in Possession, and all parties in interest.

87.    During the Full Compensation Period, Ropes & Gray's hourly billing rates for attorneys ranged from $265.00 to $1,500.00. These hourly rates and corresponding rate structure utilized by Ropes & Gray in these Chapter 11 Cases are equivalent to the hourly rates and corresponding rate structure used by Ropes & Gray for restructuring, workout, bankruptcy, insolvency, and comparable matters, and similar complex corporate and litigation matters, whether in court or otherwise, regardless of whether a fee application is required. Furthermore,

-36-

Ropes & Gray's hourly rates are set at a level designed to compensate Ropes & Gray fairly and accurately for the work of its attorneys and paraprofessionals and to cover certain fixed and routine expenses. These hourly rates are consistent with the rates charged elsewhere.

88.    In sum, Ropes & Gray respectfully submits that the professional services provided by Ropes & Gray on behalf of the Debtors and Debtors in Possession during these Chapter 11 Cases were necessary and appropriate given the complexity of these Chapter 11 Cases, the time expended by Ropes & Gray employees, the nature and extent of Ropes & Gray's services provided, the value of Ropes & Gray's services, and the cost of comparable services outside of bankruptcy, all of which are relevant factors set forth in section 330 of the Bankruptcy Code. Accordingly, Ropes & Gray respectfully submits that approval of the compensation sought herein is warranted and should be approved.    To the extent that this Application is not in compliance with the Guidelines or any provisions of the Interim Compensation Order, Ropes & Gray respectfully requests that such Guidelines or provisions be waived to the extent that any deviations are not material.

### Notice

89.    In accordance with the Confirmation Order, the Debtors have provided notice of this Application to: (i) the Plan Administrator, William D. Holden, c/o Opportune LLP, 10 East 53rd Street, 33rd Floor, New York, New York 10022, Attn: William D. Holden (profinvoices@gawker.com); (ii) Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036 (Attn: Gregg Galardi), attorneys for the Plan Administrator; and (iii) the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Greg Zipes and Susan Arbeit (collectively, the "Notice Parties").   Any party, other than the Notice Parties, that wishes to object to this Application, must file its objection with the Court, with a copy to Chambers and serve it on the affected professional and

-37-

the Notice Parties so that it is actually received on or before June 8, 2017 at 4:00 p.m. (prevailing Eastern Time).

## No Prior Request

90.    No prior application for the relief requested herein has been made to this or any court.

*[Remainder of Page Intentionally Left Blank]*

61561150_9

WHEREFORE, Ropes & Gray respectfully requests that the Court enter an order:

(a) approving compensation for professional and paraprofessional services provided during the Second Compensation Period in the amount of $3,479,140.00;

(b) approving the reimbursement of actual, reasonable and necessary expenses incurred in the Second Compensation Period in the amount of $130,560.16;

(c) approving on a final basis compensation for professional and paraprofessional services provided during the Full Compensation Period in the amount of $7,460,598.75;

(d) approving on a final basis the reimbursement of actual, reasonable and necessary expenses incurred in the Full Compensation Period in the amount of $180,591.41;

(e) approving the payment of $974,850.77, representing the unpaid portion of Ropes & Gray's incurred fees and expenses during the Full Compensation Period;

(f) authorizing and directing the Debtors to pay the fees and expenses awarded;  and

(g) granting such other and further relief as this Court may deem just and proper.


Dated:  May 16, 2017
        New York, New York

                                        /s/ Gregg M. Galardi
                                        Gregg M. Galardi
                                        D. Ross Martin
                                        Jonathan M. Agudelo
                                        ROPES & GRAY LLP
                                        1211 Avenue of the Americas
                                        New York, NY 10036-8704
                                        Telephone:  (212) 596-9000
                                        Facsimile:    (212) 596-9090
                                        gregg.galardi@ropesgray.com
                                        ross.martin@ropesgray.com
                                        jonathan.agudelo@ropesgray.com

                                        *Counsel to the Debtors and Debtors in Possession*

-39-