**Hearing Date and Time: June 20, 2017 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: June 8, 2017 at 4:00 p.m. (Prevailing Eastern Time)**

THOMAS & LOCICERO
Gregg D. Thomas
601 South Boulevard
Tampa, Florida 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070

*Special Litigation Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
                                :
In re                           :    Chapter 11
                                :
Gawker Media LLC, *et al.*,[1]  :    Case No. 16-11700 (SMB)
                                :
        Debtors.                :    (Jointly Administered)
                                :
------------------------------------------------------x

**COVER SHEET FOR FINAL APPLICATION OF THOMAS & LOCICERO AS SPECIAL LITIGATION COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION, FOR ALLOWANCE OF COMPENSATION AND FOR THE REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM JUNE 10, 2016, THROUGH SEPTEMBER 30, 2016**

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022.  Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

| | |
|---|---|
| Name of Applicant: | Thomas & LoCicero<br>Counsel to the Debtors and Debtors in Possession |
| Date of Retention: | June 10, 2016 (*nunc pro tunc* to June 10, 2016)<br>[Docket No. 101] |
| Period for Which Compensation and Reimbursement is Sought: | June 10, 2016 through and including September 30, 2016 |
| Amount of Compensation Sought for the Compensation Period, as Actual, Reasonable, and Necessary That is Attributable to the Debtors: | $5,440.00 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $3,445.02 |
| Amount of Compensation Sought Already Paid Pursuant to Monthly Fee Statement: | $4,352.00 |
| Amount of Expense Reimbursement Already Paid Pursuant to Monthly Fee Statement: | $3,445.02 |
| Total Compensation Already Approved by Interim Order to Date: | $0.00 |
| Total Expenses Already Approved by Interim Order to Date: | $0.00 |
| Total Compensation Paid to Date but not yet allowed on a Final Basis: | $4,352.00 |
| Total Expenses Paid to Date but not yet allowed on a Final Basis: | $3,445.02 |
| Blended Hourly Rate for Hours Worked By All Timekeepers in this Application: | $367.82 |

| | |
|---|---|
| Number of Professionals and Paraprofessionals Included in this Application: | <u>3</u> |
| Number of Professional Billing Fewer than 15 Hours to this Case: | <u>3</u> |
| Increase in Rates: | <u>0 Timekeepers</u> |

This is a:_____Monthly _____ Interim_____X_____ Final Application.

## Summary of Monthly Fee Statements Filed

| *Application* | | *Requested* | | *CNO* | *Paid to Date* | | *Total Unpaid* |
|---|---|---|---|---|---|---|---|
| Date Filed/Docket No. | Period Covered | Total Fees | Expenses | Date Filed/Docket No. | Fees (80%) | Expenses (100%) | Fees and Expenses |
| 10/20/16; Dkt. No. 363 | 6/10/16 – 9/30/16 | $5,440.00 | $3,445.02 | N/A | $4,352.00 | $3,445.02 | $1,088.00 |
| **Totals** | | **$5,440.00** | **$3,445.02** | | **$4,352.00** | **$3,445.02** | **$1,088.00** |

**TIMEKEEPER SUMMARY**

| NAME OF PROFESSIONAL | TITLE | DEPT. | YEAR OF ADMISSION | HOURLY RATE | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|---|
| Gregg D. Thomas | Partner | Litigation | 1976 | $495.00 | 3.7 | $1,831.50 |
| Rachel E. Fugate | Partner | Litigation | 1998 | $320.00 | 9.6 | $3,072.00 |
| James J. McGuire | Partner | Litigation | 1993 | $365.00 | 4.1 | $1,496.50 |

**Hearing Date and Time: June 20, 2017 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: June 8, 2017 at 4:00 p.m. (Prevailing Eastern Time)**

THOMAS & LOCICERO
Gregg D. Thomas
601 South Boulevard
Tampa, Florida 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070

*Special Litigation Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
:
In re                                              :     Chapter 11
:
Gawker Media LLC, *et al.*,[1]                      :     Case No. 16-11700 (SMB)
:
Debtors.                                 :     (Jointly Administered)
:
------------------------------------------------------x

**FINAL APPLICATION OF THOMAS & LOCICERO AS SPECIAL LITIGATION COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION, FOR ALLOWANCE OF COMPENSATION AND FOR THE REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM**
<u>**JUNE 10, 2016, THROUGH SEPTEMBER 30, 2016**</u>

TO THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

Thomas & LoCicero ("TLO"), attorneys for Gawker Media LLC ("Gawker Media"), Gawker Media Group, Inc. ("GMGI"), and Gawker Hungary Kft. (f/k/a Kinja Kft.) ("Gawker Hungary", and collectively with Gawker Media and GMGI, the "Debtors"), for its application (the "Application") pursuant to sections 330 and 331 of title 11 of the United States Code (the

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

"Bankruptcy Code") for interim allowance of compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents:

## INTRODUCTION

By this Application, TLO seeks (a) final allowance and award of compensation for (i) the professional services rendered by TLO as Special Litigation Counsel to the Debtors and Debtors in Possession for the period from June 10, 2016, through and including September 30, 2016, (the "Compensation Period") in the amounts of $5,440.00 for fees and $3,445.02 for expenses (the "September Monthly Fee Statement") and (ii) the actual and necessary expenses incurred by TLO during the Compensation Period in connection with the rendition of such professional services in the amount of $5,440.00, and (b) the approval and payment of the unpaid portion of all such allowed fees and expenses in the amount of $1,088.00.

1.     This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 330 and 331 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 94] (the "Interim Compensation Order"). In preparing the Application, TLO has complied with the U.S. Trustee Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013 (the "Appendix B Guidelines"), and the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy

Case, effective February 5, 2013 (the "Local Guidelines"). In accordance with the Local Guidelines, a certification by Gregg D. Thomas regarding compliance with the Local Guidelines is attached hereto as **Exhibit A**.

## BACKGROUND

2.　On June 10, 2016 (the "Petition Date"), Gawker Media filed a petition with this Court under chapter 11 of the Bankruptcy Code. On June 12, 2016, GMGI and Gawker Hungary filed petitions with this Court under chapter 11 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

3.　On June 24, 2016, the United States Trustee for the Southern District of New York appointed the official committee of unsecured creditors (the "Committee").

4.　On September 23, 2016, this Court entered an order authorizing the retention of TLO as Special Litigation Counsel to the Debtors and Debtors in Possession [Docket No. 287] (the "TLO Retention Order").

5.　Pursuant to the Interim Compensation Order, TLO filed and sent to the Debtors and the appropriate notice parties a monthly fee statement, dated October 20, 2016, for compensation and for reimbursement of expenses for services rendered during the period from June 10, 2016, through September 30, 2016, in the amounts of $5,440.00 for fees and $3,445.02 for expenses (the "September Monthly Fee Statement"). TLO was paid $4,352.00 for fees and $3,445.02 for expenses.

6.　TLO has received no payment and no promises for payment from any other source for services rendered in connection with the Debtors' chapter 11 cases. There is no agreement or understanding between TLO and any other person (other than members of TLO)

3

for the sharing of compensation to be received for the services rendered in these chapter 11 cases.

7. Prior to retention in this matter, TLO had been providing services to Debtors in various Florida state litigation matters including, *Bollea v. Gawker Media, LLC*, Case No. 12-12447 CI (6th Cir., Pinellas County), *Bollea v. Buchwald & Associates, Inc., et. al* (6th Cir. Pinellas County), and various appellate matters arising out of that litigation (the "Florida Litigation"). TLO was also providing services to additional non-debtor defendants in the Florida Litigation. Pursuant to the TLO Retention Order, Debtors are responsible for 85% of the fees and 100% of the expenses for serviced rendered by TLO in the Florida Litigation.

## SUMMARY OF SERVICES RENDERED

8. During the Compensation Period, TLO rendered professional services for the Debtors as Special Litigation Counsel. As described in detail below, the issues arising in these chapter 11 cases have required the assistance of TLO personnel from multiple legal disciplines.

9. As is its practice with clients, TLO maintains written records of the time expended by attorneys in rendering professional services to the Debtors. The respective professionals made these time records contemporaneously with the services rendered, and the presentation of the time records complies with the Local Bankruptcy Rules, the Appendix B Guidelines and the Local Guidelines. A schedule showing the name of the attorney, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Compensation Period is annexed hereto as **Exhibit B**.

10. As is its practice with clients, TLO also maintains records of all actual and necessary out-of-pocket expenses incurred in rendering professional services, which are

available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as **Exhibit C**.

11. TLO respectfully submits that the professional services it rendered on behalf of the Debtors were necessary and appropriate and have directly contributed to the effective administration of this chapter 11 case, and to the benefit of the estates and their creditors.

12. The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed – the time records are set forth in Exhibit B. Instead, the following summary highlights certain services TLO rendered to the Debtors and identifies some of the matters and issues that TLO addressed for the Debtors during the Compensation Period.

A. Litigation

13. On behalf of the Debtors, TLO provided services to the Debtors' including advice regarding Florida appellate procedures, Florida's appellate judges and courts, and Florida substantive law as it pertains to the Florida Litigation.

14. TLO also worked with Debtors' other counsel on strategy for moving the Florida Litigation forward following an anticipated lifting of the automatic stay put in place by this Court.

B. Retention/TLO Fee Applications

15. During the Compensation Period, TLO prepared the Debtors' application to retain TLO as its Special Litigation Counsel. This Court entered an order approving the retention of TLO on September 23, 2016 [Docket No. 287].

5

16. During the Compensation Period, TLO also prepared the September Fee Statement. In preparing the September Fee Statement, TLO reviewed time entries for accuracy and propriety, to protect privilege, and to ensure compliance with the Local Bankruptcy Rules, the Appendix B Guidelines and the Local Guidelines.

## ALLOWANCE OF COMPENSATION

17. The professional services rendered by TLO required a high degree of professional competence and skill, and TLO expended substantial time and effort in these efforts. TLO respectfully submits that it performed the services rendered to the Committee in an efficient, effective, and economical manner, and that the results obtained to date benefited the Debtors' estates, the Debtors' unsecured creditors, and all other parties in interest. The Debtors have been given the opportunity to review this Application and have approved the amount of compensation requested herein.

18. The allowance of interim compensation for services rendered and reimbursement of expenses in chapter 11 cases is expressly provided for in section 331 of the Bankruptcy Code:

> [A]ny professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.

19. With respect to the level of compensation, section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered[.]" 11 U.S.C. § 330(a)(1)(A). Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

6

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and expertise in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)-(F).

20. The congressional policy expressed above provides for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases. *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists."); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.") (citations and internal quotations omitted).

21. In assessing the "reasonableness" of the fees requested, courts have looked to a number of factors, including those first enumerated by the Fifth Circuit in *Am. Benefit Life Ins. Co. v. Baddock (In re First Colonial Corp. of Am.)*, 544 F.2d 1291, 1298-99 (5th Cir. 1977), superseded by statute as stated in *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re*

*Woerner)*, 783 F.3d 266 (5th Cir. 2015), and thereafter adopted by most courts.[2] *See In re Nine Assocs., Inc.*, 76 B.R. 943, 945 (S.D.N.Y. 1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 212-13 (Bankr. S.D.N.Y 1986) (same); *see generally* 3 Collier on Bankruptcy ¶ 330.03[9] (enumerating *First Colonial* and *Johnson* as the "leading cases to be considered in determining a reasonable allowance of compensation"). TLO respectfully submits that the consideration of these so-called *Johnson* factors should result in this Court's allowance of the full compensation requested.

(a) <u>Time and Labor Required</u>. The professional services rendered by TLO on behalf of the Debtors required TLO to expend substantial time and effort on a continuous basis and under significant time pressure. The services rendered by TLO also required a high degree of professional competence and expertise.

(b) <u>Novelty and Difficulty of Questions</u>. As described in further detail above, these chapter 11 cases have presented numerous novel and difficult questions.

(c) <u>Skill Requisite to Perform the Legal Services Properly</u>. TLO's expertise in the area of Florida appellate law, its ability to draw upon experienced professionals in other practice areas, and its innovative approach to the resolution of issues have contributed to the firm's representation of the Debtors and the interests of unsecured creditors in these cases.

(d) <u>Preclusion of Other Employment Due to Acceptance of the Case</u>. The TLO professionals involved in providing services to the Debtors are in high demand. As a result of commitments to the Debtors, these professionals were not available for work for other TLO clients.

(e) <u>Customary Fee</u>. The fees sought herein are based upon a slight discount off of TLO's normal hourly rates for services of this kind. TLO submits that the fees sought herein are not unusual given the complexity of these chapter 11 cases and the time expended in representing the Committee. TLO further submits that the fees sought herein are commensurate with

---

[2] The factors embraced by the Fifth Circuit in *First Colonial* were first adopted by the Fifth Circuit's decision in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 109 S. Ct. 939 (1989), except that *First Colonial* also included the "spirit of economy" as a factor expressly rejected by Congress in enacting section 330 of the Bankruptcy Code. *Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1403 (11th Cir. 1997). A majority of the *First Colonial* factors are now codified in section 330(a)(3). 3 Collier on Bankruptcy ¶ 330.03[9] (Lawrence P. King et al., 16th ed. 2011).

8

fees TLO has been awarded in other cases and with fees charged by other attorneys of comparable experience.

(f) <u>Whether the Fee is Fixed or Contingent</u>. Pursuant to sections 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed pursuant to section 327 and 328 of the Bankruptcy Code are contingent upon final approval by this Court and subject to adjustment depending on the services rendered and the results obtained.

(g) <u>Time Limitations Imposed by Client or Other Circumstances</u>. As discussed above, TLO has attended to certain issues arising in these chapter 11 cases in compressed and urgent time periods.

(h) <u>Amount Involved and Results Obtained</u>. TLO provided the Debtors with specialized legal advice as set forth herein in an efficient and cost-effective manner.

(i) <u>Experience, Reputation, and Ability of the Attorneys</u>. TLO has sophisticated Florida appellate and litigation support practices. TLO's experience enables it to perform legal services for the Debtors with efficiency and skill. Further, in addition to its expertise in the areas of Florida appellate law and litigation, TLO has called upon the well-known expertise of its partners and associates in other practice areas to perform the legal services required by the Debtors.

(j) <u>"Undesirability" of the Case</u>. These cases are not undesirable.

(k) <u>Nature and Length of Professional Relationship</u>. TLO began representing Debtors on October 2012, and has continuously performed services for the Debtors since that time. The Court entered an order on September 23, 2016, authorizing the Debtors to employ TLO nunc pro tunc to June 10, 2016.

22. During the Compensation Period, TLO attorneys spent 17.4 hours providing services for the Debtors at a blended rate of approximately $367.82 per hour. TLO assigned the work involved in light of the experience and expertise required for a particular task.

23. As shown by this Application and supporting exhibits, TLO spent its time economically and without unnecessary duplication of time. For the convenience of the Court and all parties in interest, attached as Exhibit D hereto is a comparison of blended hourly rates, as required by the Appendix B Guidelines and the Local Guidelines. Attached hereto as Exhibit E is

9

a schedule of the hours expended by the attorneys during the Compensation Period, their normal hourly rates, and the value of their services.

24. TLO incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Debtors during the Compensation Period in the amount of $3,445.02, for which TLO was reimbursement. TLO incurred these disbursements and expenses in accordance with TLO's normal practice of charging clients for all expenses incurred in connection with each client's case other than fixed and routine overhead expenses, which are included in TLO's normal hourly rates. TLO endeavored to minimize the out-of-pocket expenses for which it requests reimbursement to the fullest extent possible.

25. No agreement or understanding exists between TLO and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with this chapter 11 case. As discussed above, compensation for the Florida Litigation is split between the Debtors and the non-debtor defendants.

26. No prior application has been made in this Court or in any other court for the relief requested herein for the Compensation Period.

## ATTORNEY STATEMENT PURSUANT TO APPENDIX B GUIDELINES

27. The following statement is provided pursuant to ¶ C.5. of the Appendix B Guidelines.

(a) **Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?

**Answer**: No.

(b) **Question**: If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

**Answer**: TLO and the Debtors did not agree to any budget regarding TLO's fees.

(c) **Question**: Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

**Answer**: No.

(d) **Question**: Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

**Answer**: No.

(e) **Question**: Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

**Answer**: No.

(f) **Question**: If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

11

**Answer**: TLO did not change its rates for this matter during the applicable fee period.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, TLO respectfully requests that this Court enter an order:

(a) approving the final allowance of all fees incurred by TLO in this case during the Compensation Period in the amount of $5,440.00, together with reimbursement of all necessary expenses in the amount of $3,445.02.

(b) approving the payment of $1,088.00, presenting the unpaid fees and expenses incurred by TLO during the Compensation Period that are attributable to the Debtors; and

(c) granting such other and further relief as this Court may deem just and proper.

Dated:  May 16, 2017

/s/Gregg D. Thomas
Gregg D. Thomas
THOMAS & LOCICERO
601 South Boulevard
Tampa, Florida 33606
Telephone:  (813) 984-3060
Facsimile:  (813) 984-3070
gthomas@tlolawfirm.com

*Special Litigation Counsel to the Debtors
and Debtors in Possession*