**Hearing Date and Time: July 18, 2017 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: June 8, 2017 at 4:00 p.m. (Prevailing Eastern Time)**

BRANNOCK & HUMPHRIES
Steven L. Brannock
1111 W. Cass Street, Suite 200
Tampa, Florida 33606
Telephone: (813) 223-4300
Facsimile: (813) 262-0604

*Special Litigation Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| Gawker Media LLC, *et al.*,[1] | : | Case No. 16-11700 (SMB) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

------------------------------------------------------x

**COVER SHEET FOR SECOND INTERIM AND FINAL APPLICATION OF**
**BRANNOCK & HUMPHRIES AS SPECIAL LITIGATION COUNSEL TO THE**
**DEBTORS AND DEBTORS IN POSSESSION, FOR ALLOWANCE OF**
**COMPENSATION AND FOR THE REIMBURSEMENT OF EXPENSES FOR THE**
**PERIOD FROM JUNE 10, 2016, THROUGH MARCH 17, 2017**

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

| | |
|---|---|
| Name of Applicant: | Brannock & Humphries ("B&H")<br>Counsel to the Debtors and Debtors in Possession |
| Date of Retention: | September 23, 2016 (*nunc pro tunc* to June 10, 2016)<br>[Docket No. 287] |

*Second Interim Compensation Period Summary*

| | |
|---|---|
| Interim Period for Which Compensation and Reimbursement is Sought: | October 1, 2016, through March 17, 2017 ("<u>Second Interim Compensation Period</u>") |
| Amount of Compensation Sought for the Second Interim Compensation Period, as Actual, Reasonable, and Necessary That is Attributable to the Debtors: | $7,793.05 |
| Amount of Expense Reimbursement Sought for the Second Interim Compensation Period, as Actual, Reasonable, and Necessary: | $239.46 |
| Blended Hourly Rate for Hours Worked By All Timekeepers in the Second Interim Compensation Period: | $263.41 |
| Number of Professionals and Paraprofessionals Included in this Application for the Second Interim Compensation Period: | 3 |
| Number of Professionals Billing Fewer than 15 Hours to this Case for the Second Interim Compensation Period: | 2 |
| Amount of Compensation Sought Already Paid Pursuant to Monthly Fee Statements for the Second Interim Compensation Period: | $4,427.92 |

Amount of Expense Reimbursement
Already Paid Pursuant to Monthly Fee
Statements for the Second Interim            $189.32
Compensation Period:

Total Fee Balance Due to B&H for the
Second Interim Compensation Period           $3,365.13
(assuming approval):

Total Expense Reimbursement Due to
B&H for the Second Interim
Compensation Period (assuming                $74.09
approval):

*Full Compensation Period Summary*

Final Period for Which Compensation          June 10, 2016, through and including March 17, 2017
and Reimbursement is Sought:                 (the "Full Compensation Period")

Amount of Final Compensation Sought as
Actual, Reasonable and Necessary That is
Attributable to the Debtors:                 $27,431.53[2]

Amount of Final Expense Reimbursement
Sought as Actual, Reasonable and
Necessary:                                   $525.50[3]

Compensation Already Approved by
Interim Order to Date:                       $9,819.24

Total Expenses Already Approved by
Interim Order to Date:                       $286.04

Fees Paid to B&H But Not Yet Approved:
                                             $10,319.46
Expenses Paid to B&H But Not Yet
Approved:                                    $189.32

---

[2] The amount of final compensation sought by B&H is comprised of all fees previously approved by this Court for B&H's prior monthly fee statements, including all holdbacks of fees attributable to the Debtors for those prior fee periods, plus fees attributable to the Debtors for the Second Interim Compensation Period.

[3] The amount of final expense reimbursement sought by B&H is comprised of all expenses previously approved by this Court for B&H's prior monthly fee statements, including all holdbacks of expenses attributable to the Debtors for those prior expense periods, plus expenses attributable to the Debtors for the Second Interim Compensation Period.

Total Unpaid Fees Still Owed to B&H
During the Full Compensation Period
(Assuming Approval):                         $7,292.83

Total Expenses Still Owed to B&H
During the Full Compensation Period
(Assuming Approval):                         $50.14

Increase in Rates:                           <u>0 Timekeepers</u>

This is a:_____ Monthly ___X_____ Interim _____X_____ Final Application.

### Summary of Monthly Fee Statements Previously Filed with the Court

| Application | | Requested | | CNO | Paid to Date | | Total Unpaid |
|---|---|---|---|---|---|---|---|
| Date Filed/Docket No. | Period Covered | Total Fees | Expenses | Date Filed/Docket No. | Fees (80%) | Expenses (100%) | Fees and Expenses |
| 10/20/16; Dkt. No. 363 | 6/10/16 – 9/30/16 | $19,638.48 | $286.04 | N/A | $15,710.78 | $286.04 | $3,927.70 |
| 11/18/16; Dkt. No/ 465 | 10/1/16 – 10/31/16 | $1,035.40 | $43.36 | | $828.32 | $43.36 | $207.08 |
| 12/20/16; Dkt. No. 626 | 11/1/16 – 11/30/16 | $4,499.50 | $145.96 | | $3,599.60 | $145.96 | $899.90 |
| **Totals** | | **$25,173.38** | **$475.36** | | **$20,138.70** | **$475.36** | **$5,034.68** |

### Summary of Fees Claimed Monthly Fee Statements Not Previously filed with the Court[1]

| Application | Requested | | Total Unpaid |
|---|---|---|---|
| Period Covered | Total Fees | Expenses | Fees and Expenses |
| 12/1/16 – 3/17/17 | $2,258.15 | $50.14 | $2,308.29 |

---

[1] B&H did not seek monthly or interim compensation payments for the period of December 1, 2016, through March 17, 2017, but elected to wait until the cases were concluded to seek approval for compensation of fees and expenses accrued during that period in order to avoid unnecessary administration costs.

**Summary Totals For the Full Compensation Period**

| Application | | Requested | | Paid to Date | | Total Unpaid |
| Date Filed/Docket No. | Period Covered | Total Fees | Expenses | Fees (80%) | Expenses (100%) | Fees and Expenses |
| --- | --- | --- | --- | --- | --- | --- |
| 10/20/16; Dkt. No. 363 | 6/10/16 – 9/30/16 | $19,638.48 | $286.04 | $15,710.78 | $286.04 | $3,927.70 |
| 11/18/16; Dkt. No/ 465 | 10/1/16 – 10/31/16 | $1,035.40 | $43.36 | $828.32 | $43.36 | $207.08 |
| 12/20/16; Dkt. No. 626 | 11/1/16 – 11/30/16 | $4,499.50 | $145.96 | $3,599.60 | $145.96 | $899.90 |
| N/A | 12/1/16 – 3/17/17 | $2,258.15 | $50.14 | $0.00 | $0.00 | $2,308.29 |
| **Total** | | **$27,431.53** | **$525.50** | **$20,138.70** | **$475.36** | **$7,342.97** |

**Hearing Date and Time: July 18, 2017 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: June 8, 2017 at 4:00 p.m. (Prevailing Eastern Time)**

BRANNOCK & HUMPHRIES
Steven L. Brannock
1111 W. Cass Street, Suite 200
Tampa, Florida 33606
Telephone: (813) 223-4300
Facsimile: (813) 262-0604

*Special Litigation Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
                                          :
In re                                     :      Chapter 11
                                          :
Gawker Media LLC, *et al.*,[1]            :      Case No. 16-11700 (SMB)
                                          :
                 Debtors.                 :      (Jointly Administered)
                                          :
--------------------------------------------------------x

**SECOND INTERIM AND FINAL APPLICATION OF BRANNOCK & HUMPHRIES AS
SPECIAL LITIGATION COUNSEL TO THE DEBTORS AND DEBTORS IN
POSSESSION, FOR ALLOWANCE OF COMPENSATION AND FOR THE
REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM
JUNE 10, 2016, THROUGH MARCH 17, 2017**

TO THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

Brannock & Humphries ("B&H"), attorneys for Gawker Media LLC ("Gawker Media"),

Gawker Media Group, Inc. ("GMGI"), and Gawker Hungary Kft. (f/k/a Kinja Kft.) ("Gawker

Hungary", and collectively with Gawker Media and GMGI, the "Debtors"), for its application

(the "Application") pursuant to sections 330 and 331 of title 11 of the United States Code (the

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker
Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker
Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring
Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022.  Gawker Hungary Kft.'s mailing address is c/o
Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

"Bankruptcy Code") for interim allowance of compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents:

## INTRODUCTION

1.     By this Application, B&H seeks: (a) the allowance and payment of compensation in the amount of $7,793.05 for professional services performed, and the allowance and payment of $239.46 for actual and necessary expenses incurred during the period from October 1, 2016, through March 17, 2017 (the "Second Interim Compensation Period"); (b) final allowance and payment of compensation in the amount of $27,431.53 for professional services performed, and the final allowance and reimbursement of $525.50 for actual and necessary expenses incurred during the period from June 10, 016, through March 17, 2017 (the "Full Compensation Period"); and (c) the approval and payment of the unpaid portion of all such allowed fees and expenses in the amount of $7,342.97, which includes the unpaid portion of: (i) the fees requested in the the First Interim Fee Application (as defined herein), (ii) the 20% holdback of fees from the October and November Monthly Fee Statements ,and (iii) the fees and expenses incurred during the period from December 1, 2016, through and including March 17, 2017, for which B&H elected not to submit monthly fee statements, as describe paragraph 14 below.

2.     No party has objected to the fees or costs sought by B&H in its previous applications.

3.     This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 330 and 331 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the

Southern District of New York (the "Local Rules"), and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 94] (the "Interim Compensation Order").  In preparing the Application, B&H has complied with the U.S. Trustee Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013 (the "Appendix B Guidelines"), and the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Case, effective February 5, 2013 (the "Local Guidelines").  In accordance with the Local Guidelines, a certification by Steven Brannock regarding compliance with the Local Guidelines is attached hereto as **Exhibit A**.

**BACKGROUND**

4.     On June 10, 2016 (the "Petition Date"), Gawker Media filed a petition with this Court under chapter 11 of the Bankruptcy Code.  On June 12, 2016, GMGI and Gawker Hungary filed petitions with this Court under chapter 11 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

5.     On June 24, 2016, the United States Trustee for the Southern District of New York appointed the official committee of unsecured creditors (the "Committee").

6.     On September 23, 2016, this Court entered an order authorizing the retention of B&H as Special Litigation Counsel to the Debtors and Debtors in Possession [Docket No. 287] (the "B&H Retention Order").

7.     On December 22, 2016, the Bankruptcy Court confirmed the *Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 638, Exhibit A] (the "Chapter 11 Plan") pursuant to the

*Findings of Fact, Conclusions of Law, and Order Confirming the Amended Joint Chapter 11*
*Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary*
*Kft*. [Docket No. 638].  The Effective Date (as defined under the Chapter 11 Plan) occurred on
March 17, 2017.  *See Notice of (I) Entry of Order Confirming the Debtors' Amended Joint*
*Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and*
*Gawker Hungary Kft. and (II) Occurrence of Effective Date* [Docket No. 825].

8.      Pursuant to the Interim Compensation Order, B&H filed and sent to the Debtors
and the appropriate notice parties a monthly fee statement, dated October 20, 2016, for
compensation and for reimbursement of expenses for services rendered during the period from
June 10, 2016, through September 30, 2016, in the amounts of $19,638.48 for fees and $286.04
for expenses (the "September Monthly Fee Statement").

9.      On November 7, 2016, B&H filed and sent to the Debtors and the appropriate
notice parties the *First Application of Brannock & Humphries as Special Litigation Counsel to*
*the Debtors and Debtors in Possession for Allowance of Compensation and for the*
*Reimbursement of Expenses for the Period from June 10, 2016 through September 30, 2016*
[Docket No. 420] (the "First Interim Fee Application" and the period covered therein, the "First
Compensation Period").  Pursuant to the First Interim Fee Application, B&H sought approval of
$19,638.48 in fees and $286.04 in expenses for the First Compensation Period.

10.      This Court approved 50% of the compensation for fees and 100% of the
reimbursement for expenses requested in the First Interim Fee Application by order dated
December 23, 2016 [Docket No. 648] (the "First Interim Fee Order").  In approving only 50% of
B&H's fees, this Court requested further detail concerning the amount of time B&H spent on

bankruptcy matters and on the merits of the case.  This detail is supplied below at Exhibit D and in paragraphs 30-38 below.

11.     Pursuant to the Interim Compensation Order, B&H filed and sent to the Debtors and the appropriate notice parties a monthly fee statement, dated November 18, 2016, for compensation and for reimbursement of expenses for services rendered during the period from October 1, 2016, through October 31, 2016, in the amounts of $1,035.40 for fees and $43.36 for expenses (the "October Monthly Fee Statement").

12.     Pursuant to the Interim Compensation Order, B&H filed and sent to the Debtors and the appropriate notice parties a monthly fee statement, dated December 20, 2016, for compensation and for reimbursement of expenses for services rendered during the period from November 1, 2016, through November 30, 2016, in the amounts of $4,499.50 for fees and $145.96 for expenses (the "November Monthly Fee Statement").

13.     Pursuant to the Interim Compensation Order, if no objections are received by the 35th day following the month for which compensation is sought in a given Monthly Fee Statement, the Debtors shall promptly pay 80% of the fees and 100% of the expenses detailed in such Monthly Fee Statement.  The Debtors received no objections and paid to B&H 80% of the fees and 100% of the expenses as set forth in the Interim Compensation order.

14.     B&H did not file monthly fee statements for the period of December 1, 2016, through March 17, 2017, but elected to wait until the cases were concluded to seek approval for compensation of fees and expenses accrued during that period to avoid unnecessary administration costs. The amount of compensation requested for that time is $2,258.15 for fees and $50.14 for expenses, as described in the attached summary (**Exhibit B**) ("December-March Summary").

5

15.    B&H has received no payment and no promises for payment from any other source for services rendered in connection with the Debtors' chapter 11 cases.  There is no agreement or understanding between B&H and any other person (other than members of B&H) for the sharing of compensation to be received for the services rendered in these chapter 11 cases.

16.    Prior to retention in this matter, B&H had been providing services to Debtors in various Florida state litigation matters including, *Bollea v. Gawker Media, LLC*, Case No. 12-12447 CI (6th Cir., Pinellas County), *Bollea v. Buchwald & Associates, Inc., et. al* (6th Cir. Pinellas County), and various appellate matters arising out of that litigation (the "Florida Litigation").  B&H was also providing services to additional non-debtor defendants in the Florida Litigation.  Pursuant to the B&H Retention Order, Debtors are responsible for 85% of the fees and 100% of the expenses for serviced rendered by B&H in the Florida Litigation.

### REQUEST FOR FINAL APPROVAL AND PAYMENT OF FEES AND EXPENSES

17.    This Application is the second and final application submitted by B&H in the Debtors' case.

18.    The Court has partially approved certain of B&H's fees and expenses on an interim basis pursuant to the First Interim Fee Order. Approval of the remaining 50% of B&H's compensation has been withheld until consideration at the final fee hearing.  In Exhibit D and in paragraphs 30-38 below, B&H provides the additional information the Court requested for its approval of the remaining 50% of B&H's compensation.

19.    B&H hereby requests that the Court approve, on a **final** basis, the compensation and expenses requested by B&H for the Second Interim Compensation Period. B&H further requests the entry of an order that authorizes and directs the Debtors to pay B&H the full amount

6

of its allowed but unpaid compensation and expense requests, including the 20% of compensation that has been withheld under the October and November Monthly Fee Statements, 100% of the fees and expenses for the December-March Summary, and the remaining 50% of compensation from the First Interim Fee Application that has not yet been approved.

## SUMMARY OF SERVICES RENDERED
## DURING THE FULL COMPENSATION PERIOD[2]

20.     During the Full Compensation Period, B&H rendered professional services to the Debtors as Special Litigation Counsel. As described in detail below, the issues arising in these chapter 11 cases have required the assistance of B&H personnel from multiple legal disciplines.

21.     As is its practice with clients, B&H maintains written records of the time expended by attorneys and paraprofessionals in rendering professional services to the Debtors. The respective professionals made these time records contemporaneously with the services rendered, and the presentation of the time records complies with the Local Bankruptcy Rules, the Appendix B Guidelines and the Local Guidelines. A schedule showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Full Compensation Period is annexed hereto as **Exhibit C**.

22.     B&H opened two separate billing files post-petition in connection with this case. One file, "Gawker Media," concerned B&H's work on the merits of the trial and appellate proceedings in the litigation between Gawker Media and Terry Bollea. The second, the "Gawker Bankruptcy" file, concerned B&H's work necessitated by the bankruptcy including B&H's

---

[2]   In this Final Application we focus on the work B&H has done throughout the entire period of this case, post-petition, including the First Interim Compensation Period.  Although we previously provided details concerning our work during First Interim Period, this Court approved only 50% of those fees, pending this final application.  Thus, we believe it more helpful to the Court to provide a comprehensive summary of all of our work, including the work performed during the First Interim Compensation Period.

retention as special counsel and the filing of fee applications and monthly statements with this Court.  The task or project breakdown between these two files is shown as **Exhibit D**.

23.     As is its practice with clients, B&H also maintains records of all actual and necessary out-of-pocket expenses incurred in rendering professional services, which are available for inspection.  A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as **Exhibit E**.

24.     B&H respectfully submits that the professional services it rendered on behalf of the Debtors were necessary and appropriate and have directly contributed to the effective administration of these chapter 11 cases, and to the benefit of the estates and their creditors.

25.     We have previously summarized our work for the First Interim Compensation Period.  However, in light of this Court's request for more detail concerning the division of our work between the Florida Litigation and the retention, we summarize again our efforts on behalf of the Debtors throughout the entire period of this case, post-petition, encompassing our work from June 10, 2016, to date.   We then address the Court's questions raised at the first compensation hearing concerning the relative amounts of time spent on retention issues versus the work on the Florida Litigation.  The following summary of services rendered during the Full Compensation Period is not intended to be a detailed description of the work performed – the time records are set forth in Exhibit C. Instead, the following summary highlights certain services B&H rendered to the Debtors and identifies some of the matters and issues that B&H addressed for the Debtors during the Full Compensation Period.

A.      The Florida Litigation [Hours 30.6 / Amount $10,545.53]

26.     The Florida Litigation was complex and hotly litigated.  It raised significant privacy and First Amendment issues.  The trial resulted in a judgment in excess of $140 million.

8

B&H is a highly-respected Florida appellate boutique.  Long before the bankruptcy, B&H was hired by Gawker Media to advise and assist in connection with the many appellate issues raised by the case.  Prior to the petition, no less than 14 separate appellate proceedings were filed and litigated among the parties, not including the ultimate appeal from the jury's $140,100,000 verdict.  Our appellate advice continued after the petition.  Our work related to advising Gawker Media concerning the merits of the appeal; potential issues relating to the stay of the appeal; reviewing outlines and drafts of appellate briefs; and advising the Debtors regarding Florida appellate procedures, Florida's appellate judges and courts, and Florida substantive law as it pertains to the Florida Litigation.

27.    B&H also worked with Debtors' other counsel on strategy for moving the Florida Litigation forward following an anticipated lifting of the automatic stay put in place by this Court.  This included advising Debtors on the remaining proceedings in the trial court; appellate jurisdictional issues, as well as dealing with several writ proceedings that were also pending in the Florida appellate courts.

B.    Retention/B&H Fee Applications [Hours 54.7 / Amount $16,886]

28.    After the Petition, B&H spent much time dealing with the new issues that arose in the case as a result of the bankruptcy.  Most of this work concerned filing the necessary pleadings and participating in the required hearings concerning B&H's retention as special counsel for the Florida Litigation.  The balance of our work, most of which was performed by paraprofessionals, concerned the submission of our fee applications.  We submitted three interim statements for fees, during the eleven months we have been retained post-petition.  Our work on these applications included preparing these fee statements and applications in compliance with

the Local Bankruptcy Rules, the Appendix B Guidelines and the Local Guidelines.  A small

amount of our time also included redacting the fee statements for privileged material.

### THE PROPORTION OF B&H'S WORK ON THE MERITS OF THE CASE AS OPPOSED TO ITS WORK ON THE BANKRUPTCY RETENTION

29.     In its review of B&H's First Interim Application, this Court asked for more detail

concerning the division of B&H's time between the time spent on the Florida Litigation and the

time spent on the bankruptcy retention.  Pending the receipt of that detail, this Court allowed

only 50% of fees requested in B&H's initial fee application on an interim basis.  In this section,

we address the Court's concerns.

30.     From the time of the petition, we have split our work into two separate billing

files, one relating to retention and other bankruptcy matters, and the other relating to our work on

the Florida Litigation.  Those statements are included in this application at Exhibit C.  A

summary of the division of labor between those two projects is shown on Exhibit D.

31.     Exhibit D reveals that, post-petition, B&H spent 30.6 hours on the litigation for a

total fee of $10,545.53 and 54.8 hours on the retention for a total fee of $16,886.00.  While at

first glance, this makes B&H's work on the retention issues appear disproportionately high, that

disproportion is fully explainable by the fact that the Florida Litigation settled before B&H could

begin the main part of its work.  As explained above, this was a very high-profile, complex, and

significant matter.  In the two years prior to the petition, B&H was paid $212,303.21 for its work

on the Florida Litigation.  This included providing advice and assistance on no less than 12

separate appellate proceedings.  It also included B&H's work in providing support at the trial of

the case to help identify and preserve issues for review to prepare for the inevitable appeal.

32.     The Debtors and all counsel, including B&H, believed that this significant work

would continue once retention was approved and the parties began to litigate the appeal.  It is

quite likely that, had the case not settled, B&H's fees post-petition would have been similar, if not higher, than its $212,303.21 fee for its work pre-petition.  Thus, when viewed in light of the importance of the litigation, the $140,100,000 judgment in this case, and the fees already expended and likely to have been expended absent a settlement, the $16,886 spent on retention matters is quite reasonable.  Indeed, it amounts to only a slight fraction of the amount of time that was spent and would have been spent on this important case had the appeal continued to its conclusion.

33.    Much of our work in the Gawker Bankruptcy file related to our retention application (we estimate about $9,409.50 of the $16,886 billed in the Gawker Bankruptcy file). Regardless of the unexpected settlement, a certain amount of time was necessary to prepare a retention application, whether the matter ultimately results in $10,000 in billings or $200,000 in billings.  At the time B&H filed its retention application, it was the expectation of the Debtors and all counsel that the appeal would ultimately be hotly litigated.  This was a $140 million matter, and B&H needed to treat its retention application accordingly.  While we would agree that charging $10,000 to prepare a retention application would be disproportionate in a $5,000 case, the time spent on the retention application here was highly reasonable in light of the substantial stakes in this litigation and the likely fees that were at stake.  The Debtors had every interest at the time in ensuring that these retention applications were approved.

34.    Similarly, regardless of the amount in controversy, a certain amount of time is necessary to comply with this Court's rules in connection with interim and final fee applications. As noted above, at the time we filed our early applications, we believed this was going to be a substantial matter.  The unexpected settlement should not detract from the fact that our work in

11

connection with the fee applications would have been only a fraction of the fees that would have been generated by a full appeal.

35.    We were also careful not to overbill the fee applications.  We placed the application in the hands of our paraprofessionals who prepared these applications at an extremely reasonable hourly rate, as shown in the fee detail below.  Moreover, we did *not* charge for any time spent preparing, proofing, or processing our bills, just as we do not charge our other non-bankruptcy clients for such administrative time.  All of the time we billed for here concerned the additional time that was required to prepare the bankruptcy fee applications and complying with this Court's rules.

36.    A small amount of our time ($190.00) concerned redacting our bills for privileged material.  During the time-period in which we submitted our bills, we were still in active litigation, and the Bollea team, as members of the creditors committee would have access to our fee statements.  Thus, in submitting our fee applications, we needed to be sure that our fee statements did not include privileged material or raise an argument that we had waived the privilege, which would have been disastrous.  This Court expressed some initial concern about whether such time is compensable, speculating whether the bills could have been drafted to avoid this problem in the first place.  Respectfully, we do not believe that is possible.  Our fee statements in this case, as in every case, are designed to include enough detail to demonstrate to the client that our fees were reasonable in relation to the work actually performed.  The more detail we include, the more likely we are to avoid disputes with the client and the more likely we are to get paid on a timely basis.  That need to fully inform the client does not disappear just because this is a rare case where opposing counsel will have access to those statements.  Had we provided only skeletal descriptions, avoiding all references to potentially privileged material, we

would have been susceptible to arguments by the parties or concern by the Court that we had not sufficiently described our work to demonstrate the reasonableness of our fees.  We believe that it was critical to provide full fee statements and fair to bill for the small amount of time necessary to perform the required redactions.

37.     Finally, we note that the work we performed on the retention and fee applications is not disproportionate in comparison with the other counsel who participated in the litigation or bankruptcy matters.  B&H should not be penalized because its work was unexpectedly ground to a halt by the settlement.  Prior to that settlement, B&H had to treat this case with the importance of any hundred million dollar litigation.

### ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED DURING FULL COMPENSATION PERIOD

38.     The professional services rendered by B&H required a high degree of professional competence and skill, and B&H expended substantial time and effort in these efforts. B&H respectfully submits that it performed the services rendered to the Committee in an efficient, effective, and economical manner, and that the results obtained to date benefited the Debtors' estates, the Debtors' unsecured creditors, and all other parties in interest. The Debtors have been given the opportunity to review this Application and have approved the amount of compensation requested herein.  To this point, no party has objected to B&H's fees.

39.     With respect to the level of compensation, section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered[.]" 11 U.S.C. § 330(a)(1)(A). Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

13

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and expertise in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)-(F).

40.     The congressional policy expressed above provides for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases. *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists."); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.") (citations and internal quotations omitted).

41.     In assessing the "reasonableness" of the fees requested, courts have looked to a number of factors, including those first enumerated by the Fifth Circuit in *Am. Benefit Life Ins. Co. v. Baddock (In re First Colonial Corp. of Am.)*, 544 F.2d 1291, 1298-99 (5th Cir. 1977), superseded by statute as stated in *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re*

14

*Woerner)*, 783 F.3d 266 (5th Cir. 2015), and thereafter adopted by most courts.[3] *See In re Nine Assocs., Inc.*, 76 B.R. 943, 945 (S.D.N.Y. 1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 212-13 (Bankr. S.D.N.Y 1986) (same); *see generally* 3 Collier on Bankruptcy ¶ 330.03[9] (enumerating *First Colonial* and *Johnson* as the "leading cases to be considered in determining a reasonable allowance of compensation"). B&H respectfully submits that the consideration of these so-called *Johnson* factors should result in this Court's allowance of the full compensation requested.

(a)    Time and Labor Required. The professional services rendered by B&H on behalf of the Debtors required B&H to expend substantial time and effort on a continuous basis and under significant time pressure. The services rendered by B&H also required a high degree of professional competence and expertise. This was a $140,100,000 million matter raising important and complex issues of privacy law, free speech, and damages. In light of the stakes, no stone could be left unturned at any stage in the proceedings.

(b)    Novelty and Difficulty of Questions. As described in further detail above, these chapter 11 cases have presented numerous novel and difficult questions.

(c)    Skill Requisite to Perform the Legal Services Properly. B&H's expertise in the area of Florida appellate law, its ability to draw upon experienced professionals in other practice areas, and its innovative approach to the resolution of issues have contributed to the firm's representation of the Debtors and the interests of unsecured creditors in these cases.

(d)    Preclusion of Other Employment Due to Acceptance of the Case. The B&H professionals involved in providing services to the Debtors are in high demand. As a result of commitments to the Debtors, these professionals were not available for work for other B&H clients.

(e)    Customary Fee. The fees sought herein are based upon a slight discount off of B&H's normal hourly rates for services of this kind. B&H submits that the fees sought herein are not unusual given the complexity of these

---

[3] The factors embraced by the Fifth Circuit in *First Colonial* were first adopted by the Fifth Circuit's decision in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 109 S. Ct. 939 (1989), except that *First Colonial* also included the "spirit of economy" as a factor expressly rejected by Congress in enacting section 330 of the Bankruptcy Code. *Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1403 (11th Cir. 1997). A majority of the *First Colonial* factors are now codified in section 330(a)(3). 3 Collier on Bankruptcy ¶ 330.03[9] (Lawrence P. King et al., 16th ed. 2011).

chapter 11 cases and the time expended in representing the Debtors. B&H further submits that the fees sought herein are commensurate with fees B&H has been awarded in other cases and with fees charged by other attorneys of comparable experience.

(f)    <u>Whether the Fee is Fixed or Contingent</u>. Pursuant to sections 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed pursuant to section 327 and 328 of the Bankruptcy Code are contingent upon final approval by this Court and subject to adjustment depending on the services rendered and the results obtained.

(g)    <u>Time Limitations Imposed by Client or Other Circumstances</u>. As discussed above, B&H has attended to certain issues arising in these chapter 11 cases in compressed and urgent time periods.

(h)    <u>Amount Involved and Results Obtained</u>. B&H provided the Debtors with specialized legal advice as set forth herein in an efficient and cost-effective manner.

(i)    <u>Experience, Reputation, and Ability of the Attorneys</u>. B&H has sophisticated Florida appellate and litigation support practices. B&H's experience enables it to perform legal services for the Debtors with efficiency and skill. Further, in addition to its expertise in the areas of Florida appellate law and litigation, B&H has called upon the well-known expertise of its partners and associates in other practice areas to perform the legal services required by the Debtors.

(j)    <u>"Undesirability" of the Case</u>. These cases are not undesirable.

(k)    <u>Nature and Length of Professional Relationship</u>. B&H began representing Debtors on May 7, 2014, and has continuously performed services for the Debtors since that time. The Court entered an order on September 23, 2016, authorizing the Debtors to employ B&H nunc pro tunc to June 10, 2016.

42.    During the Full Compensation Period, B&H attorneys and paraprofessionals spent 85.4 hours providing services for the Debtors at a blended rate of approximately $300.24 per hour. B&H assigned the work involved in light of the experience and expertise required for a particular task.

43.    As shown by this Application and supporting exhibits, B&H spent its time economically and without unnecessary duplication of time. For the convenience of the Court and

16

all parties in interest, attached as **Exhibit F** hereto is a comparison of blended hourly rates, as required by the Appendix B Guidelines and the Local Guidelines. We include blended rate summaries for the First and Second Interim Compensation Periods as well as the Full Compensation Period. Attached hereto as **Exhibit G** is a schedule of the hours expended by the attorneys and paraprofessionals during the First and Second Interim Compensation Periods and the Full Compensation Period. Exhibit G reflects the discounted hourly rates of each professional working on the file, and the value of their services.

44.    B&H incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Debtors during the Second Interim Compensation Period in the amount of $239.46, for which B&H respectfully requests reimbursement. Its out-of-pocket expenses in connection with the Full Compensation Period are $525.50. B&H incurred these disbursements and expenses in accordance with B&H's normal practice of charging clients for all expenses incurred in connection with each client's case other than fixed and routine overhead expenses, which are included in B&H's normal hourly rates. B&H endeavored to minimize the out-of-pocket expenses for which it requests reimbursement to the fullest extent possible.

45.    No agreement or understanding exists between B&H and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with this chapter 11 case. As discussed above, compensation for the Florida Litigation is split between the Debtors and the non-debtor defendants.

46.    No prior application has been made in this Court or in any other court for the relief requested herein for the Second Interim Compensation Period.

## SUMMARY

47.    By this Final Application, B&H requests final approval of all fees and expenses it incurred that are attributable to the Debtors in this case during the Full Compensation Period of June 10, 2016, through and including March 17, 2017, in the amount of $27,431.53[4] together with reimbursement for actual and necessary expenses in the amount of $525.50.[5]

48.    As set forth in prior Monthly Fee Statements, First Interim Fee Application, the above Second Interim Fee Application and in this Final Application, in accordance with the factors enumerated in 11 U.S.C. § 330(a)(1)(A), B&H requests approval, on a final basis, the compensation of fees and expenses requested by B&H during the Full Compensation Period.

## ATTORNEY STATEMENT PURSUANT TO APPENDIX B GUIDELINES

49.    The following statement is provided pursuant to ¶ C.5. of the Appendix B Guidelines.

(a)    **Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?

**Answer**: No.

(b)    **Question**: If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

**Answer**: B&H and the Debtors did not agree to any budget regarding B&H's fees.

(c)    **Question**: Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

---

[4] The amount of final fee compensation sought by B&H is comprised of all fees previously approved by this Court for B&H's prior monthly fee statements and First Interim Fee Application, including the outstanding amount of unpaid and holdback amount of fees attributable to the Debtors for these periods, plus the fees for the Second Interim Compensation Period.

[5] The amount of final expense reimbursement sought by B&H is equal to the sum of all expenses previously approved by this Court for B&H's prior monthly fee statements and First Interim Fee Application, plus the expenses for the Second Interim Compensation Period.

**Answer**: No.

(d)    **Question**: Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

**Answer**: No. We did not include any time for routine billing preparation, including the time for preparing, reviewing, or revising invoices. We do not charge any of our clients for these services. We did bill for a small amount of time (1.9 hours for a total of $226) to ensure that our invoices were formatted correctly for review by this Court and complied with the bankruptcy rules.

(e)    **Question**: Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

**Answer**: Yes, B&H billed for a small amount of time ($190) to redact privileged information from our statements. We explain why we believe this time is compensable at paragraph 37 above.

(f)    **Question**: If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

**Answer**: B&H did not change its rates for this matter during the applicable fee period.

*[Remainder of page intentionally left blank.]*

19

**WHEREFORE**, B&H respectfully requests that this Court enter an order:

(a) approving the allowance and payment of $7,793.05 for compensation for professional services rendered to the Debtors during the Second Interim Compensation Period;

(b) approving the reimbursement of B&H's out-of-pocket expenses incurred in connection with the rendering of such services during the Second Interim Compensation Period in the amount of $239.46;

(c) approving the final allowance of all fees and expenses incurred by B&H in this case during the Full Compensation Period in the amount of $27,431.53, together with reimbursement of all necessary expenses in the amount of $525.50;

(d) approving the payment of $13,234.52, representing the allowance and payment of total unpaid fees and expenses incurred by B&H during the Full Compensation Period that are attributable to the Debtors, which includes the outstanding holdback of fees from prior fee statements, plus full unpaid fees and expenses that are attributable to the Debtors during the Second Interim Compensation Period; and

(e) granting such other and further relief as this Court may deem just and proper.

Dated:  May 16, 2017

**/s/Steven L. Brannock**
Steven L. Brannock
BRANNOCK & HUMPHRIES
1111 W. Cass Street, Suite 200
Tampa, Florida 33606
Telephone:  (813) 223-4300
Facsimile:  (813) 262-0604
sbrannock@bhappeals.com

*Special Litigation Counsel to the Debtors
and Debtors in Possession*
