```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                                 :
                                                       :
GAWKER MEDIA LLC, et al,¹                              :        Chapter 11
                                                       :        Case No. 16-11700 (SMB)
                   Debtor.                             :
-------------------------------------------------------X
```

**CORRECTED MEMORANDUM DECISION GRANTING IN PART AND
DENYING IN PART PLAN ADMINISTRATOR'S MOTION
FOR LEAVE TO CONDUCT A RULE 2004 EXAMINATION**

**A P P E A R A N C E S:**

ROPES & GRAY LLP
*Counsel for the Plan Administrator for the Debtors*
1211 Avenue of the Americas
New York, New York 10036

    Gregg M. Galardi, Esq.
    D. Ross Martin, Esq.
    Dalila Argaez Wendlandt, Esq.
    Elizabeth Bierut, Esq.
        Of Counsel

CHADBOURNE & PARKE LLP
*Counsel for Harder Mirell & Abrams LLP and*
  *Charles J. Harder, Esq.*
1301 Avenue of the Americas
New York, New York 10019

    Samuel S. Kohn, Esq.
    James A. Copeland, Esq.
        Of Counsel

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
*Counsel for Peter Thiel and Thiel Capital LLC*
Four Times Square
New York, New York 10036

    Shana A. Elberg, Esq.
        Of Counsel

---

[1]     The debtors in these cases (the "Debtors"), together with the last four digits of each Debtor's taxpayer identification number, are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056).

--and--

One Rodney Square
920 North King Street
Wilmington, Delaware 19801

>   Anthony W. Clark, Esq.
>   Robert A. Weber, Esq.
>       Of Counsel

COHEN & GRESSLER LLP
*Counsel for Terry Gene Bollea*
800 Third Avenue
New York, New York 10022

>   Daniel H. Tabak, Esq.
>   Mark Spatz, Esq.
>       Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

William D. Holden, as administrator (the "Plan Administrator") of the confirmed and effective *Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group Inc., Gawker Media LLC, and Gawker Hungary KFT.*, dated December 11, 2016 (the "*Plan*")[2] seeks to obtain discovery under Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004") from Peter Thiel, Thiel Capital LLC (together with Peter Thiel, "Thiel"), Harder Mirell & Abrams LLP (the "Harder Firm"), and Charles J. Harder, Esq. (together with the Harder Firm, "Harder") to determine whether he should commence any litigation against Thiel and/or related parties, including an action for *prima facie* tort under New York Law (the "Potential Causes of Action").[3] The Potential Causes of Action

---

[2] The confirmed *Plan* is attached as Exhibit 1 to this Court's *Findings Of Fact, Conclusions Of Law, And Order Confirming Amended Joint Chapter 11 Plan Of Liquidation For Gawker Media Group, Inc., Gawker Media LLC, And Gawker Hungary KFT*, dated Dec. 22, 2016 (the "*Confirmation Order*") (ECF Doc. # 638). Unless otherwise noted, all ECF document numbers refer to case no. 16-11700.

[3] *Omnibus Reply in Support of Motion for Leave Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to Conduct Discovery Concerning Potential Causes of Action and to Establish*

2

arise primarily out of Thiel's financial support for prepetition litigation against the Debtors. (*See Rule 2004 Motion* at ¶ 18.) Thiel, Harder and Terry Gene Bollea ("Bollea") object to the proposed Rule 2004 discovery.[4]

The Court grants in part and denies in part the *Rule 2004 Motion* to the extent and for the reasons explained below.

## BACKGROUND[5]

### A.   Pre-Bankruptcy Litigation

As of petition date, the Debtor Gawker Media LLC ("Gawker") operated seven distinct media brands with corresponding websites covering news and commentary on a variety of topics, including current events, pop culture, technology and sports. (*Holden Declaration* at ¶ 10-11). Also prior to the petition date, the subjects of several articles published on Gawker's websites filed lawsuits (the "Prepetition Lawsuits") against Gawker and others sounding in defamation and/or similar torts based on the contents

---

*Discovery Response and Dispute Procedures*, dated Apr. 24, 2017 (the "*Reply*"), at ¶¶ 3-4 (ECF Doc. # 883); *see also Motion of the Debtors for Leave Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to Conduct Discovery Concerning Potential Plan Issues and Potential Causes of Action, and to Establish Discovery Response and Dispute Procedures*, dated Oct. 22, 2016 (the "*Rule 2004 Motion*"), at 1-2 (summarizing scope and purpose of Rule 2004 examination as originally requested) (ECF Doc. # 341).

[4]   *Objection of Harder Mirell & Abrams LLP and Charles J. Harder, Esq. to Motion of the Debtors for Leave Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to Conduct Discovery Concerning Potential Plan Issues and Potential Causes of Action, and to Establish Discovery Response and Dispute Procedures*, dated Apr. 18, 2017 (the "*Harder Objection*") (ECF Doc. # 869); *Objection of Peter Thiel and Thiel Capital LLC to Motion of the Debtors for Leave Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to Conduct Discovery Concerning Potential Plan Issues and Potential Causes of Action, and to Establish Discovery Response and Dispute Procedures*, dated Apr. 18, 2017 (the "*Thiel Objection*") (ECF Doc. # 870); *Objection of Terry G. Bollea to Motion of the Debtors for Leave Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to Conduct Discovery Concerning Potential Plan Issues and Potential Causes of Action, and to Establish Discovery Response and Dispute Procedures*, dated Apr. 18, 2017 (the "*Bollea Objection*," and together with the *Harder Objection* and the *Thiel Objection*, the "*Objections*") (ECF Doc. # 871).

[5]   . "*Holden Declaration*" refers to the *Declaration of William D. Holden in Support of First Day Motions*, dated June 12, 2016. (ECF Doc. # 7.)

of the articles and other materials published by Gawker and/or available on Gawker's websites. (*Id.* at ¶ 30.)

One such litigation, *Bollea v. Gawker Media LLC, et al.*, No. 12012447-CI-011 (Fla. 6th Jud. Cir. Pinellas Cty.) ("Bollea Litigation"), brought by Bollea (the professional wrestler also known as Hulk Hogan) ultimately drove the Debtors into bankruptcy. Bollea's claims centered on the publication of a video depicting Bollea engaged in a sexual act. In March of 2016, the jury in the Bollea Litigation found Gawker liable for $115 million in compensatory damages and $15 million in punitive damages. (*Holden Declaration* at ¶ 37). After Gawker unsuccessfully sought relief from the judgment and a stay of enforcement, (*see id.*), it filed a chapter 11 petition on June 10, 2016, and Gawker Hungary Kft. and Gawker Media Group, Inc. filed chapter 11 petitions two days later.

The Bollea Litigation was not the only pre-petition lawsuit that Gawker faced. Others included *Ashley Terrill v. Gawker Media LLC, et al.*, No. 16-CV-00411 (S.D.N.Y.) ("Terrill Litigation"), *Ayyadurai v. Gawker Media LLC*, et al., No. 16-CV-10853 (D. Mass.) ("Ayyadurai Litigation") and *Huon v. Denton, et al.*, No. 11-cv-03054 (N.D. Ill.) ("Huon Litigation"). The Terrill Litigation involved the publication of allegations regarding the investigation by plaintiff Ashley Terrill into a former executive of a dating smartphone application company. The Ayyadurai Litigation arose from Gawker's publication of three articles regarding the claims by plaintiff Shiva Ayyadurai that he invented email. Finally, the Huon Litigation related to an article about plaintiff Meanith Huon and third-party comments posted on one of Gawker's websites. (*Holden Declaration* at ¶ 30.)

4

The alleged common thread in the Prepetition Lawsuits is Harder and Thiel. Harder represented the plaintiffs in the Bollea Litigation, the Terrill Litigation, and the Ayyadurai Litigation. (*Rule 2004 Motion* at ¶ 6; *see also Harder Objection* at ¶ 1 (acknowledging that the plaintiffs in these actions are Harder clients).) In addition, Huon informed the Court that he had received legal advice and/or information from Harder, and Harder reimbursed certain of his costs. (*Letter from Meanith Huon, Esq. to the Court*, dated Dec. 12, 2016, and annexed emails (ECF Doc. # 582); *see also Amended Declaration of D. Ross Martin in Support of the Motion of the Debtors for Leave Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to Conduct Discovery Concerning Potential Plan Issues and Potential Causes of Action, and to Establish Discovery Response and Dispute Procedures*, dated Oct. 11, 2016 (the "*Martin Declaration*") at ¶ 8 and Ex. F (attaching *Forbes* article describing Huon's representation).) Thiel has acknowledged that he financed the Bollea Litigation, (*Rule 2004 Motion* at ¶¶ 2-5; *see also Martin Declaration* at ¶¶ 3, 4, 6 and Exs. A, B, D (media reports of Thiel's funding of the Bollea Litigation) *and Rule 2004 Reply* at ¶ 14 and Ex. A (excerpting and attaching transcript of interview in which Thiel acknowledges funding litigation against Gawker)), and the Plan Administrator speculates based on press reports that he funded the other Prepetition Lawsuits in which Harder participated as part of "a coordinated campaign against the Debtors." (*Rule 2004 Motion* at ¶ 6.)

**B.    The Bankruptcy Case and the *Rule 2004 Motion***

During the chapter 11 cases, the Debtors sold all of their assets through a Bankruptcy Code § 363 sale (the "Sale") to UniModa, LLC on August 22, 2016. (*Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All*

5

*Claims, Liens, Rights, Interests and Encumbrances, (II) Approving and Authorizing the Debtors' Entry into the Asset Purchase Agreement and (III) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases*, dated Aug. 22, 2016 ("*Sale Order*") (ECF Doc. # 214).)  The Sale closed on September 9, 2016.  (*Notice of Sale Closing*, dated Sep. 12, 2016 (ECF Doc. # 258).)

After completing the asset sale, the Debtors filed the *Rule 2004 Motion* on October 11, 2016.  By this time, they had turned their focus to "formulat[ing] and seek[ing] confirmation of a plan of reorganization."  (*Rule 2004 Motion* at ¶ 17.)  The Debtors initially sought discovery in three areas: (1) "[w]hether votes to accept any plan of reorganization should be designated . . . under section 1126(e);" (2) "[t]he formulation of amended plans . . . taking into account the economic incentives arising from any of Thiel's litigation financing and/or control that Mr. Thiel may have over . . . creditor claims;" and (3) "[w]hether the Debtors should commence causes of action, arising from intent to destroy the Debtors' business, including for *prima facie* tort . . . against Mr. Thiel."  (*Id.* at pp. 1-2.)  The Debtors did not prosecute the *Rule 2004 Motion*, and instead, agreed with Thiel, Harder and Bollea to adjourn the motion several times to facilitate a global resolution.  (*Reply* at ¶ 2 n.4.)

While the *Rule 2004 Motion* was pending, the Debtors confirmed their joint *Plan*.  The *Plan* contemplated future litigation and the distribution of litigation proceeds.  It created a "Gawker Media Contingent Proceeds Creditor Account" as a "separate, segregated bank account to be established on the Effective Date and administered by the Plan Administrator, into which 45.0% of the Gawker Media Contingent Proceeds will be deposited for the benefit of the holders of Claims against

6

Gawker Media." (*Plan* at 7.) The "Gawker Media Contingent Proceeds" included "any recoveries from the Retained Causes of Action" net of set offs and expenses, (*id.*), and the "Retained Causes of Action" referred to "Claims and/or Causes of Action against third-parties that are not released under the Plan or any Order of the Bankruptcy Court and are retained and prosecuted by the Debtors on behalf of the Debtors' estates, as identified in the Plan Supplement." (*Id.* at 12.) The "Retained Causes of Action" listed in the Plan Supplement included "Causes of Action against Peter Thiel and any other Entity that result from the investigation that is the subject of the [*Rule 2004 Motion*] unless expressly waived or settled." (*Notice of Filing of Plan Supplement Pursuant to the Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.*, dated Nov. 30, 2016 ("*Plan Supplement*"), Ex. B, at 2 (ECF Doc. # 516).) The *Plan* designated Holden to serve as the Plan Administrator, (*Plan Administrator Agreement* at § 1(a) (*Plan*, Ex. A), and authorized him to prosecute the "Retained Causes of Action." (*Id.* at § 1(b)(ii).)

The Debtors reached a number of settlement agreements with plaintiffs in the Prepetition Lawsuits, including with Bollea, Terrill and Ayyadurai, which were incorporated into the *Plan* and the *Confirmation Order*. (*Confirmation Order* at ¶¶ 37-45; *Plan* § 4.01(c)-(d).) Under the Bollea settlement, Bollea was entitled to a cash payment of $31 million, (*Plan Supplement*, Ex. C, at ¶ 4, pp. 6-7), and the right to participate in the "Gawker Media Contingent Proceeds Creditor Account" against which he was deemed to have an allowed claim of $84 million. (*Id.*, Ex. C, at ¶ 8, p. 9.) The Bollea settlement also placed a significant limitation on the discovery sought through the *Rule 2004 Motion*. It suspended the *Rule 2004 Motion* through at least the

7

Effective Date of the *Plan*, and thereafter, if

> the Gawker Debtors pursue the 2004 Motion, the Gawker Debtors shall not seek from Bollea or any other third party any discovery about Bollea, including, without limitation, discovery concerning the subject matter of the 2004 Motion, litigation funding or finance, the Bollea I Lawsuit, the Bollea II Lawsuit, the Bankruptcy Cases, the Denton Bankruptcy Case, the Daulerio Collection Proceedings, and/or any and all related proceedings, whatsoever.

(*Id.*, Ex. C, at ¶ 18, p. 13.)

Ayyadurai and Terrill did not receive an interest in the "Gawker Media Contingent Proceeds Creditor Account" under their settlements, but both settlements included identical limitations on discovery, suspending it until the Effective Date and providing that after the Effective Date:

> The Gawker Entities shall not seek from [Ayyadurai/Terrill] or any third party any discovery regarding [Ayyadurai/Terrill], including, without limitation, discovery concerning the subject matter of the 2004 Motion, litigation funding or finance, the [Ayyadurai/Terrill] Action, the Gawker BK Action, the Denton BK Action, and any and all related proceedings, except for the following discovery to [Ayyadurai/Terrill] only: any litigation financing agreement(s) relating to the Lawsuit or claims in the lawsuit, and any non-privileged retainer agreements with Charles J. Harder, Esq. or the law firm of Harder Mirell & Abrams LLP relating to the Lawsuit or claims in the Lawsuit.

(*Plan Supplement*, Ex. D, at ¶ 9, p. 4; Ex. E, at ¶ 10, ECF p. 61 of 66.)

The Debtors have narrowed the scope of the *Rule 2004 Motion* in light of the confirmation of the *Plan* and the consummation of the settlements. The proposed discovery requests are limited to documents and communications regarding two topics: (i) Thiel's relationship with Harder and causes of action against the Debtors, and (ii) Scott Sonnenblick's efforts to acquire or facilitate the acquisition of Debtor Gawker Media Group, Inc. (*Reply* at ¶ 18.)

According to the Debtors, they need the limited discovery to decide whether to pursue or settle the Debtors' claims against Thiel. (*Id.* at ¶ 4.) It is undisputed that Thiel funded the Bollea Litigation, they have reason to believe based on press reports and other documentation and information that he funded other litigation, and the threat of further litigation depressed the purchase price for their assets and the proceeds they ultimately received from the Sale. (*Id.*) The Debtors suggest that the Potential Causes of Action could yield "millions if not tens of millions of dollars in recovery," and the potential benefits of the proposed Rule 2004 examination therefore outweigh any hardships. (*Id.*)

**B.    The Objections**

The main thrust of the objections is that the Plan Administrator cannot assert a viable claim for *prima facie* tort against Thiel, either because Florida law, which may govern, does not recognize *prima facie* tort, or if New York law governs, the Plan Administrator cannot demonstrate malice as required by New York law. (*See Harder Objection* at ¶¶ 15-21; *Thiel Objection* ¶¶ 13-16; *Bollea Objection* at ¶ 41.) In addition, Thiel argues that the requests are not proportional. (*Thiel Objection* at ¶ 19.) The *Plan* pays all creditors in full, the discovery is unrelated to creditor recoveries and would not provide any potential benefits. (*Id.*) Thiel also argues that if the *Rule 2004 Motion* is granted, the discovery procedures the Debtors and Plan Administrator have proposed should not be "preapprov[ed]" as they impose an expedited time frame and are therefore unduly burdensome. (*Id.* at ¶ 20.)

Harder argues that the Debtors must meet a heightened burden in seeking discovery from Harder and have not met that burden. (*Harder Objection* at ¶ 22.)

9

Harder was opposing "litigation counsel" vis-à-vis the Debtors, and as such, discovery can only be ordered after this Court "consider[s] 'the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted.'" (*Id.* (quoting *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71-72 (2d Cir. 2003).) The requested Rule 2004 discovery threatens attorney-client privilege and work product and impinges Harder's clients' rights. (*Id.* at ¶¶ 22-23.) Therefore, even if the Court grants the *Rule 2004 Motion*, it should not allow the Plan Administrator to take discovery directly from Harder. (*Id.* at ¶ 23.) Harder also emphasizes the limitations placed on discovery, and if the Debtors were to seek discovery from Terrill and/or Ayyadurai, the information the Debtors seek to obtain from their retainer agreements is "inherently privileged." (*Id.* at ¶¶ 27-31 (citation omitted).) Finally, Harder contends that the Plan Administrator is circumventing the "pending proceeding" rule (even though there is no pending proceeding) to pressure Thiel. (*See id.* at ¶¶ 24-26.)

Bollea also invokes the limitations on discovery in the settlement agreements, and further contends that they preclude the Plan Administrator from determining whether he can assert a *prima facie* tort claim as the Debtors released Harder from any claims and agreed to cooperate and act in good faith in granting Thiel a release. (*Bollea Objection* at ¶ 47.) In addition, the limitations on discovery in the settlement agreements prevent the Debtors from bringing a *prima facie* tort claim against Thiel. The Debtors have conceded that without the information they seek to obtain they lack a reasonable basis to believe they can prove such a claim. Accordingly, they cannot

10

comply with Federal Bankruptcy Rule 9011(b), "[s]o there is no point to providing [the] debtors with the . . . discovery they can still obtain because they will be unable to plead [that claim]." (*Id.* at ¶ 46.)

## DISCUSSION

**A.     Applicable Law**

Rule 2004 provides in relevant part that the Court may authorize the examination of any entity relating "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." FED. R. BANKR. P. 2004(b). In chapter 11 cases, the examination may extend to matters relating "to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan." *Id.* The party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks, and relief lies within the sound discretion of the Bankruptcy Court. *Picard v. Marshall* (*In re Bernard L. Madoff Inv. Secs. LLC*), Adv. Pro. No. 08-01789, 2014 WL 5486279, at *2 (Bankr. S.D.N.Y. Oct. 30, 2014); *see In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) (Rule 2004 gives the Court "significant" discretion).

Relevance alone is not sufficient to justify a Rule 2004 request. *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991). A party seeking to conduct a Rule 2004 examination must also show good cause, such as the proposed examination "'is necessary to establish the claim of the party seeking the examination,

11

or . . . denial of such request would cause the examiner undue hardship or injustice,'" *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004) (quoting *In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993)); *accord In re AOG Entm't, Inc.*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016); *Drexel Burnham*, 123 B.R. at 712, and the Court must "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *Drexel Burnham*, 123 B.R. at 712; *accord In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991); *see In re SunEdison, Inc.*, 562 B.R. 243, (Bankr. S.D.N.Y. 2017) ("The spirit of proportionality is consistent with the historic concerns regarding the burden on the producing party and is relevant to the determination of cause.")

B.   The Thiel-Related Discovery

The Plan Administrator seeks to conduct pre-litigation discovery in order to determine whether potential causes of action exist and, if they do, whether to prosecute them. Under the *Plan*, the proceeds of litigation against Thiel will be paid to the creditors and the *Rule 2004 Motion* "fits squarely within the purpose of Rule 2004, as [the Litigation Trustee] seeks to examine third parties for the purpose of 'discovering assets, examining transactions, and determining whether wrongdoing has occurred" on behalf of the Debtors' estate.'" *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 627 (Bankr. D. Del. 2016) (citation omitted).  Thiel argues that the Debtors have paid 100% to creditors, and *Rule 2004 Motion* is unrelated to any creditor recoveries, (*Thiel Objection* at ¶ 19), but this ignores Bollea's $84 million allowed claim payable from the "Gawker Media Contingent Proceeds Creditor Account" which will be funded by any

12

recoveries in a lawsuit against Thiel. Hence, the Debtors have established cause for the Thiel-related discovery.

The objections to the Thiel-related discovery lack merit except to the extent they invoke the limitations on discovery contained in the settlement agreements with Bollea, Ayyadurai and Terrill. Initially, the challenges based on the lack of a viable *prima facie* tort claim are premature. A Rule 2004 request does not require a court to determine whether a pleading that has not been filed and may never be filed states a claim that will survive a motion to dismiss. *See Millennium Lab Holdings*, 562 B.R. at 624-25 (A court is not required to "speculate over possible causes of action that may be pursued after the [Rule 2004] investigation is complete.") Moreover, the *Bollea Objection* argument that the Plan Administrator's current lack of a reasonable basis to bring the Potential Causes of Action demonstrates a lack of cause for a Rule 2004 examination, (*Bollea Objection* at ¶ 46), makes no sense. The purpose of Rule 2004 is to allow the debtor to acquire information it lacks. The lack of information is the reason for granting Rule 2004 discovery, not for denying it.[6]

Harder's argument that the *Rule 2004 Motion* should be denied because Mr. Harder is an attorney, (*Harder Objection* at ¶ 22), is based on an overly broad reading of *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65 (2d Cir. 2003). In *Friedman,* a liquidation trustee sued former members of a bankrupt corporation's board of directors alleging, among other things, that the directors had breached their fiduciary duties in

---

[6] Bollea is not a target of the Rule 2004 discovery and is the primary beneficiary of any recovery from Thiel. While he has the right to assert the limitations on discovery under the Bollea settlement, the reason for his challenge to the merits of possible claims is a mystery.

13

approving a certain merger transaction. *Id.* at 66. Some of the defendants argued that they had satisfied their fiduciary duties based their attorney's advice. *Id.* The liquidation trustee sought to depose the attorney (Friedman), but the District Court quashed the deposition subpoena relying on the rule set forth in *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir.1986), that plaintiff-appellant must exhaust all practical alternative means of obtaining the information sought from Friedman before it would consider allowing the proposed deposition, and ordered plaintiff-appellant to proceed first by written interrogatories. *Friedman*, 350 F.2d at 67-68.

The Second Circuit dismissed the appeal as moot, *id.* at 72, but nonetheless issued a written opinion. Rejecting the "rigid *Shelton* rule, the Court stated that Rule 26 of the Federal Rule of Civil Procedure required a "flexible approach to lawyer depositions," and accordingly, where a proposed deponent is a lawyer, the judicial officer overseeing discovery should "take[] into consideration all of the relevant facts and circumstances" to determine the propriety of the deposition. *Id.* at 71-72. "Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Id.* at 72. Importantly, "the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices." *Id.*

The concerns that informed the *Friedman* decision are not present here. The Plan Administrator hypothesizes that Thiel and Harder entered into a conspiracy to destroy Gawker's business. Harder did not represent Thiel; he represented Bollea,

14

Ayyadurai and Terrill. Hence, he is a fact witness whose communications with Thiel do not implicate the concerns that attend the attorney-client privilege. Furthermore, a Rule 2004 examination should not be denied merely because it may touch on privileged matters. *See In re M4 Enters., Inc.*, 190 B.R. 471, 476 (Bankr. N.D. Ga. 1995) (acknowledging that certain matters within the scope of proposed examination of Trustee were "undoubtedly" privileged and directing Trustee to submit to examination and assert "any meritorious privileges" with respect to "each individual question."). Should the responses to the Plan Administrators' discovery requests implicate a privilege or seek discovery precluded by the settlement agreements, the Court can address those issues as it would in any other litigation. Finally, there is no pending proceeding in which the Debtors can take discovery, and they are not required to forego Rule 2004 discovery simply because they may file an action in the future.

### C.     The Sonnenblick-Related Discovery

With respect to the proposed investigation of Sonnenblick, the Debtors' papers only state that an "unidentified Silicon Valley billionaire" – presumably Thiel in the Debtors' and Plan Administrator's minds – hired Sonnenblick "in an attempt to purchase Gawker Media in January 2016." (*Rule 2004 Motion* at ¶ 25 n. 5.) The *Reply* repeats the discovery request but does not otherwise refer to Sonnenblick. Sonnenblick was not a bidder at the auction for the Debtors' assets, and the Debtors sold their assets after adequate marketing, (*Sale Order* at ¶ H), at a fair and reasonable price, (*id.*), that was not controlled by an agreement among bidders, (*id.* at ¶ K), to a good faith purchaser who did not engage in any collusive conduct. (*Id.*)

15

This record is insufficient to establish cause. Thiel's connection is speculative, and the Plan Administrator has failed to show that it needs this information or will suffer hardship or injustice if he does not get it. Accordingly, this branch of the *Rule 2004 Motion* is denied without prejudice.

**D.     Conclusion**

Although the Plan Administrator has shown good cause for the Thiel-related discovery, and is entitled to examine Thiel and Harder with respect to Thiel's relationship with Harder and potential causes of action, the settlements impose substantial limitations on his ability to do so. It appears that the Plan Administrator cannot obtain any discovery from Thiel, Harder or anyone else regarding Bollea, Ayyadurai or Terrill except for discovery from Ayyadurai and Terrill limited to "litigation financing agreement(s) relating to the Lawsuit or claims in the lawsuit, and any non-privileged retainer agreements with Charles J. Harder, Esq. or the law firm of Harder Mirell & Abrams LLP relating to the Lawsuit or claims in the Lawsuit." The Plan Administrator is no longer seeking discovery from Ayyadurai or Terrill through the *Rule 2004 Motion*, and there does not appear to be much left that is discoverable.

Rather than parse the initial list of requests in light of these limitations, the Court directs the parties to meet and confer with a view to submitting an order setting forth

the Plan Administrator's requests and the specific limitations on those requests.  If the parties cannot agree, they may settle proposed orders and counter orders on notice.

Dated: New York, New York
       June 28, 2017

                                      /s/ *Stuart M. Bernstein*
                                      STUART M. BERNSTEIN
                                      United States Bankruptcy Judge