**Hearing Date and Time: September 28, 2017 at 10:00 a.m. (Eastern Time)**
**Objection Deadline: September 5, 2017 at 4:00 p.m. (Eastern Time)**

**SAUL EWING LLP**
Sharon L. Levine
Dipesh Patel
555 Fifth Avenue
Suite 1700
New York, NY 10017
Telephone: (212) 980-7200

*Attorneys for Ryan Goldberg*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
                                                    :
In re                                               :    Chapter 11
                                                    :
Gawker Media LLC, *et al.*,[1]                      :    Case No. 16-11700 (SMB)
                                                    :
                    Debtors.                        :    (Jointly Administered)
                                                    :
-------------------------------------------------------x

**MOTION OF RYAN GOLDBERG (I) TO ENFORCE ORDER CONFIRMING AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION AND (II) TO BAR AND ENJOIN CREDITORS FROM PROSECUTING THEIR STATE COURT ACTION**

Ryan Goldberg ("Goldberg"), a former independent contractor of Gawker Media LLC ("Gawker Media"), hereby submits this motion (the "Motion") for entry of an order (i) enforcing the Amended Joint Chapter 11 Plan of Liquidation (the "Plan") filed by Gawker Media Group, Inc., Gawker Media LLC and Gawker Hungary KFT (collectively, the "Debtors") and (ii) barring and enjoining Pregame LLC, d/b/a Pregame.com ("Pregame"), and Randall James Busack, professionally known as RJ Bell ("Busack"; and collectively with Pregame, the "Plaintiffs"), from prosecuting claims asserted in a state court complaint against Goldberg,

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10020. Kinja Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10020.

Gizmodo Media Group, LLC ("GMG") and certain unnamed Does 1-20 (collectively, the "Defendants") because the Plan released, and enjoined any actions to assert, these claims.[2]  In further support of this Motion, Goldberg states as follows:

## I.    PRELIMINARY STATEMENT

1.    On June 22, 2017, Plaintiffs filed a lawsuit against the Defendants in the Supreme Court for the State of New York, in the County of New York.  The state court complaint asserts claims for defamation, intentional interference with prospective economic advantage and tortious interference with contractual relations (the "Complaint") arising out of an article authored by Goldberg.  The article was posted on Deadspin.com on June 23, 2016, before the free and clear sale of assets to GMG and before confirmation of the Plan.  Attached as Exhibit A is a true and correct copy of the Complaint.

2.    The confirmed Plan released the claims that Plaintiffs asserted in the Complaint against Goldberg.  In exchange for the releases in the Plan, Goldberg and other writers for the Debtors' websites gave up their rights to indemnification for claims arising from work performed or content provided to the Debtors.  This was an essential part of the resolution of the bankruptcy and plan process.  Plaintiffs' counsel, Charles Harder of the law firm of Harder Mirell & Abrams LLP ("Plaintiffs' Counsel"), was intimately involved in the Plan confirmation process and Plaintiffs and Plaintiffs' Counsel had actual notice that these claims were released and subject to the injunction provisions set forth in the Plan.  Nevertheless, despite full knowledge that the Plan's third-party release bars these claims and in violation of the Plan injunction, Plaintiffs filed suit in state court alleging claims that arose out of content posted to Deadspin.com before the free and clear sale of assets in these bankruptcy cases without any mention of the bankruptcy, the

---

[2]    Capitalized terms not otherwise defined herein shall have the same meaning as ascribed to them in the Plan.

Plan, the releases, or the injunction. Additionally, notwithstanding notice of the Claims Bar Date (as defined below), Plaintiffs failed to file proofs of claim by the deadline in these cases. Had Plaintiffs filed timely claims their claims would have been adjudicated through the bankruptcy process and addressed through the Plan.

3.      By this Motion, Goldberg seeks to enforce the Plan's release and injunction provisions and to require Plaintiffs to dismiss the disingenuously-filed state court lawsuit. Goldberg also respectfully requests that Plaintiffs be ordered to compensate him for the attorneys' fees and costs incurred in having to bring this Motion since the Complaint is the result of Plaintiffs' blatant disregard of the clear provisions of the Confirmation Order and the Plan.

## II.    JURISDICTION

4.      This Court has jurisdiction over the matters raised in this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.

5.      This Motion addresses matters concerning the administration of these bankruptcy proceedings and other proceedings affecting the liquidation of the Debtors' estates and therefore involves a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A) and (O).

## III.    FACTUAL AND PROCEDURAL BACKGROUND

6.      On June 10, 2016 (the "Petition Date"), Gawker Media filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On June 12, 2016, the other Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

7.      Prior to the Petition Date, Gawker Media operated seven distinct media brands with corresponding websites under the names Gawker, Deadspin, Lifehacker, Gizmodo, Kotaku, Jalopnik and Jezebel (the "Websites") and employed approximately 195 employees and used

numerous independent contractors (the "U.S. Employees and Independent Contractors").  *See* Disclosure Statement for the Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft. [D.I. 427], p. 9.

8.      Goldberg, as well as the other U.S. Employees and Independent Contractors, by way of contract with the Debtors or through the Debtors' long-standing practices and policies, had the right to indemnification against the Debtors and the Debtors' bankruptcy estates on account of claims that arose from content provided or services performed.

A.      **Plaintiffs' Claims and Actions in Debtors' Bankruptcy Proceedings**

9.      On June 23, 2016, Goldberg authored an article (the "Article") that was posted on Gawker Media's Deadspin.com website.  The Article explored the sports-betting industry, focusing particularly on the activities of Busack, a well-known sports-betting figure, and his company, Pregame.

10.      On June 27, 2016, Plaintiffs' Counsel sent a letter to Gawker Media that demanded the retraction of the Article.  A copy of the June 27, 2016 demand letter is attached hereto as Exhibit B.  Additionally, Busack published a copy of the June 27, 2016 demand letter via his Twitter page, publicly available on Twitter at: https://twitter.com/rjinvegas/status/747527258168926212.

11.      On July 20, 2016, Gawker Media filed its Schedules of Assets and Liabilities for Non-Individual Debtors [D.I. 116].  On "Schedule E/F:  Creditors Who Have Unsecured Claims," Gawker Media identifies a claim for "Busack, Randall (aka RJ Bell)" in an "undetermined amount" for a "Threatened Litigation Claim" and categorizes the claim as contingent, unliquidated and disputed.

12.      On August 11, 2016, the Bankruptcy Court entered an *Order (I) Establishing a Deadline to File Proofs of Claim, Certain Administrative Claims and Procedures Relating*

-4-

*Thereto and (II) Approving the Form and Manner of Notice Thereof* [D.I. 168] (the "<u>Claims Bar Date Order</u>").

13.     The Claims Bar Date Order required that any person or entity with a claim arising between the Petition Date and July 31, 2016 against any of the Debtors file a request for payment on or before September 29, 2016 (the "<u>Claims Bar Date</u>").   Claims Bar Date Order, ¶ 10. Unsecured claims arising after July 31, 2016, would be considered "General Unsecured Claims" under the Plan.

14.      The Claims Bar Date Order warned that, pursuant to Bankruptcy Rule 3003(c)(2), holders of claims that failed to timely file a proof of claim or request for payment "shall be forever barred, estopped and enjoined from asserting such claim against the Debtors." Claims Bar Date Order, ¶ 13.

15.     On August 18, 2016, Gawker Media filed an Affidavit of Publication [D.I. 201], certifying that notice of the Claims Bar Date was published in the national edition of *USA Today* on August 17, 2016.

16.     In addition, on August 22, 2016, Gawker Media filed an Affidavit of Service [D.I. 217], certifying that it served on all creditors, including Plaintiffs' Counsel and Busack, notice of the Claims Bar Date, a Proof of Claim Form and the Administrative Claim Form (as those terms are defined in the Claims Bar Date Order).  Affidavit of Service, Exhibits B, p. 30 and H, p. 1, respectively.

17.     Notwithstanding Plaintiffs and Plaintiffs' Counsel actual notice of the Claims Bar Date, Plaintiffs failed or chose not to file a proof of claim or request for payment.

**B.     <u>Sale of Substantially all of the Debtors' Assets</u>**

18.     On August 18, 2016, following a sale process and auction, the Court held a hearing to consider approval of GMG's bid for the purchase of substantially all of the Debtors'

assets free and clear of all liens, claims and encumbrances.   Ultimately, GMG's bid was approved and on August 22, 2016, the Bankruptcy Court entered the *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (II) Approving and Authorizing the Debtors' Entry Into the Asset Purchase Agreement and (III) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* [D.I. 214] (the "<u>Sale Order</u>").  The acquired assets included Deadspin.com.

19.    On September 9, 2016, the Debtors closed on the sale to GMG.

**C.    Approval of the Debtors' Disclosure Statement and Confirmation of the Debtors' Plan of Liquidation**

20.    On November 2, 2016, the Debtors filed their Disclosure Statement for the Debtors' Amended Joint Chapter 11 Plan of Liquidation [D.I. 403, Exhibit A] (the "<u>Disclosure Statement</u>").  The Disclosure Statement attached the Debtors' Plan.

21.    On November, 4, 2016, the Court entered an *Order Approving (I) the Adequacy of the Disclosure Statement, (II) Solicitation and Notice Procedures with Respect to Confirmation of the Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft., (III) the Form of Ballots and Notices in Connection Therewith, and (IV) the Scheduling of Certain Dates with Respect Thereto* (the "<u>Disclosure Statement Adequacy Order</u>") [D.I. 413].

22.    On November 14, 2016, the Debtors' noticing agent filed an Affidavit of Service of Solicitation Materials [D.I. 446], in which the noticing agent certified that it served materials regarding the Debtors' Plan on parties in interest on November 7, 2016.  On Exhibit V, at page 13 of 89, the noticing agent confirms that it sent to "Busack, R" a copy of the Notice of Entry of

the Disclosure Statement Adequacy Order (the "<u>Confirmation Hearing Notice</u>").   The Confirmation Hearing Notice is attached as Exhibit A to the Affidavit of Service.

23.     The Confirmation Hearing Notice provided notice of the deadline for objecting to confirmation of the Plan and sets forth verbatim, in all capital letters and boldface, the Plan's provisions regarding the third-party release and injunction.   Affidavit of Service, Exhibit A (Confirmation Hearing Notice), pp. 4-6.

24.     In addition, on November 14, 2016, the Debtors' noticing agent filed an Affidavit of Publication [D.I. 440], in which the noticing agent certified that it published notice of the deadlines relating to the Plan and notice of the hearing on confirmation of the Plan in the national edition of *USA Today* on November 10, 2016.

25.     On December 22, 2016, this Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 638] (the "<u>Confirmation Order</u>").

26.     On March 17, 2017, the Plan became effective.   *Notice of (I) Entry of Order Confirming the Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft. and (II) Occurrence of Effective Date* [D.I. 825].

     D.     <u>Relevant Provisions of the Disclosure Statement, the Plan and the Confirmation Order</u>

     1.     <u>Third-party Releases of Released Employees and Independent Contractors and Injunction against Asserting such Claims</u>

27.     The Plan provides for certain releases in favor of Released Employees and Independent Contractors.   The Plan provides:

          "<u>Released Employees and Independent Contractors</u>" means each

current and former employee, writer, editor, and independent contractor that was employed by, or paid to contribute articles to, the Debtors, including, without limitation, current and former 1099 employees and current and former independent contractors, that filed a Proof of Claim in the Bankruptcy Cases.

Plan, p. 12.

28.    The release, which appears in boldface and all capital letters, reads as follows:

**THIRD-PARTY RELEASES OF RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS.    ON THE EFFECTIVE DATE AND EFFECTIVE SIMULTANEOUSLY WITH THE EFFECTIVENESS OF THIS PLAN, FOR GOOD AND VALUABLE CONSIDERATION, TO THE FULLEST EXTENT PERMITTED UNDER APPLICABLE LAW, EACH HOLDER OF A CLAIM OR EQUITY INTEREST THAT HAS RECEIVED OR IS DEEMED TO HAVE RECEIVED DISTRIBUTION(S) MADE UNDER THE PLAN SHALL BE DEEMED TO HAVE FOREVER RELEASED UNCONDITIONALLY EACH OF THE RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEBTS, RIGHTS, REMEDIES, CAUSES OF ACTION, AND LIABILITIES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT ARE OR MAY BE BASED IN WHOLE OR IN PART UPON ANY ACT, OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE OR EXISTING ON OR PRIOR TO THE SALE CLOSING DATE ARISING OUT OF OR RELATING TO SUCH RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS' WORK PERFORMED OR CONTENT PROVIDED ON BEHALF OF THE DEBTORS THAT ARE NOT THE RESULT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER, THAT ARE NOT PRESERVED BY ANY SETTLEMENTS BETWEEN A HOLDER OF A CLAIM AND ANY OF THE DEBTORS, AND FOR WHICH THE DEBTORS HAVE DEBTOR INDEMNIFICATION OBLIGATIONS, <u>PROVIDED, HOWEVER</u>, THAT THE FOREGOING THIRD-PARTY RELEASES WILL APPLY ONLY TO RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS WHO VOTE IN FAVOR OF THE PLAN, AND ONLY TO**

**THE EXTENT THAT EACH SUCH RELEASED EMPLOYEE AND INDEPENDENT CONTRACTOR WAIVES AND RELEASES ANY AND ALL OF ITS CLAIMS AGAINST THE DEBTORS FOR DEBTOR INDEMNIFICATION OBLIGATIONS, EXCEPT FOR ANY AMOUNTS ALREADY DUE AND OWING AS OF THE EFFECTIVE DATE.**

Plan, § 9.05 (emphasis in original). The Plan defines "Debtor Indemnification Obligations" as "indemnification, contribution, reimbursement, advance of defense costs, duty to defend or other such obligations of the Debtors, arising out of (i) employment, severance or independent contractor agreements …, (ii) the Debtors' organizational documents or governing corporate documents, and (iii) the Debtors' policies and practices." Plan, p. 4.

29.     To protect the integrity of the Plan and to protect the Released Employees and Independent Contractors, the Plan enjoins the assertion or prosecution of claims:

**INJUNCTION AGAINST INTERFERENCE WITH PLAN. UPON THE ENTRY OF THE CONFIRMATION ORDER, EXCEPT AS EXPRESSLY PROVIDED IN THE PLAN, THE CONFIRMATION ORDER, OR A SEPARATE ORDER OF THE BANKRUPTCY COURT, ALL PERSONS AND ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR EQUITY INTERESTS IN ANY OR ALL OF THE DEBTORS OR RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS (WHETHER PROOF OF SUCH CLAIMS OR EQUITY INTERESTS HAS BEEN FILED OR NOT), ALONG WITH THEIR RESPECTIVE PRESENT OR FORMER EMPLOYEES, PRESENT OR FORMER INDEPENDENT CONTRACTORS, PRESENT OR FORMER CONTENT PROVIDERS, PRESENT OR FORMER WRITERS, AGENTS, OFFICERS, DIRECTORS OR PRINCIPALS ARE PERMANENTLY ENJOINED, ON AND AFTER THE EFFECTIVE DATE, FROM (I) COMMENCING, CONDUCTING, OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION, OR OTHER PROCEEDING OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ANY PROCEEDING IN A JUDICIAL, ARBITRAL, ADMINISTRATIVE OR OTHER FORUM) AGAINST OR AFFECTING (A) PROPERTY OF ANY OF THE DEBTORS BEING DISTRIBUTED UNDER THE PLAN**

**AND (B) THE RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS OR THE PROPERTY OF ANY OF THE RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS, TO THE EXTENT SUCH PROCEEDINGS AGAINST THE RELEASED EMPLOYEES AND INDEPENDENT CONTRACTORS ARE RELEASED PURSUANT TO SECTION 9.05 OF THE PLAN, … (V) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN, AND (VI) TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN; PROVIDED, HOWEVER, THAT (X) THE FOREGOING INJUNCTION SHALL NOT APPLY TO ACTIONS OR OMISSIONS THAT OCCUR AFTER THE SALE CLOSING DATE AND (Y) THE BANKRUPTCY COURT MAY PROVIDE RELIEF FROM THE FOREGOING INJUNCTION WITH RESPECT TO CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEBTS, RIGHTS, REMEDIES, CAUSES OF ACTION, AND LIABILITIES NOT OTHERWISE RELEASED UNDER SECTIONS 9.03 AND 9.05 OF THIS PLAN.**

Plan, § 9.02 (emphasis in original).

30.     The third-party releases, the injunction and the other Plan provisions bind any holder of a Claim against the Debtors regardless of whether the Claim is allowed or whether the holder has accepted the Plan.  *See* Plan, § 4.12 (confirming binding effect of Plan); Plan, p. 3 (defining Claim as any "claim", as defined in Section 101(5) of the Bankruptcy Code, which has not yet been disallowed by an order of the Bankruptcy Court).

31.     In support of confirmation of the Plan, more than 60 writers joined in submitting a response describing the significant ongoing exposure they faced to potential liability arising from services performed or content provided at the request and direction of the Debtors, without the protection of indemnification from an ongoing operation or adequate reserve. *See* Certain Writers' Response in Support of Confirmation of the Amended Chapter 11 Plan, or in the Alternative, Limited Objection and Reservation of Rights [D.I. 546] (the "Writers' Response").

The writers needed the third-party releases and injunction to protect themselves from personal exposure after confirmation of the Plan.   As the individuals who provided Website content, their work contributed to the value reflected in the sale price for the Debtors' assets that funded the Plan.

32.    At the hearing on confirmation of the Plan, counsel for the Debtors highlighted the critical need for the third-party releases and injunction and argued for the "greatest protection" possible for the writers, editors and others who contributed to the Websites' content:

> We believe that anybody who would be bringing such action should have brought an action or claim in the bankruptcy, knowing that Gawker was in bankruptcy and therefore, Gawker could have dealt with those claims in bankruptcy.   And we believe that anybody that would simply go against the writer knowing them -- going against a writer as a Gawker writer -- would only be doing so whether it was for a malicious intent or other intent, because knowing that they do not have substantial assets. And the only assets that they have would be the indemnification claims that they would have against the debtor and not having the resources to defend, we believe that those third party releases under these circumstances for both pre and post-petition articles written on behalf of the debtors are appropriate in these circumstances.

Transcript of Confirmation Hearing [D.I. 628], pp. 72 and 74.  A copy of the Transcript of the Confirmation Hearing is attached hereto as Exhibit C.

33.    The Confirmation Order states that the Court had jurisdiction under Sections 1334(a) and (b) of Title 28 of the United States Code to approve the third-party releases and injunction and that it was permitted to approve the third-party releases and issue the injunction under Sections 105(a) and 1123(b) of the Bankruptcy Code.  Confirmation Order, ¶ 19.

34.    Additionally, the Confirmation Order provides as follows:

> The Court has jurisdiction to consider the third-party releases described in section 9.05 of the Plan (the "Third-Party Releases"). The Claims and Causes of Action covered by the Third-Party Releases are based on conduct for which a Debtor might be liable for Debtor Indemnification Obligations.    Employees and

Independent Contractors have filed Claims against the Debtors for Debtor Indemnification Obligations for potential and threatened litigation.

The Third-Party Releases are given and made after due notice and opportunity for hearing. The Third-Party Releases were conspicuously set off in bold font in the Disclosure Statement, the Plan, the Confirmation Hearing Notice, and the Publication Notice.

The Third-Party Releases are necessary based on the unique circumstances here, are an integral and necessary part of the Plan, and represent a valid exercise of the Debtors' business judgment. As the Court found on the record at the Confirmation Hearing, the Third-Party Releases are in the best interests of the Debtors, the Debtors' estates and all holders of Claims and Equity Interests. Additionally, the Third-Party Releases are fair, equitable, and reasonable. The Third-Party Releases are narrowly tailored.

The Third-Party Releases are given in exchange for good and valuable consideration provided by the Released Employees and Independent Contractors. The Released Employees and Independent Contractors have voted in favor of the Plan and are waiving and releasing all claims against the Debtors for Debtor Indemnification Obligations, unless otherwise agreed to by the Debtors or their insurance carriers. Each holder of a Claim or Equity Interest that has received or is deemed to have received distributions made under the Plan in turn benefits from an immediate distribution. Absent the Third-Party Releases in favor of the Released Employees and Independent Contractors, the Debtors might have been required to set aside additional reserves in respect of Debtor Indemnification Obligations, the Plan Settlements may not have been agreed to, and are therefore important to the Plan. Furthermore, the Debtors would be subject to substantial Claims for Debtor Indemnification Obligations in respect of claims or causes of action brought against the Released Employees and Independent Contractors.

Confirmation Order, ¶¶ 21-24.

35.    With regard to the injunction precluding assertion of claims (defined by the Court as the "Plan Interference Injunction" and included in the broader term "Injunction Provisions"), the Confirmation Order provides:

The [Injunction Provisions] … (a) are an essential means of implementing the Plan pursuant to section 1123(a)(5) of the

Bankruptcy Code; (b) are an integral element of the transactions incorporated into the Plan; (c) confer material benefits on, and are in the best interests of, the Debtors, the Debtor's estates, and their creditors; and (d) are important to the overall objectives of the Plan. … The Plan Interference Injunction is necessary to preserve and enforce the terms of the Plan. The Injunction Provisions are a key component of the efficient liquidation of the Debtors' estates and prevent the potential for collateral attack of the Plan's terms.

The Injunction Provisions were conspicuously set off in bold font in the Disclosure Statement, the Plan, the Confirmation Hearing Notice, and the Publication Notice.

The Injunction Provisions are narrowly tailored to achieve their purpose. … The Plan Interference Injunction (a) is limited to conduct arising before the Effective Date and (b) may be lifted after a party obtains relief from the Bankruptcy Court.

Confirmation Order, ¶¶ 27-29.

## 2.    Retention of Jurisdiction by Bankruptcy Court

36.    Section 8.01 of the Plan provides that the Bankruptcy Court retained exclusive jurisdiction of the Debtor's post-confirmation bankruptcy proceedings, including for the following purposes:

(d)    to determine any and all controversies and disputes arising under or in connection with the Plan, the settlements contemplated under the Plan, and such other matters as may be provided for in the Confirmation Order;

\*        \*        \*

(h)    to issue orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

\*        \*        \*

(j)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and any related documents;

\*        \*        \*

(l)    to hear and determine any request for relief from the injunction provided for under section 9.02 of the Plan;

*        *        *

(o)      to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all … releases . . . in connection with the Plan, the Disclosure Statement or the Confirmation Order . . . ; [and]

(p)      to make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan . . . .

Plan, § 8.01.

### E.        Plaintiffs' Lack of Action in the Bankruptcy Proceedings

37.      As noted above, Busack was listed as a creditor on the Debtors' Schedules, received notice of the Claims Bar Date, received notice that his claim was disputed and received notice of the confirmation hearing.

38.      Moreover, Plaintiffs' Counsel appeared and was active throughout the Debtors' bankruptcy proceedings.  Among other things,

> ➢      Plaintiffs' Counsel represented Terry Bollea a/k/a Hulk Hogan, whose judgment was the single biggest precipitating factor for the Debtors' bankruptcy filings.  *See* Disclosure Statement, pp. 14-15.

> ➢      Plaintiffs' Counsel also represented members of the Official Committee of Unsecured Creditors in these proceedings.

> ➢      The Plan Settlements, which form the foundation for the Plan, included settlements with creditors represented by Plaintiffs' Counsel.  Disclosure Statement, pp. 23 and 28-30.

> ➢      The Debtors sought to conduct discovery of Plaintiffs' Counsel in connection with the Plan, and Plaintiffs' Counsel opposed the Debtors' efforts [D.I. 341].  Objection to Motion of the Debtors for Leave Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to Conduct Discovery Concerning Potential Plan Issues and Potential Causes of Action and to Establish Discovery Response and Dispute Procedures [D.I. 869].

39.      By virtue of this extensive involvement in these proceedings and receipt of all applicable notices, Plaintiffs and Plaintiffs' Counsel had actual knowledge of the Claims Bar

Date and the confirmation proceedings.  Despite this knowledge, Plaintiffs did not: (i) file a proof of claim to preserve any claims they may have had against the Debtors and any non-Debtor individual defendants, (ii) object to confirmation of the Plan or challenge the legality or scope of the third-party release and injunction provisions; (iii) appeal the Confirmation Order or the Sale Order; or (iv) object to the Bankruptcy Court's retention of jurisdiction to implement and enforce the Plan and the claims now asserted by Plaintiffs in the state court proceeding.

40.    In fact, this very issue – the applicability of the third-party release on creditors that did not file a claim in the bankruptcy proceedings and the importance of the release of those claims to the writers – was specifically discussed at the December 2016 confirmation hearing:

> THE COURT: Let me ask you a question. Are there any creditors who have not filed a claim, did not vote and have not settled, to your knowledge?
>
> MR. GALARDI: That did not file a claim, that did not vote and --
>
> THE COURT: Did not settle.
>
> MR. GALARDI: Well, Your Honor, yes, in the following way and I want to be clear. As I mentioned and Mr. [Harder] mentioned, maybe I'm not getting it right, but I hate to use the President-elect's name, but we have received from one of -- from a law firm, you wrote an article about the President-elect, now that claim never got filed in this case. One of the reasons we're concerned about that is because the statute of limitations on that article has not run.
>
> THE COURT: Okay.
>
> MR. GALARDI: So that's the kind of creditor why we wanted the third-party release.

*See* Transcript of Confirmation Hearing, pp. 82-83.

### F.    Plaintiffs' State Court Lawsuit

41.    On June 22, 2017 – six months after entry of the Confirmation Order that released all claims against Goldberg and the other Released Employees and Independent Contractors existing prior to September 9, 2016 and arising out of their work performed or content provided

for the Debtors' Websites – Plaintiffs filed the Complaint against the Defendants in the Supreme Court for the State of New York, County of New York.[3]

42.    The Complaint is based on Plaintiffs' allegation that the Defendants published false and defamatory statements about Plaintiffs on June 23, 2016. Complaint, ¶¶ 2 and 17-20. Thus, the alleged tortious conduct occurred before entry of the Sale Order and the closing of the sale of assets to GMG.

43.    Plaintiffs claim damages in excess of $10 million, seek compensatory and punitive damages in an amount to be determined at trial, seek an injunction prohibiting the Defendants from publishing or re-publishing the alleged defamatory statements and seek a jury trial on the Complaint. Complaint ¶¶ 49-50, 56-57, 63-64, Prayer for Relief and Jury Trial Demand.

## IV.    LEGAL ARGUMENT

### A.    The Court had Jurisdiction to Approve the Third-party Releases and Injunction, and Approval of the Releases and Injunction was Appropriate

44.    As set forth in the Confirmation Order, this Court had the authority to approve the third-party releases and injunction, and such approval of the third-party releases and injunction was appropriate. Confirmation Order, ¶ 19.

45.    The Second Circuit has recognized the appropriateness of third-party releases in limited circumstances. *See Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*), 416 F.3d 136, 141 (2d Cir. 2005) (affirming confirmation of plan with third-party releases because bankruptcy court concluded that releases were important element of plan). Non-debtor releases and exculpations "are permissible under some

---

[3]    It is unclear who is included as Does 1-20, but presumably some, if not all, of Does 1-20 are also Released Employees and Independent Contractors.

circumstances, but not as a routine matter." *In re Adelphia Commc'ns. Corp.*, 368 B.R. 140, 267 (Bankr. S.D.N.Y. 2007). Consistent with applicable Second Circuit case law, the Confirmation Order set forth specific findings that (i) unique circumstances existed to approve the Plan's third-party releases and (ii) the Injunction Provisions "are an essential means of implementing the Plan . . . ." Confirmation Order, ¶¶ 23 and 27.

46.    Indeed, Goldberg and the other Released Employees and Independent Contractors were the parties most vulnerable to liability for having done exactly what the Debtors asked of them – provide content. It was this very content, provided by Goldberg and the other Released Employees and Independent Contractors, that gave rise to the Debtors' value, which in turn resulted in the sale that funded the Plan. These facts, combined with the Released Employees and Independent Contractors' waiver of their Debtor Indemnification Obligations claims, created the unique circumstances that gave rise to the Court's approval of the third-party releases.

47.    The Confirmation Order has not been challenged or appealed, and the third-party release and injunction provisions of the Plan remain in full force and effect and, as demonstrated below, apply to the claims asserted in the Complaint.

48.    Most, if not all, of the claims that were asserted against the Debtors in these proceedings were claims similar to the ones asserted in the Complaint, *i.e.*, claims for defamation and related torts based on content posted on the Websites and creating indemnification or contribution claims against the Debtors' estates.[4]

49.    Parties in interest – including Plaintiffs – had due notice of the releases and injunction and the opportunity to be heard. In fact, the third-party releases and injunction were set forth in bold font and all capital letters in the Disclosure Statement, the Plan, the

---

[4]    Goldberg expressly reserves the right to move to dismiss the Complaint, which Goldberg believes is insufficient, and file any other appropriate motions at a later time if necessary.

Confirmation Hearing Notice and the publication notice. Confirmation Order, ¶ 22. Plaintiffs' Counsel was also aware of the Plan terms and consequences as he was an active participant throughout these proceedings.

50.    Each Released Employee and Independent Contractor, including Goldberg, provided good and valuable consideration for the releases by voting in favor of the Plan and by waiving all claims against the Debtors for Debtor Indemnification Obligations. Without the waivers, the Debtors would have been subject to substantial claims for Debtor Indemnification Obligations for claims or causes of action brought against Released Employees and Independent Contractors. Confirmation Order, ¶ 24. Goldberg and the other Released Employees and Independent Contractors relied on the releases and injunction in waiving their claims against the Debtors.

**B.    The Claims Asserted in the Complaint were Released Under the Plan**

51.    The Complaint asserts claims against Goldberg for defamation, intentional interference with prospective economic advantage and tortious interference with contractual relations and alleges compensatory and punitive damages in excess of $10 million. These are exactly the types of claims sought to be released and enjoined in the Plan, and Goldberg is exactly the type of person intended to be protected by the release. When the release set forth in Section 9.05 of the Plan is broken down into individual components, it is abundantly clear that the release applies to the claims asserted in the Complaint.

52.    First, the third-party release became effective on the Plan's effective date, which occurred on March 17, 2017.

53.    Second, Plaintiffs are holders of "Claims" against the Debtors. This is true even though Plaintiffs elected to assert the claims against Goldberg, a released party, and GMG, the

purchaser of the Debtors' assets.  The claims arose from Gawker Media publishing the Article on Deadspin.com and therefore are "Claims" against the Debtors.

54.     The release applies to any holder of a Claim who "has received or is deemed to have received distribution(s) made under the Plan."  Plan, § 9.05.  Here, Plaintiffs and Plaintiffs' Counsel had <u>actual</u> notice of the Claims Bar Date and confirmation hearing proceedings.  They also had the opportunity to file their proofs of claim and prosecute their claims against the Debtors.  Therefore, Plaintiffs are deemed to have received a distribution under the Plan and are now bound by the terms of the release.  To conclude otherwise would render the "deemed to have received" language meaningless.  Plaintiffs cannot and should not be allowed to hide behind their failure to file a claim in these bankruptcy proceedings to make an end run around the release and injunction provisions set forth in the Plan, the express terms of the Confirmation Order, and this Court's jurisdiction to implement and enforce the terms of the Plan and Confirmation Order.  As stated above, the Court considered this very scenario – the existence of creditors who did not file claims – at the December 13, 2016 confirmation hearing, s*ee* ¶ 40 above, before it approved the Plan's release and injunction provisions.  Notwithstanding their active participation in these cases – including a demand letter sent to Gawker Media during the pendency of these bankruptcy proceedings – and their receipt of notice of critical deadlines, Plaintiffs failed to file a claim or request payment in these proceedings, or otherwise object to the release.  As stated by Debtors' counsel at the Confirmation Hearing, this "kind of creditor [is] why we wanted the third-party release."  *See* Transcript of Confirmation Hearing, p. 83.

55.     The third-party release and injunction were critical to the implementation of the Plan, confirmation of which inured to the benefit of all creditors with valid and enforceable Claims.  Plaintiffs cannot excuse themselves from enforcement of the release simply because

they elected not to participate in a distribution under the Plan. If their claims had any merit, Plaintiffs could have and should have filed a proof of claim or otherwise asserted claims in the bankruptcy proceedings. Plaintiffs cannot just "lie in wait" to pursue an independent contractor who provided content to the Debtors after the fact.

56.    Third, Plaintiffs' claims fall within the scope of the release. As set forth in the Plan, a "Claim" is any claim against any of the Debtors as defined in Section 101(5) of the Bankruptcy Code which has not yet been disallowed by an order of the Bankruptcy Court or for which an order of disallowance of the Bankruptcy Court has been reversed on appeal by a Final Order of an appellate court. Plan, p. 3. At the time of confirmation, when the release was granted, Plaintiffs' Claim had not been disallowed by an order of this Court.

57.    The release broadly describes the released claims as all claims and causes of action based in any way on an act or event taking place before September 9, 2016. Plaintiffs' claims arose months earlier, as the Article was published on June 23, 2016. As Plaintiffs' claims against Goldberg arise out of content provided to the Debtors, Goldberg (prior to waiving and releasing the Debtor Indemnification Obligations) had Debtor Indemnification Obligation claims against the Debtors. *See* Plan, p. 4 (defining Debtor Indemnification Obligations).

58.    Fourth, Goldberg is a released party. The release is designed to protect current and former writers like Goldberg who (1) provided content for the Debtors' Websites, (2) had claims asserted against them for that content, and (3) therefore, had a claim against Debtor for Debtor Indemnification Obligations. *See* Plan, pp. 4 and 12 (defining Debtor Indemnification Obligations and Released Employees and Independent Contractors). Goldberg wrote the Article that forms the basis of Plaintiffs' claims and therefore he falls squarely within the definition of Released Employees and Independent Contractors. Goldberg voted in favor of the Plan and

waived any and all of his claims against the Debtors for Debtor Indemnification Obligations in exchange for the third-party release.  The release and injunction provisions were thus part of the bargained-for exchange in connection with Goldberg's waiver of his Claims against the Debtors.

59.    Here, the releases were "given in exchange for good and valuable consideration provided by the Released Employees and Independent Contractors" because they "voted in favor of the Plan and are waiving and releasing all claims against the Debtors for Debtor Indemnification Obligations, unless otherwise agreed to by the Debtors or their insurance carriers."  Confirmation Order, ¶ 24.  If Goldberg and the other Released Employees and Independent Contractors had not waived their claims, the Debtors would have been required to set aside additional reserves to address Debtor Indemnification Obligations.  With an increased reserve in place, the Plan Settlements which are the foundation on which the Plan is premised, may not have been reached and the Debtors' Plan for an orderly liquidation may not have been confirmed.

60.    Fifth, the holder of a released Claim is deemed to have forever released Goldberg and the other Released Employees and Independent Contractors.  The release is unconditional and irrevocable.

61.    The facts of this case are similar to those in *In re Philadelphia Newspapers, LLC*, another media-related bankruptcy proceeding.  In *In re Philadelphia Newspapers, LLC*, the United States Bankruptcy Court for the Eastern District of Pennsylvania enforced third-party releases approved in a plan of liquidation and barred defamation claims brought by third parties against reporters of the debtors.  *See In re Philadelphia Newspapers, LLC*, 450 B.R. 99 (Bankr. E.D. Pa. 2011).

99670.16 08/21/2017

62.     In *Philadelphia Newspapers*, third parties sought to pursue claims against writers of articles that were published post-bankruptcy, but prior to confirmation of the debtors' plan of liquidation.   Similar to the third-party release and injunction provisions of the Plan in these proceedings, the confirmed plan in *Philadelphia Newspapers* released claims and enjoined parties from bringing post-confirmation claims arising out of articles written before the effective date against the writers of those articles.   *In re Philadelphia Newspapers, LLC*, 450 B.R. at 101, 104-05.

63.     Like the Plaintiffs in these proceedings, the plaintiffs in *Philadelphia Newspapers* failed to act in any way to preserve their claims.   As a result, the *Philadelphia Newspapers* bankruptcy court held that the releases in the plan were valid and ordered the plaintiffs to dismiss their state court defamation claims with prejudice.   Additionally, the *Philadelphia Newspapers* bankruptcy court found that the plaintiffs had constructive notice of the plan and releases and should have acted sooner to protect their claims.   *See id*. at 103 ("Both Glunk and Brodie, then, had at least constructive notice of the bankruptcy case.   They could and should have acted sooner to protect  their interests.   Their failure to have done so cannot be attributed to a lack of due process.").

64.     Unlike the case in *Philadelphia Newspapers*, where the bankruptcy court upheld third-party releases against claims asserted by individuals who received <u>constructive</u> notice of the plan, here Plaintiffs had <u>actual</u> notice of the Claims Bar Date, the Plan, the Confirmation Order, the third-party releases and injunction, and still did nothing to protect their interests.

65.     The claims asserted by Plaintiffs in the Complaint are exactly the types of claims the Debtors sought to release in Section 9.05 of the Plan, and the Confirmation Order specifically found that the third-party releases in the Plan were "necessary based on the unique circumstances

here, [ ] an integral and necessary part of the Plan, and represent a valid exercise of the Debtors' business judgment." Confirmation Order, ¶ 23.

66.     While Goldberg is requesting that the Court enforce the Plan's release and injunction provisions, it should also be noted that the Complaint is fatally flawed as it fails to include an indispensable party.  Debtor Gawker Media is a necessary party to any resolution of the claims set forth in the Complaint, and these claims were not filed against Gawker Media prior to the Claims Bar Date.  Debtor Gawker Media was the operator of Deadspin.com at the time the Article was published and was deeply involved in the Article's reporting, editing and publication. *See* Claims Bar Date Order (establishing the deadline to file claims and administrative claims as September 29, 2016).  *See also Jackson v. Fenway Partners, LLC (In re Coach Am Group Holdings Corp.)*, Case No. 12-10010 (KG), Adv. Proc. No. 13-51197 (KG) (Bankr. D. Del. Oct. 23, 2013) (dismissing a complaint filed against a non-debtor for failure to join certain debtors, whose alleged unlawful actions were the subject of the adversary proceeding, as necessary and indispensable parties following the passing of the claims bar date).

67.     Based on the foregoing, Plaintiffs' claims are barred by the Plan's third-party release and injunction.

C.     **The First Amendment and Equity Support a Finding that the Claims are Released**

68.     The constitutional mandates of the First Amendment, free speech and a free press, provide further support for enforcing the release and injunction to protect Goldberg, a freelance writer and a former independent contractor of the Debtors, for claims arising out of content solicited, and posted, by Gawker Media.  As set forth in the Amicus Brief filed by the Society of Professional Journalists, the Reporters Committee for Freedom of the Press, and 19 other media organizations (the "Amicus Brief") [D.I. 547, Exhibit A] in support of granting the third-party

releases, suits against the media inherently implicate the First Amendment because they contravene "the profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open." *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964). Additionally, the Amicus Brief articulates that indemnification provisions between journalists and their employers serve to mitigate the potential chilling effect when journalists – often without independent insurance or sufficient financial resources – seek to report on issues of public importance that may also bring the risk of a defamation suit. "As a practical matter, without the promise of indemnification, even the threat of a baseless libel action may suffice to kill a reporter's pursuit of a story or place an entire topic out of bounds, rendering the First Amendment's protection of the freedom of the press a dead letter in every way that counts." Amicus Brief, at 7. Allowing the Complaint to proceed will cause irreversible harm and lead to a "chilling effect that inexorably produces a silence born of fear" when journalists, like Goldberg, face highly uncertain and potentially crippling personal liability. *See Thomas v. Bd. of Educ.*, 607 F.2d 1043, 1047 (2d Cir. 1979). Goldberg and the other Released Employees and Independent Contractors only waived their rights to indemnification in reliance on the release from potential personal liability for the work they had performed for the Debtors. The Plan's release provision is specifically designed to respect the First Amendment and protect the Released Employees and Independent Contractors from potential liability arising out of content provided to the Debtors.

69.    Equity also demands that the release be upheld. Goldberg is the type of journalist that the Plan release was and is designed to protect. When Goldberg wrote the Article for the Debtors, he was protected by the Debtors' obligation to indemnify him. After the Article was posted, Goldberg had no way to change the Article or otherwise exert any control over the

Article.  Now, the Plan has wiped clean any obligation Debtors had to Plaintiffs.  For this Court to hold that the third-party release that Goldberg received in exchange for waiving his claims for Debtor Indemnification Obligations does not apply to Plaintiffs' claims would put the entire onus of defending the Complaint on Goldberg.[5]  It would be inequitable for Goldberg to bear the burden of defending the defamation and other claims when any allegedly harmful impact (which Goldberg strongly denies exist) may have been created or heightened by Debtors.  The only reason for Plaintiffs to sue Goldberg is harassment.

**D.     The Claims Asserted in the Complaint are Barred by the Plan's Injunction**

70.     Similarly, the claims asserted in the Complaint fall within the scope of the injunction set forth in Section 9.02 of the Plan.

71.     First, the injunction took effect immediately upon entry of the Confirmation Order.

72.     Second, the injunction applies to the claims asserted in the Complaint, because Plaintiffs held Claims against the Debtors and Goldberg, one of the Released Employees and Independent Contractors.  The injunction provision confirms that it applies to Plaintiffs "whether proof of such Claims … has been filed or not."  Plan, § 9.02.

73.     Third, the injunction is permanent, unconditional and irrevocable.

74.     The injunction precludes Plaintiffs from filing the Complaint, commencing the action against Goldberg (and Does 1-20 to the extent they are Released Employees and Independent Contractors), proceeding in a manner inconsistent with the Plan and taking any action that interferes with the implementation or consummation of the Plan.

---

[5]     The cost of this Motion is significant.  As set forth above, Plaintiffs should be required to compensate Goldberg for the attorneys' fees incurred in having to bring this Motion before this Court.  Plaintiffs were well aware that the state court suit was barred by the third-party release and injunction provisions at the time they filed their Complaint.

99670.16 08/21/2017

### E.  The Writers, the Debtors and the Court Clearly Intended that the Third-party Release and Injunction Apply to Individuals Like Goldberg

75.     In the Writers' Response, Goldberg and other Released Employees and Independent Contractors advocated for the third-party release and injunction in exchange for the waiver of their Claims against the Debtors because of the significant potential liability they would face if sued over the services performed or content provided at the request and direction of the Debtors.

76.     The Debtors recognized the contributions of Goldberg and the Released Employees and Independent Contractors and the value to the Debtors' estates from waiver of the Debtor Indemnification Obligations.  In support of confirmation, Debtors' counsel highlighted the critical need for the third-party releases and injunction and argued vigorously in support of the releases and injunction.  *See* Transcript of Confirmation Hearing, pp. 69-75.

77.     As discussed above, the Confirmation Order found that the releases are "an integral and necessary part of the Plan" and are in the best interests of the Debtors, the Debtors' estates and all holders of Claims.  Confirmation Order, ¶ 23.

### F.  Plaintiffs' Complaint is Barred by the Doctrine of *Res Judicata*

78.     The Complaint and Plaintiffs' claims are also barred by the doctrine of *res judicata*.  The doctrine of *res judicata* bars litigation if an earlier decision was "(i) a final judgment on the merits, (ii) by a court of competent jurisdiction, (iii) in a case involving the same parties or their privies, and (iv) involving the same cause of action." *Jackman v. Tese-Milner (In re Aiolova)*, 496 B.R. 123, 130 (Bankr. S.D.N.Y. 2013) (*quoting EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007)); *see also Sure-Snap Corp. v. State St. Bank & Trust Co.*, 948 F.2d 869, 873 (2d Cir. 1991) (finding that a confirmation plan binds

"its debtors and creditors as to all the plan's provisions, and all related, property or non-property based claims which could have been litigated in the same cause of action").

79.    Here, the first element is satisfied because the Confirmation Order is a final judgment on the merits. *See In re Residential Capital, LLC*, 508 B.R. 838, 846 (Bankr. S.D.N.Y. 2014) ("Confirmation of a plan operates as a final judgment for *res judicata* purposes."); *In re Indesco Int'l, Inc.*, 354 B.R. 660, 665 (Bankr. S.D.N.Y. 2006) ("[T]he confirmation order constitutes a final judgment on the merits with *res judicata* effect").

80.    The second element is also met because the Confirmation Order was issued by a court of competent jurisdiction. *See, e.g.*, *EDP Med. Computer Sys.*, 480 F.3d at 624 (explaining that *res judicata* "applies with full force to matters decided by the bankruptcy courts"); *see also Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 89 (2d Cir. 1997) ("[T]he bankruptcy court [is] competent to confirm a plan of reorganization[.]").

81.    The third element of *res judicata* is satisfied as well.  Plaintiffs, as creditors, received notice of the confirmation proceedings and had the opportunity to be heard.  Thus, the privity requirement is met even though Plaintiffs did not to object to confirmation of the Plan. *See, e.g., Aiolova*, 496 B.R. at 131 ("In the bankruptcy context, all creditors of a debtor have the opportunity to be heard in proceedings within that debtor's case.  As such, for *res judicata* purposes, a creditor is a party in interest to orders entered in the administration of the bankruptcy proceeding, even if the creditor fails to object or participate in a matter."); *see also Nicholas v. Oren (In re Nicholas)*, 457 B.R. 202, 218-19 (Bankr. E.D.N.Y. 2011) ("When considering the third element of *res judicata*, courts look to whether 'the party against whom claim preclusion is sought has, in essence, already received his or her day in court, and the application of *res judicata* would not alter this conclusion.'" (*quoting Pharr v. Evergreen Garden, Inc.*, 123 Fed.

App'x 420, 424 (2d Cir. 2005))); *In re Henderberg*, 108 B.R. at 411 ("[T]he Order of Confirmation adopting the terms of the Plan is a final judgment for purposes of *res judicata* on all matters relevant to the confirmation, whether raised or not . . . ."); *In re Arcapita Bank B.S.C.(c)*, 520 B.R. at 21 ("If a party had adequate information about prospective claims prior to the commencement of a bankruptcy proceeding, that is evidence it could have brought the action in the first instance.").

82.     The fourth element is satisfied as Plaintiffs' claims involve the same cause of action.   "Two proceedings contain the same cause of action where the same transaction, evidence, and factual issues are involved in both cases." *Aiolova*, 496 B.R. at 131; *see also Sure-Snap Corp.*, 948 F.2d at 875 ("[T]he same cause of action includes, for *res judicata* purposes, 'all the remedial rights of the plaintiff against the defendant growing out of the relevant transaction'[.]").

83.     The Complaint asserts claims that Plaintiffs could have raised, and should have raised, by filing a proof of claim and/or objecting to confirmation of the Plan.  *See Aiolova*, 496 B.R. at 132 *quoting Hendrick v. Avent*, 891 F.2d 583, 587 (5th Cir. 1993) ("[T]he proper medium for a challenge to the original bankruptcy court's order is through a direct challenge of that order.  The collateral attacks brought later are barred by *res judicata*.").

84.     For whatever reason, Plaintiffs did not file a proof of claim, object to confirmation of the Plan, or challenge the Plan's release and injunction provisions.  Regardless of the reason – whether Plaintiffs slept on their rights, schemed to attempt to circumvent the Court's jurisdiction as set forth in the Plan and Confirmation Order, sought to deceive a state court that does not have knowledge of these complex proceedings or simply chose to brazenly ignore the clear terms and import of the Plan's release and injunction – the doctrine of *res*

*judicata* precludes Plaintiffs from now asserting the claims in the Complaint. The claims were released under the Plan, and Plaintiffs are enjoined from asserting them now.

## G.   This Court Should Enforce the Releases and Injunction in the Plan

85.     Plaintiffs did not, at any time during the Debtors' bankruptcy proceedings, object to confirmation of the Plan or object to the third-party release or the injunction provisions of the Plan. Plaintiffs attempt to circumvent the terms of the Confirmation Order and the jurisdiction conferred on this Court by the Bankruptcy Code, the Plan and the Confirmation Order by filing the Complaint in New York state court and asserting released claims against Goldberg (and to the extent they are Released Employees and Independent Contractors, Does 1-20) in violation of the Plan.

86.     Through the Plan and Confirmation Order, the Bankruptcy Court retained exclusive jurisdiction of the Debtors' post-confirmation bankruptcy proceedings, including all disputes in connection with the Plan, execution and implementation of the Plan, interpretation and enforcement of the Plan and any request for relief from the Plan Interference Injunction. Plan, § 8.01.

87.     This Court – which approved the releases and injunction – not only has the authority to enforce the releases and injunction, but is also the most appropriate forum to rule on these issues because enforcement is "sufficiently close in time to confirmation of the Plan and sufficiently critical to the integrity of the Plan's structure." *In re Residential Capital, LLC*, 512 B.R. 179, 189 (S.D.N.Y. 2014); *see also In re Chateaugay Corp.*, 201 B.R. 48, 66 (Bankr. S.D.N.Y. 1996), *aff'd in part,* 213 B.R. 633 (S.D.N.Y. 1997) (stating that bankruptcy courts have the power to enjoin lawsuits against non-debtor third parties if such suits affect the enforcement of the bankruptcy court's orders).

88.     Based on the foregoing, this Court should enforce the terms of the Plan's release and injunction provisions, and bar and enjoin Plaintiffs from prosecuting the claims asserted in the Complaint.

**H.     Even if the Court were to Determine that the Claims Asserted in the Complaint were not Released, Plaintiffs Must Still Obtain Leave of this Court to File and Prosecute the Complaint**

89.     Even if the Court determines that the claims asserted in the Complaint do not fall within the scope of the release (which Goldberg vigorously disputes), Plaintiffs must still seek relief from the Plan's injunction provision to assert and prosecute the claims.

90.     Section 9.02 of the Plan states: "provided, however, that … the Bankruptcy Court may provide relief from the foregoing injunction with respect to claims, obligations, suits, judgments, damages, debts, rights, remedies, causes of action, and liabilities not otherwise released under Section[] 9.05 of this Plan."  Plaintiffs have not sought relief from the injunction from this Court as provided in the Plan; rather they ignore the Confirmation Order and the Plan and filed the Complaint asserting claims in state court in violation of the Plan's injunction provisions.

91.     As discussed more fully in the preceding section, the Court has authority to interpret and enforce its orders and is uniquely situated to do so.

92.     Plaintiffs must be held accountable for their brazen disregard for the Confirmation Order and the Court's jurisdiction, and the injunction must be enforced.

**V.     NOTICE**

93.     Notice of this Motion has been provided to Plaintiffs and Plaintiffs' Counsel and to other parties in interest in accordance with the *Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures* [D.I. 93].  Goldberg submits that, in view of the facts and circumstances, such notice is sufficient

-30-

and no other or further notice need be provided.

## VI.    <u>NO PREVIOUS REQUEST</u>

94.    No previous request for the relief sought herein has been made by Goldberg to this or any other court.

## VII.    <u>CONCLUSION</u>

95.    For the reasons set forth above, this Court should enforce the Confirmation Order and the Plan's release and injunction provisions and require Plaintiffs to dismiss the Complaint. Plaintiffs' claims are the type of claims from which the Plan sought to protect the released parties, and Goldberg is the type of person whom the Plan sought to release. Plaintiffs opted to ignore these bankruptcy proceedings, the claims allowance process and the confirmation proceedings and now seek to bring claims that were released and enjoined against an individual who is protected by the Plan's release and injunction provisions.

96.    The Confirmation Order specifically found that the release and injunction are critical to implementation of the Debtors' Plan and that unique circumstances warranted their approval. Plaintiffs cannot excuse themselves from enforcement of the release because they elected not to participate in a distribution under the Plan. This Court must preserve the integrity of its Confirmation Order by enforcing the Confirmation Order's provisions against Plaintiffs and directing Plaintiffs to dismiss the Complaint.

97.    Goldberg reserves the right to amend or supplement this Motion based upon any facts or arguments that come to light prior to the Court's entry of an Order on this Motion.

**WHEREFORE**, Goldberg respectfully requests that the Court enter an Order substantially in the form attached hereto as <u>Exhibit D</u>, granting the relief requested herein and

99670.16 08/21/2017

such other and further relief, including awarding legal fees and costs, as the Court deems just and

appropriate under the circumstances.

Dated:  August 21, 2017

SAUL EWING LLP

By:  */s/ Sharon L. Levine*
Sharon L. Levine
Dipesh Patel
1037 Raymond Boulevard
Suite 1520
Newark, NJ 07102
Telephone: (973) 286-6713
Facsimile: (973) 286-6821
slevine@saul.com
dpatel@saul.com

-and-

555 Fifth Avenue
Suite 1700
New York, NY 10017
Telephone:  (212) 980-7200

*Attorneys for Ryan Goldberg*

-32-