# <u>EXHIBIT B</u>

## June 27, 2016 Demand Letter



**HARDER
MIRELL &
ABRAMS**
LLP

132 S. RODEO DRIVE, SUITE 301
BEVERLY HILLS, CA 90212
424.203.1600 · WWW.HMAFIRM.COM

June 27, 2016

**VIA E-MAIL AND
CERTIFIED U.S. MAIL**
Heather Dietrick, Esq.
General Counsel and President
GAWKER MEDIA, LLC
114 5th Ave, Second Floor
New York, NY 10011-5611
Email: HDietrick@Gawker.com

**VIA E-MAIL**
Mr. Ryan Goldberg
Email: Ryan.Goldberg@gmail.com

Re:    **Pregame.com, RJ Bell – Demand for Retraction and Apology**

Dear Ms. Dietrick and Mr. Goldberg:

This law firm is litigation counsel for Pregame.com ("Pregame"), and its majority owner Randall James Busack, professionally known as RJ Bell ("Bell"), in connection with the libelous story posted at Deadspin.com on or about June 23, 2016, titled: "How America's Favorite Sports Betting Expert Turned a Sucker's Game Into An Industry" (the "Story"). The Story makes numerous false and defamatory statements about my clients which convey a highly inaccurate and deceiving portrayal of both Pregame and Bell, as discussed below. Your actions constitute, among other claims, libel, false light invasion of privacy, intentional infliction of emotional distress and intentional interference with actual and prospective business relations. Demand is hereby made that you publish a full, fair and conspicuous retraction, correction and apology as to each false and defamatory statement in the Story, as explained herein.

By way of background, Pregame is a two-time, Inc. 5000 company, and is the largest sports betting media company compliant with U.S. law. Pregame has earned an A+ rating from the Better Business Bureau for the past 7 consecutive years. Pregame and Bell have been vetted by and earned the trust of nearly every major media outlet over the past decade.

There are **numerous** false and defamatory claims and statements in the Story. Set forth below is an extensive, though not comprehensive, list of same.

As a preliminary matter, Bell had numerous written communications with the author, Ryan Goldberg ("Goldberg"), who made several inaccurate statements in writing to Bell about Pregame. Bell engaged in these written communications in an effort to fully advise Goldberg of the true facts about Pregame and Bell, to help ensure a fair and accurate story. However, Goldberg ignored a great deal of the information that Bell provided him, which led to numerous

{00068798;1}

Heather Dietrick, Esq. and Mr. Ryan Goldberg
June 27, 2016
Re:  RJ Bell, Pregame.com
Page 2

inaccurate (and defamatory) statements in the Story, and an overall inaccurate and unfair piece about Pregame and Bell.  Bell also offered to answer any questions that Goldberg might have on background.  Goldberg (in consultation with Deadspin/Gawker) refused to allow Bell to speak on background.  Instead, it appears Goldberg and Deadspin/Gawker simply wanted to write and publish a "hit piece" about Pregame and Bell—notwithstanding the fact that, after one full year of research, Goldberg had found nothing substantively negative about them.

## FALSE AND DEFAMATORY CLAIMS AND STATEMENTS IN THE STORY

**False Claim #1a:**  Pregame, Bell and entities with common ownership or control (collectively referred to herein also as "Pregame") are currently or were recently paid by sportsbooks.

**False Claim #1b:**  Pregame currently or was recently paid by sportsbooks based upon any bettor's losses.

### False Statements re #1a and #1b

"It's a can't-miss business plan, and it pays off twice. First when customers buy the picks, and again when they fork over their money to sportsbooks on those losing bets. This might explain why Pregame is so generous with discounts like 'bulk dollars' and half-price coupons, and why Bell trumpets the savings of subscriptions over single-game purchases. Pregame has every incentive to keep buyers in the fold, and keep them betting."

"And tout sites are paid lavishly for those coveted referrals. In light of this, what Pregame tells would-be pick-sellers makes sense: Winning really isn't the issue. Losing is."

These statements claim that Pregame both is being paid by sportsbooks, and also Pregame benefits from its customers losing.  Both are false claims.  The practice of benefiting from customers losing is considered by many in the industry to be particularly egregious.

### True Facts re: #1a and #1b

Pregame has had no financial dealings with any online sportsbook since 2008. This includes no advertising revenue and no revenue based upon a percentage of bettor's losses.

For the past four years, Pregame has not even received any revenue to promote any website that promotes sportsbooks.

No evidence is offered by the Story to disprove these facts.

Heather Dietrick, Esq. and Mr. Ryan Goldberg
June 27, 2016
Re:  RJ Bell, Pregame.com
Page 3


**False Claim #2a**:  Pregame has (or had) ownership and/or operational control of PregameAction.com.

**False Claim #2b**:  Pregame has (or had) ownership and/or operational control or any business dealings with SharpBettor.ag.

**False Claim #2c**:  Pregame has ownership and/or operational control of any online sportsbook related "other services."

**False Statements re: #2a, #2b, and #2c**

"Bell's comment specifically mentioned Pregame.com. It did not mention Pregame Action or Sharpbettor.ag or any of the other services run by Bell, services through which Pregame customers are funneled when they want to deposit money at sportsbooks."

**True Facts re: #2a, #2b, and #2c**

Pregame does not have, nor has it had, any ownership or operational control of PregameAction.com.  The Story alludes to this fact in one place, stating: "Pregame Action's website was operated by Big Juice Media, a marketing company registered in Port Coquitlam, British Columbia." Yet, in a different place in the Story, it contradicts this statement and makes the false statement that Bell runs Pregame Action.

Pregame does not have, nor has it had, any ownership, operational control or business dealings with SharpBettor.ag.

Pregame also has no ownership or operational control of any online sportsbook related "other services."

No evidence is offered by the Story to contradict these true facts.

Pregame provided Goldberg an on-the-record statement to clarify his confusion regarding PregameAction.com Goldberg confirmed receipt of the statement, yet disregarded it, and printed none of it.  Goldberg claimed the statement did not address the key questions, but it addressed **all** of the key questions.  The written statement reads:

Pregame.com had an advertising deal with a website owned and operated by a Canadian media company. They named the website PregameAction to highlight having a deal with us. They paid Pregame.com to advertise at our site. They also purchased Pregame Best Bet Credits to give away as part of their promotions – similar to the way companies will purchase bulk magazine subscriptions to give away. The Canadian media company had complete control and total ownership of their site. Their site advertised multiple products and services, including Sports

Heather Dietrick, Esq. and Mr. Ryan Goldberg
June 27, 2016
Re:  RJ Bell, Pregame.com
Page 4

Authority and the NFL's official merchandising shop – and they also promoted online sportsbooks, which is legal in Canada. As an added layer of caution, the footer of their site persistently urged visitors to check on legality in other jurisdictions. Pregame received the final advertising payment from the Canadian media company over four years ago. With the benefit of hindsight, having an advertising deal with a company that named its site PregameAction could have caused some confusion. What's certain is that our insistence on always following the letter of the law has cost Pregame multiple millions of dollars in direct sportsbook revenue. Money our major competitors gladly gobbled up. Pregame has had no financial dealings with any online sportsbook since 2008. Not a single penny. Pregame explored such potential deals over the years, but always ultimately decided to not even chance any gray areas.

**False Claim #3:**  The records published in the Story and attributed to Pregame's pick sellers are falsely presented as accurate.

**False Statements re: #3**  The false statements are the inaccurate records themselves, presented in sensational graphs, which were tailored to be spread virally, and were spread virally.

**True Facts re: #3**

These inaccurate records underestimate the profits of multiple Pregame Pros—due to calculation errors.  If calculated correctly, the records would reflect far more profit.

The records' site-wide pick results also are depressed by combining all results without accounting for the real-world fact that picks on the same game from different Pros will often be opposite sides.  Pregame fully refunds any customer who buys opposite sides of the same game. In the real-world, a customer often passes a game with conflicting picks. A customer would never bet both sides, which would result in automatically losing the sportsbook commission. This way, that would never happen, is precisely how the Story assumes it does happen.  That guaranteed losing approach is a tremendous unfair drag on the aggregated results.

An additional deception in the Story is failing to make clear which Pros are currently active with Pregame. The reason for this deception is obvious: a majority of Pregame's **active** handicappers are shown to be profitable—even using the Story's inaccurately depressed results. Yet, to bolster the Story's false narrative, the active pick sellers are deceptively mixed with pick sellers who have not been with the site for years.

**False Claim #4:**  The Pregame pick expense estimates published in the Story are falsely presented as accurate.

**False Statements re: #4**  The false statements are the inaccurate records themselves, presented in sensational graphs, which were tailored to be spread virally, and were spread virally.

Heather Dietrick, Esq. and Mr. Ryan Goldberg
June 27, 2016
Re:  RJ Bell, Pregame.com
Page 5

### True Facts re: #4

In the case of daily buyers, the Story's estimates of pick expenses are at times at least 400% inflated.  For example, they assume that five picks (two 3*s, two 2*s, and one 1*) released on a day would cost $60. The fact is, no day's picks from any Pro at Pregame costs even **half** of that amount. And the assumption also does not factor in discounts, which are common. For example, Pregame's Bulk Dollar program provides a 50% discount.  So, for a daily buyer, the Story doubled the price twice—what the Story claims would cost $60, would actually cost only $15.

In the case of subscription buyers, they can easily pay less than $3 per day for complete access to a pick seller, thus, in those common cases, the Story overestimates cost by **20 times**— what the Story estimates would cost $60, actually costs only $3.

### DAMAGES

The Story falsely claims that Pregame and Bell engaged in deceptive business practices— claims that are provably not true.  Pregame earns millions of dollars per year.  Much of its revenue is based upon its hard earned trust with its customers, and being rightly perceived as honest in the eyes of the public.  Moreover, Pregame and Bell have earned positive coverage in the media, which leads to positive public attention, and with it, increased customers and revenue.

The Story, which is based on false statements and claims of alleged deceptive business practices, has caused and will continue to cause, a loss of positive exposure in the media, and a significant decrease in the number of customers and amount of revenues. In fact, a main premise of the Story was how much Pregame and Bell have benefited from the good reputation the Story has unfairly attempted to destroy.  Thus, significant damages as a result can be easily proven, if and when necessary.

In connection with damages, Pregame and Bell have achieved a very high standing with the media, which threatens to be severely harmed, if not destroyed, by the false and defamatory statements in the Story.  Some examples of their high standing with the media include:

RJ Bell of Pregame.com is the only sports bettor on Forbes' list of Gambling Gurus and has been deemed a "Las Vegas maven" by *USA Today*.  Bell is a former columnist for ESPN.com and Grantland, a solo presenter at South By SouthWest, an expert witness for the U.S. District Court, and has been featured in a *New York Times Magazine* cover story.

Bell's TV appearances include SportsCenter, Outside The Lines, First Take, CNN, CNBC, Fox Sports, Fox Business, CBS This Morning, CBS Evening News, and Nightline.

Heather Dietrick, Esq. and Mr. Ryan Goldberg
June 27, 2016
Re:  RJ Bell, Pregame.com
Page 6

Bell's radio show appearances include Dan Patrick, Colin Cowherd, Scott Van Pelt, Doug Gottlieb, Kevin & Bean, ESPN's NFL Countdown to Kickoff, and NPR.

Bell's content has been featured by Wall Street Journal, Bloomberg, Yahoo, Newsweek, AP, New York Times, LA Times, Maxim, Pardon the Interruption, Rick Reilly, Sports Nation, Mike & Mike, Jim Rome and Sports Illustrated.

## DEMAND

Notwithstanding their claims for substantial damages, Pregame.com and RJ Bell are willing to resolve this matter amicably if Goldberg and Deadspin/Gawker immediately publish a full, fair and conspicuous retraction, correction and apology as to each false and defamatory statement in the Story, as explained herein.  Failure to publish same will likely result in immediate litigation and, should that occur, my clients would pursue all of their legal claims, causes of action and remedies, including without limitation compensatory damages and punitive damages.

## WRITTEN COMMUNICATIONS BETWEEN BELL/PREGAME AND GOLDBERG

The following is a summary of the written communications between Bell and Goldberg, which gives additional context to the foregoing issues:

## June 13, 2016

Goldberg emails Bell, asking for an interview.  Bell asks Goldberg to instead send him the questions in writing.

## June 14, 2016

Goldberg emails Bell 17 questions—all of them very negative.  Bell responds that, due to the tenor of the questions, Bell would reply in a single statement.  Bell also states that he had spoken with two friends who work as investigative journalists and they stressed the importance of the entire communication being documented in writing, and they also emphasized that journalistic standards dictate the inclusion in the story of Bell's on-the-record reply to his request.  Mr. Bell provided that written statement, which was published in the Story.

Bell also writes: "[I'm] willing to offer you some guidance on background.  This most certainly would assist you in avoiding multiple factual errors stated and implied by your questions posed to me."

## June 15, 2016

Goldberg confirms receipt of the written statement, and states: "Deadspin and I are going to decline your offer to speak on background. We want to run a fair and accurate story and want

Heather Dietrick, Esq. and Mr. Ryan Goldberg
June 27, 2016
Re:  RJ Bell, Pregame.com
Page 7

to give you the opportunity to address the reporting that concerns you and Pregame, but we need to insist that you publicly stand behind anything you have to say."

Goldberg also addresses how damning he believes his PregameAction report to be, and encourages Bell to address that topic on the record because "it's in everyone's best interest that this story be accurate".

Bell replies that Goldberg's "misunderstandings about PregameAction are significant. I would be willing to have the Pregame Executive who was key to that deal (he's still with the company) make a factual statement on-the-record if you'll include it in the story. His insight will most certainly prevent you from making significant errors."

Goldberg asks to call the Pregame executive.

Bell states that he discussed his refusal to accept additional information on background with a few of his journalist friends, and that the consensus opinion was that Goldberg had "made a clear mistake".

Bell further states:  "I would be willing to have a Pregame Executive with unique insight into the PregameAction deal (he's still with the company) make a written statement on-the-record if you'll include it in the story. His insight will most certainly prevent you from making significant errors."

Goldberg agrees, but incorrectly repeats back Bell's proposed terms.

Bell responds:  "To avoid any additional misunderstanding, I need your clear agreement that the PregameAction written statement will be include[d] in your article in its entirety. You have Pregame's commitment that the comment will be of reasonable length – only long enough to address the topics raised by your questions. I am surprised that you consider PregameAction noteworthy, which implies a fundamental misconception, so it's important to make sure all the salient facts are included."

Goldberg responds that he cannot assure publishing something he has not seen.

Bell states:  "The minimum I would need is for us to agree that you would either include the comment fully or reject it. I am making this concession because I am confident that if your intention is to be fair you'll accept it whole once you see the value provided. Though I need to protect against the possibility of parts of it being framed in an unfair way."

Goldberg responds: "On the advice of the counsel at Deadspin, I can't agree to make a deal over, or give assurances to, publish something that I haven't seen yet."

Heather Dietrick, Esq. and Mr. Ryan Goldberg
June 27, 2016
Re:  RJ Bell, Pregame.com
Page 8

Bell replies: "I think you misunderstand. I'm saying we provide the statement. You get to CHOOSE to include it or not. But if you do include it, you can't edit it. But you have total power not to include any of it."

Goldberg replies that this would be fine.

Bell replies that he accepts.

## June 16, 2016

Pregame's Mark Hoover emails Goldberg the written statement.

Bell states to Goldberg: "Instead of making any additional on-the-record statements, I feel as if making these statements publicly would be better. If you were confused about these matters, others might also be confused … and I don't want that. Hopefully this info will fill in some blanks for you."

Bell includes this link: http://pregame.com/pregame-forums/f/14/t/1494832.aspx

## June 23, 2016

The Story is published.  Bell emails Goldberg:

"This statement is a lie: 'It did not mention Pregame Action or Sharpbettor.ag or any of the other services run by Bell, services through which Pregame customers are funneled when they want to deposit money at sportsbooks.'  I do not and have never run Pregame Action or Sharpbettor.ag. Pregame (or any company I am associated) with has never promoted Sharpbettor.ag ever.  Pregame or any company I am associated with stopped promoting Pregame Action years ago, and have not received money from them in over 4 years. This is now a legal matter. This false statement is causing my company and myself damage. Be aware that every minute this false statement is posted it adds to the damage. Think if you can defend this statement in court. I promise you will have to. Randall Busack"  [Part of this statement was added to the Story in an update.]

Bell emails Goldberg again:  "I once again request that you remove any reference in your story to Pregame or me personally having any direct financial relationships since 2008 with any online sportsbooks. That is not true. I also request that you remove any reference to Pregame or me personally having any ownership or operational control over PregameAction.com. That is not true. I also request that you remove any reference to Pregame currently making any money – directly or indirectly – from online sportsbooks. That is not true. Every minute these lies (among others) remain published, the damages increase.  Every page view from the homepage image = more damages.  Please stop. The case will go forward either way, but you can limit your damages."

Heather Dietrick, Esq. and Mr. Ryan Goldberg
June 27, 2016
Re:  RJ Bell, Pregame.com
Page 9

      This letter is not intended, and should not be construed, as a complete expression of my clients' factual or legal positions with respect to this matter.  Nothing contained in or omitted from this letter is intended, and should not be construed, as a waiver, relinquishment, release or other limitation upon any legal or equitable claims, causes of action, rights and/or remedies available to my clients, all of which are hereby expressly reserved.

      We look forward to your immediate response to this letter.

      Very truly yours,

      CHARLES J. HARDER Of
**HARDER MIRELL & ABRAMS LLP**

cc:  Mr. RJ Bell (via email)