**Hearing Date and Time: September 28, 2017 at 10:00 a.m. (Eastern Time)**
**Response Deadline: September 5, 2017 at 4:00 p.m. (Eastern Time)**

**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Peter M. Gilhuly, Esq.[1]
Adam E. Malatesta, Esq. (*pro hac vice* admission pending)
Shawn P. Hansen, Esq. (*pro hac vice* admission pending)
Email: Peter.Gilhuly@lw.com
Email: Adam.Malatesta@lw.com
Email: Shawn.Hansen@lw.com

**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Thomas G. Hentoff, Esq. (*pro hac vice* admission pending)
Email: THentoff@wc.com

*Counsel for Gizmodo Media Group, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                :

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Gawker Media LLC, *et al.*,[2] | : | Case No. 16-11700 (SMB) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------ x

### NOTICE OF HEARING ON MOTION OF GIZMODO MEDIA GROUP, LLC TO ENFORCE THE SALE ORDER AND TO BAR CERTAIN PLAINTIFFS FROM PROSECUTING THEIR STATE COURT ACTIONS

---

[1]     Mr. Gilhuly has previously been admitted to represent Univision Communications, Inc. *See Order Granting Admission to Practice,* Pro Hac Vice [Docket No. 195]. Mr. Gilhuly's *Motion for Admission to Practice, Pro Hace Vice,* to represent Gizmodo Media Group, LLC is currently pending.

[2]     The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10020. Gawker Hungary Kft's mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10020.

**PLEASE TAKE NOTICE** that on August 21, 2017, Gizmodo Media Group, LLC ("GMG") filed the *Motion of Gizmodo Media Group, LLC to Enforce the Sale Order and to Bar Certain Plaintiffs from Prosecuting Their State Court Actions* (the "Motion"), which includes the reasons underlying the relief requested.

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "Hearing") on the relief requested in the Motion will be held before the Honorable Stuart M. Bernstein, in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 723, New York, New York 10004 (the "Court"), on **September 28, 2017 at 10:00 a.m. (ET)**.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Motion and copies of all other documents filed in the chapter 11 cases may be obtained free of charge by visiting the website of Prime Clerk LLC at http://cases.primeclerk.com/gawker.   You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections ("Objections") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), shall set forth the basis for the response or objection and the specific grounds thereon, and shall be filed electronically with the Court on the docket of *In re Gawker Media LLC*, Case No. 16-11700 (SMB), in accordance with General Order M-399 by registered users of the Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website for the Court), with a hard copy to be delivered directly to chambers pursuant to Local Bankruptcy Rule 9070-1, and served so as to be actually received no later than **September 5, 2017 at 4:00 p.m. (ET)** (the "Objection

Deadline"), upon: (i) the Debtors, Gawker Media LLC, c/o Opportune LLP, 10 East 53rd Street, 33rd Floor, New York, NY 10022, Attn: William D. Holden, Chief Restructuring Officer (WHolden@opportune.com) and Heather Dietrick, Esq. (heather@gawker.com); (ii) counsel for the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Gregg M. Galardi, Esq. (Gregg.Galardi@ropesgray.com), Michael S. Winograd, Esq. (Michael.Winograd@ropesgray.com) and Kristina K. Alexander, Esq. (Kristina.Alexander@ropesgray.com); (iii) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Greg M. Zipes, Esq. and Susan Arbeit, Esq.; (iv) the Internal Revenue Service, 2970 Market Street, Philadelphia, PA 19104, Attn: Centralized Insolvency Operation (mimi.m.wong@irscounsel.treas.gov); (v) the United States Attorney for the Southern District of New York, 86 Chambers Street, 3rd Floor, New York, NY 10007, Attn: Bankruptcy Division (David.Jones6@usdoj.gov; Jeffrey.Oestericher@usdoj.gov; Joseph.Cordaro@usdoj.gov; Carina.Schoenberger@usdoj.gov); (vi) counsel to the Official Committee of Unsecured Creditors, Simpson Thacher & Bartlett, 425 Lexington Avenue, New York, NY 10017, Attn: Sandeep Qusba, Esq. (squsba@stblaw.com) and William T. Russell, Esq. (wrussell@stblaw.com); (vii) counsel to US VC Partners, LP, as Prepetition Second Lien Lender, Latham & Watkins LLP, at both 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: David S. Heller (david.heller@lw.com) and 885 Third Avenue, New York, NY 10022, Attn: Keith A. Simon, Esq. (keith.simon@lw.com); (viii) counsel to Cerberus Business Finance, LLC, as DIP Lender, Schulte Roth & Zabel, LLP, 919 Third Avenue, New York, NY 10022, Attn: Adam Harris, Esq. (adam.harris@srz.com) and Frederic Ragucci, Esq. (frederic.ragucci@srz.com ); (ix) Harder Mirell & Abrams LLP, 132 S. Rodeo Dr., Suite 301,

Beverley Hills, CA 90212, Attn: Charles J. Harder, Esq. (charder@hmafirm.com); (x) Randall

Busack (aka RJ Bell), c/o Harder Mirell & Abrams LLP, 132 S. Rodeo Dr., Suite 301, Beverley

Hills, CA 90212, Attn: Charles J. Harder, Esq. (charder@hmafirm.com); (xi) Pregame LLC dba

Pregame.com, 5860 S. Pecos Rd. #400, Las Vegas, NV 89120, Attn: Randall J. Busack; and (xii)

those persons who have formally appeared and requested service in these cases pursuant to

Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE** that if no Objections to the Motion are timely

filed and served in accordance with this notice, the Court may, following the Objection Deadline,

enter the proposed order submitted by GMG, granting the Motion, with no further notice or

opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned

from time to time without further notice other than an announcement of the adjourned date or

dates at the hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the

Hearing and failure to appear may result in relief being granted or denied upon default.


Dated:          New York, New York
                August 21, 2017

                                    Respectfully Submitted,

                                    LATHAM & WATKINS LLP

                                    /s/ Peter M. Gilhuly

                                    Peter M. Gilhuly, Esq.
                                    Adam E. Malatesta, Esq. (*pro hac vice* admission
                                    pending)
                                    Shawn P. Hansen, Esq. (*pro hac vice* admission
                                    pending)
                                    355 South Grand Avenue, Suite 100

Los Angeles, California 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email: Peter.Gilhuly@lw.com
Email: Adam.Malatesta@lw.com
Email: Shawn.Hansen@lw.com

**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Thomas G. Hentoff, Esq. (*pro hac vice* admission pending)
Email: THentoff@wc.com

*Counsel for Gizmodo Media Group, LLC*

**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Peter M. Gilhuly, Esq.[1]
Adam E. Malatesta, Esq. (*pro hac vice* admission pending)
Shawn P. Hansen, Esq. (*pro hac vice* admission pending)
Email: Peter.Gilhuly@lw.com
Email: Adam.Malatesta@lw.com
Email: Shawn.Hansen@lw.com

**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Thomas G. Hentoff, Esq. (*pro hac vice* admission pending)
Email: THentoff@wc.com

*Counsel for Gizmodo Media Group, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------- x
                                                              :
In re:                                                        :        Chapter 11
                                                              :
Gawker Media LLC, et al.,[2]                                  :        Case No. 16-11700 (SMB)
                                                              :
                              Debtors.                        :        (Jointly Administered)
------------------------------------------------------------- x
```

## MOTION OF GIZMODO MEDIA GROUP, LLC TO ENFORCE
## THE SALE ORDER AND TO BAR CERTAIN PLAINTIFFS FROM
## PROSECUTING THEIR STATE COURT ACTIONS

---

[1]    Mr. Gilhuly has previously been admitted to represent Univision Communications, Inc. *See Order Granting Admission to Practice,* Pro Hac Vice [Docket No. 195]. Mr. Gilhuly's *Motion for Admission to Practice, Pro Hace Vice,* to represent Gizmodo Media Group, LLC is currently pending.

[2]    The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10020. Gawker Hungary Kft's mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10020.

# TABLE OF CONTENTS

**Page**

I.   Introduction ...........................................................................................................................1

II.   Jurisdiction and Venue .........................................................................................................2

III.   Factual Background ...............................................................................................................3

    A.   The Bankruptcy Cases and the Civil Suit ................................................................3

    B.   The Sale Order .........................................................................................................9

    C.   The APA .................................................................................................................10

IV.   Relief Requested .................................................................................................................12

V.   Argument .............................................................................................................................13

    A.   The Court Has Jurisdiction to Issue an Order to Enforce the Provisions of the Sale Order and the APA and to Enjoin the Prosecution of the Civil Suit. .......................................................................................................................13

    B.   The Plaintiffs Had Notice of the Sale. ...................................................................15

    C.   The Plaintiffs' Causes of Actions Asserted Against GMG in the Civil Suit Are Barred by the Sale Order and the APA. ..........................................................15

    D.   The Sale Order Is a Final Judgment and All Issues that Could Have Been Raised as Part of the Sale Are Barred by the Doctrine of *Res Judicata*. ..............18

    E.   The Single Publication Rule Bars the Plaintiffs' Claims. ......................................21

    F.   The Court Should Follow the Ruling in *In Re Philadelphia Newspapers*. ............23

    G.   The Plaintiffs' Tortious Interference Claims Merely Duplicate Their Defamation Claim and Must Therefore Be Dismissed. .........................................26

VI.   Conclusion ...........................................................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abshier v. Sunset Recordings, Inc.*,
 No. 14 CIV. 3227 CM SN, 2014 WL 4230124 (S.D.N.Y. Aug. 5, 2014) ..............................27

*In re Baudoin*,
 981 F.2d 736 (5th Cir. 1993) ................................................................................................19

*Bergstein v. The Hollywood Reporter*,
 No. 650553/14, 2015 WL 3627075 (Sup. Ct. N.Y. Cnty. June 10, 2015) .............................27

*Biro v. Conde Nast*,
 963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), &
 *aff'd*, 622 F. App'x 67 (2d Cir. 2015) ..............................................................................22, 23

*In re Borders Group, Inc.*,
 453 B.R. 477 (Bankr. S.D.N.Y. 2011) ..................................................................................20

*Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*,
 428 B.R. 43 (S.D.N.Y. 2010) ................................................................................................14

*Celotex Corp. v. Edwards*,
 514 U.S. 300 (1995) ..............................................................................................................17

*In re Christ Hosp.*,
 No. 12-12906 TBA, 2014 WL 2135942 (Bankr. D.N.J. May 21, 2014) ...............................18

*EDP Med. Computer Sys., Inc. v. United States*,
 480 F.3d 621 (2d Cir. 2007) ............................................................................................19, 20

*Elliott v. GM LLC (In re Motors Liquidation Co.)*,
 829 F.3d 135 (2d Cir. 2016) ..................................................................................................14

*Etheredge-Brown v. Am. Media, Inc.*,
 13 F. Supp. 3d 303 (S.D.N.Y. 2014) .....................................................................................23

*Firth v. State*,
 98 N.Y.2d 365 (2002) ......................................................................................................22, 24

*Gazes v. Delprete (In re Clinton St. Food Corp.)*,
 254 B.R. 523 (Bankr. S.D.N.Y. 2000) ..................................................................................19

*Goldman v. Barrett,*
No. 15 CIV. 9223 (PGG), 2016 WL 5942529 (S.D.N.Y. Aug. 24, 2016) .......................23, 26

*Haefner v. N.Y. Media, LLC,*
82 A.D.3d 481 (1st Dep't, 2011) ..............................................................................22, 23, 25

*Haefner v. New York Media, LLC,*
27 Misc. 3d 1208(A) (Sup. Ct. N.Y. Cnty. 2009), *aff'd sub nom. Haefner v.
N.Y. Media, LLC*, 82 A.D.3d 481 (1st Dep't, 2011) ..................................................25

*Hendrick v. Avent,*
891 F.2d 583 (5th Cir. 1993) ..............................................................................21

*Jackman v. Tese-Milner (In re Aiolova),*
496 B.R. 123 (Bankr. S.D.N.Y. 2013) ........................................................19, 20, 21

*Lawrence v. Wink (In re Lawrence),*
293 F.3d 615 (2d Cir. 2002) ..............................................................................19

*Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.),*
304 F.3d 223 (2d Cir. 2002) ........................................................................14, 18

*MacArthur Co. v. Johns-Manville Corp.,*
837 F.2d 89 (2d Cir. 1988) ..............................................................................14

*Martin v. Daily News L.P.,*
121 A.D.3d 90 (1st Dep't, 2014) ..........................................................................23

*In re McLean Indus.,*
68 B.R. 690 (Bankr. S.D.N.Y. 1986) ....................................................................17

*In re Motors Liquidation Co.,*
514 B.R. 377 (Bankr. S.D.N.Y. 2014) ..................................................................14

*In re Motors Liquidation Co.,*
534 B.R. 538 (Bankr. S.D.N.Y. 2015) ..................................................................18

*In re NE Opco, Inc.,*
513 B.R. 871 (Bankr. D. Del. 2014) ....................................................................18

*Nicholas v. Oren (In re Nicholas),*
457 B.R. 202 (Bankr. E.D.N.Y. 2011) ..................................................................20

*Noel v. Interboro Mut. Indem. Ins. Co.,*
31 A.D.2d 54 (1st Dep't 1968), *aff'd* 29 N.Y.2d 743 (1971) ................................27

*In re Old Carco LLC (f/k/a Chrysler LLC),*
No. 14-CV-2225 (JMF), 2014 WL 6790781 (S.D.N.Y. Dec. 1, 2014) ...............14, 19, 20

*Perez v. Violence Intervention Program*,
    116 A.D.3d 601 (1st Dep't 2014) ........................................................................26

*Pharr v. Evergreen Garden, Inc.*,
    123 Fed. App'x 420 (2d Cir. 2005)......................................................................20

*In re Philadelphia Newspapers, LLC*
    450 B.R. 99 (Bankr. E.D. Pa. 2011) ......................................................18, 23, 24

*Travelers Indem. Co. v. Bailey*,
    557 U.S. 137 (2009)........................................................................................14, 20

*Vendemia v. Oncu*,
    No. 154206/16, 2017 WL 1161743 (Sup. Ct. N.Y. Cnty. Mar. 17, 2017) ............28

*White v. Kubotek Corp.*,
    487 B.R. 1 (D. Mass. 2012) ............................................................................14, 15

## STATUTES

11 U.S.C. § 101(5) .....................................................................................................6, 10

28 U.S.C. § 157(b) ...........................................................................................................2

28 U.S.C. § 157(b)(2)(A)................................................................................................13

28 U.S.C. § 157(b)(2)(B)................................................................................................13

28 U.S.C. § 157(b)(2)(N)................................................................................................13

28 U.S.C. § 1334(b) ..........................................................................................................2

28 U.S.C. § 1408 ...............................................................................................................3

28 U.S.C. § 1409 ...............................................................................................................3

Gizmodo Media Group, LLC ("GMG") hereby submits this motion (the "Motion") for the entry of an order (i) enforcing the terms of (a) the *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (II) Approving and Authorizing the Debtors' Entry into the Asset Purchase Agreement and (III) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* [Docket No. 214] (the "Sale Order") and (b) that certain Asset Purchase Agreement by and among the Debtors and UniModa, LLC,[3] dated August 17, 2016 (the "APA") and (ii) barring Pregame LLC dba Pregame.com ("Pregame") and Randall James Busack, professionally known as RJ Bell ("Busack"), from prosecuting the claims and causes of action asserted against GMG in the Civil Suit (as defined below).  In support of the Motion, GMG respectfully represents as follows:

## I.    INTRODUCTION

1.    In a lawsuit recently filed in the Supreme Court for the State of New York, the Plaintiffs (as defined below) assert causes of action against GMG that are expressly barred by the Sale Order.  Demonstrating a blatant disregard for this Court's order, the Plaintiffs assert these causes of action notwithstanding their knowledge of the Bankruptcy Cases (as defined below) and the sale of substantially all of the assets of the Debtors (as defined below) to GMG free and clear of all liens, claims, and encumbrances (the "Sale").  Counsel to Pregame and Busack, who was intimately involved in the Bankruptcy Cases, personally attended a number of hearings, including the Sale Hearing (as defined below), and wrote letters to Debtor Gawker Media and GMG prior to entry of the Sale Order demanding a retraction of the article now at issue in the

---

[3]    On September 15, 2016, UniModa, LLC filed a Certificate of Amendment of Certificate of Formation of UniModa, LLC with the Secretary of State for the State of Delaware, which changed the name of the limited liability company from UniModa, LLC to Gizmodo Media Group, LLC.

recently-filed state court litigation.  However, at no point during the Bankruptcy Cases did the

Plaintiffs object to the Sale.  Instead, nearly ten months after the entry of the Sale Order, the

Plaintiffs have only now elected to assert frivolous claims in New York state court in direct

contravention to the express terms of the Sale Order.

## II.    JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and

1334(b).  This Motion involves a core proceeding, and this Court has retained jurisdiction to

consider this matter pursuant to Paragraphs 46-47 of the Sale Order, Paragraph 46 of the Plan

Confirmation Order (as defined below), and Section 8.01 of the Plan (as defined below).

3.      The Sale Order provides, in relevant part, as follows:

> The Court shall retain exclusive jurisdiction to . . . interpret,
> implement, and enforce the terms and provisions of this Order and
> the APA . . . and to adjudicate . . . any and all disputes concerning
> or relating in any way to the Sale.

> This Court retains jurisdiction to: . . . (b) protect Buyer and its
> assets, including the Acquired Assets, against any Adverse
> Interests (other than Permitted Liens and Assumed Liabilities) and
> Successor or Transferee Liability[.]

Sale Order, ¶¶ 46-47.

4.      The Plan Confirmation Order provides, in relevant part, as follows:

> Except as otherwise provided in any of the Plan Documents, the
> Court shall retain jurisdiction over the Bankruptcy Cases and all
> matters arising out of, or related to, the Bankruptcy Cases and the
> Plan[.]

Plan Confirmation Order, ¶ 46.

5.      Among other provisions regarding the jurisdiction of this Court, Section 8.01 of

the Plan provides, in relevant part, as follows:

> Notwithstanding the entry of the Confirmation Order and the
> occurrence of the Effective Date, the Bankruptcy Court shall retain

2

> exclusive jurisdiction of these proceedings to the extent legally
> permissible, including for the following purposes, among other
> things . . . (n) to determine any matter . . . under the Unimoda
> APA[.]

Plan, § 8.01.

6.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.    FACTUAL BACKGROUND

### A.    <u>The Bankruptcy Cases and the Civil Suit</u>

7.    On June 10, 2016, Gawker Media LLC ("<u>Gawker Media</u>") filed its voluntary petition for relief commencing the above-captioned cases (collectively, the "<u>Bankruptcy Cases</u>") under Chapter 11 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  Gawker Media Group, Inc. ("<u>GM LLC</u>") and Kinja Kft. ("<u>Kinja</u>" and, together with Gawker Media and GM LLC, the "<u>Debtors</u>") filed their petitions for relief under Chapter 11 of the Bankruptcy Code on June 12, 2016.

8.    On June 13, 2016, the Debtors filed the *Debtors' Motion for (I) an Order (A) Authorizing and Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (B) Authorizing and Approving the Debtors' Entry Into and Assumption of the Stalking Horse Asset Purchase Agreement, (C) Approving Notice Procedures, (D) Scheduling a Sale Hearing and (E) Approving Procedures for Assumption and Assignment of Certain Contracts and Leases and Determining Cure Amounts and (II) an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (B) Approving the Asset Purchase Agreement and (C) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* [Docket No. 21] (the "<u>Sale Motion</u>"), seeking authorization and approval of certain sale and bidding procedures in connection with the sale of substantially all of the Debtors' assets.

3

9.      On June 23, 2016, *more than 11 weeks prior to the Sale Closing Date* (as defined below), an article (the "Article") authored by Ryan Goldberg ("Goldberg") was posted on Deadspin.com, a website that, at the time, was operated by Debtor Gawker Media.  The Article explored the sports-betting industry, focusing particularly on the activities of Busack, a well-known sports-betting figure, and his company, Pregame.

10.     On June 27, 2016, counsel to Pregame and Busack, Charles J. Harder of Harder Mirell & Abrams ("Harder" and, together with Pregame and Busack, the "Plaintiffs"), sent a letter to Debtor Gawker Media and Goldberg (the "June 2016 Letter") demanding that they remove the allegedly false statements contained in the Article and publish a correction, apology, and retraction.  *See* Complaint (as defined below), ¶ 28.

11.     On July 8, 2016, this Court entered the *Order (I) Authorizing and Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (II) Authorizing and Approving the Debtors Performance of Pre-Closing Obligations Under the Stalking Horse Asset Purchase Agreement, (III) Approving Notice Procedures, (IV) Scheduling a Sale Hearing and (V) Approving Procedures for Assumption and Assignment of Certain Contracts and Leases and Determining Cure Amounts* [Docket No. 82] (the "Bidding Procedures Order"), granting certain relief requested by the Sale Motion and scheduling an auction (the "Auction") for the sale of substantially all of the Debtors' assets.

12.     The Auction was conducted on August 16, 2016 at the offices of Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036.  At the conclusion of the Auction, the Debtors, in consultation with the Official Unsecured Creditors' Committee appointed in the Bankruptcy Cases (the "Committee"), designated GMG's bid as the successful bid.

4

13.      On August 17, 2016, the notice of the deadline to file proofs of claim and a customized Proof of Claim form were sent to Busack, who was listed on the Debtors' schedules of assets and liabilities.  *See Global Notes to Schedules of Assets and Liabilities and Statement of Financial Affairs for the Debtors* [Docket No. 116] ("Global Notes"); *Affidavit of Service* [Docket No. 217].  The basis for Busack's contingent, unliquidated, and disputed unsecured claim was identified as "Threatened Litigation Claim."  *See* Global Notes, Schedule E/F.  Harder also received the notice of the deadline to file proofs of claim and the Proof of Claim form.  *See Affidavit of Service* [Docket No. 217].

14.      On August 18, 2016, this Court held a hearing (the "Sale Hearing") to consider approval of the sale of the Acquired Assets (as defined in the APA) to GMG free and clear of all liens, claims, and encumbrances.  The Plaintiffs, who had notice of, among other things, the Sale Motion, the Auction, the Sale Hearing, and the Sale Order, did not object to the Sale prior to, at, or following the Sale Hearing.

15.      On August 22, 2016, Harder sent a letter to GMG's counsel (the "August 2016 Letter" and, together with the June 2016 Letter, the "Letters") demanding that the Article be removed after the Sale Closing Date.  The August 2016 Letter serves as an admission that the Plaintiffs were aware of the Sale prior to entry of the Sale Order and the Sale Closing Date.  *See* August 2016 Letter, p. 1 ("We understand that UniModa LLC, Univision Holdings, Inc. and/or Fusion Media Group . . . recently agreed to purchase substantially all of the assets of Gawker, including Deadspin.com.").  However, the Plaintiffs never objected to the Sale or filed Proofs of Claim; other than sending the Letters, the Plaintiffs took no action whatsoever with respect to the Article prior to filing the Civil Suit.  A true and correct copy of the August 2016 Letter is attached hereto as Exhibit A.

5

16.     On August 28, 2016, this Court entered the Sale Order, which authorized the sale of the Acquired Assets to GMG pursuant to terms set forth in the APA.  Notably, the Sale Order barred, estopped, and permanently enjoined all persons, including all litigation claimants, from asserting against GMG any "Adverse Interest"[4] arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the ownership, sale, or operation of the Acquired Assets, and the business prior to the closing of the transactions contemplated by the APA, *i.e.*, September 9, 2016 (the "Sale Closing Date").  *See* Sale Order, ¶ 14; Plan, § 1.01 (defining "Sale Closing Date" as September 9, 2016).  A true and correct copy of the Sale Order is attached hereto as Exhibit B.[5]

17.     The Plaintiffs were on notice of the filing of the Bankruptcy Cases and the Sale and had adequate opportunity to file a claim against the Debtors and/or object to the Sale. Harder, who was also counsel to each of the three creditors on the Committee, is listed as a notice party on the Debtors' consolidated list of the 50 largest unsecured creditors.[6] Accordingly, the Plaintiffs were directly notified of, among other things: (i) the filing of the Bankruptcy Cases; (ii) the first day motions and orders; (iii) the Sale Motion; (iv) the Bidding

---

[4]     As set forth in the APA and in Paragraph 27 below, "Adverse Interests" includes all claims (as that term is defined in section 101(5) of the Bankruptcy Code), whether known or unknown, fixed or contingent, or arising prior to or subsequent to the commencement of the Bankruptcy Cases, including "any and all claims and causes of action of defamation, libel or slander with respect to any content published by [the Debtors] prior to [the Closing of the Sale]." *See* APA, Art. I; *see also* 11 U.S.C. § 101(5) (defining "claim" as, among other things, the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured").

[5]     A true and correct copy of the APA is attached to the Sale Order as Exhibit 1.

[6]     Pursuant to the *Order (I) Authorizing the Debtors to (A) Prepare a List of Creditors in Lieu of Submitting a Formatted Mailing Matrix and (B) File a Consolidated List of the Debtors' 50 Largest Unsecured Creditors and (II) Approving the Form and Manner of Notifying Creditors of Commencement of the Debtors' Chapter 11 Cases* [Docket No. 43], this Court authorized the Debtors to file a consolidated list of the 50 largest unsecured creditors in the Bankruptcy Cases in lieu of each Debtor filing a list of its 20 largest unsecured creditors.

Procedures Order; (v) the Auction; (vi) the Sale Hearing; and (vii) the Sale Order.[7]  In addition,

Harder personally attended a number of hearings in the Bankruptcy Cases, including the Sale

Hearing.

18.    Despite having actual notice of, among other things, the filing of the Bankruptcy

Cases, the Sale Motion, the Auction, the Sale Hearing, and the Sale Order, at no point did the

Plaintiffs file a claim against the Debtors or object to the Sale.

19.    In a letter dated September 16, 2016 (the "September 2016 Letter"), GMG's

counsel informed the Plaintiffs that, among other things: (i) the August 2016 Letter failed to

provide information sufficient to support the claim that certain statements about the Plaintiffs

were false; (ii) the single-publication rule bars the imposition of liability against GMG; and (iii)

GMG purchased the Acquired Assets pursuant to the Sale Order free and clear of all claims that

---

[7]    *See* (i) *Affidavit of Service* [Docket No. 23] (declaration of service regarding voluntary petition of Gawker
Media); (ii) *Affidavit of Service* [Docket No. 32] (declaration of service regarding (a) voluntary petitions of Kinja
and GM LLC, (b) the first day motions, and (c) the Sale Motion); (iii) *Affidavit of Service* [Docket No. 59]
(declaration of service regarding certain first day orders); (iv) *Affidavit of Service* [Docket No. 65] (declaration of
service regarding (a) *Debtors' Reply in Further Support of the Sale Motion [Docket No. 21]* [Docket No. 63] and (b)
*Agenda for Hearing to be Held June 27, 2016 at 10:00 a.m. (Prevailing Eastern Time)* [Docket No. 64]); (v)
*Affidavit of Service* [Docket No. 80] (declaration of service regarding (a) *Amended Agenda for Hearing to Be Held
July 7, 2016 at 2:00 p.m. (Prevailing Eastern Time)* [Docket No. 76] and (b) *Notice of Filing of (I) Revised Bidding
Procedures, a Revised Bidding Procedures Order, and a Revised Sale Order; and (II) First Amendment to Asset
Purchase Agreement* [Docket No. 77]); (vi) *Affidavit of Service* [Docket No. 95] (declaration of service regarding
Bidding Procedures Order); (vii) *Affidavit of Service* [Docket No. 103] (declaration of service regarding *Notice of
(A) Solicitation of Bids to Purchase Substantially all the Debtor's Assets, (B) Auction and (C) Sale Hearing*); (viii)
*Affidavit of Service* [Docket No. 108] (declaration of service regarding certain first day orders); (ix) *Affidavit of
Service* [Docket No. 128] (declaration of service regarding *Notice of Filing of Conformed Bidding Procedures, Sale
Notice, Cure Notice, and First Amendment to Asset Purchase Agreement* [Docket No. 123]); (x) *Affidavit of Service*
[Docket No. 198] (declaration of service regarding (a) *Notice of Filing of Final Transcript of Auction Held August
16, 2016 for the Sale of Substantially All of the Debtors' Assets* [Docket No. 189], (b) *Debtors' Reply in Support of
Motion for an Order Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims,
Liens, Rights, Interests and Encumbrances, and Related Relief* [Docket No. 190], and (c) *Notice of Filing of Asset
Purchase Agreement Between the Debtors and Successful Bidder for Sale of Substantially all of the Debtors' Assets*
[Docket No. 192]); (xi) *Affidavit of Service* [Docket No. 216] (declaration of service regarding *Amended Agenda for
Hearing to be Held August 18, 2016 at 2:00 p.m. (Prevailing Eastern Time)* [Docket No. 197]); and (xii) *Affidavit of
Service* [Docket No. 220] (declaration of service regarding the Sale Order).

arose prior to the completion of the acquisition.[8]  A true and correct copy of the September 2016

Letter is attached hereto as Exhibit C.

20.      On December 11, 2016, the Debtors filed the *Amended Joint Chapter 11 Plan of*

*Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.*

[Docket No. 576, Ex. A] (the "Plan").

21.      On December 22, 2016, this Court entered its *Findings of Fact, Conclusions of*

*Law, and Order Confirming Amended Joint Chapter 11 Plan of Liquidation for Gawker Media*

*Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 638] (the "Plan

Confirmation Order").[9]

22.      The Effective Date of the Plan occurred on March 17, 2017.  *See Notice of (I)*

*Entry of Order Confirming the Debtors' Effective Date of Amended Joint Chapter 11 Plan of*

*Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft and*

*(II) Occurrence of Effective Date* [Docket No. 825].

23.      On June 22, 2017, the Plaintiffs commenced a civil suit against GMG and

Goldberg in the Supreme Court for the State of New York, New York County, Index No.

155710/2017 (the "Civil Suit").  The complaint filed in the Civil Suit (the "Complaint") asserts

the following causes of action based on the publication and/or maintaining of the Article: (i)

defamation; (ii) intentional interference with prospective economic advantage; and (iii) tortious

interference with contractual relations.  Regarding the second and third causes of action, the

---

[8]      The September 2016 Letter further informed the Plaintiffs that the provisions of 47 U.S.C. § 230 preclude
liability for GMG because, as a "provider . . . of an interactive computer service," GMG cannot "be treated as the
publisher or speaker of any information provided by another information content provider."  In this instance,
because Debtor Gawker Media, not GMG, was responsible for "the creation or development of" the Article, GMG,
the provider of the interactive computer service, is not liable as the publisher or speaker.

[9]      Capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Sale Order,
the APA, the Plan, or the Plan Confirmation Order, as applicable.

Complaint asserts that the same statements from the Article alleged to be false and defamatory have also damaged their business relationships.  *See* Complaint, ¶¶ 51–64.  A true and correct copy of the Complaint is attached hereto as <u>Exhibit D</u>.

24.     In the Complaint, the Plaintiffs do not reference the Debtors' Bankruptcy Cases, the Sale of the Acquired Assets to GMG, or this Court's entry of the Sale Order.

**B.     <u>The Sale Order</u>**

25.     Pursuant to the Sale Order, the Plaintiffs are expressly barred from commencing the Civil Suit against GMG.  Consequently, continued prosecution of the Civil Suit against GMG is in direct contravention of this Court's order.

26.     The Sale Order provides, in relevant part, that:

> Except with respect to the Assumed Liabilities, all persons and entities . . . , including all . . . litigation claimants and other creditors holding Adverse Interests arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the ownership, sale or operation of the Acquired Assets and the business prior to the Closing or the transfer of Acquired Assets to Buyer . . . , are hereby forever barred, estopped and permanently enjoined from asserting such Adverse Interests (other than Permitted Liens and Assumed Liabilities) against Buyer, its property or the Acquired Assets.
>
> ***
>
> Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against Buyer, or its assets (including the Acquired Assets), or its successors and assigns, with respect to any (i) Adverse Interest (other than Permitted Liens and Assumed Liabilities) or (ii) Successor or Transferee Liability including the following actions with respect to clauses (i) and (ii): (a) commencing or continuing any action or other proceeding pending or threatened; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any Adverse Interest (other than Permitted Liens and Assumed Liabilities); . . . [or] (e) commencing or continuing any

9

action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof[.]

See Sale Order, ¶¶ 14, 21.

27.    The APA defines "Adverse Interests" as follows:

[C]laims (as that term is defined in section 101(5) of the Bankruptcy Code), Liabilities, . . . causes of action, . . . and similar matters of any kind whatsoever, *whether known or unknown, fixed or contingent, or arising prior to or subsequent to the commencement of the Chapter 11 Case*, and whether imposed by agreement, understanding, law, equity or otherwise, including Successor or Transferee Liability (as defined in the Sale Order) and *any and all claims and causes of action of defamation, libel or slander with respect to any content published by Sellers prior to Closing*, but excluding the Assumed Liabilities.

See APA, Art. I (emphasis added); *see also* 11 U.S.C. § 101(5) (defining "claim" as, among other things, the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured").

28.    By virtue of the free and clear provisions included in the Sale Order, this Court provided GMG relief from all Adverse Interests, including "any and all claims and causes of action of defamation, libel or slander with respect to any content published by Sellers[,]" that arose prior to the Sale Closing Date.  *See* Sale Order, ¶¶ 14, 21; APA, Art. I.  Simply stated, the causes of action set forth in the Civil Suit against GMG constitute Adverse Interests, the assertion of which was expressly barred by this Court's Sale Order.

C.    **The APA**

29.    For purposes of this Motion, the relevant provisions of the APA include the following terms, which address those liabilities of the Debtors that were excluded from the Sale:

10

[T]he Parties expressly acknowledge and agree that Buyer shall not assume, be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for any Liabilities of Sellers, whether existing on the Closing Date or arising thereafter, including on the basis of any Law imposing successor liability, other than the Assumed Liabilities and the obligations of Buyer under this Agreement (all such Liabilities that Buyer is not assuming being referred to collectively as the "Excluded Liabilities"). Buyer . . . does not assume, and hereby disclaims all the Excluded Liabilities, including the following Liabilities of any Seller . . . whether incurred or accrued before or after the Petition Date or the Closing . . . :

> (a) all Liabilities of Sellers arising from or relating to any Litigation against any Seller or any of their Affiliates, or arising from or related to the Acquired Assets . . . , pending or threatened or with respect to facts or circumstances existing as of or prior to the Closing *including, for the avoidance of doubt, with respect to any content published on any website used in connection with the Business prior to Closing*; [and]

> (b) all Liabilities of Sellers . . . arising from or relating to the operation or condition of the Acquired Assets . . . prior to the Closing or arising from or relating to the operation of the Business prior to the Closing[.]

APA, § 2.4 (emphasis added).

30.     In short, under the express provisions of the APA, GMG did not assume any liabilities other than the Assumed Liabilities, which include only the following: "(a) all Liabilities under the Assumed Contracts and the Assumed Permits solely to the extent arising after the Closing, (b) all Liabilities consisting of amounts Buyer has agreed to pay [under the APA] and (c) all current liabilities of Sellers as of immediately prior to the Closing of a category included in Net Working Capital."  APA, Art. I.  Because the Debtors' pre-closing liabilities, if any, relating to the Civil Suit do not qualify as Assumed Liabilities, they were not assumed by GMG.

11

31.    Moreover, to remove any uncertainty as to whether GMG assumed the liabilities at issue in the Civil Suit, the APA further provides that GMG did not assume any liability arising from or relating to (i) litigation concerning the Debtors or the Acquired Assets that is based on facts or circumstances existing as of the Sale Closing Date, "*including . . . with respect to any content published on any website used in connection with the Business prior to Closing[,]*" or (ii) the operation of the Acquired Assets or the Debtors' business prior to the Sale Closing Date. APA, § 2.4 (emphasis added).

## IV.    RELIEF REQUESTED

32.    GMG respectfully requests that the Court enter an order, substantially in the form attached hereto as <u>Exhibit E</u>: (i) finding that the continued prosecution of the Plaintiffs' Civil Suit violates the Sale Order and the terms of the APA; (ii) directing the Plaintiffs to cease any further acts (a) to continue the Civil Suit against GMG and (b) to enforce their purported claims against GMG in any other manner; (iii) remedying all prior violations of the Sale Order and the APA by, *inter alia*, ordering the Plaintiffs to cause the dismissal with prejudice of all claims and causes of action asserted by the Plaintiffs against GMG in the Civil Suit; and (iv) granting GMG such other and further relief as may be just and proper, including costs and attorney's fees incurred in connection with this Motion and defending the Civil Suit.[10]

---

[10]    The Plaintiffs should be held accountable for their decision to ignore the express terms of this Court's Sale Order.  As noted in Paragraphs 13, 17, and 18, the Plaintiffs had notice of the Bankruptcy Cases and the Sale, and yet they commenced the Civil Suit notwithstanding the unequivocal "free and clear" language set forth in the Sale Order.  Given the frivolous nature of their claims, the Plaintiffs should be required to compensate GMG for the costs and attorney's fees incurred in connection with the filing of this Motion and the defense of the Civil Suit.

## V.    ARGUMENT

### A.    The Court Has Jurisdiction to Issue an Order to Enforce the Provisions of the Sale Order and the APA and to Enjoin the Prosecution of the Civil Suit.

33.    Because this Motion concerns the administration of the Debtors' estates, concerns the allowance or disallowance of claims against the Debtors' estates, and relates to this Court's prior order approving the sale of the Debtors' property, it is within this Court's core jurisdiction. *See* 28 U.S.C. § 157(b)(2)(A), (B), and (N).  Moreover, although this matter is brought before the Court after the Sale Closing Date and following confirmation of the Plan, this Court retained jurisdiction to enforce the provisions of the Sale Order and the APA and to bar the Plaintiffs from pursuing the Civil Suit against GMG pursuant to Paragraphs 46 and 47 of the Sale Order, Paragraph 46 of the Plan Confirmation Order, and Section 8.01 of the Plan.  *See* Sale Order, ¶ 46 ("The Court shall retain exclusive jurisdiction to . . . interpret, implement, and enforce the terms and provisions of this Order and the APA . . . and to adjudicate . . . any and all disputes concerning or relating in any way to the Sale."); *id.* at ¶ 47 ("This Court retains jurisdiction to: . . . (b) protect Buyer and its assets, including the Acquired Assets, against any Adverse Interests (other than Permitted Liens and Assumed Liabilities) and Successor or Transferee Liability[.]"); Plan Confirmation Order, ¶ 46 ("Except as otherwise provided in any of the Plan Documents, the Court shall retain jurisdiction over the Bankruptcy Cases and all matters arising out of, or related to, the Bankruptcy Cases and the Plan[.]"); Plan, § 8.01 ("Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction of these proceedings to the extent legally permissible, including for the following purposes, among other things . . . (n) to determine any matter . . . under the Unimoda APA[.]").

13

34.    This Court's retention of jurisdiction is well recognized in the case law.  *See*

*Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (finding that "the Bankruptcy Court

plainly had jurisdiction to interpret and enforce its own prior orders"); *Luan Inv. S.E. v. Franklin

145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir. 2002) ("A bankruptcy court

retains post-confirmation jurisdiction to interpret and enforce its own [sale and plan

confirmation] orders[.]"); *Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 153

(2d Cir. 2016) (noting that a bankruptcy court has jurisdiction to interpret and enforce its own

prior sale order because "[a]n order consummating a debtor's sale of property would not exist

but for the Code . . . and the Code charges the bankruptcy court with carrying out its orders")

(citations omitted); *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93 (2d Cir. 1988)

(noting that section 105(a) of the Bankruptcy Code has been "construed liberally to enjoin suits

that might impede the reorganization process"); *In re Old Carco LLC (f/k/a Chrysler LLC)*, No.

14-CV-2225 (JMF), 2014 WL 6790781, at *3 (S.D.N.Y. Dec. 1, 2014) (finding that "the

Bankruptcy Court plainly had jurisdiction to clarify and enforce its own [sale] order" and that the

bankruptcy court "not only had inherent authority to do so, but also explicitly retained

jurisdiction in the Sale Order to do so"); *In re Motors Liquidation Co.*, 514 B.R. 377, 381-82

(Bankr. S.D.N.Y. 2014) ("Bankruptcy courts . . . have subject matter jurisdiction to enforce their

orders in bankruptcy cases and proceedings under those courts' '*arising in*' jurisdiction.");

*Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43, 57 (S.D.N.Y.

2010) ("[C]ourts have characterized the injunctive authority of bankruptcy courts as 'core' when

the rights sought to be enforced by injunction are based on provisions of the Bankruptcy Code,

such as the 'free and clear' authority of section 363(f)."); *White v. Kubotek Corp.*, 487 B.R. 1, 8

(D. Mass. 2012) ("[T]he Bankruptcy Court had statutory authority to enjoin litigation that attacked its prior order because doing so was 'necessary' to carry out the Sale Order.").

35.     The enforcement of the terms of the Sale Order and the APA is within this Court's core jurisdiction, and the Sale Order, the Plan Confirmation Order, and the Plan provide this Court the right to enjoin the Plaintiffs from pursuing the Civil Suit against GMG.  As such, this Court has the proper authority and jurisdiction to decide the issues raised in this Motion.

### B.      The Plaintiffs Had Notice of the Sale.

36.     As set forth in Paragraphs 13, 17, and 18 above, the Plaintiffs had actual notice of, among other things, the filing of the Bankruptcy Cases, the Sale Motion, the Auction, the Sale Hearing, and the Sale Order and had adequate opportunity to file a claim against the Debtors and/or object to the Sale.  In addition, Harder, who was also counsel to each of the three creditors on the Committee, attended a number of hearings in the Bankruptcy Cases, including the Sale Hearing, in person.

37.     Although the Plaintiffs had actual notice of the Bankruptcy Cases and the Sale, the Plaintiffs did not file a claim against the Debtors or object to the Sale.

### C.      The Plaintiffs' Causes of Actions Asserted Against GMG in the Civil Suit Are Barred by the Sale Order and the APA.

38.     As set forth above, the Sale Order expressly bars "all persons and entities . . . , including litigation claimants and other creditors holding Adverse Interests arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the ownership, sale or operation of the Acquired Assets and the business prior to the Closing or the transfer of Acquired Assets to Buyer . . . from asserting such Adverse Interests . . . against Buyer, its property or the Acquired Assets."  *See* Sale Order, ¶ 14; *see also* Sale Order, ¶ 21 ("Effective upon the Closing, all persons and entities are forever prohibited and enjoined from

commencing or continuing in any matter any action . . . against Buyer, or its assets (including the

Acquired Assets), or its successors and assigns, with respect to any (i) Adverse Interest (other

than Permitted Liens and Assumed Liabilities) or (ii) Successor or Transferee Liability[.]").

39.     In no uncertain terms, the Sale Order expressly prohibits all persons and entities

from asserting any claim or cause of action, including "any and all claims and causes of action of

defamation, libel or slander with respect to any content published by [the Debtors,]" against

GMG that arose prior to the Sale Closing Date.  *See* Sale Order, ¶¶ 14, 21; APA, Art. I.

Notwithstanding this unambiguous prohibition, the Plaintiffs elected to file the Civil Suit and

assert causes of action that arose 11 weeks *prior to* the Sale Closing Date.  By filing the Civil

Suit and asserting causes of action against GMG that constitute Adverse Interests, the Plaintiffs

demonstrate a blatant disregard for this Court's Sale Order, and their continued prosecution of

the Civil Suit against GMG must be enjoined.  Therefore, GMG respectfully requests that this

Court order the Plaintiffs to cause the dismissal with prejudice of all claims and causes of action

asserted against GMG in the Civil Suit.

40.     In addition to the express language in the Sale Order prohibiting the

commencement or continuation of the Civil Suit, the APA also explicitly provides that GMG

only agreed to assume the Assumed Liabilities.  *See* APA, § 2.4 ("Buyer shall not assume, be

obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible

for any Liabilities of Sellers, whether existing on the Sale Closing Date or arising thereafter,

including on the basis of any Law imposing successor liability, other than the Assumed

Liabilities and the obligations of Buyer under this Agreement[.]").  The Assumed Liabilities are

defined in the APA as:

> (a) all Liabilities under the Assumed Contracts and the Assumed
> Permits solely to the extent arising after the Closing, (b) all

16

> Liabilities consisting of amounts Buyer has agreed to pay [under the APA] (including all Cure Amounts) and (c) all current liabilities of Sellers as of immediately prior to the Closing of a category included in Net Working Capital.

APA, Art. I. The definition of Assumed Liabilities cannot, under any reasonable interpretation, be read to include the Debtors' pre-closing liabilities, if any, arising from the Plaintiffs' Civil Suit. Furthermore, to eliminate any possible doubt, the APA expressly *excludes* all liabilities (i) relating to litigation concerning the Acquired Assets that is based on facts or circumstances existing as of the Sale Closing Date, "including . . . with respect to any content published on any website used in connection with the Business prior to Closing[,]" and (ii) arising from or relating to the operation of the Acquired Assets or the Debtors' business prior to the Sale Closing Date. APA, § 2.4. Thus, any liability resulting from the causes of action asserted in the Civil Suit was expressly carved out from those liabilities being assumed by GMG.

41.     It is well within this Court's authority to enjoin the unlawful filing and prosecution of the Civil Suit. *See, e.g., Celotex Corp. v. Edwards,* 514 U.S. 300, 306 (1995) ("[P]ersons subject to an injunctive order issued by a court with jurisdiction are expected to obey the decree until it is modified or reversed[.]") (quotations and citations omitted); *In re McLean Indus.*, 68 B.R. 690, 695 (Bankr. S.D.N.Y. 1986) ("All courts, whether created pursuant to Article I or Article III, have inherent contempt power to enforce compliance with their lawful orders. The duty of any court to hear and resolve legal disputes carries with it the power to enforce the order.").

42.     The relief ordered by this Court should include, without limitation, ordering the Plaintiffs to cause the dismissal with prejudice of all claims and causes of action asserted by the Plaintiffs against GMG in the Civil Suit. Issuing such an order is necessary to ensure the primacy of this Court's role over the bankruptcy proceedings and to preserve the integrity of its

17

orders, its jurisdiction, and the reorganization process. *See In re Petrie Retail, Inc.*, 304 F.3d at 227-31 (affirming order enforcing protections granted to a third-party purchaser in a sale order and a confirmed plan); *In re Motors Liquidation Co.*, 534 B.R. 538, 545 (Bankr. S.D.N.Y. 2015) ("Bankruptcy Judges . . . most assuredly have the power to enjoin litigants from prosecuting claims in other courts—state or federal . . . —when such injunctions are otherwise within Bankruptcy Judges' jurisdiction and an appropriate use of their injunctive powers."); *In re NE Opco, Inc.*, 513 B.R. 871, 877 (Bankr. D. Del. 2014) (finding that "even though [the purchaser] may have committed a wrongdoing *after* the Court approved and entered the Sale Order but *prior* to the sale Closing, the Sale Order and the injunction contained therein bars [plaintiff] from asserting pre-Closing claims against [the purchaser] related to [the purchaser]'s impending purchase of the assets from the Debtors"); *In re Christ Hosp.*, No. 12-12906 TBA, 2014 WL 2135942, at *1-3 (Bankr. D.N.J. May 21, 2014) (enjoining action against the purchaser of a debtor's assets alleging claims arising three days prior to the sale on grounds that the "protection afforded by [section] 363 and the injunction contained in the Sale Order prevent plaintiff's claims being pursued against [the purchaser]"); *In re Philadelphia Newspapers, LLC* 450 B.R. 99, 108-09 (Bankr. E.D. Pa. 2011) (barring the prosecution of defamation claims in state court against the purchaser of the debtors' assets where such claims were released pursuant to the debtors' confirmed plan of reorganization).

> **D.      The Sale Order Is a Final Judgment and All Issues that Could Have Been Raised as Part of the Sale Are Barred by the Doctrine of *Res Judicata*.**

43.      In addition to the express prohibition in the Sale Order and the APA against prosecuting the claims and causes of action asserted against GMG in the Civil Suit, Plaintiffs are similarly barred from prosecuting such claims and causes of action under the doctrine of *res judicata*. "[R]es judicata bars litigation if an earlier decision was '(1) a final judgment on the

merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their

privies, and (4) involving the same cause of action.'" *Jackman v. Tese-Milner (In re Aiolova)*,

496 B.R. 123, 130 (Bankr. S.D.N.Y. 2013) (quoting *EDP Med. Computer Sys., Inc. v. United

States*, 480 F.3d 621, 624 (2d Cir. 2007)); *see also Lawrence v. Wink (In re Lawrence)*, 293 F.3d

615, 621 (2d Cir. 2002) (emphasizing the importance of *res judicata* in preventing "future

litigation attacking the final orders of sale in a bankruptcy court proceeding, a forum where

finality of court orders is particularly important"); *In re Old Carco LLC*, 2014 WL 6790781, at

*2 ("Under the doctrine of *res judicata*, . . . a 'final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could have been raised

in that action.'") (quoting *EDP Med. Computer Sys.*, 480 F.3d at 624).

44.     In this case, the first element has been met because the Sale Order constitutes a

final judgment on the merits.  *See In re Aiolova*, 496 B.R. at 130 ("[I]t is uncontested that the

Sale Authorization Order constituted a final judgment on the merits."); *Gazes v. Delprete (In re

Clinton St. Food Corp.)*, 254 B.R. 523, 530 (Bankr. S.D.N.Y. 2000) ("A bankruptcy court order

approving a sale of assets is a final order for *res judicata* purposes."); *In re Baudoin*, 981 F.2d

736, 742 (5th Cir. 1993) ("[B]ankruptcy court orders authorizing the sale of part of the estate or

confirming such sale are final judgments on the merits for *res judicata* purposes, even though the

order neither closes the bankruptcy case nor disposes of any claim.") (quotations omitted).

45.     The second element has also been satisfied because the Sale Order was issued by

this Court, which is a court of competent jurisdiction.  *See In re Aiolova*, 496 B.R. at 131 ("[A]

bankruptcy court has the jurisdiction to entertain and enter orders authorizing the sale of estate

assets and therefore qualifies as a court of competent jurisdiction."); *EDP Med. Computer Sys.,*

480 F.3d at 624 (explaining that *res judicata* "applies with full force to matters decided by the bankruptcy courts").

46.    The third element has been met because the Civil Suit and the Bankruptcy Cases involve the same parties.  The Bankruptcy Court for the Southern District of New York has held that:

> In the bankruptcy context, all creditors of a debtor have the opportunity to be heard in proceedings within that debtor's case. As such, for *res judicata* purposes, a creditor is a party in interest to orders entered in the administration of the bankruptcy proceeding, even if the creditor fails to object or participate in a matter.

*In re Aiolova*, 496 B.R. at 131; *see also In re Old Carco LLC*, 2014 WL 6790781, at *4 (vacating order denying motion to enforce sale order against buyer and holding that "so long as the [claimants] or those in privity with them were parties to the original bankruptcy proceeding, 'and were given a fair chance to challenge the Bankruptcy Court's subject-matter jurisdiction,' they cannot challenge it now by resisting enforcement of the Sale Order") (quoting *Travelers Indem. Co.*, 557 U.S. at 153); *In re Borders Group, Inc.*, 453 B.R. 477, 484 (Bankr. S.D.N.Y. 2011) ("Under section 363(f)(2), a lienholder who receives notice of a sale but does not object within the prescribed time period is deemed to consent to the proposed sale, and assets thereafter may be sold free and clear of liens."); *Nicholas v. Oren (In re Nicholas)*, 457 B.R. 202, 218-19 (Bankr. E.D.N.Y. 2011) ("When considering the third element of res judicata, courts look to whether 'the party against whom claim preclusion is sought has, in essence, already received his or her day in court, and the application of *res judicata* would not alter this conclusion.'") (quoting *Pharr v. Evergreen Garden, Inc.*, 123 Fed. App'x 420, 424 (2d Cir. 2005)).  Therefore, although the Plaintiffs did not object to the Sale Motion or participate at the Sale Hearing, the

Plaintiffs are "part[ies] in interest to orders entered in the administration of the bankruptcy proceeding," including the Sale Order, and the third element is satisfied.

47.    The fourth and final element is also satisfied.  The Bankruptcy Court for the Southern District of New York has held that "[t]wo proceedings contain the same cause of action where the same transaction, evidence, and factual issues are involved in both cases."  *See In re Aiolova*, 496 B.R. at 131.  In this instance, the Civil Suit is based upon the identical arguments and claims that the Plaintiffs could (and should) have raised in connection with the Sale Motion if they objected to the Sale of the Acquired Assets free and clear of their claims.  *See id.* at 132 ("As [the plaintiff] had the opportunity to effectively litigate his claim during the Sale Motion, 'the proper medium for a challenge to the original bankruptcy court's order is through a direct challenge of that order.  The collateral attacks brought later are barred by *res judicata.*'") (quoting *Hendrick v. Avent*, 891 F.2d 583, 587 (5th Cir. 1993)).

48.    The Plaintiffs, who did not object to the Sale, may not now contest the scope of the free and clear provisions of the Sale Order which operate to prevent the continued prosecution of the Civil Suit.  Instead, all issues that could have been raised that pertain to the Sale are barred under the doctrine of *res judicata*.

### E.    The Single Publication Rule Bars the Plaintiffs' Claims.

49.    The Complaint contends that the Plaintiffs may assert defamation and related claims against GMG post-sale solely because the Article was not *removed* from the Deadspin website after the Sale.  *See* Complaint, ¶¶ 7, 39.  Such a claim is barred in its entirety by the single-publication rule.

50.    The single-publication rule is a well-established principle of defamation law, providing that: "the publication of a defamatory statement in a single issue of a newspaper . . . although such publication consists of thousands of copies widely distributed, is, in legal effect,

one publication which gives rise to one cause of action and that the applicable statute of

limitations runs from the date of that publication." *Firth v. State*, 98 N.Y.2d 365, 369 (2002)

(internal citations and alterations omitted).  Under New York law, the single-publication rule

applies with full force to materials that are published online, including articles posted on

websites.  *See id.* at 369-70 (holding that the single-publication rule applies to statements made

on a website); *see also Haefner v. N.Y. Media, LLC*, 82 A.D.3d 481, 482 (1st Dep't, 2011)

(holding that the single publication rule applied to "to a Web article [available] via links on [the

defendant's] Web site"); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 267 (S.D.N.Y. 2013) ("Under

New York's single publication rule, it is irrelevant, for statute of limitation purposes, that a story

remains online after its publication."), *aff'd*, 807 F.3d 541 (2d Cir. 2015), & *aff'd*, 622 F. App'x

67 (2d Cir. 2015).

　　　　51.　　The single-publication rule applies in this case because the allegedly defamatory

article was posted on the Deadspin website once—on June 23, 2016, by an entirely different

company, Gawker Media.  GMG was not involved in the publication, which occurred months

before the Sale Closing Date.  Accordingly, any causes of action arising from the single

publication of the Article—if any existed—should have been asserted against Gawker Media, not

GMG.

　　　　52.　　GMG did not "republish" the Article.  An exception to the single-publication rule

known as "republication" does not apply here.  *Firth*, 98 N.Y.2d at 371 (a republication occurs

only if the defendant republishes defamatory statements "on a different occasion . . . [that is]

intended to and actually reaches a new audience[.]") (internal citations omitted).  It is well

established that the republication exception does not apply when an article merely remains

online—which is the case here.  *See Biro*, 963 F. Supp. 2d at 267 ("[T]he fact that an article can

still be accessed online does not mean that it has been republished."); *see also Etheredge-Brown*

*v. Am. Media, Inc.*, 13 F. Supp. 3d 303, 306 (S.D.N.Y. 2014) ("Of course, courts have

overwhelmingly held . . . that the mere continued availability of material on a website does not

constitute an ongoing 'republication.'"); *Haefner*, 82 A.D.3d at 482 ("[T]he continuous access to

a Web article via links on [the defendant's] Web site was not a republication[.]" ); *Goldman v.*

*Barrett*, No. 15 CIV. 9223 (PGG), 2016 WL 5942529, at *10 (S.D.N.Y. Aug. 24, 2016) ("[I]t is

irrelevant, for statute of limitation purposes, that a story remains online after its publication.")

(quotations and citations omitted); *Martin v. Daily News L.P.*, 121 A.D.3d 90, 103 (1st Dep't,

2014) ("[C]ontinuous access to an article posted via hyperlinks to a website is not a

republication[.]").  Thus, the republication exception does not apply in this case because GMG

did not republish the Article, it simply did not remove it from the website.

### F.    <u>The Court Should Follow the Ruling in *In Re Philadelphia Newspapers*.</u>

53.    The mere change in ownership of a website does not constitute a republication of

those articles.  In a case that is on all fours with this one, the Bankruptcy Court for the Eastern

District of Pennsylvania in *In re Philadelphia Newspapers, LLC*, 450 B.R. 99, 108-09 (Bankr.

E.D. Pa. 2011) held that the single-publication rule barred the defamation claims of plaintiffs

who sued a company that had acquired a website in a bankruptcy sale after an allegedly

defamatory article had been posted and then did not remove the article.  The facts and legal

analysis of that case are instructive:

54.    In *Philadelphia Newspapers*, the defendant, Philadelphia Media Network

("<u>PMN</u>"), acquired several newspaper assets (the "<u>Newspaper Assets</u>") from debtors in a

bankruptcy proceeding.  *See id.* at 101.  The asset purchase agreement governing the sale

"specifically exclude[d] the assumption of any liability of the Debtors for acts or omissions

which occurred prior to the closing of the Asset Purchase Agreement." *Id.*  The sale of the

Newspaper Assets to PMN closed in October 2010.  *Id.*

55.    Prior to the acquisition at issue in *Philadelphia Newspapers*, the debtors published

two articles in October 2009 that Richard Glunk ("Glunk") alleged were defamatory, as well as

one article in June 2010 that Michelle Brodie ("Brodie" and, together with Glunk, the "PMN

Plaintiffs") alleged was defamatory.  *See id.* at 108.  The PMN Plaintiffs sued PMN for

defamation arising from these articles, despite the fact that, like here, the articles were published

*before* PMN acquired the Newspaper Assets.  *See id.* at 101.  Because the PMN Plaintiffs' claims

arose prior to the sale closing date, the bankruptcy court noted that "PMN did not assume

liability for them."  *Id.* at 107.  However, the PMN Plaintiffs argued that PMN republished the

allegedly defamatory articles by allowing them to remain on a website that PMN had acquired

from the debtors.  *See id.*

56.    The bankruptcy court rejected the PMN Plaintiffs' argument and held that PMN

was not liable for the defamation claims under the single-publication rule because "[w]hile the

articles may remain extant and available online, neither was republished *after* PMN become [sic]

the owner of the papers."  *Id.* at 108 (emphasis in original).  The bankruptcy court noted that the

purpose of the single publication rule "is to protect publishers from [a] multitude of lawsuits

based on one tortious act" and expressly acknowledged that the single publication rule "has been

extended to online sources."  *Id.* at 107; *id.* at 108 (citing *Firth,* 98 N.Y.2d at 370).  The

bankruptcy court further noted that because PMN never assumed liability for the defamation

claims, "the plaintiffs may not look to PMN for any recovery."  *Id.* at 108.

57.    Accordingly, the *Philadelphia Newspapers* court recognized that republication

does not occur simply because a purchaser allows material to remain online after acquiring the

original publisher's assets. Under such circumstances, a purchaser cannot be held liable as a republisher of material that had been published prior to the acquisition of the publisher's assets. The bankruptcy court's reasoning in *Philadelphia Newspapers* applies with full force here— GMG cannot be held liable for articles it did not publish; not removing articles previously posted online does not constitute a republication.

58.      The New York state trial court's opinion in *Haefner v. New York Media, LLC* also supports this result. *See Haefner v. New York Media, LLC*, 27 Misc. 3d 1208(A) (Sup. Ct. N.Y. Cnty. 2009), *aff'd sub nom. Haefner v. N.Y. Media, LLC*, 82 A.D.3d 481 (1st Dep't, 2011). In *Haefner*, the plaintiffs sued for defamation arising from an article that had been published in 2000 by New York Magazine while the magazine was owned by defendant, Primedia, Inc. *See id.* at *1. However, in 2004, Primedia, Inc. sold New York Magazine to a new owner. *See id.* In addition to suing Primedia, the plaintiffs also sued the subsidiary of the new owner—New York Media, LLC ("NYM")—arguing that the article had been republished in 2007 through two different websites that posted Internet links to the original article. *See id.* The trial court rejected the plaintiffs' argument, and the First Department affirmed, noting that "the continuous access to a Web article via links on NYM's Web site was not a republication[.]" *Haefner*, 82 A.D.3d at 482.

59.      Just as in *Philadelphia Newspapers* and *Haefner*, the Plaintiffs in this case are seeking to bring defamation claims against a party who did not publish the defamatory statements at issue, but merely allowed the statements to remain available online after acquiring

the publisher's assets.  The Court should find that the Plaintiffs' defamation claims are barred by the single-publication rule.[11]

### G. The Plaintiffs' Tortious Interference Claims Merely Duplicate Their Defamation Claim and Must Therefore Be Dismissed.

60.    In addition to their claim for defamation, the Plaintiffs assert two other causes of action: (1) intentional interference with prospective economic advantage; and (2) tortious interference with contractual relations.  *See* Complaint, ¶¶ 51-64.  Both of these causes of action arise from the same facts as the Plaintiffs' defamation claim, are merely duplicative of their defamation claim, and must therefore be dismissed.

61.    "Claims for tortious interference with prospective economic advantage are dismissed as duplicative of defamation claims where such claims are premised on the same factual allegations as the facts underlying a defamation claim."  *Goldman*, 2016 WL 5942529, at *7 (quotations and alterations omitted).  Accordingly, New York courts routinely dismiss tort claims tacked on to defamation complaints when the tort claims arise from the same facts as the defamation claims.  *See, e.g.*, *id.* (dismissing tortious interference claims as duplicative of defamation claims); *see also Perez v. Violence Intervention Program*, 116 A.D.3d 601, 602 (1st Dep't 2014) (reversing trial court order where the "remaining claims of injurious falsehood, tortious interference with prospective contractual/business relations, and intentional infliction of emotional distress should have been dismissed as duplicative of the defamation claim, as they allege no new facts and seek no distinct damages from the defamation claim").

---

[11]    At the Sale Hearing, counsel to the Debtors noted that the *Philadelphia Newspapers* decision had been briefed in response to a reservation of rights filed by Dr. Shiva Ayyadurai and Ashley Terrill (the "Reservation of Rights").  *See* Transcript of Sale Hearing at 27:20-25, 28:1-4; *Debtors' Reply in Support of Motion for an Order Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, and Related Relief* [Docket No. 190], ¶¶ 14-18.  However, because the Reservation of Rights was withdrawn, this Court was not asked to rule on the application of the single publication rule at the Sale Hearing. *See* Transcript of Sale Hearing at 28:1-4, 72:7-8, 72:11-13.).

62.      The rationale behind this policy is that courts do not want to allow plaintiffs to

circumvent the one-year statute of limitations for defamation claims by simply labeling their

defamation claims as other torts, with longer statutes of limitations.  *See Abshier v. Sunset*

*Recordings, Inc.*, No. 14 CIV. 3227 CM SN, 2014 WL 4230124, at *8-10 (S.D.N.Y. Aug. 5,

2014) (dismissing tortious interference claims as duplicative of defamation claims, noting "New

York courts have kept a watchful eye for claims sounding in defamation that have been disguised

as other causes of action. . . .   Anything else would allow plaintiffs to circumvent the otherwise

short limitations period for defamation claims.") (quotations and internal citation omitted); *see*

*also Bergstein v. The Hollywood Reporter*, No. 650553/14, 2015 WL 3627075, at *8 (Sup. Ct.

N.Y. Cnty. June 10, 2015) ("[A] 'plaintiff may not circumvent the one-year limitation period

applicable to defamation actions by misdescribing the tort as injurious falsehood or interference

with economic relations.'") (alteration omitted) (quoting *Noel v. Interboro Mut. Indem. Ins. Co.*,

31 A.D.2d 54, 55 (1st Dep't 1968), *aff'd* 29 N.Y.2d 743 (1971)).

63.      Here, Plaintiffs' claims for tortious and intentional interference both arise from

the same facts as their defamation claim.  The Complaint simply states that GMG and Goldberg

interfered with Plaintiffs' business relationships by "making and/or maintaining false, fabricated,

fictitious and outright libelous statements about Plaintiffs in the Story."  Complaint, ¶¶ 54, 61.

This is the exact same conduct that allegedly gave rise to Plaintiffs' defamation claim.  *See id.* ¶

43 (stating, in the section of the Complaint regarding the defamation cause of action, that

"[GMG and Goldberg] published, caused to be published and/or maintain the defamatory

statements in the Story").

64.      Accordingly, because the single-publication rule requires dismissal of the

defamation claim against GMG; and the interference claims are duplicative of the defamation

27

claim, the Court should order the Plaintiffs to cause the dismissal with prejudice of all claims and causes of action asserted against GMG.[12]  *See Vendemia v. Oncu*, No. 154206/16, 2017 WL 1161743, at *5 (Sup. Ct. N.Y. Cnty. Mar. 17, 2017) ("[D]ismissal of the defamation claim also requires dismissal of the tortious interference claim given that the alleged defamation is the basis for the allegation that defendant's conduct was accomplished by wrongful means[.]") (internal citations omitted).

## VI.    CONCLUSION

65.    To enforce this Court's Sale Order and to protect and preserve the integrity of this Court's jurisdiction and the bargained for agreement between the Debtors and GMG, GMG respectfully requests that this Court: (i) enjoin the unlawful filing and continued prosecution of the Plaintiffs' Civil Suit by directing the Plaintiffs to cease any further acts (a) to continue the Civil Suit against GMG or (b) to enforce the Plaintiffs' purported claims against GMG; (ii) remedy all prior violations of the Sale Order and the APA by, *inter alia*, ordering the Plaintiffs to cause the dismissal with prejudice of all claims and causes of action asserted by the Plaintiffs against GMG in the Civil Suit; and (iii) grant GMG such other and further relief as may be just and proper, including costs and attorney's fees incurred in connection with this Motion and defending the Civil Suit.

Dated:         New York, New York
               August 21, 2017

                              Respectfully Submitted,

                              **LATHAM & WATKINS LLP**

                              /s/ Peter M. Gilhuly

---

[12]    The Complaint also fails to state a claim on which relief can be granted.  GMG expressly reserves the right to move to dismiss the Complaint and file any other appropriate motions at a later time if necessary.

Peter M. Gilhuly, Esq.
Adam E. Malatesta, Esq. (*pro hac vice* admission
pending)
Shawn P. Hansen, Esq. (*pro hac vice* admission
pending)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email: Peter.Gilhuly@lw.com
Email: Adam.Malatesta@lw.com
Email: Shawn.Hansen@lw.com

**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Thomas G. Hentoff, Esq. (*pro hac vice* admission
pending)
Email: THentoff@wc.com

*Counsel for Gizmodo Media Group, LLC*