## **Exhibit C**

September 2016 Letter

LAW OFFICES
# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

THOMAS G. HENTOFF
(202) 569-8441
FAX (202) 824-4190
THentoff@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

September 16, 2016

BY EMAIL AND REGULAR MAIL

Charles J. Harder, Esquire
Harder Mirell & Abrams LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212

    Re:    Demand by RJ Bell and Pregame.com for removal of article from Deadspin website

Dear Mr. Harder:

    This law firm represents UniModa, LLC.  Following up on my August 30, 2016 letter to you, I write to provide the promised substantive response to your August 22, 2016 letter sent on behalf of your clients Mr. RJ Bell and Pregame.com.  Your letter demanded that UniModa remove all or specified portions of the article headlined "How America's Favorite Sports Betting Expert Turned a Sucker's Game into an Industry," available at http://deadspin.com/how-america-s-favorite-sports-betting-expert-turned-a-s-1782438574 and posted on the Deadspin website on June 23, 2016, 2014.

    As you know, at the time of your letter, UniModa was in the process of acquiring certain Gawker Media LLC assets as part of the Gawker Media bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of New York, including the Deadspin and Jezebel websites, but had not yet acquired them.  The bankruptcy court-approved acquisition recently closed and UniModa now operates Deadspin.

    Your letter on behalf of Mr. Bell and Pregame.com (collectively, "Bell") is one of four letters on behalf of clients that you sent on the same day to UniModa regarding articles that were published on the Deadspin or Jezebel websites prior to UniModa's acquisition and that are a part of the archives available on these websites.  For the reasons stated below, your assertion that UniModa can be liable for defamation based on the continued availability of articles on these websites is without legal merit.  Having said that, as an editorial matter UniModa will consider a reasonable and sufficiently supported request that allegedly false information in such an article be corrected.

WILLIAMS & CONNOLLY LLP

Charles J. Harder, Esquire
September 16, 2016
Page 2

      Your letter attached a demand letter that you sent to Gawker Media on June 27, 2016 and demanded that UniModa take down the article based on that letter.  Your letter did not mention however, the detailed and substantive response letter that Gawker Media's President and General Counsel Heather Dietrick sent you on July 1, 2016.  Among other things, Ms. Dietrick's letter explained and defended the reporting of the article, including on the link with sportsbooks, and refuted the assertion that the article's reporting on the record of Pregame's touts, which was based on records taken from the Pregame.com website, was inaccurate.

      Ms. Dietrick's letter made the following specific request to you:

> Should your client have documentation contradicting the article, or should he now be willing to consider the support for the article and provide an explanation for why it actually does not prove what it appears to, Deadspin would be happy to interview him and/or consider additional factual information he provides.  As you must know, a publisher cannot retract a statement that was published based on a mass of evidence simply because the subject of the statement has an attorney who says it's untrue.  Without a plausible counter explanation or documentation, we stand by the carefully and thoroughly reported article, one that goes to significant lengths to incorporate your clients' positions.

      It our understanding that you have not responded to Ms. Dietrick's letter.  UniModa extends to you the same offer: to provide specific support for your assertion that certain of the statements in the article about your clients are false to enable UniModa to evaluate your claims of falsity.

      We have the following responses to your assertion that the availability of the article on the Deadspin website exposes UniModa to liability for defamation:

      First, for the reasons stated above, your letter has not provided information sufficient to support the claim that certain statements about your clients are false.  If you provide such information and sufficient support, UniModa will evaluate it.

      Second, the single-publication rule is a defamation doctrine providing that any potential liability for defamation attaches only to the first dissemination of an allegedly defamatory communication in a newspaper, magazine, book, or similar publication and not to its continued distribution to the public thereafter.  In the Internet context, courts have uniformly held that the single-publication rule protects the operator of a website accessible to the general public from liability based on the continued availability on the website of a previously posted article.  *See, e.g.*, *Firth v. State,* 98 N.Y.2d 365, 371-72 (2002); *Jankovich v. Int'l Crisis Grp.*, 494 F.3d 1080, 1087 (D.C. Cir. 2016).  A change in the ownership of the website while the article remains

WILLIAMS & CONNOLLY LLP

Charles J. Harder, Esquire
September 16, 2016
Page 3

available on the website has no impact on the application of this rule.  *See, e.g., In re Philadelphia Newspapers*, 450 B.R. 99, 108 (Bankr. E.D. Pa. 2011).  The single-publication rule bars the imposition of liability against UniModa.

      Third, pursuant to 11 U.S.C. § 363 and the Southern District of New York Bankruptcy Court's August 2, 2016 Order approving the acquisition, UniModa purchased the Gawker Media assets free and clear of all claims, like this, that arose prior to the completion of the acquisition.

      Fourth, the provisions of 47 U.S.C. § 230 preclude liability here for UniModa because, as a "provider . . . of an interactive computer service," UniModa cannot "be treated as the publisher or speaker of any information provided by another information content provider."  Here, Gawker Media, not UniModa, was responsible for "the creation or development of" the article and thus Gawker, not UniModa, is its "provider" under Section 230.

      The discussion of defenses herein is merely illustrative.  A number of other reasons exist why UniModa would not be liable for defamation based on the continued availability of the article.

      If you have any questions about the foregoing, please do not hesitate to contact me.  This letter is sent without waiver of any defenses, claims, rights, or remedies available to UniModa, all of which are expressly reserved.

Sincerely,

*Thomas G. Hentoff*

Thomas G. Hentoff

cc:    Courtenay O'Connor, Esquire
        UniModa, LLC