ROPES & GRAY LLP
Gregg M. Galardi
Joshua Y. Sturm
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Plan Administrator*
*for the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
|                                   :
In re                              :    Chapter 11
                                   :
Gawker Media LLC, *et al.*,[1]      :    Case No. 16-11700 (SMB)
                                   :
            Debtors.               :    (Jointly Administered)
                                   :
------------------------------------------------------x

**JOINDER AND RESERVATION OF RIGHTS BY THE PLAN
ADMINISTRATOR TO THE MOTIONS OF RYAN GOLDBERG
AND GIZMODO MEDIA GROUP, LLC TO ENFORCE THE SALE
ORDER AND THE CONFIRMATION ORDER AND BAR CERTAIN
PLAINTIFFS FROM PROCECUTING THEIR STATE COURT ACTIONS**

The Plan Administrator for Gawker Media LLC ("Gawker Media"), Gawker Media Group, Inc. ("GMGI"), and Gawker Hungary Kft. ("Gawker Hungary"), the debtors and former debtors in possessions (collectively, the "Debtors") in the above-captioned cases (the "Bankruptcy Cases"), hereby files this reservation of its rights and joins (the "Joinder") in the (a) the *Motion of Ryan Goldberg (I) To Enforce Order Confirming Amended Joint Chapter 11 Plan of Liquidation and (II) To Bar and Enjoin Creditors From Prosecuting Their State Court*

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

64666764_3

*Actions* [Docket No. 981] (the "Goldberg Motion") and (b) *Motion of Gizmodo Media Group, LLC to Enforce the Sale Order and to Bar Certain Plaintiffs from Prosecuting Their State Court Actions* [Docket No. 985] (the "Gizmodo Motion" and together with the Goldberg Motion, the "Enforcement Motions").[2] In support of this Joinder, the Plan Administrator respectfully states as follows:

**BACKGROUND**

1. On June 10, 2016 (the "Petition Date"), Gawker Media filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On June 12, 2016, GMGI, and Gawker Hungary each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. On June 23, 2016, an article (the "Goldberg Article") authored by Ryan Goldberg ("Goldberg") was posted on Deadspin.com, a website that, at the time, was operated by Gawker Media. The Goldberg Article explored the sports-betting industry, focusing particularly on the activities of Randall James Busack ("Busack"), a well-known sports-betting figure, and his company, Pregame LLC dba Pregame.com ("Pregame").

3. On June 27, 2016, counsel to Busack and Pregame, Charles J. Harder of Harder Mirell & Abrams ("Harder" and, together with Pregame and Busack, the "Plaintiffs"), sent a letter to Gawker Media and Goldberg demanding that they remove the allegedly false statements contained in the Goldberg Article and publish a correction, apology, and retraction.

4. On July 20, 2016, the Debtors filed their schedules of assets and liabilities with the Court pursuant to section 521 of the Bankruptcy Code. On "Schedule E/F: Creditors Who Have Unsecured Claims," Gawker Media identified a claim for "Busack, Randall (aka RJ Bell)"

---

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Enforcement Motions, as applicable.

in an "undetermined amount" for a "Threatened Litigation Claim" and categorizes the claim as contingent, unliquidated and disputed.

5.      On July 8, 2016, this Court entered the *Order (I) Authorizing and Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (II) Authorizing and Approving the Debtors Performance of Pre-Closing Obligations Under the Stalking Horse Asset Purchase Agreement, (III) Approving Notice Procedures, (IV) Scheduling a Sale Hearing and (V) Approving Procedures for Assumption and Assignment of Certain Contracts and Leases and Determining Cure Amounts* [Docket No. 82] (the "Bidding Procedures Order"), granting certain relief requested by the Sale Motion and scheduling an auction for the sale of substantially all of the Debtors' assets.  Pursuant to the Bidding Procedures Order, the Debtors served the *Notice of (A) Solicitation of Bids to Purchase Substantially all the Debtors' Assets, (B) Auction and (C) Sale Hearing* (the "Sale Notice") on Harder.[3]  The Debtors also published the Sale Notice in the national edition of *USA TODAY*.[4]

6.      On August 11, 2016, the Bankruptcy Court entered an order [Docket No. 168] (the "Bar Date Order") establishing certain dates and deadlines for filing proofs of claim in these chapter 11 cases.  The Bar Date Order required that any person or entity with a claim arising between the Petition Date and July 31, 2016 against any of the Debtors file a request for payment on or before September 29, 2016 (the "Claims Bar Date").  Bar Date Order, ¶ 10.

7.      In accordance with the Bar Date Order, the Debtors provided written notice of the Claims Bar Date to each of Busack and Harder.[5]  The Debtors also published notice of the

---

[3] *See Affidavit of Publication* [Docket No. 103].

[4] *See Affidavit of Publication* [Docket No. 107].

[5] *See Affidavit of Publication* [Docket No. 217].

-3-

Claims Bar Date in the national edition of *USA TODAY*.[6] None of the Plaintiffs filed a proof of claim prior to the Claims Bar Date.

8. On September 9, 2016, pursuant to this Court's *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (II) Approving and Authorizing the Debtors' Entry Into the Asset Purchase Agreement and (III) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* [Docket No. 214] (the "Sale Order"), the Debtors sold substantially all of their assets to Unimoda, LLC (the "Sale"). The Debtors provided written notice of the Sale Order to Harder.[7]

9. On September 30, 2016, the Debtors filed the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 308], which included as Exhibit A thereto the *Debtors' Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* (the "Original Plan").

10. On November 2, 2016, the Debtors filed the *Disclosure Statement for the Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 403], which included as Exhibit A thereto the *Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* (as further amended from time to time, the "Amended Plan"). The Amended Plan was the result of extensive arms-length negotiations with the Debtors and their key stakeholders in the Bankruptcy Cases, including Harder, as counsel to certain litigation claimants, who played a major role in these negotiations.

---

[6] *See Affidavit of Publication* [Docket No. 201, 271].

[7] *See Affidavit of Publication* [Docket No. 220].

11. On December 22, 2016, the Bankruptcy Court confirmed the Amended Plan pursuant to the *Findings of Fact, Conclusions of Law, and Order Confirming the Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* [Docket No. 638] (the "Confirmation Order"). The Effective Date (as defined in the Amended Plan) occurred on March 17, 2017. The Debtors provided written notice of the Confirmation Order and the Effective Date to each of Busack, Pregame and Harder.[8]

12. On June 22, 2017, the Plaintiffs filed a complaint (the "Complaint") against Goldberg and Gizmodo Media Group, LLC ("Gizmodo" and together with Goldberg, the "Defendants") in the Supreme Court for the State of New York, County of New York asserting claims for defamation, intentional interference with prospective economic advantage and tortious interference with contractual relations arising out of the Goldberg Article. Complaint, ¶¶ 2 and 17-20. Plaintiffs claim damages in excess of $10 million, seek compensatory and punitive damages in an amount to be determined at trial, seek an injunction prohibiting the Defendants from publishing or re-publishing the alleged defamatory statements and seek a jury trial on the Complaint. Complaint ¶¶ 49-50, 56-57, 63-64, Prayer for Relief and Jury Trial Demand.

13. Despite the fact that Harder was intimately involved in the Bankruptcy Cases including the negotiation of the amendments to the Original Plan, and that Busack, Pregame and Harder had actual notice that the claims asserted in the Complaint were intended to be released and subject to the injunction provisions set forth in the Amended Plan, the Complaint contains no mention of the Bankruptcy Cases, the Amended Plan, the Confirmation Order, or the fact that the Plaintiffs did not file a proof of claim by the applicable deadline.

---

[8] *See Notice of (I) Entry of Order Confirming the Debtors' Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft. and (II) Occurrence of Effective Date* [Docket No. 825]; *Affidavit of Service* [Docket No. 837].

**JOINDER**

14. The Plan Administrator joins in the Enforcement Motions.

15. As set forth in the Enforcement Motions, the Sale Order expressly prohibits all persons and entities from asserting any claim or cause of action, including "any and all claims and causes of action of defamation, libel or slander with respect to any content published by [the Debtors,]" against Gizmodo that arose prior to September 9, 2016, the closing date of the Sale. See Sale Order, ¶¶ 14, 21; APA, Art. I. There is no question, that the tortious conduct alleged in the Complaint occurred before entry of the Sale Order and the closing of the sale of assets to Unimoda, LLC. The Sale Order was intended to protect against exactly the types of claims raised in the Complaint being brought months after the closing of the Sale and confirmation of the Amended Plan.

16. The Debtors' previously emphasized this intent in the *Debtors' Reply in Support of Motion for an Order Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, and Related Relief* [Docket No. 190] (the "Sale Reply"). In the Sale Reply, the Debtors' responded directly to a so-called "reservation of rights" filed by two tort claimants [Docket No. 148] (the "Reservation of Rights"), which constituted a thinly veiled threat to pursue future litigation, just as is being pursued now, against not only the Debtors but also the successful purchaser of the Debtors' assets.[9] As the Debtors asserted in the Sale Reply, the Plan Administrator now urges the Court to reject any attempt by parties to manufacture claims against Gizmodo based on leaving already-published statements online, and enforce the Sale Order to protect Gizmodo from any such actions. See Sale Reply ¶ 18 (citing Gureghian v. Charter School Mgmt., Inc. (In re

---

[9] Because the Reservation of Rights was withdrawn, the Court did not need to overrule the "reservation of rights" and was not asked to rule on the application of the single publication rule at the hearing to approve the Sale. See Transcript of Sale Hearing at 28:1-4, 72:7-8, 72:11-13.

Philadelphia Newspapers LLC), 690 F.3d 161, 174 (3d Cir. 2012) (extending single publication rule to internet based material); Firth v. State, 98 N.Y.2d 365, 371 (2002) ("The mere addition of unrelated information to a Website" is not a republication); Biro v. Conde Nast, 963 F.Supp.2d 255, 267 (S.D.N.Y. 2013) ("Under New York's single publication rule, it is irrelevant, for statute of limitation purposes, that a story remains online after its publication," even if new user comments are added); Young v. Suffolk Cnty., 705 F.Supp.2d 183, 212 (E.D.N.Y. 2010) ("Under the single publication rule, the fact that a story remains available online does not restart the statute of limitations")).

17. More importantly, as set forth in the Enforcement Motions, pursuant to the Confirmation Order, the Debtors and the Debtors' former writers, including Ryan Goldberg, were released under the provisions of the Amended Plan from claims such as those raised in the Complaint. The Debtors anticipated that, despite notice of and involvement in, the Bankruptcy Cases, certain litigants would not hesitate to make use of all possible opportunities to litigate and harass the Debtors, Gizmodo, and, most importantly, writers and employees such as Goldberg. The release provided by the Amended Plan and approved by the Court in the Confirmation Order, unconditionally and irrevocably released, among others, the Debtors, Gizmodo, and the Debtors' employees, from the types of claims that could have been asserted in the Bankruptcy Cases but were not for strategic reasons. Furthermore, the injunction contained in the Amended Plan bars the Plaintiffs from bringing such released claims, at least absent relief from this Court.

18. Critically, Harder was involved in the negotiation of the amendments to the Original Plan and confirmation of the Amended Plan. Busack, Pregame and Harder all had actual notice of the third-party releases and the injunction provisions set forth in the Amended Plan. Nonetheless, they raised no objections, reserved no rights, and with full knowledge filed

-7-

the Complaint, without any mention of the Bankruptcy Cases, the Amended Plan, the Confirmation Order, or the fact that the Plaintiffs did not file a proof of claim by the appropriate deadline. Such strategic conduct should not be countenanced and the Sale Order and the Confirmation Order should bar prosecution of the Complaint.

## RESERVATION OF RIGHTS

19. The Plan Administrator hereby reserves its right to raise other or further arguments with respect to the Enforcement Motions or any objection filed in response thereto. The Plan Administrator also reserves the right to supplement this Joinder as more information becomes available to the Plan Administrator.

## NOTICE

20. Notice of this Joinder has been provided in accordance with the requirements of Bankruptcy Rule 3007(a), the Case Management Procedures entered on July 13, 2016 [Docket No. 93], and the Local Bankruptcy Rules of this Court. The Plan Administrator respectfully submits that further notice of this Joinder is neither required nor necessary.

WHEREFORE, for the reasons set forth herein, the Plan Administrator respectfully requests that the court grant the Enforcement Motions.

Dated: September 5, 2017  
      New York, New York

*/s/ Gregg M. Galardi*  
ROPES & GRAY LLP  
Gregg M. Galardi  
Joshua Y. Sturm  
1211 Avenue of the Americas  
New York, NY 10036-8704  
Telephone: (212) 596-9000  
Facsimile: (212) 596-9090  
gregg.galardi@ropesgray.com  
Joshua.sturm@ropesgray.com

*Counsel to the Plan Administrator  
for the Debtors*