Hearing Date and Time:  September 28, 2017 at 10:00 a.m. (Eastern Time)

**SAUL EWING ARNSTEIN & LEHR LLP**
Sharon L. Levine
Dipesh Patel
555 Fifth Avenue
Suite 1700
New York, NY 10017
Telephone: (212) 980-7200

- and -

1037 Raymond Boulevard
Suite 1520
Newark, NJ 07102
Telephone: (973) 286-6713
Facsimile: (973) 286-6821

*Attorneys for Ryan Goldberg*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------x | : | |
| In re | : | Chapter 11 |
| | : | |
| Gawker Media LLC, *et al.*,[1] | : | Case No. 16-11700 (SMB) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| ------------------------------------------------------x | | |

**REPLY OF RYAN GOLDBERG TO OBJECTION TO MOTION
(I) TO ENFORCE ORDER CONFIRMING AMENDED JOINT CHAPTER 11 PLAN
OF LIQUIDATION AND (II) TO BAR AND ENJOIN CREDITORS FROM
<u>PROSECUTING THEIR STATE COURT ACTION</u>**

---

[1]  The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10020. Kinja Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10020.

100697.18 09/25/2017

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

THE RELEASE AND INJUNCTION PROTECT GOLDBERG .................................... 3

    A.    Goldberg Provided Considerable Value in Exchange for the Third-Party Release and Injunction ........................................................................... 3

    B.    Plaintiffs are Deemed to Have Received a Distribution ....................... 5

    C.    Goldberg Did Not Engage in Willful Misconduct ................................. 7

    D.    Equity Demands Enforcement of the Third-Party Release .................. 7

    E.    The First Amendment Demands Enforcement of the Third-Party Release .......... 9

    F.    Plaintiffs Blatantly Violated the Plan's Injunction Provision ............. 9

CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*In re Cohoes Indus. Terminal, Inc.*,
  931, F.2d 222 (2d Cir. 1991) ............................................................................................10

*In re French Bourekas, Inc.*,
  175 B.R. 517 (Bankr. S.D.N.Y. 1994) ..............................................................................11

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*,
  6 N.Y.3d 371, 845 N.E.2d 1265 (2006) .............................................................................6

*In re Gorshtein*,
  285 B.R. 118 (Bankr. S.D.N.Y. 2002) ..............................................................................10

*Hudson v. I.R.S.*,
  No. 03-CV-172, 2004 WL 1006266 (N.D.N.Y. Mar. 25, 2004) ......................................10

*Jackman v. Tese-Milner (In re Aiolova)*,
  496 B.R. 123 (Bankr. S.D.N.Y. 2013) ................................................................................8

*Meighan v. Finn*,
  146 F.2d 594 (2d Cir. 1944), *aff'd*, 325 U.S. 300, 65 S. Ct. 1147,
  89 L. Ed. 1624 (1945) ......................................................................................................10

*In re Philadelphia Newspapers, LLC*,
  450 B.R. 99 (Bankr. E.D. Pa. 2011) ................................................................................3, 4

*Reyes v. Metromedia Software, Inc.*,
  840 F. Supp. 2d 752 (S.D.N.Y. 2012) ................................................................................6

*In re Sabine Oil & Gas Corp.*,
  555 B.R. 180 (Bankr. S.D.N.Y. 2016) ................................................................................4

*Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs.*,
  63 N.Y.2d 396, 472 N.E.2d 315 (1984) .............................................................................6

Ryan Goldberg ("Goldberg"), a former independent contractor of Gawker Media,[2] respectfully submits this reply (i) in response to Plaintiffs' objection to the Motion [D.I. 1006] (the "Objection") and (ii) in support of the Motion and represents as follows:

I. **PRELIMINARY STATEMENT**

1. Through their Objection, Plaintiffs seek to strip Goldberg of a release provided in exchange for valuable consideration. Not only did Goldberg, and the other Released Employees and Independent Contractors, provide the content which created the value for Gawker Media that allowed it to be sold to Gizmodo Media Group ("GMG"), resulting in a 100% distribution to all creditors under the Plan, but more importantly, Goldberg and each Released Employee and Independent Contactor provided added consideration for the third-party release and injunction by waiving their Debtor Indemnification Obligations claims. Goldberg, himself, received no cash distribution under the Plan and no reserve was established under the Plan to cover the cost of defending against the type of defamation claims asserted by Plaintiffs. The only benefit Goldberg received under the Plan was the protection afforded to him by the Plan's third-party release and injunction provisions – which were specifically intended to protect him from Plaintiffs' alleged claims.

2. Plaintiffs spent a significant amount of space in their Objection asserting (albeit incorrectly) that Gawker Media committed a parade of horribles, yet provided no explanation whatsoever as to why they chose not to sue, assert or otherwise preserve their claims against Gawker Media (and Goldberg) before the Court approved the sale and confirmed the Plan. Plaintiffs' failure to provide an explanation as to why they declined to pursue any remedy against

---

[2] Capitalized terms not otherwise defined herein shall have the same meaning as ascribed to them in the *Motion for Entry of an Order (i) Enforcing the Amended Joint Chapter 11 Plan of Liquidation filed by Gawker Media Group, Inc., Gawker Media LLC and Gawker Hungary KFT and (ii) Barring and Enjoining Pregame LLC, d/b/a Pregame.com, and Randall James Busack* [D.I. 981].

100697.18 09/25/2017

Gawker Media is further evidence that their Complaint is frivolous and that Plaintiffs should be required to compensate Goldberg for the costs and attorney's fees incurred in connection with the filing of this Motion and the defense of the Complaint filed in New York state court. *See* Motion, ¶ 69 n. 5. It also suggests that Plaintiffs and Plaintiffs' Counsel's ("Harder") actions are part of a continued scheme to personally attack, chill free speech and/or punish Goldberg, and potentially other journalists,[3] by exposing them to the heavy cost of defending themselves from litigation, when they no longer have indemnification or protection from their former employer, the now defunct Gawker Media. Perhaps Harder – who represented a number of other creditors who actually asserted, resolved and/or settled and received full payment on account of their allowed claims under the Plan – feared that Plaintiffs' claims, if successful, would have diluted those other recoveries.

3. Plaintiffs and Harder were fully aware of these proceedings, the deadline to file a proof of claim, the deadline to object to the sale of assets, and the deadline to object to the Plan that included the third-party release and injunction. Not only was Plaintiff Busack listed on the Debtors' schedules as a creditor holding a contingent, unliquidated and disputed claim in an undetermined amount, but Plaintiffs actually sent notice to Gawker Media of a potential claim on June 27, 2016 (the "June 2016 Letter"). *See* Motion, Exhibit B. Notwithstanding actual notice of an alleged claim and that Plaintiff Busack was listed on the Debtors' schedules as a creditor, Plaintiffs made no objections at all. Plaintiffs affirmatively decided not to participate in the

---

[3] While Goldberg's Motion only addresses the Complaint filed against him, on September 6, 2017, Harder commenced additional litigation against GMG and two former journalists employed by Gawker Media on account of an article published in May 2016 – prior to the Petition Date – on Gawker Media's Jezebel website. That action, entitled *INTERNATIONAL SCHERICK, LLC, a New York limited liability company aka "Superstar Machine"; and GREGORY SCHERICK, an Individual, Plaintiffs, against GIZMODO MEDIA GROUP, LLC, a Delaware corporation; ANNA MERLAN, an Individual; EMMA CARMICHAEL, an individual; and DOES 1-20, inclusive, Defendants*, is pending before the Supreme Court for the State of New York, County of New York, under Index No. 157939/2017.

-2-

claims reconciliation process – which resulted in the Debtors paying 100% to holders of allowed claims – and they must now live with the consequences of their inaction.

4. Plaintiffs appear to take the position that since they strategically chose not to file a claim in the bankruptcy proceedings – even though they were given every opportunity to do so – the release does not apply to them. That argument simply makes no sense – why would the Release Employees and Independent Contractors, including Goldberg, agree to give up indemnification rights if the release did not apply to all of their work for the Debtors?

5. Plaintiffs' interpretation of the Plan's third-party release provision impermissibly deletes the words "deemed to have received" from the Plan. If Plaintiffs are not the type of creditor "deemed to have received" a distribution, Goldberg is not sure who is.

6. Law, equity and consideration of the protections afforded by the First Amendment mandate the application of the release and injunction in favor of Goldberg.

## II. THE RELEASE AND INJUNCTION PROTECT GOLDBERG

### A. Goldberg Provided Considerable Value in Exchange for the Third-Party Release and Injunction

7. First and foremost, the third-party release in this case was proper. Third-party releases are important tools to protect writers and other content providers from the types of defamation claims asserted by Plaintiffs. *See In re Philadelphia Newspapers, LLC*, 450 B.R. 99 (Bankr. E.D. Pa. 2011).

8. Plaintiffs attempt to downplay the applicability and importance of *In re Philadelphia Newspapers, LLC* by arguing the language of the release provision in the Plan does not track word for word the release provision in *In re Philadelphia Newspapers, LLC*. While the specific words used in the release provisions may not be identical, the ultimate holding in *In re Philadelphia Newspapers, LLC* is extremely relevant in that it demonstrates that bankruptcy

-3-

courts will and do enforce third-party releases designed to protect individual, vulnerable writers from defamation claims. *See id.* at 103.

9. The release is particularly significant here where Goldberg, as well as the other Released Employees and Independent Contractors, substantially contributed to the Debtors' estates, by creating value through their content. And, they waived their right to future indemnification from the Debtors in exchange for a third-party release that would protect them from the very kind of claims asserted by Plaintiffs. Plaintiffs do not dispute this fact.

10. During the course of the Plan confirmation hearing, Debtors' counsel stated:

> [W]e believe the writers and editors have, in fact, provided substantial consideration in these cases. One, by continuing to write the articles and generating the revenue, but more importantly, as tailored, the writers and editors that have, in fact, voted in favor of the plan have given consideration, consideration not only with respect to the waiver of their claims, but also consideration that is tantamount and will amount to certain tax advantages and therefore, a bigger pot to all of the entities by allowing us to consummate that plan, make the distributions . . . .

*See* Tr. of Confirmation Hearing, p. 72: 17-25, p. 73: 1.

11. The fact that Plaintiffs themselves did not receive a distribution under the Plan in exchange for the release does not and should not limit the applicability of the release in favor of Goldberg. *See In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 292 (Bankr. S.D.N.Y. 2016) ("[T]he substantial contribution inquiry does not turn on whether the holders of the released claims receive consideration; it turns on whether the Debtors' estates have received consideration.").

12. Here, Goldberg had a Debtor Indemnification Obligation claim against Gawker Media and specifically waived it in exchange for the third-party release. As described in the Motion, Harder on behalf of Plaintiffs sent the June 2016 Letter to Gawker Media demanding retraction of the Article. In the June 2016 Letter, Harder acknowledged that any changes or

-4-

additions to the Article were made by Goldberg "in consultation with Deadspin/Gawker [Media]." *See* June 2016 Letter, p. 2. On July 1, 2016, Gawker Media's President and General Counsel, Heather Dietrick, responded to the June 2016 Letter (the "July Letter"). A copy of the July Letter is attached hereto as Exhibit A. In the July Letter, Gawker Media acknowledged that the Article was well-researched and was based, in part, on information provided by Plaintiff Busack. Plaintiffs, through Harder, asserted an alleged claim against Goldberg in the June 2016 Letter, which claim existed at the time the third-party release was granted. Therefore, at that point, Goldberg held a non-speculative Debtor Indemnification Obligation claim. Gawker Media's acknowledgment of the merits of the Article and its undertaking to respond to the June 2016 Letter further buttresses the viability of Goldberg's Debtor Indemnification Obligation claim against Gawker Media in connection with the Article.

13. Relying upon the third-party release to protect him from the kind of claims now asserted by Plaintiffs, Goldberg voted in favor of the plan and waived his valid Debtor Indemnification Obligation claim, substantially contributing to the Debtors' estates.

### B. Plaintiffs are Deemed to Have Received a Distribution

14. Nowhere in their Objection do Plaintiffs explain why they failed to liquidate or otherwise exercise their rights to enforce their alleged claims in the Debtors' bankruptcy cases.

15. Notwithstanding the fact that: (1) Plaintiffs were represented by Harder as their counsel who was intimately familiar with the plan resolution process, and asserted and received 100% payment for other client creditors; (2) Plaintiffs and Harder received notice of all relevant pleadings; and (3) Harder issued notice of a claim through the June 2016 Letter, Plaintiffs nevertheless affirmatively chose not to file a proof of claim, chose not to participate in the

bankruptcy proceedings and chose not to take any action to preserve their alleged claims that arose out of content Goldberg provided to and for the benefit of the Debtors.

16. Plaintiffs now argue that since they chose not to file a claim against the Debtors' estates, they did not receive and cannot be deemed to have received a distribution under the Plan, and are thus not bound by the third-party release. Plaintiffs' argument ignores the plain language of the release and in effect, deletes the "deemed to have received" language from the release altogether, thereby rendering it meaningless. That is contrary to law. *See God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 6 N.Y.3d 371, 374, 845 N.E.2d 1265, 1267 (2006) *citing Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 63, 115 S.Ct. 1212, 131 L. Ed.2d 76 (1995)); *see also Reyes v. Metromedia Software, Inc.*, 840 F. Supp. 2d 752, 756 (S.D.N.Y. 2012) (stating that it is a "cardinal rule that a contract should not be read to render any provision superfluous."); *Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs.*, 63 N.Y.2d 396, 402, 472 N.E.2d 315 (1984) ("[O]ne of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless.").

17. Simply put, Plaintiffs cannot be allowed to lie in wait just to assert claims against Goldberg for conduct that may be attributable to Gawker Media, a critical party in the reporting, editing and publication of the Article, when Plaintiffs had every opportunity to assert their claims in the bankruptcy proceedings. Allowing such conduct would render the release illusory and worthless.

18. Gawker Media's creditors received a 100% distribution under the Plan. If Plaintiffs' claims had any merit whatsoever (which Goldberg disputes), the appropriate course of action would have been to have such claims adjudicated before this Court through the claims reconciliation process. Plaintiffs and Harder intentionally ignored the opportunity for a full

recovery of their claim(s) (if any) from the Debtors under the Plan; they cannot now have a second "bite at the apple."

19. It was always the intention of the parties in the bankruptcy proceedings that the release would not only apply to those creditors that actually received a distribution under the Plan, but also to those creditors "deemed to have received" a distribution. For the "deemed to have received" language to have meaning, not every creditor needed to actually receive consideration in exchange for the release. *See* Motion, ¶¶ 40 and 54.

20. The only fair outcome for Goldberg, and the other Released Employees and Independent Contractors, is to apply the release and injunction to Plaintiffs' claims.

### C. Goldberg Did Not Engage in Willful Misconduct

21. Plaintiffs also misstate the terms of the release in arguing that their bare assertion of misconduct in the Complaint voids the release's validity.

22. Plaintiffs assert only unsubstantiated allegations and provide absolutely no evidence that Goldberg engaged in any willful misconduct. Simply asserting that Goldberg committed some sort of willful misconduct is not enough to fall outside the third-party release. Indeed, Plaintiffs' argument turns the release on its head. It would require that Goldberg litigate and win the underlying lawsuit to benefit from the release. This would defeat the purpose of the release, which was intended to protect Goldberg from this type of specious litigation, and the associated expense and risk.

### D. Equity Demands Enforcement of the Third-Party Release

23. Equity demands that the third-party release apply to Plaintiffs' claims.

24. As set forth in the Motion and above, Goldberg, as well as the other Released Employees and Independent Contractors, substantially contributed to the Debtors' estates by

waiving their Debtor Indemnification Obligation claims against the Debtors in exchange for a third-party release that would protect them from the very claims now being asserted by Plaintiffs.

25. Should this Court deny the Motion, the practical effect would be devastating. At the Debtors' request, Goldberg and the other Released Employees and Independent Contractors continued to provide content to the Debtors during the pendency of the Debtors' bankruptcy proceedings. Such content, by the Debtors' own admission, generated revenue and contributed to the asset sale value. Additionally, at the Debtors' request, Goldberg and the other Released Employees and Independent Contractors waived their indemnification claims against the Debtors in exchange for the release which they believed would protect them (and was intended to protect them) from these very claims. Under Plaintiffs' interpretation, the release would be gutted and effectively rendered meaningless. As a practical matter, this would leave Goldberg without any remedy to seek indemnification against the Debtors' estates. This was not what the Debtors, Goldberg and the other Released Employees and Independent Contractors intended.

26. This Court, as a court of equity, should not reward Plaintiffs – who purposefully ignored the bankruptcy proceedings (though Harder also represented key creditors) – by allowing them to sidestep the release. Plaintiffs had every opportunity to seek relief from this Court and failed do so. Having slept on their rights in the bankruptcy cases, the doctrine of *res judicata* now bars Plaintiffs from asserting their claims against Goldberg. *See Jackman v. Tese-Milner (In re Aiolova)*, 496 B.R. 123, 132 (Bankr. S.D.N.Y. 2013). Not enforcing the third-party release essentially rewards Plaintiffs and Harder for their complete and utter disregard of the deadlines this Court set in the bankruptcy proceedings.

-8-

### E. The First Amendment Demands Enforcement of the Third-Party Release

27. The First Amendment provides an important protection to the Released Employees and Independent Contractors, and supports applying the third-party release to bar Plaintiffs' claims against Goldberg.

28. As set forth in the Motion, in order to protect the First Amendment, support a free press and mitigate the chilling effect of claims based on content, journalists and other content providers are generally indemnified by their employers. Vitiating the release would chill the work of journalists nationwide as they would be unable to rely on the ability of their employers and publishers to protect them from financially ruinous lawsuits.

29. Here, we have a situation where the Debtors are no longer in operation, there is no reserve to protect Goldberg or other similarly situated writers from claims and, more importantly, Goldberg and the other Released Employees and Independent Contractors waived their indemnification claims against the Debtors in exchange for the release that was intended to protect them from the very claims asserted by Plaintiffs.

30. The Plan's release provision was designed and intended to respect the First Amendment and protect the Released Employees and Independent Contractors from potential liability arising out of content provided to the Debtors.

31. In support of this argument, Goldberg hereby incorporates the arguments set forth in the Amicus Brief [D.I. 1010, Exhibit 1] filed by The Society of Professional Journalists and related organizations.

### F. Plaintiffs Blatantly Violated the Plan's Injunction Provision

32. Plaintiffs never sought relief from the Plan's injunction provision and by filing the Complaint in state court, Plaintiffs blatantly violated that provision.

33. Plaintiffs attempt to justify their violation of the Plan's injunction by arguing that the injunction was never meant to extend to non-released claims. But, Plaintiffs' argument is directly contradicted by the plain language of the Plan's injunction provision which explicitly states that "the Bankruptcy Court may provide relief from the foregoing injunction with respect to claims, obligations, suits, judgments, damages, debts, rights, remedies, causes of action, and liabilities not otherwise released under Section[] 9.05 of this Plan."  Plan § 9.02. Plaintiffs' argument thus not only ignores the plain language of the Plan's injunction provision, but is also contrary to law. Under New York law, every word in the injunction provision has meaning. *See Meighan v. Finn*, 146 F.2d 594, 595 (2d Cir. 1944), *aff'd,* 325 U.S. 300, 65 S. Ct. 1147, 89 L. Ed. 1624 (1945) ("In construing a contract the court should adopt a construction, if reasonable, which gives meaning to every word the parties use."); *see also Hudson v. I.R.S.*, No. 03-CV-172, 2004 WL 1006266, at *7 (N.D.N.Y. Mar. 25, 2004) ("A contract should be construed to give meaning to every word or phrase contained in it."). Plaintiffs cannot now pick and choose which provisions of the Plan to abide by or rewrite depending on what benefits them.

34. Plaintiffs and Harder improperly filed the Complaint against Goldberg in state court, without any mention of the release or the extensive bankruptcy proceedings. They ignored this Court's injunction, without explanation, and forced Goldberg to move before this Court, at significant expense. Goldberg is entitled to be reimbursed for the attorney's fees and expenses reasonably incurred. *See In re Cohoes Indus. Terminal, Inc.*, 931, F.2d 222, 230 (2d Cir. 1991) ("A bankruptcy court may impose sanctions pursuant to 28 U.S.C. § 1927 if it finds that '[an] attorney's actions are so completely without merit as to require the conclusion that they must have been taken for some improper purpose such as delay.") (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)); *In re Gorshtein*, 285 B.R. 118, 124 (Bankr. S.D.N.Y. 2002)

-10-

(granting sanctions pursuant to 11 U.S.C. § 105(a)); *In re French Bourekas, Inc.*, 175 B.R. 517, 523-525 (Bankr. S.D.N.Y. 1994) (granting sanctions under 28 U.S.C. § 1927 and 11 U.S.C. § 105(a)).

### III. CONCLUSION

**WHEREFORE**, Goldberg respectfully requests that the Court (a) overrule Plaintiffs' Objection; (b) approve the Motion; and (c) grant such other and further relief, including awarding legal fees and costs, as the Court deems just and appropriate under the circumstances.

Dated: September 25, 2017                **SAUL EWING ARNSTEIN & LEHR LLP**

By:     */s/ Sharon L. Levine*
        Sharon L. Levine
        Dipesh Patel
        555 Fifth Avenue
        Suite 1700
        New York, NY 10017
        Telephone: (212) 980-7200
        sharon.levine@saul.com
        dipesh.patel@saul.com

                -and-

        1037 Raymond Boulevard
        Suite 1520
        Newark, NJ 07102
        Telephone: (973) 286-6713

        *Attorneys for Ryan Goldberg*