**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Peter M. Gilhuly, Esq. (admitted *pro hac vice*)
Adam E. Malatesta, Esq. (admitted *pro hac vice*)
Shawn P. Hansen, Esq. (admitted *pro hac vice*)
Email: Peter.Gilhuly@lw.com
Email: Adam.Malatesta@lw.com
Email: Shawn.Hansen@lw.com

**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Thomas G. Hentoff, Esq. (admitted *pro hac vice*)
Email: THentoff@wc.com

*Counsel for Gizmodo Media Group, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                    :
In re:                :     Chapter 11
                    :
Gawker Media LLC, *et al.*,[1]    :     Case No. 16-11700 (SMB)
                    :
             Debtors.    :     (Jointly Administered)
------------------------------------------------------------ x

**REPLY IN SUPPORT OF MOTION OF GIZMODO MEDIA GROUP, LLC TO
ENFORCE THE SALE ORDER AND TO BAR CERTAIN PLAINTIFFS FROM
PROSECUTING THEIR STATE COURT ACTIONS**

---

[1]     The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10020.  Gawker Hungary Kft's mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10020.

## Table of Contents

Page

I.  Preliminary Statement.........................................................................................1

II.  Argument ...........................................................................................................4

  A.  This Court Has Jurisdiction To Interpret And To Enforce The Sale Order............4

  B.  The Single-Publication Rule Bars The Civil Suit....................................6

  C.  Mandatory Abstention Is Inapplicable.................................................11

      1.  The Action (GMG's Motion) Arises In A Bankruptcy Case.....................12
      2.  The Action (GMG's Motion) Is Not Solely Based On A State Law
          Claim...................................................................................12

  D.  Permissive Abstention Is Inappropriate .............................................13

      1.  This Is A Core Proceeding........................................................15
      2.  This Proceeding Is Plainly Related To The Bankruptcy Cases ...............15
      3.  Non-Bankruptcy Law Does Not Predominate Over Bankruptcy
          Issues And The Relevant Non-Bankruptcy Law Is Well-Settled .............16
      4.  GMG Did Not Forum-Shop, And No Right To A Jury Trial Is
          Implicated ..........................................................................17
      5.  It Is Not Feasible To Sever The Claims, And The Motion Does Not
          Burden The Court ..................................................................18
      6.  Efficient Administration Of The Estate ........................................18
      7.  The Fact That Plaintiffs And GMG Are Non-Debtor Parties Does
          Not Weigh In Favor Of Abstention ...........................................18

III.  Conclusion ......................................................................................19

## Table of Authorities

## CASES

*In re AHT Corp.*,
  265 B.R. 379 (Bankr. S.D.N.Y. 2001) .................................................................. 13

*In re AOG Entm't, Inc.*,
  569 B.R. 563 (Bankr. S.D.N.Y. 2017) ......................................................... 4, 11, 15

*In re Casual Male Corp. (Casual Male)*,
  317 B.R. 472 (Bankr. S.D.N.Y. 2004) .................................................................. 19

*In re Dana Corp. Inc.*,
  No. 06-10354 (BRL), 2011 WL 6259640 (Bankr. S.D.N.Y. Dec. 15, 2011) ........................... 15

*Elliott v. GM LLC (In re Motors Liquidation Co.)*,
  829 F.3d 135 (2d Cir. 2016) .......................................................................... 5, 12

*Firth v. State*,
  98 N.Y.2d 365 (2002) ................................................................................ passim

*In re Gen. Growth Props., Inc.*,
  460 B.R. 592 (Bankr. S.D.N.Y. 2011) ...................................................... 5, 6, 12, 13

*Haefner v. New York Media, L.L.C.*,
  27 Misc. 3d 1208(A), 2009 WL 6346547 (Sup. Ct. N.Y. Cnty. 2009) .................................... 10

*In re Ionosphere Clubs, Inc.*,
  108 B.R. 951 (Bankr. S.D.N.Y. 1989) ................................................................... 15

*Kirschner v. Grant Thornton LLP (In re Refco, Inc. Secs. Litig.)*,
  628 F. Supp. 2d 432 (S.D.N.Y. 2008) ............................................................. 11, 14

*Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*,
  304 F.3d 223 (2d Cir. 2002) ............................................................................ 5

*In re Motors Liquidation Co.*,
  522 B.R. 13 (Bankr. S.D.N.Y. 2014) ..................................................... 15, 16, 17, 19

*In re New York Skyline, Inc.*,
  471 B.R. 69 (Bankr. S.D.N.Y. 2012) .................................................................... 5

*In re Philadelphia Newspapers, LLC*,
  450 B.R. 99 (Bankr. E.D. Pa. 2011) ............................................................. 6, 7, 8, 17

*In re Portrait Corp. of Am., Inc.*,
  406 B.R. 637 (Bankr. S.D.N.Y. 2009) ................................................................... 14

ii

*Prime Healthcare Servs., Inc. v. Hudson Hosp. Propco, Inc. (In re Christ Hosp.)*,
No. 14-472 (ES), 2014 U.S. Dist. LEXIS 128409 (D.N.J. Sept. 12, 2014) ........................ 6, 15

*In re Residential Capital, LLC*,
No. 12-12020 (MG), 2015 WL 4747785 (Bankr. S.D.N.Y. Aug. 4, 2015) ............................ 16

*Rinaldi v. Viking Penguin, Inc.*,
52 N.Y.2d 422 (1981).......................................................................................................... 8, 9

*Rosetta Res. Operating LP Calpine Corp. v. Pogo Producing Co. (In re Calpine Corp)*,
361 B.R. 665 (Bankr. S.D.N.Y. 2007) .................................................................................. 14

*Stern v. Marshall*,
564 U.S. 462 (2011) .............................................................................................................. 15

*Travelers Indem. Co. v. Bailey*,
557 U.S. 137 (2009) ........................................................................................................... 5, 12

*White v. Kubotek Corp.*,
487 B.R. 1 (D. Mass. 2012).................................................................................................... 6

*Winstar Holdings, LLC v. Blackstone Group L.P.*,
No. 07 CIV. 4634 (GEL), 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007)........................ 16, 17

*In re WorldCom, Inc. Secs. Litig.*,
293 B.R. 308 (S.D.N.Y. 2003) ......................................................................................... 11, 15

## STATUTES

11 U.S.C. § 363................................................................................................................ passim

28 U.S.C. § 1334(b) ................................................................................................................ 4

28 U.S.C. § 1334(c)(1)............................................................................................................ 14

28 U.S.C. § 1334(c)(2)............................................................................................................ 11

42 Pa.C.S. § 8341(b) ................................................................................................................ 8

Gizmodo Media Group, LLC ("GMG") hereby submits this reply (the "Reply") in support of the *Motion of Gizmodo Media Group, LLC to Enforce the Sale Order and to Bar Certain Plaintiffs from Prosecuting Their State Court Actions* [Docket No. 985] (the "Motion")[2] and in response to the *Objection of Pregame LLC and Randall James Busak [sic] to Motions of (1) Gizmodo Media Group, LLC [Dkt. No. 985] and (2) Ryan Goldberg [Dkt. No. 981], Seeking to Enforce Orders of this Court and Bar Prosecution of a State Court Action and in Response to the Joinder of the Plan Administrator [Dkt. No. 997]* [Docket No. 1006] (the "Objection"). In support of this Reply, GMG respectfully represents as follows:

## I.    **PRELIMINARY STATEMENT**

1.    GMG's straightforward Motion asks this Court to apply the fundamental principle that a court may interpret and enforce its own order. Indeed, Plaintiffs concede that "ordinarily the Court has jurisdiction to interpret or enforce its own orders." Objection, ¶ 34. Yet Plaintiffs go to great lengths (and, in doing so, cast irrelevant and unfounded aspersions on Gawker Media) to persuade the Court that it lacks jurisdiction to enforce the Sale Order. Plaintiffs' position is entirely without merit.

2.    As frequently occurs in bankruptcy cases in which a debtor's assets are sold under Bankruptcy Code Section 363, the Court is being asked to determine whether certain creditors' claims are barred as against the purchaser, GMG.[3] In this regard, this Court's August 28, 2016 Sale Order – of which Plaintiffs do not dispute they had proper notice and an opportunity to be heard prior to its entry – provides that:

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

[3]    Although Plaintiffs make much of the fact that GMG's request for enforcement is being made by a non-debtor, that fact is hardly surprising or consequential. Indeed, it is the *non-debtor* purchaser of a debtor's assets that typically needs to seek enforcement of a sale order. Carried to its logical conclusion, Plaintiffs' misplaced reliance on the non-debtor status of the parties suggests that no bankruptcy court may *ever* enforce its own sale order against a creditor. This is simply not the law, in this or – as far as GMG has been able to ascertain – in any other circuit.

1

> [A]ll persons and entities . . . , including all . . . litigation claimants
> and other creditors holding Adverse Interests arising under or out
> of, in connection with, or in any way relating to, the Debtors, the
> Acquired Assets, the ownership, sale or operation of the Acquired
> Assets and the business prior to the Closing or the transfer of
> Acquired Assets to Buyer . . . , *are hereby forever barred,*
> *estopped and permanently enjoined from asserting such Adverse*
> *Interests . . . against Buyer, its property or the Acquired Assets*.

*See* Sale Order, ¶ 14 (emphasis added).

3.      Thus, the central issue for this Court is whether the three causes of action

Plaintiffs have alleged in the Civil Suit are "Adverse Interests" within the scope of the Sale

Order.  "Adverse Interests" include all claims, whether fixed or contingent, or arising prior to or

subsequent to the commencement of the Bankruptcy Cases, including "any and all claims and

causes of action of defamation, libel or slander *with respect to any content published by [the*

*Debtors] prior to [the Sale Closing Date]*."[4]  APA, Art. I (emphasis added); *see* Plan, § 1.01

(defining "Sale Closing Date" as September 9, 2016).  The Complaint in the Civil Suit alleges a

cause of action for defamation and two tortious interference causes of action – all related to the

content of the Article, which Debtor Gawker Media published on June 23, 2016 on its website,

Deadspin.com.

4.      Obviously, in order to determine whether Plaintiffs' claims are "Adverse

Interests," this Court must examine the state law causes of action Plaintiffs are seeking to assert.

As discussed in the Motion and in further detail below, under the "single-publication rule," the

Article was published (and Plaintiffs' causes of action, if any, arose) only *once* – on June 23,

2016, more than 11 weeks *before* the Sale Closing Date.  As a matter of unambiguous New York

---

[4]      Contrary to Plaintiffs' unfounded assertion that GMG's Motion is "frivolous" because it "fails to identify
any provision of the Sale Order that requires this Court's 'interpretation'" (Objection, ¶ 3), the Motion and this
Reply make abundantly clear that GMG is seeking the Court's interpretation of the term "Adverse Interests," as
defined and used in the Sale Order, and its interpretation and enforcement of the free and clear provisions set forth in
the Sale Order.

2

law, no republication occurred when GMG acquired the Debtors' assets and merely allowed the

Article to remain online. *See Firth v. State*, 98 N.Y.2d 365, 371-72 (2002). Thus, the state law

causes of action Plaintiffs seek to pursue against GMG in the Civil Suit constitute Adverse

Interests, the assertion of which is explicitly "barred, estopped and permanently enjoined" by this

Court's Sale Order.

5.      Plaintiffs were hardly bystanders to the Bankruptcy Cases – and they do not

contend otherwise. Gawker Media published the Article less than two weeks after the Petition

Date. Charles Harder, counsel to Pregame and Busack, who was intimately involved in the

Bankruptcy Cases,[5] sent Gawker Media a letter on June 27, 2016, just four days after the Article

was published, demanding that the allegedly false statements contained in it be removed and that

a correction, apology, and retraction be issued. The letter stated: "We understand that UniModa

LLC, Univision Holdings, Inc. and/or Fusion Media Group . . . recently agreed to purchase

substantially all of the assets of Gawker, including Deadspin.com." Motion, Ex. A at p. 1. This

letter is a clear admission that Plaintiffs knew of the impending Sale prior to the Sale Closing

Date and prior to the entry of the Sale Order.

6.      Plaintiffs had every opportunity to object to the Sale Order and/or to assert claims

against the publisher of the Article, Gawker Media. Instead, for reasons known only to them,

Plaintiffs elected to do nothing – they sat on their rights for *almost a full year after* the Bidding

Procedures Order was entered, *more than 10 months after* the Auction was held, *nearly 10*

*months after* the Sale Order was entered, and *six months after* the Plan Confirmation Order was

entered. It was not until one day before the statute of limitations expired that Plaintiffs brought

---

[5]      Harder, who was also counsel to each of the three creditors on the Committee, is listed as a notice party on
the Debtors' consolidated list of the 50 largest unsecured creditors. Accordingly, Plaintiffs were directly notified of,
among other things: (i) the filing of the Bankruptcy Cases; (ii) the first day motions and orders; (iii) the Sale Motion;
(iv) the Bidding Procedures Order; (v) the Auction; (vi) the Sale Hearing; and (vii) the Sale Order. In addition,
Harder personally attended a number of hearings in the Bankruptcy Cases, *including the Sale Hearing*.

the prohibited Civil Suit against GMG in New York state court.  Plaintiffs should not be

rewarded for lying in wait and watching while this Court administered the Bankruptcy Cases and

approved the free and clear asset sale to GMG, only to spring into action now and to assert that

the Court lacks jurisdiction and/or should choose not to interpret and enforce its own order.

7.      Plaintiffs' position is not only untenable and legally unsupportable; there are also

strong policy grounds for rejecting their contentions.  Purchasers under Section 363, like GMG,

*must* be able to rely upon bankruptcy courts to interpret and to enforce orders approving asset

sales free and clear of all liens, claims and encumbrances.  Section 363 sales – and the statutory

benefits that are available to Section 363 purchasers – are obviously integral to the success of

many bankruptcy cases.  Yet Plaintiffs would have this Court severely undermine the protections

afforded to purchasers by refusing to give effect to the uncontested terms of its own Sale Order,

leaving future purchasers legitimate reason to question the wisdom of entering into a 363 sale, or

pricing into it the very real possibility that "free and clear" may mean nothing at all.

8.      GMG – which contributed roughly $135 million of value to the Debtors' estates

in exchange for the Acquired Assets – is entitled to the full benefit of its bargain (*e.g.*, that the

Acquired Assets would be delivered free and clear of all Adverse Interests).  It is thus imperative

that this Court exercise its authority to enforce the Sale Order and bar Plaintiffs from pursuing

the Civil Suit against GMG.

## II.    <u>ARGUMENT</u>

### A.    <u>This Court Has Jurisdiction To Interpret And To Enforce The Sale Order</u>

9.      Bankruptcy jurisdiction "extends to all cases and to all civil proceedings . . .

'arising under title 11, or arising in or related to cases under title 11.'"  *In re AOG Entm't, Inc.*,

569 B.R. 563, 573 (Bankr. S.D.N.Y. 2017) (quoting 28 U.S.C. § 1334(b)).  As set forth below,

this Court plainly has jurisdiction to interpret and to enforce the Sale Order.

10.     In *Elliot v. General Motors LLC*, in response to New GM's motion to enforce a sale order, the Second Circuit considered whether the Bankruptcy Court for the Southern District of New York had "arising in" jurisdiction to enforce its prior order.  *See Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 152-53 (2d Cir. 2016).  The court determined that "[a]t a minimum, a bankruptcy court's 'arising in' jurisdiction includes claims that are not based on any right expressly created by [T]itle 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.* at 153 (quotations omitted).  As the Second Circuit explained:

> ***A bankruptcy court's decision to interpret and enforce a prior sale order falls under this formulation of "arising in" jurisdiction.***  An order consummating a debtor's sale of property would not exist but for the Code . . . , and the Code charges the bankruptcy court with carrying out its orders[.]   Hence, a bankruptcy court plainly ha[s] jurisdiction to interpret and enforce its own prior orders.

*Id.* (emphasis added) (quotations and citations omitted).

11.     Courts uniformly have concluded that bankruptcy courts have jurisdiction to interpret and to enforce their own orders.[6]  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."); *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir. 2002) ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders[.]"); *In re Gen. Growth Props., Inc.*, 460 B.R. 592, 598 (Bankr. S.D.N.Y. 2011)

---

[6]      Relying on *In re New York Skyline, Inc.*, Plaintiffs argue that this court lacks jurisdiction over GMG's Motion because "[a] court's subject matter jurisdiction is determined at the time that the action is commenced, and subsequent events do not affect it."  *See* Objection, ¶ 35; *In re New York Skyline, Inc.*, 471 B.R. 69, 78 (Bankr. S.D.N.Y. 2012).  However, here, there is no "subsequent event" affecting the Court's jurisdiction.  GMG is merely asking this Court to interpret and to enforce its prior order, which it plainly has jurisdiction to do.

(finding that there was "arising in" jurisdiction with respect to a state court action because it implicated the "enforcement or construction of a bankruptcy court order").[7]

12.    It is simply irrelevant to the existence of such jurisdiction that, as here, the Civil Suit is between two non-debtors and/or that a bankruptcy plan has been confirmed.  *See In re Gen. Growth Props., Inc.*, 460 B.R. at 598 ("A bankruptcy court *always* has jurisdiction to interpret its own orders.  It does not matter that the State Court Action is purportedly between two non-debtors, or that the Chapter 11 Cases have been confirmed.") (emphasis added) (citations omitted).

13.    This Court unquestionably has "arising in" jurisdiction to adjudicate the Motion and to interpret and to enforce the Sale Order.  This fact ends the jurisdictional inquiry.

### B.    The Single-Publication Rule Bars The Civil Suit

14.    GMG's Motion cites controlling New York case law regarding the single-publication rule, which holds that merely retaining on a website an article or report that had previously been posted on the website does not constitute a republication.  *See, e.g.*, *Firth*, 98 N.Y.2d at 371-72.  The Motion also cites an Eastern District of Pennsylvania Bankruptcy Court opinion holding that a website's mere change in ownership while an article remains online does not alter that well-established rule in any respect.  *See In re Philadelphia Newspapers, LLC*, 450 B.R. 99, 107-08 (Bankr. E.D. Pa. 2011); Motion, ¶¶ 50-59.

15.    Plaintiffs fail completely to rebut this authority in any meaningful or relevant way.  Nor do they even attempt to dispute the underlying facts establishing that, under the single-publication rule, GMG cannot be liable for publication of the Article, including that:

---

[7]    *See also Prime Healthcare Servs., Inc. v. Hudson Hosp. Propco, Inc. (In re Christ Hosp.)*, No. 14-472 (ES), 2014 U.S. Dist. LEXIS 128409, at *26 (D.N.J. Sept. 12, 2014) (holding that "the bankruptcy court assert[ed] its historic and time-honored jurisdiction to interpret and enforce its own prior orders") (quotations omitted); *White v. Kubotek Corp.*, 487 B.R. 1, 7 (D. Mass. 2012) ("The Bankruptcy Court had statutory authority to rule because interpreting and enforcing an order resulting from a prior 'core proceeding' also constitutes a 'core proceeding.'").

- the Article was posted by *non-party* Gawker Media on the Deadspin website on June 23, 2016, Motion, ¶ 9;

- GMG did not take possession of the Deadspin website until *two and one-half months later*, on September 9, 2016, *id.* at ¶ 16; and

- Plaintiffs' allegation is only that GMG did not thereafter *remove* the Article, not that GMG did anything to alter the Article or deliver it to a new audience, *id.* at ¶ 49.

16.      Thus, under the holdings in *Firth* and the numerous similar New York cases cited in the Motion, and in *Philadelphia Newspapers*, the single-publication rule bars Plaintiffs' claims in their entirety.  As the *Philadelphia Newspapers* court put it in the very scenario presented here:

> While the articles may remain extant and available online, neither was republished *after* [the purchaser] bec[a]me the owner of the papers.  Neither did [the purchaser] assume liability for defamation claims such as these [in the purchase agreement].  For that reason, the plaintiffs may not look to [the purchaser] for any recovery.

*In re Philadelphia Newspapers, LLC*, 450 B.R. at 108 (emphasis in original).[8]

17.      Plaintiffs have provided no contrary authority, and no legitimate basis for veering from these principles.  Plaintiffs' proposal for an *exception* to the single-publication rule that would reset defamation statute-of-limitations clocks to run anew any time a media company changes ownership – and that would apply to archival materials that are years or even decades old – would impose a chilling effect on both free speech and the free transfer of assets that the law encourages in bankruptcy and other settings.

---

[8]      The Motion also establishes that New York law requires the dismissal of Plaintiffs' two tortious interference causes of action as duplicative of their defamation cause of action (Motion, ¶¶ 60-64) – a point that Plaintiffs acknowledge (Objection, ¶ 29), but do not contest.

18.     Plaintiffs contend that this Court should not follow *Philadelphia Newspapers* because Pennsylvania "has a different single publication rule."  Objection, ¶ 68.  Tellingly, Plaintiffs do not even attempt to identify a single difference between the single-publication rule in Pennsylvania and New York that would have any effect on the outcome in this case.  There is none.  *Compare In re Philadelphia Newspapers, LLC*, 450 B.R. at 107 (noting that the Uniform Single Publication Act provides that "[n]o person shall have more than one cause of action for damages for libel . . . founded upon any single publication, or exhibition, or utterance, such as any one edition of a newspaper") (citing 42 Pa.C.S. § 8341(b)), *with Firth*, 98 N.Y.2d at 369 (describing the single-publication rule: "the publication of a defamatory statement in a single issue of a newspaper . . . is, in legal effect, one publication which gives rise to one cause of action") (citations omitted).  Indeed, on the critical issue of applying the single-publication rule in the online environment, the *Philadelphia Newspapers* court relies on *Firth*, the seminal decision of the *New York* Court of Appeals.  *See In re Philadelphia Newspapers, LLC*, 450 B.R. at 108.

19.     Plaintiffs' contention that *Philadelphia Newspapers* conflicts with the New York Court of Appeals' opinion in *Rinaldi v. Viking Penguin, Inc.*, 52 N.Y.2d 422, 435 (1981), is also plainly incorrect.  First, Plaintiffs concede that *Rinaldi* does *not* involve a change in ownership. *See* Objection, ¶ 68 (noting that the same "defendant own[ed] both publication trade names"). Second, in *Rinaldi* a defendant-publisher first published a hardcover book and a year later published a paperback edition of the same book – a classic example of a republication under New York defamation law.  *See Rinaldi*, 52 N.Y.2d at 428-30, 434-35.  After concluding that the change from hardcover to paperback amounted to a new publication, the court noted that other factors further supported the conclusion, including that the hardcover and paperback each had a

different publication year listed on its copyright page, along with a different publishing imprint. *See id.* at 430. Nothing in *Rinaldi* – or in any other case of which GMG is aware – states or supports the proposition that an exception to the single-publication rule exists when a book publisher, a movie studio or a website merely changes ownership.

20.     With no support from any legal authority of any kind, Plaintiffs assert that a purported "public policy" behind the single-publication rule is to "protect[] *one* publisher from multiple civil actions stemming from a single publication." Objection, ¶ 68 (emphasis added). No such public policy exists. To the contrary, as a matter of public policy, courts, including the New York Court of Appeals, focus on the danger from multiple lawsuits arising from a single *publication*. The cases say nothing about protecting a single *publisher*. For example, in *Firth*, the New York Court of Appeals discussed the importance of removing the risk of "increasing the exposure of *publishers* to stale claims," and of "a multiplicity of actions, leading to potential harassment and excessive liability, and draining of judicial resources." *Firth*, 98 N.Y.2d. at 369-70 (emphasis added). And, in a warning that applies fully here, the Court of Appeals cautioned that "a multiple publication rule would implicate an even greater potential for endless retriggering of the statute of limitations, multiplicity of suits and harassment of *defendants*. Inevitably, there would be a serious inhibitory effect on the open, pervasive dissemination of information and ideas over the Internet, which is, of course, its greatest beneficial promise[.]" *Id.* at 370 (emphasis added) (citations omitted).

21.     Plaintiffs argue erroneously that GMG "republished" the Article by adding links to the Deadspin website – not links to the Article itself – to the top banner of GMG webpages.[9]

---

[9]     Plaintiffs also contend that GMG's decision not to remove the Article in response to Plaintiffs' demand was purportedly "irresponsible" (Objection, ¶ 71), because the prior owner, non-party Gawker Media, supposedly had in the past published unrelated articles about unrelated individuals that were alleged to have invaded their privacy. *See id.* at ¶¶ 70-74.

*See* Objection, ¶ 79.  To the contrary, it is well established in New York that merely providing a

link to an article – let alone a link only to an entire website – does not constitute a republication

of the article.  *See, e.g.*, *Haefner v. New York Media, L.L.C.*, 27 Misc. 3d 1208(A), 2009 WL

6346547, at *5 (Sup. Ct. N.Y. Cnty. 2009) ("[B]ecause New York law provides that the

inclusion of internet hyperlinks to the original article in two later articles does not give rise to

republications, plaintiffs' two causes of action that are premised on such republications are time-

barred."), *aff'd sub nom. Haefner v. New York Media, LLC*, 82 A.D.3d 481, 918 (1st Dep't

2011); *see also Firth*, 98 N.Y.2d at 371 (holding that a modification of a website that is unrelated

to the defamatory content does not constitute a republication of the defamatory content).

22.     Finally, Plaintiffs' proposal to add an exception to the single-publication rule for

changes in ownership is not only contrary to law and to the policy behind the rule, it would also

result in significant harmful consequences.  Currently, publishers of all types – in the book,

magazine, newspaper, motion picture, online and other industries – can engage in commercial

transactions to sell businesses and libraries of content knowing that mere changes in ownership

do not retrigger the running of statutes of limitations.  If the rule were different, then such sales

would expose countless books, magazines, newspapers and motion pictures, spanning literally

decades, to the potential for renewed defamation liability, even if nothing about these

publications had changed other than who owned the warehouse in which they are stored.

---

This argument fails for a number of reasons.  First, as established in GMG's Motion, the *only* publication at issue in this case is Gawker Media's initial posting of the Article on June 23, 2016.  GMG's refraining from removing the Article after September 9, 2016 did not constitute a republication for which GMG could be liable.  Second, each of Plaintiffs' eight examples of Gawker Media publications involve only allegations that Gawker Media allegedly did not respect individuals' privacy; they neither say anything about the *accuracy* of articles published by Gawker Media nor provide any reason why GMG should have doubted the accuracy of the Article at issue here.  Third, Plaintiffs do not even attempt to, and could not, impugn the credibility of Ryan Goldberg, the freelancer who wrote the Article and spent a year investigating it, or any Gawker Media editor who worked on the Article or explain why GMG should have doubted them.  Fourth, Plaintiffs' allegation of irresponsibility is itself irresponsible – they inexcusably ignore the fact that counsel for both Gawker Media and later GMG both wrote letters to Harder expressly offering to consider and respond to any materials that Plaintiffs wished to provide to support their allegations of inaccuracy, yet Plaintiffs failed to accept or even acknowledge the offers.  *See* Motion, Ex. C.

23.    For example, the New York Daily News was recently sold to a new publisher in a move that saved jobs and allowed a New York institution to continue publishing.  If that sale also would have resulted in every article in the newspaper's decades of archives suddenly exposing the new owner to renewed defamation exposure, then the sale would not have happened or the archives would have been shuttered.  The result Plaintiffs seek would chill such transactions and restrain trade.  In the bankruptcy context, it would fly in the face of established bankruptcy policy to maximize the value of the estate and to encourage sales of assets to willing buyers free and clear of a debtor's liabilities.  Plaintiffs' attempt to avoid application of the single-publication rule should be rejected.

### C.    Mandatory Abstention Is Inapplicable

24.    Despite Plaintiffs' urgings, this Court is not obligated to abstain from interpreting the Sale Order and ruling on the Motion.  Under 28 U.S.C. § 1334(c)(2), the Court must abstain from hearing a matter if "(1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is 'related to' but not 'arising in' a bankruptcy case or 'arising under' the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) that action can be 'timely adjudicated' in state court." *In re AOG Entm't., Inc.*, 569 B.R. at 572.  However, *if any one* of foregoing six statutory requirements is not present, then a party is *not entitled* to mandatory abstention.  *See Kirschner v. Grant Thornton LLP (In re Refco, Inc. Secs. Litig.)*, 628 F. Supp. 2d 432, 445 (S.D.N.Y. 2008) ("A party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements.") (quoting *In re WorldCom, Inc. Secs. Litig.*, 293 B.R. 308, 331 (S.D.N.Y. 2003)).  Because at least two of these requirements are not present here, mandatory abstention is inapplicable.

1.    The Action (GMG's Motion) Arises In A Bankruptcy Case

25.    As noted above, it is well-settled that bankruptcy courts have jurisdiction to interpret and to enforce their prior orders. *See, e.g., Travelers Indem. Co.*, 557 U.S. at 151. Further, and more specifically, a bankruptcy court's "decision to interpret and enforce a prior sale order falls under . . . [the court's] 'arising in' jurisdiction." *In re Motors Liquidation Co.*, 829 F.3d at 153.  Because GMG is asking that the Court interpret and enforce its own prior Sale Order, this Court has "arising in" jurisdiction, and mandatory abstention is inapplicable. *See In re Gen. Growth Props., Inc.*, 460 B.R. at 601 ("Since the [proceeding] is one 'arising in' a bankruptcy case and within this Court's core jurisdiction, mandatory abstention under 28 U.S.C. § 1334(c)(2) is inapplicable on its own terms.").

2.    The Action (GMG's Motion) Is Not Solely Based On A State Law Claim

26.    Mandatory abstention is also inapplicable because GMG's Motion is not "based on a state law claim."  Indeed, GMG is not asserting a state law claim at all; the Motion merely seeks enforcement of a bankruptcy court order.  And while such enforcement involves the straightforward application of New York's well-settled single-publication rule, that does not somehow convert GMG's request for relief into a state law claim.

27.    In contending otherwise, Plaintiffs assert that "the Complaint in the State Court Action asserts three state law causes of action[.]"  Objection, ¶ 46.  But Plaintiffs either misunderstand or are intentionally mischaracterizing the "action."  The fact that *their Complaint* asserts three state law causes of action is entirely irrelevant.  Resolution of *the Motion* requires the Court to interpret the Sale Order and the Bankruptcy Code and, in doing so, to look to the single-publication rule to determine the scope of the Sale Order's prohibition against the

12

assertion of certain Adverse Interests.[10]  Mandatory abstention is thus inapplicable.  *See In re*

*Gen. Growth Props., Inc.*, 460 B.R. at 601 (finding that mandatory abstention was inappropriate

because plaintiff's state court action for the payment of fees relating to services rendered in a

bankruptcy case was "not based solely on State law claims" where "interpretation of the Plan and

the Bankruptcy Code [were] required"); *see also In re AHT Corp.*, 265 B.R. 379, 385 (Bankr.

S.D.N.Y. 2001) ("Section 1334(c)(2) is not applicable here because plaintiff's claims in this

adversary proceeding are not based exclusively on State law.").

### D.    Permissive Abstention Is Inappropriate

28.    Plaintiffs contend that, even if the Court is not required to abstain from deciding

the Motion (it is not), it should do so anyway because of the supposed inefficiency and inequity

that would result if this Court ruled on the Motion.  Objection, ¶ 56.  Plaintiffs are wrong.  As

explained below, analysis of the factors that courts customarily consider weighs against

abstention and in favor of asserting the Court's clear jurisdiction over the Motion.  But beyond

the mere formulaic application of these factors, the Court should very carefully consider the

consequences of refusing to hear a purchaser's request for enforcement of the basic terms of a

sale order.  Where, as here, jurisdiction plainly exists and abstention is not mandated by law, a

bankruptcy court should exercise its right permissively to abstain only in the most compelling or

unusual circumstances, lest prospective purchasers under Section 363 question whether the

protections purportedly afforded to them under a typical sale order truly provide them any

---

[10]    In their Objection, Plaintiffs incorrectly state that GMG is asking this Court to "adjudicate" Plaintiffs' three state law causes of action.  Objection, ¶ 29.  By no means is *interpreting* and *enforcing* the Sale Order an "adjudication" of Plaintiffs' state law claims.  Similarly, there is no basis for Plaintiffs' assertion that GMG is attempting to "strip" the case from state court.  Objection, ¶ 4.  This case has no business being in state court; the fact that Plaintiffs improperly filed the Civil Suit even though their causes of action are barred as a matter of law and by virtue of the Sale Order does not somehow confer on the state court a right to hear prohibited causes of action.  On September 11, 2017, the Supreme Court for the State of New York continued GMG's motion to stay the Civil Suit until November 27, 2017 in order to afford this Court the opportunity to hear the parties on the Motion.

protection at all.  This is simply not a case in which to begin to erode confidence in the basic

bargains struck so often in Section 363 sales.

29.    Under 28 U.S.C. § 1334(c)(1), "a district court in the interest of justice, or in the

interest of comity with State courts or respect for State law, [may] abstain[] from hearing a

particular proceeding arising under title 11 or arising in or related to a case under title 11."  28

U.S.C. § 1334(c)(1).  Courts in this district consider the following factors to determine whether

permissive abstention is appropriate:

> (1) the effect or lack thereof on the efficient administration of the
> estate if a Court recommends abstention, (2) the extent to which
> [non-bankruptcy] law issues predominate over bankruptcy issues,
> (3) the difficulty or unsettled nature of the applicable [non-
> bankruptcy law], (4) the presence of a related proceeding
> commenced in state court or other non-bankruptcy court, (5) the
> jurisdictional basis if any, other than 28 U.S.C. § 1334, (6) the
> degree of relatedness or remoteness of the proceeding to the main
> bankruptcy case, (7) the substance rather than form of an asserted
> "core" proceeding, (8) the feasibility of severing [non-bankruptcy]
> law claims from core bankruptcy matters to allow judgments to be
> entered in [non-bankruptcy] court with enforcement left to the
> bankruptcy court, (9) the burden of [the bankruptcy court's]
> docket, (10) the likelihood that the commencement of the
> proceeding in a bankruptcy court involves forum shopping by one
> of the parties, (11) the existence of a right to a jury trial, and (12)
> the presence in the proceeding of nondebtor parties.

*In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 641-42 (Bankr. S.D.N.Y. 2009) (quoting *Rosetta*

*Res. Operating LP Calpine Corp. v. Pogo Producing Co. (In re Calpine Corp)*, 361 B.R. 665,

669 (Bankr. S.D.N.Y. 2007)).

30.    However, and importantly here, "[f]ederal courts . . . must be sparing in their

exercise of discretionary abstention . . . because they possess a virtually unflagging obligation

. . . to exercise the jurisdiction given them."  *See In re Refco, Inc. Secs. Litig.*, 628 F. Supp. 2d at

446 (quotations and citations omitted).  Abstention is an "extraordinary and narrow exception to

the federal court's duty to adjudicate a controversy property before it." *In re Ionosphere Clubs, Inc.*, 108 B.R. 951, 954 (Bankr. S.D.N.Y. 1989) (quotations omitted).

31.    Where, as here, the balance of factors tips in favor of retaining jurisdiction, a court should not abstain. *See In re WorldCom, Inc. Secs. Litig.*, 293 B.R. at 332 (declining to abstain where the balance of factors weighed against abstention).

### 1.    This Is A Core Proceeding

32.    "Core proceedings correspond to proceedings 'arising under title 11' and proceedings that 'arise in' cases under title 11." *In re AOG Entm't, Inc.*, 569 B.R. at 573 (citing *Stern v. Marshall*, 564 U.S. 462, 476 (2011)). As courts in this circuit have made clear, "section 363 sales and interpretation of sale orders are considered 'core' under 28 U.S.C. section 157." *In re Dana Corp. Inc.*, No. 06-10354 (BRL), 2011 WL 6259640, at *2 (Bankr. S.D.N.Y. Dec. 15, 2011) (listing cases); *see also In re Motors Liquidation Co.*, 522 B.R. 13, 26-27 (Bankr. S.D.N.Y. 2014) ("New GM's Motion to Enforce – seeking enforcement of a sale order entered in connection with a section 363 sale – is indeed a 'core matter' by statute, under 28 U.S.C. §§ 157(b)(2)(A), (N), and (O)).". Because the Motion seeks the interpretation and enforcement of a sale order, it is a "core" proceeding.[11]

### 2.    This Proceeding Is Plainly Related To The Bankruptcy Cases

33.    This action (*i.e.*, GMG's Motion) is inextricably linked to the Bankruptcy Cases. The Sale Order, which is the subject of the Motion, was a critical aspect of the Debtors'

---

[11]    Plaintiffs contend that this Court cannot issue a final ruling on the Motion absent the consent of all parties. Objection, ¶ 56. Plaintiffs are wrong. Because the Motion is a "core" proceeding, it does not present a *Stern* issue. Courts uniformly hold that consent of the parties is not required in order for a bankruptcy court to issue an order on a core proceeding. *See, e.g., In re Christ Hosp.*, 2014 U.S. Dist. LEXIS 128409, at *19 ("The Supreme Court's seminal opinion in *Stern v. Marshall* does not disturb the bankruptcy court's jurisdiction. The bankruptcy court correctly noted that [plaintiff] fail[ed] to relate [*Stern*] specifically to § 363 sales, *in rem* bankruptcy jurisdiction, or anything factually analogous to the matter at bar. And it properly held that *its jurisdiction to interpret and enforce its sale and confirmation orders is historic and unimpeded by Stern v. Marshall*[.]") (emphasis added) (quotations and citations omitted).

Bankruptcy Cases.  And the application of the single-publication rule is fundamentally

intertwined with the Sale Order and the APA.  *See Winstar Holdings, LLC v. Blackstone Group*

*L.P.*, No. 07 CIV. 4634 (GEL), 2007 WL 4323003, at *6 (S.D.N.Y. Dec. 10, 2007) (declining to

abstain where the "very sale that is the subject of the proceedings was a central aspect and basic

function of the bankruptcy proceedings" and "the evaluation of [plaintiffs' tort claims] will

necessarily involve the interpretation of the Bankruptcy Court-approved APA . . . and of the

Bankruptcy Court's own orders and findings"); *In re Motors Liquidation Co.*, 522 B.R. at 26

(finding that the issues before the court were "closely related to the main bankruptcy case"

because they "[arose] with respect to the construction and enforcement of an order entered in the

main bankruptcy case").

3.    <u>Non-Bankruptcy Law Does Not Predominate Over Bankruptcy Issues And
The Relevant Non-Bankruptcy Law Is Well-Settled</u>

34.    Resolution of this proceeding involves the interplay among (i) Bankruptcy Code

Section 363, (ii) this Court's Sale Order, and (iii) the single-publication rule under New York

law.  While there is obviously a state law component to the Motion, it is merely one step in the

analysis and can hardly be said to predominate over the fundamental bankruptcy issues.  *See In*

*re Motors Liquidation Co.*, 522 B.R. at 24 (finding that the second factor strongly supported non-

abstention where non-bankruptcy issues were "a subset of the larger array of issues, which

principally involve[d] bankruptcy law").

35.    Furthermore, as discussed above, the single-publication rule is well-settled, is not

complex, and does not involve arcane or idiosyncratic provisions of New York law.  *See In re*

*Residential Capital, LLC*, No. 12-12020 (MG), 2015 WL 4747785, at *15 (Bankr. S.D.N.Y.

Aug. 4, 2015) (finding that the third factor did not weigh in favor of abstention where the issues

were not "particularly complex" and there was no "compelling reason why [the] Court [was] not

16

able to [adjudicate state law issues] in resolving" the claims); *Winstar Holdings, LLC*, 2007 WL

4323003, at *5 (denying abstention, even though plaintiffs' claims were based on state law,

because the "state law claims [were] straightforward common-law claims that [did] not involve

arcane or idiosyncratic provisions of New York law").  Given this Court's familiarity with its

own Sale Order, the Bankruptcy Code, and the factual underpinnings of the Bankruptcy Cases, it

is best-positioned to adjudicate the Motion.  *See In re Motors Liquidation Co.*, 522 B.R. at 25

(finding that the third factor weighed against abstention where the bankruptcy judge "[had] more

familiarity than any other judge with the circumstances leading up to the entry of the Sale Order,

and its underlying intent"); *see also In re Philadelphia Newspapers, LLC*, 450 B.R. at 107-08

(granting purchaser's motion to enforce a bankruptcy court order and applying the single-

publication rule to bar plaintiffs' defamation claims, which arose prior to sale closing date and

constituted excluded liabilities).

**4.    GMG Did Not Forum-Shop, And No Right To A Jury Trial Is Implicated**

36.    The filing of the Motion in this Court is not forum-shopping by GMG.  The

Bankruptcy Cases proceeded in this Court, and this Court approved the Sale and entered the Sale

Order.[12]  *See In re Motors Liquidation Co.*, 522 B.R. at 25 ("New GM's request for construction

and enforcement of the Sale Order, sought in the same court that entered the order, is hardly

forum shopping.").  Furthermore, there is no right to a jury trial with respect to the Motion, as

"[n]o court would hold a jury trial on the enforcement or construction of the Sale Order[.]"  *Id.* at

27.

---

[12]    Plaintiffs, on the other hand, are plainly engaging in forum shopping.  Although Plaintiffs concede that they had proper notice of the Bankruptcy Cases and the Sale to GMG, they did not file a proof of claim or object to this Court's entry of the Sale Order.  Instead, nearly a year after entry of the Sale Order, Plaintiffs brought the Civil Suit in New York state court in direct contravention of the Sale Order.  And revealingly, they have offered no credible explanation as to how the New York state court is better situated to interpret and to enforce this Court's Sale Order.

5.      It Is Not Feasible To Sever The Claims, And The Motion Does Not
Burden The Court

37.     Given the interrelatedness of the bankruptcy issues (*i.e.*, application of Section

363 and the interpretation and enforcement of the Sale Order) and the non-bankruptcy aspect of

this proceeding (*i.e.*, the single-publication rule), it is not feasible to sever the single state law

question at issue from the predominant bankruptcy issues.  Moreover, adjudication of the Motion

will not burden this Court given that it has firsthand, in-depth knowledge of these Bankruptcy

Cases, is familiar with its own order, and certainly can resolve the matter in a single hearing.

6.      Efficient Administration Of The Estate

38.     The efficient administration of the Bankruptcy Cases – and the bankruptcy

process more generally – requires this Court to determine the scope and enforceability of its own

Sale Order.  GMG, and other purchasers of assets under Section 363, simply must be able to rely

on "free and clear" provisions in sale orders and bankruptcy courts' corresponding willingness to

give effect to such orders.  If bankruptcy courts were to refuse to enforce their own orders, it

would unnecessarily inject harmful uncertainty into the sale process.  Debtors and the bankruptcy

process would be ill-served if purchasers discovered that they could not rely on their ability to

invoke the court's jurisdiction to enforce sale order terms that they negotiate in return for their

purchase consideration.  Moreover, it would be inefficient to have the New York state court

interpret the Sale Order, when this Court oversaw the Bankruptcy Cases, has all of the associated

background, approved the auction process, entered the Sale Order, and is positioned and well

able to resolve the matter in its entirety at a single hearing.

7.      The Fact That Plaintiffs And GMG Are Non-Debtor Parties Does Not
Weigh In Favor Of Abstention

39.     The fact that GMG and Plaintiffs are non-debtor parties does not favor abstention.

The (twelfth) factor "applies when the bankruptcy court, by reason of the presence of non-debtor

18

parties, might have practical or constitutional limitations in providing full relief" or when "the needs and concerns of the particular parties involved are too divorced from the matters properly before the bankruptcy court." *See In re Motors Liquidation Co.*, 522 B.R. at 28. This is hardly the case here given that there are no limitations on this Court's ability to provide full relief and the resolution of this matter is dependent upon this Court's interpretation and application of its own Sale Order. Moreover, this factor is considered neutral where, as here, the non-debtor parties "share important needs and concerns with respect to the bankruptcy court's determination of what [a] Sale Order covers and what it does not, and whether and how it should be enforced[.]" *Id.* Because the interpretation and enforcement of the Sale Order will determine the status of Plaintiffs' state law tort causes of action, both GMG and Plaintiffs share important needs and concerns regarding the Court's interpretation and enforcement of the Sale Order.[13]

\* \* \* \* \*

40.    The overwhelming majority of factors weighs in favor of this Court denying Plaintiffs' request for abstention and, instead, interpreting and enforcing its own order.

### III.    CONCLUSION

41.    For each and all of the reasons set forth in the Motion and this Reply, GMG respectfully requests that this Court: (i) overrule Plaintiffs' Objection; (ii) grant the Motion; and (iii) grant GMG such other and further relief as may be just and proper, including costs and attorneys' fees incurred in connection with the Motion, this Reply, and defending the Civil Suit.

---

[13]    Plaintiffs contend that the current proceeding is similar to *In re Casual Male* in which the bankruptcy court abstained from an action seeking relief from a non-debtor party. *See* Objection, ¶ 57; *In re Casual Male Corp. (Casual Male)*, 317 B.R. 472, 478-81 (Bankr. S.D.N.Y. 2004). However, *In re Casual Male* presented a very different case for abstention than is presented here. The court there abstained because it determined that the matter "overwhelmingly involve[d] issues of state law" and was "barely related" to the debtors' bankruptcy cases. *Id.* at 480-81. Here, however, the interpretation and enforcement of the Sale Order is at the core of the parties' dispute. Thus, as discussed above, bankruptcy issues predominate and abstention is not warranted.

Dated:          New York, New York
                September 25, 2017

                                        Respectfully Submitted,

                                        **LATHAM & WATKINS LLP**

                                        /s/ Peter M. Gilhuly

                                        Peter M. Gilhuly, Esq. (admitted *pro hac vice*)
                                        Adam E. Malatesta, Esq. (admitted *pro hac vice*)
                                        Shawn P. Hansen, Esq. (admitted *pro hac vice*)
                                        355 South Grand Avenue, Suite 100
                                        Los Angeles, California 90071
                                        Telephone: (213) 485-1234
                                        Facsimile: (213) 891-8763
                                        Email: Peter.Gilhuly@lw.com
                                        Email: Adam.Malatesta@lw.com
                                        Email: Shawn.Hansen@lw.com

                                        **WILLIAMS & CONNOLLY LLP**
                                        725 Twelfth Street, N.W.
                                        Washington, D.C. 20005
                                        Telephone: (202) 434-5000
                                        Facsimile: (202) 434-5029
                                        Thomas G. Hentoff, Esq. (admitted *pro hac vice*)
                                        Email: THentoff@wc.com

                                        *Counsel for Gizmodo Media Group, LLC*