SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Shana A. Elberg

- and -

One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Anthony W. Clark (admitted *pro hac vice*)
Robert A. Weber (admitted *pro hac vice*)

*Attorneys for Peter Thiel and Thiel Capital LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
In re:                                    :  Chapter 11
                                          :
GAWKER MEDIA LLC, et al.                  :  Case No. 16-11700 (SMB)
                                          :
                                          :
                 Reorganized Debtors.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - --  x

**THE THIEL PARTIES' (1) OBJECTION TO PLAN ADMINISTRATOR'S
PROPOSED ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE AUTHORIZING THE PLAN
ADMINISTRATOR TO CONDUCT DISCOVERY CONCERNING POTENTIAL
CAUSES OF ACTION AND TO ESTABLISH DISCOVERY RESPONSE AND
DISPUTE PROCEDURES, AND (2) MOTION FOR REARGUMENT**

Peter Thiel and Thiel Capital LLC ("Thiel Capital," and together with Peter Thiel,

the "Thiel Parties")[1] (i) object to the *Notice Of Presentment Of Order Pursuant To Rule 2004 Of*

*The Federal Rules Of Bankruptcy Procedure Authorizing The Plan Administrator To Conduct*

---

[1]    The Thiel Parties do not waive or consent to this Court's jurisdiction or the entry of final judgments in any
matter or proceeding in which this Court is not constitutionally or statutorily authorized to do so, and reserve all
rights.

*Discovery Concerning Potential Causes Of Action And To Establish Discovery Response And Dispute Procedures* dated November 9, 2017 [Docket No. 1042] (the "<u>Proposed Order</u>") filed by William D. Holden, plan administrator (the "<u>Plan Administrator</u>"), and (ii) move for reargument of the underlying Rule 2004 Motion (as defined below).  In support, the Thiel Parties rely upon and incorporate by reference the Transmittal Declaration of Robert A. Weber (the "<u>Weber Declaration</u>"), filed contemporaneously herewith, and further state as follows:

## PRELIMINARY STATEMENT

1.      The Plan Administrator's submission of the Proposed Order fails to disclose to the Court a critical development:  as reported in *The Wall Street Journal* and elsewhere*,* the Plan Administrator recently has commenced a process to sell the alleged estate claims against the Thiel Parties – the very claims that are the subject of the requested Rule 2004 discovery.  This development negates the Plan Administrator's rationale for the Rule 2004 discovery and the sole factual basis for the Court's limited finding of cause.

2.      The Plan Administrator argued that Rule 2004 discovery is necessary to inform his decision of whether to sue (or settle) with the Thiel Parties.  That same rationale formed the basis of the Court's limited finding of cause.  The Administrator did ***not*** allege, and the Court did ***not*** find, that cause existed for discovery to conduct a sale of the claims, let alone that potential bidders might be able to view confidential documents produced by the Thiel Parties in Rule 2004 discovery.  Those issues were never raised, and clearly involve confidentiality and other concerns that are well beyond the purview of the matters addressed by the parties and the Court in connection with the Rule 2004 Motion.

3.      Because the Plan Administrator's intentions regarding the claims have changed, cause no longer exists and the discovery is moot.  The only appropriate order,

therefore, is one that **denies** the underlying Rule 2004 Motion.  At a minimum, the Court should grant reargument to reconsider its finding of cause in light of the Plan Administrator's decision to sell the subject claims.

## BACKGROUND

4.  More than 13 months ago, the Debtors moved for authority to conduct Rule 2004 discovery.[2]  The Debtors argued that the requested discovery was material to three issues:  (i) the possible designation of votes on a plan of reorganization; (ii) the possible formulation of an amended plan that would take into account economic incentives from Mr. Thiel's litigation financing; and (iii) whether the Debtors should commence or settle causes of action against the Thiel Parties.  *See* Rule 2004 Motion at 1-2.

5.  On August 22, 2016, the Court approved the Debtors' sale of substantially all of their assets to UniModa, LLC.[3]  Prior to closing, UniModa elected not to acquire the Gawker.com website and certain related assets and archived content (the "Gawker.com Assets"). Under the approved asset purchase agreement, UniModa was not entitled to reduce the purchase price despite the fact that it elected not to purchase the Gawker.com Assets.  *See* UniModa Asset Purchase Agreement, Art. I (definition of "Excluded Assets Schedule"), § 2.5 (Purchase Price).[4]

---

[2]     *See Motion Of The Debtors For Leave Pursuant To Rule 2004 Of The Federal Rules Of Bankruptcy Procedure To Conduct Discovery Concerning Potential Plan Issues And Potential Causes Of Action, And To Establish Discovery Response And Dispute Procedures* dated October 11, 2016 [Docket No. 341] (the "Rule 2004 Motion").

[3]     *See Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (II) Approving and Authorizing the Debtors' Entry into the Asset Purchase Agreement and (III) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* (the "Sale Order") [Docket No. 214]. The UniModa sale closed on September 9, 2016.  *See Notice of Sale Closing* [Docket No. 258].

[4]     The UniModa Asset Purchase Agreement is attached to *Notice Of Filing Of Asset Purchase Agreement Between The Debtors And The Successful Bidder For Sale Of Substantially All Of The Debtors' Assets* [Docket No. 192].

6.    On December 11, 2016, the Court confirmed the Debtors' plan of liquidation.  A central feature of the plan was a settlement with Terry Gene Bollea that provided for, among other things, compromises of Mr. Bollea's $140 million judgment against the Debtors and a shared recovery among Mr. Bollea and equity holders from the estates' remaining assets (*i.e.*, the Gawker.com Assets and retained causes of action).  *See* Bollea Settlement Agreement §§ 7-8.[5]  The Bollea Settlement Agreement expressly precluded Mr. Denton and other former Gawker employees from bidding on estate assets absent Mr. Bollea's consent, but contained no bidding restriction for any other party, including the Thiel Parties.  The Bollea Settlement Agreement also required the Reorganized Debtors to "work in good faith" to settle the Debtors' potential claims against the Thiel Parties without discovery in advance, but the Plan Administrator has chosen to ignore this binding and enforceable covenant.[6]  *See* Bollea Settlement Agreement § 19.

7.    The Debtors, and then later the Plan Administrator, repeatedly adjourned the Rule 2004 Motion.  A hearing finally was held on April 25, 2017.   The Plan Administrator represented in his pleadings that the discovery sought was narrower and more limited than originally described in the Rule 2004 Motion.  Plan Administrator Reply ¶¶ 3, 18.[7]  At the

---

[5]    *Notice Of Filing Of Revised Plan Supplement Document Pursuant To The Debtors' Amended Joint Chapter 11 Plan Of Liquidation For Gawker Media Group, Inc., Gawker Media LLC, And Gawker Hungary Kft.* [Docket No. 590], at Exh. C (the "Bollea Settlement Agreement").

[6]    In November 2016, Mr. Thiel's counsel contacted the Plan Administrator's counsel, Mr. Galardi, to commence such negotiations, but he refused and insisted that discovery was a precondition to negotiations.  Mr. Thiel then negotiated with Messrs. Bollea and Denton (the Debtors' two remaining principal stakeholders) and reached agreement on a form of settlement that included Mr. Thiel's agreement not to fund certain litigation and mutual releases between Messrs. Thiel and Denton and the Gawker debtors.  The Plan Administrator rejected the proposal out of hand and, again, refused to negotiate absent his desired discovery.  The Thiel Parties reserve all rights in connection therewith.

[7]    *Omnibus Reply In Support Of Motion For Leave Pursuant To Rule 2004 Of The Federal Rules Of Bankruptcy Procedure To Conduct Discovery Concerning Potential Causes Of Action And To Establish Discovery Response And Dispute Procedures* [Docket No. 883] (the "Plan Administrator Reply").

hearing, the Plan Administrator relied solely on the rationale that such narrowed discovery was needed to assist his decision on whether to commence litigation against the Thiel Parties.[8]

8.      On June 28, 2017, the Court issued the *Corrected Memorandum Decision Granting In Part And Denying In Part Plan Administrator's Motion For Leave To Conduct A Rule 2004 Examination* [Docket No. 936] (the "Opinion").  The Opinion authorized "limited discovery" solely for the purpose of "determin[ing] whether [the Plan Administrator] should commence any litigation against Thiel and/or related parties."  Opinion at 1, 9.  The Court denied the Plan Administrator's request to conduct discovery in connection with allegations concerning Scott Sonnenblick as speculative and inadequate to demonstrate cause.  *Id.* at 15-16 ("This record is insufficient to establish cause.").

9.      The Opinion further recognized that the Debtors' settlement agreements with Mr. Bollea, Mr. Ayyadurai and Ms. Terrill imposed "substantial limitations" on the Plan Administrator's ability to conduct Rule 2004 discovery.  In light of those limitations, and the Plan Administrator's representation that he no longer sought any discovery from either Mr. Ayyadurai or Ms. Terrill, the Court observed that "there does not appear to be much left that is discoverable."  Opinion at 16.  The Court declined to specify what discovery was permissible, and directed the parties to meet and confer regarding a form of order to implement the Court's ruling.  *Id.* at 17.  However, for the next three months, the Plan Administrator did nothing to follow up on the Court's decision.  Finally, on September 20, 2017, the Plan Administrator served revised document requests on the Thiel Parties and Charles Harder, entirely skipping over

---

[8]     *See* Plan Administrator Reply ¶ 3; Apr. 25, 2017 Tr. of Hr'g, at 5-6 ("MR. GALARDI: … So the third purpose is the only purpose in which we are prosecuting today, with respect to getting information, with respect to the cause of prima facie tort.  We have sought this because we would like to get more information before filing the Complaint if a Complaint is ever filed.  That was the status as of the objective [sic] date, and it's also the basis for why there have been a number of adjournments.").

the procedural requirement of an order authorizing Rule 2004 discovery and the Opinion's
express instruction to meet and confer regarding the order. The Thiel Parties objected that the
discovery requests were premature and requested the Plan Administrator to provide a proposed
form of order which, belatedly, he did a week later.

10.     The parties subsequently met and conferred over the form of order but
have not reached agreement.

11.     On October 2, 2017, *The Wall Street Journal* reported that the Plan
Administrator had commenced a process to market and sell the Gawker.com Assets.[9] Beginning
on October 20, 2017, counsel to Mr. Thiel repeatedly has reached out to the Plan Administrator
and his counsel, Mr. Galardi, to express Mr. Thiel's interest in participating in the sale process,
but the Plan Administrator and Mr. Galardi have flatly refused to allow Mr. Thiel to participate.

12.     First, in a telephone call on October 20, 2017, Mr. Galardi incorrectly
claimed that the Bollea Settlement Agreement precluded Mr. Thiel from bidding. Mr. Galardi
later acknowledged that the Bollea Settlement Agreement contains no such prohibition, but
nonetheless refused Mr. Thiel's requests to enter into a non-disclosure agreement, conduct sale-
related due diligence, or be informed of the rules governing bidding requirements and the sale
process, like any other prospective bidder. When pressed for a reason, Mr. Galardi alleged that
Mr. Thiel is not a "proper" purchaser due to his status as a discovery and litigation target.[10]

13.      On October 23, 2017, Mr. Thiel's counsel called the Plan Administrator's
broker for information on the sale process and was advised that the Plan Administrator would
call back to discuss the matter. That return call never occurred.

---

[9]     *The Wall Street Journal* October 2, 2017 article is <u>Exhibit A</u> to the Weber Declaration.

[10]    *See* Weber Declaration, <u>Ex. B</u>, at 1-2 *and* <u>Ex. C</u> at 1.

14.    Mr. Galardi subsequently has insisted that the Thiel Parties either settle the alleged claims outright or provide discovery as a condition to participating in the sale process. On October 26, he stated, "I have spoken to the plan administrator.  In order to provide Mr. Thiel with access to due diligence materials we will need to settle the potential claims against him and Mr. Harder.  We are happy to have that discussion, but it will need to wait until after we have taken preliminary discovery."[11]  Several days later, Mr. Galardi stated "[a]t this time and until such time as we get discovery and fully investigate the causes of action we are not prepared to provide your client access to a data room for the purposes of simply bidding on assets or serving as a stalking horse."[12]

15.    On November 2, 2017, *The Wall Street Journal* quoted the Plan Administrator that he "is putting up for sale" claims against the Thiel Parties, in addition to the previously advertised sale of the Gawker.com Assets.[13]  The same day, *Page Six*, a gossip website, also ran an article citing statements by "sources connected to the sale process" that the Plan Administrator will choose a buyer based in part on considerations relating to the "ethos" of Gawker.[14]  The *Page Six* article further stated that the Plan Administrator (i) is proceeding with at least two potential purchasers ("a crowd-funded conglomerate of Gawker superfans" and an unnamed Hollywood movie studio), and (ii) considers Mr. Thiel to be a "malicious buyer[.]"[15]

---

[11]    Weber Declaration, Ex. B.  The requirement of settling claims against Mr. Harder, Mr. Bollea's counsel, is further evidence of the Plan Administrator's improper gamesmanship, since the Debtors released all claims against Mr. Harder when they settled with Mr. Bollea.  *See* Bollea Settlement Agreement at 13, ¶17.

[12]    Weber Declaration, Ex. D (Oct. 30, 2017 email at 10:12 p.m. from G. Galardi to F. Ahmad).

[13]    Weber Declaration, Exh. E at 1.

[14]    Weber Declaration, Exh. F at 1.

[15]    *Id.* at 1-2.

16.    In light of the Plan Administrator's refusal to allow Mr. Thiel to participate in the sale process, Mr. Thiel's counsel requested that the Plan Administrator agree to pause the ongoing sale process so that a sale of the assets is not consummated until the issues concerning the Plan Administrator's blockade of Mr. Thiel as a bidder are resolved.  Once again, Mr. Galardi refused, stating that "[t]he sale process is not on hold.  We are presently soliciting interest and will proceed with process that we believe maximizes value for stakeholders[.]"[16]

17.    The Plan Administrator has lost sight of his fiduciary duties.  By wrongly excluding Mr. Thiel, the most able and logical purchaser, from the sale process on specious grounds, maintaining selective secrecy over that process, and insisting on proceeding with expensive and unwarranted discovery against him concerning alleged claims that are now being marketed to third parties, the Plan Administrator will only depress the value to be achieved in any sale.  Thus, the refusal to engage with Mr. Thiel, except through hostile litigation and wasteful discovery, is contrary to the Plan Administrator's fiduciary[17] and contractual[18] obligations to maximize value and conduct settlement negotiations in good faith.  Obviously, if Mr. Thiel is allowed to bid on a level playing field, value will be maximized; if not, it won't.

18.    In any event, it is clear that the Rule 2004 discovery authorized by the Opinion is no longer necessary, since the Plan Administrator is actively selling the alleged claims.  Therefore, the Rule 2004 Motion should be denied (*see* attached form of order, Exhibit A) or, alternatively, the Rule 2004 Motion should be reargued so the Court can consider the new

---

[16]    Weber Declaration, Ex. G (Nov. 14, 2017 email at 9:29 p.m. from G. Galardi to F. Ahmad).

[17]    *See* Plan Administrator Reply, ¶ 1 ("The Debtors have a fiduciary duty to maximize value for all stakeholders. . . .")

[18]    *See* n. 6, *supra*.

evidence regarding the Plan Administrator's sale of the claims.[19]  If the Court declines to either

deny the Rule 2004 Motion or grant reargument on it, the Thiel Parties join in and incorporate by

reference the response and proposed order submitted by Messrs. Bollea and Harder.

19.    In addition, the Plan Administrator should be directed to permit Mr. Thiel

to participate in the sale process in a reasonable manner like the other bidders, including entering

into a non-disclosure agreement, conducting appropriate due diligence, and being told the sale

process rules and afforded a fair opportunity to submit a competitive bid.  If the Court is asked to

approve any stalking horse procedures, as the Plan Administrator has suggested, that process

should be open, fair and competitive, and not secretive and suspect like the process apparently

underway.[20]

## RESERVATION OF RIGHTS

20.    Nothing contained herein is, or should be construed as, consent, pursuant

to either Article III of the U.S. Constitution or 11 U.S.C. § 1334, to the Court's entry of a final

order against the Thiel Parties.

## NO PRIOR REQUEST

21.    No previous request for the relief sought herein has been made to this

Court or any other court.

---

[19]    Reargument to consider new evidence is authorized under Local Bankruptcy Rule 9023-1 and Rules 59 and 60 of the Federal Rules of Civil Procedure, as made applicable by Fed. R. Bankr. P. 9023 and 9024.  *See, e.g.*, *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (court should exercise its discretion to amend  prior order upon "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."); *see also Family Golf Centers, Inc. v. Acushnet Co.* (*In re Randall's Island Family Golf Centers, Inc.*), 290 B.R. 55, 59 (Bankr. S.D.N.Y. 2003) (Bernstein, J.) (granting reargument to consider arguments not previously advanced).

[20]    The confirmed plan (Section 8.01) contemplates such a process:  "Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction of these proceedings to the extent legally permissible, including for the following purposes, among other things: . . . to determine any matter … in connection with the sale of the Gawker.com Assets."

## CONCLUSION

WHEREFORE, the Thiel Parties respectfully request that the Court enter an

order, substantially in the form annexed hereto, granting the relief requested by the Thiel Parties

and such other and further relief as may be just and proper.

Dated: New York, New York
November 22, 2017

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: */s/ Shana A. Elberg*
Shana A. Elberg
Four Times Square
New York, New York 10036
(212) 735-3000

- and -

Anthony W. Clark (admitted *pro hac vice*)
Robert A. Weber (admitted *pro hac vice*)
920 N. King Street
Wilmington, Delaware 19801
(302) 651-3000

*Attorneys for Peter Thiel and Thiel Capital
LLC*

## EXHIBIT A

**Proposed Order Denying Rule 2004 Motion**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                              :    Chapter 11
                                                    :
GAWKER MEDIA LLC, et al.[1]                         :    Case No. 16-11700 (SMB)
                                                    :
                                                    :
          Debtors.                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -- x

## ORDER DENYING MOTION FOR RULE 2004 DISCOVERY
## AND VACATING IN PART MEMORANDUM DECISION

Upon consideration of the *Notice Of Presentment Of Order Pursuant To Rule
2004 Of The Federal Rules Of Bankruptcy Procedure Authorizing The Plan Administrator To
Conduct Discovery Concerning Potential Causes Of Action And To Establish Discovery
Response And Dispute Procedures* dated November 9, 2017 [Docket No. 1042] (the "Notice of
Presentment"), the *Objection Of The Thiel Parties To Plan Administrator's Proposed Order
Pursuant To Rule 2004 Of The Federal Rules Of Bankruptcy Procedure Authorizing The Plan
Administrator To Conduct Discovery Concerning Potential Causes Of Action And To Establish
Discovery Response And Dispute Procedures And Motion For Reargument* [Docket No. [●]]
(the "Thiel Parties' Objection")[2] and other objections to Notice of Presentment; and the Court
having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this proceeding
being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and adequate notice having

---

[1]    The last four digits of the taxpayer identification number of the debtors (the "Reorganized Debtors") are:
Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056).  The mailing address for
Gawker Media LLC and Gawker Media Group, Inc. are c/o Opportune LLP, Attn. William D. Holden, Chief
Restructuring Officer, 10 East 56th Street, 33rd Flr., New York  NY 10020, and the mailing address for Kinja
Kft. is c/o Opportune LLP, Attn. William D. Holden (the "Plan Administrator"), 10 East 53rd Street, 33rd Flr.,
New York  NY 10020.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Thiel Parties'
Objection.

been given, and no other or further notice need be given; and after due deliberation and hearing thereon, and sufficient cause appearing therefore, it is hereby **ORDERED** that:

1.      The Thiel Parties' Objection is sustained to the extent set forth herein.

2.      The *Motion Of The Debtors For Leave Pursuant To Rule 2004 Of The Federal Rules Of Bankruptcy Procedure To Conduct Discovery Concerning Potential Plan Issues And Potential Causes Of Action, And To Establish Discovery Response And Dispute Procedures*, dated October 11, 2016 [Docket No. 341], is denied with prejudice.

3.      The finding of cause for, and authorization to conduct, limited discovery pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure in the Corrected Memorandum Decision Granting In Part And Denying In Part Plan Administrator's Motion For Leave To Conduct A Rule 2004 Examination [Docket No. 936] are hereby vacated.

4.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:                          _____
        New York, NY            THE HONORABLE STUART M. BERNSTEIN
                                UNITED STATES BANKRUPTCY JUDGE