**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| GAWKER MEDIA LLC, et al., | : Case No. 16-11700 (SMB) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |

**TRANSMITTAL DECLARATION OF ROBERT A. WEBER IN SUPPORT OF OBJECTION OF THE THIEL PARTIES TO PLAN ADMINISTRATOR'S PROPOSED ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING THE PLAN ADMINISTRATOR TO CONDUCT DISCOVERY CONCERNING POTENTIAL CAUSES OF ACTION AND TO ESTABLISH DISCOVERY RESPONSE AND DISPUTE PROCEDURES AND MOTION FOR REARGUMENT**

I, Robert A. Weber, declare as follows:

I am an attorney with the law firm of Skadden, Arps, Slate, Meagher & Flom, LLP, counsel for Peter Thiel and Thiel Capital, LLC (together, the "Thiel Parties") in these cases. I am admitted to practice *pro hac vice* in these cases, and submit this transmittal declaration in support of the *Objection Of The Thiel Parties To Plan Administrator's Proposed Order Pursuant To Rule 2004 Of The Federal Rules Of Bankruptcy Procedure Authorizing The Plan Administrator To Conduct Discovery Concerning Potential Causes Of Action And To Establish Discovery Response And Dispute Procedures And Motion For Reargument* dated November 22, 2017 (the "Objection"), filed herewith.

1.     Attached hereto as Exhibit A is a true and correct copy of the October 2, 2017 *The Wall Street Journal* article referenced in the Objection at page 6, ¶ 11.

2.     Attached hereto as Exhibit B is a true and correct copy of the October 26, 2017 email at 6:47 p.m. from G. Galardi to R. Weber and F. Ahmad referenced in the Objection at page 6, n. 10.

3.      Attached hereto as <u>Exhibit C</u> is a true and correct copy of the October 31, 2017 email at 10:34 p.m. from G. Galardi to F. Ahmad referenced in the Objection at page 6, n. 10.

4.      Attached hereto as <u>Exhibit D</u> is a true and correct copy of the October 30, 2017 email at 10:12 p.m. from G. Galardi to F. Ahmad referenced in the Objection at page 7, n. 12.

5.      Attached hereto as <u>Exhibit E</u> is a true and correct copy of the November 2, 2017 *The Wall Street Journal* article referenced in the Objection at page at 7, ¶15.

6.      Attached hereto as <u>Exhibit F</u> is a true and correct copy of the November 2, 2017 *Page Six* article referenced in the Objection at page 7, ¶15.

7.      Attached hereto as <u>Exhibit G</u> is a true and correct copy of the November 14, 2017 email at 9:29 p.m. from G. Galardi to F. Ahmad referenced in the Objection at pages 7-8, ¶16.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:      Wilmington, Delaware
November 22, 2017

*/s/ Robert A. Weber*
Robert A. Weber

807230-WILSR01A - MSW

# EXHIBIT A



This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit http://www.djreprints.com.

https://www.wsj.com/articles/gawker-is-for-sale-and-its-articles-could-be-deleted-1506956259

BANKRUPTCY |      EXCLUSIVES , MEDIA ENTERTAINMENT , NORTHEAST US , TOP NEWS     A.I.

# Gawker Is for Sale and Its Articles Could Be Deleted

A planned sale of Gawker and the continued specter of litigation make the website's articles vulnerable to deletion



Nick Denton, founder of Gawker, talks with his legal team before Hulk Hogan testifies in court, in St Petersburg, Fla., on March 8, 2016. PHOTO: POOL/REUTERS

**By Jonathan Randles**

Updated Oct. 2, 2017 12:36 p.m. ET

Articles on Gawker.com, an expansive collection of news stories, essays and celebrity gossip, are at risk of being deleted.

Gawker is being shopped more than a year after losing a legal fight brought by retired professional wrestler Hulk Hogan that forced the site into bankruptcy. A new owner will be able to remove old articles from the website, presenting individuals an opening to have unwanted articles about themselves or others taken down.

Gawker Is for Sale and Its Articles Could Be Deleted - WSJ      Page 2 of 6
16-11700-smb    Doc 1048    Filed 11/22/17    Entered 11/22/17 15:42:11    Main Document
Pg 5 of 39

READM ORE

- Gawker Media Advisers to Put Flagship Website Up for Sale (July 25)
- Gawker Media Settles With Hulk Hogan in Privacy Suit (Nov. 2, 2016)
- Gawker.com Will Shut Down as Univision Acquires Rest of Company (Aug. 18, 2016)
- Univision Wins Bankruptcy Auction for Gawker Media for $135 Million (Aug. 16, 2016)
- Florida Jury Awards Wrestler Hulk Hogan $115 Million in Gawker Case (March 18, 2016)

The potential sale creates a situation where financial considerations and the specter of new litigation over old Gawker articles could determine whether the archive of one of the most prominent blogs of the last decade will be preserved or altered. The website ceased publishing new articles last summer and is currently inactive.

"The 'Gawker' brand is known for being a pioneer of internet journalism and playing a major role in influencing news organizations across the world to push the boundaries of traditional media," according to a flier sent Friday to prospective buyers that was prepared by Dacarba LLC, the firm overseeing the sale process. Assets for sale include the Gawker domain, social media accounts and nearly 200,000 published articles. A copy of the flier was reviewed by The Wall Street Journal.

How much Gawker is worth in its current state is unknown but it could be valuable to individuals who want articles deleted or a publisher looking to fold a recognizable domain name into a portfolio of existing sites, according to people familiar with the situation. A former Gawker employee told the Journal he has also inquired about purchasing the site and is considering printing and collecting the articles in a volume to ensure the archive is preserved.

Univision Communications Inc. last year bought Gawker's sister sites, among them Jezebel, Deadspin and Gizmodo, out of bankruptcy for $135 million. It passed, however, on purchasing Gawker. U.S. Bankruptcy Judge Stuart Bernstein has said advisers couldn't sell Gawker at the time "because it was toxic."

As it stands, the site is potentially more valuable to a person who wants articles removed than it is to a person who wants the archive preserved, a person familiar with the matter said, pointing to venture capitalist Peter Thiel who secretly financed Hogan's case, the ruling on which drove it out of business. A new owner of Gawker could also face legal pressure to remove articles, people familiar with the matter said.

Charles J. Harder, the lawyer who represented Terry Bollea, Hogan's real name, has filed
two defamation lawsuits in recent months against Univision's Gizmodo Media Group
LLC and individual journalists. Gizmodo has said the lawsuits, which target articles on
Jezebel and Deadspin, lack merit and are intended to intimidate journalists, which Mr.
Harder has denied.



Terry Bollea, also known as Hulk Hogan, sits in court during his trial against Gawker Media, in St Petersburg,
Fla., on March 17, 2016. PHOTO: DIRK SHADD/PRESS POOL/REUTERS

But the risk and potential cost of litigation could be reason enough for a new owner of
Gawker.com to remove articles regardless of whether a lawsuit is viable, lawyers said.
Judge Bernstein is weighing whether to dismiss the Deadspin lawsuit, the outcome of
which could impact a potential sale of Gawker, people familiar with the matter said.

Mr. Harder sent multiple letters to Univision after the sale was announced but before the
deal closed demanding removal of articles published by parent company Gawker Media
LLC, including the Jezebel and Deadspin articles now subjects of the lawsuits. The letters
were later filed as exhibits in bankruptcy court.

One letter demanded the removal of a 2016 Gawker article about President Donald
Trump's hair. Gawker Media has alleged the letters were part of a coordinated effort with
Mr. Thiel to disrupt the Univision deal, which lawyers for Mr. Harder have denied.

"It would be the responsible thing to do for a new buyer to remove articles from
Gawker.com that violate defamation laws, privacy laws or journalism ethics (Google "SPJ
Code of Ethics")," Mr. Harder said in an email to the Journal, referring to the Society of
Professional Journalists. "Such articles never should have been published in the first
place, and if they were to be removed now, the public, and journalism, would benefit."

Whoever purchases Gawker will be left to bear the cost of potential litigation. Gawker Media, which is liquidating, lacks the ability to provide meaningful indemnification for whoever acquires the website, said Will Holden, a managing director at Dacarba overseeing the sale and liquidation of Gawker Media. He acknowledged receiving multiple requests to remove articles on Gawker during the bankruptcy, including after the company's liquidation plan took effect in March.

Mr. Holden said the criteria he will consider in evaluating offers will evolve as parties discuss their plans for Gawker; though the type and form of consideration will be a primary factor in selecting a buyer. He said so far he has received more than a dozen inquiries.

Mr. Bollea is entitled to 45% of the proceeds from a sale of Gawker, according to the $31 million settlement that ended the wrestler's lawsuit. The settlement also bars the estate from selling Gawker to the site's founder, Nick Denton, or other "insiders" of Gawker Media without Mr. Bollea's consent.

A spokesman for Mr. Thiel didn't respond to messages requesting comment. Mr. Thiel's lawyer has pointed to the judgment to argue Mr. Bollea's lawsuit was justified. At the National Press Club in Washington, D.C., last October, Mr. Thiel said Gawker was a "singularly sociopathic bully" that ruined people's lives. Gawker published a story in 2007 that identified Mr. Thiel as gay, which he has said violated his privacy.

Bryan Freedman, an entertainment lawyer who has spoken to two potential buyers for Gawker, said he would generally advise any client to consider alternative revenue sources for the website. That includes how much money someone might pay to have articles taken down, though offering to remove articles for a price might be considered a form of extortion or face other legal problems that would make such a proposal unrealistic, he said.

A person who is the subject of multiple Gawker articles, who spoke to the Journal, said they contacted a lawyer after learning that the website was up for sale to see if it might present an opportunity to get articles taken down. A person familiar with the sale said removing articles would also likely attract public criticism.

Former Gawker writers told the Journal that the archive is an important record chronicling the misdeeds of powerful people. The archive is broad and includes everything from an early expose on the drug bazaar Silk Road, an article about consuming TGI Fridays "endless" appetizers over 14 hours and several columns written from a dog's perspective.

"I imagine most of the people who would be good stewards of the Gawker archives are too scared of being pursued legally to make that purchase," said former Gawker writer Sam Biddle, now a reporter at The Intercept. "The threat isn't just credible. It's come to pass."

A 2015 Gawker article Mr. Biddle wrote that referenced hacked emails from former Sony Pictures CEO Michael Lynton was deleted from the site without explanation during the bankruptcy proceedings. The emails, hacked by a group that calls itself Guardians of Peace, were made publicly available on the web.

"I recognize and appreciate that I am a public figure," Mr. Lynton, now the chairman of Snap Inc., said in an email to the Journal. "I want to make clear that I did not play a role in having the Gawker article taken down." Mr. Holden, the bankruptcy administrator, declined to discuss the article.

Gawker founding editor and media industry entrepreneur Elizabeth Spiers said she contacted Mr. Holden after speaking to former employees at the site to gather information about valuation. Ms. Spiers said the Gawker domain still has value but the question for a new owner is whether the site going forward can be extricated from Messrs. Thiel and Harder.

"A lot of people wanted to see how the Gawker vacuum would be filled when Gawker went away, but it really hasn't been," Ms. Spiers said.

As for the preservation of the archive, snapshots of Gawker articles have been captured by the Internet Archive, a nonprofit digital library, and similar websites. That alone, however, is far from a guarantee that these articles will continue to exist on the web, said Edward McCain, digital curator of journalism at the Donald W. Reynolds Journalism Institute at the University of Missouri. Articles preserved in this way can be difficult to find because they aren't searchable on Google and require readers already know the URL.

What that means for Gawker as it awaits a new owner is that articles could be effectively lost if they are removed from the website. The site is being shopped now to continue winding down the bankruptcy and give a new owner time to implement a plan for Gawker before a restriction tied to the Univision sale on adding new content to the site expires in March, the administrator Mr. Holden said.

"Who is it that gets to decide what history gets erased?" says Mary-Rose Papandrea, a law professor at the University of North Carolina at Chapel Hill. "We don't know what celebrity is going to be our next president or politician."

Write to Jonathan Randles at Jonathan.Randles@wsj.com

Copyright 2017 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com.

# EXHIBIT B

## Weber, Robert A (WIL)

| | |
|---|---|
| **From:** | Galardi, Gregg <Gregg.Galardi@ropesgray.com> |
| **Sent:** | Thursday, October 26, 2017 6:47 PM |
| **To:** | Weber, Robert A (WIL) |
| **Cc:** | Ahmad, Faiz (WIL); Clark, Anthony W (WIL); Walkingshaw, Peter; Sturm, Joshua; McGee, Alex |
| **Subject:** | RE: [Ext] Gawker.com |

Rob,

I went back to the Court's order and the meet and confer was on the request. We will draft simple order that says the requests are approved and you can put in alternative order. I will hopefully send you a draft order tomorrow to be submitted.

If you would like to meet and confer regarding the request, we are available. Otherwise, we will advise that you were not prepared to meet and confer regarding the requests.

Faiz,

I have spoken to the plan administrator. In order to provide Mr. Thiel with access to due diligence materials we will need to settle the potential claims against him and Mr. Harder. We are happy to have that discussion, but it will need to wait until after we have taken preliminary discovery.

Gregg

**Gregg M. Galardi**
**ROPES & GRAY LLP**
T +1 212 596 9139 | M +1 917 434 3178
1211 Avenue of the Americas
New York, NY 10036-8704
Gregg.Galardi@ropesgray.com
www.ropesgray.com

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

**From:** Galardi, Gregg
**Sent:** Saturday, October 21, 2017 9:07 PM
**To:** Weber, Robert A
**Cc:** Ahmad, Faiz; Clark, Anthony W
**Subject:** Re: [Ext] Gawker.com

The order needs agreement on the 2004. And we disagree about your delay and tactics. Ultimately irrelevant as we will provide order with our requests with which you disagree

Sent from my iPhone

On Oct 21, 2017, at 8:44 PM, Weber, Robert A <Robert.Weber@skadden.com> wrote:

> Gregg,

With respect, we disagree with your suggestion that Skadden delayed in responding to your improper 2004 requests. The Court issued its opinion on June 28, and directed the parties to meet and confer about a form of order implementing the opinion. You went radio silent for three months and then jumped the gun with your discovery requests, without even bothering to provide the form of order that the opinion contemplated. We responded to you much faster than you acted following the opinion, and before the purported discovery you sought was even due. Let's not bicker, and instead focus on getting to a form of order that accurately reflects the Court's opinion.

We appreciate your acknowledgement, despite your initial statement to the contrary, that there is no provision in the settlement agreements that precludes Mr. Thiel from participating in the sale process, and will confirm his interest in doing so separately.

Regards,

Rob

---

**From:** Galardi, Gregg [mailto:Gregg.Galardi@ropesgray.com]
**Sent:** Friday, October 20, 2017 2:22 PM
**To:** Ahmad, Faiz (WIL)
**Cc:** Weber, Robert A (WIL); Clark, Anthony W (WIL)
**Subject:** [Ext] Gawker.com

Faiz,
We reviewed the settlements and there are no restriction to Thiel purchasing gawker.com. That said, given the Debtors position regarding the potential causes of action that may be asserted against Mr. Thiel as well as the delay in Skadden responding on the 2004 request, there will be a number of issue that would need to be addressed before proceeding. I will discuss further with the Plan administrator upon his return from a trip abroad.
Best
Gregg

**Gregg M. Galardi**
**ROPES & GRAY LLP**
T +1 212 596 9139 | M +1 917 434 3178
1211 Avenue of the Americas
New York, NY 10036-8704
Gregg.Galardi@ropesgray.com
www.ropesgray.com

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

--------------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

# **EXHIBIT C**

**Weber, Robert A (WIL)**

| | |
|---|---|
| **From:** | Galardi, Gregg <Gregg.Galardi@ropesgray.com> |
| **Sent:** | Tuesday, October 31, 2017 10:34 PM |
| **To:** | Ahmad, Faiz (WIL) |
| **Cc:** | Weber, Robert A (WIL); Walkingshaw, Peter; Sturm, Joshua; McGee, Alex; Clark, Anthony W (WIL); skohn@chadbourne.com; jcopeland@chadbourne.com; Elberg, Shana A (NYC); Kestecher, Jason N (NYC); wholden@dacarba.com |
| **Subject:** | Re: [Ext] Re: Gawker - Sale Process |

I have explained. We believe there are valuable claims that might be asserted against Mr. Thiel and he has not proposed any payment for them and has advised he will not provide documents for us to assess. Moreover, we are considering whether to pursue a stalking horse bid and we believe Mr Theil is not a proper stalking horse and his involvement would chill bidding.  For these and other reasons the Plan Administrator is simply not prepared to bring Mr. Theil into the process at this time.

_____

On Oct 31, 2017, at 10:18 PM, Ahmad, Faiz <Faiz.Ahmad@skadden.com<mailto:Faiz.Ahmad@skadden.com>> wrote:

Gregg,
Can you explain why the Plan Administrator is preventing Mr. Thiel from participating in the sale process?  We have expressed Mr. Thiel's interest in writing several times.  He has conveyed his desire and ability to put forth a credible and meaningful proposal to deliver value to the estate.  We are asking to participate in the sale process in the same manner as other prospective bidders which you have solicited with the Asset Sale Opportunity Summary dated September 2017. Please provide your bidding instructions, applicable conditions to bid, and instructions for access to diligence materials. We look forward to participating in the sale process.
Thank you,

Faiz Ahmad
Skadden, Arps, Slate, Meagher & Flom LLP One Rodney Square | P.O. Box 636 | Wilmington | Delaware | 19899-0636
T: 302.651.3045 | F: 302.434.3045
faiz.ahmad@skadden.com<mailto:faiz.ahmad@skadden.com>

Gregg M. Galardi
ROPES & GRAY LLP
T +1 212 596 9139 | M +1 917 434 3178
1211 Avenue of the Americas
New York, NY 10036-8704
Gregg.Galardi@ropesgray.com<mailto:Gregg.Galardi@ropesgray.com>
www.ropesgray.com<http://www.ropesgray.com>

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

-----Original Message-----
From: Galardi, Gregg [mailto:Gregg.Galardi@ropesgray.com]
Sent: Monday, October 30, 2017 10:12 PM
To: Ahmad, Faiz (WIL)
Cc: Weber, Robert A (WIL); Walkingshaw, Peter; Sturm, Joshua; McGee, Alex; Clark, Anthony W (WIL);
skohn@chadbourne.com<mailto:skohn@chadbourne.com>;
jcopeland@chadbourne.com<mailto:jcopeland@chadbourne.com>; Elberg, Shana A (NYC); Kestecher, Jason N (NYC)
Subject: [Ext] Re: Gawker - Sale Process

I said you could make a proposal if you like that settles the causes of action and purchases gawker. At this time and until
such time as we get discovery and fully investigate the causes of action we are not prepared to provide your client
access to a data room for the purposes of simply bidding on assets or serving as a stalking horse.

Sent from my iPhone

On Oct 30, 2017, at 10:05 PM, Ahmad, Faiz
<Faiz.Ahmad@skadden.com<mailto:Faiz.Ahmad@skadden.com><mailto:Faiz.Ahmad@skadden.com>> wrote:

Gregg,
Thank you.  We look forward to participating in the Gawker sale process.  Can you please arrange or have Dacarba
arrange for access to the data room and provide the bid instructions / process letter so that we can prepare a proposal
in accordance with the process?  We look forward to hearing from you.

Faiz Ahmad

Skadden, Arps, Slate, Meagher & Flom LLP One Rodney Square | P.O. Box 636 | Wilmington | Delaware | 19899-0636
T: 302.651.3045 | F: 302.434.3045
faiz.ahmad@skadden.com<mailto:faiz.ahmad@skadden.com><mailto:faiz.ahmad@skadden.com>

Gregg M. Galardi
ROPES & GRAY LLP
T +1 212 596 9139 | M +1 917 434 3178
1211 Avenue of the Americas
New York, NY 10036-8704
Gregg.Galardi@ropesgray.com<mailto:Gregg.Galardi@ropesgray.com><mailto:Gregg.Galardi@ropesgray.com>
www.ropesgray.com<http://www.ropesgray.com><http://www.ropesgray.com>

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it
without further distribution and reply to the sender that you have received the message in error.

-----Original Message-----
From: Galardi, Gregg [mailto:Gregg.Galardi@ropesgray.com]
Sent: Sunday, October 29, 2017 11:17 PM
To: Weber, Robert A (WIL)

Cc: Walkingshaw, Peter; Sturm, Joshua; McGee, Alex; Clark, Anthony W (WIL);
skohn@chadbourne.com<mailto:skohn@chadbourne.com><mailto:skohn@chadbourne.com>;
jcopeland@chadbourne.com<mailto:jcopeland@chadbourne.com><mailto:jcopeland@chadbourne.com>; Ahmad, Faiz
(WIL); Elberg, Shana A (NYC); Kestecher, Jason N (NYC)
Subject: [Ext] Re: 2004 Discovery Request


Thanks Rob and Faiz


We will review the changes to the order and let you know our thoughts. On the sale front, if Mr Thiel would like to make
a proposal he can go ahead and do so. We offered that possibility a while back in connection with a settlement of claims
and were told Mr. Thiel had no interest because he thought the claims had no value.  Since you describe the claims as
"spurious", that view has apparently not changed.  So, while Mr. Thiel is free to make a proposal, we doubt we can agree
on a price.
Gregg


Sent from my iPhone


On Oct 29, 2017, at 8:54 PM, Weber, Robert A
<Robert.Weber@skadden.com<mailto:Robert.Weber@skadden.com><mailto:Robert.Weber@skadden.com><mailto:Ro
bert.Weber@skadden.com>> wrote:


Gregg,


We understand from your recent emails that the Plan Administrator does not intend to allow Mr. Thiel to participate in
the ongoing sale process.  The Plan Administrator should reconsider his position.


Mr. Thiel is prepared to make an offer to acquire all remaining Gawker assets, including Retained Causes of Action as
defined in the Plan, but excluding all cash held for distribution under the Plan.  Mr. Thiel is highly confident that he can
provide more value for the remaining assets than any other bidder in a fair and competitive sale process and, therefore,
an expeditious path to the closure of the Gawker bankruptcy cases.  Mr. Thiel is prepared to participate immediately and
in good faith in such a process.


The threatened estate claims against Mr. Thiel are spurious.  If necessary, he will litigate them to conclusion, which
would be expensive and time-consuming.  Mr. Thiel's proposed transactional solution is a better alternative and in the
best interests of all Gawker constituents, particularly in light of the Plan Administrator's obligation under the Bollea
settlement agreement to negotiate a settlement in good faith with Mr. Thiel.


Mr. Thiel is prepared to make his proposal and negotiate the transaction as promptly as possible.  Although a standstill
of litigation and discovery pending those negotiations makes sense, it is not a condition precedent to the negotiations.
If the Plan Administrator prefers to waste time and estate resources in discovery and litigation with Mr. Thiel while a
transaction is negotiated, Mr. Thiel will defend the litigation and participate in good faith in a transparent, fair and
competitive sale process.


Also, thank you for sending over your proposed form of order on the 2004 motion; our proposed revisions are attached.
If you wish, we can meet and confer about the order and the proposed discovery.  But as noted above, a transactional
solution is in the best interests of all concerned.


Rob and Faiz


Gregg M. Galardi
ROPES & GRAY LLP

T +1 212 596 9139 | M +1 917 434 3178
1211 Avenue of the Americas
New York, NY 10036-8704
Gregg.Galardi@ropesgray.com<mailto:Gregg.Galardi@ropesgray.com><mailto:Gregg.Galardi@ropesgray.com><mailto:
Gregg.Galardi@ropesgray.com>
www.ropesgray.com<http://www.ropesgray.com><http://www.ropesgray.com><http://www.ropesgray.com>

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it
without further distribution and reply to the sender that you have received the message in error.

From: Galardi, Gregg [mailto:Gregg.Galardi@ropesgray.com]
Sent: Thursday, October 26, 2017 10:46 PM
To:
'skohn@chadbourne.com<mailto:skohn@chadbourne.com><mailto:skohn@chadbourne.com><mailto:skohn@chadbou
rne.com>';
'jcopeland@chadbourne.com<mailto:jcopeland@chadbourne.com><mailto:jcopeland@chadbourne.com><mailto:jcopel
and@chadbourne.com>'; Weber, Robert A (WIL); Clark, Anthony W (WIL)
Cc: Walkingshaw, Peter; Sturm, Joshua; McGee, Alex
Subject: [Ext] RE: Harder 2004 Discovery Request

Attached is the proposed order.  I have previously sent Exhibit A and B.   We are available to meet and confer about the
order and the discovery request.  Absent hearing from you by 5 pm on Monday October  30, 2017 at 5 pm, we will
submit the proposed order and attached discovery requests.

As I have advised, we believe that the meet and confer was regarding the discovery requests and will advise the Court
that neither party has provided any comments since the discover was first sent over 30 days ago.

Gregg

Gregg M. Galardi
ROPES & GRAY LLP
T +1 212 596 9139 | M +1 917 434 3178
1211 Avenue of the Americas
New York, NY 10036-8704
Gregg.Galardi@ropesgray.com<mailto:Gregg.Galardi@ropesgray.com><mailto:Gregg.Galardi@ropesgray.com><mailto:
Gregg.Galardi@ropesgray.com>
www.ropesgray.com<http://www.ropesgray.com><http://www.ropesgray.com><http://www.ropesgray.com>

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it
without further distribution and reply to the sender that you have received the message in error.

From: Galardi, Gregg
Sent: Monday, October 16, 2017 9:42 AM

To:
skohn@chadbourne.com<mailto:skohn@chadbourne.com><mailto:skohn@chadbourne.com><mailto:skohn@chadbourne.com>;
jcopeland@chadbourne.com<mailto:jcopeland@chadbourne.com><mailto:jcopeland@chadbourne.com><mailto:jcopeland@chadbourne.com>
Cc: Walkingshaw, Peter; Sturm, Joshua; McGee, Alex
Subject: RE: Harder 2004 Discovery Request

Please advise as to when we can discuss.

From: Galardi, Gregg
Sent: Wednesday, September 20, 2017 4:31 PM
To:
skohn@chadbourne.com<mailto:skohn@chadbourne.com><mailto:skohn@chadbourne.com><mailto:skohn@chadbourne.com>;
jcopeland@chadbourne.com<mailto:jcopeland@chadbourne.com><mailto:jcopeland@chadbourne.com><mailto:jcopeland@chadbourne.com>
Cc: Walkingshaw, Peter
<Peter.Walkingshaw@ropesgray.com<mailto:Peter.Walkingshaw@ropesgray.com><mailto:Peter.Walkingshaw@ropesgray.com><mailto:Peter.Walkingshaw@ropesgray.com>>; Sturm, Joshua
<Joshua.Sturm@ropesgray.com<mailto:Joshua.Sturm@ropesgray.com><mailto:Joshua.Sturm@ropesgray.com><mailto:Joshua.Sturm@ropesgray.com>>; McGee, Alex
<William.McGee@ropesgray.com<mailto:William.McGee@ropesgray.com><mailto:William.McGee@ropesgray.com><mailto:William.McGee@ropesgray.com>>
Subject: Harder 2004 Discovery Request

Counsel,

Attached please find the Plan Administrator's First Request for Production issued pursuant to the Court's 2004 Order.
Once you have had an opportunity to review, we can hold a meet and confer to address any issues.

Thanks
Gregg

----------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain
legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby
notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited.
If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original
email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon
request.

========================================================================

<WILSR01A-#818740-v3-Gawker_2004_Proposed_Order_.DOCX>
<WILSR01A-#818808-v1-Change-Pro_Redline_-_WILSR01A_Gawker_2004_Proposed_Order_-818740-
v1_and_WILSR01A_Gawker_2004_Proposed_Order_-818740-v3.DOCX>

----------------------------------------------------------------------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

==============================================================================

-------------------------------------------------------------------------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

==============================================================================

# **<u>EXHIBIT D</u>**

## Weber, Robert A (WIL)

| | |
|---|---|
| **From:** | Galardi, Gregg <Gregg.Galardi@ropesgray.com> |
| **Sent:** | Monday, October 30, 2017 10:12 PM |
| **To:** | Ahmad, Faiz (WIL) |
| **Cc:** | Weber, Robert A (WIL); Walkingshaw, Peter; Sturm, Joshua; McGee, Alex; Clark, Anthony W (WIL); skohn@chadbourne.com; jcopeland@chadbourne.com; Elberg, Shana A (NYC); Kestecher, Jason N (NYC) |
| **Subject:** | [Ext] Re: Gawker - Sale Process |

I said you could make a proposal if you like that settles the causes of action and purchases gawker. At this time and until such time as we get discovery and fully investigate the causes of action we are not prepared to provide your client access to a data room for the purposes of simply bidding on assets or serving as a stalking horse.

Sent from my iPhone

On Oct 30, 2017, at 10:05 PM, Ahmad, Faiz <Faiz.Ahmad@skadden.com<mailto:Faiz.Ahmad@skadden.com>> wrote:

Gregg,
Thank you.  We look forward to participating in the Gawker sale process.  Can you please arrange or have Dacarba arrange for access to the data room and provide the bid instructions / process letter so that we can prepare a proposal in accordance with the process?  We look forward to hearing from you.

Faiz Ahmad
Skadden, Arps, Slate, Meagher & Flom LLP One Rodney Square | P.O. Box 636 | Wilmington | Delaware | 19899-0636
T: 302.651.3045 | F: 302.434.3045
faiz.ahmad@skadden.com<mailto:faiz.ahmad@skadden.com>

Gregg M. Galardi
ROPES & GRAY LLP
T +1 212 596 9139 | M +1 917 434 3178
1211 Avenue of the Americas
New York, NY 10036-8704
Gregg.Galardi@ropesgray.com<mailto:Gregg.Galardi@ropesgray.com>
www.ropesgray.com<http://www.ropesgray.com>

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

-----Original Message-----
From: Galardi, Gregg [mailto:Gregg.Galardi@ropesgray.com]
Sent: Sunday, October 29, 2017 11:17 PM
To: Weber, Robert A (WIL)

Cc: Walkingshaw, Peter; Sturm, Joshua; McGee, Alex; Clark, Anthony W (WIL);
skohn@chadbourne.com<mailto:skohn@chadbourne.com>;
jcopeland@chadbourne.com<mailto:jcopeland@chadbourne.com>; Ahmad, Faiz (WIL); Elberg, Shana A (NYC);
Kestecher, Jason N (NYC)
Subject: [Ext] Re: 2004 Discovery Request


Thanks Rob and Faiz


We will review the changes to the order and let you know our thoughts. On the sale front, if Mr Thiel would like to make a proposal he can go ahead and do so. We offered that possibility a while back in connection with a settlement of claims and were told Mr. Thiel had no interest because he thought the claims had no value.  Since you describe the claims as "spurious", that view has apparently not changed.  So, while Mr. Thiel is free to make a proposal, we doubt we can agree on a price.
Gregg

Sent from my iPhone

On Oct 29, 2017, at 8:54 PM, Weber, Robert A
<Robert.Weber@skadden.com<mailto:Robert.Weber@skadden.com><mailto:Robert.Weber@skadden.com>> wrote:

Gregg,

We understand from your recent emails that the Plan Administrator does not intend to allow Mr. Thiel to participate in the ongoing sale process.  The Plan Administrator should reconsider his position.

Mr. Thiel is prepared to make an offer to acquire all remaining Gawker assets, including Retained Causes of Action as defined in the Plan, but excluding all cash held for distribution under the Plan.  Mr. Thiel is highly confident that he can provide more value for the remaining assets than any other bidder in a fair and competitive sale process and, therefore, an expeditious path to the closure of the Gawker bankruptcy cases.  Mr. Thiel is prepared to participate immediately and in good faith in such a process.

The threatened estate claims against Mr. Thiel are spurious.  If necessary, he will litigate them to conclusion, which would be expensive and time-consuming.  Mr. Thiel's proposed transactional solution is a better alternative and in the best interests of all Gawker constituents, particularly in light of the Plan Administrator's obligation under the Bollea settlement agreement to negotiate a settlement in good faith with Mr. Thiel.

Mr. Thiel is prepared to make his proposal and negotiate the transaction as promptly as possible.  Although a standstill of litigation and discovery pending those negotiations makes sense, it is not a condition precedent to the negotiations. If the Plan Administrator prefers to waste time and estate resources in discovery and litigation with Mr. Thiel while a transaction is negotiated, Mr. Thiel will defend the litigation and participate in good faith in a transparent, fair and competitive sale process.

Also, thank you for sending over your proposed form of order on the 2004 motion; our proposed revisions are attached. If you wish, we can meet and confer about the order and the proposed discovery.  But as noted above, a transactional solution is in the best interests of all concerned.


Rob and Faiz


Gregg M. Galardi
ROPES & GRAY LLP
T +1 212 596 9139 | M +1 917 434 3178

1211 Avenue of the Americas
New York, NY 10036-8704
Gregg.Galardi@ropesgray.com<mailto:Gregg.Galardi@ropesgray.com><mailto:Gregg.Galardi@ropesgray.com>
www.ropesgray.com<http://www.ropesgray.com><http://www.ropesgray.com>


This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it
without further distribution and reply to the sender that you have received the message in error.


From: Galardi, Gregg [mailto:Gregg.Galardi@ropesgray.com]
Sent: Thursday, October 26, 2017 10:46 PM
To: 'skohn@chadbourne.com<mailto:skohn@chadbourne.com><mailto:skohn@chadbourne.com>';
'jcopeland@chadbourne.com<mailto:jcopeland@chadbourne.com><mailto:jcopeland@chadbourne.com>'; Weber,
Robert A (WIL); Clark, Anthony W (WIL)
Cc: Walkingshaw, Peter; Sturm, Joshua; McGee, Alex
Subject: [Ext] RE: Harder 2004 Discovery Request

Attached is the proposed order.  I have previously sent Exhibit A and B.    We are available to meet and confer about the
order and the discovery request.  Absent hearing from you by 5 pm on Monday October  30, 2017 at 5 pm, we will
submit the proposed order and attached discovery requests.

As I have advised, we believe that the meet and confer was regarding the discovery requests and will advise the Court
that neither party has provided any comments since the discover was first sent over 30 days ago.


Gregg


Gregg M. Galardi
ROPES & GRAY LLP
T +1 212 596 9139 | M +1 917 434 3178
1211 Avenue of the Americas
New York, NY 10036-8704
Gregg.Galardi@ropesgray.com<mailto:Gregg.Galardi@ropesgray.com><mailto:Gregg.Galardi@ropesgray.com>
www.ropesgray.com<http://www.ropesgray.com><http://www.ropesgray.com>


This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it
without further distribution and reply to the sender that you have received the message in error.


From: Galardi, Gregg
Sent: Monday, October 16, 2017 9:42 AM
To: skohn@chadbourne.com<mailto:skohn@chadbourne.com><mailto:skohn@chadbourne.com>;
jcopeland@chadbourne.com<mailto:jcopeland@chadbourne.com><mailto:jcopeland@chadbourne.com>
Cc: Walkingshaw, Peter; Sturm, Joshua; McGee, Alex
Subject: RE: Harder 2004 Discovery Request

Please advise as to when we can discuss.

From: Galardi, Gregg
Sent: Wednesday, September 20, 2017 4:31 PM
To: skohn@chadbourne.com<mailto:skohn@chadbourne.com><mailto:skohn@chadbourne.com>;
jcopeland@chadbourne.com<mailto:jcopeland@chadbourne.com><mailto:jcopeland@chadbourne.com>
Cc: Walkingshaw, Peter
<Peter.Walkingshaw@ropesgray.com<mailto:Peter.Walkingshaw@ropesgray.com><mailto:Peter.Walkingshaw@ropesg
ray.com>>; Sturm, Joshua
<Joshua.Sturm@ropesgray.com<mailto:Joshua.Sturm@ropesgray.com><mailto:Joshua.Sturm@ropesgray.com>>;
McGee, Alex
<William.McGee@ropesgray.com<mailto:William.McGee@ropesgray.com><mailto:William.McGee@ropesgray.com>>
Subject: Harder 2004 Discovery Request

Counsel,

Attached please find the Plan Administrator's First Request for Production issued pursuant to the Court's 2004 Order.
Once you have had an opportunity to review, we can hold a meet and confer to address any issues.

Thanks
Gregg

--------------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain
legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby
notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited.
If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original
email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon
request.

==============================================================================

<WILSR01A-#818740-v3-Gawker_2004_Proposed_Order_.DOCX>
<WILSR01A-#818808-v1-Change-Pro_Redline_-_WILSR01A_Gawker_2004_Proposed_Order_-818740-
v1_and_WILSR01A_Gawker_2004_Proposed_Order_-818740-v3.DOCX>

--------------------------------------------------------------------------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain
legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby
notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited.
If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original
email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon
request.

==============================================================================

# EXHIBIT E

DOW JONES, A NEWS CORP COMPANY ▼

DJIA ▲ 23604.22  0.74%        S&P 500 ▲ 2598.71  0.64%        Nasdaq ▲ 6854.57  0.94%        U.S. 10 Yr ▲ 1/32 Yield 2.368%

# THE WALL STREET JOURNAL.

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit
http://www.djreprints.com.

https://www.wsj.com/articles/gawker-adviser-to-market-potential-claims-against-peter-thiel-1509658396

BANKRUPTCY

# Gawker Adviser to Market Potential Claims Against Peter Thiel

### Gawker's lawyers are examining the relationship between Thiel and Hulk Hogan's lawyer



Venture capitalist Peter Thiel, above, secretly financed Hulk Hogan's case against Gawker.com,
the ruling on which drove it out of business. PHOTO: GARY CAMERON/REUTERS

*By Jonathan Randles*
Updated Nov. 2, 2017 5:36 p.m. ET

The adviser in charge of liquidating Gawker Media LLC is putting up for sale
potential legal claims the former blog publisher may have against Peter Thiel,
the billionaire venture capitalist who secretly financed litigation that drove
the company into bankruptcy.

The decision expands a marketing process already under way for Gawker
Media's flagship site, Gawker.com, which ceased operation in August 2016.
Parties have subsequently expressed interest in Gawker Media's potential
causes of action against Mr. Thiel, prompting the decision to include them in
the sale process, said William Holden, a managing director at Dacarba LLC
who is overseeing the sale.

Mr. Thiel financed Hulk Hogan's successful lawsuit against Gawker Media,
the ruling on which resulted in a $140 million judgment and forced the
company and founder Nick Denton into chapter 11. The case concerned
publication on Gawker.com of excerpts from a sex tape featuring Terry Bollea,
Hogan's real name. News reports by Forbes brought to light Mr. Thiel's
involvement in the case.

---

READ MORE

- Gawker Media Advisers to Put Flagship Website Up for Sale (July 25)
- Gawker Media Settles With Hulk Hogan in Privacy Suit (Nov. 2, 2016)
- Gawker.com Will Shut Down as Univision Acquires Rest of Company (Aug. 18, 2016)
- Univision Wins Bankruptcy Auction for Gawker Media for $135 Million (Aug. 16, 2016)
- Florida Jury Awards Wrestler Hulk Hogan $115 Million in Gawker Case (March 18, 2016)

The dispute between Gawker and Mr. Thiel is one of the few matters left unresolved in the bankruptcy, now more than a year old. In June, a judge gave Gawker permission to seek discovery tied to Mr. Thiel's relationship with Hogan's lawyer Charles Harder. Aside from Mr. Bollea, Mr. Harder also represented Shiva Ayyadurai and Ashley Terrill, both of whom sued over articles Gawker Media published and later settled their cases in bankruptcy.

Gawker is looking to discover emails or documents, if any exist, that might offer insight into what motivated Mr. Thiel to back litigation against the company. Gawker's lawyers have said they would have an actionable legal case against Mr. Thiel if it can be determined that the only reason he financed litigation was to destroy the company.

Messrs. Harder and Thiel have argued that Mr. Bollea's lawsuit against Gawker was justified and that no basis exists for new litigation. Mr. Thiel has said he got involved in Mr. Bollea's lawsuit because he wanted to defend his right to privacy. Gawker published an article in 2007 that identified Mr. Thiel as gay. Mr. Thiel has said the article violated his privacy. Mr. Thiel's lawyer has denied he had agreements to finance other lawsuits against Gawker.

Lawyers representing Messrs. Thiel and Harder didn't return messages seeking comment.

Building a hypothetical legal case against Mr. Thiel faces obstacles. A $31 million settlement that ended the legal fight between Mr. Bollea and Gawker prohibits the company from seeking any discovery into that litigation. Separate settlements with Mr. Ayyadurai and Ms. Terrill include additional restrictions on the requested discovery. Mr. Bollea's settlement entitles him to 45% of any proceeds from a lawsuit, if one is filed, as well as 45% of any proceeds generated from the sale of Gawker.com.

The sale of a debtor's legal claims through an auction is rare in bankruptcy, said Adam Levitin, a professor of law at Georgetown University Law Center. It is, instead, more common for litigation claims to be assigned to a trust that pursues claims on behalf of creditors, he said.

Gregg Galardi, a Ropes & Gray LLP lawyer representing Gawker, said at a court hearing in April that if discovery doesn't net any salient documents to support their legal theory they could negotiate a release with Mr. Thiel, according to a transcript. Gawker has argued in court papers that potential claims against Mr. Thiel, if prosecuted, "could yield millions if not tens of millions dollars in recovery."

The sale of these possible legal claims is being considered to maximize the value of Gawker Media's remaining assets for the benefit of stakeholders, Mr. Holden said. Short-form asset-purchase agreements will be sent in the next couple of weeks to parties who have signed nondisclosure agreements in connection with the sale process, he said. Mr. Holden said he would determine how to proceed with a possible sale based upon the responses he gets back.

The other assets being shopped include Gawker's trademarks, domain names, social media accounts and archive. Univision Communications Inc. last year bought Gawker's sister sites, among them Jezebel, Deadspin and Gizmodo, out of bankruptcy for $135 million. It passed, however, on purchasing Gawker.

Write to Jonathan Randles at Jonathan.Randles@wsj.com

Copyright &copy;2017 Dow Jones &amp; Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit
http://www.djreprints.com.

# EXHIBIT F

Gawker fans could bring the site back to life | Page Six    11/8/17, 2:33 PM

# Gawker fans could bring the site back to life

By Oli Coleman                                                    November 2, 2017  |  9:21pm



Gawker

Gawker

A Hollywood studio and a crowd-funded conglomerate of Gawker superfans are two of the parties that are seriously interested in buying the mothballed web site, Page Six has learned.

Sources connected to the sale of Gawker.com — which sellers hope to have completed by January — say the movie studio is looking into using the site's archives to make movies or TV series based on stories, or even the story of Gawker itself.

Meanwhile, the group of "hard-core Gawker fans" have hired a lawyer and done due diligence to prep a potential purchase.

While we're told that Will Holden — who was hired to manage the bankruptcy after Gawker lost its landmark $140 million lawsuit with Terry Bollea, aka Hulk Hogan, in 2016 and has been tasked with selling the site — has said he will consider Gawker's "ethos" when he decides on the buyer.

Gawker fans could bring the site back to life | Page Six                                              11/6/17, 2:33 PM

However, he has not ruled out the possibility of selling it to a malicious buyer — even Peter Thiel, the tech billionaire who funded Bollea's suit as part of a personal vendetta against Gawker and its founder, Nick Denton, after the site outed Thiel as gay.

We're told that no consensus has been reached on how much the site is worth.

FILED UNDER    GAWKER, HULK HOGAN, NICK DENTON

Recommended by 

Get the new Page Six app

Now it's even easier to keep up with the latest celebrity news and juicy gossip.

 

# **EXHIBIT G**

**Weber, Robert A (WIL)**

| | |
|---|---|
| **From:** | Galardi, Gregg <Gregg.Galardi@ropesgray.com> |
| **Sent:** | Tuesday, November 14, 2017 9:29 PM |
| **To:** | Ahmad, Faiz (WIL) |
| **Cc:** | Weber, Robert A (WIL); Walkingshaw, Peter; Sturm, Joshua; McGee, Alex; Clark, Anthony W (WIL); skohn@chadbourne.com; jcopeland@chadbourne.com; Elberg, Shana A (NYC); Kestecher, Jason N (NYC); wholden@dacarba.com |
| **Subject:** | Re: [Ext] Re: Gawker - Sale Process |

The sale process is not on hold. We are presently soliciting interest and will proceed with process that we believe maximizes value for stakeholders

Gregg M. Galardi
ROPES & GRAY LLP
T +1 212 596 9139 | M +1 917 434 3178
1211 Avenue of the Americas
New York, NY 10036-8704
Gregg.Galardi@ropesgray.com<mailto:Gregg.Galardi@ropesgray.com>
www.ropesgray.com<http://www.ropesgray.com>

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

_____

On Nov 14, 2017, at 9:12 PM, Ahmad, Faiz <Faiz.Ahmad@skadden.com<mailto:Faiz.Ahmad@skadden.com>> wrote:

Gregg,

I understand the parties are continuing to work through the various Rule 2004 Discovery matters.  I expect given the Plan Administrator's stated position that discovery needs to be complete prior to any sale of Gawker assets, you will suspend the sale process and cease discussions until such time as the Plan Administrator is ready to conduct a full and fair process.  Please confirm in writing that the sale process is on hold and that you have terminated any discussions. You mentioned a stalking horse in your email below - are you planning on a 363 type sale process?
Thank you,

Faiz Ahmad
Skadden, Arps, Slate, Meagher & Flom LLP One Rodney Square | P.O. Box 636 | Wilmington | Delaware | 19899-0636
T: 302.651.3045 | F: 302.434.3045
faiz.ahmad@skadden.com<mailto:faiz.ahmad@skadden.com>

1

-----Original Message-----
From: Galardi, Gregg [mailto:Gregg.Galardi@ropesgray.com]
Sent: Tuesday, October 31, 2017 10:34 PM
To: Ahmad, Faiz (WIL)
Cc: Weber, Robert A (WIL); Walkingshaw, Peter; Sturm, Joshua; McGee, Alex; Clark, Anthony W (WIL);
skohn@chadbourne.com<mailto:skohn@chadbourne.com>;
jcopeland@chadbourne.com<mailto:jcopeland@chadbourne.com>; Elberg, Shana A (NYC); Kestecher, Jason N (NYC);
wholden@dacarba.com<mailto:wholden@dacarba.com>
Subject: Re: [Ext] Re: Gawker - Sale Process

I have explained. We believe there are valuable claims that might be asserted against Mr. Thiel and he has not proposed any payment for them and has advised he will not provide documents for us to assess. Moreover, we are considering whether to pursue a stalking horse bid and we believe Mr Theil is not a proper stalking horse and his involvement would chill bidding.  For these and other reasons the Plan Administrator is simply not prepared to bring Mr. Theil into the process at this time.

_____

On Oct 31, 2017, at 10:18 PM, Ahmad, Faiz
<Faiz.Ahmad@skadden.com<mailto:Faiz.Ahmad@skadden.com><mailto:Faiz.Ahmad@skadden.com>> wrote:

Gregg,
Can you explain why the Plan Administrator is preventing Mr. Thiel from participating in the sale process?  We have expressed Mr. Thiel's interest in writing several times.  He has conveyed his desire and ability to put forth a credible and meaningful proposal to deliver value to the estate.  We are asking to participate in the sale process in the same manner as other prospective bidders which you have solicited with the Asset Sale Opportunity Summary dated September 2017. Please provide your bidding instructions, applicable conditions to bid, and instructions for access to diligence materials. We look forward to participating in the sale process.
Thank you,

Faiz Ahmad

Skadden, Arps, Slate, Meagher & Flom LLP One Rodney Square | P.O. Box 636 | Wilmington | Delaware | 19899-0636
T: 302.651.3045 | F: 302.434.3045
faiz.ahmad@skadden.com<mailto:faiz.ahmad@skadden.com><mailto:faiz.ahmad@skadden.com>

Gregg M. Galardi
ROPES & GRAY LLP
T +1 212 596 9139 | M +1 917 434 3178
1211 Avenue of the Americas
New York, NY 10036-8704
Gregg.Galardi@ropesgray.com<mailto:Gregg.Galardi@ropesgray.com><mailto:Gregg.Galardi@ropesgray.com>
www.ropesgray.com<http://www.ropesgray.com><http://www.ropesgray.com>

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

-----Original Message-----
From: Galardi, Gregg [mailto:Gregg.Galardi@ropesgray.com]
Sent: Monday, October 30, 2017 10:12 PM
To: Ahmad, Faiz (WIL)
Cc: Weber, Robert A (WIL); Walkingshaw, Peter; Sturm, Joshua; McGee, Alex; Clark, Anthony W (WIL);
skohn@chadbourne.com<mailto:skohn@chadbourne.com><mailto:skohn@chadbourne.com>;
jcopeland@chadbourne.com<mailto:jcopeland@chadbourne.com><mailto:jcopeland@chadbourne.com>; Elberg, Shana
A (NYC); Kestecher, Jason N (NYC)
Subject: [Ext] Re: Gawker - Sale Process

I said you could make a proposal if you like that settles the causes of action and purchases gawker. At this time and until
such time as we get discovery and fully investigate the causes of action we are not prepared to provide your client
access to a data room for the purposes of simply bidding on assets or serving as a stalking horse.

Sent from my iPhone

On Oct 30, 2017, at 10:05 PM, Ahmad, Faiz
<Faiz.Ahmad@skadden.com<mailto:Faiz.Ahmad@skadden.com><mailto:Faiz.Ahmad@skadden.com><mailto:Faiz.Ahma
d@skadden.com>> wrote:

Gregg,
Thank you.  We look forward to participating in the Gawker sale process.  Can you please arrange or have Dacarba
arrange for access to the data room and provide the bid instructions / process letter so that we can prepare a proposal
in accordance with the process?  We look forward to hearing from you.

Faiz Ahmad
Skadden, Arps, Slate, Meagher & Flom LLP One Rodney Square | P.O. Box 636 | Wilmington | Delaware | 19899-0636
T: 302.651.3045 | F: 302.434.3045
faiz.ahmad@skadden.com<mailto:faiz.ahmad@skadden.com><mailto:faiz.ahmad@skadden.com><mailto:faiz.ahmad@
skadden.com>


Gregg M. Galardi
ROPES & GRAY LLP
T +1 212 596 9139 | M +1 917 434 3178
1211 Avenue of the Americas
New York, NY 10036-8704
Gregg.Galardi@ropesgray.com<mailto:Gregg.Galardi@ropesgray.com><mailto:Gregg.Galardi@ropesgray.com><mailto:
Gregg.Galardi@ropesgray.com>
www.ropesgray.com<http://www.ropesgray.com><http://www.ropesgray.com><http://www.ropesgray.com>



This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it
without further distribution and reply to the sender that you have received the message in error.


-----Original Message-----

From: Galardi, Gregg [mailto:Gregg.Galardi@ropesgray.com]
Sent: Sunday, October 29, 2017 11:17 PM
To: Weber, Robert A (WIL)
Cc: Walkingshaw, Peter; Sturm, Joshua; McGee, Alex; Clark, Anthony W (WIL);
skohn@chadbourne.com<mailto:skohn@chadbourne.com><mailto:skohn@chadbourne.com><mailto:skohn@chadbour
ne.com>;
jcopeland@chadbourne.com<mailto:jcopeland@chadbourne.com><mailto:jcopeland@chadbourne.com><mailto:jcopel
and@chadbourne.com>; Ahmad, Faiz (WIL); Elberg, Shana A (NYC); Kestecher, Jason N (NYC)
Subject: [Ext] Re: 2004 Discovery Request


Thanks Rob and Faiz


We will review the changes to the order and let you know our thoughts. On the sale front, if Mr Thiel would like to make
a proposal he can go ahead and do so. We offered that possibility a while back in connection with a settlement of claims
and were told Mr. Thiel had no interest because he thought the claims had no value.  Since you describe the claims as
"spurious", that view has apparently not changed.  So, while Mr. Thiel is free to make a proposal, we doubt we can agree
on a price.
Gregg


Sent from my iPhone


On Oct 29, 2017, at 8:54 PM, Weber, Robert A
<Robert.Weber@skadden.com<mailto:Robert.Weber@skadden.com><mailto:Robert.Weber@skadden.com><mailto:Ro
bert.Weber@skadden.com><mailto:Robert.Weber@skadden.com>> wrote:


Gregg,


We understand from your recent emails that the Plan Administrator does not intend to allow Mr. Thiel to participate in
the ongoing sale process.  The Plan Administrator should reconsider his position.


Mr. Thiel is prepared to make an offer to acquire all remaining Gawker assets, including Retained Causes of Action as
defined in the Plan, but excluding all cash held for distribution under the Plan.  Mr. Thiel is highly confident that he can
provide more value for the remaining assets than any other bidder in a fair and competitive sale process and, therefore,
an expeditious path to the closure of the Gawker bankruptcy cases.  Mr. Thiel is prepared to participate immediately and
in good faith in such a process.


The threatened estate claims against Mr. Thiel are spurious.  If necessary, he will litigate them to conclusion, which
would be expensive and time-consuming.  Mr. Thiel's proposed transactional solution is a better alternative and in the
best interests of all Gawker constituents, particularly in light of the Plan Administrator's obligation under the Bollea
settlement agreement to negotiate a settlement in good faith with Mr. Thiel.


Mr. Thiel is prepared to make his proposal and negotiate the transaction as promptly as possible.  Although a standstill
of litigation and discovery pending those negotiations makes sense, it is not a condition precedent to the negotiations.
If the Plan Administrator prefers to waste time and estate resources in discovery and litigation with Mr. Thiel while a
transaction is negotiated, Mr. Thiel will defend the litigation and participate in good faith in a transparent, fair and
competitive sale process.


Also, thank you for sending over your proposed form of order on the 2004 motion; our proposed revisions are attached.
If you wish, we can meet and confer about the order and the proposed discovery.  But as noted above, a transactional
solution is in the best interests of all concerned.


Rob and Faiz

4

Gregg M. Galardi
ROPES & GRAY LLP
T +1 212 596 9139 | M +1 917 434 3178
1211 Avenue of the Americas
New York, NY 10036-8704
Gregg.Galardi@ropesgray.com<mailto:Gregg.Galardi@ropesgray.com><mailto:Gregg.Galardi@ropesgray.com><mailto:
Gregg.Galardi@ropesgray.com><mailto:Gregg.Galardi@ropesgray.com>
www.ropesgray.com<http://www.ropesgray.com><http://www.ropesgray.com><http://www.ropesgray.com><http://w
ww.ropesgray.com>


This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it
without further distribution and reply to the sender that you have received the message in error.


From: Galardi, Gregg [mailto:Gregg.Galardi@ropesgray.com]
Sent: Thursday, October 26, 2017 10:46 PM
To:
'skohn@chadbourne.com<mailto:skohn@chadbourne.com><mailto:skohn@chadbourne.com><mailto:skohn@chadbou
rne.com><mailto:skohn@chadbourne.com>';
'jcopeland@chadbourne.com<mailto:jcopeland@chadbourne.com><mailto:jcopeland@chadbourne.com><mailto:jcopel
and@chadbourne.com><mailto:jcopeland@chadbourne.com>'; Weber, Robert A (WIL); Clark, Anthony W (WIL)
Cc: Walkingshaw, Peter; Sturm, Joshua; McGee, Alex
Subject: [Ext] RE: Harder 2004 Discovery Request

Attached is the proposed order.  I have previously sent Exhibit A and B.   We are available to meet and confer about the
order and the discovery request.  Absent hearing from you by 5 pm on Monday October  30, 2017 at 5 pm, we will
submit the proposed order and attached discovery requests.

As I have advised, we believe that the meet and confer was regarding the discovery requests and will advise the Court
that neither party has provided any comments since the discover was first sent over 30 days ago.

Gregg


Gregg M. Galardi
ROPES & GRAY LLP
T +1 212 596 9139 | M +1 917 434 3178
1211 Avenue of the Americas
New York, NY 10036-8704
Gregg.Galardi@ropesgray.com<mailto:Gregg.Galardi@ropesgray.com><mailto:Gregg.Galardi@ropesgray.com><mailto:
Gregg.Galardi@ropesgray.com><mailto:Gregg.Galardi@ropesgray.com>
www.ropesgray.com<http://www.ropesgray.com><http://www.ropesgray.com><http://www.ropesgray.com><http://w
ww.ropesgray.com>

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.


From: Galardi, Gregg
Sent: Monday, October 16, 2017 9:42 AM
To:
skohn@chadbourne.com<mailto:skohn@chadbourne.com><mailto:skohn@chadbourne.com><mailto:skohn@chadbourne.com><mailto:skohn@chadbourne.com>;
jcopeland@chadbourne.com<mailto:jcopeland@chadbourne.com><mailto:jcopeland@chadbourne.com><mailto:jcopeland@chadbourne.com><mailto:jcopeland@chadbourne.com>
Cc: Walkingshaw, Peter; Sturm, Joshua; McGee, Alex
Subject: RE: Harder 2004 Discovery Request

Please advise as to when we can discuss.

From: Galardi, Gregg
Sent: Wednesday, September 20, 2017 4:31 PM
To:
skohn@chadbourne.com<mailto:skohn@chadbourne.com><mailto:skohn@chadbourne.com><mailto:skohn@chadbourne.com><mailto:skohn@chadbourne.com>;
jcopeland@chadbourne.com<mailto:jcopeland@chadbourne.com><mailto:jcopeland@chadbourne.com><mailto:jcopeland@chadbourne.com><mailto:jcopeland@chadbourne.com>
Cc: Walkingshaw, Peter
<Peter.Walkingshaw@ropesgray.com<mailto:Peter.Walkingshaw@ropesgray.com><mailto:Peter.Walkingshaw@ropesgray.com><mailto:Peter.Walkingshaw@ropesgray.com><mailto:Peter.Walkingshaw@ropesgray.com>>; Sturm, Joshua
<Joshua.Sturm@ropesgray.com<mailto:Joshua.Sturm@ropesgray.com><mailto:Joshua.Sturm@ropesgray.com><mailto:Joshua.Sturm@ropesgray.com><mailto:Joshua.Sturm@ropesgray.com>>; McGee, Alex
<William.McGee@ropesgray.com<mailto:William.McGee@ropesgray.com><mailto:William.McGee@ropesgray.com><mailto:William.McGee@ropesgray.com><mailto:William.McGee@ropesgray.com>>
Subject: Harder 2004 Discovery Request

Counsel,

Attached please find the Plan Administrator's First Request for Production issued pursuant to the Court's 2004 Order. Once you have had an opportunity to review, we can hold a meet and confer to address any issues.

Thanks
Gregg

----------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

============================================================================

<WILSR01A-#818740-v3-Gawker_2004_Proposed_Order_.DOCX>
<WILSR01A-#818808-v1-Change-Pro_Redline_-_WILSR01A_Gawker_2004_Proposed_Order_-818740-
v1_and_WILSR01A_Gawker_2004_Proposed_Order_-818740-v3.DOCX>

-----------------------------------------------------------------------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain
legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby
notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited.
If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original
email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon
request.

=============================================================================

-----------------------------------------------------------------------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain
legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby
notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited.
If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original
email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon
request.

=============================================================================

-----------------------------------------------------------------------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain
legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby
notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited.
If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original
email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon
request.

=============================================================================