ROPES & GRAY LLP
Gregg M. Galardi
Joshua Y. Sturm
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Plan Administrator*
*for the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------x
                                                    :
In re                                               :        Chapter 11
                                                    :
Gawker Media LLC, *et al.*, [1]                     :        Case No. 16-11700 (SMB)
                                                    :
                            Debtors.                :        (Jointly Administered)
                                                    :
------------------------------------------------------x

**PLAN ADMINISTRATOR'S OMNIBUS REPLY (I) IN SUPPORT OF NOTICE**
**OF PRESENTMENT OF ORDER PURSUANT TO RULE 2004 OF THE FEDERAL**
**RULES OF BANKRUPTCY PROCEDURE TO CONDUCT DISCOVERY**
**CONCERNING POTENTIAL CAUSES OF ACTION AND TO ESTABLISH**
**DISCOVERY RESPONSE AND DISPUTE PROCEDURES AND**
**(II) IN OPPOSITION TO THIEL'S MOTION FOR REARGUMENT**

William D. Holden, as Plan Administrator for the above-captioned debtors (the

"Debtors"), through undersigned counsel, files this omnibus reply (a) in support of the *Notice of*

*Presentment of Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure*

*Authorizing the Plan Administrator to Conduct Discovery Concerning Potential Causes of*

*Action and to Establish Discovery Response and Dispute Procedures* [Docket No. 1042] (the

"Notice of  Presentment"), and (b) in response to (i) the objection filed by Thiel Capital LLC and

---

[1] The last four digits of the taxpayer identification number of the Debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Plan Administrator, 10 East 53rd Street, 33rd Floor, New York, NY 10022. Gawker Hungary Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10022.

65906390_6

Peter Thiel (together ("Thiel") to the Notice of Presentment [Dkt. No. 1047] (the "Thiel Objection") and (ii) the objection filed by Terry G. Bollea ("Bollea"), Harder, Mirell & Abrams LLP (the "Harder Law Firm") and Charles J. Harder (together with the Harder Law Firm, "Harder") to the Notice of Presentment [Docket No. 1050] (the "Bollea and Harder Objection," and together with the Thiel Objection, the "Objections"), and respectively represents as follows:

## PRELIMINARY STATEMENT

1.     This Court previously ruled that "the Plan Administrator ha[d] shown good cause for Thiel-related discovery, and is entitled to examine Thiel and Harder with respect to Thiel's relations with Harder and potential causes of action" related to Thiel's conceded funding of litigation against the Debtors. *Corrected Memorandum Decision Granting In Part And Denying In Part Plan Administrator's Motion For Leave To Conduct A Rule 2004 Examination* [Docket No. 936] (the "Memorandum Decision") at 16. Consistent with the Memorandum Decision, the Plan Administrator's counsel provided counsel to the Thiel, Harder and Bollea (collectively, the "Objecting Parties"), with proposed Rule 2004 discovery requests and a proposed form of order on the Rule 2004 Motion (a "Rule 2004 Order"). The Objecting Parties refused to address the proposed Rule 2004 requests, insisting instead that pursuant to the Memorandum Decision, the Court must first enter a Rule 2004 Order.  Although the parties attempted to resolve their differences and propose to the Court an agreed form of Rule 2004 Order, they could not agree. Accordingly, the Plan Administrator proceeded by filing the Notice of Presentment.

2.     Despite this Court's Memorandum Decision, extensive negotiations regarding the form of Rule 2004 Order, Thiel, joined by Harder but not Bollea,[2] now requests, among other

---

[2] Although Bollea seeks an in chambers conference to provide his reasons for supporting the Motion for Reargument, counsel to the Plan Administrator has confirmed Bollea has not joined the request and will only provide argument through counsel.  As set forth below, the Plan Administrator objects to any in chambers

things, permission to reargue the Rule 2004 Motion.  This procedurally improper request rests on a purported "critical development" -- the entirely predictable and unremarkable public statement by the Plan Administrator that he is considering selling the potential causes of action against Thiel and related parties (collectively, the "Thiel Claims") to third parties.  Thiel Objection ¶ 1.

3.      As demonstrated below, this Court should not countenance Thiel's and Harder's further efforts to delay the Plan Administrator's Rule 2004 investigation of the Thiel Claims that the Court has already determined is proper.  Instead, this Court should (i) summarily deny Thiel's "Motion for Reargument" and additional requests for relief on procedural and substantive grounds and (ii) overrule all but certain minor objections to the form of Rule 2004 Order proposed by the Plan Administrator (the "Proposed Rule 2004 Order").

## ARGUMENT

**I.      THE COURT SHOULD OVERRULE THE THIEL OBJECTION AND DENY THIEL'S PROCEDURALLY AND SUBSTANTIVELY DEFICIENT MOTION FOR REARGUMENT AND REQUEST FOR OTHER RELIEF**

4.      In the Thiel Objection, Thiel asks the Court to approve one of the following three forms of relief: (i) an order denying the Rule 2004 Motion; (ii) an order granting reargument to consider "new evidence regarding the Plan Administrator's sale of the [Thiel Claims]" (the "Motion for Reargument"); or (iii) an order granting the Rule 2004 Motion in the form proposed by Bollea and Harder (the "Objectors' Rule 2004 Order").  In addition, without having filed any motion, Thiel also seeks an order directing the Plan Administrator "to permit Mr. Thiel to participate in the sale process in a reasonable manner like other bidders . . . ."  Thiel Objection ¶ 19.  As demonstrated below, none of the requested forms of relief should be denied.

---

conference, especially when no motion has been filed and requested by someone who is not a party to the request and is not prepared to "testify", except through counsel, directly on the issue.

65906390_6

A.    **The Court Should Deny Thiel's Motion for Reargument And Enter A Rule 2004 Order**

5.    Thiel's requests to deny entry of a Rule 2004 Order and to grant his Motion for Reargument both rest entirely on Thiel's contention that the Plan Administrator's consideration of selling the estates' interests in the Thiel Claims is a "critical development."  Thiel Objection ¶ 1.  Even if the Plan Administrator's willingness to consider offers to purchase the Thiel Claims constituted "new evidence," which it does not, that "new evidence" is immaterial and irrelevant to the Court's Memorandum Decision.  Thus, it provides no basis on which the Court may grant Thiel's improper request for reargument or deny entry of a Rule 2004 Order consistent with the Memorandum Decision.

6.    In support of his position, Thiel contends that "[r]eargument to consider new evidence is authorized under Local Bankruptcy Rule 9023-1 and Rules 59 and 60 of the Federal Rules of Civil Procedure, as made applicable by Federal R. Bankr. P. 9023 and 9024."  Thiel Objection ¶ 18, fn. 19.  As a procedural matter, however, only Local Bankruptcy Rule 9023-1 is applicable because no judgment or order has been entered on the Rule 2004 Motion.  Indeed, as this Court held in *In re Randall's Island Family Golf Centers, Inc.*, 290 B.R. 55, 61 n.4 (Bankr. S.D.N.Y. 2003) (Bernstein, J.), cited by Thiel, Local Bankruptcy Rule 9023-1 is the sole authority upon which to grant a motion for reargument in the absence of a final order or judgment.[3]  *See also In re 3586 Boston Rd. Realty Corp.*, No. 14-12080 (SMB), 2014 WL

---

[3]  In *Randall's Island* this Court concluded that Fed. R. Civ. P. did not apply because no judgment had been entered. *Id.* at 61.  No judgment or order has been entered on the Rule 2004 Motion and so, under Randall's Island, Rule 59 is simply inapplicable. Nor is Rule 60 applicable. Rule 60(b) is only applicable to a "final" judgment, order, or proceeding, and the proceedings regarding the Rule 2004 Motion are simply not final. *In re DG Acquisition Corp.*, 151 F.3d 75, 85 (2d Cir. 1998) (discovery orders related to Rule 2004 examination are "non-appealable, non-final" orders); *In re Towers Financial Corp.*, 164 BR 719, 720 (S.D.N.Y. 1994) ("[b]ankruptcy court orders granting or denying discovery do not finally dispose of an entire claim on which relief may be granted, and therefore are generally treated as interlocutory and not appealable as of right").  Moreover, even if Thiel could rely on Rule 60(a), when no judgment or order has been entered, there is simply no allegation of the sort of "mistake" that Rule 60(a) is intended to address. *See Rezzonico v. H & R Block, Inc.*, 182 F. 3d 144, 150-51 (2d Cir. 1999) (Rule 60(a) only

5473740, at *3 (Bankr. S.D.N.Y. Oct. 29, 2014) (Local Rule 9023-1 governs motion for reargument in this Court's proceedings). Thus, Local Bankruptcy Rule 9023-1 is Thiel's only available avenue for relief, and relief under that Local Bankruptcy Rule is available only if the Court determines that the Rule applies prior to entry of a Rule 2004 Order.[4] Even in that circumstance, however, Thiel's Motion for Reargument should be summarily denied.

7.        First, Thiel's Motion for Reargument is procedurally improper. Local Bankruptcy Rule 9023-1(a) expressly provides, "unless the Court orders otherwise, [the Motion for Reargument] shall be returnable within the same amount of time as required for the original motion." This Court has not entered any order scheduling the Motion for Reargument. The original 2004 Motion provided parties 16 days notice of the return date, and Thiel seemingly seeks to have the Motion for Reargument heard on 8 days notice, having served the Motion on the day before Thanksgiving. Further, although Thiel's counsel actively practices before this Court, counsel failed to comply with this Court's Chambers Procedures and other Local Bankruptcy Rules. *See, e.g.* Judge Stuart M. Bernstein Chambers' Rules (requiring moving party to obtain hearing date prior to filing and serving motion); Local Bankruptcy Rule 9006-1(b)(requiring motion papers to be served at least fourteen (14) days before the return date).[5] For

---

permits correction of clerical errors that "implement the result intended by the court at the time the judgment was entered").

[4] Local Bankruptcy Rule 9023-1(a) provides that "[a] motion for reargument *of a court order determining a motion* must be served within fourteen days after entry of the Court's order determining the original motion . . ." (emphasis added), the express terms of the Local Bankruptcy Rule having been changed to include the word "order" in 2004, after this Court's decision in *Randall's Island*. *See* Local Bankruptcy Rule 9023-1 Comment ("Subdivision (a) of this Rule was amended in 2004 to confirm with the 2004 amendments to Local District Rule 6.3").

[5] The Plan Administrator's objection is not purely procedural in nature, but addresses Thiel and Harder's tactical decision to try to avoid discovery. Neither Thiel nor Harder requested that the hearing on the Notice of Presentment be adjourned and no cause for adjournment exists. If the Motion for Reargument were properly filed, it would not be heard until after an order with respect to the Rule 2004 Motion is entered following the hearing on November 30, 2017, and absent a stay of that order, the Plan Administrator could proceed with serving the Proposed Rule 2004 Requests and begin the discovery process. As a litigation tactic, however, Thiel improperly joined the Motion for Reargument with an objection to the Notice of Presentment, apparently hoping to delay indirectly what he could not otherwise avoid: an order authorizing the Plan Administrator to commence discovery. The Court should not

5

these reasons, the Motion for Reargument should be denied without prejudice to being refiled in accordance with the Local Bankruptcy Rules and the Chambers Procedures of this Court.

8.       Second, even if the Court were willing to ignore the procedural deficiencies, this Court should deny the relief requested in the Motion for Reargument on substantive grounds. Local Bankruptcy Rule 9023–1(a) is adapted from Civil Rule 6.3 of the United States District Court for the Southern District of New York. *Local Bankruptcy Rule 9023–1 cmt.* The standards governing motions for reargument and motions to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) are identical. *Samuel's Temple Church of God in Christ v. Parade Place, LLC (In re Parade Place, LLC)*, 508 B.R. 863, 868 (Bankr. S.D.N.Y. 2014); *see also In re Houbigant, Inc.*, 190 B.R. 185, 187 (Bankr. S.D.N.Y 1996). Thus, to obtain relief Thiel "must show that the court overlooked controlling decisions or factual matters 'that might materially have influenced its earlier decision.'" *In re Best Payphones, Inc.*, No. 01–15472(SMB), 2008 WL 2705472, at *3 (Bankr.S.D.N.Y. July 3, 2008) (*quoting Anglo American Ins. Group, P.L.C. v. CalFed Inc.*, 940 F.Supp. 554, 557 (S.D.N.Y.1996)); see also *Randall's Island*, 290 B.R. at 62 (citing cases). Alternatively, Thiel would need to "demonstrate the need to correct a clear error or prevent manifest injustice." *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F.Supp.2d 365, 368 (S.D.N.Y.1999) (internal quotation marks and citations omitted); *Randall's Island*, 290 B.R. at 61 (quoting *Griffin Indus.*).

9.       As this Court has stated, "[t]he rule permitting reargument is strictly construed to avoid repetitive arguments on issues that the court has already fully considered." *Randall's Island*, 290 B.R. at 61 (citing *Griffin Indus.*, 72 F.Supp.2d at 368; *Monaghan v. SZS 33 Assocs., L.P.*, 153 F.R.D. 60, 65 (S.D.N.Y.1994); *Farkas v. Ellis*, 783 F.Supp. 830, 832 (S.D.N.Y.1992)).

---

countenance that tactic and enter an order, leaving Thiel and Harder to make a proper Motion for Reargument under Local Bankruptcy Rule 9023-1.

6

And critically, Thiel "cannot advance new facts or arguments; a motion for reargument is not a vehicle for 'presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.''" *Randall's Island,* 290 B.R. at 61 *(quoting Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir.1998) (discussing Rule 59)); *accord Griffin Indus.,* 72 F.Supp.2d at 368 (discussing motions for reargument).

10.     Thiel does not cite, nor could he, any new precedent or controlling decision justifying relief.  Nor can he demonstrate any manifest injustice that would warrant this Court granting his Motion for Reargument.  Instead, the sole basis upon which Thiel relies is the public statement by the Plan Administrator that he is considering selling the Thiel Claims.  That fact is entirely irrelevant to the Court's Memorandum Decision pursuant to which the Plan Administrator was authorized to pursue a Rule 2004 investigation of the Thiel Claims.  As the Court plainly determined, the Rule 2004 examination requested by the Plan Administrator "fits squarely within the purpose of Rule 2004, as [it] seeks to examine third parties for the purpose of 'discovering assets, examining transactions, and determining whether wrongdoing has occurred' on behalf of the Debtors' estate."  Memorandum Decision at 12.

11.     Simply put, there is nothing new or material that would potentially change this Court's prior ruling—the Plan Administrator has merely stated that he is considering selling the Thiel Claims as an alternative way to realize value.  At its core, the purpose of the Plan Administrator's investigation of the Thiel Claims has always been to determine and ultimately maximize value for the remaining estate beneficiaries.  As the Court properly considered when finding that cause for the Rule 2004 examination existed, the Plan Administrator believes that the Thiel Claims could potentially yield "millions if not tens of millions of dollars." Memorandum Decision at 9.  Indeed, it was the potential value of the Thiel Claims that prompted

7

the Court to suggest to Bollea's counsel that Bollea should "be all for" the Plan Administrator's request for a Rule 2004 examination.  2004 Motion Hearing Transcript at 13:11-16.  After all, Bollea would receive a large recovery from any proceeds from the Thiel Claims pursuant to the Debtor's confirmed chapter 11 plan of liquidation (the "Chapter 11 Plan").

12.     While the Plan Administrator may decide to commence a cause of action against Thiel based on the Rule 2004 discovery, the Plan Administrator is bound to only one course of action to maximize the value of the Thiel Claim.  Indeed, in response to arguments that the litigation would be too expensive to pursue, the Court was expressly advised that the Plan Administrator would consider, among other things, hiring a contingency firm to help monetize the value if necessary.  April 25, 2017 Transcript of Hearing re: Rule 2004 Motion (the "2004 Motion Hearing Transcript") at 8:9-17.  For the sophisticated counsel representing Thiel and Harder, or even this Court, it should hardly come as a surprise that in discharging his obligations, the Plan Administrator would also consider alternatives for realizing value, including a sale of the Thiel Claims. Nor could this fact come as a surprise to Thiel himself, as Thiel actually proposed a purchase of the Thiel Claims through his counsel prior to the publication of the source he cites.[6]

13.     Whether the value of the Thiel Claims is realized through the estate's pursuit of the claims on its own behalf or through sale of the claims to a third party will depend on both (i) the Plan Administrator's view of the likely net recovery for the estate through pursuit of the Thiel Claims and (ii) the price those Claims command on the open market.  As neither has yet been determined, and indeed determination of the former is the entire point of the Rule 2004 examination, the Plan Administrator is evaluating both options as part of the Rule 2004 process.

---

[6] Transmittal Declaration of Robert A. Weber [Dkt No. 1048] (the "Weber Declaration") Exhibit G at 4 (offering to purchase the Thiel Claims with other remaining Gawker assets and advocating "Mr. Thiel's proposed transactional solution" as the preferred means by which to resolve the claims against him).

65906390_6

That evaluation, an ongoing exercise of the Plan Administrator's business judgment, provides no basis for reargument. At bottom, Thiel's complaint about the Plan Administrator's decision to market the claims is simply a self-serving request to substitute the Plan Administrator's business judgment with Thiel's. The Court already rejected such a substitution in the Memorandum Decision, and it should not revisit that decision, notwithstanding Thiel's contention that he would provide "the preferred means" and his protestations regarding "expensive and unwarranted discovery against him." Thiel Objection ¶ 17.

14.     While Thiel complains of the "Plan Administrator's decision to sell the subject claims," a cursory review of the source to which Thiel points reveals that no such decision has yet been made, merely considered. The Wall Street Journal article cited in the Thiel Objection quotes the Plan Administrator for the unremarkable fact that the "sale of these possible legal claims *is being considered* to maximize the value of Gawker Media's remaining assets for the benefit of stakeholders."[7] Nor does it matter, as Thiel contends, that the Plan Administrator's request for Rule 2004 discovery was "necessary to inform his decision of whether to sue (or settle) with the Thiel Parties." Thiel Objection ¶ 2. Nothing in the Plan Administrator's request for Rule 2004 discovery, nor in this Court's Memorandum Decision, limited, precluded or prohibited the Plan Administrator from considering selling the Thiel Claims as opposed to bringing them himself as an alternative to settling with Thiel. Nor is there anything in the record, and Thiel cites nothing, that suggests that the Plan Administrator sought the discovery solely to decide to sue or settle. Through the Motion for Reargument, Thiel seeks to unnecessarily cabin the Plan Administrator's options for maximizing value of the Thiel claims, and this Court should reject that attempt.

---

[7] Weber Declaration Ex. E at 2 (emphasis added).

15.     Finally, Thiel also makes a cursory argument that the Court's decision should be reconsidered because "potential bidders might be able to view confidential documents produced by the Thiel Parties in Rule 2004 discovery." Thiel Objection ¶ 2. This argument is both premature and completely unfounded. The Proposed Rule 2004 Order provides a procedure for negotiating an appropriate confidentiality protective order, and permits subpoena recipients to produce documents to the Plan Administrator's counsel on a confidential, attorneys'-eyes-only basis pending this Court's approval of such an order. Proposed Rule 2004 Order ¶ 8. The Proposed Rule 2004 Order specifically provides that any such documents "shall not be further disclosed" pending this Court's entry of a protective order, and no Objecting Party has raised any issue with the adequacy of that provision of the Proposed Rule 2004 Order. Thiel's concerns about confidentiality are therefore unfounded and his objection on this point should be rejected.

16.     In sum, the Proposed Rule 2004 Order is entirely consistent with the Court's Memorandum Decision and Thiel's Motion for Reargument is both untimely and unfounded, as nothing material has changed with respect to the Plan Administrator's investigation of the Thiel Claims. In accordance with his obligations under the Chapter 11 Plan, the Plan Administrator seeks to investigate the Thiel Claims in order to determine their potential value to the estate, and the manner in which that value might best be realized for the beneficiaries of any value received for the Gawker Assets and the Thiel Claims (the "Benficiaries"). In order to make those determinations, the Plan Administrator still requires the discovery that Thiel and Harder continue to resist.

**B.     The Court Should Deny Thiel's Request To Be Permitted To Participate In The Sale Process**

17.     As set forth above, in addition to the Motion for Reargument, Thiel also seeks an order from this Court directing the Plan Administrator "to permit Mr. Thiel to participate in the

sale process in a reasonable manner and like the other bidders . . . ."  Thiel Objection ¶ 19.  This request should also be denied on both procedural and substantive grounds.

18.      First, despite having noted this Court's jurisdiction with respect to a sale of the Gawker.com website and certain related assets (the "Gawker Assets"), Thiel Objection at 9 fn. 20, Thiel has not filed a motion seeking to enforce the Confirmation Order or alleged that the Plan Administrator has breached a contractual or fiduciary duty owed to him.  Instead, Thiel broadly asserts that the Plan Administrator's refusal to grant him access to confidential documents, "is contrary to the Plan Administrator's fiduciary and contractual obligations. . . ."  Thiel Objection ¶ 17.  Yet the Plan Administrator does not owe Thiel any such fiduciary or contractual obligation under the Chapter 11 Plan, the Confirmation Order, or otherwise.  To have standing to bring such an objection, Thiel must assert some legal right or interest of his own, and he simply has none with respect to the sale of the Gawker Assets.  *See In re Martin Paint Stores*, 199 B.R. 258, 263–64 (Bankr. S.D.N.Y. 1996) (Bernstein, J) (noting that standing is a threshold provision in all federal cases and that a party asserting standing must assert his own legal rights and not those of third parties), *aff'd sub nom. S. Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57 (S.D.N.Y. 1997).

19.      Additionally, the Plan Administrator has not yet invoked this Court's jurisdiction by seeking approval of a sale motion or a sale process.  Thus, at this time, Thiel simply lacks both standing to pursue the requested relief as a potential bidder and a proper proceeding in which to object to the Plan Administrators' sale process.  For these reasons, Thiel's request to be permitted into the sale process should be denied.[8]

---

[8] For the same reasons, Harder similarly lacks standing to raise such an objection and Bollea, who has standing, has neither made a motion nor joined in the request.  Moreover, should Bollea join in the request, the Plan Administrator will request that an evidentiary hearing be held to inquire as to Bollea's basis for joinder and allegations of breach of contractual or fiduciary obligations.  As Bollea well knows, the Plan Administrator has consulted with Bollea's

65906390_6

20.      Second, and more importantly perhaps, there is simply nothing wrong or improper about excluding Thiel from the sale process at the present time.  Thiel has refused to provide any written indication of interest for the Gawker Assets or the Thiel Claims.  Second, the Plan Administrator is pursuing a sale of the Gawker Assets in the manner that, in his business judgment, is most likely to maximize recoveries to the remaining estate beneficiaries.  Thiel's only connection to the Gawker Assets is funding a campaign of litigation against the Debtors premised on his desire to destroy the business forever.  So, Thiel's statement that he is the most "able and logical purchaser" (Thiel Objection ¶ 17) and that he should be treated "like any other prospective bidder" (Thiel Objection ¶ 12) strains credibility, especially in the face of his continued resistance to Court approved discovery regarding the actions he took to destroy the very business he now seeks to own.

21.      Thiel's contention that "[o]bviously if Mr. Thiel is allowed to bid on a level playing field, value will be maximized. If not, it won't," Thiel Objection ¶ 17, is not any more convincing.  Given the history between Thiel and the Debtors, the Plan Administrator has good reason to doubt that Thiel's involvement would maximize value, or even result in a good faith bid from Thiel.  Indeed, the Plan Administrator's concern that Thiel's involvement in the bidding process may chill bidding stems not only from Thiel's conduct towards the Debtors prepetition, but also from his attempts to negotiate a release for himself.  During the course of negotiations of a potential release of the Thiel Claims, Thiel offered an agreement not to sue the Debtors' former employees and contractors as sole consideration for the release of the claims against him.  Such an offer is nothing more than a veiled threat to continue to bring vindictive litigation against those former employees and contractors who waived their indemnification claims under the

---

counsel on the steps that have been taken in the process and there is no requirement that the parties agree entirely on the sale process.

Chapter 11 Plan should the Debtors refuse to release him.  Nonetheless, Thiel chose to highlight this offer in his initial objection to the Debtor's Rule 2004 motion as evidence of his supposed good faith.[9]  And indeed, in the absence of a release for Thiel, litigation against the Debtors' former employees and contractors has proceeded under the banner of the Harder Firm.[10]  Given Thiel's long history of vindictive conduct against the Debtors and the fact that his interests are plainly adverse to those of the estate while the Thiel Claims are being investigated, the Plan Administrator has legitimate concerns regarding Thiel's participation in the sale process.

22.    The Plan Administrator has therefore sensibly decided not to include Thiel in the confidential portion of the sale process of the Gawker Assets unless and until (i) Thiel makes a bona fide offer to settle the claims, (ii) the Plan Administrator has sufficient information to determine the value of those claims, or (iii) the claims against Thiel are resolved.  Other than Bollea, the Beneficiaries have expressed no concerns regarding excluding Thiel from the current sale process, and Bollea has already demonstrated that he is not interested in maximizing the value of the Gawker Assets, but simply in avoiding more press.  2004 Motion Hearing Transcript at 12:5-14:6.[11]  Accordingly, this Court should deny Thiel's request to upend the Plan Administrator's business judgment and grant him access to the confidential portions of the sale process.

---

[9] *Objection of Peter Thiel and Thiel Capital LLC to Motion of the Debtors for Leave Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to Conduct Discovery Concerning Potential Plan Issues and Potential Causes of Action, and to Establish Discovery Response and Dispute Procedures* [Docket No. 870] p. 1 n.3.

[10] This Court is already familiar with the suit that Harder is prosecuting against Ryan Goldberg.  Harder has also filed suit against former Gawker Media LLC employees Anna Merlan and Emma Carmichael regarding an article about a group called "Superstar Machine" that quoted ex-members referring to the organization as a "cult." *See Complaint*, *International Scherick, LLC et al. v. Gizmodo Media Group, LLC et al.*, Case No. 157939/2017 (N.Y. Sup. Ct., filed Sept. 6, 2017).  Harder has also sent a number of letters threatening litigation against the Debtor's former sites and employees.  Thiel has refused to publicly disclose his level of involvement in these suits and threats to sue.

[11] If and to the extent that Bollea contends that the Plan Administrator is violating any obligations owed to him as a Beneficiary, with which contention the Plan Administrator would take issue, Bollea is free to bring an action in this Court to enforce his rights.

13

## II.    THE COURT SHOULD REJECT THE CHANGES TO THE PROPOSED 2004 ORDER ADVOCATED IN THE BOLLEA AND HARDER OBJECTION

23.    In addition to supporting the unfounded Thiel Objection, the Bollea and Harder Objection includes a competing form of order (the "Objectors' Rule 2004 Order") advocating a number of changes to the Proposed Rule 2004 Order that the Court should reject.  The changes to the Proposed Rule 2004 Order advocated by Bollea and Harder (i) seek to impose limitations on the Plan Administrator's ability to conduct Rule 2004 discovery that are inconsistent with the Court's Memorandum Decision; (ii) inappropriately seek to impose limitations on the Plan Administrator's ability to conduct discovery outside of the Rule 2004 examination and (iii) attempt to establish procedures that would allow the subjects of the Rule 2004 examination to delay or evade their discovery obligations.  This Court should reject such changes and enter the Proposed Rule 2004 Order as submitted by the Plan Administrator.

### A.    The Court Should Reject The Objecting Parties' Attempt To Expand the Scope of the Settlement Agreements

24.    The Court should reject Bollea and Harder's proposed language preventing the Plan Adminstrator from "obtain[ing] any discovery from anyone" regarding Bollea, Ayyadurai, and Terrill.  Objectors' Rule 2004 Order ¶ 1.  The Plan Administrator's Proposed Rule 2004 Order adequately protects the interests of those parties by (i) providing that nothing in the order shall authorize the Plan Administrator to conduct discovery that is prohibited by the settlement agreements with those parties (Rule 2004 Proposed Order ¶ 2), and (ii) preventing the Plan Administrator from taking discovery regarding those parties as provided by the language in each of their respective settlement agreements (Rule 2004 Proposed Order ¶ 4).  Further limitation of the rights of the Plan Administrator beyond what is included in the settlement agreements is inappropriate and the Court should reject such changes.

65906390_6

25.     Bollea and Harder also seek to preclude the Plan Administrator from disputing the scope of the limitation on discovery placed on him by the Debtors' settlement agreement with Bollea.  Bollea and Harder Objection ¶ 4.  The precise scope of the Bollea settlement agreement was not before the Court when it entered its Memorandum Decision, and Bollea and Harder's characterization of the issue as "fully-litigated" (Bollea and Harder Objection ¶ 4) is unfounded. Indeed, the Court correctly noted that disputes pertaining to the scope of the settlement agreement with Bollea are more appropriately litigated in a breach of contract action.  April 25, 2017 Transcript of Hearing re: Rule 2004 Motion (the "2004 Motion Hearing Transcript") at 15:25-16:5.

**B.     The Plan Administrator Should Not Be Precluded From Seeking Discovery From Affiliates of Thiel or Harder**

26.     As this Court correctly framed the issue in its Memorandum Decision, the Plan Administrator has moved for a Rule 2004 examination in order "to determine whether he should commence any litigation against Thiel *and/or related parties* including an action for *prima facie* tort under New York Law."  Memorandum Decision at 2 (emphasis added).  The Court found good cause for such an examination.  As the Court correctly noted, based upon public accounts of Thiel's involvement in the funding of litigation against Gawker, "[t]he Plan Administrator hypothesizes that Thiel and Harder entered into a conspiracy to destroy Gawker's business." Memorandum at 14.  But, as the Plan Administrator has repeatedly asserted, before commencing an action, it seeks additional information to determine whether estate assets would be properly used in the pursuit of claims against Thiel or related parties.  Part of the information that the Plan Administrator lacks is whether there are other parties to the potential conspiracy, or whether Thiel or Harder employed agents or other affiliated parties in the pursuit of that conspiracy.

15

27.    Now Bollea and Harder seek to preclude the Plan Administrator from examining any affiliated parties of Thiel or Harder. Objectors' Rule 2004 Order ¶ 3; Bollea and Harder Objection ¶ 5. Such preclusion is premature and inappropriate, and the Court should reject it. The Court found that "the Plan Administrator has shown good cause for the Thiel-related discovery" (Memorandum Decision at 16) and the scope of such discovery should include discovery from parties related to Thiel and Harder.

### C.    The Proposed Order Should Not Limit the Plan Administrator's Ability to Conduct Discovery Outside of the Rule 2004 Examination

28.    Bollea and Harder complain that the Proposed Rule 2004 Order only restricts the Plan Administrator from seeking discovery from Ayyadurai and Terrill by issuing subpoenas pursuant to the Rule 2004 Motion. Bollea and Harder Objection ¶ 6. Specifically, Bollea and Harder object that the Proposed Rule 2004 Order only prevents the Plan Administrator from seeking discovery from Ayyadurai and Terrill "pursuant to the [Rule 2004] Motion" (Proposed Rule 2004 Order ¶ 3) and insist that the Plan Administrator be precluded from seeking discovery from Ayyadurai or Terrill *at all* without further order of the Court. Yet the language to which Bollea and Harder object simply tracks the Court's observations in the Memorandum Decision with respect to discovery sought from Ayyadurai and Terrill. Memorandum Decision at 16 ("The Plan Administrator is no longer seeking discovery from Ayyadurai or Terrill *through the Rule 2004 Motion. . . .*") (emphasis added).

29.    In place of a limitation on the Plan Administrator's power to issue Rule 2004 subpoenas, Bollea and Harder would insist on a total bar to discovery from Ayyadurai or Terrill without further order of the Court. Bollea and Harder Objection ¶ 6. Such a request not only exceeds the scope of this Rule 2004 proceeding, but is entirely inconsistent with the settlement agreements upon which Bollea and Harder rely. As Bollea and Harder concede, the settlement

16

agreements with Ayyadurai and Terrill permit the Plan Administrator to take discovery from

Ayyadurai and Terrill limited to "litigation financing agreement(s)" relating to their respective

lawsuits "and any non-privileged retainer agreements with Charles J. Harder, Esq. or the law

firm of Harder, Mirell & Abrams LLP" relating to their respective lawsuits.  Bollea and Harder

Objection ¶ 1.  While Bollea and Harder incorrectly argue that the settlement agreements do not

entitle the Plan Administrator to obtain litigation financing agreements and non-privileged

retainer agreements (Bollea and Harder Objection ¶ 6), that issue is not before the Court as part

of the Rule 2004 proceeding, and Bollea and Harder's improper attempt to prejudice the Plan

Administrator's right to seek such documents should be rejected.

> **D.    The Plan Administrator Should Not Be Precluded From Investigating Potential Causes Of Action Revealed In Discovery**

30.    Bollea and Harder would limit the Plan Administrator's ability to investigate

potential causes of action beyond that of *prima facie* tort under New York law (Objectors' Rule

2004 Order ¶ 1; Bollea and Harder Objection ¶ 7), despite this Court's finding that "the Plan

Administrator has shown good cause for Thiel-related discovery, and is entitled to examine Thiel

and Harder with respect to Thiel's relationship with Harder and potential *causes* of action. . . ."

(Memorandum Decision at 16 (emphasis added)) and the fact that the Plan Administrator

requested leave to investigate claims "*including* an action for *prima facie* tort" (Memorandum

Decision at 2 (emphasis added)).  While an action for *prima facie* tort is the most likely avenue

of recovery given public accounts of Thiel and Harder's conduct, the details of their conspiracy

against the Debtors are currently unknown to the Plan Administrator, thus necessitating the Rule

2004 investigation.    The Plan Administrator should not be precluded from pursuing his

obligation to maximize the value of potential claims against Thiel and Harder, and should be

permitted to investigate any other potentially valuable claims that arise in the course of discovery.

E.    **The Rule 2004 Subpoena Recipients Should Not Be Relieved Of Their Burden Of Asserting Privilege Over Withheld Documents**

31.    Finally, Bollea and Harder argue that recipients of the Plan Administrator's Rule 2004 subpoenas should be permitted to wait *75 days* before meeting and conferring with the Plan Administrator about whether they need to produce a privilege log *at all*. Objectors' Rule 2004 Order ¶ 7; Bollea and Harder Objection ¶ 8. This change to the Proposed Rule 2004 Order is nothing more than an attempt to evade the subpoena recipients' discovery obligations through delay and further dispute. Harder has already asserted a blanket objection to discovery on privilege grounds, which the Court correctly rejected. *See* Memorandum Decision at 13-14. Given Harder's previously over-aggressive assertion of privilege, this Court should not relieve Harder or other recipients of Rule 2004 subpoenas of their burden to establish privilege over the documents they seek to withhold.

32.    Bollea and Harder complain that the Plan Administrator has not produced a privilege log in a separate proceeding related to Ryan Goldberg's motion to enforce the injunction provisions in the Chapter 11 Plan (Bollea and Harder Objection ¶ 8), but that situation is completely inapposite to the requested Rule 2004 discovery. The document requests related to litigation of Mr. Goldberg's motion pertain to the drafting and revision of the Chapter 11 Plan by the Debtors' counsel, documents generated as part of client representation. But as the Court has already found, "Harder did not represent Thiel" (Memorandum Decision at 14) and the Plan Administrator "is entitled to examine Thiel and Harder with respect to Thiel's relationship with Harder..." (Memorandum Decision at 16). Neither Harder's communications with a non-client third party nor work done on behalf of that party is subject to attorney-client privilege, and thus

18

Harder's attempt avoid his burden of asserting privilege over withheld documents should be rejected.

**CONCLUSION**

33.    For all of the reasons set forth in the Rule 2004 Motion, the Memorandum Decision and in this Reply, the Debtors respectfully request that the Court overrule the Objections, enter the Proposed Rule 2004 Order as modified, and grant such other relief as is just and proper.

Dated: November 29, 2017  
      New York, New York

*/s/ Gregg M. Galardi*  
ROPES & GRAY LLP  
Gregg M. Galardi  
Joshua Y. Sturm  
1211 Avenue of the Americas  
New York, NY 10036-8704  
Telephone: (212) 596-9000  
Facsimile: (212) 596-9090  
gregg.galardi@ropesgray.com  
joshua.sturm@ropesgray.com  

*Counsel to the Plan Administrator*  
*for the Debtors*

65906390_6