

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    GAWKER MEDIA, LLC,              Case No. 16-11700-smb

8

9              Debtor.

10

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                    U.S. Bankruptcy Court

14                    One Bowling Green

15                    New York, New York 10004

16

17                    November 30, 2017

18                    10:24 AM

19

20   B E F O R E :

21   HON STUART M. BERNSTEIN

22   U.S. BANKRUPTCY JUDGE

23

24

25

1    Hearing re:  Notice of Presentment, Notice of Presentment of

2    Order Pursuant to Rule 2004 of the Federal Rules of

3    Bankruptcy Procedure Authorizing the Plan Administrator to

4    Conduct Discovery Concerning Potential Causes of Action and

5    to Establish Discovery Response and Dispute Procedures

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South

```
 1   A P P E A R A N C E S :

 2   ROPES & GRAY

 3        Attorney for the Plan Administrator

 4        1211 Avenue of the Americas

 5        New York, NY 10036-8704

 6

 7   BY:  GREGG M. GALARDI, ESQ.

 8

 9   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

10        Attorneys for Peter Thiel and Thiel Capital

11        One Rodney Square

12        P.O. Box 636

13        Wilmington, DE 19899

14

15   BY:  ANTHONY W. CLARK, ESQ.

16        ROBERT A. WEBER, ESQ.

17        SHANA A. ELBERG, ESQ.

18

19   COHEN & GRESSLER LLP

20        Attorney for Terry Bollea

21        800 Third Avenue

22        New York, NY 10022

23

24   BY:  DANIEL. H. TABAK, ESQ.

25
```

1    NORTON ROSE FULBRIGHT US LLP

2          Attorney for the Harder Firm, et al.

3          1301 Avenue of the Americas

4          New York, NY 10019

5

6    BY:   SANUEL S. KOHN, ESQ.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              MR. GALARDI:  Good morning, Your Honor.

3              THE COURT:  Good morning.

4              MR. GALARDI:  For the record, Greg Galardi on

5       behalf of the plan administrator for Gawker Media, LLC.

6              Your Honor, there's only one matter on the agenda

7       today, is and that is the debtor's -- what's left is the

8       debtor's notice of presentment of a form of order.

9              Depending upon how Your Honor would like to

10      proceed, we have submitted an order and we've received two

11      objections.

12             The first objection goes to the actual substance

13      of the order itself with a blackline that they've submitted,

14      I can run through that.

15             The second objection is the objection of

16      Mr. Thiel, and Mr. Thiel accompanied that with a motion for

17      reargument and then also requesting the direction that no

18      order be entered.

19             THE COURT:  Okay.

20             MR. GALARDI:  We think that is procedurally

21      improper, willing to address the Court on the comments to

22      the order and why we think those are appropriate.

23             THE COURT:  Let me hear why I shouldn't enter any

24      order, because that's a threshold issue.

25             MR. GALARDI:  Why you shouldn't enter any order.

Page 6

1    You should enter an order today.

2            THE COURT:  He's saying I shouldn't enter any

3    order, right?

4            MR. GALARDI:  And -- that's correct.  So you'll

5    want to hear from Mr. Clark --

6            THE COURT:  Well yeah, I'll hear from him.  That's

7    a --

8            MR. GALARDI:  Thank you.

9            THE COURT:  -- threshold issue.

10           MR. CLARK:  Good morning, Your Honor.

11           THE COURT:  Good morning.

12           MR. CLARK:  Tony Clark of Arps, Skadden for Peter

13   Thiel and Thiel Capital.

14           Your Honor, at the hearing on the motion some

15   months back you asked Mr. Galardi what facts he needed in

16   order to frame a complaint, that was at page 7 of the motion

17   hearing transcript.  And then in the decision that Your

18   Honor rendered on the 2004 motion at page 10 Your Honor

19   indicated that without the information that the debtors were

20   seeking on a Rule 2004 motion they lacked a reasonable basis

21   to believe they can prove such a claim, a claim against

22   Thiel.

23           THE COURT:  I think the argument that was made was

24   that they're not entitled to the discovery because they lack

25   a basis to believe that they have a claim, and I suggested

Page 7

1    it worked the other way, that they needed discovery in order

2    to assert the claim.  They don't have to assert a prima

3    facie claim in order to get the discovery.

4              MR. CLARK:  And that's what I was getting to, Your

5    Honor.

6              Based on the administrator's most recent comments

7    to the press, and we've attached some of that to our papers

8    here, he has everything he needs to frame a complaint and to

9    file a complaint.  And in fact Mr. Galardi admitted exactly

10   that at the hearing on the motion at page 10 where he stated

11   that -- this is a quote -- "Given the facts and given what

12   Your Honor has noticed clearly we could sign a complaint."

13             So the Rule 2004 discovery isn't necessary to

14   enable them to file a complaint --

15             THE COURT:  But all this was true before I

16   rendered the decision, so nothing has changed.

17             MR. CLARK:  I think it was a mishap --

18   respectfully -- a misapprehension of the facts, Your Honor,

19   because while it may be that they don't have evidence to

20   prove a claim at the end of the day, they've got whatever

21   they need, as Mr. Galardi said, to file a complaint.  So

22   they ought to go ahead, if they think they've got a claim,

23   file their complaint, and then the normal --

24             THE COURT:  So shouldn't you have made that motion

25   within 14 days with a memorandum decision?

1            MR. CLARK:  I don't think so, Your Honor.

2            THE COURT:  That's what the rules require.

3            MR. CLARK:  Simply because there was no order

4    entered, that was what we were waiting on.

5            THE COURT:  Doesn't the rule refer to the

6    disposition?  It doesn't say the order, 9023-1 does it?

7            MR. CLARK:  If --

8            THE COURT:  I don't have it in front of me.

9            MR. CLARK:  I don't have the rule in front of me

10   either.

11           THE COURT:  But if I rendered a decision, even if

12   there was no order in it and you thought that it should be

13   reargued, didn't you have to make that motion within 14

14   days?  I thought your motion was something new has occurred.

15           MR. CLARK:  Something --

16           THE COURT:  Like a motion for renewal under state

17   practice.

18           MR. CLARK:  That is correct, something new has

19   occurred, which is this sale process.

20           I would observe as a procedural matter, Your

21   Honor, that by going -- by asking for reconsideration

22   without a written motion, without following the time limits

23   in the rules, we were simply following Galardi on civil

24   procedure.

25           THE COURT:  But, you know, you don't even get

Page 9

1    argument on a motion for reconsideration either, you just --

2    you make the motion, they file a response, and I read it,

3    and you only get argument if I think I'm going to grant

4    reargument.  First I have to grant reargument and then you

5    get to reargue it.  That's what the rule says.

6            MR. CLARK:  Well the basis for the application,

7    Your Honor, was a change in circumstances.  We had been told

8    that the rule -- the reason for the Rule 2004 application

9    was --

10           THE COURT:  Okay.  So tell me about the change in

11   circumstances.

12           MR. CLARK:  The change in circumstances, Your

13   Honor, is with respect to what -- the sale process that's

14   now going on.

15           The administrator has indicated that the

16   information now would be helpful to them to value their

17   claims in connection with an effort to sell those claims in

18   an ongoing process, but the administrator already knows what

19   his alleged damages are, and the information he seeks

20   doesn't go to damages, it really goes to -- or the value of

21   the claim, it goes to the liability on the claims or the

22   strength of the claims against Thiel.

23           So while that information might inform Gawker as a

24   seller on the relative strength or weakness of any potential

25   claims, it can't be disclosed to any of the bidders, and the

1    bidders can't use that information and they're not --

2    because they're not entitled to any prelitigation discovery

3    under Rule 2004.

4            Those claims now are patently being auctioned,

5    albeit in something of a secret star chamber kind of

6    process, but based on what the administrator has been saying

7    in the press and his -- what he has said in his rely, it

8    sounds like whatever proposal for these claims may be

9    generated by what they refer to as the confidential portion

10   of the sale process, that's at page 13 of their reply.  The

11   price for those claims is going to be determined "on the

12   open market."  That's what they said in their reply at

13   page 8.

14           So presumably that means that there'll be some

15   kind of a stalking horse bid or proposal that will be

16   subject to higher and better offers either from Mr. Thiel or

17   from other interested bidders.

18           So the way I look at this, Your Honor -- and the

19   administrator has also indicated that the process is

20   expected to take a matter of a few weeks, in the not too

21   distant future to conclude.

22           So it seems to me that under these changed

23   circumstances it would make sense to hold off the Rule 2004

24   discovery, avoid the expense and the time consuming

25   proceedings on that discover, just hold that in abeyance for

1    a few weeks while we see what happens in this sale process

2    as it proceeds.  Because if the claims at the end of the day

3    are sold to the highest and best bidder then there would be

4    no need or basis for any Rule 2004 discovery and no need to

5    waste estate assets on that --

6              THE COURT:  There isn't a -- is there still an

7    estate?  Didn't all the property vest -- revest in the

8    debtor?

9              MR. CLARK:  There'd be no need to waste the

10   liquidating debtor assets that are being held for

11   distribution under the plan.

12             THE COURT:  I thought that the -- putting aside

13   possible objections to claims, that the only creditor --

14   unpaid creditor was Mr. Bollea, because --

15             MR. CLARK:  That's correct.

16             THE COURT:  -- he's got an interest in litigation

17   recovery.

18             MR. CLARK:  That's correct.  He's -- although

19   there's a technical name they have for the creditor, I

20   forget if it's a trust or whatever, the only beneficiary on

21   the creditor's side, as I understand it, is Mr. Bollea to

22   the tune of 45 percent of any recoveries.  That's correct.

23             And in the sale process, Your Honor -- look, we

24   weren't looking for an order from the Court, we were

25   actually hoping more no direction from the Court to the

 1    administrator.

 2              THE COURT:  Can I ask you a question?  Does the

 3    Court even have to approve this sale?

 4              MR. GALARDI:  Your Honor, we actually don't think

 5    the Court necessarily has to approve the sale, but Your

 6    Honor did retain jurisdiction over the sale process pursuant

 7    to the order, and frankly --

 8              THE COURT:  But this is a separate sale though

 9    isn't it?

10              MR. GALARDI:  It is a separate sale that we

11    specifically referenced in the plan --

12              THE COURT:  All right.

13              MR. GALARDI:  -- and I think they've put in

14    footnote 20, 21, they noted the jurisdictional issue.

15              And frankly given what's gone on and with

16    Mr. Bollea we were anticipating coming back to the Court,

17    and if Your Honor doesn't believe you have jurisdiction

18    under the plan that's not the case, but --

19              THE COURT:  I haven't looked, you know, just

20    normally if an --

21              MR. GALARDI:  Correct.

22              THE COURT:  --entity emerges from bankruptcy it

23    goes on with its business, it doesn't come back to

24    bankruptcy court.

25              MR. GALARDI:  Correct.  And then the only issue

1   here was because of the nature of the parties, the nature of

2   Mr. Bollea's interest, and because we anticipated potential

3   issues we did put a specific paragraph into the retention of

4   jurisdiction section to -- and again, it's only as good as

5   Your Honor ultimately determines -- but the jurisdictional

6   issue.

7           THE COURT:  All right.  I stand corrected.

8   Mr. Clark, the time to move for reargument runs from the

9   date of the court order.  So it's premature, it's not ripe.

10          MR. CLARK:  Somebody just handed me a note to that

11  effect.

12          THE COURT:  All right.  It's premature.  It's

13  not ripe.

14          MR. GALARDI:  I think that's what he was referring

15  to is the Galardi --

16          MR. CLARK:  No.  But I was actually referring to

17  Galardi on civil procedure -- bankruptcy procedure at the

18  July 7th hearing -- July 7th, 2016 hearing on their bid

19  procedures motion for the sale of substantially all assets.

20  Your Honor actually heard all the evidence and you ruled

21  from the bench that they hadn't met their burden of proof to

22  get those procedures approved, so you said that's my

23  conclusion, and Mr. Galardi asked for a break, and he got

24  ten minutes and came back in and then he had the -- there's

25  a quote -- he had the privilege of making another motion for

1   reconsideration at that time.  It was an oral motion on no

2   notice to anybody.

3              So look --

4              THE COURT:  So what'd I do with that motion?

5              MR. CLARK:  You granted it.

6              MR. GALARDI:  No, he denied it the first time.

7              MR. CLARK:  No.  No.  Before the transcript ended

8   Your Honor had approved their bidding procedures.  So you

9   actually granted the reconsideration.

10              Look, we can hold this all in abeyance for another

11   few weeks, we can put a formal motion on the table.  I think

12   it really -- Your Honor understands the issues that are

13   presented by --

14              THE COURT:  I think what you're really asking for

15   is a stay of discovery.  You haven't quite said that, but

16   that's really what it is.

17              MR. CLARK:  It makes sense, Your Honor.  It makes

18   sense.

19              THE COURT:  But you haven't asked for it.

20              MR. CLARK:  We request a stay of discovery at this

21   time.

22              THE COURT:  Is this an oral motion you're making?

23        (Laughter)

24              MR. CLARK:  It is.  It is.

25              THE COURT:  This must be the Gawker rules of

1   procedure.  I don't know.

2        (Laughter)

3             MR. CLARK:  It's bankruptcy court, rules don't

4   apply, right, Your Honor?

5             THE COURT:  Well --

6             MR. CLARK:  At least somebody told me that.

7             THE COURT:  -- having heard you for a couple years

8   I -- no, I won't say it.

9        (Laughter)

10            MR. CLARK:  But, Your Honor, it just makes sense

11  given what they've decided to do, which is to auction off

12  these claims, to go through the process, see what happens,

13  and if at the end of the day there's a buyer for these

14  claims then there is no party who is entitled to seek or

15  obtain Rule 2004 discovery, and there's no point in us

16  spending time and money and going through that process.  It

17  would be premature at this point.

18            THE COURT:  Okay.  Let me hear you on the motion

19  to stay discovery, which is what this really is all about.

20            MR. GALARDI:  Your Honor, first let's take two

21  things.

22            One, this is not an opportunity to reargue the

23  2004, so we can --

24            THE COURT:  I agree with you, it's a motion --

25            MR. GALARDI:  As to our motion to --

1           THE COURT:  Tell me why discovery shouldn't be

2      stayed.  That's basically what he's arguing.

3           MR. GALARDI:  Well the discovery shouldn't be

4      stayed, Your Honor, because one, the discovery -- just

5      because -- and if you read the article carefully it said

6      that the plan administrator was considering selling those

7      claims.  That is not the same thing as actually filing a

8      motion to do those claims, it is not saying that the plan

9      administrator is not going to litigate those claims, bring

10     those claims, settle those claims.

11          So exactly the reasons that were prevalent and

12     Your Honor granted for cause are exactly the reasons why we

13     need to have the order.

14          Second, there is a confidentiality provision in

15     this particular 2004 order that specifically addresses we

16     cannot share the discovery.

17          So to Mr. Clark's point that it's premature let us

18     get a bid, one, somebody may want to bid but the plan

19     administrator still has to know, it's preparing to settle,

20     pursuing, or bringing the claims how to value those claims.

21     So it's not with the intention to give it to the bidder.

22          So there's no basis to stay the discovery that

23     Your Honor has already ordered is appropriate for cause.

24          THE COURT:  Okay.  Thank you.

25          I'm going to deny your application for a stay.

Page 17

1    Your motion for reargument is premature first of all, but in

2    any event if you're talking about something that occurred or

3    was in existence prior to the time that I entered the order,

4    you know, I doubt that I'm going to grant the motion.

5         But putting that aside, the plan administrator

6    hasn't sold this claim, he still owns it, he's entitled to

7    take discovery on it, and the only question then is whether

8    the proposed order accurately reflects the disposition of

9    the motion, which is all that the proposed order is supposed

10   to do, not additional relief, not taking away relief, and

11   then we can deal with reargument, although as long as he

12   hasn't sold this claim, that he might sell it I don't see

13   his basis to stay discovery, you know, once an order is

14   entered you can have conversations about does it make sense

15   to go through with this or -- but --

16        MR. CLARK:  If at some point --

17        THE COURT:  -- that's an issue of negotiation

18   between the two of you at this point.

19        MR. CLARK:  At some point, Your Honor, if they

20   follow through on the process that they have announced and

21   been talking about in the press those claims may well be

22   sold, then at that point we may well come back and ask for

23   further relief if Mr. Galardi and Mr. Holden --

24        THE COURT:  Well he can't sell rights under Rule

25   2004 to take discovery.

```
 1              MR. CLARK:  Clearly.  Very good.  I understand,
 2    Your Honor.
 3              THE COURT:  All right.
 4              MR. CLARK:  Thank you.
 5              THE COURT:  All right.  So let's talk about the
 6    order and whether or not it actively reflects the
 7    disposition of the motion.
 8              MR. GALARDI:  Very well.  And, Your Honor, perhaps
 9    I'm thinking about it I would go to their proposed
10    blackline --
11              THE COURT:  Yes.
12              MR. GALARDI:  -- and say why the debtors would be
13    opposed to the changes they've made and try to give our
14    reasons for that.
15              THE COURT:  Okay.
16              MR. GALARDI:  I have that as Exhibit 4 to their
17    motion, if I'm correct.  Their objection, I'm sorry.
18              The first change that they strike is the first
19    sentence, which says, "The motion is granted in part and
20    denied in part."  We took that right off of the caption.
21    I'm not sure I understand why they've stricken it.
22              THE COURT:  I strike that half the time.
23              MR. GALARDI:  Fine.  I can live with that one.
24              THE COURT:  All right.
25              MR. GALARDI:  I can live with that one.
```

1          Now second, Your Honor, is they -- the second

2     change is in what I'll now call their new paragraph 1, and

3     they've stricken the language "including, without

4     limitation, the prima facie tort."

5          Your Honor, we came to Your Honor with respect to

6     causes of action.  The specific lead-in to your own decision

7     says including.

8          THE COURT:  I wasn't limiting the discovery to a

9     prima facie tort claim.  It's the -- for lack of a phrase --

10    the general circumstances surrounding what is alleged to be

11    a conspiracy between or among Bollea, Harder, and Thiel to

12    put the debtor out of business through these lawsuits.

13    That's what --

14         MR. GALARDI:  So now I think --

15         THE COURT:  -- the transaction is.

16         MR. GALARDI:  So I think now --

17         THE COURT:  What I will -- let me save some time.

18    What I will strike is a reference to affiliates.  I don't

19    know who they are.

20         MR. CLARK:  Fine, Your Honor.  That's fine.

21         THE COURT:  I don't think --

22         MR. GALARDI:  Your Honor, that's on the next --

23         THE COURT:  I don't think on paragraph 1 we

24    need --

25         MR. GALARDI:  I do want to explain it --

1          THE COURT:  -- to say -- let me just finish.  I've

2     been through all this already.

3          I don't think you need in paragraph 1 -- and I'm

4     speaking to Mr. Clark now -- this reference that you can't

5     take any discovery from anyone regarding Terry Bollea,

6     Ayyadurai, and Terrill.  It may be true, but it's -- you

7     know , it's whatever the settlement agreements say you can't

8     do you can't do.

9          MR. CLARK:  And, Your Honor --

10          THE COURT:  You can say the limitations and

11     settlement agreements are incorporated by reference.

12          MR. GALARDI:  Well and that's why we did it in

13     paragraph 4 --

14          THE COURT:  In other words less is more, because

15     that's why we get into these disputes.

16          MR. GALARDI:  And, Your Honor, can I just

17     highlight one word that is absolutely critical, because I

18     know that it'll come up again, we'll serve the discovery

19     request.

20          THE COURT:  Yes.

21          MR. GALARDI:  The word obtain versus seek.  The

22     settlement agreements -- and this is why we wanted to stick

23     to the language -- we cannot seek such discovery.  It's some

24     -- and I'm going to give you the example that we've talked

25     about all the time, because this is going to become an issue

Page 21

```
 1    -- either Mr. Won (ph), who Your Honor is familiar with, and

 2    I say -- or I go to Mr. Hargis (ph) and I say give me all

 3    the documents with Won -- and again, I'm going to make up an

 4    email that I would love to find, doubt that I'll find it --

 5    it says, ah, Mr. Won, we represent Terry Bollea on behalf of

 6    Mr. Thiel and he's financed Mr. Bollea, and he would be

 7    really -- want to finance your litigation to help to destroy

 8    Gawker.  My view is that that's an email that we should be

 9    able to get.  They can redact all the stuff about Bollea

10    that they want.  I think their view is I don't get that

11    email because that would be obtaining discovery.

12              THE COURT:  What does the settlement say?

13              MR. GALARDI:  It says I cannot seek.

14              THE COURT:  All right.

15              MR. GALARDI:  That's why we are very particular

16    about the words.  And I'm -- look, we have to do the

17    document requests, they're going to come back, but I wanted

18    Your Honor to understand --

19              THE COURT:  Okay.

20              MR. GALARDI:  -- our sensitivity to that.

21              We have no objection -- and we can -- to putting

22    in the language they originally had, "Nothing in this order

23    allows us to obtain discovery that the settlement agreements

24    do not allow us to obtain."

25              THE COURT:  Obtain or seek?
```

1          MR. GALARDI:  Seek.  To seek.  I'm sorry, you're

2    right, Your Honor, seek.  And that's exactly what we tried

3    to go in paragraph 4, because we had gone back and forth so

4    much about that language.

5          THE COURT:  So what's wrong with that language,

6    Mr. Clark?  Just say he can't seek discovery that you can't

7    seek under the settlement agreements.

8          MR. CLARK:  Right, and I understood what the

9    Court's comments in the past have been, these are issues

10   that we're going to have to work out and meet and confer

11   after they've served up their discovery, and we'll fight it

12   out there.

13         THE COURT:  I would prefer to just say that they

14   can't seek discovery that they're precluded from seeking

15   under the settlement agreements, which are incorporated by

16   reference.

17         MR. GALARDI:  That --

18         MR. CLARK:  Which is fine.

19         THE COURT:  All right.

20         MR. GALARDI:  That's fine, Your Honor, we can work

21   on that -- those words.

22         THE COURT:  Two doesn't really seem to be anything

23   material.

24         MR. GALARDI:  Your Honor, the only issue there

25   again, and they're going to put us through our paces and run

1    the expense --

2            THE COURT:  Oh, I see, without obtaining a further

3    court order --

4            MR. GALARDI:  But --

5            THE COURT:  Let's stop.  What I'm -- I'm not

6    authorizing any discovery of Ayyadurai -- any 2004 discovery

7    of Ayyadurai or --

8            MR. GALARDI:  Terrill.

9            THE COURT:  -- Terrill in this order.  Nothing

10   precludes you from coming back and seeking another order or

11   if you're involved in litigation simply taking discovery

12   through the ordinary litigation process, which wouldn't --

13   presumably wouldn't involve me.

14           MR. GALARDI:  And, Your Honor, we have a

15   disagreement, but that's fine.  What we were simply going to

16   say, and I don't think --

17           THE COURT:  Okay.  All you have to say is nothing

18   in this order authorizes or permits discovery of Terrill or

19   Ayyadurai without prejudice to seek discovery under

20   appropriate circumstances or pursuant to appropriate

21   application.

22           MR. GALARDI:  Your Honor --

23           THE COURT:  Because as I say, he may not need an

24   application if there's litigation and there are witnesses.

25           MR. GALARDI:  And, Your Honor, if you look at

1    paragraph 2, the very first sentence, that's exactly what we

2    thought, and we can add the words or pursuant to this order.

3             MR. KOHN:  May I be heard, Your Honor?

4             THE COURT:  Well I get the -- yeah.  Who do you

5    represent?

6             MR. KOHN:  I represent Charles Harder.

7             THE COURT:  Okay.

8             MR. KOHN:  And --

9             THE COURT:  Well just give your appearance for the

10   court reporter.

11            MR. KOHN:  Your Honor, Samuel Kohn of Norton Rose

12   Fulbright on behalf of Charles Harder and the Harder Law

13   Firm.

14            Your Honor, we just want to be clear, just want to

15   clarify something Your Honor said.  If Your Honor's ruling

16   is that nothing in this order mentions any possible

17   discovery other than pursuant to a motion then we're okay.

18            THE COURT:  They may not have to make a motion.

19            MR. KOHN:  And litigation.  But --

20            THE COURT:  Look, I don't want to have to think

21   all the different ways that they might or might not be able

22   to get discovery in the future.

23            All it has to say is that this order does not

24   authorize discovery I guess from or it's already

25   incorporated by reference, the settlement agreement, doesn't

1    authorize them to take a deposition of Ayyadurai or Terrill

2    without prejudice to whatever rights they may have regarding

3    future discovery.

4           MR. KOHN:  Okay, fine.

5           THE COURT:  And just leave it at that.

6           MR. KOHN:  That's fine.  But the words pursuant to

7    the settlement agreements is what we found offensive,

8    because that means it was a back door to be able to do it

9    pursuant to this order, that pursuant to --

10          THE COURT:  I just said they can't --

11          MR. KOHN:  Okay.  Okay.

12          THE COURT:  And I said in the decision they're not

13   -- they did not seek that discovery in the 2004 order.

14          MR. KOHN:  Okay.

15          THE COURT:  And this order should reflect the

16   disposition in accordance with the corrected memorandum.

17          MR. KOHN:  Great.  Thanks.

18          THE COURT:  Okay.  What's next?

19          MR. GALARDI:  We'll be back on that for a number

20   of reasons, Your Honor.

21          THE COURT:  We're taking out the reference to

22   affiliates.  I don't know what that means.

23          MR. GALARDI:  That's fine.  That's fine.  We can

24   take out both references to affiliates.

25          The change in the further part of paragraph 4 is

Page 26

1    just an additional change, so it's not -- that can be

2    corrected through the document.

3             Four you've already said that we should just

4    modify it simply to the settlement agreements.

5             THE COURT:  You have that in the first sentence in

6    paragraph 2, right?

7             MR. GALARDI:  I believe that's correct, and that's

8    where we thought but we put it in two should do it.

9             Your Honor, with respect to -- and I know this

10   seems small -- the next one is the meet and confer about a

11   privilege log.  Your Honor --

12            THE COURT:  Got to file a privilege log.  If you

13   think it's too onerous come back and tell me why.

14            MR. KOHN:  Why shouldn't we be able to -- Your

15   Honor mentioned it in the decision and on the transcript

16   that if there's an issue we should meet and confer --

17            THE COURT:  Well you also have to meet and confer

18   if you have a discovery dispute, and I use that procedure in

19   Rule 2004 (indiscernible) also, but you have to have -- know

20   what you're meeting and conferring about.  You don't meet

21   and confer about an obligation to give a privilege log

22   anymore than you would meet and confer about an obligation

23   to respond to a document request.  You have to do it.

24            MR. KOHN:  Yeah, I appreciate that, Your Honor,

25   and I agree with that.  However, we're talking about the

Page 27

1    Harder Law Firm --

2              THE COURT:  Uh-huh.

3              MR. KOHN:  -- and we're talking about discovery

4    requests that will likely implicate all his records --

5              THE COURT:  First of all --

6              MR. KOHN:  -- and --

7              THE COURT:  -- they're interested in conversations

8    -- primarily interested in conversations between Harder and

9    Thiel.  Thiel is not a client so you don't have an

10   attorney/client issue there and you presumably have a waiver

11   of the work product if it were an issue.

12             MR. KOHN:  Yeah.  So if they would ask -- if their

13   subpoena would say all non-privileged documents we can go

14   home.

15             THE COURT:  But then who decides whether they're

16   privileged or not?

17             MR. KOHN:  Well the question is you're talking

18   about (indiscernible) would now, if you're talking about a

19   non-party, non-client then it's not privileged, right?

20             THE COURT:  Well just because you have an

21   communication with a client doesn't mean it's privileged

22   either you know.

23             MR. KOHN:  And so how would that relate to the --

24   if you have a conversation --

25             THE COURT:  You see you're asking me -- and this

1    is part of my frustration -- you're asking me to think of

2    all the possibilities in the future as to why a particular

3    communication, which may or may not have taken place, would

4    or would not be privileged.  And doesn't it make more sense

5    if you're the party asserting the privilege to identify the

6    document, the to, the from, and the general substance

7    without giving away any privilege?

8            MR. KOHN:  Okay.

9            THE COURT:  If there's a dispute after that then

10   I'll look at it and you don't provide me with a narrative,

11   you know, a declaration which allows me to decide that

12   without looking at the document then I look at the documents

13   in camera.  I do it all the time.

14           MR. KOHN:  I understand that, but Your Honor

15   prefaced this by going back to the law firm's records and

16   identifying documents.

17           THE COURT:  That's right.

18           MR. KOHN:  That process is what we want to meet

19   and confer about, to be able to tailor that instead of all

20   the records in the office --

21           THE COURT:  Right.

22           MR. KOHN:  -- because in every law firm there are

23   millions of documents.

24           THE COURT:  If you're talking about word searches

25   or search terms for emails or something like that you can

1   talk about it.  And if there's a dispute -- a specific

2   dispute, not a speculative or hypothetical dispute, you can

3   come back here and you can say that, you know, if I have to

4   do what he wants me to do it's going to take five people a

5   year to do and that's just disproportionate to the issues.

6   But again, this is all hypothetical at this point.

7            MR. KOHN:  So, you know, but all we really wanted

8   in that paragraph was to say that we'll meet and confer by

9   45 days and then thereafter --

10            THE COURT:  I think he's bothered with the amount

11   of time.

12            MR. KOHN:  Well we don't have to wait the 75 days

13   to have a met and confer about privilege logs.  We just

14   wanted the order --

15            THE COURT:  Why don't you just -- you can meet and

16   confer during the period with which you have to respond,

17   let's say it's 30 days, to either respond or reject, which

18   would be the normal period, you know, for discovery.  And if

19   it looks like you can't resolve it in the meet and confer

20   you just write a letter to the Court and then you come here

21   and hopefully --

22            MR. KOHN:  Without a formal objection to the

23   subpoena?

24            THE COURT:  Well you can file an objection --

25            MR. KOHN:  That's the thing, the order says we

1   must.  We must.  And they struck, and I don't know why they

2   struck --

3              THE COURT:  But you do have to provide a privilege

4   log.  We're talking about two different things.  We're

5   talking about a search, but you're saying you got to go back

6   and look at your documents, and that's an issue of how you

7   tailor the search terms.

8              MR. KOHN:  Right.

9              THE COURT:  But you can start talking about it as

10  soon as you see the document request.

11             MR. KOHN:  So what Your Honor --

12             THE COURT:  then you go through your search and

13  you come up with the documents and those are the privileged

14  documents, presumably.

15             MR. KOHN:  Right.  So what Your Honor is really

16  saying is what we tried to put in paragraph 12, which

17  Mr. Galardi doesn't like, and that's on the last page,

18  relief from any requirements from this order may be sought

19  for cause.

20             MR. GALARDI:  And we also had relief from the

21  following deadlines on the seven, Your Honor.

22             MR. KOHN:  But what we wanted to make sure is that

23  nothing was set in stone and just do what the judge just

24  said.

25             MR. GALARDI:  Again, Your Honor, we have no

Page 31

1    objections with that.

2            MR. KOHN:  That we would come back if there's a

3    problem.

4            THE COURT:  Well you can always come back if

5    there's a problem.

6            MR. KOHN:  Right.  Fine.  That's what we just

7    wanted to make clear, that it shouldn't be set in stone,

8    that's all.

9            MR. GALARDI:  And, Your Honor, just for --

10           THE COURT:  Well if you're going to come back to

11   me and say I don't have to file a privilege log, although

12   I'm asserting a privilege as to documents, I can save you

13   that trip right now, because nobody knows -- your idea of

14   privilege may be different from his idea of privilege and my

15   idea of privilege.  There has to be some method to identify

16   the universe of documents without disclosing the information

17   in the first instance because it may be privileged, and

18   that's what we're really talking about, and you do it

19   through a privilege log.  And if necessary the documents are

20   reviewed in camera.

21           MR. KOHN:  Or we're just trying to see whether --

22           THE COURT:  I don't understand what your problem

23   is.

24           MR. KOHN:  What?

25           THE COURT:  I really don't.

1              MR. KOHN:  Okay.

2              THE COURT:  You're telling me you shouldn't have

3      to file a privilege log.

4              MR. KOHN:  No, I'm not saying that.  All I'm

5      saying is that the order should -- instead of the order

6      setting a specific deadline for which we have to come back

7      and we have relief is that the order, just like there was a

8      mechanism in the order for the protective order, there was a

9      meet and confer process, there should be a meet and confer

10     process about the privilege log.  That's all.

11             THE COURT:  Well but there's a meet and confer

12     process built in, at least a civil discovery, and as I've

13     said I follow the same process.  There's always a meet and

14     confer process for a discovery dispute.  His concern is that

15     you're just going to drag this thing out.  That's the

16     primary concern, and there's also a concern that if you

17     don't identify the documents I don't know what you're

18     withholding.

19             MR. KOHN:  Right.  So but in the order there was a

20     meet and -- as Your Honor said there was a meet and confer

21     process, but in the protective order there's a specific

22     paragraph here about the protective order, "In the event

23     agreement cannot be reached the parties may consent to

24     respective forms of order and confidentiality order to the

25     Court pending court approval," blah, blah, blah."  So

1      there's a --

2              THE COURT:  What do the federal rules say that you

3      have to respond within 30 days?

4              MR. GALARDI:  Correct.

5              THE COURT:  So just track the language of the

6      federal rules.

7              MR. GALARDI:  And, Your Honor, with respect to 7

8      without the changes it says they have to serve objections

9      within 14 days, which they've not objected to.

10             THE COURT:  All right.

11             MR. GALARDI:  A complete production within 60

12     days.  We had that they serve a privilege log even after

13     that 75 days.  We have no objection with number 12 which

14     says that they can get relief.  I'm not sure what more they

15     need.

16             MR. KOHN:  I'm sorry, number 12?

17             MR. GALARDI:  The new assertion of 12 in their

18     order.  We have the deadlines could be moved under 7 --

19             THE COURT:  You know, this is why this is just a

20     waste of time.  You can always --

21             MR. GALARDI:  Right.

22             THE COURT:  -- seek relief from an order under

23     Rule 60 or Rule 59, depending on the time.  So I don't know

24     why you need that.  For example, Mr. Clark says, well if

25     they sell the asset they no longer need the information, and

1    that would presumably be a basis to, you know, change

2    circumstances to seek relief from the order.  But you don't

3    need that in an order and you're not going to -- you know --

4          MR. KOHN:  We are trying to avoid costs of coming

5    back here.

6          THE COURT:  But if you make that motion it's still

7    going to be judged against the traditional standards.

8          MR. KOHN:  So if Your Honor said that we have the

9    ability to meet and confer during that time, that's fine, if

10   it's not explicit it's not explicit, but I just didn't want

11   Mr. Galardi to say there's nothing in the order that says

12   that we have to meet about this privilege log, just produce

13   it and that's it.

14         THE COURT:  If he says that and you write me a

15   letter saying you want to talk to him about it and he says

16   no I'm going to tell him to talk to you.

17         MR. KOHN:  Okay, good.  Thank you.

18         MR. GALARDI:  Your Honor, nine may seem silly, but

19   again, he just got up and was -- you asked him about Terrill

20   and Ayyadurai, and we're frankly perplexed.

21         We understand Mr. Harder has represented Terrill

22   and Ayyadurai.  We have wanted to ask Terrill and Ayyadurai

23   for the specific documents that they said we could get from

24   them.

25         THE COURT:  Well but that's not in this order.

1          MR. GALARDI:  I understand it's not in this order.

2     All this says is though the plan -- and this is all it says,

3     is if we're going to give notice to 2004 subpoenas to the

4     settlement parties, Alaya (ph), and Mr. Daybeck (ph) is not

5     involved in here because we always know where he is, Terrill

6     and Ayyadurai, we just said counsel --

7          THE COURT:  He has a conflict with them.

8          MR. GALARDI:  I understand that.  To counsel to

9     the settlement parties, right?  We were thinking give it to

10    Charles Harder.  They strike that and now they put and/or

11    counsel, as applicable.  Again, we can't even figure out --

12    and I asked Mr. Harder --

13         THE COURT:  Whose change was that?

14         MR. KOHN:  That was my change, Your Honor.

15         THE COURT:  All right.

16         MR. KOHN:  And this is really silly because --

17         THE COURT:  A lot of what I've heard is silly.

18         MR. KOHN:  You know, this is really silly, because

19    Mr. Harder does not represent -- Ayyadurai and Terrill did

20    not engage Mr. Harder with respect to this order or with

21    respect to anything related to this discovery.

22         THE COURT:  Do you --

23         MR. KOHN:  So I don't know who they're going to --

24         THE COURT:  -- so is the issue you?

25         MR. KOHN:  What?

1          THE COURT:  Is the issue you?

2          MR. KOHN:  No, the issue is this.  The issue is

3    this.  When all we're saying, all this change was, that if

4    Mr. Ayyadurai and Terrill is not -- that is not represented

5    by Mr. Harder or by any counsel it should go directly to

6    them.  Mr. Bollea could go to counsel, but Terrill and

7    Ayyadurai didn't engage anybody.  Now we're having more

8    costs, who knows.  They didn't engage.  They weren't

9    represented by Mr. Basalio (ph), they were -- during the

10   case, they were represented by Simpson Thatcher and they

11   were part of the committee.  I don't know who they're going

12   to engage or if they're going to have counsel the all.

13          MR. GALARDI:  Your Honor --

14          MR. KOHN:  That's all.  That's --

15      (Simultaneous speaking)

16          MR. GALARDI:  -- if -- with that explanation I am

17   fine, but Mr. Harder represented them on the specific

18   agreement.

19          THE COURT:  Well he doesn't represent them though

20   for the purposes of this --

21          MR. GALARDI:  Well but he just got up and tried to

22   make all the arguments for Terrill and Ayyadurai on behalf

23   of Harder, Your Honor.  That's absurd.

24          THE COURT:  That is true.

25          MR. GALARDI:  You know, I wouldn't have had --

Page 37

1    I've had these fights for about a month asking him why --

2    who is he representing, they're making all these comments

3    for Ayyadurai and Terrill, never objected on behalf of

4    Ayyadurai and Terrill, and now we're representing Ayyadurai

5    and Terrill.

6         MR. KOHN:  I just think it's unfair to impose on

7    Ayyadurai and Terrill to retain counsel because Mr. Galardi

8    wants to put it in an order.  Just doesn't make sense.

9         THE COURT:  So you think they shouldn't get any

10   notices --

11        MR. KOHN:  No, they should get notice.  They

12   should get notice.

13        MR. GALARDI:  Who represents him to say that?

14   That's --

15        MR. KOHN:  And then they'll say, okay, here's

16   counsel.  That's all we're saying.

17        THE COURT:  Well it just send it to the settlement

18   parties, right, didn't say to who.

19        MR. GALARDI:  Well we sent it to counsel because

20   we've had this problem that Harder would not accept it.  He

21   wrote the settlement agreement for them.

22        THE COURT:  Well that may be, I mean it could

23   happen tomorrow --

24        MR. GALARDI:  That's fine.

25        THE COURT:  -- even if he did represent them

1    today, he could resign or will make a dischargement.

2            MR. GALARDI:  And we specifically asked Mr. Harder

3    if he had any objection for us to serve discovery on

4    Ayyadurai and Terrill.

5            THE COURT:  Why don't we -- why don't you to the

6    following.  Can you communicate directly with Ayyadurai?

7            MR. GALARDI:  We asked that question but Harder

8    would not answer it.

9            THE COURT:  All right.  Well why don't you -- he

10   was represented -- they were represented by Mr. Basalio

11   during the case?

12           MR. GALARDI:  For bankruptcy counsel.  This is the

13   sort of run around we've gotten, Your Honor.  Listen --

14           THE COURT:  Well but the rights were -- did he

15   represent them in connection with the settlement agreements?

16           MR. GALARDI:  No, Mr. Harder did.  And Mr. --

17           THE COURT:  Let me get it.  Does Mr. Harder

18   represent them there?

19           MR. KOHN:  No, not --

20           THE COURT:  Okay.  It sounds like -- it sounds to

21   me like they're unrepresented.  So send them an email saying

22   who do you want us to send notice to --

23           MR. GALARDI:  That's fine.

24           THE COURT:  -- in the event somebody wants to take

25   a deposition that might implicate your rights under the

1    settlement agreement.

2           MR. GALARDI:  And that's all we had asked

3    Mr. Harder to do and you've gotten the answer.

4           THE COURT:  Just say notice to the settlement

5    parties.

6           MR. GALARDI:  That's fine, Your Honor.

7           THE COURT:  And you can figure out who to --

8           MR. GALARDI:  That's fine, Your Honor.  I am

9    hopeful that we could send that order over to Your Honor

10    this afternoon or the first thing tomorrow.

11           THE COURT:  Well make sure that the other parties

12    see it.  Send it to me this afternoon, you have by tomorrow

13    to file --

14           MR. GALARDI:  Thank you.

15           THE COURT:  And just a minute, before anybody goes

16    anywhere.

17           MR. KOHN:  Your Honor, I'm traveling, I'm on a

18    flight to Palm Springs at the ADI conference all afternoon.

19    I'll be arriving at 11:30 tonight.

20           THE COURT:  Okay.  It's easy then.  You -- no,

21    listen.  You send the proposed order today, give you until

22    tomorrow, since this is going on and time is not an element,

23    I'll give you until tomorrow, 5 o'clock.  So you'll be in

24    Palm Springs to file any objections, which you can do by

25    email, if necessary, and send it to my chambers, and then

Page 40

1    I'll just prepare an order and enter it.

2          Yes, sir?

3          MR. TABAK:  Good morning, Your Honor.

4          THE COURT:  How come you're sitting on that side

5    of the table?  Actually your interests are adverse to them.

6          MR. TABAK:  Well my interests in terms of the

7    discovery with regards to Mr. Bollea and the discovery bar

8    on his order --

9          THE COURT:  Okay.

10         MR. TABAK:  -- are on this side.  I should sit in

11   the middle.  Yes, thank you.

12         Daniel Tabak from Cohen & Gresser on behalf of

13   Mr. Bollea.

14         And I am sitting in the middle sort of

15   figuratively and literally at some points, and it's

16   particularly with the sale issue and Mr. Thiel's desire to

17   be part of that.

18         What the plan administrator says in his papers is

19   he would want scorched earth discovery and evidentiary

20   hearings in order to allow Mr. Thiel into the sale process

21   is one of the alternatives.

22         What the plan administrator said in the press

23   yesterday was that he's considering allowing Mr. Thiel into

24   the process, though as I read it not as a stalking horse

25   bidder.

Page 41

1          What I -- throughout the course of these

2     bankruptcies I've been able to negotiate settlements for

3     Mr. Bollea with the Gawker debtors, with Mr. Denton, I was

4     able to negotiate agreements actually help other creditors

5     reach agreements with Gawker, I was able to help Mr. Thiel

6     reach an agreement with Mr. Denton.  The nut that I cannot

7     seem to crack, which we've seen with this proposed form of

8     order and we see with the sale, is that I can't seem to get

9     these two folks to reach agreement.

10          And I think it may be premature, but it may be

11    that we would respectfully appreciate Your Honor's guidance

12    in helping to avoid I think scorched earth discovery when it

13    seems as though there may be an agreement that could be

14    reached, but I can't get them to get there.

15          THE COURT:  An agreement on the sale or an

16    agreement -- a settlement agreement between Thiel and the

17    Gawker estate?

18          MR. TABAK:  I would say either, but at this point

19    on the sale.  I think it seems to me from what I've read in

20    the press that there may be enough common ground that we can

21    avoid scorched earth litigation about this.

22          THE COURT:  Well Mr. Thiel can always make an

23    offer to settle potential claims.  That happens all the

24    time.  Does he want to -- I don't know if you can answer

25    this -- but if he could settle those claims does he have any

Page 42

1    interest in buying the Gawker website?

2            MR. CLARK:  I doubt very much that Mr. Thiel would

3    settle any claims at this point, although Mr. Thiel has

4    indicated, we've indicated to the administrator and his

5    counsel, that we are prepared to bid and we think we would

6    be likely the highest and best bidder for all of the

7    remaining Gawker assets, including the claims, and accepting

8    only cash available for distribution under the plan.

9            THE COURT:  Okay.  So why don't you just make him

10   an offer?

11           MR. CLARK:  We've been trying to do that, Your

12   Honor, we've been stiff armed all the way.

13           THE COURT:  Send him a letter with an offer.  You

14   want to mediate this dispute?

15           MR. CLARK:  I'll make an offer right now.  We'll

16   pay him $50 for everything.  There's an offer.

17           THE COURT:  I think he can summarily reject it.

18           MR. CLARK:  But that's the whole point, Your

19   Honor.

20           THE COURT:  All right.  Let me respond to what

21   Mr. Tabak has raised.  Mr. Bollea is a party in interest in

22   the case, he's got standing.  First of all if there's any

23   proposed sale he has standing to object to the proposal.

24   Mr. Thiel may have standing to object to the process, if

25   he's a bidder, I think he probably has standing to do that

1     much.

2              Right now there's no sale, it's not before me, and

3     there's really nothing for me to decide.  I would think

4     that, you know, on the one hand the debtor obviously wants

5     to maximize whatever is in the estate since it'll flow to

6     equity, or most of it, on the other hand there's a certain

7     level of distrust in this case.

8              MR. CLARK:  That's exactly the problem, Your

9     Honor.  And so we could make a motion --

10             THE COURT:  So what's the resolution now that we

11    know the problem?

12             MR. CLARK:  The resolution I think would be some

13    assistance from the Court with the administrator to persuade

14    him to that he ought to open up to process sufficient to

15    allow any bidder to bid on a level playing field.

16             We don't need access to any due diligence about

17    claims they may have against us, but there are other assets

18    that based on what I have heard they are allowing diligence

19    to other bidders under NDAs.  We've offered to sign an NDA

20    and they won't even give us a form of NDA.  There's just --

21    there's no way for us to get into the process.

22             THE COURT:  You know you say that Mr. Clark but

23    then you make a $50 offer.  And I know it was a joke, but it

24    seems to me, and you don't have to make it in open court,

25    you can say this is what we'll pay for the claims as long as

1    we get everything else, because I don't know what everything

2    else is worth at this point.  I assume that the Gawker

3    website may have some value, just to me, I don't know.

4           MR. CLARK:  We don't even know what the everything

5    else is because they won't let us in to tell us.

6           So yeah, we can make a blind offer, and the $50

7    was a joke, but only a half of a joke, Your Honor.  We'll --

8    we can make an offer, we can put a number out there, it's

9    going to be meaningless, but we can do that if that'll open

10   up to door to allow us to participate in the process like

11   any other bidder.  And after all the whole process is

12   supposed to be about maximizing value And here you got

13   somebody who's got real money banging on the door being told

14   to go away.

15           THE COURT:  Well what's the problem with allowing

16   anyone to bid?

17           MR. GALARDI:  Your Honor, first of all --

18           THE COURT:  I take it the assets are up for sale.

19           MR. GALARDI:  Your Honor, there's a few things,

20   and one, I understand that they would like Your Honor to

21   give advice and to suggest --

22           THE COURT:  Fortunately I'm out of that business.

23           MR. GALARDI:  Well and that's partly why I

24   respond, one is.  But look, this is a man who we believe has

25   tried to destroy the business.  To allow him to come into

Page 45

1    the process at that particular time to potentially be a

2    stalking horse can be detrimental to the process.  That's

3    the judgment that the plan administrator is entitled to

4    make.  It's just that simple.

5            THE COURT:  Uh-huh.

6            MR. GALARDI:  Mr. Clark constantly keeps saying,

7    and you've seen the emails, we think the claims are

8    spurious, I'll throw $50 on it.  Okay.  But then you've got

9    the billionaire behind it that's going to -- that can easily

10   chill bidding.  That's exactly why at this particular time

11   there's simply no reason that we have to let Mr. Thiel in.

12           MR. CLARK:  Your Honor, I've heard this before

13   about Mr. Thiel somehow chilling the bidding.  Mr. Thiel

14   obviously has very substantial resources.  Mr. Thiel has

15   said he's prepared to compete with anybody on a level

16   playing field to buy the assets.  How does that depress

17   value here?  I don't get it.

18           THE COURT:  You know, first of all it's premature.

19   Secondly, you've stood before me in other cases and argued

20   about deference to the judgment of the decision makers.

21           MR. CLARK:  I was wrong.

22       (Laughter)

23           MR. CLARK:  I get it, Your Honor.

24           THE COURT:  My reaction is, if the plan

25   administrator thinks in good faith that it's not a good idea

1    to allow Thiel to participate in this process I'm hard

2    pressed to second guess that decision.

3             MR. CLARK:  Well as I understand what they've said

4    so far, maybe they'll go back on this, they're going to come

5    up with some kind of a stalking horse kind of proposal and

6    we're going to move from the confidential portion to some

7    non-confidential portion of a process at which point we'll

8    at least have a bogey to shoot at and we'll do our best to

9    bid on an apples to apples basis.

10            THE COURT:  Beside the possible courses of action

11   what's confidential about the remaining assets of Gawker?

12            MR. GALARDI:  Excuse me one second.

13            Your Honor, there is nothing that we think is

14   confidential.  I mean there is the achieves, which is still

15   up, there is the websites, and we can certainly give them a

16   list of those particular assets.

17            THE COURT:  Yeah, you know, I hear you about the

18   process, I'm not sure that his unwillingness to talk to you

19   would prevent you from coming in and making a bid for

20   whatever assets there are, because the only unknown from

21   what I'm hearing are these causes of action.

22            MR. CLARK:  Well that's the first I've heard that,

23   Your Honor.  We -- the way this happened was my --

24            THE COURT:  So what information do you need to

25   make a bid that you say you're not getting?

Page 47

1           MR. CLARK:  What are the assets?  What are the

2    assets?  They haven't even told us that.  What are the rule?

3    Is there a contract that you want us to mark up?  All the

4    normal stuff that happens in a level playing field sale

5    process.  You give the bidders the rules, you give them the

6    form of contract, you tell them what the assets are that are

7    available, that kind of stuff.  What we got was no, goodbye,

8    hang up the phone.

9           MR. GALARDI:  No, Your Honor, if you read the

10   emails they got make me an offer just like Your Honor said.

11          THE COURT:  Well but they wanted -- you know, if

12   they're going to make an offer, if there's something besides

13   these causes of action they at least want to know what the

14   assets are.  They're not asking you about revenue that's

15   generated or anything like that.

16          MR. GALARDI:  It's actually on the record because

17   it was exactly what Univision excluded.

18          THE COURT:  Well for all they know you've entered

19   into new contracts since the sale.

20          MR. GALARDI:  Understood.

21          THE COURT:  They don't know.

22          MR. GALARDI:  And again, Mr. Clark is very good

23   creeping to get more and more at this point by way of the

24   process that we're doing.  We'll give them the list of

25   assets, but again, that is -- there's a difference between

1    Thiel as a builder and every other bidder, and that's where

2    we will be when we get to the process.

3             MR. CLARK:  But if Mr. Thiel -- if I could just --

4    Your Honor, if St. Francis showed up and wanted to bid as

5    the highest bidder, other than Mr. Thiel, $1 million for

6    everything, and Peter Thiel said, I'll pay you $1.1 million,

7    I don't see how it makes any difference who's behind that

8    1.1 as long as it's a bona fide 1.1.

9             THE COURT:  Well but then somebody with -- you

10   might not have standing to object, but somebody with

11   standing can come in and say no, I shouldn't approve the

12   $1 million transaction, the 1.1 million is a higher and

13   better offer.

14            MR. CLARK:  I would agree on the standing point

15   with respect to --

16            THE COURT:  And then they would have to explain to

17   me why it's better to sell for the million dollars in your

18   example to St. Francis than to sell for $1.1 million to

19   Mr. Thiel.  They'd probably have a difficulty convincing me

20   of that if we're just talking about straight dollars and

21   everything is going out.

22            MR. CLARK:  Exactly.

23            MR. GALARDI:  Your Honor, and again, this is

24   exactly why we --

25            THE COURT:  But we're getting ahead of ourselves.

1                  MR. GALARDI:  Exactly.  This is --

2                  THE COURT:  Why don't you just give him a list of

3       your assets and a list of your contracts?

4                  MR. CLARK:  That's a start.

5                  THE COURT:  Well that may be the end of it though,

6       I don't know what more you need.

7                  MR. CLARK:  Well we'll see what he gives us.

8                  THE COURT:  You're not --

9                  MR. CLARK:  Your Honor's suggestion is a helpful

10      one.

11                 THE COURT:  It's not an operating company, it's --

12      as I understand it they're not operating.  So you don't need

13      revenue information or things like that.  They haven't

14      operated for over a year.

15                 MR. CLARK:  I don't know this.  I understand what

16      the public record says.

17                 THE COURT:  Has the debtor operated?  The

18      remaining debtor.

19                 MR. GALARDI:  The simple thing is that the

20      achieves are up, that's all.

21                 THE COURT:  Well do they get paid, for instance,

22      advertisement?

23                 MR. GALARDI:  No, they're not paid advertising,

24      no.

25                 THE COURT:  All right.  So there's probably no

1    income.

2             MR. CLARK:  I've just gotten a thousand percent

3    more information than I had before I walked into the

4    courtroom, Your Honor.

5             THE COURT:  But you had some information.

6             MR. CLARK:  Yeah, I had the information that says

7    we're not going to tell you anything though.  They've now

8    told us something.  And that's helpful.  That's helpful.

9    And we appreciate Your Honor's intersession on that.

10            MR. GALARDI:  And, Your Honor, I'll say this

11   because there's St. Francis and there's Mr. Thiel, and I

12   understand your said that if it's a straight dollar issue

13   there may be a difference.  This is not a straight dollar

14   issue.  So I just -- I'm reserving rights on the or

15   otherwise.

16            THE COURT:  Well you're asking me to approve an

17   auction between two non-debtors that may never acquire,

18   other than that it's speculative.

19            MR. GALARDI:  I'm not asking you for anything, I

20   just don't want the words to come back.

21            MR. CLARK:  But you see where we're going, Your

22   Honor.  This is a sale not about dollars, it's about Gawker,

23   Ethos, and malicious bidders, as they've put it out there.

24            THE COURT:  All right.

25            MR. CLARK:  Thank you, Your Honor.

1          THE COURT:  Well Mr. Bollea has the standing

2   because he's the creditor, so he in the first instance can

3   raise these issues.

4          MR. TABAK:  Thank you, Your Honor.  I think this

5   has been extraordinarily helpful more than I was able to

6   achieve between them.  I appreciate the use of the Gawker

7   rules of civil procedure here.

8          MR. GALARDI:  And on the Gawker rules Mr. Clark

9   also does know, they did get the teaser.

10          THE COURT:  Pardon?

11          MR. GALARDI:  They did get the teaser for the

12   sale.

13          THE COURT:  Okay.

14          MR. CLARK:  Great.

15          THE COURT:  The hearing is over.

16          MR. TABAK:  Thank you, Your Honor.

17          MR. GALARDI:  Thank you.

18          THE COURT:  Thank you.  Have a Merry Christmas or

19   a Happy Hanukkah or whatever.

20          MR. CLARK:  Hopefully we see you before then, Your

21   Honor, on something else.

22       (Whereupon these proceedings were concluded at 11:14

23   AM)

24

25

1                              I N D E X

2                               RULINGS

3                                                          PAGE

4

5    Motion to Stay Discovery                              16

6

7    Notice of Presentment, Notice of Presentment of

8    Order Pursuant to Rule 2004 of the Federal Rules of

9    Bankruptcy Procedure Authorizing the Plan

10   Administrator to Conduct Discovery Concerning

11   Potential Causes of Action and to Establish Discovery

12   Response and Dispute Procedures                       39

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 53

1                   C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5    Dawn South
     _____
6

7    Dawn South

8    Certified Electronic Transcriber

9

10

11

12   Date:  December 1, 2017

13

14

15

16

17

18

19

20

21

22   Veritext Legal Solutions

23   330 Old Country Road

24   Suite 300

25   Mineola, NY 11501