**WILLIAMS & CONNOLLY LLP**  　　　　　　　　　　　　　　　　　　　　　　　　　　　**Hearing Date:**
725 Twelfth Street, N.W.　　　　　　　　　　　　　　　　　　　　　　　　**March 21, 2018 at 10:00 a.m.**
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Thomas G. Hentoff, Esq. (admitted *pro hac vice*)
Chelsea T. Kelly, Esq.
Email: thentoff@wc.com
　　　　ckelly@wc.com

*Counsel for Ryan Goldberg and Gizmodo Media Group, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
　　　　　　　　　　　　　　　　　　　　　　　　:
In re:　　　　　　　　　　　　　　　　　　　　　:　　Chapter 11
　　　　　　　　　　　　　　　　　　　　　　　　:
Gawker Media LLC, *et al.*,[1]　　　　　　　　　　　:　　Case No. 16-11700 (SMB)
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Debtors.　　　　　　　　　　　　:　　(Jointly Administered)
------------------------------------------------------------ x

**MEMORANDUM OF LAW IN OPPOSITION TO**
**MOTION *IN LIMINE* TO EXCLUDE EXPERT**

　　　　Ryan Goldberg, by and through his undersigned counsel, respectfully submits this memorandum of law in opposition to the Motion *in Limine* of Pregame LLC, d/b/a Pregame.com and Randall James Busack (collectively, "Pregame") to Exclude Expert (the "Motion") [ECF No. 1073], filed on January 31, 2018.

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10020. Gawker Hungary Kft's mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10020.

## I. BACKGROUND

As directed by this Court, a trial will be held on Goldberg's motion to enforce this Court's December 22, 2016 Order confirming the amended joint Chapter 11 plan of liquidation ("the Plan"). Specifically, the trial will concern two passages in Section 9.05 of the Plan that the Court ruled were sufficiently ambiguous to require evidence about their meaning and effect. At the trial, Goldberg intends to present the testimony of Mr. Chad E. Milton, an expert in the specialty insurance field of media liability. Milton's expert testimony is relevant to the parties' dispute over the meaning and effect of the carve-out in Section 9.05's third-party release for work performed or content provided by Goldberg and other writers that is "the result of gross negligence or willful misconduct." In particular, the testimony is relevant to Goldberg's argument that he and the other writers received the third-party release in exchange for giving up their indemnification rights for claims arising from work they performed for the Debtors, and that within the media industry, such indemnification rights cover the types of defamation and related claims asserted by Pregame.

Milton has disclosed the following summary of his opinion: "In the specialty insurance field of media liability, insurers provide coverage for defamation and related claims to media insureds *without* exclusion for gross negligence or willful misconduct. The same is true for employees and non-employee content providers. Those insurers, having committed to insuring defamation and related claims, understand that it would be unfair and illusory to deny coverage for conduct that satisfies the elements of the torts." Exhibit A to the Motion ("Milton Declaration") at ¶ 1 (emphasis added). Pregame's Motion argues that Milton's testimony should be excluded as irrelevant.

2

## II.    ARGUMENT

The Court should deny this Motion for two reasons.  First, Milton's testimony is relevant to the meaning and effect of Section 9.05's "gross negligence or willful misconduct" carve-out.  Second, because the testimony will be presented at a bench trial instead of a jury trial, a motion *in limine* like this is unnecessary—the Court is well able to evaluate the relevance of the testimony at trial within the appropriate factual context.

### A. Milton's Testimony Is Relevant to Determining the Meaning of the "Gross Negligence or Willful Misconduct" Language in the Third-Party Release.

In determining whether expert testimony is admissible under Rule 702, courts perform their gatekeeping role by ensuring that: "(1) the evidence is relevant, (2) the expert is qualified, and (3) the expert's testimony rests on a reliable foundation." *In re Med Diversified, Inc.*, 334 B.R. 89, 95 (Bankr. E.D.N.Y. 2005) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993) (internal footnote omitted)).  Pregame does not challenge Milton's qualifications or the reliability of his testimony.  Nor could it, given his decades of work in media liability insurance, including as an adviser to major insurance companies and media companies, including the New York Times, Washington Post, Dow Jones, and Gannett.  *See* Milton Decl. at ¶¶ 2–11.  Instead, Pregame limits its challenge to the narrow argument that Milton's testimony is not relevant.

Evidence is relevant, and therefore admissible, however, merely if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  The bar for relevancy under Rule 401 is "very low . . . and evidence should not be excluded on a motion *in limine* unless such evidence is clearly inadmissible on all potential grounds." *Sec. Inv'r Prot. Corp. v.*

3

*Bernard L. Madoff Inv. Sec. LLC*, 2017 WL 2602332, at *4 (Bankr. S.D.N.Y. 2017) (internal citations and alterations omitted); *see also Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015). Further, in a bench trial, whether evidence is relevant "can best be determined at trial, so that the motion is placed in the appropriate factual context." *In re GII Indus., Inc.*, 495 B.R. 209, 212 (Bankr. E.D.N.Y. 2010) (denying a motion *in limine* prior to a bench trial) (internal citations and quotation marks omitted).

At the September 28, 2017 hearing, the Court made the point that during the Plan confirmation process: "the releases were the *quid pro quo* for the loss of the indemnification rights." Exhibit 1 ("Hearing Transcript") at 66:13–15. The Court directed the parties to conduct discovery regarding the intended meaning of the Section 9.05 terms "gross negligence or willful misconduct" within the context of the indemnification negotiations between the writers and the Debtors during the Plan confirmation process. In particular, the Court requested "evidence regarding the negotiations of these phrases . . . relevant evidence in order to interpret them and interpret the scope of these exceptions to the releases." *Id.* at 66:20–23 (alteration added).

Milton's testimony directly addresses the requests posed by the Court. Milton will testify about the broader context of indemnification agreements between writers and media companies within the media industry. This testimony is relevant to determining how the "gross negligence or willful misconduct" language was understood by the parties at the time of the Order, and what effect the carve-out was intended to have. A primary way by which media companies carry out their indemnification obligations is by providing media liability insurance coverage to their writers. As an expert in the specialty insurance field of media liability, Milton will provide relevant testimony including about media insurance companies' coverage for employees and freelancers of media companies. He will testify that he has never seen a carve-out for "gross

4

negligence or willful misconduct" in such insurance policies; and that if an insurer were to come across the "gross negligence or willful misconduct" language in an insurance contract, that insurer "would likely say that this language is inoperative as respects defamation claims . . . ." Exhibit B to the Motion ("Milton Deposition") at 45:7–12 (alteration added).

Milton's testimony is thus relevant because, in the language of Rule 401, it is "of consequence" in aiding the Court to determine the intended meaning of the "gross negligence or willful misconduct" language; and it has a "tendency" to support the finding that such language was not intended to exclude writers, like Goldberg, who are named in defamation actions, from the protection of the third-party releases. Fed. R. Evid. 401. Accordingly, the Court should deny Pregame's Motion to exclude Milton's testimony.[2]

### B. The Court Should Deny Pregame's Motion *in Limine* and Consider Milton's Evidence at Trial, Within the Appropriate Factual Context.

In any event, because the Court will be conducting a bench trial rather than a jury trial, the best course is to allow Milton to testify at trial, so that the Court can evaluate his testimony within the appropriate factual context. Where, as here, "a bench trial is in prospect, resolving *Daubert* questions at a pretrial stage is generally less efficient than simply hearing the evidence;

---

[2] Pregame mischaracterizes Milton's proffered testimony in two ways. First, Milton's testimony is not "interpretative testimony that contradicts the terms of an instrument." Mot. at ¶ 9 (internal quotation marks omitted). Because the Court has found the "gross negligence or willful misconduct" language to be sufficiently ambiguous to warrant a trial, Goldberg may submit expert evidence to supplement the language's construction. *See In re Sept. 11th Liab. Ins. Coverage Cases*, 2005 WL 425267, at *3 (S.D.N.Y. 2005). Second, Milton's testimony is *not* that media insurance policies merely "typically" do not contain a carve-out for gross negligence and willful misconduct. Mot. at ¶¶ 5, 11. Instead, Milton has testified and will testify that he has *never* seen such a carve-out, *see* Milton Dep. at 21:12–22:25, and such a carve-out would make no sense because it would render insurance for defamation and related claims illusory, *see* Milton Decl. at ¶ 1; *see also* Milton Dep. at 45:7–12.

if [objections to the evidence] are well-taken, the testimony will be disregarded in any event." *Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, 2009 WL 959775, at *6 n.3 (S.D.N.Y. 2009) (alteration added); *see also Sec. Inv'r Prot. Corp.*, 2017 WL 2602332, at *4 ("The usefulness of *in limine* motions is largely negated in bench trials"); *In re Signature Apparel Grp. LLC*, 2015 WL 1009452, at *15 (Bankr. S.D.N.Y. 2015) ("In the context of a bench trial where there is not a concern for juror confusion or potential prejudice, the court has considerable discretion in admitting the proffered testimony at the trial and then deciding after the evidence is presented whether it deserves to be credited by meeting the requirements of *Daubert* and its progeny" (internal citation omitted)). Further, courts have stated that it "is inappropriate to use a motion *in limine* to pre-determine theories of the case or to preclude parties from presenting evidence on underdeveloped issues in advance of the trial." *In re Oak Rock Fin., LLC*, 560 B.R. 635, 638 (Bankr. E.D.N.Y. 2016).

Here, the Court will be proceeding by bench trial. Accordingly, the Court has the opportunity to evaluate the relevance of Milton's testimony when hearing it within the appropriate factual context of the other evidence presented at trial. Because there is no risk of juror confusion or potential prejudice, there is no harm in allowing Milton to testify and then determining what weight to grant his testimony.

### III. CONCLUSION

For the foregoing reasons, Pregame's Motion should be denied, and Milton's testimony should be permitted.

| | |
|---|---|
| Dated: Washington, D.C.<br>February 7, 2018 | WILLIAMS & CONNOLLY LLP<br><br>By: /s/ Chelsea T. Kelly<br><br>Thomas G. Hentoff (admitted *pro hac vice*)<br>Chelsea T. Kelly<br><br>For Matters in New York:<br>650 Fifth Avenue, Suite 1500<br>New York, NY 10019<br><br>725 Twelfth St. NW<br>Washington, DC 20005<br>Phone: (202) 434-5000<br>Fax: (202) 434-5029<br>Email: thentoff@wc.com<br>       ckelly@wc.com<br><br>*Counsel for Ryan Goldberg and Gizmodo Media Group, LLC* |