**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | |
|---|---|
| In re: | : |
| | : |
| Gawker Media LLC, *et al.*,[1] | :     Chapter 11 |
| | :     Case No. 16-11700 (SMB) |
| Debtors. | : |

-------------------------------------------------------------x

| | |
|---|---|
| | : |
| Ryan Goldberg, | : |
| | : |
| Movant, | : |
| | : |
| - against - | : |
| | :     JOINT PRETRIAL ORDER |
| Pregame LLC, d/b/a Pregame.com, and | : |
| Randall James Busack, | : |
| | : |
| Respondents. | : |
| | : |

-------------------------------------------------------------x

The parties having conferred among themselves and with the Court pursuant to Fed. R. Civ. P. 16, the following statements, directions and agreements are adopted as the Pretrial Order herein.

I.      NATURE OF THE CASE

Ryan Goldberg ("Movant"), a former independent contractor of Gawker Media LLC, seeks entry of an order (i) enforcing the Amended Joint Chapter 11 Plan of Liquidation (the "Plan") filed by Gawker Media Group, Inc., Gawker Media LLC and Gawker Hungary Kft. (collectively, the "Debtors") and (ii) barring and enjoining Pregame LLC, d/b/a Pregame.com, and Randall James Busack, professionally known as RJ Bell (collectively, the "Respondents"), from prosecuting claims arising from the article authored by Movant and posted on Debtors' Deadspin.com website on June 23, 2016 (the "Article"). Movant contends that Respondents' claims are barred by, *inter alia*, certain provisions in the Plan. Respondents contend their claims are not barred by those provisions.

---

[1]      The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10020. Kinja Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10020.

II.    BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY JUDGE MAY ENTER FINAL ORDERS OR JUDGMENT

This Court has jurisdiction over the matters raised in this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.  Movant contends that this matter addresses issues concerning the administration of the Debtors' bankruptcy proceedings and other proceedings affecting the liquidation of the Debtors' estates and therefore involves a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A) and (O).  Respondent assumes, for purposes of this trial, that this is a core proceeding, but is not waiving any argument with respect to what constitutes a core proceeding in this matter.

The Movant and Respondents confirm their consent to the entry of a final order by the Court in connection with the Movant's *Motion for Entry of an Order (i) Enforcing the Amended Joint Chapter 11 Plan of Liquidation filed by Gawker Media Group, Inc., Gawker Media LLC and Gawker Hungary Kft. and (ii) Barring and Enjoining Pregame LLC, d/b/a Pregame.com, and Randall James Busack* [D.I. 981] to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

III.    STIPULATED FACTS

A.    On June 10, 2016 (the "Petition Date"), Debtor Gawker Media LLC ("Gawker Media") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  On June 12, 2016, the Debtors Gawker Media Group, Inc. and Gawker Hungary Kft. filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

B.    Gawker Media LLC generally indemnified its content providers for any claims, including claims of defamation and related torts, arising from content provided to, and for the benefit of, Gawker Media LLC.

C.    The Movant authored the Article that was posted on Gawker Media's Deadspin.com website on June 23, 2016.

D.    On June 27, 2016, Respondents' Counsel sent a letter to Gawker Media that demanded the retraction of the Article.

E.    On July 1, 2016, Gawker Media's President and General Counsel, Heather Dietrick, responded to Respondents' counsel's June 27, 2016 letter.  Through the July 1, 2016 letter, Ms. Dietrick informed Respondents' counsel that the Article would not be retracted as Respondents failed to provide any grounds or evidence for retraction.  The July 1, 2016 letter also states that the Article was based partially on information provided by Respondent Randall James Busack.

F.      On July 20, 2016, Gawker Media filed its Schedules of Assets and Liabilities for Non-Individual Debtors [D.I. 116].  On "Schedule E/F:  Creditors Who Have Unsecured Claims," Gawker Media identifies a claim for "Busack, Randall (aka RJ Bell)" in an "undetermined amount" for a "Threatened Litigation Claim" and categorizes the claim as contingent, unliquidated and disputed.

G.      On August 11, 2016, the Bankruptcy Court entered an *Order (I) Establishing a Deadline to File Proofs of Claim, Certain Administrative Claims and Procedures Relating Thereto and (II) Approving the Form and Manner of Notice Thereof* [D.I. 168] (the "Claims Bar Date Order").  The Claims Bar Date Order set September 29, 2016 (the "Claims Bar Date") as the deadline to file claims or file requests for payment for claims arising between the Petition Date and July 31, 2016.

H.      On August 18, 2016, Gawker Media filed an Affidavit of Publication [D.I. 201], certifying that notice of the Claims Bar Date was published in the national edition of *USA Today* on August 17, 2016.

I.      On August 22, 2016, Gawker Media filed an Affidavit of Service [D.I. 217], certifying that it served on all creditors, including Respondents' counsel (Charles Harder) and Respondent Randall James Busack, notice of the Claims Bar Date, a Proof of Claim Form and the Administrative Claim Form (as those terms are defined in the Claims Bar Date Order).

J.      On August 22, 2016, Respondents' counsel sent a letter to Gizmodo Media Group, LLC ("GMG"), the successful purchaser of the Debtors' assets, demanding that the Article be removed upon closing of the sale.  On September 16, 2016, counsel for GMG responded to Respondents' August 22, 2016 letter. Through the September 16, 2016 letter, GMG informed Respondents' counsel that GMG would not remove the Article for the reasons stated in the letter.

K.      Respondents did not file a proof of claim or request for payment prior to the Claims Bar Date.

L.      On November 2, 2016, the Debtors filed their Disclosure Statement for the Debtors' Amended Joint Chapter 11 Plan of Liquidation and the Debtors' Amended Joint Chapter 11 Plan of Liquidation  [D.I. 403].

M.      On November, 4, 2016, this Court entered an *Order Approving (I) the Adequacy of the Disclosure Statement, (II) Solicitation and Notice Procedures with Respect to Confirmation of the Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft., (III) the Form of Ballots and Notices in Connection Therewith, and (IV) the Scheduling of Certain Dates with Respect Thereto* (the "Disclosure Statement Adequacy Order") [D.I. 413].

N.     The Debtors' proposed Amended Joint Chapter 11 Plan of Liquidation contained a third-party release provision and an injunction provision.

O.     A copy of the Disclosure Statement Adequacy Order, which contained the Debtors' proposed Amended Joint Chapter 11 Plan of Liquidation, was served on the Respondents' counsel and Respondent Randall James Busack.

P.     The Respondents did not object to the Plan or the third-party release and injunction provisions (Sections 9.03 and 9.05, respectively) of the Plan.

Q.     On December 13, 2016, a hearing to confirm the Debtors' Plan was held before this Court (the "Confirmation Hearing").

R.     On December 22, 2016, this Court entered its Findings of Fact, Conclusions of Law, and Order Confirming Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft. [D.I. 638].

S.     On June 22, 2017, the Respondents, represented by same counsel (Charles Harder), filed a complaint in the Supreme Court for the State of New York, County of New York against the Movant and several other defendants (including GMG) asserting claims of defamation, and related claims of intentional interference with prospective economic advantage and tortious interference with contractual relations (collectively, the "Defamation Claims") on account of the Article.   Through the complaint, the Respondents seek in excess of $10 million against the Movant and the other named defendants.

T.     On August 21, 2017, Movant filed a *Motion for Entry of an Order (i) Enforcing the Amended Joint Chapter 11 Plan of Liquidation filed by Gawker Media Group, Inc., Gawker Media LLC and Gawker Hungary Kft. and (ii) Barring and Enjoining Pregame LLC, d/b/a Pregame.com, and Randall James Busack* (the "Motion") [D.I. 981].

U.     On September 15, 2017, the Respondents filed their Objection to the Motion (the "Objection") [D.I. 1006].

V.     On September 25, 2017, Movant filed his Reply to the Objection (the "Reply") [D.I. 1014].[2]

## IV.    PARTIES' CONTENTIONS

The parties' respective Pleadings are deemed amended to embrace the following contentions of the parties:

---

[2]     Collectively, the Motion, the Objection and Reply shall be referred to herein as the "Pleadings."

A.  Movant's Contentions

1.    Any claims, including the Defamation Claims, arising from the Article were released under the Plan's third-party release.

2.    As the Respondents received notice of the Claims Bar Date Order and the Claims Bar Date, the Respondents are "deemed to have received" a distribution under the Plan.  In addition, the Respondents were listed as creditors on the Debtors' bankruptcy schedules.

3.    The fact that Respondents did not file a proof of claim does not insulate the Respondents from the third-party release, as Debtors' counsel stated that the third-party release would apply even to those parties that did not file a claim.

Specifically, during the Confirmation Hearing, Debtors' counsel stated on the record in a dialogue with the Court the following:

THE COURT: Let me ask you a question. Are there any creditors who have not filed a claim, did not vote and have not settled, to your knowledge?

MR. GALARDI: That did not file a claim, that did not vote and --

THE COURT: Did not settle.

MR. GALARDI: Well, Your Honor, yes, in the following way and I want to be clear. As I mentioned and Mr. [Harder] mentioned, maybe I'm not getting it right, but I hate to use the President-elect's name, but we have received from one of -- from a law firm, you wrote an article about the President-elect, now that claim never got filed in this case. One of the reasons we're concerned about that is because the statute of limitations on that article has not run.

THE COURT: Okay.

MR. GALARDI: So that's the kind of creditor why we wanted the third-party release.

*Transcript of Confirmation Hearing, p. 82: 16-25, p. 83: 1-8  [D.I. 628].*

4.    The Respondents' position seeks to strip Movant of a release provided in exchange for valuable consideration.

5.    The Plan's third-party release was meant to replace the Debtors' indemnification obligations to the Movant and other, similar content providers.

6.      The Debtors generally indemnified their content providers and employees for claims (including the Defamation Claims) arising out of content provided to, and at the request of, the Debtors.

7.      Defamation claims arising out of content provided to, and for the benefit of, the Debtors were released under the Plan's third-party release.

8.      The Plan's third-party release and injunction provisions were intended to protect the Movant and other Released Employees and Independent Contractors from claims arising out of content they helped create for the Debtors, and for which they would have been indemnified. These claims include the Defamation Claims asserted by Respondents.

9.      Vitiating the Plan's third-party release would undoubtedly have far reaching implications and would also chill the work of journalists nationwide as they would be unable to rely on the ability of their employers and publishers to protect them from financially ruinous lawsuits.

10.     The Plan's release provision was designed and intended to respect the First Amendment and protect the Released Employees and Independent Contractors from potential liability arising out of content provided to the Debtors.

11.     Beyond the Plan's third-party release, the Respondents violated the Plan's injunction provision by failing to seek leave from this Court prior to filing their complaint in New York Supreme Court asserting claims arising from the Article.

B. Respondents' Contentions

1.      The third party release contained in the Plan is limited to holders of claims who have "received or [are] deemed to have received distribution(s) made under the Plan". There is no dispute that Respondent has not received a distribution. Thus, the third party release covers Respondent only if he is not "deemed" to have received one.

2.      The Plan does not define what "deemed to have received distribution(s)" refers to. There were no negotiations among the parties to the Bankruptcy Action that confirmed that "deemed to received distribution(s)" referred to third parties who did not file proofs of claim such as Respondent.

3.      Had the drafters of the Plan wished to explicitly cover claim holders who did not file proofs of claim, and felt that the Bankruptcy Court would approve such a release, it is reasonable to assume that they would have used language that explicitly referred to such claim holders rather than using the at-best ambiguous "deemed to receive distribution(s).

24243871.16 03/15/2018

4.    Third party releases in Bankruptcy Plans, while permitted in the Second Circuit, are disfavored and should be strictly construed.  (Many other courts around the country do not permit them at all.)

5.    The evidence will show that while certain drafters of the Plan hoped they could extend maximum protection to Gawker Media content providers, they also believed that overbroad releases could be rejected by the Bankruptcy Court or draw an objection from the Trustee and made a deliberate choice to use narrower and more ambiguous language that did not explicitly cover all third parties.

6.    Independently, even if Respondent is "deemed to have received distribution(s)" and is therefore covered by the third party release, the release contains a carve-out for claims of "gross negligence or willful misconduct".  Respondent's claims allege intentional torts (defamation and tortious interference) which are therefore carved out of the release.

## V.    ISSUES TO BE TRIED

The parties agree that the following issues are to be tried:

A.    Whether a party must have filed a claim to be "deemed to have received a distribution" under the Plan for purposes of Section 9.05 of the Plan.

B.    Whether the "willful misconduct" and "gross negligence" carve-outs from the Plan's third-party release provision apply to the Defamation Claims arising from content or services provided to the Debtors while under the Debtors' employ as an independent contractor.

## VI.    MOVANT'S EXHIBITS

1.    Findings of Fact, Conclusions of Law, and Order Confirming Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft., attaching the Confirmed Joint Chapter 11 Plan of Liquidation [D.I.638].

2.    Transcript of December 13, 2016 Confirmation Hearing [D.I. 628].

3.    November 2, 2016 Email from Debtors' counsel to the Official Committee of Unsecured Creditors, Document Production – ROPES-GWK-00003224.

4.    Complaint captioned:  INTERNATIONAL SCHERICK, LLC, a New York limited liability company aka "Superstar Machine"; and GREGORY SCHERICK, an Individual, Plaintiffs, against GIZMODO MEDIA GROUP, LLC, a Delaware corporation; ANNA MERLAN, an Individual; EMMA

CARMICHAEL, an individual; and DOES 1-20, inclusive, Defendants, pending before the Supreme Court for the State of New York, County of New York, under Index No. 157939/2017.

5.   Motion for Entry of an Order (i) Enforcing the Amended Joint Chapter 11 Plan of Liquidation filed by Gawker Media Group, Inc., Gawker Media LLC and Gawker Hungary Kft. and (ii) Barring and Enjoining Pregame LLC, d/b/a Pregame.com, and Randall James Busack [D.I. 981].

6.   Reply of Ryan Goldberg to Objection to Motion (I) To Enforce Order Confirming Amended Joint Chapter 11 Plan of Liquidation and (II) to Bar and Enjoin Creditors from Prosecuting their State Court Action [D.I. 1014].

7.   Expert Declaration of Chad E. Milton.

8.   Declaration of William D. Holden in Support of the Debtor's Motion for (I) a Preliminary Injunction and/or (II) Extension of the Automatic Stay  and the Debtor's *Ex Parte* Motion for a Temporary Restraining Order [Adv. Pro. No. 16-1085, D.I. 6].

9.   Order (I) Establishing a Deadline to File Proofs of Claim, Certain Administrative Claims and Procedures Relating Thereto and (II) Approving the Form and Manner of Notice Thereof [D.I. 168].

VII.   **RESPONDENTS' EXHIBITS**

A.   Reporter's Transcript of Proceedings, September 27, 2017.

B.   E-mail string from Galardi to Levine, Bates Numbered ROPES46-49.

C.   E-mail string from Galardi to Patel and Levine, Bates Numbered ROPES55-59.

D.   E-mail string from Galardi to Levine, Bates Numbered ROPES65-75.

E.   E-mail string from Levine to Galardi, Bates Numbered ROPES71-75.

F.   E-mail string from Patel to Galardi and Sturm, Bates Numbered ROPES175-77.

G.   E-mail string from Galardi to Patel, Bates Numbered ROPES178-81.

H.   E-mail string from Patel to Galardi, Bates Numbered ROPES190-94.

I.   E-mail string from Galardi to Patel and Sturm, Bates Numbered ROPES195-99.

J.      E-mail string from Sturm to Galardi, Bates Numbered ROPES200-05.

K.      E-mail string from Galardi to Patel, Bates Numbered ROPES223-28.

L.      E-mail from Patel to Galardi, Bates Numbered ROPES1221.

M.      E-mail string from Galardi to Patel, Bates Numbered ROPES1358-59.

VIII.    STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

The parties shall set forth any stipulations with respect to the authenticity and admissibility of exhibits and indicate all objections to exhibits and the grounds therefor.  The parties should deliver to chambers a copy of any pre-marked exhibit that is the subject of an objection at the time they deliver the proposed pre-trial order.  Any objections not set forth in this order will be considered waived absent good cause shown.

I.      Stipulated Exhibits:  The parties stipulate to the admissibility of the following exhibits:

MOVANT'S EXHIBITS

1.  Findings of Fact, Conclusions of Law, and Order Confirming Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft., attaching the Confirmed Joint Chapter 11 Plan of Liquidation [D.I.638].

2.  Transcript of December 13, 2016 Confirmation Hearing [D.I. 628].

3.  November 2, 2016 Email from Debtors' counsel to the Official Committee of Unsecured Creditors, Document Production – ROPES-GWK-00003224.

5.  Exhibits A, B, and C to the Motion for Entry of an Order (i) Enforcing the Amended Joint Chapter 11 Plan of Liquidation filed by Gawker Media Group, Inc., Gawker Media LLC and Gawker Hungary Kft. and (ii) Barring and Enjoining Pregame LLC, d/b/a Pregame.com, and Randall James Busack [D.I. 981].

9.  Order (I) Establishing a Deadline to File Proofs of Claim, Certain Administrative Claims and Procedures Relating Thereto and (II) Approving the Form and Manner of Notice Thereof [D.I. 168].

RESPONDENTS' EXHIBITS

A.  Reporter's Transcript of Proceedings, September 27, 2017.

B.  E-mail string from Galardi to Levine, Bates Numbered ROPES46-49.

C.  E-mail string from Galardi to Patel and Levine, Bates Numbered ROPES55-59.

D.  E-mail string from Galardi to Levine, Bates Numbered ROPES65-75.

E.  E-mail string from Levine to Galardi, Bates Numbered ROPES71-75.

F.  E-mail string from Patel to Galardi and Sturm, Bates Numbered ROPES175-77.

G.  E-mail string from Galardi to Patel, Bates Numbered ROPES178-81.

H.  E-mail string from Patel to Galardi, Bates Numbered ROPES190-94.

I.  E-mail string from Galardi to Patel and Sturm, Bates Numbered ROPES195-99.

J.  E-mail string from Sturm to Galardi, Bates Numbered ROPES200-05.

K.  E-mail string from Galardi to Patel, Bates Numbered ROPES223-28.

L.  E-mail from Patel to Galardi, Bates Numbered ROPES1221.

M.  E-mail string from Galardi to Patel, Bates Numbered ROPES1358-59.

II.  Respondents' Objections to Certain Exhibits:  Respondents object to the Movant's following exhibits coming in in their entirety at the outset of trial (Respondents reserve the right to object or stipulate to the exhibits, or portions of them, being admitted during trial):

4.  Complaint captioned:  INTERNATIONAL SCHERICK, LLC, a New York limited liability company aka "Superstar Machine"; and GREGORY SCHERICK, an Individual, Plaintiffs, against GIZMODO MEDIA GROUP, LLC, a Delaware corporation; ANNA MERLAN, an Individual; EMMA CARMICHAEL, an individual; and DOES 1-20, inclusive, Defendants,  pending before the Supreme Court for the State of New York, County of New York, under Index No. 157939/2017.

Basis:  Hearsay, relevance.

5.  Motion for Entry of an Order (i) Enforcing the Amended Joint Chapter 11 Plan of Liquidation filed by Gawker Media Group, Inc., Gawker Media LLC and Gawker Hungary Kft. and (ii) Barring and Enjoining Pregame

LLC, d/b/a Pregame.com, and Randall James Busack [D.I. 981].   This objection does not extend to Exhibits A, B, and C attached to the Motion.

Basis:  Hearsay.

6. Reply of Ryan Goldberg to Objection to Motion (I) To Enforce Order Confirming Amended Joint Chapter 11 Plan of Liquidation and (II) to Bar and Enjoin Creditors from Prosecuting their State Court Action [D.I. 1014].

Basis:  Hearsay.

7. Expert Declaration of Chad E. Milton.

Basis:  Relevance, if Respondent's motion to exclude Milton as an expert is granted.

8. Declaration of William D. Holden in Support of the Debtor's Motion for (I) a Preliminary Injunction and/or (II) Extension of the Automatic Stay and the Debtor's *Ex Parte* Motion for a Temporary Restraining Order [Adv. Pro. No. 16-1085, D.I. 6].

Basis:  Hearsay.

IX.    MOVANT'S WITNESS LIST

A.    Gregg Galardi, Debtors' Counsel
B.    William Holden, formerly Debtors' Chief Restructuring Officer and currently Plan Administrator

X.    RESPONDENTS' WITNESS LIST

A.    Gregg Galardi
B.    William Holden

XI.    MOVANT'S EXPERT WITNESSES

A.    Chad E. Milton – Chad E. Milton will provide testimony that in the insurance context of media liability, insurers provide coverage for defamation and related claims to media insured without exclusion for gross negligence or willful misconduct.   Movant will also rely on Chad E. Milton's Declaration dated November 14, 2017.

XII.    RESPONDENTS' EXPERT WITNESSES

11

None.

XIII.    RELIEF SOUGHT

The Movant shall set forth the precise relief sought, including each element of damages.  If the Respondents have asserted counterclaims, it shall do the same.

A.    Movant seeks enforcement of the third-party release and injunction provisions approved by this Court in the Plan barring and enjoining Respondents from prosecuting claims arising from the Article.

B.    Movant also seeks fees and expenses from Respondents, as Respondents violated the Plan's injunction provision by filing a complaint asserting claims arising from the Article against Movant without seeking prior leave from this Court.  However, to be clear, this issue will not be tried as part of the trial and will be resolved in a separate proceeding should Movant prevail on its claim that Respondents violated the injunction.

XIV.    ESTIMATED TIME OF TRIAL

Each party shall set forth a good faith estimate of the amount of hours it will take to complete the party's presentation of its direct case.

A.    4 to 6 hours
B.    4 to 6 hours

Dated:  March 14, 2018

*/s/Sharon L. Levine*
Sharon L. Levine, Counsel to Movant


*/s/Dilan A. Esper*
Dilan A. Esper, Counsel to Respondents


**Dated: March 15, 2018
IT IS SO ORDERED:**

**/s/ STUART M. BERNSTEIN**

**HON. STUART M. BERNSTEIN
United States Bankruptcy Judge**

24243871.16 03/15/2018