# **Attachment 3**

Memorandum Decision

US-DOCS\98333917.2

```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
In re:                                           :    Chapter 11
                                                 :
GAWKER MEDIA LLC, et al¹                         :    Case No. 16-11700 (SMB)
                                                 :
                                                 :
                           Debtors.              :
-------------------------------------------------X
```

## MEMORANDUM DECISION REGARDING MOTION TO ENFORCE THE SALE ORDER

**APPEARANCES:**

LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, California 90071

> Peter M. Gilhuly, Esq.
> Adam E. Malesta, Esq.
> Shawn P. Hansen, Esq.
>> Of Counsel.

--and--

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

> Thomas G. Henthoff, Esq.
>> Of Counsel.

*Counsel to Gizmodo Media Group, LLC*

GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
711 Third Avenue
New York, New York 10017

> Jonathan L. Flaxer, Esq.
> Michael S. Weinstein, Esq.
> S. Preston Ricardo, Esq.
>> Of Counsel.

---

¹ The debtors in these cases are Gawker Media LLC, Gawker Media Group, Inc. and Gawker Hungary Kft., f/k/a Kinja, Kft..

*Counsel to Pregame LLC and Randall James Busack*[2]

ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036

>Gregg M. Galardi, Esq.
>Joshua Y. Sturm, Esq.
>>Of Counsel.

*Counsel to the Plan Administrator for the Debtors*

BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.

>Bruce W. Sanford, Esq.
>Mark I. Bailen, Esq.
>Andrew M. Grossman, Esq.
>Michael A. Sabella, Esq.
>>Of Counsel.

*Counsel to Amici Curiae Society of Professional Journalists, Reporters Committee for Freedom of the Press and 19 Other Media Organizations*

## STUART M. BERNSTEIN
## United States Bankruptcy Judge:

The Debtors (collectively, "Gawker") sold substantially all of their assets to Gizmodo Media Group LLC ("Gizmodo") free and clear of all liens, claims, interests and encumbrances pursuant to Bankruptcy Code § 363(f). Prior to the sale, Gawker had published an article (the "Article") on one of its websites that allegedly defamed Pregame LLC and Randall James Busack (together, the "Plaintiffs"). After the sale, the Plaintiffs brought an action in New York State Court against Gizmodo and Ryan Goldberg, the author of the Article. In response, Gizmodo filed a motion to bar the state court action on the ground that it violated the sale order described in more detail below. (*Motion of Gizmodo Media Group, LLC to Enforce the Sale Order and to Bar Certain*

---

[2] "Busack" is sometime spelled "Busak" in the pleadings.

2

*Plaintiffs from Prosecuting Their State Court Actions,* dated Aug. 21, 2017 (the "*Motion*") (ECF Doc. # 985).)[3] The *Motion* is granted in part and denied in part for the reasons that follow.

## BACKGROUND

The material facts are not in dispute. Prior to the petition date, Gawker operated seven distinct media brands with corresponding websites under the names Gawker, Deadspin, Lifehacker, Gizmodo, Kotaku, Jalopnik and Jezebel. (*Declaration of William D. Holden in Support of First Day Motions,* dated June 12, 2016 ("*Holden Declaration*"), 10-11 (ECF Doc. # 7).) Gawker faced a number of pre-petition lawsuits in connection with content they produced and posted on these websites. (*Holden Declaration* at ¶ 30.) After years of litigation, on June 10, 2016, Gawker Media LLC filed a voluntary chapter 11 petition in this district. Gawker Media Group, Inc. and Gawker Hungary Kft. filed chapter 11 petitions two days later.

### A. The Article and the Sale

On June 13, 2016, Gawker filed a motion to sell substantially all of the Debtors' assets free and clear of all liens, claims and encumbrances. Gizmodo won the bid,[4] and on August 22, 2016, the Court signed an order approving the sale to Gizmodo. (*Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances (II) Approving and Authorizing the*

---

[3] Goldberg also filed a motion alleging that the releases in the plan barred the claim against him, but that motion is not the subject of this decision.

[4] The contract vendee and winning bidder was actually UniModa, LLC. I assume that Gizmodo is its affiliate and the reference to Gizmodo as the purchaser includes the reference to UniModa.

3

*Debtors' Entry Into the Asset Purchase Agreement and (III) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases*, dated Aug. 22, 2016 (the "*Sale Order*") (ECF Doc. # 214).)

The *Sale Order* included provisions that shielded Gizmodo from liability for claims against Gawker. Paragraph 14 of the *Sale Order* provided in pertinent part:

> Except with respect to the Assumed Liabilities, all persons and entities . . . holding Adverse Interests[5] arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the ownership, sale or operation of the Acquired Assets and the business prior to the Closing or the transfer of Acquired Assets to Buyer . . . are hereby forever barred . . . from asserting such Adverse Interests . . . against Buyer, its property or the Acquired Assets. Following the Closing. . ., no holder of any Adverse Interest shall interfere with Buyer's title to or use and enjoyment of the Acquired Assets based on or related to any such Adverse Interest . . . or based on any action the Debtors may take in the Cases. . . .

(*Sale Order* at ¶ 14.) Paragraph 21 further provided in pertinent part:

> . . . . Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing . . . any judicial . . . proceeding against Buyer, or its assets (including the Acquired Assets), or its successors and assigns, with respect to any (i) Adverse Interest . . . or (ii) Successor or Transferee Liability including the following actions with respect to clauses (i) and (ii): (a) commencing or continuing any action or other proceeding pending or threatened; (b) . . . (e) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof. . . .

(*Id.* at ¶ 21.)

The *Sale Order* also contained jurisdictional provisions. The Court retained exclusive jurisdiction, *inter alia*, to "interpret, implement and enforce" the *Sale Order*

---

[5] According to the Asset Purchase Agreement ("APA"), "Adverse Interests" included claims against Gawker arising before or after the commencement of the case. A copy of the APA is attached as Exhibit 1 to the *Sale Order*.

4

and the APA and "to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale." (*Sale Order* at ¶ 46.) In addition, the Court retained jurisdiction to "protect Buyer and its assets, including the Acquired Assets, against any Adverse Interests (other than Permitted Liens and Assumed Liabilities) and Successor or Transferee Liability." (*Id.* at ¶ 47.) The sale closed on September 9, 2016.

While Gawker was proceeding with the sale process, Deadspin posted the Article on its website on June 23, 2016. (*Complaint* at ¶ 16.)[6] Entitled "How America's Favorite Sports Betting Expert Turned a Sucker's Game into an Industry," the Article explored the sports-betting industry, focusing particularly on the activities of Busack and Pregame. (*Id.* at ¶ 4.) The Article triggered an immediate response. Four days later, the Plaintiffs' counsel sent a letter to Gawker and Goldberg demanding that they remove allegedly false statements contained in the Article, and publish a correction, apology and retraction. (*Id.* at ¶ 28.) Thereafter, on July 20, 2016, Gawker filed a *Global Notes to Schedules of Assets and Liabilities and Statement of Financial Affairs for the Debtors*, dated July 20, 2016 (the "*Global Notes*") (ECF Doc. # 116.) The *Global Notes* included a rider, attached to Schedule E/F, that listed Busack as the holder of a contingent, unliquidated and disputed unsecured "threatened litigation claim." (*Id.* at p. 35 of 72.)

On August 22, 2016, the same day the Court signed the *Sale Order*, the Plaintiffs sent another letter, this time to Gizmodo's counsel demanding the removal of the Article from the website after the closing date of the sale. (*Gizmodo Motion*, Ex. A.) The

---

[6] The "*Complaint*" refers to the complaint in the Civil Suit. A copy of the *Complaint* is annexed as Exhibit D to the *Motion* (ECF Doc. # 985-4.)

5

Plaintiffs also noted that "[w]e understand that [Gizmodo] recently agreed to purchase substantially all of the assets of Gawker, including Deadspin.com." (*Id.* at 1.) The Plaintiffs do not dispute that they had prior notice of the proposed sale and the proposed sale order, and never objected to either.

### B. The State Court Action

On June 22, 2017, the Plaintiffs filed their state court action against Gizmodo and Goldberg. The *Complaint* asserted causes of action based on the pre-sale publication of the Article sounding in (i) defamation; (ii) intentional interference with prospective economic advantage; and (iii) tortious interference with contractual relations. (*Complaint* at ¶¶ 42–64.) According to the Plaintiffs, their claims arose "out of the publication of numerous false and defamatory statements about Plaintiffs by defendant Ryan Goldberg ("Mr. Goldberg") on Deadspin.com, which is owned and operated by Gizmodo ("GMB")." (*Id.* at ¶ 1.) The Plaintiffs alleged that the Article, *inter alia*, falsely characterized the Plaintiffs as engaged "in deceptive and predatory business practices by profiting from customers' betting losses, are paid by sportsbooks, and own sportsbook websites and services." (*Id.* at ¶¶ 4 & 21.)

The *Complaint* did not mention the sale or the *Sale Order*, and the only reference to post-sale conduct concerned the failure to remove the Article. The Plaintiffs alleged that "[a]fter [Gizmodo] took over control of Deadspin.com, Plaintiffs' counsel subsequently contacted [Gizmodo] advising it of the same. [Gizmodo], however, has failed to remove and/or retract the Story, which remains on Deadspin.com as of the date of this Complaint." (*Id.* at ¶ 7.) Similarly, its three claims charged that the defendants

6

caused the Article to be "published and/or maintained" (or some variation thereof) on the Deadspin website. (*See id.* at ¶¶ 43, 46, 48, 50, 54, 55, 59, 61.)

Gizmodo filed the *Motion* on August 21, 2017, and the Plan Administrator filed a joinder. (*Joinder and Reservation of Rights by the Plan Administrator to the Motions of Ryan Goldberg and Gizmodo Media Group, LLC to Enforce the Sale Order and Confirmation Order and Bar Certain Plaintiffs From Prosecuting Their State Court Actions*, dated Sep. 5, 2017 (the "*Joinder*") (ECF Doc. # 997).) The *Motion* asserted that the Plaintiffs' action against Gizmodo was based on pre-sale conduct, and was barred by the terms of the *Sale Order*. The Plan Administrator argued that the *Sale Order* "was intended to protect against exactly the types of claims raised in the *Complaint* being brought months after the closing of the Sale and confirmation of the [Plan]" and urged the Court to grant the *Motion*. (*Joinder* at ¶ 15 & p. 9 (emphasis added).) The Plaintiffs responded that the Court lacked jurisdiction over the causes of action or, in the alternative, the Court must abstain from adjudicating these proceedings because they implicate state law. The Plaintiffs also argued that their state court action was based entirely on post-sale conduct, *i.e.*, that Gizmodo maintained the Article post-sale, and this conduct gave rise to a new cause of action. (*Objection of Pregame LLC and Randall James Busak to Motions of (1) Gizmodo Media Group, LLC and (2) Ryan Goldberg, Seeking to Enforce Orders of this Court Action and in Response to the Joinder of the Plan Administrator to Such Motions*, dated Sep. 15, 2017 (the "*Objection*") (ECF Doc. # 1006.)[7]

---

[7]  The Society of Professional Journalists, Reporters Committee for Freedom of the Press and 19 other Media Organizations (collectively, the "*Amici*") filed their *Motion of Proposed Amici Curiae Society of Professional Journalists, Reporters Committee for Freedom of the Press, and 19 other Media*

7

# DISCUSSION

## A. Jurisdiction and Abstention

Bankruptcy Courts have jurisdiction to interpret and enforce their own orders, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009), and this jurisdiction extends to post-confirmation disputes between creditors and the purchasers of the debtor's assets where those disputes implicate the interpretation of a bankruptcy sale order. *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir. 2002); *In re Gen. Growth Props., Inc.*, 460 B.R. 592, 598 (Bankr. S.D.N.Y. 2011). In addition, the Court retained jurisdiction in both the *Sale Order* and the *Confirmation Order* to interpret and enforce both orders. (*Sale Order* at ¶ 47; *Confirmation Order* at ¶ 46 ("[e]xcept as otherwise provided in any of the Plan Documents, the Court shall retain jurisdiction over the Bankruptcy Cases and all matters arising out of, or related to, the Bankruptcy Cases and the Plan, including the Retained Causes of Action.").) Finally, the jurisdiction is core, because the sale itself was a core proceeding, 28 U.S.C. § 157(b)(2)(N), and the "[e]nforcement and interpretation of orders issued in core proceedings are also considered core proceedings within the bankruptcy court's jurisdiction." *HHI FormTech, LLC v. Magna Powertrain USA, Inc. (In re FormTech Indus., LLC)*, 439 B.R. 352, 357 (Bankr.D.Del.2010); *accord In re Trans World Airlines, Inc.*, 278 B.R. 42, 49 n. 16 (Bankr.D.Del.2002) ("Core proceedings under § 157(b)(2)(N) are those which arise from, concern, or have some impact on '*orders* approving the sale

---

*Organizations for Leave to File Memorandum of Law as Amici Curiae*, dated Sep. 22, 2017 (the "*Amici Brief*") (ECF Doc. # 1010.) The *Amici* urge the Court to grant the *Motions*, but their arguments relate solely to the *Goldberg Motion*. At oral argument, I granted the *Amici's* request for leave to file the *Amici Brief* on the record. (Transcript of 9/28/2017 Hr'g at 11:20-11:22 (ECF Case No. 16-11700 Doc. # 1032); *Order Granting Application of Society of Professional Journalists, Reporters Committee for Freedom of the Press and 19 Other Media Organizations to Shorten Notice Period With Respect to their Motion for Leave to File Memorandum of Law as Amici Curiae*, dated. Sep. 25 (ECF Doc. # 1013).)

8

of property'....") (emphasis in original); *see Petrie Retail*, 304 F.3d at 229-30 (concluding that a proceeding between non-debtors involving the interpretation of rights under a sale order was a core proceeding).

Although the Court has jurisdiction, the Plaintiffs ask the Court to abstain from exercising it in deference to the state court litigation. Initially, mandatory abstention does not apply to core proceedings. *See* 28 U.S.C. § 1334(c)(2) (the Court must abstain when, *inter alia*, the proceeding is "related to a case under title 11 but not arising under title 11 or arising in a case under titled 11); *In re Gen. Growth Properties, Inc.*, 460 B.R. 592, 601 (Bankr. S.D.N.Y. 2011) ("Since the State Court Action is one 'arising in' a bankruptcy case and within this Court's core jurisdiction, mandatory abstention under 28 U.S.C. § 1334(c)(2) is inapplicable on its own terms.")

This leaves permissive abstention. *See* 28 U.S.C. § 1334(c)(1). Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). While permissive or discretionary abstention may nonetheless be appropriate under certain circumstances, the Plaintiffs' abstention argument, like its jurisdictional argument, is based on a misunderstanding of the issue before the Court. The Court is not ruling on the sufficiency of the Plaintiffs' defamation or other tort claims, but instead, whether the claims, as pleaded, are barred by the *Sale Order*. *See Goldman v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, No. 12 Civ. 6109 (RJS), 2013 WL 5511027, at 86 (S.D.N.Y. Sept. 30, 2013) (Although the legal sufficiency of the Complaints is not before the Court, "whether the Complaints plead a bona fide control person claim *is* relevant" the "Appellants cannot . . . shield their Complaints from all

9

scrutiny, since the question before this Court is whether Appellants' claims, *as pleaded in the Complaints,* should be allowed to proceed despite the Injunction and automatic stay.") (emphasis in original).

This Court is in the best position to interpret its own orders, and its interpretation is entitled to substantial deference. *Travelers,* 557 U.S. at 151 n.4; *Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC),* 740 F.3d 81, 87 n. 7 (2d Cir. 2014) ("The scope of an injunction 'turns upon the intent and effect of the bankruptcy court's' order, and, thus, '[a] bankruptcy court's interpretation of its own order warrants customary appellate deference.'") (quoting *Casse v. Key Bank Nat'l Ass'n (In re Casse),* 198 F.3d 327, 333 (2d Cir.1999)). Principles of permissive abstention do not require this Court in the exercise of its discretion to foist this burden on the state court particularly where, as here, the Plaintiffs did not mention the *Sale Order* in the *Complaint* and apparently view it as immaterial to their claims. Moreover, while the Plaintiffs' submission discusses the principles of permissive abstention, none of their authorities supports the argument that a Court should abstain from interpreting its own orders.

### B. The Merits

The Plaintiffs implicitly concede that the *Sale Order* bars any claims based on pre-sale conduct. They argue that "[t]he Complaint on its face only seeks relief for post-sale conduct, and thus the Sale Order is not implicated." (*Objection* at ¶ 59.) This argument is disingenuous. The *Complaint* opens with the proclamation that "[t]his action by plaintiffs . . . arises out of the *publication* of numerous false and defamatory statements about Plaintiffs by defendant Ryan Goldberg ("Mr. Goldberg") on

10

Deadspin.com, which is owned and operated by Gizmodo []." (*Complaint* at ¶ 1 (emphasis added).) The "publication" refers to the initial posting of the Article on June 23, 2016. (*See Complaint* at ¶ 25.) The vast majority of the allegations discuss the *publication* of the Article and the immediate aftermath and do not mention the *Sale Order*.

The *Sale Order* bars the claims arising from the pre-sale publication of the Article. Under New York's single publication rule,[8] "the publication of a defamatory statement in a single issue of a newspaper, or a single issue of a magazine, although such publication consists of thousands of copies widely distributed, is, in legal effect, one publication which gives rise to one cause of action and . . . the applicable Statute of Limitation runs from the date of that publication." *Gregoire v. G. P. Putnam's Sons*, 81 N.E.2d 45, 47 (N.Y. 1948). The same rule applies to postings on the Internet. *Firth v. State*, 775 N.E.2d 463, 465 (N.Y. 2002); *accord Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 144 (5th Cir. 2007) ("Every court to consider the issue after *Firth* has followed suit in holding that the single publication rule applies to information widely available on the Internet.") (collecting cases). Accordingly, only one cause of action accrues on the date of the initial publication. Moreover, the plaintiff cannot plead around the one-year statute of limitations by recasting his defamation claim under a different name or theory. *See Abshier v. Sunset Recordings, Inc.*, No. 14 CIV. 3227 (CM) (SN), 2014 WL 4230124, at *9 (S.D.N.Y. Aug. 5, 2014) ("New York courts have kept a watchful eye for claims sounding in defamation that have been disguised as other

---

[8] At oral argument, the Court concluded, without objection, that New York law governed. (Transcript of 9/28/2017 Hr'g at 13:20-13:24 (ECF Case No. 16-11700 Doc. # 1032).)

causes of action. . . . Anything else would allow plaintiffs to circumvent the otherwise short limitations period for defamation claims.") Thus, the single publication rule governs all claims arising from the publication when their essence is defamation. *Goldman v. Barrett*, 15 Civ. 9223 (PGG), 2016 WL 5942529, at *10 (S.D.N.Y. Aug. 24, 2016). To avoid the prohibition imposed by the single publication rule, the pleading must allege facts that the defendant republished the defamatory material, but republication does not occur merely by maintaining the information on the website. *See Firth*, 775 N.E.2d at 466.

As the Plaintiffs implicitly concede, the *Sale Order* bars any claims against Gizmodo arising from the publication of the allegedly defamatory Article on June 23, 2016. Accordingly, the Plaintiffs are enjoined from asserting those claims in state court. Gawker also asks me to reject any post-sale claims because the *Complaint*, it says, does not allege a legally sufficient republication claim. I decline the invitation. Whether the *Complaint* alleges a legally sufficient post-sale claim against Gizmodo based on republication or some other theory is an issue best left to the state court presiding over the action.

Settle order on notice.

Dated: New York, New York
December 12, 2017

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge

12