## Exhibit A

**Proposed Order**

ROPES & GRAY LLP
Gregg M. Galardi
Kimberly J. Kodis
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile:  (212) 596-9090

*Counsel to the Plan Administrator for the Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                                     :
In re:                                               :   Chapter 11
                                                     :
Gawker Media LLC, *et al.*,[1]                       :   Case No. 16-11700 (SMB)
                                                     :
            Debtors.                                 :   (Jointly Administered)
                                                     :
------------------------------------------------------x

**ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019
APPROVING RELEASE AGREEMENT WITH THIEL PARTIES**

Upon the motion (the "Motion")[2] of the Plan Administrator (as defined below) for the debtors in the above-captioned cases (collectively, the "Debtors") for entry of an order (the "Order"): (a) approving that certain release agreement dated April 24, 2018 by and among Peter Thiel ("Mr. Thiel"), Thiel Capital LLC ("Thiel Capital", and together with Mr. Thiel, the "Thiel Parties"), the Debtors, and William D. Holden, solely in his capacity as plan administrator for the Debtors (the "Plan Administrator") attached hereto as **Exhibit 1** (the "Release Agreement"), and (b) authorizing the Plan Administrator to take any and all actions reasonably necessary to consummate the Release Agreement and perform all obligations contemplated therein; and the

---

[1] The last four digits of the taxpayer identification numbers of the Debtors are Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary, Kft. "v.a." (5056). The offices of the Debtors are located at 10 East 53rd Street, New York, NY 10022.

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having held a hearing on the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. Pursuant to Bankruptcy Rule 9019, the Debtors are authorized to enter into and perform under the Release Agreement, and the Release Agreement is hereby approved in its entirety.

3. The Debtors are authorized to enter into the Release Agreement and take any and all actions required or reasonably necessary or appropriate to effectuate the terms of the Release Agreement.

4. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: [•], 2018
New York, New York

_____
HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

# Exhibit 1

# Release Agreement

RELEASE AGREEMENT

April 24, 2018

This RELEASE AGREEMENT (this "Agreement") is executed and delivered by Peter Thiel ("Mr. Thiel"), Thiel Capital LLC (together with Mr. Thiel, the "Thiel Parties"), Gawker Media LLC ("Gawker Media"), Gawker Hungary, KFT (f/k/a Kinja KFT) ("Gawker Hungary"), and Gawker Media Group, Inc. ("GMGI") (collectively, the "Gawker Entities"), and William D. Holden, solely in his capacity as plan administrator for the Gawker Entities (the "Plan Administrator") pursuant to the Gawker Entities' Amended Joint Chapter 11 Plan of Liquidation (the "Plan") (each individually, a "Party", and all collectively, the "Parties").

RECITALS

WHEREAS, on June 10, 2016, Gawker Media filed a bankruptcy petition for relief in the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), styled *In re Gawker Media LLC*, case no. 16-11700 (SMB) (the "Gawker Media Bankruptcy Case"). On June 12, 2016, GMGI and Gawker Hungary also each filed a petition for relief in the Southern District of New York (collectively with the Gawker Media Bankruptcy Case, the "Bankruptcy Cases");

WHEREAS, on October 11, 2016, the Gawker Entities filed a motion (the "2004 Motion") in the Bankruptcy Cases seeking discovery of the Thiel Parties, Charles J. Harder, Esq., and his law firm Harder Mirell & Abrams LLP regarding possible claims that the Gawker Entities might have against Mr. Thiel and/or others in connection with the reported financing by Mr. Thiel of litigation against the Gawker Entities and others (the "Claims"). The 2004 Motion was granted on June 28, 2017. An order authorizing the issuance of subpoenas was granted on December 4, 2017, and the Plan Administrator issued subpoenas on December 14, 2017. Discovery pursuant to the 2004 Motion (the "2004 Investigation") is currently underway;

WHEREAS, pursuant to that certain Settlement Agreement by and between Terry Gene Bollea and the Gawker Entities, dated as of December 9, 2016 (the "Bollea Settlement"), the Gawker Entities are obligated to work in good faith to facilitate an agreement containing mutual general releases between the Gawker Entities and the Thiel Parties;

WHEREAS, pursuant to the Plan and the Bollea Settlement, the Plan Administrator is obligated to attempt to sell the Gawker.com Assets (as defined in the Bollea Settlement);

WHEREAS, the Thiel Parties have expressed a desire to participate in a sale of the Gawker.com Assets, and the Plan Administrator believes that he may be able to elicit greater interest and higher bids from other prospective purchasers if the Thiel Parties are excluded from participation in the sale process and, therefore, has asked the Thiel Parties not to participate in the sale process; and

WHEREAS, each of the Parties desires to resolve all claims between or among them;

NOW, THEREFORE, in consideration of the foregoing and for good and valuable consideration and incorporating the recitals set forth above, and subject to the approval of the Bankruptcy Court, the Parties hereby agree as follows:

Section 1.   Sale Process Participation.  Subject to the Gawker Entities' and the Plan Administrator's compliance with this Agreement, each of the Thiel Parties, for himself or itself and on behalf of their current and former predecessors, successors, assigns, affiliates, subsidiaries, parents, members, managers, principals, officers, directors, employees, shareholders, agents and representatives (but, as to agents and representatives, only to the extent that either or both of the Thiel Parties has the authority to bind such agents and representatives), as applicable (collectively, the "Thiel Releasing Persons"), agrees that they shall not participate, cause any third party to participate or otherwise authorize any third party's participation, or provide funding to any third party for the purpose of participating, in any sale process for the Gawker.com Assets, except as expressly requested by the Gawker Entities and agreed to by the Thiel Parties in their sole and absolute discretion.

Section 2.   Sale Process Format.  Each of the Thiel Parties, for himself or itself and on behalf of the Thiel Releasing Persons, agrees that the Plan Administrator shall be permitted to conduct the sale process for the Gawker.com Assets in any manner that comports with the Plan Administrator's fiduciary duties related to such sale process, including but not limited to a public or private auction.  Notwithstanding anything to the contrary herein, the Plan Administrator and the Gawker Entities agree that any sale or disposition of the Gawker.com Assets, or any portion thereof or interest therein, shall expressly exclude any right, title and interest in and to the Claims and any similar or derivative causes of actions against any of the Thiel Parties or their Released Persons (defined below), and shall ensure that any definitive transaction documents in respect of such sale or disposition include such express agreement.

Section 3.   Actions Against Certain Parties.  Subject to the Gawker Entities' and the Plan Administrator's compliance with this Agreement, each of the Thiel Parties, for himself or itself and on behalf of the Thiel Releasing Persons, agrees that they shall not bring, cause any third party to bring, otherwise authorize any third party's bringing of, or provide funding to any third party for the purpose of bringing or funding, any claim (including any derivative claim on behalf of any person), action, cause of action, suit, arbitration, proceeding, controversy or demand, or commencing, instituting or causing to be commenced, any suit, proceeding or manner of action of any kind arising out of or connected with the Gawker Entities or their respective businesses, including, without limitation, any and all actions, activities, assets or liabilities, whether known or unknown, suspected or unsuspected, absolute or contingent, direct or indirect or nominally or beneficially possessed or claimed by either of the Thiel Parties, whether the same be in administrative proceedings, in arbitration, at law, in equity or mixed, which any person ever had, now has or hereafter may have, in respect of any and all action, liabilities or obligations taken, entered into or incurred on or prior to the date hereof and in respect of any event occurring or circumstances existing on or prior to the date hereof, whether or not relating to claims pending on, or asserted after, the date hereof, against:

> 3.1.   any buyer or licensee of the Gawker.com Assets in the sale and licensing processes currently ongoing, or any subsequent buyer or licensee of the Gawker.com Assets (each, a "Buyer" or "Licensee", as applicable), in their

    capacity as such, in connection with any action related to the Gawker.com Assets taken on or prior to the date hereof; or

  3.2. any of the Gawker Entities or any current or former employee or independent contractor thereof, in their capacity as such, in connection with any action related to the Gawker.com Assets taken on or prior to the date hereof.

Each of the Thiel Parties, for himself or itself and on behalf of the Thiel Releasing Persons, hereby represents that they are not presently funding any action that would violate this Section 3, other than as permitted under Section 7.

Section 4. <u>Archives</u>. Subject to the Gawker Entities' and the Plan Administrator's compliance with this Agreement, each of the Thiel Parties, for himself or itself and on behalf of the Thiel Releasing Persons, agrees they will not engage, cause any third party to engage, or provide funding to any third party for the purpose of engaging, in any action seeking to cause the web content archives (the "<u>Archives</u>"), or any portion thereof, created by or on behalf of any or all of the Gawker Entities through the date hereof, to be removed from the internet or any successor media.  For the avoidance of doubt, this Section 4 shall prohibit any interference or attempts to interfere with the ability of any Buyer or Licensee to display the Archives.

Section 5. <u>Termination of 2004 Investigation</u>. Within three (3) business days following the Effective Date (defined below), the Gawker Entities and the Plan Administrator shall send a letter or an email to the Thiel Parties, Charles J. Harder, Esq., and his law firm Harder Mirell & Abrams LLP terminating the 2004 Investigation and withdrawing the subpoenas issued in connection therewith, with prejudice; pending such termination, the Parties agree that all actions with respect to the 2004 Investigation are hereby suspended.

Section 6. <u>Releases</u>.

  6.1. Subject to the Gawker Entities' and the Plan Administrator's compliance with this Agreement, each of the Thiel Parties, for himself or itself and on behalf of the Thiel Releasing Persons, hereby absolutely and forever releases and discharges the Gawker Entities and the Plan Administrator and each of their respective current and former predecessors, successors, assigns, affiliates, subsidiaries, parents, agents, members, managers, principals, officers, directors, employees, independent contractors, representatives and shareholders, and any estates, heirs, executors and families of any thereof, and any person, firm, trust, corporation, officer, director or other individual or entity in which any thereof has or had a controlling interest (collectively, "<u>Released Persons</u>"), from any and all claims, demands, damages (including any claim(s) for punitive damages), debts, liabilities, accounts, reckonings, obligations, costs (including attorneys' fees), expenses, liens, actions, and causes of action of every kind and nature arising out of or connected with the Gawker Entities or their respective businesses, whether in law or in equity, known or unknown, whatsoever, which either or both of the Thiel Parties now have, ever had, or may claim to have, against any of the Gawker Entities' Released Persons, from the beginning of time until the date

hereof; specifically excluding any claims and causes of action based upon the obligations set forth in this Agreement.

    6.2.    Subject to the Thiel Parties' compliance with this Agreement, each of the Plan Administrator and the Gawker Entities and their current and former predecessors, successors, assigns, affiliates, subsidiaries, parents, members, managers, principals, officers, directors, employees, shareholders, agents and representatives (but, as to agents and representatives, only to the extent that the Plan Administrator or any or all of the Gawker Entities has the authority to bind such agents and representatives), as applicable (collectively, the "Gawker Releasing Persons"), hereby absolutely and forever releases and discharges the Thiel Parties and the Thiel Parties' Released Persons from any and all claims, demands, damages (including any claim(s) for punitive damages), debts, liabilities, accounts, reckonings, obligations, costs (including attorneys' fees), expenses, liens, actions, and causes of action of every kind and nature arising out of or connected with the Gawker Entities or their respective businesses, whether in law or in equity, known or unknown, whatsoever, which the Plan Administrator or any one or more of the Gawker Entities now have, ever had, or may claim to have, against any of the Thiel Parties' Released Persons, from the beginning of time until the date hereof; specifically excluding any claims and causes of action based upon the obligations set forth in this Agreement.

    6.3.    Notwithstanding anything to the contrary herein, to the extent that (i) it is determined that the Plan Administrator or the Gawker Entities do not have the authority to bind any of the Gawker Releasing Persons to the releases in Section 6.2, and (ii) any such Gawker Releasing Person asserts a claim or cause of action against any of the Thiel Parties or their Released Persons that otherwise would have been released pursuant to Section 6.2, then such Gawker Releasing Person shall not be, and shall be deemed to never have been, (x) released pursuant to Section 6.1, or (y) subject to the provisions of Section 3.

Section 7.    <u>Continued Funding of Bollea Legal Fees and Expenses</u>.    Notwithstanding anything to the contrary herein, the Thiel Parties are permitted to continue to pay the legal fees and expenses of Terry Gene Bollea, including, without limitation, relating to the Plan or the Bollea Settlement.

Section 8.    <u>No Suits or Actions</u>.    Subject to the other Parties' compliance with this Agreement, each Party releasing a party (including, but not limited to, the other Parties) through this Agreement hereby irrevocably covenants to refrain from, and agrees to cause each of its Releasing Persons to refrain from, asserting any claim (including any derivative claim on behalf of any person), action, cause of action, suit, arbitration, proceeding, controversy or demand, or commencing, instituting or causing to be commenced, any suit, proceeding or manner of action of any kind against any party released through this Agreement in respect of any of the claims released hereby. If one or more of such Releasing Persons does any of the things mentioned in the immediately preceding sentence, then such Party shall indemnify all respective Released Persons in the amount of the value of any final judgment or settlement (monetary or other) and any related cost (including reasonable attorneys' fees) entered against, paid or incurred by such

parties released hereby (or any of them) in respect of such violation of the terms of this Agreement.

Section 9.    No Additional Facts.  Each of the Parties hereby expressly waives any rights such Party may have in connection with claims that such Party does not know or suspect to exist in such Party's favor at the time of executing the applicable release(s) contained herein.  Each of the Parties understands and acknowledges that such Party may discover facts different from, or in addition to, those which such Party knows or believes to be true with respect to the claims released herein, and agrees that the release(s) set forth herein shall be and remain effective in all respects notwithstanding any subsequent discovery of different or additional facts.  If any of the Parties hereto discovers that any fact relied upon in entering into the release(s) provided herein was untrue, or that any fact was concealed, or that an understanding of the facts or law was incorrect, such Party shall not be entitled to any relief as a result thereof, and such Party surrenders any rights such Party might have to rescind the release(s) provided herein on any such ground.  Such releases are intended to be and are final and binding regardless of any claim of misrepresentation, promise made without the intention of performing, concealment of fact, mistake of law or any other circumstances whatsoever; provided, however, that this Section 9 is subject in all respects to the provisions of Section 6.3.

Section 10.   No Assignment of Claims.  Each Party represents and warrants to all respective Released Persons that there has been no assignment or other transfer of any interest in any of the claims released hereby.

Section 11.   Severability.  If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect.  Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

Section 12.   Specific Performance.  The Parties hereby acknowledge and agree that the failure of any Party to perform its agreements and covenants hereunder will cause irreparable injury to the non-breaching Party(ies) for which damages, even if available, will not be an adequate remedy.  Accordingly, each Party hereby consents to the granting of injunctive relief by any court of competent jurisdiction to prevent breaches of this Agreement, to enforce specifically the terms and provisions hereof, and to compel performance of such other Party's obligations, this being in addition to any other remedy to which any Party is entitled under this Agreement.  The Parties further agree to waive any requirement for the securing or posting of any bond in connection with any such remedy, and that such remedy shall be in addition to any other remedy to which a Party is entitled at law or in equity.

Section 13.   Further Assurances.  Each of the Parties agrees to execute documents, instruments, or conveyances of any kind in form and substance which may be reasonable, necessary or advisable to carry out any of the transactions contemplated under this Agreement and to cooperate with the other Parties in connection with the foregoing.

Section 14.   Authority.  By their respective signatures hereto, each of the undersigned represents and warrants that he or it has been duly authorized to enter into this Agreement.

Section 15.    <u>Amendment; Governing Law; Venue</u>.  This Agreement may not be amended, modified or supplemented except in a writing signed by each of the Parties hereto.  This Agreement shall be governed by and construed under the laws of the State of New York without regard to any principles of conflicts of law thereof that would cause the laws of any other jurisdiction to be applied.  Each Party, by his or its execution hereof, hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in the State of New York, County of New York for the purpose of any action, claim, cause of action or suit (in contract, tort or otherwise), inquiry, proceeding or investigation arising out of or based upon this Agreement or relating to the subject matter hereof.

Section 16.    <u>Headings</u>.  The section or paragraph headings or titles herein are for convenience of reference only and shall not be deemed a part of this Agreement.

Section 17.    <u>Third-Party Beneficiaries</u>.  Each of the initial Buyer in the Gawker.com Assets sale process currently ongoing, the Gawker Entities' Released Persons, the Thiel Parties' Released Persons and Terry Gene Bollea shall be a third-party beneficiary of this Agreement, including, for the avoidance of doubt, with respect to Section 12, as applicable.

Section 18.    <u>Signatures</u>.  Facsimile or .pdf signatures shall have the same legal effect as manual signatures.

Section 19.    <u>Effective Date</u>.  Within three (3) business days of the execution of this Agreement, the Gawker Entities and the Plan Administrator shall file a motion with the Bankruptcy Court to approve this Agreement, which shall become effective upon entry by the Bankruptcy Court of an order approving the Agreement and such order becoming final, by lapse of time or otherwise (the date of finalization of such order, the "Effective Date").

[*remainder of page intentionally left blank*]

Each of the undersigned, intending to be legally bound hereby, has executed this Agreement as of the date set forth opposite such signatory's name.

**PETER THIEL**

_/s/ Peter Thiel_     Date: April 24, 2018

**THIEL CAPITAL LLC**

_/s/ Peter Thiel_     Date: April 24, 2018
Name: Peter Thiel
Title: President

*[Signature Page to Settlement and Release Agreement]*

**GAWKER MEDIA LLC**

_____  Date: April 24, 2018
Name: William D. Holden
Title: Authorized Signatory

**GAWKER HUNGARY, KFT**

_____  Date: April 24, 2018
Name: William D. Holden
Title: Authorized Signatory

**GAWKER MEDIA GROUP, INC.**

_____  Date: April 24, 2018
Name: William D. Holden
Title: Authorized Signatory

**WILLIAM D. HOLDEN**

_____  Date: April 24, 2018
Title: Plan Administrator

*[Signature Page to Settlement and Release Agreement]*