Hearing Date and Time: May 17, 2018 at 10:00 a.m. (Eastern Time)
Response Deadline: May 10, 2018 at 12:00 p.m. (Eastern Time)

**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Peter M. Gilhuly, Esq. (admitted *pro hac vice*)
Adam E. Malatesta, Esq. (admitted *pro hac vice*)
Shawn P. Hansen, Esq. (admitted *pro hac vice*)
Email: Peter.Gilhuly@lw.com
Email: Adam.Malatesta@lw.com
Email: Shawn.Hansen@lw.com

**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Thomas G. Hentoff, Esq. (admitted *pro hac vice*)
Email: THentoff@wc.com

*Counsel for Gizmodo Media Group, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                                           :
In re:                                                     :    Chapter 11
                                                           :
Gawker Media LLC, *et al.*,[1]                             :    Case No. 16-11700 (SMB)
                                                           :
    Debtors.                                               :    (Jointly Administered)
---------------------------------------------------------- x

**RESPONSE OF GIZMODO MEDIA GROUP, LLC TO PLAN ADMINISTRATOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 APPROVING RELEASE AGREEMENT WITH <u>THIEL PARTIES</u>**

---

[1] The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary Kft. (f/k/a Kinja Kft.) (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10020. Gawker Hungary Kft's mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10020.

Gizmodo Media Group, LLC ("GMG") hereby submits this response (the "Response") to the *Plan Administrator's Motion for Entry of an Order Pursuant to Federal Rule of Bankruptcy Procedure 9019 Approving Release Agreement with Thiel Parties* [Docket No. 1105] (the "Motion").[2] In support of this Response, GMG respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  Through the Motion, the Plan Administrator seeks approval of the Release Agreement that provides a general release to the benefit of the Thiel Parties. In exchange for the release, the Thiel Parties are providing a mutual release to the Gawker Releasing Persons. While GMG is not opposed to a resolution between the parties, it submits that the Thiel Parties' non-funding agreement should be extended to cover claims against GMG and the Gawker Entities' current and former writers and independent contractors relating to the Acquired Assets (as defined in that certain Asset Purchase Agreement by and among the Debtors and UniModa, LLC,[3] dated August 17, 2016 (the "APA")).[4]

2.  Under the Release Agreement, the Thiel Parties agree not to fund any third-party litigation against "any of the Gawker Entities or any current or former employee or independent contractor thereof, in their capacity as such, in connection with any action related to the Gawker.com Assets[.]" *See* Release Agreement, § 3.2. However, absent from the Release Agreement is the Thiel Parties' agreement not to fund third-party claims against (i) GMG that

---

[2] Capitalized terms not defined herein shall have the same meaning as ascribed to them in the Motion.

[3] On September 15, 2016, UniModa, LLC filed a Certificate of Amendment of Certificate of Formation of UniModa, LLC with the Secretary of State for the State of Delaware, which changed the name of the limited liability company from UniModa, LLC to Gizmodo Media Group, LLC.

[4] Because GMG has elected to indemnify the writers and independent contractors that are the subject of the pending litigation described herein, GMG seeks to extend the non-funding language in the Release Agreement not only to cover claims asserted against GMG but also to cover claims asserted against the Gawker Entities' current and former writers and independent contractors.

2

relate to, the Debtors, the Acquired Assets, the ownership, sale, or operation of the Acquired Assets and the Debtors' business prior to the closing of the transactions contemplated by the APA, *i.e.*, September 9, 2016 (the "Sale Closing Date"),[5] or (ii) any of the Gawker Entities' current or former employees or independent contractors related to work they performed in connection with or relating to the Acquired Assets prior to the Sale Closing Date.

3.      As currently drafted, the non-funding agreement in Section 3 of the Release Agreement applies only to the Gawker.com Assets, which, as defined in the Bollea Settlement, do not include the Acquired Assets (*i.e.*, those assets sold to GMG under the APA). Should the Release Agreement be approved as filed, the Thiel Parties would have the ability to fund and/or continue funding third-party claims against GMG as well as certain writers and independent contractors relating to the Acquired Assets despite the fact that (i) the Sale Order and the APA expressly bar such claims and (ii) the writers and independent contractors will not have the ability to be indemnified by the Gawker Entities on account of such claims.[6]

4.      GMG and three of Gawker Media's former employees and independent contractors are the targets of pending litigation relating to the publication of articles prior to the Sale Closing Date on websites operated at the time by Gawker Media. While GMG cannot confirm that the

---

[5] For the reasons set forth in *Motion of Gizmodo Media Group, LLC to Enforce the Sale Order and to Bar Certain Plaintiffs from Prosecuting Their State Court Actions* [Docket No. 985] and the *Reply in Support of Motion of Gizmodo Media Group, LLC to Enforce the Sale Order and to Bar Certain Plaintiffs from Prosecuting Their State Court Actions* [Docket No. 1015], such claims are expressly barred by the *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (II) Approving and Authorizing the Debtors' Entry into the Asset Purchase Agreement and (III) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* [Docket No. 214] (the "Sale Order") and the terms of the APA.

[6] As this Court is aware, in exchange for the third-party release set forth in the Plan, the writers and independent contractors: (1) voted in favor of the Plan; and (2) released any indemnification claims they had against the Gawker Entities.

3

Thiel Parties are the source of funding behind these suits, the Thiel Parties have funded claims against the Gawker Entities and their employees and independent contractors.[7]

5. Should third parties seek to pursue litigation arising from content provided to and published by the Debtors, they should do so at their own expense. Allowing the Thiel Parties to fund litigation against GMG and the writers and independent contractors of Gawker Media perpetuates a never-ending cycle of litigation surrounding a company that has ceased operating and that can no longer protect its content providers. Simply put, the Thiel Parties should not be permitted to attack GMG and continue to attack the Gawker Entities' employees and independent contractors by funding third-party claims arising out of or relating to content published by the Debtors.

6. Based on the foregoing, GMG respectfully submits that the Court should only approve the Motion if the Thiel Parties' non-funding agreement is extended to cover claims against GMG and Gawker Entities' employees and independent contractors that relate to the Gawker Entities and/or the Acquired Assets, not just the Gawker.com Assets.

**RELEVANT BACKGROUND**

7. On June 10, 2016, Debtor Gawker Media LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On June 12, 2016, Debtors Gawker Media Group, Inc. and Kinja Kft. each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

8. On August 28, 2016, this Court entered an order approving the sale of the Acquired Assets to GMG. While substantially all of the Debtors' assets were sold, the Gawker.com Assets

---

[7] *See, e.g.,* Ryan Mac, *This Silicon Valley Billionaire Has Been Secretly Funding Hulk Hogan's Lawsuits Against Gawker*, FORBES (May 24, 2016, 07:29 PM), https://www.forbes.com/sites/ryanmac/2016/05/24/this-silicon-valley-billionaire-has-been-secretly-funding-hulk-hogans-lawsuits-against-gawker/#26a7aa568d14; Andrew Ross Sorkin, *Peter Thiel, Tech Billionaire, Reveals Secret War with Gawker*, NYTIMES (May 25, 2016), https://www.nytimes.com/2016/05/26/business/dealbook/peter-thiel-tech-billionaire-reveals-secret-war-with-gawker.html.

4

were not included in the assets sold to GMG. The Plan Administrator is tasked with selling the Gawker.com Assets.

9. On October 11, 2016, the Debtors filed the 2004 Motion to investigate possible claims against the Thiel Parties.

10. On April 25, 2018, the Plan Administrator filed the Motion.

## THE MOTION

11. Through the Motion, the Plan Administrator and the Thiel Parties seek to resolve several disputed matters. In exchange for a release from the Gawker Releasing Persons and the Plan Administrator's termination of the Rule 2004 investigation, the Thiel Parties agreed to a similar release in favor of the Gawker Releasing Persons as well as the following:

   a. The Thiel Parties agree not to fund or pursue any action against: (i) any buyer or licensee of the Gawker.com Assets; or (ii) any of the Debtors or any current or former employee or independent contractor thereof, in their capacity as such, *in connection with any action related to the Gawker.com Assets* taken on or before the date of the Release Agreement; and

   b. The Thiel Parties agree not to participate, cause any third party to participate or otherwise authorize any third party's participation, or provide funding to any third party for the purpose of participating, in any sale process for the Gawker.com Assets.

*See* Motion, ¶ 9.

12. The Plan Administrator believes that the Release Agreement protects the Debtors "from indemnification claims by former employees[.]" *Id*.

## RESPONSE

13. GMG does not oppose a resolution between the Thiel Parties, the Debtors, and the Plan Administrator; however, any resolution should also protect GMG and the Gawker Entities' current and former employees and independent contractors by prohibiting the Thiel Parties from

5

funding litigation arising out of or relating to content published by the Gawker Entities, not just content posted to or on the Gawker.com Assets.

14. To that end, attached hereto as Exhibit A is proposed language that modifies Sections 3 and 3.2 of the Release Agreement.[8] GMG submits that the modified language does not impact the mutual releases provided by the Thiel Releasing Persons and Gawker Releasing Persons. To the contrary, the modified language merely extends the application of Section 3 of the Release Agreement to apply to GMG and the Gawker Entities' current and former employees and independent contractors, the latter being the same subset of individuals the Thiel Releasing Persons are releasing.[9]

15. The proposed amendments to the Release Agreement will also benefit the Debtors. The Debtors have incurred unnecessary expenses as a result of discovery requests relating to the pending lawsuits against GMG and certain of the Gawker Entities' writers and independent contractors. If such lawsuits are being funded by the Thiel Parties, prohibiting the funding of these and other actions would reduce the costs incurred by the Debtors, thereby benefiting the Debtors, their estates, and their stakeholders.

16. Based on the foregoing, GMG submits that the Motion should only be approved subject to the modified language set forth in Exhibit A.

## RESERVATION OF RIGHTS

17. GMG reserves the right to amend or supplement this Response based upon any facts or arguments that come to light prior to the hearing on the Motion.

---

[8] Attached hereto as Exhibit B is a redline showing the proposed changes to Sections 3 and 3.2 of the Release Agreement.

[9] Further, it makes no sense for the Thiel Parties to release the writers and independent contractors from any and all claims (to the extent claims exist), while having the ability to fund litigation of third parties against the very people the Thiel Parties are releasing.

## CONCLUSION

WHEREFORE, GMG respectfully requests that the Court only approve the Motion subject to the changes set forth in Exhibit A attached hereto and grant such other and further relief as is just and proper under the circumstances.

Dated:     New York, New York
           May 10, 2018

Respectfully Submitted,

**LATHAM & WATKINS LLP**

/s/ Peter M. Gilhuly

Peter M. Gilhuly, Esq. (admitted *pro hac vice*)
Adam E. Malatesta, Esq. (admitted *pro hac vice*)
Shawn P. Hansen, Esq. (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email: Peter.Gilhuly@lw.com
Email: Adam.Malatesta@lw.com
Email: Shawn.Hansen@lw.com

**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Thomas G. Hentoff, Esq. (admitted *pro hac vice*)
Email: THentoff@wc.com

*Counsel for Gizmodo Media Group, LLC*