**SAUL EWING ARNSTEIN & LEHR LLP**
Sharon L. Levine (admitted *pro hac vice*)
Dipesh Patel
1270 Avenue of the Americas, Suite 2005
New York, NY 10020
Telephone: (212) 980-7200

**WILLIAMS & CONNOLLY LLP**
Thomas G. Hentoff (admitted *pro hac vice*)
Chelsea T. Kelly
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000

*Attorneys for Ryan Goldberg*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:                                          :
                                                :
    Gawker Media LLC, *et al.,*[1]              :        Chapter 11
                                                :        Case No. 16-11700 (SMB)
                        Debtors.                :
---------------------------------------------------------------x
                                                :
    Ryan Goldberg,                              :
                                                :
                        Movant,                 :
                                                :
        - against -                             :
                                                :
    Pregame LLC, d/b/a Pregame.com, and         :
    Randall James Busack,                       :
                                                :
                        Respondents.            :
---------------------------------------------------------------x

### MOVANT RYAN GOLDBERG'S RESPONSES TO RESPONDENTS' COUNTER-PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

[1]    The last four digits of the taxpayer identification number of the debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Kinja Kft. (5056). Gawker Media LLC and Gawker Media Group, Inc.'s mailing addresses are c/o Opportune LLP, Attn: William D. Holden, Chief Restructuring Officer, 10 East 53rd Street, 33rd Floor, New York, NY 10020. Kinja Kft.'s mailing address is c/o Opportune LLP, Attn: William D. Holden, 10 East 53rd Street, 33rd Floor, New York, NY 10020.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ................................................................................................1

RESPONSES TO RESPONDENTS' COUNTER-PROPOSED FINDINGS OF FACT.............1

    I.     Findings of Fact ..................................................................................1

    II.    Conclusions of Law .........................................................................17

## TABLE OF AUTHORITIES

Page(s)

### Cases

*In re Adelphia*,
    544 F.3d 420 (2d Cir. 2008)...........................................................32

*Analisa Salon, Ltd. v. Elide Properties, LLC*,
    30 A.D.3d 448, 818 N.Y.S.2d 130 (2d Dep't 2006) ...................................18

*Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber
    Network, Inc.)*,
    416 F.3d 136 (2d Cir. 2005).............................................................26

*Eastman Kodak Co. v. STWB Inc.*,
    232 F.Supp.2d 74 (S.D.N.Y. 2002) ....................................................20

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*,
    6 N.Y.3d 371, 845 N.E.2d 1265 (2006)................................................19

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.*,
    889 F.2d 1274 (2d Cir. 1989)...........................................................17

*International Cards Co. v. MasterCard Int'l Inc.*,
    No. 13-cv-2576 (LGS), 2017 WL 1133425 (S.D.N.Y. Mar. 24, 2017)................21

*In re M. Fabrikant & Sons, Inc.*,
    385 B.R. 87 (S.D.N.Y. 2008)...........................................................18

*Nycal Corp. v. Inoco PLC*,
    988 F.Supp. 296 (S.D.N.Y. 1997) ............................................... 17-18

*Reiss v. Financial Performance Corp.*,
    97 N.Y.2d 195, 764 N.E.2d 958 (2001).............................................19

*In re: Residential Capital, LLC*,
    533 B.R. 379 (Bankr. S.D.N.Y. 2015)...............................................19

*Reyes v. Metromedia Software, Inc.*,
    840 F. Supp. 2d 752 (S.D.N.Y. 2012)......................................19, 31, 34

*In re Sabine Oil & Gas Corp.*,
    555 B.R. 180 (Bankr. S.D.N.Y. 2016)................................................27

*In re Smart World Technologies Inc.*,
    423 F.3d 166 (2d Cir. 2005)............................................................32

24545944.5 05/16/2018

*SPCP Grp., LLC v. Eagle Rock Field Servs., LP*,
    No. 12 CIV. 3610 PAC, 2013 WL 359650 (S.D.N.Y. Jan. 30, 2013)....................................20

*Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs.*,
    63 N.Y.2d 396, 472 N.E.2d 315 (1984)...................................................................................19

*United States v. Manning*,
    No. 95-6402, 1997 WL 62973 (2d Cir. Feb. 12, 1997) ...........................................................32

*United States v. Pantelidis*,
    No. CRIM 01-00694, 2004 WL 2188089 (E.D.Pa. Sept. 7, 2004)...................................21, 22

*Valle v. Rosen*,
    138 A.D.3d 1107, 30 N.Y.S.3d 285 (2d Dep't 2016) ........................................................18, 19

*Wells v. Shearson Lehman/American Express, Inc.*,
    72 N.Y.2d 11, 526 N.E.2d 8 (1988)........................................................................................18

24545944.5 05/16/2018

## INTRODUCTION

Movant Ryan Goldberg ("Goldberg") respectfully submits his responses to Pregame LLC, d/b/a Pregame.com and Randall James Busack's (collectively, the "Respondents") *Counter-Proposed Findings of Fact and Conclusions of Law* [D.I. 1118]. Goldberg's responses set forth herein adopt and incorporate his *Proposed Findings of Fact and Conclusions of Law* [D.I. 1108] filed on April 25, 2018 as if set forth in full herein.    Pursuant to this Court's instructions on April 9, 2018, Goldberg was required to submit his proposed findings of fact and conclusions of law by April 25, 2018, with Respondents' <u>answers</u> to Goldberg's proposed findings of fact and conclusions of law due by May 9, 2018 (Tr. at 102:22-23; 103:1-6).  On April 25, 2018, Goldberg filed his *Proposed Findings of Fact and Conclusions of Law* ("Goldberg's Proposed Findings of Fact and Conclusions of Law") [D.I. 1108].  Rather than <u>answering</u> Goldberg's Proposed Findings and Conclusions of Law as instructed by the Court, Respondents' simply submitted *Counter-Proposed Findings of Fact and Conclusions of Law* [D.I. 1118].  Through their submission, Respondents did not dispute any of Goldberg's Proposed Findings of Fact and Conclusions of Law.  Based on the foregoing, Goldberg respectfully requests that this Court adopt Goldberg's proposed findings of fact as they are undisputed. Further, Goldberg objects to Respondents' *Counter-Proposed Findings of Fact and Conclusions of Law* as they are an incomplete recitation of the relevant facts.

## RESPONSES TO RESPONDENTS' COUNTER-PROPOSED FINDINGS OF FACT

### I.    Findings of Fact

1.    On June 10, 2016 (the "Petition Date"), Debtor Gawker Media LLC ("Gawker Media") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.  (D.I. 1089, Joint Pretrial Order, Stipulated Facts at III, ¶ A).

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 1.

2.      On June 12, 2016, the Debtors Gawker Media Group, Inc. and Gawker Hungary Kft. filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  (D.I. 1089, Joint Pretrial Order, Stipulated Facts at III, ¶ A).

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 2.

3.      Goldberg authored an article that was posted on Gawker Media's Deadspin.com website on June 23, 2016 (the "Article")—post-Petition Date.  (D.I. 1089, Joint Pretrial Order, Stipulated Facts at III, ¶ C).

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 3.

4.      On June 24, 2016, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee").   (D.I. 62, Appointment of Official Committee of Unsecured Creditors).

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 4.

5.      The Committee was represented by the law firm of Simpson Thacher & Bartlett LLP.  (D.I. 184, Order Authorizing the Retention and Employment of Simpson Thacher & Bartlett LLP as Counsel to the Official Committee of Unsecured Creditors Pursuant to Sections 328(A), 330 and 1103(A) of the Bankruptcy Code Effective Nunc Pro Tunc to June 24, 2016).

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 5.

6.      On June 27, 2016 (post-Petition Date), Respondents' counsel Charles Harder sent a letter to Gawker Media that demanded the retraction of the Article.  (D.I. 1089, Joint Pretrial Order, Stipulated Facts at III, ¶ D and Goldberg's Stipulated Exhibit at VIII.1.5, Exhibit B to the Motion (as defined herein)).

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 6.

24545944.5 05/16/2018

7.     On August 11, 2016, the Bankruptcy Court entered an Order (I) Establishing a Deadline to File Proofs of Claim, Certain Administrative Claims and Procedures Relating Thereto and (II) Approving the Form and Manner of Notice Thereof [D.I. 168] (the "Claims Bar Date Order"). The Claims Bar Date Order set September 29, 2016 (the "Claims Bar Date") as the deadline to file claims or file requests for payment for claims arising between the Petition Date and July 31, 2016. (D.I. 1089, Joint Pretrial Order, Stipulated Facts, at III, ¶ G).

**Goldberg's Response:** Goldberg does not dispute the statement in paragraph no. 7.

8.     The Claims Bar Date Order, notice of the Claims Bar Date, a Proof of Claim Form and the Administrative Claim Form (as those terms are defined in the Claims Bar Date Order) were served on Respondent Randall James Busack and Respondents' counsel, Charles Harder. (D.I. 1089, Joint Pretrial Order, Stipulated Facts at III, ¶ I).

**Goldberg's Response:** Goldberg does not dispute the statement in paragraph no. 8.

9.     On August 22, 2016 (post-Petition Date), Respondents' counsel Charles Harder sent a letter to counsel for GMG demanding retraction of the Article. (D.I. 1089, Joint Pretrial Order, Stipulated Facts at III, ¶ J).

**Goldberg's Response:** Goldberg does not dispute the statement in paragraph no. 9.

10.     Respondents and their counsel did not file a proof of claim or request for payment prior to the Claims Bar Date. (D.I. 1089, Joint Pretrial Order, Stipulated Facts at III, ¶ K).

**Goldberg's Response:** Goldberg does not dispute the statement in paragraph no. 10.

11.     Goldberg, through counsel, filed three separate proofs of claim against each of the three Debtors for Debtor Indemnification Obligations (as defined in the Plan) (See Claims Register, Claim Numbers 235, 247 and 272).

**Goldberg's Response:** Goldberg does not dispute the statement in paragraph no. 11.

12.     The Debtors' proposed Amended Joint Chapter 11 Plan of Liquidation contained a third-party release and injunction provision, which applies to claims by parties who have either received or have been deemed to receive a distribution.   (D.I. 1089, Joint Pretrial Order, Stipulated Facts at III, ¶ N).

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 12.

13.     The Confirmation Hearing Notice attached at Exhibit 2 to the Disclosure Statement Adequacy Order conspicuously set forth:  (1) the deadline to file any objections to the Debtors' Amended Joint Chapter 11 Plan of Liquidation;  (2) the date and time of the hearing to confirm the Debtors' Amended Joint Chapter 11 Plan of Liquidation;  and (3), in bold and capitalized letters, the Amended Joint Chapter 11 Plan of Liquidation's third-party release and injunction provisions.  (See Disclosure Statement Adequacy Order, Exhibit 2).

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 13.

14.     The Disclosure Statement Adequacy Order, which contained the Debtors' proposed Amended Joint Chapter 11 Plan of Liquidation and Confirmation Hearing Notice, was served on Respondent Randall James Busack and Respondents' counsel, Charles Harder.  (D.I. 1089, Joint Pretrial Order, Stipulated Facts at III, ¶ O).

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 14.

15.     On June 22, 2017, Respondents filed a complaint in New York Supreme Court asserting claims, including the Defamation Claims, based on the Article against Goldberg and GMG, the successful purchaser of the Debtors' assets.   (D.I. 1089, Joint Pretrial Order, Stipulated Facts at III, ¶ S).

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 15.

24545944.5 05/16/2018

16.     On August 21, 2017, Goldberg filed a Motion for Entry of an Order (i) Enforcing the Amended Joint Chapter 11 Plan of Liquidation filed by Gawker Media Group, Inc., Gawker Media LLC and Gawker Hungary Kft. and (ii) Barring and Enjoining Pregame LLC, d/b/a Pregame.com, and Randall James Busack [D.I. 981] in this court (the "Motion").  (D.I. 1089, Joint Pretrial Order, Stipulated Facts at III, ¶ T).

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 16.

17.     Pregame LLC and Randall James Busack have not actually received a distribution under the bankruptcy plan.   (Respondents' Exhibit G; Trial Transcript 45:19-24.)  The applicability of the third party release depends on whether they are deemed to have received distributions.

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 17.

18.     Gregg Galardi, Esq. of Ropes & Gray LLP led the team that drafted the language in the Plans of Reorganization submitted to the Court and was ultimately responsible for that language.  Mr. Galardi has extensive experience drafting bankruptcy plans.  (Trial Transcript 43:2-6.)

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 18.

19.     Goldberg and the other Gawker writers were represented by attorneys Sharon Levine, Esq. and Dipesh Patel, Esq. of Saul Ewing Arnstein & Lehr LLP.  (Trial Transcript 15:8-16:12.)

**Goldberg's Response:  Disputed**.  Goldberg disputes the statement in paragraph no. 19. While Sharon Levine and Dipesh Patel represented a group of the Debtors' writers and content providers, they did not represent all of the Debtors' writers and content providers. The list of writers and content providers represented by Saul Ewing Arnstein & Lehr LLP

is set forth in the *Verified Statement of Saul Ewing LLP Pursuant to Bankruptcy Rule 2019* [D.I. 321].

20.      Mr. Patel, representing the writers, sought to obtain the broadest possible release language barring the widest possible scope of third party claims against the writers. Respondents' Exhibit G.

**Goldberg's Response:   Disputed**.   Respondents' Exhibit G does not support the statement set forth in paragraph no. 20.  In an email to Galardi,[2] Mr. Patel asked what does "deemed to have received" mean. (D.I. 1089, Joint Pretrial Order, Respondent's Stipulated Exhibit at VIII.II.G, E-mail string from Galardi to Patel, Bates Numbered ROPES 178-179).  In response, Galardi specifically stated "I cannot say that the third parties received a distribution if not proof of claim."  (D.I. 1089, Joint Pretrial Order, Respondent's Stipulated Exhibit, at VIII.II.G, E-mail string from Galardi to Patel, Bates Numbered ROPES 179).  In other words, creditors who did <u>not</u> file a claim in the Debtors' bankruptcy cases did not "receive" a distribution.

21.      Mr. Galardi was required, in drafting the language of the third party release provisions in the Plan, to balance the desires of Mr. Patel and his clients for a broad release against the necessity that the Plan be confirmed.  (Trial Transcript 18:4-7 ("It's always difficult as a bankruptcy lawyer to balance the writing of a third-party release as broad as possible with making sure you get the plan confirmed, and that was always the issue[].") This included concerns that the Committee or the Office of the United States Trustee could object to a broader release and delay confirmation.  (Trial Transcript 36:24-37:1 ("I think the issue came down to if

---

[2]      Capitalized terms not otherwise defined herein shall have the same meaning as ascribed to them in Goldberg's Proposed Findings of Fact and Conclusions of Law.

I used the language in that section and not obtained the third-party release I would have had a resolicitation issue."), 47:20-48:1.)

> **Goldberg's Response: Disputed**. No evidence was presented that Galardi was required to balance the desires of the Content Providers. During the course of trial, Galardi testified that the Debtors were motivated by certain tax consequences "to make distributions under a plan prior to December 31st, 2016." (Tr. at 14:18-22). As a result, the Debtors "moved as fast as possible to confirm" a plan and make distributions under the Plan prior to December 31, 2016. (Tr. at 14:22-23). Galardi testified that it was important to resolve disputes that would have led to objections to confirmation of the Plan. (Tr. at 15:3-7).

22.    Mr. Galardi also took into account the applicable legal standard which disfavors third party releases in bankruptcy plans. (Trial Transcript 48:2-6.)

> **Goldberg's Response: Disputed**. The trial testimony cited by Respondents in paragraph no. 22 does not support their proposed finding of fact. When asked "why do third-party releases garner so much attention", Galardi answered "[b]ecause generally speaking under the Bankruptcy Code the only entity that should be released is the debtor entity." (Tr. at 48:2-6). Nowhere in the cited section did Galardi mention any legal standard. Regardless the legal standard is irrelevant to the issue before this Court as this Court has already approved the Plan's third-party release.

23.    Mr. Galardi also sought to confirm the Plan during the calendar year 2016 due to tax considerations. (Trial Transcript 14:6-15:1.)

> **Goldberg's Response:** Goldberg does not dispute the statement in paragraph no. 23.

24545944.5 05/16/2018

24.     Mr. Galardi chose not to include language that would unambiguously release third party claims by those who had not filed proofs of claim, instead using the ambiguous phrase "deemed to have received a distribution".  Trial Transcript 37:11-12 ("I mean the language admittedly could have been more direct...".)

**Goldberg's Response:  Disputed.**   On  multiple occasions, in open court, Galardi clearly stated that the third-party release applies to claim holders who did not file a proof of claim.  (D.I. 447, Transcript of Disclosure Statement Hearing, Tr. at 25:8-9; D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit, at VIII.I.2, 82:16-25; 83:1-8).  Galardi further testified at trial that the Debtors were aware that writers and content providers were concerned about later needing to defend themselves against claims of creditors that did not file proofs of claim or that did not  receive a distribution under the Plan and the "deemed to received language" was intended to address this concern.  (Tr. at 27:13-17; 27:18-21).   There is no evidence in the record that contradicts Galardi's statements  during  the  Disclosure  Statement  Hearing  and  Confirmation  Hearing,  or Galardi's testimony from April 9, 2018.

25.     Mr. Patel inquired specifically as to the meaning of "deemed to have received a distribution", confirming that the phrase was ambiguous.  Specifically, Mr. Patel asked "[w]hat does 'deemed to have received distribution(s)' mean?" (Respondents' Exhibit G.).

**Goldberg's Response:  Disputed.**  There is nothing in the record that suggests asking a question is evidence that language is ambiguous.  Galardi's response to the question comports with the language in the Plan as Galardi stated that "I cannot say that the third parties received a distribution if not proof of claim." (D.I. 1089, Joint Pretrial Order,

Respondent's Stipulated Exhibit, at VIII.II.G, E-mail string from Galardi to Patel, Bates Numbered ROPES 179).

26.     Mr. Galardi explained to Mr.  Patel that the language was a compromise that might not cover all potential claims against the writers, but was the best that Mr. Galardi could do to meet Mr. Patel's concerns and still get the Plan approved by the Court.  (Trial Transcript 48:7-23, 49:20-50:9 ("I pushed it as far as I thought I could do with getting the plan confirmed.").)

**Goldberg's Response:  Disputed**.  Galardi's testimony clearly states that  the third-party release was not intended to bind "everyone" due to the lack of consideration.  (Tr. at 48:14-15).  Goldberg does not dispute that the Plan's third-party release does not bind everyone; however, the Plan's third-party release does bind and apply to "EACH HOLDER OF A CLAIM."  (D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit at VIII.I.1, p. 81).  Galardi further testified that the third-party release was intended to capture something broader than people who prosecuted their claims. (Tr. at 39:3-5).  Unlike the injunction provision set forth in section 9.02 of the Plan which was intended to apply to all parties whether or not they held a claim, the Plan's third-party release provision applies to holders of claims.  (D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit at VIII.I.1, pp. 79, 81).   Respondents' were holders of claims in the Debtors' bankruptcy cases and therefore, the third-party release applies to the Respondents.  (D.I. 1089, Joint Pretrial Order, Stipulated Facts at III, ¶ D and Goldberg's Stipulated Exhibit at VIII.I.5).

27.     Mr. Galardi told Mr. Patel that if Mr. Galardi included language that barred all third party claims, that could result in the Plan being rejected because the release lacked adequate consideration.  (Respondents' Exhibit I.).

**Goldberg's Response:  Disputed**.  The evidence reflects that the Debtors' concern was with a release that would bind everyone (i.e. non-claim holders).  The Plan's third-party release and Galardi's statements made in open court, in the presence of the counsel for the Content Providers and Committee counsel, clearly demonstrate that the third-party release provision was intended to apply to claim holders whether or not they filed a proof of claim.  (D.I. 447, Transcript of Disclosure Statement Hearing, Tr. at 25:8-9; D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit, at VIII.I.2, 82:16-25; 83:1-8).

28.     Less than 8 minutes later, on November 2, 2016 at 10:14:09 p.m., Galardi sent an email to Committee counsel stating that the third-party release will apply to "not only people who receive distributions under plan but also from those that do not.  I understand fully the likelihood that they will not be approved, but anything short of the full third party release will be a problem[,]" making clear that the third-party release would apply to claim holders that do not receive a distribution under the Plan.  (Movant's Exhibit 3.).

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 28.

29.     However, Galardi's statement to the Committee did not accord with Galardi's actions, as he had not changed the language and broadened the third party release provision and instead had kept the "deemed to have received a distribution" language that he both knew to be ambiguous and had just admitted to Mr. Patel was a compromise that did not release all third party claims.  (Movant's Exhibit 1 § 9.05;  Respondents' Exhibit I.)

24545944.5 05/16/2018

**Goldberg's Response:  Disputed**.  Contrary to Respondents' position, Galardi's actions (i.e. words) clearly demonstrate that the Plan's third-party release provision applies to all holders of claims, whether or not the claim holder filed a proof of claim in the Debtors' bankruptcy cases.  (D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit, at VIII.I.2, 82:16-25; 83:1-8; D.I. 447, Transcript of Disclosure Statement Hearing, Tr. at 25:6-7; Tr. at 42:8-20)).  At the Disclosure Statement Hearing,[3] this Court asked Galardi "[w]hat happens to those claims if they're not filed or liquidated by the time of confirmation[.]" (D.I. 447, Transcript of Disclosure Statement Hearing, Tr. at 25:6-7).  In response to the Court's inquiry, Galardi repeated to the Court what he had previously stated to the Committee the previous evening: addressing such claims was "[e]xactly why we have put in the plan a third-party release." (D.I. 447, Transcript of Disclosure Statement Hearing, Tr. at 25:8-9).  Counsel for the Content Providers and Committee counsel were present at the Disclosure Statement Hearing and neither party objected or in any way responded negatively to Galardi's statements regarding the broad scope of the third-party release.  (D.I. 447, Transcript of Disclosure Statement Hearing, p. 3).

30.    Similarly, on November 3, 2016, Mr. Galardi put certain statements on the record in open Court regarding the purposed scope of the third party release provision.  However, like Galardi's statements to the Committee on November 2, 2016, Mr. Galardi's statements to the Court were made with full knowledge that Mr. Galardi had in fact made a deliberate choice not to include language in the third party release that would bar all claims against third parties, even by those who did not file proofs of claim.  (Movant's Exhibit 1 § 9.05;  Respondents' Exhibit I.)

---

[3]    The Disclosure Statement Hearing took place <u>one</u> day after the November 2, 2016 email communications between Galardi, counsel for the Content Providers and Committee counsel.

Mr. Galardi's statements to the Court thus carry little value in the interpretation of Section 9.05 of the Plan.

> **Goldberg's Response:  Disputed**.  While Respondents seek to minimize the value of statements made in open court by Galardi, the fact is the statements made by Galardi during the Disclosure Statement Hearing, and again at the Confirmation Hearing, directly address the issue before this Court.  When specifically asked by this Court whether the third-party release applied to claim holders who did <u>not</u> file proofs of claim, Galardi unequivocally responded <u>yes</u>.  (D.I. 447, Transcript of Disclosure Statement Hearing, Tr. at 25:8-9; D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit, at VIII.I.2, 82:16-25; 83:1-8).  Additionally, the evidence presented at trial reflects that Galardi spoke to the following parties about the third-party release: the Office of the United States Trustee; counsel to the Content Providers; and Committee counsel.  Each of the aforementioned parties were present at the Disclosure Statement Hearing and at the Confirmation Hearing and no party objected or responded negatively to Galardi's statements that the third-party release applied to all holders of claims, whether or not the claim holder filed a proof of claim in the Debtors' bankruptcy cases.  (D.I. 447, Transcript of Disclosure Statement Hearing, pp. 3-4; D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit, at VIII.I.2, pp. 4 and 6-7).  No evidence was presented that demonstrates Galardi negotiated with any other parties or that his statements during the Disclosure Statement Hearing and Confirmation Hearing were contrary to their or any other parties' understanding of the Plan's third-party release.

31.    Mr. Galardi gave no consideration as to whether potential claimants would understand what "deemed to have received a distribution" meant.  (Trial Transcript 41:25-42:3.)

**Goldberg's Response:  Disputed**.  At trial, Galardi testified that he did not "recall thinking about" whether potential claimants would understand what "deemed to have received" meant.  (Tr. at 41:25; 42:1-4).  Further, Respondents are not claimants who were strangers to the bankruptcy proceedings in which Galardi's on-the-record statements were made.  Respondents' counsel, Charles Harder, represented each Committee Member in his or her individual capacity during the Debtors' bankruptcy proceedings.  (Tr. at 20:23-35, 21:1-3).  Harder actively negotiated resolutions on behalf of other creditors involved in the Debtors' bankruptcy proceedings, received notice of the Claims Bar Date, the Plan, the Confirmation Hearing Notice, and Disclosure Statement Adequacy Order.  Notwithstanding service of <u>all</u> relevant documents, Respondents and Respondents' counsel Harder chose to sit on their rights, to not file a proof of claim in the Debtors' bankruptcy cases and to commence litigation against Goldberg after the Debtors ceased operating and after his indemnification rights were extinguished.  This maneuvering was the exact concern expressed by the Content Providers to the Debtors (Tr. at 27:13-17) and the "deemed to have received" language set forth in section 9.05 of the Plan was designed to protect the Content Providers from these very claims.  (Tr. at 27:18-21).

32.    Mr. Galardi could not identify who or what was deeming Mr. Busak or Pregame to have received a distribution.  (Trial Transcript 51:22-55:5.)

**Goldberg's Response:  Disputed in Part**.  Goldberg does not dispute the statement in paragraph no. 32 that there is no specific provision that addresses the Respondents in the Plan; however, Galardi testified that section 9.05 of the Plan is the provision that explicitly states that the third-party release applies to each holder of a claim, not just holders of allowed or filed claims.  (Tr. at 53:16-23).

33.    The Chief Restructuring Officer, William Holden, confirmed in his testimony that his goal was to obtain the broadest possible third party release consistent with obtaining approval of the Plan.  (Trial Transcript 72:22-25.)

**Goldberg's Response:   Disputed**.   Respondents mischaracterize William Holden's testimony.   Mr. Holden stated on the record that it was his intent "to get the broadest release possible."  (Tr. at 72:22-25).

34.    Neither Goldberg nor any of the other writers appeared at the Plan confirmation hearing to object to the language "deemed to have received distributions," nor did any of them vote against the Plan.  (D.I. 563, pp. 3 and 9, Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Debtors' Amended Joint Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft).

**Goldberg's Response: Disputed in Part**.   Goldberg, personally and through counsel, attended the Confirmation Hearing.  (Goldberg's Stipulated Exhibit at VIII.I.2, pp. 4-6).[4] Additionally, there was no reason for Goldberg or his counsel to object to Galardi's statements as Galardi provided a clear statement, through the Trump Example, of the type of claim barred by the third-party release.   Goldberg does not dispute the remaining statement in paragraph no. 34.

35.    On December 5, 2016, the Gawker writers filed a statement in support of the Plan and third-party release and injunction provisions.   (D.I. 546, Certain Writers' Response in Support of Confirmation of the Amended Chapter 11 Plan, or in the Alternative, Limited Objection and Reservation of Rights).

---

[4]    If necessary, Goldberg will move to reopen the record to submit a declaration stating that he, as well as other Content Providers, attended the Confirmation Hearing.

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 35.

36.    Mr. Patel and Mr. Galardi harbored a backup plan where the injunction in the Plan would be broader than the release, thereby making the Court a "gatekeeper" with respect to third party claims.  (Trial Transcript 18:11-17.) However, the Court ordered that the injunction be narrowed to be congruent with the scope of the third party release.  (Respondents' Exhibit 1 Section 9.02 (referring specifically to Section 9.05 to delimit scope of injunction).)

**Goldberg's Response:  Disputed**.  Contrary to Respondents' statement in paragraph no. 36, no evidence was presented that Mr. Patel or Mr. Galardi "harbored a backup plan." The Debtors, as the Plan proponent, submitted the Plan that provided an injunction that applied to all parties, whether or not said party had a claim against the Debtors.  (D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit at VIII.I.1, pp. 79).  While not an issue before the Court in connection with the hearing held on April 9, 2018, at the Confirmation Hearing the Court, in addressing the gross negligence and willful misconduct carve-outs of the third-party release, expressed a suggestion that the injunction "in favor of the third parties should just say to the extent the claims are released."  (D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit, at VIII.I.2, 88:8-10).  If a claim was not released by the third-party release, the Bankruptcy Court may provide relief from the injunction.  (D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit at VIII.I.1, pp. 79).  Contrary to Respondents' counsel's statements that the cake was "baked" at the time of the Confirmation Hearing (Tr. at 90:18-19; 91:20), the dialogue between the Court and Debtors' counsel regarding the injunction provision demonstrates that the Plan itself was still very much subject to change even at the Confirmation Hearing.  Respondents and Respondents' counsel received notice of all

relevant pleadings and had the ability to object to the Plan.  Notwithstanding service of <u>all</u> relevant documents, Respondents and Respondents' counsel chose to sit on their rights.

37.    The language "deemed to have received a distribution" in Section 9.05 of the Plan tracks similar language in Section 3.05, which provides that when deposits are made to reserve accounts created pursuant to the Plan to cover later payments of claims, they are "deemed a distribution" to the beneficiaries.  (Respondents' Exhibit A § 3.05.)

**Goldberg's Response:  Disputed**.  While the language may use similar words, the application, purpose and intended target of each provision are materially different. Sections 3.05 and 9.05 of the Plan were not intended to work "in tandem."  (Tr. at 58:6-18).  Section 3.05 of the Plan applies only to beneficiaries (i.e. creditors with allowed claims) (D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit at VIII.I.1 – Exhibit A) while section 9.05 of the Plan applies to all claim holders whether or not the claim holder filed a proof of claim.  (Tr. at 38:22-23; 54:14-18). Section 3.05 of the Plan explicitly applies to "beneficiaries" of a "Plan Reserve Account" and establishes the date of distribution for tax purposes to said beneficiaries (Tr. at 58:19-20); whereas, section 9.05, on the other hand, applies to "each holder of a claim or equity interest" that "received or is deemed to have received distribution(s)" for the legal purpose of determining the scope of the Plan's third-party release provision.  (D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit at VIII.I.1, p. 81).

38.    Mr. Galardi offered no explanation on the witness stand for why he would have used nearly identical language in Sections 3.05 and 9.05 to mean completely different things.  He admitted that it was good practice to determine whether the language was already in another section of the Plan before using it in Section 9.05 and that he was ultimately responsible for

determining whether language similar to "deemed to have received a distribution" was used elsewhere in the Plan.  (Trial Transcript 59:23-60:12.).

> **Goldberg's Response:  Disputed**.  The relevant language in section 3.05 is "deemed a Distribution" whereas the relevant language of section 9.05 is "DEEMED TO HAVE RECEIVED DISTRIBUTION(S)."  No evidence was presented that section 3.05 and 9.05 of the Plan are interconnected.  To the contrary, Galardi, the attorney responsible for drafting the Plan, testified that section 3.05 and section 9.05 were not intended to work in tandem, (Tr. at 58:18-20; Tr. at 59:19-20).

39.    Mr. Holden testified that to be "deemed to receive" something is a concept in accounting, which refers to when funds are set aside for later distribution.  This is consistent with the function of Section 3.05 and inconsistent with Mr. Goldberg's interpretation of Section 9.05. (Trial Transcript 76:8-17.)

> **Goldberg's Response:  Disputed**.  Mr. Holden's testimony is irrelevant as Mr. Holden was discussing the use of the term "deem a dividend" in the context of accounting, which is not the issue before this court.   Additionally, the testimony provided by Mr. Holden on this issue addressed a dividend in an unknown context, not a distribution in a bankruptcy case.  (Tr. at 76:8-17).

## II.    Conclusions of Law

40.    The fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties.  *Hunt Ltd. v. Lifschultz Fast Freight, Inc*., 889 F.2d 1274, 1277 (2d Cir. 1989).

> **Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 40.

41.    However, "when resolving disputes concerning the meaning of ambiguous contract language, unexpressed subjective views have no proper bearing".  *Nycal Corp. v. Inoco*

17

*PLC*, 988 F.Supp. 296, 302 (S.D.N.Y. 1997);  *accord Wells v. Shearson Lehman/American Express, Inc.*, 72 N.Y.2d 11, 24, 526 N.E.2d 8, 15 (1988) (stating that uncommunicated subjective intent is irrelevant).

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 41.

42.    In the event that "the parties' intent is not plain from the language they used, a court may look to the objective manifestations of intent gathered from the parties' words and deeds." *See In re M. Fabrikant & Sons, Inc.*, 385 B.R. 87, 95 (S.D.N.Y. 2008).

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 42.

43.    "A contract must be read as a whole in order to determine its purpose and intent, and ...  single clauses cannot be construed by taking them out of their context and giving them an interpretation apart from the contract of which they are a part." *Analisa Salon, Ltd. v. Elide Properties, LLC*, 30 A.D.3d 448, 448-49; 818 N.Y.S.2d 130, 131 (2d Dep't 2006).  Where a contract uses similar language in different clauses, they should be construed to harmonize with each other. *Valle v. Rosen*, 138 A.D.3d 1107, 1109, 30 N.Y.S.3d 285, 287 (2d Dep't 2016) ("Construing the agreement as a whole, it is clear that the references to the plaintiffs 'retirement' and 'resignation' referred to the same event, which occurred on June 30, 2011.").

**Goldberg's Response:**  While Goldberg does not dispute that contracts should be read as a whole and attempts should be made to harmonize provisions of a contract, numerous cases, including the cases cited by Respondents, explicitly state that courts should construe language that does <u>not</u> render a provision meaningless. *Analisa Salon, Ltd. v. Elide Properties, LLC*, 30 A.D.3d 448, 449 (2006) ("[i]n interpreting the provisions of a [contract], the court . . . should not construe the language in a manner that would render one or more of its provisions meaningless[.]") (internal citations omitted); *Valle v. Rosen*,

138 A.D.3d 1107, 1109 (N.Y. App. Div. 2016) ([C]ourts "should rule 'against any construction which would render a contractual provision meaningless or without force or effect[.]'") (internal citations omitted); *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 6 N.Y.3d 371, 374, 845 N.E.2d 1265, 1267 (2006) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 63, 115 S.Ct. 1212, 131 L. Ed.2d 76 (1995)); *Reyes v. Metromedia Software, Inc.*, 840 F. Supp. 2d 752, 756 (S.D.N.Y. 2012) (stating that it is a "cardinal rule that a contract should not be read to render any provision superfluous."); *Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs.*, 63 N.Y.2d 396, 402, 472 N.E.2d 315 (1984) ("[O]ne of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless."); *In re: Residential Capital, LLC*, 533 B.R. 379, 399 (Bankr. S.D.N.Y. 2015).  The Respondents' interpretation would render "deemed to have received a distribution" meaningless.

44.    "[T]his Court will not imply a term where the circumstances surrounding the formation of the contract indicate that the parties, when the contract was made, must have foreseen the contingency at issue and the agreement can be enforced according to its terms." *Reiss v. Financial Performance Corp*., 97 N.Y.2d 195, 199, 764 N.E.2d 958, 961 (2001).

**Goldberg's Response:**  The *Reiss* opinion is not applicable to the case at hand.  In *Reiss*, the dispute surrounded a stock-purchase agreement that did <u>not</u> include an essential term to a contract.  *Reiss v. Fin. Performance Corp.*, 97 N.Y.2d 195, 198, 764 N.E.2d 958 (2001) ("[T]the Appellate Division held that an essential term of the contract was missing . . . .").  The *Reiss* court further stated that the lack of an essential term did not create an ambiguity in the contract.  *Id*. at 199.  The issue before this Court, is the meaning of "deemed to have received distribution(s)" which this Court already found to be

ambiguous.  (D.I. 1089, Joint Pretrial Order, Respondents' Stipulated Exhibit at VII.A,

66:6-12, Reporter's Transcript of Proceedings, September 27, 2017).

45.    "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all

the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no

effect . . . ." *Eastman Kodak Co. v. STWB Inc.*, 232 F.Supp.2d 74, 91 (S.D.N.Y. 2002) (quoting

*Restatement (Second) of Contracts* § 203(a) (1986)).

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 45 but

further states that in addition to rendering any contract provision meaningless or

superfluous, courts "must avoid interpreting a contract in a manner that would be 'absurd,

commercially unreasonable, or contrary to the reasonable expectations of the parties.'"

*SPCP Grp., LLC v. Eagle Rock Field Servs., LP*, No. 12 CIV. 3610 PAC, 2013 WL

359650, at *6 (S.D.N.Y. Jan. 30, 2013) (citing *Landmark Ventures, Inc. v. Wave Sys.

Corp.*, No. 11 CIV. 8440 PAC, 2012 WL 3822624, at *3 (S.D.N.Y. Sept. 4, 2012), *aff'd*,

513 F. App'x 109 (2d Cir. 2013)).  Limiting the third-party release to holders of claims

that filed a claim would lead to an absurd and commercially unreasonable result as that

would mean Goldberg provided "good and valuable consideration" (D.I. 1089, Joint

Pretrial Order, Goldberg's Stipulated Exhibit at VIII.I.1, ¶ 24, the Confirmation Order) for a

release that did not protect him from the very concern raised with the Debtors.  (Tr. at 27:13-

17, Galardi testified that the Debtors were aware that writers and content providers were

concerned about the claims of creditors that did not file proofs of claim or might not be

receiving a distribution under the Plan.).

46.    Goldberg argues that the statements of Galardi at oral argument can be used to

interpret the Plan.  However, a person's unilateral "opinion about the meaning of a contract" is

not admissible evidence as to its interpretation. *International Cards Co. v. MasterCard Int'l Inc.*, No. 13-cv-2576 (LGS), 2017 WL 1133425, at *3 (S.D.N.Y. Mar. 24, 2017).

**Goldberg's Response: Disputed**. Respondents selectivity cited to language from the *International Cards Co.* case to shoehorn a phrase that supports their position. The full sentence of the cited portion from *International Cards Co.* demonstrates that said case is not applicable to the matter before this Court. *See Int'l Cards Co., Ltd. v. MasterCard Int'l Inc.*, No. 13 CIV. 2576 (LGS), 2017 WL 1133425, at *3 (S.D.N.Y. Mar. 24, 2017) ("Evidence about MasterCard's subjective motivation in terminating the contract, and a witness's opinion about the meaning of a contract, are not relevant to the legal interpretation of an <u>unambiguous</u> contract."). *International Cards Co.* specifically dealt with an unambiguous contract provision. This Court already determined the "deemed to have received" language in section 9.05 of the Plan is ambiguous. (D.I. 1089, Joint Pretrial Order, Respondents' Stipulated Exhibit at VII.A, 66:6-12, Reporter's Transcript of Proceedings, September 27, 2017). To no surprise, Respondents seek to minimize Galardi's statements from the Disclosure Statement Hearing and Confirmation Hearing as nothing more than Galardi's opinion on the third-party release. To the contrary, Galardi's statements at the Disclosure Statement Hearing and Confirmation Hearing are evidence of the scope of the third-party release. On two occasions this Court asked the Debtors whether the third-party release applied to claim holders who did not file a proof of claim—the very issue before the Court at this time—and on both occasions, Galardi answered affirmatively.

47.    *United States v. Pantelidis*, No. CRIM 01-00694, 2004 WL 2188089, at *2 (E.D.Pa. Sept. 7, 2004), cited by Goldberg, is distinguishable. As the Court in Pantelidis noted:

"The only evidence presented by the parties at the hearing held this date consisted of affidavits of counsel and statements made in the course of oral argument. There is no dispute about the accuracy of the affidavits, nor as to the credibility of statements made at oral argument." *Id*. Neither of those facts are true here. First, there is other, more reliable evidence that shows that Section 9.05 does not preclude the suit by Respondents including the similar language in Section 3.05 of the Plan and the e-mails in which Mr. Galardi and Mr. Patel acknowledged that Section 9.05 did not unambiguously release all third party claims. Second, Mr. Galardi's statements at oral argument are disputed, because they conflict with what he had told Mr. Patel immediately beforehand (i.e., that Mr. Galardi made a deliberate choice not to include a blanket third party release).

**Goldberg's Response:  Disputed**.  Despite Respondents' effort to manufacture an inconsistency, there is simply no evidence that contradicts Galardi's testimony and Galardi's on the record statements at the Confirmation Hearing and the Disclosure Statement Hearing. Respondents' argument that Debtors' counsel's statements at public hearings about the effect of section 9.05 should be considered irrelevant is in essence an argument that the Court's questions themselves were irrelevant, since in each case Debtors' counsel was squarely answering a question about the Plan posed to him by the Court. The public statements Respondents seek to minimize address the very issue that is currently before the Court, whether the third-party release applies to holders of claims that did not file a claim.

As the Court itself noted, when Galardi was asked in an November 2, 2016 email, what does "deemed to have received" mean, Galardi did not answer that question. (Tr. at 84:11-12). In response, Galardi instead stated "I cannot say that the third parties received

a distribution if not proof of claim." (D.I. 1089, Joint Pretrial Order, Respondent's Stipulated Exhibit, at VIII.II.G, E-mail string from Galardi to Patel, Bates Numbered ROPES 179).   Within minutes of responding to Mr. Patel's question, Galardi sent an email to Committee counsel stating that the third-party release will apply to "not only people who receive distributions under plan but also from those that do not.  I understand fully the likelihood that they will not be approved, but anything short of the full third party release will be a problem[,]." Galardi makes clear that the third-party release <u>would apply</u> to claim holders that do not receive a distribution under the Plan.  (D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit at VIII.I.3, November 2, 2016 Email from Debtors' counsel to the Official Committee of Unsecured Creditors, Document Production – ROPES-GWK-00003224).

In addition to the November 2, 2016 email communications, Galardi, in response to questions from this Court and in front of Committee counsel, counsel to the Content Providers and the Office of United States Trustee, explicitly stated on the record that the third-party release applied to claim holders who did <u>not</u> file a proof of claim.  (D.I. 447, Transcript of Disclosure Statement Hearing, Tr. at 25:8-9; D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit, at VIII.I.2, 82:16-25; 83:1-8).   The broad scope of the third-party release is further supported by Galardi's testimony on April 9, 2018, which is similarly consistent with his prior testimony.  Galardi testified that the language set forth in section 9.05 of the Plan was "absolutely" intended to apply to parties that did not file a claim in the Debtors' bankruptcy cases.  (Tr. at 42:8-20).  Galardi further testified that the "deemed to have received" language set forth in section 9.05 of the Plan was intended to extend the third-party release to claim holders that did not file a claim.  (Tr. at 27:13-21).

There simply is no evidence that contradicts Galardi's April 9, 2018 testimony or statements made by Galardi during the Disclosure Statement Hearing and Confirmation Hearing.

48.    Based on these principles of contractual interpretation, the third party release in Section 9.05 of the Plan does not bar Pregame's and Mr. Busak's claims against Mr. Goldberg.

**Goldberg's Response:  Disputed**.  Based on the principles of contract interpretation and courts' unwillingness to render any contractual provision meaningless, section 9.05 of the Plan bars Respondents from prosecuting their New York state court claims against Goldberg as section 9.05's third-party release applies to claim holders whether or not the claim holder filed a proof of claim.

49.    The language of the Plan itself ("deemed to have received a distribution") has already been found by this Court to be ambiguous.  The Court therefore received extrinsic evidence on the meaning of the Plan.

**Goldberg's Response:  Disputed in Part.**  The Court already found Plan section 9.05's "deemed to have received distribution(s)" language to be ambiguous.  (D.I. 1089, Joint Pretrial Order, Respondents' Stipulated Exhibit at VII.A, 66:6-12, Reporter's Transcript of Proceedings, September 27, 2017).

50.    While the Court found the language "deemed to have received a distribution" ambiguous, the language itself does not suggest that it would apply to claims by third parties who had not filed a proof of claim.  There was no evidence presented of any legal or contractual mechanism that deems a person who does not file a proof of claim to have received a distribution.  Mr. Galardi was not able to identify any provision of the Plan that deems Mr. Busak or Pregame to have received a distribution.  The language of the Plan also does nothing to

put potential claimants who have not received distributions on notice that their claims against third parties would be barred.

**Goldberg's Response: Disputed**.  Galardi's email dated November 2, 2016 to Mr. Patel serves as evidence that only those claim holders that <u>filed</u> a proof of claim "received" distributions in connection with section 9.05 of the Plan.

51.    The extrinsic evidence admitted included testimony and statements in oral argument by Mr. Galardi regarding what he subjectively intended as the drafter of Section 9.05. This evidence is entitled to little weight.  Mr. Galardi's subjective understandings and legal arguments as to what Section 9.05 means do not assist this Court in interpreting the language.

**Goldberg's Response:  Disputed**.  Galardi's statements are anything but subjective. When asked by this Court on multiple occasions of the impact of the third-party release on claims that were not filed, Galardi clearly stated that the third-party release applied to claim holders whether or not the claim holder filed a claim.  Galardi testified that the Debtors were aware that writers and content providers were concerned about the claims of creditors that did not file proofs of claim or might not be receiving a distribution under the Plan and the inclusion of the "deemed to received language" was intended to address this concern.  (Tr. at Tr. at 27:13-17; 27:18-21).  Additionally, Galardi's statements were made in open court, in response to this Court's questions, and before counsel to the Content Providers and Committee counsel—the same attorneys Galardi communicated with on November 2, 2016 regarding the third-party release.  Neither counsel for the Content Providers nor Committee counsel objected or responded negatively to Galardi's statements.  This supports the fact that the scope of the release falls in-line with the

parties' understanding that the third-party release was to apply to holders of claims whether or not they filed a proof of claim in these bankruptcy cases.

52.     The evidence showed that the language of Section 9.05 resulted from a conscious decision by Mr. Galardi and Mr. Holden to temper the language of the third party release in order to ensure approval of the Plan.

**Goldberg's Response:  Disputed**.  The evidence presented at trial clearly reflects that the third-party release applies to <u>all</u> <u>claim</u> <u>holders</u> whether or not a proof of claim was filed.  The evidence that was presented demonstrates the third-party release was not intended to apply to non-claim holders.

53.     Mr. Goldberg's lawyers, as well, were well aware of the fact that Section 9.05 did not contain an explicit release of all claims against third parties interposed by persons or entities who had not filed proofs of claims, and chose to cause Mr. Goldberg to vote for the Plan understanding that this ambiguity existed.

**Goldberg's Response:  Disputed**.  There is no evidence in the record that demonstrates that Goldberg's counsel was aware of any ambiguity.   The evidence presented at trial and statements made at the Disclosure Statement Hearing and Confirmation Hearing clearly reflect that the third-party release applies to <u>all</u> <u>claim</u> <u>holders</u> whether or not a proof of claim was filed.

54.     The evidence further showed that Mr. Galardi was concerned that a broader third party release might not be legally permissible.  Third party releases are disfavored.  *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.*), 416 F.3d 136, 141 (2d Cir. 2005) ("it is clear that such a release is proper only in rare cases").  Further, Mr. Galardi specifically stated that there were potential issues with such a release being

invalidated for lack of consideration.

**Goldberg's Response:  Irrelevant**.  The Second Circuit's standard for approval of third-party releases is not relevant to the matter before the Court.  This Court already addressed the permissibility of and approved the third-party release in these cases.  Further, in determining whether consideration is a factor in approving a third-party release, the analysis turns to whether the Debtors received consideration, not holders of the released claims.  *See In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 292 (Bankr. S.D.N.Y. 2016) ("[T]he substantial contribution inquiry does not turn on whether the holders of the released claims receive consideration; it turns on whether the Debtors' estates have received consideration.").  This Court has already found and determined that Goldberg provided "good and valuable consideration in exchange for the third-party release" by voting in favor of the Plan and waiving his Debtor Indemnification Obligation claim (D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit at VIII.I.1, ¶ 24, the Confirmation Order).

55.    The evidence also showed that Mr. Galardi was concerned about drawing an objection from the Office of the United States Trustee, thus slowing the process and possibly delaying approval of the Plan.

**Goldberg's Response:  Disputed in Part**.  Concerned about certain tax consequences, Galardi attempted to address issues to increase the likelihood of plan confirmation prior to year-end.  (Tr. at 14:18-23; 15:3-7).

56.    The most plausible interpretation of the language of Section 9.05 is that it should be harmonized with the nearly identical language of Section 3.05 of the Plan, which provides that the beneficiaries of payments made to Plan reserve accounts are deemed to receive a

distribution.   As they are slated to receive such payments in the future, it is reasonable to conclude that their claims against third parties are released.

**Goldberg's Response:   Disputed**.   Attempting to harmonize section 9.05 of the Plan with section 3.05 would not only render the third-party release in section 9.05 meaningless, but would also lead to an absurd and illogical result—both results being contrary to New York law.   Section 3.05 applies only to beneficiaries of certain Plan Reserve Accounts.   (D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit at VIII.I.1, p. 67).   The beneficiaries of these accounts are holders of <u>allowed</u> claims (i.e. creditors that filed claims).   (D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit at VIII.I.1 – Exhibit A).   Under the Plan, holders of allowed claims are set to receive a 100% distribution on account of their claims.   (D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit at VIII.I.2, 87:24).   For purposes of section 9.05 of the Plan, the beneficiaries in section 3.05 of the Plan are to be paid in full and will "receive" a distribution.   However, as these beneficiaries have "received" or will "receive" a distribution under the Plan, the beneficiaries cannot be the sub-group intended to be captured by the "deemed to have received" language in section 9.05 of the Plan as the "deemed to have received" language was intended to "capture something broader than people who prosecuted their claim."   (Tr. at 39:3-5).   Limiting the third-party release set forth in section 9.05 of the Plan to the same subset of parties in section 3.05 not only eliminates the Plan's "deemed to have received" language in section 9.05, but would also lead to an absurd and commercially unreasonable result.   There is no dispute that Goldberg is a Released Employee and Independent Contractor under the Plan.   Goldberg voted in favor of the Plan and stipulated to the withdrawal of his Debtor Indemnification

Obligation claims.   As such, Goldberg provided "good and valuable consideration in exchange for the third-party release."   (D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit at VIII.I.1, ¶ 24, the Confirmation Order).   Respondents' interpretation of the third-party release (i.e. the third-party release only applies to claim holders that filed claims) would render the release illusory and strip Goldberg of a release that was intended to protect him from all holders of claims whether or not a claim was filed in the Debtors' bankruptcy cases.   At the same time, it would leave Goldberg, and the other Released Employees and Independent Contractors, in the untenable position of defending content related claims without the benefit of the Debtors Indemnification Obligation claims.   This cannot and should not be the intended reading of "deemed to have received."   The evidence before this Court, clearly reflects that it was the parties' intent to have the third-party release apply to claims holders whether or not they filed a proof of claim.    Section 3.05 beneficiaries have or will be paid in full.   Once paid, section 3.05 beneficiaries will no longer have any claims to release against the Released Employees and Independent Contractors.   If the third-party release applied only to the beneficiaries set forth in section 3.05 of the Plan (i.e. creditors of allowed claims that are to be paid in full), the third-party release would be <u>meaningless and have no value</u>.   Based on the significant distinction and the unreasonable result that would ensue, sections 3.05 and 9.05 are two wholly unrelated sections of the Plan that cannot and should not be harmonized.   Additionally, if the Debtors wanted sections 3.05 and 9.05 of the Plan to be related, they could have easily done so by cross-referencing the sections—the Debtors, on at least three occasions, cross-reference several Plan provisions.[5]   The lack of any cross-

---

[5]    For example, section 7.02 of the Plan cross-references Article 5 of the Plan; section 3.05 of the Plan cross-references with section 3.04 of the Plan; and section 4.01 of the Plan cross-references with section 3.01 of

reference between section 3.05 and 9.05 of the Plan serves as additional evidence that

both sections were not meant to be read together or work in tandem.

57.    Mr. Galardi offered no explanation as to why Section 9.05 would use very similar

language to Section 3.05 if that language was intended to be given a completely different effect

in the two sections.

**Goldberg's Response: Disputed**.    Respondents again conflate the purpose behind

sections 3.05 and 9.05 of the Plan.    There is no doubt that the language is <u>not</u> the same.

Section 3.05 of the Plan is utilized for tax purposes  (Tr. at 59:12-13), not for purposes of

determining who or what is giving or providing a release under the Plan.  (Tr. at 59:19-

20).

58.    Mr. Goldberg's argument regarding Section 3.05 turns the burden of proof on its

head.  Mr. Goldberg argues that because there was no evidence regarding the drafting of Section

3.05, the conclusion that should be drawn is that Mr. Busak and Pregame did not prove that the

provisions were connected.   However, the fact that they use similar language means that the

default rule under New York principles of contract construction is that they should be construed

together.   Mr. Goldberg has the burden of showing, through evidence, why the two provisions

were not intended to be given the same meaning.   Mr. Goldberg has not met that burden.

**Goldberg's Response:  Disputed**.   Contrary to Respondents' position, New York courts

consistently rule against contract interpretations that would render any provision

meaningless.   Here Respondents ask this Court to render the "deemed to have received"

language meaningless.   Galardi testified that the Debtors were aware that writers and

content providers were concerned about the claims of creditors that did not file proofs of

the Plan.

claim or might not be receiving a distribution under the Plan; the "deemed to received language" was intended to address this concern.  (Tr. at Tr. at 27:13-17; 27:18-21). Additionally, at the Disclosure Statement Hearing on November 3, 2016, Galardi stated on the record that the third-party release applied to claims holders who did not file a proof of claim.  Galardi's statements from the Disclosure Statement Hearing and the Confirmation Hearing, and his testimony at trial have not been refuted by any credible evidence.  Respondents' reading of section 9.05 would lead to the release only applying to those claim holders that "received" a distribution, and practically and legally renders the "deemed to have received" language meaningless and superfluous, a result that is contrary to New York law. *See Reyes v. Metromedia Software, Inc.*, 840 F. Supp. 2d 752, 756 (S.D.N.Y. 2012).

59.    Mr. Galardi's testimony that he did not believe Section 3.05 and Section 9.05 should be construed in harmony with each other is unexpressed subjective understanding and legal argument, and has little evidentiary weight.  Mr. Galardi also testified that he did not even think about the interaction between Section 3.05 and Section 9.05 (even though he was ultimately responsible for the language in both provisions), which renders his testimony as to whether these provisions should be construed together unreliable.

**Goldberg's Response:  Disputed**.  Galardi was explicit in his testimony regarding the purpose of section 3.05; Galardi testified that the intended purpose of section 3.05 was for beneficiaries of the Plan Reserve Accounts to "start paying taxes on the day of a liquidating trust for tax purposes."  (Tr. at 59:16-18).  Galardi's testimony on the purpose and interaction (or lack thereof) between sections 3.05 and 9.05 cannot be minimized as Galardi's testimony explicitly demonstrates the objective purpose of section 3.05.

60.    Mr. Goldberg argues that the Committee could have objected to Mr. Galardi's statements at the confirmation hearing as to the scope of third party releases.  However, this does not follow—the Committee was comprised of creditors who filed proofs of claim.  They were not representative of those such as Mr. Busack or Pregame who had not filed such proofs of claim.  The case cited by Mr. Goldberg in support of this argument, *United States v. Manning*, No. 95-6402, 1997 WL 62973, at *1 (2d Cir. Feb. 12, 1997), merely holds that a lawyer can under certain circumstances have apparent authority to acquiesce to his clients' settlement of a case.  Manning does not apply to the case at bar.

> **Goldberg's Response:  Disputed**.  Respondents are legally incorrect.  As a matter of law, the Committee serves as a fiduciary to all general unsecured creditors.  *In re Adelphia*, 544 F.3d 420, 424 n.1 (2d Cir. 2008); *In re Smart World Technologies Inc.*, 423 F.3d 166, 175 n.12 (2d Cir. 2005).  As Committee counsel, Simpson Thacher & Bartlett LLP, represented the interests of the general unsecured creditor body as a whole, not just the Committee Members and their individual interests.

61.    Mr. Goldberg further argues that the word "deemed" appears in a number of places elsewhere in the Plan.  However, there are only two provisions of the Plan that speak of those deemed to receive distributions—Sections 3.05 and 9.05.

> **Goldberg's Response:  Disputed.**  While sections 3.05 and 9.05 use similar words, that is where the similarities end.  Sections 3.05 and 9.05 serve two very distinct purposes and apply to two very distinct groups.  Respondents have not disputed this.

62.    Mr. Goldberg also argues that harmonizing Sections 3.05 and 9.05 will render Section 9.05 meaningless.  However, this is not true at all.  Section 9.05 still releases all claims against third parties otherwise covered by the release which were made by parties who filed

proofs of claim against Gawker, and further releases all claims against third parties otherwise covered by the release which were made by parties who are the beneficiaries of plan reserve accounts.  The mere fact that the release language is not as broad as Mr. Goldberg would like (which was the product of conscious and knowing decisions by Mr. Galardi and Mr. Patel), does not mean that it releases nothing at all.

**Goldberg's Response:  Disputed**.  Through the Confirmation Order and the Plan, the Debtors resolved many, if not all, of the content-related claims against the Debtors' estates and certain of the Debtors' writers and independent contractors.  Through these resolutions, each claim holder of a filed content-related claim either received a distribution or agreed to some other treatment. (D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit at VIII.I.1, the Confirmation Order).  If the third-party release only applied to claim holders that filed a claim, and the Debtors through the Confirmation Order and Plan resolved the pending content-related claims against the Debtors' estates and certain of the Debtors' content providers, the third-party release would not only be rendered meaningless but would be worthless as there was nothing to release.

63.    The Gawker writers, including Goldberg, stood to benefit from the confirmation of the Plan including its third party release provision, even if that third party release did not release all possible claims.

**Goldberg's Response:  Disputed**.  Narrowing the scope of section 9.05 to apply only to holders of claims that filed claims will, as a practical matter, gut the release and effectively render it meaningless.  Creditors received a 100% distribution under the Plan. If the third-party release only applies to the creditors that filed proofs of claim (i.e.

creditors that received 100% distribution), there would have been no need for the third-party release.  Additionally, the content-related claims that were subject to a dispute at the time of the Confirmation Hearing (i.e. claims held by Charles Johnson, Menith Huon, Mitchell Williams, Terry Bollea, Shiva Ayyadurai, and Ashley Terrill), were settled through the Plan and Confirmation Order.  Goldberg was not named or involved in any of these claims.  By waiving his Debtor Indemnification Obligation claim, Goldberg provided "good and valuable consideration in exchange for the third-party release."  (D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit at VIII.I.1, ¶ 24, the Confirmation Order).  If the release only applied to creditors that received a 100% distribution, the "deemed to have received" language is rendered meaningless—a result that is contrary to New York law.  *See Reyes v. Metromedia Software, Inc.*, 840 F. Supp. 2d 752, 756 (S.D.N.Y. 2012).

64.    Mr. Busak and Pregame argued as an alternate ground to permit their state court suit that their claims were for "gross negligence" or "willful misconduct" and thus outside the scope of the third party releases.

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 64.

65.    The Court rejects this alternate ground for allowing the state court suit to go forward.

**Goldberg's Response:**  Goldberg does not dispute the statement in paragraph no. 65.

66.    Pursuant to Paragraph 21 of the Confirmation Order, the "Claims and Causes of Action covered by the Third-Party Releases are based on conduct for which a Debtor might be liable for Debtor Indemnification Obligations." (D.I. 1089, Joint Pretrial Order, Goldberg's Stipulated Exhibit, at VIII.I.l, ¶ 21).

24545944.5 05/16/2018

**Goldberg's Response:** Goldberg does not dispute the statement in paragraph no. 66.

67.    The Court made a specific finding in the Confirmation Order that the claims and causes of action that were covered by that order were those that the third party writers were indemnified for by Gawker.  Because there is no factual dispute in this action that Gawker indemnified claims for gross negligence or willful misconduct against its writers, the Court finds for Mr. Goldberg on this issue.

**Goldberg's Response:** Goldberg does not dispute the statement in paragraph no. 67.

**WHEREFORE**, the Court finds as follows:

Respondents are barred from proceeding on their state court action, because they are deemed to have received a distribution under the Plan.

Dated:  May 16, 2018                              **SAUL EWING ARNSTEIN & LEHR LLP**


                                    By:    */s/ Dipesh Patel*                              
                                          Sharon L. Levine (admitted *pro hac vice*)
                                          Dipesh Patel
                                          1270 Avenue of the Americas
                                          Suite 2005
                                          New York, NY 10020
                                          Telephone:  (212) 980-7200
                                          sharon.levine@saul.com
                                          dipesh.patel@saul.com

                                              -and-

                                          **WILLIAMS & CONNOLLY LLP**
                                          Thomas G. Hentoff (admitted *pro hac vice*)
                                          Chelsea T. Kelly
                                          725 Twelfth Street, N.W.
                                          Washington, D.C. 20005
                                          Telephone: (202) 434-5000
                                          thentoff@wc.com
                                          ckelly@wc.com

                                          *Attorneys for Ryan Goldberg*

24545944.5 05/16/2018