## Exhibit A

**2017 Plan Administrator Agreement**

PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (the "Agreement"), effective as of the 17th day of March, 2017, by and between Gawker Media Group, Inc. ("GMGI"), Gawker Hungary Kft. ("Gawker Hungary"), and Gawker Media LLC ("Gawker Media," and collectively with GMGI and Gawker Hungary, the "Debtors") and Opportune LLP (including its affiliates, "Opportune") for the purpose of Opportune providing plan administrator services to the Debtors.  This Agreement sets forth, among other things, the scope of such services (the "Services"), and the basis of compensation for those Services.

## 1)  Scope of Services

Opportune will provide the following plan administrator Services pursuant to the *Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.* (as may be amended and supplemented, the "Plan")[1] and the Order of the United States Bankruptcy Court for the Southern District of New York overseeing the Debtors' chapter 11 cases (the "Bankruptcy Court") confirming the Plan, dated as of December 22, 2016 (the "Confirmation Order"):

a)  General Plan Administrator Functions.  In connection with this engagement, Opportune shall make available to the Debtors William D. Holden, a Managing Director in Opportune's Restructuring Practice to serve in the role of Plan Administrator for the Debtors (the "Plan Administrator").  The Plan Administrator shall devote such time to the performance of his services hereunder as he determines appropriate in his discretion.  The Plan Administrator hereby accepts its employment and appointment as the Plan Administrator.

b)  Duties, Power and Rights.  From and after the Effective Date, the Plan Administrator shall act for the Debtors in the same fiduciary capacity as applicable to a board of directors and officers, subject to the provisions hereof, and shall be the sole representative of the Debtors, succeeding to such powers as would have been applicable to the Debtors' officers and directors.  The Plan Administrator shall have all duties, powers and rights set forth herein, in the Plan, and in the Confirmation Order, including, but not limited to, the following activities:

   i)    conduct a process for the sale or disposition of the Gawker.com Assets consistent with the terms of the Plan and any agreements of the Debtors;

   ii)   investigate and prosecute the Retained Causes of Action, if the Plan Administrator, in its sole discretion, deems appropriate;

   iii)  review, object to, and seek estimation of, Claims against, and Equity Interests in, the Debtors;

   iv)   compromise and settle Disputed Claims and Retained Causes of Action, in the ordinary course of business and without further notice to or order of the Bankruptcy Court;

   v)    administer and distribute the Plan Reserve Accounts pursuant to the Plan;

---

[1] Capitalized terms used and not defined herein shall have the meanings ascribed to them in the Plan.

vi) take control of, preserve, and convert to Cash any additional asset of the Debtors, subject to the terms of the Plan;

vii) make distributions to holders of Allowed Claims against and Equity Interests in, the Debtors consistent with the terms of the Plan;

viii) pay expenses incurred in carrying out the powers and duties of the Plan Administrator, including professional fees incurred after the Effective Date;

ix) prepare and file post-confirmation reports for each of the Debtors pursuant to the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules;

x) support any audits of the Debtors conducted by U.S. and/or non-U.S. taxing authorities;

xi) pay any fees due to the United States Trustee pursuant to section 1930(a)(6) of the Bankruptcy Code;

xii) execute all documents appropriate to carry out the powers and duties enumerated in the Plan, Confirmation Order, and this Agreement;

xiii) retain persons and professionals, including Plan Administrator Counsel (as defined below), to assist in carrying out the powers and duties enumerated in the Plan, Confirmation Order, and this Agreement; and

xiv) take such further actions as the Plan Administrator deems necessary to effect the provisions of the Plan.

Subject to his business judgment and fiduciary responsibilities, the Plan Administrator will work on a collaborative basis with Plan Administrator Counsel to perform the foregoing activities.

c) <u>Finance and Accounting Functions</u>.  The Plan Administrator will have primary responsibility for the following finance and accounting functions (to include but not be limited to):

i) manage the financial and operational reporting processes to all internal and external constituents;

ii) review and development of any material drafted for consumption outside the Debtors;

iii) oversight and approval of expenditures and cash payments; and

iv) management of the Plan Reserve Accounts.

## 2) **Compensation and Staffing**

a) Opportune will be paid by the Debtors for its Services at the standard hourly billing rates in effect for its personnel, based on the position held by such Opportune personnel, which hourly rates are subject to periodic adjustments by Opportune to reflect economic and other conditions.  Opportune's hourly rates currently in effect are as follows:

2

59798331_5

| **Professional** | **Rate / Hr.** |
|---|---|
| Partner | $ 835.00 |
| Managing Director | $ 715.00 |
| Director | $ 605.00 |
| Manager | $ 540.00 |
| Senior Consultant | $ 420.00 |
| Consultant | $ 335.00 |
| Administrative Professional | $220.00 |

b) In the event any Opportune personnel are called to testify either in court of via deposition (in either case, "Testimony"), that professional's hourly rate will be increased by $100 for all Testimony and the time spent for any direct preparation related thereto.

c) Both Opportune and the Debtors acknowledge that the above professional fees are within industry and market rates, and have been negotiated to reflect the facts specific to this engagement. As such, the Debtors believe that the fee structure is reasonable in light of the Services requested.

d) Opportune will bill for its fees and out-of-pocket expenses no less frequently than on a monthly basis by providing an invoice summarizing the number of hours worked and expenses incurred, and the Debtors agree to remit in full the payment of such fees and expenses promptly.

**3) Retention of Counsel and Agents**

The Plan Administrator shall hire counsel to advise it in connection with its duties, powers, and rights under this Agreement (the "Plan Administrator Counsel") and may hire such additional attorneys, accountants and other professionals as may be required or appropriate in connection with its duties herein, and pay reasonable compensation to such advisors. The Plan Administrator shall be entitled to retain professionals in his or her sole discretion, including any professionals employed by the Debtor in the Bankruptcy Cases. The provision of services by a professional to the Debtor shall not disqualify such professional from employment by the Plan Administrator.

Any professionals retained by the Plan Administrator, including the Plan Administrator Counsel, shall be entitled to reasonable compensation for services rendered and reimbursement of reasonable fees, costs and expenses incurred. The payment of the fees, costs and expenses of the Plan Administrator and its retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court; provided, however, that any disputes related to such fees, costs and expenses shall be brought before the Bankruptcy Court. Any successor Plan Administrator shall receive such reasonable compensation as may be approved by the Bankruptcy Court.

59798331_5

**4) Service of Plan Administrator**

The Plan Administrator shall serve until (a) the termination of this Agreement, or (b) the Plan Administrator resigns or is otherwise discharged; provided, however, that if the Plan Administrator resigns, he or she shall continue to serve until a new Plan Administrator begins to serve.

**5) Closing of Bankruptcy Cases; Termination**

When (a) all Disputed Claims filed against the Debtors have become Allowed or have been Disallowed by Final Order, (b) all remaining assets of the Debtors and Plan Reserve Accounts have been liquidated and converted into Cash (other than those assets abandoned by the Debtors), and such Cash has been distributed in accordance with the Plan, and (c) all wind-down costs and expenses have been paid in full in Cash, the Plan Administrator shall promptly (i) seek authority from the Bankruptcy Court to close the Bankruptcy Cases for each of the Debtors in accordance with the Bankruptcy Code and the Bankruptcy Rules and (ii) effectuate the dissolution of the Debtors in accordance with applicable law. This Agreement shall terminate when the Bankruptcy Court enters a final decree contemplated by section 350 of the Bankruptcy Code and Bankruptcy Rule 3022 closing the Bankruptcy Cases of each of the Debtors.

Notwithstanding the foregoing, the Plan Administrator may dissolve Gawker Hungary prior to completion of the term of this Agreement, and upon such dissolution, Gawker Hungary shall no longer be deemed a party to this Agreement.

**6) No Liability**

The Plan Administrator shall have no liability whatsoever for any acts or omissions in its capacity as Plan Administrator to the Debtors or holders of Claims against or Equity Interests in the Debtors other than for fraud, gross negligence or wilful misconduct of the Plan Administrator.

**7) Indemnification**

GMGI and Gawker Media shall jointly indemnify the Plan Administrator, Opportune, and their (as applicable) partners, employees, managers, principals, agents, affiliates, independent contracts, insurers (collectively, the "Indemnified Persons") from and against any and all pending or threatened claims, demands, suits, investigations, proceedings, judgments, awards, liabilities, losses, damages, fees and expenses paid or incurred by any Indemnified Person in connection with, arising out of or related to (whether from direct claims or third party claims) the engagement or this Agreement (including but not limited to any Indemnified Person's reasonable counsel fees and expenses). In addition to the foregoing indemnification, any Opportune personnel who may serve the Debtors shall be individually indemnified to the same extent as the most favourable indemnification GMGI or Gawker Media has extended to its officers or directors, whether under GMGI and Gawker Media's bylaws, certificates of incorporation, by contract or otherwise. The Plan Administrator shall be covered as an officer under GMGI's existing director and officer liability insurance policy as an "additional named insured" and as a "certificate holder" under each liability insurance policy of the Debtors, and, if not covered under such policies, the Plan Administrator shall be authorized to have an additional policy providing a comparable level of coverage purchased by the Debtors. The provisions of this section are in the nature of contractual obligations and no change in applicable law or GMGI or Gawker Media's charter, bylaws or other organizational

4

documents or policies shall affect the Plan Administrator rights hereunder. The foregoing indemnification obligations shall not apply in the event that a court of competent jurisdiction finally determines that such claims resulted directly from the gross negligence, wilful misconduct or fraudulent acts of the Plan Administrator or Opportune.

8) **Other Matters**

   a) Access to Information.  In connection with this engagement, Opportune shall have complete and full access to all Debtor information that Opportune deems appropriate. Additionally, Opportune will have reasonable access to the Debtors' employees, counsel and other representatives (collectively the "Representatives") necessary to perform the Services as outlined in this Agreement.  It is understood that Opportune is relying solely upon the information supplied by the Debtors and its Representatives without assuming any responsibility for independent investigation or verification thereof.  All confidential information concerning the Debtors that is given to Opportune will be used solely in the course of performance of the Services outlined in this Agreement.  Except as required by law, such confidential information will not be disclosed to a third party without the Debtors' consent.

   b) Projections; Reliance; Limitation of Duties.  The Debtors understand that the Services to be rendered may include the preparation of projections and other forward-looking statements for use in evaluating potential transactions and settlements and that numerous factors can affect the actual outcomes, which may materially and adversely differ from those projections and other forward-looking statements. In addition, Opportune will be relying on information provided by others.

   c) Governing Law.  This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of New York and the state and federal courts located in the State of New York shall have exclusive jurisdiction in relation to any claim arising out of this Agreement. OPPORTUNE AND THE DEBTORS HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER IN CONTRACT, STATUTE, TORT, OR OTHERWISE) RELATING TO THIS AGREEMENT.

   d) Dispute Resolution.  Without permission of the Bankruptcy Court, no judicial, administrative, arbitral or other action or proceeding shall be commenced against the Plan Administrator in its official capacity as such, with respect to its status, duties, powers, acts or omissions as Plan Administrator in any forum other than the Bankruptcy Court.

   e) Retention of Jurisdiction.  The Bankruptcy Court shall retain jurisdiction over the Debtors to the fullest extent permitted by law, including, but not limited to, for the purposes of interpreting and implementing the provisions of this Agreement.

   f) Conflict with Plan.  The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan.  To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan.  In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control;

5

59798331_5

provided, however, that provisions of this Agreement adopted by amendment and approved by the Bankruptcy Court following substantial consummation (as such term is used in section 1127(b) of the Bankruptcy Code) shall control over provisions of the Plan.

g) Severability. If any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable, this Agreement shall be deemed to be amended to the extent necessary to make such provision enforceable, or, if necessary, this Agreement shall be deemed to be amended to delete the unenforceable provision or portion thereof. In the event any provision is deleted or amended, the remaining provisions shall remain in full force and effect. Notwithstanding the foregoing, the parties recognize and agree that this Agreement is to be interpreted and applied in such manner as to, as nearly as possible, give effect to the parties' intent to all provisions hereof, including, without limitation, such provisions as may be declared to be unenforceable.

h) Assignment. No party hereto shall have the right to assign its rights hereunder, in whole or in part without the prior written consent of the other party (other than to such party's affiliates or subsidiaries which shall not require such consent). This Agreement shall be binding upon and inure to the benefit of the parties' respective successors and permitted assigns.

i) Modifications. No change, modification, extension, renewal, ratification, waiver or rescission of this Agreement or of any of the provisions hereof shall be binding unless it is in writing and signed by both parties hereto. Further, no waiver or forbearance by either party hereto with respect to any right granted to such party herein shall operate or be construed to be a waiver or forbearance of such party's right to exercise such right in the future.

j) Notices. Notices regarding or required by this Agreement must be in writing and delivered to the parties at the mailing addresses set forth below or to such other address as a party may designate in writing. Any notice required under this Agreement will be deemed effective upon delivery to the party to whom it is addressed.

> If to Opportune:
>
> William D. Holden
> 10 East 53rd Street, 33rd Floor
> New York, NY 10022
>
> If to GMGI:
>
> Gawker Media Group, Inc.
> c/o Opportune LLP
> Attn: William D. Holden
> Plan Administrator
> 10 East 53rd Street, 33rd Floor
> New York, NY 10022

59798331_5

<u>If to Gawker Hungary</u>:

Gawker Hungary Kft.
c/o Opportune LLP
Attn: William D. Holden
Plan Administrator
10 East 53rd Street, 33rd Floor
New York, NY 10022

<u>If to Gawker Media</u>:
Gawker Media LLC
c/o Opportune LLP
Attn: William D. Holden
Plan Administrator
10 East 53rd Street, 33rd Floor
New York, NY 10022

with copies to:

Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Attn: Gregg M. Galardi
       D. Ross Martin
       Joshua Y. Sturm

k) <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the parties hereto regarding the subject matter hereof and supersedes any prior agreements (whether written or oral) between the parties regarding the subject matter hereof.  This Agreement may be executed in any number of counterparts each of which shall be an original, but all of which together shall constitute one and the same instrument.

[*Remainder of Page Left Intentionally Blank*]

59798331_5

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Plan Administrator Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers.

**Opportune LLP**

By: _____

Name:    William D. Holden

Title:    Managing Director

Date:    March 17, 2017


**Gawker Media Group, Inc.**

By: _____

Name:    Scott Tillman

Title:    Director

Date:    March ___, 2017


**Gawker Media LLC**

By:    Gawker Media Group, Inc.
       Its: Manager

By: _____

Name:    Scott Tillman

Title:    Director

Date:    March ___, 2017


**Gawker Hungary Kft.**

By: _____

Name:    William D. Holden

Title:    Managing Director

Date:    March 17, 2017

*[Signature Page to Plan Administrator Agreement]*

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Plan Administrator Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers.

**Opportune LLP**

By: _____
Name:    William D. Holden
Title:    Managing Director


Date:   March ___, 2017

**Gawker Media Group, Inc.**

By: _____
Name:    Scott Tillman
Title:    Director

Date:   March _17_, 2017


**Gawker Media LLC**

By:    Gawker Media Group, Inc.
Its:   Manager

By: _____
Name:    Scott Tillman
Title:    Director

Date:   March _17_, 2017


**Gawker Hungary Kft.**

By: _____
Name:    William D. Holden
Title:    Managing Director


Date:   March ___, 2017

*[Signature Page to Plan Administrator Agreement]*