## **Exhibit A**

## **Bidding Procedures Order**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Gawker Media LLC, *et al.*,[1] | Case No. 16-11700 (SMB) |
| Debtors. | (Jointly Administered) |

**ORDER (I) AUTHORIZING AND APPROVING BIDDING PROCEDURES, BREAKUP
FEE AND EXPENSE REIMBURSEMENT, (II) APPROVING NOTICE PROCEDURES,
(IV) SCHEDULING A SALE HEARING AND (III) APPROVING PROCEDURES FOR
ASSIGNMENT OF CERTAIN CONTRACTS**

Upon the motion (the "Motion") of the Plan Administrator[2] for entry of an order (the "Order"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 6004-1 and 6006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), (i) authorizing and approving (a) certain proposed bidding procedures (as attached hereto as **Exhibit 1**, the "Bidding Procedures") governing the submission of competing proposals to purchase the Purchased Assets pursuant to section 363 of the Bankruptcy Code and (b) the Breakup Fee and Expense Reimbursement (together, the "Stalking Horse Bid Protections") to the extent payable pursuant to and on the terms set forth in the Asset Purchase Agreement (as appended to the Bidding Procedures as **Exhibit A** and, together with all exhibits thereto, and as may be further amended, modified or supplemented

---

[1]    The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary, Kft. "v.a." (5056).   The offices of the Debtors are located at 44 Lynden Street, Rye, NY 10580.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures or the Stalking Horse APA, as applicable.

from time to time in accordance with the terms thereof, the "Stalking Horse APA"), dated as of May 29, 2018, by and among the above-captioned debtors (the "Debtors"), acting through the Plan Administrator, in the above-captioned jointly administered chapter 11 cases (the "Cases") and Didit Holdings, LLC, a Delaware limited liability company (together with its permitted designees, successors and permitted assigns in accordance with the Stalking Horse APA, the "Stalking Horse Bidder"), (ii) approving the form and manner of notice of the sale of the Purchased Assets (the "Sale Notice"), (iii) scheduling a hearing for approval of the sale of the Purchased Assets (the "Sale Hearing") and setting other related dates and deadlines and (iv) approving procedures for the assignment of the Assigned Contracts and the form of and manner of notice of assignment; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their respective equity holders and creditors and all other parties in interest; and after due deliberation, and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334.

B.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006, and Local Rules 6004-1 and 6006-1.

D.     Good and sufficient notice of the relief granted by this Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief

granted by this Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Rules and the Local Rules and all other interested parties.

E.      The Bidding Procedures are fair, reasonable and appropriate and are designed to maximize the value to be received by the Debtors and their respective equity holders and creditors.

F.      The Plan Administrator has demonstrated compelling and sound business justifications for the Debtors entering into the Stalking Horse APA and incurring the administrative obligations arising thereunder or in connection therewith, including the Stalking Horse Bid Protections under the circumstances, timing and procedures set forth therein.

G.      The Plan Administrator's incurrence of the obligations arising under or in connection with the Stalking Horse APA, including the Stalking Horse Bid Protections, are (i) an actual and necessary cost of preserving the assets of the Debtors within the meaning of section 503(b) of the Bankruptcy Code, (ii) of substantial benefit to the Debtors, their respective equity holders and creditors and all other parties in interest, because, among other things, they induced the Stalking Horse Bidder to submit a bid that will serve as a minimum or floor bid for the Purchased Assets, (iii) the product of good faith and arm's-length negotiations among the Plan Administrator and the Stalking Horse Bidder, (iv) reasonable and appropriate in light of the size and nature of the proposed sale and the efforts that have been and will be expended by the Stalking Horse Bidder and (v) necessary to induce the Stalking Horse Bidder to enter into the Stalking Horse APA and to continue to pursue the sale of the Purchased Assets.

H.      The sale of the Purchased Assets as contemplated in the Stalking Horse APA is in the best interests of the Debtors, their respective equity holders and creditors and all other parties

in interest, and represents a reasonable exercise of the Plan Administrator's sound business judgment.

I.      The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is reasonably calculated to provide all interested parties with timely and proper notice of the proposed sale, including:  (i) the date, time and place of the Auction (if one is held), (ii) the Bidding Procedures and certain dates and deadlines related thereto, (iii) the objection deadline for the sale and the date, time and place of the Sale Hearing, (iv) reasonably specific identification of the assets subject to the proposed sale, (v) instructions for promptly obtaining a copy of the Stalking Horse APA, (vi) representations describing the proposed sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the sale proceeds, (vii) the commitment by the Stalking Horse Bidder to assume certain liabilities of the Debtors solely to the extent set forth in the Stalking Horse APA and (viii) notice of the assignment of the Assigned Contracts to the Stalking Horse Bidder pursuant to the Stalking Horse APA (or to another Successful Bidder selected at the Auction, if any) and the procedures and deadlines for objecting thereto.  No other or further notice of the proposed sale shall be required.

J.      The Assignment Notice attached hereto as **Exhibit 3** is reasonably calculated to provide all non-Debtor counterparties to the Debtors' Assigned Contracts with proper notice of the assignment of their Assigned Contract and the related assignment procedures; provided that the mere listing of any Assigned Contract on the Assignment Notice does not require or guarantee that such Assigned Contract will be assigned, and all rights of the Debtors with respect to such Assigned Contracts are reserved.

K.      The Bidding Procedures comply with the requirements of Local Rule 6004-1.

L.      Entry of this Order is in the best interests of the Debtors, their respective equity

holders and creditors and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is hereby granted and approved to the extent set forth herein.

### The Bidding Procedures

2.      The Bidding Procedures, attached hereto as **<u>Exhibit 1</u>**, are approved, and the Plan

Administrator is authorized to take any and all actions necessary or appropriate to implement the

Bidding Procedures.  The failure to specifically include a reference to any particular provision of

the Bidding Procedures in this Order will not diminish or impair the effectiveness of such

provision.

3.      Any objections to the Motion or the relief requested therein that have not been

adjourned, withdrawn, or resolved are overruled in all respects on the merits.

4.      The Bidding Procedures shall govern the submission, receipt and analysis of all

Bids, and any party desiring to submit a higher or better offer shall do so strictly in accordance

with the terms of this Order and the Bidding Procedures.

5.      The following dates and deadlines regarding competitive bidding are hereby

established (subject to modification in accordance with the Bidding Procedures):

     a.  **Qualified Bid Deadline:  July 9, 2018 at 12:00 p.m. (prevailing Eastern Time)**
is the deadline by which all Qualifying Bid Documents and Qualified Bids must
be **<u>actually</u> <u>received</u>** by the Debtors' investment banker and legal advisors, as set
forth in the Bidding Procedures (the "<u>Bid Deadline</u>"); and

     b.  **Auction**:  **July 12, 2018 at 10:00 a.m. (prevailing Eastern Time)** is the date and
time the Auction, if one is needed, will be held at the offices of Ropes & Gray
LLP, 1211 Avenue of the Americas, New York, NY 10036.

6.      The Stalking Horse Bidder is a Qualified Bidder, the Stalking Horse APA is a Qualified Bid and the Stalking Horse Bidder is authorized to submit any Overbids during the Auction at any time, in each case, pursuant to the Bidding Procedures for all purposes.

7.      Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction.  As described in the Bidding Procedures, if the Plan Administrator does not receive any Qualified Bids other than the Stalking Horse Bidder's Bid, the Plan Administrator will not hold the Auction, the Stalking Horse Bidder will be deemed the Successful Bidder and the Plan Administrator will seek final approval at the Sale Hearing of the sale of the Purchased Assets to the Stalking Horse Bidder, in accordance with the terms of the Stalking Horse APA.

8.      If the Auction is conducted, each Qualified Bidder participating in the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding process or the sale of the Purchased Assets.

## The Stalking Horse Bid Protections

9.      The Stalking Horse Bid Protections as set forth in the Stalking Horse APA, include (i) the Breakup Fee in an amount equal to $50,000, 4.42% of the Purchase Price, and (ii) the Expense Reimbursement for the Stalking Horse Bidder's reasonable and documented out-of-pocket costs and expenses up to a cap of $100,000, and the provisions of the Stalking Horse APA relating thereto, are hereby approved.  The Debtors are required to pay the Stalking Horse Bid Protections to the Stalking Horse Bidder to the extent due and payable under the Stalking Horse APA, and the Stalking Horse Bidder will not be deemed to waive the Stalking Horse Bid Protections by rebidding at the Auction.  Pursuant to the Stalking Horse APA, the Stalking Horse

Bidder will be entitled to receive a credit for the full amount of the Stalking Horse Bid Protections at each round of the Auction.

10.     The Debtors' obligations arising under or in connection with the Stalking Horse APA, including with respect to the Stalking Horse Bid Protections, shall (i) survive termination of the Stalking Horse APA, (ii) constitute an administrative expense claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, and (iii) be payable under the terms and conditions of the Stalking Horse APA and this Order without any further order of this Court.

11.     Each Debtor's obligations relating to the Stalking Horse Bid Protections arising under or in connection with the Stalking Horse APA shall be binding and enforceable against each such Debtor and its respective estate, and, as applicable, subject to section 363(f) of the Bankruptcy Code, and excluding any Qualified Bidder that purchases the Purchased Assets, (i) any of its successors or assigns, (ii) any trustee, examiner, or other representative of the Debtors, (iii) the reorganized Debtors and (iv) any other entity vested or revested with any right, title or interest in or to a material portion of the assets directly or indirectly owned by the Debtors or any other person claiming any rights in or control over a material portion of such assets (each entity listed in subsections (i)-(iv), a "Debtor Successor"), as if such Debtor Successor was the Debtors.

### Hearing and Objection Deadline

12.     The Sale Hearing, shall take place in this Court on **July 17, 2018 at 10:00 a.m. (prevailing Eastern Time)**; provided that the Sale Hearing may be adjourned or rescheduled without further notice other than announcement in open Court or by the filing of a notice on the docket of these Cases or a notice of agenda.  Any obligations of the Debtors set forth in the Stalking Horse APA that are intended to be performed prior to the Sale Hearing and/or entry of

the Sale Order pursuant to the Stalking Horse APA are authorized as set forth herein and are fully enforceable as of the date of entry of this Order.

13.    The deadline to file objections, if any, to the transactions contemplated by the Stalking Horse APA or to entry of the Sale Order is **June 12, 2018 at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline"); provided, that if and only if the Stalking Horse Bidder is **not** the Successful Bidder for the Debtors' assets, counterparties to the Debtors' Assigned Contracts shall have until one (1) business day before the Sale Hearing to object to the assignment of an Assigned Contract *solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code*.  Objections, if any, **must**:  (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules and any orders of the Court; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with the Court and served so as to be **actually received** no later than the Sale Objection Deadline, as applicable, by the following parties (the "Objection Notice Parties"): (a) the Debtors: Gawker Media Group, Inc., c/o The Boathouse Group, LLC, 44 Lynden Street, Rye, NY 10580, Attn: William D. Holden; (b) counsel to the Plan Administrator for the Debtors: Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Gregg M. Galardi, Esq. and Kimberly J. Kodis, Esq.; (c) the Office of the United States Trustee for the Southern District of New York: 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Greg Zipes, Esq. & Susan Arbeit, Esq.; Fax: (212) 668-2255; and (d) counsel to the Stalking Horse Bidder: Stalking Horse Bidder, Davis & Gilbert LLP, 1740 Broadway, New York, NY 10019, Attn: Jonathan L. Sagot, Esq.

14.    Any written replies to objections to the relief sought in the Sale Order shall be submitted no later than one day before the Sale Hearing.

15.    Failure to object to the relief requested in the Motion by the Sale Objection Deadline shall be deemed to be "consent" for purposes of section 363(f) of the Bankruptcy Code.

### Sale Notice and Related Relief

16.    The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.  Within three (3) days of the entry of this Order, the Plan Administrator shall cause the Sale Notice to be served upon (i) the US Trustee, (ii) parties who are known or reasonably believed to have asserted any lien, encumbrance, claim or other interest in the Debtors' assets that are the subject of the proposed sale of the Purchased Assets, if any, (iii) all parties who have filed a notice of appearance and request for service of papers in the Cases pursuant to Bankruptcy Rule 2002, (iv) each counterparty to the Assigned Contracts, (v) all applicable state and local taxing authorities, including the Internal Revenue Service, (vi) each governmental agency that is an interested party with respect to the sale of the Purchased Assets contemplated by the Stalking Horse APA and the transactions proposed thereunder, (vii) the Securities and Exchange Commission, and (viii) counsel to the Stalking Horse Bidder.

### The Sale Does Not Require the Appointment of a Consumer Privacy Ombudsman

17.    In connection with the sale of the Purchased Assets pursuant to the Stalking Horse APA, the Debtors and Plan Administrator shall be required to abide by their privacy policies in place as of the date of the Stalking Horse APA, as such policies may be amended from time to time.  Accordingly, no consumer privacy ombudsman need be appointed in connection with the sale under section 363(b)(1) of the Bankruptcy Code.

## Assignment Procedures

18.     The procedures set forth below regarding the assignment of certain Assigned Contracts that may be assigned to the Stalking Horse Bidder (or other Successful Bidder selected at the Auction, if any) pursuant to section 365(f) of the Bankruptcy Code in connection with the sale of the Purchased Assets are hereby approved (the "Assignment Procedures").

19.     These Assignment Procedures, as may be modified or supplemented by the Sale Order, shall govern the assignment of all Designated Contracts:

    a.     **Assignment Notice**.  The Assignment Notice, substantially in the form attached hereto as **Exhibit 3**, is hereby approved.  On or before the date that is two (2) business days following the date of this Order, the Plan Administrator shall file with the Court and serve via first class mail the Assignment Notice on all non-Debtor counterparties to all Assigned Contracts, and their respective known counsel, and provide a copy of same to the Stalking Horse Bidder.  The Assignment Notice shall inform each recipient that its respective Assigned Contract will be designated by the Stalking Horse Bidder as assigned, and, to the extent applicable (i) the title of the Assigned Contract, (ii) the name of the counterparty to the Assigned Contract, (iii) the identity of the Stalking Horse Bidder and (iv) the deadline by which any such Assigned Contract counterparty may file an objection to the assignment, and the procedures relating thereto.; provided, however, that service of an Assignment Notice does not constitute admission that such Assigned Contract is an executory contract or unexpired lease.

    b.     **Adequate Assurance**.   Upon request by a counterparty under any Assigned Contract, the Plan Administrator shall serve, by electronic mail, the evidence of adequate assurance of future performance under the Assigned Contracts provided by the Stalking Horse Bidder, including the legal name of the proposed assignee, the proposed use of any leased premises, the proposed assignee's financial ability to perform under the Assigned Contracts and a contact person with the proposed assignee that counterparties may contact if they wish to obtain further information regarding the Stalking Horse Bidder.

    c.     **Objections**.   Objections, if any, to the proposed assignment of any Assigned Contract must:  (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules and any order orders of the Court, (iii) state with specificity the nature of the objection and (iv) be filed with the Court and served so as to be **actually received** by the Objection Notice Parties before the Sale Objection Deadline.

Promptly following the Plan Administrator's selection of the Successful Bidder and the Back-Up Bidder, if any, at the conclusion of the Auction, the Debtors shall announce the Successful Bidder and the Back-Up Bidder, if any, and shall file with the Court a notice of the Successful Bidder and the Back-Up Bidder, if any.  If and only if the Stalking Horse Bidder is **not** the Successful Bidder, counterparties to the Assigned Contracts shall have one (1) day before the Sale Hearing to object to the assignment of an Assigned Contract *solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code*.  For the avoidance of doubt, if the Stalking Horse Bidder is the Successful Bidder, all adequate assurance objections must be filed by the Sale Objection Deadline.

d.    **Dispute Resolution**.  Any objection to the proposed assignment of an Assigned Contract in connection with the proposed sale that remains unresolved as of the Sale Hearing shall be heard at the Sale Hearing (or at a later date as fixed by the Court) provided that any such objection may be adjourned, in full or in part, by the Plan Administrator to a later date by listing such adjournment in a notice of agenda or other notice filed on the docket of the Cases and served on the affected counterparty.

20.    *Any party who fails to timely file an objection to its assignment of an Assigned Contract (i) shall be forever barred from objecting thereto, including (a) making any demands for additional cure amounts or monetary compensation on account of any alleged defaults for the period prior to the applicable objection deadline against the Debtors or the Stalking Horse Bidder or other Successful Bidder selected at the Auction, if any, with respect to any such Assigned Contract and (b) asserting that the Stalking Horse Bidder or other Successful Bidder has not provided adequate assurance of future performance as of the date of the Sale Order and (ii) shall be deemed to consent to the sale of the Purchased Assets as approved by the Sale Order.*

## Other Relief Granted

21.    The Plan Administrator is authorized and directed to enter, on behalf of the Debtors, into the Stalking Horse APA attached hereto as **Exhibit 4** and to take any and all actions necessary or appropriate to implement the Stalking Horse APA.

22.     The Plan Administrator, on behalf of the Debtors, is authorized to execute and deliver all instruments and documents and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

23.     The Good Faith Deposits of the Stalking Horse Bidder and any other bidder, and any other amounts deposited pursuant to the applicable purchase agreement (which, in the case of the Stalking Horse Bidder, shall be the Stalking Horse APA), shall not become property of the Debtors unless the Deposit is otherwise due and payable to the Debtors in accordance with the applicable purchase agreement (which, in the case of the Stalking Horse Bidder, shall be the Stalking Horse APA).  The agreements with respect to the Deposit set forth in the Stalking Horse APA shall be binding and enforceable against the Debtors in all respects and the Debtors are authorized and directed to perform their obligations thereunder.

24.     In the event there is a conflict between this Order and the Motion or the Stalking Horse APA, this Order shall control and govern.

25.     This Order shall be binding in all respects upon any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy case or upon a conversion to chapter 7 under the Bankruptcy Code.

26.     The Stalking Horse Bidder has standing to enforce the terms of this Order.

27.     This Order shall be immediately effective and enforceable upon entry hereof, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

28.     The requirements set forth in Local Rule 9013-1 are satisfied by the contents of the Motion.

29.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

30.     The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

31.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

32.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.


Dated: June [•], 2018
New York, New York

_____
STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT 1**

**Bidding Procedures**

## BIDDING PROCEDURES

On June 10, 2016, Gawker Media filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On June 12, 2016, GMGI and Gawker Hungary each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 22, 2016, the United States Bankruptcy Court for the Southern District of New York (the "Court") confirmed a plan of liquidation (the "Plan") for Gawker Media, GMGI, and Gawker Hungary (the "Debtors"), which expressly contemplates the sale of the Purchased Assets. The Plan effective date occurred on March 17, 2017. The Debtors' chapter 11 cases (the "Cases") are pending in the Court and jointly administered under Case No. 16-11700 (SMB). On [•], 2018, William D. Holden, as the plan administrator (the "Plan Administrator") for the Debtors, filed a motion [Docket No. [•]] (the "Sale Motion"), seeking, among other things, authorization for the Debtors to perform their obligations under that certain Asset Purchase Agreement (together with all exhibits thereto, and as may be amended, modified or supplemented from time to time in accordance with the terms thereof, the "Stalking Horse APA"),[1] dated as of May 29, 2018, entered into by and among the Debtors and Didit Holdings, LLC (together with its permitted designees, successors and permitted assigns in accordance with the Stalking Horse APA, the "Stalking Horse Bidder"), which is attached hereto as **Exhibit A**. As described in the Sale Motion, the Stalking Horse APA contemplates, pursuant to the terms and subject to the conditions contained therein, the sale of the Purchased Assets to the Stalking Horse Bidder for cash consideration of $1,131,600, plus the assumption of the Assumed Liabilities.

On [•], 2018, the Court entered the *"Order (I) Authorizing and Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (II) Authorizing and Approving the Debtors' Performance of Pre-Closing Obligations Under the Stalking Horse Asset Purchase Agreement, (III) Approving Notice Procedures, (IV) Scheduling a Sale Hearing and (V) Approving Procedures for Assignment of Certain Contracts"* [Docket No. [•]] (the "Bidding Procedures Order"), which, among other things, (i) authorized the Debtors to perform their pre-closing obligations under the Stalking Horse APA and (ii) approved the bidding procedures set forth below (the "Bidding Procedures") governing the submission of competing proposals to purchase the Purchased Assets pursuant to section 363 of the Bankruptcy Code. The sale of the Purchased Assets will be implemented pursuant to the terms and conditions of the Bidding Procedures Order and Stalking Horse APA, as the same may be amended pursuant to the terms thereof, subject to the Debtors' selection, in the Plan Administrator's reasonable discretion, of a higher or otherwise better bid as the Successful Bid (as defined below) in accordance with these Bidding Procedures.

The Debtors are offering investors the opportunity to purchase the Purchased Assets pursuant to section 363 of the Bankruptcy Code. Any interested bidder should contact, as soon as practical, the Plan Administrator, William D. Holden, at the following address: The Boathouse Group, LLC, 44 Lynden Street, Rye, NY 10580, Attn: William D. Holden (wholden@boathouse-LLC.com).

## Notice Parties

---

[1]   Capitalized terms used but not otherwise defined herein will have the meanings ascribed to them in the Sale Motion or the Stalking Horse APA, as applicable.

Information that must be provided under these Bidding Procedures, including, without limitation, Qualifying Bid Documents and Bids, must be provided to the following parties (collectively, the "Notice Parties"): (i) the counsel to the Plan Administrator, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Gregg M. Galardi, Esq. (gregg.galardi@ropesgray.com) and Kimberly J. Kodis, Esq. (kimberly.kodis@ropesgray.com); (ii) the Plan Administrator for the Debtors at The Boathouse Group, LLC, 44 Lynden Street, Rye, NY 10580, Attn: William D. Holden (wholden@boathouse-LLC.com); and (iii) counsel to the Gawker Media Contingent Proceeds creditor, Cohen & Gresser LLP, 800 Third Avenue, 21st Floor, New York, NY 10022, Attn:  Daniel H. Tabak, Esq. (DTabak@cohengresser.com).

## Participation Requirements

To participate in the formal bidding process or otherwise be considered for any purpose hereunder, a person (other than the Stalking Horse Bidder) interested in submitting a bid (an "Interested Party") must, on or before **July 2, 2018 at 5:00 p.m. (prevailing Eastern Time)**, deliver to the Notice Parties, the following documents (the "Preliminary Bid Documents"), subject to the Plan Administrator's discretion to extend or waive such deadline:

 (a) an executed confidentiality agreement on terms reasonably acceptable to the Plan Administrator (each, a "Confidentiality Agreement");

 (b) a statement or other support demonstrating to the Plan Administrator's satisfaction in the exercise of his reasonable business judgment that the Interested Party has a *bona fide* interest in purchasing the Purchased Assets; and

 (c) preliminary proof by the Interested Party of its financial capacity to close a proposed transaction at the Purchase Price (as defined below), which may include current unaudited or verified financial statements of, or verified financial commitments or highly confident letters obtained by, the Interested Party (or, if the Interested Party is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which the Plan Administrator will determine.

Only those Interested Parties that, in the Plan Administrator's determination, have submitted acceptable Preliminary Bid Documents (each, a "Potential Bidder") may submit bids. Once the Plan Administrator determines that an Interested Party is a Potential Bidder, the Plan Administrator will promptly notify such Potential Bidder, any other Potential Bidders (including the Stalking Horse Bidder) and the Notice Parties of such determination.  The Stalking Horse Bidder will at all times be deemed to be a Potential Bidder.

Pursuant to that certain Release Agreement dated April 24, 2018, by and among Peter Thiel ("Mr. Thiel"), Thiel Capital LLC (together with Mr. Thiel, the "Thiel Parties"), the Debtors, and the Plan Administrator, solely in his capacity as Plan Administrator for the Debtors, each of the Thiel Parties, for himself or itself and on behalf of their current and former predecessors, successors, assigns, affiliate, subsidiaries, parents, members, managers, principals, officers, directors, employees, shareholders, agents and representatives (but, as to agents and

representatives, only to the extent that either or both of the Thiel Parties has the authority to bind such agents and representatives), as applicable (collectively, the "Thiel Releasing Persons"), agrees that they shall not participate, cause any third party to participate or otherwise authorize any third party's participation, or provide funding to any third party for the purpose of participating, in any sale process for the Purchased Assets, except as expressly requested by the Debtors and agreed to by the Thiel Parties in their sole and absolute discretion. For the avoidance of doubt, the Thiel Parties and the Thiel Releasing persons shall not be considered a Potential Bidder or a Qualified Bidder (as defined below).

## Due Diligence

Each Potential Bidder will comply with all reasonable requests for additional information and due diligence access by the Plan Administrator or his advisors regarding such Potential Bidder and its contemplated transaction. If the Plan Administrator determines at any time in his reasonable discretion that a Potential Bidder is not reasonably likely to be a Qualified Bidder, then all information provided by the Plan Administrator prior to such time will be returned to the Plan Administrator or destroyed in accordance with the terms of the applicable Confidentiality Agreement.

## Bid Deadline

The deadline for each Potential Bidder to submit a proposal to purchase the Purchased Assets (a "Bid") is **July 9, 2018 at 12:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline"). A Good Faith Deposit (as defined below) must be contemporaneously provided with any Bid by wire transfer pursuant to delivery instructions to be provided by the Plan Administrator before the Bid Deadline. Each Potential Bidder will deliver written copies of each Bid by electronic mail to the Notice Parties.

Any Bid received after the Bid Deadline will not constitute a Qualified Bid (as defined below).

## Bid Requirements

To be eligible to participate in the Auction, each Bid must:

(a)     state that the applicable Potential Bidder offers to purchase the Purchased Assets, pursuant to a transaction that is no less favorable to the Debtors, as the Plan Administrator may reasonably determine, than the transactions contemplated in the Stalking Horse APA;

(b)     be accompanied by a deposit (each, a "Good Faith Deposit") in the form of a wire transfer or such other form acceptable to the Debtors, payable to the order of the Debtors, in an amount equal to $226,320 (*i.e.*, 20% of the Stalking Horse Bidder's cash purchase price);

(c)     specify the amount of cash or other consideration offered by the Potential Bidder (the "Purchase Price"), which Purchase Price must exceed $1,300,000, which comprises the aggregate sum of the following: (i)

$1,131,600 cash consideration under the Stalking Horse APA; (ii) the $50,000 Breakup Fee; (iii) the $100,000 capped amount of the Expense Reimbursement payable to the Stalking Horse Bidder under the Stalking Horse APA; and (iv) a minimum initial bid increment of $18,400; provided that in determining the value of a Bid, the Plan Administrator will not be limited to evaluating the dollar amount of a Bid, but may also consider factors, including, without limitation, the liabilities and other obligations to be performed or assumed by the Potential Bidder, the additional administrative claims likely to be created by such Bid in relation to other Bids, the proposed revisions to the Stalking Horse APA and other factors affecting the speed, certainty and value of the proposed transactions;

(d)     be irrevocable by the Potential Bidder until the selection of the Successful Bid in accordance with the terms of these Bidding Procedures; provided that if such Potential Bidder is selected as the Successful Bidder (as defined below) or Back-Up Bidder (as defined below), its Bid must remain irrevocable until the earlier of (x) the Plan Administrator's consummation of a sale with the Successful Bidder and (y) 20 days after the Sale Hearing;

(e)     include an executed asset purchase agreement, together with all exhibits and schedules thereto (including identification of the contracts to be assigned), pursuant to which the Qualified Bidder proposes to effectuate a proposed transaction at the Purchase Price (or in the case of the Stalking Horse Bidder, at the purchase price set forth in the Stalking Horse APA) (the "Transaction Documents"), which Transaction Documents must include a copy of the Stalking Horse APA, marked to show all changes requested by the Potential Bidder;

(f)     provide a commitment to close as soon as practicable, but in no event later than the Closing Date as set forth in Section 2.01 of the Stalking Horse APA;

(g)     not be conditioned on unperformed due diligence, obtaining financing or any internal approval;

(h)     contain written evidence of a commitment for financing or other evidence of the ability to consummate a proposed transaction at the Purchase Price satisfactory to the Plan Administrator in his reasonable discretion with appropriate contact information for such financing sources;

(i)     contain written evidence satisfactory to the Plan Administrator in his reasonable discretion of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and consummation of such Bid and any Overbid(s) (as defined below), and related Transaction Documents;

(j)     not request or entitle the Potential Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment;

(k)     fully disclose the identity of each entity that will be bidding for the Purchased Assets or otherwise financing (including through the issuance of debt in connection with such Bid) such Bid, and a summary of any such financing;

(l)     set forth the representatives who are authorized to appear and act on behalf of the bidder at the Auction;

(m)     include reasonable evidence of the bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including, without limitation, providing adequate assurance of such bidder's ability to perform future obligations arising under the contracts proposed in its bid to be assigned to the bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts; and

(n)     constitute a good faith, *bona fide* offer to effectuate the proposed transaction; and

(o)     be received by the Bid Deadline.

## Designation as Qualified Bidder

A qualified bidder ("Qualified Bidder") is a Potential Bidder that, in the Plan Administrator's reasonable determination, (i) has timely submitted a Bid that satisfies each of the above requirements and (ii) is able to consummate the proposed transaction if selected as the Successful Bidder (such Bid submitted by a Qualified Bidder, a "Qualified Bid").

Within two (2) Business Days after a Potential Bidder delivers all of the documents described above, the Plan Administrator will determine in his reasonable discretion whether such Potential Bidder is a Qualified Bidder, and notify all Qualified Bidders and Notice Parties of such determination.

For the avoidance of doubt, the Stalking Horse Bidder is a Qualified Bidder, the Stalking Horse APA is a Qualified Bid and the Stalking Horse Bidder is authorized to submit any Overbids during the Auction at any time, in each instance without further qualification required of the Stalking Horse Bidder.

If no Qualified Bids (other than the Stalking Horse Bid) are received by the Bid Deadline, then the Stalking Horse Bidder will be deemed the Successful Bidder, the Stalking Horse APA will be the Successful Bid, and, at the Sale Hearing, the Plan Administrator will seek final Court approval of the sale of the Purchased Assets to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse APA.

## "As Is, Where Is"

Any sale or transfer of the Purchased Assets will be on an "as is, where is" basis and without representations or warranties of any kind by the Debtors, their Plan Administrator, or his agents, except and solely to the extent expressly set forth in a final purchase agreement approved by the Court as the Successful Bid. Each Qualified Bidder will be required to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Debtors' assets that are the subject of the Auction prior to making its Bid and that it has relied solely upon its own independent review and investigation in making its Bid. Except as otherwise provided in a final purchase agreement approved by the Court as the Successful Bid, all of the Debtors' right, title and interest in the Purchased Assets will be sold or transferred free and clear of all liens as proposed in the Stalking Horse APA, with any liens to attach to the proceeds of the sale of the Purchased Assets as provided in the proposed form of sale order attached to the Sale Motion.

## __Auction__

If the Plan Administrator receives one or more Qualified Bids in addition to the Stalking Horse Bid, the Plan Administrator will conduct an auction (the "__Auction__") to determine the highest or otherwise best bid with respect to the Purchased Assets. The Auction will commence on **July 12, 2018 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, or on such later date and/or at such other location as determined by the Plan Administrator and the Stalking Horse Bidder (not to be unreasonably withheld, conditioned or delayed).

No later than 10:00 p.m. (prevailing Eastern Time) on **July 13, 2018 prevailing Eastern Time)**, the Plan Administrator will (i) notify all Qualified Bidders and Notice Parties in writing of the highest or otherwise best Qualified Bid, as determined by the Plan Administrator in his reasonable discretion (the "__Baseline Bid__"), and (ii) provide all Qualified Bidders and Notice Parties (if not previously provided) with complete copies of all Transaction Documents and all other bid materials submitted by each other Qualified Bidder, subject to exclusion of any confidential financial information that has been so designated by the Qualified Bidder. The Plan Administrator's determination of which Qualified Bid constitutes the Baseline Bid may take into account a number of relevant considerations, including, without limitation, payment of the Breakup Fee and Expense Reimbursement, financial condition of the applicable bidder and certainty of closing.

No later than 11:00 p.m. (prevailing Eastern Time) on the day prior to the commencement of the Auction, each Qualified Bidder (other than the Stalking Horse Bidder) who has timely submitted a Qualified Bid must inform the Notice Parties whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid will nevertheless remain fully enforceable against such Qualified Bidder.

If there is an Auction, it will be conducted according to the following procedures:

(a) Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction. Only the authorized representatives of each of the Qualified Bidders (including the Stalking Horse Bidder), the Plan

Administrator and his advisors, and the Gawker Media Contingent Proceeds (as defined in the Plan) creditor's counsel will be permitted to attend the auction. The Plan Administrator shall consult with the Gawker Media Contingent Proceeds creditor's counsel with respect to all material discretionary decisions made by the Plan Administrator with respect to the Bidding Procedures.

(b) The Plan Administrator and his professionals will direct and preside over the Auction. At the start of the Auction, the Plan Administrator or his advisors will describe the terms of the Baseline Bid. All Bids made thereafter must be Overbids and will be made and received on an open basis, and all material terms of each Bid will be fully disclosed to all other Qualified Bidders and the Gawker Media Contingent Proceeds creditor's counsel. The Plan Administrator shall notify the Gawker Media Contingent Proceeds creditor's counsel of all private discussions and meetings between the Plan Administrator and any Qualified Bidder that occur during the Auction. The Plan Administrator will maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid. Each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the sale of the Purchased Assets.

(c) During the Auction, bidding will begin initially with the Baseline Bid and subsequently continue in minimum increments of at least $25,000 (each, an "Overbid"). The Plan Administrator will announce at the Auction the material terms of each Overbid, value each Overbid in accordance with these Bidding Procedures and provide each Qualified Bidder with an opportunity to make a subsequent Overbid. Additional consideration in excess of the amount set forth in the Baseline Bid may include cash and/or other consideration acceptable to the Plan Administrator in accordance with these Bidding Procedures. If the Stalking Horse Bidder bids at the Auction, at each round of the Auction, the Stalking Horse Bidder will be entitled to receive a "credit" in the amount of $150,000, comprised of (i) the full amount of the Breakup Fee, and (ii) the full amount of the Expense Reimbursement. To the extent that an Overbid has been accepted entirely or in part because of the addition, deletion, or modification of a provision or provisions in the applicable Transaction Documents or the Stalking Horse APA, the Plan Administrator will identify such added, deleted, or modified provision or provisions.

(d) Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Plan Administrator accepts a higher or otherwise better bid submitted by another Qualified Bidder during the Auction as an Overbid, and (ii) such Overbid is not selected as the Back-Up Bid (as defined below). Other than the Stalking Horse Bidder, to the extent not previously provided (which will be determined by the Plan Administrator), a Qualified Bidder submitting an

Overbid must submit at the Plan Administrator's request, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Plan Administrator) demonstrating such Qualified Bidder's ability to close the transaction at the purchase price contemplated by such Overbid.

## Selection of Successful Bid

At the conclusion of the Auction, the Plan Administrator, in the exercise of his reasonable business judgment on behalf of the Debtors, will select (i) the highest or otherwise best bid submitted by a Qualified Bidder during the Auction that the Plan Administrator believes maximizes value for the Debtors (the "Successful Bid"), and (ii) at the Plan Administrator's discretion the next highest or otherwise best bid after the Successful Bid (the "Back-Up Bid"). In selecting the Successful Bid and the Back-Up Bid, if any, the Plan Administrator shall take into account the expected net benefit of the transaction to the Debtors, including the likelihood of the transaction with the Qualified Bidder actually closing and the timing thereof.  The Qualified Bidder that submits the Successful Bid will be deemed the "Successful Bidder."  The Qualified Bidder that submits the Back-Up Bid, if any, will be deemed the "Back-Up Bidder;" provided that the Stalking Horse Bidder will be deemed to be the Back-Up Bidder only with the prior written consent of the Stalking Horse Bidder, exercisable in its sole and absolute discretion.  In the event the Debtors select the Stalking Horse APA as the Back-Up Bid and the Stalking Horse Bidder does not consent to be the Back-Up Bidder, the Debtors may select the next highest and otherwise best bid submitted by a Qualified Bidder during the Auction, as determined by the Plan Administrator pursuant to these Bidding Procedures, as the Back-Up Bid, and the Qualified Bidder that submitted such Qualified Bid will be deemed to be the Back-Up Bidder.

The Auction will close when the Plan Administrator announces that the Auction has concluded and a Successful Bid and, to the extent the Plan Administrator determines, a Back-Up Bid, have been selected.  Notwithstanding anything herein to the contrary, the Plan Administrator is authorized, but not required, to select a Back-Up Bidder and Back-Up Bid.  For the avoidance of doubt, the Plan Administrator will not consider or support any bid for any of the Purchased Assets (whether or not such bid is made by a Qualified Bidder) received after the close of the Auction.

The Back-Up Bid, if any, will remain open and binding on the Back-Up Bidder until the earlier of (x) consummation of the Successful Bid with the Successful Bidder and (y) 20 days after the Sale Hearing.  If the Successful Bidder fails to consummate the Successful Bid within the time set forth therein, the Plan Administrator will be authorized, but not required, to select the Back-Up Bidder, if any, as the new Successful Bidder, and shall proceed to consummate the Successful Bid of the new Successful Bidder.

## Implementation of the Sale

The hearing to authorize the sale of the Purchased Assets to the Successful Bidder pursuant to the Successful Bid (the "Sale Hearing") will be held before the Court on **July 17, 2018, at 10:00 a.m. (prevailing Eastern Time)**.  The Sale Hearing may be adjourned or rescheduled by the Plan Administrator, with the consent of the Successful Bidder, to a time and

date consistent with the Court's calendar, as set forth in notice on the docket of the Cases, a notice of agenda or stated orally at the Sale Hearing. The Plan Administrator may not consider or support any other bid to purchase the Purchased Assets pending consideration by the Court of the Successful Bid at the Sale Hearing.

Upon the Court's approval of the Successful Bid, the Successful Bid will be deemed accepted by the Debtors, and the Debtors and Plan Administrator will be bound to the terms of that Successful Bid with no further opportunity for an auction or other process.

### Additional Procedures and Modifications

Subject to all rights of the Stalking Horse Bidder in the Stalking Horse APA, the Plan Administrator may modify the rules, procedures and deadlines set forth herein, or adopt new rules, procedures and deadlines that, in his reasonable discretion, will better promote the goals of these procedures, namely, to maximize the value for the Debtors; provided that the Stalking Horse Bidder shall not be deemed the Back-Up Bidder without the prior written consent of the Stalking Horse Bidder. All such modifications and additional rules will be communicated to each of the Notice Parties, Potential Bidders and Qualified Bidders.

### Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders at the Auction will be deemed to have (i) consented to the exclusive jurisdiction of the Court with respect to all matters relating to the Auction and the construction and enforcement of each Qualified Bidder's Transaction Documents, and (ii) waived any right to a jury trial in connection with any disputes relating to the Auction.

### Return of Good Faith Deposit

All Good Faith Deposits will be held by the Plan Administrator, on behalf of the Debtors, in a non-interest-bearing account. Good Faith Deposits of Qualified Bidders, other than the Successful Bidder and the Back-Up Bidder, if any, will be returned to the unsuccessful bidders within five (5) Business Days after selection of the Successful Bidder and Back-Up Bidder, if any, in accordance with these Bidding Procedures; provided that if the Stalking Horse Bidder is not the Successful Bidder, the Stalking Horse Bidder's Good Faith Deposit shall be returned to the Stalking Horse Bidder in accordance with the Stalking Horse APA. The Successful Bidder's Good Faith Deposit will be applied to the Purchase Price of the Successful Bid at closing, and the Debtors will be entitled to retain such Good Faith Deposit as part of their damages if the Successful Bidder fails to meet its obligations to close the transaction contemplated by the Successful Bid. The Good Faith Deposit of the Back-Up Bidder, if any, will be returned to the Back-Up Bidder, if any, within five (5) Business Days after the earlier of (x) consummation of the sale with the Successful Bidder and (y) 20 days after the Sale Hearing.

### Reservation of Rights; Deadline Extension

Notwithstanding any of the foregoing but subject to all rights of the Stalking Horse Bidder in the Stalking Horse APA and in the above section entitled "Additional Procedures and Modifications," the Plan Administrator reserves his rights, in the exercise of his fiduciary obligations, to modify the Bidding Procedures or impose, at or prior to the Auction, additional

customary terms and conditions on the sale of the Purchased Assets or any subset thereof, including, without limitation, extending the deadlines set forth in the Bidding Procedures, modifying bidding increments, and adjourning the Auction at the Auction and/or adjourning the Sale Hearing without further notice.

# EXHIBIT A

**Stalking Horse APA**

## EXHIBIT 2

**Sale Notice**

ROPES & GRAY LLP
Gregg M. Galardi
Joshua Y. Sturm
Kimberly J. Kodis
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Counsel to the Plan Administrator for the Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

In re:

Gawker Media LLC, *et al.*[1]

           Debtors.

------------------------------------------------------------- x

Chapter 11

Case No. 16-11700 (SMB)

(Jointly Administered)

## NOTICE OF (A) SOLICIATION OF BIDS TO PURCHASE SUBSTANTIALLY ALL OF THE GAWKER.COM ASSETS, (B) AUCTION AND (C) SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On May 29, 2018, William D. Holden as the plan administrator (the "<u>Plan Administrator</u>") for the above-captioned debtors (the "<u>Debtors</u>") filed the *Plan Administrator's Motion for (I) an Order (A) Authorizing and Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (B) Authorizing and Approving the Plan Administrator's, on Behalf of the Debtors, Entry Into the Stalking Horse Asset Purchase Agreement, (C) Approving Notice Procedures, (D) Scheduling Sale Hearing and (E) Approving Procedures for Assignment of Certain Contracts and (II) an Order (A) Authorizing the Sale of Substantially All of Gawker.Com*

---

[1]    The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary, Kft. "v.a." (5056). The offices of the Debtors are located at 44 Lynden Street, Rye, NY 10580.

*Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (B) Approving*

*the Asset Purchase Agreement and (C) Authorizing the Plan Administrator to Assign Certain*

*Executory Contracts of the Debtors* [Docket No. [•]] (the "Sale Motion") with the United States

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").[2]

2.     You may obtain a copy of the Sale Motion and the Stalking Horse APA

by:  (a) sending a written request to counsel to the Plan Administrator for the Debtors, Ropes &

Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Kimberly J. Kodis, Esq.

(kimberly.kodis@ropesgray.com);  or  (b) accessing  the  website  maintained  by  the  Debtors'

claims and noticing agent, Prime Clerk, at http://www.cases.primeclerk.com/gawker.

3.     As outlined in the Sale Motion, the Plan Administrator, on behalf of the

Debtors, has agreed upon the terms of a Stalking Horse APA with the Stalking Horse Bidder and

will seek capable and willing bidders for all or substantially all of the Gawker.com Assets (the

"Purchased Assets") prior to the Auction date as provided in the Sale Motion and the Bidding

Procedures Order.  The proposed sale shall be free and clear of liens, claims, interests and other

encumbrances, with all such liens, claims, interests and other encumbrances attaching with the

same validity and priority to the sale proceeds.  The Stalking Horse Bidder has committed to

assume certain liabilities of the Debtors solely to the extent set forth in the Stalking Horse APA.

4.     On [•], 2018, the Bankruptcy Court entered the Bidding Procedures Order

[Docket No. [•]].  The Bidding Procedures Order approved, among other things, the Plan

Administrator's and Debtors' assumption and performance of their pre-closing obligations of the

Stalking Horse APA and the Bidding Procedures, which specify, among other things, procedures

under which interested parties may submit a Qualified Bid to purchase the Purchased Assets.  All

---

[2]    Capitalized terms not otherwise defined herein have the meanings given them in the Sale Motion.

interested parties are invited to submit a Qualified Bid pursuant to the terms of the Bidding Procedures.

5.      The Bidding Procedures establish the following date and deadline regarding competitive bidding:

> a.      Qualified Bid Deadline:  **July 9, 2018 at 12:00 p.m. (prevailing Eastern Time)** is the deadline by which all Qualified Bids must be actually received by the Plan Administrator's legal advisors, as set forth in the Bidding Procedures (the "Bid Deadline").

6.      In the event the Plan Administrator timely receives, on or before the Bid Deadline, one or more Qualified Bids in addition to the Stalking Horse APA, the Plan Administrator shall conduct an Auction at the offices of Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, on **July 12, 2018 at 10:00 a.m. (prevailing Eastern Time)** or such later time on such day or such other place as the Plan Administrator notifies all Qualified Bidders.

7.      If no Qualified Bids (other than the Stalking Horse Bid) are received by the Bid Deadline, then the Stalking Horse Bidder will be deemed the Successful Bidder, the Stalking Horse APA will be the Successful Bid, and, at the Sale Hearing, the Plan Administrator will seek final Bankruptcy Court approval of the sale of the Purchased Assets to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse APA.

8.      The Sale Hearing will be held before the Honorable Stuart M. Bernstein in the United States Bankruptcy Court for the Southern District of New York, Courtroom 723, One Bowling Green, New York, NY 10004, on **July 17, 2018 at 10:00 a.m. (prevailing Eastern Time)** or such other date and time that the Bankruptcy Court may later direct.

9.      Objections to the relief sought in the Sale Order, if any, must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules and

any orders of the Bankruptcy Court; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; (iv) be filed with the Court no later than **June 12, 2018 at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline"); provided, that if and only if the Stalking Horse Bidder is **not** the Successful Bidder for the Debtors' assets, counterparties to the Debtors' Assigned Contracts shall have until one (1) day before the Sale Hearing to object to the assignment of an Assigned Contract *solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code*; and (v) be served so as to be actually received no later than the Sale Objection Deadline, as applicable, by the following parties (the "Objection Notice Parties"): (a) the Debtors, Gawker Media Group, Inc., c/o The Boathouse Group, LLC, 44 Lynden Street, Rye, NY 10580, Attn: William D. Holden; (b) counsel to the Plan Administrator for the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Gregg M. Galardi, Esq. & Kimberly J. Kodis, Esq.; (c) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Greg Zipes, Esq. & Susan Arbeit, Esq.; and (d) counsel to the Stalking Horse Bidder, Davis & Gilbert LLP, 1740 Broadway, New York, NY 10019, Attn: Massimo Giugliano, Esq.

10.    On June 22, 2018, the Plan Administrator shall file with the Court and serve via first class mail the Assignment Notice on all non-Debtor counterparties to all Assigned Contracts, and their respective known counsel, and provide a copy of same to the Stalking Horse Bidder.  Upon request by a counterparty under any Assigned Contract, the Plan Administrator shall serve, by electronic mail, the evidence of adequate assurance of future performance under the Assigned Contracts provided by the Stalking Horse Bidder.  Objections, if any, to the

proposed assignment of any Assigned Contract must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules and any order orders of the Bankruptcy Court; (iii) state with specificity the nature of the objection; and (iv) be filed with the Bankruptcy Court and served so as to be actually received by the Objection Notice Parties before the Sale Objection Deadline.

11.    Promptly following the Plan Administrator's selection of the Successful Bidder and the Back-Up Bidder, if any, at the conclusion of the Auction, the Plan Administrator shall announce the Successful Bidder and the Back-Up Bidder, if any, and shall file with the Bankruptcy Court a notice of the Successful Bidder and the Back-Up Bidder, if any.  If and only if the Stalking Horse Bidder is **not** the Successful Bidder for the Debtors' assets, counterparties to the Debtors' Assigned Contracts shall have until one (1) day before the Sale Hearing to object to the assignment of an Assigned Contract *solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code*.  For the avoidance of doubt, if the Stalking Horse Bidder is the Successful Bidder, all adequate assurance objections must be filed by the Sale Objection Deadline.

12.    The Auction or the Sale Hearing or both may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court or on the Bankruptcy Court's docket.

*[Text Continues on the Next Page]*

13.    *Any party who fails to timely file an objection to entry of the Sale Order*

*(i) shall be forever barred from objecting thereto, (ii) shall be deemed to consent to the sale of*

*the Purchased Assets as approved by the Sale Order, and (iii) shall be deemed to "consent" for*

*purposes of section 363(f)(2) of the Bankruptcy Code.*

Dated: [•], 2018
New York, New York

_____

ROPES & GRAY LLP
Gregg M. Galardi
Joshua Y. Sturm
Kimberly J. Kodis
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone:  (212) 596-9000
Facsimile:    (212) 596-9090
Email: gregg.galardi@ropesgray.com
            joshua.sturm@ropesgray.com
            kimberly.kodis@ropesgray.com

*Counsel to the Plan Administrator for the Debtors*

**<u>EXHIBIT 3</u>**

**Assignment Notice**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| GAWKER MEDIA LLC, *et al*., | Case No. 16-11700 (SMB) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF ASSIGNMENT OF EXECUTORY CONTRACTS
## IN CONNECTION WITH SALE

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On May 29, 2018, William D. Holden as the plan administrator (the "Plan Administrator") for the above-captioned debtors (the "Debtors") filed the *Plan Administrator's Motion for (I) an Order (A) Authorizing and Approving Bidding Procedures, Breakup Fee and Expense Reimbursement, (B) Authorizing and Approving the Plan Administrator's, on Behalf of the Debtors, Entry Into the Stalking Horse Asset Purchase Agreement, (C) Approving Notice Procedures, (D) Scheduling Sale Hearing and (E) Approving Procedures for Assignment of Certain Contracts and (II) an Order (A) Authorizing the Sale of Substantially All of Gawker.Com Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (B) Approving the Asset Purchase Agreement and (C) Authorizing the Plan Administrator to Assign Certain Executory Contracts of the Debtors* (the "Sale Motion") [Docket No. [•]] with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").[2]

2.      As outlined in the Sale Motion, the Plan Administrator, on behalf of the Debtors, has agreed upon the terms of a Stalking Horse APA with the Stalking Horse Bidder and will seek capable and willing bidders for all or substantially all of the Gawker.com Assets (the "Purchased Assets") prior to the Auction date as provided in the Sale Motion and Bidding Procedures Order.

3.      You may obtain a copy of the Sale Motion and the Stalking Horse APA by: (a) sending a written request to counsel to the Plan Administrator for the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Kimberly J. Kodis, Esq. (kimberly.kodis@ropesgray.com); or (b) accessing the website maintained by the Debtors' claims and noticing agent, Prime Clerk, at https://cases.primeclerk.com/gawker/.

---

[1]    The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary, Kft. "v.a." (5056). The offices of the Debtors are located at 44 Lynden Street, Rye, NY 10580.

[2]    Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the Sale Motion or the Bid Procedures, as applicable.

4.      On [•], 2018, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. [•]].  The Bidding Procedures Order specifies, among other things, the procedures regarding the assignment of the executory contracts that may be designated to be assigned to the Staking Horse Bidder (or other Successful Bidder selected at the Auction, if any) pursuant to section 365(f) of the Bankruptcy Code in connection with the sale of substantially all of the Debtors' assets (the "Sale").

5.      A list of the Debtors' executory contracts that are subject to potential assignment in connection with the Sale (the "Contract Schedule") is attached to this notice (the "Assignment Notice") as **Schedule 1**.

6.      Objections, if any, to the proposed assignment of any of the executory contracts listed on the Contract Schedule must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules and any orders of the Bankruptcy Court; (iii) state with specificity the nature of the objection; (iv) be filed with the Bankruptcy Court no later than **July 5, 2018 at 4:00 p.m. (prevailing Eastern Time)** (the "Assignment Objection Deadline"); provided, that if and only if the Stalking Horse Bidder is **not** the Successful Bidder for the Debtors' assets, counterparties to the Debtors' Assigned Contracts shall have until one (1) day before the Sale Hearing to object to the assignment of an Assigned Contract *solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code*; and (v) be served so as to actually be received no later than the Assignment Objection Deadline, as applicable, by the following parties: (a) the Debtors, Gawker Media Group, Inc., c/o The Boathouse Group, LLC, 44 Lynden Street, Rye, NY 10580, Attn: William D. Holden; (b) counsel to the Plan Administrator for the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Gregg M. Galardi, Esq. & Kimberly J. Kodis, Esq.; (c) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006 New York, NY 10014, Attn: Greg Zipes, Esq. & Susan Arbeit, Esq.; and (d) counsel to the Stalking Horse Bidder, Davis & Gilbert LLP, 1740 Broadway, New York, NY 10019, Attn: Massimo Giugliano, Esq.

7.      If and only if the Stalking Horse Bidder is not the Successful Bidder for the Debtors' assets, counterparties to the executory contracts listed on the Contract Schedule shall have one (1) day before the Sale Hearing to object to the assignment of an executory contract listed on the Contract Schedule solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.  For the avoidance of doubt, if the Stalking Horse Bidder is the Successful Bidder, all adequate assurance objections must be filed by the Assignment Objection Deadline.

8.      The Sale Hearing will be held before the Honorable Stuart M. Bernstein in the United States Bankruptcy Court for the Southern District of New York, Courtroom 723, One Bowling Green, New York, NY 10004, on  **July 17, 2018 at 10:00 a.m. (prevailing Eastern Time)** or such other date and time that the Bankruptcy Court may later direct.  Any objection to the assignment of an executory contract listed on the Contract Schedule in connection with the proposed sale that remains unresolved as of the Sale Hearing shall be heard at the Sale Hearing (or at a later date as fixed by the Bankruptcy Court) provided that any such objection may be

adjourned, in full or in part, by the Plan Administrator to a later date by listing such adjournment in a notice of agenda or other notice filed on the docket of the Chapter 11 Cases and served on the affected counterparty.

9. ***Any party who fails to timely file an objection to the assignment of an executory contract listed on the Contract Schedule (i) shall be forever barred from objecting thereto, including asserting that the Stalking Horse Bidder or other Successful Bidder has not provided adequate assurance of future performance as of the date of the Sale Order and (ii) shall be deemed to consent to the sale of the Purchased Assets as approved by the Sale Order.***

Dated: [•], 2018
New York, New York

                              _____

                              ROPES & GRAY LLP
                              Gregg M. Galardi
                              Joshua Y. Sturm
                              Kimberly J. Kodis
                              1211 Avenue of the Americas
                              New York, NY 10036-8704
                              Telephone:  (212) 596-9000
                              Facsimile:    (212) 596-9090
                              Email: gregg.galardi@ropesgray.com
                                         joshua.sturm@ropesgray.com
                                         kimberly.kodis@ropesgray.com

                              *Counsel to the Plan Administrator for the Debtors*

# SCHEDULE 1

### Contract Schedule

| Counterparty | Counterparty Address | Title/Description of Contract |
|---|---|---|
|  |  |  |