## **Exhibit B**

**Sale Order**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Gawker Media LLC, *et al.*,[1] | Case No. 16-11700 (SMB) |
|           Debtors. | (Jointly Administered) |
| | **Re: Docket No. [•]** |

**ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' GAWKER. COM ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS,
RIGHTS, INTERESTS AND ENCUMBRANCES, (II) APPROVING THE ASSET
PURCHASE AGREEMENT AND (III) AUTHORIZING THE DEBTORS TO ASSIGN
<u>CERTAIN EXECUTORY CONTRACTS</u>**

Upon the motion (the "<u>Motion</u>") of  the Plan Administrator[2] for the entry of an order,

pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "<u>Bankruptcy</u>

<u>Code</u>"), and rules 1005, 2002, 6004, 6006, 9007, 9014 and 9019 of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (i) approving the Asset Purchase Agreement by

and among Gawker Media LLC, Gawker Media Group, Inc., and Gawker Hungary, Kft. "v.a.",

f/k/a Kinja, Kft., the debtors (collectively, the "<u>Debtors</u>"), acting through the Plan Administrator,

and Didit Holdings, LLC (together with its permitted designees, successors and permitted assigns

in accordance with the Asset Purchase Agreement, the "<u>Buyer</u>"), dated May 29, 2018

(substantially in the form attached hereto as **<u>Exhibit 1</u>**, and as may be amended, modified or

supplemented from time to time in accordance with the terms thereof, the "<u>Stalking Horse APA</u>"),

whereby the Debtors have agreed to sell, and Buyer has agreed to acquire, substantially all of the

---

[1]    The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary, Kft. "v.a." (5056).  The offices of the Debtors are located at 44 Lynden Street, Rye, NY 10580.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures or the Stalking Horse APA, as applicable.

Debtors' assets related to the Gawker.com website (collectively, and as specifically set forth and
defined in the Stalking Horse APA, the "Purchased Assets") other than the Excluded Assets, and
the Debtors have agreed to transfer and Buyer has agreed to assume certain of the Debtors'
liabilities (collectively, and as specifically set forth and defined in the Stalking Horse APA, the
"Assumed Liabilities") (collectively, and including all actions taken or required to be taken in
connection with the implementation and consummation of the Stalking Horse APA, the
"Transactions"); (ii) authorizing and approving the sale of the Purchased Assets (the "Sale"), free
and clear, to the maximum extent permitted under section 363(f) of the Bankruptcy Code, of any
and all interests, including, without limitation, liens (as such term is defined in section 101(37) of
the Bankruptcy Code, including, without limitation, any liens arising out of bulk transfer law),
debts, claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities,
obligations, costs, expenses, causes of action, avoidance actions, demands, guaranties, options,
rights, contractual commitments, settlements, injunctions, restrictions, interests, encumbrances,
reclamation rights, and similar matters of any kind whatsoever, whether known or unknown, fixed
or contingent, or arising prior to or subsequent to the commencement of these chapter 11 cases
(the "Cases") and whether imposed by agreement, understanding, law, equity or otherwise (each
of the foregoing collectively or individually, and including to the extent not specified above,
Successor or Transferee Liability (as defined in paragraph 21 below), including any and all claims
and causes of action of defamation, libel or slander with respect to any content published by the
Debtors prior to Closing, but excluding Assumed Liabilities, the "Adverse Interests") with all such
Adverse Interests to attach to the net proceeds of the Sale, in the order of their priority, with the
same validity, force and effect that they now have against the Purchased Assets, subject with
respect to such net proceeds to any rights, claims and defenses the Debtors or any parties in interest

may possess with respect thereto; (iii) authorizing the assignment to Buyer of certain executory contracts of the Debtors in accordance with the Stalking Horse APA, the Bidding Procedures Order (as defined herein) and this Order; and (iv) granting other relief; and the Court having entered an order approving the bidding procedures and granting certain related relief on [•], 2018 [Docket No. [•]] (the "Bidding Procedures Order"); [and an auction (the "Auction") having been held on [•], 2018 in accordance with the Bidding Procedures Order; and Buyer having been deemed the Successful Bidder by the Plan Administrator pursuant to the Bidding Procedures Order;] and the Court having conducted a hearing on the Motion on [•], 2018 (the "Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion and other evidence submitted in support thereof, the Stalking Horse APA, the Bidding Procedures Order and the record of the hearing before the Court on [•], 2018; and having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing; and it appearing that due notice of the Motion, the Stalking Horse APA, the Bidding Procedures Order [and the Auction] has been provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors their stakeholders and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT HEREBY FINDS AS FOLLOWS:**

**Jurisdiction, Venue, Statutory Bases and Final Order**

A.     This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 1005, 2002, 6004, 6006, 9007, 9014 and 9019.

D.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rules 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

### <u>Notice of the Transactions, Stalking Horse APA, Sale Hearing [and Auction]</u>

E.      Actual written notice of the Sale Hearing, [the Auction,] the Motion and the Sale, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, has been afforded to all known interested entities including to the following parties: (i) the office of the United States Trustee for the Southern District of New York; (ii) parties who are known or reasonably believed to have asserted any lien, encumbrance, claim or other interest in the Debtors' assets that are the subject of the proposed sale of the Purchased Assets, if any; (iii) all parties who have filed a notice of appearance and request for service of papers in the Cases pursuant to Bankruptcy Rule 2002; (iv) each counterparty to the Debtors' Assigned Contracts (as defined in the Stalking Horse APA); (v) all applicable state and local taxing authorities, including the Internal Revenue Service; (vi) each governmental agency that is an interested party with respect to the sale of the Purchased Assets contemplated by the Staking Horse

APA and the transactions proposed thereunder; (vii) the Securities and Exchange Commission; and (viii) counsel to Buyer.

F.    The foregoing notice was good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, [the Auction,] the Sale Hearing, the Stalking Horse APA or the Transactions is required.  The disclosures made by the Plan Administrator concerning the Stalking Horse APA, [the Auction,] the Transactions and the Sale Hearing were good, complete and adequate.

G.    The Plan Administrator has filed and served assignment notices (the "Assignment Notices") upon all non-Debtor counterparties to all Assigned Contracts notifying such parties that the Plan Administrator, on behalf of the Debtors, may seek to assign such contracts on the Closing Date of the Sale as provided in the Stalking Horse APA.

### Highest and Best Offer

H.    As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Plan Administrator conducted a marketing process in accordance with, and has otherwise complied in all material respects with, the Bidding Procedures Order.  The Bidding Procedures were non-collusive and substantively and procedurally fair to all parties.  All interested persons and entities have been afforded a full, fair and reasonable opportunity to (i) conduct due diligence investigations, (ii) submit higher or otherwise better bids to purchase the assets of the Debtors and (iii) object and be heard in connection with the Sale Motion and the relief granted by this Order.  [The Auction contemplated by the Bidding Procedures was held on [•], 2018.  At the conclusion of the Auction, Buyer was selected by the Plan Administrator as the Successful Bidder.] [The Plan Administrator did not receive any Qualified Bids for the Purchased Assets prior to the Bid Deadline.  Therefore,

no Auction was necessary under the terms of the Bidding Procedures and the Buyer was named by the Plan Administrator as the Successful Bidder.]

I.     The Purchased Assets were adequately marketed by the Plan Administrator, the consideration provided by Buyer under the Stalking Horse APA constitutes or provides the highest or otherwise best offer and provides fair and reasonable consideration to the Debtors for the sale of all Purchased Assets and the assumption of all Assumed Liabilities, and the performance of the other covenants set forth in the Stalking Horse APA will provide a greater benefit for the Debtors than would be provided by any other available alternative.  Buyer is the Successful Bidder for the Purchased Assets in accordance with the Bidding Procedures Order.  The Plan Administrator's determination that the Stalking Horse APA constitutes the highest and best offer for the Purchased Assets is a valid and sound exercise of the Plan Administrator's business judgment.  Buyer has complied in all respects with the Bidding Procedures Order and any other applicable order of this Court in negotiating and entering into the Stalking Horse APA.  The Sale and Stalking Horse APA likewise comply with the Bidding Procedures Order and all other applicable orders of this Court.

J.     Approval of the Motion and the Stalking Horse APA and the consummation of the Transactions contemplated thereby is in the best interests of the Debtors, their respective equity holders and creditors and other parties in interest and there is substantial risk of deterioration of the value of the Purchased Assets if the Sale is not consummated quickly.  The Debtors and Plan Administrator have demonstrated good, sufficient and sound business reasons and justifications for entering into the Transactions and the performance of their obligations under the Stalking Horse APA.

K.     Entry of an order approving the Stalking Horse APA and all the provisions thereof is a necessary condition precedent to Buyer's consummation of the Transactions.

**Arms' Length Sale**

L.        The Stalking Horse APA and the Transactions contemplated thereunder were proposed, negotiated and entered into by and between the Plan Administrator, on behalf of the Debtors, on the one hand, and Buyer, on the other hand, without collusion or fraud of any kind, in good faith and at arm's length.  There has been no showing that the Plan Administrator or Buyer have engaged in any action or inaction that would cause or permit the Stalking Horse APA or the Transactions to be avoided or impose any costs or damages under section 363(n) of the Bankruptcy Code.  Specifically, Buyer has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among the bidders.  In addition, none of Buyer or its respective affiliates, present or contemplated members, officers, directors, partners, shareholders or any of their respective heirs, successors and assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

**Good Faith of Buyer**

M.        Buyer is entering into the Transactions in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and the court decisions thereunder, and is therefore entitled to the full protection of that provision with respect to all aspects of the transactions contemplated by the Stalking Horse APA, including the acquisition of the Purchased Assets, and otherwise has proceeded in good faith in all respects in connection with this proceeding.

N.        In accordance with section 365 of the Bankruptcy Code, including section 365(f)(2) of the Bankruptcy Code, the Plan Administrator has shown that Buyer has the wherewithal, financial and otherwise, to perform all of its obligations under the Stalking Horse APA.

### No Fraudulent Transfer

O.      The consideration provided by Buyer pursuant to the Stalking Horse APA for its purchase of the Purchased Assets, the assumption of the Assumed Liabilities and the performance of the covenants contained in the Stalking Horse APA constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, and under the laws of the United States, any state, territory, possession thereof or the District of Columbia.

P.      There has been no showing that the Plan Administrator, on behalf of the Debtors, or Buyer (i) has entered into the Stalking Horse APA or proposes to consummate the Transactions for the purpose of hindering, delaying or defrauding the Debtors' present or future creditors or (ii) is entering into the Stalking Horse APA or proposing to consummate the Transactions fraudulently, for the purpose of statutory or common law fraudulent conveyance and fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

Q.      By virtue of the consummation of the Transactions contemplated by the Stalking Horse APA, (i) Buyer is not a continuation of the Debtors, there is no continuity between Buyer and the Debtors, there is no common identity between the Debtors and Buyer, there is no continuity of enterprise between the Debtors and Buyer, Buyer is not a mere continuation of the Debtors, and Buyer does not constitute a successor to the Debtors, (ii) Buyer is not holding itself out to the public as a continuation of the Debtors and (iii) the Transactions do not amount to a consolidation, merger or *de facto* merger of Buyer and the Debtors.

**Validity of Transfer**

R.        Each Debtor's Board of Directors or equivalent and Buyer have authorized the execution and delivery of the Stalking Horse APA, the sale of all Purchased Assets to Buyer and the assumption of all Assumed Liabilities to Buyer.  The Plan Administrator and Buyer (i) have full corporate power and authority to execute and deliver the Stalking Horse APA and all other documents contemplated thereby, as applicable, (ii) have all of the power and authority necessary to consummate the Transactions and (iii) have taken all action necessary to authorize and approve the Stalking Horse APA and to consummate the Transactions, and no further consents or approvals are required for the Plan Administrator or Buyer to consummate the Transactions contemplated by the Stalking Horse APA, except as otherwise set forth therein.

S.        Other than the Assumed Liabilities, Buyer shall have no obligations with respect to any liabilities of the Debtors or any Adverse Interests against any of the Debtors or their property, and Buyer and its successors and assigns are released from any and all claims, causes of action, obligations, liabilities, demands, damages, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating, in any manner whatsoever, to the Purchased Assets, except for liabilities and obligations arising expressly under, or expressly assumed by Buyer under, the Stalking Horse APA.

T.        The consummation of the Sale and Transactions is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), 363(n) and 365(f)(2) of the Bankruptcy Code, and with respect to the Assigned Contracts, all of the applicable requirements of such sections have been or will be complied with in respect of the Transactions as of the effective date of assignment.

U.      The Purchased Assets constitute property of the Debtors and title thereto is presently vested in the Debtors pursuant to the Plan and within the meaning of section 541(a) of the Bankruptcy Code.  The sale of the Purchased Assets to Buyer will be, as of the Closing Date or such later date as such Purchased Assets are transferred under the Stalking Horse APA, a legal, valid and effective transfer of such assets, and each transfer and assignment vests or will vest Buyer with all right, title and interest of the Debtors to the Purchased Assets free and clear of all Adverse Interests.

## Section 363 Is Satisfied

V.      Entry into the Stalking Horse APA and consummation of the Transactions contemplated thereby constitute the exercise of the Plan Administrator's sound business judgment consistent with its fiduciary duties and such acts are in the best interests of the Debtors, their respective equity holders and creditors and other parties in interest.   The Debtors have demonstrated both (i) good, sufficient and sound business reasons and justifications and (ii) compelling circumstances for the sale of the Purchased Assets to Buyer pursuant to section 363(b) of the Bankruptcy Code and the Plan.  Such business reasons include the facts that (i) the Debtors' Plan expressly contemplated the sale of the Purchased Assets after the Plan was consummated; (ii) the Stalking Horse APA constitutes the highest and best offer for the Purchased Assets; (iii) the Stalking Horse APA and the consummation of the Transactions contemplated thereby present the best opportunity to realize the value of the Purchased Assets and avoid decline and devaluation of the Purchased Assets; and (iv) unless the sale of the Purchased Assets is consummated expeditiously as provided for in the Motion and pursuant to the Stalking Horse APA, equity holders' recoveries may be diminished.

W.    The Plan Administrator, on behalf of the Debtors, may sell and assign the Purchased Assets free and clear of all Adverse Interests, and the Transactions will not subject Buyer or any of Buyer's assets to any liability for any Adverse Interests whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability), because, with respect to each creditor asserting an Adverse Interest, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Adverse Interests who did not object or who withdrew their objections to the Sale, the Transactions or the Assignment Notices are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.    All holders of Adverse Interests are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by having their Adverse Interests, if any, attach to the proceeds of the Sale, in the same order of priority and with the same validity, force and effect that such Adverse Interest holder had before the Sale, subject to any rights, claims and defenses of the Debtors, as applicable, or as otherwise provided herein.

X.    Buyer would not have entered into the Stalking Horse APA and would not consummate the sale of all Purchased Assets, thus adversely affecting the Debtors, their respective equity holders and creditors and other parties in interest, if the sale of the Purchased Assets was not free and clear of all Adverse Interests or if Buyer would be liable for any Adverse Interests.

Y.    A sale of the Purchased Assets other than one free and clear of all Adverse Interests would adversely impact the Debtor, and would yield substantially less value for the Debtors, with less certainty than the Sale.  Therefore, the Sale contemplated by the Stalking Horse APA is in the best interests of the Debtors, their respective equity holders and creditors and all other parties in interest.

## Assignment of the Assigned Contracts

Z.       The assignment of the Assigned Contracts pursuant to the terms of the Bidding Procedures Order, this Order and the Stalking Horse APA are integral to the Stalking Horse APA, are in the best interests of the Debtors and their respective equity holders and creditors and other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Plan Administrator.

AA.     The assignment to Buyer of each of the Assigned Contracts shall be free and clear of all Adverse Interests against Buyer.

BB.     Buyer has provided adequate assurance of its future performance under the relevant Assigned Contracts within the meaning of section 365(f)(2)(B) of the Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, the Assigned Contracts to be assigned under the Stalking Horse APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, Buyer, notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

CC.     No default exists in the Debtors' performance under the Assigned Contracts as of the date of the Closing.

## Compelling Circumstances for an Immediate Sale

DD.     Time is of the essence.  To maximize the value of the Debtors' assets, it is critical that the Transactions close within the time constraints set forth in the Stalking Horse APA. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 4001, 6004, and 6006.

EE.     The Plan Administrator has demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale other than in

the ordinary course of business, in that, among other things, the immediate implementation of this Order and the consummation of the Sale are both necessary to preserve and maximize the value of the Debtors' assets for the benefit of the Debtors and their respective equity holders and creditors and all other parties in interest in the Cases, and to provide the means for the Debtors to maximize creditor recoveries.

FF.    The transactions contemplated by the Stalking Horse APA and this Order neither impermissibly restructure the rights of any Debtors' creditors or equity holders.

GG.    Nothing in the Stalking Horse APA creates any third party beneficiary rights in any person or entity not a party to the Stalking Horse APA.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

**<u>General Provisions</u>**

1.    The Motion is granted and approved to the extent set forth herein.

2.    All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court prior to the date hereof or as resolved in this Order, and all reservations of rights included therein, are hereby overruled on the merits and with prejudice.  All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

3.    Findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures hearing held on [•], 2018, are incorporated herein by reference.

4.    Where appropriate herein, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact.

**Approval of the Stalking Horse APA**

5.      The Stalking Horse APA and all of the Transactions contemplated therein are approved.  The failure specifically to include any particular provision of the Stalking Horse APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Stalking Horse APA be authorized and approved in its entirety, with such amendments thereto as may be made by the parties in accordance with this Order.

6.      The Plan Administrator and the Debtors are authorized to (i) take any and all actions necessary and appropriate to execute and deliver, perform under, consummate, implement and effectuate the Stalking Horse APA, together with any and all instruments and documents that may be reasonably necessary or desirable to fully close the Transactions, including the sale to the Buyer of all Purchased Assets, in accordance with the terms and conditions set forth in the Stalking Horse APA and this Order, and to implement and effectuate the terms of the Stalking Horse APA and this Order; (ii) take any and all actions as may be necessary or appropriate to the performance of the Plan Administrator's and the Debtors obligations as contemplated by the Stalking Horse APA and this Order, without any further corporate action or order of this Court; and (iii) assign any and all Assigned Contracts as and when provided in the Stalking Horse APA.

7.      Buyer has no obligation to proceed with the Closing unless and until all conditions precedent to its obligations to do so, as set forth in the Stalking Horse APA, have been met, satisfied or waived in accordance with the terms of the Stalking Horse APA.

8.      The Plan Administrator is hereby authorized and directed to (i) hold the Deposit in accordance with the Stalking Horse APA and (ii) distribute the Deposit pursuant to the terms of the Stalking Horse APA.

9.      All persons and entities are prohibited and enjoined from taking any action that would adversely affect or interfere with, or which would be inconsistent with, the ability of the Plan Administrator, on behalf of the Debtors, to transfer the Purchased Assets to Buyer in accordance with the Stalking Horse APA and this Order.  All amounts, if any, to be paid by the Plan Administrator, on behalf of the Debtors, to Buyer pursuant to the Stalking Horse APA, including any allowed claims for breach thereof, shall (i) constitute allowed administrative expenses pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, (ii) be protected as provided in the Stalking Horse APA and the Bidding Procedures Order, (iii) not be altered, amended, discharged or affected by any plan proposed or confirmed in the Cases without the prior consent of Buyer and (iv) be due and payable if and when any of the Plan Administrator's and Debtors' obligations arise under the Stalking Horse APA without further order of the Court.

10.      At the Closing, the Debtors will be authorized to fully perform under, consummate and implement the terms of the Stalking Horse APA together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Stalking Horse APA, this Order and the Transactions.

11.      Nothing contained in (a) in the chapter 11 Plan confirmed in these Cases, (b) the order confirming the Plan, or (c) any order of any type or kind in these Cases or any related proceedings subsequent to the entry of this Sale Order shall conflict with or derogate from the provisions of the Stalking Horse APA (or any agreement contemplated thereby), this Order, and to the extent of any conflict or derogation between this Order or the Stalking Horse APA (or any agreement contemplated thereby) and such Plan or order, the terms of this Order and the Stalking Horse APA (or any agreement contemplated thereby) shall control.

12.     Each and every federal, state and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transactions, including all agreements entered into in connection therewith, and this Order.

13.     To the extent available under applicable law, Buyer shall be authorized, as of the Closing Date, to operate any license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Purchased Assets and the Assigned Contracts, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are transferred to Buyer as of the Closing Date.

14.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed to Buyer on account of the filing or pendency of the Cases.

## Sale and Transfer Free and Clear of Adverse Interests

15.     Upon Closing (or thereafter as of the filing of any Assigned Contract), all of the Debtors' right, title and interest in and to, and possession of, the Purchased Assets shall be immediately vested in Buyer pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code free and clear of any and all Adverse Interests, with all such Adverse Interests to attach to the net proceeds of the Sale, in the order of their priority, with the same validity, force and effect that they now have against the Purchased Assets, subject with respect to such net proceeds to any rights, claims and defenses the Debtors or any parties in interest may possess with respect thereto. Such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets. All persons or entities, presently or on or after Closing, in possession of some or all of the

Purchased Assets shall surrender possession of the Purchased Assets to Buyer or its respective

designees.

16.     This Order (i) shall be effective as a determination that, as of the Closing no

Adverse Interests other than Assumed Liabilities will be assertable against Buyer or any of its

respective assets (including the Purchased Assets), (ii) shall be effective as a determination that,

as of the Closing (a) the Purchased Assets shall have been transferred to Buyer free and clear of

all Adverse Interests and (b) the conveyances described herein have been effected, and (iii) is and

shall be binding upon entities, including all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents,

trademarks or other intellectual property, administrative agencies, governmental departments,

secretaries of state, federal and local officials and all other persons and entities who may be

required by operation of law, the duties of their office or contract, to accept, file, register or

otherwise record or release any documents or instruments, or who may be required to report or

insure any title or state of title in or to any lease; and each of the foregoing persons and entities

shall accept for filing any and all of the documents and instruments necessary and appropriate to

consummate the Transactions.

17.     Other than the Assumed Liabilities, Buyer shall have no obligations with respect to

any Adverse Interests of the Debtors, and Buyer and its affiliates, successors and assigns are

released from any and all Adverse Interests arising under or out of, in connection with, or in any

way relating to, the Debtors, the Purchased Assets, the ownership, sale or operation of the

Purchased Assets and the business of the Debtors prior to the Closing or the transfer of the

Purchased Assets to Buyer, except for the Assumed Liabilities expressly assumed under the

Stalking Horse APA.  The holders of claims related to the Assumed Liabilities shall have the right

to seek payment directly from Buyer on account of the Assumed Liabilities; *provided*, however,
that Buyer reserves any and all rights, defenses or objections with regard to such Assumed
Liabilities, including, but not limited to, Buyer's rights under the Stalking Horse APA.

18.     Except with respect to the Assumed Liabilities, all persons and entities (and their
respective successors and assigns), including all debt security holders, equity security holders,
affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees,
trade creditors, litigation claimants and other creditors holding Adverse Interests arising under or
out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the
ownership, sale or operation of the Purchased Assets and the business prior to the Closing or the
transfer of Purchased Assets to Buyer, are hereby forever barred, estopped and permanently
enjoined from asserting such Adverse Interests against Buyer, its property or the Purchased Assets.
Following the Closing, no holder of any Adverse Interest shall interfere with Buyer's title to or
use and enjoyment of the Purchased Assets based on or related to any such Adverse Interest, or
based on any action the Plan Administrator may take in the Cases.

19.     If any person or entity that has filed financing statements, mortgages, mechanic's
liens, *lis pendens* or other documents or agreements evidencing Adverse Interests against or in the
Purchased Assets shall not have delivered to the Plan Administrator prior to the Closing of the
Transactions in proper form for filing and executed by the appropriate parties, termination
statements, instruments of satisfaction or releases of all Adverse Interests that the person or entity
has with respect to such Purchased Assets, then only with regard to the Purchased Assets that are
purchased by Buyer pursuant to the Stalking Horse APA and this Order, (i) the Plan Administrator
is hereby authorized to execute and file such statements, instruments, releases and other documents
on behalf of the person or entity with respect to the Purchased Assets, and (ii) Buyer is hereby

authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Adverse Interests against Buyer and the applicable Purchased Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office.

### No Successor or Transferee Liability

20.    Buyer shall not be deemed, as a result of any action taken in connection with the Stalking Horse APA, the consummation of the Transactions, the transfer, or operation or use of the Purchased Assets to: (i) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for Buyer, with respect to any obligations arising after the Closing as an assignee under Assigned Contracts); (ii) have, *de facto* or otherwise, merged with or into the Debtors; or (iii) be an alter ego or a mere continuation or substantial continuation or successor in any respect of the Debtors, including within the meaning of any foreign, federal, state or local revenue, pension, Employee Income Security Act of 1974 ("ERISA"), tax, labor, employment, environmental or other law, rule or regulation (including filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

21.    Except as expressly provided in the Stalking Horse APA with respect to Assumed Liabilities, Buyer shall have no liability whatsoever with respect to the Debtors' (or their predecessors or affiliates) respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as described below, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of labor law, employment law, ERISA and benefits

law, antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on account of any settlement or injunction, or any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing or such later time as Buyer is assigned and assumes any Assigned Contract.

22.    Buyer has given substantial consideration under the Stalking Horse APA for the benefit of the holders of any Adverse Interest.  The consideration given by Buyer shall constitute valid and valuable consideration for the releases of any potential claims of Successor or Transferee Liability of Buyer, which releases shall be deemed to have been given in favor of Buyer by all holders of any Adverse Interests.

23.    Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter, any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceedings against Buyer, or its assets (including the Purchased Assets), or its successors and assigns, with respect to any (i) Adverse Interest or (ii) Successor or Transferee Liability including the following actions with respect to clauses (i) and (ii): (a) commencing or continuing any action or other proceeding pending or threatened; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any Adverse Interest; (d) asserting any setoff, right of subrogation or recoupment of any kind; (e) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated

or taken in respect hereof; or (f) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with such assets.

## Good Faith of Buyer

24.     The Transactions contemplated by the Stalking Horse APA are undertaken by Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Transactions (including the assignment of the Assigned Contracts), unless such authorization and consummation of the Sale are duly and properly stayed pending such appeal.

25.     Buyer is entitled to all the protections and immunities of section 363(m) of the Bankruptcy Code.  There has been no showing that the Plan Administrator or Buyer engaged in any action or inaction that would cause or permit the Transactions to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.

26.     The consideration provided by Buyer for the Purchased Assets under the Stalking Horse APA is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

## Assignment of Assigned Contracts

27.     The Plan Administrator, on behalf of the Debtors, is authorized at the Closing to assign each of the Assigned Contracts in accordance with the Stalking Horse APA and this Order to Buyer free and clear of all Adverse Interests pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code and to execute and deliver to Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to Buyer.

28.     Any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the counterparty to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the Debtors' assignment of such Assigned Contracts in accordance with the Stalking Horse APA but will be effective and binding upon Buyer with respect to any purported assignment for the remaining term of such Assigned Contract. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assignment to Buyer of the Assigned Contracts have been satisfied. Upon the Closing or such later time as is provided in the Stalking Horse APA with respect to the assignment of any Assigned Contract, in accordance with sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assigned Contracts, and such Assigned Contracts shall remain in full force and effect for the benefit of Buyer.

29.     Each non-Debtor counterparty to the Assigned Contracts shall be forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Buyer or their respective property any assignment fee, acceleration, default, breach or claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing or arising by reason of the Closing or the transfer of the Purchased Assets, including any breach related to or arising out of change-in-control in such Assigned Contracts, or any purported written or oral modification to the Assigned Contracts and (ii) asserting against Buyer (or its property, including the Purchased Assets) any claim, counterclaim, breach, or condition asserted or assertable against the Debtors existing as of the Closing or arising by reason of the transfer of the Purchased Assets, except for

the Assumed Liabilities. In addition, without relieving Buyer of its obligations under the Stalking Horse APA, nothing in the Order, the Motion or the Stalking Horse APA shall affect the Debtors' obligations under section 365(d)(3) of the Bankruptcy Code (or Buyer's assumption thereof) prior to the assignment of any Assigned Contracts.

30. Upon the Closing, Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Assigned Contracts, and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assigned Contracts from and after such assignment. There shall be no assignment fees, increases or any other fees charged to Buyer or the Debtors as a result of the assignment of the Assigned Contracts.

31. Buyer has provided adequate assurance of future performance under the Assigned Contracts (including any Assigned Contract that becomes such post-Closing) within the meaning of section 365(f)(2)(B) of the Bankruptcy Code.

**The Sale Does Not Require the Appointment of a Consumer Privacy Ombudsman**

32. Buyer shall be subject to reasonable restrictions by the Plan Administrator in order to comply with the Debtors' privacy policy, which broadly provides that, if the Debtors or any portion of their assets are acquired, the Debtors may share all types of information with the acquiring company. As the Debtors' privacy policy does not prohibit the transfer of personally identifiable information, appointment of a consumer privacy ombudsman is not required.

**Other Provisions**

33. Effective upon the Closing, the Debtors, on behalf of themselves and their respective past, present and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns (collectively, the "Debtor Releasing Parties"), hereby release, remise, acquit and forever discharge Buyer and its past, present and

future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys,

successors and assigns, and each of its and their respective directors, managers, officers,

employees, shareholders, members, agents, representatives, attorneys, contractors, subcontractors,

independent contractors, owners, insurance companies and partners (except, in each case, the

Debtor Releasing Parties) (collectively, in their capacities as parties being released pursuant to this

paragraph 34, the "Buyer Released Parties"), from any and all claims, contracts, demands, causes

of action, disputes, controversies, suits, cross-claims, torts, losses, attorneys' fees and expenses,

obligations, agreements, covenants, damages, liabilities, costs and expenses, whether known or

unknown, whether anticipated or unanticipated, whether claimed or suspected, whether fixed or

contingent, whether yet accrued or not, whether damage has resulted or not, whether at law or in

equity, whether arising out of agreement or imposed by statute or common law of any kind, nature,

or description, including, without limitation as to any of the foregoing, any claim by way of

indemnity or contribution, which any Debtor Releasing Party has, may have had or may hereafter

assert against any Buyer Released Party arising from or related in any way, either directly or

indirectly, to the negotiation, documentation, performance or consummation of the Stalking Horse

APA or any other agreements entered into in connection with the transactions contemplated

thereby; *provided*, *however*, that the foregoing release shall not apply to the Debtors' rights or

Buyer's obligations under this Order or the Stalking Horse APA and/or any other agreements

entered into in connection with the transactions contemplated hereby or thereby.

      34.     Subject to the terms of the Stalking Horse APA, the Stalking Horse APA and any

related agreements may be waived, modified, amended or supplemented by agreement of the Plan

Administrator and Buyer without further action or order of the Bankruptcy Court if it does not

have a material adverse effect on the Debtors.  Any material modification, waiver, amendment or supplement to the Stalking Horse APA must be approved by order of the Bankruptcy Court.

35.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Plan Administrator and the Debtors to the extent necessary, without further order of this Court, to allow Buyer to deliver any notice provided for in the Stalking Horse APA and allow Buyer to take any and all actions permitted or required under the Stalking Horse APA in accordance with the terms and conditions thereof.  Buyer shall not be required to seek or obtain any further relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Stalking Horse APA or any other sale-related document.

36.    All persons, all Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Adverse Interests are hereby barred and estopped from taking any action against Buyer or the Purchased Assets to recover property on account of any Adverse Interests or on account of any Liabilities of the Debtors other than Assumed Liabilities pursuant to the Stalking Horse APA.

37.    The provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of all Adverse Interests shall be self-executing, and neither the Plan Administrator nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

38.    The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Stalking Horse APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors

to Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the sale. This Court retains jurisdiction to compel delivery of the Purchased Assets, to protect Buyer and its assets, including the Purchased Assets, against any Adverse Interests and Successor or Transferee Liability and to enter orders, as appropriate, pursuant to sections 105, 363 or 365 (or other applicable provisions) of the Bankruptcy Code necessary to transfer the Purchased Assets and the Assigned Contracts to Buyer. This Court retains jurisdiction to adjudicate disputes between Buyer and holders of claims related to the Assumed Liabilities regarding the Assumed Liabilities.

39.    The Transactions contemplated hereunder shall not be affected by any bulk sales laws.

40.    Buyer has standing to seek to enforce the terms of this Order.

41.    The Plan Administrator, on behalf of the Debtors, is authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Order.

42.    Notwithstanding the possible applicability of Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9014 or otherwise, this Order shall not be stayed, the terms and conditions of this Order shall be effective immediately upon entry and the Plan Administrator, on behalf of the Debtors, and Buyer are authorized to close the Sale immediately upon entry of this Order. Time is of the essence in closing the Sale, and the Plan Administrator and Buyer intend to close the Sale as soon as practicable. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being dismissed as moot.

43.    The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

44.    The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

45.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

46.    To the extent there are any inconsistencies between the terms of the Bidding Procedures Order, this Order and the Stalking Horse APA, the terms of this Order shall control.

Dated: [•], 2018
    New York, New York

                                        STUART M. BERNSTEIN
                                        UNITED STATES BANKRUPTCY JUDGE