**EXHIBIT 1**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Gawker Media LLC, *et al.*,[1] | Case No. 16-11700 (SMB) |
| Debtors. | (Jointly Administered) |

**ORDER (I) AUTHORIZING AND APPROVING BIDDING PROCEDURES, BREAKUP FEE AND EXPENSE REIMBURSEMENT, (II) APPROVING NOTICE PROCEDURES, (IV) SCHEDULING A SALE HEARING AND (III) APPROVING PROCEDURES FOR ASSIGNMENT OF CERTAIN CONTRACTS**

Upon the motion (the "Motion") of the Plan Administrator[2] for entry of an order (the "Order"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 6004-1 and 6006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), (i) authorizing and approving (a) certain proposed bidding procedures (as attached hereto as **Exhibit 1**, the "Bidding Procedures") governing the submission of competing proposals to purchase the Purchased Assets pursuant to section 363 of the Bankruptcy Code and (b) the Breakup Fee and Expense Reimbursement (together, the "Stalking Horse Bid Protections") to the extent payable pursuant to and on the terms set forth in the Asset Purchase Agreement (as appended to the Bidding Procedures as **Exhibit A** and, together with all exhibits thereto, and as may be further amended, modified or supplemented from time to time in accordance with the terms

---

[1] The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary, Kft. "v.a." (5056). The offices of the Debtors are located at 44 Lynden Street, Rye, NY 10580.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures or the Stalking Horse APA, as applicable.

thereof, the "Stalking Horse APA"), dated as of May 29, 2018, by and among the above-captioned debtors (the "Debtors"), acting through the Plan Administrator, in the above-captioned jointly administered chapter 11 cases (the "Cases") and Didit Holdings, LLC, a Delaware limited liability company (together with its permitted designees, successors and permitted assigns in accordance with the Stalking Horse APA, the "Stalking Horse Bidder"), (ii) approving the form and manner of notice of the sale of the Purchased Assets (the "Sale Notice"), (iii) scheduling a hearing for approval of the sale of the Purchased Assets (the "Sale Hearing") and setting other related dates and deadlines and (iv) approving procedures for the assignment of the Assigned Contracts and the form of and manner of notice of assignment; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their respective equity holders and creditors and all other parties in interest; and after due deliberation, and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and pursuant to Section 8.01(n) of the *Amended Joint Chapter 11 Plan of Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft*.

B. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006, and Local Rules 6004-1 and 6006-1.

D. Good and sufficient notice of the relief granted by this Order has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief

granted by this Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Rules and the Local Rules and all other interested parties.

E.      The Bidding Procedures are fair, reasonable and appropriate and are designed to maximize the value to be received by the Debtors and their respective equity holders and creditors.

F.      The Plan Administrator has demonstrated compelling and sound business justifications for the Debtors entering into the Stalking Horse APA and incurring the administrative obligations arising thereunder or in connection therewith, including the Stalking Horse Bid Protections under the circumstances, timing and procedures set forth therein.

G.      The Plan Administrator's incurrence of the obligations arising under or in connection with the Stalking Horse APA, including the Stalking Horse Bid Protections, are (i) an actual and necessary cost of preserving the assets of the Debtors within the meaning of section 503(b) of the Bankruptcy Code, (ii) of substantial benefit to the Debtors, their respective equity holders and creditors and all other parties in interest, because, among other things, they induced the Stalking Horse Bidder to submit a bid that will serve as a minimum or floor bid for the Purchased Assets, (iii) the product of good faith and arm's-length negotiations among the Plan Administrator and the Stalking Horse Bidder, (iv) reasonable and appropriate in light of the size and nature of the proposed sale and the efforts that have been and will be expended by the Stalking Horse Bidder and (v) necessary to induce the Stalking Horse Bidder to enter into the Stalking Horse APA and to continue to pursue the sale of the Purchased Assets.

H.      The sale of the Purchased Assets as contemplated in the Stalking Horse APA is in the best interests of the Debtors, their respective equity holders and creditors and all other parties in interest, and represents a reasonable exercise of the Plan Administrator's sound business judgment.

16-11700-smb Doc 1141 Filed 06/21/18 Entered 06/21/18 15:24:32 Main Document
Pg 4 of 12

I. The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is reasonably calculated to provide all interested parties with timely and proper notice of the proposed sale, including: (i) the date, time and place of the Auction (if one is held), (ii) the Bidding Procedures and certain dates and deadlines related thereto, (iii) the objection deadline for the sale and the date, time and place of the Sale Hearing, (iv) reasonably specific identification of the assets subject to the proposed sale, (v) instructions for promptly obtaining a copy of the Stalking Horse APA, (vi) representations describing the proposed sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the sale proceeds, (vii) the commitment by the Stalking Horse Bidder to assume certain liabilities of the Debtors solely to the extent set forth in the Stalking Horse APA and (viii) notice of the assignment of the Assigned Contracts to the Stalking Horse Bidder pursuant to the Stalking Horse APA (or to another Successful Bidder selected at the Auction, if any) and the procedures and deadlines for objecting thereto. No other or further notice of the proposed sale shall be required.

J. The Assignment Notice attached hereto as **Exhibit 3** is reasonably calculated to provide all non-Debtor counterparties to the Debtors' Assigned Contracts with proper notice of the assignment of their Assigned Contract and the related assignment procedures; provided that the mere listing of any Assigned Contract on the Assignment Notice does not require or guarantee that such Assigned Contract will be assigned, and all rights of the Debtors with respect to such Assigned Contracts are reserved.

K. The Bidding Procedures comply with the requirements of Local Rule 6004-1.

L. Entry of this Order is in the best interests of the Debtors, their respective equity holders and creditors and all other interested parties.

-4-

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is hereby granted and approved to the extent set forth herein.

### The Bidding Procedures

2. The Bidding Procedures, attached hereto as **Exhibit 1**, are approved, and the Plan Administrator is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures. The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order will not diminish or impair the effectiveness of such provision.

3. Any objections to the Motion or the relief requested therein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits.

4. The Bidding Procedures shall govern the submission, receipt and analysis of all Bids, and any party desiring to submit a higher or better offer shall do so strictly in accordance with the terms of this Order and the Bidding Procedures.

5. The following dates and deadlines regarding competitive bidding are hereby established (subject to modification in accordance with the Bidding Procedures):

   a. **Qualified Bid Deadline: July 9, 2018 at 12:00 p.m. (prevailing Eastern Time)** is the deadline by which all Qualifying Bid Documents and Qualified Bids must be **actually received** by the Debtors' investment banker and legal advisors, as set forth in the Bidding Procedures (the "Bid Deadline"); and

   b. **Auction**: **July 12, 2018 at 10:00 a.m. (prevailing Eastern Time)** is the date and time the Auction, if one is needed, will be held at the offices of Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036.

6. The Stalking Horse Bidder is a Qualified Bidder, the Stalking Horse APA is a Qualified Bid and the Stalking Horse Bidder is authorized to submit any Overbids during the Auction at any time, in each case, pursuant to the Bidding Procedures for all purposes.

7. Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction. As described in the Bidding Procedures, if the Plan Administrator does not receive any Qualified Bids other than the Stalking Horse Bidder's Bid, the Plan Administrator will not hold the Auction, the Stalking Horse Bidder will be deemed the Successful Bidder and the Plan Administrator will seek final approval at the Sale Hearing of the sale of the Purchased Assets to the Stalking Horse Bidder, in accordance with the terms of the Stalking Horse APA.

8. If the Auction is conducted, each Qualified Bidder participating in the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding process or the sale of the Purchased Assets.

### The Stalking Horse Bid Protections

9. The Stalking Horse Bid Protections as set forth in the Stalking Horse APA, include (i) the Breakup Fee in an amount equal to $50,000, 4.42% of the Purchase Price, and (ii) the Expense Reimbursement for the Stalking Horse Bidder's reasonable and documented out-of-pocket costs and expenses up to a cap of $100,000, and the provisions of the Stalking Horse APA relating thereto, are hereby approved. The Debtors are required to pay the Stalking Horse Bid Protections to the Stalking Horse Bidder to the extent due and payable under the Stalking Horse APA, and the Stalking Horse Bidder will not be deemed to waive the Stalking Horse Bid Protections by rebidding at the Auction. Pursuant to the Stalking Horse APA, the Stalking Horse Bidder will be entitled to receive a credit for the full amount of the Stalking Horse Bid Protections at each round of the Auction.

10. The Debtors' obligations arising under or in connection with the Stalking Horse APA, including with respect to the Stalking Horse Bid Protections, shall (i) survive termination of the Stalking Horse APA, (ii) constitute an administrative expense claim under sections 503(b) and

-6-

507(a)(2) of the Bankruptcy Code, and (iii) be payable under the terms and conditions of the Stalking Horse APA and this Order without any further order of this Court.

11. Each Debtor's obligations relating to the Stalking Horse Bid Protections arising under or in connection with the Stalking Horse APA shall be binding and enforceable against each such Debtor and its respective estate, and, as applicable, subject to section 363(f) of the Bankruptcy Code, and excluding any Qualified Bidder that purchases the Purchased Assets, (i) any of its successors or assigns, (ii) any trustee, examiner, or other representative of the Debtors, (iii) the reorganized Debtors and (iv) any other entity vested or revested with any right, title or interest in or to a material portion of the assets directly or indirectly owned by the Debtors or any other person claiming any rights in or control over a material portion of such assets (each entity listed in subsections (i)-(iv), a "Debtor Successor"), as if such Debtor Successor was the Debtors.

## Hearing and Objection Deadline

12. The Sale Hearing, shall take place in this Court on **July 17, 2018 at 10:00 a.m. (prevailing Eastern Time)**; provided that the Sale Hearing may be adjourned or rescheduled without further notice other than announcement in open Court or by the filing of a notice on the docket of these Cases or a notice of agenda. Any obligations of the Debtors set forth in the Stalking Horse APA that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the Stalking Horse APA are authorized as set forth herein and are fully enforceable as of the date of entry of this Order.

13. The deadline to file objections to the transactions contemplated by the Stalking Horse APA or to entry of the Sale Order is **July 16, 2018 at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline"). Objections, if any, **must**: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules and any orders of the Court;

(iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with the Court and served so as to be **actually received** no later than the Sale Objection Deadline, as applicable, by the following parties (the "Objection Notice Parties"): (a) the Debtors: Gawker Media Group, Inc., c/o The Boathouse Group, LLC, 44 Lynden Street, Rye, NY 10580, Attn: William D. Holden; (b) counsel to the Plan Administrator for the Debtors: Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Gregg M. Galardi, Esq. and Kimberly J. Kodis, Esq.; (c) the Office of the United States Trustee for the Southern District of New York: 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Greg Zipes, Esq. & Susan Arbeit, Esq.; Fax: (212) 668-2255; (d) counsel to the Stalking Horse Bidder: Stalking Horse Bidder, Davis & Gilbert LLP, 1740 Broadway, New York, NY 10019, Attn: Jonathan L. Sagot, Esq; and (e) counsel to the Gawker Media Contingent Proceeds creditor, Cohen & Gresser LLP, 800 Third Avenue, 21st Floor, New York, NY 10022, Attn: Daniel H. Tabak, Esq.

14. Notwithstanding the foregoing, counterparties to the Debtors' Assigned Contracts shall be permitted to object at the Sale Hearing to the assignment of an Assigned Contract *on the basis that the Debtors have not carried their burden to provide adequate assurance of future performance by the Stalking Horse Bidder or Back-Up Bidder as required by section 365 of the Bankruptcy Code*.

15. Failure to object to the relief requested in the Motion by the Sale Objection Deadline shall be deemed to be "consent" for purposes of section 363(f) of the Bankruptcy Code.

**Sale Notice and Related Relief**

16. The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved. Within three (3) days of the entry of this Order, the Plan Administrator shall cause the Sale Notice to be served upon (i) the US Trustee, (ii) parties who are known or reasonably believed

to have asserted any lien, encumbrance, claim or other interest in the Debtors' assets that are the subject of the proposed sale of the Purchased Assets, if any, (iii) all parties who have filed a notice of appearance and request for service of papers in the Cases pursuant to Bankruptcy Rule 2002, (iv) each counterparty to the Assigned Contracts, (v) all applicable state and local taxing authorities, including the Internal Revenue Service, (vi) each governmental agency that is an interested party with respect to the sale of the Purchased Assets contemplated by the Stalking Horse APA and the transactions proposed thereunder, (vii) the Securities and Exchange Commission, and (viii) counsel to the Stalking Horse Bidder.

### The Sale Does Not Require the Appointment of a Consumer Privacy Ombudsman

17. In connection with the sale of the Purchased Assets pursuant to the Stalking Horse APA, the Debtors and Plan Administrator shall be required to abide by their privacy policies in place as of the date of the Stalking Horse APA, as such policies may be amended from time to time. Accordingly, no consumer privacy ombudsman need be appointed in connection with the sale under section 363(b)(1) of the Bankruptcy Code.

### Assignment Procedures

18. The procedures set forth below regarding the assignment of certain Assigned Contracts that may be assigned to the Stalking Horse Bidder (or other Successful Bidder selected at the Auction, if any) pursuant to section 365(f) of the Bankruptcy Code in connection with the sale of the Purchased Assets are hereby approved (the "Assignment Procedures"):

    a. **Assignment Notice**. The Assignment Notice, substantially in the form attached hereto as **Exhibit 3**, is hereby approved. On or before the date that is two (2) business days following the date of this Order, the Plan Administrator shall file with the Court and serve via first class mail the Assignment Notice on all non-Debtor counterparties to all Assigned Contracts, and their respective known counsel, and provide a copy of same to the Stalking Horse Bidder. The Assignment Notice shall inform each recipient that its respective Assigned Contract will be designated by the

     Stalking Horse Bidder as assigned, and, to the extent applicable (i) the title of the Assigned Contract, (ii) the name of the counterparty to the Assigned Contract, (iii) the identity of the Stalking Horse Bidder and (iv) the deadline by which any such Assigned Contract counterparty may file an objection to the assignment, and the procedures relating thereto.; <u>provided</u>, <u>however</u>, that service of an Assignment Notice does not constitute admission that such Assigned Contract is an executory contract or unexpired lease.

  b. **Adequate Assurance**. Upon request by a counterparty under any Assigned Contract, the Plan Administrator shall serve, by electronic mail, the evidence of adequate assurance of future performance under the Assigned Contracts provided by the Stalking Horse Bidder, including the legal name of the proposed assignee, the proposed use of any leased premises, the proposed assignee's financial ability to perform under the Assigned Contracts and a contact person with the proposed assignee that counterparties may contact if they wish to obtain further information regarding the Stalking Horse Bidder.

  c. **Objections**. Objections, if any, to the proposed assignment of any Assigned Contract on the grounds that the Debtors have not carried their burden to provide adequate assurance of future performance by the Stalking Horse Bidder or Back-Up Bidder as required by section 365 of the Bankruptcy Code shall be heard at the Sale Hearing.

  d. **Dispute Resolution**. Any objection to the proposed assignment of an Assigned Contract in connection with the proposed sale that remains unresolved as of the Sale Hearing shall be heard at the Sale Hearing (or at a later date as fixed by the Court) provided that any such objection may be adjourned, in full or in part, by the Plan Administrator to a later date by listing such adjournment in a notice of agenda or other notice filed on the docket of the Cases and served on the affected counterparty.

19. *Any party who fails to object to the assignment of an Assigned Contract before or at the Sale Hearing (i) shall be forever barred from objecting thereto, including (a) making any demands for additional cure amounts or monetary compensation on account of any alleged defaults for the period prior to the applicable objection deadline against the Debtors or the Stalking Horse Bidder or other Successful Bidder selected at the Auction, if any, with respect to any such Assigned Contract and (b) asserting that the Stalking Horse Bidder or other Successful Bidder has not provided adequate assurance of future performance as of the date of the Sale*

-10-

*Order and (ii) shall be deemed to consent to the sale of the Purchased Assets and the assignment of the Assigned Contracts as approved by the Sale Order.*

### Other Relief Granted

20. The Plan Administrator is authorized and directed to enter, on behalf of the Debtors, into the Stalking Horse APA attached hereto as **Exhibit 4** and to take any and all actions necessary or appropriate to implement the Stalking Horse APA.

21. The Plan Administrator, on behalf of the Debtors, is authorized to execute and deliver all instruments and documents and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

22. The Good Faith Deposits of the Stalking Horse Bidder and any other bidder, and any other amounts deposited pursuant to the applicable purchase agreement (which, in the case of the Stalking Horse Bidder, shall be the Stalking Horse APA), shall not become property of the Debtors unless the Deposit is otherwise due and payable to the Debtors in accordance with the applicable purchase agreement (which, in the case of the Stalking Horse Bidder, shall be the Stalking Horse APA). The agreements with respect to the Deposit set forth in the Stalking Horse APA shall be binding and enforceable against the Debtors in all respects and the Debtors are authorized and directed to perform their obligations thereunder.

23. In the event there is a conflict between this Order and the Motion or the Stalking Horse APA, this Order shall control and govern.

24. This Order shall be binding in all respects upon any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy case or upon a conversion to chapter 7 under the Bankruptcy Code.

-11-

25. The Stalking Horse Bidder has standing to enforce the terms of this Order insofar as they relate to the contractual rights of the Stalking Horse Bidder under the Stalking Horse APA.

26. This Order shall be immediately effective and enforceable upon entry hereof, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

27. The requirements set forth in Local Rule 9013-1 are satisfied by the contents of the Motion.

28. The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

29. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

**Dated: June 21, 2018**
    **New York, New York**

/s/ STUART M. BERNSTEIN
STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY
JUDGE

-12-