# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Gawker Media LLC, *et al.*,[1] | Case No. 16-11700 (SMB) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 1135, 1141** |

### ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' GAWKER. COM ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES, (II) APPROVING THE ASSET PURCHASE AGREEMENT AND (III) AUTHORIZING THE DEBTORS TO ASSIGN CERTAIN EXECUTORY CONTRACTS

Upon the motion (the "Motion")[2] of the Plan Administrator for the entry of an order, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and rules 1005, 2002, 6004, 6006, 9007, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving the Asset Purchase Agreement, dated May 29, 2018, by and among Gawker Media LLC, Gawker Media Group, Inc., and Gawker Hungary, Kft. "v.a.", f/k/a Kinja, Kft., the debtors (collectively, the "Debtors"), acting through the Plan Administrator, and Didit Holdings LLC; (ii) authorizing and approving the sale (the "Sale") of the Purchased Assets (as defined below), free and clear of all interests to the maximum extent permitted under section 363(f) of the Bankruptcy Code; (iii) authorizing the assignment of certain executory contracts of the Debtors in accordance with the Bidding Procedures Order (as defined herein) and this Order; and (iv) granting other relief; and the Court having entered an order

---

[1]     The last four digits of the taxpayer identification numbers of the Debtors are: Gawker Media LLC (0492); Gawker Media Group, Inc. (3231); and Gawker Hungary, Kft. "v.a." (5056). The offices of the Debtors are located at 44 Lynden Street, Rye, NY 10580.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures or the Asset Purchase Agreement (each, as defined below), as applicable.

approving the bidding procedures and granting certain related relief on June 21, 2018 [Docket No.

1141] (the "Bidding Procedures Order"); and an auction (the "Auction") having been held on July

12, 2018 in accordance with the Bidding Procedures Order; and BDG GMGI Acquisition, Inc. (the

"Buyer") having been deemed the Successful Bidder by the Plan Administrator pursuant to the

Bidding Procedures Order; and the Asset Purchase Agreement by the Debtors, acting through the

Plan Administrator, and Buyer (together with its permitted designees, successors and permitted

assigns), dated July 12, 2018 (substantially in the form attached hereto as **Exhibit 1**, and as may

be amended, modified or supplemented from time to time in accordance with the terms thereof,

the "Asset Purchase Agreement"), whereby the Debtors have agreed to sell, and Buyer has agreed

to acquire, substantially all of the Debtors' assets related to the Gawker.com website (collectively,

and as specifically set forth and defined in the Asset Purchase Agreement, the "Purchased Assets")

other than the Excluded Assets, and the Debtors have agreed to transfer and Buyer has agreed to

assume certain of the Debtors' liabilities (collectively, and as specifically set forth and defined in

the Asset Purchase Agreement, the "Assumed Liabilities") (collectively, and including all actions

taken or required to be taken in connection with the implementation and consummation of the

Asset Purchase Agreement, the "Transactions") having been deemed the Successful Bid by the

Plan Administrator pursuant to the Bidding Procedures Order; and Online Logo Maker LLC (the

"Back-Up Bidder") having been deemed the Back-Up Bidder by the Plan Administrator pursuant

to the Bidding Procedures Order; and the Asset Purchase Agreement by the Debtors, acting

through the Plan Administrator, and the Back-Up Bidder (together with its permitted designees,

successors and permitted assigns) dated July 12, 2018 (substantially in the form attached hereto as

**Exhibit 2**, and as may be amended, modified or supplemented from time to time in accordance

with the terms thereof, the "Back-Up Asset Purchase Agreement"), having been deemed the Back-

Up Bid by the Plan Administrator pursuant to the Bidding Procedures Order; and the Court having

conducted a hearing on the Motion on July 17, 2018 (the "Sale Hearing"); and the Court having

reviewed and considered the Motion and other evidence submitted in support thereof; and having

heard statements of counsel and the evidence presented in support of the relief requested at the

Sale Hearing; and it appearing that due notice of the Motion, the Asset Purchase Agreement, the

Back-Up Asset Purchase Agreement, the Bidding Procedures Order and the Auction has been

provided; and it appearing that the relief requested in the Motion is in the best interests of the

Debtors their stakeholders and all other parties in interest; and it appearing that the Court has

jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in

the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due

deliberation thereon,

**THE COURT HEREBY FINDS AS FOLLOWS:**

**Jurisdiction, Venue, Statutory Bases and Final Order**

A.      This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C.

§§ 157 and 1334 and pursuant to Section 8.01(n) of the *Amended Joint Chapter 11 Plan of*

*Liquidation for Gawker Media Group, Inc., Gawker Media LLC, and Gawker Hungary Kft.*

[Docket No. 576] (the "Plan").

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may

enter a final order consistent with Article III of the United States Constitution.  Venue of this

proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory and legal predicates for the relief requested in the Motion and

provided for herein are sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy

Rules 1005, 2002, 6004, 6006, 9007, 9014 and 9019.

D.    ~~This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rules 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.~~  (SMB: 7/19/2018)

### Notice of the Transactions, Asset Purchase Agreement, Sale Hearing, and Auction

E.    Proper, timely, adequate and sufficient notice of the Motion and the relief requested therein, the Auction, the Sale Hearing and the Transactions has been afforded in  accordance  with section 363 of the  Bankruptcy Code, Bankruptcy Rules  2002,  6004,  9007,  9008 and 9014 and  the  Bidding  Procedures Order.  *See* Docket Nos. 1137, 1144, 1146.

F.    The disclosures made by the Plan Administrator concerning the Asset Purchase Agreement, the Auction, the Transactions and the Sale Hearing were proper, complete and adequate.

G.    The Plan Administrator has filed and served assignment notices (the "Assignment Notices") upon all non-Debtor counterparties to all Assigned Contracts notifying such parties that the Plan Administrator, on behalf of the Debtors, may seek to assign such contracts on the Closing Date of the Sale as provided in the Asset Purchase Agreement.  *See* Docket No. 1144.

### Highest and Best Offer

H.    ~~As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing.~~ (SMB: 7/19/2018) The Plan Administrator conducted a marketing process in accordance with, and has otherwise complied in all material respects with, the Bidding Procedures Order.  The Bidding Procedures

were non-collusive and substantively and procedurally fair to all parties.  All interested persons and entities have been afforded a full, fair and reasonable opportunity to (i) conduct due diligence investigations, (ii) submit higher or otherwise better bids to purchase the assets of the Debtors and (iii) object and be heard in connection with the Sale Motion and the relief granted by this Order. The Auction contemplated by the Bidding Procedures was held on July 12, 2018.  At the conclusion of the Auction, Buyer was selected by the Plan Administrator as the Successful Bidder and the Back-Up Bidder was selected by the Plan Administrator as the Back-Up Bidder.

I.    In the event that the Debtors consummate the Transactions with the Back-Up Bidder, the Back-Up Bidder shall be deemed, and have all of the rights, protections and privileges of, the Successful Bidder or Buyer for purposes of this Order, the Back-Up Asset Purchase Agreement shall be deemed the Asset Purchase Agreement for purposes of this Order, and the Back-Up Bidder shall be treated in all respect as the Successful Bidder or Buyer under the terms of this Order.

J.    The Purchased Assets were adequately marketed by the Plan Administrator, the consideration provided by Buyer under the Asset Purchase Agreement constitutes or provides the highest or otherwise best offer and provides fair and reasonable consideration to the Debtors for the sale of all Purchased Assets and the assumption of all Assumed Liabilities, ~~and the performance of the other covenants set forth in the Asset Purchase Agreement will provide a greater benefit for the Debtors than would be provided by any other available alternative. Buyer is the Successful Bidder for the Purchased Assets in accordance with the Bidding Procedures Order.  The Plan Administrator's determination that the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets is a valid and sound exercise of the Plan Administrator's business judgment.  Buyer has complied in all~~

-5-

~~respects with the Bidding Procedures Order and any other applicable order of this Court in negotiating and entering into the Asset Purchase Agreement. The Sale and Asset Purchase Agreement likewise comply with the Bidding Procedures Order and all other applicable orders of this Court.~~ **(SMB: 7/19/2018)**

K.      ~~Approval of the Motion and the Asset Purchase Agreement and the~~ Consummation of the **Asset Purchase Agreement and** Transactions contemplated thereby is in the best interests of the Debtors **and their estates and support by~~, their respective equity holders and creditors and other parties in interest and there is substantial risk of deterioration of the value of the Purchased Assets if the Sale is not consummated quickly. The Debtors and Plan Administrator have demonstrated (i) good, sufficient and~~** sound business reasons and justifications. **(SMB: 7/19/2018)** ~~for entering into the Transactions and the performance of their obligations under the Asset Purchase Agreement and (ii) compelling circumstances for the sale of the Purchased Assets to Buyer pursuant to section 363(b) of the Bankruptcy Code and the Plan. Such business reasons include the facts that (i) the Debtors' Plan expressly contemplated the sale of the Purchased Assets after the Plan was consummated; (ii) the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets; (iii) the Asset Purchase Agreement and the consummation of the Transactions contemplated thereby present the best opportunity to realize the value of the Purchased Assets and avoid decline and devaluation of the Purchased Assets; and (iv) unless the sale of the Purchased Assets is consummated expeditiously as provided for in the Motion and pursuant to the Asset Purchase Agreement, equity holders' recoveries may be diminished.~~

L. ~~Entry of an order approving the Asset Purchase Agreement and all the provisions thereof is a necessary condition precedent to Buyer's consummation of the Transactions~~. **(SMB: 7/19/2018)**

### Arms' Length Sale and Good Faith Buyer

M. The Asset Purchase Agreement and the Transactions contemplated thereunder were proposed, negotiated and entered into by and between the Plan Administrator, on behalf of the Debtors, on the one hand, and Buyer, on the other hand, without collusion or fraud of any kind, in good faith and at arm's length. **(SMB: 7/19/2018)**, ~~Buyer has otherwise proceeded in good faith in connection with this proceeding and Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and the court decisions thereunder. There has been no showing that the Plan Administrator or Buyer have engaged in any action or inaction that would cause or permit the Asset Purchase Agreement or the Transactions to be avoided or impose any costs or damages under section 363(n) of the Bankruptcy Code. Specifically, Buyer has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among the bidders. In addition, none of Buyer or its respective affiliates, present or contemplated members, officers, directors, partners, shareholders or any of their respective heirs, successors and assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.~~ **(SMB: 7/19/2018)**

### ~~No Fraudulent Transfer~~

N. ~~The consideration provided by Buyer pursuant to the Asset Purchase Agreement for its purchase of the Purchased Assets, the assumption of the Assumed Liabilities and the performance of the covenants contained in the Asset Purchase Agreement constitute reasonably equivalent value and~~ **(SMB: 7/19/2018)**

O. ~~fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, and under the laws of the United States, any state, territory, possession thereof or the District of Columbia.~~ (SMB: 7/19/2018)

P. ~~There has been no showing that the Plan Administrator, on behalf of the Debtors, or Buyer (i) has entered into the Asset Purchase Agreement or proposes to consummate the Transactions for the purpose of hindering, delaying or defrauding the Debtors' present or future creditors or (ii) is entering into the Asset Purchase Agreement or proposing to consummate the Transactions fraudulently, for the purpose of statutory or common law fraudulent conveyance and fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.~~ (SMB: 7/19/2018)

Q. ~~Except as Buyer expressly certifies pursuant to Section 2.02(b)(iv)(1) of the Asset Purchase Agreement, by virtue of the consummation of the Transactions contemplated by the Asset Purchase Agreement, (i) Buyer is not a continuation of the Debtors, there is no continuity between Buyer and the Debtors, there is no common identity between the Debtors and Buyer, there is no continuity of enterprise between the Debtors and Buyer, Buyer is not a mere continuation of the Debtors, and Buyer does not constitute a successor to the Debtors, (ii) Buyer is not holding itself out to the public as a continuation of the Debtors and (iii) the Transactions do not amount to a consolidation, merger or *de facto* merger of Buyer and the Debtors.~~ (SMB: 7/19/2018)

**Validity of Transfer**

R.        ~~The Plan Administrator of the Debtors and the board of directors or equivalent of Buyer have authorized the execution and delivery of the Asset Purchase Agreement, the sale of all Purchased Assets to Buyer and the assumption of all Assumed Liabilities to Buyer.  The Plan Administrator and Buyer (i) have full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, as applicable, (ii) have all of the power and authority necessary to consummate the Transactions and (iii) have taken all action necessary to authorize and approve the Asset Purchase Agreement and to consummate the Transactions, and no further consents or approvals are required for the Plan Administrator or Buyer to consummate the Transactions contemplated by the Asset Purchase Agreement, except as otherwise set forth therein.~~ **(SMB: 7/19/2018)**

S.        The consummation of the Sale and Transactions is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), 363(n) and 365(f)(2) of the Bankruptcy Code, and with respect to the Assigned Contracts, all of the applicable requirements of such sections have been or will be complied with in respect of the Transactions as of the effective date of assignment.

T.        The Purchased Assets constitute property of the Debtors and title thereto is presently vested in the Debtors pursuant to the Plan and within the meaning of section 541(a) of the Bankruptcy Code.  The sale of the Purchased Assets to Buyer will be, as of the Closing Date or such later date as such Purchased Assets are transferred under the Asset Purchase Agreement, a legal, valid and effective transfer of such assets, and each transfer and assignment vests or will vest Buyer with all right, title and interest of the Debtors to the Purchased Assets.

**Section 363 Is Satisfied**

U.       The Plan Administrator, on behalf of the Debtors, may sell and assign the Purchased

Assets, and the Transactions will not subject Buyer or any of Buyer's assets to any liability for any

Adverse Interests (as defined below) whatsoever (including, without limitation, under any theory

of equitable law, antitrust, or successor or transferee liability), because, with respect to each

creditor asserting an Adverse Interest, one or more of the standards set forth in sections 363(f)(1)-

(5) of the Bankruptcy Code has been satisfied.  Those holders of Adverse Interests who did not

object or who withdrew their objections to the Sale, the Transactions or the Assignment Notices

are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.

All holders of Adverse Interests are adequately protected—thus satisfying section 363(e) of the

Bankruptcy Code—by having their Adverse Interests, if any, attach to the proceeds of the Sale, in

the same order of priority and with the same validity, force and effect that such Adverse Interest

holder had before the Sale, subject to any rights, claims and defenses of the Debtors, as applicable,

or as otherwise provided herein.

V.       ~~Except as set forth in Section 9.07 of the Asset Purchase Agreement, nothing
in the Asset Purchase Agreement creates any third party beneficiary rights in any person or
entity not a party to the Asset Purchase Agreement.~~ (SMB: 7/19/2018)

W.       Buyer would not have entered into the Asset Purchase Agreement and would not

consummate the sale of all Purchased Assets, thus adversely affecting the Debtors, their respective

equity holders and creditors and other parties in interest, if the sale of the Purchased Assets was

not free and clear of all Adverse Interests or if Buyer would be liable for any Adverse Interests.

## Assignment of the Assigned Contracts

X.     The assignment of the Assigned Contracts pursuant to the terms of the Bidding Procedures Order, this Order and the Asset Purchase Agreement are integral to the Asset Purchase Agreement, are in the best interests of the Debtors and their respective equity holders and creditors and other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Plan Administrator.

Y.     Buyer has provided adequate assurance of its future performance under the relevant Assigned Contracts within the meaning of section 365(f)(2)(B) of the Bankruptcy Code.

Z.     No default exists in the Debtors' performance under the Assigned Contracts as of the date of the Closing.

## Circumstances Justifying Waiver of Stay

AA.     The Closing shall occur no later than 10:00 a.m. (New York City time) on August 2, 2018 (the "Termination Date").

BB.     Time is of the essence.  To maximize the value of the Debtors' assets, it is critical that the Transactions close within the time constraints set forth in the Asset Purchase Agreement. Absent a waiver of the stay, the Termination Date risks falling within the fourteen day period as contemplated by Bankruptcy Rule 4001 (a)(3).  Accordingly, there is cause to waive the stay contemplated by Bankruptcy Rules 4001, 6004, and 6006.  In addition, no objections have been announced to the Court at the Sale Hearing with respect to the Motion or the relief requested therein.

CC.     ~~The Plan Administrator has demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale other than in the ordinary course of business, in that, among other things, the immediate~~

~~implementation of this Order and the consummation of the Sale are both necessary to~~ ~~preserve and maximize the value of the Debtors' assets for the benefit of the Debtors and~~ ~~their respective equity holders and creditors.~~ **(SMB: 7/19/2018)**

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

**General Provisions**

1.      The Motion is granted and approved to the extent set forth herein.

2.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court prior to the date hereof or as resolved in this Order, and all reservations of rights included therein, are hereby overruled on the merits and with prejudice.  All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

3.      Findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures hearing held on May 29, 2018, are incorporated herein by reference.

4.      Where appropriate herein, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact.

**Approval of the Asset Purchase Agreement**

5.      The Asset Purchase Agreement and all of the Transactions contemplated therein are approved, **and the (SMB: 7/19/2018)** ~~The failure specifically to include any particular~~ ~~provision of the Asset Purchase Agreement in this Order shall~~ ~~not diminish or impair the~~ ~~effectiveness of such provision, it being the intent of the Court that the Asset Purchase~~

~~Agreement be authorized and approved in its entirety, with such amendments thereto as may~~ ~~be made by the parties in accordance with this Order.~~ (SMB:7/19/2018)

6.      The Plan Administrator and the Debtors are authorized to (i) take any and all actions necessary and appropriate to execute and deliver, perform under, consummate, implement and effectuate the Asset Purchase Agreement~~, together with any and all instruments and documents~~ ~~that may be reasonably necessary or desirable to fully close the Transactions, including the~~ ~~sale to the Buyer of all Purchased Assets, in accordance with the terms and conditions set~~ ~~forth in the Asset Purchase Agreement and this Order, and to implement and effectuate the~~ ~~terms of the Asset Purchase Agreement and this Order; (ii) take any and all actions as may~~ ~~be necessary or appropriate to the performance of the Plan Administrator's and the Debtors~~ ~~obligations as contemplated by the Asset Purchase Agreement and this Order, without any~~ ~~further corporate action or order of this Court; and (iii) assign any and all Assigned~~ ~~Contracts as and when provided in the Asset Purchase Agreement.~~ (SMB :7/19/2018)

7.      ~~Buyer has no obligation to proceed with the Closing unless and until all~~ ~~conditions precedent to its obligations to do so, as set forth in the Asset Purchase Agreement,~~ ~~have been met, satisfied or waived in accordance with the terms of the Asset Purchase~~ ~~Agreement.~~

8.      ~~The Plan Administrator is hereby authorized and directed to (i) hold the~~ ~~Deposit provided by the Successful Bidder in accordance with the Asset Purchase Agreement~~ ~~and (ii) distribute that Deposit pursuant to the terms of the Asset Purchase Agreement.  The~~ ~~Plan Administrator is hereby authorized and directed to (i) hold the Deposit provided by the~~ ~~Back-Up Bidder in accordance with the Back-Up Asset Purchase Agreement and (ii)~~

~~distribute that Deposit pursuant to the terms of the Back-Up Asset Purchase Agreement.~~
**(SMB: 7/19/2018)**

9.      All persons and entities are prohibited and enjoined from taking any action that would adversely affect or interfere with, or which would be inconsistent with, the ability of the Plan Administrator, on behalf of the Debtors, to transfer the Purchased Assets to Buyer in accordance with the Asset Purchase Agreement and this Order.  All amounts, if any, to be paid by the Plan Administrator, on behalf of the Debtors, to Buyer pursuant to the Asset Purchase Agreement, including any allowed claims for breach thereof, shall (i) constitute allowed administrative expenses pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, (ii) be protected as provided in the Asset Purchase Agreement and the Bidding Procedures Order, (iii) not be altered, amended, discharged or affected by the Plan confirmed in the Chapter 11 Cases without the prior consent of Buyer and (iv) be due and payable if and when any of the Plan Administrator's and Debtors' obligations arise under the Asset Purchase Agreement without further order of the Court.

10.      Nothing contained in (a) in the chapter 11 Plan confirmed in these Chapter 11 Cases, (b) the order confirming the Plan, or (c) any order of any type or kind in these Chapter 11 Cases or any related proceedings subsequent to the entry of this Sale Order shall conflict with or derogate from the provisions of the Asset Purchase Agreement (or any agreement contemplated thereby), this Order, and to the extent of any conflict or derogation between this Order or the Asset Purchase Agreement (or any agreement contemplated thereby) and such Plan or order, the terms of this Order and the Asset Purchase Agreement (or any agreement contemplated thereby) shall control.

11.    ~~Each and every federal, state and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transactions, including all agreements entered into in connection therewith, and this Order.~~ **(SMB: 7/19/2018)**

12.    To the extent available under applicable law, Buyer shall be authorized, as of the Closing Date, to operate any license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Purchased Assets and the Assigned Contracts, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are transferred to Buyer as of the Closing Date.

13.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed to Buyer on account of the filing or pendency of the Chapter 11 Cases.

**Sale and Transfer Free and Clear of Adverse Interests**

14.    Upon Closing (or thereafter as of the filing of any Assigned Contract), all of the Debtors' right, title and interest in and to, and possession of, the Purchased Assets shall be immediately vested in Buyer pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code free and clear, to the maximum extent permitted under section 363(f) of the Bankruptcy Code, **of all liens, claims, interests and encumbrances ("Adverse Interests") (SMB: 7/19/2018)** ~~any and all interests, including, without limitation, liens (as such term is defined in section 101(37) of the Bankruptcy Code, including, without limitation, any liens arising out of bulk transfer law), debts, claims (as that term is defined in section 101(5) of the Bankruptcy Code) liabilities, obligations, costs, expenses, causes of action, avoidance actions,~~

-15-

~~demands, guaranties, options, rights, contractual commitments, settlements, injunctions,~~ ~~restrictions, interests, encumbrances, reclamation rights, and similar matters of any kind~~ ~~whatsoever, whether known or unknown, fixed or contingent, or arising prior to or~~ ~~subsequent to the commencement of these Chapter 11 Cases and whether imposed by~~ ~~agreement, understanding, law, equity or otherwise (each of the foregoing collectively or~~ ~~individually, and including to the extent not specified above, Successor or Transferee~~ ~~Liability (as defined in paragraph 20 below), including any and all claims and causes of~~ ~~action of defamation, libel or slander with respect to any content published by the Debtors~~ ~~prior to Closing, but excluding Assumed Liabilities, the "Adverse Interests"),~~ **(SMB: 7/19/2018)** with all such Adverse Interests to attach to the net proceeds of the Sale, in the order of their priority, with the same validity, force and effect that they now have against the Purchased Assets, subject with respect to such net proceeds to any rights, claims and defenses the Debtors or any parties in interest may possess with respect thereto.  Such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets.  ~~All persons or entities, presently~~ ~~or on or after Closing, in possession of some or all of the Purchased Assets shall surrender~~ ~~possession of the Purchased Assets to Buyer or its respective designees.~~ **(SMB: 7/19/2018)**

15.    This Order (i) shall be effective as a determination that, as of the Closing no Adverse Interests other than Assumed Liabilities will be assertable against Buyer or any of its respective assets (including the Purchased Assets), (ii) shall be effective as a determination that, as of the Closing, the conveyances described herein have been effected, and (iii) is and shall be binding upon entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of

state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Transactions.

16.    ~~Other than the Assumed Liabilities, Buyer shall have no obligations with respect to any Adverse Interests of the Debtors, and Buyer and its affiliates, successors and assigns are released from any and all Adverse Interests arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the ownership, sale or operation of the Purchased Assets and the business of the Debtors prior to the Closing or the transfer of the Purchased Assets to Buyer, except for the Assumed Liabilities expressly assumed under the Asset Purchase Agreement.  The holders of claims related to the Assumed Liabilities shall have the right to seek payment directly from Buyer on account of the Assumed Liabilities; *provided*, however, that Buyer reserves any and all rights, defenses or objections with regard to such Assumed Liabilities, including, but not limited to, Buyer's rights under the Asset Purchase Agreement.~~

17.    ~~Except with respect to the Assumed Liabilities, all persons and entities (and their respective successors and assigns), including all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors holding Adverse Interests arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the ownership, sale or operation of the Purchased Assets and the business prior to the Closing or the transfer of Purchased Assets to Buyer, are hereby forever~~

~~barred, estopped and permanently enjoined from asserting such Adverse Interests against Buyer, its property or the Purchased Assets.  Following the Closing, no holder of any Adverse Interest shall interfere with Buyer's title to or use and enjoyment of the Purchased Assets based on or related to any such Adverse Interest, or based on any action the Plan Administrator may take in the Chapter 11 Cases.~~  (SMB: 7/19/2018)

18.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Adverse Interests against or in the Purchased Assets shall not have delivered to the Plan Administrator prior to the Closing of the Transactions in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all Adverse Interests that the person or entity has with respect to such Purchased Assets, then only with regard to the Purchased Assets that are purchased by Buyer pursuant to the Asset Purchase Agreement and this Order, (i) the Plan Administrator is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets, and (ii) Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Adverse Interests against Buyer and the applicable Purchased Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office.

## No Successor or Transferee Liability

19.     Except as Buyer expressly certifies pursuant to Section 2.02(b)(iv)(1) of the Asset Purchase Agreement, Buyer shall not be deemed, as a result of any action taken in connection with the Asset Purchase Agreement, the consummation of the Transactions, the transfer, or operation

or use of the Purchased Assets to: (i) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for Buyer, with respect to any obligations arising after the Closing as an assignee under Assigned Contracts); (ii) have, *de facto* or otherwise, merged with or into the Debtors; or (iii) be an alter ego or a mere continuation or substantial continuation or successor in any respect of the Debtors, including within the meaning of any foreign, federal, state or local revenue, pension, Employee Income Security Act of 1974 ("ERISA"), tax, labor, employment, environmental or other law, rule or regulation (including filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

20.     Except as expressly provided in the Asset Purchase Agreement with respect to Assumed Liabilities, Buyer shall have no liability whatsoever with respect to the Debtors' (or their predecessors or affiliates) respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as described below, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of labor law, employment law, ERISA and benefits law, antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on account of any settlement or injunction, or any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing or such later time as Buyer is assigned and assumes any Assigned Contract.

21.     Buyer has given substantial consideration under the Asset Purchase Agreement for the benefit of the holders of any Adverse Interest.  The consideration given by Buyer shall constitute valid and valuable consideration for the releases of any potential claims of Successor or Transferee Liability of Buyer, which releases shall be deemed to have been given in favor of Buyer by all holders of any Adverse Interests.

22.     Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter, any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceedings against Buyer, or its assets (including the Purchased Assets), or its successors and assigns, with respect to any (i) Adverse Interest or (ii) Successor or Transferee Liability including the following actions with respect to clauses (i) and (ii): (a) commencing or continuing any action or other proceeding pending or threatened; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any Adverse Interest; (d) asserting any setoff, right of subrogation or recoupment of any kind; (e) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (f) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with such assets.

### **Good Faith of Buyer**

23.     Buyer is entitled to all the protections and immunities of section 363(m) of the Bankruptcy Code.  There has been no showing that the Plan Administrator or Buyer engaged in

any action or inaction that would cause or permit the Transactions to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.

### Assignment of Assigned Contracts

24.    The Plan Administrator, on behalf of the Debtors, is authorized at the Closing to assign each of the Assigned Contracts in accordance with the Asset Purchase Agreement and this Order to Buyer and to execute and deliver to Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to Buyer.

25.    Any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the counterparty to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the Debtors' assignment of such Assigned Contracts in accordance with the Asset Purchase Agreement but will be effective and binding upon Buyer with respect to any purported assignment for the remaining term of such Assigned Contract.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assignment to Buyer of the Assigned Contracts have been satisfied.  Upon the Closing or such later time as is provided in the Asset Purchase Agreement with respect to the assignment of any Assigned Contract, in accordance with sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assigned Contracts, and such Assigned Contracts shall remain in full force and effect for the benefit of Buyer.

26.    Each non-Debtor counterparty to the Assigned Contracts shall be forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Buyer or their

respective property any assignment fee, acceleration, default, breach or claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing  or arising by reason of the Closing or the transfer of the Purchased Assets, including any breach related to or arising out of change-in-control in such Assigned Contracts, or any purported written or oral modification to the Assigned Contracts and (ii) asserting against Buyer (or its property, including the Purchased Assets) any claim, counterclaim, breach, or condition asserted or assertable against the Debtors existing as of the Closing  or arising by reason of the transfer of the Purchased Assets, except for the Assumed Liabilities.  In addition, without relieving Buyer of its obligations under the Asset Purchase Agreement, nothing in the Order, the Motion or the Asset Purchase Agreement shall affect the Debtors' obligations under section 365(d)(3) of the Bankruptcy Code (or Buyer's assumption thereof) prior to the assignment of any Assigned Contracts.

27.    Upon the Closing, Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Assigned Contracts, and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assigned Contracts from and after such assignment.  There shall be no assignment fees, increases or any other fees charged to Buyer or the Debtors as a result of the assignment of the Assigned Contracts.

**The Sale Does Not Require the Appointment of a Consumer Privacy Ombudsman**

28.    Buyer shall be subject to reasonable restrictions by the Plan Administrator in order to comply with the Debtors' privacy policy, which broadly provides that, if the Debtors or any portion of their assets are acquired, the Debtors may share all types of information with the acquiring company.  As the Debtors' privacy policy does not prohibit the transfer of personally identifiable information, appointment of a consumer privacy ombudsman is not required.

**Other Provisions**

29.    Effective upon the Closing, the Debtors, on behalf of themselves and **the extent permitted by non-bankruptcy law, on behalf of t**heir respective past, present and future (**SMB: 7/19/2018**) subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns (collectively, the "Debtor Releasing Parties"), hereby release, remise, acquit and forever discharge Buyer and its past, present and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns, and each of its and their respective directors, managers, officers, employees, shareholders, members, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance companies and partners (except, in each case, the Debtor Releasing Parties) (collectively, in their capacities as parties being released pursuant to this paragraph 34, the "Buyer Released Parties"), from any and all claims, contracts, demands, causes of action, disputes, controversies, suits, cross-claims, torts, losses, attorneys' fees and expenses, obligations, agreements, covenants, damages, liabilities, costs and expenses, whether known or unknown, whether anticipated or unanticipated, whether claimed or suspected, whether fixed or contingent, whether yet accrued or not, whether damage has resulted or not, whether at law or in equity, whether arising out of agreement or imposed by statute or common law of any kind, nature, or description, including, without limitation as to any of the foregoing, any claim by way of indemnity or contribution, which any Debtor Releasing Party has, may have had or may hereafter assert against any Buyer Released Party arising from or related in any way, either directly or indirectly, to the negotiation, documentation, performance or consummation of the Asset Purchase Agreement or any other agreements entered into in connection with the transactions contemplated thereby; *provided*, *however*, that the foregoing release shall not apply to the Debtors' rights or Buyer's obligations under this Order or

the Asset Purchase Agreement and/or any other agreements entered into in connection with the transactions contemplated hereby or thereby.

30.     Subject to the terms of the Asset Purchase Agreement, the Asset Purchase Agreement and any related agreements may be waived, modified, amended or supplemented by agreement of the Plan Administrator and Buyer without further action or order of the Bankruptcy Court if it does not have a material adverse effect on the Debtors.  Any material modification, waiver, amendment or supplement to the Asset Purchase Agreement must be approved by order of the Bankruptcy Court.

31.     ~~All persons, all Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Adverse Interests are hereby barred and estopped from taking any action against Buyer or the Purchased Assets to recover property on account of any Adverse Interests or on account of any Liabilities of the Debtors other than Assumed Liabilities pursuant to the Asset Purchase Agreement.~~ (SMB: 7/19/2018)

32.     The provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of all Adverse Interests shall be self-executing, and neither the Plan Administrator nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

33.     The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Asset Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating

in any way to the sale.  This Court retains jurisdiction to compel delivery of the Purchased Assets, to protect Buyer and its assets, including the Purchased Assets, against any Adverse Interests and Successor or Transferee Liability and to enter orders, as appropriate, pursuant to sections 105, 363 or 365 (or other applicable provisions) of the Bankruptcy Code necessary to transfer the Purchased Assets and the Assigned Contracts to Buyer.  This Court retains jurisdiction to adjudicate disputes between Buyer and holders of claims related to the Assumed Liabilities regarding the Assumed Liabilities.

34.    The Transactions contemplated hereunder shall not be affected by any bulk sales laws.

35.    Buyer has standing to seek to enforce the terms of this Order.

36.    Notwithstanding the possible applicability of Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9014 or otherwise, this Order shall not be stayed, the terms and conditions of this Order shall be effective immediately upon entry and the Plan Administrator, on behalf of the Debtors, and Buyer are authorized to close the Sale immediately upon entry of this Order.  Time is of the essence in closing the Sale, and the Plan Administrator and Buyer intend to close the Sale as soon as practicable.  This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being dismissed as moot.

37.    The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

38.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

39.    To the extent there are any inconsistencies between the terms of the Bidding Procedures Order, this Order and the Asset Purchase Agreement, the terms of this Order shall control.

**Dated: July 19, 2018**
      **New York, New York**

    **/s/ STUART M. BERNSTEIN**
    **HONORABLE STUART M. BERNSTEIN**
    **UNITED STATES BANKRUPTCY**
    **JUDGE**